IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | Bankruptcy Case No. 19-34054 |
| Debtor. | § § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Plaintiff, | § § | Adversary Proceeding No. 21-03004 |
| v. | § § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § | Civil Action No. 3:21-cv-00881-X |
| Defendant. | § § | |

**DEFENDANT'S LIMITED OBJECTION TO REPORT AND RECOMMENDATION**

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
E-mail: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    SUMMARY ....................................................................................................................1

II.   BACKGROUND ...........................................................................................................1

III.  ARGUMENT ................................................................................................................4

      A.    Judicial Economy Favors Immediate Withdrawal of the Entire Adversary
           Proceeding Because of the Certainty of Dispositive Motion Practice Combined
           with the Right to a Jury Trial .................................................................................4

      B.    The Appearance of Bias Supports the Immediate Withdrawal of the Reference ....5

IV.   PRAYER........................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Cooley v. Foti*, No. CIV.A. 86-3704, 1988 WL 10166, 1988 U.S. Dist. LEXIS 1131
(E.D. La. Feb. 5, 1988) ............................................................................................6

*In re Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) .................................5

*Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. BR 15-3229, 2016 WL 406959
(S.D. Tex. Feb. 3, 2016)............................................................................................5

*Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 877 (E.D. La. 2011).......4

**<u>Statutes and Rules</u>**

28 U.S.C. § 157.............................................................................................................4

TO THE HONORABLE BRANTLEY STARR, U.S. DISTRICT JUDGE:

COMES NOW Highland Capital Management Fund Advisors, L.P. (the "Defendant"), the defendant in the above-styled and numbered bankruptcy adversary proceeding (the "Adversary Proceeding") filed by Highland Capital Management, L.P. (the "Plaintiff"), and files this its *Limited Objection* (the "Objection") to the *Report and Recommendation to District Court Proposing That It: (A) Grant Defendant's Motion to Withdraw the Reference At Such Time As Bankruptcy Court Certifies That Action Is Trial Ready; and (B) Defer Pretrial Matters To Bankruptcy Court* (the "Report and Recommendation"), respectively stating as follows:

## I.      SUMMARY

1.      The Defendant objects to the Report and Recommendation to the extent that the Bankruptcy Court recommends that it retain this Adversary Proceeding for pretrial matters and until this Adversary Proceeding is certified as ready for trial.  Because *this* Court will conduct the jury trial, *this* Court should consider all pretrial matters as they will inevitably dictate to some degree the jury trial.  Moreover, because this Adversary Proceeding is not core, the Bankruptcy Court cannot adjudicate any dispositive motion and it would be a waste of both courts' resources and the parties' resources to go through any such practice.  For these reasons, and also because of the Bankruptcy Court's apparent bias against the Defendant, this Court should immediately withdraw the reference of this Adversary Proceeding.

## II.      BACKGROUND

2.      On October 16, 2019, Highland Capital Management, L.P. (the "Debtor"), founded by Mr. James Dondero, filed bankruptcy in Delaware.[1]   The Debtor's creditors, including Acis Capital Management, L.P. (a debtor in a previous bankruptcy case before the Bankruptcy Court involving Mr. Dondero), moved to transfer this bankruptcy case to the

---

[1] R. 2382, the December 3, 2019 Transcript - Motion to Transfer, at 78:21-23 (R. 2459).

Northern District of Texas seeking to have it assigned to the Bankruptcy Court.  During the hearing, the Debtor's current lead bankruptcy counsel, Jeffrey Pomerantz, acknowledged that a "fresh start" in the Delaware Bankruptcy Court was needed because the Bankruptcy Court in the Northern District of Texas had pre-existing, negative views of Debtor's management, including Mr. Dondero as a result of the Acis bankruptcy.[2]  Nonetheless, on December 4, 2019, the Delaware Bankruptcy Court transferred the case to the Northern District of Texas where it was assigned to Judge Jernigan, who also presided over the Acis Bankruptcy.[3] *See* Bankr. Dkt. No. 1.

3.      The Defendant is a registered investment advisor that advises many third-party investors with respect to their investments.  Mr. Dondero manages and controls the Defendant and, to a degree, owns interests in the Defendant.

4.      On January 22, 2021, Debtor commenced the present Adversary Proceeding against the Defendant, asserting a state law, non-core breach of contract claim on account of alleged promissory notes owed by the Defendant to the Debtor in the approximate amount of $7,687,653.07, and an entirely dependent turnover claim under 11 U.S.C. § 542(b) for the amounts allegedly owed on the notes.  The Defendant did not consent to the Bankruptcy Court entering a final judgment in the Adversary Proceeding and the Defendant timely and property demanded a trial by jury.

5.      On March 18, 2021, the Defendant, Mr. Dondero, and others filed their Motion to Recuse Bankruptcy Judge Jernigan, together with a supporting 37-page Brief and supplemental materials (consisting of 2,722 pages) [Bankr. Dkt. Nos. 2060-2062] seeking to recuse Judge

---

[2] *Id.* at 77:18-22 (R. 2485). "[T]he committee and Acis are really being disingenuous, and they have not told you the real reason that they want the case before Judge Jernigan. . . .It is because she formed negative views regarding certain members of the debtor's management that the committee and Acis hope will carry over to this case." *Id.* at 78:3-8 (R. 2459).

[3] *Id.* at 90:15-24 (emphasis added) (R. 2471). In fact, Mr. Pomerantz specifically referred to the Bankruptcy Court's opinions of Mr. Dondero as "baggage." *Id.* at 79:14-20 (emphasis added) (R. 2460).

Jernigan in all adversary proceedings filed by the Debtor against the movants, including the Defendant.  Five days later, without holding a hearing, the Bankruptcy Court entered the *Order Denying Motion to Recuse Pursuant to 28 U.S.C. § 455* [Bankr. Dkt. No. 2083].

6.     The Defendant, Mr. Dondero, and others subsequently appealed to this Court the Bankruptcy Court's denial of their recusal motion.  *See* Case 3:21-cv-00879-K at Dkt. No. 16. The appeal remains pending.

7.     On April 13, 2021, the Defendant filed its motion to withdraw the reference of this Adversary Proceeding, based on this Adversary Proceeding being non-core and based on the Defendant's jury rights.  The Debtor subsequently objected, arguing, remarkably, that the turnover action in Count II was core and that this action predominated; *i.e.* that the Bankruptcy Court could liquidate disputed promissory note claims through a turnover action.

8.     After a contested hearing, the Bankruptcy Court entered its Report and Recommendation on July 8, 2021, agreeing: (i) that this Adversary Proceeding is non-core; (ii) that the Defendant has valid jury rights which it has not waived; and (iii) therefore, that the Bankruptcy Court cannot enter a judgment in this Adversary Proceeding, thus necessitating a withdrawal of the reference.  However, the Bankruptcy Court recommended that it retain the Adversary Proceeding, including for all pretrial matters, under this Adversary Proceeding is certified as trial ready.  As reported and recommended by the Bankruptcy Court:

> In light of: (a) the noncore, related-to claims in the Complaint; (b) the lack of a proof of claim or any other claim related to the Notes asserted by HCMFA-Defendant; and (c) the lack of any other consent by HCMFA-Defendant to the equitable jurisdiction of the bankruptcy court related to the Notes, the bankruptcy court recommends the District Court: refer all pre-trial matters to the bankruptcy court, and grant the Motion upon certification by the bankruptcy court that the parties are trial-ready.
>
> With regard to such pretrial matters, the bankruptcy court further recommends that, to the extent a dispositive motion is brought that the bankruptcy court

determines should be granted and would finally dispose of claims in this Adversary Proceeding, the bankruptcy court should submit a report and recommendation to the District Court for the District Court to adopt or reject.

Report and Recommendation at p. 12.

## III.  ARGUMENT

### A.  Judicial Economy Favors Immediate Withdrawal of the Entire Adversary Proceeding Because of the Certainty of Dispositive Motion Practice Combined with the Right to a Jury Trial

9.      This Court should withdraw the reference of the Adversary Proceeding immediately and *in toto*.

10.      Here, the Bankruptcy Court lacks jurisdiction to rule on a dispositive motion such as a motion to dismiss or a motion for summary judgment.  Thus, any ruling by the Bankruptcy Court on any such motion will result only in proposed findings and conclusions, reviewable *de novo* in this Court.  *See* 28 U.S.C. § 157(c)(1).  Because this is a case in which it is likely that the Debtor will initiate dispositive motion practice, considerations of efficiency weigh in favor of withdrawing the reference early to enable the district court to hear the dispositive motion.  *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 455 B.R. 869, 877 (E.D. La. 2011) ("Given the need for a jury trial in this case, it would be inefficient to allow pretrial motion practice to continue in the bankruptcy court, delaying the eventual referral of claims to this Court for resolution at trial.").

11.      Numerous courts within the Fifth Circuit, including this Court, have held that judicial economy favors immediate withdrawal of the reference where, as here, a bankruptcy court cannot enter final orders or judgments on dispositive motions, and instead can only issue proposed findings of fact and conclusions of law:

> Judicial economy will not be sacrificed by the withdrawal. Rather, adjudicating all of the claims, both core and non-core, in the district court eliminates the

prospect of an appeal from the bankruptcy judge's adjudications of core claims, and dispenses with the need for the district court to conduct a de novo review of proposed findings and conclusions of the bankruptcy judge after a trial in the bankruptcy court as to non-core claims. And, for the same reasons, withdrawal of the reference will foster the economical use of the resources of the litigants.

*In re Mirant Corp. v. S. Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006).  *Accord Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. BR 15-3229, 2016 WL 406959, at \*4 (S.D. Tex. Feb. 3, 2016) (overruling bankruptcy court's report and recommendation to maintain the proceeding in the bankruptcy court for pretrial matters and instead ordering immediate withdrawal of the reference).

12.     Withdrawing the reference now promotes judicial economy, as it will enable this Court to have the familiarity necessary to make key trial determinations on the more complex evidentiary and expert issues that arise in a jury trial.    Moreover, because the trial of this Adversary Proceeding will be to a jury, this Court should not risk the Bankruptcy Court's determination of pretrial mattes, such as motions *in limine*, tying in any way this Court's hands. Simply put, while the Bankruptcy Court is certainly an expert on bankruptcy law and practice, this Adversary Proceeding does not involve the bankruptcy laws, and the Bankruptcy Court is certainly no expert on jury trials and jury practice.  Or, if this Court will necessarily review *de novo* all pretrial orders entered by the Bankruptcy Court as this Court prepares for trial, it would be a gross waste of the Bankruptcy Court's resources, this Court's resources, and the parties' resources to prepare, review, and contest any such orders.

## B.     The Appearance of Bias Supports the Immediate Withdrawal of the Reference

13.     Withdrawing the reference immediately will also ameliorate any appearance of bias arising out of the Bankruptcy Court making pre-trial rulings, including a dispositive motion concerning millions of dollars in disputed obligations involving a party who is appealing that

same Bankruptcy Court's denial of a recusal motion. *Cooley v. Foti*, No. CIV.A. 86-3704, 1988 WL 10166, 1988 U.S. Dist. LEXIS 1131 at *5 (E.D. La. Feb. 5, 1988) (finding the magistrate judge's personal "bias constitutes extraordinary circumstances and justifies the withdrawal of the [analogous] § 636[] references").  In *Cooley,* the District Court, in making its determination that there was sufficient reasons to justify vacating a reference to a magistrate judge based on the "possibility of bias or prejudice," found that the "magistrate evidenced a degree of anger so pervasive as to amount to personal bias, even though it had its origin in litigation before the magistrate." *Id.* at **5-6.  The evidence of bias in that case included, among other things, *sua sponte* actions by the magistrate requiring the requesting party to show cause why he should not be sanctioned for filing answers and defenses that did not "fairly meet the substance of the averments denied." *Id.* at 3.  The actions in this case similarly demonstrate, at a minimum, a possibility of bias or prejudice.

14.     For example, as detailed in the Appellate Brief filed in the recusal appeal,[4] the Defendant contends the Bankruptcy Court entered the Highland bankruptcy case with negative opinions of Mr. Dondero and all entities affiliated or controlled by him, and that this predisposition "manifested itself in actions that impaired Appellants' legal rights; favored Appellants' opponents; and created, at a minimum, the clear perception that the Bankruptcy Court was unwilling to act impartially where Mr. Dondero and the Affected Entities were concerned."  Specifically, among other things, the record reflects that the Bankruptcy Court has:

---

[4] Appellants' Brief (filed by James Dondero, Highland Capital Management Fund Advisors LP, NexPoint Advisors LP, NexPoint Real Estate Partners LLC, The Dugaboy Investment Trust, and The Get Good Trust) at p. 15 (citations omitted), Case No. 3:21-CV-00879-K, attached to the Aigen Declaration as Exhibit 4 [Appeal Dkt. No. 16].

(a)     repeatedly made negative statements about Mr. Dondero and questioned Mr. Dondero's credibility before he ever testified; [5]

(b)     summarily disregarded the testimony of any witness favorable to Mr. Dondero and the Defendant as 'under [Mr. Dondero's] control' and *per se* not credible;[6]

(c)     repeatedly concluded, without evidence, that any entity the Bankruptcy Court deemed associated with Mr. Dondero was essentially an agent and no more than a pawn of Mr. Dondero;[7]

(d)     declared that Mr. Dondero and his 'controlled entities' are vexations litigants because: (i) they defended lawsuits and motions filed against them; and/or (ii) have asserted valid legal positions (including to preserve their and the Affected Entities' legal rights on appeal);[8]

---

[5] For example, on February 19, 2020, the Bankruptcy Court held a hearing on Debtor's application to retain a law firm to, among other things, appeal an order against Neutra Ltd. ("Neutra") (a company owned by Mr. Dondero). While former Bankruptcy Judge Russell Nelms (one of the Debtor's independent directors) determined that engaging the firm to represent Neutra was in the Debtor's best interest, the Bankruptcy Court concluded, without evidence, that Debtor's fully independent board was being unduly influenced by Mr. Dondero. At the same hearing, the Bankruptcy Court indicated that it believed Mr. Dondero lacked credibility even though, at that point in time, Mr. Dondero had not yet testified. *See* February 19, 2020 Transcript at 38:22-39:17; 62:6-17; 177:7-178:3; 174:22-175:1, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 5.

[6] *See, e.g.,* February 22, 2021 Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief [Bankr. Dkt. No. 1943] at p. 19 ("At the Confirmation Hearing, Mr. Post testified on behalf of the Highland Advisors and Funds that the Funds have independent board members that run the Funds, but the Bankruptcy Court was not convinced of their independence from Mr. Dondero merely because none of the so-called independent board members have ever testified before the Bankruptcy Court and all have been engaged with the Highland complex for many years. Notably, the Court questions Mr. Post's credibility because, after more than 12 years of service, he abruptly resigned from the Debtor in October 2020 at the exact same time that Mr. Dondero resigned at the Board of Directors' request, and he is currently employed by Mr. Dondero."); *see also* January 8, 2021 Transcript, at 175:8-176:25, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 6. Mr. Post is not employed by Mr. Dondero. Rather, he serves as an officer of various entities affiliated with Mr. Dondero, including the Defendant. This is further evidence that the Bankruptcy Court simply disregards the corporate form for any entity affiliated with Mr. Dondero.

[7] February 8, 2021 Transcript at 13:17-24; 20:18-20; 21:18-22:3, a true and correct copy of which is attached to the Aigen Declaration as Exhibit 7.

[8] February 8, 2021 Transcript at 46:20-25, attached to the Aigen Declaration as Exhibit 7.

---

(e)     issued a *sua sponte* order demanding that so-called 'Dondero-Affiliated Entities' disclose their ownership and control, including entities that have not appeared or filed anything in the Highland Bankruptcy;[9] and

(f)     applied more favorable standards and rules to the Debtor than those it afforded to Appellants, including the Defendant.[10]

15.     The Defendant notes the following in particular.   On February 17, 2021, the Debtor filed yet another adversary proceeding against the Defendant and an affiliated company, Adversary Proceeding No. 21-03010.[11]   The Debtor sought a permanent, mandatory injunction. The Bankruptcy Court set the injunction for trial on six days' notice.   At the conclusion of the trial, the Bankruptcy Court denied the mandatory injunction as moot.[12]   Notwithstanding such denial and the resulting loss of jurisdiction, as there was no case or controversy, the Bankruptcy Court nevertheless entered an order highly favorable to the Debtor, giving the Debtor all kinds of findings that were not even requested or the subject of the trial, and changing the Defendant's legal and contractual rights.[13]   And, the Bankruptcy Court blamed the Defendant, not the Debtor, for forcing an all-day trial on something that never was an emergency and never was a live case or controversy, instead being obviously moot:

---

[9] June 17, 2021 Order at p. 1 ("This Order is issued by the court sua sponte pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above-referenced case. More specifically, the Order is directed at clarifying the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the above-referenced 20-month-old Chapter 11 bankruptcy case.").

[10] Appellants' Brief (filed by James Dondero, Highland Capital Management Fund Advisors LP, NexPoint Advisors LP, NexPoint Real Estate Partners LLC, The Dugaboy Investment Trust, and The Get Good Trust) at p. 15 (citations omitted), Case No. 3:21-CV-00879-K, attached to the Aigen Declaration as Exhibit 4 [Appeal Dkt. No. 16].

[11] App. 88.

[12] App. 110.

[13] App. 106-110.

I don't want you to think my calm demeanor means I am a happy camper. I am not. I am beyond annoyed. I mean, I can't even begin to guesstimate how many wasted hours were spent on the drafting Option A, Option B. Wait. Let me pull up the exact words. Mr. Norris confirming, We withdrew Option B after the Debtor accepted it.

I mentioned fee-shifting once before in a different context, and, of course, we haven't even gotten to the motion for a show cause order declaring Mr. Dondero in contempt. I don't know if the lawyers fully appreciate how this looks. Mr. Rukavina, you said that I have formed opinions that you don't think are fair and made comments about vexatious litigation and whatnot. But while I continue, I promise you, to have an open mind, it is days like this that make me come out with statements that Mr. Dondero, repeating his own words, apparently, he's going to burn the house down if he doesn't get his baby back.

I mean, it seems so obviously transparent that he's just driving the legal fees up. It's as though he doesn't want the creditors to get anything, is the way this looks. If he wants me to have a different impression, then he needs to start behaving differently. I mean, I can't even imagine how many hundreds of thousands of dollars of legal fees were probably spent the past two weeks on Option A, Option B, and all the different sub-agreements and whatnot. And as recently as Friday afternoon, the K&L Gates lawyer saying we have a deal, and then, oh, wait, maybe not, maybe we do, maybe we don't. And then Mr. Dondero acting like he had no clue what the K&L Gates lawyers were saying as far as we have a deal. And Mr. Norris distancing himself from having seen any of that, and I didn't have power. You know, I'm sure he had a cell phone, like the rest of us, that gets emails. I'm making a supposition. I shouldn't make that. But it just feels like sickening games.

And again, if this keeps on, if this keeps on, one day, one day, there may be an enormous attorney fee-shifting order. And, of course, I would have to find bad faith, and I wouldn't be surprised at all if I get there.

*     *     *

[Addressing Jim Dondero] I'm glad you're on the line. I cannot overstate how very annoyed I am by hearing all these hours of testimony and to feel like none of it was necessary. None of it was necessary. Okay? There could have been a consensual deal.[14]

16.     Instead of focusing on the all-day trial that was not needed and was forced by the

Debtor, and at which the Defendant *prevailed*, the Bankruptcy Court instead focused on

---

[14] App. 118-120.

settlement negotiations and blamed Mr. Dondero, and therefore the Defendant, for not taking the Debtor's settlement proposal.

17.     The Defendant's primary defense in this Adversary Proceeding is that the underlying promissory notes were created by mistake by the Debtor's former CFO who was also at that time the Defendant's CFO, and who also signed the notes in his personal capacity and who was not authorized by either party to do so.  Namely, the Debtor, performing services for the Defendant pursuant to contract, made a valuation mistake which, in turn, led to an SEC investigation and to millions of dollars being paid out by the Defendant to its clients, since the mistake was used by the Defendant to advise its clients.  The Debtor compensated the Defendant for this mistake; hence the reason for the flow of any funds from the Debtor to the Defendant. The former CFO, not knowing these details, saw the flow of funds and assumed that this was a loan, and then proceeded on his own, without authority, and without the Defendant's or the Debtor's legal department being involved, to prepare and sign the notes, for some internal accounting or record-keeping purposes.

18.     Thus, the credibility of the witnesses is a key issue in this Adversary Proceeding. The Defendant is reasonably, and deeply, concerned that the Bankruptcy Court will conclude *a priori* that its witnesses are not credible, since the Defendant is controlled by Mr. Dondero, just as the Bankruptcy Court has already concluded that previous witnesses for the Defendant (otherwise highly reputable, honest, and sophisticated people, without a blemish on their names) were not credible because they were the "stooges" or the "tentacles" of Mr. Dondero.  The Defendant does not propose to try the recusal matter through this Objection.  However, all of these legitimate concerns about potential bias are best resolved by this Court simply doing what Congress intended: withdrawing the reference immediately and *in toto*.

## IV.   PRAYER

WHEREFORE, PREMISES CONSIDERED, and as originally requested by the Defendant in its motion to withdraw the reference, the Defendant respectfully requests that the Court enter an order immediately withdrawing the reference of the Adversary Proceeding for all purposes.

RESPECTFULLY SUBMITTED this 22d day of July, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
      Davor Rukavina, Esq.
      Texas Bar No. 24030781
      Julian P. Vasek, Esq.
      Texas Bar No. 24070790
      3800 Ross Tower
      500 N. Akard Street
      Dallas, Texas  75201-6659
      Telephone: (214) 855-7500
      Facsimile: (214) 855-7584
      E-mail: drukavina@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 22d day of July, 2021, true and correct copies of this document were served on the recipients listed below by the Court's ECF system:

Jeffrey N Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Email: jpomerantz@pszjlaw.com

Zachery Z. Annable
Hayward PLLC
10501 N. Central Expressway
Suite 106
Dallas, TX 75231
Email: zannable@haywardfirm.com

/s/ Davor Rukavina
Davor Rukavina