Davor Rukavina
Julian P. Vasek
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile
Email: drukavina@munsch.com

ATTORNEYS FOR HIGHLAND CAPITAL
MANAGEMENT FUND ADVISORS, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | Civ. Act. No. 3:21-cv-00881-X |
| | § | |
| v. | § | (Consolidated with 3:21-cv-00880-X, |
| | § | 3:21-cv-01010-X, 3:21-cv-01378-X, |
| | § | 3:21-cv-01379-X) |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF OBJECTION OF HIGHLAND CAPITAL MANAGEMENT
FUND ADVISORS, L.P. TO ORDER DENYING MOTION TO AMEND ANSWER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      SUMMARY ................................................................................................1

II.     BACKGROUND ..........................................................................................4

     A.      THE ADVERSARY PROCEEDING ...................................................................4

     B.      HCMFA DENIED EXECUTION OF THE NOTES .............................................4

     C.      HCMFA'S EXISTING AFFIRMATIVE DEFENSE ..........................................5

     D.      THE DEBTOR'S DISCOVERY ABUSE .........................................................7

     E.      HCMFA LEARNS THAT WATERHOUSE DID NOT SIGN THE NOTES ...........8

     F.      THE MOTION AND THE HEARING ...........................................................11

III.    ARGUMENTS AND AUTHORITIES...............................................................14

     A.      RECONSIDERATION OF MAGISTRATE JUDGE'S ORDER ............................14

     B.      STANDARD APPLICABLE TO THE MOTION ...............................................15

          i.      No Undue Delay ...................................................................16

          ii.     No Bad Faith or Dilatory Motive................................................16

          iii.    No Repeated Failures to Cure Deficiencies ................................17

          iv.     No Undue Prejudice................................................................17

          v.      No Futility.............................................................................17

     C.      THE BANKRUPTCY COURT CLEARLY ERRED BY ENTERING THE ORDER .................19

IV.     CONCLUSION..........................................................................................21

CERTIFICATE OF SERVICE ....................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Baylor Health Care Sys. v. Equitable Plan Servs.*, 955 F. Supp. 2 678 (N.D. Tex. 2013)............16

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)........................18

*Follenfant v. Rogers*, 359 F.2d 30 (5th Cir. 1966)........................................19

*Guzman v. Hacienda Records & Recording Studio Inc.*, 808 F.3d 1031 (5th Cir. 2015)..............16

*In re Geert Duizenstraal*, 1997 U.S. Dist. LEXIS 16506 (N.D. Tex. 1997) ...............16

*Jurach v. Safety Vision, LLC*, 642 Fed. Appx. 313 (5th Cir. 2016)..............................18

*Nieto v. Nationwide Prop. & Cas. Ins. Co.*, 2011 U.S. Dist. LEXIS 171802
    (N.D. Tex. Jan. 10, 2011)..................................................................19

*Ramirez v. Bexar County*, 2011 U.S. Dist. LEXIS 111678 (W.D. Tex. Sept. 29, 2011)...............19

*Silverio v. Silverio*, 625 S.W.3d 680 (Tex. App.—El Paso 2021) .................................18

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004) .............................. 15-16

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000).................................. 17-18

**<u>Other</u>**

Tex. Bus. & Comm. Code § 3.308.................................................................18

Tex. Bus. & Comm. Code § 3.401.................................................................18

Fed. R. Civ. P. 8..............................................................................19

Fed. R. Civ. P. 11.............................................................................19

Fed. R. Civ. P. 15.............................................................................15

Fed. R. Civ. P. 54.........................................................................15, 19

Fed. R. Civ. P. 72.........................................................................15, 19

Tex. R. Civ. P. 92.............................................................................18

Tex. R. Civ. P. 93.............................................................................19

COMES NOW Highland Capital Management Fund Advisors, L.P. ("HCMFA"), the defendant in the above styled and numbered Adversary Proceeding initiated by Highland Capital Management, L.P. as the plaintiff (the "Debtor"), and files this its *Brief* (the "Brief") in support of its *Objection of Highland Capital Management Fund Advisors to Order Denying Motion to Amend Answer* (the "Objection"), respectfully stating as follows:

## I.   SUMMARY

1.    The Bankruptcy Court denied HCMFA's Rule 15 motion to amend its answer to deny that Mr. Waterhouse signed the Notes in dispute, despite the dictate that leave shall freely be given, despite there being no "substantial reason" to deny the motion, despite there being no trial setting, and despite the fact that the motion was necessitated by the Debtor's own discovery abuses and delays.  Perhaps most troubling, the Bankruptcy Court denied the motion despite the clear and incontrovertible evidence that Mr. Waterhouse did not, in fact, sign the Notes—a fact only recently discovered.

2.    This litigation revolves around two promissory notes (the "Notes"), purportedly signed by Frank Waterhouse ("Mr. Waterhouse") on behalf of HCMFA.  Mr. Waterhouse actually served both parties—as the Debtor's CFO and HCMFA's Treasurer.  But when it commenced this suit, the Debtor prohibited contact between Mr. Waterhouse and HCMFA.  After they finally had the opportunity to speak, HCMFA learned that Mr. Waterhouse misunderstood the underlying transactions and never had authority to execute the Notes.  In fact, the underlying transactions were not loans at all.  The Debtor had caused HCMFA to incur substantial damages, so the underlying payments were compensation, not loans

3.      On July 6, 2021, HCMFA amended its answer, without objection, to plead that the notes are invalid (APP 21-29, the "Answer").[1]  The Answer asserts lack of authority and mutual mistake based on the fact that the transfers were not loans.  And the fact that HCMFA has been challenging the notes' validity since May 22, 2021—the date HCMFA first sought leave to file the Answer—is critical to understanding this Objection.  Throughout its comments and ruling, the Bankruptcy Court repeatedly characterized this defense as a "bombshell," as if it were new.  But it was not, having first arisen seven months earlier.  More importantly, the matter before the Bankruptcy Court was different.  HCMFA sought leave to amend its answer a second time to plead something else entirely.

4.      Until October 26, 2021, the Debtor refused to produce native copies of the Notes with metadata.  Once HCMFA finally had the opportunity to review the metadata, it became clear that Mr. Waterhouse never even signed the Notes in the first place.  A lower-level employee of the Debtor, providing services to HCMFA pursuant to a shared services agreement, simply applied an electronic image of Mr. Waterhouse's signature to the Notes and filed them away.  She never even showed them to him.  The evidence is conclusive: Mr. Waterhouse did not sign the notes; he didn't even know about them, and there is strong evidence for the proposition that Mr. Waterhouse did not authorize the employee to electronically sign the Notes for him either.

5.      On November 30, 2021, therefore, HCMFA Filed its *Defendant's Second Motion for Leave to Amend Answer and Brief in Support Thereof* (the "Motion").  The purpose of the Motion was simply to assert with more specificity that Mr. Waterhouse never signed the Notes.  HCMFA had already denied execution of the Notes in the existing Answer.  And the motivation for filing the Motion was to avoid a pleading-sufficiency fight.  The Debtor bears the burden to

---

[1]      "APP" refers to the *Appendix in Support of Objection of Highland Capital Management Fund Advisors, L.P. to Order Denying Motion to Amend Answer*, which is being filed contemporaneously herewith.

prove HCMFA executed the notes, and HCMFA denied the allegation of execution.  Though HCMFA contends it adequately challenged Mr. Waterhouse's signature in its Answer, it filed the Motion out of an abundance of caution given certain language in the U.C.C. that suggests one must explicitly deny the fact of a signature on a promissory note.[2]

6.     Lacking any substantive response to the indisputable fact that Mr. Waterhouse never signed the Notes, the Debtor embarked instead on a campaign of misdirection and mudslinging.  It characterized the allegation that Mr. Waterhouse never signed the Notes as some kind of bombshell, paradigm-shifting development.  But it was not.  HCMFA pled that the Notes are invalid in its answer on July 6, 2021, after seeking leave to do so on May 22, 2021.  Unfortunately, following a needlessly prolonged and meandering hearing, the Bankruptcy Court took the bait and wandered off course.  The Bankruptcy Court's comments and ruling make clear that the Court erroneously believed HCMFA was challenging the Notes' validity for the first time and that this was the subject of the Motion, as opposed to the far more discrete and certain question that Mr. Waterhouse did not even sign the Notes.

7.     By the Objection, and pursuant to Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1, NexPoint seeks the District Court's review of the Bankruptcy Court's *Order Denying Defendant's Second Motion for Leave to Amend Answer* (the "<u>Order</u>").  HCMFA submits that, in denying HCMFA leave to amend its answer to plead an indisputable defense, the Order is clearly erroneous and contrary to law and should, therefore, be reconsidered and reversed by the District Court either pursuant to its *de novo* review or Rule 72.1.

---

[2]     HCMFA made clear in the Motion that it was filing the Motion out of an abundance of caution and without admission that leave to amend was necessary or that its prior denials in its Answer were insufficient.  *See* APP 33.

## II.    __BACKGROUND__

### A.    __THE ADVERSARY PROCEEDING__

8.    The Debtor was a debtor-in-possession and is now a reorganized debtor in a Chapter 11 case pending before the Bankruptcy Court. The Debtor initiated this Adversary Proceeding by filing its original complaint against HCMFA on January 22, 2021. By this Adversary Proceeding, the Debtor seeks to collect on the Notes, allegedly issued by HCMFA to the Debtor on May 2 and 3, 2019 in the cumulative principal amount of $7.4 million. APP 10-14. The Notes are purportedly signed by Waterhouse. *Id.*

9.    On September 14, 2021, this Court entered an order adopting the Bankruptcy Court's report and recommendation and ordering that the reference of this Adversary Proceeding will be withdrawn once the Bankruptcy Court certifies trial readiness. APP 02714-15. As part of the same, the Court necessarily agreed and ordered that HCMFA has a right to a trial by jury of this Adversary Proceeding.

10.    Although not crystal clear, it appears the Bankruptcy Court is acting in the capacity of a magistrate, as the Bankruptcy Court itself appears to have concluded. APP 2717 n.1 ("The District Court accepted the bankruptcy court's report and recommendation that the reference should be withdrawn when these Note Adversary Proceedings are trial-ready with the bankruptcy court acting essentially in the position of a magistrate judge for the District Court prior to trial, presiding over all pretrial matters.").

### B.    __HCMFA DENIED EXECUTION OF THE NOTES__

11.    There are only two allegations in the Debtor's complaint regarding execution of the Notes:

> 14.    Specifically, on May 2, 2019, HCMFA executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $2,400,000

("HCMFA's First Note"). A true and correct copy of HCMFA's First Note is attached hereto as Exhibit 1.

      15.     On May 3, 2019, HCMFA executed a promissory note in favor of the Debtor, as payee, in the original principal amount of $5,000,000 ("HCMFA's Second Note," and together with HCMFA's First Note, the "Notes"). A true and correct copy of HCMFA's Second Note is attached hereto as Exhibit 2.

APP 4. HCMFA expressly and unequivocally denied both of these allegations. APP 23 ("14. The

Defendant denies ¶ 14 of the Complaint. 15. The Defendant denies ¶ 15 of the Complaint.").

## C.   <u>HCMFA's Existing Affirmative Defense</u>

      12.     When the Debtor filed this lawsuit, it controlled HCMFA's books and records and

controlled nearly everyone involved in the underlying transactions, who were all its employees.

*See* APP 84-86 (¶¶ 13-17). Relying on an existing injunction against Mr. Dondero and his related

entities, the Debtor prohibited these individuals from providing information to HCMFA. *Id.*

Naturally, this hindered HCMFA's investigation of its defenses.

      13.     But the Debtor eventually terminated those individuals. APP 86 (¶ 18). Following

an exceedingly busy March, HCMFA was finally able to interview Mr. Waterhouse by mid-April

2021. *Id.* (¶ 20). Based on the information HCMFA learned, it amended its answer to assert new

affirmative defenses, *id.* (¶ 21), which it sought leave to do on May 22, 2021. *See Defendant's*

*Motion for Leave to Amend Answer*, Bankr. Dkt. No. 32, Adv. No. 21-03004.

      14.     Specifically, HCMFA filed the amended Answer on July 6, 2021—*without*

*objection*—to assert the following defenses:

      38.     At all material times to the Complaint, the Defendant, a registered advisor, advised various third-party funds as to their investments. One such fund was Highland Global Allocation Fund ("<u>HGAF</u>").

      39. At all material times to the Complaint, the Defendant contracted with the Plaintiff whereby the Plaintiff, through its employees, would provide certain services to the Defendant, including with respect to the Defendant's advice to the third-party funds. These services so provided included accounting, legal, regulatory, valuation, and compliance services.

40.     In March, 2018, HGAF sold equity interests it held in TerreStar. As part of this, it was necessary to calculate the "net asset value" ("NAV") of these securities and of HGAF assets. The Defendant was responsible for advising on the NAV. In turn, pursuant to the Shared Services Agreement in effect at that time between the Plaintiff and the Defendant, the Plaintiff was responsible to the Defendant to calculate the NAV, and the Plaintiff had several employees charged with these and similar calculations as part of the Plaintiff's routine business services and as part of what the Plaintiff regularly provided to the Defendant and affiliated companies.

41.     The Plaintff made a mistake in calculating the NAV (the "NAV Error"). The NAV Error was discovered in early 2019 as HGAF was being converted from an open-ended fund to a closed-ended fund. The Securities and Exchange Commission opened an investigation, and various employees and representatives of the Plaintiff, the Defendant, and HGAF worked with the SEC to correct the error and to compensate HGAF and the various investors in HGAF harmed by the NAV Error. Ultimately, and working with the SEC, the Plantiff determined that the losses from the NAV Error to HGAF and its shareholders amounted to $7.5 million: (i) $6.1 million for the NAV Error itself, as well as rebating related advisor fees and processing costs; and (ii) $1.4 million of losses to the shareholders of HGAF.

42.     The Defendant accepted responsibility for the NAV Error and paid out $5,186,496 on February 15, 2019 and $2,398,842 on May 21, 2019. In turn, the Plaintiff accepted responsibility to the Defendant for having caused the NAV Error, and the Plaintiff ultimately, whether through insurance or its own funds, compensated the Defendant for the above payments by paying, or causing to be paid, approximately $7.5 million to the Defendant directly or indirectly to HGAF and its investors.

43.     At this time, Frank Waterhouse ("Waterhouse") was the Chief Financial Officer to both the Plaintiff and the Defendant. Waterhouse signed the two promissory notes the subject of the Complaint (the "Notes"). He did not sign the Notes in any representative capacity for the Defendant. The Defendant did not authorize Waterhouse to sign the Notes or to bind the Defendant in any way to the Note.

44.     Waterhouse made a mistake in preparing and signing the Notes for the Defendant. Upon information and belief, Waterhouse was not aware that payments from the Plaintiff to the Defendant were to compensate the Defendant for the NAV Error and resulting damages, instead assuming that the Notes were like prior notes between the Plaintiff and the Defendant. Waterhouse failed to properly inquire into the underlying transaction and, either for unknown accounting or other purposes, Waterhouse prepared and signed the Notes on his own, without proper knowledge of the underlying facts and without actual authority from either the Plaintiff or the Defendant.

45.     In sum, neither the Plaintiff nor the Defendant intended that any funds paid by the Plaintiff to the Defendant be treated as debt but that they instead be treated as compensation by the Plaintiff to the Defendant for the NAV Error that the Plaintiff caused. The Notes are an unauthorized mistake and a nullity, and are void for a lack of consideration.

46.     To the extent Waterhouse had apparent authority to bind the Defendant to the Notes, such apparently authority does not apply to the Notes because Waterhouse's lack of actual authority is imputed to the Plaintiff, as Waterhouse was the CFO for the Plaintiff.

47.     Accordingly, the Notes are void or unenforceable for lack of consideration, for mutual mistake, and for the lack of authority from the Defendant to Waterhouse to execute the same for the Defendant.

APP 25-27.

15.     For purposes of this Objection, it is critical to keep in mind that, since first seeking leave to amend on May 22, 2021—and certainly since filing its amended answer on July 6, 2021—HCMFA has expressly and unequivocally denied executing the Notes and has affirmatively pled that "the Notes are void or unenforceable for lack of consideration, for mutual mistake, and for lack of authority …." None of this was new by the time that HCMFA filed its Motion or the January 10, 2022 hearing on that Motion.

**D.     THE DEBTOR'S DISCOVERY ABUSE**

16.     On May 28, 2021, HCMFA formally requested from the Debtor "All Microsoft Word Copies of the Notes, including Metadata." APP 899. A month later, the Debtor responded as follows: "The Debtor objects to Request for Production No. 9 to the extent the term 'metadata' is vague. Subject to the General Objections and this specific objection, the Debtor will conduct a reasonable search for, and produce, documents responsive to this Request." APP 905.

17.     But the Debtor did not produce the Notes with metadata intact. *See* APP 2531 (¶ 3). At a deposition on October 19, 2021, the Debtor's counsel was asked, "John, I also asked you for the Word versions of these notes so we could look at the properties, and you have not provided

them.  Are you intending to?"  APP 278 (146:13-16).  Remarkably, and without explanation, the

Debtor's counsel responded with a flat "No."  *Id.* (146:17).  After additional back and forth during

the days that followed, the Debtor finally produced the Notes with metadata intact on October 26,

2021.  APP 2534.

E.      **HCMFA LEARNS THAT WATERHOUSE DID NOT SIGN THE NOTES**

18.      Six days earlier, during his October 19, 2019 deposition, Mr. Waterhouse testified

that he did not recall signing the Notes, even though the signatures were his: "I don't recall

specifically signing this, but this is my signature."  APP 273 (141:4-7).

19.      When presented with the Notes and asked whether he believed that he ink-signed

them, Mr. Waterhouse answered:

> These – these – these signatures are identical, now that I stare at them, and I mean,
> they are so close – I mean, they're identical that, I mean, even with my chicken
> scratch signature, I don't know if I can – you know, I do this 100 times, could I do
> that as – as precisely as I see between the two notes.

APP 430 (298:2-17).

20.      Pressed further regarding whether he "actually signed either or both notes," Mr.

Waterhouse testified:

> Is – I don't – I don't recall specifically.  As I said before, my assistant did have a –
> an electronic signature, and that was used from time to time.  It wasn't as common
> practice back in 2019.  It definitely was more common practice when we had to
> work from home and remotely for COVID because it that made it almost impossible
> to, right, provide wet signatures since we're all working from home remotely.
>
> Q.      Well, going just for these two promissory notes, Mr. Waterhouse, in light
> of your inability to remember any details, are you sure you actually signed either
> or both of those notes?
>
> MS. DANDENEAU: Objection to form.
>
> A.      I don't recall specifically signing – actually physically signing these notes.
> As I said before, I don't recall doing that.  This – this looks like my signature, but
> yet these two signatures are identical.

Q.      So you don't recall physically signing them, and I take it you don't recall electronically signing them either?

A.      I don't recall.  You know, Highland has all my emails.  If that occurred, you know, you know, I don't have any of these records is what I'm saying.  I don' t have any of those records.

APP 430-31 (298:24-300:4).  The Debtor has not produced any such records.

21.      Regarding the possibility that Mr. Waterhouse electronically signed the Notes, as

rare as that may have been in May 2019, Mr. Waterhouse testified as follows:

Q.      And help me here.  I'm not very technologically astute.  When you – and I – I recognize that you do it rarely, but when you sign a document electronically, do you believe that there is an electronic record of you having authorized or signed a document electronically?

MR. MORRIS:  Objection to the form of the question.

A.      I – I don't know the tech answer to that, but, you know, since I don't have – I don't ever attach my signature block electronically, my assistant would have done that, and if that is done over email like we did several times – you know, multiple, multiple times over COVID, she would attach my signature block and then email it out to whatever party.

Q.      What was your assistant's name in May 2019?

A.      It was Naomi Chisum.

Q.      Is she the only one?  I'm sorry, was she your only assistant that would have maybe facilitated logistically something like you just described?

A.      You know, she was out on maternity leave at some point.  I don't – I don't recall those dates where she was out for maternity leave.  There was – there were folks backing her up.  I don't recall specifically who those – who those, you know, administrative assistants were, and I don't recall specifically if she was out during this time on maternity leave.

APP 452-53 (320:11-321:20).  No such e-mail authorizing Mr. Waterhouse's electronic signature

has been produced.  APP 895 (¶ 6).

22.      On October 27, 2021, HCMFA deposed Kristin Hendrix ("Ms. Hendrix"), a 17-

year member of the Debtor's corporate accounting department.  APP 540 (11:11-19).  Ms. Hendrix

confirmed that she would have prepared the Notes from Word documents originally created by outside counsel.  APP 571-72 (42:15-43:20).  But Ms. Hendrix had no specific memory of preparing these specific Notes.  APP 574-75 (45:21-46:1).

23.     Ms. Hendrix confirmed that, to sign Mr. Waterhouse's name to the Notes, she used an electronic image of his signature, which she then affixed to the Word documents, the same as the undersigned counsel does here:



APP 575-77 (46:25-48:9).  On the question of whether Mr. Waterhouse authorized her to affix his signature to the Notes, Ms. Hendrix testified "I don't have exact specific memory."  APP 577 (48:10-15).

24.     There is no evidence Ms. Hendrix ever showed the Notes to Waterhouse after preparing them.  On the contrary:

> Q.     Sitting here today, do you have any memory of giving Mr. Waterhouse these two promissory notes after they were prepared?
>
> A.     I specifically don't remember walking into his office and providing it to him, but he could have found it on our shared drive if he wanted to.
>
> Q.     Do you have any memory or in your recent review of documents did you see any email to the effect of you sending either or both of these promissory notes to Mr. Waterhouse after they were papered up?
>
> A.     I don't have any specific recollection, again, but he had access to look at them.
>
> Q.     On the shared drive?
>
> A.     Yes.

APP 583 (54:4-17).  Indeed, when Ms. Hendrix e-mailed the Notes she signed to other employees

of the Debtor, she did <u>not</u> even include Mr. Waterhouse on that e-mail, even though she affixed

his signatures to the Notes.  APP 1108.

25.     Based on the evidence, there can be no reasonable dispute that Mr. Waterhouse did

not sign the Notes.  Nor is there any evidence that he authorized Ms. Hendrix to affix an image of

his signature to the Notes, although that is a disputed question of fact.

**F.     THE MOTION AND THE HEARING**

26.     HCMFA filed its Motion on November 30, 2021, seeking leave solely to amend its

Answer to more expressly deny that Mr. Waterhouse signed the Notes.  While HCMFA previously

denied that it had executed the Notes, there was some question under the Uniform Commercial

Code whether this denial was sufficient or whether a more express and explicit denial of the fact

of a signature itself was required.  *See* APP 33 (citing Tex. Bus. & Comm. Code § 3.308(a)).

HCMFA did not concede an amendment was necessary, as it already denied execution of the notes.

*Id.*

27.     On January 10, 2022, the Bankruptcy Court held a hearing on the Motion that it

allowed to go on for nearly four hours.  Despite the fact that the local rules require parties to submit

their evidence in appendices, the Bankruptcy Court allowed the Debtor to call and examine

HCMFA's in-house counsel, Dennis Sauter ("Mr. Sauter"), live for an extended period of time.

APP 2601-78.  Despite questioning Mr. Sauter for the better part of two hours, the Debtor never

sought to address the only issued that mattered: whether Mr. Waterhouse signed the Notes and

when and how HCMFA learned of this fact.  Instead, the Debtor's counsel did two things.  First,

he unsuccessfully nitpicked Mr. Sauter's declaration in a vain attempt to assassinate his character.

*E.g.* APP 2605-07 (36:11-38:2).  Second, he sought to try the merits of the defense HCMFA

already pled six months ago (*i.e.*, that the Notes are void or unenforceable for lack of consideration,

for mutual mistake, and for the lack of authority from the Defendant to Waterhouse to execute the same for the Defendant).

28.     Both tactics had a single objective: to distract the Bankruptcy Court from the fact that Mr. Waterhouse plainly and indisputably did not sign the Notes, which was the sole basis for the relief sought in the Motion.  It was classic misdirection, as the Debtor had (and still has) no principled, evidentiary basis to deny the fact that Mr. Waterhouse did not sign the Notes, even if there is a potential question, not prejudiced by the Motion, as to whether he authorized Ms. Hendrix to sign them for him (on which point the Debtor has presented no evidence either).

29.     Unfortunately, it appears the Debtor succeeded.  Leading up to its ruling, the Bankruptcy Court asked HCMFA's counsel the following question:

> Let me ask you something more—well, it's nagging at me.  I don't know if I want to say it's troubling.  If HCMFA's theory of the case is correct that these notes were not supposed to be created, this was not supposed to be a loan, this was a transfer intended to compensate HCMFA for the losses it incurred that were Highland's fault, blah, blah, blah, okay, this happened in May 2019.  The bankruptcy was October 2019.  To me, that's a—**it's a bombshell morphing of the case** ….

APP 2697 (128:12-20) (emphasis added).  But, again, HCMFA first raised this defense in May 2021.  It has nothing to do with whether Mr. Waterhouse actually signed the Notes, which was the issue before the Court.

30.     The Bankruptcy Court then suggested that, if HCMFA is correct—*again, about a defense it raised seven months earlier*—then that may give rise to an insider preference claim under 11 U.S.C. § 547.  APP 2697 (128:20-22).  This concerned the Bankruptcy Court because the statute of limitations expired in October 2021.  *Id.* (128:23-25).  But this only reinforces the inescapable conclusion that the Bankruptcy Court was trying the wrong issue.  The Bankruptcy

Court misplaced its concern on a defense that HCMFA pled months earlier without objection.[3]
HCMFA's counsel repeatedly attempted to point this distinction out to the Bankruptcy Court, to
no avail.  APP 2698 (129:8-10); 2700 (131:11-13); 2703 (134:6-7).

31.     The Debtor's counsel then issued the following threat:  "If they're permitted to do
this, we will again have to amend our pleading to assert breach of fiduciary duty causes of action
against Mr. Dondero and Mr. Waterhouse, at a minimum.  Okay?  This is going to open up yet
another can of worms."  APP 2699-2700 (130:23-131:2).  But the only allegations HCMFA sought
leave to plead are that Mr. Waterhouse never signed the Notes; rather, someone else signed them
without his permission.  The Debtor never explained how these facts give rise to claims against
Mr. Waterhouse or Mr. Dondero.  They plainly do not.

32.     At the beginning of its ruling, the Bankruptcy Court confirmed that it
misapprehended the discrete issues before it:

> As I've said a couple of times today, I do consider this a very serious matter, which
> I suppose is one reason why I indulged so much evidence and argument.  Because,
> again, as I interpret the arguments and what's been presented in the record, the
> proposed second amended answer would essentially mean HCMFA is arguing that
> Frank Waterhouse and perhaps other within both the Highland and HCMFA
> organization either lied or made a $7.4 million mistake in dozens of reports to
> interested stakeholders.

APP 2706 (137:15-23).  But the Bankruptcy Court's interpretation of the evidence and argument
was clearly erroneous.

33.     HCMFA pled six months ago, without objection, that the Notes totaling $7.4
million did not constitute legitimate obligations.  Even assuming that error was reflected in the
Debtor's financial disclosures during its bankruptcy case, that possibility was not new.  The Debtor

---

[3]     If the Debtor had some additional or other causes of action stemming from HCMFA's denial that the Notes
were valid and enforceable, then the Debtor had almost five months to seek to amend its complaint to assert
such claims before limitations expired.  Rather than note this simple fact, the Bankruptcy Court seems to
have believed that HCMFA somehow "laid behind the log" until limitations attached—clearly not the case.

has been on notice Since May 2021 but did nothing.  The proposed second amended answer merely seeks to clarify that Mr. Waterhouse never even signed the Notes in the first place, APP 68-77, which the Debtor did not and cannot dispute.

34.     And, on the issue of whether HCMFA unreasonably delayed in filing its Motion, HCMFA pointed out the simple fact that the Debtor waited, unreasonably and without explanation, for some five months to produce the Notes in their native format with metadata.  The Debtor's response was that HCMFA filed "[n]o motion to compel."  APP 2591 (22:24-25) This is hardly consistent with the Debtor's discovery obligations, much less with the spirit if not the dictates of *Dondi*.

35.     It is inconceivable in the pursuit of justice that a court of equity would seek to enforce an obviously invalid obligation.  But that is what happened here.  The Bankruptcy Court ignored the evidence that Mr. Waterhouse never signed the Notes.  It denied the Motion based on a cultivated perception of delay, likewise ignoring the fact that the Debtor intentionally withheld discoverable evidence.  The result was clearly erroneous.

### III.      ARGUMENTS AND AUTHORITIES

#### A.      RECONSIDERATION OF MAGISTRATE JUDGE'S ORDER

36.     While the Bankruptcy Court is not a Magistrate, the Bankruptcy Court has issued a ruling observing that it is acting in the same capacity.  APP 2717 n.1 (describing its role as "acting essentially in the position of a magistrate judge for the District Court prior to trial, presiding over all pretrial matters").  Likewise, this Court's order on HCMFA's motion for withdrawal of the reference provides that the Bankruptcy Court shall consider all pretrial matters, though it does not expressly state that the Bankruptcy Court shall do so as a Magistrate subject to the rules applicable to Magistrate Judges.  APP 2714-15.  HCMFA therefore submits that the District Court may

reconsider, modify, or reverse the Order and grant the Motion *de novo* as it could do with respect to any of its own pretrial orders under Rule 54(b) because this is not a situation where the Bankruptcy Court is a Magistrate.

37.     However, because the issue is uncertain, and because the Bankruptcy Court appears to understand that it is acting in the capacity of a Magistrate Judge, HCMFA also seeks this Court's review of the Order under Rule 72(a).  Indeed, the Bankruptcy Court also held that the Local Rules of the District Court apply, APP 2718 n.5, which necessarily includes Local Rule 72.1.  If Rule 72(a) applies, then the standard for reconsidering the Order is that the Order is "clearly erroneous or is contrary to law."  FED. R. CIV. P. 72(a).

38.     Because the Order is not dispositive, the "clearly erroneous" standard applies.  *See, e.g., In re Geert Duizenstraal*, 1997 U.S. Dist. LEXIS 16506, *3-*4 (N.D. Tex. 1997).  Under this standard, an order is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Guzman v. Hacienda Records & Recording Studio Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015); *accord Baylor Health Care Sys. v. Equitable Plan Servs.*, 955 F. Supp. 2 678, 689 (N.D. Tex. 2013).

**B.     STANDARD APPLICABLE TO THE MOTION**

39.     Federal Rule of Civil Procedure 15 governs motions to amend pleadings.  That rule provides, "The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  As a result, the Court must "possess a 'substantial reason' to deny a request for leave to amend."  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).  The Fifth Circuit has outlined five "considerations" guiding the Rule 15 inquiry: "1) undue delay, 2) bad faith or dilatory motive, 3)

repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.*

### i.   <u>No Undue Delay</u>

40.     There has been no undue delay.  HCMFA did not know that Mr. Waterhouse did not sign the Notes until his deposition, as he had previously told HCMFA that he assumed he must have signed the Notes since the Notes appeared bear his signature.  It was the Debtor who delayed producing the original Notes five months, going so far as to say it would not produce the originals on October 19, 2021 (a decision which, to its credit, it subsequently reversed).  Had the Debtor produced the originals in May or June, as requested, it would have been obvious that the signatures were electronic signatures, and perhaps HCMFA would have reasonably questioned the signatures, but this did not happen due to the Debtor' delay.  HCMFA did not learn the facts until it deposed Mr. Waterhouse and Ms. Hendrix in October.  There is nothing HCMFA could have done to expedite this process.  On the contrary, discovery worked as designed.  The Debtor's notion that HCMFA had some obligation to file a motion to compel the production of the native Notes, when the Debtor's discovery response was that it would produce the originals of the Notes, is meritless and upends the applicable discovery burdens.

### ii.   <u>No Bad Faith or Dilatory Motive</u>

41.     There is no bad faith or dilatory motive.  All of HCMFA's defenses are made in good faith and are supported by the evidence.  The Debtor surely disputes the evidence, but that is the point of a trial.  Certainly, there is enough testimony to support the defense that Mr. Waterhouse did not sign the Notes or authorize their signing.  Nor is HCMFA trying to "weasel" its way out of a debt.  The Debtor, through its negligence, caused a $7.4 million liability to HCMFA.  It was

just and proper for the Debtor to compensate HCMFA, which it did.  None of this is "invented" after the fact or presented in bad faith.

### iii.    No Repeated Failures to Cure Deficiencies

42.    There are no repeated failures to cure deficiencies.  True, this is the second motion to amend HCMFA's answer.  But the first motion was necessitated by the simple fact that HCMFA did not have access to its books and records (then still under the control of the Debtor), and the Debtor had prohibited its employees, including Mr. Waterhouse, from discussing litigation matters with HCMFA.  In many ways, the first motion should not count against HCMFA.  Either way, for the same reasons as discussed above with respect to timing, HCMFA did not know and could not have known about this defense until the end of October 2021, meaning that there was no prior "deficiency" now to cure.

### iv.    No Undue Prejudice

43.    There is no undue prejudice to the Debtor.  Trial is not set.  All of the people with knowledge of the Notes have been deposed, and if the Debtor needs additional discovery, then HCMFA would reasonably cooperate.  But the Debtor already believes it has strong arguments as to why HCMFA's defenses fail, as it presented in opposition to the Motion.  And the Debtor has had possession of the originals of the Notes all this time.  Ms. Hendrix is still the Debtor's employee, as was Mr. Waterhouse through February 2021.  None of what HCMFA alleged in the Motion should come as a surprise to the Debtor, no matter how much the Debtor may disagree with HCMFA's position and arguments.

### v.    No Futility

44.    An amendment is futile if the amendment "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). "[T]o

determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (internal quotation omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.* The Court must accept the well pled facts as true, and the Court must limit itself to the contents of the pleadings and necessary attachments thereto. *See, e.g., Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

45.     The amendment is not futile, for two reasons. First, Texas law provides for a recognized, statutory defense when a promissory note is not signed. *See* TEX. BUS. & COMM. CODE ANN. § 3.401(a). Second, HCMFA does not concede amendment is even necessary. The purpose of the Motion was simply to avoid any fight over whether HCMFA's existing pleadings adequately denied Mr. Waterhouse's signature.

46.     The Debtor bears the burden to prove HCMFA signed the Notes because "[t]he validity of the signature on the note must be proved by the person claiming validity if validity is denied in the pleadings." *Silverio v. Silverio*, 625 S.W.3d 680, 685 (Tex. App.—El Paso 2021); TEX. BUS. & COMM. CODE § 3.308(a). By denying the only allegation in the Complaint regarding execution, the Answer put the Debtor to its proof on this element of its case, any allegedly contradictory allegations in the Answer notwithstanding. *See Jurach v. Safety Vision, LLC*, 642 Fed. Appx. 313, 317 (5th Cir. 2016) ("[r]ule 8 of the Federal Rules of Civil Procedure permits the alternative pleading of inconsistent claims and defenses ….").

47.     Any confusion over the adequacy of HCMFA's pleading results from differences between the Texas Rules of Civil Procedure and the Federal Rules of Civil Procedure. The Texas Rules require specific denials in certain instances because the Texas Rules permit general denials. *See* Tex. R. Civ. P. 92. The Federal Rules, on the other hand, require specific denials nearly all

the time, including here.  Fed. R. Civ. P. 8(b)(1)(B).  To the extent the Debtor attempts to argue the denial needed to be verified under Tex. R. Civ. P. 93 or relies on any other Texas procedural theory, those rules do not apply in federal court.  *See Follenfant v. Rogers*, 359 F.2d 30, 31-2 (5th Cir. 1966) (Texas rule 93 "COULD NOT have any effect on the present case, since state rules of practice are not applicable to, or binding on, trials in federal courts. In matters of pleading, federal courts are not governed by the state practice, but by the Federal Rules of Civil Procedure."); *Ramirez v. Bexar County*, 2011 U.S. Dist. LEXIS 111678, *16 (W.D. Tex. Sept. 29, 2011); *Nieto v. Nationwide Prop. & Cas. Ins. Co.*, 2011 U.S. Dist. LEXIS 171802, *5 n.7 (N.D. Tex. Jan. 10, 2011); see Fed. R. Civ. P. 11(a) ("Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit.").

48.     Amending the answer to plead Mr. Waterhouse's failure to sign the Notes more explicitly would not be futile because the existing pleading is already adequate.  It is in everyone's interest to eliminate any dispute over the adequacy at this stage of the litigation, which has not yet been set for trial.

## C.     THE BANKRUPTCY COURT CLEARLY ERRED BY ENTERING THE ORDER

49.     As noted, HCMFA submits that the District Court can and should review the Motion and Order under Rule 54(b) *de novo* by considering the underlying evidence, arguments, and opposition.  The District Court will try this Adversary Proceeding to a jury, and the District Court should control the scope of what the jury hears and must decide.  If, however, the District Court applies Rule 72(a), then HCMFA submits that the District Court should reconsider the Order and grant the Motion because the Bankruptcy Court's denial was clearly erroneous.

50.     Either way, the Bankruptcy Court's mistake is clear.  Following hours of misdirection from the Debtor, the Bankruptcy Court's ruling did not address whether Mr.

Waterhouse signed the Notes (even though earlier, the Court acknowledged that he did not; APP 2692 (123:18-22)) nor on the factors governing Rule 15.  By focusing on the consequences of the Notes' potential invalidity, the Bankruptcy Court based its decision on the consequences of HCMFA's current Answer rather than the proposed amended answer.  And, it appears to have misapplied the standard on futility by passing upon the merits of the underlying defenses— something that it could and should not have done on a Rule 15 motion.

51.     Had the Bankruptcy Court instead limited its analysis to the discreet issues actually before it, the conclusion necessarily would have differed.  No parade of horribles emanates from the proposed second amended answer.  The Debtor cannot credibly argue that Mr. Waterhouse breached his fiduciary duty by failing to sign a note no one ever presented to him for his signature.  Nor can the Debtor credibly argue that he or Mr. Dondero breached their fiduciary duties by mistakenly signing financial disclosures that, unbeknownst to them, incorrectly disclosed the Notes' existence.  Even if the Debtor could make those claims, there is no reason why it should make them in this adversary proceeding.  Mr. Waterhouse and Mr. Dondero are not a parties, and the litigation trustee under the Debtor's chapter 11 plan has already sued both of them in a separate proceeding, including claims against Mr. Dondero for breach of fiduciary duty.  *See Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust v. James D. Dondero, et al.*, Adv. No. 21-03076 (Bankr. N.D. Tex.).

52.     The Court needed a substantial reason to deny the Motion in light of the mandate in the rules that leave shall be freely given.  But the Debtor did not present one.  Mr. Waterhouse did not sign the Notes, which HCMFA did not discover until October 2021 because the Debtor withheld discoverable evidence.  The Bankruptcy Court clearly erred by refusing to allow HCMFA to amend its answer accordingly.

## IV.   <u>CONCLUSION</u>

53.     The District Court will conduct the jury trial in this case, and the District Court should control what the jury will hear and decide.  In the end, the trial here will be about the truth, the facts, and the equities.  An alleged failure to plead with specificity should not be used to prevent that result, particularly when HCMFA expressly denied execution.  Here, any perceived delay is HCMFA's fault, since the Debtor withheld discoverable evidence.  In the end, while scheduling is important, it should not be used to prejudice an otherwise viable issue or tactically benefit a litigant, especially because this case is not even set for trial.  HCMFA therefore prays that the District Court reverse the Order and grant the Motion.

RESPECTFULLY SUBMITTED this the 27th day of January, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: <u>/s/ Davor Rukavina</u>
    Davor Rukavina
    State Bar No. 24030781
    Julian P. Vasek.
    State Bar No. 24070790
    500 N. Akard Street, Suite 3800
    Dallas, Texas 75202-2790
    Telephone: (214) 855-7500
    Facsimile: (214) 978-4375
    Email:  drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 27, 2022, a true and correct copy of the foregoing document, including any exhibit(s) thereto, was served on the following recipients via the Court's CM/ECF system:

Daniel P Elms    elmsd@gtlaw.com, guerrak@gtlaw.com

Deborah Rose Deitsch-Perez    deborah.deitsch-perez@stinson.com, kinga.mccoy@stinson.com, patricia.tomasky@stinson.com

Michael P Aigen    michael.aigen@stinson.com, stephanie.gratt@stinson.com

Clay M Taylor    clay.taylor@bondsellis.com

Davor Rukavina    drukavina@munsch.com

Melissa S Hayward    mhayward@haywardfirm.com, mholmes@haywardfirm.com

Douglas Draper    ddraper@hellerdraper.com, dhepting@hellerdraper.com, gbrouphy@hellerdraper.com, vgamble@hellerdraper.com

Leslie A Collins    lcollins@hellerdraper.com, dhepting@hellerdraper.com

Zachery Z. Annable    zannable@haywardfirm.com, zannable@franklinhayward.com

Julian Preston Vasek    jvasek@munsch.com

Lauren Kessler Drawhorn    lauren.drawhorn@wickphillips.com, samantha.tandy@wickphillips.com

Bryan Christopher Assink    bryan.assink@bondsellis.com

John A Morris    jmorris@pszjlaw.com, hwinograd@pszjlaw.com, lsc@pszjlaw.com

Jeffrey N Pomerantz    jpomerantz@pszjlaw.com

Gregory V Demo    gdemo@pszjlaw.com, hwinograd@pszjlaw.com, jfried@pszjlaw.com, lsc@pszjlaw.com

Case Admin Sup    txnb_appeals@txnb.uscourts.gov

Stacey G Jernigan    sgj_settings@txnb.uscourts.gov, anna_saucier@txnb.uscourts.gov

/s/ Davor Rukavina
Davor Rukavina