PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § § | Adv. Proc. No. 21-3004-sgj |
| vs. | § § | Case No. 3:21-cv-00881-X |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § § | |
| Defendant. | § § | |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   RELEVANT FACTS ...................................................................................... 3

   A.   The Notes ............................................................................................. 3

      1.   Mr. Waterhouse (and HCMFA) is Told about the HCMFA Notes in Real Time ................................................................................ 4

      2.   HCMFA and Highland disclosed the existence of the HCMFA Notes in their respective audited financial statements ....................... 5

      3.   HCMFA recorded the HCMFA Notes as liabilities on its balance sheet ................... 5

      4.   The HCMFA Notes were Included as Assets of Highland's Estate ........................... 5

      5.   HCMFA Disclosed the Notes as Liabilities to Its Principal Client ........................... 6

   B.   The Notes Action ................................................................................... 7

   C.   The Adversary Proceeding is Referred to the Bankruptcy Court for Pretrial Proceedings ........................................................................................ 8

   D.   HCMFA Files its First Motion for Leave to Amend to Assert its "Mutual Mistake" Defense ............................................................................... 8

   E.   HCMFA Files its Second Motion for Leave to Amend to Assert that Mr. Waterhouse Never Signed the Notes .................................................... 9

   F.   The Bankruptcy Court Denies the Second Motion to Amend .......................... 10

      1.   Rule 15(a) ...................................................................................... 11

      2.   The Proposed Amendment is Unduly Delayed ....................................... 12

      3.   The Proposed Amendment is Futile ................................................... 12

      4.   The Proposed Amendment Would Prejudice Highland ............................. 13

   G.   HCMFA Files the Instant Motion ........................................................... 13

III.  ARGUMENT ............................................................................................. 14

   A.   The Motion is Procedurally Improper ...................................................... 14

DOCS_NY:45189.5 36027/003

1.   The Rule 54 Motion was Improperly Filed in this Court ........................................... 14

2.   Rule 72 Does Not Apply............................................................................................. 15

B.   The Motion is Without Merit.................................................................................................. 17

1.   The Rule 54 Motion is Without Merit ...................................................................... 18

2.   The Rule 72 Objection is Without Merit .................................................................. 21

CONCLUSION....................................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Aguilar v. Wells Fargo Bank, N.A.*,
  No. 3:16-cv-211-K-BN, 2017 WL 1450622 (N.D. Tex. March 3, 2017)................................ 11

*Allergan, Inc. v. Teva Pharms USA, Inc.*,
  No. 2:15-cv-1455-WCB, 2017 WL 119633 (E.D.Tex. Jan. 12, 2017)................................... 22

*Am. Tourmaline Fields v. Int'l Paper Co.*,
  No. Civ.A. 3:96–CV–3363–D, 1998 WL 874825 (N.D.Tex. Dec. 7, 1998)........................... 22

*Caramba, Inc. v. Nationwide Mutual Fire Ins. Co.*,
  No. H-19-1973, 2021 WL 259388 (S.D.Tex. Jan. 26, 2021) ........................................... 14, 19

*City Bank v. Compass Bank*,
  No. EP–11–MC–372–KC, 2011 WL 5442092 (W.D.Tex. Nov. 9, 2011) .............................. 15

*Cook v. Flight Services and Systems, Inc.*,
  NO. 16-15759, 2018 WL 6591919 (E.D. La. Dec. 14, 2018) ........................................... 14, 20

*Cormier v. Turnkey Cleaning Services, L.L.C.*,
  295 F.Supp.3d 717 (E.D. La 2017)........................................................................................ 20

*Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*,
  No. H–15–2227, 2017 WL 1710569 (S.D.Tex. May 3, 2017) ................................................ 23

*DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*,
  4:11-CV-1355, 2017 WL 3484507 (S.D. Tex. Aug. 14, 2017)......................................... 19, 21

*Daniels v. Bowles*,
  CIV.A. 3:03-CV-1555-, 2004 WL 1810658 (N.D. Tex. Aug. 9, 2004) .................................. 20

*eTool Dev., Inc. v. Nat'l Semiconductor Corp.*,
  881 F. Supp. 2d 745 (E.D. Tex. 2012)............................................................................... 18, 19

*Guy v. Crown Equip. Corp.*,
  394 F.3d 320 (5th Cir.2004) .................................................................................................. 19

*Hamilton v. First American Title Ins. Co.*,
  No. 3:07–CV–1442–G, 2010 WL 791421 (N.D.Tex. Mar. 8, 2020) ...................................... 21

*Hightower v. Group 1 Automotive, Inc.*,
  NO. 15-1284, 2016 WL 3430569 (E.D. La. June 22, 2016)............................................... 18, 19

*In re Adelphi Institute, Inc.*,
  112 B.R. 534 (S.D.N.Y. 1990)................................................................................................ 16

*In re American Intern. Refinery, Inc.*,
  676 F.3d 455 (5th Cir. 2012) .................................................................................................. 24

*In re Blackwell ex rel. Estate of I.G. Services, Ltd.*,
  267 B.R. 724 (2001) .......................................................................................................... 15, 17

*In re Guynes Printing Co. of Texas, Inc.*,
   No. 15–cv–149–KC, 2015 WL 3824070 (W.D.Tex. June 19, 2015) ...................................... 15

*In re Kennedy*,
   48 B.R. 621 (Bankr. D. Ariz. 1985) ...................................................................................... 16

*In re Lion Capital Group*,
   46 B.R. 850 (Bankr. S.D.N.Y. 1985) .................................................................................... 16

*In re M & L Business Mach. Co., Inc.*,
   159 B.R. 932 (D. Col. 1993) ................................................................................................. 17

*In re S.N.A. Nut Co.*,
   No. 96 C 181, 1996 WL 411290 (N.D. Ill. July 19, 1996) ................................................ 16, 17

*In re THB Corp.*,
   94 B.R. 797 (Bankr. D. Mass. 1988) .................................................................................... 15

*In re Trinsum Group, Inc.*,
   467 B.R. 734 (Bankr. S.D.N.Y. 2012) .................................................................................. 16

*Jenkins v. Robotec, Inc.*,
   No. 1:09cv150HSO-JMR, 2009 WL 5166252 (S.D.Miss. Dec. 29, 2009) ............................ 22

*Lexington Insurance Company v. ACE American Insurance Co.*,
   192 F.Supp.3d 712 (S.D.Tex. 2016) ..................................................................................... 14

*Martin v. Frail*,
   NO. SA–09–CA–695–H, 2012 WL 12950505 (W.D.Tex. July 26, 2012) .............................. 21

*Matter of Southmark Corp.*,
   88 F.3d 311 (5th Cir. 1996) .................................................................................................. 22

*Namer v. Scottsdale Insurance Company*,
   314 F.R.D. 392 (E.D. La 2016) ............................................................................ 14, 18, 19, 20

*Neaville v. Wells Fargo Bank, N.A.*,
   3:11-CV-97-P, 2013 WL 12124590 (N.D.Tex. June 4, 2013) ............................................... 14

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC*,
   3:16-CV-1217-B, 2017 WL 9934881 (N.D. Tex. Feb. 6, 2017) ............................................ 21

*Sabre, Inc. v. Lyn-Lea Travel Corp.*,
   No. CIV.A. 3:96-CV-2068R, 2003 WL 21339291 (N.D. Tex. June 5, 2003) ......................... 11

*Sunburst Media Mgmt. Inc. v. Devine*,
   No. 3:08–CV–1170–G, 2010 WL 1962499 (N.D.Tex. May 17, 2010) ................................... 25

*Sw. Bell Tel. Co. v. City of El Paso*,
   346 F.3d 541 (5th Cir. 2003) ................................................................................................ 22

*Templet v. Hydro Chem Inc.*,
   367 F.3d 473 (5th Cir. 2004) ................................................................................................ 18

*Thompson v. Wichita Falls Indep. Sch. Dist.*,
   No. 7:06–CV–0191–R ECF, 2008 WL 123891 (N.D.Tex., Jan. 14, 2008) ............................ 23

DOCS_NY:45189.5 36027/003

*T-M Vacuum Products, Inc. v. TAISC, Inc.*,
  CIV.A. H-07-4108, 2008 WL 2785636 (S.D. Tex. July 16, 2008) ......................................... 18

Triton Tech of Tex., LLC v. Nintendo of Am., Inc.,
  No. 2:10–CV–328, 2012 WL 2036411 (E.D.Tex. June 6, 2012) ............................................ 18

*U.S. Axminster, Inc. v. Chamberlain*,
  No. CIV.A. 4:95–332–D–B, 1997 WL 672651 (N.D. Mi. Sept. 26, 1997) ....................... 24, 25

*United States v. Carter*,
  737 Fed. Appx. 687 (5th Cir. 2018) ................................................................................. 24, 25

United States v. Saldivar,
  No. 2:03-CR-182-2, 2014 WL 357313 (S.D. Tex. Jan. 31, 2014) .......................................... 19

*Wade v. Cycle Mart, L.P.*,
  No. A–14–CV–00427–ML, 2015 WL 4404876 (W.D. Tex. July 17, 2015) ........................... 23

*Wimm v. Jack Eckerd Corp.*,
  3 F.3d 137 (5th Cir. 1993) .................................................................................................... 11

## Statutes

28 U.S.C. § 157 ...................................................................................................................... 1, 16

28 U.S.C. § 157(c) ....................................................................................................................... 15

28 U.S.C. § 157(c)(1) ................................................................................................................... 15

28 U.S.C. § 157(d) ....................................................................................................................... 16

28 U.S.C. § 158 ................................................................................................................. 1, 16, 17

28 U.S.C. § 158(a)(3) ................................................................................................................... 16

28 U.S.C. § 636(b)(1)(A) ...................................................................................................... 15, 21

## Other Authorities

TEX. BUS. & COMM. CODE § 3.308(a) ....................................................................................... 24

## Rules

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 11

Fed. R. Civ. P. 54(b) .................................................................................................................... 18

Fed. R. Civ. P. 59(e) .................................................................................................................... 18

Fed. R. Civ. P. 72(a) .............................................................................................................. 15, 21

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S
BRIEF IN SUPPORT OF OBJECTION AND RESPONSE TO
OBJECTION TO ORDER DENYING MOTION TO AMEND ANSWER**

Highland Capital Management, L.P., ("Highland" or "Plaintiff"), hereby files this brief in support of its objection and response (the "Opposition") to the *Objection of Highland Capital Management Fund Advisors, L.P. to Order Denying Motion to Amend Answer* [Docket No. 34] (the "Motion"), filed by Highland Capital Management Fund Advisors, L.P. ("HCMFA").

## I.    PRELIMINARY STATEMENT[1]

1.      The Motion should be denied because it is procedurally improper and without merit. The Bankruptcy Court, in a proper exercise of its discretion, denied HCMFA's Second Motion to Amend on the ground that leave was not warranted under Rule 15.  The Order denying such relief is subject to appellate review under 28 U.S.C. § 158.

2.      Nevertheless, HCMFA improperly seeks this Court's review of the Order under (i) Rule 54(b) and, alternatively, (ii) Rule 72(a).  As more fully set forth below, the Motion constitutes a veiled attempt at forum shopping and evinces a wholesale disregard for the Bankruptcy Court's adjudicative powers over pretrial matters until the reference is withdrawn under 28 U.S.C. § 157. If credited, HCMFA's interpretation of the statute would result in the deferral of all interlocutory orders to the district court, chaos that Section 157 was designed to prevent.  HCMFA's attempted manipulation of the system should be summarily rejected by the Court.

3.      In the unlikely event the Court considers the substance of the Motion, it is without merit under *any* legal standard.  In its suit, Highland seeks to recover under two promissory notes bearing the signatures of Frank Waterhouse, HCMFA's Treasurer and the person responsible for HCMFA's finance and accounting.  HCMFA's initial defense—asserted after several interviews

---

[1] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed thereto below.

1

of Mr. Waterhouse—was that Mr. Waterhouse signed the Notes "by mistake" and "without authority."  In its Second Motion to Amend (filed a month after the close of fact discovery), HCMFA did an about face and sought permission "to amend its answer to expressly **deny** that the notes were signed" by HCMFA.  The Second Motion to Amend was based on the Declaration of Dennis C. Sauter, Jr.—a lawyer for an affiliated entity who has **no** personal knowledge of **any** contemporaneous facts—not Mr. Waterhouse, HCMFA's officer.

4. The Bankruptcy Court properly denied HCMFA's belated request after considering ample evidence that established the following undisputed facts:

- Hours before Highland transferred $7.4 million to HCMFA in May 2019, Mr. Waterhouse was told, **in writing**, that the transfers were being treated as "intercompany loans" evidenced by promissory notes;

- Promptly thereafter, the HCMFA Notes were provided to HCMFA's outside auditors and specifically described in HCMFA's audited financial statements;

- From the moment the HCMFA Notes were prepared, HCMFA carried the HCMFA Notes on its **own** balance sheet as liabilities due and owing to Highland;

- Between October 2019 (when Highland filed for bankruptcy) until January 2021 (the last month before Highland's plan of reorganization was confirmed), Frank Waterhouse (who simultaneously served as Highland's Chief Financial Officer) prepared **more than twenty** Schedules and Monthly Operating Reports that included the HCMFA Notes as assets of Highland's bankruptcy estate and that were filed with the Bankruptcy Court; and

- In October 2020, just weeks before Highland demanded payment, HCMFA's officers informed their principal client (the Retail Board) that the HCMFA Notes were valid and enforceable obligations owing to Highland.

5. In light of these undisputed facts, HCMFA's argument that HCMFA "didn't sign the notes" is absurd on its face.  But there is (much) more.  As the record establishes, on cross-examination during the Hearing on HCMFA's Second Motion to Amend, Mr. Sauter was forced to admit to a lack of candor in that he **failed to disclose** to the Bankruptcy Court that Mr.

Waterhouse (a) expressly **denied** that the HCMFA Notes were prepared by "mistake" or "without authority," and (b) told Mr. Sauter in the spring of 2021 that the HCMFA Notes were prepared **for valid business purposes**.

6.      After assessing Mr. Sauter's credibility, and taking into account HCMFA's own undisputed conduct and that of its Treasurer, Mr. Waterhouse, the Bankruptcy Court properly concluded that the Second Motion to Amend is not warranted because (a) the Proposed Amendment was unreasonably delayed, (b) the Proposed Amendment is futile, and (c) if granted, the Proposed Amendment would prejudice Highland.

7.      In sum, the Motion is procedurally improper.  Even if it were not, HCMFA has failed to meet its burden of proving that the Bankruptcy Court abused its discretion when denying the Second Motion to Amend.  The Motion should be denied in all respects.

## II.      RELEVANT FACTS

### A.      The Notes

8.      As of May 2019, James Dondero directly or indirectly owned and controlled Highland and HCMFA.

9.      On May 2, 2019, Highland transferred $2.4 million to HCMFA and on May 3, 2019, Highland transferred another $5 million to HCMFA (together, the "Transfers").  The Transfers were evidenced by, among other things, promissory notes bearing Mr. Waterhouse's signature.  Ex. 1 (Exhibits 1-2), Appx. 10-15 (together, the "HCMFA Notes" or "Notes").  By their terms, the Notes were due and payable on demand.  *Id.* § 2.

1.      **Mr. Waterhouse (and HCMFA) is Told about the HCMFA Notes in Real Time**

10.      Mr. Waterhouse is an officer of HCMFA, serving as its Treasurer with responsibility for managing HCMFA's accounting and finance functions.[2]

11.      Before completing the Transfers, Mr. Waterhouse, among others, was informed that the Transfers were being treated as lending transactions and "papered" as intercompany loans evidenced by promissory notes.[3]

12.      Specifically, on May 2, 2019, David Klos, Highland's Controller, sent an e-mail to the Corporate Accounting e-mail group entitled "**HCMLP to HCMFA loan**" that said:

> Blair, **Please send $2,400,000 from HCMLP to HCMFA.  This is a new interco loan.  Kristin, can you or Hayley please prep a note for execution**.  I'll have further instructions later today, but please process this payment as soon as possible.

Ex. 54, Appx. 85-88 (emphasis added).

13.      On May 3, 2019, Kristin Hendrix sent an e-mail to the Corporate Accounting e-mail group entitled "**HCMLP Loan to HCMFA**" that said:

> Blair, **Please set up a wire from HCMLP to HCMFA for $5M as a new loan** ($4.4M should be coming in from Jim [Dondero] soon).
>
> Hayley, please add this to your loan tracker.  **I will paper the loan**.

Ex. 56, Appx. 89-90 (emphases added).

14.      Thus, Mr. Waterhouse (and therefore HCMFA) was contemporaneously informed that (a) Highland was making two transfers to HCMFA in the aggregate amount of $7.4

---

[2]  *See* Ex. 35, Appx. 77-78; Ex. 105 at 18:6-15, 18:23-19:6, 21:15-17, 23:5-20, 25:17-26:8, 27:17-28:16, 29:2-10, 30:9-31:6, 34:12-35:19, 38:20-39:5, Appx. 205-210.

[3]  *See* Ex. 54, Appx. 85-88, Ex. 56, Appx. 89-90, Ex. 57, Appx. 91-93.  Mr. Waterhouse was included in an e-mail group called "Corporate Accounting" maintained by Highland.  *See, e.g.*, Ex. 194 at 111:6-112:7, Appx. 428. Highland contends, and HCMFA disputes, that the HCMFA Notes were prepared at Mr. Waterhouse's instructions; the Court need not resolve this dispute on this Motion because there is no dispute that, if nothing else, Mr. Waterhouse was contemporaneously informed that the Transfers were being treated as intercompany loans embodied by the HCMFA Notes.

4

million, (b) the Transfers were being treated as intercompany loans, and (c) the accounting department was going to "paper the loan[s]" by creating promissory notes.

**2.      HCMFA and Highland disclosed the existence of the HCMFA Notes in their respective audited financial statements**

15.      Just weeks later, on June 3, 2019, PricewaterhouseCoopers ("PwC") completed its audit of Highland's and HCMFA's financial statements for the period ending December 31, 2018.  Both entities expressly disclosed the HCMFA Notes as "subsequent events," stating:

> Over the course of 2019, through the report date, HCMFA issued promissory notes to [Highland] in the aggregate amount of $7.4 million.  The notes accrue interest at a rate of 2.39%.

Ex. 34 at 39, Appx. 71; Ex. 45 at 17; *see also* Ex. 94 at 54:9-55:7, Appx. 117.  Neither HCMFA nor Highland ever amended or "corrected" these disclosures nor did the disclosures prompt HCMFA to inquire into the origin of the HCMFA Notes.

**3.      HCMFA recorded the HCMFA Notes as liabilities on its balance sheet**

16.      At all relevant times, HCMFA carried the HCMFA Notes as liabilities on its balance sheet.  *See* Ex. 192 at 58:20-59:3, Appx. 346; s*ee also id*. at 54:6-9, 54:22-55:8, 55:23-56:3, 56:20-58:19, Appx. 345-346.  HCMFA never amended or "corrected" its balance sheet, and the inclusion of the HCMFA Notes on HCMFA's balance sheet never caused HCMFA to inquire into the origin of the HCMFA Notes.

**4.      The HCMFA Notes were Included as Assets of Highland's Estate**

17.      Highland filed for bankruptcy on October 16, 2019 (the "Petition Date"). Mr. Dondero remained in control of Highland from the Petition Date until January 9, 2020.  During that period and at all times thereafter, Highland consistently included the HCMFA Notes as assets of Highland's estate in its *Schedules of Assets and Liabilities* [Bankr. Docket No. 247] (the

"Debtor's Schedules") and Monthly Operating Reports ("MORs") that bore Mr. Waterhouse's electronic signature.  *See, e.g.,* Bankr. Docket No. 405 (October 2019); Bankr. Docket No. 289 (November 2019); Bankr. Docket No. 418 (December 2019).  Neither Mr. Waterhouse nor Highland ever amended or "corrected" the Debtor's Schedules or the MORs, nor did those documents cause HCMFA to inquire into the origin of the Notes.[4]

5.      **HCMFA Disclosed the Notes as Liabilities to Its Principal Client**

18.      In or around October 2020, HCMFA's officers relied on HCMFA's balance sheet to report to third parties that HCMFA owed Highland and its affiliates over $12 million, including the amounts due under the Notes.  HCMFA has contracts to manage certain funds (the "Fund Agreements").  The Fund Agreements are among the most important contracts HCMFA has and are largely the reason for HCMFA's existence.  Ex. 192 at 66:3-67:6, Appx. 348.  The Funds are purportedly managed by a board (the "Retail Board").  Each year, the Retail Board must determine whether to renew the Fund Agreements with HCMFA, a process referred to as a "15(c) Review."  As part of this process, the Retail Board requests information.  Ex. 99 at 129:17-130:3, Appx. 170-171, Ex. 105 at 32:17-33:6, Appx. 208, 168:9-12, Appx. 242, 169:9-170:16, Appx. 242-243.  Mr. Waterhouse, HCMFA's Treasurer, and Dustin Norris, HCMFA's Executive Vice President, participated in the annual 15(c) Review process with the Retail Board.  Ex. 35, Appx. 77-78; Ex. 192 at 67:7-68:19, Appx. 348; Ex. 105 at 168:13-169:8, Appx. 242.

---

[4] Highland's books and records also reflected the existence of the HCMFA Notes.  For example, Highland's accounting group—of which Mr. Waterhouse was the head—had a regular practice of creating, maintaining and updating on a monthly basis "loan summaries" in the ordinary course of business (the "Loan Summaries").  The Loan Summaries identified amounts owed to Highland under affiliate notes and were created by updating underlying schedules for activity and reconciling with Highland's general ledger.  Ex. 199, Appx. 513-514 is an example of a Loan Summary.  The Loan Summaries identify HCMFA by reference to the "GL" number used in the general ledger. *See* Ex. 199, Appx. 513-514, HCMFA ("GL 14531").  The Loan Summaries were used in connection with the PwC audits and to support accounting entries and year-end balances in the ordinary course of Highland's business.  (Ex. 210, Appx. 515-594).  Neither Mr. Waterhouse nor Highland ever amended or "corrected" Highland's general ledger or Loan Summaries, and such books and records never caused HCMFA to inquire into the origin of the HCMFA Notes.

6

19.     In October 2020, as part of its 15(c) Review, the Retail Board asked HCMFA to provide certain information including whether "there any outstanding amounts currently payable or due in the future (e.g., notes) to HCMLP by HCMFA or NexPoint Advisors or any other affiliate that provides services to the Funds?" Ex. 36 at 3, Appx. 82.

20.     HCMFA's officers prepared HCMFA's response to this question.  When Lauren Thedford, an attorney and HCMFA's Secretary, asked Mr. Waterhouse for responsive information, he referred her to "the balance sheet that was provided to the [Retail Board] as part of the" 15(c) Review.  *Id.* at 2, Appx. 81.  *See also* Ex. 35, Appx. 77-78.  Ms. Thedford (a) obtained the relevant information from the Advisors' June 30, 2020 financial statements and (b) drafted a response that she shared with, among others, Mr. Waterhouse, Mr. Norris, and Jason Post (the Advisors' Chief Compliance Officer).  Ex. 36 at 1, Appx. 80.  Relying on HCMFA's June 30, 2020 financial statements, Ms. Thedford sent her draft response to all of HCMFA's officers and others and reported that "$12,286,000 remains outstanding to HCMLP from HCMFA."  *Id.*  This amount included all amounts due under the Notes because HCMFA carried the Notes as liabilities on its balance sheet and the balance sheet was Ms. Thedford's sole source of information.  Ex. 192 at 54:6-9, 54:22-55:8, 55:23-56:3, 56:20-59:3, Appx. 345-346; Ex. 194 at 117:16-122:15, Appx. 430-431; Ex. 195 at 120:23-122:13, Appx. 485-486.  On October 23, 2020, HCMFA included the substance of Ms. Thedford's draft in its final, formal response to the Retail Board.  Ex. 59 at 2, Appx. 96.  HCMFA never amended or corrected its October 2020 report to the Retail Board, and such report never caused HCMFA to inquire into the origin of the Notes.

## B.     The Notes Action

21.     By letter dated December 3, 2020, Highland made demand on HCMFA for payment under the Notes (the "Demand Letter").  Ex. 1 (Exhibit 3), Appx. 16-19.  HCMFA did not comply with Highland's demand, and on January 22, 2021, Highland commenced an adversary

proceeding against HCMFA (the "Adversary Proceeding") by filing a *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* [AP Docket No. 1][5] (the "Original Complaint") to collect on the Notes. Ex. 1, Appx. 1-21.  HCMFA filed its *Original Answer* on March 1, 2021, in which it failed to assert any affirmative defenses. [AP Docket No. 6], Ex. 5, Appx. 22-29.

**C.      The Adversary Proceeding is Referred to the Bankruptcy Court for Pretrial Proceedings**

22.      In April 2021, HCMFA filed a *Motion to Withdraw the Reference* [*see, e.g.,* AP Docket No. 20] (the "Motions to Withdraw"), Ex. 213, Appx. 595-598, seeking to withdraw its respective Adversary Proceeding from the Bankruptcy Court to the District Court.  In July 2021, the Bankruptcy Court issued *Reports and Recommendations* to the District Court, recommending that (i) the District Court (a) refer all pre-trial maters to the Bankruptcy Court and (b) grant the Motions to Withdraw, but only at such time as the Bankruptcy Court certifies to the District Court that the actions are trial-ready, and (ii) to the extent a dispositive motion is brought, the Bankruptcy Court issue a report and recommendation to the District Court to adopt or reject. [*See* AP Docket No. 50] (the "R&R"), Ex. 214, Appx. 599-611.    The District Court subsequently adopted the Bankruptcy Court's R&R [Docket No. 14] (the "Order of Reference").

**D.      HCMFA Files its First Motion for Leave to Amend to Assert its "Mutual Mistake" Defense**

23.      On May 22, 2021, HCMFA moved for leave to amend its *Original Answer* to assert as an affirmative defense that Frank Waterhouse, HCMFA's Treasurer and the person whose signature appears on the Notes, signed the Notes by "mistake" and "without authority."  *See*

---

[5] Refers to the docket numbers maintained in the Adversary Proceeding, case no. 21-3004.

*generally Defendants' Motion for Leave to Amend Answer* [AP Docket No. 32] (the "<u>First Motion to Amend</u>"), Ex. 215, Appx. 612-661.

24.     HCMFA's First Motion to Amend was based on a Declaration sworn to by Dennis Sauter, Jr. ("<u>Mr. Sauter</u>") in which he described an internal investigation that he conducted in April and May 2021 that included multiple interviews with Mr. Waterhouse (the "<u>First Sauter Declaration</u>"). *Id.* at Appx. 623-653.  Despite having interviewed Mr. Waterhouse multiple times, the First Sauter Declaration did not disclose anything of substance that Mr. Waterhouse told Mr. Sauter.  Nevertheless, based on his "investigation," Mr. Sauter concluded that Mr. Waterhouse signed the Notes "by mistake" and "without authority."

25.     The Bankruptcy Court granted HCMFA's First Motion to Amend and on July 6, 2021, HCMFA filed its *Amended Answer*.  [AP Docket No. 48] (the "<u>Amended Answer</u>"), Ex. 216, Appx. 662-671.  In its Amended Answer, HCMFA alleged, among other things, that "Waterhouse ***signed*** the two promissory notes," and that "Waterhouse made a mistake in preparing and ***signing*** the Notes for defendant," and that "Waterhouse prepared and ***signed*** the Notes on his own, without proper knowledge of the underlying facts and without actual authority."  *See* Amended Answer ¶¶ 43-44, Appx. 669 (emphases added).

**E.      HCMFA Files its Second Motion for Leave to Amend to Assert that Mr. Waterhouse Never Signed the Notes**

26.     On November 30, 2021, about a month after the close of discovery, HCMFA filed its *Second Motion for Leave to Amend Answer* [AP Docket No. 82] (the "<u>Second Motion to Amend</u>" and together with the First Motion to Amend, the "<u>Motions</u>"). Ex. 217, Appx. 672-699.  In its Second Motion to Amend, HCMFA requested permission "to amend its answer to expressly ***deny*** that the notes were signed" by Mr. Waterhouse or HCMFA (the "<u>Barred Defense</u>"). Second Motion to Amend ¶ 1, Appx. 676 (emphasis added).

9

27.     Like the First Motion to Amend, the Second Motion to Amend was supported only by a Declaration from Mr. Sauter (the "Second Sauter Declaration"), Ex. 218, Appx. 700-752, which was a conclusory recital of HCMFA's arguments.  Like the First Sauter Declaration, the Second Sauter Declaration failed to disclose *anything* Mr. Waterhouse actually told Mr. Sauter.  Indeed, Mr. Sauter swore that Mr. Waterhouse "did not remember many, if any, of the facts and circumstances concerning the HCMFA Notes . . ."  [AP Docket No. 87 ¶ 23, Def. Appx. at 0007].  That statement was proven to be false.

## F.     The Bankruptcy Court Denies the Second Motion to Amend

28.     On January 10, 2022, the Bankruptcy Court held an evidentiary hearing on the Second Motion to Amend (the "Hearing").  *See* January 10, 2022 Hearing Transcript (the "Transcript"), Ex. 219, Appx. 753-897.

29.     During the Hearing, Mr. Sauter was cross-examined on the substance of his investigations and the veracity of the Declarations he submitted to the Bankruptcy Court in support of HCMFA's Motions for leave to amend.  Mr. Sauter was forced to admit that he never disclosed the following critical facts to the Bankruptcy Court:

- Mr. Sauter told Mr. Waterhouse that Mr. Waterhouse made a "mistake" in preparing the HCMFA Notes even though Mr. Sauter had *no* personal knowledge of *any* relevant facts (Transcript at 60:6-61:9, Appx. 813-814);

- During their discussions, Mr. Waterhouse "obviously disagreed" with Mr. Sauter's conclusion that the HCMFA Notes were prepared and signed by "mistake" and "without authority" (*Id*. at 61:10-62:1, Appx. 814-815);

- Mr. Waterhouse – HCMFA's Treasurer and the person whose signatures appear on the HCMFA Notes – told Mr. Sauter *why* the HCMFA Notes were prepared (*Id*. at 62:8-24, Appx. 815); and

- Mr. Waterhouse specifically told Mr. Sauter that the HCMFA Notes were prepared for accounting purposes and for HCMFA's audit (*Id*. at 62:25-65:10, Appx. 815-818).

30.    After (i) considering the undisputed facts concerning HCMFA's (and Highland's) treatment of the Notes, (ii) assessing Mr. Sauter's credibility, (iii) taking into account Mr. Waterhouse's previously-undisclosed views concerning the purpose of the Notes, and (iv) factoring in the prejudice to Highland that would have resulted from granting the Second Motion to Amend, the Bankruptcy Court denied the Second Motion to Amend on the ground that the Proposed Amendment was not warranted. *See* Transcript at 136-143, Appx. 889-896.   The Bankruptcy Court's findings are summarized below.

1.    **Rule 15(a)**

31.    The Bankruptcy Court analyzed the Second Motion to Amend under Rule 15(a) of the Federal Rules of Civil Procedure.  Transcript at 139:13-25, Appx. 892.  Although Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires," such leave "is by no means automatic."  *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Aguilar v. Wells Fargo Bank, N.A.*, No. 3:16-cv-211-K-BN, 2017 WL 1450622, at *7 (N.D. Tex. March 3, 2017) ([Rule 15(a)(2)'s] command that '[t]he court should freely give leave when justice so requires' is not without limitation.")   As the Bankruptcy Court discussed, "[t]here is a substantial reason to deny leave to amend if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile." *Sabre, Inc. v. Lyn-Lea Travel Corp.*, No. CIV.A. 3:96-CV-2068R, 2003 WL 21339291, at *4 (N.D. Tex. June 5, 2003).  "Whether leave to amend should be granted is entrusted to the sound discretion of the [trial] court."  *Wimm*, 3 F.3d at 139.  The Bankruptcy Court found that these factors weighed against granting the Second Motion to Amend.

11

## 2.  The Proposed Amendment is Unduly Delayed

32.     The Bankruptcy Court's denial of the Second Motion to Amend was based, in part, on its finding that the Proposed Amendment was unreasonably delayed in light of the "timeline" of the case. *See* Transcript at 140-142, Appx. 893-895.  The Bankruptcy Court explained (i) the HCMFA Notes were executed May 2 and May 3, 2019; (ii) Highland send its Demand Letter by December 11, 2020; and (iii) the Adversary Proceeding was commenced in January 22, 2021. Transcript at 140:1-11, Appx. 893.  Therefore, the Bankruptcy Court found, HCMFA was "on notice day one" regarding their "defense of non-signature" *Id.*  The Bankruptcy Court found that HCMFA continued to be on notice regarding their new defense from February to May 2021.  In February and March 2021, "HCMFA was free to talk to Mr. Waterhouse as much as they wanted." *Id.* at 140:12-21.  That HCMFA asserted its Mutual Mistake defense in May 2021 also undermined the timeliness of the Proposed Amendment.  *See id.* at 140:22-141:4, Appx. 893-894.  The Bankruptcy Court found no credible basis for HCMFA to argue for the first time, ten months after the commencement of the case began, that Mr. Waterhouse "didn't actually sign [the Notes]." *Id.* at 141:5-20, Appx. 894.  Under the "totality of what has been submitted," the Bankruptcy Court found that the Proposed Amendment, or HCMFA's "evolving theory of the case," was unduly delayed under Rule 15. *Id.*

## 3.  The Proposed Amendment is Futile

33.     The Bankruptcy Court found that the Proposed Amendment was futile because Mr. Sauter has no "personal knowledge that was contemporaneous with the actions involved," noting he is the general counsel for NexPoint, "another entity – not HCMFA, not [Highland]." Transcript at 143:3-12, Appx. 896.  The Bankruptcy Court explained that Mr. Sauter's lack of personal knowledge regarding the Notes was a "significant factor" in assessing the futility of the Proposed Amendment, concluding, "the witness just seems like someone who could not make a compelling

12

case regarding the [Proposed Amendment]." *Id.*   On January 13, 2022, the Bankruptcy Court

issued its *Order Denying Defendant's Second Motion for Leave to Amend Answer* [AP Docket No.

123] (the "Order"), Ex. 220, Appx. 898-901.

### 4.      The Proposed Amendment Would Prejudice Highland

34.      The Bankruptcy Court found that Highland would be prejudiced by the

Proposed Amendment because the case was commenced "over a year ago," and motions for

summary judgment are pending. Transcript at 141:21-24, Appx. 894.   The Bankruptcy Court

explained that if the "lawsuit is just going to keep morphing" with new theories of the defense, it

could necessitate Highland asserting additional claims against Mr. Waterhouse and others. *Id.* at

142:4-25, Appx. 895.   The Bankruptcy Court found "it's just way too late to make an argument

that should have been apparent many months ago if in fact it's a legitimate argument." *Id.* at

142:25-143:2, Appx. 895-896.

### G.      HCMFA Files the Instant Motion

35.      On January 27, 2022, HCMFA filed the Motion, seeking this Court's review of the

Order pursuant to (i) Federal Rule of Civil Procedure 54(b) (the "Rule 54 Motion"), and

alternatively, (ii) Federal Rule of Civil Procedure 72(a) (the "Rule 72 Objection").  *See* Motion ¶¶

36-37.[6]   HCMFA maintains, without any authority, that the "District Court may reconsider,

modify, or reverse the Order and grant the Motion *de novo* as it could do with respect to any of its

own pretrial orders under Rule 54(b)," and that alternatively, review under Rule 72 is appropriate

because "the Bankruptcy Court appears to understand that it is acting in the capacity of a magistrate

judge."  *Id.*   HCMFA rehashes the same conclusory arguments previously raised and rejected by

the Bankruptcy Court, namely that "Mr. Waterhouse did not sign the Notes, which HCMFA did

---

[6] Paragraph cites refer to the *Brief in Support of Objection of Highland Capital Management Fund Advisors, L.P. to Order Denying Motion to Amend Answer* [Docket No. 35].

not discover until October 2021." *Id.* ¶ 52.  HCMFA maintains that the Bankruptcy Court (i) "did

not address whether Mr. Waterhouse signed the Notes" or on the "factors governing Rule 15," (ii)

improperly focused on the "consequences of the Notes' potential invalidity," and (iii) "misapplied

the standard on futility by passing upon the merits of the [Proposed Amendment]." *Id.* ¶ 50.

### III.      ARGUMENT

**A.      The Motion is Procedurally Improper**

**1.      The Rule 54 Motion was Improperly Filed in this Court**

36.      The Rule 54 Motion is procedurally improper because it should have been filed in

the Bankruptcy Court.  Rule 54(b) motions for reconsideration must be filed in the court which

rendered the order subject to reconsideration.  *See Lexington Insurance Company v. ACE American

Insurance Co.*, 192 F.Supp.3d 712, 714 (S.D. Tex. 2016) (denying Rule 54(b) motion for

reconsideration of its own interlocutory order, noting that Rule 54 allows court to "vacate their

own findings"); *Neaville v. Wells Fargo Bank, N.A.*, 3:11-CV-97-P, 2013 WL 12124590, at *2

(N.D. Tex. June 4, 2013) (reviewing Rule 54(b) motion for reconsideration of "its previous

Order"); *Caramba, Inc. v. Nationwide Mutual Fire Ins. Co.*, No. H-19-1973, 2021 WL 259388, at

*2-3 (S.D. Tex. Jan. 26, 2021) (reviewing Rule 54(b) motion for reconsideration, which asks the

Court to "revise its prior ruling," noting that it is within the power of the "rendering district court

to afford such relief"); *Cook v. Flight Services and Systems, Inc.*, NO. 16-15759, 2018 WL

6591919, at *1 (E.D. La. Dec. 14, 2018) (reviewing Rule 54(b) motion for consideration of "its

rulings on two earlier motions"); *Namer v. Scottsdale Insurance Company*, 314 F.R.D. 392, 393

(E.D. La 2016) (reviewing Rule 54(b) motion for reconsideration, "asking that this Court vacate

its order").   To the extent HCMFA seeks reconsideration of the Bankruptcy Court's Order under

Rule 54(b), it should have filed its Rule 54 Motion in the Bankruptcy Court.  The Rule 54 Motion

should be denied on procedural grounds.

14

### 2.    <u>Rule 72 Does Not Apply</u>

37.    HCMFA's Rule 72 Motion is procedurally improper because Rule 72(a) does not apply here.  Rule 72(a) provides that a party "may serve and file objections to" a "magistrate judge's" nondispositive matters under 28 U.S.C. § 636(b)(1)(A).  Fed. R. Civ. P. 72(a).  HCMFA's unsupported argument for applying rules governing the Federal Magistrates Act is without merit.

38.    In issuing the Order, the Bankruptcy Court was not acting as a magistrate judge. Section 157 authorizes bankruptcy courts to adjudicate pretrial matters, and preserves only "final" orders for entry by the district judge.  Thus, pursuant to the Order of Reference, the Bankruptcy Court retains jurisdiction to enter pretrial interlocutory orders in this Adversary Proceeding until the case is trial-ready.  *See In re Blackwell ex rel. Estate of I.G. Services, Ltd.*, 267 B.R. 724, 731 (2001) (noting that under Section 157(d), "the district court has the option [] of withdrawing the entire matter, or withdrawing only the trial portion, leaving pretrial and discovery matters to be handled by the bankruptcy judge."); *City Bank v. Compass Bank*, No. EP–11–MC–372–KC, 2011 WL 5442092, at *4 (W.D. Tex. Nov. 9, 2011) ("[I]f a party has invoked her Seventh Amendment jury trial right … immediate withdrawal of not required – the district court has discretion to allow the bankruptcy court to manage pretrial proceedings."); *In re Guynes Printing Co. of Texas, Inc.*, No. 15–cv–149–KC, 2015 WL 3824070, at *3 (W.D. Tex. June 19, 2015) (finding that even if defendants are entitled to a jury trial, "a seventh Amendment jury trial right does not mean that the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court," and "efficiently considerations militate in favor of maintain the reference in bankruptcy court until such a time as the Case must proceed to trial."); *In re THB Corp.*, 94 B.R. 797, 803 (Bankr. D. Mass. 1988) ("A bankruptcy judge may adjudicate interlocutory matters under § 157(c)(1); the statute preserves only "final" orders for entry by the district judge, and its procedure would be unworkable if the district judge had to adjudicate interlocutory matters."); *In*

*re Kennedy*, 48 B.R. 621, 622 (Bankr. D. Ariz. 1985) (noting that under 28 U.S.C. § 157(c), only "final" orders shall to be submitted to the district court, while "bankruptcy interlocutory orders in noncore proceedings need not be submitted to District Court," noting that a "contrary interpretation would require wholesale referral to the District Court of every order concerning discovery, continuances or every other interlocutory order of substantive or procedural import"); *In re Lion Capital Group*, 46 B.R. 850, 854 (Bankr. S.D.N.Y. 1985) ("Congress enabled the district courts to withdraw the reference under § 157(d)," and "sought to involve the district courts only with respect to final orders in referred proceedings and that the bankruptcy courts are to issue interlocutory orders in related cases referred to them," noting that a contrary interpretation "would require wholesale deferral of all interlocutory matters, such as orders regulating discovery and the like, to the district courts thereby swamping district court calendars"); *In re Adelphi Institute, Inc.*, 112 B.R. 534, 539 (S.D.N.Y. 1990) (noting that the Bankruptcy Court's role in rendering reports and recommendations to the District Court on dipositive motions pursuant to 28 U.S.C. 157(c)(1) does not prevent the Bankruptcy Court from adjudicating pre-trial interlocutory matters).

39.     Such interlocutory orders are subject to ordinary appellate review under 28 U.S.C. § 158. *See In re Trinsum Group, Inc.*, 467 B.R. 734, 740 n. 8 (Bankr. S.D.N.Y. 2012) (while in a "noncore" matter under 28 U.S.C. § 157, "the bankruptcy court must file proposed findings of fact and conclusions of law" on a final order or judgment, "a bankruptcy judge may enter interlocutory orders in all cases; and appellate review of interlocutory orders is discretionary by the district court under 28 U.S.C. § 158(a)(3) and Rule 8003."); *In re S.N.A. Nut Co.*, No. 96 C 181, 1996 WL 411290, at *3 (N.D. Ill. July 19, 1996) (until case is "ripe for withdraw" for jury trial, "the bankruptcy court may properly resolve interlocutory pretrial disputes" subject to appellate review under 28 U.S.C. § 158, noting that "[u]nless this court withdraws its reference to the bankruptcy

16

court, it does not sit in [the district court's] original jurisdiction"); *In re M & L Business Mach. Co., Inc.*, 159 B.R. 932, 935 (D. Col. 1993) (case was referred to the bankruptcy court to rule on "all pretrial issues in this and related adversary proceedings," and that "in the meantime, the bankruptcy court retains jurisdiction over pre-trial matters," and that "any disagreement over its rulings must be treated as an appeal subject to [28 U.S.C. § 158]").

40.     In issuing the Order, the Bankruptcy Court was acting within its jurisdictional powers to adjudicate pretrial proceedings, including issuing interlocutory orders, under Section 157.  The Order is subject to appellate review under 28 U.S.C. 158(a), and Rule 72(a) is inapplicable.  *See S.N.A. Nut*, 1996 WL 411290, at *3 (finding that party's "unsupported argument for applying" Rule 72(a) "conclusively lacks merit," noting that "the Federal Magistrates Act governs proceedings before magistrate judges; the Bankruptcy Code governs bankruptcy proceedings.  The Bankruptcy Code permits interlocutory orders to be reviewed only with leave of the district court sitting in its appellate jurisdiction."); *M & L Business*, 159 B.R. at 934 ("The parties appear to be confused as to the proper way to seek review of the bankruptcy court's rulings in those adversary proceedings which I remanded to the bankruptcy court for pretrial purposes," explaining "while I could have referred this proceeding to a magistrate judge for pre-trial pursues … I did not.  Instead I referred it to the bankruptcy court.  Therefore, Rule 72 does not apply."); *Blackwell*, 267 B.R. at 731 n. 11 (distinguishing between the district court withdrawing pretrial matters to the bankruptcy court versus withdrawing the "entire proceeding," and then re-assigning pretrial matters to a "magistrate judge").

41.     The Rule 72 Motion is improper and should be denied on procedural grounds alone.

**B.     The Motion is Without Merit**

42.     In the unlikely event the Court overrules Highland's procedural objections to the Motion, the Rule 54 Motion and the Rule 72 Motion are both meritless.  Highland addresses each

in turn.

1.     **The Rule 54 Motion is Without Merit**

43.     Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  "[S]ome courts in the Fifth Circuit have analyzed motions to reconsider interlocutory orders under Rule 54(b)." *Hightower v. Group 1 Automotive, Inc.*, NO. 15-1284, 2016 WL 3430569, at *1 (E.D. La. June 22, 2016).  Reconsideration under Rule 54(b) is "an extraordinary remedy that should be used sparingly" and the motion must "clearly establish" that reconsideration is warranted.  *Id*. (citing *Templet v. Hydro Chem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

44.     Motions for reconsideration under Rule 54(b) are considered under the same standards governing Rule 59(e), which governs motions "to alter or amend a judgment." *See* Fed. R. Civ. P. 59(e); *Triton Tech of Tex., LLC v. Nintendo of Am., Inc.,* No. 2:10–CV–328, 2012 WL 2036411, at *1 (E.D. Tex. June 6, 2012) ("It is this Court's practice to consider motions to reconsider interlocutory orders under the standard of Federal Rule of Civil Procedure 59(e)."); *T-M Vacuum Products, Inc. v. TAISC, Inc.*, CIV.A. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008) (same); *Namer v. Scottsdale Insurance Company*, 314 F.R.D. 392, 393 (E.D. La 2016) (same); *eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, 881 F. Supp. 2d 745, 748 (E.D. Tex. 2012) (same).

45.     To justify reconsideration under Rule 54(b), the movant must show at least one of the following: "1) an intervening change in controlling law; 2) new evidence not previously available; 3) the need to correct a clear or manifest error of law or fact or to prevent manifest injustice." *United States v. Saldivar*, No. 2:03-CR-182-2, 2014 WL 357313, at *1 (S.D. Tex. Jan.

18

31, 2014).  Reconsideration is warranted only when the moving party can show the rendering court's "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Namer*, 314 F.R.D. at 395; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir.2004) ("manifest error" is "one that is plain and indisputable, and that amounts to a complete disregard of the controlling law.").

46.     "Motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party."  *Hightower*, 2016 WL 3430569, at *3; *see also DAC Surgical Partners P.A. v. United Healthcare Services, Inc.*, 4:11-CV-1355, 2017 WL 3484507, at *2 (S.D. Tex. Aug. 14, 2017) (Rule 54(b) motions may not be used to "rehash the same arguments  or, without justification, raise new arguments for the first time."); *eTool*, 881 F. Supp. at 748 ("Like a motion under Rule 59(e), a motion to reconsider may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised before the entry of the judgment or order," noting that "district court opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.").  "Instead, they serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Hightower*, 2016 WL 3430569, at *2; *see also Caramba, Inc. v. Nationwide Mutual Fire Ins. Co.*, No. H-19-1973, 2021 WL 259388, at *3 (S.D. Tex. Jan. 26, 2021) ("This Court must exercise its broad discretion under Rule 54(b) sparingly to prevent the unnecessary reexamination of interlocutory orders with the resulting burdens, including expense and delay.").

47.     HCMFA fails to demonstrate that the extraordinary remedy of reconsideration of the Order is warranted.  It does not (i) identify any newly discovered evidence; (ii) point to an intervening change in the controlling law; or (iii) demonstrate that the Bankruptcy Court made a

19

"manifest error of law or fact" and that reconsideration is necessary to prevent a "manifest injustice."

48.     Instead, the Motion is a mere rehashing of the same arguments raised in the Bankruptcy Court.  *Compare* Second Motion to Amend (Appx. 672-699) *with* Motion ¶¶ 39-53. Such arguments are improper on a motion for reconsideration, and demonstrate, at best, HCMFA's disagreement with the Bankruptcy Court's findings.  This is insufficient to show "manifest error" warranting the exceptional remedy of reconsideration.  *See Namer*, 314 F.R.D. at 395 (denying Rule 54(b) motion where, "[f]ar from demonstrating such manifest error, [movant's] motion simply advances arguments he could and should have raised previously," where "this alone is a sufficient basis for refusing [movant's] requested relief," noting that "[w]hile [a party] may disagree with the Court's conclusion, [a] 'manifest error' is not demonstrated by the disappointment of the losing party"); *Daniels v. Bowles*, CIV.A. 3:03-CV-1555-, 2004 WL 1810658, at *2 (N.D. Tex. Aug. 9, 2004) (denying Rule 54(b) motion for reconsideration where it "sets forth no newly discovered evidence, alleges no intervening change in the law, and does not claim clear error or manifest injustice" but only "attempts to distinguish the cases cited by this Court in a second attempt to argue the same points he has alleged in previous pleadings"); *Cook*, 2018 WL 6591919, at *3 (denying Rule 54(b) motion where "the Court finds very few arguments that were not raised in [movant's] earlier" papers, and where "the memorandum in support of their motion to reconsider is an almost verbatim re-litigation of their earlier arguments."); *Cormier v. Turnkey Cleaning Services, L.L.C.*, 295 F.Supp.3d 717, 725 (E.D. La 2017) (denying Rule 54(b) motion where movant, "without providing anything which was not available prior to this Court's [prior] Order, [] merely reasserts its prior arguments … arguments which were previously considered and rejected by this Court.   Although [movant] disagrees with this Court's

determination … such disagreement does not present a clear error of law or fact, nor manifest injustice. [Movant's] request for an additional chance to sway the Court is simply not appropriate."); *DAC Surgical*, 2017 WL 3484507, at *2 (denying Rule 54(b) motion where "several of [movant's] arguments have been raised previously and are not appropriately raised in the [motion]").

49.     Accordingly, the Rule 54 Motion is without merit and should be denied.

**2.     <u>The Rule 72 Objection is Without Merit</u>**

50.     The Rule 72 Objection is without merit.  HCMFA fails to carry its burden of showing the Bankruptcy Court abused its broad discretion in denying the Second Motion to Amend.  Title 28 U.S.C. § 636(b)(1)(A) allows a district court to reconsider a magistrate judge's pretrial order under Fed. R. Civ. P. 72(a) only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'"  *Hamilton v. First American Title Ins. Co.*, No. 3:07–CV–1442–G, 2010 WL 791421, at *2 (N.D. Tex. Mar. 8, 2020) (quoting Fed. R. Civ. P. 72(a)).  An "abuse of discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to the fact findings that are not clearly erroneous."  *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, 3:16-CV-1217-B, 2017 WL 9934881, at *1 (N.D. Tex. Feb. 6, 2017) (internal quotations omitted).  "A magistrate judge's discretionary decisions will be reversed only for an abuse of discretion-*i.e.,* when the district court 'has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'"  *Hamilton* 2010 WL 791421, at *3; *see also Martin v. Frail*, NO. SA–09–CA–695–H, 2012 WL 12950505, at *2 (W.D. Tex. July 26, 2012) (Rule 72 "affords a [] judge broad discretion in the resolution of non-dispositive pretrial matters.").  A party must show "not that the magistrate judge could have exercised [their] discretion and ruled in [party's] favor, but rather that [party] is entitled to a ruling in her favor as a matter of law."

21

*Jenkins v. Robotec, Inc.*, No. 1:09cv150HSO-JMR, 2009 WL 5166252, at *1 (S.D. Miss. Dec. 29, 2009).  HCMFA fails to carry its heavy burden of showing that the Bankruptcy Court's findings were "clearly erroneous" or "contrary to law."

51.     In determining whether the Proposed Amendment was warranted, the Bankruptcy Court expressly applied the factors under Rule 15. *See* Transcript at 139-143, Appx. 892-896. HCMFA's objection that the Bankruptcy Court erred in failing to address the Rule 15 factors, Motion ¶ 50, is belied by the record and should be overruled.    The Court's application of that standard supports denial of the Proposed Amendment.  The Bankruptcy Court properly found that the Proposed Amendment was unduly delayed since HCMFA was on notice since "day one" regarding the defense.  As the Bankruptcy Court explained, HCMFA knew of the facts upon which the Proposed Amendment is based given the litany of events between May 2019 and July 2021. *See* Transcript 140:1-141:20.  HCMFA failed to offer any credible explanation for its delay.  This is precisely type of motion courts reject as "unduly delayed." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 547 (5th Cir. 2003) (affirming district court's denial of motion for leave to amend pleading where movant "was aware of the [facts] that form the basis of its proposed amendment months in advance," and "does not offer a satisfactory explanation for its delay in seeking leave to amend."); *Matter of Southmark Corp.*, 88 F.3d 311, 316 (5th Cir. 1996) (affirming denial of motion to amend where party sought to add amendment that it had knowledge of for almost a year, noting that "liberality in pleading does not bestow on a litigant the privilege of neglecting her case"); *Am. Tourmaline Fields v. Int'l Paper Co.*, No. Civ.A. 3:96–CV–3363–D, 1998 WL 874825, at *2 (N.D. Tex. Dec. 7, 1998) (denying leave to amend where movant "was clearly aware" of the facts underlying its proposed amendments for nearly one year); *Allergan, Inc. v. Teva Pharms USA, Inc.*, No. 2:15-cv-1455-WCB, 2017 WL 119633, at *5 (E.D. Tex. Jan. 12, 2017) (denying leave to

22

amend answer where the evidence shows that movant "was aware of the facts underlying its motion for at least four months" given "what [movant] knew or should have known," noting that the "materials in [movant's] possession before that time should have prompted it to explore its theories" underlying the proposed amendment long before it did); *Cypress Engine Accessories, LLC v. HDMS Ltd. Co.,* No. H–15–2227, 2017 WL 1710569, at \*8 (S.D. Tex. May 3, 2017) (finding motion to assert a new defense was unduly delayed where "the record undermines [movant's] explanation" that "it did not learn the relevant information" until "after it took depositions at the end of the discovery period," where "the record shows that [movant] knew at least some of this information before [the deposition]" and noting "the deposition cannot be the reason for the belated amendment.")

52.     The Bankruptcy Court correctly found the Proposed Amendment was futile since Mr. Sauter, the only declarant supporting the Proposed Amendment, had no "personal knowledge" regarding the core facts underlying the Proposed Amendment, i.e., the origins of the Notes. Transcript at 143:3-12, Appx. 896.   There is otherwise an absence of evidence to support the defense that Mr. Waterhouse did not execute and authorize the HCMFA Notes.   Validity of a signature on an instrument is "presumed to be authentic."   TEX. BUS. & COMM. CODE § 3.308(a). "[W]hen a fact is 'presumed,' the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence." *Id.* § 1.206; *see also United States v. Carter*, 737 Fed. Appx. 687, 690 (5th Cir. 2018).

53.     HCMFA cannot meet its burden to produce evidence sufficient for a jury to find that Mr. Waterhouse did not sign the HCMFA Notes, particularly in light of (i) Mr. Waterhouse's previously-undisclosed admissions to Mr. Sauter, (ii) the fact that Mr. Waterhouse never denied under oath that he executed the Notes, and (iii) the overwhelming evidence demonstrating the

23

validity of the Notes.  The only "evidence" supporting HCMFA's Proposed Amendment consists of (i) the Second Sauter Declaration that is not based on any personal knowledge regarding the origin of the HCMFA Notes; (ii) Mr. Waterhouse's speculative testimony that he does not "recall" signing the Notes, and (iii) Ms. Hendrix's testimony that she does not have "specific memory" of her conversation with Mr. Waterhouse regarding the Notes.  In light of the "signature-validity presumption," this is not the type of probative evidence sufficient to convince a reasonable jury that Mr. Waterhouse did not sign and authorize the HCMFA Notes.  *See Sunburst Media Mgmt. Inc. v. Devine*, No. 3:08–CV–1170–G, 2010 WL 1962499, at *4 (N.D. Tex. May 17, 2010) (party has not "denied under oath that he executed the [] note where he stated he does "not believe" was executed, noting "[d]isclaiming recall of an event, or professing disbelief of it, is not equivalent to affirmatively denying that the event took place."); *Carter*, 737 Fed. Appx. at 690 (party failed to meet burden of "introducing competent evidence of invalidity" of signature where denial of signature consisted of "self-serving" and "vague and conclusory allegations.").  HCMFA's assertion that the Bankruptcy Court "misapplied" the standard on futility by "passing upon" the merits of the Proposed Amendment, Motion ¶ 50, is thus without merit and should be overruled.

54.     The Bankruptcy Court also properly found that the Proposed Amendment would prejudice Highland on the grounds that discovery closed and summary judgment is pending.  *See Thompson v. Wichita Falls Indep. Sch. Dist.*, No. 7:06–CV–0191–R ECF, 2008 WL 123891, at *4 (N.D. Tex., Jan. 14, 2008) ("Because Defendant could have raised the proposed amendment at an earlier time and since discovery was completed over eight months ago, which precludes Plaintiff from exploring during the discovery period the affirmative defense that Defendant now seeks to add, this Court determines that the motion to amend is denied."); *Wade v. Cycle Mart, L.P.*, No. A–14–CV–00427–ML, 2015 WL 4404876, at *4 (W.D. Tex. July 17, 2015) ("Discovery has

closed, and dispositive motions have been filed and are ripe for review," noting "[u]nder these circumstances, a continuance would not only need to accommodate further discovery into the new affirmative defense, but would also need to accommodate a second round of dispositive motions"). The Bankruptcy Court acted well within its discretion in denying the Proposed Amendment based, in part, on its finding that the Proposed Amendment would "morph" the case at this stage. Transcript at 142:17-25; *see In re American Intern. Refinery, Inc.*, 676 F.3d 455, 467 (5th Cir. 2012) (affirming denial of leave to amend where amendments "would have dramatically altered the subject matter of the suit at a late juncture"); *U.S. Axminster, Inc. v. Chamberlain*, No. CIV.A. 4:95–332–D–B, 1997 WL 672651, at *3 (N.D. Miss. Sept. 26, 1997) (overruling rule 72 objections to order denying leave to amend based on "the significant new preparation the amendments would require in the case at bar," noting "if the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.")  Therefore, HCMFA's contention that the Bankruptcy Court erred by "focusing on the consequences of the Notes' potential invalidity," Motion ¶ 50, is plainly insufficient to show any abuse of discretion.

55.    HCMFA fails to show that the Bankruptcy Court's rulings were "clearly erroneous" or "contrary to law." *See Axminster*, 1997 WL 672651, at *3 (overruling Rule 72 objections to denial of leave to amend where "[u]pon careful consideration of the record in this cause, the submissions of the parties, and the order of the [] Judge, this court cannot say that any portion of [Judge's] order, is either clearly erroneous or contrary to law.")  Accordingly, the Rule 72 Objection should be overruled.

## **CONCLUSION**

Highland respectfully requests that the Court (i) deny the Motion and (ii) grant such other and further relief as the Court deems just and proper.

25

Dated:  February 17, 2022.        **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
E-mail:    MHayward@HaywardFirm.com
           ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*