PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § § | |
| Plaintiff, | § | |
| vs. | § § | Adv. Proc. No. 21-03082-sgj |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., | § § § | Case No. 3:21-cv-00881-X |
| Defendant. | § § § | |

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ............................................................................... 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................... 5

        A.      HCMFA Does Not Dispute Bankruptcy Court's Findings Concerning the
                Procedural History of this Action ................................................................ 5

        B.      HCMFA Does Not Dispute that Highland Has Established Its Prima Facie
                Case in Support of Summary Judgment .................................................... 5

        C.      HCMFA Does Not Dispute the Pre-Petition Facts Corroborating
                Highland's Prima Facie Case and Contradicting the Existence of the
                Alleged Oral Agreements ........................................................................... 6

        D.      HCMFA Does Not Dispute the Post-Petition Facts Corroborating
                Highland's Prima Facie Case and Contradicting the Existence of the
                Alleged Oral Agreements ........................................................................... 7

        E.      HCMFA Fails to Rebut Highland's Prima Facie Case ............................. 10

                1.      The Alleged Oral Agreement Defense ........................................... 10

                2.      The Evidence Concerning the Alleged Oral Agreement Defense
                        Renders It Absurd on Its Face ..................................................... 11

III.    ARGUMENT ..................................................................................................... 12

        A.      Legal Standard ......................................................................................... 12

        B.      The Bankruptcy Court Correctly Found that No Reasonable Trier of Fact
                Could Find the Alleged Oral Agreement Exists and that HCMFA Failed to
                Rebut Highland's Prima Facie Case for Summary Judgment .............. 14

                1.      The Bankruptcy Court Correctly Found that the Dondero
                        Declarations Are Insufficient to Create a Genuine Dispute of
                        Material Fact Regarding the Non-Existence of the Alleged Oral
                        Agreements ................................................................................. 14

                        i.      The Bankruptcy Court Correctly Found the Dondero
                                Declarations to Be Self-Contradictory and Internally
                                Inconsistent ...................................................................... 14

                        ii.     The Bankruptcy Court Correctly Found that Mr. Dondero's
                                Declaration Contradicts His Prior Sworn Testimony
                                Regarding the Alleged Oral Agreements ........................... 16

                        iii.    The Bankruptcy Court Correctly Found that Mr. Dondero's
                                Declaration Contradicts HCMFA's Answer ........................ 16

iv.     The Bankruptcy Court Correctly Found the Donderos' Declarations to Be Unsubstantiated, Conclusory, and Self-Serving ......................................................................... 18

v.     The Bankruptcy Court Correctly Found that No Reasonable Jury Could Find that the Alleged Oral Agreements Exist Based on the Donderos' Self-Serving, Conclusory, and Unsubstantiated Statements ........................................... 19

vi.     HCMFA's Contention that the Bankruptcy Court Improperly Weighed the Credibility of the Evidence Is Without Merit and Should Be Overruled ..................................... 22

2.     HCMFA's Remaining Objections Are Insufficient to Create a Genuine Dispute of Fact Regarding the Non-Existence of the Alleged Oral Agreement ............................................................... 24

i.     HCMFA's Contention that Mr. Dondero's Silence upon Sale of MGM Is Not "Probative" of Whether the Alleged Oral Agreement Exists Fails to Create a Genuine Dispute of Material Fact Supporting the Alleged Oral Agreement Defense ......................................................................... 24

ii.     The Bankruptcy Court Correctly Found that Highland Does Not Have a History of Loan Forgiveness ..................................... 25

iii.     HCMFA's Contention that There Is Evidence of Consideration Should Be Overruled ............................................. 26

iv.     Defendants' Contention that Nancy Dondero Was "Competent" to Enter into the Alleged Oral Agreements' Is Without Merit and Fails to Create Any Dispute of Material Fact Regarding the Existence of the Alleged Oral Agreement ..................................................................... 31

v.     Defendants' Contention that Nancy Dondero Had Authority under the LPA to Bind Highland Is Without Merit and Does Not Create a Genuine Dispute of Material Fact Concerning the Non-Existence of the Alleged Oral Agreement ..................................................................... 31

CONCLUSION ................................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*1320/1390 Don Haskins, Ltd. v. Xerox Com. Sols., LLC,*
    584 S.W.3d 53 (Tex. App. 2018)..................................................................... 32

*271 Truck Repair & Parts, Inc. v. First Air Express, Inc.,*
    03-07-00498-CV, 2008 WL 2387630 (Tex. App.— Austin June 11, 2008)........... 22

*Al-Saud v. Youtoo Media, L.P.,*
    3:15-CV-3074-C, 2017 WL 3841197 (N.D. Tex. March 15, 2017)........................ 21

*Alton v. Tex. A&M Univ.,*
    168 F.3d 196(5th Cir. 1999) ...................................................................... 13, 15

*Armstrong v. City of Dallas,*
    997 F.2d 62 (5th Cir.1993) ............................................................................. 15

*BMG Music v. Martinez,*
    74 F.3d 87 (5th Cir.1996) ............................................................................... 20

*Brown v. Jackson,*
    40 S.W. 162 (Tex. Civ. App. 1897) .................................................................. 33

*Buxani v. Nussbaum,*
    940 S.W.2d 350 (Tex. App.—San Antonio 1997).............................................. 22

*Chambers v. Sears Roebuck and Co.,*
    428 F. App'x 400 (5th Cir. 2011) .............................................................. 25, 26

*Cooper Cameron Corp. v. United States Dep't of Labor,*
    280 F.3d 539 (5th Cir. 2002) ................................................................... 16, 25

*DIRECTV, Inc. v. Budden,*
    420 F.3d 521 (5th Cir. 2005) .......................................................................... 23

*Dorsett v. Hispanic Hous. & Educ. Corp.,*
    389 S.W.3d 609 (Tex. App.—Houston [14th Dist.] 2012, no pet.)...................... 26

*Eason v. Thaler,*
    73 F.3d 1322 (5th Cir. 1996) .......................................................................... 24

*Envtl. Conservation Org. v. City of Dallas, Tex.,*
    529 F.3d 519 (5th Cir. 2008) .......................................................................... 26

*FDIC v. Cardinal Oil Well Servicing Co.,*
    837 F.2d 1369 (5th Cir.1988) ......................................................................... 13

*First Com. Bank v. Palmer,*
    226 S.W.3d 396 (Tex. 2007)........................................................................... 32

*Fisher v. Blue Cross and Blue Shield of Tex., Inc.,*
    3:10-CV-2652-L, 2015 WL 5603711 (N.D. Tex. Sept. 23, 2015) ........................ 21

*Free v. Wal-Mart Louisiana, L.L.C.,*
   815 F.Appx. 765 (5th Cir. 2020) .................................................................................. 18

*Freeman v City of Fort Worth, Texas,*
   4:10-CV-888-Y, 2011 WL 2669111 (N.D. Tex. July 7, 2011) .............................................. 16

*Garcia v. Lumacorp, Inc.,*
   No. CIV.A. 3:02-CV-2426-, 2004 WL 1686635, (N.D. Tex. July 27, 2004), aff'd, 429 F.3d
   549 (5th Cir. 2005) ........................................................................................................ 31

*Hacienda Records, L.P. v Ramos,*
   718 Fed. Appx. 223(5th Cir. 2018) ............................................................ 16, 18, 25

*Hall v. Branch Banking,*
   No. H-13-328, 2014 WL 12539728 (S.D.Tex. Apr. 30, 2014) .......................................... 14

*Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding,*
   480 S.W.2d 607 (Tex. 1972) ........................................................................................ 21

*Hoard v. McFarland,*
   229 S.W. 687 (Tex. Civ. App. 1921) ............................................................................ 33

*Honore v. Douglas,*
   833 F.2d 565 (5th Cir. 1987) ...................................................................................... 21

*In re Hinsley,*
   201 F.3d 638 (5th Cir. 2000) ...................................................................................... 23

*In re Magna Cum Latte, Inc.,*07-31814, 2007 WL 3231633
   (Bankr. S.D. Tex. Oct. 30, 2007) ........................................................................ 13, 14

*In re Palms at Water's Edge, L.P.,*
   334 B.R. 853 (Bankr. W.D. Tex. 2005) ...................................................................... 21

*Jonibach Management Trust v. Wartburg Enterprises, Inc.,*
   136 F.Supp. 792 (S.D. Tex. 2015) ........................................................................ 17, 19

*Kariuki v. Tarango,*
   709 F.3d 495 (5th Cir. 2013) ...................................................................................... 20

*Katy Int'l, Inc. v. Jinchun Jiang,*
   451 S.W.3d 74 (Tex. App. 2014) .......................................................................... 31, 32

*Kennedy v. Allstate Texas Lloyd's,*
   2020 WL 8300511 (N.D. Tex. Dec. 14, 2020) ............................................................. 20

*Kenneth-Murray Corp. v. Bone,*
   622 F.2d 887 (5th Cir. 1980) ...................................................................................... 18

*Latimer v. Smithkline & French Laboratories,*
   919 F.2d 301 (5th Cir.1990) ................................................................................ 13, 14

*Lavergne v. Jefferson County, Tex.,*
   164 F.R.D. 441 (E.D. Tex. 1995) ................................................................................ 23

*LegacyRG, Inc. v Harter,*
   705 Fed. Appx. 223 (5th Cir. 2017) ...................................................................... 25, 26

iv

*Looney v. Irvine Sensors Corp.*,
   CIV.A.309-CV-0840-G, 2010 WL 532431 (N.D. Tex. Feb. 15, 2010) ............................ 13, 14

*Main Street Bank v. Unisen, Inc.*,
   No. H-06-3776, 2008 WL 11483415 (S.D.Tex. Feb. 15, 2008).............................................. 24

*Marx v. FDP, LP*,
   474 S.W.3d 368 (Tex. App. 2015)............................................................................................ 32

*Mays v. Dir. Office of Workers' Comp. Programs*,
   938 F.3d 637 (5th Cir. 2019) ................................................................................................... 18

*Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*,
   40 F.3d 698 (5th Cir. 1994) ..................................................................................................... 14

*Resol. Tr. Corp. v. Starkey*,
   41 F.3d 1018 (5th Cir. 1995) ............................................................................................. 13, 14

*Roark v. Stallworth Oil and Gas, Inc.*,
   813 S.W.2d 492 (Tex. 1991).................................................................................................... 30

*Salama v. W. Wind Energy Corp.*,
   2013 WL 6079548, No. 4:12–cv–03535 (S.D.Tex. Nov. 19, 2013)........................................ 23

*Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*,
   438 Fed. Appx. 343 (5th Cir. 2011)......................................................................................... 23

*Scott v. Harris*,
   550 U.S. 372 (2007).................................................................................................................. 24

*Southern Equip. Sales, Inc. v. Ready Mix Sols., LLC*,
   No. 05-17-01176- CV, 2018 WL 3454801, (Tex. App. July 18, 2018) .................................. 32

*Turner v. Baylor Richardson Med. Ctr.*,
   476 F.3d 337 (5th Cir. 2007) ...................................................................................... 14, 20, 25

*Tyler v. Cedar Hill Indep. Sch. Dist.*,
   426 Fed. Appx. 306 (5th Cir. 2011)......................................................................................... 23

*United States v. Lawrence*,
   276 F.3d 193 (5th Cir. 2001) ................................................................................................... 21

*Warfield v. Byron*,
   436 F.3d 551 (5th Cir. 2006) ................................................................................................... 12

**RULES**

Fed. R. Civ. P. 56(c) ...................................................................................................................... 12

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S BRIEF IN SUPPORT OF RESPONSE
TO DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION**

Highland Capital Management, L.P., the reorganized debtor and the plaintiff in the above-captioned adversary proceeding ("Highland" or "Plaintiff"), hereby files this brief in support of its response (the "Response") to the *Objection to the Bankruptcy Court's Report and Recommendation to the District Court Proposed that It Grant Summary Judgment in Favor of the Plaintiff* [Docket No. 78][1] (the "Objection") filed by Highland Capital Management Fund Advisors, L.P. ("HCMFA" or "Defendant").[2]   In support of its Response, Highland states as follows:

## I.    PRELIMINARY STATEMENT[3]

1.        After making extensive factual findings and legal conclusions supported by the record, the Bankruptcy Court has recommended that this Court grant Plaintiff's Summary Judgment Motion and award Highland all unpaid principal and interest due under the Pre-2019 Notes.[4]   HCMFA objects to the R&R on two principal grounds: (a) that the unsupported declarations and deposition testimony of James Dondero and his sister, Nancy, purportedly create a genuine dispute of material fact concerning the Alleged Oral Agreement defense; and (b) Highland's LLP Agreement supposedly authorized Mr. Dondero and Dugaboy (Mr. Dondero's

---

[1] Unless noted otherwise, references to "Docket No. __" are to the docket entries maintained in Case No. 3:21-cv-00881-X pending in the United States District Court for the Northern District of Texas (the "Court").

[2] *See, e.g.*, Highland's *Appendix of Exhibits in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment* [Adv. Pro. No. 21-03082-sgj, Docket No. 48] (the "Appendix").  Citations to the Appendix are notated as follows: Ex. #, Appx. #.  The Appendix was filed in Adversary Proceeding 21-03082-sgj.

[3] Capitalized terms in this Preliminary Statement shall have the meanings ascribed to them below or in the list of *Parties, Witnesses, and Definitions* attached hereto as **Exhibit A**.

[4] As it did in the Main Notes Litigation, the Bankruptcy Court is expected to supplement its R&R for the purpose of recommending a form of judgment in Plaintiff's favor, including all unpaid principal, interest, attorneys' fees, and costs due under the Pre-2019 Notes.  *See* R&R at 49-50.  Briefing on those matters is expected to be completed on November 23, 2022, with any supplemental R&R to follow.

1

family trust) to enter into the Alleged Oral Agreements on Highland's behalf.  HCMFA's objections should be overruled and the R&R should be adopted *in toto*.

2.      HCMFA does not dispute that the Pre-2019 Notes were tendered in exchange for hard money, contemporaneous loans or that Highland has established its *prima facie* case in support of its Summary Judgment Motion.  HCMFA's **sole** basis for resisting this collection action is the Alleged Oral Agreement defense, a defense based **solely** on the self-serving, uncorroborated, post-commencement statements of Mr. Dondero and his sister.[5]

3.      However, after reviewing the extensive evidentiary record, the Bankruptcy Court concluded that the Donderos' statements contradicted the pleadings and the prior sworn testimony in these consolidated cases and were otherwise internally inconsistent and self-contradictory.  Consequently, the Bankruptcy Court declined to consider them consistent with this Circuit's "sham affidavit" rule and other governing law.  In its Objection, HCMFA vigorously disputes these findings, characterizing the Donderos' statements as mere "clarifications" or "elaborations."  Contrary to HCMFA's contentions, the Bankruptcy Court's findings in this regard are supported by the record and by Fifth Circuit law.

4.      As the Bankruptcy Court correctly found, even if the Dondero declarations were considered, they are, as the only evidence HCMFA adduces in support of its case, insufficient to defeat Highland's *prima facie* case. There is a mountain of other undisputed evidence that corroborates Highland's *prima facie* case and directly contradicts the existence of the Alleged Oral

---

[5] The Bankruptcy Court found that HCMFA failed to offer any evidence supporting its defenses of waiver, estoppel, lack of consideration, prepayment or ambiguity.  R&R at 25-26 (citing evidence).  HCMFA does not dispute these findings.

Agreements.[6]  While all of the evidence should be considered, the following few assertions from

Mr. Dondero are themselves dispositive:

- Mr. Dondero's deposition.  During his deposition, **Mr. Dondero could not identify any material term of the Alleged Oral Agreements without a "cheat sheet" prepared by his lawyers**.  Given that there is no writing memorializing the terms or existence of annual Alleged Oral Agreements entered into over the course of approximately five years, this lack of evidence regarding the supposed terms is fatal.[7]

- Mr. Dondero's discovery responses.  Before settling on the final iteration of the Alleged Oral Agreement defense, Mr. Dondero (a) **identified himself** as the person who supposedly bound Highland to the Alleged Oral Agreements, not his sister or Dugaboy; (b) **failed to identify his sister** as someone likely to have discoverable information; and (c) **failed to identify his sister** as someone with actual knowledge of the Alleged Oral Agreements.[8]

- Mr. Dondero's Proof of Claim.  In withdrawn Proof of Claim 188, Mr. Dondero identified all of the Notes at issue—including the two HCMFA Notes that HCMFA disingenuously contends were executed "by mistake and without authority"—and preemptively asserted as a defense to any collection action that the Notes were issued by him "in lieu of compensation."  Proof of Claim 188 does not mention the Alleged Oral Agreement defense; in fact, it contradicts that defense because if the Notes were issued by Mr. Dondero "in lieu of compensation," **the Alleged Oral Agreements would have been completely unnecessary**.[9]

- Audited Financial Statements.  The separate audited financial statements of Highland and HCMFA described every Note at issue in this action and the Main Notes Litigation (including the two HCMFA Notes that HCMFA disingenuously contends were executed "by mistake and without authority") and identified all amounts due without discount or disclosure of any defense of

---

[6] The Bankruptcy Court's analysis establishing that Dugaboy lacked the authority to enter into the Alleged Oral Agreements was amply supported by the plain terms of the LPA (R&R at 41-44) and HCMFA's arguments do nothing to change that.  Significantly, even if HCMFA's contractual interpretation arguments had any merit (which they do not), they literally do nothing to establish the terms or existence of the Alleged Oral Agreements.  Indeed, as the undisputed evidence proves, it took Mr. Dondero multiple tries to manufacture the defense before he finally grabbed the LLP Agreement as a reed to try to hold onto.

[7] Ex. 99 at 13:4-31:14, Appx. 1815-1820.

[8] Ex. 82, Appx. 1394 (Responses to Interrogatories 1 and 2); Ex. 184 at 2-5, Appx. 2984-2987 (Rule 26 disclosures).

[9] Long before Highland made any demand for collection (let alone commenced litigation), Mr. Dondero filed a proof of claim in Highland's bankruptcy case concerning the Notes at issue and included it as an exhibit to one of his declarations.  *See Appendix in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment*, Adv. Pro. No. 21-03082 [Docket No. 53], Def. Ex. 4-D, Def. Appx. 362-367 ("Proof of Claim 188").

3

any kind; notably, if the Alleged Oral Agreement defense actually existed, ***disclosure was required*** under GAAP and the management representation letters signed by Mr. Dondero and delivered to the auditors.[10]

5.     Thus, based on this evidence and the substantial evidence further described below, even if the Donderos' statements were not completely disregarded, the totality of the evidence shows that no ***genuine dispute of material fact*** exists that could cause a reasonable jury to find the Alleged Oral Agreements actually existed.

6.     But as the Bankruptcy Court also determined, even if a reasonable jury might find that the Alleged Oral Agreements existed, they would be unenforceable due to a lack of consideration, a lack of definiteness, and the lack of proof establishing a "meeting of the minds." For example, there is no dispute that during his deposition Mr. Dondero was unable to identify ***any*** material term of the Alleged Oral Agreements without a "cheat sheet" prepared by his lawyers. Separately, HCMFA offers no evidence of "consideration" under the circumstances nor can it: under the Highland's plan of reorganization (that Mr. Dondero and his affiliates, including HCMFA, naturally opposed), the reorganized debtor is ***legally obligated*** to sell the "portfolio companies" as part of its asset-monetization directive in the confirmed plan of reorganization. Thus, under the contrived Alleged Oral Agreement defense, Mr. Dondero and his affiliates need only sit back, wait for Mr. Seery and his team fulfill their responsibilities, and become $70 million richer through the cancellation of the Notes, all without having done a thing or given anything of value to Highland.  This does not pass the straight face test.

---

[10] Ex. 33, Appx. 729-740; Ex. 34, Appx. 771-72, 782; Ex. 86, Appx. 1420-1431; Ex. 94 at 17:21-25, 19:2-22:6, Appx. 1556-1558; Ex. 192 at 54:6-9, 54:22-55:8, 55:23-56:3; 56:20-59:3, Appx. 3028-3029.

7.      It is time to put these Notes Actions to rest.  The Bankruptcy Court's R&R was based on an extensive factual record and thorough legal analysis and should be adopted without reservation and the Summary Judgment Motion should be granted.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    HCMFA Does Not Dispute Bankruptcy Court's Findings Concerning the Procedural History of this Action

8.      The Bankruptcy Court described the lengthy procedural history of this action, including the background concerning Highland and its bankruptcy case; the commencement and status of the earlier-filed Notes Actions; the proceedings before this Court (including the consolidation of this Action with the previously-consolidated Notes Actions); and the current Summary Judgment Motion.  R&R at 2-12 (the "Procedural History").

9.      HCMFA does not dispute any of the Bankruptcy Court's findings concerning the Procedural History of this Action.

### B.    HCMFA Does Not Dispute that Highland Has Established Its *Prima Facie* Case in Support of Summary Judgment

10.     The Bankruptcy Court made extensive factual findings concerning the validity and enforceability of the Pre-2019 Notes and HCMFA's failure to satisfy Highland's demand for payment.  R&R at 13-16.  Based on these findings, the Bankruptcy Court determined that Highland met its burden of proving its *prima facie* case that it is entitled to summary judgment. *Id*. at 30-31.

11.     HCMFA does not dispute any of the Bankruptcy Court's factual findings or conclusions of law concerning Highland's *prima facie* case.

DOCS_NY:46763.10 36027/003

C.    **HCMFA Does Not Dispute the Pre-Petition Facts Corroborating Highland's *Prima Facie* Case and Contradicting the Existence of the Alleged Oral Agreements**

12.    In addition to finding that Highland established its *prima facie* case, the Bankruptcy Court found that the (a) existence, validity, and enforceability of the Pre-2019 Notes is corroborated, and (b) the existence of the Alleged Oral Agreements is contradicted, by substantial, undisputed evidence, including the following:

- "No document was ever uncovered or produced in discovery to establish, memorialize, reflect, or recognize the existence or terms of the Alleged Oral Agreements;"[11]

- During his deposition, Mr. Dondero could not identify the material terms of the Alleged Oral Agreements without reference to a "cheat sheet" prepared by his lawyers for litigation purposes;[12]

- The Pre-2019 Notes were (a) provided to PwC, Highland's and HCMFA's long-time outside auditors, and (b) specifically described in Highland's audited financial statements;[13]

- Plaintiff's audited financial statements were prepared based on management representation letters provided to PwC by Mr. Dondero and Mr. Waterhouse, neither of whom ever disclosed the Alleged Oral Agreements, despite having an affirmative obligation to do so under GAAP and the management representation letters that each of them signed;[14]

- Neither Mr. Dondero, his sister, nor Dugaboy ever disclosed the terms or existence of the Alleged Oral Agreements before litigation was commenced;[15]

- At all times, the Pre-2019 Notes (like all of the Notes at issue in the Main Notes Litigation) were carried as assets on Highland's balance sheet, and as liabilities on HCMFA's balance sheet, all with values equal to the accrued and unpaid principal and interest, without any offset or reservation of any kind;[16]

---

[11] R&R at 23 (citing evidence).

[12] Ex. 99 at 13:4-31:14, Appx. 1815-1820.

[13] R&R at 16-19 (citing evidence).

[14] *Id.* at 17-19 (citing evidence).

[15] R&R at 23 (citing evidence).

[16] *Id.* at 21.  *See also* Ex. 34 at 2, Appx. 745; Ex. 72 at 2, Appx. 1291; Ex. 94 at 23:10-22; 31:11-33:20, Appx. 1558, 1560; Ex. 105 at 106:20-109:12, Appx. 2076.

- HCMFA paid Highland over $4 million in principal and interest under the Pre-2019 Notes after the Alleged Oral Agreements were supposedly entered into;[17]

- HCMFA paid all principal and interest due on three other notes it tendered to Highland in exchange for loans;[18] and

- Mr. Dondero has admitted that Highland **never** forgave **any** loan that it **ever** extended to him or his co-founder, Mark Okada, or "any entity directly or indirectly owned or controlled" by Mr. Dondero.[19]

13.    HCMFA makes no effort to explain any of these undisputed facts, and that is unsurprising.[20]  At all relevant times, Mr. Dondero controlled Highland and HCMFA (and all the other Makers of the Notes at issue) and had the ability to change all or any of these facts.  If the Alleged Oral Agreements actually existed, he surely would have acted in his own self-interest and done so.  In the end, each of these undisputed facts either further corroborates the validity and enforceability of the Notes or contradicts the existence of the Alleged Oral Agreements, or both.

**D.    HCMFA Does Not Dispute the Post-Petition Facts Corroborating Highland's *Prima Facie* Case and Contradicting the Existence of the Alleged Oral Agreements**

14.    If the foregoing were not enough (and it should be), the conduct of Mr. Dondero and his affiliates during the bankruptcy case—and especially after the commencement of the Notes Actions—corroborates further Highland's *prima facie* case and contradicts the existence of the Alleged Oral Agreements, including the following undisputed facts:

---

[17] R&R at 24 (citing evidence).

[18] R&R at 24 (citing evidence).  Neither Mr. Dondero nor HCMFA has ever explained whether these notes were part of any Alleged Oral Agreement and, if so, why they were nevertheless paid off in full.  The existence of other notes, at other times, makes Mr. Dondero's failure to recall the material terms of the Alleged Oral Agreements without reference to his lawyers' "cheat sheet" even more devastating.  *See supra* n. 12 and accompanying text.

[19] Ex. 24 (Responses to Requests for Admission 15-17), Appx. 524.

[20] HCMFA simply dismisses these and other undisputed and inconvenient facts as "closing arguments that address the credibility of evidence and are properly made at trial, not at summary judgment."  Objection ¶ 41.  HCMFA is wrong.  These undisputed facts, and those set forth below, cannot plausibly be reconciled with the existence of the Alleged Oral Agreements such that no reasonable jury could ever validate the defense.

7

- The Pre-2019 Notes were uniformly disclosed in Highland's bankruptcy filings as assets of the estate, without discount of any kind or disclosure of any defense;[21]

- In October 2020, HCMFA informed its Retail Board of its obligations under the Pre-2019 Notes without reference to the Alleged Oral Agreement defense or any other defense;[22]

- Despite being incentivized to do so, HCMFA (like all other Defendants) failed to (a) object to Highland's "Projections or the assumptions that the notes that are the subject of this Action would be collected in 2021" or (b) otherwise disclose the existence of any defense to collections;[23]

- Proof of Claim 188 directly contradicts the Alleged Oral Agreement defense by acknowledging the existence of all of the Notes at issue in these consolidated Notes Actions but asserting that they were "issued in lieu of compensation,"[24]

- In his Original Answer, Mr. Dondero asserted as his first affirmative defense that "Plaintiff's claims should be barred because it was previously agreed that Plaintiff would not collect on the Notes" (the "Alleged Oral Agreement").[25]

---

[21] R&R at 21-23 (citing to certain documents describing the Pre-2019 Notes (and all other notes that are the subject of the Main Notes Litigation) as assets owned by Highland without discount or disclosure of the Alleged Oral Agreements, including (a) the Debtor's Schedules filed in the Bankruptcy Case while Mr. Dondero still controlled the Debtor; and (b) the Debtor's Monthly Operating Reports filed while Mr. Dondero still controlled the Debtor and after.

[22] R&R at 20-21 (citing evidence).

[23] R&R at 4-5 (citing evidence). *See also* Ex. 206 at 123:23-124:23, Appx. 4305-4306, 128:23-129:21, Appx. 4310-4311, 185:8-15, Appx. 4367 (direct and cross-examination concerning Highland's projections and assumptions regarding the Notes); Ex. 207 at 223:22-224:14, Appx. 4701-4702 (closing argument on Mr. Dondero's behalf where counsel identifies "collectability" issues but makes no mention of the Alleged Oral Agreement or any other legal or equitable defense).

[24] *See* Proof of Claim 188, Def. Ex. 4-D, Def. Appx. 362-367. Mr. Dondero filed Proof of Claim 188 in May 2020, long before Highland demanded payment or litigation was commenced, and it directly contradicts the defenses asserted against Highland in these collection actions. *First*, Proof of Claim 188 acknowledges the existence of all Notes at issue, *including the HCMFA Notes subject to the First HCMFA Notes Action* that HCMFA now disingenuously insists were issued "by mistake and without authority." *Second*, Mr. Dondero's statement that "[i]n the event collection efforts are made to collect on the Notes, James Dondero asserts that the Notes were issued by him for funds advanced in lieu of compensation" *completely contradicts the existence of the Alleged Oral Agreements* because (a) while purporting to assert a defense to any future collection action, Mr. Dondero inexplicably failed to disclose the existence of the Alleged Oral Agreements, and (b) his assertion that the Notes were issued "in lieu of compensation" cannot be reconciled with the Defendants' contention that the Alleged Oral Agreements were entered after the Notes were tendered; stated another way, if the Notes were "issued by him for funds advanced in lieu of compensation," then the Alleged Oral Agreements would have been completely unnecessary. *Third*, while preemptively attempting to prevent collection on the Notes by asserting that he issued them "in lieu of compensation," Mr. Dondero did not identify any other defense later raised after the commencement of litigation, such as "pre-payment." Proof of Claim 188 should be seen for what it is: an unvarnished admission that all of the Notes at issue are valid and enforceable and indisputable evidence that Mr. Dondero had not yet fabricated the Alleged Oral Agreement defense (or any other defense) at the time he filed it.

[25] Ex. 80 ¶40, Appx. 1380.

8

- After Mr. Dondero was forced to admit that he did not pay taxes on the amounts loaned to him but that Plaintiff allegedly agreed not to collect,[26] Mr. Dondero promptly changed his Alleged Oral Agreement defense to make the agreement conditional: "Plaintiff's claims should be barred because it was previously agreed that Plaintiff would not collect on the Notes *upon fulfillment of conditions subsequent;*"[27]

- Shortly after serving his Amended Answer, Mr. Dondero served his *Rule 26 Initial Disclosures* in which he identified fifteen (15) "individuals likely to have discoverable information," but ***inexplicably omitted*** his sister, Nancy.[28]

- Later, in response to an interrogatory, ***Mr. Dondero identified himself, not his sister or Dugaboy,*** as "the person who entered into each [Alleged] Agreement on behalf of the Debtor."[29]

- In response to another interrogatory, Mr. Dondero ***failed to identify his sister*** as someone who he believed had actual knowledge of the Alleged Oral Agreements.[30]

- It was not until later in the litigation that Mr. Dondero claimed for the first time that his sister--someone he failed to include as a person likely to have discoverable information or someone he believed had actual knowledge of each Alleged Oral Agreement--was the person who allegedly bound Plaintiff to the Alleged Oral Agreement, rather than himself.

- Notably, it was only after Mr. Dondero finally settled on this defense that his affiliated Obligors (except for HCMFA, at least at that time) scrambled to seek leave from the Bankruptcy Court to amend their respective Answers to adopt what finally became the Alleged Oral Agreement defense.[31]

15.    If Mr. Dondero's repeated and uninterrupted failures to act prior to Highland's bankruptcy were not enough (and it should be), his conduct following Highland's

---

[26] Ex. 81 (Responses to RFAs 4, 8, and 12), Appx. 1387-1389.

[27] Ex. 83 ¶40, Appx. 1403.

[28] Ex. 184 at 2-5, Appx. 2984-2987.

[29] Ex. 82 at 4 (answer to Interrogatory No. 1), Appx. 1394.

[30] *Id.* (answer to Interrogatory No. 2), Appx. 1394.

[31] *See* Ex. 11, Appx. 384-393 (NexPoint's Motion for Leave to Amend); Ex. 14 (NexPoint's First Amended Answer) ¶42, Appx. 421-422; Ex. 8, Appx. 292-312 (HCMS's Motion for Leave to Amend); Ex. 12 (HCMS's First Amended Answer) ¶56, Appx. 402; Ex. 9 (HCRE's Motion for Leave to Amend), Appx. 313-333; Ex. 17 (HCRE's Amended Answer) ¶99, Appx. 468.

DOCS_NY:46763.10 36027/003

filing removes all doubt that the Alleged Oral Agreement defense was fabricated at the last second for litigation purposes; none of the forgoing undisputed facts can be reconciled with the existence of the Alleged Oral Agreements.

## E.    **HCMFA Fails to Rebut Highland's *Prima Facie* Case**

16.    The Bankruptcy Court found that HCMFA failed to meet its burden of rebutting Highland's *prima facie* case for summary judgment. *See* R&R at 32.  In addition to that set forth above, there is overwhelming, additional evidence to support the Bankruptcy Court's findings on HCMFA's failure to create any genuine dispute of material fact.

### 1.    **The Alleged Oral Agreement Defense**

17.    HCMFA's Alleged Oral Agreement defense is largely the same spurious story asserted by the Main Note Defendants in the Main Notes Litigation (with the exception of HCMFA in the First HCMFA Note Action); namely, that there were alleged oral agreements pursuant to which the Pre-2019 Notes would be forgiven upon the occurrence of certain "conditions subsequent." *See* Ex. 234 ¶ 41, Appx. 5114-15 ("HCMFA's Answer").  Specifically, HCMFA asserted in its Answer:

> Plaintiff's claims are barred … because prior to the demands for payment, Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent.  Specifically, sometime between December of the year in which each note was made and February of the following year, Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of James Dondero's control.  The purpose of this agreement was to provide compensation to Mr. Dondero, who was otherwise underpaid compared to reasonable compensation levels in the industry, through the use of forgivable loans, a practice that was standard at HCMLP and in the industry.  This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant believes there may be testimony or email correspondence that discusses the existence of

this agreement that may be uncovered through discovery in this Adversary Proceeding.

*Id.* (the "Alleged Oral Agreement").

18.     As the Bankruptcy Court found, the Alleged Oral Agreement defense appears to be a "cut-and-paste" of the same Alleged Oral Agreement Defense that was ultimately asserted in the Main Notes Litigation by four of the five Main Note Defendants (all but HCMFA). R&R at 8.

## 2.     The Evidence Concerning the Alleged Oral Agreement Defense Renders It Absurd on Its Face

19.     The "evidence" of the circumstances concerning the entry into the Alleged Oral Agreements renders the defense absurd on its face, including the following:

- Nancy Dondero had no meaningful knowledge regarding Highland's financials, Highland's loans, Mr. Dondero's compensation, the portfolio companies, or any the surrounding circumstances of the Alleged Oral Agreements.[32]

- Highland did not have a "practice" of forgiving loans.[33]

- The Donderos' declarations contradict the pleaded facts in HCMFA's Answer.[34]

- Mr. Dondero's declaration contradicts his prior sworn testimony regarding the Alleged Oral Agreements.[35]

- The Donderos' declarations are internally inconsistent and self-contradictory.[36]

---

[32] *See* R&R at 43 (citing evidence).

[33] R&R at 25 (citing evidence).  Notably, Paul Johnson, Mr. Dondero's executive compensation expert, admitted that (a) he has never advised a company to forgive an affiliate loan for the purpose of compensating an executive, (b) nor is he aware of any company that has ever done so.  *See* Ex. 240 at 20:6-18, Appx. 5236.  Moreover, regardless of the modest loans Highland forgave to certain employees back in 2008 or 2009 in the shadow of the financial crisis, Mr. Dondero was forced to admit that Highland ***never*** forgave ***any*** loan that it ***ever*** extended to him or his co-founder, Mark Okada, or "any entity directly or indirectly owned or controlled" by Mr. Dondero.  Ex. 24 (Responses to Requests for Admission 15-17), Appx. 524.

[34] R&R at 33-36 (citing evidence).

[35] R&R at 36-38 (citing evidence).

[36] R&R at 38-40 (citing evidence).

- Mr. Dondero fixed the terms of the Alleged Oral Agreements without negotiating with his sister.[37]

- Even if the Alleged Oral Agreements existed, they are unenforceable for lack of consideration, meeting of the minds, and definiteness.[38]

## III.   ARGUMENT

### A.   Legal Standard

20.    "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006) ("[S]ummary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (quoting Fed. R. Civ. P. 56(c)).

21.    "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Alton v. Tex. A&M Univ.*,

---

[37] There is no dispute that none of the Alleged Oral Agreements was the subject of negotiation. Indeed, Ms. Dondero candidly admitted that she never (i) made a counterproposal; (ii) negotiated any aspect of the Alleged Oral Agreements; (iii) asked Mr. Dondero how he selected the "portfolio companies;" (iv) inquired as to whether Mr. Dondero already had a duty to maximize value; (v) rejected any aspect of Mr. Dondero's alleged proposals; or (vi) rejected or pushed back on Mr. Dondero's proposal that the Pre-2019 Notes would be forgiven if any of the portfolio companies were sold by a third party. *See* Ex. 210 at 24:8-18, Appx. 4860; Ex. 100 at 194:16-19, 195:14-199:15, Appx. 1923-1924.

[38] R&R at 44-46 (citing evidence). Mr. Dondero founded Highland and Highland was the platform he used to support his other businesses, including the HCMFA and the Corporate Obligors from the Main Notes Litigation. No reasonable trier of fact could conclude that Highland (a) needed to enter into the Alleged Oral Agreements to retain or motivate Mr. Dondero or (b) that Highland received anything of value in exchange for agreeing to forgive over $70 million in valid promissory Notes, including the Notes at issue here, if either (i) Mr. Dondero sold one of the three "portfolio companies" at a dollar above cost or (ii) the portfolio companies were sold by a third party. Yet, according to Ms. Dondero, "motivating" Mr. Dondero is all Highland received. *See, e.g.*, Ex. 100 at 221:2-225:7, Appx. 1929-1930. Ms. Dondero admitted that she did not know, and had no reason to expect, that Highland would benefit from the sale of the portfolio companies by a third party. Ex. 100 at 201:24-203:11, Appx. 1924-1925, 227:17-229:14, Appx. 1931.

168 F.3d 196, 199 (5th Cir. 1999).  The moving party meets its initial burden of showing there is no genuine issue for trial by "point[ing] out the absence of evidence supporting the nonmoving party's case."  *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir. 1990); *see also In re Magna Cum Latte, Inc.*, 07-31814, 2007 WL 3231633, at *3 (Bankr. S.D. Tex. Oct. 30, 2007) ("A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact.").

22.     "Ordinarily, suits on promissory notes provide 'fit grist for the summary judgment mill.'"  *Resol. Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995) (quoting *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988)); *see also Looney v. Irvine Sensors Corp.*, CIV.A.309-CV-0840-G, 2010 WL 532431, at *2 (N.D. Tex. Feb. 15, 2010) ("Suits on promissory notes are typically well-suited for resolution via summary judgment.").  To prevail on summary judgment for breach of a promissory note under Texas law, the movant need only establish (a) the note in question, (b) that the non-movant signed the note, (c) that the movant was the legal owner and holder thereof, and (d) that a certain balance was due and owing on the note. *See Resol. Tr. Corp.*, 41 F.3d at 1023; *Looney*, 2010 WL 532431, at *2-3; *Magna Cum Latte*, 2007 WL 3231633, at *15.

23.     "If the moving party carries [their] initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of genuine issue of material fact."  *Latimer*, 919 F.3d at 303; *see also Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 712 (5th Cir. 1994) ("To withstand a properly supported motion for summary judgment, the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial.").  "This showing requires more than some metaphysical doubt as to the material facts." *Latimer*, 919 F.3d at 303 (internal quotations

omitted); *see also Hall v. Branch Banking*, No. H-13-328, 2014 WL 12539728, at *1 (S.D. Tex. Apr. 30, 2014) ("[T]he nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment."); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.") (internal quotations omitted).  Thus, "[w]here critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Alton*, 168 F.3d at 199; *see also Armstrong v. City of Dallas*, 997 F.2d 62, 66 n. 12 (5th Cir.1993) ("We no longer ask whether literally little evidence, *i.e.,* a scintilla or less, exists but, whether the nonmovant could, on the strength of the record evidence, carry the burden of persuasion with a reasonable jury.").

24.     Based on these well-established legal principles, this Court should adopt the R&R and grant Highland's Summary Judgment Motion.

**B.      The Bankruptcy Court Correctly Found that No Reasonable Trier of Fact Could Find the Alleged Oral Agreement Exists and that HCMFA Failed to Rebut Highland's *Prima Facie* Case for Summary Judgment**

**1.      The Bankruptcy Court Correctly Found that the Dondero Declarations Are Insufficient to Create a Genuine Dispute of Material Fact Regarding the Non-Existence of the Alleged Oral Agreements**

**i.      The Bankruptcy Court Correctly Found the Dondero Declarations to Be Self-Contradictory and Internally Inconsistent**

25.     HCMFA's contention that the Bankruptcy Court's finding that the Dondero declarations are self-contradictory and internally inconsistent is "misguided" and "baffling" (Objection ¶¶ 28-32) is belied by the record and should be overruled.

26.     For example, as the Bankruptcy Court correctly found, Mr. Dondero's admission that the Pre-2019 Notes were provided in exchange for hard money loans is contradicted by documents attached to his own declaration asserting that he issued the Pre-2019 Notes "in lieu of compensation." *Compare* Def. Ex. 4 at ¶¶ 5-6, 13-15, Appx. 304-305, 307-308 *with id.*, Exhibits C and D, Appx. 361, 363-67.  HCMFA's attempt to explain away such conflicting statements by contending that "once the [Alleged] Agreements were made, they became potential deferred compensation," (Objection ¶ 30), fails to reconcile the plainly inconsistent statements in the Dondero declarations.

27.     The Bankruptcy Court also correctly found that other inconsistencies were prevalent throughout Mr. Dondero's declaration, including on the issues of (a) exactly who the parties were to the Alleged Oral Agreements, (b) the purpose of the Alleged Oral Agreements, and (c) who entered into the Alleged Oral Agreements.  *See* R&R at 39 (citing evidence).  The Bankruptcy Court correctly found that the internally inconsistent and self-contradictory Dondero declarations, as the "only summary judgment evidence presented by HCMFA," could not rebut Highland's *prima facie* case.  *See Cooper Cameron Corp. v. United States Dep't of Labor*, 280 F.3d 539, 550 (5th Cir. 2002) ("[A party] cannot meet its [summary judgment] burden with an internally inconsistent, self-contradictory affidavit."); *Freeman v City of Fort Worth, Texas*, 4:10-CV-888-Y, 2011 WL 2669111, at *3 (N.D. Tex. July 7, 2011) (where the district court concluded that the non-movant's internally inconsistent and self-contradictory affidavit was "insufficient to create a dispute of fact as to any material issues.).  HCMFA's objection on this ground should be overruled.

15

### ii.   The Bankruptcy Court Correctly Found that Mr. Dondero's Declaration Contradicts His Prior Sworn Testimony Regarding the Alleged Oral Agreements

28.   The Bankruptcy Court also correctly found that Mr. Dondero's declaration contradicts his prior sworn testimony regarding the Alleged Oral Agreements. *See* R&R at 36-38 (citing evidence). Such contradictory testimony is insufficient to defeat summary judgment. *See Hacienda Records, L.P. v Ramos*, 718 F. App'x 223, 234 (5th Cir. 2018) ("[A party] is not entitled to use a declaration 'that impeaches, without explanation, sworn testimony' to defeat summary judgment."). HCMFA's conclusory assertion that Mr. Dondero's declaration simply "elaborates" upon his prior testimony, (Objection ¶ 33), is, again, belied by the record. HCMFA's objection on this ground should be overruled.

### iii.   The Bankruptcy Court Correctly Found that Mr. Dondero's Declaration Contradicts HCMFA's Answer

29.   HCMFA's contention that the inconsistencies and contradictions between HCMFA's Answer and Mr. Dondero's testimony is "immaterial to the 2014 Agreement's existence," and that the R&R "requires an unrealistic level of consistency and immediate recall of events," (Objection ¶ 34), is also without merit.

30.   Mr. Dondero's declaration did not simply contain a "minor inconsistency" with HCMFA's Answer, as HCMFA suggests. *See* Objection ¶¶ 34-40. Rather, the inconsistencies concerned such basic facts as who entered into the Alleged Oral Agreements and when did they do so.[39] These issues go to the heart of the Alleged Oral Agreement defense. The Bankruptcy

---

[39]   *Compare* Ex. 234 (HCMFA's Answer) ¶ 41, Appx. 5114-15 (asserting that Ms. Dondero entered into 2014 Agreement "sometime between December of the year in which each Note was made and February of the following year") *with* Def. Ex. 4 (Dondero Declaration) ¶¶ 13, 18, 19, Def. Appx. 307, 309 (asserting that Mr. Dondero entered into the Alleged Oral Agreement concerning the 2014 Notes with himself and incorporating two documents stating that Mr. Dondero **contemporaneously** issued the Notes "in lieu of compensation"—not **ten to twelve months after** each of the Pre-2019 Notes were allegedly issued in exchange for loans from Highland).

16

Court properly found that the Donderos' contradictory, inconsistent, and conclusory declarations were insufficient to rebut Highland's *prima facie* case. *See Jonibach Management Trust v. Wartburg Enterprises, Inc.*, 136 F. Supp. 792, 821 n. 29 (S.D. Tex. 2015) (a party may not "present evidence contradicting admissions made in [their] pleadings for the purpose of defeating a summary judgment"); *see also* R&R at 28-29 (collecting cases). HCMFA's contention that the Alleged Agreements are "supported by much more than a scintilla of evidence," (Objection ¶ 34), is contradicted by the record as a whole.

31.     The Bankruptcy Court also correctly found that HCMFA's attempt to manufacture a dispute through declarations is prohibited by the "sham affidavit" rule. *Hacienda Records*, 718 F. App'x at 235 (a "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."); *Free v. Wal-Mart Louisiana, L.L.C.*, 815 F. App'x 765, 767 (5th Cir. 2020) (the Fifth Circuit concluded that the district court had not abused its discretion and "reasonably applied the sham affidavit doctrine" when it struck an affidavit that conflicted with prior deposition testimony without explanation).

32.     HCMFA reliance on *Kenneth-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980), is misplaced. The question in that case was whether statements in an affidavit should be permitted to defeat 'the clear statements contained in the deposition." *Id.* at 894. Here, the issue is not whether the Donderos' declarations should be disregarded solely because they conflict with earlier testimony. Rather, the issue is that ***the declarations are the only evidence HCMFA submits to establish the terms and existence of the Alleged Oral Agreements***, and they directly contradict HCMFA's Answer. *See also Mays v. Dir. Office of Workers' Comp. Programs*, 938 F.3d 637, 647 (5th Cir. 2019) (distinguishing evidentiary admissions from judicial admissions). HCMFA's strained attempt to minimize the issue is unavailing. Objection ¶ 36. The assertions in HCMFA's

Answer concerning the Alleged Oral Agreements were formal statements in pleadings that bind HCMFA.  As the Bankruptcy Court correctly stated, "the prohibition against the submission of affidavits or declarations that contradict the party's pleadings for the purposes of defeating summary judgment is based on the proposition that '[f]actual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them.'" R&R at 29, n. 35 (quoting *Jonibach*, 136 F. Supp. at 821 n.29).[40]

33.     HCMFA's conclusory contention that the Bankruptcy Court "simply seeks an excuse to disregard contrary evidence," (Objection ¶ 40), should be overruled.

### iv.     The Bankruptcy Court Correctly Found the Donderos' Declarations to Be Unsubstantiated, Conclusory, and Self-Serving

34.     HCMFA's contention that the Bankruptcy Court improperly found the Dondero declarations to be "conclusory" and "self-serving," (Objection ¶¶ 24-27), is without merit and ignores the context of the Bankruptcy Court's findings.

35.     As the Bankruptcy Court explained, the Donderos' declarations are not only conclusory, but they are entirely unsubstantiated and contradicted by the overwhelming evidence in the record.  *See* R&R at 32-40.[41]  None of the assertions in the either of the Donderos' declarations is corroborated.  In fact, they are contradicted by the overwhelming evidence in the

---

[40] As discussed further below, the Bankruptcy Court also found that even if the Donderos' declarations were considered, "when reviewed with the summary judgment record as a whole," HCMFA has still failed to point to a genuine dispute of fact that would defeat Highland's *prima facie* case. *See* R&R at 41.

[41] *See, e.g.*, Def. Ex. 4 (Mr. Dondero's declaration), Appx. 301-312 (vaguely (a) reciting the Alleged Oral Agreement defense, (b) attempting to explain the discrepancies between HCMFA's Answer and Ms. Dondero's testimony, and (c) otherwise stating facts that fail to rebut Highland's *prima facie* case, such as (i) the baseless contention that the LPA authorized the Alleged Oral Agreement, (ii) attempting to justify Mr. Dondero's failure to disclose the Alleged Oral Agreements upon the sale of substantial MGM holdings, and (iii) citing (for the first time) to Mr. Hurley, a non-Highland employee, in a fruitless attempt to show that Highland had a "practice" of forgiving loans to affiliates); Def. Ex. 5 (Ms. Dondero declaration), Appx. 370-380 (vaguely (a) reciting the Alleged Oral Agreement Defense, and (b) stating that "the 2016 Agreement would provide additional incentive and motivation to Jim Dondero to attempt to maximize the value and return to" Highland on the portfolio companies, and "to allow [Highland] to make part of Jim's compensation contingent on performance, instead of paying him additional cash in 2016 or 2017, which he could have sought.")

record.  Fifth circuit law is clear that unsubstantiated and conclusory allegations in declarations, such as the ones at issue here, are insufficient to defeat summary judgment. *See Turner*, 476 F.3d at 343; *Kennedy v. Allstate Texas Lloyd's*, 2020 WL 8300511, at *1 (N.D. Tex. Dec. 14, 2020) ("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial.").  Accordingly, HCMFA's objection should be overruled.

### v.  The Bankruptcy Court Correctly Found that No Rreasonable Jury Could Find that the Alleged Oral Agreements Exist Based on the Donderos' Self-Serving, Conclusory, and Unsubstantiated Statements

36.    HCMFA asserts that the Donderos' declarations were sufficient to create a genuine dispute of material fact concerning the existence of the Alleged Oral Agreement since both Jim Dondero and his sister "have testified numerous times that the Agreements occurred and do exist."   Objection ¶¶ 45-50.[42]   Contrary to HCMFA's objection, these self-serving and uncorroborated statements are not the type of "probative evidence required" to defeat summary judgment, especially "in the face of conflicting probative evidence." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013).[43]

37.    HCMFA's argument that its "summary judgment evidence is more than sufficient to provide proof that the Agreements exist" since it "present[s] testimony from both sides to the Agreements while Texas law only requires testimony from one" (Objection ¶ 46) is

---

[42] HCMFA's attempt to equate the fictitious Alleged Oral Agreements with arm's length agreements is ridiculous. *See* R&R at 43 (citing substantial deposition testimony where Ms. Dondero admits to being uniformed and simply acquiescing to her brother's requests).

[43] *See also BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant"); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for recovery under promissory note where defendant's only evidence to rebut plaintiff's *prima facie* case consisted of "self-serving allegations," which "are not the type of significant probative evidence required to defeat summary judgment") (internal quotations omitted).

19

likewise misguided.  The cases HCMFA relies on do not support their argument and are easily distinguishable. *See, e.g., In re Palms at Water's Edge, L.P.*, 334 B.R. 853, 858 (Bankr. W.D. Tex. 2005) (a meeting of the minds "can be inferred from the parties' conduct and their course of dealing"); *Franklin v Regions Bank*, CV 5:16-1152, 2021 WL 867261, at *4 (W.D. La. Mar. 8, 2021) (applying Louisiana Civil Code article 1846 and holding that an oral agreement was supported by ample corroborating evidence).[44]  Here, unlike in those cases, ***HCMFA offers no corroborating evidence*** to support the Donderos' self-serving statements or to corroborate the existence of the Alleged Oral Agreements.  Indeed, HCMFA has failed to adduce ***any*** evidence from which the existence of the Alleged Oral Agreements can be "inferred from the circumstances" or the parties' "course of dealing."[45]  For example, the undisputed facts establish that:

- No contemporaneous writing exists that reflects the existence or terms of the Alleged Oral Agreements;

- Highland's books and records carried the Notes as assets but did not reflect the terms or existence of the Alleged Oral Agreements;

- HCMFA's books and records carried the Notes as liabilities but did not reflect the terms or existence of the Alleged Oral Agreements;

- Mr. Dondero and HCMFA disclosed the existence of the Notes to PwC but not the terms or existence of the Alleged Oral Agreements;

- HCMFA disclosed the existence of the Notes to the Retail Board but not the terms or existence of the Alleged Oral Agreements;

---

[44] *See also Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding*, 480 S.W.2d 607 (Tex. 1972) (existence of contract can be "inferred from the circumstances" based on the "conduct of one party"); *Al-Saud v. Youtoo Media, L.P.*, 3:15-CV-3074-C, 2017 WL 3841197 (N.D. Tex. March 15, 2017) (corroborating evidence offered to support defense to breach of contract claim); *Fisher v. Blue Cross and Blue Shield of Tex., Inc.*, 3:10-CV-2652-L, 2015 WL 5603711, at *10 (N.D. Tex. Sept. 23, 2015) (denying summary judgment where evidence of the parties' course of dealing might enable a find-finder to infer the existence of an implied contract); *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987) (denying summary judgment where non-movant offered corroborating evidence including party admissions and other testimonial evidence).

[45] Defendants' other case cites in support of this argument are also inapplicable because the relevant issue here is not about the terms of the alleged contract, *see 271 Truck Repair & Parts, Inc. v. First Air Express, Inc.*, 03-07-00498-CV, 2008 WL 2387630 (Tex. App.— Austin June 11, 2008, no pet.), or whether the "meeting of the minds" element is satisfied, *see Buxani v. Nussbaum*, 940 S.W.2d 350 (Tex. App.—San Antonio 1997, no writ)).

DOCS_NY:46763.10 36027/003

- Neither Mr. Dondero nor HCMFA disclosed the terms or existence of the Alleged Oral Agreements to the Bankruptcy Court in connection with confirmation despite being aware that Highland assumed full recovery on all of the Notes; and

- No one without the last name "Dondero" has ever acknowledged knowing of the terms or existence of the Alleged Oral Agreements before these actions were commenced.

38.    Thus, no corroborating evidence exists to support HCMFA's Alleged Oral Agreement Defense.    By contrast, the undisputed documentary evidence overwhelmingly demonstrates the enforceability of the Pre-2019 Notes and HCMFA's breach thereunder.  *See supra* ¶¶ 12-19 (citing evidence).  The Dondero's self-serving statements are insufficient to defeat summary judgment in the face of the substantial, undisputed, and conflicting probative evidence. *See Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 309 (5th Cir. 2011) (affirming summary judgment, where "[a]fter closely reviewing the record ... the only document [party] provides to support her claim" is her conclusory, self-serving affidavit, noting "[w]e have repeatedly held that self- serving affidavits, without more, will not defeat a motion for summary judgment.").[46]

---

[46] *See also Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 F. App'x 343, 346–47 (5th Cir. 2011) (affirming summary judgment where party attempting to rebut summary judgment relies on "her own self- serving affidavit," noting "a self-serving affidavit, without more evidence, will not defeat summary judgment"); *Lavergne v. Jefferson County, Tex.*, 164 F.R.D. 441, 443 (E.D. Tex. 1995) ("When an affidavit in response to a summary judgment motion contains "nothing more than a recital of unsupported allegations, conclusory in nature," the motion for summary judgment should be granted"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) (affirming summary judgment where defendant's "attempt to create a fact issue ... by relying on a conclusory and self-serving affidavit is on unsteady ground"); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (affirming summary judgment, and finding that "party's self-serving and unsupported" affidavit regarding her "intent" is "not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").  HCMFA's conclusory assertion that Highland's decision to make demand on the Pre-2019 Notes after Highland's bankruptcy serves as "strong circumstantial evidence" that Highland "operated from 2014 to 2020 consistently with the [Alleged] Agreements being valid and in effect," Objection ¶ 49, also has no basis in law or fact.  That Highland exercised its contractual rights under the Pre-2019 Notes and made demand thereunder on June 2, 2021 (and in accordance with the Acknowledgement Letter) does not lend any support for the existence of the Alleged Oral Agreement.

39.     The Alleged Oral Agreement defense is a fabricated story blatantly contradicted by the summary judgment record, and no reasonable jury could believe it.  *See Salama v. W. Wind Energy Corp.*, 2013 WL 6079548, at *5, No. 4:12–cv–03535 (S.D. Tex. Nov. 19, 2013) ("As the Supreme Court has noted, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment'") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment); *Main Street Bank v. Unisen, Inc.*, No. H-06-3776, 2008 WL 11483415, at *7 (S.D. Tex. Feb. 15, 2008) ("The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment").  as the Bankruptcy Court correctly found, "HCMFA's version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it' and so the court should adhere to the Supreme Court's admonition and not accept HCMFA's allegations of a fact for purposes of ruling on the MSJ." R&R at 41 (quoting *Scott*, 550 U.S. at 380).  HCMFA's objection on this ground should therefore be overruled.

### vi.     HCMFA's Contention that the Bankruptcy Court Improperly Weighed the Credibility of the Evidence Is Without Merit and Should Be Overruled

40.     For these same reasons, HCMFA's assertion that the Bankruptcy Court improperly "weighed the credibility" of the Dondero declarations by "substituting its own judgment for that of a jury's," (Objection ¶¶ 20-23), is without merit and should be overruled.  As discussed *supra*, in finding that the self-serving, internally inconsistent, and uncorroborated Dondero declarations failed to create a genuine dispute of material fact regarding the non-existence of the Alleged Oral Agreements, the Bankruptcy Court acted in line with Fifth Circuit authority

discussed *supra. See Turner*, 476 F.3d at 343; *Hacienda Records*, 718 F. App'x at 234; *Cooper*, 280 F.3d at 550.

41.    HCMFA's reliance on *LegacyRG, Inc. v Harter*, 705 F. App'x 223 (5th Cir. 2017) does not support their argument.  There, the court found that summary judgment was improper against a former employee who was accused of submitting unauthorized payments to himself where the two opposing parties—the employer plaintiff and the employee defendant—submitted contradictory declarations.  The "[employee's] declaration states that the payments were authorized and explains why; [employer's] does the opposite." *Id.* at 230.  The court described this as "a classic swearing match," and admonished the lower court for "crediting [employer's] affidavit and rejecting [employee's]." *Id.* at 231.  In making this finding, however, the court specifically found that "[n]either [declaration] contains the kind of 'conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence' that would allow the Court to reject them." *Id.* at 229 (citing *Chambers v. Sears Roebuck and Co.*, 428 F. App'x 400, 407-08 (5th Cir. 2011)) ("The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence ... Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence … A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.").

42.    Here, unlike in *LegacyRG*, the Bankruptcy Court did not simply choose to credit the contentions in one declaration versus another in what amounted to a classic "swearing match."  Instead, in determining that the Dondero declarations were insufficient to rebut Highland's *prima facie* case for summary judgment, the Bankruptcy Court properly found that

HCMFA's conclusory allegations and unsubstantiated assertions could not defeat Highland's *prima facie* case, especially in light of the overwhelming evidence to the contrary. *See Chambers*, 428 F. App'x at 407-08.  This finding is consistent with applicable Fifth Circuit law discussed *supra*, including *LegacyRG*.  Defendants' remaining case cites are equally distinguishable.[47] Accordingly, HCMFA's contention that the Bankruptcy Court "disregarded Fifth Circuit precedent" by weighing the credibility of the evidence, (Objection ¶ 23), is without merit and should be overruled.

> ### 2.    HCMFA's Remaining Objections Are Insufficient to Create a Genuine Dispute of Fact Regarding the Non-Existence of the Alleged Oral Agreement
>
> #### i.    HCMFA's Contention that Mr. Dondero's Silence upon Sale of MGM Is Not "Probative" of Whether the Alleged Oral Agreement Exists Fails to Create a Genuine Dispute of Material Fact Supporting the Alleged Oral Agreement Defense

43.    According to HCMFA, the Pre-2019 Notes would be forgiven if Mr. Dondero sold one of three "portfolio companies" (including MGM) above cost.  *See* Ex. 234 ¶ 41, Appx. 5114-15; Ex. 210 at 21:25-22:7, Appx. 4857-4858.  There is no dispute that in November 2019 "Mr. Dondero (while still in control of Highland) caused the sale of a substantial interest in MGM for $123.25 million, a portion of which was for the Debtor's interest in a fund (and which sale price was well above its original cost), but he (whether on behalf of himself, personally, or on behalf of HCMFA or any of the Note Maker Defendants) and Highland failed to declare all of the

---

[47] *See, e.g.*, *Dorsett v. Hispanic Hous. & Educ. Corp.*, 389 S.W.3d 609, 613 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (denying nonmovant defendant's "no-evidence" summary judgment against plaintiff for action against defendant for breach of note where defendant could not prove there was no genuine dispute of material fact regarding its nonpayment on note in light of nonmovant's affidavit stating otherwise, noting that a "no-evidence" motion should be granted when, *inter alia*, the evidence offered to prove a vital fact is no more than a mere scintilla."); *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008) (remanding case to district court with instructions to dismiss action as moot after district court's granting of motion for summary judgment on grounds of res judicata after district court rendered decision without jurisdiction).

Notes forgiven, and remained silent about the alleged 'oral agreement' altogether." R&R at 24-25 (citing evidence).

44.     HCMFA contends that Highland "provided no legal authority… supporting its peculiar argument" that Mr. Dondero's silence under these circumstances "is somehow evidence that the [Alleged] Agreements do not exist." Objection ¶ 42. HCMFA misconstrues the legal import of this fact. In noting Mr. Dondero's silence upon a supposed triggering event for the Alleged Oral Agreement, the Bankruptcy Court found this to be just one example, among many, of an undisputed fact that contradicted any notion that the Alleged Oral Agreements actually existed. *See* R&R at 23-25.[48] Mr. Dondero had tens of millions of reasons to disclose the existence of the Alleged Oral Agreements as part of the MGM transaction. His silence under the circumstances suggests only that any notion of the Alleged Agreement had not even been concocted as of the end of 2019, and that the Alleged Oral Agreement defense was fabricated for litigation purposes.[49] HCMFA's objections on this issue should be overruled.

### ii.     The Bankruptcy Court Correctly Found that Highland Does Not Have a History of Loan Forgiveness

45.     HCMFA contends that the Bankruptcy Court's finding concerning the Highland's lack of a "practice" of forgiving loans is "baffling," and that based on HCMFA's evidence, "it was not uncommon for Plaintiff to provide executives with forgivable loans as compensation." Objection ¶¶ 6-7. This is also belied by the record.

---

[48] HCMFA's contention that HCMFA self-declared forgiveness of the Pre-2019 Notes upon the later sale of the remaining MGM interest (Objection ¶ 43) is silly. HCMFA created the document it relies on in 2022, after the Second HCMFA Action was commenced. *See* Def. Ex. 4-E (HCMFA's April 2022 Balance Sheet), Def. Appx. 368-369.

[49] Mr. Dondero's sale of MGM securities in November 2019 occurred after he caused Highland to file for bankruptcy but while he remained in control of the Debtor. The transaction was the subject of motion practice and faced objections by the Official Committee of Unsecured Creditors and others. *See* Ex. 201 ¶29-30, Appx. 3270-3271; Ex. 202 ¶14, Appx. 4135; Ex. 203 ¶1, Appx. 4143; Ex. 204 at 5 n. 5, Appx. 4156. In this context, Mr. Dondero's failure to disclose was either a fraud on the bankruptcy court or is more indicia that the entire Alleged Oral Agreement defense was fabricated for litigation purposes.

DOCS_NY:46763.10 36027/003

46.     Mr. Dondero admitted that Highland *never* forgave *any* loan that it *ever* extended to him, Mr. Okada, or "any entity directly or indirectly owned or controlled" by Mr. Dondero. Ex. 24 (Responses to Requests for Admission 15-17), Appx. 524.  Mr. Dondero's subsequent contention to the contrary may create a genuine dispute in his own mind, not one that defeats summary judgment here because Highland's audited financial statements carry the day on this point.

47.     Mr. Dondero has admitted that Highland disclosed to its auditors all loans of a material amount that Highland ever forgave.  Ex. 98 at 426:8-427:15, Appx. 1777.  As the Bankruptcy Court found, during his deposition, Mr. Dondero's executive compensation expert reviewed Highland's audited financial statements for each year from 2008 through 2018 (Ex. 101 at 119:14-189:21, Appx. 01988-02005) and concluded that (a) Highland has not forgiven a loan to anyone in the world since 2009, (b) the largest loan Highland forgave (in 2008) was $500,000, (c) Highland did not forgiven any loan to Mr. Dondero or any affiliate during this period. Ex. 101 at 189:24-192-10, Appx. 2005-2006.

48.     HCMFA can twist these facts however it wants but they provide no basis for the forgiveness of $70 million in Notes tendered by Mr. Dondero and his affiliated entities nor do they prove in any way that the Alleged Oral Agreements actually exist.

### iii.     HCMFA's Contention that There Is Evidence of Consideration Should Be Overruled

49.     The Bankruptcy Court found that the Alleged Oral Agreements would be unenforceable as a matter of law for, among other reasons, a lack of consideration.  *See* R&R at 44.  HCMFA objects to this finding, contending that this is "an issue of fact for a jury precluding summary judgment."  Objection ¶ 55.  HCMFA is wrong.

50.     Pursuant to the Alleged Oral Agreements, the Pre-2019 Notes were to be forgiven if either (a) Mr. Dondero sold one of three "portfolio" companies "for greater than cost" (the "Dondero Sale Contingency") or (b) the portfolio companies were sold "on a basis outside of Defendant James Dondero's control" (the "Third Party Contingency").  *See* Ex. 234 ¶ 41, Appx. 5114-15. There is no dispute that the Dondero Sale Contingency has not and will never occur. Thus, the Alleged Oral Agreements could only be enforced upon the satisfaction of the Third Party Contingency.

51.     But there is ***no*** evidence in the record establishing that Highland has received or will receive anything of value under a Third Party Contingency sale.   Indeed, Ms. Dondero—the person who supposedly entered into the Alleged Oral Agreements on Highland's behalf--testified as follows:

> Q:     Did you expect Highland to benefit if the portfolio companies were sold on a basis outside of Mr. Dondero's control?
>
> A:     I have no idea, John.
>
> Q:     Did you have any idea – did you or Dugaboy have any idea when you entered into the agreement if Highland would benefit from the sale of the portfolio companies on a basis outside of Mr. Dondero's control?
>
> A:     I wouldn't know that.

Ex. 100 at 203:7-18, Appx. 1925.

52.     That's not surprising.  The "portfolio companies" are certain to be sold by a third party – the reorganized Highland, under the leadership of James P. Seery, Jr.—as required under Highland's confirmed plan of reorganization.  Neither Mr. Dondero nor any of the Makers of the Notes (including HCMFA) will play any role in the disposition of those assets.  Not surprisingly, HCMFA failed to come forward with ***any*** admissible evidence showing the consideration Highland received in exchange for the forgiveness of the Notes when the "portfolio

27

companies" are sold in accordance with Highland's confirmed Plan of Reorganization (*i.e.,* the Third Party Contingency) precisely because there is no conceivable benefit.  As pertinent here, and as the Bankruptcy Court found, "HCMFA does not even allege that **HCMFA** gave any consideration to Highland in exchange for Highland's alleged agreement to forgive HCMFA's indebtedness under the Pre-2019 Notes upon the occurrence of a condition subsequent." R&R at 45.

53.    HCMFA's case cites do not support its argument.  In *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492 (Tex. 1991), the court held that the question of whether there was consideration was a fact issue where, *inter alia*, the terms of an agreement were "ambiguous" as to whether there was a bargained for exchange and where certain admissions "do not conclusively prove that there was no consideration." *Id.* at 496.  Here, by contrast, the terms of the Alleged Oral Agreement, on their face, conclusively demonstrative that the Alleged Oral Agreement was not the result of a bargained for exchange.  Moreover, whether the Court concludes based on the evidence that Highland received "no consideration" or "grossly inadequate" consideration is beside the point:  the Reorganized Debtor is selling all of its assets pursuant to a confirmed asset-monetization plan and Defendants have failed to offer a scintilla of evidence as to how the estate would benefit from forgiving over $70 million in loans under the circumstances.

54.    *Garcia v. Lumacorp, Inc.*, No. CIV.A. 3:02-CV-2426, 2004 WL 1686635, at *11 (N.D. Tex. July 27, 2004), aff'd, 429 F.3d 549 (5th Cir. 2005) is equally distinguishable. There, the court held there was consideration exchanged under a settlement agreement which provided that plaintiff would waive and release all of this rights and claims against that employer in exchange for the employer agreeing to pay plaintiff's outstanding medical bills and an additional $10,000.  The court reasoned that "[w]hat Plaintiffs really complain about is the *adequacy of*

*consideration*" and that "[n]ormally, a court will not inquire into the adequacy of consideration supporting a contract; however, in the interest of equity, a court may inquire into the adequacy of a contract if there is such a gross disparity in the relative values exchanged as to show unconscionability, bad faith, or fraud."  2004 WL 1686635, at *11.  Here, unlike in *Garcia*, Defendants fail to point to *any* consideration supporting the Alleged Oral Agreements (assuming a factfinder would find they existed in the first place).  Even if there were somehow consideration, however, it is grossly inadequate for the reasons discussed *supra*.

55.    HCMFA's remaining case cites are equally inapposite.  In *Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74 (Tex. App. 2014), the court held that in "a written instrument reciting consideration," pursuant to which one party was to receive one-third of the sales price of certain stock, and in return, another party would be divested of his interest in that stock, was enough to show that a contract was supported by consideration. *Id.* at 86.  Here, unlike in *Katy*, not only is there no agreement reciting consideration, but there is no evidence at all showing any consideration.  Other cases relied upon by Defendants hold there was consideration only where a party clearly gave up its legal rights in exchange for the agreement.  *See 1320/1390 Don Haskins, Ltd. v. Xerox Com. Sols., LLC*, 584 S.W.3d 53, 65–66 (Tex. App. 2018) (holding that an agreement was supported by consideration where one party to agreement gave up its rights under a lease); *Marx v. FDP, LP*, 474 S.W.3d 368, 378–79 (Tex. App. 2015) (there was valid consideration where the record supported that pursuant to certain provisions in the agreement, the parties "relinquished their disputed claims against each other in return for" ownership of property).  Again, here, Mr. Dondero did not give up any rights in exchange for the Alleged Agreement.

56.    Defendants other case cites are equally inapposite to the present facts.  *See First Com. Bank v. Palmer*, 226 S.W.3d 396, 398–99 (Tex. 2007) (holding that guaranty

agreements were supported by consideration where guaranties were executed in connection with renewal of promissory note to prevent payee from accelerating debt , noting that there is consideration in guarantee where guarantor's promise is given as part of the transaction that creates the guarantied debt); *Southern Equip. Sales, Inc. v. Ready Mix Sols., LLC*, No. 05-17-01176- CV, 2018 WL 3454801, at *5 (Tex. App. July 18, 2018) (dealing with whether "an oral agreement to extend the payment date for a debt" is supported by consideration.  The court noted that in such circumstances, "courts have found no consideration when no interest is due," and ultimately found that "the record contains no evidence that any oral agreement to extend the payment date of the deposit was supported by consideration" because there was no evidence that the obligor was required to pay interest on the debt).  Again, there is no evidence here that, in agreeing to forgive over $6.3 million in loans, there was any detriment to Mr. Dondero or benefit received at Highland.

57. HCMFA's remaining authority is more than 100 years old and, like their other cases, entirely irrelevant to the present facts.  *See Hoard v. McFarland*, 229 S.W. 687 (Tex. Civ. App. 1921) (dealing with whether cancellation of vendor's lien note before expiration of limitations period was sufficient consideration for reconveyance); *Brown v. Jackson*, 40 S.W. 162 (Tex. Civ. App. 1897) (dealing with whether agreement by execution debtor with agent of execution creditor not to bid at execution sale was sufficient consideration for agent's promise to allow the debtor to redeem).

58. The reorganized Highland is legally obligated to sell the "portfolio companies."  HCMFA has failed to identify anything of value that it provided that would require Highland to forgive the Pre-2019 Notes upon the consummation of those sales.

      **iv.**   **Defendants' Contention that Nancy Dondero Was "Competent" to Enter into the Alleged Oral Agreements' Is Without Merit and Fails to Create Any Dispute of Material Fact Regarding the Existence of the Alleged Oral Agreement**

59.    As discussed *supra*, the Bankruptcy Court found there were numerous reasons that no reasonable jury could find that the Alleged Oral Agreement existed, including, *inter alia,* that Ms. Dondero had no meaningful knowledge surrounding the circumstances underlying the Alleged Oral Agreement. *See* R&R at 43 (citing extensive evidence about Ms. Dondero's lack of knowledge regarding promissory notes, Highland's financials, and loans made by Highland). HCMFA contests the Bankruptcy Court's findings on the ground that it improperly "criticizes the lack of first-hand information Nancy Dondero had about Plaintiff's business practices when she entered the [Alleged] Agreements." Objection ¶ 56. In support thereof, HCMFA incorporates its arguments set forth in the Main Notes Objection, Section IV.B.1.e. *See id.* n. 140. Accordingly, in response thereto, Highland incorporates by reference its Main Notes Response, Section IV, B.1.x., and for the reasons set forth therein, HCMFA's objection on this ground should be overruled.

      **v.**    **Defendants' Contention that Nancy Dondero Had Authority under the LPA to Bind Highland Is Without Merit and Does Not Create a Genuine Dispute of Material Fact Concerning the Non-Existence of the Alleged Oral Agreement**

60.    HCMFA objects to the Bankruptcy Court's finding that the Alleged Oral Agreements, if they existed, would not be valid on the grounds that Ms. Dondero lacked authority to bind Highland to the Alleged Oral Agreements under the LPA. *See* R&R at 41-42. HCMFA contends that this finding "lacks supporting legal authority," and is an "inaccurate reading of the LPA." Objection ¶ 57. HCMFA's objection is without merit, and otherwise fails to create a genuine dispute of material fact regarding the existence of the Alleged Oral Agreements.

61.     As the Bankruptcy Court correctly found, even assuming HCMFA could adduce evidence supporting the existence of the Alleged Oral Agreement, HCMFA offers no support for its "bizarre argument" that Ms. Dondero, acting as the "Family Trustee of the Dugaboy Investment Trust," which was the holder of the majority of the Class A limited partnership interests of Highland, was authorized under Section 3.10(a) of the LPA to enter into agreements on behalf of Highland concerning Mr. Dondero's compensation.  *See* R&R at 41-42.  As the Bankruptcy Court explained, Section 3.10(a) provides, in relevant part, "The General Partner and any Affiliate of the General Partner shall receive no compensation from the Partnership for services rendered pursuant to this Agreement or any other agreements unless approved by a Majority Interest." Ex. 30, Appx. 622, the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.

62.     As in an initial matter, the Bankruptcy Court noted, this provision is arguably not even relevant to Mr. Dondero's compensation as CEO and president of Highland (as opposed to his status as the General Partner of Strand). *See id.*  And even if the provision pertained to compensation of Mr. Dondero specifically as CEO and president of Highland, the Bankruptcy Court found, "the provision says nothing about the Majority Interest having the ***authority*** to act on behalf of Highland to enter into agreements with third parties regarding compensation, and that "approval and authority are different concepts." *Id.* at 42.   In light of the clear terms of the LPA, the Bankruptcy Court found that it simply did not make sense that "Dugaboy had authority … to exert control over Highland and do things like release millions of dollars' worth of debt owed to Highland by a corporate affiliate, in order to provide compensation to Mr. Dondero as CEO, president, and controlling portfolio manager of Highland." *Id.*  As the Bankruptcy Court explained, HCMFA's "bizarre" argument to this effect was especially unbelievable in light of the fact that

32

Ms. Dondero specifically testified that, inter alia, "she had no meaningful knowledge, experience, or understanding of (a) Highland or its business, (b) the financial industry, (c) executive compensation matters, or (d) Mr. Dondero's compensation or whether he was 'underpaid compared to reasonable compensation levels in the industry.'" R&R at 43 (citing Ex. 100 at 42:22-43:8, Appx. 1885, 48:7-61:9, Appx. 1886-1889; 211:8-216:21, Appx. 1927-1928).  HCMFA's contention that the LPA clearly authorized Ms. Dondero, on behalf of Dugaboy, to enter into the Alleged Oral Agreement on behalf of Highland with "no restriction," Objection ¶ 57, is unsupported by the Record, and otherwise does not create a genuine dispute of material fact concerning the non-existence of the Alleged Oral Agreement.  HCMFA's objection on this ground should be overruled.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court (i) grant its Motion, (ii) hold HCMFA liable for (a) breach of contract and (b) turnover for all amounts due under the Pre-2019 Notes, including the costs of collection and reasonable attorneys' fees in an amount to be determined and (iii) grant such other and further relief as the Court deems just and proper.

DOCS_NY:46763.10 36027/003

Dated:  November 23, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com


*Counsel for Highland Capital Management, L.P.*

# **<u>EXHIBIT A</u>**

1

## PARTIES, WITNESSES, AND DEFINITIONS

1.  "Action" refers to the above-captioned proceeding against HCMFA.

2.  "Bankruptcy Court" refers to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

3.  "Corporate Obligors" refers to HCMFA, NexPoint, HCMS, and HCRE in their capacities as makers under their respective Notes.

4.  "Dugaboy" refers to the Dugaboy Investment Trust, a family trust in which Mr. Dondero is the sole beneficiary, and which was the holder of the majority of the Class A limited partnership interests of Highland.

5.  "HCMFA" refers to Highland Capital Management Advisors, L.P.  HCMFA is an entity that provides investment advisory services to certain retail funds. Ex. 105 at 32:17-23. HCMFA is directly or indirectly owned and controlled by Mr. Dondero. Ex. 96 at 228:11-15.

6.  "Lead District Court Note Action" refers to Case No. 21-881, the lead District Court case overseeing the Main Notes Litigation and the Second HCMFA Notes Action.

7.  "LPA" refers to the *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.*

8.  "NexPoint" refers to NexPoint Advisors, L.P.  NexPoint is an entity that provides investment advisory services to certain retail funds. Ex. 105 at 32:17-23.  HCMFA is directly or indirectly owned and controlled by Mr. Dondero. Ex. 96 at 228:16-19.

9.  "Notes Actions" refers to the Action and the Main Notes Litigation collectively.

10.  "HCRE" refers to HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC), and is an entity that is directly or indirectly owned by Mr. Dondero. Ex. 96 at 228:20-23.

11.  "HCMS" refers to Highland Capital Management Services, Inc., and is an entity that is directly or indirectly owned or controlled by Mr. Dondero. Ex. 96 at 228:24-229:4.

1

12.    "Main Notes Defendants" refers to the five defendants in the Main Notes Litigation: (i) James Dondero, (ii) HCMFA, (iii) NexPoint, (iv) HCRE, and (v) HCMS.

13.    "Main Notes Litigation" refers to the five adversary proceedings commenced against the Main Note Defendants for breach of their respective obligations under certain notes. *See* Adv. Proc. Nos. 21-03003-sgj, 21-03004-sgj, 21-03005-sgj, 21-03006-sgj, 21-03007-sgj.

14.    "Main Notes Response" refers to the *Brief in Support of Highland Capital Management, L.P.'s Response to Defendant's Revised Objection to the Bankruptcy Court's Report and Recommendation to the District Court Proposing that it Grant Summary Judgment in Favor of the Plaintiff*, filed in this Court at Docket No. 68.

15.    "Mr. Dondero" refers to an individual named James Dondero.  Mr. Dondero is the founder and former president and Chief Executive Officer of Highland.  Ex. 96 at 248:3-6.  Mr. Dondero served as Highland's president from 1994 until January 9, 2020. Ex. 98 at 291:6-292:16. At all relevant times, Mr. Dondero also served as President of HCMFA and directly or indirectly owned or controlled each of the Corporate Obligors.  Ex. 37; Ex. 96 at 228:6-229.

16.    "Ms. Dondero" refers to an individual named Nancy Dondero.  Ms. Dondero is Mr. Dondero's sister.  At Mr. Dondero's request, Ms. Dondero became the sole Trustee of Dugaboy in October 2015 and has served in that capacity since that time.  Ex. 96 at 174:21-25; Ex. 100 at 166:19-169:5.

17.    "Mr. Norris" refers to an individual named Dustin Norris.  Mr. Norris has been an officer of HCMFA since 2012, and currently serves as the Executive Vice President of HCMFA. Ex. 35; Ex. 192 at 18:11-25.

2

18.     "Mr. Post" refers to an individual named Jason Post. Mr. Post was employed by Highland in 2018 and 2019, and then became an employee of HCMFA and served as the Chief Compliance Officer for each of the Advisors.  Ex. 105 at 184:13-185:3; Ex. 192 at 32:6-33:25.

19.     "Mr. Sauter" refers to an individual named Dennis C. Sauter.  Mr. Sauter served as Highland's general counsel of real estate from approximately February 2020 until April 2021 and has served as the general counsel of NexPoint from April 2021 to the present.  Ex. 193 at: 7:16-9:12.

20.     "Ms. Thedford" refers to an individual named Lauren Thedford.  Ms. Thedford is an attorney who was previously employed by Highland while simultaneously serving as an officer of HCMFA and NexPoint, holding the title of Secretary.  Ms. Thedford also served as an officer of the retail funds managed by the Advisors until early 2021.  Ex. 35; Ex. 37; Ex. 105 at 172:10-173:25.

21.     "Mr. Waterhouse" refers to an individual named Frank Waterhouse.   Mr. Waterhouse is a Certified Public Accountant who joined Highland Capital Management, L.P. in 2006 and served as Highland's Chief Financial Officer ("CFO") on a continuous basis from approximately 2011 or 2012 until early 2021.  While serving as Highland's CFO, Mr. Waterhouse simultaneously served as (1) an officer of HCMFA, NexPoint, and HCMS, holding the title of Treasurer and (2) Principal Executive Officer of certain retail funds managed by the Advisors.  As Treasurer and Principal Executive Officer of these entities, Mr. Waterhouse was responsible for managing the Advisor's accounting and finance functions.  Ex. 35; Ex. 37; Ex. 105 at 18:6-15, 18:23-19:6, 21:15-17, 23:5-20, 25:17-26:8, 27:17-28:16, 29:2-10, 30:9-31:6, 34:12-35:19, 38:20-39:5.

22.     "PwC" refers to Pricewaterhouse Coopers, firm that served as Highland's outside auditors from 2003 through at least June 3, 2019.  Ex. 34; Exs. 63-66; Exs. 69-72; Ex. 87 at 9 (Item 26b.1).

23.     "R&R" refers to the *Report and Recommendation to the District Court Regarding Highland Capital Management, L.P.'s Motion for Summary Judgment Against Highland Capital Management Fund Advisors, L.P.* [Docket No. 71-1].

24.     "Second Klos Dec." refers to the *Declaration of David Klos in Support of Highland Capital Management, L.P.'s Motion for Summary Judgment*, filed simultaneously with the Motion.

25.     "Summary Judgment Motion" refers to the *Motion for Summary Judgment against HCMFA* in the Action. *See* Adv. Pro. No. 21-03082, Docket No. 45.

4