Deborah Deitsch-Perez
Michael P. Aigen
STINSON LLP
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com
**Attorneys for James Dondero, Nancy Dondero,
Highland Capital Management Services, Inc. and
NexPoint Real Estate Partners, LLC**

Davor Rukavina
Julian P. Vasek
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75202-2790
(214) 855-7500 telephone
(214) 978-4375 facsimile
Email:  drukavina@munsch.com

**Attorneys for NexPoint Advisors, L.P. and
Highland Capital Management Fund Advisors, L.P.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 21-03003-sgj |
| | § | |
| vs. | § | Civ. Act. No. 3:21-cv-01010 |
| | § | |
| JAMES DONDERO, NANCY DONDERO, AND | § | (Consolidated Under Civ. Act. No. 3:21- |
| THE DUGABOY INVESTMENT TRUST, | § | cv-00881) |
| | § | |
| Defendants. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adv. Proc. No. 21-03004-sgj |
| | § | |
| vs. | § | Civ. Act. No. 3:21-cv-00881 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | (Consolidated Under Civ. Act. No. 3:21- |
| ADVISORS, L.P., | § | cv-00881) |
| | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **Adv. Proc. No. 21-03005-sgj** |
| | § | **Civ. Act. No. 3:21-cv-00880** |
| **NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § § § § § | **(Consolidated Under Civ. Act. No. 3:21-cv-00881)** |
| **Defendants.** | § § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **Adv. Proc. No. 21-03006-sgj** |
| | § | **Civ. Act. No. 3:21-cv-01378** |
| **HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § § § § § § | **(Consolidated Under Civ. Act. No. 3:21-cv-01378)** |
| **Defendants.** | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § § § | **Adv. Proc. No. 21-03007-sgj** |
| **Plaintiff,** | § § | **Civ. Act. No. 3:21-cv-01379** |
| **vs.** | § § | |
| **HCRE PARTNERS, LLC (n/k/a NexPoint Real Estate Partners, LLC), JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST,** | § § § § § § | **(Consolidated Under Civ. Act. No. 3:21-cv-00881)** |
| **Defendants.** | § § | |

**DEFENDANTS'[1] OBJECTION TO THE BANKRUPTCY COURT'S SUPPLEMENT TO REPORT AND RECOMMENDATION TO AWARD PLAINTIFF ITS ATTORNEYS' FEES AND COSTS[2]**

---

[1] Defendants Jim Dondero, Highland Capital Management Services, Inc. ("HCMS"), HCRE Partners, LLC ("HCRE"), HCMFA, and NexPoint Advisors, L.P. ("NexPoint"), are collectively referred to as the "Defendants" throughout this Objection unless otherwise expressly named.
[2] Referred to herein as the "Objection."

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

I.      PRELIMINARY STATEMENT .................................................................................. 1

II.     BACKGROUND ......................................................................................................... 1

        A.      Procedural Background ................................................................................... 1

        B.      Factual Background ........................................................................................ 2

III.    ARGUMENTS AND AUTHORITIES ....................................................................... 3

        A.      Legal Standard ............................................................................................... 3

        B.      The Bankruptcy Court Recommends an Unreasonable Award of Attorneys' Fees
                and the District Court Should Reduce any Such Award From the Requested
                Amount. .......................................................................................................... 4

                1.      The Court Should Reduce the Proposed Award by the Amount of Fees
                        That Plaintiff Failed to Document and Explain in its Initial Request. ........ 4

                2.      Recoverable Fees are Limited to Breach of Contract and Turnover, Which
                        are the Only Claims Plaintiff Prevailed on and are the Only Claims For
                        Which Plaintiff Sought Attorneys' Fees. ................................................... 6

                3.      The Court Should Exclude Entries That are not Segregated by Defendant. 9

                4.      The Court Should Reduce the Proposed Award by the Amount of all Fees
                        Charged to Plaintiff that are Related to Unsuccessful Litigation by
                        Plaintiff. ................................................................................................ 11

                5.      Plaintiff's Law Firm of Pachulski, Stang, Ziehl & Jones Charged Rates
                        Far in Excess of the Customary Rates in the Northern District of Texas. 12

                6.      Plaintiff's Attorneys Exercised No Billing Judgment, and Therefore the
                        Court Should Reduce the Award. ............................................................ 15

IV.     CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustus v. Board of Public Instruction of Escambia County, Fla.*,
    306 F.2d 862 (5th Cir. 1962) ...................................................................12

*Bays v. United States*,
    2016 WL 2983675 (N.D. Tex. May 24, 2016) .........................................3

*Clearview Properties, L.P. v. Property Texas SC One Corp.*,
    287 S.W.3d 132 (Tex. App. 2009) ....................................................10, 11

*Combs v. City of Huntington, Texas*,
    829 F.3d 388 (5th Cir. 2016) .....................................................................4

*Executive Benefits Ins. Agency v. Arkison*,
    573 U.S. 25 (2014) .....................................................................................3

*G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*,
    177 S.W.3d 537 (Tex. App. 2005) .............................................................7

*Habets v. Waste Mgmt., Inc.*,
    363 F.3d 378 (5th Cir. 2004) .....................................................................3

*Highland Capital Mgmt. L.P. v. Bank of Am., Nat. Ass'n*,
    No. 3:10-CV-1632-L, 2013 WL 4502789 (N.D. Tex. Aug. 23, 2013) ...............................5, 16

*Hong Kong Development, Inc. v. Nguyen*,
    229 S.W.3d 415 (Tex. App. 2007) ...........................................................11

*Hopwood v. State of Texas*,
    236 F.3d 256 (5th Cir. 2000) ...................................................................13

*Jackson Law Office, P.C. v. Chappell*,
    37 S.W.3d 15 (Tex. App. 2000) .................................................................9

*In re Jenkins*,
    617 B.R. 91 (Bankr. N.D. Tex. 2020) ........................................................7

*Life Ins. Co. Robbins v. Robbins*,
    550 S.W.3d 846 (Tex. App. 2018) .............................................................7

*Massachusetts Mut. Life Ins. Co. v. Sanders*,
    787 F.Supp.2d 628 (S.D. Tex. 2011) .........................................................7

CORE/3522697.0002/178404928.3

*Mathews v. Weber*,
    423 U.S. 261 (1976)...........................................................................................................3

*Mauricio v. Phillip Galyen, P.C.*,
    174 F. Supp. 3d 944 (N.D. Tex. 2016) ..........................................................................15

*McGibney v. Rauhauser*,
    549 S.W.3d 816 (Tex. App. 2018)....................................................................................4

*Midkiff v. Prudential Ins. Co. of Am.*,
    571 F. Supp. 3d 660 (W.D. Tex. 2021)...........................................................................13

*In re Mud King Products, Inc.*,
    525 B.R. 43 (Bankr. S.D. Tex. 2015) ...............................................................................9

*In re OCA, Inc.*,
    No. CIV.A. 06-3811, 2006 WL 4029578 (E.D. La. Sept. 19, 2006) ........................................3

*Robles v. Eminent Medical Center, LLC*,
    --- F.Supp.3d ----, 2022 WL 3081827 (N.D. Tex. Aug. 3, 2022) ............................................12

*Rodriguez v. Countrywide Home Loans, Inc.*,
    421 B.R. 341 (S.D. Tex. 2009) ........................................................................................3

*Roggio v. Grasmuck*,
    18 F. Supp. 3d 49 (D. Mass. 2014) ................................................................................11

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*,
    578 S.W.3d 469 (Tex. 2019)............................................................................................6

*Smith v. Smith*,
    154 F.R.D. 661 (N.D. Tex. May 10, 1994)........................................................................3

*Taylor v. Comm'r of Soc. Sec. Admin*,
    2022 WL 2992877 (N.D. Tex. July 27, 2022) ...................................................................3

*In re Texans CUSO Inc. Grp., LLC*,
    426 B.R. 194 (Bankr. N.D. Tex. 2010).............................................................................4

*Tollett v. City of Kemah*,
    285 F.3d 357 (5th Cir. 2002) .....................................................................................13, 14

*Tony Gullo Motors I, L.P. v. Chapa*,
    212 S.W.3d 299 (Tex. 2006)............................................................................................6

*United States v. Wagner*,
    930 F. Supp. 1148 (N.D. Tex. 1996) ................................................................................4

iii

*United States v. Whisenhunt*,
   2014 WL 1226177 (N.D. Tex. Mar. 25, 2014) ..........................................................................3

*Van Horne v. Valencia*,
   2022 WL 2800878 (N.D. Tex. July 18, 2022) ..........................................................................3

*Varner v. Cardenas*,
   218 S.W. 3d 68, 69 (Tex. 2007)................................................................................................8

*Wal-Mart Stores, Inc. v. Qore, Inc.*,
   647 F.3d 237 (5th Cir. 2011) ..................................................................................................11

**Rules and Statutes**

28 U.S.C. § 636(b)(1) ........................................................................................................................3

Fed. R. Civ. P. 72(b) .........................................................................................................................3

Northern District of Texas Local Rule 56.7....................................................................................5

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)........................................................................................12

CORE/3522697.0002/178404928.3

## I.    PRELIMINARY STATEMENT

1.    On July 19, 2022, the Bankruptcy Court issued its Report and Recommendation to the District Court (the "R&R"), recommending partial summary judgment for Plaintiff with respect to all the Notes in the above-referenced consolidated Notes actions.[3]  On November 10, 2022, the Bankruptcy Court issued a Supplement to Report and Recommendation (the "R&R Supplement"), recommending an attorneys' fees judgment for Plaintiff in the amount of $2,797,105.35 incurred in the above-referenced consolidated Notes actions.[4]  In this Objection to the R&R Supplement, Defendants request that the District Court, (1) deny Plaintiff's request for an award of attorneys' fees and costs by denying Plaintiff's related motion for summary judgment (for the reasons already separately briefed[5]) or, (2) if the District Court grants Plaintiff's motion for summary judgment, modify any award of such attorneys' fees and costs as requested herein.

## II.    BACKGROUND

### A.    Procedural Background

2.    On July 19, 2022, the Bankruptcy Court recommended summary judgment for Plaintiff.[6]  As part of this, the Bankruptcy Court recommended an award of attorneys' fees and directed Plaintiff to file a notice regarding such attorneys' fees with backup documentation.[7]

3.    On August 5, 2022, Plaintiff filed in the Bankruptcy Court its Notice of Attorneys' Fees Calculation and Backup Documentation, requesting an award of $2,797,105.35 for Plaintiff's attorneys' fees and costs in the Bankruptcy Court (the "Notice of Attorneys' Fees").[8]  On August

---

[3] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 191, at 43–45.
[4] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 217, at 17, Ex. A (¶ 4), Ex. B (¶ 3), Ex. C (¶ 2), Ex. D (¶ 6), Ex. E (¶ 6).
[5] Civ. Act. No. 3:21-cv-00881, Dkt. 63.
[6] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 191, at 43–45.
[7] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 191, at 43–45.
[8] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 197, at 8 (¶ 15).

23, 2022, Defendants filed their Objections to Plaintiff's Proposed Form of Judgment Awarding Attorney's Fees and Costs.[9]

4.  On September 27, 2022, Plaintiff responded to Defendants' Objections[10] and filed with the Bankruptcy Court its Motion For Leave to Supplement Backup Documentation in Support of Proposed Judgment (the "Motion to Supplement")[11] because Plaintiff omitted certain billing documentation as set forth in Defendant's Objections.  Defendants opposed the Motion to Supplement,[12] to which Plaintiff filed its reply brief.[13]  On October 24, 2022, the Bankruptcy Court granted the Motion to Supplement because "the Plaintiff's omission of the Supplemental Invoices appears to have been inadvertent" and Defendants "had 28 days to review the Supplement Invoices."[14]  On November 10, 2022, the Bankruptcy Court recommended awarding Plaintiff all its requested attorneys' fees and costs, in the amount of $2,797,105.35.[15]

### B.  Factual Background

5.  Each of the thirteen Demand Notes and three Term Notes under which the Bankruptcy Court has recommended an award of attorneys' fees to Plaintiff permit the holder of the note to collect from the Maker only "actual expenses of collection, all court costs and *reasonable* attorneys' fees and expenses incurred by the holder hereof[,]" as stated in the R&R.[16] The R&R proposes awarding judgment to Plaintiff on all the Demand Notes and Term Notes, including "reasonable attorneys' fees" and costs.

---

[9] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 204.
[10] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 207, 208.
[11] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 205.
[12] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 210.
[13] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 211.
[14] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 212.
[15] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 217, at 17, Ex. A (¶ 4), Ex. B (¶ 3), Ex. C (¶ 2), Ex. D (¶ 6), Ex. E (¶ 6).
[16] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 191, at 13, 16 (emphasis added).

## III.    ARGUMENTS AND AUTHORITIES

### A.    Legal Standard

6.    Upon a timely filed objection, District Courts review the Reports and Recommendations of bankruptcy judges deciding non-core matters de novo.[17]   Under this standard, the District Court reviews the case with a fresh set of eyes and makes its own informed, final determination because it is not bound by the lower court's Report and Recommendation, which lacks presumptive weight.[18]

7.    Courts generally determine reasonableness of an award of attorneys' fees based on the two-step lodestar method:

> Courts must apply a two-step method for determining a reasonable fee award. First, they calculate the lodestar, which is equal to the numbers of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work.  In calculating the lodestar, the **_court should exclude all time that is excessive, duplicative, or inadequately documented_**.  Second, the court should consider whether to decrease or enhance the lodestar based on the _Johnson_ factors. The court must provide a reasonably specific explanation for all aspects of a fee determination.

> The _Johnson_ factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance

---

[17] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); _Executive Benefits Ins. Agency v. Arkison_, 573 U.S. 25, 34 (2014) ("If a matter is non-core, and the parties have not consented to final adjudication by the Bankruptcy Court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding de novo and enter final judgment."); _Rodriguez v. Countrywide Home Loans, Inc._, 421 B.R. 341, 349 (S.D. Tex. 2009) ("The Bankruptcy Court makes the initial determination of the core status of the proceedings, however, the district court conducts a de novo review of the Bankruptcy Court's findings") (citing _Mirant Corp. v. The Southern Co._, 337 B.R. 107, 115 n. 13 (N.D. Tex. 2006), internal footnotes omitted); _In re OCA, Inc._, No. CIV.A. 06-3811, 2006 WL 4029578, at *3 (E.D. La. Sept. 19, 2006) ("The Bankruptcy Court is authorized to make findings of facts and law in the non-core matters, but these determinations will be subject to de novo review by the district court. In this sense, the Bankruptcy Court acts like a magistrate's court with respect to the proceedings that are related but non-core.") (internal citations omitted); _Taylor v. Comm'r of Soc. Sec. Admin_, 2022 WL 2992877 (N.D. Tex. July 27, 2022); _Van Horne v. Valencia_, 2022 WL 2800878, at *1 (N.D. Tex. July 18, 2022); _Smith v. Smith_, 154 F.R.D. 661, 665 (N.D. Tex. May 10, 1994).

[18] _Mathews v. Weber_, 423 U.S. 261, 270–71 (1976); _Habets v. Waste Mgmt., Inc._, 363 F.3d 378, 381 (5th Cir. 2004); _Bays v. United States_, 2016 WL 2826346, at *1 (N.D. Tex. May 24, 2016) (declining in part to adopt the magistrate judge's findings, conclusions, and recommendation to deny the Defendant's motion for partial dismissal, and instead upon de novo review, determining that the Defendant was entitled to summary judgment on most of its claims); _United States v. Whisenhunt_, 2014 WL 1226177, at *6 (N.D. Tex. Mar. 25, 2014) (declining to adopt the magistrate judge's recommendation under de novo review).

of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[19]

8.      ". . . [T]he trial court's award must be based on supporting evidence."[20]  ". . . [A] trial judge is obliged to do more than simply act as a rubber-stamp, accepting carte blanche the amount appearing on the bill."[21]  "The District Court has the duty to cut fees which the applicant has not shown to be reasonable."[22]

**B.      The Bankruptcy Court Recommends an Unreasonable Award of Attorneys' Fees and the District Court Should Reduce any Such Award From the Requested Amount.**

9.      The District Court should reduce the amount of any award of attorneys' fees and costs by the amount of fees (1) that Plaintiff failed to document and explain in its initial request, (2) attributable to litigation of any claim other than breach of contract and turnover, (3) that are not segregated by Defendant, (4) that are related to unsuccessful litigation by Plaintiff, (5) in excess of customary rates in the Northern District of Texas, and (6) for which Plaintiff's attorneys should have exercised better billing judgment.

**1.      The Court Should Reduce the Proposed Award by the Amount of Fees That Plaintiff Failed to Document and Explain in its Initial Request.**

10.      The amount of attorneys' fees ($2,663,585.30) claimed by Plaintiff's law firm of Pachulski, Stang, Ziehl & Jones LLP ("PSZJ") is $395,996.50 in excess of the total of the non-redacted time entries in the Notice of Attorneys' Fees.  Plaintiff filed a Motion to Supplement

---

[19] *Combs v. City of Huntington, Texas*, 829 F.3d 388, 391 n.1 (5th Cir. 2016) (citations and internal marks omitted) (emphasis added); *see also In re Texans CUSO Inc. Grp., LLC*, 426 B.R. 194, 222–23 (Bankr. N.D. Tex. 2010) (citing *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).
[20] *McGibney v. Rauhauser*, 549 S.W.3d 816, 821 (Tex. App. 2018).
[21] *Id.*
[22] *United States v. Wagner*, 930 F. Supp. 1148, 1154 (N.D. Tex. 1996) (citation omitted).

pursuant to Northern District of Texas Local Rule 56.7 to provide additional documentation and explanation to support the further document and explain the $395,996.50 error in its initial request. The Bankruptcy Court granted the Motion to Supplement over Defendants' objections.

11.     The Northern District of Texas has analogously addressed parties supplementing legal authorities under Local Rule 56.7:

> Local Civil Rule 56.7 provides: "Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence." The court generally discourages attempts to file supplemental authorities if the authorities were previously available when a party submitted its motion, response, or reply brief.[23]

12.     While the Supplemental Invoices here are not legal authorities, they were certainly previously available to Plaintiff when Plaintiff submitted its Notice of Attorneys' Fees. Plaintiff gives no explanation or other showing of good cause regarding why it did not include the Supplemental Invoices other than simply claiming "we inadvertently omitted the invoices for January and February 2022[.]"[24] Further, the same court noted that a non-supplementing party must not suffer prejudice before a court may grant supplementation under Local Rule 56.7.[25] Additionally, in that case, the court denied a party's request to revise one page of an expert report because it "would unduly prejudice [the other party] and disrupt[] the court's docket" and the requesting party "has presented no explanation as to why it was unable, in the [] days it had to respond," to respond timely and appropriately.

---

[23] *Highland Capital Mgmt. L.P. v. Bank of Am., Nat. Ass'n*, No. 3:10-CV-1632-L, 2013 WL 4502789, at *28 (N.D. Tex. Aug. 23, 2013), aff'd sub nom. Highland Capital Mgmt., L.P. v. Bank of Am., N.A., 574 Fed. Appx. 486 (5th Cir. 2014).

[24] *See* Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s Motion for Leave to Supplement Backup Documentation in Support of Proposed Judgment, Ex. A.

[25] *Highland Capital Mgmt. L.P. v. Bank of Am., Nat. Ass'n*, 2013 WL 4502789, at *28 (holding that, because the plaintiff did not suffer any "legal prejudice" by the court's consideration of supplemental authority, such authority would be admitted).

13.     Plaintiff's failure to include two months of its attorneys' billing statements prejudiced Defendants by not allowing Defendants to timely examine the statements for accuracy, duplicity of work, redactions, and other factors relating to a reasonableness and necessity-of-attorney's-fees analysis.[26]   The District Court should reduce any award of attorneys' fees by the amount that Plaintiff failed to document and explain correctly in its initial request ($395,996.50) because Defendants were prejudiced by the omission.

### 2.     Recoverable Fees are Limited to Breach of Contract and Turnover, Which are the Only Claims Plaintiff Prevailed on and are the Only Claims For Which Plaintiff Sought Attorneys' Fees.

14.     In its Amended Complaint, Plaintiff asserted claims for breach of contract, turnover of property, fraudulent transfer (under 11 U.S.C. § 548), fraudulent transfer (under 11 U.S.C. §§ 544(b) and 550), declaratory relief, breach of fiduciary duty, and aiding and abetting.   In its written request for fees, Plaintiff correctly only sought to recover attorneys' fees for its breach of contract and turnover claims in its Amended Complaint and those are the only claims addressed by the R&R issued by the Court.   In other words, Plaintiff was only the prevailing party on its claims for breach of contract and turnover of property and, thus, it is not entitled to recover any attorneys' fees for work done on its other claims, regardless of their arguably tangential nature.[27]

---

[26] *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019) (affirming the Lodestar Method as the preferred method of determining what evidence is recommended to support the reasonableness and necessity of claimed attorney's fees).

[27] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees.").

15.     Because not all fees are recoverable, fee claimants are required to segregate fees between claims for which they are recoverable and claims that are not.[28] Moreover, attorneys' fees are not recoverable for the claims asserted by Plaintiff other than breach of contract and turnover.[29]

16.     Plaintiff's fee request includes time for at least $222,000 in fees devoted to amending Plaintiff's complaint to add claims for which fees cannot be recovered. Plaintiff's fee request also contains entries addressing Defendants' motions to dismiss or compel arbitration for those claims which, again, do not allow attorneys' fees recovery.  There are certainly additional amounts that are too convoluted to discern because narratives are included as general descriptions, but the readily identifiable time entries for this work for which fees may not be recovered are:

- Plaintiff spent at least $35,753.50 amending its complaint, to add claims that are unrelated to the recovery on the Notes and for which Plaintiff cannot recover fees.

- Plaintiff spent $84,139.00 drafting a response to a motion to dismiss the claims for which attorneys' fees are not recoverable.

- Plaintiff spent $67,283.50 drafting a response to the motion to compel arbitration.

- Plaintiff spent at least $15,654.50 on one day of work on the reply brief for its motion to amend the complaint.[30]

- Plaintiff spent $19,336.50 for five attorneys to conduct the half-day hearing on a motion to dismiss and motion to compel arbitration.[31]

---

[28] *G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Co.*, 177 S.W.3d 537, 547 (Tex. App. 2005) ("As the supreme court has made clear, section 38.001 requires recovery of damages for a claimant to be eligible to recover attorneys' fees.").
[29] *In re Jenkins,* 617 B.R. 91, 113 (Bankr. N.D. Tex. 2020) ("With this bedrock principle in mind, neither section 548 nor section 550 of the Bankruptcy Code provides for the recovery of attorneys' fees and expenses in a fraudulent transfer case."); *Massachusetts Mut. Life Ins. Co. v. Sanders*, 787 F.Supp.2d 628, 641 (S.D. Tex. 2011) (denying motion for award of attorneys' fees because the federal Declaratory Judgment Act does not provide statutory authority to award attorneys' fees); *Life Ins. Co. Robbins v. Robbins*, 550 S.W.3d 846, 855 (Tex. App. 2018).
[30] Alternatively, Defendants object to any recovery related to this work because it does not appear to be related to this litigation. This entry refers to 11 hours of work with the description, "Work on reply brief."  However, there does not appear to be any reply brief filed by Plaintiff any time near this time period.  Therefore, these funds should be deducted because they were either unnecessary because they relate to a reply for a motion to amend that was never filed or because they are completely unrelated to this litigation and were erroneously included in the fee statements.
[31] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 204, at *7–13 (providing a list of specific entries related to such unnecessary claims for which fees should not be awarded).

17.     Contrary to Defendants' position, the Bankruptcy Court stated that such fees and costs related to such additional claims should be part of the award because such claims were "in connection with, and directly related to, [Plaintiff's] pursuit of recovery on the Notes."[32]  In support of its position, the Bankruptcy Court cited two cases, both of which actually ***support*** Defendants' position that all fees related to such claims should not be awarded.

18.     First, in *Varner v. Cardenas*, the Supreme Court of Texas held that the plaintiffs in that case could not recover their fees that were "not necessary for the [plaintiffs] to collect on their note."[33]  Second, in *In re Arnette*, the Bankruptcy Court held that the note's attorneys' fees provision covered the claim (1) for fraud because it was necessary to pierce the corporate veil to enforce the note and (2) for nondischargeability under the Bankruptcy Code because the note would have been unenforceable unless the debt arising thereunder was nondischargeable.[34]

19.     The Bankruptcy Court's reliance on these cases is misplaced.  The Bankruptcy Court stated the incorrect standard, specifically that the additional claims be "in connection with, and directly related to" recovery on the Notes.  The correct standard set forth in the two cases that the Bankruptcy Court cited is that the additional claims be "necessary" to collect on the note.

20.     In this case, Plaintiff's claims for fraudulent transfer (under 11 U.S.C. § 548), fraudulent transfer (under 11 U.S.C. §§ 544(b) and 550), declaratory relief, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty clearly were not necessary for enforcement of the Notes (the Bankruptcy Court has recommended enforcement of the Notes without passing any judgment on such additional claims).  Therefore, the District Court should not award any fees to Plaintiff related to such claims.

---

[32] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 217, at 9–11.
[33] 218 S.W.3d 68, 69 (Tex. 2007).
[34] 2011 WL 3651294, at *3–4 (Bankr. N.D. Tex. Aug. 18, 2011).

### 3. The Court Should Exclude Entries That are not Segregated by Defendant.

21.     "When a plaintiff seeks to charge a defendant with its attorneys' fees, the plaintiff must prove that the fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees."[35]  "In cases with multiple defendants, to recover its attorneys' fees, the plaintiff must segregate the fees owed by each defendant so that defendants are not charged fees for which they are not responsible."[36]  In *Mud King Products*, the Bankruptcy Court for the Southern District of Texas excluded from the award time spent in prosecution of claims against other defendants.[37]

22.     Here, there clearly has been time expended for some Defendants that is clearly disproportionate to other Defendants.  For example, Dondero and other defendants (e.g., Nancy Dondero and Dugaboy) that were not party to the Notes on which the proposed judgment is based and are not part of the proposed judgment in the R&R filed a motion to dismiss and motion to compel arbitration of certain breach of fiduciary duty claims (separate claims from the Notes).[38]  In response to the motion to dismiss and motion to compel, as shown above, Plaintiff spent **$84,139.00** drafting a response; an additional **$67,283.50** drafting a response to Defendants' motion to compel arbitration; at least **$15,654.50** for one day's work on a reply brief for its motion to amend the complaint; and finally **$19,336.50** for five attorneys to conduct the half-day hearing on Defendants' motion to dismiss and motion to compel arbitration. And it also racked up at least

---

[35] *In re Mud King Products, Inc.*, 525 B.R. 43, 55 (Bankr. S.D. Tex. 2015) (internal marks omitted) (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1 (Tex. 1991)).
[36] *Id.*
[37] *Id.*, at 56; *see also Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 23 (Tex. App. 2000) ("When a lawsuit involves multiple claims or multiple parties, the proponent has a duty to segregate non-recoverable fees from recoverable fees, *and to segregate the fees owed by different parties*.") (emphasis added).
[38] *See e.g.,* Adv. Proc. No. 21-3005, Dkt. 68, Dkt. 69.

**$35,753.50** on amending its complaint in the first place, something that did not involve HCMFA, HCMS, HCRE, and NexPoint at all.

23.     Additionally, by Defendants' estimate, after a review of the Notice of Attorneys' Fees, Plaintiff has identified a particular Defendant or particular Defendants in about 300 entries of the total of 1,482 time entries submitted as part of the proposed fee award.  The fact that Plaintiff sometimes identifies the Defendant or issue clearly enough to determine what party should be charged, means that segregation was not impossible.  The Court should exclude the fees for all entries that do not identify a Defendant and the case, as well as all entries where it is impossible to tell whether impermissible items are included, such as where time for dealing with the non-Notes claims is mixed in with time dealing with the Notes claims.

24.     Under Texas law, "[t]he party seeking to recover attorney's fees bears the burden of demonstrating segregation is not required."[39]  In *Clearview Properties*, the Texas Court of Appeals clarified that the burden is not met by simply claiming, as Plaintiff essentially does here, that all the claims "arise from the same factual base."[40]  "[J]ust because the claims overlap among the [] defendants does not mean that their legal defenses were identical."[41]

25.     The Bankruptcy Court in this case sought to distinguish *Clearview Properties* by stating that, here the cases against the Defendants were consolidated, whereas in *Clearview Properties* there was no consolidation of cases.  On the contrary, while there is no mention of the word "consolidation" in the *Clearview Properties* case, *Clearview Properties* is similar to this case in that were many claims and many parties involved, and the court required the party claiming fees

---

[39] *Clearview Properties, L.P. v. Property Texas SC One Corp.*, 287 S.W.3d 132, 144 (Tex. App. 2009).
[40] *Clearview Properties*, 287 S.W.3d, at 144.
[41] *Id.*

to segregate on a per-claim and per-party basis.[42]   Moreover, Texas courts have required segregation of fees in consolidated cases.[43]   The District Court in this case also should require Plaintiff to segregate fees on a per-claim and per-party basis in order to collect them.

### 4. The Court Should Reduce the Proposed Award by the Amount of all Fees Charged to Plaintiff that are Related to Unsuccessful Litigation by Plaintiff.

26. "A plaintiff should not recover attorneys' fees for work on claims as to which he or she did not prevail." *Roggio v. Grasmuck*, 18 F. Supp. 3d 49, 56 (D. Mass. 2014) (citing *See Torres–Rivera,* 524 F.3d, at 336); *see also Wal-Mart Stores, Inc. v. Qore, Inc.*, 647 F.3d 237, 246–48 (5th Cir. 2011) (vacating the district court's fee award because Wal-Mart failed to present competent evidence by which to allocate its legal fees among successful and unsuccessful claims).

27. Here, Plaintiff did not prevail in a number of matters litigated against Defendants, and any award of fees should exclude all entries related to such matters[44]:

- First, Plaintiff lost its opposition to Defendants' motion to strike the Klos declaration.[45]

- Second, Plaintiff lost its motion for sanctions.[46]

- Third, Plaintiff's work on a motion to consolidate (over $56,000) was unnecessary (the parties agreed to consolidate).[47]

28. On the contrary, the Bankruptcy Court stated that matters in which Plaintiff must prevail in order to recover fees include only "claims" and therefore was not required to win the motion to strike, motion for sanctions, and motion to consolidate to collect fees on those issues.[48]

---

[42] *Clearview Properties, L.P. v. Property Texas SC One Corp.*, 287 S.W.3d 132, 137, 143–45 (Tex. App. 2009) ("We conclude that Clearview did not meet its burden of showing fees were not segregable either by party or claim.")
[43] *Hong Kong Development, Inc. v. Nguyen*, 229 S.W.3d 415, 454 (Tex. App. 2007)
[44] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 204, at *17–19 (identifying the specific entries related to such matters for which fees should not be awarded).
[45] *See e.g.,* Adv. Proc. No. 21-3006, Dkt. 207.
[46] *See e.g.,* Adv. Proc. No. 21-3006, Dkt. 208.
[47] *See e.g.,* Adv. Proc. No. 21-3006, Dkt. 212.
[48] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 217, at 13.

29.     It is not necessary to view the word "claim" so narrowly.  "Claim" is generally defined in the law as "a statement that something yet to be proved is true," "the assertion of an existing right," including a right to an "equitable remedy" or "legal remedy," or "an interest or remedy recognized at law."[49]  These motions certainly involved statements about things not yet proven true (or else Plaintiff would not have lost such matters).  Striking a matter from the record, sanctions, and consolidation also properly are viewed as rights, remedies, and interests.

30.     Further, an unnecessarily narrow reading here of "claim" would improperly permit Plaintiff to recover fees for putting in the record materials that the Bankruptcy Court struck from the record.  The action of striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice" and should be granted "only when the pleading to be stricken has no possible relation to the controversy."[50]  Permitting Plaintiff to recover fees for improperly placing such matters in the record would encourage rather than deter such behavior.  Awarding fees here also would encourage frivolous motions for sanctions.  "The central purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of the federal courts."[51]  Awarding fees for a failed motion for sanctions would encourage such motions and have the opposite effect of slowing the administration of the courts.  Finally, awarding fees for an unnecessary motion to consolidate would encourage inefficiency.  The District Court should reduce any award by the amount of fees unnecessarily caused by Plaintiff on such matters.

### 5.     Plaintiff's Law Firm of Pachulski, Stang, Ziehl & Jones Charged Rates Far in Excess of the Customary Rates in the Northern District of Texas.

---

[49] Black's Law Dictionary (11th ed. 2019).

[50] *Augustus v. Board of Public Instruction of Escambia County, Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).

[51] *Robles v. Eminent Medical Center, LLC*, --- F.Supp.3d ----, 2022 WL 3081827, at *24 (N.D. Tex. Aug. 3, 2022).

31.     The "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."[52] Here, the relevant market is Dallas, Texas.  "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."[53]  Here, Plaintiff offered no such affidavits.

32.     Plaintiff's local counsel, Hayward PLLC, with its office in Dallas, charged $400.00 to $450.00 per hour.  PSZJ, on the other hand, with its office in Los Angeles, California, according to the pleadings and bills in the exhibits to the Notice of Attorneys' Fees, and with its attorneys (that billed the time to be awarded) having bar licenses in California and New York according to the pleadings and the Notice of Attorneys' Fees, charged rates from $460 to $1,445 per hour.

33.     In *Hopwood v. State of Texas*, in which the federal Fifth Circuit did "not perceive [the case] to have been extraordinarily difficult" and the type of matter "has been the subject of legal discourse for many years," the Fifth Circuit held that the trial court's decision to cut the billing attorney's Washington D.C. rate in half to meet Dallas rates was not an abuse of discretion.[54]  Here, the case was a breach of contract and turnover case based on several Notes. This Court should follow the Fifth Circuit precedent in *Hopwood* and cut PSZJ's Los Angeles and New York rates in half to bring them on par with Dallas rates.

34.     The exception that would support an award using out-of-district rates does not apply here.  "Courts have found the use of out-of-district prevailing rates proper where a case is transferred for the convenience of the parties and witnesses," and the party wishes to retain previously retained counsel from the initial district.[55]  Here, the bankruptcy was originally filed in Delaware and transferred to the Northern District of Texas.  Plaintiff's attorneys of PSZJ appear

[52] *Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002) (citations and internal marks omitted).
[53] *Tollett v. City of Kemah*, 285 F.3d 357, 368–69 (5th Cir. 2002) (citation omitted).
[54] *Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000).
[55] *Midkiff v. Prudential Ins. Co. of Am.*, 571 F. Supp. 3d 660, 667 (W.D. Tex. 2021) (citations omitted).

to be located in Los Angeles and New York. They also have not pled that their out-of-district rates should apply. There is no reason to award fees in this case at Los Angeles or New York rates.

35.     The Bankruptcy Court stated in the R&R Supplement that "[t]his court has already approved PSZJ's rates as reasonable under § 330 and under the applicable standard originally announced by the Fifth Circuit in *Johnson*," citing PSZJ's application for its fees in a different case involving the parties (the "2021 PSZJ Application").[56]  In the 2021 PSZJ Application (that the Bankruptcy Court relied on in the R&R Supplement), regarding the "customary fee" *Johnson* factor, PSZJ stated that "[t]he hourly rates charged by each PSZ&J professional who performed services for the Debtor are PSZ&J's normal rates for services of this kind and are comparable to those being charged by other professionals with similar qualifications and experience."[57]  Nowhere in the Bankruptcy Court's order on the 2021 PSZJ Application, and nowhere in 2021 PSZJ Application, did either the Court or PSZJ make a representation as to or provide evidence of the prevailing rate in "the community in which the district court sits," Dallas, Texas, and therefore PSZJ's rates should be reduced in this case to meet Dallas rates.[58]

36.     The Bankruptcy Court also stated in R&R Supplement that the fee is reasonable because Mr. Dondero hired PSZJ when he controlled Plaintiff. This fact, assuming it is true, clearly would support Plaintiff paying PSZJ's fees because it would be evidence that Plaintiff has agreed to pay such fees. However, any such fee agreement Mr. Dondero entered into on behalf of Plaintiff to pay PSZJ's fees did not bind Defendants to pay PSZJ's fees. Plaintiff and Defendants are separate legal entities. Mr. Dondero's actions on behalf of each separate legal entity do not

---

[56] *See, e.g.*, Adv. Pro. 21-3003, Dkt. 217, at 16.
[57] Case No. 19-34054-sgj11, *Summary of Fifth and Final Application for Compensation and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Counsel for the Debtor and Debtor in Possession, for the Period From October 16, 2019 through August 10, 2021*, Dkt. 2906, at 38.
[58] *See Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002).

bind the other entity.  This argument that Mr. Dondero's actions on behalf of Plaintiff should bind Defendants clearly lacks a basis in business law, and does not matter under the *Johnson factors*, and therefore should be disregarded.

           **6.**      **Plaintiff's Attorneys Exercised No Billing Judgment, and Therefore the Court Should Reduce the Award.**

37.     "Billing judgment refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours."[59]  "Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but hours written off."[60]  "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."[61]  Where no billing judgment is exercised, a reduction in the range of 10% to 20% is appropriate.[62]  Here, Plaintiff exercised no billing judgment, therefore the Court should reduce the aggregate claimed amount by 10% to 20%.

## IV.    CONCLUSION

38.     The District Court should reduce the amount of any award of attorneys' fees by the amount of fees (1) that Plaintiff failed to document and explain in its initial request ($395,996.50), (2) attributable to litigation of any claim other than breach of contract and turnover (in excess of $222,000.00), (3) that are not segregated by Defendant (in addition to the same amount in excess of $222,000.00, all entries in which the Defendant and the case are not identified), (4) that are related to unsuccessful litigation by Plaintiff (total of entries identified above, in excess of $86,000.00), (5) in excess of customary rates in the Northern District of Texas, and (6) for which Plaintiff's attorneys exercised no billing judgment (further reduce the award by 10% to 20%).

---

[59] *Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 950 (N.D. Tex. 2016) (citing *Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996)).
[60] *Id.* (citation omitted).
[61] *Id.* (internal marks and citation omitted).
[62] *Id.*

Dated: November 28, 2022      Respectfully submitted,

            */s/ Michael P. Aigen*
            Deborah Deitsch-Perez
            State Bar No. 24036072
            Michael P. Aigen
            State Bar No. 24012196
            STINSON LLP
            2200 Ross Avenue, Suite 2900
            Dallas, Texas 75201
            (214) 560-2201 telephone
            (214) 560-2203 facsimile
            Email: deborah.deitschperez@stinson.com
            Email: michael.aigen@stinson.com

            *Attorneys for James Dondero, Highland*
            *Capital Management Services, Inc. and*
            *NexPoint Real Estate Partners, LLC*

            */s/ Julian P. Vasek*
            Davor Rukavina
            Julian P. Vasek
            MUNSCH HARDT KOPF & HARR, P.C.
            500 N. Akard Street, Suite 3800
            Dallas, Texas 75202-2790
            (214) 855-7500 telephone
            (214) 978-4375 facsimile
            Email:  drukavina@munsch.com
            Email:  jvasek@munsch.com

            *Attorneys for NexPoint Advisors, L.P. and*
            *Highland Capital Management Fund*
            *Advisors, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 28, 2022, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing system to the parties that are registered or otherwise entitled to receive electronic notices in this proceeding.

*/s/ Michael P. Aigen*
Michael P. Aigen
