PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email:   MHayward@HaywardFirm.com
         ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Case No. 3:21-cv-00881-X |
| | § | |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND | § | (Consolidated with 3:21-cv-00880- |
| ADVISORS, L.P., et al., | § | X, 3:21-cv-01010-X, 3:21-cv-01378- |
| | § | X, 3:21-cv-01379-X) |
| Defendants. | § | |
| | § | |

# HIGHLAND CAPITAL MANAGEMENT, L.P.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DEEM THE DONDERO ENTITIES VEXATIOUS LITIGANTS AND FOR RELATED RELIEF

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     BACKGROUND ..................................................................................................... 4

      A.      Highland's Prepetition Culture of Litigation ........................................... 4

      B.      Highland Files Bankruptcy; the Independent Board Is Appointed;
           Negotiations Commence .......................................................................... 6

      C.      Mr. Dondero Interferes with the Estate and Vows to "Burn [Highland]
           Down" ...................................................................................................... 8

      D.      Confirmation of Highland's Plan; Approval of the Gatekeeper and Fifth
           Circuit Affirmance; and Subsequent Litigation ...................................... 9

      E.      The Dondero Entities' Vexatiousness Impeded Highland's Bankruptcy
           and Continues to This Day ..................................................................... 11

           i        The Dondero Entities File Meritless Claims Against Highland's
                Estate .......................................................................................... 12

           ii       The Dondero Entities File Meritless Motions in the Bankruptcy
                Case ............................................................................................ 14

           iii      The Dondero Entities File Meritless Objections in the Bankruptcy
                Case ............................................................................................ 16

           iv       Highland Litigates to Protect Its Rights and the Bankruptcy
                Process ....................................................................................... 18

           v        The Dondero Entities Appeal Nearly Every Order ................................. 20

           vi       The Dondero Entities' Attempt to Evade the Bankruptcy Court ............ 22

           vii      The Dondero Entities' Newest Action Restating Their Spurious
                Claims About Highland .............................................................. 26

III.    RELIEF REQUESTED ........................................................................................... 27

IV.     ARGUMENT ......................................................................................................... 28

      A.      Courts in the Fifth Circuit Have the Authority to Deem Litigants
           "Vexatious" and Issue Pre-Filing Injunctions ..................................... 28

      B.      This Court Has Jurisdiction to Deem the Dondero Entities Vexatious and
           Prohibit Filings in Both This Court and the Bankruptcy Court ............ 31

      C.      Highland Satisfies the Four-Part Test for Obtaining a Pre-Filing Injunction ...... 32

           i        The Dondero Entities Have a History of Vexatious Litigation ............... 32

           ii       The Dondero Entities' Litigation Lacks a Good-Faith Basis .................. 32

           iii      The Dondero Entities' Litigation Has Created an Enormous
                Burden on the Court System and Highland ............................. 33

iv     Alternative Sanctions Are Inadequate to Deter the Conduct ................... 34

V.    CONCLUSION ......................................................................................................... 35

DOCS_NY:46677.6 36027/003

## **TABLE OF AUTHORITIES**

### **CASES**

*Alliance Riggers & Constructors, Ltd. v. Restrepo*,
  2015 U.S. Dist. LEXIS 29346 (W.D. Tex. Jan. 7, 2015) .................................................. 30

*Baum v. Blue Moon Ventures, LLC*,
  513 F.3d 181 (5th Cir. 2008) ................................................................................ 29, 30, 31

*Bowling v. Willis*,
  2019 U.S. Dist. LEXIS 168602 (E.D. Tex. Aug. 9, 2019), *aff'd* 853 F. App'x.
  983 (5th Cir. 2021).............................................................................................. 29, 30

*Caroll v. Abide (In re Carroll)*,
  850 F.3d 811 (5th Cir. 2017) ................................................................................ 29, 30, 31

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022)...................................... 22

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  2022 U.S. Dist. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022) ......................... 23

*Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*,
  643 B.R. 162 (N.D. Tex. 2022)................................................................................. 24

*Clark v. Mortenson*,
  93 F. App'x. 643 (5th Cir. 2004) .......................................................................... 29, 30, 31

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351
  (N.D. Tex. Sept. 22, 2022) ...................................................................................... 22

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re
  Highland Cap. Mgmt., L.P.)*,
  2022 U.S. Dist. LEXIS 15648 (N.D. Tex. Jan. 28, 2022) .................................... 18

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re
  Highland Cap. Mgmt., L.P.)*,
  57 F.4th 494 (5th Cir.2023) ............................................................................ 11, 18, 20

*Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*,
  2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021) ................................. 18

*In re Acis Cap. Mgmt., L.P.*,
  584 B.R. 115 (Bankr. N.D. Tex. 2018).................................................................. 6

*In re Caroll)*,
  2016 Bankr. LEXIS 937 (Bankr. M.D. La. Mar. 16, 2016) *aff'd* 2016 U.S.
  Dist. LEXIS 100930 (M.D. La. Aug. 2, 2016), *aff'd* 850 F.3d 811 (5th Cir.
  2017)........................................................................................................................ 31

*Marinez v. Wells Fargo Bank, N.A.*,
  2013 U.S. Dist. LEXIS 208591 (W.D. Tex. May 31, 2020) ................................ 31

*Newby v. Enron Corp.*,
  302 F.3d 295 (5th Cir. 2002) ................................................................................ 29

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap.
  Mgmt., L.P.)*,
  48 F.4th 419 (5th Cir. 2022) ............................................................................ 10, 29

*Nix v. Major League Baseball*,
  2022 U.S. Dist. LEXIS 104770 (S.D. Tex. Jun. 13, 2022)............................... 30, 31

iii

*Schum v. Fortress Value Recovery Fund I LLC*,
   2019 U.S. Dist. LEXIS 226679 (N.D. Tex. Dec. 2, 2019), *aff'd* 805 F. App'x.
   319 (5th Cir. 2020)..................................................................................29, 30, 31, 32

*Silver City v. City of San Antonio*,
   2022 U.S. Dist. LEXIS 118643 (W.D. Tex. Jul. 7, 2020) ...................................31

*Staten v. Harrison Cnty.*,
   2021 U.S. App. LEXIS 35747 (5th Cir. Dec. 2, 2021)..................................29, 31

*Williams v. McKeithen*,
   939 F.2d 1100 (5th Cir. 1991) ...........................................................................31

**STATUTES**

11 U.S.C. § 363...............................................................................................................14

18 U.S.C. § 3057...............................................................................................................8

28 U.S.C. § 157(c)(1).....................................................................................................31

28 U.S.C. § 158(a)..........................................................................................................31

28 U.S.C. § 1651.............................................................................................................29

28 U.S.C. § 1651(a)........................................................................................................28

iv

Highland Capital Management, L.P. ("Highland"), by and through its undersigned counsel, submits this *Memorandum of Law*[1] in support of its motion (the "Motion") to deem the above-captioned defendants, their affiliated entities, and any person or entity controlled by or acting in concert with James Dondero (collectively, the "Dondero Entities")[2] vexatious litigants and to require them to file a copy of this Court's order in any pending or future litigation or proceeding. In support of the Motion, Highland states as follows:

## I.    PRELIMINARY STATEMENT[3]

1.    The Dondero Entities—all of which are dominated and controlled by or acting in concert with Mr. Dondero, Highland's co-founder and ousted Chief Executive Officer—are engaged in a coordinated litigation strategy spanning more than two years to wear down Highland and its management and thwart Highland's confirmed Plan. The Dondero Entities have clogged the dockets of this Court, the Bankruptcy Court, and the Fifth Circuit and have wasted untold judicial and estate resources. While the Bankruptcy Court approved a Gatekeeper provision as part of Highland's confirmed Plan, it has proved inadequate to curtail the Dondero Entities' harassing and abusive litigation. Accordingly, Highland requests that this Court declare the Dondero Entities vexatious litigants and require them to file a copy of this Court's order finding them vexatious in any pending or future litigation or proceeding.

---

[1] Highland is concurrently filing its *Appendix in Support of Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief* (the "Appendix"). Citations to the Appendix are notated as "Ex. #, Appx. #."

[2] "Dondero Entities" refers, collectively, to (a) Mr. Dondero, (b) NexPoint Advisors, L.P. ("NPA"), (c) Highland Capital Management Fund Advisors, L.P., n/k/a NexPoint Asset Management, L.P. ("HCMFA"), (d) HCRE Partners LLC n/k/a NexPoint Real Estate Partners LLC ("HCRE"), (e) Highland Capital Management Services, Inc., (f) Nancy Dondero, and (g) any entity directly or indirectly controlled by, or acting in concert with, Mr. Dondero, including, without limitation, (i) The Charitable DAF Fund, L.P. ("DAF"), (ii) CLO HoldCo, Ltd. ("CLOH"), (iii) The Dugaboy Investment Trust ("Dugaboy"), (iv) Get Good Investment Trust ("Get Good"), (v) Hunter Mountain Investment Trust, (vi) Strand Advisors, Inc., (vii) The Get Good Non-Exempt Trust 1; (viii) The Get Good Non-Exempt Trust 2; and (ix) PCMG Trading Partners XXIII, L.P. ("PCMG").

[3] Capitalized terms in this Preliminary Statement have the meanings given to them below.

2.      Mr. Dondero's "strategy" is not new; he has used litigation as a weapon to harass and exact revenge against his perceived enemies for years.[4] Prior to its 2019 bankruptcy, Mr. Dondero fostered a culture of scorched-earth, vindictive litigation at Highland suing anyone who challenged him or refused to cave to his demands. That culture spawned litigation lasting more than a decade in courts and arbitration panels in Texas, Delaware, New York, and foreign jurisdictions like the Cayman Islands, Bermuda, and Guernsey.

3.      But Mr. Dondero's litigation "strategy" caught up with him, and Highland was forced to seek bankruptcy protection in October 2019. Highland's unsecured creditors Committee was comprised largely of litigation claimants who were intimately familiar with Mr. Dondero's tactics. The Committee immediately focused on removing Mr. Dondero from control of Highland. To avoid appointment of a chapter 11 trustee, Highland, Mr. Dondero, and the Committee entered into a settlement in January 2020, which removed Mr. Dondero and appointed an Independent Board to manage and oversee Highland's bankruptcy.

4.      In late 2020, after the Committee rejected Mr. Dondero's global settlement offers as inadequate—thus blocking Mr. Dondero's efforts to regain control of Highland—he vowed to "burn down the place" unless they capitulated to his demands. Thereafter, directly and through the Dondero Entities, Mr. Dondero began interfering with the management of the estate, threatening Highland employees, challenging actions taken to further Highland's reorganization, commencing new (and frivolous) litigation against Highland and its management both inside and outside of the

---

[4] Mr. Dondero's proclivity for frivolous litigation is so well known that Highland was unable to obtain cost-effective insurance because insurance companies refused to insure the risk of Mr. Dondero's vexatiousness, calling it the "Dondero Exclusion." *See* ¶ 24 *infra*.

Bankruptcy Court, violating Bankruptcy Court orders, filing multiple motions to recuse, and appealing nearly everything resulting in 26 total appeals.[5]

5.      Despite the Dondero Entities' roadblocks, in February 2021, the Bankruptcy Court confirmed Highland's Plan, which included a Gatekeeper provision preventing, in relevant part, the Dondero Entities from suing Highland, its employees, and its management without leave of the Bankruptcy Court. The Fifth Circuit affirmed the Confirmation Order, including the Gatekeeper, in all material respects but remanded solely to limit the parties exculpated by the Plan. On remand, the Dondero Entities blatantly mischaracterized the Fifth Circuit's ruling, wrongly asserting the Fifth Circuit had severely limited the Gatekeeper. The Bankruptcy Court disagreed, but the Dondero Entities are certain to appeal any final order conforming the Plan.

6.      In the meantime, the Dondero Entities continue to harass Highland and hinder performance of the Plan. For example, they have commenced actions in Texas state courts against members of the Claimant Trust Oversight Board seeking information to use to manufacture more spurious claims and have filed letters and complaints with the U.S. Trustee launching broad and baseless attacks against Highland and its management.

7.      Thus, even with the Gatekeeper firmly in place, the Dondero Entities continue to seek ways to avoid its protections and mire the estate in even more litigation. To protect its estate, the bankruptcy process, and the judicial system, Highland asks this Court to enter an order in the form annexed to the Motion as **Exhibit A** complementing the Gatekeeper by declaring the Dondero Entities vexatious litigants and requiring them to file a copy of such order with any court or agency in which an action is currently pending or is subsequently filed.

---

[5] With a few narrow exceptions, these appeals have been rejected and reviewing courts have sometimes been blunt in their characterization. For example, this Court expressed its belief that Mr. Dondero's arguments were intended to "bamboozle" (*see* ¶ 26 *infra*) and the Fifth Circuit described the Dondero Entities' collective objections to confirmation as "blunderbuss" (*see* ¶ 17 *infra*).

3

## II.   BACKGROUND

### A.   Highland's Prepetition Culture of Litigation

8.      Highland was founded in 1993 by Mr. Dondero and Mark Okada (who resigned pre-bankruptcy) and was controlled by Mr. Dondero as the owner and sole director of its general partner. At its peak, Highland was a global investment adviser managing nearly $40 billion, and, for most of its history, it was successful. Its bankruptcy was not caused by a business calamity. "Rather, [Highland] filed for Chapter 11 protection due to a myriad of massive, unrelated, business litigation claims that it faced—many of which had finally become liquidated (or were about to become liquidated) after a decade or more of contentious litigation in multiple forums all over the world."[6] For example:

- UBS: UBS Securities LLC and UBS AG, London Branch (collectively, "UBS"), sued two funds controlled by Highland in 2009 in New York state court for breach of contract when they failed to honor margin calls. After discovering Highland—through Mr. Dondero—had orchestrated a series of frauds that rendered the funds judgment-proof, UBS named Highland and others as defendants. In February 2020, a $1 billion-plus judgment was entered against the two Highland funds,[7] which UBS sought to recover from Highland alleging, among other things, alter ego liability.[8] UBS continues to litigate with Mr. Dondero and his proxies.

- Patrick Daugherty: Mr. Daugherty was a Highland employee and limited partner who resigned in 2011. Thereafter, Mr. Dondero, directly and by proxy, began a litigation campaign to deprive Mr. Daugherty of income earned while at Highland. After Mr. Daugherty prevailed against certain affiliated entities, Mr. Dondero again orchestrated a series of fraudulent transfers that

---

[6] *See Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief*, Bankr. Docket No. 1943 ("Confirmation Order") ¶ 8.

[7] Ex. 2, Appx. [ ]; Ex. 3, Appx. [ ].

[8] Ex. 4, Appx. [ ]; Ex. 5, Appx. [ ].

4

left those entities judgment-proof. Mr. Dondero's actions led the Delaware Chancery Court to find "a reasonable basis to believe that a fraud has been perpetrated" and to apply the "crime-fraud exception" to Dondero confederates' assertions of attorney-client privilege.[9] This litigation continues.

- Redeemer Committee: In 2011, a Redeemer Committee was appointed by a Bermudian court to oversee the wind-down of the Highland Crusader Fund because of concerns with Mr. Dondero's management. Disputes arose, and, in 2016, the Redeemer Committee terminated Highland as investment manager and commenced binding arbitration alleging, among other things, that Highland had converted over $30 million, breached its fiduciary duties, and engaged in other misconduct. In March 2019, the arbitration panel (a) rejected Highland's arguments; (b) made highly critical assessments of the credibility of Highland's witnesses; (c) found Highland breached its fiduciary duties and certain agreements and engaged in other wrongful conduct; and (d) awarded the Redeemer Committee more than $190 million.[10]

- Acis: Joshua Terry was a Highland employee and limited partner of a former Highland affiliate, Acis Capital Management, L.P. ("Acis") who was terminated in June 2016. Mr. Terry subsequently obtained an $8 million arbitration award against Acis. Rather than satisfying the award, Mr. Dondero followed his playbook by stripping Acis of assets and taking other vindictive actions against Mr. Terry, including converting Mr. Terry and his wife's retirement account. Unable to collect, Mr. Terry filed an involuntary bankruptcy petition against Acis in the Bankruptcy Court in 2018, resulting in the appointment of a chapter 11 trustee. The bankruptcy was marked by extraordinarily acrimonious litigation,[11] but, ultimately, Acis's

---

[9] Ex. 6, Appx. [    ].

[10] Ex. 7, Appx. [    ]; Ex. 8, Appx. [    ].

[11] *See, e.g., In re Acis Cap. Mgmt., L.P.*, 584 B.R. 115 (Bankr. N.D. Tex. 2018).

5

confirmed plan transferred ownership of Acis to Mr. Terry.[12] Mr. Dondero's war against Mr. Terry and Acis continues.[13]

Highland's culture of litigation—of which the foregoing are only examples—ultimately forced Highland to seek bankruptcy protection.[14]

**B.    Highland Files Bankruptcy; the Independent Board Is Appointed; Negotiations Commence**

9.      On October 16, 2019 (the "Petition Date"), Mr. Dondero caused Highland to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Case"), and Highland's statutory committee of unsecured creditors (the "Committee") was appointed. Three of the four members of the Committee—Acis, UBS, and the Redeemer Committee—held claims arising from Highland's culture of litigation (the last member was an e-discovery vendor).[15]

10.     The Committee immediately moved to transfer the Bankruptcy Case to the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court")—

---

[12] *Findings of Fact, Conclusions of Law, and Order Granting Final Approval of Disclosure Statement and Confirming the Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC, as Modified*, Case No. 18-30264-sgj11, Docket No. 829 (Bankr. N.D. Tex. Jan. 31, 2019). The Dondero Entities, of course, appealed the Acis confirmation order; their appeals were denied. *See* Case No. 3:19-cv-00291-D, Docket No. 75 (N.D. Tex. July 18, 2019); Case No. 19-10847 (5th Cir. June 17, 2021).

[13] Immediately after the expiration of the injunction in Acis's plan, Mr. Dondero—through NexPoint Strategic Opportunities Fund ("NSOF")—filed suit against Acis, Mr. Terry, and others in the Southern District of New York alleging they violated their fiduciary obligations to NSOF as an investor in a CLO managed by Acis (and which had been managed by Mr. Dondero prior to the Acis bankruptcy). Civ. Case No. 1:21-cv-04384 (S.D.N.Y. 2021). Mr. Dondero's litigation caused Acis to halt distributions from its managed CLOs thus depriving Highland of approximately $20 million in proceeds. The Southern District of New York dismissed Mr. Dondero's litigation. Undeterred, Mr. Dondero appealed to the Second Circuit (USCA Case No. 22-1912 (2d Cir. 2022)) and re-filed his breach of fiduciary duty claims in New York state court (Index No. 653654/2022 (N.Y. Sup. 2022)).

[14] The direct catalyst for Highland's bankruptcy was the Redeemer Committee's arbitration award. Highland lacked the liquidity to pay the award and was desperate to avoid its public disclosure, which was averted by Highland's filing.

[15] The culture of litigation ran so deep at Highland that Highland's twenty largest unsecured, non-insider creditors included *nineteen* litigation claimants, law firms, and other professionals related to litigation. Bankr. Docket No. 1.

DOCS_NY:46677.6 36027/003

where Acis's bankruptcy was pending—and, on December 2, 2019, Highland's case was transferred.[16]

11.     Soon thereafter, the Committee, with the support of the U.S. Trustee, told Highland it intended to seek appointment of a chapter 11 trustee because it did not believe Mr. Dondero could act as an estate fiduciary based on his history of self-dealing, asset stripping, and other breaches of fiduciary duty. To avoid a trustee, Mr. Dondero and Highland entered into a settlement with the Committee—approved by the Bankruptcy Court in January 2020[17]—that: (a) removed Mr. Dondero from all control positions at Highland; (b) appointed an independent board (the "Independent Board") to manage the bankruptcy; and (c) implemented operating protocols (the "Protocols") that, among other things, (i) generally required Committee approval before most asset sales or transfers, and (ii) prohibited Mr. Dondero and his controlled affiliates from terminating contracts with Highland. Mr. Dondero remained at Highland as an unpaid portfolio manager. The Bankruptcy Court subsequently appointed one of the Independent Board members, James P. Seery, Jr., as Highland's Chief Restructuring Officer and Chief Executive Officer.[18]

12.     The January and July Orders appointing the Independent Board and Mr. Seery, respectively, included gatekeeper provisions intended to protect Highland's fiduciaries from harassing litigation.[19]

---

[16] The Delaware court transferred venue to the Bankruptcy Court because of, among other reasons, its knowledge of and experience with Mr. Dondero and his use of surrogates and proxies to litigate his positions.

[17] Bankr. Docket No. 339 (the "January Order"). "Bankr. Docket" refers to the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

[18] Bankr. Docket No. 854 (the "July Order").

[19] *See* January Order ¶ 10 ("No entity may commence or pursue a claim or cause of action of any kind against any Independent Director … without the Bankruptcy Court … specifically authorizing such entity to bring a claim."); July Order ¶ 5 ("No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery … without the Bankruptcy Court … specifically authorizing such entity to bring a claim.").

13.     In August 2020, at the urging of the Bankruptcy Court, Highland, Mr. Dondero, the Committee, Acis, UBS, and the Redeemer Committee entered mediation with retired bankruptcy judge Allan Gropper and attorney Sylvia Mayer as mediators in the hope of reaching a global settlement.[20] The mediation resulted in settlements with the Redeemer Committee, Acis, and, ultimately, UBS[21] but not a global settlement with Mr. Dondero. Thereafter, Highland and the Committee began negotiating a plan of reorganization that would monetize Highland's assets and distribute proceeds to creditors.

## C.     Mr. Dondero Interferes with the Estate and Vows to "Burn [Highland] Down"

14.     With the Committee refusing to capitulate, and frustrated by his inability to regain control of Highland, Mr. Dondero told Mr. Seery that he would "burn down the place."[22] True to his word, Mr. Dondero became an implacable opponent of Highland and the Committee's efforts to confirm a plan and settle claims, resulting in the Independent Board demanding his resignation. Mr. Dondero and the Dondero Entities then embarked on a coordinated campaign of destruction: (a) objecting to virtually every settlement; (b) commencing actions that were either frivolous or withdrawn on the eve of trial; (c) forcing Highland to sue to collect on over $60 million of simple, two-page demand and term loans and then asserting fabricated and frivolous defenses to repayment; (d) interfering with Highland's management of its estate; (e) threatening Highland

---

[20] Bankr. Docket No. 912.

[21] The settlement with UBS was subsequently renegotiated after Highland—then independently managed—uncovered and disclosed a massive fraud in which Mr. Dondero surreptitiously caused two entities against which UBS ultimately procured a billion-dollar judgment to transfer $300 million in face amount of cash and securities to an offshore entity owned and controlled by Mr. Dondero and his general counsel, Scott Ellington, in August 2017. Ex. 8, Appx. [__]. After the details of this transfer were presented to the Bankruptcy Court, the Bankruptcy Court indicated it would review the facts, which it called "damning," and, if warranted, make a criminal referral pursuant to 18 U.S.C. § 3057(a). *Id.*, Appx. [__].

[22] Confirmation Order ¶ 78.

employees and management; and (f) appealing virtually every order. The Bankruptcy Court found the Dondero Entities' litigation was intended to harass.[23]

**D.      Confirmation of Highland's Plan; Approval of the Gatekeeper and Fifth Circuit Affirmance; and Subsequent Litigation**

15.      On February 22, 2021, the Bankruptcy Court overruled the Dondero Entities' objections and, with the support of 99.8% of creditors in amount,[24] entered the Confirmation Order, which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*.[25] In the Confirmation Order, the Bankruptcy Court found Mr. Dondero controlled the Dondero Entities and that they were "marching" to his orders.[26]

16.      The confirmed Plan included a "gatekeeper" provision (the "Gatekeeper") prohibiting the Dondero Entities, among others, from bringing claims against Highland, any of the entities created under the Plan, and Highland's management, among others, unless the Bankruptcy Court found the claims "colorable."[27] The Bankruptcy Court found the Gatekeeper was:

> necessary and appropriate in light of the history of the continued litigiousness of Mr. Dondero and his related entities in this Chapter 11 Case and necessary to the effective and efficient administration, implementation and consummation of the Plan …. Approval of the Gatekeeper Provision will prevent baseless litigation designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of its economic constituents, will avoid abuse of

---

[23] Confirmation Order ¶ 77 ("During the last several months, Mr. Dondero and the Dondero Related Entities have harassed [Highland], which has resulted in further substantial, costly, and time-consuming litigation for [Highland].")

[24] Confirmation Order ¶ 3.

[25] Bankr. Docket No. 1808 (the "Plan").

[26] Confirmation Order ¶¶ 16, 19.

[27] Plan, Art. IX.F. The Plan also provided for the creation of the Highland Litigation Sub-Trust and the appointment of Marc Kirschner as litigation trustee. *See generally* Plan, Art. IV.B. Mr. Kirschner, as litigation trustee, subsequently filed suit against Mr. Dondero and a number of Dondero Entities in the Bankruptcy Court. Adv. Proc. No. 21-03051-sgj (Bankr. N.D. Tex.). In response to that suit, the Dondero Entities and the other defendants have given new meaning to the phrase 'scorched earth' by serving over 40 third-party subpoenas on Highland's employees, law firms (including its lead bankruptcy counsel), and financial advisors; claimholders and their individual counsel (both law firms and individual lawyers); the Creditors Committee and its counsel; Oversight Committee Members; vendors; and contract counter-parties (collectively, the "Subpoenas"). The Subpoenas generally seek every document and communication concerning Highland since the beginning of time, are facially improper, and represent a further abuse of the judicial process. See Adv. Proc. No. 21-03051-sgj (Bankr. N.D. Tex.), Docket Nos. 233-307 (except 237) (73 docket entries showing the filing of the Subpoenas, as amended, and service-related documents).

the court system and preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.[28]

17.     The Dondero Entities appealed the Confirmation Order arguing, among other things, the protections in the Plan, including the Gatekeeper, were overbroad and illegal. On direct appeal, the Fifth Circuit rejected the Dondero Entities' arguments calling their scatter-shot strategy a "bankruptcy-law blunderbuss"[29] and affirmed the Confirmation Order in material part, including the Gatekeeper[30] and the factual findings regarding Mr. Dondero's control of the Dondero Entities.[31] The Fifth Circuit, however, limited the Plan's exculpation provision and remanded "for further proceedings consistent with [its] opinion"[32] and encouraged the courts to find the Dondero Entities vexatious if their harassment continued.[33]

18.     The Dondero Entities immediately petitioned for rehearing effectively requesting that the Fifth Circuit amend its opinion and limit the parties protected by the Gatekeeper so the Dondero Entities could expand their harassment of the estate.[34] The Fifth Circuit granted the petition for rehearing (without even waiting for Highland to respond), but rejected the request for a substantive amendment to the opinion. Instead, the Fifth Circuit simply deleted one sentence leaving the substance of its opinion—and its affirmation of the Gatekeeper—intact.[35]

---

[28] Confirmation Order ¶ 79.

[29] *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 432 (5th Cir. 2022).

[30] *Id.* at 435 ("the injunction and gatekeeper are sound"); *see also id.*, at 439 ("We otherwise affirm the inclusion of the injunction and the gatekeeper provision in the Plan.")

[31] *Id..* at 434-35. The Fifth Circuit also affirmed that the January and July Orders were *res judicata*. *Id.* at 438, n.15.

[32] *Id.* at 439-40.

[33] *Id.* at 439, n.19 ("Nothing in this opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants.").

[34] Case No. 21-10449, Document 516458961 (Sept. 2, 2022).

[35] *Cf.* Case No. 21-10449, Document 516439341 (5th Cir. Aug. 19, 2022), *with* Case No. 21-10449, Document 516462923 (5th Cir. Sept. 7, 2022). The Fifth Circuit subsequently confirmed it had limited only the exculpation provision. *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494, 498 (5th Cir.2023) ("In September 2022, we affirmed the Plan in all respects except one, concluding that the Plan exculpated certain non-debtors beyond the bankruptcy court's authority").

DOCS_NY:46677.6 36027/003

19.      Following remand, Highland filed a motion to conform the Plan to the Fifth Circuit's opinion by limiting the parties receiving exculpation.[36] The Dondero Entities objected, baselessly arguing that the Fifth Circuit had limited the Gatekeeper the same way it limited exculpation.[37] From the bench, the Bankruptcy Court overruled the Dondero Entities' objections, granted Highland's motion, and took the matter under advisement to issue a written opinion.[38] Highland expects the Dondero Entities to appeal the Bankruptcy Court's order when entered and— once again—seek to challenge the Gatekeeper in the Fifth Circuit. Highland believes any appeal will fail; however, the Gatekeeper has not fully stopped the Dondero Entities.[39] Instead, they have tried to evade it in order to further abuse Highland, anyone supporting Highland, and the judicial system.[40] Declaring the Dondero Entities vexatious and requiring them to file a copy of the order approving the Motion is necessary to protect all parties connected to Highland from continued harassment.

**E.      The Dondero Entities' Vexatiousness Impeded Highland's Bankruptcy and Continues to This Day**

20.      The Dondero Entities' relentless litigation and related actions during Highland's Bankruptcy Case have created substantial and unnecessary burdens for the estate and the judiciary.

---

[36] Bankr. Docket No. 3503.

[37] Bankr. Docket Nos. 3539, 3551.

[38] Ex. 10, Appx. [    ].

[39] The Dondero Entities are currently mischaracterizing the Fifth Circuit's opinion in a disingenuous attempt to limit the gatekeeper provision in the July Order appointing Mr. Seery. *See Brief for Appellants The Charitable DAF Fund L.P.; CLO HoldCo, Ltd.; Mark Patrick; Sbaiti & Company PLLC; Mazin A. Sbaiti; Jonathan Bridges*, Case No. 22-11036, Document 66 at 53 (5th Cir. Feb. 6, 2023) ("[The Fifth Circuit] refus[ed] to extend … gatekeeping protections to non-debtors including Seery as CEO, even while acknowledging and permitting the *Barton* doctrine and related protections to apply to debtors in possession who stand in the shoes of trustee …. The bankruptcy court, by contrast, did precisely what the Supreme Court now rejects—it expanded a judicially-invented doctrine [*i.e.*, the *Barton* Doctrine] beyond its precedential scope based on its own policy views [by approving the gatekeeper in the July Order].") This statement is plainly wrong. The Fifth Circuit's opinion did not limit the Gatekeeper and expressly declared that the January and July Orders were *res judicata* and not subject to collateral attack. Consistent with their goal to strip away all protections against harassing litigation, the Dondero Entities also, via separate motion, moved to modify the July Order. Bankr. Docket No. 2242.

[40] *See* ¶¶ 27-29 *infra*.

The Dondero Entities (a) filed in the Bankruptcy Court (i) 52 pre-petition claims against the estate; (ii) 80 motions; and (iii) 71 objections, including objections to the UBS, Acis, and Redeemer Committee settlements; (b) forced Highland to commence nine adversary proceedings against the Dondero Entities in order to protect, or collect property of, the estate; (c) appealed 18 Bankruptcy Court orders to this Court and eight orders to the Fifth Circuit; and (d) took other actions to impede Highland's reorganization, including filing fabricated stories with the U.S. Trustee. A more detailed summary of the Dondero Entities' actions is included in the Appendix as **Exhibit 1, Appendix [_]**. Certain of the Dondero Entities' most egregious conduct is summarized below.

21.     The Dondero Entities are the *only* parties currently litigating with Highland. All other parties resolved their claims and causes of action long ago and are awaiting their Plan distributions.

**i       The Dondero Entities File Meritless Claims Against Highland's Estate**

22.     During the Bankruptcy Case, the Dondero Entities filed dozens of claims against the estate every one of which was either withdrawn—after Highland was forced to defend them—or overruled by the Bankruptcy Court (and then, of course, appealed).

- The Dondero Entities' Prepetition Claims: The Dondero Entities filed 52 proofs of claim and then withdrew (or attempted to withdraw) them after Highland was forced to incur the cost of objecting.[41] CLOH publicly and voluntarily reduced its meritless claim to $0.00. Over a year later, Mr. Dondero replaced CLOH's trustee and—with a new titular head—CLOH now seeks

---

[41] Exs. 1-62, Appx. [_]. If former employee claims are counted, 92 proofs of claim were filed. NPA subsequently acquired five additional prepetition claims in early 2021 filed by former Highland employees all of which were subsequently withdrawn. Bankr. Docket Nos. 2044, 2045, 2046, 2047, 2266. In January 2022, NPA acquired a disputed employee claim (Bankr. Docket No. 3146), which was expunged (Bankr. Docket No. 3180). NPA has appealed.

to amend its $0.00 claim to over $2 million.[42] ***As of today, none of the Dondero Entities hold a single allowed claim against the estate.***

- <u>NPA's and HCMFA's Administrative Expense Claim</u>: NPA and HCMFA filed an administrative expense claim seeking $14 million for alleged overpayments to Highland under certain shared service and employee-reimbursement agreements during the Bankruptcy Case.[43] After a two-day evidentiary hearing,[44] the Bankruptcy Court found there were no overpayments but that NPA and HCMFA had breached the foregoing agreements at Mr. Dondero's direction and awarded Highland $2.596 million in contract damages.[45] The Dondero Entities appealed.

- <u>CPCM, LLC, Employee Claims</u>: During the bankruptcy, Highland disclosed it was terminating nearly all employees upon Plan confirmation. Because Highland's bonus program did not allow terminated employees to receive bonuses, Highland received approval for a retention plan intended to make employees largely whole.[46] Mr. Dondero, however, as conditions to future employment, demanded former Highland's employees reject Highland's offer and assign their claims to CPCM, LLC—a newly-created entity owned by Highland's former general counsel. After Highland incurred significant costs objecting, CPCM withdrew its' approximately $5.25 million in face amount of (baseless) claims for a nuisance settlement of $100,000, which CPCM was subsequently forced to forfeit in order to settle yet another frivolous claim against the estate.[47]

---

[42] Bankr. Docket Nos. 3177, 3178, 3220, 3223. CLOH's request to amend was denied by the Bankruptcy Court. Bankr. Docket No. 3457. CLOH has appealed.

[43] Ex. 63, Appx. [__].

[44] While testifying, Mr. Dondero made a series of vague threats about future allegations the Dondero Entities were going to bring to the U.S. Trustee. Ex. 64, Appx. [__]. Mr. Dondero's threats at the hearing were consistent with baseless allegations actually made to the U.S. Trustee by two Dondero Entities. *See* ¶ 27 *infra*.

[45] Adv. Proc. No. 21-03010, Docket No. 124 (Bankr. N.D. Tex. Aug. 30, 2022).

[46] Bankr. Docket No. 1849

[47] Bankr. Docket Nos. 3244; 3328 ¶ 5.

13

- <u>HCRE Proof of Claim</u>: HCRE filed a proof of claim alleging all or part of Highland's interest in SE Multifamily LLC (a Dondero-controlled entity) did not belong to Highland but instead belonged to Dondero-controlled HCRE.[48] After Highland learned HCRE's counsel had jointly represented HCRE and Highland in the underlying transactions, Highland was forced to seek disqualification over HCRE's objection.[49] After a six-month delay and the deposition of Highland's witnesses, HCRE abruptly canceled the depositions of Mr. Dondero and Matthew McGraner (a Dondero loyalist and joint-owner of HCRE) and moved to withdraw its claim.[50] At the subsequent hearing, it became clear HCRE's goal was to preserve its claim for future litigation outside of the Bankruptcy Court. The motion to withdraw was denied. During a hearing on the merits, significant evidence was adduced indicating that Mr. Dondero and HCRE lacked a good faith basis for filing the HCRE proof of claim.[51] This matter is *sub judice*.[52]

## ii    **The Dondero Entities File Meritless Motions in the Bankruptcy Case**

23.    The Dondero Entities also filed numerous motions attempting to re-assert control over Highland or, failing that, to overwhelm the estate with litigation. The following are illustrative:

- <u>Motion Requiring Notice and Hearing of Asset Sales</u>: Mr. Dondero alleged Highland violated 11 U.S.C. § 363 by selling assets without Bankruptcy Court approval *and* without giving him a

---

[48] Ex. 53, Appx. [ __ ].

[49] Bankr. Docket No. 3106.

[50] Bankr. Docket Nos. 3443, 3487, 3505.

[51] Ex. 65, Appx. [ __ ].

[52] Pursuant to its rights as a member of HCRE, Highland requested copies of SE Multifamily's and records. Mr. Dondero has thus far refused to provide that information. Regrettably, Mr. Dondero's indefensible refusal to comply with his unambiguous contractual obligations will likely necessitate litigation to obtain this basic information.

chance to purchase those assets. Mr. Dondero withdrew his baseless motion after Highland and the Committee incurred significant costs responding and preparing for trial.[53]

- <u>Motion for Temporary Restriction on CLO Sales</u>: After withdrawing the motion to restrict asset sales, five Dondero Entities moved to prevent Highland from causing its managed CLOs to sell assets without the Dondero Entities' approval (the "<u>Restriction Motion</u>").[54] The movants cited no authority and relied solely on Mr. Dondero's disagreement with Highland's business decisions. After an evidentiary hearing, the Bankruptcy Court denied the motion as "almost Rule 11 frivolous."[55]

- <u>Motion to Appoint Examiner</u>: Fifteen months after the Petition Date, and just days before confirmation, Mr. Dondero's family "trusts," Dugaboy and Get Good, moved for the appointment of an examiner,[56] purportedly to assess the claims against the estate (most of which had already settled) and the Dondero Entities' Plan objections.[57]

- <u>Motion to Compel Compliance with Rule 2015.3</u>: Two months post-confirmation and eighteen months after the Petition Date, Dugaboy and Get Good sought to compel Highland to file reports required by Bankruptcy Rule 2015.3.[58] Highland and the Committee objected, arguing the request was untimely, unduly burdensome, and was an attempt to obtain information for the

---

[53] Bankr. Docket No. 1349, 1546, 1551, 1622

[54] Bankr. Docket No. 1522

[55] Ex. 66, Appx. [__].

[56] Bankr. Docket No. 1752.

[57] The Dondero Entities subsequently admitted the motion was filed to delay confirmation, re-litigate settlements, and adjudicate the Dondero Entities' Plan objections in a different forum—completely improper purposes. Bankr. Docket No. 2061 ¶ 37 ("[W]hen the Trusts made the Examiner Motion, they believed that the motion would cause delay or a continuance of the confirmation hearing on the Plan …."); Bankr. Docket No. 3542 at 11 ("The Trustees sought the appointment of an examiner to address … (i) the issues raised … in the Restriction Motion [*i.e.*, a motion denied a month earlier], [and] (ii) various objections to the proposed [Plan] ….")

[58] Bankr. Docket No. 2256.

15

purpose of manufacturing more litigation claims. The motion was denied as moot. On appeal, the Dondero Entities admitted their goal was to create additional litigation.[59]

- <u>Motions to Recuse</u>: Seventeen months post-petition, the Dondero Entities sought to recuse the Bankruptcy Court. After their motion was denied, they appealed, but this Court held the order was interlocutory. In July 2022, the Dondero Entities defiantly moved the Bankruptcy Court to rule its order was "final" so it could be appealed to this Court and asserted additional allegations of bias. The motion was denied.[60] In September 2022, the Dondero Entities filed their third motion to recuse; that motion was fully briefed and is *sub judice*.[61]

### iii    **The Dondero Entities File Meritless Objections in the Bankruptcy Case**

24.     In addition to their meritless claims and motions, the Dondero Entities objected to nearly every motion Highland filed in the Bankruptcy Court. The following are some of the more egregious examples:

- <u>Objections to Settlements</u>: In late 2020 and early 2021, Highland settled with holders of the largest litigation claims against the estate—something the Bankruptcy Court called "nothing short of a miracle"—and sought court approval. The Dondero Entities objected to most of the settlements, including those with Acis, UBS, and HarbourVest.[62] Mr. Ellington—Mr. Dondero's long-time general counsel—objected to the settlement with Mr. Daugherty.[63]

---

[59] *See* ¶ 26 *infra*.

[60] At the hearing, the Bankruptcy Court observed that the Dondero Entities were "carpet-bombing us with paper and causing us to expend resources" and asked the Dondero Entities' counsel to "help me to understand why this is not wasting resources in your view and why this isn't just some strategy." Ex. 67, Appx.   .

[61] Bankr. Docket Nos. 2061, 2601, 2062, 3470, 3542.

[62] Bankr. Docket Nos. 1177, 1121, 1706, 1697, 1707, 2268, 2268, 2293. HarbourVest refers to a series of affiliated funds that invested in Highland CLO Funding, Ltd. ("<u>HCLOF</u>"), a Guernsey-based investment vehicle. HarbourVest asserted a $300 million-plus claim against Highland, alleging Mr. Dondero and certain former Highland employees fraudulently induced it to invest in HCLOF.

[63] Bankr. Docket No. 3242.

- <u>Objections to Confirmation</u>: Twenty-one of the Dondero Entities filed five separate objections to confirmation. Fifteen funds managed by NPA and HCMFA joined the objections. Certain former Highland employees (most of whom were then working for Mr. Dondero) and Mr. Dondero's Dallas-based bank, NexBank, also separately objected.[64] The Dondero Entities were the only parties pressing objections at confirmation. Their objections were overruled and a number found borderline frivolous.[65] The Dondero Entities appealed to the Fifth Circuit, which affirmed the Confirmation Order in all material respects.

- <u>NPA Fee Objections</u>: NPA objected to the final fee applications of nearly every professional in the Bankruptcy Case and asked the Bankruptcy Court to delay allowing fees and to allow NPA to retain a fee examiner. NPA's motion was denied. NPA appealed to this Court, and, after this Court dismissed the appeal for lack of prudential standing, to the Fifth Circuit.

- <u>Objection to Indemnity Trust Motion</u>: After Highland was unable to procure cost-effective insurance necessary for its reorganization because of Mr. Dondero's reputation in the insurance community—colloquially known as the "Dondero Exclusion"[66]—Highland and the Committee created an indemnity trust effectively to self-insure its indemnification obligations.[67] The Dondero Entities were the only objectors,[68] claiming the trust was somehow a plan modification. The Bankruptcy Court overruled their objections,[69] and the Dondero Entities appealed to this Court and the Fifth Circuit. Neither appeal was successful.[70]

---

[64] Bankr. Docket Nos. 1661, 1667, 1669, 1670, 1673, 1675, 1676.

[65] Confirmation Order ¶ C; Ex. 68, Appx. [   ] ("The Court considered [certain of the Dondero Entities' plan objections] to wholly lack merit, and are borderline frivolous, frankly. They do not raise a serious legal question.")

[66] Ex. 69, Appx. [   ].

[67] Bankr. Docket Nos. 2491, 2576, 2577.

[68] Bankr. Docket No. 2563.

[69] Bankr. Docket No. 2599.

[70] *Highland Cap. Mgmt. Fund Advisors v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 15648 (N.D. Tex. Jan. 28, 2022); *Highland Cap. Mgmt. Fund Advisors*, 574 F.4th at 496.

iv    <u>**Highland Litigates to Protect Its Rights and the Bankruptcy Process**</u>

25.    In addition to the foregoing, Highland was forced to file affirmative litigation to protect itself and to compel the Dondero Entities to comply with Bankruptcy Court orders and simple obligations:

- <u>First TRO and Subsequent Contempt Order</u>: In December 2020, after Mr. Dondero interfered with Highland's exclusive management of the CLOs and threatened Mr. Seery in writing—"Be careful what you do, last warning"—Highland sought and obtained a temporary restraining order ("<u>TRO</u>") preventing Mr. Dondero from, *inter alia*, (a) threatening Highland and its employees and agents; (b) communicating with Highland's employees (with one specified exception); and (c) interfering with Highland's business. Mr. Dondero violated the TRO immediately and was later held in contempt and sanctioned $450,000.[71] The Dondero Entities subsequently appealed.[72]

- <u>Second TRO</u>: Days after the Restriction Motion was dismissed as "frivolous,"[73] certain Dondero Entities sent letters (a) demanding Highland refrain from causing the CLOs to sell assets and (b) threatening to terminate Highland's management agreements with the CLOs (an action prohibited by the Protocols).[74] The Dondero Entities' actions forced Highland to seek and obtain another temporary restraining order to prevent further interference with the estate.[75]

---

[71] *Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021). Mr. Dondero's wrongful (but not contemptuous) conduct included destroying his Highland-issued cell phone resulting in the spoliation of his text messages. *Id.*, at *29-40.

[72] *See* ¶ 26 *infra*.

[73] *See* ¶ 27 *supra*.

[74] Adv. Proc. No. 21-03000-sgj, Docket Nos. 4-6, 4-7, 4-8, 4-9, 4-10, 4-11. The Dondero Entities subsequently admitted their letters were sent to procure denied relief. Bankr. Docket No. 2061 ¶ 27 ("In December of 2020, due to the Court's denial of the Restriction Motion, … [the Dondero Entities sent] correspondence … to reiterate [their] … request, again, that Debtor not liquidate the CLOs; to reserve any rights that the Advisors and the Retail Funds might have against Debtor for failure to maximize the value of the investment as required under the [CLO] Portfolio Management Agreements; and to notify Debtor that the Retail Funds … intended to initiate the procedure to remove Debtor as fund manager of the CLOs.").

[75] Adv. Proc. No. 21-03000-sgj11, Docket Nos. 2, 3, 4, 5, 6, 7, 20, 64, 76 (Bankr. N.D. Tex.).

- <u>Mandatory Injunction</u>: Prior to its bankruptcy, Highland had arrangements to provide middle- and back-office services to certain Dondero Entities. In late 2020, Highland exercised its right and gave notice of its intent to terminate the applicable agreements due to the expected downsizing of its workforce. Before and after formal notice was given, Highland tried to negotiate in good faith a transition plan with the Dondero Entities to prevent their retail funds from going into freefall, which could have negatively impacted Highland. Although all material terms were agreed upon after extensive negotiation, the Dondero Entities refused to sign unless Mr. Dondero regained access to Highland's offices—he had previously been evicted. With a substantial reduction-in-workforce days away, Highland sought an injunction compelling the Dondero Entities to create a transition plan.[76] At the hearing, and presumably to avoid SEC scrutiny, the Dondero Entities disclosed for the first time that they had cobbled together their own transition plan, thus mooting Highland's motion.[77]

- <u>Actions to Collect Demand/Term Notes</u>: Highland loaned certain Dondero Entities more than $60 million in aggregate pursuant to a series of simple, unambiguous two-page demand and term notes. In late 2020, Highland called the demand notes and, in January 2021, following defaults, accelerated the term notes. The Dondero Entities refused to satisfy their obligations and fabricated multiple (and ever-shifting) defenses, including that the notes were (a) compensation structured as a non-repayable note for tax purposes, (b) subject to an undisclosed oral agreement between Mr. Dondero and his sister to forgive the notes under certain conditions, (c) void due to mutual mistake, and (d) executed without proper authority. After discovery, the Bankruptcy Court recommended summary judgment be granted to Highland, finding the

---

[76] Adv. Proc. No. 21-03010-sgj11, Docket No. 2 (Bankr. N.D. Tex. Feb. 17, 2021).

[77] Adv. Proc. No. 21-03010-sgj11, Docket No. 25 (Bankr. N.D. Tex. Feb. 24, 2021); Ex. 70, Appx. [__].

Dondero Entities' defenses "farfetched," based on a "complete lack of evidence," and unable to pass the "Straight-Face Test."[78] The Bankruptcy Court assessed Highland's costs against the Dondero Entities as required under the notes. The Dondero Entities objected to each report and recommendation.[79]

- Second Contempt Order: The DAF and CLOH (baselessly) pursued claims against Mr. Seery in this Court (not the Bankruptcy Court)[80] in violation of the "gatekeeper" provisions in the January and July Orders. Following an evidentiary hearing, the Bankruptcy Court held Mr. Dondero, DAF, CLOH, their trustee, and their counsel in contempt.[81] The Dondero Entities subsequently appealed.[82]

**v        The Dondero Entities Appeal Nearly Every Order**

26.        Not content to abuse the Bankruptcy Court's jurisdiction, the Dondero Entities have appealed nearly every Bankruptcy Court order to this Court, and, when unsuccessful here, to the Fifth Circuit. Certain examples of the abusive appeals are as follows:

- Appeal of Confirmation Order: The Dondero Entities' appeal of their Plan objections was certified to the Fifth Circuit. The Fifth Circuit (a) affirmed the Gatekeeper and the factual findings concerning Mr. Dondero's control over the Dondero Entities, but (b) limited the parties exculpated by the Plan. The Fifth Circuit also implied that the Dondero Entities should be

---

[78] *Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Fund Advisors, L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1989 at * 40-41, 46-47, 59-60 (Bankr. N.D. Tex. Jul. 19, 2022); Highland filed a separate suit to collect on two other notes issued by HCMFA. The Bankruptcy Court also recommended summary judgment in favor of Highland in that action. Adv. Proc. No. 21-03082-sgj, Docket No. 73 (Bankr. N.D. Tex. Oct. 12, 2022).

[79] Civil Action No. 3:21-cv-00881-X, Docket Nos. 27-1, 27-4, 27-5, 34, 62, 78, 87, 98, 204, 210 (N.D. Tex.).

[80] *See* ¶ 27 *infra*.

[81] *In re Highland Cap. Mgmt., L.P.*, 2021 Bankr. LEXIS 2074 at *28-29, 40-41 (Bankr. N.D. Tex. Aug. 3, 2021), aff'd 2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022) ("The totality of the evidence was clear that Mr. Dondero sparked this fire … Mr. Dondero encouraged [plaintiffs] to do something wrong, and [plaintiffs] basically abdicated responsibility to Mr. Dondero with regard to … executing the litigation strategy.").

[82] *See* ¶ 26 *infra*.

DOCS_NY:46677.6 36027/003

deemed vexatious.[83] The Fifth Circuit remanded to the Bankruptcy Court to conform the Plan. On remand, Highland moved to conform the Plan to limit the exculpated parties as directed by the Fifth Circuit; the Dondero Entities objected.[84] Highland expects the Dondero Entities to appeal any order conforming the Plan and attempt, again, to overturn the Gatekeeper.

- <u>Appeal of TRO and First Contempt Order</u>: Mr. Dondero appealed the TRO prohibiting him from interfering with the estate or colluding with Highland employees, but this Court denied his request for an interlocutory appeal.[85] Mr. Dondero appealed the order holding him in contempt. This Court affirmed the Bankruptcy Court in all respects but one.[86] Mr. Dondero has appealed to the Fifth Circuit.

- <u>Appeal of Settlement Orders</u>: The Dondero Entities appealed the orders approving the settlements with Acis, UBS, and HarbourVest. The appeals of the Acis and HarbourVest settlements were dismissed for lack of prudential standing. The appeal of the UBS settlement was dismissed on the merits, with this Court finding aspects of the appeal were intended to "bamboozle" the Court.[87] The Dondero Entities appealed the HarbourVest and UBS settlements to the Fifth Circuit.

- <u>Appeal of Second Contempt Order</u>: The Dondero Entities appealed the order holding them in contempt for pursuing claims against Mr. Seery in violation of the January and July Orders. This Court (a) found the gatekeeper provisions in the January and July Orders "failed to deter"

---

[83] *See* ¶ 17 *supra*.

[84] *See* ¶ 19 *supra*.

[85] Case No. 3:21-CV-0132-E, Docket No. 9 (N.D. Tex. Feb. 11, 2021). Mr. Dondero also sought a writ of mandamus from the Fifth Circuit, which was dismissed after the matter was consensually resolved. Case No. 21-10219, Document 515867137 (5th Cir. May 18, 2021)

[86] Civ. Action No. 3:21-CV-1590-N, Docket No. 42 (N.D. Tex. Aug. 17, 2022). The parties agreed the Bankruptcy Court's monetary sanction assessing a penalty of $100,000 for each unsuccessful appeal exceeded its authority. The order was otherwise affirmed.

[87] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351, at *12 (N.D. Tex. Sept. 22, 2022).

the Dondero Entities and the contempt finding was based on "clear and convincing evidence" and (b) affirmed the finding regarding Mr. Dondero's control of DAF and CLOH.[88] The Dondero Entities appealed this Court's order to the Fifth Circuit.

- Appeal of Rule 2015.3 Order: Dugaboy appealed the order denying its motion to compel compliance with Rule 2015.3, admitting it had been filed to gain information for the purpose of manufacturing new litigation claims.[89] This Court dismissed Dugaboy's appeal for lack of prudential standing. Dugaboy appealed to the Fifth Circuit.[90]

- Appeal of Orders on Lack of Standing: The Dondero Entities appealed this Court's orders dismissing their appeals for lack of prudential standing, arguing the "person aggrieved" standard (applied in this Circuit and all other Circuits for decades) must be overturned.[91]

## vi     The Dondero Entities' Attempt to Evade the Bankruptcy Court

27.     Trying to evade the Bankruptcy Court, the Dondero Entities filed four complaints *in this Court* asserting administrative expense claims against Highland arising from its alleged breach of fiduciary duties to the Dondero Entities during the Bankruptcy Case. The Dondero

---

[88] *Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778, at *3, 5-11, 18-21 (N.D. Tex. Sept. 28, 2022).

[89] Case No. 3:21-cv-02268-S, Docket No. 15, pg. 2-3 (N.D. Tex. Jan. 1, 2022) ("That is the point of this appeal [of the order on the 2015.3 reports]: to determine what claims against the estate exist which arose from transactions with non-debtor affiliates—a determination that was foreclosed because of the Bankruptcy Court's Order rendering production of the 2015.3 Reports moot"); *see also* Case No. 3:22-CV-2268-S, Docket No. 21, pg. 5 (N.D. Tex. Aug. 8, 2022) ("Dugaboy's primary contention is that, but for the bankruptcy court's failure to compel Debtor to file retroactive reports regarding its ownership interests in non-debtor subsidiaries as of the bankruptcy petition date, Dugaboy might have used the information in those reports to investigate whether any post-petition claims exist against Debtor's estate by any non-debtor affiliate") (citations omitted).

[90] In its reply to the Fifth Circuit, Dugaboy alleged, without factual support, that Highland's failure to comply with Rule 2015.3 meant Highland's bankruptcy case was a "black box allowing Highland and its professionals to pilfer the estate for tens of million dollars" with the complicity of "the courts." Case No. 22-10831, Document 516578672, at 5 (5th Cir. Dec. 14, 2022). Highland moved to strike Dugaboy's unsupported statements. Although the Fifth Circuit denied the motion, it directed Highland to file a sur-reply, which it did. Case No. 22-10831, Document 39-1 (5th Cir. Jan. 12, 2023); *see also* Case No. 22-10831, Document 40 (5th Cir. Jan. 23, 2023). The matter is *sub judice*.

[91] Case No. 22-10960 (5th Cir. Oct. 5, 2022); Case No. 22-10575 (5th Cir. Jun. 10, 2022); Case No. 22-10831 (5th Cir. Aug. 24, 2022).

22

Entities also baselessly tried to bring indirect actions against the estate in Texas state court and through the U.S. Trustee, which violate the spirit—if not the letter—of the Gatekeeper.

- *Charitable DAF Fund, L.P., et al v. Highland Capital Management, L.P., et al*: The DAF and its subsidiary, CLOH, filed suit in this Court,[92] alleging Highland breached its purported duties by entering into the Bankruptcy Court-approved HarbourVest settlement—notwithstanding that CLOH had objected to the settlement and then, after conducting research and reviewing the arguments, publicly withdrew its objection, stating the objection had no merit.[93] Shortly thereafter, DAF and CLOH sought to add Mr. Seery as a defendant in violation of the January and July Orders.[94] The complaint was referred to the Bankruptcy Court in September 2021 and dismissed based on collateral and judicial estoppel grounds.[95] This Court reversed, in part, and remanded for additional findings.[96] Highland filed its renewed motion to dismiss in October 2022, and, in November 2022 (over a year after the matter was referred to the Bankruptcy Court and litigated), plaintiffs moved to withdraw the reference. The Bankruptcy Court recommended this Court *not* withdraw the reference, finding the motion was untimely and "appears to be forum shopping and an attempt to delay adjudication."[97] The motion to dismiss is under advisement.

---

[92] 3:21-cv-00842-B (N.D. Tex. Apr. 21, 2021).

[93] Ex. 71, Appx. [ ]; Ex. 72, Appx. [ ].

[94] *See* ¶ 25 *supra*.

[95] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 659 (Bankr. N.D. Tex. Mar. 11, 2022). .

[96] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162 (N.D. Tex. 2022). Although this Court reversed, it did not, in any way, find the Dondero Entities' complaint had merit. Instead, it found the Bankruptcy Court appropriately applied collateral estoppel *sua sponte* and that all elements of collateral estoppel were met except one—"actually litigated"—because a settlement under Rule 9019 has a different legal standard. *Id.*, 643 B.R. at 173. This Court also found the first two elements of judicial estoppel—"inconsistency" and "court's acceptance"—were met but the third element—"inadvertence"—was not assessed and remanded to determine if CLOH's withdrawal of its objection was "inadvertent."

[97] Civ. Act. No. 3:21-0842-B, Docket No. 162 at 14 (N.D. Tex. Feb. 6, 2023); Civ. Act. No. 3:22-02802-S, Docket No. 2 (N.D. Tex. Feb. 6, 2023). The Dondero Entities objected to the Bankruptcy Court's report and recommendation. Civ. Act. No. 3:22-02802-S, Docket No. 3 (N.D. Tex. Feb. 21, 2023).

- *PCMG Trading Partners XXIII, L.P. v. Highland Capital Management, L.P.*: PCMG, an entity controlled by Mr. Dondero, filed suit in this Court,[98] alleging Highland mismanaged an investment fund during the Bankruptcy Case. PCMG never served its complaint and moved for an *ex parte* stay pending appeal of the Confirmation Order, which was granted. After Highland re-opened the case, this Court referred the complaint to the Bankruptcy Court, and Highland moved to dismiss. PCMG withdrew its complaint shortly before the hearing without explanation.[99]

- *The Dugaboy Investment Trust v. Highland Capital Management, L.P.*: Dugaboy filed suit in this Court,[100] alleging Highland mismanaged the Highland Multi-Strategy Credit Fund, L.P. ("MSCF") by causing it to sell assets during the Bankruptcy Case. Dugaboy did not serve its complaint but withdrew it after Highland discovered it and disclosed that it was duplicative of Dugaboy's proof of claim,[101] which itself was subsequently withdrawn after Highland incurred the cost of objecting.[102]

- *The Charitable DAF Fund, L.P. v. Highland Capital Management, L.P.*: After Dugaboy withdrew its complaint, the DAF filed virtually the same complaint in this Court[103] alleging, again, mismanagement of MSCF. The DAF never served its complaint and moved for an *ex parte* stay, which was granted. After Highland re-opened the case, this Court referred the

---

[98] 3:21-cv-01169-N (N.D. Tex. May 21, 2021).

[99] Adv. Proc. No. 22-03068-sgj, Docket No. 27 (Bankr. N.D. Tex. Aug. 1, 2022).

[100] 3:21-cv-01479-S (N.D. Tex. Jun. 23, 2021).

[101] Ex. 58, Appx. [ ].

[102] Bankr. Docket No. 2965.

[103] 3:21-cv01710-N (N.D. Tex. Jul. 22, 2021).

complaint to the Bankruptcy Court. In August 2022, the Bankruptcy Court dismissed the complaint as a late-filed administrative expense claim.[104] The DAF has appealed.[105]

- Mr. Dondero Seeks Discovery in Texas State Court: In July 2021, Mr. Dondero filed a petition in Texas state court seeking pre-suit discovery from Alvarez & Marsal CRF Management, LLC ("Alvarez"), and Farallon Capital Management, LLC ("Farallon"), alleging that Mr. Seery provided "inside information" to Farallon to assist in the purchase of claims from the Redeemer Committee (represented by Alvarez). Mr. Dondero also sought discovery (again) on the previously adjudicated HarbourVest settlement.[106] The petition clearly targeted Mr. Seery. The petition was removed to the Bankruptcy Court but remanded back to state court.[107] The state court held a hearing on Mr. Dondero's petition and dismissed it the same day.[108]

On January 20, 2023, another Dondero Entity filed another petition in Texas state court for pre-suit discovery against Farallon and Stonehill Capital Management, LLC ("Stonehill"), again baselessly alleging Farallon and Stonehill purchased claims with "inside information" from Mr. Seery, including information related to the HarbourVest settlement, so Mr. Seery, in conspiracy with them, could somehow loot the estate.[109] Again, Mr. Seery was not named but is clearly the target of the pre-suit discovery

---

[104] Adv. Proc. No. 22-03052, Docket No. 42, 43 (Bankr. N.D. Tex. Sept. 30, 2022).

[105] The DAF subsequently dismissed its appeal without explanation. Civ. Action No. 3:22-cv-02280-S, Docket No. 9 (N.D. Tex. Feb. 22, 2023).

[106] Ex. 73, Appx. [ ]; Ex. 74, Appx. [ ].

[107] Despite remanding the action to state court, the Bankruptcy Court noted that Mr. Dondero's petition focused primarily on Mr. Seery despite not naming him directly. Adv. Proc. No. 21-03054-sgj, Docket No. 23 at 6 (Bankr. N.D. Tex. Jan. 4, 2022) ("It appears that Dondero may be seeking discovery as a means to craft a lawsuit against Seery … despite being previously sanctioned, along with related parties, by this court when he attempted to add Seery to a lawsuit … in violation of this court's prior gatekeeping orders …. Disturbingly, Seery again appears to be at the center of Dondero's allegations of wrongful acts, as his name appears nine times in the petition that commenced the Rule 202 Proceeding").

[108] Ex. 75, Appx. [ ].

[109] Ex. 76, Appx. [ ].

- <u>Mr. Dondero Tenders Meritless Complaints to the U.S. Trustee</u>: In late 2021, and again in May 2022, Dugaboy, NPA, and HCMFA sent letters to the Office of U.S. Trustee[110] falsely, baselessly, and maliciously alleging, among other things, that: (a) the Bankruptcy Court ruled for Highland because Highland knowingly misrepresented facts; (b) the Bankruptcy Case lacked transparency because Highland did not file its Rule 2015.3 reports; (c) Highland's settlement with HarbourVest was fraudulent; (d) Highland engaged in asset sales without Bankruptcy Court approval and without offering investors (*i.e.*, Mr. Dondero) the opportunity to purchase the assets; (e) Mr. Seery violated employee rights by not paying the employee claims transferred to CPCM; (f) the Plan impermissibly sought to liquidate a solvent estate against creditor wishes; (g) Mr. Seery engaged in insider trading and used his authority to dominate Highland for his own self-interest; and (h) Mr. Seery conspired with Stonehill and Farallon on the purchase of claims. The U.S. Trustee has not contacted Highland concerning Mr. Dondero's libelous letters.

### vii   The Dondero Entities' Newest Action Restating Their Spurious Claims About Highland

28.    On February 6, 2023, the Dondero Entities filed a motion for leave to file a complaint against Highland seeking information about Highland's current assets, the results of its asset sales, and the amounts distributed to creditors.[111] Highland believes the Dondero Entities' complaint will ultimately be dismissed. The motion, however, is emblematic of the Dondero Entities' unceasing litigation—restating the litany of false statements in their letters to the U.S. Trustee and seeking to re-litigate a multitude of settled issues (*e.g.*, the HarbourVest settlement,

---

[110] Dugaboy sent its letter to the U.S. Trustee on October 5, 2021. NPA and HCMFA sent letters on November 3, 2021, and May 11, 2022. The letters can be found at Bankr. Docket No. 3662-1.

[111] Bankr. Docket No. 3662.

Highland's ability to sell assets without obtaining Mr. Dondero's consent, and Mr. Seery's supposed malfeasance).

29.     The Dondero Entities' conduct—a little over two weeks ago—belies any belief that their litigation crusade is at an end. Instead, it is clear their goal is to file new and ever more frivolous motions and regulatory actions, like the Texas state court actions and letters to the U.S. Trustee, to gin up additional (and baseless) claims against Highland and its management.

## III.     RELIEF REQUESTED

30.     Highland requests an order in the form annexed to the Motion as **<u>Exhibit A</u>** (the "<u>Order</u>") complementing the Gatekeeper by deeming the Dondero Entities "vexatious litigants" and requiring them to file a copy of the Order in any court or tribunal (whether foreign or domestic) or governmental, administrative, or regulatory agency in which (a) a claim, cause of action or complaint of any kind (including, without limitation, appeals and regulatory and administrative actions) (collectively, an "<u>Action</u>") instituted, commenced, or pursued by any Dondero Entity is currently pending (including, for the avoidance of doubt, any Action in the U.S. District Courts and Bankruptcy Courts for the Northern District of Texas, the U.S. Court of Appeals for the Fifth Circuit, the Office of the U.S. Trustee, the U.S. Securities and Exchange Commission, and the Texas State Securities Board) against (i) Highland, the Highland Claimant Trust, the Highland Litigation Sub-Trust, and HCMLP GP LLC (collectively, the "<u>Highland Entities</u>"), (ii) any entity directly or indirectly majority-owned and/or controlled by any Highland Entity, (iii) any entity managed directly or indirectly by any of the Highland Entities, including, without limitation, HCLOF, (iv) each of the Highland Entities' trustees, officers, executives, agents, employees, and professionals, (v) the current and former members of the Oversight Board of the Highland Claimant Trust and their affiliates, including, without limitation, Farallon, Stonehill, Muck Holdings LLC, and Jessup Holdings LLC, (vi) the Independent Board and each of its members (in

DOCS_NY:46677.6 36027/003

their official capacities), (vii) the Committee and each of its members (in their official capacities), (viii) the professionals (and their respective firms) retained by Highland or the Committee during the Bankruptcy Case, and (ix) any person or entity indemnified by any Highland Entity ((i)-(ix), collectively the "Covered Parties") arising from or related to (1) the Bankruptcy Case, (2) the negotiation of the Plan, (3) the wind down of the Highland Entities' business, (4) the administration of the Plan or property to be distributed under the Plan, (5) the management of the Highland Entities, (6) property owned directly or indirectly by any Highland Entity, or (7), as applicable, the transactions in furtherance of the foregoing ((1)-(7), collectively, the "Estate Administration") or (b) any Dondero Entity institutes, commences, or pursues an Action against any Covered Party arising from or related to the Estate Administration.

## IV.    ARGUMENT

### A.    Courts in the Fifth Circuit Have the Authority to Deem Litigants "Vexatious" and Issue Pre-Filing Injunctions

31.    The Fifth Circuit has on many occasions affirmed lower court orders declaring litigants "vexatious" and imposing pre-filing injunctions and other sanctions to prevent abusive and harassing litigation.[112] In doing so, the Fifth Circuit has repeatedly held that federal courts (a) have the inherent power to "sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of [their] docket[s]"[113] and (b) may exercise their power, and the authority provided by the All Writs Act (28 U.S.C. § 1651(a)), to deem a litigant "vexatious" and to impose a pre-filing injunction and any other remedy necessary to stop the vexatious conduct if they find

---

[112] *See, e.g., Bowling v. Willis*, 2019 U.S. Dist. LEXIS 168602 (E.D. Tex. Aug. 9, 2019), *aff'd* 853 F. App'x. 983 (5th Cir. 2021); *Staten v. Harrison Cnty.*, 2021 U.S. App. LEXIS 35747 (5th Cir. Dec. 2, 2021); *Schum v. Fortress Value Recovery Fund I LLC*, 2019 U.S. Dist. LEXIS 226679 at *14-15 (N.D. Tex. Dec. 2, 2019), *aff'd* 805 F. App'x. 319 (5th Cir. 2020); *Caroll v. Abide (In re Carroll)*, 850 F.3d 811 (5th Cir. 2017); *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181 (5th Cir. 2008); *Clark v. Mortenson*, 93 F. App'x. 643, 645-46 (5th Cir. 2004); *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002).

[113] *Caroll*, 850 F.3d at 815.

that the litigant acted in "bad faith."[114] The Fifth Circuit effectively affirmed its prior holdings in September 2022 when it all but encouraged Highland to have the Dondero Entities deemed vexatious.[115]

32.     In the Fifth Circuit, the "traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of a pre-filing injunction against a vexatious litigant."[116] Instead, courts apply a four-part test to determine whether to impose a pre-filing injunction, analyzing: (a) the party's history of litigation, in particular whether s/he has filed vexatious, harassing, or duplicative lawsuits; (b) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (c) the extent of the burden on the courts and other parties resulting from the party's filings; and (d) the adequacy of alternative sanctions.[117]

33.     In assessing these factors, courts consider affirmative litigation as well as objections, appeals, attempts to re-litigate settled issues, and other actions, including regulatory and defensive actions taken by the vexatious litigant.[118] If relevant, courts may also consider

---

[114] *Id.*; *see also Staten*, 2021 U.S. App. LEXIS 35747 at *7 ("District court have authority to enjoin vexatious litigants under the All Writs Act, 28 U.S.C. § 1651. They also have inherent power to impose pre-filing injunctions to deter vexatious, abusive, and harassing litigation, and they have a constitutional obligation to protect their jurisdiction from conduct that impairs their ability to carry out their Article III functions.")

[115] *NexPoint*, 48 F.4th at 369, n.19 ("Nothing in this opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants.").

[116] *Baum*, 513 F.3d at 189 (citations omitted).

[117] *Id.*

[118] *Caroll*, 850 F.3d at 815-16 ("Appellants' suggestion that their conduct was not done in bad faith is belied by their repeated attempts to litigate issues that have been conclusively resolved against them or that they had no standing to assert and by their unsupported and multiple attempts to remove … the trustee."); *Clark*, 93 F. App'x. at 645-46 (finding multiple lawsuits against receiver for breach of fiduciary duty, conspiracy, embezzlement, mail fraud, and RICO violations vexatious); *Caroll*, 2016 U.S. Dist. LEXIS 100930 at *32-33 (M.D. La. Aug. 2, 2016), *aff'd* 850 F.3d 811 (5th Cir. 2017) (finding appeal of bankruptcy court orders and standing that was "entirely 'uncertain'" evidence of vexatiousness); *Schum*, 2019 U.S. Dist. LEXIS 226679 at *14-15 (finding objections and motions, including motion to recuse, and appeal of nearly every order vexatious); *Alliance Riggers & Constructors, Ltd. v. Restrepo*, 2015 U.S. Dist. LEXIS 29346 at *14-15 (W.D. Tex. Jan. 7, 2015) (holding litigant can be vexatious if a defendant or plaintiff if "seeks to halt the judicial process with identical meritless filings").

actions in other courts or outside of court if they threaten the court's jurisdiction or assist in determining bad faith.[119]

34.     The conduct in *Caroll v. Abide* is instructive (and, as discussed herein, less egregious than that of the Dondero Entities). In *Carroll*, after a trustee was appointed to manage the bankruptcy estate, the Carolls immediately began objecting and filing a "legion" of motions to undermine her mandate. The court found the Carolls vexatious, highlighting the following, among others, as examples of vexatious conduct: (a) challenges to, and appeals of, orders authorizing the sale of debtor property, (b) challenging the estate's ownership of property, resulting in findings of contempt, orders to compel, and denial of efforts to stay the proceedings, (c) two motions to remove the trustee, and (d) the filing of a complaint with the U.S. Trustee, not coincidentally, at the same time the Carolls were seeking to thwart bankruptcy sales.[120] Based on the foregoing, the bankruptcy court found the Carolls and their daughters (non-debtors who filed actions at the direction of their parents) "vexatious litigants" and issued a pre-filing injunction.[121]

---

[119] *Bowling*, 2019 U.S. Dist. LEXIS 168602 at *10-14 (upholding pre-filing injunction based on the "totality of the record" where movant filed three federal cases seeking to re-litigate or interfere with her state court divorce proceeding); *Baum*, 513 F.3d at 191 ("The district court could consider Baum's conduct in the state court proceedings in determining whether his conduct before the bankruptcy court was undertaken in bad faith or for an improper motive"); *Nix v. Major League Baseball*, 2022 U.S. Dist. LEXIS 104770 at *15-16, 62 (S.D. Tex. Jun. 13, 2022) (taking judicial notice of actions filed in other courts and an attempt to strong arm a party with threats of litigation); *Schum*, 2019 U.S. Dist. LEXIS 226679 at *15 (considering appeal of FCC approval of bankruptcy sale as evidence of vexatious litigation).

[120] *In re Caroll*, 2016 Bankr. LEXIS 937 at *5-27 (Bankr. M.D. La. Mar. 16, 2016) *aff'd* 2016 U.S. Dist. LEXIS 100930 (M.D. La. Aug. 2, 2016), *aff'd* 850 F.3d 811 (5th Cir. 2017).

[121] *Id.* at *34; *see also Caroll v. Abide*, 2016 U.S. Dist. LEXIS 100930, at *32 (M.D. La. Aug. 2, 2016) ("For years, then, Appellants have appealed well-founded orders issued by the Bankruptcy Court and thusly delayed (or attempted to hinder) specific actions by court or trustee which were authorized by either Code or jurisprudence."); *Caroll*, 850 F.3d at 815-16 ("As both the bankruptcy court and the district court meticulously explained, Appellants have engaged in conduct intended to harass and delay. Appellants' suggestion that their conduct was not done in bad faith is belied by their repeated attempts to litigate issues that have been conclusively resolved against them or that they had no standing to assert and by their unsupported and multiple attempts to remove Abide as the trustee."). The conduct in *Caroll* is consistent with conduct other courts have found to be vexatious. *See, e.g. Clark*, 93 F. App'x. at 645-46; *Schum*, 2019 U.S. Dist. LEXIS 226679, at *14-15.

35.     Finally, and as was done in *Caroll* (and other cases), a court may enjoin or sanction parties in front of the court and those under such parties' control or that act in concert with them[122] and may require that the vexatious litigants file the order deeming them vexatious in any pending or future proceeding.[123]

## B.     This Court Has Jurisdiction to Deem the Dondero Entities Vexatious and Prohibit Filings in Both This Court and the Bankruptcy Court

36.     As discussed in *Schum*, district courts, which sit as courts of review over bankruptcy courts, have the inherent authority to enjoin filings in both the district court *and in the bankruptcy courts*. Orders issued by the Bankruptcy Court are appealed to this Court pursuant to 28 U.S.C. § 158(a). Similarly, this Court—as it is currently doing—is required by 28 U.S.C. § 157(c)(1) to review the Bankruptcy Court's proposed findings of fact and conclusions of law with respect to "non-core" matters and any objections thereto. Accordingly, events in the Bankruptcy Court directly affect this Court's jurisdiction, and this Court may sanction vexatious conduct in the Bankruptcy Court to protect the jurisdiction of both the Bankruptcy Court and this Court.[124]

---

[122] *Caroll*, 2016 Bankr. LEXIS 937, at *34 (prohibiting litigation filed by the vexatious litigants and "anyone acting on their behalf"); *Clark v. Mortenson*, 93 F. App'x. at 654 (prohibiting suits brought "directly and indirectly" by the vexatious litigants); *see also Staten*, 2021 U.S. App. LEXIS 35747, at *6-7 (extending pre-filing injunction to protect certain named parties "and those in privity with them"); *see also Restrepo*, 2015 U.S. Dist. LEXIS 29346 at *15 ("[O]rders made pursuant to the All Writs Act may be directed not only to the immediate parties to a proceeding, but also 'to person who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice.'") (citing *Williams v. McKeithen*, 939 F.2d 1100, 1104 (5th Cir. 1991).

[123] *Baum*, 513 F.3d at 191 ("[T]he Second Circuit … upheld those provisions of the injunction requiring Martin-Trigona to alert state courts of his history of vexatious filings in federal courts."); *Nix*, 2022 U.S. Dist. LEXIS 104770 at *70 ("The court also orders Nix to file a copy of this opinion with any filing that he makes in any other court"); *see also Silver v. City of San Antonio*, 2020 U.S. Dist. LEXIS 118643, at *31-32 (W.D. Tex. Jul. 7, 2020) (requiring vexatious litigant file in any court a notice listing every sanction imposed or sanction warning issued and each order imposing sanctions or issuing a sanctions warning and alert state courts of history of vexatious federal filings); *Marinez v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 208591, at *14 (W.D. Tex. May 31, 2013) ("[P]laintiff will disclose the contents of this order and the outcome of every previously filed suit related to the subject property that was previously filed by her.")

[124] *Schum*, 2019 U.S. Dist. LEXIS 226679 at *12-13 ("[A] court may issue injunctive relief … in aid of its appellate jurisdiction over the bankruptcy court … Appellees seek injunctive relief prohibiting Appellant from making future filings related to [two bankruptcy court proceedings]. Those filings, when decided and if appealed, will affect the Court's future appellate jurisdiction over those bankruptcy proceedings. Accordingly, the Court has the jurisdiction to order the requested relief.").

31

### C.      Highland Satisfies the Four-Part Test for Obtaining a Pre-Filing Injunction

37.      Based on the Dondero Entities' actions, Highland has established each element of the Fifth Circuit's four-part test for obtaining a pre-filing injunction and related relief.

### i      The Dondero Entities Have a History of Vexatious Litigation

38.      Highland easily meets the first prong—history of litigation. As set forth above, the Dondero Entities' vindictive litigation crusade against Highland has continued unchecked for over two years. The Dondero Entities have objected to everything, filed (and then generally abandoned) baseless claims, pursued claims (including duplicative claims) in other forums to evade the Bankruptcy Court, and appealed every adverse ruling regardless of the merits, the evidence, the standard on appeal, whether they have standing, or whether the appeal is economically rational. The Dondero Entities' conduct—as recently as two weeks ago—shows they have no intent to stop their harassment and remain intent on being "disruptors."[125]

39.      Nor is the Dondero Entities' strategy new; they are still locked in vociferous, decade-long litigation with UBS, Mr. Daugherty, and Mr. Terry and Acis notwithstanding the adverse rulings—and harsh criticisms—issued against them. The Dondero Entities have a long and storied history of vexatious litigation—a history so infamous the insurance industry generally refuses to insure against it.[126]

### ii      The Dondero Entities' Litigation Lacks a Good-Faith Basis

40.      Highland also satisfies the second prong—lack of good faith. The Dondero Entities' relentless litigation is simply the execution of Mr. Dondero's stated plan to "burn down the place"

---

[125] Confirmation Order, ¶ 17 ("[T]he remoteness of [Mr. Dondero and the Dondero Related Entities'] economic interests is noteworthy, and the Bankruptcy Court questions the good faith of Mr. Dondero's and the Dondero Related Entities' objections. In fact, the Bankruptcy Court has good reason to believe that these parties are not objecting to protect economic interests they have in the Debtor but to be disruptors").

[126] *See* ¶ 24 *supra*.

DOCS_NY:46677.6 36027/003

after he failed to impose his will and re-take control of Highland and his personal threat against Mr. Seery—"Be careful what you do, last warning." The Dondero Entities' actions led the Bankruptcy Court to find their litigation was "designed merely to harass," resulted in two contempt orders and two restraining orders, multiple admonishments (including from this Court), and caused the Fifth Circuit to *sua sponte* suggest deeming the Dondero Entities vexatious. Unrepentant and unrestrained, the Dondero Entities continue to appeal nearly every adverse ruling (including multiple appeals of this Circuit's long-standing precedent on prudential standing), seek information to manufacture more baseless claims, and attempt to re-litigate settled issues in other forums.[127]

41.     The Dondero Entities are the *only* parties litigating with Highland. Every other party has resolved its claims and awaits distributions under the Plan—confirmed with the approval of 99.8% of creditors in amount. The Dondero Entities' conduct in this case (and prior cases) evinces their lack of good faith.

### iii     The Dondero Entities' Litigation Has Created an Enormous Burden on the Court System and Highland

42.     The third prong of the test—burden on the courts and Highland—is easily met. In the Bankruptcy Court, the Dondero Entities filed 52 prepetition claims (not one of which was ultimately allowed), 80 motions, 71 objections, and forced Highland to file nine adversary proceedings against them. The Dondero Entities appealed nearly every adverse ruling from the Bankruptcy Court to this Court and, when unsuccessful, to the Fifth Circuit, resulting in a total of 26 appeals. The burden created on the court system is enormous. So is the burden on Highland.

---

[127] By way of example, the Dondero Entities challenged the HarbourVest settlement in the Bankruptcy Court and then in this Court. When those efforts proved unsuccessful (and led to a finding of contempt), the Dondero Entities sent letters to the U.S. Trustee and filed pre-suit discovery requests in Texas state courts to challenge the HarbourVest settlement yet again.

33

Highland has been forced to spend substantial sums litigating with the Dondero Entities and, in fact, had to procure exit financing, in large part, to fund its defense of the Dondero Entities' litigation.[128]

### iv     Alternative Sanctions Are Inadequate to Deter the Conduct

43.     Finally, the Dondero Entities have shown that previous sanctions are inadequate to deter their conduct. The Dondero Entities have been enjoined twice; their violations of Bankruptcy Court orders have led to two contempt findings and monetary sanctions.

44.     In order to protect Highland and its court-appointed management, the Bankruptcy Court issued the January and July Orders and approved the Gatekeeper. The Dondero Entities violated the July Order, and, notwithstanding the Fifth Circuit's affirmance of the Gatekeeper and its finding that the January and July Orders were *res judicata*, the Dondero Entities still seek to evade these protections—objecting to the motion to conform filed in the Bankruptcy Court with the presumed goal of appealing such order to the Fifth Circuit. They even contend the Fifth Circuit *actually limited the Gatekeeper* in an effort to overturn the July Order.[129] The Dondero Entities then sought to enlist the U.S. Trustee and the Texas state courts in their attempts to circumvent the Gatekeeper and attack Mr. Seery and Highland.

45.     The Dondero Entities' motives are painfully clear—find a way to avoid the Gatekeeper in the hope of flooding the courts with additional litigation. Unfortunately, the current sanctions are inadequate to protect the estate.

---

[128] Bankr. Docket Nos. 2229, 2503. The Dondero Entities objected to the exit financing. Bankr. Docket No. 2403, 2467.
[129] *See* n.39 *supra*.

## V.   <u>CONCLUSION</u>

46.     WHEREFORE, Highland respectfully requests that this Court grant the Motion, enter the Order consistent with paragraph 30 *supra*, and grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

Dated: [_____], 2023        **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*pro hac vice*)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Tel: (310) 277-6910
Fax:  (310) 201-0760
Email:     jpomerantz@pszjlaw.com
           jmorris@pszjlaw.com
           gdemo@pszjlaw.com
           hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
_____
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*