# EXHIBIT 70

FILED
5/2/2022 9:27 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Martin Reyes DEPUTY

CAUSE NO. DC-21-09534

| | | |
|---|---|---|
| IN RE JAMES DONDERO, | § § | IN THE DISTRICT COURT |
| *Petitioner.* | § § § § | 95th JUDICIAL DISTRICT DALLAS COUNTY, TEXAS |

### VERIFIED AMENDED PETITION TO TAKE DEPOSITION BEFORE SUIT AND SEEK DOCUMENTS

Petitioner James Dondero respectfully requests that this Court order, pursuant to Texas Rule of Civil Procedure 202, the deposition of the corporate representatives and/or employees of Alvarez & Marsal CRF Management, LLC, and of Farallon Capital Management, LLC. Petitioner further requests that the Court order certain limited, yet relevant, documents to be provided under Texas Rule of Civil Procedure 199.2 as set forth in below.

Petitioner would respectfully show the Court that:

### I.

### PARTIES

1. Petitioner James Dondero ("Petitioner") is an individual resident in Dallas County, Texas, and is impacted by the potential acts and omissions.

2. Respondent Alvarez & Marsal CRF Management, LLC ("A&M") is a Delaware limited liability company serving as an investment adviser, with offices in Dallas County, Texas, at 2100 Ross Ave., 21st Floor, Dallas, Texas 75201.

3. Respondent Farallon Capital Management, L.L.C. ("Farallon") is an investment fund located at One Maritime Plaza, Suite 2100, San Francisco, CA 94111, and Respondent Michael Lin is a principal at Farallon.

## II.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this matter pursuant to Texas Rule of Civil Procedure 202. The anticipated lawsuit would include common law claims.

5. The Court has personal jurisdiction over Respondent Alvarez & Marsal because it maintains a regular place of business in Dallas County. Personal jurisdiction is also proper under Tex. Cir. Prac. Rem. Code § 17.003, and under §17.042(1)-(3) because A&M contracted with counterparties, Joshua Terry and Acis Capital Management, L.P., both of whom at the time had their principal place of business in Dallas County, Texas, and because its acts on behalf of the Crusader Funds (as defined below), if they occurred as believed they did, will have been tortious as to Petitioner. Moreover, this Court has quasi *in rem* jurisdiction because the action concerns the sale of personal property located in Dallas County in which Plaintiff claims an interest.

6. The Court has personal jurisdiction over Farallon because it contracted with A&M to purchase claims in the Highland Capital Management, L.P. Chapter 11 bankruptcy ("Highland bankruptcy") upon the recommendation of James Seery, Highland's CEO. Such acts, if shown to have occurred as believed and under the alleged circumstances, will have been tortious as to the Petitioner. Moreover, this Court has quasi *in rem* jurisdiction because the action concerns the sale of personal property located in Dallas County in which Plaintiff claims an interest.

7. Venue is proper in Dallas County, Texas, where venue of the anticipated lawsuit may lie and where the property at issue exists, and where a substantial amount of the acts and omissions underlying the potential suit occurred.

8. Removal is not proper because there is no basis for federal jurisdiction because a Rule 202 petition does not meet Article III of the United States Constitution's standing requirement.

## III.

## FACTUAL BACKGROUND

9. This matter arises out of purchase of certain bankruptcy claims in the Highland Bankruptcy.

10. Petitioner is the founder and former CEO of Highland Capital Management, L.P., currently a bankrupt debtor. He is also an investor in Highland Crusader Fund, Ltd. and several of its companion and affiliated funds (the "Crusader Funds"). Therefore, Petitioner has an interest in seeing to it that A&M properly marketed the claims for proper purposes and for the right price.

11. Until recently, the Crusader Funds were managed by Highland, and then by A&M when those funds went into liquidation.

12. Petitioner has an interest in the bankruptcy estate by virtue of his affiliation, and the fact that he is an adviser and/or manager of several trusts who own the equity of the debtor and therefore has an interest in seeing the equity properly protected in bankruptcy.

13. Shortly after the Highland bankruptcy was filed, the Chapter 11 Trustee issued an invitation to creditors to serve on the unsecured creditors committee (the "UCC").

14. The Trustee's invitation included a condition: namely, that anyone who served on the committee would have to agree that they would not sell their claims or in any way alienate them (including allowing them to be used as security) without leave of Court. Specifically, the United Trustee's instruction sheet stated:

> Creditors wishing to serve as fiduciaries on any official committee are advised that may not purchase, sell or otherwise trade in or transfer

claims against the Debtor while they are committee members absent an order of the Court. By submitting the enclosed questionnaire and accepting membership on official committee of creditors, you agree to this prohibition. The United States Trustee reserves the right to take appropriate action, including removing the creditor from the committee, if the information provided in the Questionnaire is inaccurate, if the foregoing prohibition is violation, or for any other reason the United States Trustee believes is proper in the exercise of her discretion.

15. Upon information and belief, two of the Highland creditors – the Redeemer Committee and the Crusader Fund, who between them owned approximately $191 million in claims in the bankruptcy as well as other assets (the "Crusader Claims") – sold their Claims and assets to Jessup Holdings LLC, a subsidiary of Stonehill Capital Management, LLC. Alvarez and Marsal made this sale, which was in violation of the foregoing order.

16. Alvarez and Marsal arguably owe fiduciary duties to the funds and funds investors, and may have violated those duties by failing to conduct a sale for proper value, and/or by engaging in other acts that resulted in a sale of assets that was not authorized and/or not allowed by the terms of the funds or by law.

17. Around the same time, another Highland creditor—Joshua Terry and Acis Capital Management, who have approximately $25 million in claims—also sold their claims to Muck Holdings, LLC, set up by Farallon Capital Management (the "Acis Claims").

18. And a third creditor, HarbourVest, sold its $80 million worth of claims (the "HarbourVest Claims") to Muck Holding as well.

19. The above interests are generally referred to hereinafter as the "Claims".

20. The sales of the Claims were not reported contemporaneously as they were supposed to have been, nor was leave of the bankruptcy court ever sought, much less obtained, for the sales.

21. However, Acis/Terry, and Crusader continued to serve on the UCC for a substantial period of time as if they hadn't sold their claims at all.

22. As was discovered by the Petitioner, the current CEO of Highland, James Seery, has an age-old connection to Farallon and to Stonehill and, upon information and belief, advised Farallon and Stonehill to purchase the Claims.

23. On a telephone call between Petitioner and Michael Lin, a representative of Farallon, Mr. Lin informed Petitioner that Farallon had purchased the claims sight unseen and with no due diligence—100% relying on Mr. Seery's say-so because they had made so much money in the past when Mr. Seery told them to purchase claims.

24. In other words, Mr. Seery had inside information on the price and value of the claims that he shared with no one but Farallon for their benefit.

25. Mr. Seery's management duties come with a federally-imposed fiduciary duty under the Advisers Act of 1940.

26. Mr. Seery had much to gain by Farallon holding the claims—namely, his knowledge that Farallon—as a friendly investor—would allow him to remain as CEO while Highland remains bankrupt and get paid (whereas plainly, the selling members of the UCC were ready to move on, thus truncating Seery's supposed gravy train). Mr. Seery's rich compensation package incentivized him to continue the bankruptcy for as long as possible.

27. However, Mr. Seery is privy to material non-public information (i.e., "Inside Information") of many of the securities that Highland deals in, as well as in the funds that Mr. Seery manages through Highland. One of the assets was a publicly traded security that Highland was an insider of, and therefore, should not have traded (whether directly or indirectly), given its possession of insider information.

28. Thus, his confidential tip to Farallon to purchase the claims may have violated certain of his duties as a Registered Investment Adviser, federal Securities laws, and his duties to the bankruptcy estate.

29. Mr. Seery's duties also involve duties to manage the bankruptcy estate in a manner that would expeditiously resolve the bankruptcy. If the Unsecured Creditor Committee members (Acis, HarbourVest, and Redeemer) were indeed interested in selling their claims for less than the notional amount, then that would have been publicized in the required court filing. By failing to file them publicly and seeking court approval, the bankruptcy has been prolonged whilst Farallon seeks to reap a massive windfall return on its investment—a return that Seery apparently promised.

30. The sale of assets authorized by A&M was not pursuant to normal means, and there is reason to doubt that A&M sought or obtained the highest price for the assets that it sold.

## IV.

## RELIEF SOUGHT FROM ALVAREZ AND MARSAL

31. Petitioner asks this Court to issue an Order authorizing Petitioner to take a pre-suit deposition of a designated representative, or representatives, of A&M, on the following topics, and to investigate any potential lawsuits arising out of the highly irregular manner in which the assets were marketed and sold, within ten days of the Court's Order, or as agreed by the parties:

    a. A&M's rights and responsibilities and duties, including, but not limited to, under A&M's agreement(s) with the Crusader Funds and the Agreement(s) of those funds governing Petitioner's rights and duties as an investor (whether directly or indirectly);

    b. The solicitation, offer, valuation, marketing, negotiation, and sale of the Highland bankruptcy claims or other assets by A&M on behalf of the Crusader Funds (and/or the Redeemer Committee) to any or all of Farallon, Stonehill Capital Management, LLC, Muck Holdings, LLC, Jessup Holdings, LLC, or any third party;

      c.      A&M's valuation, and negotiation of the price, of the Claims, its bases therefor, and what it communicated to potential purchasers about the value of the Claims, if anything;

      d.      The negotiations and communications leading up to the purchase or sale of the Claims, including, but not limited to:

            i.      Any discussions with James Seery or anyone at or on behalf of Highland Capital Management, L.P., the Creditors Committee, Sidley Austin, LLP, and/or F.T.I. Consulting, regarding the Claims, any plans with regards to Highland Capital Management, L.P., the liquidation or the value of the Claims, the likelihood of and quantum of payout of the Claims, the pricing of the Claims, and/or the assets that would secure the Claims or be liquidated to fund the Claims' liquidation;

            ii.     Any discussions with the purchasers of the Claims or other assets to, including, but not limited to, Farallon, Stonehill Capital Management, LLC, Jessup Holdings LLC or Muck Holdings, LLC, regarding the Claims or other assets, Highland Capital Management, L.P., the value of the Claims, the likely payout of the Claims, the pricing of the Claims, and/or the assets that would secure the Claims or be liquidated to fund the Claims' liquidation.

32.    As part of the Court's Order, Petitioner requests this Court to require A&M to produce the following documents at their respective depositions:

      a.      All offers to sell or purchase the Claims and/or all correspondence regarding same;

      b.      A&M's agreement(s) with the Crusader Funds and the Agreement(s) of those funds governing Petitioner's rights and duties as an investor (whether directly or indirectly);

      c.      Any document reflecting the purported assets of, or valuation of, Highland Capital Management, L.P. at the time of the sale or marketing of the Claims;

      d.      Marketing materials, presentations, decks, information sheets, spreadsheets, or other documents sent to or provided to any purchaser, whether in a data room or as part of any marketing pitch, or during any due diligence process, relating to or concerning the liquidation value, potential or likely return on investment, asset valuation, purchase, marketing or sale of the Claims;

      e.      All documents, agreements, contracts (including any drafts, letters of intent, confidentiality agreements, term sheets) or communications related to same,

    relating to or concerning the valuation, purchase, marketing or sale of the Claims (or any subset of the Claims);

  f. Communications with James Seery or any other person on behalf of the Debtor, the U.S. Trustee's office, the Unsecured Creditors Committee, Joshua Terry, Acis Capital Management, LLC, Farallon, Stonehill Capital Management, LLC, Jessup Holdings LLC, or Muck Holdings, LLC (or anyone representing or signing on behalf of the foregoing) regarding the sale of the Claims or other assets, the value thereof, the expected amount or percentage of the Claims that would be paid and when such payment was expected to occur, the liquidation value of Highland Capital Management, L.P., potential sources of other cash to pay the claims, the liquidation of the Claims, the likely return from purchasing the Claims, the underlying assets securing the Claims.

  g. Proofs of purchase of the Claims and other assets of the Crusader entities.

## V.

## RELIEF SOUGHT FROM FARALLON CAPITAL MANAGEMENT, L.L.C., MUCK HOLDINGS, LLC AND MICHAEL LIN

33. Petitioner asks this Court to issue an Order authorizing Petitioner to take a pre-suit deposition of a designated representative, or representatives, of Farallon Capital Management, L.L.C. or Muck Holdings, LLC, and to depose Michael Lin, on the following topics, to investigate any potential lawsuits arising out of the highly irregular manner in which the assets were marketed and sold, within ten days of the Court's Order, or as agreed by the parties:

  a. Farallon, Muck Holdings, LLC, and/or Lin's understanding of the value of the Claims, the assets held or controlled by or to be acquired by Highland Capital Management, L.P.., the liquidation value of the Estate of Highland Capital Management, L.P., and/or Claims, how and when the claims were expected to be paid and what the expected percentage payoff was going to be, and the bases for such understanding or belief, and what was communicated to them about the value of the Claims;

  b. The negotiations and communications leading up to the purchase or sale of the Claims, including, but not limited to, any discussions with sellers of any of the Claims regarding the Claims and the sale/purchase of the Claims, discussions with James Seery or anyone at or on behalf of Highland Capital Management, L.P. regarding the Claims and his plans with regards to Highland, the value of the Claims, the likely payout of the Claims, the

    pricing of the Claims, and/or the assets that would secure the Claims or be liquidated to fund the Claims' liquidation, or any disclosures by James Seery or Highland Capital Management, L.P. regarding how the Claims were going to be paid;

  c. Farallon and Michael Lin's awareness of material non-public information regarding Highland Capital Management, L.P. or securities held by Highland Capital Management, L.P.;

  d. Farallon and Michael Lin's relationship with James Seery or Highland Capital Management, L.P. and their knowledge of his role and their ongoing relationship with him.

34. As part of the Court's Order, Petitioner requests this Court to require Farallon Capital Management, L.L.C., Muck Holdings LLC, and Michael Lin to produce the following documents at their respective depositions:

  a. All offers to sell or purchase the Claims and/or all correspondence regarding same;

  b. Any document reflecting the purported assets of, or valuation of, Highland Capital Management, L.P. at the time of the sale or marketing of the Claims;

  c. Marketing materials, presentations, decks, information sheets, spreadsheets, or other documents sent to or provided to any purchaser, whether in a data room or as part of any marketing pitch, or during any due diligence process, relating to or concerning the liquidation value, potential or likely return on investment, asset valuation, purchase, marketing or sale of the Claims.

  d. All agreements, contracts, or other documents (including any drafts, letters of intent, confidentiality agreements, term sheets, or communications related to same) relating to or concerning the valuation, purchase, marketing or sale of the Claims (or any subset of the Claims);

  e. All communications with James Seery or any other person on behalf of the Debtor, the U.S. Trustee's office, the Unsecured Creditors Committee, Joshua Terry, Acis Capital Management, LLC, Farallon, Stonehill Capital Management, LLC, Jessup Holdings, LLC or Muck Holdings, LLC (or anyone representing or signing on behalf of the foregoing) regarding the sale of the Claims or other assets, the value thereof, the expected amount or percentage of the Claims that would be paid and when such payment was expected to occur, the liquidation value of Highland Capital Management, L.P., potential sources of other cash to pay the Claims, the liquidation of the

      Claims, the likely return from purchasing the Claims, the underlying assets securing the Claims.

  f.  Proofs of purchase of the Claims and other assets of the Crusader entities.

## VI.

## REQUEST FOR HEARING & ORDERS

  35.  After service of this Amended Petition and notice, Rule 202.3(a) requires the Court to hold a hearing on the Petition and order the requested relief.

  36.  Document discovery is permitted by Rule 199.2. Rule 202.5 states that "depositions authorized by this Rule are governed by the rules applicable to depositions of nonparties in a pending suit. The scope of discovery in depositions authorized by this rule is the same as if the anticipated suit or potential claim had been filed…." Rule 199.2 governs such actions and "expressly allows a party noticing a deposition to include a request for production of documents or tangible things within the scope of discovery and within the witness's possession, custody, or control." *In re City of Tatum*, 567 S.W.3d 800, 808 (Tex. App.—Tyler 2018) (holding that district court properly ordered document discovery in Rule 202 action). *See also* Tex. R. Civ. P. 205.1(c) (authorizing party to compel discovery from a nonparty by court order or subpoena, including a request for production served with a deposition notice). *See also City of Dall. v. City of Corsicana*, Nos. 10-14-00090-CV, 10-14-00171-CV, 2015 Tex. App. LEXIS 8753, at *15-16 (Tex. App.—Waco Aug. 20, 2015) ("Under rule 202, documents can be requested in connection with a deposition…. Accordingly, the trial court's order is not an abuse of discretion to the extent that it allows Navarro to obtain documents in an oral deposition under rule 199 or a deposition on written questions under rule 200."); *In re Anand*, No. 01-12-01106-CV, 2013 Tex. App. LEXIS 4157, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2013) ("the language of these rules when read together

Petitioner's Amended Verified Petition to Take Deposition Before Suit  Page 10

Appx. 01853

permits a petition seeking a pre-suit deposition under Rule 202 to also request the production of documents").

37.    **FOR THESE REASONS**, Petitioner asks the Court to set a date for hearing on this Amended Petition, and after the hearing, to find that the likely benefit of allowing Petitioner to take the requested depositions outweighs the burden or expense of the procedure.  Petitioner further asks the Court to issue an Order authorizing Petitioner to take the oral depositions of the Respondents after proper notice and service at the offices of Sbaiti & Company PLLC, 2200 Ross Avenue, Suite 4900W, Dallas, Texas 75201, within ten (10) days of the Court's Order, or as otherwise agreed to by the parties, and to produce the requested documents prior to said deposition. Petitioner also seeks any further relief to which he may be justly entitled.

Dated:  May 2, 2022

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Brad J. Robinson**
Texas Bar No. 24058076
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
     bjr@sbaitilaw.com

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on this 2nd day of May, 2022.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

## VERIFICATION

STATE OF TEXAS §
§
DALLAS COUNTY §

Before me, the undersigned Notary Public, on this day personally appeared James Dondero (hereinafter "Affiant"), who is over the age of 21 and of sound mind and body, who being by me duly sworn, on his oath deposed and said that he has read the foregoing Amended Verified Petition to Take Deposition Before Suit, and that the statements of fact therein are within his personal knowledge and are true and correct as stated, Further, Affiant stated that the Affiant has personal knowledge because of Affiant's relationships and interactions as described therein.

James Dondero

SUBSCRIBED AND SWORN TO BEFORE ME on this ___ day of April, 2022, to certify which witness my hand and official seal.

My commission expires on 12.9.2025.

Notary Public of the State of Texas

seal



Robin Morrison
My Commission Expires
12/9/2025
Notary ID
133483390

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim James on behalf of Mazin Sbaiti
Bar No. 24058096
krj@sbaitilaw.com
Envelope ID: 64114982
Status as of 5/3/2022 2:58 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mazin Sbaiti | | MAS@SbaitiLaw.com | 5/2/2022 9:27:04 PM | SENT |
| Andrew Bean | | ABean@gibsondunn.com | 5/2/2022 9:27:04 PM | SENT |
| John T.Cox | | TCox@gibsondunn.com | 5/2/2022 9:27:04 PM | SENT |
| Wendy Cassidy | | WCassidy@gibsondunn.com | 5/2/2022 9:27:04 PM | SENT |
| Kim James | | krj@sbaitilaw.com | 5/2/2022 9:27:04 PM | SENT |
| Jonathan Bridges | | jeb@sbaitilaw.com | 5/2/2022 9:27:04 PM | SENT |
| Brad Robinson | | bjr@sbaitilaw.com | 5/2/2022 9:27:04 PM | SENT |
| Charlotte Casso | | bcc@sbaitilaw.com | 5/2/2022 9:27:04 PM | SENT |