# EXHIBIT 72

FILED
1/20/2023 4:29 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Stephanie Clark DEPUTY

DC-23-01004

CAUSE NO. _____

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | 191st |
| HUNTER MOUNTAIN | § | |
| INVESTMENT TRUST | § | ____th JUDICIAL DISTRICT |
| | § | |
| *Petitioner*, | § | |
| | § | DALLAS COUNTY, TEXAS |

**PETITIONER HUNTER MOUNTAIN INVESTMENT TRUST'S**
**VERIFIED RULE 202 PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

Petitioner, Hunter Mountain Investment Trust ("HMIT"), files this Verified Petition ("Petition") pursuant to Rule 202 of the Texas Rules of Civil Procedure, seeking pre-suit discovery from Respondent Farallon Capital Management, LLC ("Farallon") and Respondent Stonehill Capital Management, LLC ("Stonehill") (collectively "Respondents"), to allow HMIT to investigate potential claims against Respondents and other potentially adverse entities, and would respectfully show:

**PARTIES**

1.      HMIT is a Delaware statutory trust that was the largest equity holder in Highland Capital Management, L.P. ("HCM"), holding a 99.5% limited partnership interest. HCM filed chapter 11 bankruptcy proceedings in 2019 and, as a result of these

1

**Appx. 01860**

proceedings,[1] HMIT held a Class 10 claim which, post-confirmation, was converted to a Contingent Trust Interest in HCM's post-reorganization sole limited partner.

2.      Farallon is a Delaware limited liability company with its principal office in California, which is located at One Maritime Plaza, Suite 2100, San Francisco, CA 94111.

3.      Stonehill is a Delaware limited liability company with its principal office in New York, which is located at 320 Park Avenue, 26th Floor, New York, NY 10022.

## VENUE AND JURISDICTION

4.      Venue is proper in Dallas County, Texas, because all or substantially all of the events or omissions giving rise to HMIT's potential common law claims occurred in Dallas County, Texas. In the event HMIT elects to proceed with a lawsuit against Farallon and Stonehill, venue of such proceedings will be proper in Dallas County, Texas.

5.      This Court has jurisdiction over the subject matter of this Petition pursuant to Texas Rule of Civil Procedure 202.[2] The amount in controversy of any potential claims against Farallon or Stonehill far exceeds this Court's minimum jurisdictional requirements. Without limitation, HMIT specifically seeks to investigate potentially actionable claims for unjust enrichment, imposition of a constructive trust with

---

[1] These proceedings were initially filed in Delaware but were ultimately transferred to and with venue in the U.S. Bankruptcy Court for the Northern District of Texas.

[2] The discovery relief requested in this Petition does not implicate the HCM bankruptcy court's jurisdiction. Furthermore, this Rule 202 Petition is not subject to removal because there is no amount in actual controversy and there is no cause of action currently asserted.

Appx. 01861

disgorgement, knowing participation in breaches of fiduciary duty, and tortious interference with business expectancies.

6.    This Court has personal jurisdiction over the Respondents from which discovery is sought because both Farallon and Stonehill are doing business in Texas under Texas law including, without limitation, TEX. CIV. PRAC. & REM. CODE §17.042. Consistent with due process, Respondents have established minimum contacts with Texas, and the assertion of personal jurisdiction over Respondents complies with traditional notions of fair play and substantial justice. HMIT's potential claims against Respondents arise from and/or relate to Farallon's and Stonehill's contacts in Texas. Respondents also purposefully availed themselves of the privilege of conducting business activities within Texas, thus invoking the benefits and protections of Texas law.

## SUMMARY

7.    HMIT seeks to investigate potential claims relating to the sale and transfer of large, unsecured creditors' claims in HCM's bankruptcy to special purpose entities affiliated with and/or controlled by Farallon and Stonehill (the "Claims"). Upon information and belief, Farallon and Stonehill historically had and benefited from close relationships with James Seery ("Seery"), who was serving as HCM's Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO") at the time of the Claims purchases. Furthermore, still upon information and belief, because Farallon and Stonehill acquired or controlled the acquisition of the Claims under highly questionable

Appx. 01862

circumstances. HMIT seeks to investigate whether Respondents received material non-public information and were involved in insider trading in connection with the acquisition of the Claims.

8.    The pre-suit discovery which HMIT seeks is directly relevant to potential claims, and it is clearly appropriate under Rule 202.1(b). HMIT anticipates the institution of a future lawsuit in which it may be a party due to its status as a stakeholder as former equity in HCM or in its current capacity as a Contingent Trust Interest holder, as well as under applicable statutory and common law principles relating to the rights of trust beneficiaries. In this context, HMIT may seek damages on behalf of itself or, alternatively, in a derivative capacity and without limitation, for damages or disgorgement of monies for the benefit of the bankruptcy estate.

9.    HMIT currently anticipates a potential lawsuit against Farallon and Stonehill as defendants and, as such, Farallon and Stonehill have adverse interests to HMIT in connection with the anticipated lawsuit. The addresses and telephone numbers are as follows: **Farallon Capital Management LLC**, One Maritime Plaza, Suite 2100, San Francisco, CA 94111, Telephone: 415-421-2132; **Stonehill Capital Management**, LLC, 320 Park Avenue, 26th Floor, New York, NY 10022, 212-739-7474 . Additionally, the following parties also may be parties with adverse interests in any potential lawsuit: **Muck Holdings LLC**, c/o Crowell & Moring LLP, Attn: Paul B. Haskel, 590 Madison Avenue, New York, NY 10022, 212-530-1823; **Jessup Holdings LLC**, c/o Mandel, Katz and Brosnan

Appx. 01863

LLP, Attn: John J. Mandler, 100 Dutch Hill Road, Suite 390, Orangeburg, NY 10962, 845-6339-7800.

## BACKGROUND[3]

**A.**     *Procedural Background*

10.     On or about October 16, 2019, HCM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in Delaware Bankruptcy Court, which was later transferred to the Northern District of Texas Bankruptcy Court, Dallas Division, on December 4, 2019.

11.     On October 29, 2019, the U.S. Trustee's office appointed a four-member Unsecured Creditors Committee ("UCC") consisting of three judgment creditors—the Redeemer Committee, which is a committee of investors in an HCM-affiliated fund known as the Crusader Fund that obtained an arbitration award against HCM in the hundreds of millions of dollars; Acis Capital Management, L.P. and Acis Capital Management GP LLC (collectively "Acis"); and UBS Securities LLC and UBS AG London Branch (collectively "UBS") - and an unpaid vendor, Meta-E Discovery.

12.     Following the venue transfer to Texas on December 27, 2019, HCM filed its *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary*

---

[3] All footnote references to evidence involve documents filed in the HCM bankruptcy proceedings and are cited by "Dkt." reference. HMIT asks the Court to take judicial notice of the documents identified by these docket entries.

*Course* ("HCM's Governance Motion").[4] On January 9, 2020, the Court signed an order

approving HCM's Settlement Motion (the "Governance Order").[5]

13.     As part of the Governance Order, an independent board of directors—

which included Seery as one of the UCC's selections—was appointed to the Board of

Directors (the "Board") of Strand Advisors, Inc., ("Strand Advisors") HCM's general

partner. Following the approval of the Governance Order, the Board then appointed

Seery as HCM's Chief Executive Officer ("CEO") and Chief Restructuring Officer

("CRO") in place of the previous CEO.[6]  Seery currently serves as Trustee of the Claimant

Trust (HCM's sole post-reorganization limited partner) and, upon information and belief,

continues to serve as CEO of HCM following the effective date of the HCM bankruptcy

reorganization plan ("Plan").[7]

**B.     *Seery's Relationships with Stonehill and Farallon***

14.     Farallon and Stonehill are two capital management firms (similar to HCM)

that, upon information belief, have long-standing relationships with Seery. Upon

information and belief, they eventually participated in, directed and/or controlled the

acquisition of hundreds of millions of dollars of unsecured Claims in HCM's bankruptcy

on behalf of funds which they manage. It appears they did so without any meaningful

_____

[4] Dkt. 281.
[5] Dkt. 339.
[6] Dkt. 854, Order Approving Retention of Seery as CEO/CRO.
[7] *See* Dkt. 1943, Order Approving Plan, p. 34.

Appx. 01865

due diligence, much less reasonable due diligence, and *ostensibly* based their investment decisions only on Seery's input.

15.     Upon information and belief, Seery historically has had a substantial business relationship with Farallon and he previously served as legal counsel to Farallon in other matters. Upon information and belief, Seery also has had a long-standing relationship with Stonehill. GCM Grosvenor, a global asset management firm, held four seats on the Redeemer Committee[8] (an original member of the Unsecured Creditors Committee in HCM's bankruptcy). Upon information and belief, GCM Grosvenor is a significant investor in Stonehill and Farallon. Grosvenor, through Redeemer, also played a large part in appointing Seery as a director of Strand Advisors and approved his appointment as HCM's CEO and CRO.

## C.     Claims Trading

16.     Imbued with his powers as CEO and CRO, Seery negotiated and obtained bankruptcy court approval of settlements with Redeemer, Acis, UBS, and another major creditor, HarbourVest[9] (the "Settlements") (Redeemer, Acis, UBS, and HarbourVest are collectively the "Settling Parties"), resulting in the following allowed claims:[10]

---

[8] Declaration of John A. Morris [Dkt. 1090], Ex. 1, pp. 15.
[9] "HarbourVest" collectively refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P.
[10] Orders Approving Settlements [Dkt. 1273, Dkt. 1302, Dkt. 1788, Dkt. 2389].

Appx. 01866

| Creditor | Class 8 | Class 9 |
|----------|---------|---------|
| Redeemer | $137 mm | $0 mm |
| Acis | $23 mm | $0 mm |
| HarbourVest | $45 mm | $35 mm |
| UBS | $65 mm | $60 mm |

17.     Although these Settlements were achieved after years of hard-fought litigation,[11] each of the Settling Parties *curiously* sold their claims to Farallon or Stonehill (or affiliated special purpose entities) shortly after they obtained court approval of their Settlements. One of these "trades" occurred within just a few weeks before the Plan's Effective Date.[12] Upon information and belief, Farallon and Stonehill coordinated and controlled the purchase of these Claims through special purpose entities, Muck Holdings, LLC ("Muck") and Jessup Holdings, LLC ("Jessup") (collectively "SPEs").[13] Upon information and belief, both of these SPEs were created on the eve of the Claims purchases for the ostensible purpose of taking and holding title to the Claims.

18.     Upon information and belief, Farallon and Stonehill directed and controlled the investment of over $160 million dollars to acquire the Claims in the absence of any publicly available information that could rationally justify this substantial investment. These "trades" are even more surprising because, at the time of the confirmation of HCM's Plan, the Plan provided only pessimistic estimates that these Claims would ever receive full satisfaction:

---

[11] Order Confirming Plan, pp. 9-11.
[12] Dkt. 2697, 2698.
[13] *See* Notice of Removal [Dkt 2696], ¶ 4.

Appx. 01867

    a. HCM's Disclosure Statement projected payment of 71.32% of Class 8 claims, and 0% of claims in Classes 9-11;[14]

        i. This meant that Farallon and Stonehill invested more than $163 million in Claims ***when the publicly available information indicated they would receive $0 in return on their investment as Class 9 creditors and substantially less than par on their Class 8 Claims***.

    b. In HCM's Q3 2021 Post-Confirmation Report, HCM reported that the amount of Class 8 claims expected to be paid dropped even further from 71% *to 54%* (down approximately $328.3 million);[15]

    c. From October 2019, when the original Chapter 11 Petition was filed, to January 2021, just before the Plan was confirmed, the valuation of HCM's assets dropped over $200 million from $566 million to $328.3 million;[16]

    d. Despite the stark decline in the valuation of the HCM bankruptcy estate and reduction in percentage of Class 8 Claims expected to be satisfied, Stonehill, through Jessup, and Farallon, through Muck, nevertheless purchased the four largest bankruptcy claims from the Redeemer Committee/Crusader Fund, Acis, HarbourVest, and UBS (collectively the "Claims") in April and August of 2021[17] in the combined amount of approximately $163 million; and

    e. Upon information and belief:

        i. Stonehill, through an SPE, Jessup, acquired the Redeemer Committee's claim for approximately $78 million;[18]

---

[14] Dkt. 1875-1, Plan Supplement, Exh. A, p. 4.

[15] Dkt. 2949.

[16] Dkt 1473, Disclosure Statement, p. 18.

[17] Notices of Transfers [Dkt. 2211, 2212, 2261, 2262, 2263, 2215, 2697, 2698].

[18] July 6, 2021 Letter from Alvarez & Marsal CRF Management, LLC to Highland Crusader Funds Stakeholders.

    ii.  The $23 million Acis claim[19] was sold to Farallon/Muck for approximately $8 million;

    iii.  HarbourVest sold its combined approximately $80 million in claims to Farallon/Muck for approximately $27 million; and

    iv.  UBS sold its combined approximately $125 million in claims for approximately $50 million to both Stonehill/Jessup and Farallon/Muck *at a time when the total projected payout was only approximately $35 million*.

19.    In Q3 2021, just over $6 million of the projected $205 million available to satisfy general unsecured claims was disbursed.[20] No additional distributions were made to general unsecured claimholders until, suddenly, in Q3 2022 almost $250 million was paid toward Class 8 general unsecured claims—$45 million more than was *ever* projected.[21] According to HCM's Motion for Exit Financing,[22] and a recent motion filed by Dugaboy Investment Trust,[23] there remain *substantial* assets to be monetized for the benefit of HCM's creditors. Thus, upon information and belief, the funds managed by Stonehill and Farallon stand to realize significant profits on their Claims purchases. In turn, upon information and belief, Stonehill and Farallon will garner (or already have garnered) substantial fees – both base fees and performance fees – as the result of their acquiring and/or managing the purchase of the Claims.

---

[19] Seery/HCM have argued that $10 million of the Acis claim is self-funding. Dkt. 1271, Transcript of Hearing on Motions to Compromise Controversy with Acis Capital Management [1087] and the Redeemer Committee of the Highland Crusader Fund [1089], p. 197.
[20] Dkt. 3200.
[21] Dkt. 3582.
[22] Dkt. 2229.
[23] Dkt. 3382.

Appx. 01869

**D.**    *Material Information is Not Disclosed*

20.    Bankruptcy Rule 2015.3 requires debtors to "file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest." No public reports required by Rule 2015.3 were filed. Seery testified they simply "fell through the cracks."[24]

21.    As part of the HarbourVest Settlement, Seery negotiated the purchase of HarbourVest's interest in HCLOF for approximately $22.5 million as part of the transaction.[25] Approximately 19.1% of HCLOF's assets were comprised of debt and equity in Metro-Goldwyn-Mayer Studios, Inc. ("MGM"). The HCLOF interest was not to be transferred to HCM for distribution as part of the bankruptcy estate, but rather to "to an entity to be designated by the Debtor"—*i.e.*, one that was not subject to typical bankruptcy reporting requirements.[26]

22.    Six days prior to the filing of the motion seeking approval of the HarbourVest Settlement, upon information and belief, it appears that Seery may have acquired material non-public information regarding Amazon's now-consummated interest in acquiring MGM,[27] yet there is no record of Seery's disclosure of such

---

[24] Dkt. 1905, February 3, 2021 Hearing Transcript, 49:5-21.
[25] Dkt. 1625, p. 9, n. 5.
[26] Dkt. 1625.
[27] Dkt. 150-1.

Appx. 01870

information to the Court, HCM's creditors, or otherwise. Upon the receipt of this material non-public information, HMIT understands, upon information and belief, that MGM was supposed to be placed on HCM's "restricted list," but Seery nonetheless continued to move forward with deals that involved MGM assets.[28]

23.      As HCM additionally held its own direct interest in MGM,[29] the value of MGM was of paramount importance to the value of HCM's bankruptcy estate. HMIT believes, upon information and belief, that Seery conveyed material non-public information regarding MGM to Stonehill and Farallon as inducement to purchase the Claims.

**E.      *Seery's Compensation***

24.      Upon information and belief, a component of Seery's compensation is a "success fee" that depends on the actual liquidation of HCM's bankruptcy estate assets versus the Plan projections. As current holders of the largest claims against the HCM estate, Muck and Jessup, the SPEs apparently created and controlled by Stonehill and Farallon, were installed as two of the three members of an Oversight Board in charge of monitoring the activities of HCM, as the Reorganized Debtor, and the Claimant Trust.[30] Thus, along with a single independent restructuring professional, Farallon and

---

[28] *See* Dkt. 1625, Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154) and Authorizing Actions Consistent Therewith, filed December 23, 2020
[29] Motion for Exit Financing.[Dkt.2229]
[30] Dkt. 2801.

Appx. 01871

Stonehill's affiliates oversee Seery's go-forward compensation, including any "success"

fee.[31]

## DISCOVERY REQUESTED

25.     HMIT seeks to investigate whether Farallon and Stonehill received material

non-public information in connection with, and as inducement for, the negotiation and

sale of the claims to Farallon and Stonehill or its affiliated SPEs. Discovery is necessary to

confirm or deny these allegations and expose potential abuses and unjust enrichment.

26.     The requested discovery from Farallon is attached as Exhibit "A", and

includes the deposition of one or more of its corporate representatives and the production

of documents. The requested discovery from Stonehill is attached as Exhibit "B", and

includes the deposition of Stonehill's corporate representative(s) and the production of

documents.

27.     Pursuant to Rule 202.2(g), the requested discovery will include matters that

will allow HMIT to evaluate and determine, among other things:

    a.  The substance and types of information upon which Stonehill
        and Farallon relied in making their respective decisions to
        invest in or acquire the Claims;

    b.  Whether Farallon and Stonehill conducted due diligence, and
        the substance of any due diligence when evaluating the
        Claims;

---

[31] Claimant Trust Agreement [Dkt. 1656-2].

Appx. 01872

c. The extent to which Farallon and Stonehill controlled the SPEs, Muck and Jessup, in connection with the acquisition of the Claims;

d. The creation and organizational structure of Farallon, Stonehill, Muck, and Jessup, as well as the purpose of creating Muck and Jessup as SPEs to hold the Claims;

e. Any internal valuations of Muck or Jessup's net asset value (NAV);

f. Any external valuation or audits of the NAV attributable to the Claims;

g. Any documents reflecting expected profits from the purchase of the Claims;

h. All communications between Farallon and Seery concerning the value and purchase of the Claims;

i. All communications between Stonehill and Seery concerning the value and purchase of the Claims;

j. All documents reflecting the expected payout on the Claims;

k. All communications between Farallon or Stonehill and HarbourVest concerning the purchase of the Claims;

l. All communications between Farallon or Stonehill and Acis regarding the purchase of the Claims;

m. All communications between Farallon or Stonehill and UBS regarding the purchase of the Claims;

n. All communications between Farallon or Stonehill and The Redeemer Committee regarding the purchase of the Claims;

o. All communications between Farallon and Stonehill regarding the purchase of the Claims;

p. All communications between Farallon and Stonehill and investors in their respective funds regarding purchase of the Claims or valuation of the Claims;

q. All communications between Seery and Stonehill or Farallon regarding Seery's compensation as the Trustee of the Claimant Trust;

r. All documents relating to, regarding, or reflecting any agreements between Seery and the Oversight Committee regarding compensation;

s. All documents reflecting the base fees and performance fees which Stonehill has received or may receive in connection with management of the Claims;

t. All documents reflecting the base fees and performance fees which Farallon has received or may receive in connection with management of the Claims;

u. All monies received by and distributed by Muck in connection with the Claims;

v. All monies received by and distributed by Jessup in connection with the Claims;

w. All documents reflecting whether Farallon is a co-investor in any fund which holds an interest in Muck; and

x. All documents reflecting whether Stonehill is a co-investor in any fund which holds an interest in Jessup.

### BENEFIT OUTWEIGHS THE BURDEN

28.     The beneficial value of the requested discovery greatly outweighs any

conceivable burden that could be placed on the Respondents. The requested information

15

also should be readily available because the Respondents have been engaged in the bankruptcy proceedings relating to the matters at issue for several years.

29.     The important benefit associated with this requested discovery is also clear – it is reasonably calculated to determine whether the Respondents have unjustly garnered tens of millions of dollars of benefit based upon insider information. If this occurred, the monies received as a result of such conduct are properly subject to a constructive trust and disgorged. This would result in substantial funds available for other creditors, including those creditors in Class 10, which includes HMIT as a beneficiary. This significant benefit, in addition to the value of bringing proper light to the activities of Farallon and Stonehill as discussed in this petition, far outweighs any purported burden associated with requiring Respondents to sit for focused depositions concerning the topics and documents identified in Exhibits A and B.

## REQUEST FOR HEARING AND ORDER

30.     After service of this Petition and notice, Rule 202.3(a) requires the Court to hold a hearing on this Petition.

## PRAYER FOR RELIEF

31.     Petitioner Hunter Mountain Investment Trust respectfully requests that the Court issue an order pursuant to Texas Rule of Civil Procedure 202 authorizing HMIT to take a deposition of designated representatives of Farallon Capital Management, LLC and Stonehill Capital Management, LLC. HMIT additionally requests authorization to

16

issue subpoenas duces tecum compelling the production of documents in connection with the depositions in compliance with Tex. R. Civ. P. 205, and asks that the Court grant HMIT all such other and further relief to which it may be justly entitled.

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By:  /s/ Sawnie A. McEntire
    Sawnie A. McEntire
    State Bar No. 13590100
    smcentire@pmmlaw.com
    Ian B. Salzer
    State Bar No. 24110325
    isalzer@pmmlaw.com
    1700 Pacific Avenue, Suite 4400
    Dallas, Texas 75201
    Telephone: (214) 237-4300
    Facsimile: (214) 237-4340

    Roger L. McCleary
    State Bar No. 13393700
    rmccleary@pmmlaw.com
    One Riverway, Suite 1800
    Houston, Texas 77056
    Telephone: (713) 960-7315
    Facsimile: (713) 960-7347

    *Attorneys for Petitioner Hunter Mountain Investment Trust*

17

## VERIFICATION

STATE OF TEXAS     §
           §
COUNTY OF DALLAS   §

Before me, the undersigned notary, on this day personally appeared Mark Patrick, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

> "My name is Mark Patrick. I am the Administrator of Hunter Mountain Investment Trust, and I am authorized and capable of making this verification. I have read Petitioner Hunter Mountain Investment Trust's Verified Rule 202 Petition ("Petition"). The facts as stated in the Petition are true and correct based on my personal knowledge and review of relevant documents in the proceedings styled *In re Highland Capital Management, L.P.*, Case No. 19-34054, in the United States Bankruptcy Court in the Northern District of Texas, Dallas Division ."

_____
Mark Patrick

Sworn to and subscribed before me by Mark Patrick on January 20, 2023.

_____
Notary Public in and for
the State of Texas



DEBORAH COLE
Notary ID #134079165
My Commission Expires
November 23, 2026

3116424.1

18

**EXHIBIT "A"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| HUNTER MOUNTAIN | § | |
| INVESTMENT TRUST | § | ____th JUDICIAL DISTRICT |
| | § | |
| *Petitioner*, | § | |
| | § | DALLAS COUNTY, TEXAS |

**NOTICE OF DEPOSITION OF FARALLON CAPITAL MANAGEMENT, LLC**

TO:   Farallon Capital Management, LLC, by and through its attorney of record

_____.

PLEASE TAKE NOTICE that, pursuant to Tex. R. Civ. P. 199, 202, and 205, Petitioner Hunter Mountain Investment Trust ("HMIT") will take the deposition on oral examination under oath of Farallon Capital Management, LLC ("Farallon") on _____, 2023 at _____ _.m. before a notary public or other person authorized to administer a proper oath and will be recorded by stenographic means. The deposition will take place at _____ before a court reporter and videographer and will continue from day to day until completed. The deposition may also be recorded by non-stenographic (videotape) means.

Please take further notice that, pursuant to Tex. R. Civ. P. 199.2(b), Farallon is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Farallon concerning the topics identified on Exhibit "1", and to produce the documents described in Exhibit "2", attached hereto.

Respectfully submitted,

_____

Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
State Bar No. 24110325
isalzer@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

***Attorneys for Petitioner Hunter Mountain
Investment Trust***

## CERTIFICATE OF SERVICE

I hereby certify that, on January ___, 2023, a true and correct copy of the foregoing document was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure.

_____

Sawnie A. McEntire

2

**EXHIBIT "A"**
**TO NOTICE OF DEPOSITION OF FARALLON CAPITAL MANAGEMENT, LLC**

For purposes of the attached Exhibits "1" and "2", the following rules and definitions shall apply.

**RULES OF CONSTRUCTION**

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

**DEFINITIONS**

The terms used herein shall have the following meanings unless the context requires otherwise:

*Acis*. The term "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

*Any* and *all*. The terms "any" and "all" should be understood in either the most or the least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. "Any" includes the word "all," and "all" includes the term "any."

*Bankruptcy Case*. The term "Bankruptcy Case" shall mean the Chapter 11 Bankruptcy of Debtor Highland Capital Management, L.P., Case No. 19-34054 in the United States Bankruptcy Court for the Northern District of Texas.

*Claims*. The term "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

*Communication*. The term "communication" means any manner in which the mental processes of one individual are related to another, including without limitation, any verbal utterance, correspondence, **email, text message**, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone

3

conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

*Concerning*. The term "concerning" means reflecting, regarding, relating to, referring to, describing, evidencing, or constituting.

*Document or documents.* The terms "document" or "documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the TEXAS RULES OF CIVIL PROCEDURE, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

*Electronically Stored Information or ESI.* The terms *"Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI*

*Estate*. The term "Estate" means HCM's bankruptcy estate.

*Farallon, you,* and *your*. The terms "Farallon," "you," and "your" shall mean Farallon Capital Management, LLC and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Muck Holdings, LLC. These terms also include any owners, partners, shareholders, agents, employees,

Appx. 01881

representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Farallon is a general partner or owns an entities' general partner, or anyone else acting on Farallon's behalf, now or at any time relevant to the response.

*Grosvenor*. The term "Grosvenor" refers to Grosvenor Capital Management, L.P.

*HarbourVest*. The term "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

*HCM*. The term "HCM" refers to debtor Highland Capital Management, L.P.

*Jessup*. The term "Jessup" refers to Jessup Holdings, LLC.

*MGM*. The term "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

*Muck*. The term "Muck" shall refer to Muck Holdings, LLC.

*NAV*. The term "NAV" means net asset value.

*Oversight Board*. The term "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

*Person*. The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

*Plan*. The term "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified).

*Redeemer*. The term "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

*Seery*. The term "Seery" refers to James P. ("Jim") Seery.

*Settling Parties*. The term "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

*Stonehill*. The term "Stonehill" refers to Stonehill Capital Management, LLC.

*Strand*. The term "Strand" refers to Strand Advisors, Inc.

*UBS.* The term "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

Appx. 01883

**EXHIBIT "1"**

**TOPIC CATEGORIES**

The witness(es) designated by Farallon to testify on its behalf  is (are) requested to testify concerning the following Topic Categories:

a. The substance, types, and sources of information Farallon considered in making any decision to invest in any of the Claims on behalf of itself, Muck, and/or any fund with which Farallon is connected;

b. Whether Farallon conducted due diligence, and the substance and identification of any due diligence (including associated documents), when evaluating any of the Claims;

c. Any and all communications with James Dondero;

d. The extent to which Farallon was involved in creating and organizing Muck in connection with the acquisition of any of the Claims;

e. The organizational structure of Muck (including identification of all members, managing members), as well as the purpose for creating Muck, including, but not limited to, regarding holding title to any of the Claims;

f. Any internal valuations of Muck's Net Asset Value (NAV), as well as all assets owned by Muck;

g. Any external valuation or audits of the NAV attributable to any of the Claims;

h. Any documents reflecting profit forecasts relating to any of the Claims;

i. All communications between Farallon and Seery relating to  any of the Claims;

Appx. 01884

j.  All forecasted payout(s) on any of the Claims and all documents including or reflecting the same;

k.  All communications between Farallon and any of the Settling Parties concerning any of the Claims;

l.  Any negotiations between Farallon and any of the Settling Parties concerning any of the Claims;

m.  All communications between Farallon and Stonehill regarding any of the Claims;

n.  All communications between Farallon and any investors in any fund managed by Farallon regarding any of the Claims or valuation of the Claims;

o.  All communications between Seery and Farallon regarding Seery's compensation as Trustee of the Claimant Trust;

p.  All agreements and other communications between Seery and the Oversight Committee regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and other communications;

q.  All base fees and performance fees which Farallon has received or may receive in connection with the Claims and all documents relating to, regarding, or reflecting the same;

r.  All monies received by Muck in connection with any of the Claims and any distributions made by Muck to any members of Muck relating to such Claims;

s.  Whether Farallon is a co-investor in any fund which holds an interest in Muck or otherwise holds a direct interest in Muck and all documents reflecting the same;

t.  All communications between Farallon and any of the following entities concerning any of the Claims:

  i.  UCC;

8

      ii.    Highland;

      iii.   Grosvenor;

      iv.   Muck;

      v.   the Oversight Board.

u.  The sources of funds used by Muck for the acquisition of any of the Claims;

v.  The terms and conditions of any agreements governing the transfers of any of the Claims to Muck;

w.  Representations made by Farallon, Muck, Seery, and/or the Settling Parties in connection with the transfer of any of the Claims;

x.  Farallon's valuation or evaluation of HCM's Estate;

y.  Information learned regarding MGM during the pendency of the negotiations relating to the Claims;

z.  The appointment of Muck to the Oversight Board;

aa. Farallon's historical relationships and business dealings with Seery and Grovesnor;

bb. Representations made to the bankruptcy court in connection with the transfer of any of the Claims to Muck.

Appx. 01886

**EXHIBIT "2"**

**DOCUMENT REQUESTS**

1. Any and all documents created by, prepared for, or received by Farallon concerning any of the following topics:

    a.  the transfer of the Claims;

    b.  negotiation and/or consummation of any agreement regarding the transfer of the Claims;

    c.  valuation of the Claims or the assets underlying the Claims;

    d.  promises and representations made in connection with the transfer of the Claims;

    e.  any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

    f.  consideration for the transfer of the Claims;

    g.  the value of HCM's Estate;

    h.  the projected future value of HCM's Estate;

    i.  past distributions and projected distributions from HCM's Estate;

    j.  compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.  compensation earned by or paid to Seery for his roles as CEO, CRO, and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.  any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

2. Any and all communications between Farallon, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Stonehill, (vi) Grosvenor, or, (vii) the Oversight Board, concerning any of the following topics:

    a.  the transfer of the Claims;

    b.  negotiation and/or consummation of any agreement regarding the transfer of the Claims;

    c.  valuation of the Claims or the assets underlying the Claims;

Appx. 01887

    d.  promises and representations made in connection with the transfer of the Claims;

    e.  any due diligence undertaken by Farallon or Muck prior to acquiring the Claims;

    f.  consideration for the transfer of the Claims;

    g.  the value of HCM's Estate;

    h.  the projected future value of HCM's Estate;

    i.  past distributions and projected distributions from HCM's Estate;

    j.  compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.  compensation earned by or paid to Seery for his roles as CEO, CRO, and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.  any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

3. All correspondence and/or other documents by or between Farallon and/or Muck and any investors in any fund regarding the Claims and/or the acquisition or transfer of the Claims.

4. Any and all documents reflecting the sources of funding used by Muck to acquire any of the Claims.

5. Organizational and formation documents relating to Muck including, but not limited to, Muck's certificate of formation, company agreement, bylaws, and the identification of all members and managing members.

6. Company resolutions prepared by or on behalf of Muck approving the acquisition of any of the Claims.

7. Any and all documents reflecting any internal or external audits regarding Muck's NAV.

8. Agreements between Farallon and Muck regarding management, advisory, or other services provided to Muck by Farallon.

9. Any and all documents reviewed by Farallon as part of its evaluation and due diligence regarding any of the Claims.

10. Any documents reflecting any communications with James Dondero;

11. Annual fund audits relating to Muck.

11

12. Muck's NAV Statements.

13. Documents reflecting the fees or other compensation earned by Farallon in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

3116467

Appx. 01889

**EXHIBIT "B"**

**CAUSE NO. _____**

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT |
| | § | |
| HUNTER MOUNTAIN | § | |
| INVESTMENT TRUST | § | ____th JUDICIAL DISTRICT |
| | § | |
| *Petitioner*, | § | |
| | § | DALLAS COUNTY, TEXAS |

**NOTICE OF DEPOSITION OF STONEHILL CAPITAL MANAGEMENT, LLC**

TO:    Stonehill Capital Management, LLC, by and through its attorney of record _____.

PLEASE TAKE NOTICE that, pursuant to Tex. R. Civ. P. 199, 202, and 205, Petitioner Hunter Mountain Investment Trust ("HMIT") will take the deposition on oral examination under oath of Stonehill Capital Management, LLC ("Stonehill") on _____, 2023 at _____ _.m. before a notary public or other person authorized to administer a proper oath and will be recorded by stenographic means. The deposition will take place at _____ before a court reporter and videographer and will continue from day to day until completed. The deposition may also be recorded by non-stenographic (videotape) means.

Please take further notice that, pursuant to Tex. R. Civ. P. 199.2(b), Stonehill is requested to designate one or more person(s) most knowledgeable and prepared to testify on behalf of Stonehill concerning the topics identified on Exhibit "1", and to produce the documents described in Exhibit "2", attached hereto.

**Appx. 01890**

Respectfully submitted,

_____

Sawnie A. McEntire
State Bar No. 13590100
smcentire@pmmlaw.com
Ian B. Salzer
State Bar No. 24110325
isalzer@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

***Attorneys for Petitioner Hunter Mountain
Investment Trust***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January ___, 2023, a true and correct copy of the foregoing document was served on all known counsel of record in accordance with the Texas Rules of Civil Procedure.

_____

Sawnie A. McEntire

2

**EXHIBIT "A"**
**TO NOTICE OF DEPOSITION OF STONEHILL CAPITAL MANAGEMENT, LLC**

For purposes of the attached Exhibits "1" and "2", the following rules and definitions shall apply.

## RULES OF CONSTRUCTION

1.      The terms "all" and "each" shall be construed as all and each.

2.      The terms "all" and "any" shall be construed as all and any.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      The use of the singular form of any word includes the plural and vice versa.

## DEFINITIONS

The terms used herein shall have the following meanings unless the context requires otherwise:

*Acis*. The term "Acis" refers to Acis Capital Management, L.P. and Acis Capital Management GP LLC, collectively.

*Any* and *all*. The terms "any" and "all" should be understood in either the most or the least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope. "Any" includes the word "all," and "all" includes the term "any."

*Bankruptcy Case*. The term "Bankruptcy Case" shall mean the Chapter 11 Bankruptcy of Debtor Highland Capital Management, L.P., Case No. 19-34054 in the United States Bankruptcy Court for the Northern District of Texas.

*Claims*. The term "Claims" shall mean the claims against Highland's Estate transferred to/acquired by Muck and/or Jessup as evidenced by Bankruptcy Case Dkt. Nos. 2215, 2261, 2262, 2263, 2697, 2698.

*Communication*. The term "communication" means any manner in which the mental processes of one individual are related to another, including without limitation, any verbal utterance, correspondence, **email, text message**, statement, transmission of information by computer or other device, letters, telegrams, telexes, cables, telephone

conversations, and records or notations made in connection therewith, notes, memoranda, sound recordings, electronic data storage devices, and any other reported, recorded or graphic matter or document relating to any exchange of information.

*Concerning*. The term "concerning" means reflecting, regarding, relating to, referring to, describing, evidencing, or constituting.

*Document or documents*. The terms "document" or "documents" shall mean anything that may be considered to be a document or tangible thing within the meaning of the TEXAS RULES OF CIVIL PROCEDURE, including (without limitation) Electronically Stored Information and the originals and all copies of any correspondence, memoranda, handwritten or other notes, letters, files, records, papers, drafts and prior versions, diaries, calendars, telephone or other message slips, invoices, files, statements, books, ledgers, journals, work sheets, inventories, accounts, calculations, computations, studies, reports, indices, summaries, facsimiles, telegrams, telecopied matter, publications, pamphlets, brochures, periodicals, sound recordings, surveys, statistical compilations, work papers, photographs, videos, videotapes, drawings, charts, graphs, models, contracts, illustrations, tabulations, records (including tape recordings and transcriptions thereof) of meetings, conferences and telephone or other conversations or communications, financial statements, photostats, e-mails, microfilm, microfiche, data sheets, data processing cards, computer tapes or printouts, disks, word processing or computer diskettes, computer software, source and object codes, computer programs and other writings, or recorded, transcribed, punched, taped and other written, printed, recorded, digital, or graphic matters and/or electronic data of any kind however produced or reproduced and maintained, prepared, received, or transmitted, including any reproductions or copies of documents which are not identical duplicates of the original and any reproduction or copies of documents of which the originals are not in your possession, custody or control.

*Electronically Stored Information or ESI. The terms "Electronically Stored Information" or "ESI" shall mean and include all documents, notes, photographs, images, digital, analog or other information stored in an electronic medium. Please produce all Documents/ESI in .TIF format (OCR text, single page). Please also provide a Summation Pro Load File (.dii) respect to all such Documents/ESI*

*Estate*. The term "Estate" means HCM's bankruptcy estate.

*Farallon.* The term "Farallon," refers to Farallon Capital Management, LLC and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to, Muck Holdings, LLC. These terms also include any owners, partners, shareholders, agents, employees, representatives, attorneys, predecessors, successors,

Appx. 01893

assigns, related entities, parent companies, subsidiaries, and/or entities in which Farallon is a general partner or owns an entities' general partner, or anyone else acting on Farallon's behalf, now or at any time relevant to the response.

*Grosvenor.* The term "Grosvenor" refers to Grosvenor Capital Management, L.P.

*HarbourVest.* The term "HarbourVest" refers to HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P., collectively.

*HCM.* The term "HCM" refers to debtor Highland Capital Management, L.P.

*Jessup.* The term "Jessup" refers to Jessup Holdings, LLC.

*MGM.* The term "MGM" refers to Metro-Goldwyn-Mayer Studios, Inc.

*Muck.* The term "Muck" shall refer to Muck Holdings, LLC.

*NAV.* The term "NAV" means net asset value.

*Oversight Board.* The term "Oversight Board" refers to the Claimant Trust Oversight Committee (a/k/a the Oversight Board of the Highland Claimant Trust) as identified in Bankruptcy Case Dkt. No. 2801.

*Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

*Plan.* The term "Plan" refers to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified).

*Redeemer.* The term "Redeemer" means the Redeemer Committee of the Highland Crusader Funds.

*Seery.* The term "Seery" refers to James P. ("Jim") Seery.

*Settling Parties.* The term "Settling Parties" refers to Redeemer, Acis, HarbourVest, and UBS, collectively.

*Stonehill," "you," and "your."* The terms "Stonehill", "you," and "your" shall mean Stonehill Capital Management, LLC and its corporate parent, subsidiaries, or affiliates and entities it manages or operates, including, but not limited to Jessup Holdings, LLC. These terms also include any owners, partners, shareholders, agents, employees,

5

representatives, attorneys, predecessors, successors, assigns, related entities, parent companies, subsidiaries, and/or entities in which Stonehill is a general partner or owns an entities' general partner, or anyone else acting on Stonehill's behalf, now or at any time relevant to the response .

*Strand*. The term "Strand" refers to Strand Advisors, Inc.

*UBS*. The term "UBS" refers to UBS Securities LLC and UBS AG London Branch, collectively.

6

**EXHIBIT "1"**

**TOPIC CATEGORIES**

The witness(es) designated by Stonehill to testify on its behalf is (are) requested to testify concerning the following Topic Categories:

a. The substance, types, and sources of information Stonehill considered in making any decision to invest in any of the Claims on behalf of itself, Jessup, and/or any fund with which Stonehill is connected;

b. Whether Stonehill conducted due diligence, and the substance and identification of any due diligence (including associated documents), when evaluating any of the Claims;

c. Any and all communications with James Dondero;

d. The extent to which Stonehill was involved in creating and organizing Jessup in connection with the acquisition of any of the Claims;

e. The organizational structure of Jessup (including identification of all members, managing members), as well as the purpose for creating Jessup, including, but not limited to, regarding holding title to any of the Claims;

f. Any internal valuations of Jessup's Net Asset Value (NAV), as well as all assets owned by Jessup;

g. Any external valuation or audits of the NAV attributable to any of the Claims;

h. Any documents reflecting profit forecasts relating to any of the Claims;

i. All communications between Stonehill and Seery relating to any of the Claims;

7

j.   All forecasted payout(s) on any of the Claims and all documents including or reflecting the same;

k.   All communications between Stonehill and any of the Settling Parties concerning any of the Claims;

l.   Any negotiations between Stonehill and any of the Settling Parties concerning any of the Claims;

m.   All communications between Stonehill and Farallon regarding any of the Claims;

n.   All communications between Stonehill and any investors in any fund managed by Stonehill regarding any of the Claims or valuation of the Claims;

o.   All communications between Seery and Stonehill regarding Seery's compensation as Trustee of the Claimant Trust;

p.   All agreements and other communications between Seery and the Oversight Committee regarding Seery's compensation and all documents relating to, regarding, or reflecting such agreements and other communications;

q.   All base fees and performance fees which Stonehill has received or may receive in connection with the Claims and all documents relating to, regarding, or reflecting the same;

r.   All monies received by Jessup in connection with any of the Claims and any distributions made by Jessup to any members of Jessup relating to such Claims;

s.   Whether Stonehill is a co-investor in any fund which holds an interest in Jessup or otherwise holds a direct interest in Jessup and all documents reflecting the same;

t.   All communications between Stonehill and any of the following entities concerning any of the Claims:

     i.   UCC;

Appx. 01897

      ii.    Highland;

      iii.   Grosvenor;

      iv.   Jessup;

      v.   the Oversight Board.

u. The sources of funds used by Jessup for the acquisition of any of the Claims;

v. The terms and conditions of any agreements governing the transfers of any of the Claims to Jessup;

w. Representations made by Stonehill, Jessup, Seery, and/or the Settling Parties in connection with the transfer of any of the Claims;

x. Stonehill's valuation or evaluation of HCM's Estate;

y. Information learned regarding MGM during the pendency of the negotiations relating to the Claims;

z. The appointment of Jessup to the Oversight Board;

aa. Stonehill's historical relationships and business dealings with Seery and Grovesnor;

bb. Representations made to the bankruptcy court in connection with the transfer of any of the Claims to Jessup.

9

**EXHIBIT "2"**

**DOCUMENT REQUESTS**

1. Any and all documents created by, prepared for, or received by Stonehill concerning any of the following topics:

    a.  the transfer of the Claims;

    b.  negotiation and/or consummation of any agreement regarding the transfer of the Claims;

    c.  valuation of the Claims or the assets underlying the Claims;

    d.  promises and representations made in connection with the transfer of the Claims;

    e.  any due diligence undertaken by Stonehill or Jessup prior to acquiring the Claims;

    f.  consideration for the transfer of the Claims;

    g.  the value of HCM's Estate;

    h.  the projected future value of HCM's Estate;

    i.  past distributions and projected distributions from HCM's Estate;

    j.  compensation earned by or paid to Seery in connection with or relating to the Claims;

    k.  compensation earned by or paid to Seery for his roles as CEO, CRO, and Foreign Representative of HCM, Trustee of the Highland Claimant Trust, and/or Independent Director of Strand; and

    l.  any future compensation to be paid to Seery as Trustee of the Highland Claimant Trust.

2. Any and all communications between Stonehill, on the one hand, and any of the following individuals or entities: (i) Seery, (ii) the UCC, (iii) the Settling Parties, (iv) Farallon, (vi) Grosvenor, or, (vii) the Oversight Board, concerning any of the following topics:

    a.  the transfer of the Claims;

    b.  negotiation and/or consummation of any agreement regarding the transfer of the Claims;

    c.  valuation of the Claims or the assets underlying the Claims;

Appx. 01899

   d.   promises and representations made in connection with the transfer of the
        Claims;

   e.   any due diligence undertaken by Stonehill or Jessup prior to acquiring the
        Claims;

   f.   consideration for the transfer of the Claims;

   g.   the value of HCM's Estate;

   h.   the projected future value of HCM's Estate;

   i.   past distributions and projected distributions from HCM's Estate;

   j.   compensation earned by or paid to Seery in connection with or relating to
        the Claims;

   k.   compensation earned by or paid to Seery for his roles as CEO, CRO, and
        Foreign Representative of HCM, Trustee of the Highland Claimant Trust,
        and/or Independent Director of Strand; and

   l.   any future compensation to be paid to Seery as Trustee of the Highland
        Claimant Trust.

3. All correspondence and/or other documents by or between Stonehill and/or Jessup
   and any investors in any fund regarding the Claims and/or the acquisition or
   transfer of the Claims.

4. Any and all documents reflecting the sources of funding used by Jessup to acquire
   any of the Claims.

5. Organizational and formation documents relating to Jessup including, but not
   limited to, Jessup's certificate of formation, company agreement, bylaws, and the
   identification of all members and managing members.

6. Company resolutions prepared by or on behalf of Jessup approving the acquisition
   of any of the Claims.

7. Any and all documents reflecting any internal or external audits regarding
   Jessup's NAV.

8. Agreements between Stonehill and Jessup regarding management, advisory, or
   other services provided to Jessup by Stonehill.

9. Any and all documents reviewed by Stonehill as part of its evaluation and due
   diligence regarding any of the Claims.

10. Any documents reflecting any communications with James Dondero;

11. Annual fund audits relating to Jessup.

12. Jessup's NAV Statements.

13. Documents reflecting the fees or other compensation earned by Stonehill in connection with the investment in, acquisition of, transfer of, and/or management of any of the Claims.

3116467

12

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Timothy Miller on behalf of Timothy Miller
Bar No. 24092839
tmiller@pmmlaw.com
Envelope ID: 72005122
Status as of 1/25/2023 10:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Beatrice Candis | | bcandis@pmmlaw.com | 1/20/2023 4:29:44 PM | SENT |
| Gini Romero | | gromero@pmmlaw.com | 1/20/2023 4:29:44 PM | SENT |
| Roger LMcCleary | | rmccleary@pmmlaw.com | 1/20/2023 4:29:44 PM | SENT |
| Sawnie McEntire | | smcentire@pmmlaw.com | 1/20/2023 4:29:44 PM | SENT |
| Tim Miller | | tmiller@pmmlaw.com | 1/20/2023 4:29:44 PM | SENT |
| Ian Salzer | 24110325 | isalzer@pmmlaw.com | 1/20/2023 4:29:44 PM | SENT |