**KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX
#24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopier: (817) 878-9280

COUNSEL FOR THE CHARITABLE RESPONDENTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **Case No. 3:21-cv-00881-X** |
| § | |
| § | |
| **HIGHLAND CAPITAL MANAGEMENT FUND** § | |
| **ADVISORS, L.P., et al.,** § | |
| § | |
| **Respondents.** § | |
| § | |

## MEMORANDUM IN OPPOSITION TO MOTION TO DEEM DONDERO ENTITIES VEXATIOUS LITIGANTS AND FOR RELATED RELIEF

The Charitable DAF Fund, L.P. and CLO HoldCo, Ltd. (together the "Charitable Respondents") respectfully submit this *Response in Opposition* (the "Response") to the *Motion to Deem Dondero Entities Vexatious Litigants and for Related Relief* [Dkt. No. 136] (the "Motion")

i

and the *Memorandum of Law in Support* [Dkt. No. 137] (the "Memo") filed by Highland Capital

Management, L.P. ("HCMLP").

# I.    TABLE OF CONTENTS

I.    TABLE OF CONTENTS ...........................................................................III

II.    TABLE OF AUTHORITIES ...................................................................V

III.    PRELIMINARY STATEMENT ...............................................................1

IV.    RELEVANT FACTUAL BACKGROUND..................................................2

   A.    The Charitable Respondents ...................................................2

   B.    Baseless Litigation *Against* the Charitable Respondents..........................4

   1.    The Unprosecuted Adversary Proceeding and Improper Rule 2004 Discovery
Attempt    4

   2.    The Kirschner Adversary ........................................................7

   C.    Gatekeeping Orders in Place....................................................9

   D.    This Proceeding ................................................................13

   E.    Remaining Complained of Actions by the Charitable Respondents.....................13

   1.    The HarbourVest Settlement Dispute ................................................13

   2.    The Amended Proof of Claim......................................................14

V.    ARGUMENT.......................................................................15

   A.    This Court cannot find that a nonparties who have no relationship whatsoever
to this proceeding are vexatious litigants....................................................16

   B.    HCMLP cannot make the requisite showing to obtain a vexatious litigant
sanction against the Charitable Respondents................................................17

   1.    The litigation is not vexatious, harassing, or duplicative........................17

   2.    The Charitable Respondents have a good faith basis for the litigation and
almost all of the major pieces are on appeal ................................................19

   3.    The Covered Parties have burdened the court system and the Charitable
Respondents now seek to add an additional layer of burden...................................21

   4.    There are already numerous protections in place that cannot be squared with
the requested relief........................................................................22

   C.    The proposed vexatious litigant sanction is impermissibly broad and unlike

any sanction imposed in the cases HCMLP cites to. ................................................................24

VI.    CONCLUSION...............................................................................................................25

## II.  TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baum v. Blue Moon Ventures, LLC,*
513 F.3d 181 (5th Cir. 2008) ........................................................................................16, 22

*Matter of Carroll,*
850 F.3d 811 (5th Cir. 2017) .................................................................................................23

*In re Carroll,*
No. 08-10756, 2016 WL 1084287 (Bankr. M.D. La. Mar. 17, 2016), *aff'd sub*
*nom. Carroll v. Abide*, No. 316CV00218JWDRLB, 2016 WL 4127768 (M.D.
La. Aug. 2, 2016), *aff'd sub nom. Matter of Carroll*, 850 F.3d 811 (5th Cir.
2017) ................................................................................................................15, 17, 23

*Clark v. Mortenson,*
93 F. App'x 643 (5th Cir. 2004) ...........................................................................................15

*Connor v. Stewart,*
No. 1:17-CV-827-RP, 2018 WL 4169150 (W.D. Tex. Aug. 30, 2018) .................................24

*Crear v. JPMorgan Chase Bank, N.A.,*
491 F. Supp. 3d 207 (N.D. Tex. 2020) .................................................................................17

*Farguson v. MBank Houston, N.A.,*
808 F.2d 358 (5th Cir. 1986) .................................................................................................19

*Matter of Highland Cap. Mgmt., L.P.,*
48 F.4th 419 (5th Cir. 2022) ..................................................................................................10

*Nix v. Major League Baseball,*
62 F.4th 920 (5th Cir. 2023), *cert. denied*, No. 22-7810, 2023 WL 6378365
(U.S. Oct. 2, 2023) ................................................................................................................17

*In re Oliver,*
682 F.2d 443 (3d Cir. 1982) ..................................................................................................17

*Schum v. Fortress Value Recovery Fund I LLC,*
No. 3:19-CV-00978-M, 2019 WL 7856719 (N.D. Tex. Dec. 2, 2019), *aff'd*
*sub nom. Matter of Renaissance Radio, Inc*., 805 F. App'x 319 (5th Cir. 2020)....................23

*U.S. Bank Nat'l Ass'n v. Jefferson,*
314 F. Supp. 3d 768 (S.D. Tex. 2018) ..................................................................................17

**Other Authorities**

Oral Argument in Contempt Appeal available at:
    https://www.youtube.com/watch?v=wAja9cwxu_U ...............................................................11

FED. R. BANKR. P. 2004 ........................................................................................................6

## III.    PRELIMINARY STATEMENT

1.     As briefed by HCMLP, HCMLP's Bankruptcy Case[1] has never been "garden variety."  Bankruptcy Case, Dkt. No. 1943, ¶¶4, 8, 16, 52.  Rather, the Bankruptcy Case involves ***billions*** of dollars and a complex global enterprise, involving over 2,000 entities and thousands of transactions and contracts.  *Id*. at ¶¶4, 6, 52.Unsurprisingly, following the ousting of management and key employees from HCMLP, there has been litigation.  But litigation arising out of the Bankruptcy Case was expressly ***anticipated*** by HCMLP, and the basis for an existing pre-filing injunction (the "Plan Gatekeeper").  Bankruptcy Case, Dkt. No. 1943, ¶79.

2.     Yet, now HCMLP, in the name of alleviating the burden court system, moves this Court to act as another gatekeeper under a different standard for those same claims or causes of action subject to the Plan Gatekeeper.  Left out of HCMLP's narrative is the antagonism aimed at the Charitable Respondents, including numerous proceeding instituted against them that proved to be unsuccessful, obvious litigation tactics.

3.     So much unlike the case law in which courts impose vexatious litigant sanctions here, there are billions of dollars at stake in a myriad of distinct legal disputes; sharp elbowed litigation from all directions; and an existing, functional pre-filing injunction (in addition to a hundred million dollar plus indemnification fund for the Covered Parties (as defined in the Motion) which comes out of the pockets of other respondents to the Motion).  These facts cannot be the basis for a vexatious litigant sanction, even ignoring the fact that the Charitable Respondents are not parties to this proceeding.

---

[1]     Bankruptcy Case No. 19-34054 (Bankr. N.D. Tex.), hereinafter the "Bankruptcy Case."

1

## IV.    RELEVANT FACTUAL BACKGROUND

### A.    The Charitable Respondents

4.    The Charitable Respondents refer to themselves as "charitable" because the DAF has funded more than $30 million in charitable contributions to numerous non-profit organizations and committed to fund $42 million more.  Bankruptcy Case, Dkt. No. 2547-1 at ¶4, 2547-31.. Recipients of these charitable donations include The Family Place; Cristo Rey Dallas, Dallas Children's Advocacy Center; and The Dallas Foundation, all of which have written letters in the Bankruptcy Case explaining the importance of the support of the DAF to their missions. *See* Bankruptcy Case Dkt. Nos. 2547-32; 2547-33; 2547-34; 2556-2.

5.    The structure and management of the charitable enterprise that the Charitable Respondents are a part of has been provided to the Bankruptcy Court in great detail at Bankruptcy Case, Dkt. No. 2547.  In short, the DAF is a donor advised fund which is a separately managed charitable investment account established by a donor within a public charity (a section 501(c)(3) organization) which allows a donor to make an irrevocable charitable contribution and receive an immediate tax deduction.  Bankruptcy Case, Dkt. No. 2547-4.  CLO HoldCo is a "blocker corporation" for the DAF which insulates the DAF from any United States tax implications, as the DAF is a Cayman Islands entity, as is CLO HoldCo.  *Id.*

6.    CLO HoldCo is managed and controlled by directors who are appointed by shareholders of CLO HoldCo.  Bankruptcy Case, Dkt. Nos. 2547-6..  The current directors of CLO HoldCo are Mark Patrick and Paul Murphy.  Bankruptcy Case, Dkt. Nos. 2547-37.  The sole shareholder of CLO HoldCo is the DAF.  Bankruptcy Case, Dkt. No. 2547-7.

7.    The DAF is a limited partnership organized under the laws of the Cayman Islands, with an entity called Charitable DAF HoldCo, Ltd. ("DAF HoldCo") as limited partner of the DAF and Charitable DAF GP, LLC ("DAF GP") as general partner of the DAF.  Bankruptcy Case, Dkt.

No. 2547-10.  The management shares in DAF HoldCo are held by Mark Patrick. Bankruptcy Case, Dkt. No. 2547-13. 100% of the limited liability company interests in the DAF GP are held by Mark Patrick.  Bankruptcy Case, Dkt. No. 2547-12.

8.      In short, Mr. Dondero nor any of his affiliates nor the defendants in this proceeding have a direct or indirect ability or right to control or direct the Charitable Respondents.  The Charitable Respondents are real charitable giving vehicle that have and continue to provide tens of millions of dollars in crucial support to charities benefiting families across the Dallas area and beyond.

9.      From 2012 through January 2021, HCMLP provided the Charitable Respondents with both investment advisory services and all office services via two separate agreements: *Second Amended and Restated Service Agreement* and the *Second Amended and Restated Investment Advisory Agreement* [Bankruptcy Case, Dkt. Nos. 3428-4, 3428-54,  the "Advisory Agreements"; *see also* Bankruptcy Case, Dkt. No. 3428-7, 3428-9 (the notices of termination of the Advisory Agreements ].

10.      Additionally, the Charitable Respondents were, and are, investors in funds which HCMLP managed and/or controlled, and held participation and tracking interests in shares of funds held by HCMLP.  *See e.g.* Bankruptcy Case, Dkt. No. 590-1, 590-2, 590-3; 3428-3.

11.      Therefore, there have been through a large expanse of time, numerous complex legal relationships between the Charitable Respondents and HCMLP involving large amounts of money and extensive services provided (by HCMLP).

B.      **Baseless Litigation *Against* the Charitable Respondents**

1.      **The Unprosecuted Adversary Proceeding and Improper Rule 2004 Discovery Attempt**

12.      On February 24, 2020, HCMLP filed its *Motion of the Debtor for Entry of an Order Authorizing, but Not Directing, the Debtor to Cause Distributions to Certain "Related Entities"* (the "Dynamic and AROF Motion") [Bankruptcy Case, Dkt. No. 474] in which it described two funds, Dynamic and AROF (as defined in Dynamic and AROF Motion) which HCMLP had determined to liquidate.  HMCLP notified the Official Committee of Unsecured Creditors (the "Committee") that it intended to distribute to CLO HoldCo $872,194 from Dynamic and $1,516,354.38 in AROF.  *See* Dynamic and AROF Motion, p. 10.  The Committee objected to the distribution to CLO HoldCo, and the Bankruptcy Court ordered that the distributions be put in the registry of the court (the "Registry Funds").  Bankruptcy Case, Dkt. No. 512.

13.      CLO HoldCo immediately filed a *Motion for Remittance of Funds Held in Registry of the Court* [Bankruptcy Case, Dkt. No. 590], explaining that there is no legal basis to enjoin CLO HoldCo from receiving the Registry Funds.  The Bankruptcy Court denied the motion, but ordered that the Committee had to file an adversary proceeding against CLO HoldCo within ninety (90) days or move for further extension of time to do so.  Bankruptcy Case, Dkt. No. 825

14.      The Committee moved for an extension in October 2020, and on December 17, 2020, the Committee commenced adversary proceeding: *Official Committee of Unsecured Creditors vs. CLO Holdco, Ltd., et a*l., Adv. Pro. No. 20-03195-sgj (the "CLO HoldCo Adversary Proceeding"), in which both Charitable Respondents were defendants to $24 million in claims.  In the CLO HoldCo Adversary Proceeding, the Committee also filed a *Motion for Preliminary Injunction* [CLO HoldCo Adversary Proceeding, Dkt. No. 7] which concerned the Registry Funds. The Charitable Respondents filed a *Motion to Dismiss* and *Motion to Withdraw the Reference*

[CLO HoldCo Adversary Proceeding, Dkt. Nos. 23, 24].  The Committee requested an extension to respond to May 21, 2021 from the Charitable Respondents, to which the Charitable Respondents agreed (of course, never mentioning that it would not actually be filing a response but instead would seek to stay the litigation).

15.     Rather than responding to the motions by the agreed extension, the Committee instead filed a *Motion to Stay the Adversary Proceeding for Ninety Days* [CLO HoldCo Adversary Proceeding, Dkt. No. 46] (the "First Motion Stay").  The request was purportedly required because the newly appointed Litigation Trustee[2] needed "time to familiarize itself with the Adversary Proceeding, so as to adequately and efficiently defend the Motions to Withdraw the References, the Motions to Dismiss, and to effectively manage the litigation of the Adversary Proceeding in its entirety."  *See* First Motion to Stay, ¶11.  But the time records submitted to the Bankruptcy Court bely this explanation as the Litigation Trustee had been retained months before (and in fact, only one day after the Motions to Withdraw the References, the Motions to Dismiss were filed).  The Bankruptcy Court granted the stay of the CLO HoldCo Adversary Proceeding [CLO HoldCo Adversary Proceeding, Dkt. No. 62].

16.     Some seventy (70) days into the granted ninety (90) day stay, the Committee and Litigation Trustee filed their *Motion of the Official Committee of Unsecured Creditors and the Litigation Advisor for Entry of an Order Authorizing the Examination of Rule 2004 Parties pursuant to Rule 2004 of the Federal Rules Of Bankruptcy Procedure* [Bankruptcy Case, Dkt. No. 2620] (the "Rule 2004 Motion").  In the Rule 2004 Motion, the Charitable Respondents were made

---

[2]      Pursuant to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Dkt. No. 1943],the debtor transferred estate causes of action to the Claimant Trust (as defined in the Plan which then transferred those estate causes of action to the Litigation Trust which is managed by the Litigation Trustee.

targets along with hundreds of other parties, including the supporting organizations that donate millions to charities and the retired president and chief executive officer of the Dallas Foundation, lauded for her lifetime of charitable service.  In the Rule 2004 Motion and in the proposed order submitted therewith, the Litigation Trustee expressly asked the Court to order that:  "The Rule 2004 Parties are **_directed_** to produce documents, communications, and other materials responsive to the Requests…"  Bankruptcy Case, Dkt. No. 2620-1.

17.     Then, on expiration of that first stay, the Committee and Litigation Trustee filed a *Second Motion to Stay* [CLO HoldCo Adversary Proceeding, Dkt. No. 70] (the "Second Motion to Stay") requesting a stay of the CLO HoldCo Adversary Proceeding.  This time the basis for the stay was that more discovery was needed through the Rule 2004 Motion and " additional necessary time to determine whether to seek leave to amend the complaint…"  The Charitable Respondents objected to both the Rule 2004 Motion and the Second Motion to Stay, at great time and expense.

18.     The Charitable Respondents noted that the Registry Funds were being held hostage for a year and half with **_no legal proceeding_** by the Litigation Trustee.  Rather than prosecute its Motion for Preliminary Injunction (which they would have lost as there was no legal basis for holding the Registry Funds), the Litigation Trustee instead sought continued stays of the CLO Holdco Adversary for demonstrably specious reasons.

19.     Upon the Charitable Respondents' opposition to the further stay, the Bankruptcy Court refused to stay the injunction component of the CLO HoldCo Adversary proceeding, and quickly thereafter, on October 7, 2021, the Litigation Trustee agreed to the release of the Registry Funds, after such funds had been withheld from CLO HoldCo **_since February 2020_** without any legal proceeding or action taken that in fact sought injunctive relief.  CLO HoldCo, Dkt. No. 92.

20.     As to the Rule 2004 Motion, the Charitable Respondents noted several reasons why the requests were wholly improper including that FED. R. BANKR. P. 2004 discovery is, of course, not permitted when there is a pending proceeding involving those same topics.  After the targeted parties spent an incredible amount of time and effort to object to the Rule 2004 Motion, the Litigation Trustee changed course and stated that despite the request in his proposed order and Rule 2004 Motion stating otherwise, he actually did not "request that the Court compel the production of any particular documents."  Bankruptcy Case, Dkt. No. 2741 (*compare* to Proposed Order language *supra* expressly requesting the Bankruptcy Court direct the parties to produce documents).

21.     After this change, an agreed order between the Litigation Trustee and the targeted parties purported to permit the Litigation Trustee to issue subpoenas pursuant to FED. R. BANKR. P. 2004 (which he, of course, already had the right to do) but reserved all objections thereto, i.e. the entire Rule 2004 Motion litigation was of no moment.  Bankruptcy Case, Dkt. No. 2750.  The Litigation Trustee never issued a Rule 2004 subpoena to the Charitable Respondents.

22.     Then on October 15, 2021, the Litigation Trustee dismissed the CLO HoldCo Adversary, without ever having responded to the various motions to dismiss and motions to withdraw reference.  CLO HoldCo Adversary, Dkt. No. 96.  Again, a complete waste of time and resources of the parties and court system..

23.     In sum, the Charitable Respondents have been on the receiving end of proceedings that were designed litigation tactics that were ultimately abandoned after their utter lack of legal support was shown, but only after the Charitable Respondents expended incredible amounts of resources defending themselves.

### 2.     The Kirschner Adversary

7

24.    After dismissing the CLO HoldCo Adversary, the Litigation Trustee commenced *Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust vs. Dondero et al* Adv. Pro. No. 21-03076-sgj (the "Kirschner Adversary"), in which the Litigation Trustee asserts over one hundred million dollars in claims against the Charitable Respondents.

25.    While the merits of these claims have not been adjudicated, the Charitable Respondents invite this Court to review the Charitable Respondents' *Motion to Dismiss* filed in the Kirschner Adversary Proceeding at Dkt. No. 191, which explains in detail the baseless nature of these claims.[3]  The time and expenses incurred in the defense of the Kirschner Adversary have been immense and discovery is not even complete, with the fees for the Litigant Trustee's attorneys ranging from $830 an hour for first year associates to over $2,100 per hour for senior partners.

26.    But what makes this costly, baseless litigation against the Charitable Respondents even more troubling is that it is being pursued when HCMLP's own filings indicate that the estate is likely ***solvent***.  *See* Bankruptcy Case, Dkt. No. 3872.

27.    On July 6, 2023, HCMLP filed that certain *Current Balance Sheet of the Highland Claimant Trus*t [Dkt. No. 3872] (the "Current Balance Sheet").  The Current Balance Sheet reflects $152 million in assets (which is exclusive of any recovery on the notes at issue in this consolidated

---

[3]      For instance, CLO HoldCo is being sued for $75 million under an unjust enrichment theory because HCMLP advised CLO HoldCo, pursuant to its role as CLO HoldCo's investment advisor, to sell 49.9% of its interests in a fund (HCLOF) to a third party.  That third party ultimately filed a claim against HCMLP for the amount of the sale arguing that it was fraudulent induced into the purchase, and that HCMLP breached duties as manager of HCLOF.  HCMLP settled the claim expressly **not** based on the fraud in the inducement theory but rather, because HCMLP thought there was evidence that HCMLP had breached its duties to holders of HCLOF interests (in which CLO HoldCo retained the half of it investment).  But somehow the Litigation Trustee argues that CLO HoldCo, the advisee of HCMLP, should pay its investment advisor's estate for following the investment advisor's advice!  In other words, the Debtor's estate says it should be paid by the advisee who acted upon advisor advice because the advisor did someone else wrong.  Of course, once it became clear that the HCMLP estate was solvent, the Kirschner Adversary was abated (after the expenditure of millions of dollars in fees and expenses on all sides).

appeal and assumes $0 recovery in the Kirschner Adversary).  The total amount owed to general unsecured creditors is $139 million.

28.    Also, HCMLP asserts that it needs to hold an additional $90 million in indemnification reserves (which is in addition to the $35 million in the Indemnity Sub-Trust[4]) — HCMLP is therefore holding ***$125 million in indemnification*** reserves for Covered Parties.

29.    So against this backdrop, where there are sufficient assets to pay off all creditors in full, and HCMLP, the Claimant Trust, and Indemnity Sub-Trust are holding $125 million in reserves (purportedly) for indemnification obligations, the Litigation Trustee was pursuing, and we suppose could still pursue, additional hundreds of millions of dollars of groundless claims against the Charitable Respondents, at a staggering cost to the estate.  The Kirschner Adversary has no place in payment of creditors, but rather, appears to be perpetuated to pay the fees for professionals generated by perpetuating the lawsuit—litigation for litigation's sake targeted at the Charitable Respondents and other respondents.

### C.    Gatekeeping Orders in Place

30.    On February 22, 2021, the Bankruptcy Court entered the *Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief* [Bankruptcy Case, Dkt. No. 1943] (the "Plan" and "Confirmation Order").  The Plan contains three (3) gatekeeper provisions.

31.    Prior to confirmation of the Plan, the Bankruptcy Court had entered two gatekeeping orders: the *Order Approving Settlement with Official Committee of Unsecured*

---

[4]    *See Order Approving Debtor's Motion for Entry of an Order (I) Authorizing the (A) Creation of an Indemnity Subtrust and (B) Entry Into an Indemnity Trust Agreement and (II) Granting Related Relief* at Bankruptcy Case, Dkt. No. 2599 (ordering the creation of an indemnity sub-trust, the "Indemnity Sub-Trust" referred to herein).

*Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course, entered by the Bankruptcy Court on January 9, 2020* [Bankruptcy Case, Dkt. No. 339] (the "January 9 Order") and the *Order Approving the Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Bankruptcy Case, Dkt. No. 854] (the "Seery Order").

32.     The January 9 Order requires all entities to come to the Bankruptcy Court before commencing or pursuing a claim of cause of action of any kind against an Independent Director (as defined in the January 9 Order) relating in any way to the Independent Director's role as independent director.

33.     The Seery Order requires all entities to come to the Bankruptcy Court before commencing or pursuing a claim or cause of action of any kind against Mr. Seery (the COO/CRO and Claimant Trustee) relating in any way to his role as chief executive officer and chief restructuring officer of the Debtor.

34.     The Confirmation Order states that both the January 9 Order and Seery Order shall remain in place.  The Plan and Confirmation Order also contain the Plan Gatekeeper which provides that:

> [No] Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party…

Confirmation Order, ¶AA; Plan, Art. IX, ¶F. Enjoined Parties includes all of the Respondents and Protected Parties includes the Covered Parties (except that Covered Parties' definition removes "official capacity" restrictions for the Claimant Trust Oversight Board members).

35.     The Plan Gatekeeper was appealed by certain respondents, amongst other Plan provisions including the third party exculpations. *Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022). The Fifth Circuit struck down the third party exculpations, but the inclusion of the Plan Gatekeeper was affirmed. *Id.* at 439. While this matter is on appeal to the Supreme Court, to date, the Plan Gatekeeper remains in place.

36.     The sole transgression of these gatekeeping provisions cited to by HCMLP is that the Bankruptcy Court found that the Charitable Respondents violated the Seery Order and Plan Gatekeeper by filing a motion for leave to file an amended complaint in the HarbourVest Settlement Dispute (defined herein) which named Mr. Seery (the "Seery Motion") in this Court rather than the Bankruptcy Court, although the Charitable Respondents highlighted the Plan Gatekeeper in the Seery Motion. *See* Case No. 21-01974 (N.D. Tex.), Dkt. No. 49.

37.     In affirming the contempt finding, this Court did not find that the Charitable Respondents lacked candor or were deceitful but rather, that the Plan Gatekeeper applies regardless of their candor. *Id.* This Court stated, "[f]orthright disregard of a court order is no defense." *Id.* On October 20, 2022, the Charitable Respondents appealed this order to the Fifth Circuit (after paying the contempt sanction pursuant to a stipulation within which all appeal rights were reserved). Case No. 21-01974, Dkt. No. 50; Case No. 22-11036 (the "Contempt Appeal").

38.     The Fifth Circuit granted oral argument in the Contempt Appeal, and the Charitable Respondents invite this Court to review the oral argument from the Contempt Appeal available at: https://www.youtube.com/watch?v=wAja9cwxu_U (the "Oral Argument").

39.     Although the Contempt Appeal has not been decided, the panel stated "it's hard to say cynical and bad blood when the text of the [Seery Motion] discloses everything that's going on…. I am just having a hard time with contemptuous when it's candid."  And important here, the panel appears greatly concerned with HCMLP's costly "investigation" into the filing of the Seery Motion and litigation created by HCMLP.  After expressly recognizing that there is "a ton of bad blood on both sides," the panel asks why HCMLP did not just file a "one paged document" pointing out the fact that the Seery Motion was filed in the wrong court, and further states that it did not understand the multi-day hearing and hundreds of thousands of dollars in fees and sanctions and penalties for a thing evident from the caption.

40.     And since the finding of contempt in 2021 for filing the Seery Motion in this Court, the Charitable Respondents and other Respondents have been particularly ***deferential*** to the Plan Gatekeeper.

41.     For instance, in September 2022, because CLO HoldCo believed that it had claims against Highland CLO Funding, Ltd. ("HCLOF") arising in the Royal Court of Guernsey, CLO HoldCo came to the Bankruptcy Court in an abundance of caution seeking a determination that the Plan Gatekeeper did not apply to the proposed action (although the Plan Gatekeeper specifically excludes from the definition of a Protected Party HCLOF and even members of HCLOF, which would include the subsidiary of the HCMLP that owns a majority in HCLOF), because under Guernsey law and practice, an HCMLP subsidiary had the right to intervene in an unfair prejudice action in Guernsey.  *See* Bankruptcy Case, Dkt. No. 3507.  Eventually, the parties reached an *Agreed Order on the Motion for Leave* [Bankruptcy Case, Dkt. No. 3584] in which it was stipulated that HCLOF was not a Protected Party and that the proceeding against HCLOF could go forward in Guernsey.  Of course, this deference to the Plan Gatekeeper, despite the action

clearly not being subject to it, and in connection with which CLO HoldCo obtained a stipulation from HCMLP, cannot be seen as vexatious.

42.     So contrary to HCMLP's claims that Plan Gatekeeper is being undermined or challenged, it is simply being utilized.  The sole finding of a "breach" of the Plan Gatekeeper is on appeal, with the Fifth Circuit panel questioning why HCMLP instituted such a costly, seemingly unnecessary contempt proceeding.

### D.     This Proceeding

43.     In January 2021, HCMLP filed five (5) adversary proceedings against the above-captioned defendants(the "Notes Respondents") alleging breaches of certain pre-petition promissory notes (collectively, the "Notes") issued to HCMLP.  Importantly, the Charitable Respondents are not Notes Respondents, have nothing to do with Notes, nor are they a party to this proceeding whatsoever.  In July 2023, this Court adopted the Bankruptcy Court's report and recommendation and entered summary judgment against the Notes Respondents.  Dkt. No. 133. Shortly thereafter, HCMLP filed this Vexatious Litigant Motion on July 14, 2023.  On September 1, 2023, the Notes Respondents appealed this Court's judgment to the Fifth Circuit.  Dkt. Nos. 153-158; Case No. 23-1092 (5th Cir. 2023).

### E.     Remaining Complained of Actions by the Charitable Respondents.

44.     The remaining complained of actions by the Charitable Respondents are two distinct matters involving against millions of dollars and involving separate contractual relationships between the Charitable Respondents and HCMLP.  Further, both matters on currently on appeal.

### 1.     The HarbourVest Settlement Dispute

45.     The Charitable Respondents assert causes of action against HCMLP related to HCMLP's settlement with an entity called HarbourVest.  *See* Case No. 23-cv-01503 (N.D. Tex.),

Dkt. No. 22 (the "HarbourVest Settlement Dispute").  In summary form, HCMLP settled with HarbourVest for the transfer of its interests in HCLOF, a fund in which CLO HoldCo also held ownership of approximately 49%.  The Charitable Respondents allege that HCMLP concealed the value of these assets and usurped the opportunity from CLO HoldCo, its advisee pursuant to the Advisory Agreements, when it received the majority interest in HCLOF from HarbourVest as well as taking over control of HCLOF.  At stake in this dispute is approximately ***$24 million*** in just the profit from transfer as well as damages from HCMLP becoming the majority owner of HCLOF.

46.      It is subject to a single lawsuit.  And while the procedure may be somewhat complex, it includes a ***successful appeal*** by the Charitable Respondents, in which this District Court (Hon. Judge Boyle) reversed the original decision of Bankruptcy Court in part.  The subsequent ruling of the Bankruptcy Court after remand is currently on appeal at to the District Court.  *See* Case No. 21-03129, Dkt. No. 28; Case No.:23 -1503-B.

### 2.      The Amended Proof of Claim

47.      Pre-petition, CLO HoldCo was the holder of certain participation and tracking interests in HCMLP's shares of a fund (the Crusader Fund).  *See* Case No. 23-10660 (5th Cir. 2023) (the "Amended POC Matter").  Again, in summary form, in the Bankruptcy Case, HCMLP agreed to implement a pre-bankruptcy arbitration ruling that provided for the cancellation of its shares in the Crusader Fund in exchange for a reduction in certain amounts owed to pre-petition creditors whose claims arose from mismanagement of the Crusader Fund.  *Id*. at Dkt. No. 39.  The cancellation of shares in accordance with the arbitration award was net of the purchase price that HCMLP had paid for the shares.

48.      CLO HoldCo initially filed a proof of claim for the full amount of its participation and tracking interests but then after the Crusader Fund settlement was reached in the Bankruptcy Case, it amended its claim to $0, with full reservation to amend further.  *Id*.  After confirmation of

14

the Plan, but before distribution to general unsecured creditors were generally commenced, CLO HoldCo amended its proof of claim to account for the reduction in damages received from the cancellation of HCMLP's shares by the amount of the purchase price paid by HCMLP, because under the assignment documents by which CLO HoldCo obtained the interests, HCMLP owed back to CLO HoldCo any proceeds from the disposition of the shares.. *Id*.

49.     The Bankruptcy Court denied CLO HoldCo's motion to ratify the second amendment to the proof of claim and this Court affirmed.  CLO HoldCo appealed this decision to the Fifth Circuit where it is currently briefed awaiting adjudication.

## V.     ARGUMENT

50.      The facts before this Court are nothing like those in which courts enter vexatious litigant sanctions.  These disputes involve distinct legal relationships and transactions, involving hundreds of millions of dollars.  With so much at stake and such complex relationships, along with the obvious antagonism on all sides, litigation is no surprise.  In fact, it is why HCMLP advocated for the Plan Gatekeeper which is an existing pre-filing injunction that HCMLP has not even attempted to show is inadequate (other than citing to an appeal).

51.     So much unlike the cases which find vexatious litigant sanctions appropriate, here, the Charitable Respondents have defended themselves against numerous baseless litigation tactics; are litigating distinct matters, each with millions at stake; and the parties that purportedly need protection are already protected by the Plan Gatekeeper (as well as being insulated from all costs by a one hundred million dollar plus indemnification reserve).  But to make all these matters worse, HCMLP seeks to have this Court make factual findings about entities that are ***not parties***.

### A.  This Court cannot find that a nonparties who have no relationship whatsoever to this proceeding are vexatious litigants.

52.     HCMLP argues that this Court can enjoin not only the Notes Defendants but also parties "under such parties' control or that act in concert with them".  Memo, ¶37.  In support, HCMLP cites to cases in which courts enjoin nonparties that act in control or concert with the vexatious litigants _in the proceeding in which the injunction order was issued, either to be vexatious in the proceeding or to violate the already issued order in the proceeding_.

53.     For instance, in _Carroll_, the court barred the debtors, their daughters, and "anyone acting on their behalf" from filing any pleadings without obtaining bankruptcy court permission. _In re Carroll_, No. 08-10756, 2016 WL 1084287, at *10 (Bankr. M.D. La. Mar. 17, 2016), _aff'd sub nom. Carroll v. Abide_, No. 316CV00218JWDRLB, 2016 WL 4127768 (M.D. La. Aug. 2, 2016), _aff'd sub nom. Matter of Carroll_, 850 F.3d 811 (5th Cir. 2017).  In _Clark v. Mortenson_, the court ordered that the parties could not file, directly or indirectly, any suit without written permission.  _Clark v. Mortenson_, 93 F. App'x 643, 649 (5th Cir. 2004).

54.     Of course, any person or entity that assists a party in violating a pre-filing injunction, or such person or entity itself violates such an order, assuming knowledge of the order, would be subject to sanctions.

55.     But that situation does not fit what HCMLP is asking this Court to do, which is for this Court to reach out against entities such as the Charitable Respondents, who are not before this Court in this proceeding, and preclude the non-party Charitable Respondents from acting in their own right, just the same as if they were actually parties here before this Court.  The Charitable Respondents have nothing to do with the Notes, nor does HCMLP state they do.

56.     As briefed herein, the Charitable Respondents are an independent charitable giving enterprise that is in part (CLO HoldCo) governed by independent directors.  If they act in concert

with any party subject to a pre-filing injunction, then, they would be in violation of that order, certainly.  But this does not confer authority to this Court to make findings about nonparties (that have never been made by any other court in proceedings in which the Charitable Respondents are actually parties).

57.     Even worse, what HCMLP is really after is to try to get this Court to rule on the matters currently under appeal, by trying to obtain a ruling, that doubtless HCMLP would somehow attempt to use, that the DAF and CLO HoldCo's current appeals cannot be meritorious, because this Court has (somehow) reviewed these other proceedings in which the Charitable Respondents are in fact parties and has decided (upon some form of roving authority to opine as to the conduct of parties before other courts) that the Charitable Respondents have been "vexatious".

**B.     HCMLP cannot make the requisite showing to obtain a vexatious litigant sanction against the Charitable Respondents**

58.     Assuming this Court has the authority that HCMLP says it does, which is denied, in determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008).

**1.     The litigation is not vexatious, harassing, or duplicative**

59.     The Bankruptcy Case has spurred a large amount of litigation—coming from all sides—but litigiousness alone cannot support a vexatious litigant sanction. *In re Oliver*, 682 F.2d

443, 446 (3d Cir. 1982) (collecting cases).  "Access to the courts is a fundamental tenet of our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be."  *Id*.

60.     Rather, the typical vexatious litigant cases involve the serial litigation of a particular matter.  For instance, in *Nix v. Major League Baseball*, the plaintiff believed that his company's substance was wrongly prohibited by Major League Baseball's selectively enforced "fake" IGF-1 ban. 62 F.4th 920, 927 (5th Cir. 2023), *cert. denied*, No. 22-7810, 2023 WL 6378365 (U.S. Oct. 2, 2023).  Prior to issuing the vexatious litigation determination, the Fifth Circuit specifically noted that all but one of the plaintiff's claims was barred by claim preclusion, as he had been litigating essentially the same claims repeatedly in different forums.  *Id*. at 928.  And in *Crear v. JPMorgan Chase Bank, N.A*., the district court noted that the current suit was plaintiff's sixth lawsuit challenging foreclosure proceedings related to a particular property (and actually even this conduct was not sufficient to enter a vexatious litigant sanction). 491 F. Supp. 3d 207, 219 (N.D. Tex. 2020).  In *U.S. Bank Nat'l Ass'n v. Jefferson*, the defendants filed multiple, identical, and unsuccessful removal petitions related to a single proceeding.  314 F. Supp. 3d 768, 783–84 (S.D. Tex. 2018).  In *Carroll*, the debtors and their adult children generated 100 pleadings and two appeals relating solely to the sale of their residence.  2016 WL 1084287, at *4.

61.     Much unlike these typical cases, here the litigation identified by HCMLP involve completely different transactions and contractual relationships.  A conclusion that is no surprise as HCMLP was not a "garden variety debtor," but instead a global investment manager with billions of dollars under management.  And there are hundreds of contracts and transactions between the respondents and HCMLP.

62.     The pre-petition relationships between the Charitable Respondents and HCMLP were particularly complex.  The Charitable Respondents and HCMLP were party to Advisory Agreements which generated duties owed by HCMLP to the Charitable Respondents, extending far into the Bankruptcy Case, including an extensive amount of time during which HCMLP was controlled by Mr. Seery, who therefore was in control of HCMLP in its capacity as advisor to the Charitable Respondents (including the time of the HarbourVest Settlement Dispute).  The Charitable Respondents were holders of participation and tracking interests issued by HCMLP which generated a completely distinct set of obligations owed by HCMLP to the Charitable Respondents and are at issue the Amended POC Matter.  Each matter concerns completely distinct legal relationships with millions of dollars at stake, not the duplicative litigation of the same claims or over the same assets.

### 2.     The Charitable Respondents have a good faith basis for the litigation and almost all of the major pieces are on appeal

63.     As attested to in sworn filings in the Bankruptcy Court, the Charitable Respondents vigorously pursued claims to protect the DAF's investments, which are used to make tens of millions of dollars of charitable contributions.  *See* Bankruptcy Case, Dkt. No. 2547-1.

64.     But there has not been a single finding of ***bad faith*** by any court against the Charitable Respondents.  Rather than filing to harass, every pleading filed by the Charitable Respondents has been for the clear purpose of protecting the hundreds of millions of dollars at stake.  *See* HarbourVest Settlement Dispute (alleging $24 million plus in damages from a breach of the investment advisory agreement and breach of duty as investment advisor); Amended POC Matter (alleging a claim between $3-$5.5 million arising from participation and tracking interests issued); the Guernsey matter (alleging claims in the amount $70 million for HCLOF unfairly

prejudicing CLO Holdco).  Again, these are distinct legal relationships concerning millions of dollars.

65.     The only proceeding in which the Charitable Respondents were found to be in contempt was the Seery Motion, which this Court noted was not a finding based upon lack of candor or deceitfulness.  Further, unlike *Carroll*, where there a dozen contempt orders and a failure to abide by previous orders, the Charitable Respondents complied with the contempt sanction, with reservation of right to appeal, pursuant to a stipulation with HCMLP.  Recently, at oral argument, the Fifth Circuit panel appeared to question whether the Seery Motion was contemptuous at all, given that the disclosures in the Seery Motion.  And like the Seery Motion, the complained of causes of action by the Charitable Respondents in the HarbourVest Settlement Dispute and Amended POC Matter are also on appeal (there has been no mention of any claim being made within these appeals that the appeals are frivolous, because there have been no such claims).  .

66.     Of course, even if the appeals prove unsuccessful, being unsuccessful in an appeal would certainly not render these proceedings sanctionable.  *Farguson v. MBank Houston, N.A*., 808 F.2d 358, 359 (5th Cir. 1986) ("[t]his court has no desire to deter any litigant from advancing any claim or defense which is arguably supported by existing law, or any reasonably based suggestion for its extension, modification, or reversal. Positions thus taken cannot be considered as frivolous, although they may be unsuccessful and indeed may be given short shrift.").

67.     In sum, to enter a vexatious litigant sanction here, this Court would have to issue findings against nonparties that they have acted in bad faith in proceeding not before this Court, even though in those proceedings in which the Charitable Respondents are actually parties, there have been no such findings.  This is because the litigation undertaken by the Charitable Respondents has been pursued in good faith for the purpose of protecting DAF investments.

### 3. The Covered Parties have burdened the court system and the Charitable Respondents now seek to add an additional layer of burden.

68. HCMLP argues that the litigation emanating from the HCMLP Bankruptcy has been burdensome and costly. But HCMLP fails to mention that the Covered Parties' own pattern of pursuing burdensome litigation tactics, or state with clarity that in fact the HCMLP proposal to **_alleviate_** the burden on the court system is to establish dual (or, as shown, dueling) gatekeepers.

69. As briefed herein, the Covered Parties' own litigation tactics aimed at the Charitable Respondents has burdened the court system. The Litigation Trustee and his predecessor commenced a lawsuit with no intention of actually pursuing claims, but instead improperly holding the Registry Funds, only to dismiss that suit a year and half later. The Litigation Trustee commenced Rule 2004 Motion proceeding which he abandoned, claiming to have in fact never asked for the production of documents that he in fact had unambiguously sought, after forcing the Charitable Respondents to incur great costs and burden. The Litigation Trustee also perpetuated the Kirschner Adversary seemingly to pay the fees and costs of the professionals perpetuating the litigation. Even HCMLP itself has been accused of pursing litigation for litigation's sake. In the recent Fifth Circuit argument in the Contempt Appeal, the panel questioned why HCMLP instituted a multiday hearing costing hundreds of thousands of dollars when a one paged document would have sufficed.

70. The Bankruptcy Case has spurred an immense amount of litigation, much of which has been aggressive, but again, it is not in one direction. HCMLP itself has argued that the Bankruptcy Case is not a garden variety case nor is HCMLP a garden variety debtor. When there

are billions of dollars at stake and complex transactions and relationships, along with antagonism from all sides, litigation is the expected consequence.[5]

71.     Further, the HCMLP proposed "fix" to the burden on the court system is to duplicate the pre-filing injunction contained in the Plan Gatekeeper. Not satisfied with an already functioning Plan Gatekeeper, HCMLP now argues that two are needed, so that two courts, each ordering that no action be filed without ***first*** seeking leave in each court.  This duality is a practical impossibility.  To even seek leave, two motions for leave would have to be filed, one in each court, simultaneously, lest the filing party run afoul of the dual gatekeepers, each requiring no action in any other court before leave is sought there.

### 4.     There are already numerous protections in place that cannot be squared with the requested relief.

72.     HCMLP expected litigation.  So much so that it included the Plan Gatekeeper in the Plan, along with continuing the January 9 Order and Seery Order.  Further, HCMLP and the Claimant Trust are hoarding ***one hundred twenty five million dollars*** in indemnification funds to indemnify themselves for any costs incurred.

73.     As provided in the Plan, once general unsecured claims are paid, pre-petition equity holders, who are respondents to this Motion, become beneficiaries of the Claimant Trust.  The Balance Sheet shows that there are sufficient assets to pay general unsecured claims in full, yet the Claimant Trustee will not pay the general unsecured claims.  Instead, the Claimant Trustee, who is also the trustee of the Indemnity Sub-Trust and CRO/COO, is an indemnified party who has

---

[5]     Of note, large amounts of litigation in any billion dollar bankruptcy case is to be expected.  For instance, in the FTX Trading Ltd. Bankruptcy (Case No. 22-11068, Bankr. D.E.), there are been more filings in a year than in the Highland Bankruptcy Case.  As this Court is aware, a single large bankruptcy case often generates numerous appeals as well.

elected to hold over one hundred twenty five million dollars in funds to indemnify himself and other indemnified parties rather than pay creditors.

74.      Important here, the same parties that claim to need protections from further litigation, are already incredibly protected.  Their fees are administrative expenses of the Claimant Trust and/or subject to indemnification from the Indemnity Sub-Trust.  Every dollar incurred by HCMLP and the Claimant Trust comes out of what would be the return to pre-petition equity, who are respondents to this Motion.  And there is already the Plan Gatekeeper, which requires that the Charitable Respondents (and any other party) go to the Bankruptcy Court before commencing or pursuing any cause of action against the Protected Parties.  As HCMLP recently argued to the Fifth Circuit, the purpose of the Plan Gatekeeper is to give the Bankruptcy Court "the first say, not the second say about any proposed lawsuit covered by the terms of [the Plan Gatekeeper] so going to a different court whether it's the district court [or a state court] is violating the [Plan Gatekeeper]. It is contempt of court."  *See* Oral Argument.  So according to HCMLP, it is contemptuous for the Charitable Respondents to ask this Court for leave to file a claim against HCMLP.

75.      But now HCMLP also requests an order that the Charitable Respondents are prohibited from pursuing, instituting, or commencing, a claim or cause of action against the Covered Parties without ***this Court's prior approval*** obtained after reasonable notice to the applicable Covered Parties, and a hearing.  It would be impossible to comply with both the proposed vexatious litigant sanction and the Plan Gatekeeper as prior approval from this Court can only be interpreted as not giving the Bankruptcy Court the "first say."  And these provisions have different legal standards with no mechanism to harmonize the two, which will do nothing but increase the burden on the court system.

76.     Not only is the requested sanction practically impossible to comply with, but it is also unsupported.  This Court must consider the adequacy of alternative sanctions.  *Baum*, 513 F.3d at 189.  The sole basis cited for inadequacy of the Plan Gatekeeper is that it has been appealed (or "actively challenged").  Memo, ¶47.  But the record in Bankruptcy Case shows that the respondents have complied with the Plan Gatekeeper (with the Seery Motion being the sole violation, which again is on appeal).

77.     The proposed vexatious litigation sanction is unworkable and unsupported.  There are adequate protections in place for Covered Parties.   THERE IS ALREADY THE PLAN GATEKEEPER, AS WELL AS TWO OTHER PRE-PLAN GATEKEEPERS IN PLACE.

### C.     The proposed vexatious litigant sanction is impermissibly broad and unlike any sanction imposed in the cases HCMLP cites to.

78.     The facts before this Court are unlike any case in which a court imposes a vexatious litigant pre-filing injunction.  In *Carroll*, the bankruptcy court had already made countless bad faith findings and issues numerous ignored contempt orders. *Matter of Carroll*, 850 F.3d 811, 816 (5th Cir. 2017); *Carroll*, 2016 WL 1084287 at *2.  After finding that the litigants were vexatious, the court entered a pre-filing injunction requiring leave of the bankruptcy court before filing any pleading or document in the bankruptcy case or its associated cases or adversary proceedings and from filing any future cases in the bankruptcy court.  *Id*. at *10.  So in a case with actual bad faith findings, multiple contempt orders, and the serial re-litigation, the vexatious litigant sanction barred named parties (and those who assist them) from filing pleadings in the ***bankruptcy court*** without prior approval.

79.     HCMLP also relies upon *Schum v. Fortress Value Recovery Fund I LLC*, No. 3:19-CV-00978-M, 2019 WL 7856719, at *5 (N.D. Tex. Dec. 2, 2019), *aff'd sub nom. Matter of Renaissance Radio, Inc*., 805 F. App'x 319 (5th Cir. 2020).  But again in that case, the court ordered

that the ***party*** before it be "enjoined from making any future filings related to the [certain named] bankruptcies in a ***United States bankruptcy court*** without first obtaining leave from the United States Bankruptcy Court for the Northern District of Texas."  *Id*. at *6.  So again, the vexatious litigant sanction was limited to name parties and only applied to U.S. bankruptcy courts.  In fact, a broader sanction than that ordered by the *Schum* court is already in place as to any person or entity, through the Plan Gatekeeper.

80.     Here, the proposed pre-filing injunction would enjoin non-parties from filing any action of any kind in any court or regulatory or administrative agency without prior approval.  While standing alone such an unlimited injunction could never stand, the request is even more egregious in light of the existing Plan Gatekeeper and the lack of showing of any "inadequacy" thereof.  *Connor v. Stewart*, No. 1:17-CV-827-RP, 2018 WL 4169150, at *2 (W.D. Tex. Aug. 30, 2018)(citing *Baum*, 513 F.3d at 190 (noting that pre-filing injunctions must be narrowly tailored)).

## VI.   CONCLUSION

The HCMLP case has been litigious, on all sides.  There is a Plan Gatekeeper in place that already requires the Charitable Respondents to seek leave of the Bankruptcy Court before commencing or pursuing any claim against HCMLP and any Protected Party.  There can be no vexatious litigant sanction against the Charitable Respondents under established Fifth Circuit law, if for no other reason than that they are not parties to this proceeding, and HCMLP has not made a single allegation that the Charitable Respondents have been in any way involved in the actions taken by any party to this proceeding.  But as well for the additional reasons briefed above.  The Motion is misguided and groundless.  The Motion should be denied and dismissed.

*[signature block on following page]*

Respectfully submitted:

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

## <u>CERTIFICATE OF SERVICE</u>

I, undersigned counsel, hereby certify that a true and correct copy of the above and foregoing document and all attachments thereto were sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on this December 15, 2023.

*/s/ Louis M. Phillips*
Louis M. Phillips

26