Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347
*Attorneys for Hunter Mountain Investment Trust*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P. | § § § | |
| Plaintiff. | § | Case No. 3:21-cv-00881-X |
| vs. | § § | (Consolidated with 3:21-cv-00880-X, 3:21-cv-01010-X, 3:21-cv-01378-X, 3:21-cv-01379-X) |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. et al., | § § § | |
| Defendants. | § § | |

**HUNTER MOUNTAIN INVESTMENT TRUST'S MEMORANDUM IN OPPOSITION**
**TO HIGHLAND CAPITAL MANAGEMENT, L.P.'s**
**MOTION TO DEEM THE DONDERO ENTITIES**
**VEXATIOUS LITIGANTS AND FOR RELATED RELIEF**

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY OBJECTIONS ......................................................................... 1

II.   SUMMARY OF RESPONSE ........................................................................... 1

III.   FACTUAL BACKGROUND .......................................................................... 4

   A.   Overview -- Hunter Mountain Investment Trust ............................................. 4

   B.   HMIT Never Sued HCM in Rule 202 Proceedings or HMIT's Emergency Motion for Leave. ............................................................................................................. 4

   C.   The Plan and Gatekeeper Orders. ............................................................... 6

   D.   The State Court Rule 202 Proceedings. ......................................................... 6

   E.   Adversary Proceedings Requesting Information ............................................. 8

   F.   HMIT's Emergency Motion for Leave. .......................................................... 9

   G.   HMIT's Only Pending Appeal ................................................................... 11

   H.   HCMLP Continues to Target HMIT ........................................................... 13

IV.   ARGUMENT & AUTHORITIES .................................................................. 14

   A.   The Relevant Legal Standards .................................................................. 14

   B.   No Privity of Interests ............................................................................ 16

   C.   No Evidence of Coordinated Effort ............................................................ 17

   D.   No Evidence that Additional Sanctions are Proper .......................................... 18

   E.   Deference to the Honorable Judge Brown ..................................................... 20

V.   CONCLUSION AND PRAYER .................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance Riggers & Constr., Ltd. v. Restrepo*, 2015 US Dist. LEXIS 29346 (W.D. Tex. Jan. 7, 2015).................................................................................................................................. 17

*Baldwin v. Zurich American Ins. Co.*, 2019 WL 7759520 at *1 (W.D. Tex. July 12, 2019) ....... 15

*Beasley v. Greenlee*, 2022 WL 18859311 at *1 (N.D. Tex. December 5, 2022) ........................ 14

*Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286 (5th Cir. 2000) ...................................................... 20

Carroll v. Abide, No. 316CV00218JWDRLB, 2016 WL 4127768 (M.D. La. Aug. 2, 2016)...... 17

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).................................................................... 14

*Chaves v. M/V Medina Star*, 47 F.3d 153 (5th Cir. 1995) .......................................................... 15

*CitiFinancial Corp. v. Harrison*, 453 F.3d 245 (5th Cir. 2006) ................................................ 20

*Crain v. Credit Prot. Ass'n*, 2010 WL 2976127, at *1 (N.D. Tex. June 30, 2010) ..................... 14

*Crear v. JPMorgan Chase Bank, NA*, 491 F. Supp. 3d 207 (N.D. Tex. 2020)............................ 14

*Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812 (4th Cir.2004.).............................................. 15

*Dhalluin v. McKibben*, 682 F.Supp. 1096 (D.Nev.1988) ............................................................ 20

*Elliott v. Tilton*, 64 F.3d 213 (5th Cir. 1995) ............................................................................ 15

*In re Carroll*, No. 08-10756, 2016 WL 1084287, (Bankr. M.D. La. Mar. 17, 2016)............ 17, 18

*In re McBryde*, 117 F.3d 208 (5th Cir.1997) ............................................................................ 20

*In re Oliver*, 682 F.2d 443 (3d Cir. 1982)................................................................................... 5

*Lander v. JPMorgan Chase Bank Nat'l Ass'n*, 2022 WL 819213 *1 (E.D. Tex. Feb. 21, 2022) 14

Matter of Carroll, 850 F.3d 811 (5th Cir. 2017) ........................................................................ 17

*Pease v. Principal Residential Mortg., Inc.*, No. 03-02-00491-CV, 2004 WL 1065639, at *1
(Tex. App.—Austin May 13, 2004, no pet.) .......................................................................... 16

*Rohe v. Wells Fargo Bank*, 988 F. 3d 1256, 1264 (11th Cir. 2021) .............................................. 1

*Staten v. Harrison Cnty.*, 2021 US App. LEXIS 35747 (5th Cir. Dec. 3, 2021) ......................... 17

*Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) ......................... 16

*Walters v. Tenant Background Search*, 2019 WL 4849204 at *1 (W.D. Tex. Sept. 30, 2019).... 14

*Williams v. McKeithen*, 939 F.2d 1100 (5th Cir. 1991)............................................................... 18

**Statutes**

28 U.S.C. § 158.............................................................................................................................. 5

28 U.S.C. § 1651............................................................................................................................ 4

Hunter Mountain Investment Trust ("HMIT") files this Response and Memorandum of Law in Opposition ("Response") to Highland Capital Management, L.P.'s ("HCM") Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief [Dkt. 136] and the Memorandum of Law in Support [Dkt. No. 137] ("HCM's Motion" or "Motion"), and would show:

## I.    PRELIMINARY OBJECTIONS

1.    HMIT objects to HCM's Motion because HMIT was never a party to the underlying proceedings in this Court in which HCM's Motion has now been filed. HCM's Motion cites no authority for the proposition that this Court can exercise its jurisdiction and authority to grant the relief requested against an entity that was not a party to the original proceedings. HMIT objects that it would be inappropriate for the court to exercise such authority in this instance. HMIT's Response is subject to and without waiver of this objection.

2.    The District Court also lacks jurisdiction over HCM's Motion because the *All Writs Act* (28 U.S.C. § 1651) does not provide the District Court with jurisdiction when, as in this instance, the Court is not acting in its capacity as an appellate court concerning matters appealed from the Bankruptcy Court.[1] HMIT's Response is subject to and without waiver of this objection.

## II.    SUMMARY OF RESPONSE

3.    HCM's Motion against HMIT is frivolous – it presents an alternate reality turning the facts upside down. Under the true facts, fairly considered, HMIT is not a vexatious litigant but, by its Motion and prior history, HCM evinces all of the characteristics of vexatiousness it

---

[1] *See Rohe v. Wells Fargo Bank*, 988 F. 3d 1256, 1264 (11th Cir. 2021) ("[A]ny attempt by the District Court to issue an All Writs Act order directed to the bankruptcy court would be inappropriate because the Act is not meant to serve as 'a substitute for the regular appeals process.'"); *see also*, 28 U.S.C. § 158. A final judgment was entered and a notice of appeal to the Fifth Circuit was previously filed. *See Notice of Appeal to the United States Court of Appeals for the Fifth Circuit*, [Dkt. No. 158].

now alleges. The Motion also is misleading. It mischaracterizes important facts and it misapplies the law regarding the relevant standards for determining whether a litigant is vexatious.[2]

4.      The Motion is separately improper because it encroaches upon proceedings pending before the Honorable Judge Ada Brown in the Unites States District Court for the Northern District of Texas in Civil Case No. 3:23-cv-02071-E, (N.D. Tex.).[3] One of the few instances of litigation in which HMIT has been involved (an Emergency Motion for Leave to File Adversary Proceeding in the Bankruptcy Court) is currently on appeal before Judge Brown, who is addressing the merits of the Bankruptcy Court's denial of HMIT's Motion for Leave in a 108-page opinion. This Court should therefore deny HMIT's Motion in deference to Judge Brown. HMIT's Second Amended Notice of Appeal and Second Supplemental Statement of the Issues and Designation of Items for Inclusion in the Appellate Record are attached to this Response as Appendix Exhibits 4 and 6, respectively.

5.      HMIT denies all material allegations asserted against it in HCM's Motion. As also shown in this Response, HCM's Motion fails to cite a single case to support a "vexatious" finding against HMIT in light of undisputed facts. HMIT has acted in good faith, and has fully complied with the current Gatekeeper Order at all times:

- HMIT agreed to ***not challenge*** the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. [Bankr. Dkt. 1943],[4] as modified

---

[2] With the exception of Footnote No. 1, HMIT is scarcely mentioned in HCM's Motion. It is not until Page 24 of the Motion that the first of only a few references to HMIT appear. The Movant (HCM) is attempting to camouflage the weakness of its claims by seeking to brand HMIT as a participant in various litigation, sundry objections and appeals in which HMIT was clearly not involved, and the Motion does so without any factual support or evidence. The Summary Litigation Chart, attached as Exhibit 1 to HCM's Motion, contains widespread mischaracterizations, yet even so, the chart still confirms the very few references to HMIT.

[3] *See* HMIT's Second Amended Notice of Appeal [Bankr. 3945], **HMIT Ex. 4, HMIT Appx. 825-1109.**

[4] Order Approving Joint Stipulation as to Withdrawal of Hunter Mountain Investment Trust's Proof of Claim [Bankr. Dkt. 2143], **HMIT Ex. 8, HMIT Appx. 1140-1148. Bankr. Dkt.** refers to the Bankruptcy Docket in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

(the "Plan"), and was **_not involved_** in any appeal of the Plan or the Bankruptcy Court's Gatekeeper Order;

- HMIT **_did not object_** to the various settlements identified in the Motion,[5] and a review of the Bankruptcy Court's docket confirms that no such objections were lodged;

- HMIT **_has not engaged_** in repetitive filings of the same claims;

- HMIT **_never filed_** any proceeding in the Northern District of Texas or any adversary proceeding asserting affirmative claims for damages against the Estate or the Reorganized Debtor;[6]

- There is a dearth of evidence suggesting that HMIT has employed litigation as a strategy to frustrate or undermine the Estate, the Reorganized Debtor or the Claimant Trust;

- In one of its few forays as a party-plaintiff in litigation, HMIT sought leave to file an adversary proceeding as a derivative action on behalf of the Estate and the Reorganized Debtor, and that matter is now pending before Judge Brown as an appeal.[7] Importantly, when doing so, HMIT fully complied with the Bankruptcy Court's Gatekeeper Order as set forth in the Plan;

- HMIT is not properly grouped under the amorphous label as a "Dondero Entity," and HCM, as Movant, provides neither evidence nor coherent argument why HMIT's separate corporate existence should be disregarded. HMIT also objects to being categorized in this vague grouping in HCM's obvious blunderbuss attempt to attribute the alleged actions of others to HMIT; and

- The proposed injunction is also needless, unjustified and defective on its face.

---

[5] *See* Motion at ¶25; *see generally*, Bankruptcy Docket, Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

[6] HMIT filed a Limited Response [Bankr. Dkt. 3467], **HMIT Ex. 14, HMIT Appx. 2202,** in support of Dugaboy Investment Trust's Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust [Bankr. Dkt 3382], **HMIT Ex. 13, HMIT Appx. 2166**. HMIT's Limited Response sought information only. However, at the behest of HCM, the Bankruptcy Court ordered the proceedings to be re-filed as an adversary proceeding. *See* Bankr. Dkt. 3645, **HMIT Ex. 16, HMIT Appx. 2226-2332**. Even then, the only relief sought is for information and determination of rights. *See* The Dugaboy Investment Trust and Hunter Mountain Investment Trust v. Highland Capital Management, L.P. and Highland Claimant Trust, Adv. Pro. No. 23-03038-sgj (N.D. Tex.). Furthermore, HCM argued, and it was ultimately agreed, that Dugaboy and HMIT did not need to seek leave to file these adversary proceedings because only equitable relief was sought. *See* HCM's Response to Motion for Leave to File Proceeding [Bankr. Dkt. 3692], **HMIT Ex. 18, HMIT Appx. 2648-2784**.

[7] Civil Case No. 3:23-cv-02071-E, (N.D. Tex.), *see also* Transmittal and Certification of Record on Appeal [Bankr. Dkt. 3989], **HMIT Ex. 7, HMIT Appx. 1138-1139.**

6.      HMIT requests a full evidentiary hearing in the event the Court does not summarily deny HCM's Motion.

### III.      FACTUAL BACKGROUND

**A.      Overview -- Hunter Mountain Investment Trust**

7.      HMIT is a statutory trust organized under the laws of Delaware. It was the 99.5% equity owner in Highland Capital Management ("HCM"), the Debtor, prior to the Effective Date of the Plan.[8] It was not owned by Jim Dondero or any so-called "Dondero Entity" at that time.[9] Upon the Effective Date, HMIT's 99.5% limited partnership interest in HCM was extinguished, and HMIT became a stakeholder as a Class 10 contingent beneficiary under the terms of the Plan and the Claimant Trust Agreement created by the Plan.[10]

8.      Mark Patrick is the Administrator of HMIT;[11] the Trustee is Wilmington Trust; the sole beneficial owner is Beacon Management, LLC, a Delaware limited liability company; the sole member of Beacon Mountain is Rand PE Fund I LP, a Delaware limited partnership. Substantially all (99%) of the limited partners interest in Rand PE Fund is held by Atlas IDF LP, a Delaware limited partnership.  Jim Dondero does not own an interest in HMIT and has no control over any of these entities.[12]

**B.      HMIT Never Sued HCM in Rule 202 Proceedings or HMIT's Emergency Motion for Leave.**

---

[8] Bankr. Dkts. 3699, 3760, **HMIT Exs. 1-2, HMIT Appx. 1-434**.
[9] *See* Transcript of Hearing Held Jun. 8, 2023, Case No. 19-34054-sgj (Bankr. N.D. Tex. Jun. 8, 2023) (p.113:10-25), **HMIT Ex. 3, HMIT Appx. at 548**.
[10] *See* Order Confirming Plan [Bankr. Dkt. 1946], Claimant Trust Agreement [Bankr. Dkt. 3521-5].
[11] Transcript of Hearing Held Jun. 8, 2023, Case No. 19-34054-sgj (Bankr. N.D. Tex. Jun. 8, 2023) (p. 307:7-10), **HMIT Ex. 3, HMIT Appx. at 742).**
[12] *See* Transcript of Hearing Held Jun. 8, 2023, Case No. 19-34054-sgj (Bankr. N.D. Tex. Jun. 8, 2023) (p.113:10-25), **HMIT Ex. 3, HMIT Appx. at 548.**

9.      HMIT has never filed any affirmative claims in this Court or in the Bankruptcy Proceedings seeking damages against HCM or the Reorganized Debtor.[13] HCM's Motion cites only *two* filings—neither of which were filed in bad faith, and neither of which comes remotely close to crossing the threshold for "vexatious" litigation. The first filing is the Rule 202 Proceedings in Texas State District Court, which did not involve HCM as a party.[14] The second filing is the Emergency Motion for Leave to File Adversary Proceeding [Bankr. Dkt. Nos. 3699, 3815, 3816] which was denied by the Bankruptcy Court and is now on appeal to Judge Brown. In this instance, as described more fully below, HMIT brought the proceedings derivatively on behalf of, and not against, HCM and the Reorganized Debtor.

10.      To now suggest that these two proceedings could somehow warrant the excessive injunctive relief requested in HCM's Motion is without merit and calculated to have a chilling effect on HMIT's rights to access the courts and due process. This represents an attempt to lock the doors to the courthouse with unjustified road blocks. To be clear, "[a]ccess to the courts is a fundamental tenet of our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be." *In re Oliver*, 682 F.2d 443, 446 (3d Cir. 1982). Viewed in this light, there should be no question that HCM's Motion is hyperbolic, unsupported, and overreaching.

---

[13] *See* Bankr. Dkts. 3699, 3760, **HMIT Exs. 1-2, HMIT Appx. 1-434**.
[14] *See* HMIT's Verified Rule 202 Petition, dated January 20, 2023, Case No. DC-23-01004-J, in the 191st District Court of Dallas County Texas, **HMIT Ex. 9, HMIT Appx. 1149-1192.**

**C.     The Plan and Gatekeeper Orders.**

11.     As part of a settlement of an adversary proceeding initiated by HCM against HMIT, which HMIT was defending, HMIT agreed to not challenge the Plan and was never a party to any appeal of the Plan or the Bankruptcy Court's Gatekeeper Orders.[15]

**D.     The State Court Rule 202 Proceedings.**

12.     On January 20, 2023, HMIT filed a Verified Rule 202 Petition in state district court in Dallas County seeking pre-suit discovery in accordance with Tex. R. Civ. P. 202 ("Request for Pre-Suit Discovery").[16] As a Class 10 stakeholder, HMIT should not be faulted for seeking to protect its significant financial interests by requesting discovery from third parties to investigate activity related to potential claims impacting the Estate, the Reorganized Debtor and its own interests as a significant stakeholder.

13.     HMIT's Request for Pre-Suit Discovery was heard on February 22, 2023, by the Honorable Gena Slaughter of the 191st Civil District Court of Texas.[17] The proceedings involved discovery from third parties – two out-of-state hedge funds – and *not* from the Debtor, the Reorganized Debtor or the Claimant Trust.[18] The out-of-state hedge funds were strangers to the original HCM bankruptcy, but they were involved in the acquisition of large unsecured creditor claims. The 202 Proceedings were filed to investigate the hedge fund's access to and use of insider information in connection with the purchase of these claims.

---

[15] *See* Order Approving Joint Stipulation as to Withdrawal of Hunter Mountain Investment Trust's Proof of Claim [Bankr. Dkt. 2143], **HMIT Ex. 8, HMIT Appx. 1140-1148**; *see generally,* Highland Capital Management, L.P. vs. Hunter Mountain Investment Trust, Adv. Proc. No. 20-03105-sgj (Bankr. N.D. Tex.).

[16] *See* Hunter Mountain Investment Trust's Verified Rule 202 Petition, **HMIT Ex. 9, HMIT Appx. 1149-1192.**

[17] Transcript of Hearing on February 22, 2023, Cause No. DC-23-01004-J, 191st District Court of Dallas, Texas, **HMIT Ex. 11, HMIT Appx. 1196-2163.**.

[18] *See* Hunter Mountain Investment Trust's Verified Rule 202 Petition, **HMIT Ex. 9, HMIT Appx. 1149-1192.**

14.     HMIT's Request for Pre-Suit Discovery was taken under consideration by the Court, who later dismissed the proceedings *without prejudice*.[19] However, there was no adverse finding of fact – at no point did the Court find HMIT's 202 Petition to be frivolous, filed in bad faith, or harassing.[20] On the other hand, the hearing transcript confirms that the two hedge funds who opposed the investigative discovery did so, at least in part, based on arguments that HMIT should seek the requested information in the Bankruptcy Court instead of the Texas state district court.[21]

15.     HCM's Motion argues in conclusory fashion that HMIT's Request for Pre-Suit Discovery duplicated an earlier Rule 202 Proceedings initiated by James Dondero. First, merely because litigation proceedings may be similar to earlier proceedings is not a basis for labeling either the filing or the filer as vexatious. Here, there were substantial differences. HMIT clearly had standing to seek this discovery due to its significant position as a Class 10 stakeholder and as the former 99.5% equity holder in HCM. There was a difference in parties, and there were different arguments and evidence presented at HMIT's hearing in February 2023.

16.     Importantly, there is no evidence that Judge Slaughter concluded that the two proceedings were "related cases" under the local rules of Dallas County.[22] The respondents had claimed that HMITs Request for Pre-Suit Discovery was a "related case" to the earlier

---

[19] *See* Transcript of Hearing Held February 22, 2023, Case No. DC-23-01004-J, in the 191st District Court of Dallas County Texas, **HMIT Ex. 11, HMIT Appx. 1196-2163;** Order denying HMIT's Verified Rule 202 Petition, dated March 8, 2023, Case No. DC-23-01004-J, in the 191st District Court of Dallas County Texas, **HMIT Ex. 12, HMIT Appx. 2164-2165**.

[20] *See generally*, Transcript of Hearing on February 22, 2023, Cause No. DC-23-01004-J, 191st District Court of Dallas, Texas, **HMIT Ex. 11, HMIT Appx. 1196-2163**.

[21] *See*, Transcript of Hearing on February 22, 2023, Cause No. DC-23-01004-J, 191st District Court of Dallas, Texas, **HMIT Ex. 11, HMIT Appx. at 1244-1246**. HMIT did so, but the Bankruptcy Court also rejected any such discovery. *See* Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing, [Bankr. Dkt. 3800].

[22] *See generally*, Transcript of Hearing on February 22, 2023, Cause No. DC-23-01004-J, 191st District Court of Dallas, Texas, **HMIT Ex. 11, HMIT Appx. 1196-2163**.

proceedings involving Mr. Dondero which had been filed in a different district court in Dallas County. Although the respondents requested, in part, that the case be transferred to the other state district court, this was not done.[23]

17.     Neither the Reorganized Debtor nor the Trustee of the Reorganized Debtor was a party to these proceedings (although the Trustee was the focus of some of the discovery). HMIT did ***not*** seek a rehearing and did ***not*** appeal the State Court's decision. Simply put, HMIT's Request for Pre-Suit Discovery, where HMIT is guilty of nothing more than seeking information, is not a proper basis for HCM's Motion.

**E.     Adversary Proceedings Requesting Information**

18.     Although HCM's Motion does not expressly criticize HMIT for this, the Litigation Summary Chart attached as Exhibit 1 to HCM's Motion identifies HMIT's involvement in an adversary proceeding seeking valuation information regarding the Reorganized Debtor and the Claimant Trust.[24] As Debtor, HCM had not filed the financial disclosures generally required in bankruptcy proceedings,[25] and there was little or no transparency concerning the financial condition of the Estate, the Reorganized Debtor or the Claimant Trust. As such, Dugaboy Investment Trust filed a Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust.[26]

---

[23] Farallon Capital Management, L.L.C. and Stonehill Capital Management LLC's Notice of Related Case, dated February 16, 2023, Case No. DC-23-01004-J, in the 191st District Court of Dallas County Texas, **HMIT Ex. 10, HMIT Appx. 1193-1195**, *see also*, **HMIT Ex. 11, HMIT Appx. 1196-2163**.

[24] The Dugaboy Investment Trust and Hunter Mountain Investment Trust v. Highland Capital Management, L.P. and Highland Claimant Trust, Adv. Pro. No. 23-03038-sgj (N.D. Tex.).

[25] *See* Dugaboy's Motion to Compel Compliance with Bankruptcy Rule 2015.3 [Bankr. Dkt. 2256]; *see also* Debtor's Opposition to Motion to Compel Compliance With Bankruptcy Rule 2015.3 Filed by Dugaboy Investment Trust and Get Good Trust, [Bankr. Dkt. No. 2341] (evidencing Debtor never even seeking relief from reporting requirement).

[26] Dugaboy Investment Trust's Motion for Determination of the Value of the Estate and Assets Held by the Claimant Trust [Bankr. Dkt. 3382], **HMIT Ex. 13, HMIT Appx. 2166-2201**.

19.     As a significant Class 10 stakeholder, HMIT then followed with a Limited Response in Support of Certain Requested Relief. [Dkt. 3467] HMIT's support of Dugaboy Investment Trust's initial motion related solely to requesting information.[27] However, instead of providing the requested information, HCM and the Claimant Trust resisted disclosures and urged that an adversary proceeding be initiated.[28] In response, Dugaboy and HMIT, making sure to not violate the Gatekeeper order, first sought leave to file the adversary proceeding,[29] to which HCM then responded by arguing to the Bankruptcy Court that leave was not necessary because the only requested relief was equitable.[30] In short, HMIT sought leave and attempted to comply with the Gatekeeper provision even when it was not required. Thus, there can be no credible argument that the current Gatekeeper order and injunction is insufficient or that HMIT has attempted to evade it.[31] Rather, this is a clear example of HMIT's good faith.

**F.     HMIT's Emergency Motion for Leave.**

20.     HCM's Motion next criticizes HMIT's Emergency Motion for Leave to File Verified Adversary Proceeding ("Motion for Leave") [Bankr. Dkt. Nos. 3699, 3815,  3816], which was supplemented on April 23, 2023.[32] By way of this Motion for Leave, HMIT was

---

[27] As explained in the Limited Response Paragraph 19, HMIT's information request was uniquely important because of its posture as a Class 10 beneficiary while concurrently being sued in the *Kirschner* litigation. *See* Section H, *supra*. HMIT denies the allegations in the *Kirschner* litigation. With that said, the costs to litigate against HMIT will likely be borne by HMIT, by virtue of its status as a Class 10 beneficiary. *See* **HMIT Ex. 14, HMIT Appx. 2202-2212.**

[28] HCM's Brief Establishing the Need for an Adversary Proceeding to Obtain the Relief Sought in Valuation Motion. [Bankr. Dkt. 3639], **HMIT Ex. 15, HMIT Appx. 2213-2225**.

[29] Dugaboy and HMIT's Motion for Leave to File Proceeding [Bankr. Dkt. 3662], **HMIT Ex. 17, HMIT Appx. 2333-2647.**

[30] *See* HCM's Response to Motion for Leave to File Proceeding [Bankr. Dkt. 3692], **HMIT Ex. 18, HMIT Appx. 2648-2784**.

[31] *See* Footnote 5, *supra; see generally*, The Dugaboy Investment Trust and Hunter Mountain Investment Trust v. Highland Capital Management, L.P. and Highland Claimant Trust, Adv. Pro. No. 23-03038-sgj (N.D. Tex.).

[32] Bankr. Dkt. 3760, **HMIT Ex. 2, HMIT Appx. 389-434**.

seeking permission from the Bankruptcy Court to file an adversary proceeding **subject to and pursuant to** the Court's Gatekeeping Order and the injunction set forth in the Plan.[33] Despite HCM's false statements to the contrary, HMIT's Motion for Leave did not seek leave "to sue HCMLP"[34] or set aside the HarbourVest settlement.[35] Rather, to the contrary, HMIT was seeking permission to pursue claims derivatively *on behalf of* and for the benefit of the Reorganized Debtor which, in turn, would benefit HMIT and other innocent unsecured creditors. The Bankruptcy Court's 108-page Order denying HMIT's Motion for Leave is now pending an appeal to Judge Brown.

21.     The proposed Adversary Proceeding was and remains postured as a derivative action and was based upon evidence that the largest unsecured creditor claims were covertly acquired in the bankruptcy proceedings based upon access to Material Non-Public Information or MNPI, *i.e.*, insider information. The proposed adversary proceeding, which was supported by both direct and circumstantial evidence, involved the acquisition of these large unsecured claims when publicly available data could not economically justify the purchases unless the purchasers had access to material, non-public information.[36]  The Bankruptcy Court denied leave, but did so only after applying what HMIT alleges were incorrect evidentiary and legal standards and after denying HMIT's right to conduct discovery and the right to offer expert testimony in support of its claims.[37] The Bankruptcy Court's orders are on appeal to the United States District Court, and

---

[33] Bankr. Dkt. 1943.

[34] *See* HCMLP Motion at Paragraph 30.

[35] *See Id*.

[36] *See* Transcript of June 8, 2023 Hearing, **HMIT Ex. 3, HMIT Appx. 435-824**; *see also*, Bankr. Dkts. 3699, 3760; Bankr. Dkts. 3699, 3760, **HMIT Exs. 1-2, HMIT Appx. 1-434.**

[37] *See* Order Regarding Hunter Mountain Investment Trust's Emergency Motion for Expedited Discovery or, Alternatively, for Continuance of the June 8, 2023 Hearing [Bankr. Dkt. 3800], Memorandum Opinion and Order Granting Joint Motion to Exclude Expert Evidence [Bankr. Dkt. 3853], **HMIT Ex. 4, HMIT at Appx. 832-936**, Order Striking HMIT's Evidentiary Proffer Pursuant to Rule 103(a)(2) and Limiting Briefing [Bankr. Dkt. 3869], **HMIT Ex. 4, HMIT at Appx. at 1101-1102**.

the record on appeal was transmitted to Judge Brown's Court on Friday, December 7, 2023. HMIT's Motion for Leave and the appeal do not provide any proper basis for HCM's Motion. HMIT fully complied with the details of the Plan, and the procedural protocols imposed by the Bankruptcy Court.

22.     Once again, HMIT's compliance with the Gatekeeper Order in this instance demonstrates that an additional injunction is not necessary. It also confirms HMIT's good faith.

## G.     HMIT's Only Pending Appeal

23.     HMIT has not been involved in "countless" appeals. Rather, the **_only_** appeal in which HMIT was involved is the appeal now pending before Judge Ada Brown. Although HMIT engaged in an earlier mandamus proceeding to the United States District Court and the Fifth Circuit, that mandamus proceeding involved the same Motion for Leave currently at issue before Judge Brown, and the Bankruptcy Court's earlier decision refusing to provide a timely hearing date.[38]

24.     The pending appeal before Judge Brown, which is not addressed in HCM's Motion, was initiated on September 8, 2023. HMIT's opening brief is due on Friday, January 5, 2023. As reflected in the Notice of Appeal and the Second Notice of Appeal, [Bankr. Dkts. 3906, 3945],[39] HMIT seeks review of a variety of procedural and substantive rulings of the Bankruptcy Court and this review is hardly asserted in bad faith. Yet HCM's Motion has the effect of potentially interfering with Judge Brown's consideration of the merits of HMIT's appeal, which includes, but is not limited to:[40]

---

[38] Case No. 23-10376 (5th Cir.).
[39] _See_ HMIT's Second Amended Notice of Appeal [Bankr. Dkt. 3945], **HMIT Ex. 4, HMIT Appx. 825-1109.**
[40] _See_ HMIT's Second Amended Notice of Appeal [Bankr. Dkt. 3945]. **HMIT Ex. 4, HMIT Appx. 825-1109.**

- Whether the Bankruptcy Court erred in determining that the "colorable" claim analysis allowed the court to consider evidence and other non-pleading materials including the court's reasoning that:

  - the colorability analysis is stricter than a non-evidentiary, Rule 12(b)(6)-type analysis;

  - the colorability analysis is "akin to the standards applied under the … *Barton* doctrine;"

  - the colorability analysis requires a "hybrid" of the *Barton* doctrine and "what courts have applied when considering motions to file suit when a vexatious litigant bar order is in place;"

- Whether the Bankruptcy Court erred in determining that HMIT lacked constitutional or prudential standing to bring its claims in its individual and derivative capacities?

- Whether the Bankruptcy Court erred in alternatively determining that, even under a non-evidentiary, Rule 12(b)(6)-type analysis, HMIT did not assert colorable claims by concluding:

  - HMIT's allegations were conclusory, speculative, or constitute "legal conclusions;"

  - HMIT's claims or allegations were not "plausible;"

  - that Proposed Defendant James P. Seery ("Seery") owed no duty to HMIT in any capacity as a matter of law;

  - that the remedies of equitable disallowance and equitable subordination are not remedies "available" to HMIT as a matter of law;

- Alternatively, even if the Bankruptcy Court correctly determined that its "hybrid" *Barton* analysis controls, whether the Court violated HMIT's due process rights by denying HMIT its requested discovery;

- Alternatively, whether the Bankruptcy Court erred by excluding HMIT's experts' testimony and by striking HMIT's proffer of its excluded experts' testimony from the record;

Alternatively, whether the Bankruptcy Court erred in determining that HMIT had not asserted colorable claims under that "hybrid" analysis including, but not limited to, its findings that:

- o there is no evidence to support that James Seery shared material non-public information with the Claims Purchasers;

- o there is no evidence to support the alleged quid pro quo;

- o the material shared was public information; and/or

- o the Claims Purchasers had sufficient and lawful reasons to pay the amounts paid for the purchased claims.

- ▪ Whether the Bankruptcy Court erred in finding that HMIT is controlled by Dondero, and, as such, HMIT "cannot show that it is pursuing the Proposed Claims for a proper purpose"?

- ▪ Whether the Bankruptcy Court's use of a new "colorability" standard to determine if claims by non-debtors against other non-debtors may proceed violate *Stern v. Marshall* and its progeny?

- ▪ Whether the Bankruptcy Court erred in denying HMIT's Motion to Alter or Amend Order, to Amend or Make Additional Findings, for Relief from Order, or Alternatively, for New Trial under Federal Rules of Bankruptcy Procedure 7052, 9023, and 9024 including, but not limited to by:

- o declining to consider disclosures that demonstrated that HMIT is "in the money"—an issue pertinent to the Bankruptcy Court's erroneous standing decisions; and

- o concluding that the disclosures failed to reinforce HMIT's standing to pursue the claims presented.

## H.  HCMLP Continues to Target HMIT

25.  HMIT has not pursued harassing or vexatious litigation against HCM or others; on the other hand, HCM has targeted HMIT in multiple suits. This includes HCM's objection and litigation filed against HMIT related to HMIT's proof of claim as a 99.5% equity owner in the Debtor,[41] as well as litigation initiated by the Litigation Trustee, Marc Kirschner, involving allegations of fraudulent transfer,[42] both of which have resulted in lengthy and expensive

---

[41] *See* Highland Capital Management, L.P. vs. Hunter Mountain Investment Trust, Adv. Proc. No. 20-03105-sgj (Bankr. N.D. Tex.).
[42] Adv. Proc. No. 21-03076-sgj (Bankr. N.D. Tex.).

litigation. HCM also has refused to disclose information concerning HMIT's interests and rights as a Class 10 stakeholder. Needless to say, HCM is the proverbial "*pot calling the kettle black*."

## IV.     ARGUMENT & AUTHORITIES

### A.     The Relevant Legal Standards

26.     The standard for deeming a litigant vexatious is high. *Beasley v. Greenlee*, 2022 WL 18859311 at *1-2 (N.D. Tex. December 5, 2022) (finding that decades long history of petitions did not justify the imposition of a vexatious litigant sanction because the actions in the *present* case were not abusive litigation) (quoting *Crain v. Credit Prot. Ass'n*, 2010 WL 2976127, at *5–6 (N.D. Tex. June 30, 2010) (Ramirez, J.), report and recommendation adopted, 2010 WL 2976120 (N.D. Tex. July 28, 2010) (Fitzwater, J.) ("The imposition of sanctions using inherent powers must be accompanied by a specific finding of bad faith ... the standard for imposing sanctions is very high—the court must find that the very temple of justice has been defiled by the sanctioned party's conduct.") (cleaned up); *Lander v. JPMorgan Chase Bank Nat'l Ass'n*, 2022 WL 819213 (E.D. Tex. Feb. 21, 2022), report and recommendation adopted, 2022 WL 813810 (E.D. Tex. Mar. 16, 2022) (distinguishing Plaintiffs actions from three unrelated cases where litigants who filed 23, 18, and 13 lawsuits respectively based on the same set of fact were declared vexatious); *Crear v. JPMorgan Chase Bank, NA*, 491 F. Supp. 3d 207, 219 (N.D. Tex. 2020) (finding that sanctions were unwarranted after a *pro se* plaintiff filed six lawsuits challenging foreclosure because the plaintiff had not previously been warned and the defendant's claims lacked merit)"); *Walters v. Tenant Background Search*, 2019 WL 4849204 at *5 (W.D. Tex. Sept. 30, 2019) (stating standard that "[t]he Supreme Court has stated that "because of their very potency, inherent powers [to declare a litigant vexatious] must be exercised with restraint and discretion" and citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

27.     Courts recognize that "the threshold for the use of inherent power sanctions is high," and there must be "bad faith" before the court may use its inherent powers to impose sanctions. *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)")"; *Baldwin v. Zurich American Ins. Co*., 2019 WL 7759520 at *3 (W.D. Tex. July 12, 2019) (declining to issue a vexatious litigant injunction despite several filings in state and federal court on same dismissed claims because "[t]he Fifth Circuit has noted that the threshold for the use of inherent powers [as with vexatious litigants] is high" and the United States Supreme Court has also stated that such use of "inherent powers should be used with restraint and discretion"); *see also Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (reversing sanctions and citing same standard).

28.     In determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions. *Cromer v. Kraft Foods N. Am., Inc.,* 390 F.3d 812, 818 (4th Cir.2004.) Here, applying this four-part test, HCM's Motion falls flat on its face.

29.     First, HMIT never engaged in a history of litigation, and has not been involved in repetitive, duplicative claims. HCM's Motion fails to demonstrate otherwise.

30.     Second, there should be no credible doubt HMIT, as a significant stakeholder, had a good faith basis to seek discovery in the state court Rule 202 Petition to investigate wrongdoing, on behalf of itself and the Reorganized Debtor. HMIT's subsequent Motion for Leave was hardly

filed in bad faith; its good faith is amply demonstrated by its compliance with the Gatekeeper Orders.

31.     Third, the record is clear that there is no evidence that this court or any other has been burdened by HMIT's limited number of filings and full compliance with the current Gatekeeper Orders. Simply put, HCM's Motion fails to present any evidence that HMIT has created an intolerable burden to warrant the relief requested.

32.     Fourth, it is clear that HCM's requested relief – an injunction – is not necessary. HMIT exhibited good faith by fully complying with the Bankruptcy Court's Gatekeeper Order and the related injunction in the Plan on at least two prior occasions. By doing so, HMIT's conduct is compelling proof of its good faith and commitment to comply with the injunction already in place. No further injunction is needed or justified.

## B.     No Privity of Interests

33.     HCM's Motion attempts to bunch HMIT with the so-called "Dondero Entities" despite no evidence of control or privity. In determining whether parties are in privity, the Court considers the interests of the parties and "if they share an identity of interests in the basic legal right that is the subject of the litigation." *Pease v. Principal Residential Mortg., Inc.*, No. 03-02-00491-CV, 2004 WL 1065639, at *3 (Tex. App.—Austin May 13, 2004, no pet.), *see also, Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

34.     HMIT's interests are unique. It was the 99.5% limited partner in the Debtor. It is now a Class 10 stakeholder entitled to proceeds upon the liquidation of the Estate. Indeed, there is evidence HMIT is already "in the money" and should be properly seen as a fully vested creditor. Its financial interests and standing are unique. Again, HCM's Motion is devoid of any factual evidence that HMIT is controlled by Mr. Dondero or any other purported "Dondero Entity."

16

## C.     No Evidence of Coordinated Effort

35.     HCM does not cite any authority for the notion that "acting in concert or coordinated effort" can support sanctions against a party that is not otherwise a vexatious litigant. HCM also does not cite any evidence that HMIT actually acted in concert with others to bring a derivative action on behalf of the Estate, to protect the interests of the Estate, to protect the interests of other unsecured creditors and to protect its own significant stake.

36.     The cases cited in the Motion[43] for the proposition that the court may enjoin parties "in front of the court and those under such parties' control or that act in concert with them" are readily distinguishable. *See In re Carroll*, No. 08-10756, 2016 WL 1084287, (Bankr. M.D. La. Mar. 17, 2016), *aff'd*, 2016 WL 4127768 (M.D. La. Aug. 2, 2016), *aff'd*, 850 F.3d 811 (5th Cir. 2017) (involving debtors and their adult daughters); *Clark v. Mortenson*, 93 F. App'x. 643 (5th Cir. 2004) (malicious litigation brought by husband and wife investors whose conduct "included lying to the district court, failing to answer the district court judge's direct questions, the unauthorized practice of law (Sheldon Baum), and admitting that the complaint was frivolous" and was in violation of a prior injunction); *Staten v. Harrison Cnty.*, 2021 US App. LEXIS 35747 (5th Cir. Dec. 3, 2021) (enjoining *pro se* litigant for bringing claims in violation of Article III standing, but also noting that a "prefiling injunction should be tailored to protect the courts and to preserve the litigant's legitimate right to present nonfrivolous claims"); *Alliance Riggers & Constr., Ltd. v. Restrepo*, 2015 US Dist. LEXIS 29346 (W.D. Tex. Jan. 7, 2015) (husband and wife d/b/a RDI Global Services and R&D International who attempted to proceed *in forma pauperis* enjoined from bringing claim where court lacked subject matter jurisdiction and citing

---

[43] Motion at pp. 29-31.

*Williams v. McKeithen*, 939 F.2d 1100 (5th Cir. 1991), which found no injunction was warranted without adequate notice and hearing).

37.     HCM relies on *Carroll* by regurgitating buzzwords out-of-context, yet HCM ignores the fact that the parties and facts are inapposite. In *Carroll*, the objectionable behavior included a "legion" of "frivolous filings" over the course of fifteen years, and the Carrolls were sanctioned, held in contempt, and failed to pay monetary sanctions required by the Court's order.[44] In contrast, HMIT has never been held in contempt; HMIT has abided by the Court's Gatekeeper provisions and HMIT was never properly joined as a party to these proceedings.

38.     Neither *Carroll*, nor any other authority supports a court's ability to enjoin nonparties who have not acted in concert with or in control of vexatious litigants in the proceeding, or have not violated an already issued order in the proceeding. Simply put, HMIT is not a party to these proceedings and has nothing to do with the underlying claims in those proceedings. It would be wholly inappropriate and unnecessary for the Court to "reach out" against nonparties, such as HMIT.

**D.     No Evidence that Additional Sanctions are Proper**

39.     There are no allegations that the current Gatekeeping Orders are inadequate. The Bankruptcy Court's "gatekeeping" orders, as well as the injunction and exculpation provisions in the Plan, already provide a significant gatekeeping function related to administration of the Estate and the Reorganized Debtor. HMIT has fully complied with the existing Gatekeeping Orders and asserted its rights within the Bankruptcy Court's guidelines. Yet, HCM is now criticizing HMIT for complying with the existing Gatekeeping Orders, seeking to impose an additional,

---

[44] *See In re Carroll*, No. 08-10756, 2016 WL 1084287, at *5-27 (Bankr. M.D. La. Mar. 17, 2016), *aff'd*, *Carroll v. Abide*, 2016 WL 4127768 (M.D. La. Aug. 2, 2016), *aff'd*, 850 F.3d 811 (5th Cir. 2017).

unnecessary and burdensome restrictions to apparently prevent HMIT from protecting its rights and participating in legitimate, good faith proceedings.

40.     HCM's proposed injunction also is impermissibly overbroad and not supported by relevant caselaw. HCM provides no case authority supporting the excessive requirements in the requested injunction which are far removed from appropriate standards of plausibility, and are calculated to chill, if not prevent, access to the courts and depriving HMIT of basic due process. Also, the Motion's definition of the "Dondero Entities" is fatally vague because the definition including "any entity directly or indirectly controlled by or acting in concert with Dondero" is unlimited due to its lack of precision. HCM's Motion also presents no factual basis to support such a broad, defective, overreaching, and unlimited sanction.

41.     Furthermore, any attempt to impose the requirements of a new injunction, layered on top of already existing Gatekeeper Orders, creates needless redundancy and expense. To have access to the courts in a new lawsuit would require two motions, two hearings, generating unnecessary duplication and burdens on two courts. Especially when coupled with the existing Gatekeeper procedures, the additional procedures sought in HCM's Motion at ¶32 would create procedural and substantive hurdles so high that they would deprive HMIT of the ability to seek redress and access to the courts.  HMIT's access to the Courts is a basic right that is entitled to protection.

42.     Here, given that there is sufficient value in the HCM Estate to pay off all Class 8 and 9 Claimholders, the residual estate value should go to HMIT as the Class 10 claim holder.[45]  It would be remarkable if HCM's Motion were granted, permitting the fiduciaries holding funds

---

[45] *See* Bankr. Dkt. 3872 at p.5, Case No. 21-03076 Hrg. Trans. Apr. 12, 2023 at 21:22 – 22:11 (when challenged about the Estate's solvency, HCM's counsel stated it depended on "what the indemnification obligations will be going forward," *i.e.*, what will be paid by HCM to its own professionals).

(the Claimant Trust, and James Seery, as Trustee) almost complete immunity from claims by HMIT, the party to whose funds they are holding. "[A] fiduciary may have financial interests adverse to beneficiaries, but under trust law a trustee 'is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 – 295 (5th Cir. 2000).  The requested relief not only would give HCM the incentive, but the perfect tool, to continue to take as much as possible in expenses before permitting HMIT a distribution of any remaining residual. This turns trust law on its head, giving all power to the fiduciary while depriving the beneficiary of any redress.

### E.     Deference to the Honorable Judge Brown

43.     HCM filed its Motion before the Bankruptcy Court filed its 108-page opinion denying HMIT's Motion for Leave. As such, HCM's Motion was filed before HMIT filed its Notice of Appeal and its Statement of Issues.

44.     The appeal to Judge Brown, which was properly and timely lodged, involves complex legal issues and procedural issues. HCM's current Motion, which seeks to brand the Motion for Leave as vexatious before HMIT's appeal is fully considered, effectively seeks to undermine the merits of HMIT's appeal. This should not be allowed.

45.     "We do not retreat from the notion that one district court judge, whether as a matter of respect and institutional orderliness, if not jurisdiction, should shy from involvement in a case proceeding before another Article III judge." *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 251 (5th Cir. 2006) (citing *In re McBryde*, 117 F.3d 208, 225 (5th Cir.1997); *Dhalluin v. McKibben*, 682 F. Supp. 1096, 1097 (D.Nev.1988) ("[T]he structure of the federal courts does not allow one judge of a district court to rule directly on the legality of another district judge's judicial acts or to deny another district judge his or her lawful jurisdiction.").

## V.   <u>CONCLUSION AND PRAYER</u>

By this Response, Hunter Mountain Investment Trust has established that HCM's Motion is not well taken and should be denied in its entirety.

HCM's Motion carelessly slings accusations at HMIT that are factually unsupported; it also misapplies the law and ignores the four-part test that this Court must follow. The Motion also seeks to interfere with an existing appeal before a sister United States District Court; and it generally falls short of HCM's factual and legal burdens.

The requested injunction is also defective, overreaching, needless and calculated to chill HMIT's rights of access to the courts.

To the extent the Court does not summarily deny the Motion, then HMIT requests a full evidentiary hearing preceded by full discovery.

WHEREFORE, PREMISES CONSIDERED, HMIT requests that the Court deny HCM's Motion in its entirety; and grant all such other and further relief to which HMIT may be justly entitled.

Dated: December  15, 2023

Respectfully Submitted,
PARSONS MCENTIRE MCCLEARY PLLC

By: */s/ Sawnie A. McEntire*
    Sawnie A. McEntire
    Texas State Bar No. 13590100
    smcentire@pmmlaw.com
    1700 Pacific Avenue, Suite 4400
    Dallas, Texas 75201
    Telephone: (214) 237-4300
    Facsimile: (214) 237-4340

    Roger L. McCleary
    Texas State Bar No. 13393700
    rmcleary@pmmlaw.com
    One Riverway, Suite 1800
    Houston, Texas 77056
    Telephone: (713) 960-7315

Facsimile: (713) 960-7347

**_Attorneys for Hunter Mountain Investment_**
**_Trust_**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 15, 2023, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof.

_/s/ Sawnie A. McEntire_
Sawnie A. McEntire