# HMIT Exhibit 2

HMIT Appx. 00389

Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347
*Attorneys for Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL** | § | **Chapter 11** |
| **MANAGEMENT, L.P.** | § | |
| | § | **Case No. 19-34054-sgj11** |
| **Debtor.** | § | |

## HUNTER MOUNTAIN INVESTMENT TRUST'S
## SUPPLEMENT TO EMERGENCY MOTION FOR LEAVE TO FILE
## <u>VERIFIED ADVERSARY PROCEEDING</u>

Hunter Mountain Investment Trust ("<u>HMIT</u>"), Movant, files this Supplement to

Emergency Motion for Leave to File Verified Adversary Proceeding (the "<u>Supplement</u>"),

both in its individual capacity and on behalf of the Reorganized Debtor, Highland Capital

Management, L.P. ("<u>HCM</u>" or "<u>Reorganized Debtor</u>") and the Highland Claimant Trust

("Claimant Trust") (the Reorganized Debtor and Claimant Trust are collectively the "Highland Parties") against Muck Holdings, LLC ("Muck"), Jessup Holdings LLC ("Jessup"), Farallon Capital Management, L.L.C. ("Farallon"), Stonehill Capital Management LLC ("Stonehill"), James P. Seery, Jr. ("Seery") and John Doe Defendants Nos. 1-10 (Muck, Jessup, Stonehill, Farallon, Seery and the John Doe Defendants Nos. 11-10 are collectively "Respondents" or "Proposed Defendants").[1]

## OVERVIEW

1.      This Supplement is not intended to amend or supersede the Emergency Motion for Leave to File Verified Adversary Proceeding (Doc. 3699) ("Emergency Motion for Leave"); rather, it is intended as a supplement to address procedural matters and to bring forth additional facts that further confirm the appropriateness of the derivative action.

2.      Recent events make clear that (1) Seery, as Trustee, has a conflict of interest which precludes him from bringing the proposed claims; and (2) Seery, as Trustee, has abandoned and actively attempted to avoid a merits-based determination of the proposed claims. These facts are set forth in a revised Adversary Complaint attached to this Supplement as Exhibit 1-A.

---

[1] All capitalized terms not otherwise defined herein have the meaning ascribed to them in HMIT's Emergency Motion for Leave.

HMIT Appx. 00391

3.    The revised Adversary Complaint also re-postures the Highland Parties as nominal defendants to address any procedural issues. Although the Court may authorize HMIT to bring the derivative action on behalf of the Highland Parties as Plaintiffs, their joinder as nominal defendants is also a recognized pleading practice. This recharacterization *does not change* the substance of the derivative action, which remains for the benefit of the Highland Parties.

4.    Additional factual allegations are set forth in the revised Adversary Complaint. These additional allegations do not alter the substantive nature of the proposed causes of actions.

5.    This Supplement is timely. The hearing will be scheduled no earlier than May 18, 2023. As such, the Respondents have at least 25 days from the filing of this Supplement before any scheduled hearing.

## RECENT EVENTS RELATED TO EMERGENCY MOTION FOR LEAVE

6.    On March 28, 2023, HMIT filed its Emergency Motion for Leave, seeking leave to represent the Highland Parties in a derivative capacity and seeking damages and other relief on behalf of itself, individually, as well as on behalf of the Reorganized Debtor and the Claimant Trust.

7.    HMIT also filed its Application for Expedited Hearing on its Emergency Motion for Leave ("Application") seeking a hearing prior to April 16, 2022. In its Application, HMIT presented what it believed was good cause under Rule 9006 of the

HMIT Appx. 00392

Federal Rules of Bankruptcy Procedure to authorize a shortened time for a response and

hearing.

8.      On March 30, 2023, the so-called "Highland Parties," which then also

included Seery (Doc. 3707), and separately, Muck, Jessup, Farallon, and Stonehill (Doc.

3704), filed their Objections to the Application. One of the arguments advanced in these

Objections by counsel for the "Highland Parties" was that the Court should delay a ruling

on HMIT's Application so Seery and other parties could develop a potential statute of

limitations defense.

9.      Regarding the proposed claims, Seery attempted to avoid the claims to

protect his own self-interest *at the expense of* the Highland Parties and HMIT. Seery

unilaterally characterized the Highland Parties as the "Highland Defendants" and

claimed they were opposed to HMIT's Emergency Motion for Leave. To be clear, HMIT

seeks to assert its proposed claims *on behalf of* the Highland Parties, *not against* them.

10.     Because recent events clearly establish HMIT's capacity and standing to

bring its derivative claims, a revised Adversary Complaint is attached hereto as **Exhibit

1-A**. In addition to new factual allegations, the revised Adversary Complaint also

includes allegations regarding fraudulent concealment and the discovery rule because

**HMIT Appx. 00393**

these recent events make clear that the Proposed Defendants seek to fabricate a
limitations argument which otherwise would not exist.

<u>ARGUMENTS & AUTHORITIES</u>

11.    Seery has known about HMIT's proposed claims for some time, yet, as
Claimant Trustee with a duty to protect the Estate, Seery has made no attempt to
prosecute these claims, is possessed of a debilitating conflict of interest and, in fact, has
urged this Court to weaponize the gatekeeping protocol to make certain he and the other
defendants can better take advantage of a purported statute of limitations defense. *See*
Motion, n. 14. (Doc. 3707, ¶¶ 6, 17). Seery has opposed the Emergency Motion for Leave
to advance his personal self-interest. Aware that "[t]he Plan does not release . . . Causes
of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross
negligence," Seery is clearly seeking other means by which to insulate himself.

12.    Seery's recent conduct confirms he is disqualified to bring the Proposed
Claims due to his manifest conflict of interest. His recent actions are to the detriment of
the Highland Parties and HMIT, making it all the more necessary for the Court to grant
HMIT leave to bring the proposed claims. *See Louisiana World Exposition v. Fed. Ins. Co.*,
858 F.2d 233, 252-53 (5th Cir. 1988) (granting leave to creditors' committee to bring breach
of fiduciary duty claim against bankruptcy estate's officers and directors for
mismanagement of the bankruptcy estate due to debtor-in-possession's incapacity to do
so due to apparent conflict of interest).

HMIT Appx. 00394

13.    In *Louisiana World Expedition*, the Fifth Circuit explained: "In light of our analysis, we find that the debtor-in-possession's refusal to pursue LWE's cause of action against its officers and directors for negligent management was indeed unjustified. The Committee outlined a colorable claim which, if pursued successfully, could have greatly increased the value of the estate. While the debtor-in-possession's refusal was understandable given the grave conflict of interest implications, we cannot ignore the fact that the creditors' interests in seeing the property of the estate collected were not protected. Where the interests of an estate and its creditors are impaired by the refusal of a trustee or a debtor-in-possession to initiate adversary proceedings to recover property of the estate, we must consider that refusal unjustified." *Id*. at 252.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Hunter Mountain Investment Trust respectfully requests this Court:

1.  grant HMIT leave authorizing it to file the Adversary Complaint, attached as Exhibit 1-A, as an Adversary Proceeding in this United States Bankruptcy Court for the Northern District of Texas, in its own name and as a derivative action on behalf of the Debtor Highland Capital Management, L.P. and the Highland Claimant Trust, against Muck Holdings, LLC, Jessup Holdings, LLC, Farallon Capital Management, LLC, Stonehill Capital Management, LLC, James P. Seery, Jr., and John Doe Defendants Nos. 1 – 10 (and against Highland Capital Management, L.P. and the Highland Claimant Trust as nominal defendants to the extent necessary); and

2.  further grant HMIT all such other and further relief to which HMIT may be justly entitled.

[6]

Dated: April 23, 2023

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY
PLLC**

By:  */s/ Sawnie A. McEntire*
Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain
Investment Trust*

HMIT Appx. 00396

## CERTIFICATE OF CONFERENCE

On April 21, 2023,  Hunter Mountain Investment Trust's counsel conferred by telephone, via email, or both with counsel for all Respondents regarding the relief requested in this filing, including John A. Morris, who purports to be representing and acting on behalf of the Reorganized Debtor and the Highland Claimant Trust, Josh Levy and Lindsay Robin on behalf of James P. Seery, and David Schulte on behalf of Muck Holdings, LLC, Jessup Holdings LLC, Stonehill Capital Management LLC, and Farallon Capital Management, L.L.C.  Mr. Morris indicated it can be assumed his clients are opposed until he reviews this filed instrument.  Mr. Levy and Mr. Schulte indicated that their respective clients are neither opposed nor agreed until their counsel has reviewed the contents of this filing.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire


## CERTIFICATE OF SERVICE

I certify that on the 23rd day of April 2023, a true and correct copy of the foregoing Motion was served on all counsel of record or, as appropriate, on the Respondents directly.

*/s/ Sawnie A. McEntire*
Sawnie A. McEntire

HMIT Appx. 00397

## <u>Exhibit 1-A to Emergency Motion</u>

Sawnie A. McEntire

Texas State Bar No. 13590100

smcentire@pmmlaw.com

1700 Pacific Avenue, Suite 4400

Dallas, Texas 75201

Telephone: (214) 237-4300

Facsimile: (214) 237-4340

Roger L. McCleary

Texas State Bar No. 13393700

rmccleary@pmmlaw.com

One Riverway, Suite 1800

Houston, Texas 77056

Telephone: (713) 960-7315

Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL** | § | |
| **MANAGEMENT, L.P.** | § | **Case No. 19-34054-sgj11** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |
| **HUNTER MOUNTAIN INVESTMENT** | § | |
| **TRUST, INDIVIDUALLY, AND ON** | § | |
| **BEHALF OF THE DEBTOR** | § | |
| **HIGHLAND CAPITAL** | § | |
| **MANAGEMENT, L.P., AND THE** | § | **Adversary Proceeding No. _____** |
| **HIGHLAND CLAIMANT TRUST** | § | |
| | § | |
| **PLAINTIFFS,** | § | |

**HMIT Appx. 00398**

|  | § |  |
| --- | --- | --- |
| **v.** | § |  |
|  | § |  |
| **MUCK HOLDINGS, LLC, JESSUP** | § |  |
| **HOLDINGS LLC, FARALLON** | § |  |
| **CAPITAL MANAGEMENT, L.L.C.,** | § |  |
| **STONEHILL CAPITAL** | § |  |
| **MANAGEMENT LLC, JAMES P.** | § |  |
| **SEERY, JR., JOHN DOE** | § |  |
| **DEFENDANTS NOS. 1-10,** | § |  |
|  | § |  |
| **DEFENDANTS** | § |  |
|  | § |  |
| **and** | § |  |
|  | § |  |
| **HIGHLAND CAPITAL** | § |  |
| **MANAGEMENT, L.P., AND THE** | § |  |
| **HIGHLAND CLAIMANT TRUST,** | § |  |
|  | § |  |
| **NOMINAL DEFENDANTS.** | § |  |

## VERIFIED ADVERSARY COMPLAINT

Hunter Mountain Investment Trust ("HMIT") files this Verified Adversary
Complaint ("Complaint") in its individual capacity and as a derivative action on behalf
of the Reorganized Debtor, Highland Capital Management, L.P. ("HCM" or
"Reorganized Debtor"), and the Highland Claimant Trust ("Claimant Trust") (the
Claimant Trust and Reorganized Debtor are collectively referred to as "Nominal
Defendants"), (collectively the Nominal Defendants and HMIT, in its various capacities,
are referred to as "Plaintiffs") complaining of Muck Holdings, LLC ("Muck"), Jessup
Holdings LLC ("Jessup"), Farallon Capital Management, L.L.C. ("Farallon"), Stonehill

**HMIT Appx. 00399**

Capital Management LLC ("Stonehill"), James P. Seery, Jr., ("Seery"), and John Doe Defendants Nos. 1-10 (Muck, Jessup, Stonehill, Farallon, Seery, and the John Doe Defendants Nos. 1-10 are collectively "Defendants"), and would show:

## I. Introduction

**A.    _Preliminary Statement_**

1.    HMIT brings this Verified Adversary Complaint ("Complaint") on behalf of itself, individually, and as a derivative action benefitting and on behalf of the Reorganized Debtor and the Highland Claimant Trust, as defined in the Claimant Trust Agreement (Doc. 3521-5) ("CTA").[1] This action has become necessary because of the wrongful conduct of the Defendants, involving self-dealing, breaches of fiduciary duties, and aiding and abetting those breaches of duty.

2.    This lawsuit focuses on a scheme involving Seery and his close business associates and allies. Seery held command of the Debtor, Highland Capital Management, L.P., in a complex bankruptcy. The Debtor's business involved hundreds of millions of dollars in assets that were held by the Debtor's Estate in a variety of entities, managed funds, and other investments. It was not and still is not a narrowly focused business with

---

[1] Solely in the alternative, and in the unlikely event HMIT's proposed causes of actions against Seery, Stonehill, Farallon, Muck, and/or Jessup are considered to be "Estate Claims" as those terms are used and defined within the CTA and Exhibit A to the Notice of Final Term Sheet [Docket No. 354] in HCM's bankruptcy (and without admitting the same), HMIT alternatively seeks standing to bring this action as a derivative action on behalf of the Litigation Sub-Trust as appropriate. Any demand on the Litigation Sub-Trust would be equally futile for the same reasons addressed in HMIT's Emergency Motion for Leave (Doc. 3699).

the type of uncomplicated, transparent assets that almost any potential claim purchaser could meaningfully evaluate. Seery effectively enjoyed despotic control over how these assets were managed, sold, or monetized, and many of his activities were never subject to judicial scrutiny or accountability. Indeed, Seery failed to cause the Debtor to make the financial disclosures required in such proceedings.

3.      Thus, acting within a cloak of secrecy, Seery provided close business acquaintances, the other Defendants ("Defendant Purchasers"), with material non-public information concerning the value of assets which they then used to purchase the largest approved unsecured claims. The Defendant Purchasers paid well over a hundred million dollars to buy these claims without the kind of independent due diligence that would be reasonably expected, if not required, because of their own fiduciary duties to their investors. It made no sense for the Defendant Purchasers to invest millions of dollars for assets that – per the publicly available information – did not offer a sufficient potential profit to justify the publicly disclosed risk. The counter-intuitive nature of the purchases at issue compels the conclusion that the Defendant Purchasers acted on inside information and Seery's secret assurances of great profits. Indeed, based upon publicly available information, their investment was projected to yield a small return with virtually no margin for error. But as they must have anticipated, they have already recovered the purchase price ***and*** returns far greater than what was publicly projected,

with the expectation of significant more profits if not deterred. These facts fit classic insider trading activity.

4.    As part of the scheme, the Defendant Purchasers obtained a position to approve Seery's ongoing compensation - to Seery's benefit and also to the detriment of the Claimant Trust, the Reorganized Debtor, and HMIT. Initially, Seery's compensation package was composed of a flat monthly pay. Now, however, it is also performance based. This allows the Defendant Purchasers to satisfy the *quid pro quo* at the heart of the scheme. Seery would help the Defendant Purchasers make large profits and they would help enrich Seery with big pay days.

5.    To further advance their scheme, the Defendants have participated in the pursuit of contrived litigation against HMIT and others, through litigation sponsored by the Litigation Sub Trust. Upon information and belief, Seery also directed or authorized legal counsel for the Reorganized Debtor and Claimant Trust (who, tellingly, also represented Seery) to oppose HMIT's efforts to obtain leave to file this adversary proceeding. These obstructive tactics are self-serving, with the apparent goals of attempting to: (a) exhaust financial resources in an effort to delay recognition of the vesting of HMIT's interests under the terms of the CTA; (b) reduce the value of HMIT's interests under the CTA; and (c) deprive HMIT of claims relating to breaches of fiduciary duty stemming from the scheme. The Defendants and Litigation Sub Trust have used millions of dollars of assets to finance these obstructive tactics. Every dollar misapplied

by Defendants to further this scheme is damaging to HMIT, the Reorganized Debtor, and the Claimant Trust.

6.      This derivative action is brought pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and B. R. Rule 7023.1. At the time of the transactions at issue, HMIT held a 99.5% limited partnership in Highland Capital Management, L.P., the Original Debtor. This derivative action is not a collusive effort to confer jurisdiction that the Court would otherwise lack.

7.      This action also is brought subject to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) (Doc. 1943, Exhibit A) (the "Plan") Article IX.F. Consistent with such provisions, this action is **not** brought **against** the nominal party Reorganized Debtor or the nominal party Claimant Trust, but as a derivative action on their behalf and for their benefit.[2] Additionally, HMIT is a person or party aggrieved by the conduct of the Defendants and, therefore, HMIT has constitutional standing to bring this action.

**B.**      ***The Claimant Trust, the Derivative Action, the Futility of Further Demand, Abandonment of Claims, and Conflict of Interest***

8.      Upon the Effective Date, the assets of the bankruptcy estate of Highland Capital Management, L.P., as the Original Debtor (the "Debtor's Estate"), were transferred to the Highland Claimant Trust under the terms of the Plan, and as defined

---

[2] To the extent the Reorganized Debtor and the Claimant Trust are considered necessary parties for the purposes of this derivative action, they have been included as nominal defendants.

HMIT Appx. 00403

in the CTA. These assets include all "causes of action" that the Debtor's Estate had before the Effective Date including, without limitation, the causes of action set forth in this Adversary Proceeding. Furthermore, the Claimant Trust is also managed by the Claimant Trustee, Seery, who has self-servingly and falsely characterized the claims as allegedly meritless (Doc. 3707).

9.    Seery, as Claimant Trustee, breached his fiduciary duties and abandoned the current claims in this Adversary Complaint by objecting to HMIT's Emergency Motion for Leave to File this Adversary Complaint (Doc. 3699) and Application for Emergency Hearing (Doc. 3700). Seery is attempting to weaponize the gatekeeping protocols in the Plan to arm himself and others with potential defense arguments to avoid a merits-based determination of the claims against Seery and the other Defendants. In other words, Seery is attempting to protect his own self-interest *at the expense of* the Reorganized Debtor, the Claimant Trust, and HMIT. Therefore, any demand upon Seery to prosecute the claims in this Complaint would be futile because Seery is a Defendant.

10.    Similarly, the Oversight Board exercises supervision over Seery as Claimant Trustee, and Muck and Jessup are controlling members of the Oversight Board. Any demand upon Muck and Jessup to prosecute these claims would be equally futile because they also filed objections to the expedited prosecution of these or similar claims (falsely characterizing the claims as an alleged waste of judicial resources) (Doc. 3704). Upon

HMIT Appx. 00404

information and belief, Muck and Jessup are also controlled by Farallon and Stonehill, further evidencing the futility of any such demand on Muck and Jessup.

11.     All conditions precedent to bringing this derivative action have otherwise been satisfied or waived, and the Defendants are estopped from asserting otherwise. HMIT is an appropriate party to bring this action on behalf of the Reorganized Debtor and the Claimant Trust.

**C.     *Nature of the Action***

12.     The insider trading scheme was implemented after confirmation of the Plan, but before the Effective Date. Prior to the Effective Date, HMIT owned 99.5% of the limited partnership interest in the Debtor and was the beneficiary of fiduciary duties owed by Seery.

13.     Seery, the Original Debtor's Chief Executive Officer ("<u>CEO</u>") and former Chief Restructuring Officer ("<u>CRO</u>"), wrongfully facilitated and promoted the insider trades by providing material non-public information to Defendant Purchasers concerning the value of assets in the Debtor's Estate. Farallon and Stonehill, who were otherwise strangers to the bankruptcy proceedings, wrongfully purchased the claims through their special purpose entities, Muck and Jessup, based upon this inside information. Seery's dealings with the Defendant Purchasers were not arm's-length, but instead were covert, undisclosed, and collusive.

**HMIT Appx. 00405**

14.     Motivated by corporate greed, the Defendant Purchasers aided and abetted or, alternatively, knowingly participated in Seery's wrongful conduct. They also breached their own duties as "non-statutory insiders." Because of their long-standing, historical relationships with Seery, and their use of material non-public information, the Defendant Purchasers obtained effective control over various affairs of the Debtor's bankruptcy, including compensation awards to Seery. As such, they became non-statutory insiders.

15.     HMIT was formerly the largest equity holder in the Debtor, holding a 99.5% limited partnership interest. As part of the scheme, Seery is attempting to delay recognition of HMIT's vesting of its interests under the CTA. As an allowed Class 10 Class B/C Limited Partnership Interest and Contingent Trust Interest holder, HMIT's right to recover from the Claimant Trust would be junior to the Reorganized Debtor's unsecured creditors, now known as Claimant Trust Beneficiaries. However, the vast majority of the approved unsecured claims superior to HMIT's interest are those claims wrongfully acquired by the insider trading and the breaches of duty at issue in this proceeding.

16.     By wrongfully soliciting, fostering, and encouraging the wrongful insider trades at issue, Seery violated his fiduciary duties to the Debtor's Estate and to HMIT, including specifically his duty of loyalty and his duty to avoid self-dealing. But Seery was motivated out of self-interest to garner personal benefit by strategically "planting" his allies onto the Oversight Board which, as a consequence, does not act as an independent

board in the exercise of its responsibilities. Rather, imbued with powers to effectively control Seery's compensation, the Defendant Purchasers are postured to reward Seery for their illicit dealings and, upon information and belief, they have done so.

17.     By receiving and acting upon material non-public information concerning the financial condition of the Debtor's Estate, Stonehill and Farallon, acting individually and through special purpose shell entities they created and controlled, directly or indirectly, are also liable for aiding and abetting Seery's breaches of fiduciary duties. By acquiring the claims at issue, Muck and Jessup, the shell entities created and controlled by Stonehill and Farallon, also became non-statutory insiders, and also aided and abetted Seery's breaches of fiduciary duties.

18.     Because of their willful, inequitable misconduct and bad faith, Plaintiffs ask the Court to require the Defendant Purchasers to disgorge their ill-gotten profits and equitably disallow the remaining unpaid balances on the following allowed claims: Claim Nos. 23, 72, 81, 143, 147, 149, 150, 153, 154, 190, and 191 (the "Claims") currently held by Muck and Jessup. Because the Defendant Purchasers received substantial distributions from the Claimant Trust in connection with these Claims, HMIT seeks to disgorge from Defendant Purchasers all such distributions above the Defendant Purchasers' initial investment—compelling restitution of such funds to the Claimant Trust for the benefit of other creditors and former equity pursuant to the waterfall established under the Plan and the CTA. Plaintiffs also ask the Court to require Seery to

HMIT Appx. 00407

disgorge all compensation from the date his collusive conduct first occurred. Alternatively, Plaintiffs seek damages on behalf of the Claimant Trust in an amount equal to all compensation paid to Seery from the onset of his collusive conduct to present.

19.     By this Complaint, Plaintiffs do not seek to challenge the Plan or the Order confirming the Plan.

## II. <u>Jurisdiction and Venue</u>

20.     Pursuant to *Misc. Order No. 33 Order of Reference of Bankruptcy Cases, U.S. District Court for N.D. Texas* (the "Order of Reference"), this Complaint is commenced in the Bankruptcy Court because it is "related to a case under Title 11." The filing of this Complaint is expressly subject to and without waiver of Plaintiffs' rights and ability to seek withdrawal of the reference pursuant to 28 U.S.C. § 157(d), FED. R. BANKR. P. 5011, and Local Bankruptcy Rule 5011-1. Plaintiffs hereby demand a right to a trial by jury of all claims asserted herein and nothing in this Complaint, nor Plaintiffs' compliance with the Order of Reference, shall be deemed a waiver of this right. To the extent necessary, Plaintiffs seek to withdraw the reference at this time.

21.     This Court has jurisdiction of the subject matter and the parties as a "related to" proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a) and Articles IX.F., and XI. of the Plan.

22.     Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiffs do **not** consent to the entry of final orders or judgment by the bankruptcy court.

23.     Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409, and Articles IX.F., and XI. of the Plan.

### III. <u>Parties</u>

24.     HMIT is a Delaware statutory trust that was the largest equity holder in the Original Debtor, holding a 99.5% limited partnership interest. HMIT is also the holder of a Contingent Trust Interest in the Claimant Trust, but HMIT should be treated as a vested Claimant Trust Beneficiary due to Defendants' wrongful conduct and considering the current value of the Claimant Trust Assets before and after the relief requested herein. Due to Seery's abandonment of the claims asserted herein, and his patent conflict of interest, HMIT has constitutional standing and capacity to bring these claims both individually and derivatively.

25.     The Reorganized Debtor, Highland Capital Management, L.P., is a limited partnership formed under the laws of Delaware and may be served at its principal place of business address of 100 Crescent Court, Suite 1850, Dallas, Texas 75201. The Reorganized Debtor is a nominal defendant only, and a primary beneficiary of this lawsuit.

26.      Pursuant to the Plan and the CTA, the Claimant Trust holds the assets of the Reorganized Debtor, including the causes of action that accrued to the Debtor's Estate before the Effective Date. The Claimant Trust is established in accordance with the Delaware Statutory Trust Act and Treasury Regulatory Section 301.7701-4(d). The

HMIT Appx. 00409

Claimant Trust may be served at its Principal Office where the Claimant Trust is maintained: 100 Crescent Court, Suite 1850, Dallas, Texas 75201. The Claimant Trust is a nominal defendant only, and a primary beneficiary of this lawsuit.

27.    Muck is a Delaware limited liability company, with its principal office in California, and may be served with process at One Maritime Plaza, Suite 2100, San Francisco, CA 94111. Muck has made prior appearances in the Debtor's bankruptcy.

28.    Jessup is a Delaware limited liability company, with its principal office in New York, and may be served with process via its registered agent, Vcorp Services, LLC, at 108 W. 13th Street Suite 100, Wilmington, Delaware 19801. Jessup has made prior appearances in the Debtor's bankruptcy.

29.    Farallon is a Delaware limited liability company, with its principal office in California, and may be served with process at One Maritime Plaza, Suite 2100, San Francisco, CA 94111. Farallon is a capital management company that manages hedge funds and is a registered investment advisor. This Court has personal jurisdiction over Farallon because Farallon's conduct giving rise to or relating to the claims in this Adversary Proceeding occurred in Texas, thereby satisfying all minimum contacts requirements and due process considerations.

30.    Stonehill is a Delaware limited liability company, with its principal office in New York, and may be served with process at 320 Park Avenue, 26th Floor, New York, NY 10022. Stonehill is a capital management company managing hedge funds and is a

registered investment advisor. This Court has personal jurisdiction over Stonehill because Stonehill's conduct giving rise to or relating to the claims in this Adversary Proceeding occurred in Texas, thereby satisfying all minimum contacts and all due process considerations.

31.     Seery is an individual citizen and resident of the State of New York. Mr. Seery may be served with process at 100 Crescent Court, Suite 1805, Dallas, Texas 75201.

32.     HMIT separately seeks recovery against John Doe Defendants Nos. 1-10. Farallon has actively concealed the precise legal relationship between itself and Muck. Stonehill also actively concealed the precise legal relationship between itself and Jessup. What is known, however, is that Farallon and Stonehill created these special purpose shell entities, on the eve of the insider trades to acquire ownership of the Claims and to otherwise control the affairs of the Oversight Board. Both Farallon and Stonehill rejected inquiries concerning the exact nature of their relationship with these special purpose entities. Accordingly, HMIT seeks equitable tolling of any statute of limitations concerning claims against unknown business entities or individuals that Farallon and Stonehill may have created and inserted as intermediate corporate layers in the transactions at issue. John Doe Defendants Nos. 1-10 are currently unknown individuals or business entities who may be identified in discovery as involved in the wrongful transactions at issue.

HMIT Appx. 00411

## IV. <u>Facts</u>

### A.   *Procedural Background*

33.     On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in Delaware Bankruptcy Court,[3] which was later transferred to the Northern District of Texas Bankruptcy Court, Dallas Division, on December 4, 2019.[4]

34.     On October 29, 2019, the U.S. Trustee's office appointed a four-member Unsecured Creditors Committee ("<u>UCC</u>") consisting of three judgment creditors—the Redeemer Committee of the Highland Crusader Fund ("<u>Redeemer</u>"); Acis Capital Management, L.P., and Acis Capital Management GP, LLC (collectively "<u>Acis</u>"); and UBS Securities LLC and UBS AG London Branch (collectively "<u>UBS</u>")—and an unpaid vendor, Meta-E Discovery.

35.     Following the venue transfer to Texas on December 27, 2019, the Debtor filed its *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the*

---

[3] Doc. 3. Unless otherwise referenced, all documents referencing "Doc." refer to the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

[4] Doc. 1.

HMIT Appx. 00412

*Ordinary Course* ("Governance Motion").[5] On January 9, 2020, the Court signed a

Governance Order granting the Governance Motion.[6]

36.     As part of the Governance Order, an independent board of directors—

which included Seery as one of the selections of the Unsecured Creditors Committee—

was appointed to the Board of Directors (the "Board") of Strand, the Original Debtor's

general partner. The Board then appointed Seery as the Chief Executive Officer in place

of the previous CEO, Mr. James Dondero, as well as the CRO.[7] Seery currently serves as

Trustee of the Claimant Trust under the terms of the CTA and as CEO of the Reorganized

Debtor.[8]

### B.     *The Targeted Claims*

37.     In his capacity as the Original Debtor's CEO and CRO, Seery negotiated

and obtained court approval for settlements with several large unsecured creditors

including Redeemer, Acis, UBS, and another major unsecured creditor, HarbourVest

(Redeemer, Acis, UBS, and HarbourVest are collectively the "Settling Parties"), resulting

in the following allowed Claims:

| Creditor | Class 8 | Class 9 |
|----------|---------|---------|
| Redeemer | $137 mm | $0 mm |
| Acis | $23 mm | $0 mm |
| HarbourVest | $45 mm | $35 mm |

---

[5] Doc. 281.

[6] Doc. 339.

[7] Doc. 854, Order Approving Retention of Seery as CEO/CRO.

[8] *See* Doc. 1943, Order Approving Plan, p. 34.

HMIT Appx. 00413

| UBS | $65 mm | $60 mm |
|---|---|---|
| **(Totals)** | $270 mm | $95 mm |

As reflected in these settlements, HarbourVest and UBS owned Class 9 claims in addition to Class 8 claims. Class 9 claims were subordinated to Class 8 claims in the distribution waterfall in the Plan.

38.     Each of the Settling Parties sold their Claims to Farallon and Stonehill (or affiliated special purpose entities) shortly after receiving court approval of the settlements. One of these "trades" took place within just a few weeks before the Plan's Effective Date.[9] All of these trades occurred when HMIT held its 99.5% equity stake in the Debtor. Notice of these trades was first provided in filings in the records of the Original Debtor's bankruptcy proceedings, as follows: Claim No. 23 (Doc. 2211, 2212, and 2215), Claim Nos. 190 and 191 (Doc. 2697 and 2698), Claim Nos. 143, 147, 149, 150, 153 and 154 (Doc. 2263), Claim No. 81 (Doc. 2262), Claim No. 72 (Doc. 2261).

39.     Farallon and Stonehill, both of whom are registered investment advisors that manage hedge funds, are acutely aware that they owe fiduciary duties to their investors. Yet, they both invested many tens of millions of dollars, directly or indirectly, to acquire the Claims in the absence of any publicly available information that could provide any economic justification for their investment decisions.

---

[9] Docs. 2697, 2698.

HMIT Appx. 00414

40.     Upon information and belief, Stonehill and Farallon collectively invested an estimated amount exceeding $160 million to acquire the Claims with a face amount of $365 million, but a far lower publicly projected value at the time, and they did so in the absence of any meaningful due diligence. Indeed, Farallon has admitted that it conducted no due diligence but relied on Seery's profit guarantees.

41.     The Defendant Purchasers' investments become even more suspicious because the Debtor, through Seery, provided the ***only*** publicly available information which, at the time, included pessimistic projections that certain of the Claims would receive partial payment, while the subordinated class of Claims would receive no distribution:

a.  From October 2019, when the original Chapter 11 Petition was filed, to January 2021, just before the Plan was confirmed, the projected value of HCM's assets dropped over $200 million from $566 million to $364 million.[10]

b.  HCM's Disclosure Statement publicly projected payment of only 71.32% of Class 8 claims, and 0% of claims in Classes 9-11.[11]

o  This meant that the Defendant Purchasers invested more than an estimated $160 million in the Claims when the publicly available information indicated they would receive $0 in return on their investment as Class 9 creditors and substantially less than par value on their Class 8 Claims. At best, the Defendant Purchasers would receive a marginal return that could not justify the risk.

---

[10] Doc. 1473, Disclosure Statement, p. 18.

[11] Doc. 1875-1, Plan Supplement, Ex. A, p. 4.

HMIT Appx. 00415

    c. Despite the stark decline in the value of the Debtor's Estate and in the midst of substantial reductions in the percentage of Class 8 Claims expected to be satisfied, Stonehill, through Jessup, and Farallon, through Muck, nevertheless purchased the four largest bankruptcy claims from the Redeemer Committee/Crusader Fund, Acis, HarbourVest, and UBS (collectively, again, the "Claims") in April and August of 2021 in the combined estimated amount of at least $163 million.[12]

42.    Upon information and belief, Stonehill, through its special purpose entity, Jessup, acquired the Redeemer Committee's claim for $78 million.[13] Upon information and belief, the $23 million Acis claim[14] was sold to Farallon/Muck for $8 million. Upon information and belief, HarbourVest sold its combined $80 million in claims to Farallon/Muck for $27 million. UBS sold its combined $125 million in claims for $50 million to both Stonehill/Jessup and Farallon/Muck. In the instance of UBS, ***the total projected payout was only $35 million***. Indeed, as part of these transactions, both Farallon and Stonehill purchased Class 9 Claims at a time when the Debtor's Estate projected a zero dollar return on all such Claims.

43.    Furthermore, although the publicly available projections suggested only a small margin of error on any profit potential for its significant investment, Farallon, upon information and belief, indicated it would refuse to sell its stake in the Claims for a 40%

---

[12] Notices of Transfers [Docs. 2212, 2215, 2261, 2262, 2263, 2215, 2297, 2298]. The Acis claim was transferred on April 16, 2021; the Redeemer, Crusader, and HarbourVest claims were transferred on April 30, 2021; and the UBS claims were transferred on August 9, 2021.

[13] July 6, 2021, letter from Alvarez & Marsal CRF Management, LLC to Highland Crusader Funds Stakeholders.

[14] Seery/HCM have argued that $10 million of the Acis claim is self-funding.

HMIT Appx. 00416

premium or more above its investment—claiming that its stake was far more valuable
based upon Seery's assurances. This is a striking admission that Farallon had and used
material non-public inside information.

**C.    *Material Non-Public Information is Disclosed to Seery's Affiliates at
Stonehill and Farallon***

44.    One of many significant assets of the Debtor's Estate was the Debtor's direct
and indirect holdings in Metro-Goldwyn-Mayer Studios, Inc. ("<u>MGM</u>").[15]

45.    On December 17, 2020, James Dondero sent an email to Seery. At that time,
Dondero was a member of the MGM board, and the email contained material non-public
information regarding Amazon and Apple's interest in acquiring MGM.[16] Of course, any
such sale would significantly enhance the value of the Debtor's Estate.

46.    Upon receipt of this material non-public information, Seery should have
halted all transactions involving MGM stock, yet just six days later Seery filed a motion
in the Bankruptcy Court seeking approval of the Debtor's settlement with HarbourVest -
resulting in a transfer to the Debtor's Estate of HarbourVest's interest in a Debtor-advised
fund, Highland CLO Funding, Ltd. ("<u>HCLOF</u>"), which held substantial MGM debt and
equity.[17] Conspicuously, the HCLOF interest was not transferred to the Debtor's Estate
for distribution as part of the bankruptcy estate, but rather to "to an entity to be

---

[15] *See* Doc. 2229, p. 6.

[16] *See* Adversary Case No. 20-3190-sgj11, Doc. 150-1, p. 1674.

[17] Doc. 1625. Approximately 19.1% of HCLOF's assets were comprised of debt and equity in MGM.

designated by the Debtor"—*i.e.*, one that was not subject to typical bankruptcy reporting requirements.[18]

47.     Upon information and belief, aware that the Debtor's stake in MGM afforded a new profit center, Seery saw this and the value of other assets as an opportunity to increase his own compensation. He then enlisted the help of Stonehill and Farallon to extract further value from the Debtor's Estate. This *quid pro quo* included, at a minimum, an understanding that Seery would be well-compensated for the scheme once the Defendant Purchasers, acting through Muck and Jessup, obtained control of the Oversight Board following the Effective Date.

48.     Until 2009, Seery was the Global Head of Fixed Income Loans at Lehman Brothers[19] where, upon information and belief, he conducted substantial business with Farallon. Following the collapse of Lehman Brothers, Seery continued to work with, and indeed represented Farallon as its legal counsel. Seery ultimately joined a hedge fund, River Birch Capital,[20] which, along with Stonehill, served on the creditors committee in other bankruptcy proceedings. GCM Grovesnor, a global asset management firm, held four seats on the Redeemer Committee[21] and, upon information and belief, is a significant investor in Stonehill and Farallon. Grovesnor, through Redeemer, played a large part in

---

[18] Doc. 1625.

[19] Seery Resume [Doc. 281-2].

[20] *Id*.

[21] Declaration of John A. Morris [Doc. 1090], Ex. 1, pp. 15.

HMIT Appx. 00418

appointing Seery as a director of Strand Advisors. Seery was beholden to Grovesnor from the outset, and, by extension, Grovesnor's affiliates Stonehill and Farallon.

49.    As successful capital management firms, with advisory and fiduciary duties to their own clients, Stonehill and Farallon typically engage in robust due diligence before making significant investments. Yet, in this case, it would have been *impossible* for Stonehill and Farallon (in the absence of inside information) to forecast *any* significant profit at the time of their multi-million-dollar investments given the publicly available, negative financial information.

50.    Seery shared with Stonehill and Farallon material *non-public* information concerning certain assets of the Debtor's Estate. Otherwise, it makes no sense that the Defendant Purchasers would have made their multi-million-dollar investments under these circumstances.

51.    Fed. R. Bank. P. 2015.3(a) requires "periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or debtor . . . in which the estate holds a substantial of controlling interest." The purpose of Rule 2015.3 is "to assist parties in interest taking steps to ensure that the debtor's interest in any entity . . . is used for payment of allowed claims against the debtor." Pub. L. 109-8 § 419(b) (2005). However, these reports were not provided, thereby giving the Defendant Purchasers the added benefit of being insiders having access to information that was not made publicly available to other stakeholders.

HMIT Appx. 00419

52.     When questioned at the confirmation hearing regarding the failure to file

these reports, Seery explained that he "did not get it done and it fell through the cracks"

(Doc. 1905 at 49:18-21). Yet even now—two years later—complete reports identifying the

asset values and profitability of each non-publicly traded entity (in which the

Reorganized Debtor has or held interests) have not been disclosed. Upon information and

belief, this includes several entities including, but not limited to: Highland Select Equity

Fund; Highland Select Entity Fund, L.P., Highland Restoration Capital Partners, L.P.;

Highland CLO Funding, Ltd.; Highland Multi Strategy Credit Fund, L.P.; Highland

Capital Management Korea Limited; Cornerstone Healthcare; Trussway Industries, LLC;

Trussway Holdings, LLC; OmniMax International; Targa; CCS Medical; JHT Holdings;

and other entities.[22] Upon information and belief, the Reorganized Debtors' interest in

some of these entities has been sold,[23] but the sales prices have not been fully disclosed

(except as reported by certain purchasers in public SEC filings).

53.     Rather than providing the required reports, only generic information was

provided (by way of examples, as "private security," "private portfolio company," and

"private equity fund") with a total reported value of $224,267,777.21.[24] Entities were sold

---

[22] *See* Doc. 2229, pp. 6-7; January 29, 2021, Deposition of James P. Seery, Jr., 28:7-29:25.

[23] *See, e.g.,* https://trussway.com/2022/09/01/trussway-joins-builders-firstsource/ (sale of Trussway); https://www.prnewswire.com/news-releases/scionhealth-completes-acquisition-of-cornerstone-healthcare-group-301728275.html (sale of Cornerstone; unsurprisingly, Sidley Austin served as counsel for the purchaser); https://www.prnewswire.com/news-releases/svpglobal-completes-acquisition-of-omnimax-international-301151365.html (sale of OmniMax).

[24] Doc. 247 at p. 12.

HMIT Appx. 00420

without Court approval and without any 2015.3 report filings. In sum, upon information and belief, the Debtor had and the Reorganized Debtor has significant assets in a variety of funds and investments that were not publicly disclosed.

54.     By wrongfully exploiting such material non-public insider information, Stonehill and Farallon—acting through Muck and Jessup—became the largest holders of unsecured claims in the Debtor's Estate with resulting control over the Oversight Board and a front row seat to the reorganization and distribution of Claimant Trust Assets. As such, they were given control (through Muck and Jessup) to approve discretionary bonuses and success fees for Seery from these assets.

D.      *Distributions*

55.     The MGM sale was ultimately consummated in March 2022 for $6.1 billion in cash, plus $2.5 billion in debt that Amazon assumed and immediately repaid.[25]

56.     HCM and its wholly owned subsidiary, HCMLP Investments, own 50.612% of HCLOF, which, as of December 31, 2021, had a total net asset value of $76.1 million, a substantial amount of which has been monetized.[26] Upon information and belief, HCM's interest in HCLOF was worth at least $38 million.

---

[25] Amazon Q1 2022 10-Q.

[26] Doc. 3584-1, pp. 2, 9, 13, 21.

HMIT Appx. 00421

57.    On or about September 1, 2022, upon information and belief, Trussway was sold to Builder's First Source for $274.8 million, net of cash.[27] Prior to the sale, upon information and belief, Highland Select Equity Fund, L.P. ("HSEF") owned "approximately 90%" of Trussway, and HCM owned 100% of HSEF.[28] Upon information and belief, HCM should have netted at least $247.8 million from the sale of Trussway.

58.    According to HCM's most recent Form ADV, filed on March 31, 2023, HCM currently owns at least $127.5 million in Highland Multi Strategy Credit Fund, L.P., Highland Restoration Capital Partners Master, LP, Highland Restoration Capital Partners, L.P., and Stonebridge-Highland Healthcare Private Equity Fund (collectively, the "Private Funds"), in addition to interests in HCM's client-CLOs and other non-regulatory assets.

59.    Accordingly, and upon information and belief, and based solely on the Reorganized Debtor's interests in Trussway, HCLOF, and the Private Funds, the Reorganized Debtor has over **413.3 million** in estimated liquid or monetizable assets—which alone exceeds the $397.5 million in general unsecured claims, and indeed *all* allowed claims[29]—notwithstanding the value realized from the Reorganized Debtor's

---

[27] BLDR Q3 2022 10-Q.

[28] Doc. 2229, n. 8.

[29] Doc. 3757, p. 7.

HMIT Appx. 00422

interests in MGM, Trussway, Cornerstone, and other substantial assets that may remain to be monetized.[30]

60.     By the end of Q3 2021, just over $6 million of the projected $205 million available for general unsecured claimants had been disbursed.[31] No additional distributions were made to general unsecured claimholders until, suddenly, in Q3 2022 almost $250 million was paid toward Class 8 general unsecured claims—$45 million more than was *ever* projected.[32] Thus, Stonehill (Jessup) and Farallon (Muck) already have received returns that far eclipse their estimated investments. They also stand to make further significant profits on their investments, including distributions on their Class 9 Claims.

61.     As of March 31, 2023, the Claimant Trust has distributed $270,205,592.[33] On a *pro rata* basis, this means that other creditors (excluding Muck and Jessup) have received an estimated $24,332,361.07 in distributions against the stated value of their allowed claims.[34] That leaves an estimated unpaid balance of only $2,456,596.93.

---

[30] See Doc 3662, p. 4 (projecting assets worth at least $663.72 million as of June 1, 2022); *see also* supra, n. 22-23.

[31] Doc. 3200.

[32] Doc. 3582.

[33] Doc. 3757, p. 7.

[34] Stonehill (Jessup) and Farallon (Muck)'s Claims collectively represent an estimated 91% of all Class 8 claims. The other creditors therefore represent an estimated 9%. Upon information and belief, Stonehill (Jessup) and Farallon (Muck) hold 100% of the Class 9 claims.

HMIT Appx. 00423

## V. Causes of Action

**A.**   *Count I (against Seery): Breach of Fiduciary Duties*

62.   The allegations in paragraphs 1-61 above are incorporated herein as if set forth verbatim.

63.   As CEO and CRO of a debtor-in-possession, Seery owed fiduciary duties to HMIT, as equity, and to the Debtor's Estate, including, without limitation, the duty of loyalty and the duty to avoid conflicts of interests, but Seery willfully and knowingly engaged in conduct which conflicted with his fiduciary duties—and he did so out of financial self-interest.

64.   By disclosing material non-public information to Stonehill and Farallon in an effort to gain personal financial benefit, Seery willfully and knowingly breached his fiduciary duties. By failing to disclose the inside trades at issue, including his role in those inside trades, Seery willfully and knowingly breached his fiduciary duties.

65.   As a result of his willful misconduct, Seery was unfairly advantaged by receiving assurances of additional undisclosed compensation and bonuses from the assets of the Debtor's Estate and from the Claimant Trust Assets—to the detriment of other stakeholders, including HMIT.

66.   Seery's misconduct constituted fraud, willful misconduct, and bad faith.

67.   Plaintiffs sue for all actual damages caused by Seery's misconduct. Seery should also be held liable for disgorgement of all compensation he received since his

HMIT Appx. 00424

collusion with the Defendant Purchasers first began. Alternatively, Seery should be disgorged of all compensation paid to him under the terms of the CTA since the Effective Date of the Plan in August 2021.

68.     Alternatively, Plaintiffs are entitled to recover damages measured by all ill-gotten compensation which Seery has received since his first collusive conduct began.

**B.      *Count II (against all Defendant Purchasers and the John Doe Defendants): Knowing Participation in Breach of Fiduciary Duties***

69.     The allegations in paragraphs 1-68 above are incorporated herein as if set forth verbatim.

70.     Seery owed fiduciary duties to HMIT and the Debtor's Estate, and he willfully and knowingly breached these duties. Without limiting the foregoing, Seery owed a duty of loyalty which he willfully and knowingly breached. Seery also owed a duty to not engage in self-interested conduct to the detriment of the Debtor's Estate and innocent stakeholders. Seery willfully and knowingly breached this duty.

71.     The Defendant Purchasers were aware of Seery's fiduciary duties and, by purchasing the Claims and approving bonuses and other compensation for Seery, Stonehill (acting through Jessup) and Farallon (acting through Muck), willfully and knowingly participated in Seery's breaches or, alternatively, willfully aided and abetted such breaches.

72.     Stonehill (Jessup) and Farallon (Muck) unfairly received many millions of dollars in profits and fees—and stand to earn even more profits and fees.

73.    The Defendant Purchasers' misconduct constitutes bad faith, fraud, and willful misconduct.

74.    Plaintiffs sue for all actual damages caused by the Defendant Purchasers' wrongful conduct. The Defendant Purchasers are also liable for disgorgement of all profits Defendant Purchasers earned from their participation in the purchase of the Claims. Plaintiffs also seek damages against the Defendant Purchasers for excessive compensation paid to Seery as part of the covert *quid pro quo* with Seery.

**C.    *Count III (against all Defendants): Conspiracy***

75.    The allegations in paragraphs 1-74 above are incorporated herein as if incorporated herein verbatim.

76.    Defendants conspired with each other to unlawfully breach fiduciary duties to HMIT and the Debtor's Estate, and to conceal their wrongful trades.

77.    Seery's disclosure of material non-public information to the Defendant Purchasers and Seery's receipt of additional compensation as a *quid pro quo* for the insider-claims trading are overt acts in furtherance of the conspiracy.

78.    HMIT's interest in the residual of the Claimant Trust Assets has been adversely impacted by this conspiracy. The assets have been depleted by virtue of Seery's compensation awards.

79.    All Defendants' misconduct constitutes bad faith, fraud, and willful misconduct.

**HMIT Appx. 00426**

80.    Plaintiffs sue for all actual damages caused by the Defendants' wrongful conduct. All Defendants should be disgorged of their ill-gotten profits and gains.

81.    Plaintiffs sue all Defendants for damages associated with Seery's compensation awards pursuant to the scheme.

**D.**    *Count IV (against Muck and Jessup): Equitable Disallowance*

82.    The allegations in paragraphs 1-81 above are incorporated herein as if set forth verbatim.

83.    By purchasing the Claims based on material non-public information, Stonehill and Farallon, through Jessup and Muck, engaged in inequitable conduct.

84.    By earning significant profits on their purchases, Muck and Jessup have been unfairly advantaged.

85.    Muck and Jessup's misconduct constitutes bad faith, fraud, and willful misconduct.

86.    Given this willful, inequitable, and bad faith conduct, equitable disallowance of Muck's and Jessup's Claims to the extent over and above their initial investment is appropriate and consistent with the purposes of the Bankruptcy Code.

87.    Pleading in the alternative only, subordination of Muck's and Jessup's General Unsecured Claim Trust Interests and Subordinated Claim Trust Interests to all other interests in the Claimant Trust, including HMIT's Contingent Trust Interest, is

HMIT Appx. 00427

necessary and appropriate to remedy Muck's and Jessup's wrongful, willful, and bad faith conduct, and is also consistent with the purposes of the Bankruptcy Code.

### E.    *Count V (against all Defendants): Unjust Enrichment and Constructive Trust*

88.    The allegations in paragraphs 1-87 above are incorporated herein as if set forth verbatim.

89.    By acquiring the Claims using material non-public information, Stonehill and Farallon were unjustly enriched and gained an undue advantage over other creditors and former equity.

90.    All Defendants' misconduct constitutes bad faith, fraud, and willful misconduct.

91.    Allowing Stonehill, Farallon, Muck, and Jessup to retain their ill-gotten benefits would be unconscionable.

92.    Stonehill, Farallon, Muck, and Jessup should be forced to disgorge all distributions over and above their original investment in the Claims as restitution for their unjust enrichment.

93.    The proceeds Stonehill, Farallon, Muck, and Jessup have received from the Claimant Trust are traceable and identifiable. A constructive trust should be imposed on such proceeds to secure the restitution of these improperly retained benefits.

94.    Seery was also unjustly enriched by his participation in this scheme and he should be required to disgorge or restitute all compensation he has received from the

outset of his collusive activities. Alternatively, he should be required to disgorge and restitute all compensation received since the Effective Date. A constructive trust should be imposed on all such funds to secure the restitution of these improperly obtained benefits.

### F.    *Count VI (Against all Defendants): Declaratory Relief*

95.    The allegations in paragraphs 1-94 above are incorporated herein as if set forth verbatim.

96.    HMIT seeks declaratory relief. The Court has jurisdiction to provide declaratory judgment relief when there is an actual controversy that has arisen and exists relating to the rights and duties of the parties.

97.    Bankruptcy Rule 7001 provides that "a proceeding to recover property or money," may include declaratory relief. *See*, Fed. R. Bank P. 7001(1), (9).

98.    The CTA  is governed under Delaware law. The CTA incorporates and is subject to Delaware trust law.

99.    HMIT seeks a declaration, as follows:

    a.  There is a ripe controversy concerning HMIT's rights and entitlements under the Claimant Trust Agreement;

    b.  HMIT has standing to bring an action even if its interest is considered contingent and because it is an aggrieved party and enjoys constitutional standing;

    c.  HMIT has capacity and standing to bring these claims derivatively because Seery, as Trustee, has abandoned the claims;

HMIT Appx. 00429

d. HMIT has capacity and standing to bring these claims derivatively because Seery, as Trustee, and Muck and Jessup have a conflict of interest;

e. HMIT is an appropriate party to bring the derivative action on behalf of the Reorganized Debtor and the Claimant Trust;

f. Alternatively, HMIT's status as a Claimant Trust Beneficiary is fully vested now;

g. HMIT's status as a Claimant Trust Beneficiary is fully vested upon disgorgement by Muck and Jessup, and by extension, Farallon and Stonehill, of their ill-gotten profits;

h. HMIT's status as a Claimant Trust Beneficiary is fully vested upon the equitable disallowance of the Claims held by Muck and Jessup over and above their initial investments. Alternatively, HMIT's status as a Claimant Trust Beneficiary is fully vested when all of Muck's and Jessup's trust interests are subordinated to the trust interests held by HMIT;

i. Seery is properly estopped from asserting that HMIT is not an appropriate party to bring this derivative action on behalf of the Reorganized Debtor and/or the Claimant Trust because of Seery's conduct, bad faith, willful misconduct, and unclean hands;

j. Muck and Jessup are properly estopped from asserting that HMIT is not an appropriate party to bring this derivative action on behalf of the Reorganized Debtor and the Claimant Trust because of their fraudulent conduct, bad faith, willful misconduct, and unclean hands; and

k. All Defendants are estopped from asserting that HMIT does not have standing in its individual capacity due to their fraudulent conduct, bad faith, willful misconduct, and unclean hands.

HMIT Appx. 00430

## VI. <u>Punitive Damages</u>

100.    The allegations in paragraphs 1-99 above are incorporated herein as if set forth verbatim.

101.    The Defendants' misconduct was intentional, knowing, willful, in bad faith, fraudulent, and in total disregard of the rights of others. An award of punitive damages as allowed by law is appropriate and necessary under the facts of this case.

## VII. <u>Conditions Precedent</u>

102.    All conditions precedent to recovery herein have been satisfied or have been waived.

## VIII. <u>Fraudulent Concealment and Equitable Tolling</u>

103.    The allegations in paragraphs 1-102 above are incorporated herein as if set forth verbatim.

104.    The illicit conduct of Defendants as described herein was concealed from Plaintiffs, who did not know, and could not reasonably discover, either that conduct of Defendants or the injury that would result. Specifically, as described herein, Defendants conspired to trade on material nonpublic information in breach of duties to the Original Debtors and Debtor's Estate. Defendants used deception to conceal the causes of action alleged herein and continue to refuse formal and informal discovery requests of facts, information, and documents related to the Plaintiffs' claims. HMIT reasonably relied on

HMIT Appx. 00431

Defendants' deceptive representations, and otherwise exercised all diligence in this matter, yet the causes of action were inherently undiscoverable.

105.    Defendants continued to engage in the illicit practices described herein, and consequently, Plaintiffs were continually injured by Defendants' illicit conduct. Therefore, Plaintiffs submit that each instance that one or more of the Defendants engaged in the conduct complained of in this action constitutes part of a continuing violation and operates to toll the statutes of limitation applicable to all causes of action in this matter.

106.    Defendants' conduct was and is, by its nature, self-concealing. In addition, Defendants, through a series of affirmative acts and omissions, suppressed the dissemination of truthful information regarding their illicit conduct, and have actively foreclosed Plaintiffs from learning of their illicit, unfair, self-dealing, disloyal, and/or deceptive acts.

107.    To the extent that one or more of the Defendants asserts a defense of statute of limitations or other time-based defense, they are estopped from doing so and Plaintiffs affirmatively pleads fraudulent concealment should toll or otherwise prevent application of any alleged statute of limitation defense. Plaintiffs further affirmatively plead equitable estoppel.

108.    By reason of the foregoing, Plaintiffs' claims on behalf of itself and on behalf of the Highland Parties are timely under any applicable statute of limitations, pursuant

to the discovery rule, pursuant to the equitable tolling doctrine, pursuant to fraudulent concealment, and/or pursuant to any other applicable tolling doctrine.

## IX. <u>Jury Demand</u>

109.     Plaintiffs hereby demand a right to a trial by jury of all claims asserted herein involving triable issues of fact.

## X. <u>Prayer</u>

WHEREFORE, Plaintiffs pray for judgment against each of the Defendants as follows:

1.    That all Defendants be cited to appear and answer herein;

2.    Finding that HMIT has capacity and standing to bring these claims individually and derivatively because Seery, as trustee, has abandoned the claims and has a conflict of interest;

3.    Finding that HMIT has capacity and standing to bring these claims individually and derivatively because Muck and Jessup have a conflict of interest;

4.    Awarding equitable disallowance of the Claims over and above Muck's and Jessup's original investments (or, alternatively, subordination of their Claimant Trust Interests, as addressed herein);

5.    Awarding disgorgement of all funds distributed from the Claimant Trust to the Defendant Purchasers and any John Doe Defendants over and above their original investments;

6.    Awarding disgorgement of all compensation paid to Seery from the date of his first collusive activities, or alternatively, from the Effective Date;

7.    Imposition of a constructive trust as to all ill-gotten profits received by the Defendant Purchasers and any John Doe Defendants;

8.    Awarding declaratory relief as described herein;

HMIT Appx. 00433

9.      Awarding actual damages as described herein;

10.     Awarding exemplary damages as described herein;

11.     Awarding pre-judgment and post-judgment interest at the highest rate allowed by law; and

12.     Awarding all such other and further relief to which Plaintiffs may be justly entitled.

Respectfully Submitted,

**PARSONS MCENTIRE MCCLEARY PLLC**

By: /s/ _____

Sawnie A. McEntire
Texas State Bar No. 13590100
smcentire@pmmlaw.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 237-4300
Facsimile: (214) 237-4340

Roger L. McCleary
Texas State Bar No. 13393700
rmccleary@pmmlaw.com
One Riverway, Suite 1800
Houston, Texas 77056
Telephone: (713) 960-7315
Facsimile: (713) 960-7347

*Attorneys for Hunter Mountain Investment Trust*

HMIT Appx. 00434