# HMIT Exhibit 14

HMIT Appx. 02202

| | |
|---|---|
| **KELLY HART PITRE** | **KELLY HART & HALLMAN** |
| Louis M. Phillips (#10505) | Hugh G. Connor II |
| One American Place | State Bar No. 00787272 |
| 301 Main Street, Suite 1600 | hugh.connor@kellyhart.com |
| Baton Rouge, LA 70801-1916 | Michael D. Anderson |
| Telephone: (225) 381-9643 | State Bar No. 24031699 |
| Facsimile: (225) 336-9763 | michael.anderson@kellyhart.com |
| Email: louis.phillips@kellyhart.com | Katherine T. Hopkins |
| Amelia L. Hurt (LA #36817, TX #24092553) | Texas Bar No. 24070737 |
| 400 Poydras Street, Suite 1812 | katherine.hopkins@kellyhart.com |
| New Orleans, LA 70130 | 201 Main Street, Suite 2500 |
| Telephone: (504) 522-1812 | Fort Worth, Texas 76102 |
| Facsimile: (504) 522-1813 | Telephone: (817) 332-2500 |
| Email: amelia.hurt@kellyhart.com | Telecopier: (817) 878-9280 |

COUNSEL FOR HUNTER MOUNTAIN INVESTMENT TRUST

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-sgj11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | Chapter 11 |
| | § | |
| | § | **Relates to Dkt. No. 3382** |
| Debtor | § | |

**LIMITED RESPONSE IN SUPPORT OF CERTAIN REQUESTED RELIEF**

Hunter Mountain Investment Trust ("Hunter Mountain") files this *Limited Response in Support of Certain Requested Relief* (the "Response") in connection with the *Motion For Determination of the Value of the Estate and Assets Held by the Claimant Trust* [**Dkt. No. 3382**] (the "Motion for Valuation") filed by the Dugaboy Investment Trust ("Dugaboy") and supports Dugaboy's request for information from the reorganized debtor ("HCMLP") and the Claimant Trust, as defined in the *Fifth Amended Plan of Reorganization of Highland Capital Management,*

*L.P.* (as modified) [**Dkt. No. 1943**] (the "Plan"),[1] regarding the value of the Reorganized Debtor Assets and Claimant Trust Assets, as well as the outstanding Class 8 and 9 Claims.

## SUMMARY

1. Hunter Mountain believes that no Professional, Claimant Trust Beneficiary, nor this Court would support the idea that the Plan provides that the Litigation Sub-Trust should pursue litigation against Holders of Equity Interest to generate a recovery with which to pay distributions to those same Holders of Equity Interest, less the costs of that litigation. Yet, given the allegations in the Motion for Valuation and general lack of transparency into the Reorganized Debtor Assets, Claimant Trust Assets, and outstanding obligations that must be resolved, including the Class 8 and 9 Claims, Hunter Mountain—as both a Holder of Class 10 - Class B/C Limited Partnership Interests and a defendant in the Kirschner Adversary Proceeding[2]—is concerned that this could occur in this case. Therefore, Hunter Mountain submits that to best effectuate the Plan, HCMLP and the Claimant Trust should work with Holders of Equity Interests, like Hunter Mountain, to provide transparency into the value of the Reorganized Debtor Assets and Claimant Trust Assets and outstanding Class 8 and 9 Claims.

## BACKGROUND

### A. Hunter Mountain holds a Contingent Claimant Trust Interest

2. HCMLP is a Delaware limited partnership. As of the Petition Date, HCMLP had three classes of limited partnership interest (Class A, Class B, and Class C). *See* Disclosure

---

[1] Capitalized terms not otherwise defined herein take their meaning from the Plan.

[2] *See Marc S. Kirschner, as Litigation Trustee of the Litigation Sub-Trust vs. Dondero et al* [Adv. Pro. No. 21-03076-sgj]

HMIT Appx. 02204

Statement [**Dkt. No. 1473**], ¶F(4). The Class A interests were held by Dugaboy, Mark Okada ("Okada"), personally and through family trusts, and Strand Advisors, Inc. ("Strand"), HCMLP's general partner. The Class B and C interests were held by Hunter Mountain. *Id.* In the aggregate, HCMLP's limited partnership interests were held: (a) 99.5% by Hunter Mountain; (b) 0.1866% by Dugaboy, (c) 0.0627% by Okada, and (d) 0.25% by Strand. *Id.*

3. In the Plan, HCMLP classified Hunter Mountain's Class B Limited Partnership Interest and Class C Limited Partnership Interest (together, Class B/C Limited Partnership Interests) as Class 10, separately from that of the holders of Class A Limited Partnership Interests which are Class 11. *See* Plan, Article III, ¶H(10) and (11). According to the Plan, Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests are be subordinate to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests. *See* Plan, Article I, ¶44.

4. In the Confirmation Order, the Court found that the Plan properly separately classified those Equity Interests because they represent different types of equity security interests in HCMLP and different payment priorities pursuant to that certain *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended* (the "Limited Partnership Agreement"). Confirmation Order, ¶36; Limited Partnership Agreement, §3.9 (Liquidation Preference).

5. The Plan created the Claimant Trust which was established for the benefit of Claimant Trust Beneficiaries, which is defined to mean:

> the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full,

3

> post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests

*See* Plan, Article I, ¶27.  Therefore, Hunter Mountain holds a Contingent Claimant Trust Interest which will vest into Claimant Trust Interests upon indefeasible payment of Allowed Claims.

6. Therefore, depending on the realization of asset value less debts, Hunter Mountain may become a Claimant Trust Beneficiary.

7. In other words, the status of the Bankruptcy Case is a liquidation, and there are assets including (this is a generalization) cash, ownership interests in entities, investments into entities and funds, perhaps real estate, and litigation claims ("Assets").  There are obligations, including the Exit Facility, Allowed Claims, obligations to Indemnified Parties, etc.  Further, there are ongoing (and we assume material) administrative and litigation costs, and obligations arising under the Plan for payment of various success fees, etc., to various persons in connection with the liquidation (collectively, the "Obligations").

8. Hunter Mountain is "in the money" if the Assets are greater than the Obligations.

9. Further, Hunter Mountain and perhaps other persons and entities could have incentive to discuss with HCMLP and the Claimant Trust the prospect of an overall resolution if it could obtain some level of clarity as to the value of the assets and the amount of the Obligations. Information could facilitate discussion.  For example, Hunter Mountain assumes that while the Exit Facility has repayment obligations that must be made on an ongoing basis, the obligations to Indemnified Parties and the necessity of payment of ongoing administrative and litigations costs may cause a postponement of distributions to Holders of Allowed Claims, creating a circle whereby Allowed Claims are not paid, the value of current assets is being used, so that the Asset

over Obligations ratio is currently decreasing. So as time passes, the value of Assets is decreasing, which requires reliance upon litigation claims to replace such diminution.

10. So, even if there is a deficit of Assets over Obligations, knowledge of the amount of such a deficit, with information about assets remaining, could generate a picture of a current deficit, and better the possibility of a resolution that could create a maximization of the Asset value and a capping of the Obligations (for example, in a resolution situation there would be no obligations to Indemnified Parties so any reserve could be utilized free of such obligations; and no further need for projection and payment of administrative and litigation costs so no growing deficit).

**B. Holders of Contingent Claimant Trust Interests have no insight into the value of the Assets or amount of Obligations.**

11. While whether Hunter Mountain's Contingent Claimant Trust Interest will vest into a Claimant Trust Interest is dependent upon the Asset value over Obligations amount, Hunter Mountain has little to no insight into what these values may be and no method to independently ascertain them.

12. HCMLP and the Claimant Trust file quarterly post-confirmation reports, but these reports do not provide the relevant information related to the true Asset value versus the Obligations. These reports state that all Claims in Classes 6 and 7 were paid in full and that Classes 8 and 9 have received non-cash distributions in to and form of Claimant Trust Interests and therefore any distributions to holders of Class 8 and Class 9 claims will be made by the Claimant Trust. *See* Dkt. No. 3409-1. But the Claimant Trust has made no distributions to Claimant Trust Beneficiaries. *See* Dkt. No. 3410-1. Further Hunter Mountain has no independent knowledge of the amount of Class 8 and 9 Allowed Claims.

13. Further, the quarterly post-confirmation reports only reflect assets directly held HCMLP which are only a fraction of the Assets.

14. The Plan requires the Claimant Trustee to determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such a valuation, as well as distribute tax information to Claimant Trust Beneficiaries as appropriate. *See* Plan, ¶Art. IV(B)(9). But no like information regarding valuation of the Claimant Trust Assets is available to Holders of Contingent Claimant Trust Interests.

### C. Hunter Mountain is also a defendant in the Kirschner Adversary Proceeding

15. While normally this lack of transparency into whether the Contingent Claimant Trust Interest will vest would not require valuation information to be provided at this intermediate juncture, here Hunter Mountain's status as a defendant in the Kirschner Adversary necessitates greater transparency.

16. On October 15, 2021, Marc C. Kirschner as Litigation Trustee of the Litigation Sub-Trust commenced the Kirschner Adversary Proceeding against twenty-three defendants including Hunter Mountain (a Holder of Class 10 Equity Interests) for various causes of action. *See* Kirschner Adversary Proceeding, Dkt. No. 1 (as amended by Dkt. No. 158).

17. The Litigation Sub-Trust was established within the Claimant Trust as a wholly owned-subsidiary of the Claimant Trust for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims, with any proceeds therefrom to be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries. *See* Plan, Article IV,¶ (B)(4).

HMIT Appx. 02208

18. Therefore, any recovery from the Kirschner Adversary Proceeding will be distributed to Claimant Trust Beneficiaries.

19. So, if Hunter Mountain could be a Claimant Trust Beneficiary, the Litigation Sub-Trust is pursuing claims against Hunter Mountain, which, if it becomes a Claimant Trust Beneficiary, would be the recipient of distributions of such recovery (less the cost of litigation). This last part is the most troubling and catalyst for requiring a valuation at this juncture. The costs of litigation are only increasing and are likely to be great. Therefore, the costs to litigate against Hunter Mountain will be borne by Hunter Mountain by virtue of its status as a Holder of a Contingent Claimant Trust Interest, and every dollar incurred litigating against Hunter Mountain decreases the likelihood that Hunter Mountain's Contingent Claimant Trust Interest will vest.

20. And if whether Hunter Mountain will be a Claimant Trust Beneficiary is a close call [*i.e.* because the difference between Assets and Obligations is "small" (a relative term given the hundreds of millions of dollars at stake)], then this will greatly inform Hunter Mountain's litigation decisions and could affect materially the prospects of overall resolution.

21. Information concerning the amount of cash Assets, together with the remaining non-cash Assets (without regard to the litigation of Estate Claims), together with the current Obligations, could well generate fruitful settlement discussions because it is reasonable to believe that Hunter Mountain could decide that it can utilize non-cash assets in such a way as to maximize their value in a way that HCMLP and the Claimant Trust cannot, after resolution of the Obligations.

**RELIEF REQUESTED**

22. Simply put, Hunter Mountain seeks information, which is readily available to HCMLP and the Claimant Trust (and for which Hunter Mountain is willing to bear the cost of collating) that will inform whether Hunter Mountain will be a Claimant Trust Beneficiary so that:

(i) all parties can avoid the facially unpalatable circumstance of the Litigation Sub-Trust seeking recovery from Hunter Mountain which could be raised to go to pay Hunter Mountain, less the Litigation Sub-Trust's attorney's fees, and (ii) Hunter Mountain can make informed litigation decisions, including possibly seeking to assemble sufficient resources with which to resolve the Obligations, thereby negating the basis of any further litigation and resulting in an expeditious closing of the Bankruptcy Case.  Hunter Mountain is situated in priority to Dugaboy, so it has a firmer basis for entitlement.

23. Hunter Mountain does not seek to interfere with or be part of the liquidation process, does not seek to examine negotiations, does not seek the identity of persons or entities with whom HCMLP or the Claimant Trust is dealing, does not seek to substitute its judgment for that of person and parties authorized under the Plan.  But as a Holder of Contingent Claimant Trust Interests, it is entitled to information as to the value of Assets and amount of Obligations.

## BASIS FOR RELIEF REQUESTED

24. This Court specifically retained jurisdiction to ensure that distributions to Holders of Allowed Equity Interests are accomplished pursuant to the provisions of the Plan.  *See* Plan, Article XI.  The Plan provides that distributions to Allowed Equity Interests will be accomplished through the Claimant Trust and Contingent Claimant Trust Interests.  *See* Plan Article III, (H)(10) and (11).

25. The relief requested by Hunter Mountain is limited to the likelihood that the Contingent Claimant Trust Interests will vest.  This information will help ensure distributions to Holders of Allowed Equity Interests as well as possibly lead to a resolution of overall the Bankruptcy Case.

HMIT Appx. 02210

## CONCLUSION

26. For the reasons set forth herein, Hunter Mountain supports the request of Dugaboy to compel information regarding the value of the Assets and Obligations and the outstanding claims in Classes 8 and 9.

**Respectfully submitted:**

**KELLY HART PITRE**

*/s/ Louis M. Phillips*
**Louis M. Phillips (#10505)**
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com

Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812
New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

and

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500

## CERTIFICATE OF SERVICE

      I, undersigned counsel, hereby certify that a true and correct copy of the above and foregoing document and all attachments thereto were sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on this August 24, 2022.

                                       */s/ Louis M. Phillips*
                                       Louis M. Phillips

HMIT Appx. 02212