# Appendix Exhibit 7

Case 19-34054-sgj11 Doc 3920-58 Filed 10/11/22    Entered 10/11/22 11:59:59    Page 1 of 9
Case 19-12239-CSS    Doc 120    Filed 12/04/19    Page 1 of 9    Docket #0120  Date Filed: 12/4/2019
Case 3:21-cv-00881-X    Document 174-7    Filed 12/16/23    Page 2 of 10   PageID 17317

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Case No. 19-12239 (CSS) |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, LP,[1] | § § § | Chapter 11 |
| | § | **Re: Docket Nos. 69, 70** |
| Debtor. | § | |

**Objection Deadline: November 12, 2019 at 4:00 p.m. (Eastern time)**
**Hearing Date: November 19, 2019 at 12:00 p.m. (Eastern time)**

**LIMITED OBJECTION TO THE DEBTOR'S: (I) APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF FOLEY GARDERE, FOLEY & LARDNER LLP AS SPECIAL TEXAS COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE; AND (II) APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF LYNN PINKER COX & HURST LLP AS SPECIAL TEXAS LITIGATION COUNSEL, *NUNC PRO TUNC* TO THE PETITION DATE**

Acis Capital Management, L.P. ("Acis LP") and Acis Capital Management GP, LLC (collectively "Acis"), creditors and parties-in-interest, object on a limited basis to the Debtor's: (i) *Application for an Order Authorizing the Retention and Employment of Foley Gardere, Foley & Lardner LLP as Special Texas Counsel, Nunc Pro Tunc to the Petition Date* [Docket No. 69] (the "Foley Application"); and (ii) *Application for an Order Authorizing the Retention and Employment of Lynn Pinker Cox & Hurst LLP as Special Texas Litigation Counsel, Nunc Pro Tunc to the Petition Date* [Docket No. 70] (the "Lynn Pinker Application" and together with the Foley Application, the "Applications").

**Statement of Facts**

1. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

1



2. On October 29, 2019, the Debtor filed the Foley Application, seeking to employ the law firm of Foley Gardere, Foley & Lardner LLP ("Foley") as special Texas litigation counsel pursuant to 11 U.S.C. §327(e).

3. Also on October 29, 2019, the Debtor filed the Lynn Pinker Application, seeking to employ the law firm of Lynn Pinker Cox & Hurst LLP ("Lynn Pinker") as special Texas litigation counsel pursuant to 11 U.S.C. § 327(e).

4. Foley and Lynn Pinker are both being hired to represent the Debtor in connection with Acis' post-confirmation bankruptcy case (the "Acis Bankruptcy Case"),[2] two appeals from the Acis Bankruptcy Case (both initiated by the Debtor as an appellant)[3] and an adversary proceeding pending in the Acis Bankruptcy Case.[4]

## Objection

### A. The Applications Lack Important Disclosures.

5. The Applications disclose that Foley and Lynn Pinker represent and have performed work in the Acis Bankruptcy Case for clients related to the Debtor – clients they identify as Neutra and the Cayman Defendants. The Foley Application also admits that, before the Petition Date, Foley billed the Debtor for work performed for Neutra and the Cayman Defendants.[5] There is no disclosure from Lynn Pinker on this point, but presumably its payment arrangements were similar because Lynn Pinker represents many, if not all, of the same clients as

---

[2] Jointly administered Case Nos. 18-30264 and 18-30265 in the United States Bankruptcy Court for the Northern District of Texas.

[3] *Highland Cap. Mgmt, L.P. v. Phelan*, Case No. 19-10847 in the United States Court of Appeals for the Fifth Circuit; *Highland Cap. Mgmt, L.P. v. Winstead PC*, Case No. 3:19-cv-01477-D in the United States District Court for the Northern District of Texas

[4] Adversary No. 18-03078 in the United States Bankruptcy Court for the Northern District of Texas.

[5] See ¶ 3 of Declaration of Holland O'Neil attached as Exhibit A to the Foley Application [Docket No. 69-2] ("The Firm billed Highland for all services as to the related other parties since there was significant overlap among legal issues for Highland, Neutra and the Cayman Defendants.").

Foley in the Acis Bankruptcy Case. While the Applications disclose the amounts paid by the Debtor to each of Foley and Lynn Pinker during the year prior to the Petition Date, the Applications do not disclose the proportionate amounts billed to and paid by the Debtor for work performed for Neutra and the Cayman Defendants. Acis reserves its rights to compel disclosure of this information including under Fed. R. Bankr. P. 2017(a).[6]

6.     This structure creates significant fraudulent transfer concerns and highlights the multifarious nature of the Debtor's operations including its pervasive use of offshore shadow companies controlled by James Dondero. As both District Judge Sidney Fitzwater and Bankruptcy Judge Stacey Jernigan found in published opinions arising from the Acis Bankruptcy Case, Neutra and the Cayman Defendants are actually offshore companies that were created around the time Joshua Terry obtained a judgment against Acis in order receive transfers of Acis' assets and Acis' equity. *Neutra, Ltd. v. Terry (In re Acis Cap. Mgmt. L.P.)*, 604 B.R. 484, 501-02 (N.D. Tex. 2019); *In re Acis Cap. Mgmt. L.P.*, 584 B.R. 115, 127-31 (Bankr. N.D. Tex. 2018). Even more, the business justification proffered by the Debtor for these transfers from Acis was found to be "a seemingly manufactured narrative to justify prior actions" and that "the evidence established overwhelmingly that there is a substantial likelihood that the transfers were part of an intentional scheme to keep assets away from [Terry]." *Neutra,* 604 B.R. at 502 *(*citing *In re Acis Cap. Mgmt. L.P.*, 2019 Bankr. Lexis 292 (Bankr. N.D. Tex. January 31, 2019)). It was clear to everyone in the Acis Bankruptcy Case that Neutra and the Cayman Defendants were simply fronts for Dondero's machinations.

---

[6] Fed. R. Bankr. P. 2017(a) provides: "Payment or Transfer to Attorney Before Order for Relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive."

7. The Debtor's Schedules and Statement of Financial Affairs will not be filed by the time parties must object to the Foley Application and Lynn Pinker Application, or by the time the Court will hold a hearing on the Applications.[7] Thus, the scope of these payments and liabilities (or other connections) will not be disclosed until well after the engagement of Foley and Lynn Pinker.

8. The Applications also do not disclose whether the Debtor intends to continue to be billed and pay Foley and Lynn Pinker for work performed for Neutra and the Cayman Defendants once Foley and Lynn Pinker are engaged by the Debtor pursuant to the Applications. If this is the Debtor's intent, it should be specifically disclosed and approval of such employment should be requested in accordance with the Bankruptcy Code and the applicable rules. For example, Bankruptcy Rule 2017(b) specifically requires disclosure of payments made by a debtor to *any attorney* for services *in any way related to the case*. Fed. R. Bankr. P. 2017(b).[8] In any event, if the Debtor does intend to pay Neutra and the Cayman Defendants' legal expenses, Acis would oppose this relief. The fact that Neutra and the Cayman Defendants are sham entities created only to receive fraudulent transfers and, thus, have no substance does not change, and in fact compels, this result.[9]

---

[7] The Debtor has requested an additional 30-day extension of time to file its Schedules and Statement of Financial Affairs [Docket No. 4]. If granted, this would make such disclosures due December 13, 2019.

[8] For example, Fed R. Bankr. P. 2017(b) provides: "Payment or Transfer to Attorney After Order for Relief. On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case."

[9] To be clear, Neutra and the Cayman Defendants' are entitled to hire counsel to represent them and Dondero or some other non-debtor entity that he controls are certainly welcome to pay the litigation costs. But this is not a cost the Debtor should bear.

4

9. Further, the Foley engagement letter[10] discloses a conflict with Foley's representation of HRA Holdings, LLC that required the consent of the parties in order for Foley to proceed with its initial representation of the Debtor. This conflict, or potential conflict, is not disclosed or discussed anywhere in the Foley Application or the various disclosure affidavits that accompany it. Thus, the nature of the conflict is unclear, and it is unknown how it might limit Foley's representation of the Debtor.

10. The Debtor did not attach Lynn Pinker's engagement letter to the Lynn Pinker Application, so this Court and the creditors in this case do not know the full terms of the Lynn Pinker engagement. However, Acis is aware of various connections between Lynn Pinker and the Debtor and its related parties that are not disclosed or are only partially disclosed in the Lynn Pinker Application. For example, Lynn Pinker hired the Debtor's General Counsel, Scott Ellington, as an expert witness in a case tried in Dallas just last year.[11] It is unclear if this is a regular occurrence or what compensation Mr. Ellington receives for providing these services to Lynn Pinker and its clients.

11. Further, in a footnote the Lynn Pinker Application discloses that it represents the Charitable Donor Advised Fund, L.P. (the "DAF") in "unrelated" litigation. However, this is only the tip of the iceberg in describing this allegedly "unrelated" litigation.

12. On August 6, 2019, Lynn Pinker, at that time representing NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund and Highland Income Fund (collectively, the "Highland Retail Funds"),[12] sent nearly identical letters to Moody's Investor Services and

---

[10] Attached as Exhibit B to the Foley Application [Docket No. 69-3].

[11] See attached **Exhibit A** found at https://www.pettitfirm.com/legacytexas. Highlighting has been added to some exhibits.

[12] The Highland Retail Funds are affiliates of, or are managed by affiliates of, the Debtor and Dondero. *See* attached **Exhibits B, C** and **D** found at https://www.highlandcapital.com/nexpoint-strategic-opportunities-fund-announces-the-regular-monthly-dividend-2/ (NexPoint Strategic Opportunities Fund); https://www.highlandfunds.com/global-

5

App. 0138

S&P Global.[13]  In essence, these letters request a ratings downgrade or withdrawal on certain Acis CLO securities which the Highland Retail Funds purport to own.  Obviously, it is highly unusual for an investor to request a ratings downgrade for its own investment.  Curiously, when Lynn Pinker filed the litigation it threatened in these letters, Lynn Pinker no longer represented the Highland Retail Funds, but now represented the DAF.[14]

13.     In its current form, the DAF litigation seeks: (i) damages from US Bank, as indenture trustee for various Acis CLOs, for failing to take what the DAF believes was appropriate action in the Acis Bankruptcy Case and otherwise failing to perform its obligations as indenture trustee; and (ii) damages from Moody's for refusing to downgrade the Acis CLO securities or withdraw the ratings altogether as demanded in Lynn Pinker's letters.[15]  A downgrade or ratings withdrawal in the Acis CLO securities or the resignation of US Bank as indenture trustee may precipitate liquidation of the Acis CLOs, which would violate the plan injunction entered as part of Acis's bankruptcy plan since it was clearly procured by the Debtor and its affiliates (and their proposed counsel).[16]  None of this tangled web is disclosed in the Lynn Pinker Application, rather it is simply written off in a footnote as "unrelated."

---

allocation-fund/ (Highland Global Allocation Fund); https://www.highlandfunds.com/income-fund/ (Highland Income Fund).

[13] Copies of these letters are attached hereto as **Exhibits E** and **F**.  Other letters were later sent to Moody's and S&P, but Acis does not have copies of these later letters.

[14] The Highland Retail Funds are publicly traded closed end funds.  Further, one of the Highland Retail Funds, Highland Global Allocation Fund, and its advisors are already being sued by an investor for self-dealing and conflicts of interest with other funds affiliated with the Debtor.  *See Lanotte v. Highland Capital Mgt. Fund Adv., L.P., et al.*, Case No. 18-cv-02360, in the United States District Court for the Northern District of Texas.  Thus, the Highland Retail Funds may have realized that publicly acknowledging that they inexplicably requested a ratings downgrade or withdrawal for their own investment is not a helpful fact in this or future litigation, and Dondero and Lynn Pinker then simply donned another hat to file the lawsuit.

[15] Amended Complaint attached hereto as **Exhibit G**.

[16] *In re Acis Cap. Mgmt., L.P.*, 2019 Bankr. LEXIS 292 * 30-32 (Bankr. N.D. Tex., Jan. 31, 2019) (confirmation opinion from Acis Bankruptcy Case); *In re Acis Cap. Mgmt., L.P.*, 2019 Bankr. LEXIS 294 * 59-62 (Bankr. N.D. Tex., Jan. 31, 2019) (confirmation order and confirmed plan from Acis Bankruptcy Case).  Acis reserves all rights in this regard and obviously has been monitoring the situation.

B.  **Acis Reserves the Right to Seek Disqualification and Disgorgement of Foley and Lynn Pinker Based on Conflict Of Interest Allegations the Debtor Made and is Appealing in the Acis Bankruptcy Case.**

14. In the Acis Bankruptcy Case, the Debtor has alleged an actual conflict of interest prohibiting employment of special counsel for Acis' Chapter 11 trustee (Winstead) and requiring disgorgement of all fees paid to counsel. The Debtor's objection to counsel's employment and payment has been rejected and overruled multiple times. The issue is currently being appealed in the Northern District of Texas, and this is one of the matters for which Foley and Lynn Pinker are to be engaged.

15. The alleged conflict is based on Winstead's engagement as special counsel by the Chapter 11 trustee for Acis (then a debtor in the Acis Bankruptcy Case) when Winstead represented a creditor of Acis (Josh Terry) and Winstead was retained to be adverse to another creditor of Acis (the Debtor).[17] Per the Debtor's argument, engagement as counsel to be adverse to a creditor while concurrently representing a different creditor creates a *per se* actual conflict of interest under 11 U.S.C. § 327(c).[18] Indisputably, Foley represents CLO Holdco, Ltd., which is one of the Debtor's largest creditors.[19] And in fact, Foley is *itself* one of the Debtor's ten largest creditors, and Lynn Pinker is likewise a significant creditor of the Debtor.[20] Foley and Lynn Pinker will also be engaged as special counsel to litigate with (and be adverse to) Acis and Mr.

---

[17] *See* ¶ 24 and 25 of Objection of Highland Capital Management, L.P. to Supplemental Application Regarding the Scope of Winstead PC's Retention as Special Counsel to the Chapter 11 Trustee filed in the Acis Bankruptcy Case and attached hereto as **Exhibit H**.

[18] Although neither the Foley Application nor the Lynn Pinker Application reference § 327(c), that section is clearly applicable to their retention. As outlined below, the Foley and Lynn Pinker attorneys that will be engaged by the Debtor are employed by creditors of the Debtor and represent at least one known creditor of the Debtor.

[19] *See* Notice of Appearance filed by Foley in the Acis Bankruptcy Case and attached hereto as **Exhibit I**; *see also* Foley engagement letter attached as Exhibit B to the Foley Application [Docket No. 69-3].

[20] *See* Docket No. 1 disclosing that Foley is owed $1,398,432.44 by the Debtor. Although it is not listed on the top 20 creditor list, according to its Rule 2016 statement Lynn Pinker is owed $319,419.58 by the Debtor. *See* Docket No. 70-4.

Terry, also creditors of the Debtor. Thus, Foley and Lynn Pinker now have the exact "conflict" that they alleged disqualified Winstead and required disgorgement from Winstead in the Acis Bankruptcy Case.

16. All rights are reserved to raise this as an issue for disqualification and disgorgement of fees by Foley and Lynn Pinker if the Debtor prevails on its argument on appeal.[21]

*[Remainder of page intentionally left blank]*

---

[21] To be clear, Acis believes this argument and related appeal are frivolous, and all rights are reserved to seek sanctions against the Debtor, Foley and Lynn Pinker in the appropriate forum.

WHEREFORE, Acis respectfully (i) requests Foley and Lynn Pinker provide full and complete disclosure of all connections with the Debtor as required under the Bankruptcy Code, Bankruptcy Rules and Local Rules in order to assess their employment Applications; (ii) objects to the employment of Foley and Lynn Pinker to the extent that the Debtor intends to be responsible for fees and expenses incurred by other Foley and Lynn Pinker clients, including the Cayman Defendants and Neutra; (iii) reserves all rights to seek disqualification and disgorgement of fees from Foley and Lynn Pinker based on conflicts of interest that may become apparent as this case moves forward; and (iv) requests such other further relief as is just and proper.

|  |  |
|---|---|
| Dated: November 12, 2019<br>Wilmington, Delaware | **BLANK ROME LLP**<br><br>*/s/ Josef W. Mintz*<br>John E. Lucian (*pro hac vice*)<br>Josef W. Mintz (DE No. 5644)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Email:   lucian@blankrome.com<br>         mintz@blankrome.com<br><br>**WINSTEAD PC**<br>Rakhee V. Patel (*pro hac vice*)<br>Phillip Lamberson (*pro hac vice*)<br>Annmarie Chiarello (pro hac pending)<br>2728 N. Harwood Street, Suite 500<br>Dallas, Texas 75201<br>Telephone: (713) 650-8400<br>Facsimile: (713) 650-2400<br>Email:   rpatel@winstead.com<br>         plamberson@winstead.com<br>         achiarello@winstead.com<br><br>*Attorneys for Acis Capital Management GP LLC and Acis Capital Management, L.P.* |