# Appendix Exhibit 11

1

2  UNITED STATES BANKRUPTCY COURT

3  DISTRICT OF DELAWARE

4  - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6  HIGHLAND CAPITAL MANAGEMENT, L.P.,        Case No.

7          Debtor.                          19-12239(CSS)

8  - - - - - - - - - - - - - - - - - - - - -x

9

10

11                  United States Bankruptcy Court

12                  824 North Market Street

13                  Wilmington, Delaware

14

15                  December 2, 2019

16                  10:07 AM

17

18

19  B E F O R E:

20  HON. CHRISTOPHER S. SONTCHI

21  CHIEF U.S. BANKRUPTCY JUDGE

22

23  ECR OPERATOR:  LESLIE MURIN

24

25

1    transactions and is in charge of the debtor's restructuring
2    efforts, and that he has no prior relationship with either Acis
3    or the Texas bankruptcy court with respect to this matter.  He
4    would testify that his goal in this case is to maximize the
5    value of the debtor's estate for the benefit of all
6    constituents, and he intends to evaluate all available
7    strategic options for accomplishing the goal, and hopes to work
8    constructively with the committee in that regard.

9              He believes that the outcome of this case will not
10   turn on the day-to-day management of the debtor's assets but
11   instead will be driven by the debtor's ability to restructure
12   its balance sheet and maximize the value of its assets, many of
13   which are liquid.  He would testify that either he or Fred
14   Caruso would provide substantially all the testimony that would
15   be provided for the debtor in this case.

16             Lastly, he would testify that he's been on the job for
17   over a month-and-a-half, that the debtor has been following the
18   protocols set out in the motion for which approval is being
19   sought today.  He would testify the debtor's being transparent
20   with the creditors' committee, has met with and communicated
21   with FTI on many occasions, and shared a lot of information.
22   And he would testify that there have been no allegations made
23   by the committee or any other party, regarding any post-
24   petition impropriety by the debtor.

25             That concludes my proffer of Mr. Sharp's testimony.

Case 3:21-cv-00881-X   Document 174-11   Filed 12/16/23   Page 4 of 10   PageID 17370

1    necessary in order for this -- if it's going to be a successful

2    restructure, they're the ones that are necessary to make it a

3    successful restructure.  Thank you.

4              THE COURT:  You're welcome.

5              All right, let's break for lunch until 1:45.  And when

6    I come back at 1:45 -- when we come back at 1:45, I am going to

7    issue an oral decision on this motion.  All right.

8         (Recess at 12:39 p.m. until 1:47 p.m.)

9              THE CLERK:  All rise.

10             THE COURT:  Please be seated.

11             Okay, good afternoon.  Thank you for coming back.  I'm

12   now prepared to rule on the motion to transfer venue, which I'm

13   going to grant.

14             So I think, as I hinted at during argument, that the

15   case law that we're kind of clinging to on motions to transfer

16   venue, really do not reflect the modern reality of Chapter 11

17   practice in the U.S. and internationally.  And I think a lot of

18   the parts of the test really don't reflect what's going on

19   generally in Chapter 11 cases.

20             The thing I take greatest umbrage -- no, "umbrage"

21   isn't the right word -- but disagree with the most is the idea

22   that there's somehow a strong presumption of the debtor's

23   choice of forum.

24             Look, every debtor that files bankruptcy -- certainly

25   every sophisticated Chapter 11 debtor that files bankruptcy --

operations@escribers.net | www.escribers.net

1   is engaged in forum-shopping.  There is an element to that.

2   Where you file will depend on a lot of things that are unique

3   to the forum.

4          I don't think you need to be ashamed of that.  I don't

5   think that's bad.  As long as the venue you're choosing is

6   appropriate under the law, certainly you're going to make

7   decisions based on what the law is in that particular district,

8   perhaps even a preference to individual judges or judge in that

9   district.

10          To compound that with a strong presumption in favor of

11  the debtor is to really give a boost to the debtor's choice of

12  forum, which is made -- included in the decision-making process

13  is an element of forum-shopping, to a level that makes it very

14  difficult to overcome that presumption.

15          Of course, the creditors that file a motion to

16  transfer venue are engaged in forum-shopping themselves.

17  Otherwise, why would they be switching forums and going for a

18  different location.  Again, I don't think that the word "forum-

19  shopping" should have the negative connotation that it has come

20  to have in the law.  It is the reality of bankruptcy practice.

21          Now, if that's involved -- if that goes a step further

22  and somehow involves chicanery or something inappropriate just

23  from an ethical standpoint, of course that's problematic.  But

24  there's absolutely no indication here whatsoever that anyone,

25  on behalf of the debtor or the creditors or the Dallas court or

App. 0188

1    the Delaware court, is doing anything other than acting

2    appropriately.

3            The question about a motion to transfer venue is

4    whether the motion should be granted by a preponderance of the

5    evidence.  If you add a strong presumption, you're turning it

6    into a harder motion to be granted; and I don't think that's

7    appropriate.

8            However, I find the laundry list of factors that are

9    generally discussed to be irrelevant or almost irrelevant to

10   the actual issues that are going on, particularly in a case

11   like this.  And I'll get to that in a second.

12           So six of the debtors are located in Texas; UBS is

13   located in New York.  UBS is located everywhere.  Wells Fargo

14   is located everywhere.  Certainly companies have executive

15   suites.  But whether or not that should be the decision about

16   where a case should file, to me, isn't particularly clear.  It

17   depends on the facts of the case.

18           I think a more general approach that would involve

19   looking at the facts and circumstances of a case and seeing

20   whether it points to a specific jurisdiction might be a more

21   helpful way of proceeding.  And that's what this case is really

22   about.

23           This is a unique case, I think.  It is a different

24   case than those that we usually run into.  And although maybe

25   not completely different from every case, but in any event,

App. 0189

1  this case is very focused on responding to existing litigation.

2  And that existing litigation of a former affiliate, as of a few

3  months ago, and a pending appeal that could make it a current

4  affiliate, is located in the Northern District of Texas.

5          The judge in the Northern District of Texas has done a

6  tremendous amount of work and has done -- issued a number of

7  opinions, had a number of trials.  That work creates a

8  familiarity with the facts, issues, and players in a case

9  which, while it may not affect the actual decision based on

10 evidence on a motion-by-motion basis, certainly could color a

11 judge's approach to a case.

12         Judges are human.  Judges make judgments over time as

13 to the parties, as to the lawyers.  That's not inappropriate,

14 as long as you stick by the rules of evidence.  But it

15 certainly can color what credibility you might give to a

16 witness or to counsel.

17         I think here we have a situation where the real

18 gravitas of this case is in Dallas.  The two facts that really

19 come out to me are, in this case, the fact that the executive

20 suite is very focused and very Dallas-oriented.  It's a global

21 empire, but it's clearly focused in Dallas.  And the existing

22 litigation in the Acis bankruptcy that's been going on for some

23 time; those are the two predominant factors.

24         Everything else kind of falls away.  The creditors are

25 scattered.  The assets are scattered.  The economic

1  administration isn't being affected one way or the other.  I

2  mean, people can get on planes and you can go to Philly or you

3  can go to Dallas.  Either way, you're stuck on American

4  Airlines.  But so be it.

5          It can be done.  And as a result, I think that the

6  best solution here, to give the debtors a fair shot at

7  reorganization, but to balance the creditors' rights and the

8  creditors' desires, is to move the case to Texas.

9          And on that latter point, just to finish up.  As I

10  said with my previous decision in EFH, it was striking in that

11  case that only one creditor moved to transfer venue and that

12  none of the other creditors either actively opposed or simply

13  stayed silent with regard to that motion, including significant

14  creditors, like the official committee.

15          In this case, we have the opposite.  We have the

16  debtor defending its venue choice, of course.  But there's a

17  lot of silence, because there's no one else on that side.  I

18  thought it highly significant that Jefferies and -- is it

19  Fortress?

20          UNIDENTIFIED SPEAKER:  Frontier.

21          THE COURT:  Frontier, thank you.  That Jefferies and

22  Frontier did not take a position.  And no other creditors

23  opposed the committee's motion.  And the committee consists of

24  a series of very large creditors.

25          So I think that given these facts and circumstances,

1   particularly the unique nature of the ongoing litigation and

2   the existing tie to Dallas, the executive suite and management,

3   principal place of business, if you will, being focused in

4   Dallas, and creditors -- as Counsel said -- voting with their

5   feet to move the case to Dallas, and applying just a good old

6   fashioned preponderance of the evidence standard, that the

7   Court should grant the motion, which I will do.

8          Now, I need an order.  And we will get the machinery

9   in place, as soon as I get the order signed, to transfer the

10  file as quickly as possible.

11         I did call Judge Jernigan prior -- right before I came

12  out -- well, right before I went and got lunch and then came

13  out -- to inform her what I was going to do, so the Dallas

14  court is aware that this is -- that this is an issue that's

15  coming their way.

16         Is there anything -- I'm not going to create a lot of

17  law of the case for Judge Jernigan on matters that don't need

18  to be decided today.  Is there anything the parties actually

19  agree on that needs to go forward today or can go forward

20  today?  If not, I'd rather just save everything for Judge

21  Jernigan to have a fresh look at.  I know that she did mention

22  that she has availability on her calendar over the next several

23  weeks.  So you should be able to get on it rather quickly, once

24  the case gets transferred.

25         We used to send big boxes in the mail to do this, but

Case 19-12239-CSS    Doc 181    Filed 12/03/19    Page 116 of 137
Case 3:21-cv-00881-X    Document 174-11    Filed 12/16/23    Page 10 of 10    PageID 17376

116

1

2                    C E R T I F I C A T I O N

3

4    I, Clara Rubin, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9

10                                        December 3, 2019

11   _____        _____

12   CLARA RUBIN                           DATE

13

14   eScribers, LLC

15   352 Seventh Avenue, Suite #604

16   New York, NY 10001

17   (973) 406-2250

18   operations@escribers.net

19

20

21

22

23

24

25