# Appendix Exhibit 31

Case 19-34054-sgj11 Doc 690 Filed 06/03/20    Entered 06/03/20 16:53:23    Page 1 of 7
Case 3:21-cv-00881-X   Document 174-31   Filed 12/16/23   Page 2 of 8   PageID 17705
Docket #0690  Date Filed: 06/03/2020

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | Docket Ref. No. 644 |

**OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO UBS'S MOTION FOR RELIEF
FROM THE AUTOMATIC STAY TO PROCEED WITH STATE COURT ACTION**

The official committee of unsecured creditors (the "Committee")[2] of Highland Capital Management, L.P. (the "Debtor"), hereby submits this objection (the "Objection") to *UBS's Motion for Relief From the Automatic Stay to Proceed with State Court Action* [Docket No. 644] (the "Lift Stay Motion").[3]  In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Committee seeks an efficient resolution of this case through a chapter 11 plan providing for meaningful and equitable distributions to the Debtor's creditors as quickly as

---

[1]  The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2]  For purposes of this Objection, the Committee consists of (i) Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, and (iii) Acis Capital Management, L.P. and Acis Capital Management GP, LLP.  UBS Securities LLC and UBS AG London Branch did not participate in the Committee's discussions with respect to the Lift Stay Motion and do not join in this Objection.

[3]  All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Lift Stay Motion.

‖1934054200603000000000004‖
App. 0922

possible. In the Lift Stay Motion, UBS asserts its claim against the Debtor is in excess of $1 billion, which is by far the largest claim asserted against the Debtor's estate. Therefore, adjudication of the allowance and amount of UBS's claim against the Debtor's estate will have a significant impact on the recoveries of the estate's other creditors and the timing of those recoveries and may inform creditors' analysis of a chapter 11 plan. Accordingly, it is critically important that UBS's claim against the Debtor be adjudicated as soon as possible and in a forum that provides the appropriate transparency into, and for participation in, the adjudication process.[4] The Committee believes that this Court is the most appropriate forum in which to expeditiously resolve the UBS claims with appropriate transparency and opportunity for participation and therefore requests that the Lift Stay Motion be denied.

## OBJECTION

**I.    Any Agreement by the Debtor to Lift the Automatic Stay is Not Binding on the Committee or the Court.**

2.    Any prior agreement by the Debtor that it would stipulate to the lifting of the automatic stay is not binding on the Court or any other party in interest, including the Committee. Section 362(d) of the Bankruptcy Code, which provides the process by which relief from the automatic stay is obtained, requires notice and a hearing before the stay may be terminated or modified. 11 U.S.C. § 362(d); *see also* Fed. R. Bankr. P. 4001(d) (requiring that an agreement relating to relief from the automatic stay be filed with a motion for court approval and requiring notice to the creditors' committee and an opportunity to object). Section 362(d) and Rule 4001(d) require notice and a hearing to allow the Court to determine whether lifting the automatic stay would be prejudicial to the estate and other creditors and provides other parties in interest with an

---

[4] The Committee takes no position as to the merits of UBS's claims against the Debtor.

opportunity to be heard. In making this determination, the Court has significant discretion in deciding whether "cause" exists to lift the stay under 362(d)(1). *See Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 (5th Cir. 2006) (observing the flexibility afforded to bankruptcy courts in determining whether to lift the stay); *In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001) ("the granting of relief from the automatic stay is left to the discretion of the Bankruptcy Court and decided on a case by case basis."). Therefore, the Court is not required to lift the stay based on the purported prior agreement with the Debtor, and the Committee is not bound thereby.

## II. The Interests of Creditors are Best Served by Denying the Lift Stay Motion

3. Courts have applied various factors to determine whether "cause" exists to lift the automatic stay to permit litigation against a debtor to continue, and there is no prevailing approach in this district. *In re Choice ATM Enterprises, Inc.*, Case No. 14-44982, 2015 WL 1014617 at *3-5 (Bankr. N.D. Tex. Mar. 4, 2015) (declining to lift the stay after considering whether: (1) judicial economy is better achieved through continuing the litigation in district court or estimating the claims in bankruptcy court, (2) either forum avoids unnecessary expense and delay, (3) the claim is critical to the success or failure of the reorganization, and (4) the nature of the claim requires expertise beyond the abilities of the bankruptcy court). Ultimately, the Court must consider the effect the litigation would have on the administration of the estate, including the prejudice to the estate and other creditors. *See In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984) (denying relief from the stay where claim could be liquidated more expeditiously in bankruptcy court and concluding that "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate."); *In re Chan*, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006)

(observing that courts will deny relief when the issue can be resolved in the bankruptcy court and there are no special circumstances tipping the balance of harms in favor of the creditor seeking relief). Here, the interests of the estate and other creditors weigh heavily in favor of denying UBS's request to list the stay.

4. The Debtor has been in bankruptcy for over seven months, and the Committee seeks to have the case move forward toward a resolution as quickly as possible. Given the size of the asserted UBS claims, it weighs over the bankruptcy process and must be resolved expeditiously. The Committee has significant concerns that lifting the stay to permit UBS to litigate in State Court at this time would delay the prompt resolution that is in the best interests of the estate and would prejudice the other creditors.

5. The magnitude of UBS's asserted claim, and its impact on the estate and recoveries of all other creditors further weighs in favor of denying the Lift Stay Motion. *See Choice ATM*, 2015 WL 1014617 at *6 (concluding that it was important for the bankruptcy court to determine the subject claims because such claims were the largest against the estate and critical to the reorganization); *In re John Q. Hammons Fall 2006, LLC*, Case No. 16-21142, 2017 WL 4620872 at *4-6 (Bankr. D. Kan. 2017 Oct. 13, 2017) (denying request to lift stay where estate's other creditors believed they would be adversely affected by state court litigation due to size of claim and its impact on the plan). Given the undeniable impact that UBS's claims could have on the recoveries of other creditors, it is critical that the adjudication of the UBS claims provide the Debtor's other creditors with transparency into, and the ability to participate in, the adjudication process. Two fundamental tenants of bankruptcy are the collective nature of the proceeding and the transparency provided to all creditors. *See In re Residential Capital, LLC*, Case No. 12-12020, 2012 WL 3555584 at *4-5 (Bankr. S.D.N.Y. Aug. 16, 2012) (citing the Bankruptcy Code's policy

of providing a centralized forum to handle all disputes concerning the debtor's estate in denying a request to lift the automatic stay to pursue litigation in another forum). If the stay is lifted to permit UBS to litigate its claims against the estate in the State Court, the rights of other creditors will be prejudiced as such creditors will have no visibility into the process by which the UBS claims are determined or how liability may be apportioned among the multiple defendants. Having this Court adjudicate the UBS claims allows such claims to be resolved through an established process that serves the core principles of bankruptcy by ensuring that other creditors are able to monitor and participate in the proceedings that will have a substantial effect on their recoveries.

6. Importantly, the Court is clearly capable of adjudicating UBS's claims against the Debtor. The claims (such as fraudulent conveyance, breach of duty, tortious interference) are based on state law, but do not present issues that are beyond the expertise of this Court. *See Choice ATM*, 2015 WL 1014617 at *6 (declining to lift the stay where the state law claims did not present any issues beyond the expertise of the bankruptcy court, and observing that Congress intended for all claims, including unliquidated claims, to be 'dealt with' in the bankruptcy proceeding); *In re CLC of America, Inc.*, 68 B.R. 512, 514 (Bankr. E.D. Mo. 1986) (denying request to litigate in state court and finding that state law claims based on fraud, negligent misrepresentation, and breach of contract were matters routinely heard in bankruptcy court). Discovery has concluded, and the State Court's prior rulings and decision on claims UBS brought against non-debtor parties can aid the parties in adjudicating the UBS claims against the Debtor before this Court in a streamlined manner.

7. Adjudicating UBS's claims against the Debtor in the chapter 11 case, through section 502(c) of the Bankruptcy Code[5] or otherwise, will be more efficient and lead to a more timely resolution of the claims. *See Choice ATM*, 2015 WL 1014617 at *5 (concluding that utilizing the Bankruptcy Code's "highly efficient claims estimation process" to address an unliquidated would better facilitate the debtor's reorganization than permitting litigation to continue in another forum). Despite asserting that UBS's claims against the Debtor in the State Court Action are "trial ready," there is no trial date established, and it is highly unlikely that a date can be set in the near term. The courthouses in New York City are currently closed to in-person operations. *See* Administrative Order 68-20, March 16, 2020 (suspending non-essential matters)[6]; Message from Chief Judge DiFiore dated June 1, 2020[7] (stating that courts in New York City have not yet started the first phase of reopening). It remains uncertain as to when regular court operations will resume, and as such, there is no evidence that UBS's claims against the estate can be resolved in the State Court in the near future.

8. For all of these reasons, the Committee believes that this Court is the best suited to address the UBS claims in a timely and efficient manner. Accordingly, the Committee believes that the Court should deny the Lift Stay Motion, require UBS to file its proof of claim against the estate, and permit such claim to be adjudicated by this Court.

---

[5] Section 502(c) provides, in relevant part, that "[t]here shall be estimated for purpose of allowance under this section any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1).

[6] *Available at* https://www.nycourts.gov/whatsnew/pdf/AO-68-20.pdf

[7] *Available at* http://www.nycourts.gov/whatsnew/pdf/June1-CJ-Message.pdf

WHEREFORE, the Committee respectfully requests that the Court deny the Lift Stay Motion, and resolve the UBS claims through the bankruptcy claims allowance process.

Dated: June 3, 2020
      Dallas, Texas

SIDLEY AUSTIN LLP
/s/ *Juliana L. Hoffman*
Penny P. Reid
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 74201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

Bojan Guzina (admitted *pro hac vice*)
Matthew A. Clemente (admitted *pro hac vice*)
Dennis M. Twomey (admitted *pro hac vice*)
Alyssa Russell (admitted *pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS