# Appendix Exhibit 35

Docket #0774 Date Filed: 06/23/2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | §<br>§ | **Case No. 19-34054**<br>**Chapter 11** |
| | § | |
| **Debtor.** | § | |
| | § | |

Response Deadline: **July 10, 2020 at 5:00 p.m.**
Hearing Date: **July 14, 2020 at 1:30 p.m.**

## DEBTOR'S MOTION UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) FOR AUTHORIZATION TO RETAIN JAMES P. SEERY, JR., AS CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER AND FOREIGN REPRESENTATIVE *NUNC PRO TUNC* TO MARCH 15, 2020

1934054200623000000000005

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing the Debtor (a) (i) to retain James P. Seery, Jr. as the chief executive officer and chief restructuring officer of the Debtor, pursuant to the terms of the letter attached as Exhibit 1 to the Proposed Order (the "Agreement") *nunc pro tunc* to March 15, 2020, and (ii) for Mr. Seery to replace the Debtor's current chief restructuring officer as the Debtor's foreign representative pursuant to 11 U.S.C. § 1505, and (b) granting related relief.  In support of the Motion, the Debtor respectfully represents as follows:

## Jurisdiction

1.     The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.     The bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code.

## Background

3.     On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Bankruptcy Court").

4.     On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. Trustee in the Delaware Court.  On December 4, 2019,

the Delaware Bankruptcy Court entered an order transferring venue of the Debtor's chapter 11 case to this Court [Docket No. 186].[1]

5.      The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

6.      On December 4, 2019, the Debtor filed in the Delaware Bankruptcy Court its *Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) To Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc, as of the Petition Date* [Docket No. 74] (the "CRO Motion").  The CRO Motion sought, among other things, to appoint Bradley Sharp as the Debtor's chief restructuring officer and for DSI to provide financial advisory services to the Debtor in support of Mr. Sharp.

7.      On December 27, 2019, the Debtor filed the *Motion of the Debtor for Approval of Settlement with* the *Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] (the "Settlement Motion").  The Settlement Motion sought approval of the settlement between the Debtor and the Committee and provided for, among other things, the creation of a new independent board of directors of Strand Advisors, Inc.[2] (the "New Board") consisting of

---

[1]  All docket numbers refer to the docket maintained by this Court.

[2]  Strand Advisors, Inc. ("Strand") is the general partner of the Debtor.

James P. Seery, Jr., John S. Dubel, and Russell Nelms (collectively, the "Independent Directors").

8.     The order granting the Settlement Motion authorized the Debtor to guarantee Strand's obligations to indemnify each Independent Director pursuant to the terms of any indemnification agreements entered into by Strand with each of the Independent Directors (the "Indemnification Agreements").

9.     The Court entered orders approving the Settlement Motion on January 9, 2020[3] and the DSI Approval Order on January 10, 2020.

10.     The Settlement Order approved, among other things, a term sheet setting forth the agreement between the Debtor and the Committee.  The final term sheet was attached to the *Notice of Final Term Sheet* filed in the Court on January 14, 2020 [Docket No. 354] (the "Final Term Sheet").  The Settlement Order also provided that no entity could commence or pursue a claim or cause of action against any Independent Director and/or his respective advisors and agents relating in any way to his role as an independent director of Strand unless authorized by this Court pursuant to the criteria set forth in the Settlement Order.[4]

11.     The Settlement Motion and Final Term each provided that "[a]s soon as practicable after their appointments, the Independent Directors shall, in consultation with the

---

[3] *See Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and the Procedures for Operations in the Ordinary Course* [Docket No. 339] (the "Settlement Order").

[4] Specifically, paragraph 10 of the Settlement Order provides:

> No entity may commence or pursue a claim or cause of action of any kind against any Independent Director, any Independent Director's agents, or any Independent Director's advisors relating in any way to the Independent Director's role as an independent director of Strand without the Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Independent Director, any Independent Director's agents, or any Independent Director's advisors and (ii) specifically authorizing such entity to bring such claim. The Court will have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

Committee, determine whether a CEO should be appointed for the Debtor. If the Independent Directors determine that appointment of a CEO is appropriate, the Independent Directors shall appoint a CEO acceptable to the Committee as soon as possible, which may be one of the Independent Directors." Final Term Sheet, page 3; Settlement Motion, ¶ 13.

12.     On February 18, 2020, the Court entered its *Order (I) Authorizing Bradley D. Sharp to Act as Foreign Representative Pursuant to 11 U.S.C. § 1505 and (II) Granting Related Relief* [Docket No. 461] (the "<u>Foreign Representative Order</u>"). The Foreign Representative Order authorized Mr. Sharp, as chief restructuring officer, to act as the Debtor's foreign representative pursuant to section 1515 of the Bankruptcy Code (the "<u>Foreign Representative</u>"). The Foreign Representative specifically appointed Mr. Sharp to act as the Debtor's foreign insolvency officeholder to seek appropriate relief in Bermuda pursuant to Bermudian common law (the "<u>Bermuda Foreign Representative</u>") and the Cayman Islands pursuant to Section 241(1) of the Companies Law (2019 Revision) with respect to that British overseas territory (the "<u>Cayman Foreign Representative</u>").

13.     Since the appointment of the Independent Directors, it was apparent that it would be more efficient to have a traditional corporate management structure oversee the Debtor – i.e., a fully engaged chief executive officer supervised by the New Board – as contemplated by the Final Term Sheet. This need was driven by the complexity of the Debtor's organization and business operations and the need for daily management and oversight of the Debtor's personnel. The search for a chief executive officer, however, was delayed while the Independent Directors made initial efforts to learn the Debtor's business and its day-to-day operations. It was further delayed with the onset of the COVID-19 global pandemic, which both had a serious impact on

the Debtor's operations and assets and limited the Independent Directors' ability to search for an appropriate chief executive officer.

14. During this time, however, Mr. Seery integrated himself into the daily operations of the Debtor and became essential in stabilizing the Debtor's assets and trading accounts during the economic distress caused by COVID-19. While Mr. Dubel and Mr. Nelms were each spending on average approximately 140 hours a month addressing the operational issues facing the Debtor and certain of its fund entities, Mr. Seery's workload was at least 180 hours a month.

15. As such, it was readily apparent to the Independent Directors who would be the best fit for the role: Mr. Seery. Mr. Seery had the appropriate skill set, extensive relevant background, and was already carrying the responsibility of the role. Mr. Seery had been functionally operating as the Debtor's de facto chief executive officer since at least early March and was already overseeing the Debtor's ordinary course operations, including managing the Debtor's personnel and the daily interactions with the Debtor's bankruptcy professionals

16. The Independent Directors subsequently appointed a compensation committee consisting of Messrs. Dubel and Nelms (the "Compensation Committee") to negotiate the terms and conditions of the Agreement on behalf of the Debtor. And, on June 23, 2020, the Compensation Committee approved the appointment of Mr. Seery to serve as both the Debtor's chief executive officer and chief restructuring officer concurrently with his role as one of the Independent Directors pursuant to the terms of the Agreement. Because Mr. Seery has been fulfilling the role since March 2020, the Compensation Committee determined that it was appropriate to make Mr. Seery's appointment as the Debtor's chief executive officer and chief

restructuring officer effective as of March 15, 2020.[5] The Independent Directors also authorized the Debtor to file this Motion.

**A.** <u>The Chief Executive Officer and Chief Restructuring Officer Positions</u>

17. Mr. Seery has agreed to, among other things, provide daily leadership and direction to the Debtor's employees on business and restructuring matters relating to the Debtor's chapter 11 case. In that capacity, he will direct the Debtor's day-to-day ordinary course operations, oversee the Debtor's personnel, make management decisions with respect to the Debtor's trading operations, direct the Debtor's reorganization efforts, monetize the Debtor's assets, oversee the claims objection and resolution process, and lead the process toward the hopeful consensual confirmation of a plan in this chapter 11 case in the capacities as chief executive officer and chief restructuring officer positions. Mr. Seery would report directly to the New Board and would continue to serve as an Independent Director, as provided under the Settlement Order.

18. Mr. Seery has extensive management and restructuring experience. Mr. Seery recently served as a Senior Managing Director at Guggenheim Securities, LLC, where he was responsible for helping direct the development of a credit business. Prior to joining Guggenheim, Mr. Seery was the President and a senior investing partner of River Birch Capital, LLC, where he was responsible for originating, executing, and managing stressed and distressed credit investments. Mr. Seery is also a long-time attorney licensed to practice in New York who

---

[5] The Committee has also agreed to Mr. Seery's appointment as chief executive officer and chief restructuring officer and to the amount of Mr. Seery's Base Compensation (as defined below). The Committee has not agreed, however, as to the amount and timing of the payment of the Restructuring Fee (defined below) and are continuing to discuss payment of the Restructuring Fee with the Compensation Committee.

has run corporate reorganization groups and numerous restructuring matters. He also served as a Commissioner of the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11. Mr. Seery was also a Managing Director and the Global Head of Lehman Brothers' Fixed Income Loan business where he was responsible for managing the firm's investment grade and high yield loans business, including underwriting commitments, distribution, hedging, trading and sales (including CLO manager relationships), portfolio management and restructuring. From 2000 to 2004, Mr. Seery ran Lehman Brothers' restructuring and workout businesses with responsibility for the management of distressed corporate debt investments and was a key member of the small team that successfully sold Lehman Brothers to Barclays in 2008.

<u>The Agreement</u>

19. The Compensation Committee negotiated the Agreement with Mr. Seery at arm's length. The additional material economic terms of the Agreement are as follows:[6]

> (a) <u>Term</u>: Commencing retroactively to March 15, 2020.

> (b) <u>Roles</u>: Mr. Seery shall serve as the chief executive officer and chief restructuring officer of the Debtor and shall be responsible for the overall management of the business of the Debtor during its chapter 11 case, including: directing the Debtor's day-to-day ordinary course operations, overseeing the Debtor's personnel, making management decisions with respect to the Debtor's trading operations, directing the reorganization and restructuring of the Debtor, the monetization of the Debtor's assets, resolution of claims, the development and negotiation of a plan of reorganization or liquidation, and the implementation of such plan. Mr. Seery shall remain a full member of the New Board and shall be entitled to vote on matters other than on those in which he is conflicted. Mr. Seery shall devote as much time to the engagement as he determines is required to execute his responsibilities as chief executive officer and chief restructuring officer. Mr. Seery will have no specific on-site requirements in Dallas, Texas, but shall be

---

[6] What follows is by way of summary only and is qualified in its entirety by reference to the Agreement, which controls. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Agreement.

on site as much as he determines is necessary to execute his responsibilities as chief executive officer and chief restructuring officer, consistent with applicable COVID-19 orders, protocols and advice.

(c) <u>Compensation for Services</u>: Mr. Seery's compensation under the Agreement shall consist of the following:

(1) <u>Base Compensation</u>: $150,000 per month, which shall be due and payable at the start of each calendar month; plus

(2) <u>Bonus Compensation; Restructuring Fee</u>:

Subject to separate Bankruptcy Court approval, the Compensation Committee and Mr. Seery have reached agreement on the payment of a restructuring fee upon confirmation of either a Case Resolution Plan or a Monetization Vehicle Plan in each case as defined below (the "<u>Restructuring Fee</u>").[7] The Committee has not yet agreed to the amount, composition, and timing of the Restructuring Fee. The Compensation Committee and Mr. Seery have agreed to defer Court consideration of the Restructuring Fee until further development in the Case. The Restructuring Fee agreed to by Mr. Seery and the Compensation Committee is as follows:

<u>Case Resolution Restructuring Plan</u>

On confirmation of any plan or reorganization or liquidation based on resolution of a material amount of the outstanding claims and their respective treatment, even if such plan includes (x) a debtor/creditor trust or similar monetization and claims resolution vehicle, (y) post-confirmation litigation of certain of the claims, and (z) post-confirmation monetization of debtor assets (a "<u>Case Resolution Plan</u>"):

$1,000,000 on confirmation of the Case Resolution Plan;

$500,000 on the effective date of the Case Resolution Plan; and

---

[7] Although the Compensation Committee and Mr. Seery have agreed on the amount and timing of the Restructuring Fee, both the Compensation Committee and Mr. Seery understand that the Restructuring Fee is payable only upon order of this Court. The Compensation Committee is reserving the right to seek approval of the Restructuring Fee from this Court in connection with the confirmation hearing on a plan or as otherwise appropriate.

$750,000 on completion of cash or property distributions to creditors as contemplated by the Case Resolution Plan.

Debtor/Creditor Monetization Vehicle Restructuring Fee:

On confirmation of any plan or reorganization or liquidation based on a debtor/creditor trust or similar asset monetization and claims resolution vehicle that does not include agreement among the debtor and creditors on a material amount of the outstanding claims and their respective treatment at confirmation (a "Monetization Vehicle Plan"):

$500,000 on confirmation of the Monetization Vehicle Plan;

$250,000 on the effective date of the Monetization Vehicle Plan; and

A contingent restructuring fee to be determined by the board or oversight committee installed to oversee the implementation of any Monetization Vehicle Plan based on the CEO/CRO (or acting as trustee) based upon performance under the plan after all material distributions under the Monetization Vehicle Plan are made.

(e) Participation in Employee Benefit Plans:  Mr. Seery shall act as an independent professional contractor and shall not be an employee of the Debtor.  Mr. Seery will pay for his own benefits and will not participate under the Debtor's existing employee benefit plans.

(f) Expenses:  Reimbursement of actual and reasonable out-of-pocket expenses in connection with the services provided under the Agreement.  Expenses will be generally consistent with expenses incurred to date as a member of the New Board.

(g) Conflicts and Other Engagements.  Mr. Seery is not aware of any potential conflicts of interest based on his understanding of the various parties involved in the Debtor's chapter 11 case to date.  Mr. Seery shall not be precluded from representing or working with or for any other person or entity in matters not directly related to the services being provided to the Debtor under the Agreement.  Mr. Seery shall not undertake any engagements directly adverse to the Debtor during the term of his engagement.

(h) <u>Termination</u>. The Agreement may be terminated at any time by either the Debtor or by Mr. Seery upon two weeks advance written notice given to the other party. The termination of the Agreement shall not affect Mr. Seery's right to receive, and the Debtor's obligation to pay, any and all Base Compensation and Expenses incurred (even if not billed) prior to the giving of any termination notice; *provided however*, that (1) if the Agreement is terminated by Mr. Seery, the amount of Base Compensation owed shall be calculated based on the actual number of days worked during the applicable month and Mr. Seery will return any Base Compensation received in excess of such amount, and (2) if the Agreement is terminated by the Debtor, Base Compensation shall be deemed fully earned as of the first day of any month. Bonus Compensation shall be earned by Mr. Seery immediately upon his termination by the Debtor; *provided however*, Mr. Seery shall not be entitled to Bonus Compensation if: (A) the Debtor's chapter 11 case is converted to chapter 7 or dismissed; (B) a chapter 11 trustee is appointed in the Debtor's chapter 11 case; (C) Mr. Seery is terminated by the Debtor for Cause;[8] or (D) Mr. Seery resigns prior to confirmation of a plan or court approval of a sale as described in the Fees and Expense/Compensation for Services section of the Agreement.

(j) <u>Conditional Requirement to Seek Further Court Approval of Agreement</u>. The Committee may, upon two weeks advance written notice to the Debtor, require the Debtor to file a motion with the Bankruptcy Court on normal notice seeking a continuation of the Agreement and if such motion is not filed, the Agreement will terminate at the expiration of such two week period. If the Debtor files such motion, Mr. Seery will be entitled to the Base Compensation through and including the date on which a final order is entered on such motion by this Court. Notwithstanding anything herein to the contrary, the Committee may not deliver such notice to the Debtor until a date which is more than ninety days following the date this Court enters an order approving the Agreement.

(j) <u>Indemnification</u>. the Debtor agrees (i) to indemnify and hold harmless Mr. Seery and any of his affiliates (the "<u>Indemnified Party</u>"), to the fullest extent lawful, from and against any and all

---

[8] For purposes of the Agreement, "Cause" means any of the following grounds for termination of Mr. Seery's engagement, in each case as reasonably determined by the New Board within 60 days of the New Board becoming aware of the existence of the event or circumstance: (A) fraud, embezzlement, or any act of moral turpitude or willful misconduct on the part of Mr. Seery; (B) conviction of or the entry of a plea of *nolo contendere* by Mr. Seery for any felony; (C) the willful breach by Mr. Seery of any material term of the Agreement; or (D) the willful failure or refusal by Mr. Seery to perform his duties to the Debtor, which, if capable of being cured, is not cured on or before fifteen (15) days after Mr. Seery's receipt of written notice from the Debtor.

losses, claims, costs, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Agreement, Mr. Seery's engagement under the Agreement, or any actions taken or omitted to be taken by Mr. Seery or the Debtor in connection with the Agreement and (ii) to reimburse the Indemnified Party for all expenses (including, without limitation, the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action, or any fee dispute), arising out of or relating to the Agreement, or such engagement, or actions. However, the Debtor shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of the Indemnified Party.

The Debtor has agreed to extend the indemnification and insurance currently covering Mr. Seery's role as a director to fully cover Mr. Seery in his roles as chief executive officer and chief restructuring officer. The Debtor is currently working to extend such coverage.

Mr. Seery is also entitled to any indemnification or other similar provisions under the Debtor's existing or future insurance policies, including any policy tails obtained (or which may be obtained in the future), by the Debtor.

<u>Relief Requested</u>

20.     By this Motion, the Debtor seeks the entry of the Proposed Order authorizing the Debtor to retain Mr. Seery pursuant to the terms of the Agreement, *nunc pro tunc* to March 15, 2020. The Motion also seeks to amend the Foreign Representative Order to appoint Mr. Seery as the Debtor's Foreign Representative, Bermuda Foreign Representative and Cayman Foreign Representative in the stead of Mr. Sharp.

21.     The Debtor believes that the Debtor's retention of a chief executive officer and chief restructuring officer constitutes an act in the ordinary course of business, and

consequently, is permissible under Bankruptcy Code section 363(c) without Court approval. However, out of an abundance of caution, the Debtor seeks this Court's approval of the Agreement under Bankruptcy Code section 363(b).

<u>Basis For Relief</u>

**B.** The Debtor's Entry Into the Agreement is a Valid Exercise of the Debtor's Business Judgment and the Proposed Compensation is Appropriate Under the <u>Circumstances and Within the Range of Similar Market Transactions</u>

22. The Compensation Committee's decision for the Debtor to retain Mr. Seery pursuant to the terms of the Agreement should be approved pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

23. The proposed use, sale, or lease of property of the estate may be approved under Bankruptcy Code section 363(b) if it is supported by sound business justification. *See In re Montgomery Ward*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. *See, e.g., Inst. Creditors of Cont'l Air Lines v. Cont'l Air Lines (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (applying the "business judgment" standard in context of proposed

"use" of estate property).  Moreover, pursuant to section 105, this Court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets.  11 U.S.C. § 105(a).

24.    It is well established that courts are unwilling to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to "any rational business purpose."  *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985) (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)).  Whether or not there are sufficient business reasons to justify the use of assets of the estate depends upon the facts and circumstances of each case.  *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).  In this case, the Debtor has ample justification to retain Mr. Seery as the Debtor's chief executive officer and chief restructuring officer pursuant to the Agreement.  The Final Term Sheet expressly contemplated that the New Board could appoint a chief executive officer and that the chief executive officer could also be one of the Independent Directors.  Because Mr. Seery will also be serving as chief restructuring officer, it is not necessary to have two separate ranking chief restructuring officers, especially considering that Mr. Sharp (the current chief restructuring officer) and his firm has agreed to continue to provide financial advisory services on behalf of the Debtor.[9]  Mr. Seery is well- qualified to serve as the Debtor's chief executive officer and chief restructuring officer.

---

[9] *See Amended Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc, to March 15, 2020* filed concurrently herewith

25.     The Compensation Committee negotiated the Agreement in good faith and at arm's length.  The Compensation Committee also worked with the Debtor's compensation consultant, Mercer (US) Inc., to determine the appropriate compensation for Mr. Seery as chief executive officer and chief restructuring officer.  The Compensation Committee, therefore, believes that the terms of the Agreement are reasonable, are consistent with the market within the Debtor's industry, and are entirely appropriate given the scope of Mr. Seery's duties.  Accordingly, entry into the Agreement is a sound exercise of the Debtor's business judgment.

26.     Finally, the Debtor requests that the Court apply the same criteria by which parties in interest must first petition the Court prior to asserting claims against the Independent Director approved in the Settlement Order be extended to Mr. Seery in his capacity as chief executive officer and chief restructuring officer contemplated by this Motion.  *See* Settlement Order, ¶ 10.  The rationale for the Court to first determine whether or not a colorable claim or cause of action can be maintained against the Mr. Seery, as one of the Independent Directors, is equally applicable to Mr. Seery in his capacity as chief executive officer and chief restructuring officer, will further aid in the implementation of the Settlement Order, and discourage frivolous litigation.  As was true in the Settlement Order with respect to the Independent Directors, no parties will be prejudiced by having to first apply to this Court to determine the propriety of any hypothetical claim that may be asserted against Mr. Seery in his officer capacities of the Debtor.

**C.**     **The Debtor Has Satisfied Bankruptcy Code Section 503(c)(3)**

27.     Bankruptcy Code section 503(c)(3) provides that "transfers or obligations that are outside the ordinary course of business . . . including transfers made to . . . consultants

hired after the date of the filing of the petition" are not allowed if they are "not justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Courts generally use a form of the "business judgment" and the "facts and circumstances" standard. *See In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (citing *In re Dura Auto Sys., Inc.*, Case No. 06-11202 (Bankr. D. Del. June 29, 2007) and *In re Supplements LT, Inc.,* Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 14, 2008)). Specifically, the court examines first, whether the transaction meets the Debtor's business judgment standard, and second, whether the facts and circumstances justify the transaction. *See In re Pilgrim's Pride Corp.*, 401 B.R. at 237 (Bankr. N.D. Tex. 2009).

28. The Debtor submits that the proposed transaction is within the ordinary course of its business and thus that Bankruptcy Code section 503(c)(3) does not apply to the Agreement. Nevertheless, for the reasons stated above — the benefits from Mr. Seery's leadership skills and industry experience — even if this were outside the ordinary course of business, entry into the Agreement is well within the Debtor's business judgment as applied to the facts and circumstances of the Debtor. Further, the facts and circumstances of this case support entry into the relationship under the Agreement where the Debtor will benefit from the ability to retain Mr. Seery at a critical juncture to ongoing restructuring efforts.

29. For the reasons set forth above, the Debtor submits that the relief requested herein is in the best interest of the Debtor, its estate, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

**D.** The Proposed Chief Executive Officer and Chief Restructuring Officer Should Also Serve as the Debtor's Foreign Representative

30.     Bankruptcy Code section 1505 provides that:

A trustee or another entity (including an examiner) may be authorized by the court to act in a foreign country on behalf of an estate created under section 541. An entity authorized to act under this section may act in any way permitted by the applicable foreign law.

11 U.S.C. § 1505.

31.     The Debtor respectfully submits that Mr. Seery is qualified and capable of representing the Debtor's estate as the Foreign Representative. The Debtor believes it is appropriate for Mr. Seery, as an officer of the Debtor, to replace Mr. Sharp as Foreign Representative inasmuch as Mr. Sharp will no longer be an officer of the Debtor if the Motion is granted. In order to avoid any possible confusion or doubt regarding this authority and to comply with the requirements of Part XVII of the Cayman Law, the Debtor seeks entry of an order, pursuant to section 1505 of the Bankruptcy Code, explicitly substituting Mr. Seery in the place of Mr. Sharp as the Debtor's Foreign Representative, including specifically to serve as the Bermuda Foreign Representative and Cayman Foreign Representative.

32.     For the reasons set forth in the Foreign Representative Motion, authorizing Mr. Seery to act as the Foreign Representative on behalf of the Debtor's estate in Bermuda, the Cayman Islands or any other foreign proceeding will allow coordination of this chapter 11 case and each of the foreign proceedings and provide an effective mechanism to protect and maximize the value of the Debtor's assets and estate. Courts have routinely granted relief similar to that requested herein in other large chapter 11 cases where a debtor has foreign assets or operations requiring a recognition proceeding. *See, e.g., In re CJ Holding Co.,* No. 16-33590 (Bankr. S.D.

Tex. July 21, 2016); ECF No. 59; *In re CHC Group Ltd.,* No. 16-31854 (Bankr. N.D. Tex. Sept. 20, 2016), ECF No. 884; *In re Ultra Petroleum Corp.,* No. 16-32202 (Bankr. S.D. Tex. May 3, 2016); *In re Digital Domain Media Grp., Inc.*, No. 12-12568 (BLS) (Bankr. D. Del. Sept. 12, 2012); ECF No. 82; *In re Probe Resources US Ltd., No.* 10-40395 (Bankr. S.D. Tex. Mar. 21, 2011); ECF N. 320; *In re Bigler LP,* No. 09-38188 (Bankr. S.D. Tex. Jan. 12, 2010), ECF No. 159; In *re Horsehead Holdings Corp.,* No. 16-10287 (CSS) (Bankr. D. Del. Feb. 4, 2016); *In re Colt Holding Co. LLC*, No. 15-11296 (LSS) (Bankr. D. Del. June 16, 2015).   The Debtor believes it is appropriate for one of its officers to serve as the Foreign Representative.  In several jurisdictions, an officer or someone acting in a similar capacity is a prerequisite to serve as a Foreign Representative.[10]  As more fully explained in the Foreign Representative Motion, the Debtor has assets in jurisdictions other than the United States, including in Bermuda and the Cayman Islands.  To the extent any disputes with respect to such assets arise, it is critical that the Foreign Representative be permitted to appear on behalf of the Debtor and it estate in any court in which a foreign proceeding may be pending.

<u>Notice</u>

33.    Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a)the Office of the United States Trustee; (b)the Office of the United States Attorney for the Northern District of Texas; (c)the Debtor's principal secured

---

[10] *See e.g.* Part XVII, Section 240o f the Companies Law (2018 Revision) of the Cayman Islands requiring that the foreign representative be "a trustee, liquidator or other official in respect of a debtor for the purposes of a foreign bankruptcy proceeding."  In addition, and as more fully explained in the Foreign Representative Motion, Bermuda common law and conflict of laws principles will recognize the authority of a foreign insolvency officeholder appointed in proceedings in the jurisdiction of incorporation of a company (or, in the instant case, the jurisdiction of the establishment of a limited partnership) to act on behalf of and in the name of the company (or partnership) in Bermuda.

parties; (d)counsel to the Committee; and (e)parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

Conclusion

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  June 23, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717)
(*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084)
(*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992)
(*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    jpomerantz@pszjlaw.com
           ikharasch@pcszjlaw.com
           gdemo@pszjlaw.com

    -and-

*/s/ Zachery Z. Annable*
HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | **Case No. 19-34054** |
| **L.P.,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | **Re: Docket No. _____** |
| | § | |

**ORDER APPROVING DEBTOR'S MOTION UNDER**
**BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)**
**AUTHORIZING RETENTION OF JAMES P. SEERY, JR., AS**
**CHIEF EXECUTIVE OFFICER, CHIEF RESTRUCTURING OFFICER, AND**
**FOREIGN REPRESENTATIVE NUNC PRO TUNC TO MARCH 15, 2020**

Upon the *Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative Nunc Pro Tunc To March 15, 2020* (the "Motion"),[1] and the Court finding that: (i) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

---

[1] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.

and 1334; (ii) venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iv) due and sufficient notice of the Motion has been given; (v) entry into the Agreement was an exercise of the Debtor's sound business judgment; and (vi) it appearing that the relief requested in the Motion is necessary and in the best interests of the Debtor's estate and creditors; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1. The Motion is granted.

2. Pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, the Agreement attached hereto as <u>Exhibit 1</u> and all terms and conditions thereof are approved, *nunc pro tunc* to March 15, 2020.

3. The Debtor is hereby authorized to enter into and perform under the Agreement.

4. The Debtor is authorized to indemnify Mr. Seery pursuant to the terms of the Agreement.  Mr. Seery is also entitled to any indemnification or other similar provisions under the Debtor's existing or future insurance policies, including any policy tails obtained (or which may be obtained in the future), by the Debtor.  The Debtor and Strand are authorized to enter into any agreements necessary to execute or implement the transactions described in this paragraph.  For avoidance of doubt and notwithstanding anything to the contrary in this Order, Mr. Seery shall be entitled to any state law indemnity protections to which he may be entitled under applicable law.

DOCS_SF:103156.17 36027/002

5.      No entity may commence or pursue a claim or cause of action of any kind against Mr. Seery relating in any way to his role as the chief executive officer and chief restructuring officer of the Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction over any and all matters arising from or related to the interpretation and/or implementation of this Order.

8.      The Foreign Representative Order is hereby amended to substitute James P. Seery, Jr., as the chief executive officer, in place of Bradley S. Sharp, as the Debtor's Foreign Representative, Bermuda Foreign Representative and Cayman Foreign Representative.  All other provisions of the Foreign Representative Order shall remain in full force and effect.

# # # END OF ORDER # # #

DOCS_SF:103156.17 36027/002

App. 0647

# **EXHIBIT A-1**

**Engagement Agreement**

DOCS_SF:103156.17 36027/002

795 Columbus Ave., 12A
New York, New York 10025
631-804-2049
jpseeryjr@gmail.com


June 23, 2020

CONFIDENTIAL

The Board of Directors of Strand Advisors, Inc.
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201


Re:    <u>Highland Capital Management L.P. (the "Company")</u>

Dear Fellow Board Members:

This letter agreement ("<u>Agreement</u>") sets forth the terms and conditions of the engagement of the undersigned James P. Seery, Jr. ("<u>I</u>", "me" or "<u>my</u>"), as Chief Executive Officer ("<u>CEO</u>") and Chief Restructuring Officer ("<u>CRO</u>"), effective as of March 15, 2020 (the "<u>Commencement Date</u>"), by the Company and its affiliates to perform financial advisory services as detailed below.

I appreciate the trust you have placed in me by asking me to assume these roles and thank you for the opportunity to continue to work with you to restructure the Company.

<u>Roles</u>:

I will serve as the CEO and CRO of the Company during its Chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>") currently pending in the United States Bankruptcy Court for the Northern District of Texas (the "<u>Bankruptcy Court</u>").

In those roles, I will be responsible for overall management of the business of the Company in Chapter 11 including, directing the reorganization and restructuring of the Company, monetization of assets, resolution of claims, development and negotiation of a plan of reorganization or liquidation, and implementation of such a plan.

My direct reports will include the individuals at the Company that currently report to the Board of Directors of Strand Advisors, Inc. (the "<u>Board</u>") or such other individuals employed by the Company as I determine should report to directly to me.  In the event that the Board determines to restructure the reporting lines or functions of the Company, my direct reports will be amended in accordance with the Board approved restructuring.

At all times, I will remain a full member of the Board entitled to vote on all matters other than those on which I am conflicted.

I will devote as much time to this engagement as I determine is required to execute my responsibilities as CEO and CRO. I will have no specific on-site requirements in Dallas, but will be on site as much as I determine is necessary to execute my responsibilities as CEO and CRO, consistent with Covid-19 orders applicable to Dallas and New York City.

<u>Limitations on Services</u>

My services under this engagement are limited to those specifically noted in this Agreement and do not include legal, accounting, or tax-related assistance or advisory services. For the avoidance of doubt, I am not providing any legal services in connection with this engagement and will have not any duties as a lawyer to the Company, the Board, or any of the Company's employees. The accuracy and completeness of all information submitted to me by the Company are the sole responsibility of the Company, and I will be entitled to rely on such information without independent investigation or verification.

In my role as CEO and CRO, I will act as an independent professional contractor to the Company and will not be an employee of the Company. I will provide and pay for my own benefits, including medical benefits, by J.P Seery & Co. LLC or otherwise.

<u>Fees and Expenses:</u>

In consideration of my acceptance of this engagement and performance of the services pursuant to this Agreement, the Company shall pay the following:

1. <u>Compensation for Services</u>:
   a. <u>Base Compensation</u>: As compensation for my services as CEO and CRO of the Company, the Company shall pay me $150,000.00 per calendar month ("<u>Base Compensation</u>"). Base Compensation shall be due and payable at the start of each calendar month. Consistent with current Board compensation practice, invoices rendered by me to the Company are due and payable by the Company on receipt. Payment of the Base Compensation will be retroactive to March 15, 2020.
   b. <u>Bonus Compensation/Restructuring Fee</u>:
      i. The Company has agreed to pay me a restructuring fee upon confirmation of either a Case Resolution Plan or a Monetization Vehicle Plan in each case as defined below (the "<u>Restructuring Fee</u>").
      ii. Case Resolution Restructuring Plan
         1. On confirmation of any plan or reorganization or liquidation based on resolution of a material amount of the outstanding claims and their respective treatment, even if such plan includes (x) a debtor/creditor trust or similar monetization and claims resolution vehicle, (y) post-confirmation litigation of certain of the claims, and (z) post-confirmation monetization of debtor assets (a "<u>Case Resolution Plan</u>"):
            a. $1,000,000 on confirmation of the Case Resolution Plan;
            b. $500,000 on the effective date of the Case Resolution Plan; and
            c. $750,000 on completion of cash or property distributions to creditors as contemplated by the Case Resolution Plan.

      iii.  Debtor/Creditor Monetization Vehicle Restructuring Fee:

         1.  On confirmation of any plan or reorganization or liquidation based on a debtor/creditor trust or similar asset monetization and claims resolution vehicle that does not include agreement among the debtor and creditors on a material amount of the outstanding claims and their respective treatment at confirmation (a "Monetization Vehicle Plan"):

           a.  $500,000 on confirmation of the Monetization Vehicle Plan;

           b.  $250,000 on the effective date of the Monetization Vehicle Plan; and

           c.  A contingent restructuring fee to be determined by the board or oversight committee installed to oversee the implementation of any Monetization Vehicle Plan based on the CEO/CRO (or acting as trustee) based upon performance under the plan after all material distributions under the Monetization Vehicle Plan are made.

2.  Out-of-Pocket Expenses:  In addition to the Base and Bonus Compensation, I shall be entitled to reimbursement for actual and reasonable out-of-pocket expenses ("Expenses") incurred in connection with the provision of services hereunder.  Expenses will be billed along with Base Compensation and shall be paid by the Company at the same time. Expenses will be generally consistent with expenses incurred to date as a member of the Board.

Bankruptcy Court Approval

Notwithstanding anything herein to the contrary, I understand that this Agreement is contingent, in all respects, on the approval of the Bankruptcy Court.  I also understand that the Company will seek approval of this Agreement in stages and that the Company will first seek approval of my retention as CEO and CRO and the payment of the Base Compensation and will defer seeking Bankruptcy Court approval of the Restructuring Fee until there have been further developments in the Bankruptcy Case.

Conflicts and Other Engagements

I am not aware of any potential conflicts of interest based on my understanding of the various parties involved in this matter to date.

The Company is aware that this engagement is not an exclusive engagement of my time, and that I have and will continue to have other business engagements and investments unrelated to the Company.  Nothing in this Agreement or otherwise precludes me from representing or working with or for any other person or entity in matters not directly related to the services being provided to the Company under this Agreement.  However, I will not take on any engagements directly adverse to the Company during the term of this engagement.

Privilege

I understand that in the course of this engagement, I may become party to or my services may become part of work product of legal counsel to the Company (the Company's in-house and outside counsel are collectively referred to as "Counsel"), and all communications between Counsel and me relating to this engagement shall be protected from disclosure to third parties under the attorney work product doctrine and/or the attorney-client privilege, and, therefore, shall be treated by me as privileged and confidential. I further understand that the Company has the exclusive right to waive the attorney-client privilege, and Counsel has the exclusive right to waive the protections afforded under the attorney work-product doctrine.

Termination of Engagement

This Agreement may be terminated at any time by either the Company or by me upon two weeks advance written notice given to the other party. The termination of this Agreement shall not affect my right to receive, and the Company's obligation to pay, any and all Base Compensation and Expenses incurred (even if not billed) prior to the giving of the termination notice; provided, however, that (i) if this Agreement is terminated by me, the amount of Base Compensation owed shall be calculated based on the actual number of days worked during the applicable month and I will return any Base Compensation received in excess of such amount and (ii) if this Agreement is terminated by the Company, Base Compensation shall be deemed fully earned as of the first day of any month. Bonus Compensation shall be earned by me immediately upon termination of me by the Company; provided, however, I shall not be entitled to Bonus Compensation if (a) the Bankruptcy Case is converted to chapter 7 or dismissed; (b) a chapter 11 trustee is appointed in the Bankruptcy Case; (c) I am terminated by the Company for Cause; or (d) I resign prior to confirmation of a plan or court approval of a sale as described in the Fees and Expense/Compensation for Services section hereof. For purposes of this Agreement, "Cause" means any of the following grounds for termination of my engagement, in each case as reasonably determined by the Board within 60 days of the Board becoming aware of the existence of the event or circumstance: (A) fraud, embezzlement, or any act of moral turpitude or willful misconduct on my part; (B) conviction of or the entry of a plea of nolo contendere by me for any felony; (C) the willful breach by me of any material term of this Agreement; or (D) the willful failure or refusal by me to perform my duties to the Company, which, if capable of being cured, is not cured on or before fifteen (15) days after my receipt of written notice from the Company.

Conditional Requirement to Seek Further Bankruptcy Court Approval of Agreement

The official committee of unsecured creditors in the Bankruptcy Case (the "Committee") may, upon two weeks advance written notice to the Company, require the Company to file a motion with the Bankruptcy Court on normal notice seeking a continuation of this Agreement and if such motion is not filed, this Agreement will terminate at the expiration of such two week period. If the Company files such motion, I will be entitled to my Base Compensation through and including the date on which a final order is entered on such motion by the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Committee may not deliver such notice to the Company until a date which is more than ninety days following the date the Bankruptcy Court enters an order approving this Agreement.

Indemnification

As a material part of the consideration to me under this Agreement, the Company agrees (i) to indemnify and hold harmless me and any of my affiliates (the "Indemnified Party"), to the fullest extent lawful, from and against any and all losses, claims, costs, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, my engagement under this Agreement, or any actions taken or omitted to be taken by me or the Company in connection with this Agreement and (ii) to reimburse the Indemnified Party for all expenses ( including, without limitation, the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action, or any fee dispute), arising out of or relating to this Agreement, or such engagement, or actions. However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of the Indemnified Party.

The indemnification and insurance currently covering my role as a director shall be extended to me and fully cover me as provided therein in my roles as CEO and CRO.

Miscellaneous

This Agreement (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements among the parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement among all the parties hereto.

This Agreement is subject to approval by the Bankruptcy Court. As part of such approval the Company shall request that any such order approving this Agreement contain a provision extending the protections afforded to me as a Board Member pursuant to Paragraph 10 of the Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course entered by the Bankruptcy Court on January 9, 2020 [Docket No. 339] to my role as CEO and CRO, which Order prohibits the commencement of any action against me without first obtaining Bankruptcy Court approval to initiate such action.

This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York. The parties hereby submit to the jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement.

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

James. P. Seery, Jr.

AGREED AND ACCEPTED

HIGHLAND CAPITAL MANAGEMENT L.P.

By: Strand Advisors, Inc., its general partner


_____          _____
John Dubel                                Russell Nelms
Director                                  Director
Strand Advisors, Inc.                     Strand Advisors, Inc.

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,


James. P. Seery, Jr.

AGREED AND ACCEPTED

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: Strand Advisors, Inc., its general partner


_____          _____
John Dubel                                Russell Nelms
Director                                  Director
Strand Advisors, Inc.                     Strand Advisors, Inc.

This Agreement shall be binding upon the parties and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Failure of any party at any time to require performance of any provision of this Agreement shall not affect the right to require full performance thereof at any time thereafter, and the waiver by any party of a breach of such provisions shall not be taken as or held to be a waiver of any subsequent breach or as nullifying the effectiveness of such provision.

Notices provided for in this Agreement shall be in writing and shall be deemed to have been duly given when delivered by hand or overnight courier or three days after it has been mailed by United States registered mail, return receipt requested, postage prepaid, addressed to the respective address set forth above in this Agreement, or to such other address as either party may have furnished to the other in writing in accordance herewith.

This Agreement and my rights and duties hereunder shall not be assignable or delegable by me.

The Company may withhold from any amounts payable under this Agreement such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

This Agreement may be executed (including by electronic execution) in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by electronic mail shall have the same force and effect as the delivery of an original executed counterpart of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,


James. P. Seery, Jr.

AGREED AND ACCEPTED

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: Strand Advisors, Inc., its general partner


| _____ | _____ |
| John Dubel | Russell Nelms |
| Director | Director |
| Strand Advisors, Inc. | Strand Advisors, Inc. |