# Appendix Exhibit 36

Case 19-34054-sgj11 Doc 808 Filed 07/08/20    Entered 07/08/20 13:28:19    Page 1 of 17
Case 3:21-cv-00881-X   Document 174-36   Filed 12/16/23   Page 2 of 18   PageID 17841

Docket #0808 Date Filed: 07/08/2020

SIDLEY AUSTIN LLP
Penny P. Reid
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 74201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

Bojan Guzina (admitted pro hac vice)
Matthew A. Clemente (admitted pro hac vice)
Dennis M. Twomey (admitted pro hac vice)
Alyssa Russell (admitted pro hac vice)
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Counsel for the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj11 |
| Debtor. | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
EMERGENCY MOTION TO COMPEL PRODUCTION BY THE DEBTOR**

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1.	Pursuant to Rule 37 of the Federal Rules of Civil Procedure, made applicable by Rules 7037 and 9014 of the Federal Rules of Bankruptcy Procedure, and 11 U.S.C. § 105(a), the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case moves to compel production of certain electronic information by Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor").

2.	Pursuant to the Final Term Sheet,[2] attached as Exhibit A to the *Notice of Final Term Sheet* [Dkt. No. 354-1], outlining the principal terms of a proposed settlement between the Debtor and the Committee, the Committee has sought discovery related to defined Estate Claims and other potential claims against third parties for the benefit of the Debtor's estate.  For approximately eight months, the Committee has attempted to work cooperatively with Debtor to obtain documents and communications needed to investigate those claims, with the understanding that a turbulent market and pandemic have presented unique challenges.  Despite the Committee's efforts, the Debtor has not yet provided the Committee with the electronically stored information ("ESI") it has requested.

3.	Debtor's failure to produce email communications or other ESI has significantly hindered the Committee's ability properly to investigate the Estate Claims that it has explicit standing to investigate and pursue on behalf of the Debtor.  In consideration of repeated failed negotiations, time constraints,[3] and a depletion of the Debtor's estate resources that is bound to continue without court intervention, the Committee moves to compel production of the Debtor's

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Final Term Sheet.

[3] On June 30, 2020, this Court held a hearing related to CLO Holdco Ltd.'s ("CLO Holdco") motion to release certain funds held in the court registry.  The Court held that the Committee must submit any complaint against CLO Holdco within 90 days of that ruling.  Without access to the Debtor's documents, the Committee cannot properly investigate and bring any claims against CLO Holdco.

documents and communications of nine custodians pursuant to the protocol proposed by the Committee to the Debtor on June 25, 2020 (the "Proposed Protocol").[4]

## ADDITIONAL BACKGROUND

4. On January 14, 2020, the Debtor and the Committee entered into the Final Term Sheet, which explicitly granted the Committee standing to pursue the Estate Claims, defined as "any and all estate claims and causes of actions against Mr. Dondero, Mr. Okada, other insiders of the Debtor, and each of the Related Entities,[5] including promissory notes held by any of the foregoing." (Dkt. 354-1, at 4.) The parties also agreed that the Committee would receive any privileged documents or communications that relate to the Estate Claims so that the Committee could bring those claims. In short, the Committee stands in Debtors' shoes with respect to the Estate Claims.

5. The Final Term Sheet deferred any disputes relating to documents' relevance or with regard to any attorney–client protection unrelated to the Estate Claims. (*See* Dkt. 354-1, at 48 ("Nothing in the Protocol shall require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.").)

---

[4] The Proposed Protocol is fully defined *infra*, at Paragraph 10.

[5] The Final Term Sheet defines "Related Entities," as, collectively, "(i) any non-publicly traded third party in which Mr. Dondero, Mr. Okada, or Mr. Grant Scott, or Mr. John Honis . . . has any direct or indirect economic or ownership interest, including as a beneficiary of a trust; (ii) any entity controlled directly or indirectly by Mr. Dondero, Mr. Okada, Mr. Grant Scott, or Mr. John Honis . . . ; (iii) MGM Holdings, Inc.; (iv) any publicly traded company with respect to which the Debtor or any Related Entity has filed a Form 13D or Form 13G; (v) any relative . . . of Mr. Dondero or Mr. Okada each solely to the extent reasonably knowable by the Debtor; (vi) the Hunter Mountain Investment Trust and Dugaboy Investment Trust; (vii) any entity or person that is an insider of the Debtor under Section 101(31) the Bankruptcy Code, . . .; and (viii) to the extent not included in [the above], any entity included in the listing of related entities in **Schedule B** hereto (the "Related Entities Listing")." (Dkt. 354-1, at 52.) The Related Entities Listing lists thousands of entities related to the Debtor. CLO Holdco in a shareholder and limited partner of various entities on the Related Entities Listing.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION TO COMPEL**    3

6.      Shortly after the Final Term Sheet was completed and entered by the Court, the Committee began requesting documents and communications from the Debtor necessary to investigate the Estate Claims.[6]  In particular, the Committee has spent a considerable amount of time attempting to obtain any production of emails, chats, texts, or other ESI or communications from the Debtor.  In November 2019, the Committee further provided the Debtor with search terms to run across various platforms, and provided an updated search term list on February 3, 2020, in an attempt to jump-start at least some production (the "Search Term Requests").  To date, the Committee has not received any documents responsive to the Search Term Requests.

7.      Since November 2019, the Committee has attempted to work cooperatively with the Debtor to obtain communications that are necessary to investigate the Estate Claims.  Indeed, on November 10, 2019, February 3, 2020, and February 24, 2020, the Committee served the Debtor with Requests for Production of Documents, including categories of documents related to certain Estate Claims.  Unfortunately, despite the considerable time that has gone by and the number of communications the parties have had on the topic, no actual production of emails, chats, or other ESI has occurred.  After months of discussion and negotiation, on June 2, 2020, the Debtor provided the Committee with a proposed review protocol for the Search Term Requests contemplating unduly stringent relevance and privilege reviews.

---

[6] On February 3, 2020, the Committee served the Debtor with the *Official Committee of Unsecured Creditors' Second Request for Production of Documents*, requesting documents related to various promissory notes held by and among the Debtor and Related Entities.  On February 24, 2020, the Committee served the Debtor with the *Official Committee of Unsecured Creditors' Third Request for Production of Documents*, requesting certain ESI production related to the Estate Claims.  The Committee has only received partial responses to the February 3 request and has not received any responses to the February 24 request, despite representations from the Debtor's counsel that production related to the February 24 requests would begin the week of April 6, 2020.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION TO COMPEL**          4

8. Under the Debtor's protocol, the Debtor would use continuous machine learning only on documents responsive to a list of specified search terms,[7] and then have contract attorneys, previously unfamiliar with the Debtor, this bankruptcy case, or the thousands of Related Entities, review those documents for "relevance." Then, if a document were determined to be relevant, it would be subject to a privilege review.

9. The Committee strongly believes that this type of relevance and privilege review significantly increases the likelihood that documents related to the Estate Claims will not be produced because relevance is not readily apparent from the face of the document, especially in light of the Debtor's deliberately convoluted affiliate structure and the complexity of its transactions. Moreover, it adds unnecessary time and expense to the review process by doubling the review of "relevant documents"—once by the Debtor and then by the Committee—and requires iterative discovery requests as the nature and focuses of the investigation shift with time.

10. Given its concerns about the risks of stonewalling and increased expense, on June 25, 2020, the Committee spoke with Debtor's counsel and also sent the Debtor the following Proposed Protocol to facilitate the Committee's investigation of the Estate Claims and preserve estate resources:

    a. all custodial data for nine identified custodians[8] would be provided to the e-discovery vendor for inclusion in its repository workspace;

    b. a set of mutually agreeable privilege terms (those likely to identify attorney-client privileged communications or attorney work product) would be run across that workspace, with any

---

[7] Ordinarily, continuous machine learning is applied to *all* custodial files such that anything the program determines is relevant for review would be queued for review even if it did not include a search term.

[8] These nine custodians are Patrick Boyce, Jim Dondero, Scott Ellington, David Klos, Isaac Leventon, Mark Okada, Trey Parker, Tom Surgent, and Frank Waterhouse. For avoidance of doubt, the Committee is requesting all ESI for the nine custodians, including without limitation, email, chat, text, Bloomberg messaging, or any other ESI attributable to the custodians.

    disagreements regarding those terms to be determined by a special master or other third-party neutral;[9]

c.  any document not including one of the agreed privilege terms would be produced to the Committee for review, subject to the Agreed Protective Order's provisions on "No Waiver" and "Claw Back of Inadvertently Produced Protected Materials" (Dkt. 382), thus protecting the Debtor from any inadvertent production or subject-matter waiver; and

d.  all documents including any such privilege term would then be isolated for review by Debtor's contract attorneys.

  (i)  Non-privileged documents and privileged documents related to the Estate Claims would be produced to the Committee on a rolling basis.

  (ii)  Documents that are privileged and unrelated to the Estate Claims would be listed on a privilege log so that the Committee can probe those claims of privilege as needed.[10]

11.  The Debtor did not respond to the Committee's proposal. On July 1, 2020, the Committee again requested a response, informing the Debtor it would file this motion to compel to seek the Court's assistance if the parties could not agree on review protocols in a timely fashion. On July 2, 2020, the Debtor informed the Committee that it would respond shortly and requested that the Committee not file a motion to compel until the parties could confer. On July 3, 2020, the Debtor responded with a proposal that would still limit any production of documents to those containing search terms. After discussion that day, the Debtor notified the Committee that it would consider production of all ESI for the agreed custodians and let the Committee know of its decision. On July 7, 2020, having heard nothing with regard to the open issues, the Committee once again let the Debtor know that time was of the essence and that it had no choice but to seek relief from the Court. Late on July 7, 2020, after repeated requests and indications that the

---

[9] This provision is consistent with the Final Term Sheet. (Dkt. 354-1, at 4).

[10] Pursuant to the Final Term Sheet, any disputes regarding withheld documents will be determined by a special master or other third-party neutral agreed to by the parties. (Dkt. 354-1, at 4).

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION TO COMPEL**   **6**

Committee would seek relief from the Court, Debtor circulated a draft motion purporting to address amicably the issues raised in this Motion. Instead, that draft motion merely retained the so-called "relevance" review that the Committee believes will unnecessarily tax the remaining assets of the estate.

12. Time is running out. The Committee cannot keep waiting for the Debtor to provide it with the data that is required for the Committee to do its work. As a result, the Committee has brought this issue to the Court for resolution. The Committee strongly believes the Proposed Protocol is the most fair, efficient, and cost effective proposal, and allows the Committee the ability properly to investigate and pursue Estate Claims. Accordingly, the Committee respectfully requests that this Court compel the Debtor to produce documents pursuant to the Committee's Proposed Protocol.

## ARGUMENT AND AUTHORITIES

13. The Committee respectfully submits that sufficient cause exists for the Court to compel the Debtor to produce documents pursuant to the Proposed Protocol so that the Committee can properly investigate potential Estate Claims. The Debtor previously agreed that the Estate Claims will be prosecuted by the Committee and that the Committee is entitled even to privileged documents related to those Estate Claims. The range of the Committee's investigation is necessarily broad in light of Debtor's structure and operations, as is the scope of potential Estate Claims that may be brought on Debtor's behalf. The Debtor's continued arguments regarding "relevance" are a red herring—the Committee stands in the Debtor's shoes with regard to the Estate Claims and is best able to determine whether a document is relevant to its investigation

given that it has no incentive to obfuscate or hide evidence of possible wrongdoing by current or former employees of the Debtor.[11]

I.  **The Court Should Compel Discovery Because the Documents Are Relevant to the Estate Claims Investigation.**

14.  Rule 37, made applicable by Bankruptcy Rule 7037, allows "[a] party seeking discovery [to] move for an order compelling . . . production. . . . [if] a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). "A party resisting discovery is swimming against a strong upstream policy current. The policy underlying the discovery rules encourages *more* rather than less discovery, and discourages obstructionist tactics." *In re Tex. Bumper Exch., Inc.*, 333 B.R. 135, 139–40 (Bankr. W.D. Tex. 2005) (emphasis in original). Rule 7037 ensures that this policy is enforced. *Id.* at 140.

15.  Courts have "broad discretion in discovery matters." *Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-G, 2010 WL 791421, at *4 (N.D. Tex. Mar. 8, 2010) (quoting *Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 773 (5th Cir. 2007) (per curiam). Rule 26 of the Federal Rules of Civil Procedure, applicable through Bankruptcy Rule 7026, facilitates broad-ranging discovery, allowing discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the" investigation. Fed. R. Civ. P. 26(b)(1). Relevance "is broadly construed, especially in the context of discovery requests, which should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense." *In re Adkins Supply, Inc.*, 555 B.R. 579, 589 (Bankr. N.D. Tex. 2016) (emphasis in original). "Information sought only fails the relevance test if it is clear that it could have no possible bearing on the claim." *Id.* Indeed, "[i]nformation within this scope of discovery need not

---

[11] This is specifically a matter of concern given that one of the ESI custodians has himself been heavily involved in the discussions regarding the terms of the ESI production.

be admissible in evidence to be discoverable," and the party resisting discovery bears the burden of showing that the discovery sought is irrelevant or non-proportional. *See Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 504–06 (N.D. Tex. 2016).

16. The documents sought from the nine custodians proposed under the Proposed Protocol are relevant to the Committee's investigation and potential Estate Claims. This investigation encompasses, among other claims and causes of action, potential fraudulent transfers, preferential transfers, breaches of fiduciary duties, usurpation of corporate opportunities, misappropriation of assets, and abuses of the corporate form by and among insiders—which include certain of the proposed custodians—and Related Entities. Their documents are therefore relevant to the subject matter of the Estate Claims. Fed. R. Civ. P. 26(b)(1).

17. Moreover, the Committee is not seeking privileged documents to which it is not already entitled under the Final Term Sheet. The Final Term Sheet explicitly grants the Committee access to privileged documents and communications in the Debtor's possession, custody, or control specifically related to the investigation and pursuit of the Estate Claims. (Dkt. 354-1, at 4.) The Committee's Proposed Protocol allows the Debtor to withhold documents responsive to agreed-upon privilege terms and review those presumptively privileged documents before turning them over to the Committee. The Proposed Protocol requires the Debtor produce only those documents that are non-privileged, or privileged and related to the Estate Claims, and provides that a third-party neutral will resolve any privilege disputes as originally agreed upon under the Final Term Sheet. There is therefore no issue regarding privilege waiver.[12]

---

[12] The Proposed Protocol also recognizes the Agreed Protective Order's "No Waiver" and "Claw Back of Inadvertently Produced Protected Materials" (Dkt. 382) provisions, which provide additional privilege protections to the Debtor.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' EMERGENCY MOTION TO COMPEL**    9

## II. The Proposed Protocol is Necessary to the Committee's Investigation of the Estate Claims.

18. Further, section 105(a) of the Bankruptcy Code empowers this Court to "issue an order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

19. Implementation of the Proposed Protocol is necessary for the Committee to fulfil its statutory mandates under section 1103(c) of the Bankruptcy Code. As fiduciary for all unsecured creditors, the Committee is granted broad statutory powers to, among other things, "investigate the acts, conduct, assets, and liabilities and financial condition of the debtor, . . . and any other matters relevant to the case or to the formulation of a plan." *Id.* at § 1103(c)(2); *see also* Dkt. 354-1, at 4 (granting the Committee standing to investigate and pursue Estate Claims on behalf of the Debtor). Ordering the Debtor to turn over all documents of the nine custodians, subject to a limited privilege review, is necessary for the Committee properly to carry out this mandate.

20. To date, the Debtor has not produced any documents or communications in response to the February 24 requests or the Search Term Requests, despite extended negotiations to facilitate such productions. This has impeded the Committee's ability to exercise its duty to investigate the acts and conduct of the Debtor. An order compelling production is therefore necessary for the Committee sufficiently to carry out its Estate Claim investigation.

21. The Proposed Protocol is the most cost effective and efficient way to obtain documents relevant to the Estate Claims, avoiding the cost, delay, and risk of false negatives associated with contract attorneys' relevance review. Rather than use estate resources to conduct a double relevance review proposed by the Debtor—reviewed once by the Debtor and again by the Committee—the Committee's Proposed Protocol calls for only one round of privilege review and

the targeted searches for relevant documents that the Committee will conduct as it carries out its investigation. The Proposed Protocol also obviates the need for additional document requests and repeated negotiations with the Debtor about additional collection and review for the specified custodians. The Committee's investigation will necessarily evolve, and the Proposed Protocol would allow the Committee to run search terms on data already collected and contained within the e-discovery vendor's repository with minimal additional cost. It further ensures that all documents will be preserved in the interim.

22. An order by this Court implementing the Proposed Protocol is necessary to "preserve a right elsewhere provided in the [Bankruptcy] Code." *See In re Royce Homes, LP,* No. 09-32467-H4-7, 2009 WL 3052439, at *4–5 (Bankr. S.D. Tex. Sept. 22, 2009) (compelling a debtor's production under 11 U.S.C. § 105(a) to allow the trustee to perform its duties under the Bankruptcy Code). The Proposed Protocol will allow the Committee access to documents and communications relevant to the Estate Claims without fear that the Debtor will withhold relevant documents pursuant to an unduly broad relevance review. Considering the circumstances of this case and the history of the Debtor, the Proposed Protocol is necessary for the Committee to fulfill its duty to investigate the Estate Claims.

## CONCLUSION

23. For the reasons set forth above, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A,** (a) compelling the Debtor to produce documents under the Proposed Protocol, and (b) granting such other and further relief as the Court may deem just and proper.

[*Signature Page Follows*]

| | |
|---|---|
| Dated: July 8, 2020<br>Dallas, Texas | SIDLEY AUSTIN LLP<br>/s/ *Paige Holden Montgomery*<br>Paige Holden Montgomery<br>Penny P. Reid<br>Juliana L. Hoffman<br>2021 McKinney Avenue<br>Suite 2000<br>Dallas, Texas 74201<br>Telephone: (214) 981-3300<br>Facsimile: (214) 981-3400<br><br>-and-<br><br>Bojan Guzina (admitted *pro hac vice*)<br>Matthew A. Clemente (admitted *pro hac vice*)<br>Dennis M. Twomey (admitted *pro hac vice*)<br>Alyssa Russell (admitted *pro hac vice*)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Facsimile:  (312) 853-7036<br><br><br>COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS |

## Exhibit A

## Proposed Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| In re: ) <br> ) <br> HIGHLAND CAPITAL MANAGEMENT, ) <br> L.P.,[1] ) <br>     Debtor. ) <br> ) <br> ) | Chapter 11 <br><br> Case No. 19-34054-sgj11 |

# ORDER COMPELLING THE DEBTOR TO PRODUCE DOCUMENTS

Upon the consideration of the *Official Committee of Unsecured Creditors' Emergency Motion to Compel Production by the Debtor* (the "Motion), it is hereby **ORDERED** that:

1. The Motion is GRANTED as set forth herein.

2. The Debtor must produce all ESI, without limitation, for the custodians Patrick Boyce, Jim Dondero, Scott Ellington, David Klos, Isaac Leventon, Mark Okada, Trey Parker, Tom Surgent, and Frank Waterhouse (collectively, the "Custodian Data") to the e-discovery vendor in this matter no later than seven days after the entry of this Order.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

    3.  The Parties must meet and confer regarding a set of mutually agreeable privilege terms within 7 days of the date of this Order.  Any disagreements regarding those terms will be determined by a special master or other third-party neutral within 21 days of the date of this order;

    4.  Within 7 days of the finalization of the privilege terms, any Custodian Data not including one of the agreed privilege terms will be produced to the Committee for review, subject to the Agreed Protective Order's provisions on "No Waiver" and "Claw Back of Inadvertently Produced Protected Materials" (Dkt. 382);

    5.  Any Custodian Data including any such privilege term will be reviewed by Debtor's contract attorneys.

      a.  Non-privileged documents and privileged documents related to the Estate Claims will be produced to the Committee on a rolling basis.

      b.  Documents that are privileged and unrelated to the Estate Claims will be listed on a privilege log provided to the committee within 45 days of this Order.

    6.  This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # # End of Order # # #

## CERTIFICATION OF GOOD FAITH CONFERENCE

The undersigned counsel to the Committee hereby certifies that the Committee's counsel has attempted in good faith to confer with the Debtor's counsel in an effort to resolve the dispute without court action.

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery
SIDLEY AUSTIN LLP

*Counsel for the Official Committee
of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I, Paige Holden Montgomery, hereby certify that on the 8th day of July 2020, a true and correct copy of the foregoing *Official Committee of Unsecured Creditors' Emergency Motion to Compel Production by the Debtor* was sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case, and by first-class mail to the Debtor, attention James Seery.

*/s/ Paige Holden Montgomery*
Paige Holden Montgomery
SIDLEY AUSTIN LLP

*Counsel for the Official Committee of Unsecured Creditors*