# Appendix Exhibit 49

Case 19-34054-sgj11 Doc 995 Filed 08/26/20 Entered 08/26/20 18:07:24 Page 1 of 17
Case 3:21-cv-00881-X Document 174-49 Filed 12/16/23 Page 2 of 20 PageID 18103
Docket #0995 Date Filed: 8/26/2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § | Adversary Proceeding No. |
| v. | § § § | _____ |
| HUNTER MOUNTAIN INVESTMENT TRUST, | § § § | |
| Defendant. | § § § | |

---

[1] The last four digits of the Debtor's taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

DOCS_LA:329918.6 36027/002



1934054200901000000000007

**DEBTOR'S (I) OBJECTION TO CLAIM NO. 152 OF HUNTER MOUNTAIN INVESTMENT TRUST AND (II) COMPLAINT TO SUBORDINATE CLAIM OF HUNTER MOUNTAIN INVESTMENT TRUST AND FOR DECLARATORY RELIEF**

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor" or the "Partnership"), as and for its objection to claim (the "Objection") and complaint (the "Complaint") against defendant Hunter Mountain Investment Trust ("HMT" or the "Defendant"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

**Nature of the Action**

1. HMT is the Debtor's parent, having acquired 99.5% of the Debtor's partnership interests in December 2015. Pursuant to a *Contribution Agreement* with the Debtor, dated as of December 21, 2015, HMT agreed to contribute capital of $70,000,000 in exchange for 55% of those partnership interests. Of that amount, $63,000,000 was represented by a promissory note in favor of the Debtor (the "Contribution Note"), guaranteed by HMT's indirect parent, Rand PE Fund I, LP, Series 1, a Delaware series limited partnership ("Rand"). Approximately $60,000,000 remains due on the Contribution Note. On April 8, 2020, HMT filed a proof of claim [Claim No. 152] (the "HMT Claim") in which it asserts that because it is not receiving "Priority Distributions" under the Partnership Agreement, it has a $60,298,739 indemnification claim against the Debtor under the Contribution Agreement, which it may set off against its obligation on the Contribution Note. In other words, the Debtor must indemnify HMT for not distributing enough to HMT to cover its obligation to the Debtor.

2. The HMT Claim is specious. HMT is the Debtor's owner, not a creditor, and the indemnity clause is inapplicable on its face. Under the Contribution Agreement, the Debtor indemnifies HMT against "Losses" arising from "any breach or non-fulfillment of any covenant,

2

agreement or obligation to be performed by the Partnership" under the Contribution Agreement or any related agreement to which the Debtor is a party. It does not apply to any failure to make distributions under the Partnership Agreement for one simple dispositive reason, among others: The Partnership Agreement contains no obligation to make Priority Distributions if there are no funds to distribute. The Partnership Agreement is an agreement between the partners governing their relationship and, unsurprisingly, HMT's general partner did not commit to making distributions for which there are no funds. The Partnership Agreement specifies HMT's remedy: Raise more funds by having the Partnership sell certain assets. Furthermore, there are no "Losses" within the meaning of the indemnity clause, and there is a strict limitation on damages that HMT simply ignores.

3. Finally, if despite these insurmountable hurdles HMT actually had an indemnity claim under the Contribution Agreement, that claim would be subordinated under section 510(b) of title 11 of the United States Code (the "Bankruptcy Code") to be on par with equity interests, and thus cannot be used to set off limited partners' contribution obligations under Bankruptcy Code § 553.[2] In summary, the HMT Claim misconstrues the Contribution Agreement, the Partnership Agreement, and basic principles of partnership and bankruptcy law in a futile and frivolous attempt to obtain rights for the Debtor's owners that are superior to the rights of its creditors.

4. Accordingly, this adversary proceeding is brought pursuant to Rules 7001(1), (8) and (9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 502, 510(b) 541 and 553 of the Bankruptcy Code to (i) disallow the HMT Claim under section 502(a) as unenforceable under applicable law, (ii) subordinate any HMT Claim under section

---

[2] *Dayton Sec. Assocs. v. Sec. Grp. 1980 (In re Sec. Grp. 1980)*, 74 F.3d 1103, 1114 (11th Cir. 1996).

510(b), and (iii) for declaratory relief that any HMT Claim may not be used for purposes of setoff.

## Jurisdiction and Venue

5. This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Parties

9. The Debtor is a limited partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

10. Defendant Hunter Mountain Investment Trust is a statutory trust organized under the laws of Delaware, with a business address in Saratoga Springs, New York.

## Case Background

11. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Bankruptcy Case").

12. On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members: (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis Capital Management, L.P., and Acis Capital Management, GP, LLP.

13. On December 4, 2019, the Delaware Court entered an order transferring venue of the Bankruptcy Case to this Court [Docket No. 186].[3]

14. On January 9, 2020, this Court entered an Order [Docket No. 339] on the *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281], pursuant to which an independent board of directors was appointed at the Debtor's general partner, Strand Advisors, Inc. ("Strand").

15. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

**Factual Allegations**

16. The operative limited partnership agreement between HMT and its partners is the *Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.*, dated December 24, 2015 (the "Partnership Agreement"). HMT owns 99.5% of the limited partnership interests in the Debtor—55% of which are designated as Class B nonvoting partnership interests, and 44.5% of which are designated as Class C nonvoting partnership interests. The remaining 0.50% of the limited partnership interests in the Debtor are the Class A voting partnership interests. Strand, the general partner, holds approximately half of

---

[3] All docket numbers refer to the main docket for the Bankruptcy Case maintained by this Court.

the Class A voting partnership interests, which represent approximately 0.25% of the total limited partnership interests. The remaining Class A limited partnership interests are held by The Dugaboy Investment Trust (0.1866%),[4] Mark Okada (0.0487%), Mark and Pamela Okada Family Trust – Exempt Trust #1 (0.0098%), and Mark and Pamela Okada Family Trust – Exempt Trust #2 (0.0042%).

17. HMT acquired 55% of the partnership interests, designated as Class B nonvoting partnership interests, pursuant to the Contribution Agreement with the Debtor dated December 21, 2015. The Contribution Agreement recites that HMT was "to contribute capital to the Partnership in exchange for a 55% limited partnership interest in the Partnership." The "Contribution Amount," as defined therein, was $70,000,000, comprised of $7,000,000 cash and the Contribution Note in the principal amount of $63,000,000. The Contribution Note bears interest at 2.61%. Annual payments commence on December 21, 2019 and terminate on December 21, 2030. As of July 31, 2020, $58,887,399.63 was owed on the Contribution Note.[5]

18. Pursuant to the Partnership Interest Purchase Agreement dated as of December 24, 2015, HMT acquired 44.5% of the partnership interests, designated as Class C nonvoting partnership interests, for purchase consideration aggregating $93,000,000.

19. The Partnership Agreement was amended and adopted twice in connection with HMT's acquisition of the Debtor's partnership interests—first with the closing of the Partnership Interest Purchase Agreement on December 21, 2015, and again with the closing of the Contribution Agreement on December 24, 2015.

20. Section 3.9 of the Partnership Agreement governs distributions. It provides, in part:

---

[4] The Dugaboy Investment Trust is the family trust for James Dondero.

[5] Prior to December 31, 2019, HMT made a series of prepayments on the Contribution Note which decreased the principal balance of the Contribution Note.

(a) <u>General</u>. The General Partner may make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion, without being limited to current or accumulated income or gains, but no such distribution shall be made out of funds required to make current payments on Partnership indebtedness. . . . ***The Partnership has entered into one or more credit facilities with financial institutions that may limit the amount and timing of distributions to the Partners. Thus, the Partners acknowledge that distributions from the Partnership may be limited***. . . .

(b) <u>Priority Distributions</u>. Prior to the distribution of any amounts to Partners pursuant to Section 3.9(a), and notwithstanding any other provision in this Agreement to the contrary, the Partnership shall make the following distributions ("Priority Distributions") pro-rata among the Class B Partners in accordance with their relative Percentage Interests:

> (i) No later than March 31st of each calendar year, commencing March 31, 2017, an amount equal to $1,600,000.00;

> (ii) No later than March 31st of each year, commencing March 31, 2017, an amount equal to three percent (3%) of the Partnership's investment gain for the prior year, as reflected in the Partnership's books and records within ledger account number 90100 plus three percent (3%) of the gross realized investment gains for the prior year of Highland Select Equity Fund, as reflected in its books and records; and

> (iii) No later than March 31st of each year, commencing March 31, 2017, an amount equal to ten percent (10%) of the Partnership's Operating Cash Flow for the prior year.

> (iv) No later than December 24th of each year, commencing December 24, 2016, an amount equal to the aggregate annual principal and interest payments on the Purchase Notes for the then current year.

21. If the Priority Distributions are not made, section 4.2(e) of the Partnership Agreement specifies the remedy:

> (e) <u>Default on Priority Distributions</u>. If the Partnership fails to timely pay Priority Distributions pursuant to Section 3.9(b), and the Partnership does not subsequently make such Priority Distribution within ninety days of its due date, the Class B Limited Partner may require the Partnership to liquidate publicly traded securities held by the Partnership or Highland Select Equity Master Fund, L.P., a Delaware limited partnership controlled by the Partnership; provided, however, that the General Partner may in its sole discretion elect instead to liquidate other non-publicly traded securities owned by the Partnership in order to satisfy the Partnership's obligations under Section 3.9(b) and this Section 4.2(e).

7

In either case, Affiliates of the General Partner shall have the right of first offer to purchase any securities liquidated under this Section 4.2(e).

22. While the Partnership Agreement provides that Priority Distributions must be made ahead of certain other distributions, it has no requirement that HMT must receive distributions when there are insufficient funds to do so and no remedy supporting the assertion of a claim for distributions against the Debtor, Strand (as the general partner), or anybody else.

23. Instead, HMT points to a different agreement, citing the indemnification provision in the Contribution Agreement as follows:

> Section 6.02 <u>Indemnification By the Partnership</u>. Subject to the other terms and conditions of this Article VI, the Partnership shall indemnify and defend Contributor and its trustees, sponsors, administrators, grantors, officers, directors, managers, Affiliates, beneficiaries, shareholders, members, partners, successors and assigns (collectively, the "Contributor Indemnified Parties") against, and shall hold the Contributor Indemnified Parties harmless from and against, any and all *Losses incurred or sustained by, or imposed upon, any Contributor Indemnified Parties based upon, arising out of, with respect to or by reason of:*
>
> (a) any inaccuracy in or breach of any of the representations or warranties of the Partnership contained in this Agreement or any of the other agreements contemplated hereby to which the Partnership is a party;
>
> *(b) any breach or non-fulfillment of any covenant, agreement or obligation to be performed by the Partnership pursuant to this Agreement or any of the other agreements contemplated hereby to which the Partnership is a party;* and
>
> (c) any and all actions, suits, proceedings, claims, demands and Losses incident to any of the foregoing or incurred in attempting to oppose the imposition thereof, or in enforcing this indemnity.

(Emphasis added).

24. Section 6.05 of the Contribution Agreement sets forth certain limitations on indemnification. Two are relevant here:

> (b) The aggregate amount of all Losses for which the Partnership shall be liable shall not exceed ten percent (10%) of the Contribution Amount; provided, however, that for purposes of this Section 6.05(b) only, the term "Contribution Amount" shall be limited to the sum of (i) cash contributed by the Class B

8

> Member and (ii) the amount of principal actually paid by the Class B Member on the Note at the time of a claim for indemnity. . . .
>
> (e) *Subject to the limitations in this Section 6.05*, any indemnification obligation of the Partnership under Section 6.02 shall not be payable to the Indemnified Party in cash, but shall instead be satisfied by a reduction in the principal balance of the Contribution Note for the amount of such indemnification obligation.

(Emphasis added).

25. Although the HMT Claim asserts that only section 6.05(e) is relevant and that its remedy is a dollar-for-dollar reduction in the principal amount of the Contribution Note, subsection (e) is expressly subject to other limitations in section 6.05. Pursuant to subsection (b), the maximum aggregate of Losses for which the Partnership could be liable, therefore, would be 10% of the sum of (x) the $7 million cash component of the Contribution Amount plus (y) the amount of principal actually paid by the Class B Member on the Contribution Note at the time of a claim for indemnity—or $9,260,999.44. Consequently, HMT's indemnification claim, if allowed, is limited to **$1,626,099.94** (*i.e.*, $16,260,999.44 ($7,000,000 plus $9,260,999.44) times 10%).

## OBJECTION TO CLAIM

### A.     Legal Standard

26. The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. "A claim . . . , proof of which is filed under section 501 [of the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "A proof of claim executed and filed in accordance with the [Bankruptcy Rules] shall constitute *prima facie* evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f); *see also In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006). However, the ultimate burden of proof for a claim always lies with the claimant. *Armstrong*, 347 B.R. at 583 (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)).

9

27. The HMT Claim asserts that the Debtor is liable under section 6.02(b) of the Contribution Agreement, under which the Debtor must indemnify HMT for:

> Losses … arising out of … any breach or non-fulfillment of any covenant, agreement or obligation to be performed by the Partnership pursuant to this Agreement or any of the other agreements contemplated hereby to which the Partnership is a party.

28. HMT claims this provision is triggered by the Debtor's failure to make Priority Distributions as it is purportedly obligated to do under the Partnership Agreement:

> With regard to missed Priority Distributions and Priority Distributions that likely will not occur hereinafter, HMT claims the maximum benefit available to it on account of the Indemnity referenced in Section 6.02 of the Contribution Agreement, with regard to *the Debtor's obligation to fund Priority Distributions per the Fourth Amended and Restated Agreement of Limited Partnership, an "agreement or obligation to be performed by the Partnership pursuant to this Agreement or any of the other agreements contemplated hereby to which the Partnership is a party.*

HMT Claim, Ex. A at 2-3 (emphasis added).

29. By treating a partnership distribution as a contract right rather than a distribution of profits, and by using the claim as a setoff, HMT not only makes itself into a creditor rather than an equity holder, it actually elevates its rights to a position superior to that of general unsecured creditors! The HMT Claim fails for all of the following reasons.

**B.    The Indemnification Clause Is Inapplicable Because There Is No Agreement, Covenant or Obligation in the Partnership Agreement to Make Priority Distributions When the Partnership Has Insufficient Funds**

30. The fundamental and dispositive flaw in the HMT Claim is that there is no "agreement, covenant or obligation" in the Partnership Agreement to make Priority Distributions if the partnership does not have the funds to do so. HMT's general partner agreed to distribute partnership funds in a certain order of priority, but it did not commit to distributing funds that the Partnership does not have. The parties expressly acknowledged, in fact, that distributions may

10

be limited by Partnership debts: "[T]he Partnership has entered into one or more credit facilities with financial institutions that may limit the amount and timing of distributions to the Partners. Thus, the Partners acknowledge that distributions from the Partnership may be limited." Sec. 3.9(a).

31.     What is mandatory is that, as the name suggests, Priority Distributions must be made "[p]rior to the distribution of any amounts to Partners pursuant to Section 3.9(a)" and shall be made pro-rata among the Class B and Class C limited partnership interests. Sec. 3.9(b). Nowhere does the Partnership Agreement (i) provide that a failure to make distributions (as opposed to making them in the wrong order of priority) is a breach of the Partnership Agreement, or (ii) confer a right of action to require distributions. Rather than require a distribution of funds that do not exist, the Partnership Agreement has a remedy specific to the failure to make Priority Distributions: Section 4.2(e) permits HMT to require the Debtor to sell certain securities in order to raise cash so that the Debtor is able to make such distributions.

32.     HMT is the Debtor's owner, not its creditor. It does not have a contractual right to make a profit. To permit partners to draft partnership agreements to put themselves in a better position than creditors if things do not work out would turn partnership law on its head. The terms of the Partnership Agreement and Contribution Agreement do not reflect any such intention.

### C.    There Are No "Losses" Within the Meaning of the Indemnification Clause

33.     The indemnity clause also does not apply because HMT has not incurred "Losses" within the meaning of the Contribution Agreement.

34.     Under the Contribution Agreement, "'Losses' means all losses, damages, liabilities, claims, judgments, fines, penalties, costs or expenses, including reasonable attorneys',

11

accountants', investigators' and experts' fees and expenses in investigating or defending any of the foregoing or in the enforcement of this Agreement."

35. HMT does not allege what Losses were caused by the non-receipt of Priority Distributions but appears simply to assume that its Losses are the distributions HMT believes it had a right to receive. But, first, the non-distribution is the alleged *breach*, not Losses caused by the breach. To hold that the breach itself is the covered Loss is to directly rewrite the remedial provisions of the Partnership Agreement.

36. Second, the non-receipt of money is not covered by the definition of "Losses." HMT is left with less income, but the non-receipt does not itself cause damages, liabilities, claims, or judgments. HMT can (and will) pay with other funds. Are all HMT's unpaid bills "Losses" that the Debtor must indemnify?

### D. <u>Any Right to Indemnification Would Be Limited by Section 6.05(b) to $1,626,099.94</u>

37. Section 6.05(b) of the Contribution Agreement limits indemnification as follows:

> (b) The aggregate amount of all Losses for which the Partnership shall be liable shall not exceed ten percent (10%) of the Contribution Amount; provided, however, that for purposes of this Section 6.05(b) only, the term "Contribution Amount" shall be limited to the sum of (i) cash contributed by the Class B Member and (ii) the amount of principal actually paid by the Class B Member on the Note at the time of a claim for indemnity. . . .

HMT elects the setoff remedy in section 6.05(e) and contends that subsection (b) is irrelevant, but it is unclear why since Section 6.05(e) is expressly subject to Section 6.05 in its entirety, including Section 6.05(b):

> (e) *Subject to the limitations in this Section 6.05*, any indemnification obligation of the Partnership under Section 6.02 shall not be payable to the Indemnified Party in cash, but shall instead be satisfied by a reduction in the principal balance of the Contribution Note for the amount of such indemnification obligation.

(Emphasis added).

38. Pursuant to subsection (b), the maximum aggregate of Losses for which the partnership can be liable would be **$1,626,099.94**, which is 10% of the sum of (x) the $7 million cash component of the Contribution Amount plus (y) the amount of principal actually paid by the Class B Member on the Contribution Note at the time of a claim for indemnity—or $9,260,999.44. As such, although HMT asserts a claim for $60,298,739.00, even if it prevailed on all of its arguments, its maximum setoff would only be $1,626,099.94.

## FIRST CLAIM FOR RELIEF

### (Subordination under Bankruptcy Code § 510(b))

39. The Debtor repeats and re-alleges as if set forth herein all of the foregoing factual allegations.

40. If HMT had a claim under the Contribution Agreement, it would be subordinated under Bankruptcy Code § 510(b), which provides:

> (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

41. Section 510(b) applies to the ownership interests in a limited partnership. *See In re SeaQuest Diving, LP*, 579 F.3d 411 (5th Cir. 2009); *Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 154 (5th Cir. (2015); *In re Garrison Mun. Partners, LP*, 2017 Bankr. LEXIS 3765, *8 (Bankr. S.D. Tex., Oct. 31, 2017). Accordingly, judgment should issue declaring that the HMT Claim is subordinated pursuant to 11 U.S.C. § 510(b) and shall, subject to such other defenses or objections as may exist with respect to the HMT Claim, have the same rank and priority as all partnership interests.

13

## SECOND CLAIM FOR RELIEF

### (Declaratory Relief Regarding Setoff Rights)

42. The Debtor repeats and re-alleges as if set forth herein all of the foregoing factual allegations.

43. If the HMT Claim is allowed in any amount, setoff against amounts owed under the Contribution Note should not be permitted on two bases. First, claims that are subordinated to the level of equity, such as under section 510(b), may not be used to set off against claims of a debtor. Second, whether or not any HMT Claim is subordinated, setoff under section 553 is subject to equitable limitations, and the Court has ample cause to limit setoff so that creditors are not prejudiced by the assertion by a partner of its rights under an agreement for the purchase of limited partnership interests.

44. Although there is authority that claims that are subordinated under section 510(a) or (c) or other subordination provisions of the Bankruptcy Code may nonetheless be used defensively for setoff purposes,[6] the same rationale does not apply to "claims" that are subordinated to the level of equity under section 510(b) and which therefore are not really "claims" at all.. The only authority identified that discusses the issue holds that such "claims" may *not* be used for setoff. *Dayton Sec. Assocs.*, 74 F.3d at 1114.

45. In *Dayton Securities Associates*, limited partners who were being sued to collect their capital contributions brought RICO counterclaims which they hoped to set off against capital contribution obligations. The bankruptcy court held that they "were not entitled to set off

---

[6] *Rochelle v. United States*, 521 F.2d 844, 855 (5th Cir. 1975), *mandate amended*, 526 F.2d 405 (5th Cir.), *cert. denied*, 426 U.S. 94 (1976); *United States v. Cherry St. Partners, L.P. (In re All. Health of Fort Worth, Inc.)*, 240 B.R. 699, 704 (N.D. Tex.) *aff'd* 200 F.3d 816 (1999) (table). ("The Fifth Circuit has determined that a subordinated claim can be used to set off a claim by the bankrupt estate against a creditor even though the subordinated claim could not itself share in the dividends.")

their purported damages against their liability to the creditors of the Limited Partnerships." *Id*. The Eleventh Circuit affirmed on the following basis:

> The appellants concede that the right to a set off under § 553 is merely permissive and subject to the discretion of the bankruptcy court. *In re Diplomat Electric, Inc*., 499 F.2d 342, 346 (5th Cir.1974) (holding that the right to a set off in bankruptcy is discretionary and reviewing the denial of a set off for "clear abuse"). In this case, had the bankruptcy court allowed the appellants' set off claims, the assets available to satisfy the Limited Partnerships' creditors would have been reduced dollar for dollar by the amount of the damages set off. In light of this situation, the bankruptcy court determined that the equities favored the Limited Partnerships' creditors, who relied on the limited partners' public promise to contribute additional capital. Under all the circumstances, including the strong policy underlying the partnership law of New York to protect creditors as compared to the capital contribution of partners, we cannot say that the bankruptcy court abused its discretion in denying the appellants' set off claims.

*Id*.

46.    The Eleventh Circuit's holding and rationale applies squarely here. Even if mandatory subordination under section 510(b) did not *automatically* render such "claims" ineligible for setoff, setoff under section 553 is discretionary (as confirmed by the cited Fifth Circuit authority), and the equities in such a scenario are conclusively in favor of not permitting creditors to be leapfrogged and deprived of a recovery by an equity holder posing as a creditor that has its putative claim reduced to equity status.

47.    The Debtor is entitled to an order and judgment under 28 U.S.C. § 2201 declaring that the HMT Claim, if any, may not be setoff under 11 U.S.C. § 553 against the Debtor's claim to collect on the Contribution Note.

## Reservation of Rights

48.    The Debtor reserves its right to supplement or modify this Objection and Complaint to assert such further objections, claims, or arguments as may later become available or apparent.

## **Prayer**

**WHEREFORE**, the Debtor prays for judgment as follows:

1. For disallowance of the HMT Claim in its entirety;

2. For subordination of any HMT Claim pursuant to 11 U.S.C. § 510(b);

3. For a declaration that HMT is not entitled to use any HMT Claim for purposes of setoff under 11 U.S.C. § 553;

4. For costs of suit incurred herein; and

5. For such other and further relief as this Court deems just and proper.

|  |  |
|---|---|
| Dated: August 26, 2020. | PACHULSKI STANG ZIEHL & JONES LLP<br>Jeffrey N. Pomerantz (CA Bar No.143717) (*pro hac vice*)<br>Ira D. Kharasch (CA Bar No. 109084) (*pro hac vice*)<br>John A. Morris (NY Bar No. 2405397) (*pro hac vice*)<br>Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>E-mail:    jpomerantz@pszjlaw.com<br>            ikharasch@pszjlaw.com<br>            jmorris@pszjlaw.com<br>            gdemo@pszjlaw.com<br><br>-and-<br><br>*/s/ Zachery Z. Annable*<br>HAYWARD & ASSOCIATES PLLC<br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>MHayward@HaywardFirm.com<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>ZAnnable@HaywardFirm.com<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br><br>*Counsel for the Debtor and*<br>*Debtor-in-Possession* |

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> Highland Capital Management, L.P. | **DEFENDANTS** <br> Hunter Mountain Investment Trust |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd, 13th Flr, Los Angeles, CA 90067, (310) 277-6910 | **ATTORNEYS** (If Known) <br> E.P. Keiffer, Rochelle McCullough, LLP, 325 N. Saint Paul, Ste. 4500, (214) 580-2525 |
| **PARTY** (Check One Box Only) <br> ■ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor ☐ Other <br> ☐ Trustee | **PARTY** (Check One Box Only) <br> ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin <br> ■ Creditor ☐ Other <br> ☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) <br> The Debtor objects to Hunter Mountain Investment Trust's proof of claim, seeks subordination of the claim under 11 U.S.C. 510 to the extent allowed, and seeks declaratory judgment on issues of set off under 11 U.S.C. 553, among others. ||

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☑ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 0.00 |
| Other Relief Sought (i) Disallowance of claim no. 152 of Hunter Mountain Investment Trust; (ii) Subordination of any claim of Hunter Mountain Investment Trust; (iii) Declaration that Hunter Mountain Investment Trust may not use any claim for purposes of setoff under 11 U.S.C. 553 ||

App. 0937

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br>19-34054-sgj-11 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>August 26, 2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Gregory V. Demo | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

App. 0938