# Appendix Exhibit 51

Case 19-34054-sgj11 Doc 1008 Filed 08/31/20 Entered 08/31/20 13:29:10 Page 1 of 23
Case 3:21-cv-00881-X Document 174-51 Filed 12/16/23 Page 2 of 26 PageID 18145
Docket #1008 Date Filed: 8/31/2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*pro hac vice*)
Robert J. Feinstein (NY Bar No. 1767805) (*pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| v. | § | _____ |
| | § | |
| PATRICK HAGAMAN DAUGHERTY, | § | |
| | § | |
| Defendant. | § | |

---

[1] The last four digits of the Debtor's taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.


¹º³⁴⁰⁵⁴²⁰⁰⁸³¹⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰³
1934054200831000000000003

**DEBTOR'S (I) OBJECTION TO CLAIM NO. 77 OF PATRICK HAGAMAN
DAUGHERTY AND (II) COMPLAINT TO SUBORDINATE CLAIM OF
PATRICK HAGAMAN DAUGHERTY**

COMES NOW Highland Capital Management, L.P., the debtor and debtor-in-possession

("Debtor" or "Plaintiff") in the above-captioned chapter 11 case ("Bankruptcy Case"), filing the

*Debtor's (i) Objection to Claim No. 77 of Patrick Hagaman Daugherty and (ii) Complaint to*

*Subordinate Claim of Patrick Hagaman Daugherty* (the "Complaint") objecting to Proof of

Claim No. 77 (amending and superseding an earlier-filed Proof of Claim No. 67) (the

"Daugherty Claim") filed by Patrick Hagaman Daugherty ("Daugherty" or "Defendant") on

April 6, 2020, and seeking subordination of the Daugherty Claim. In support of the Complaint,

the Debtor alleges as follows:

## I.     NATURE OF THE ACTION

1.     Daugherty is a former limited partner of the Debtor and a former officer of the

Debtor's general partner, Strand Advisors, Inc. ("Strand"). On May 28, 2009, his employment

by Strand was terminated for cause. Slightly over two years later, on September 28, 2011, he

resigned from the Debtor. Litigation ensued in Texas state court (the "Texas Action"). The

Debtor prevailed on claims for breach of contract and breach of fiduciary duty against Daugherty

for non-monetary damages and obtained an award of $2.8 million in attorneys' fees. Each of

Daugherty's claims against the Debtor was unsuccessful. He did, however, prevail on a third-

party claim against Highland Employee Retention Assets LLC ("HERA"), an employee deferred

compensation vehicle. He was awarded the value of his ownership interests—$2.6 million—on

a claim against HERA for breach of the implied covenant of good faith and fair dealing in

connection with actions that allegedly deprived him of the value of those interests (the "HERA

Judgment"). Daugherty was unable to collect on the HERA Judgment against HERA. Not

wishing to return to Texas state court, he sued the Debtor, HERA, and others in the Delaware

Chancery Court (the "Delaware Action"), alleging in part that HERA assets had been fraudulently transferred to the Debtor.

2.      The Daugherty Claim attaches and incorporates his operative complaint in the Delaware Action, which was in trial on the Petition Date (as defined below), to which he adds two new claims to reach an asserted total of "at least $37,483,876.62." The Daugherty Claim has the following components:

(i)     In the Delaware Action, he sought: (a) to collect the HERA Judgment of $2.6 million plus interest of $1.13 million; (b) a distribution of HERA assets, which he values at $26 million, on account of what he contends is his still-existing interest in HERA, notwithstanding that he was already awarded the value of that interest in the Texas Action; and (c) indemnification for his attorneys' fees incurred in the Texas Action and the Delaware Action under the Debtor's partnership agreement.

(ii)    Defamation in a November 30, 2017, press release.

(iii)   Indemnification as a former partner of the Debtor for any personal tax liability arising from a pending 2008/09 IRS audit of the Debtor that may result in additional pass-through income to the Debtor's partners. He values this claim at $6,751,902.41, plus interest of $992,790.40.

3.      As addressed herein: (i) the Debtor will not object to allowance of Daugherty's claim for the value of his HERA Judgment plus interest to the Petition Date—totaling $3,722,019; (ii) the Debtor objects to Daugherty's $26 million claim for a distribution of his asserted interest in HERA's assets on the basis that it would constitute a double recovery on his HERA Judgment, and in any event could be no more than $4,967,828; (iii) the Debtor objects to indemnification of Daugherty's attorneys' fees in his personal litigation with the Debtor; (iv) the Debtor objects to Daugherty's defamation claim as time-barred under the "single publication rule"; and (v) the Debtor objects to Daugherty's claim that the Debtor is required to pay his personal taxes; furthermore, any such claim approximates $740,000 and not $6.7 million, and any such claim is subordinated under Bankruptcy Code § 510(b).

4.     Accordingly, this adversary proceeding is brought pursuant to Rules 7001(1), (8) and (9) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and sections 502, 510(b), and 541 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") to (i) disallow the Daugherty Claim under section 502(a) as unenforceable under applicable law and (ii) subordinate the Daugherty Claim under section 510(b).

## II.     <u>JURISDICTION AND VENUE</u>

5.     This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "<u>Court</u>") under chapter 11 of the Bankruptcy Code.

6.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.     <u>THE PARTIES</u>

9.     The Debtor is a limited partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

10.     Defendant Patrick Hagaman Daugherty is an individual with an address at 3621 Cornell Avenue, Suite 830, Dallas, Texas 75205.

## IV. CASE BACKGROUND

11.    On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Bankruptcy Case").

12.    On October 29, 2019, the United States Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors.

13.    On December 4, 2019, the Delaware Court entered an order transferring venue of the Bankruptcy Case to this Court [Docket No. 186].[2]

14.    On January 9, 2020, this Court entered an Order [Docket No. 339] on the *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] pursuant to which an independent board of directors (the "Independent Board") was appointed at the Debtor's general partner, Strand.

15.    The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

## V. OBJECTION TO CLAIM

### A.    Legal Standard

16.    The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim.  "A claim . . . , proof of which is filed under section 501 [of the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  "A proof of claim executed and filed in accordance with the [Bankruptcy Rules] shall

---

[2] All docket numbers refer to the main docket for the Bankruptcy Case maintained by this Court.

constitute *prima facie* evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f); *see also In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006). However, the ultimate burden of proof for a claim always lies with the claimant. *Armstrong*, 347 B.R. at 583 (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)).

**B.      The Claim for Defamation Is Time-Barred**

17.      Daugherty asserts a claim against the Debtor for allegedly "defaming him on its website pursuant to its November 30, 2017 press release titled *Matt Wirz, Wall Street Journal Fake News, Sloppy and Malicious Reporting*."[3] As of the Petition Date, Daugherty had not filed a lawsuit against the Debtor or any other party on the basis of defamation.

18.      Defamation carries a one-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.002(a) ("A person must bring a suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues.") The statute runs from the date of first publication of the allegedly defamatory statement on the defendant's website. *Glassdoor, Inc v. Andra Group, LP*, 575 S.W.3d 523, 528–29 (Tex. 2019); *Mayfield v. Fullhart*, 444 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The "single publication rule" serves to "avoid[ ] the potential for endless retriggering of the statute of limitations, multiplicity of suits, and harassment of defendants, along with the corresponding chilling effect on internet communications." *Glassdoor*, 575 S.W.3d at 528–529 (internal citations omitted). Accordingly, Daugherty was time-barred from asserting a defamation claim on December 1, 2018.

19.      The Debtor believes this issue is dispositive but reserves the right to object on any other basis if necessary.

---

[3] The press release has been removed from the Debtor's website.

**C.** **The Claim for Tax Indemnification or a Tax Distribution Lacks Merit, Is Overstated, and Must Be Subordinated if Allowed**

      **(i)** **Daugherty Has No Right to Tax Indemnification**

20.     The Daugherty Claim has a damages breakdown that contains what is referred to as an indemnification claim of $992,790.40, including interest and penalties, on account of a pending IRS audit of the Debtor. Daugherty states:

> Daugherty is a former senior partner of Highland Capital Management, LP and this claim arises out of a 2008/2009 pending undecided audit/dispute (06252018 0028) between the Debtor and the Internal Revenue Service that remains unresolved.

21.     The IRS audit of the Debtor's return for 2007-08 (not 2008-09 as erroneously stated in the Daugherty Claim) resulted in a determination that additional pass-through distributions were required to be made to the Debtor's partners. The audit determination is subject to appeal. Daugherty's 4% share of the additional distributions comes to $1,475,860. Assuming a 35% marginal rate ($440,227), and adding penalties ($88,045) and interest ($212,035), his total exposure approximates $740,307 at this time—not $992,790.

22.     Regardless of amount, Daugherty has no right to mandatory indemnification of his personal tax liability as a former partner of the Debtor. Section 4.1(h) of the Partnership Agreement provides for indemnification of limited partners in the "sole and unfettered discretion" of the general partner. It does provide for mandatory indemnification of the general partner, Strand, of which Daugherty was an officer, but that provision is inapplicable to his personal tax liabilities. In relevant part, Section 4.1(h) reads as follows:

> <u>Indemnification</u>. The Partnership shall indemnify and hold harmless the General Partner and any director, officer, employee, agent, or representative of the General Partner (collectively, the "***GP Party***"), against all liabilities, losses, and damages incurred by any of them by reason of any act performed or omitted to be performed in the name of or on behalf of the Partnership, or in connection with the Partnership's business, including, without limitation, attorneys' fees and any amounts expended in the settlement of any claims or liabilities, losses, or damages, to the fullest extent permitted by the Delaware Act; *provided, however,*

the Partnership shall have no obligation to indemnify and hold harmless a GP Party for any action or inaction that constitutes gross negligence or willful or wanton misconduct.

23.    Daugherty's personal income taxes on distributions received in his capacity as a limited partner of the Debtor do not fall within the Debtor's indemnification of its general partner for "liabilities, losses, and damages incurred . . . by reason of any act performed or omitted to be performed in the name of or on behalf of the Partnership, or in connection with the Partnership's business . . . ."  Daugherty incurred personal taxes on his income.  The closest nexus to the Debtor would be that an indeterminate portion of that income came from the Debtor. He did not incur any loss or liability in his asserted capacity as a "GP Party," *i.e.*, an officer of Strand, the indemnified general partner.  Therefore the indemnity clause does not apply as a matter of common sense and by its express terms.

24.    Nor does Daugherty have a claim for a tax distribution from the Debtor. The last Partnership Agreement to which Daugherty was a signatory was the *Second Amended and Restated Agreement of Limited Partnership*.  Distributions are addressed in section 3.9, which provides in part:

> (a) <u>General</u>.  The General Partner shall review the Partnership's accounts at the end of each calendar quarter to determine whether distributions are appropriate. The General Partner may make such pro rata or non-pro rata distributions as it may determine in its sole and unfettered discretion, without being limited to current or accumulated income or gains, but no such distribution shall be made out of funds required to make current payments on Partnership indebtedness.  The Partnership has entered into one or more credit facilities with financial institutions that may limit the amount and timing of distributions to the Partners.  Thus, the Partners acknowledge that distributions from the Partnership may be limited. . . .

> (b) <u>Tax Distributions</u>.  The General Partner shall promptly declare and make cash distributions pursuant hereto to the Partners to allow the federal and state income tax attributable to the Partnership's taxable income that is passed through the Partnership to the Partners to be paid by such Partners (a "Tax Distribution").  To satisfy this requirement, the Partnership shall pay to each Partner on or before April 14 of each Fiscal Year….

25.     Partners do not have a right to distributions as if they were creditors. That is why section 3.9(a) clearly states that distributions will be limited if funds are insufficient to pay current debt. A partnership agreement is simply an agreement between partners as to when and how distributions may be made if the partnership has the funds to do so. Even if there were such an obligation, the Debtor had not made any distributions that would be subject to tax, and so would have had no obligation *at that time* to make tax distributions. And even if the Partnership Agreement were interpreted to call for a tax distribution to be made on account of income that is imputed to its partners ten years later as a result of the IRS audit (which is still contingent), the Debtor does not have funds in excess of current debt. Thus Daugherty has no claim for tax indemnification or a tax distribution.

**(ii)     A Partner's Claim for Tax Indemnification or Distributions under the Partnership Agreement Must Be Subordinated under Bankruptcy Code § 510(b)**

26.     Even if Daugherty had a claim under the Partnership Agreement, it would be subordinated under Bankruptcy Code § 510(b), which provides:

> (b)   For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

27.     Section 510(b) applies to the ownership interests in a limited partnership. *See In re SeaQuest Diving, LP*, 579 F.3d 411 (5th Cir. 2009); *Templeton v. O'Cheskey (In re Am. Hous. Found.)*, 785 F.3d 143, 154 (5th Cir. (2015); *In re Garrison Mun. Partners, LP*, 2017 Bankr. LEXIS 3765, *8 (Bankr. S.D. Tex. Oct. 31, 2017).

28.     Thus, there are three distinct categories of claims subject to mandatory subordination under section 510(b): (1) a claim arising from rescission of a purchase or sale of a

security of the debtor (the rescission category); (2) a claim for damages arising from the purchase or sale of a security of the debtor (the damages category); and (3) a claim for reimbursement or contribution allowed under 11 U.S.C. § 502 on account of either (1) or (2). *SeaQuest*, 579 F.3d at 418.

29.     Even if Daugherty had a claim under the Partnership Agreement to cover his taxes, such a claim would be a claim for damages "arising from" the purchase of a security (category 2). The category covers claims arising from not just the purchase itself but all claims arising thereafter as incidents of ownership, except where the claim is genuinely a "debt"—*e.g.*, where it arises from a documented loan or other distinct transaction between the partner and the partnership.

> For purposes of the damages category, the circuit courts agree that a claim arising from the purchase or sale of a security can include a claim predicated on post-issuance conduct, such as breach of contract. They also agree that the term "arising from" is ambiguous, so resort to the legislative history is necessary. For a claim to "arise from" the purchase or sale of a security, there must be some nexus or causal relationship between the claim and the sale. Further, the fact that the claims in the case seek to recover a portion of claimants' equity investment is the most important policy rationale.

*SeaQuest*, 579 F.3d at 421 (internal citations omitted). In *SeaQuest*, the Fifth Circuit ruled that a settlement that essentially effected a rescission and, when breached, resulted in a judgment, was nonetheless subordinated under section 510(b). *Id*. at 423-26 ("For purposes of § 510(b), we may look behind the state court judgment to determine whether the . . . claim 'arises from' the rescission of a purchase or sale of a security of the debtor.")

30.     In *Garrison Municipal Partners*, a redemption claim arising from withdrawal from the partnership was subordinated under section 510(b). The situations identified by the court in which section 510(b) *would not* apply illustrate why it *would* likely apply here:

> Debtor's failure to pay the Greens' claim upon withdrawal is a claim for breach of contract arising from the withdrawal. The Greens are seeking to recover their

equity investment. Thus, under Section 510(b), their claim is subordinated and has the same priority as the other prepetition investors.

The Greens' argument that their notice of withdrawal is a redemption claim similar to those in *In re Montgomery Ward Holding Co*. 272 B.R. 836 (Bankr. D. Del. 2001), *abrogated on other grounds by In re Telegroup, Inc*., 281 F.3d 133 (3d Cir. 2002) lacks merit. A redemption claim requires a separate note, *see SeaQuest*, 579 F.3d, at 423, and must be independent of the partnership agreement. *See In re American Housing Foundation*, 785 F.3d 143 (5th Cir. 2015). In this case, the notice of withdrawal was not self-executing so as to give the Greens an interest in the assets of the partnership. The partnership agreement required action on the part of the general partner to repay the Greens equity interests.

*Garrison Mun. Partners*, 2017 Bankr. LEXIS 3765 at *9; *see also Official Comm. of Unsecured Creditors v. FLI Deep Marine LLC (In re Deep Marine Holdings, Inc.)*, 2011 Bankr. LEXIS 579 (Bankr. S.D. Tex. Jan. 19, 2011) (claims for right of appraisal, fraud, and accounting were causally linked to status as shareholders and so were subordinated); *Queen v. Official Comm. of Unsecured Creditors (In re Response U.S.A., Inc.)*, 288 B.R. 88 (D.N.J. 2003) (shareholder cannot avoid subordination under 11 USC § 510(b) by placing risk-limiting provision in stock purchase agreement in order to claim creditor status in bankruptcy proceedings).

31.     By comparison, *Stucki v. Orwig*, No. 3:12-CV-1064-L, 2013 U.S. Dist. LEXIS 53139, at *15-19 (N.D. Tex. Apr. 12, 2013) found section 510(b) inapplicable where the claim arose from breach of a settlement agreement by which the shareholders withdrew a lawsuit seeking to compel a shareholders' meeting and election of directors. *Id.* at *17. The court reasoned as follows: "[I]n both *In re SeaQuest* and *In re Deep Marine Holdings*, the claims essentially sought to recover the claimants' equity interests in the debtor. There is no suggestion in the record that the shareholders sought to do the same here. The court therefore concludes that the connection or causal relationship between the Breach Claim and the actual or virtual purchase or sale of any security interests in FirstPlus is too attenuated to bring it within § 510(b)'s reach." *Id.* at *19. That decision seems debatable, but in any event, it is a far cry from

this case, where what Daugherty is effectively demanding is a distribution on account of his partnership interest. Such a claim should fall squarely under section 510(b).

32.    Daugherty is asserting a right under the Partnership Agreement to cover the taxes on his distributions from the partnership. To the extent he has such a right, it is an incident of ownership arising from the Partnership Agreement and not from any ancillary transaction such as a loan. It is in the nature of a "partner claim," not a creditor claim, and must be subordinated.

**D.    The Debtor Does Not Object to Allowance of a Claim for the Amount of the HERA Judgment, but Daugherty Is Not Entitled to a Double Recovery**

33.    Daugherty was an officer of Strand and a limited partner of the Debtor. On May 28, 2009, his employment by Strand was terminated for cause. On September 28, 2011, he resigned from the Debtor. At the time he resigned, Daugherty owned units of HERA, which was a deferred compensation plan that held interests in certain Highland-related entities. Daugherty owned (and in his view still owns) 19.1% of the HERA units. The other 80.91% is owned by the Debtor.

34.    On February 16, 2012, HERA enacted a *Second Amended and Restated LLC Agreement* (the "HERA Agreement"). Section 12.1 provided that legal fees incurred in a lawsuit relating to the HERA Agreement may be offset against the capital balance of the LLC member bringing the lawsuit.

35.    After Daugherty filed claims against HERA and the Debtor in the Texas Action, the Debtor bought out all other members of HERA and, based on Section 12.1, issued a capital balance statement of "zero" to Daugherty for his HERA membership units. On April 30, 2013, HERA assigned to the Debtor all of HERA's remaining assets, consisting of (i) $9,527,375 in limited partnership interests in Highland Restoration Capital Partners, L.P. ("RCP"); (ii) 5,424

shares in stock in NexPoint Credit Strategies Fund ("NHF"); and (iii) $6,338,702 in cash[4] (the "Distribution Assets").

36.     In December 2013, the Debtor placed in escrow Daugherty's alleged ratable 19.1% share of the Distribution Assets, namely (i) $1,820,050 in RCP units, (ii) the cash equivalent of 1,088 shares of NHF, and (iii) $1,201,502 in cash (the "Escrow Assets"). The escrow agreement stated that if Daugherty prevailed against HERA, the Debtor would return the Escrow Assets to HERA.

37.     Daugherty prevailed against HERA in the Texas Action. The jury found that HERA used Section 12.1 to deny Daugherty the value of his HERA units, that this breached HERA's duty of good faith and fair dealing, and that the market value of the HERA units was $2.6 million. On July 14, 2014, the Texas court rendered the HERA Judgment, comprising a judgment against HERA of $2.6 million, plus prejudgment and post-judgment interest at 5%.

38.     Daugherty was unable to collect the HERA Judgment from HERA. On December 1, 2016, the escrow agent resigned and returned the Escrow Assets to the Debtor rather than HERA, leaving HERA without assets. In the Delaware Action, Daugherty asserts, *inter alia*, claims against the Debtor, HERA, and Highland ERA Management, LLC for fraudulent transfer, promissory estoppel, and unjust enrichment. Daugherty alleges the Escrow Assets were pledged as security against his claims and should have been transferred to HERA and then to him after confirmation of the HERA Judgment on appeal.

39.     The Debtor has defenses to the constructive fraudulent transfer claims. It contends there was no transfer from HERA to the Debtor, because it was the Debtor that placed the Escrow Assets in escrow, not HERA. Second, the Debtor claims it could retain the Escrow

---

[4] No actual cash moved from HERA to the Debtor on April 30, 2013. Instead, this cash number represents the (i) the cash distributions from HERA to the Debtor in 2013, (ii) HERA's repayment of expenses to the Debtor in 2013, and (iii) the cash distributions from the monetization of RCP assets from April 2013 to December 2013.

Assets because it paid HERA's legal fees after April 30, 2013 in an amount ($9 million) exceeding the amount of the Escrow Assets and, therefore, (i) had a right as a creditor of HERA to recoup those fees and/or (ii) gave reasonably equivalent value. The Debtor contends promissory estoppel and unjust enrichment should not apply because a written contract governed the disposition of the Escrow Assets.[5]

40. Nonetheless, after review of these defenses by the Independent Board and based on rulings in the Delaware Action supportive of Daugherty's actual fraudulent transfer claim, the Debtor has determined not to object to allowance of the Daugherty Claim in the amount of the HERA Judgment ($2.6 million), plus prejudgment interest ($279,500) and post-judgment interest to the Petition Date ($842,519), totaling $3,722,019.

41. However, the Daugherty Claim *also* asserts that Daugherty is entitled to the value of the Distribution Assets, which Daugherty alleges is $26,009,573. This would constitute a double recovery on the HERA Judgment to which the Debtor objects. In addition, the amount is grossly overstated. Under no theory would Daugherty ever be entitled to more than his 19.1% share of the Distribution Assets. Consistent with the opinion of Daugherty's own expert in the Delaware Action, Paul Wazzan, **he would be entitled to 19.1% of the claimed value of $26,009,573, or $4,967,828**.

42. Moreover, any such recovery should be disallowed as a double recovery, because the HERA Judgment was based on Daugherty having been deprived of the value of his interest in HERA. Logically, therefore, that interest had no further value.

---

[5] *SIGA Techs., Inc. v. Pharmathene, Inc.*, 67 A.3d 330, 348 (Del. Super. 2013) ("Promissory estoppel does not apply… where a fully integrated, enforceable contract governs the promise at issue"); *In re HH Liquidation, LLC*, 590 B.R. 211, 285-87 (Bankr. D. Del. 2018) ("[A] written contract defeats a claim for unjust enrichment even if the defendant is not a signatory to the contract.")

43. Daugherty contends that he retained his former 19.1% interest in HERA notwithstanding the award, because the court struck-through language in the judgment that would have made express that Daugherty had no further interest in HERA:

> Furthermore, the Court, after considering the jury's findings regarding HERA's breach of the implied covenant of good faith and fair dealing, finds and concludes that Daugherty is entitled to relief hereinafter given.
>
> It is therefore further ORDERED that Daugherty have and recover $2,600,000 from HERA, ~~representing the full value of Daugherty's interest in HERA as determined by the jury.~~
>
> It is further ORDERED that Daugherty shall no longer have any ownership or other interest in HERA or any proceeds or accounts arising from Daugherty's prior interest in HERA that were not distributed to Daugherty prior to the entry of this judgment, Daugherty having been awarded the full value of that interest in HERA as determined by the jury.
>
> It is further ORDERED that total amount of the actual damages rendered against HERA herein will bear prejudgment interest at the rate of 5% simple interest from May 22, 2012, until the day before this judgment is signed.
>
> It is further ORDERED that the total amount of the judgment here rendered against HERA will bear interest at the rate of 5% per annum, compounded annually, from the date this judgment is signed until paid.

44. Although Daugherty divines that the Texas court intended to confirm that he still owns 19.1% of HERA, it is far more likely that the court struck the language because it was outside the scope of the jury's findings, concerning instead the prospective effect of the judgment, which was not before the court. The very nature of Daugherty's claim was that the actions that the jury found had breached the implied covenant and fair dealing had deprived him of the value of his membership units in HERA. Even if those membership units were not

extinguished, Daugherty's capital account would have been reduced to zero by the award, entitling him to no further distributions. It would be a double recovery to Daugherty if he also retained that ownership interest and recovered the value of the Distribution Assets *again*. Such an outcome would be fundamentally inequitable to the interests of other creditors in this case and should not be allowed.

E.    **Daugherty Is Not Entitled to Indemnification of Fees in His Personal Litigation with the Debtor**

45.    Finally, Daugherty also asserts two indemnification claims against the Debtor for fees incurred defending claims against him by the Debtor in the Texas Action based on his employment performance, which he states were nonsuited, and for "fees on fees" for prosecuting his asserted right to indemnification in the Delaware Action. It appears from the proof of claim that these claims are represented by two line items of $3,139,452 and $3,479,318. These portions of the Daugherty Claim should be disallowed.

46.    The claims in the Texas Action for which Daugherty allegedly is entitled to indemnification, as reflected on the jury verdict (referenced as Exhibit O to the Daugherty Claim), are as follows:

| Claim | Description of Claim | Outcome |
|-------|---------------------|---------|
| Highland 1 | Declaratory judgment that Highland did not owe Daugherty any compensation or payments under Highland's long-term incentive plan ("LTIP") because his conduct forfeited his rights. Ex. O at 8. | Voluntarily dismissed pre-trial |
| Highland 2 | Breach of employment agreement and a buy-sell agreement relating to purported complaints from other Highland employees about Daugherty and purported disclosures of confidential information that "violated his common law duties to Highland, as well as several agreements between him and Highland." Ex. O at 9. | ***Jury found Daugherty liable.*** |

| Highland 3 | Breach of fiduciary duty and a claim of entitlement to "all compensation paid to Daugherty during the time he was breaching his duties, as well as to an award of exemplary and punitive damages." Ex. O at 9. | *Jury found Daugherty liable.* |
|---|---|---|
| Highland 4 | A claim for violation of the Texas Theft Liability Act related to purported theft of Highland's trade secrets. | Voluntarily dismissed pre-trial |
| Highland 5 | Tortious interference with Highland's business relations seeking exemplary and punitive damages | Jury found Daugherty not liable. |
| Highland 6 | Defamation related to Daugherty's purported statements about Highland to potential investors | Jury found Daugherty not liable. |
| Highland 7 | Misappropriation of trade secrets and other confidential information, including on behalf of Cornerstone | Voluntarily dismissed pre-trial |
| Highland 8 | Conversion related to purported conversion of confidential information, including on behalf of Cornerstone | Voluntarily dismissed pre-trial |
| Highland 9 | Business disparagement, including on behalf of Cornerstone. *Id.* at 13-15 | Voluntarily dismissed pre-trial |

47.     The Debtor prevailed on claims for breach of the Employment Agreement and for breach of fiduciary duty, which Daugherty minimizes as "only" having to do with confidential information with no compensatory damages, but on which the Debtor was awarded $2.8 million in attorneys' fees.  The Debtor was found to have complied with the Employment Agreement and honored all obligations concerning the LTIP Plan, the HERA Agreement, and severance pay.

48.     As discussed above in connection with Daugherty's attempt to be indemnified for his personal tax liability, indemnification of limited partners is discretionary under the Debtor's Partnership Agreement; hence, Daugherty relies upon its mandatory indemnification of the general partner, Strand, under Section 4.1(h).  He claims to be a "GP Party," which is "any

director, officer, employee, agent, or representative of the General Partner." GP Parties are indemnified for:

> all liabilities, losses, and damages incurred … [including attorneys' fees] by reason of any act performed or omitted to be performed in the name of or on behalf of [the Debtor] or in connection with the Partnership's business … to the fullest extent permitted by the Delaware Act … [except] for any action or inaction that constitutes gross negligence or willful or wanton misconduct.

49.     Daugherty claims he is entitled to indemnification as a GP Party because all of his litigation expense was purportedly "in connection with [the Debtor's] business." He contends there is no limitation to defensive litigation expenses, nor any even any requirement that he be successful.

*50.     Daugherty was a GP Party as an officer of Strand only until May 29, 2009, and he resigned from the Debtor on September 28, 2011. Other than the first non-suited claim, which relates to his personal compensation, all of the claims for which he was not found liable involve actions taken well after he left Strand and even after he left the Debtor, as to which he was not a GP Party. None of the Debtor's claims against Daugherty related to his time as an officer of Strand, when he was a GP Party.*

51.     Second, Daugherty was not an "agent" for any relevant purpose that would make him an indemnified GP Party for these purposes. None of the actions for which the Debtor sued him were taken at the instruction or on behalf of the General Partner as its "agent or representative." *See Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 163 (Del. Ch. 2003) (in reference to 8 Del. C. §145, governing indemnification of corporate officers, "I read §145 as embracing the more restrictive common law definition of agent, which generally applies only when a person (the agent) acts on behalf of another (the principal) in relations with third parties."). Furthermore, Delaware "[c]ourt[s] limit[] agency in the indemnification context to only those situations when an outside contractor can be said to be acting as an arm of the

corporation vis-à-vis the outside world." *Pasternack v. N.E. Aviation Corp.*, No. 12082-VCMR, 2018 WL 5895827, at *8 (Del. Ch. Nov. 9, 2018).

52.     Third, even if Daugherty were to prove he was a GP Party at a relevant time, and even if he were to prove that he was acting in the capacity of an agent—*i.e.*, interacting on behalf of Strand with third parties—decisions under the Delaware General Corporation Law ("DGCL") hold that a director is not entitled to indemnification in respect of employment litigation between the director and the corporation. *See Shearin v. E.F. Hutton Group, Inc.*, 652 A.2d 578, 594 (Del. Ch. 1994) (holding that former officer was not entitled to indemnification for claims relating to breach of her employment contract because those claims did not involve the officer's duties to the corporation and its shareholders); *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 562 (Del. 2002) ("Although Cochran's termination is the event that triggered the relevant provisions of the employment contract, Cochran's decision to breach the contract was entirely a personal one, pursued for his sole benefit.")

> When a corporate officer signs an employment contract committing to fill an office, he is acting in a personal capacity in an adversarial, arms-length transaction. To the extent that he binds himself to certain obligations under that contract, he owes a personal obligation to the corporation. When the corporation brings a claim and proves its entitlement to relief because the officer has breached his individual obligations, it is problematic to conclude that the suit has been rendered an "official capacity" suit subject to indemnification under § 145 and implementing bylaws.

*Paolino v. Mace Sec. Int'l, Inc.*, 985 A.2d 392, 404 (Del. Ch. 2009) (citing the *Cochran* Chancery Court decision, 2000 Del. Ch. LEXIS 179, 2000 WL 1847676, at *6 (reversed in part on other grounds).

53.     The Daugherty Claim anticipates the defense under *Cochran* that the subject claims were "personal employment-related" claims, and attempts to distinguish it on the basis that the Delaware Revised Uniform Limited Partnership Act ("DRULPA") is more permissive than the DGCL and does not preclude indemnification even when the indemnitee has been

adjudged liable to the partnership (if a court deems it fair in view of all the circumstances). If it provides for coverage to the full extent permitted under the law, then it is to be provided unless the partnership agreement or law provide otherwise.

54. Citing *Paolino*, *supra*, Daugherty specifically argues that *Cochran* is inapplicable because his employment conduct was not "personal" in distinction from the compensation issues in *Cochran*. Regardless, he did not incur losses "by reason of any act performed or omitted to be performed . . . in connection with the Partnership's business" under section 4.1 of the Partnership Agreement. The "by reason of the fact" standard is not met where the claims at issue do not involve the exercise of judgment, discretion, or decision-making authority on behalf of the corporation. *Batty v. UCAR Int'l Inc*., No. 2018-0376-KSJM, 2019 Del. Ch. LEXIS 114, at *19 (Del. Ch. Apr. 3, 2019) (quoting *Paolino*). Here, the Debtor's Claims 4-9 related solely to conduct after Daugherty left the Debtor's employ. Daugherty was found liable on Claims 2 and 3, and the Partnership Agreement provides that "the Partnership shall have no obligation to indemnity and hold harmless a GP Party for any action or inaction that constitutes gross negligence or willful or wonton misconduct.")

55. Even if Daugherty were to surmount all other hurdles, even under his construction, any rights to fees would be discretionary. The Debtor respectfully submits that the facts do not support penalizing other creditors by awarding Daugherty fees in his personal litigation with the Debtor on account of his status as an officer of Strand, relating to conduct that had nothing to do with actions taken or not taken in his capacity as an officer of Strand, and largely post-dating that tenure.

56. Finally, Daugherty should have to segregate his attorneys' fees between those incurred on any indemnifiable claims and other claims, in particular those on his counter- and third-party claims. Indemnification under Partnership Agreement §4.1(h) relates to acts

performed or not performed by Daugherty (as an agent of Strand) in connection with the Debtor's business. Daugherty's counter- and third-party claims in the Texas Action related to (i) his departure from the Debtor (defamation and breach of employment agreement by the Debtor relating to severance, all of which Daugherty lost), (ii) a separate incentive vehicle called Sierra Verde which was wound down separate from Daugherty's resignation, (iii) claims related to Daugherty's value in HERA, and (iv) claims in relation to his LTIP.[6] Of these, categories (ii) and (iii) related to third-party claims against compensation vehicles, and Daugherty lost claims in categories (i) and (iv). In fact, Daugherty succeeded on only one of his twenty total affirmative claims.

## VI.     FIRST CLAIM FOR RELIEF

### (Subordination under Bankruptcy Code § 510(b))

57.     The Debtor repeats and re-alleges as if set forth herein all of the foregoing factual allegations.

58.     Even if Daugherty had a claim under the Partnership Agreement, it would be subordinated under Bankruptcy Code § 510(b), which provides:

> (b)  For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

59.     Section 510(b) applies to the ownership interests in a limited partnership. *See SeaQuest*, 579 F.3d 411; *Templeton*, 785 F.3d at 154; *Garrison Mun. Partners*, 2017 Bankr. LEXIS 3765 at *8. Accordingly, judgment should issue declaring that the Daugherty Claim is subordinated pursuant to 11 U.S.C. § 510(b) and shall, subject to such other defenses or

---

[6] Daugherty's *Third Amended and Restated Answer, Counterclaim, and Third-Party Petition* in the Texas Action at ¶¶ 122 – 183.

objections as may exist with respect to the Daugherty Claim, have the same rank and priority as all partnership interests.

<h3 style="text-align:center"><strong>VII.   RESERVATION OF RIGHTS</strong></h3>

60. The Debtor reserves its right to supplement or modify this Complaint to assert such further objections, claims, or arguments as may later become available or apparent.

<h3 style="text-align:center"><strong>VIII.   PRAYER</strong></h3>

WHEREFORE, the Debtor prays for judgment as follows:

(i) For the allowance of the Daugherty Claim in the amount of $3,722,019 (the HERA Judgment and interest to the Petition Date);

(ii) For the disallowance of the remainder of the Daugherty Claim in its entirety;

(iii) For subordination of the Daugherty Claim pursuant to 11 U.S.C. § 510(b);

(iv) For costs of suit incurred herein; and

(v) For such other and further relief as the Court deems just and proper.

Dated:  August 31, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
Alan J. Kornfeld (CA Bar No. 130063)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
           rfeinstein@pszjlaw.com
           akornfeld@pszjlaw.com
           gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Highland Capital Management, L.P. | DEFENDANTS<br>Patrick Hagaman Daugherty |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Pachulski Stang Ziehl & Jones, LLP, 10100 Santa Monica Blvd, 13th Flr, Los Angeles, CA 90067, (310) 277-6910 | ATTORNEYS (If Known)<br>Jason Kathman, Pronske & Kathman PC, 2701 Dallas Parkway, Ste 590, Plano, TX 75093 |
| PARTY (Check One Box Only)<br>■ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor       □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>■ Creditor       □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The Debtor objects to Mr. Daugherty's proof of claim in part and seeks subordination of Mr. Daugherty's claim under 11 U.S.C. 510 to the extent allowed.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☑ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ 0.00 |

Other Relief Sought

Disallowance of Claim No. 77 of Patrick Hagaman Daugherty in part and subordination of claim under 11 U.S.C. 510.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br>19-34054-sgj11 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Jernigan |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Gregory V. Demo* | | |
| DATE<br>August 31, 2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Gregory V. Demo | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.