# Appendix Exhibit 54

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 266326) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | **Related to Docket No. 1099** |

**DEBTOR'S (I) OBJECTION TO PATRICK DAUGHERTY'S MOTION TO CONFIRM STATUS OF AUTOMATIC STAY, OR ALTERNATIVELY TO MODIFY AUTOMATIC STAY AND (II) CROSS-MOTION TO EXTEND THE AUTOMATIC STAY TO, OR OTHERWISE ENJOIN, THE DELAWARE CASES**

Highland Capital Management, L.P., the debtor and debtor-in-possession ("Debtor" or

"HCMLP") in the above-captioned chapter 11 case ("Bankruptcy Case"), submits this objection

---

[1] The last four digits of the Debtor's taxpayer identification number are 6725. The headquarters and service address for the Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



to the *Motion to Confirm Status of Automatic Stay, or Alternatively, to Modify Automatic Stay* [Docket No. 1099] ("Motion") filed by Patrick Daugherty ("Daugherty"), and, to the extent necessary, cross-moves to extend the automatic stay to, or otherwise enjoin, the Delaware Cases (the "Objection"). In support of the Objection, the Debtor states as follows:

## PRELIMINARY STATEMENT

1. Almost a year after the Debtor filed for bankruptcy protection, and less than two months before the Debtor seeks to confirm its plan of reorganization, Daugherty asks this Court for permission to pursue claims against certain non-debtor affiliates and individuals arising from the same set of facts and causes of action that form the basis of Daugherty's $37 million disputed claim against the Debtor.[2]

2. Specifically, Daugherty seeks to (a) sever the Debtor from the Highland Delaware Case, (b) consolidate the Highland Delaware Case with the HERA Delaware Case, (c) proceed with the claims against the non-debtors in Delaware, while (d) simultaneously prosecuting virtually identical claims against the Debtor in this Court.[3] For the reasons set forth below, the Motion should be denied and the automatic stay should be extended to the Delaware Cases (as defined below), or they should otherwise be enjoined from proceeding.

3. ***First***, as described in detail below, there can be no credible dispute that the allegations in the Delaware Cases are inextricably interwoven with Daugherty's Claim. Indeed, according to Daugherty, his Second Amended Complaint filed in the Highland Delaware Case "explains a scheme contrived *by the Debtor*, Highland Employee Retention Assets LLC, Highland ERA Management LLC, and Dondero *to rob and divert assets that were escrowed for*

---

[2] The Debtor does not dispute the entirety of Daugherty's Claim (defined below). *See Debtor's (I) Objection to Claim No. 77 of Patrick Hagaman Daugherty and (II) Complaint to Subordinate Claim of Patrick Hagaman Daugherty* (the "Claim Objection"), filed on August 31, 2020. Specifically, the Debtor has stated that it "will not object to allowance of Daugherty's claim for the value of his HERA Judgment (as defined in the Claim Objection) plus interest to the Petition Date–totaling $3,722,019." Claim Objection ¶ 3.

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

*Daugherty*." Motion ¶ 5 (emphasis added). While the Debtor is not a named defendant in the HERA Delaware Case (as Daugherty admits, solely because it was filed post-petition), the Debtor is prominently featured in the factual recitation that supports the fraudulent transfer and conspiracy claims, which are themselves derived from the same facts and claims asserted in the Highland Delaware Case. Completing the circle, Daugherty's Claim is expressly based on the Highland Delaware Case. Thus, there can be no credible dispute that the allegations in the Delaware Cases are inextricably interwoven with Daugherty's Claim.

4. ***Second***, based on Daugherty's allegations, there is an identity of interests between the Debtor and the non-debtor defendants with respect to the Delaware Cases, because Daugherty alleges in myriad ways that Highland actively participated in the conspiracy with the non-debtor defendants to fraudulently transfer asserts and aided and abetted the other Defendants in harming Daugherty. Moreover, as alleged by Daugherty, all of the corporate defendants were "controlled" by Dondero.

5. ***Third,*** if the Motion is granted, the Debtor will inevitably face substantial discovery burdens in the to-be-consolidated action in Delaware. The Debtor is alleged to have been the recipient of the fraudulent transfers; its employees and in-house and outside counsel are alleged to have structured the alleged fraud; and the Debtor was allegedly the vehicle through which Dondero seized control of HERA. Having allegedly played these roles, it is inconceivable that Daugherty will not seek substantial documentary and testimonial discovery from the Debtor even if the Debtor is severed from the Highland Delaware Case.

6. ***Finally,*** Daugherty's pursuit of the Delaware Cases is likely to have a preclusive effect on the Debtor as witnesses testify, facts are adduced, and rulings are rendered by the Delaware Court. If these matters are permitted to proceed without the Debtor, the estate will be at risk of inconsistent rulings and that adverse factual findings are determined. This is exactly the type of prejudice that the stay is designed to prevent.

7. For these reasons, and those set forth below, the Motion should be denied in its entirety and Daugherty should be prevented from prosecuting the Delaware Cases until the Daugherty Claim is finally adjudicated in this Court.

### STATEMENT OF FACTS[4]

I. **Daugherty was employed by HCMLP, became a Member of HERA in 2009, and resigned from HCMLP in September 2011**

8. Daugherty was a partner and senior executive of HCMLP from 1998 until 2011. Daugherty Dec. Exhibit A ¶ 10.[5]

9. Following the financial crisis in 2008, HCMLP created HERA as a compensation vehicle to retain, reward, and incentivize HCMLP's employees. *Id.* ¶¶ 14-15.

10. Daugherty became a member of HERA in October 2009, subject to a vesting schedule requiring Daugherty to remain an employee of HCMLP until May 2011; Daugherty later became a director of HERA. *Id.* ¶¶ 18, 21.

11. Under his award agreement, Daugherty received certain "units" in HERA and was HERA's largest interest holder. *Id.* ¶ 19.

12. Daugherty resigned from HCMLP on September 28, 2011. *Id.* ¶ 21.

II. **Dondero sues Daugherty, takes control of HERA, and transfers HERA's assets to HCMLP**

13. In 2012, Highland commenced an action against Daugherty in the District Court of Dallas County, Texas, 68th Judicial District (Dallas), captioned *Highland Capital Management L.P. v. Daugherty*, 12-04005 (the "Texas Action"). *Id.* ¶¶ 1, 25.

14. Daugherty interposed certain counterclaims. *Id.* ¶ 26.

15. While the Texas Action was pending, Dondero caused Highland to purchase the units held by all of the members of HERA except Daugherty. After obtaining control of HERA,

---

[4] The Debtor accepts the allegations set forth in Daugherty's Motion and supporting documentation as true solely for purposes of the Objection and reserves its right to contest any such allegations in any other procedural context.

[5] "Daugherty Dec." refers to the *Declaration of Patrick Daugherty to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* [Docket No. 1099-1], executed on September 24, 2020.

Dondero then orchestrated changes in HERA's governing documents to Daugherty's detriment. *Id.* ¶¶ 29-33, 37.

16. As a further exercise of control, Dondero then caused HERA to transfer all of its assets to HCMLP. *Id.* ¶¶ 38-39.

### III. Daugherty obtained a judgment against HERA in the Texas Action but could not collect because HERA's assets, and the Escrow assets, were transferred to HCMLP

17. One month prior to trial, HCMLP placed cash equal to the value of Daugherty's interest in HERA—$3.1 million—in escrow. Dondero and others testified that the escrowed assets would be available to satisfy any judgment that Daugherty might obtain on his counterclaims in the Texas Action. *Id.* ¶¶ 41-44.

18. After a three-week trial, Daugherty obtained a judgment against HCMLP for $2.6 million, plus interest. *Id.* ¶ 45.[6]

19. The Texas Action was the subject of a lengthy appeal. On December 1, 2016, the appellate court affirmed the judgments of the trial court. *Id.* ¶ 49.

20. In the ensuing days, Dondero and others working at his direction caused the Escrow Agent to resign and to have the assets held in Escrow transferred to HCMLP in order to deprive Daugherty of the ability to collect on his judgment. *Id.* ¶¶ 51-52.

21. In February 2017, Daugherty learned that the assets held in Escrow were transferred to HCMLP and that HERA was insolvent. *Id.* ¶¶ 60-61.

### IV. Daugherty commences the Highland Delaware Case but HCMLP files for bankruptcy

22. Later in 2017, Daugherty commenced the Highland Delaware Case against the Debtor, HERA, HERAM, and Dondero in order to "undo the transfer of assets in the Escrow and any other fraudulent transfers from" HERA. *Id.* ¶ 63.

---

[6] HCMLP also obtained a judgment against Daugherty in the Texas Action, but HCMLP's judgment is not relevant to the Motion or the Objection. *See* Daugherty Dec. Ex. A ¶ 46.

5

23. In support of the Highland Delaware Case, Daugherty alleged, among other things, that (a) Dondero, HERAM, and HCMLP caused HERA "to fraudulently or otherwise transfer its assets to" HCMLP, leaving HERA insolvent (*Id.* ¶ 5); (b) HCMLP was the beneficiary of the alleged self-dealing transactions (*Id.* ¶ 8); (c) HCMLP was the vehicle that Dondero used to wrest control of HERA, a critical step in the execution of the alleged scheme (*Id.* ¶¶ 31-32, 37); and (d) all of HERA's assets were transferred to HCMLP (*Id.* ¶¶ 38-39).

24. In reliance on the allegations set forth above (and others at set forth in his Second Amended Complaint), Daugherty sued all of the defendants in the Highland Delaware Case for the fraudulent transfer of assets (*Id.* ¶¶ 73-80), and he sued HCMLP for aiding and abetting HERAM and Dondero in the breach of their fiduciary duties (*Id.* ¶¶ 100-107); indemnification (*Id.* ¶¶ 114-117); "fees on fees" (*Id.* ¶¶ 118-119); unjust enrichment (*Id.* ¶¶ 120-125); and promissory estoppel (*Id.* ¶¶ 126-138).

25. Three days into the trial in the Highland Delaware Case, on October 19, 2019, the Debtor filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware; the Debtor's bankruptcy case was subsequently transferred to this Court. Motion ¶¶ 9-10.

V. **Daugherty commences the HERA Delaware Case**

26. According to Daugherty, "[d]uring [the] trial of the Highland Delaware Case . . . Dondero and his accomplices' scheme became more clear. As a result, Daugherty filed a separate lawsuit against Dondero, [HERA, HERAM], Hunton Andrews Kurth LLP, Marc Katz, Michael Hurst, Scott Ellington, Thomas Surgent, and Isaac Leventon in the Delaware [Chancery] Court in a case styled: *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ (the "**HERA Delaware Case**" [and together with the Highland Delaware Case, the "Delaware Cases"]) alleging fraudulent transfer and conspiracy." *Id.* ¶ 6.

27. Daugherty's claims in the HERA Delaware Case are based on the same facts as the claims asserted in the Highland Delaware Case. Indeed, in his Introduction to the Verified

6

Amended Complaint, Daugherty alleges that the Defendants "engaged in fraud, a conspiracy to defraud Daugherty, and civil conspiracy with the goal of defrauding Daugherty and never paying him the compensation he had earned." Daugherty Exhibit B ¶ 3.

28. According to Daugherty, the specific goal of the fraud and conspiracy was to transfer HERA's assets, and the assets in the Escrow, to HCMLP, and that goal was accomplished by the "Defendants *and Highland*." *Id.* ¶¶ 4-6 (emphasis added).

29. Highland is implicated by other specific allegations that echo those made in the Highland Delaware Case, including, by way of example only, that (a) the Defendants and HCMLP caused HERA to fraudulently or otherwise transfer its assets to HCMLP, leaving HERA insolvent (*Id.* ¶ 6); (b) HCMLP was the beneficiary of the alleged self-dealing transactions (*Id.* ¶ 8); (c) HCMLP was the vehicle that Dondero used to wrest control of HERA, a critical step in the execution of the alleged scheme (*Id.* ¶¶ 31-32, 34); (d) all of HERA's assets were transferred to HCMLP (*Id.* ¶¶ 38); and (e) HCMLP participated in the scheme to create the Escrow, and later to transfer the assets in Escrow to HCMLP (*Id.* ¶¶ 51, 74-79).[7]

30. Indeed, Daugherty summarized the scheme as follows: "Through a series of transactions in early 2013, HERA Management (controlled by Dondero) emptied HERA (controlled by Dondero) of all its underlying assets and transferred those assets to Highland (controlled by Dondero)" for the purpose of defrauding Daugherty. *Id.* ¶ 38.

31. The factual allegations in the HERA Delaware Case echo those alleged in the Highland Delaware Case, and the same is true with respect to the causes of action asserted. Thus, for example, Daugherty asserts fraudulent-transfer claims in both cases, and each such claim seeks to recover the assets allegedly transferred to HCMLP. The fraud and conspiracy claims also relate to the transfer of assets to HCMLP; as stated by Daugherty in the HERA

---

[7] In a curious but apparent effort to prove he was defrauded, Daugherty also cites to, and relies upon, unrelated fraud claims asserted against the Debtor by third parties. *Id.* ¶¶ 99-102.

Delaware Case, the "Defendants aided and abetted the unjust enrichment of [HCMLP] . . . [and] were part of the conspiracy to unjustly enrich [HCMLP] at the expense of Daugherty." *Id.* ¶ 123.

32. Clearly, the HERA Delaware Case mimics the Highland Delaware Case in most material respects and was brought in an attempt to evade the automatic stay. Daugherty all but admitted as much: As a result of the Debtor's bankruptcy filing, the Highland Delaware Case "is currently stayed and Daugherty is currently not able to bring the causes of action set forth in this complaint against [HCMLP] outside the bankruptcy proceedings." *Id.* at 4, n.1.

### VI. Daugherty's Proof of Claim is based largely on the Highland Delaware Case

33. On April 1, 2020, Daugherty filed a general unsecured, non-priority proof of claim in the amount of "at least" $37,483,876.59, and the Debtor's claim agent denoted it as claim number 67 ("Daugherty's Claim"). Morris Dec. Exhibit 1.[8] There are three parts to Daugherty's Claim.

34. In reverse order, the last part of Daugherty's Claim relates to an unliquidated defamation claim. *Id.* (Addendum ¶ 3(iii)). That claim is unrelated to the Delaware Cases and the Debtor asserts that it is time-barred. Claim Objection ¶¶ 17-19.

35. The second part of Daugherty's Claim concerns a dispute over an IRS audit; Daugherty appears to claim damages of $992,790.40. Morris Dec. Exhibit 1 (Addendum ¶ 3(ii)). The Debtor contests the amount and validity of Daugherty's Claim or, alternatively, contends that it is subject to subordination under Bankruptcy Code section 510(b). *See* Claim Objection ¶¶ 20-32.

36. The lion's share of Daugherty's Claim (*i.e.*, all but about $1 million of the $37 million claim) is expressly based on the Highland Delaware Case. Morris Dec. Exhibit 1

---

[8] "Morris Dec." refers to the *Declaration of John A. Morris in Support of Debtor's (I) Objection to Patrick Daugherty's Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay and (II) Cross-Motion to Extend the Automatic Stay in Connection with the Delaware Cases*, executed on October 8, 2020, and filed contemporaneously with the Objection.

(Addendum ¶ 3(i)) ("The Claim arises pursuant to . . . [t]he causes of action asserted in the Second Amended Verified Complaint filed by Daugherty in The Court of Chancery of the State of Delaware C.A. No. 2017-0488-MTZ including all attachments referenced therein.")

**ARGUMENT**

37. Daugherty argues that the automatic stay does not protect co-defendants and does not prohibit severance. Although the stay under Bankruptcy Code section 362 ("Section 362") generally does not apply to non-debtors, the circumstances here warrant an extension of the stay to the non-debtor defendants in the Delaware Cases. In the alternative, the Court should enjoin the prosecution of the Delaware Cases pending resolution of the Daugherty Claim in this Court.[9]

**I. The Court should deny the Motion and exercise its discretion to extend the automatic stay to the non-Debtor defendants in the Delaware Cases**

38. Section 362 provides for an automatic stay of any judicial "proceeding against the debtor." 11 U.S.C. § 362(a)(1). The purpose of the stay is to protect creditors from unequal treatment and provide debtors with a "breathing spell." *See In re Pointer*, 952 F.2d 82, 86 (5th Cir. 1992) ("One of the principal purposes behind the automatic stay is to protect creditors from unequal treatment"); *In re Cajun Elec. Power Coop., Inc.*, 185 F.3d 446, 459 (5th Cir. 1999) (citing *In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1182 (5th Cir. 1986) (recognizing that the automatic stay is designed to give debtors a breathing spell from collectors)).

39. Courts have the discretion to extend the stay to non-debtors as well. *See Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, 2013 WL 1948766, No. 12-3120, at *3 (S.D. Tex. May 9, 2013) ("[C]ourts may also exercise their discretion to stay a proceeding against non-bankrupt co-defendants 'in the interests of justice and in control of their dockets'") (quoting

---

[9] If the Court declines to extend the automatic stay to the non-debtor defendants in the Delaware Cases pursuant to Bankruptcy Code section 362, the Debtor will rely on its complaint against Daugherty for injunctive relief that it is filing contemporaneously herewith.

*Wedgeworth v. Fibreboard Corp.*, 706 F.2d 451, 545 (5th Cir. 1983)); *Mooney v. Gill*, 310 B.R. 543, 547 (N.D. Tex. 2002).

40. Courts have found that the stay under Section 362 should be extended to non-debtor defendants if it would "further[] the purposes behind the stay." *In re Jefferson County, Ala.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013). Such circumstances are found where, for instance: (1) there is an identity of interests between the non-debtors and debtor, (2) the proceeding imposes a substantial burden of discovery on the debtor, or (3) the proceeding would have a potential preclusive effect that forces the debtor to participate in the proceeding as if the debtor were a party. *See id.* at 285.

41. Specifically, "a bankruptcy court may invoke § 362 to stay proceedings against non-bankrupt codefendants where there is 'such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Nat'l Oilwell Varco, L.P.*, 2013 WL 1948766, at *2 (quoting *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003)) (internal quotations omitted). Thus, an extension of the stay to non-debtors is applicable where there is "an actual relationship with the debtor such that any judgment would actually apply to the bankrupt party." *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-19900-L-BN, 2017 WL 5889715, at *2 (N.D. Tex. Nov. 29, 2017) (internal quotations omitted); *see also Reliant Energy Servs., Inc.*, 349 F.3d at 825 (same).

42. A stay of proceedings as to non-debtor co-defendants is also warranted where, for instance, the allegations raised against co-defendants are "***inextricably interwoven***" with claims against the debtor. *Fed. Life Ins. Co. (Mut.) v. First Fin. Group of Tex., Inc.*, 3 B.R. 375, 376 (S.D. Tex. 1980) (emphasis added). In other words, the automatic stay applies to both the debtor and its codefendants where "the allegations against them arise from the same factual and legal

basis." *Id.* Thus, in such situations, severance is not appropriate. *See Abrams v. Integrated Pro Servs., LLC*, CV 07-8426, 2015 WL 7458604, at *4 (E.D. La. Nov. 24, 2015) ("Severance or separate trials are not suitable options here due to the fact that the claims by and against [debtor] are inextricably interwoven with the claims by and against his non-debtor co-defendants. Consequently, an extension of the automatic stay to all co-defendants is the most sensible option in this case.")

43. Moreover, severance of claims against the debtor and non-debtor co-defendants is not warranted where, as here, such claims are so inextricably linked such that proceeding separately against the non-debtors would "unduly hinder the efforts of the Bankruptcy Court." *Fed. Life Ins. Co.,* 3 B.R. at 376. As such, any "resulting delay or prejudice" to the plaintiff arising from extension of the stay to co-defendants is "outweighed" by the prejudice that would result to a debtor defendant resulting from severance. *Id*.

44. Based on the facts and the foregoing case law, the Court should deny the Motion and grant the Debtor's cross-motion by exercising its discretion under Section 362 to extend the stay to the non-debtor defendants in the Delaware Cases.

45. ***First***, as described in detail above, there can be no credible dispute that the allegations in the Delaware Cases are inextricably interwoven with Daugherty's Claim. A plain reading of the relevant documents show that all three disputes are generally based on Daugherty's allegations that the Debtor and the non-debtor defendants conspired to transfer HERA's assets to HCMLP and to otherwise prevent Daugherty from realizing the value of his interest in HERA.

46. ***Second***, Daugherty alleges there is an identity of interests between the Debtor and the non-debtor defendants with respect to the Delaware Cases, because Daugherty alleges in myriad ways that Highland actively participated in the conspiracy with the non-debtor defendants to fraudulently transfer asserts and aided and abetted the other Defendants in harming

11

Daugherty. Daugherty also alleges that all of the corporate defendants were "controlled" by Dondero. *See* Daugherty Exhibit B ¶ 38. Finally, if Daugherty obtains a judgment against the non-debtor defendants, one or more is likely to assert that the Debtor has an obligation to indemnify because their actions were undertaken within the scope of their employment and duties and that the Debtor's governing document provides such indemnification.[10]

47. **Third**, if the Motion is granted, the Debtor will inevitably face substantial discovery burdens in the to-be-consolidated action in Delaware and will therefore be forced to simultaneously participate in two separate proceedings concerning the same facts and claims.

48. **Fourth**, Daugherty's pursuit of the Delaware Cases is likely to have a preclusive effect on the Debtor as witnesses testify, facts are adduced, and rulings are rendered by the Delaware Court. If these matters are permitted to proceed without the Debtor, the estate will be at risk of inconsistent rulings and that adverse factual findings are determined. This is exactly the type of prejudice that the stay under Section 362 is designed to prevent.

49. For the foregoing reasons, the Court should deny the Motion and grant the Debtor's cross-motion by extending the stay under Section 362 to prevent Daugherty from prosecuting the Delaware Cases until the Daugherty Claim is finally adjudicated in this Court.

II. **Alternatively, the Court should exercise its discretion under Section 105 to enjoin Daugherty from prosecuting the Delaware Cases**

50. In addition to their power to extend the stay under Section 362, bankruptcy courts also have broad powers to protect the bankruptcy process and, where appropriate, to enjoin actions against non-debtors under section 105(a) of the Bankruptcy Code ("Section 105"), which provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105(a).

---

[10] The Debtor reserves the right to contest any such indemnification claim, but the Court should expect such claims to arise if the Motion is granted and Daugherty obtains a judgment against the non-debtor defendants.

51. Section 105 empowers bankruptcy courts "to enjoin suits that might impede the reorganization process." *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988) (citations omitted). Courts in the Fifth Circuit have held that Section 105 is to be "interpret[ed] liberally," so long as any action taken pursuant to Section 105 is "consistent with the rest of the Bankruptcy Code." *Feld v. Zale Corp (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995); *see also In re Choice ATM Enters.*, No. 14-44982-DML, 2015 Bankr. LEXIS 689, at *18 (Bankr. N.D. Tex. Mar. 4, 2015) (denying relief from stay and enjoining prosecution of lawsuit collateral to a claim proceeding); *Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 409 n.20 (S.D.N.Y. 2007) ("Courts consistently have found that section 105 may be used to stay actions against non-debtors even where section 362 otherwise would not provide such relief . . . .")

52. Courts in the Fifth Circuit apply the following traditional four factors to determine whether a preliminary injunction should issue under Section 105: (a) a likelihood of success on the merits, (b) irreparable injury, (c) a balancing of the equities, and (d) the public interest. *See FiberTower Network Servs. Corp. v. FCC (In re FiberTower Network Servs. Corp.)*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012). These factors weigh in favor of issuing injunctive relief.

53. First, in the bankruptcy context, the "likelihood of success" factor has been understood to require consideration of "the debtor's ability to successfully reorganize." *Lane v. Phila. Newspapers*, LLC, 423 B.R. 98, 106 (E.D. Pa. 2010); *see also W.R. Grace I*, 386 B.R. at 33; *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs., Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571, 589 (Bankr. S.D.N.Y 2009). The Debtor easily meets that prong here as it has a plan and disclosure statement on file with dates for the disclosure statement and confirmation hearings secure.

54. Nor can there be a serious dispute that the Debtor faces irreparable injury if the Delaware Cases are permitted to proceed without it. As set forth above, the Daugherty Claim is

13

asserted for over $37 million, nearly all of which is derivative of the Highland Delaware Case. If the Debtor is severed from that case and it is consolidated with the HERA Delaware Case, the Debtor will be irreparably harmed. Specifically, because the underlying factual allegations against the Debtor and non-debtors are so intertwined, testimony and facts will be adduced that inevitably implicate the Debtor. There is also a significant risk that the court's rulings will have a preclusive effect on the Debtor. An injunction is, therefore, warranted to prevent the risk of an adverse record or collateral estoppel issues against the Debtor. *See In re W.R. Grace & Co.*, 386 B.R. at 35 (taking into account "the risks of collateral estoppel and record taint" in issuing injunction to stay claims against third parties); *Union Tr. Phila., LLC v. Singer Equip. Co. (In re Union Tr. Phila., LLC)*, 460 B.R. 644, 657 (E.D. Pa. 2011) (in subsequent suits, debtor could be bound by "critical factual and legal issues" determined in the proceedings against non-debtor).

55. The Debtor would also suffer irreparable harm in the form of burdensome litigation. For instance, the Debtor's directors, officers, and employees (particularly those who are defendants) will be forced to devote significant time to the Delaware Cases rather than the Debtor's reorganization, and the Debtor's resources will be diverted to that endeavor as well as it will likely be the subject of burdensome discovery requests. Courts routinely enjoin such actions against third-party non-debtor co-defendants in such circumstances. *See In re Calpine*, 365 B.R. at 412 (enjoining actions against a non-debtor where in the absence of a stay, the debtor "would suffer irreparable harm if [a key employee] were distracted from his responsibilities in [debtor's] day-to-day operations as well as its restructuring effort"); *Haw. Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*, No. 06-CV-5358, 2006 WL 3755175, at *5 (S.D.N.Y. Dec. 20, 2006) (affirming the injunction of actions against a non-debtor where "the logistical stress on [the debtor] from attempting to simultaneously undertake a massive reorganization while monitoring and producing documents in the [s]tate [c]ourt [a]ction threatened to irreparably impair the company's reorganization process"); *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994,

998 (4th Cir. 1986) (among other things, the purpose of the stay is "to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization").

56. For these same reasons, the balance of the equities also weighs decidedly in favor of the Debtor. Allowing the Delaware Cases to proceed will risk potentially adverse and conflicting findings against the Debtor and divert the Debtor's attention from its Chapter 11 proceedings and instead to forced involvement in this litigation, all to the detriment of the Debtor's estate. By contrast, Daugherty will not be materially prejudiced as a result of a stay of the Delaware Cases.

57. Finally, granting injunctive relief here is in the public interest because enjoining litigation in the Delaware Cases promotes judicial economy and prevents a substantial risk of inconsistent findings and results. Severance of virtually identically claims against the Debtor and its co-defendants could result in the same witnesses testifying multiple times in two separate courts with respect to the same issues. *See Saxby's Coffee Worldwide, LLC v. Larson (In re Saxby's Coffee Worldwide, LLC)*, 440 B.R. 369, 383 (Bankr. E.D. Pa. 2009) (public interest served where injunction protects claims resolution process by preventing entry of judgment in other cases that would "effectively determine Debtor's rights and obligations" and where issuance of injunction "may lead to the concentration of litigation in the bankruptcy court . . . .") Any hardship that may be caused to Daugherty by enjoining him from litigating the Delaware Cases is, therefore, outweighed by public interest and fairness of judicial economy.

58. For the foregoing reasons, the Court should exercise its discretion to enjoin the prosecution of the Delaware Cases until (i) a plan is confirmed in the Highland Bankruptcy Case or (ii) pursuant to further order of this Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court deny the Motion in its entirety, grant the Debtor's cross-motion, and grant such other and further relief as the Court deems just and proper.

Dated:  October 8, 2020.                **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
         ikharasch@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*