# Appendix Exhibit 55

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK HAGAMAN DAUGHERTY,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary Proceeding No.<br><br>______________________ |

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.





**COMPLAINT TO EXTEND THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Plaintiff" or the "Debtor"), by its undersigned counsel, as and for its complaint (the "Complaint") against defendant Patrick Hagaman Daugherty (the "Defendant" or "Daugherty"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

**NATURE OF THE ACTION AND THE NEED FOR RELIEF**

1. This is an adversary proceeding brought pursuant to Rules 7001(7) and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 105 and 362 of title 11 of the United States Code (the "Bankruptcy Code"), to enjoin the Defendant from prosecuting the Delaware Cases brought against the Non-Debtor Defendants (as that term is defined below). Daugherty's Claim against the Debtor is based on the same facts, circumstances and claims asserted in the Delaware Cases.[2]

2. As set forth in detail in the Objection, the Highland Delaware Case, the HERA Delaware Case, and Daugherty's Claim are all based on the same central allegations and claims that James Dondero used Plaintiff to take control of HERA and transfer its assets (including the assets in Escrow that were allegedly earmarked for Daugherty if he prevailed in the Texas Action) to the Debtor so as to deprive Daugherty of what was rightfully his. Daugherty alleges in all three matters that the Debtor was a participant in the conspiracy, a vehicle that was used to execute the conspiratorial plan, and the beneficiary of the conspiracy.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the *Debtor's (I) Objection to Patrick Daugherty's Motion To Confirm Status of Automatic Stay, or Alternatively, to Modify Automatic Stay, and (II) Cross-Motion to Extend the Automatic Stay to, or Otherwise Enjoin, the Delaware Cases* being filed simultaneously herewith (the "Objection").

3. Despite the central role Daugherty alleges that the Debtor played, he wants to pursue claims against others arising from the exact same set of facts that form the basis for his claim against the Debtor that must be resolved in this Court. Such a scatter-shot litigation approach will disrupt the Debtor's (and its employee's) ability to focus on its restructuring; risks binding the Debtor to adverse factual finding and rulings; creates the possibility of inconsistent results; is a waste of the Debtor's resources; and undermines judicial economy—all to the detriment of the Debtor and its stakeholders.

4. Because the litigation of the Delaware Cases is likely to materially affect the Debtor (and may do so adversely) and its efforts to restructure, and because many of the issues they raise have been presented to this Court by Daugherty's filing of his proof of claim and will have to be addressed here, extending the automatic stay under Bankruptcy Code section 362(a) or, in the alternative, enjoining these actions pursuant to section 105(a) of the Bankruptcy Code, is plainly warranted.

## JURISDICTION AND VENUE

5. This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

9. Plaintiff is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

10. Upon information and belief, Defendant Patrick Daugherty is an individual residing in Dallas, Texas. Daugherty was a partner and senior executive at the Debtor until his resignation in September 2011.

## CASE BACKGROUND

11. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

12. On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members: (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch (collectively, "UBS"), and (d) Acis Capital Management, L.P. and Acis Capital Management GP LLC (collectively, "Acis").

13. On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[3]

14. On January 9, 2020, this Court entered an Order [Docket No. 339] (the "Settlement Order") which resolved that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281]. Pursuant to the Settlement Order, an

[3] All docket numbers refer to the main docket for the Highland Bankruptcy Case maintained by this Court.

independent board of directors (the "Independent Board") was appointed at the Debtor's general partner, Strand Advisors, Ltd.

15. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this chapter 11 case.

## STATEMENT OF FACTS[4]

### A. Daugherty was employed by HCMLP, became a Member of HERA in 2009, and resigned from HCMLP in September 2011

16. Daugherty was a partner and senior executive of HCMLP from 1998 until 2011. Daugherty Dec. Exhibit A ¶ 10.[5]

17. Following the financial crisis in 2008, HCMLP created HERA as a compensation vehicle to retain, reward, and incentivize HCMLP's employees. *Id*. ¶¶ 14-15.

18. Daugherty became a member of HERA in October 2009, subject to a vesting schedule requiring Daugherty to remain an employee of HCMLP until May 2011; Daugherty later became a director of HERA. *Id.* ¶¶ 18, 21.

19. Under his award agreement, Daugherty received certain "units" in HERA and was HERA's largest interest holder. *Id.* ¶ 19.

20. Daugherty resigned from HCMLP on September 28, 2011. *Id.* ¶ 21.

[4] The Debtor accepts the allegations set forth in Daugherty's Motion and supporting documentation as true solely for purposes of the Objection and reserves its right to contest any such allegations in any other procedural context.

[5] "Daugherty Dec." refers to the *Declaration of Patrick Daugherty to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* [Docket No. 1099-1], executed on September 24, 2020.

**B. Dondero sues Daugherty, takes control of HERA, and transfers HERA's assets to HCMLP**

21. In 2012, Highland commenced an action against Daugherty in the District Court of Dallas County, Texas, 68th Judicial District (Dallas), captioned *Highland Capital Management L.P. v. Daugherty*, 12-04005 (the "Texas Action"). *Id.* ¶¶ 1, 25.

22. Daugherty interposed certain counterclaims. *Id.* ¶ 26.

23. While the Texas Action was pending, Dondero caused Highland to purchase the units held by all of the members of HERA except Daugherty. After obtaining control of HERA, Dondero then orchestrated changes in HERA's governing documents to Daugherty's detriment. *Id.* ¶¶ 29-33, 37.

24. As a further exercise of control, Dondero then caused HERA to transfer all of its assets to HCMLP. *Id.* ¶¶ 38-39.

**C. Daugherty obtained a judgment against HERA in the Texas Action but could not collect because HERA's assets, and the Escrow assets, were transferred to HCMLP**

25. One month prior to trial, HCMLP placed cash equal to the value of Daugherty's interest in HERA—$3.1 million—in escrow. Dondero and others testified that the escrowed assets would be available to satisfy any judgment that Daugherty might obtain on his counterclaims in the Texas Action. *Id.* ¶¶ 41-44.

26. After a three-week trial, Daugherty obtained a judgment against HCMLP for $2.6 million, plus interest. *Id.* ¶ 45.[6]

27. The Texas Action was the subject of a lengthy appeal. On December 1, 2016, the appellate court affirmed the judgments of the trial court. *Id.* ¶ 49.

[6] HCMLP also obtained a judgment against Daugherty in the Texas Action, but HCMLP's judgment is not relevant to the Motion or the Objection. *See* Daugherty Dec. Ex. A ¶ 46.

28. In the ensuing days, Dondero and others working at his direction caused the Escrow Agent to resign and to have the assets held in Escrow transferred to HCMLP in order to deprive Daugherty of the ability to collect on his judgment. *Id.* ¶¶ 51-52.

29. In February 2017, Daugherty learned that the assets held in Escrow were transferred to HCMLP and that HERA was insolvent. *Id.* ¶¶ 60-61.

**D. Daugherty commences the Highland Delaware Case but HCMLP files for bankruptcy**

30. Later in 2017, Daugherty commenced the Highland Delaware Case against the Debtor, HERA, HERAM, and Dondero in order to "undo the transfer of assets in the Escrow and any other fraudulent transfers from" HERA. *Id.* ¶ 63.

31. In support of the Highland Delaware Case, Daugherty alleged, among other things, that (a) Dondero, HERAM, and HCMLP caused HERA "to fraudulently or otherwise transfer its assets to" HCMLP, leaving HERA insolvent (*Id.* ¶ 5); (b) HCMLP was the beneficiary of the alleged self-dealing transactions (*Id.* ¶ 8); (c) HCMLP was the vehicle that Dondero used to wrest control of HERA, a critical step in the execution of the alleged scheme (*Id.* ¶¶ 31-32, 37); and (d) all of HERA's assets were transferred to HCMLP (*Id.* ¶¶ 38-39).

32. In reliance on the allegations set forth above (and others at set forth in his Second Amended Complaint), Daugherty sued all of the defendants in the Highland Delaware Case for the fraudulent transfer of assets (*Id.* ¶¶ 73-80), and he sued HCMLP for aiding and abetting HERAM and Dondero in the breach of their fiduciary duties (*Id.* ¶¶ 100-107); indemnification (*Id.* ¶¶ 114-117); "fees on fees" (*Id.* ¶¶ 118-119); unjust enrichment (*Id.* ¶¶ 120-125); and promissory estoppel (*Id.* ¶¶ 126-138).

33. Three days into the trial in the Highland Delaware Case, on October 19, 2019, the Debtor filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware; the Debtor's bankruptcy case was subsequently transferred to this Court. Motion ¶¶ 9-10.

**E. Daugherty commences the HERA Delaware Case**

34. According to Daugherty, "[d]uring [the] trial of the Highland Delaware Case . . . Dondero and his accomplices' scheme became more clear. As a result, Daugherty filed a separate lawsuit against Dondero, [HERA, HERAM], Hunton Andrews Kurth LLP, Marc Katz, Michael Hurst, Scott Ellington, Thomas Surgent, and Isaac Leventon in the Delaware [Chancery] Court in a case styled: *Daugherty v. Dondero, et al.*, C.A. No. 2019-0956-MTZ (the "**HERA Delaware Case**" [and together with the Highland Delaware Case, the "Delaware Cases"]) alleging fraudulent transfer and conspiracy." *Id.* ¶ 6.

35. Daugherty's claims in the HERA Delaware Case are based on the same facts as the claims asserted in the Highland Delaware Case. Indeed, in his Introduction to the Verified Amended Complaint, Daugherty alleges that the Defendants "engaged in fraud, a conspiracy to defraud Daugherty, and civil conspiracy with the goal of defrauding Daugherty and never paying him the compensation he had earned." Daugherty Exhibit B ¶ 3.

36. According to Daugherty, the specific goal of the fraud and conspiracy was to transfer HERA's assets, and the assets in the Escrow, to HCMLP, and that goal was accomplished by the "Defendants *and Highland*." *Id.* ¶¶ 4-6 (emphasis added).

37. Highland is implicated by other specific allegations that echo those made in the Highland Delaware Case, including, by way of example only, that (a) the Defendants and HCMLP caused HERA to fraudulently or otherwise transfer its assets to HCMLP, leaving HERA insolvent (*Id.* ¶ 6); (b) HCMLP was the beneficiary of the alleged self-dealing transactions (*Id.* ¶ 8); (c) HCMLP was the vehicle that Dondero used to wrest control of HERA, a critical step in the

execution of the alleged scheme (*Id.* ¶¶ 31-32, 34); (d) all of HERA's assets were transferred to HCMLP (*Id.* ¶¶ 38); and (e) HCMLP participated in the scheme to create the Escrow, and later to transfer the assets in Escrow to HCMLP (*Id.* ¶¶ 51, 74-79).[7]

38. Indeed, Daugherty summarized the scheme as follows: "Through a series of transactions in early 2013, HERA Management (controlled by Dondero) emptied HERA (controlled by Dondero) of all its underlying assets and transferred those assets to Highland (controlled by Dondero)" for the purpose of defrauding Daugherty. *Id.* ¶ 38.

39. The factual allegations in the HERA Delaware Case echo those alleged in the Highland Delaware Case, and the same is true with respect to the causes of action asserted. Thus, for example, Daugherty asserts fraudulent-transfer claims in both cases, and each such claim seeks to recover the assets allegedly transferred to HCMLP. The fraud and conspiracy claims also relate to the transfer of assets to HCMLP; as stated by Daugherty in the HERA Delaware Case, the "Defendants aided and abetted the unjust enrichment of [HCMLP] . . . [and] were part of the conspiracy to unjustly enrich [HCMLP] at the expense of Daugherty." *Id.* ¶ 123.

40. Clearly, the HERA Delaware Case mimics the Highland Delaware Case in most material respects and was brought in an attempt to evade the automatic stay. Daugherty all but admitted as much: As a result of the Debtor's bankruptcy filing, the Highland Delaware Case "is currently stayed and Daugherty is currently not able to bring the causes of action set forth in this complaint against [HCMLP] outside the bankruptcy proceedings." *Id.* at 4, n.1.

[7] In a curious but apparent effort to prove he was defrauded, Daugherty also cites to, and relies upon, unrelated fraud claims asserted against the Debtor by third parties. *Id.* ¶¶ 99-102.

**F. Daugherty's Proof of Claim is based largely on the Highland Delaware Case**

41. On April 1, 2020, Daugherty filed a general unsecured, non-priority proof of claim in the amount of "at least" $37,483,876.59, and the Debtor's claim agent denoted it as claim number 67 ("Daugherty's Claim"). Morris Dec. Exhibit 1.[8] There are three parts to Daugherty's Claim.

42. In reverse order, the last part of Daugherty's Claim relates to an unliquidated defamation claim. *Id.* (Addendum ¶ 3(iii)). That claim is unrelated to the Delaware Cases and the Debtor asserts that it is time-barred. Claim Objection ¶¶ 17-19.

43. The second part of Daugherty's Claim concerns a dispute over an IRS audit; Daugherty appears to claim damages of $992,790.40. Morris Dec. Exhibit 1 (Addendum ¶ 3(ii)). The Debtor contests the amount and validity of Daugherty's Claim or, alternatively, contends that it is subject to subordination under Bankruptcy Code section 510(b). *See* Claim Objection ¶¶ 20-32.

44. The lion's share of Daugherty's Claim (*i.e.*, all but about $1 million of the $37 million claim) is expressly based on the Highland Delaware Case. Morris Dec. Exhibit 1 (Addendum ¶ 3(i)) ("The Claim arises pursuant to . . . [t]he causes of action asserted in the Second Amended Verified Complaint filed by Daugherty in The Court of Chancery of the State of Delaware C.A. No. 2017-0488-MTZ including all attachments referenced therein.")

---

[8] "Morris Dec." refers to the *Declaration of John A. Morris in Support of Debtor's (I) Objection to Patrick Daugherty's Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay and (II) Cross-Motion to Extend the Automatic Stay in Connection with the Delaware Cases*, executed on October 8, 2020, and filed contemporaneously with the Objection.

## FIRST CLAIM FOR RELIEF
**(For Injunctive Relief)**

45. The Plaintiff repeats and realleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

46. Plaintiff seeks to extend the automatic stay to enjoin the continued prosecution of the Delaware Cases pursuant to Bankruptcy Code section 362, or in the alternative, pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 7065.

47. Bankruptcy Code section 362 automatically stays, among other things, (1) "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," 11 U.S.C. § 362(a)(1); and (2) "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3).

48. Bankruptcy Code section 105(a) authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

49. As set forth above, this Court has the jurisdiction and authority to enjoin the Delaware Cases because prosecution of those actions will have a direct and substantial impact on the Debtor's estate.

50. The Debtor is developing a path towards restructuring, and a stay of the Delaware Cases will increase the chances that the Debtor will successfully restructure.

51. If the prosecution of the Delaware Cases is not stayed, the Debtor and its creditors will likely suffer irreparable harm, including the following:

a. Because the Delaware Cases and the Daugherty Claim depend on the same set of operative facts, there is a material risk that (i) there could be adverse findings of law or fact in the Delaware Cases, (ii) Daugherty may argue that the Debtor is bound by any such adverse findings in connection with the adjudication of the Daugherty Claim and/or the Claim Objection, and (iii) the Debtor's right to fully adjudicate the Claim Objection before this Court might otherwise be prejudiced or compromised;

b. Some or all of the Debtor's employees who are non-debtor Defendants are likely to claim that the Debtor has indemnification obligations, and any such claim could adversely affect the Debtor and its estate; and

c. The diversion of the Debtor's directors, offices, and employees who are necessary to the Debtor's efforts to restructure, if such individuals are required to participate in pre-trial and trial proceedings in connection with the Delaware Cases.

52. The harm to the Debtor clearly outweighs any alleged harm to Daugherty from waiting to prosecute the Delaware Cases. Ironically, staying these actions would preserve *both* Daugherty's and the estate's assets because by adjudicating the Daugherty Claim, certain facts will be resolved.

53. Granting the requested relief would be in the public interest because it would (a) further the Debtor's chapter 11 case by minimizing distractions, (b) vindicate the goals of chapter 11 of the Bankruptcy Code by providing a stay of pending litigation, (c) preserve the Debtor's assets for the benefit of all creditors, (d) eliminate the possibility of different courts rendering inconsistent findings, orders, and decisions, and (e) promote judicial economy.

54. An injunction staying the Delaware Cases until the Daugherty Claim is finally determined is therefore appropriate.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

(a) For a determination and judgment that the Debtor is entitled to an extension of the automatic stay pursuant to Bankruptcy Code section 362 and/or an injunction

pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 7065 enjoining and staying the Delaware Cases until the Claim Objection is adjudicated or pursuant to further order of this Court;

(b) For costs of suit incurred herein; and

(c) For such other and further relief as this Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 8, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail: jpomerantz@pszjlaw.com
ikharasch@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P. | **DEFENDANTS**<br><br>PATRICK HAGAMAN DAUGHERTY |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Melissa S. Hayward, Texas Bar No. 24044908<br>Zachery Z. Annable, Texas Bar No. 24053075<br>HAYWARD & ASSOCIATES PLLC<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100 | **ATTORNEYS** (If Known)<br>Jason Kathman<br>Pronske & Kathman, P.C.<br>2701 Dallas Parkway, Suite 590<br>Plano, Texas 75093<br>Tel.: (214) 658-6511 |
| **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint to Extend the Automatic Stay or, in the Alternative, for Preliminary Injunctive Relief

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 70 01( 1) – Recovery of Money/Property**
☐ 11-Recovery of money/propert y - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 70 01 (2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001( 3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4 ) – Objection/ Revocation of Discharge**
☐ 41-Objection/re vocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 70 01(6) – Dischargeability (continued)**
☐ 61 -Dischargeability- §523(a)(5 ), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 6 5 -Dischargeability - other

**FRBP 70 01(7) – Injunctive Relief**
☒ 71 -Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 70 01(8) Subordination of Claim or Interest**
☐ 81 -Subordination of claim or interest

**FRBP 70 01(9) Declaratory Judgment**
☐ 91 -Declaratory judgment

**FRBP 70 01(10) Deter mi nation of Remove d Act ion**
☐ 01 -Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | ☐ Demand $0 |

Other Relief Sought
Extension of the automatic stay or, in the alternative, for preliminary injunctive relief

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br>19-34054-sgj11 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas Division | NAME OF JUDGE<br>Hon. Stacey G. C. Jernigan |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF<br>Highland Capital Management, L.P. | DEFENDANT<br>Patrick Hagaman Daugherty | ADVERSARY PROCEEDING NO.<br>20-03107-sgj |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Northern District of Texas | DIVISION OFFICE<br>Dallas Division | NAME OF JUDGE<br>Hon. Stacey G. C. Jernigan |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| /s/ | |
| DATE<br>October 8, 2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Zachery Z. Annable |

**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.