# Appendix Exhibit 63

Docket #1402  Date Filed: 11/16/2020

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*pro hac vice*)
Robert J. Feinstein (NY Bar No. 1767805) (*pro hac vice*)
Alan J. Kornfeld (CA Bar No. 130063) (*pro hac vice*)
Elissa A. Wagner (CA Bar No. 213589) (*pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD & ASSOCIATES PLLC
Melissa S. Hayward (TX Bar No. 24044908)
MHayward@HaywardFirm.com
Zachery Z. Annable (TX Bar No. 24053075)
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | § § Chapter 11 § |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § Case No. 19-34054-sgj11 § |
| Debtor. | § § |

## DEBTOR'S REPLY IN SUPPORT OF MOTION FOR
## PARTIAL SUMMARY JUDGMENT ON PROOF OF CLAIM NOS. 190 AND 191 OF
## <u>UBS SECURITIES LLC AND UBS AG, LONDON BRANCH</u>

---

[1] The last four digits of the Debtor's taxpayer identification number are 6725. The headquarters and service address for the Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



¹⁹³⁴⁰⁵⁴²⁰¹¹¹⁶⁰⁰⁰⁰⁰⁰⁰⁰⁰⁰¹²

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................1

**ARGUMENT** ......................................................................................................................5

I.    Any Post-Trial Relief Against the Debtor, Including Any Attempt to
Enforce the Approximately $1 Billion Phase I Breach of Contract
Judgment Against the Debtor, Must Be Disallowed..............................................5

    A.    Any Post-Trial Relief Against the Debtor is Barred by the UBS Bar
Date ...........................................................................................................5

        (1)    Any Post-Trial Relief Against the Debtor Was a Pre-Petition
Claim Under the Bankruptcy Code....................................................5

        (2)    Neither UBS's Attempted Reservation of Rights to Assert New
Untimely Claims Against the Debtor Nor Any Untimely
Amendment to the UBS Claim Can Be Used to Vitiate the
UBS Bar Date ..................................................................................7

    B.    Any Post-Trial Relief Against the Debtor Based on Pre-February 24,
2009 Claims is Barred by Res Judicata......................................................9

II.    The UBS Claim Is Based Solely on the Transfers of Approximately $233
Million in March 2009 by HFP or Its Subsidiaries...............................................11

    A.    UBS Has Failed to Establish Any Dispute of Fact as to the Scope of Its
Implied Covenant Claim............................................................................11

    B.    UBS Has Failed to Establish that Further Discovery on Its Claims is
Necessary or Appropriate ........................................................................14

III.    Any Recovery By UBS On Account of the Approximately $172 Million
Transferred to the Settling Defendants Must Be Disallowed ...............................17

    A.    Summary Judgment Should Be Granted to the Debtor Based on the
Plain Language of the Settlement Agreements...........................................17

    B.    Even if Parol Evidence is Considered, Summary Judgment Should Be
Granted to the Debtor...............................................................................19

    C.    The Debtor Is Not Judicially Estopped from Enforcing the Releases .......20

IV.    The Debtor's Motion for Partial Summary Judgment Is Procedurally
Proper.................................................................................................................21

**CONCLUSION** ................................................................................................................22

DOCS_LA:333741.3 36027/002

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Travelers Indem. Co.*, 465 F.3d 156 (5th Cir. 2006)...................................................15

*Bd. of Managers of the 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.*, 652 F. Supp. 2d 463 (S.D.N.Y. 2009) ...................................................................................................................10

*Careccia v. MacRae*, 2005 U.S. Dist. LEXIS 48970 (E.D.N.Y. July 15, 2005)..........................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........................................................................11

*First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P.*, 260 A.D.2d 179 (N.Y. App. Div. 1999) ... 11

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir. 1994)...........................................................................12

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716 (S.D.N.Y. 2017) ...................................................................................................................14

*Highlands Ins. Co. v. Alliance Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174 (5th Cir. 1995)..............................................................................................................7

*In re Armstrong*, 347 B.R. 581 (Bankr. N.D. Tex. 2006) ............................................................11

*In re Entergy New Orleans, Inc.*, 2008 Bankr. LEXIS 4269 (Bankr. E.D. La. July 17, 2008) ...... 8

*In re Halekua Dev. Corp.*, 2009 Bankr. LEXIS 3095 (Bankr. D. Haw. September 25, 2009).......8

*In re Hurricane R.V. Park, Inc.*, 185 B.R. 610 (Bankr. D. Utah 1995) .........................................6

*In re Northstar Offshore Grp., LLC*, 2018 Bankr. LEXIS 2801 (Bankr. S.D. Tex. September 14, 2018) ................................................................................................................................7

*In re Slater*, 573 B.R. 247 (Bankr. D. Utah 2017) ......................................................................6

*Krim v. BancTexas Grp.*, 989 F.2d 1435 (5th Cir. 1993) ...........................................................15

*Metzler v. Energy & Expl. Partners, Inc.*, 2020 U.S. Dist. LEXIS 117491 (N.D. Tex. July 6, 2020) ...........................................................................................................................7, 8

*Morris v. Covan World Wide Moving*, 144 F.3d 377 (5th Cir. 1998)...........................................12

*Palm Energy Group, LLC v. Greenwich Ins. Co. (In re Tri-Union Dev. Corp.)*, 2012 Bankr. LEXIS 4089 (Bankr. S.D. Tex. September 3, 2012)...............................................................11

*Rebh v. Rotterdam Ventures, Inc.*, 252 A.D.2d 609 (N.Y. App. Div. 1998)..................................11

*UBS v. Highland Capital Mgmt., L.P.*, 2010 NY Slip Op 1436 (N.Y. App. Div.) ........................14

*UBS v. Highland Capital Mgmt., L.P.*, 86 A.D.3d 469 (N.Y. App. Div. 2011) ..............................9

*UBS v. Highland Capital Mgmt., L.P.*, 93 A.D.3d 489 (N.Y. App. Div. 2012)........................2, 10

*United States (IRS) v. Kolstad (In re Kolstad)*, 928 F.2d 171 (5th Cir. Tex. 1991) .....................7

*United States v. Williams*, 2005 U.S. Dist. LEXIS 15857 (N.D. Tex. Aug. 3, 2005) ...................6

*Veritas DGC, Inc. v. Digicon, Inc. (In re Digicon, Inc.)*, 2003 U.S. App. LEXIS 29535 (5th Cir. June 11, 2003)..............................................................................................................6

*Yan v. Lombard Flats, LLC (In re Lombard Flats, LLC)*, 2016 U.S. Dist. LEXIS 38112 (N.D. Cal. March 23, 2016) .................................................................................................6

**Statutes**

11 U.S.C. § 101(5) ......................................................................................................... 2, 5

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................... 4, 14

-iv-

Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Bankruptcy Case"), submits this reply in support of the *Debtor's Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [D.E. 1180] (the "Motion"), and in response to *UBS's Brief in Opposition to Motions for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 and in Support of Rule 56(d) Request* [D.E. 1341] (the "Opposition") filed by UBS Securities LLC and UBS AG, London Branch (collectively, "UBS"). For the reasons set forth herein, in the Motion, and in the Debtor's opening brief in support of the Motion [D.E. 1181] (the "Opening Brief"), the Debtor respectfully requests that the Court enter an order, in substantially the form attached as Exhibit A to the Motion, granting partial summary judgment in favor of the Debtor on the UBS Claim.[2]

## <u>INTRODUCTION</u>

1.      UBS has been telling everyone – most importantly, this Court – that UBS has a more than $1 billion claim against the Debtor based on the breach of contract judgment it obtained against SOHC and CDO Fund (collectively, the "Funds"). Nothing could be further from the truth. The Motion requires UBS to substantiate its position with specific facts and evidence, and yet UBS has responded with just a series of ineffectual ducks and dives that only serve to highlight the fallacy of UBS's purported $1 billion claim.

2.      UBS admits that it is not presently seeking to enforce the $1 billion judgment against the Debtor and is not presently asserting that the Debtor is the alter ego of the Funds. In a desperate attempt to keep up its charade, however, UBS argues that it can try to hold the Debtor liable as an alter ego at some point in the future because alter ego is a "theory of liability"

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Opening Brief. All citations herein to "A__" refer to the *Appendix of Exhibits in Support of Debtor's Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [D.E. 1184], and all citations herein to "B__" refer to the *Appendix of Exhibits to Debtor's Reply in Support of Motion for Partial Summary Judgment on Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch*, filed concurrently herewith.

and not a "claim" that needed to be asserted by the UBS Bar Date. A "claim" is, of course, broadly defined in the Bankruptcy Code to include any "right to payment" and any "equitable remedy for breach of performance" whether or not reduced to judgment, contingent, unliquidated, unmatured, or disputed. 11 U.S.C. § 101(5). UBS does not even try to explain how a "theory of liability" is not a "right to payment" from the Debtor, and thus a "claim" under the Bankruptcy Code. UBS's failure to assert any alter ego claim against the Debtor by the UBS Bar Date operates as a complete bar to any such claim.

3. UBS also has failed to rebut the fact that *res judicata* prevents UBS from asserting any alter ego claim against the Debtor based on any conduct occurring prior to February 24, 2009. That is the date UBS filed its first complaint against the Debtor, which resulted in a judgment on the merits in favor of the Debtor. And, accordingly, February 24, 2009 is the date which the New York Appellate Division ruled is the line of demarcation prior to which no alleged conduct can stand as the basis of a claim against the Debtor.

4. To try to slide under the *res judicata* bar, UBS argues that "alter ego is generally not a theory of liability that is subject to *res judicata* under New York law." Opposition p. 47. But UBS's position cannot be reconciled with the fact that the Appellate Division already has applied *res judicata* to UBS's assertion of alter ego liability against one of the Debtor's co-defendants (HFP), holding that *res judicata* bars UBS from seeking alter ego relief to recover against HFP for pre-February 24, 2009 claims, because HFP was in privity with the Debtor and thus is entitled to the same *res judicata* protection. *See UBS v. Highland Capital Mgmt., L.P.*, 93 A.D.3d 489, 490 (N.Y. App. Div. 2012). If *res judicata* prohibits UBS from seeking alter ego relief against the Debtor's privy for pre-February 24, 2009 conduct – which would include the December 2008 breach of contract underlying UBS's $1 billion judgment – it indisputably prohibits UBS from seeking the same relief against the Debtor.

-2-

5.      With no ability to enforce the $1 billion judgment against the Debtor, the UBS

Claim is at most a theoretical claim for a maximum principal amount of approximately $233

million, which represents the value of certain assets transferred by HFP or its subsidiaries in March

2009.  UBS seeks to recover this amount by alleging that the March 2009 transfers were fraudulent

conveyances by entities with which UBS was not in privity and that those transfers breached a

supposed implied covenant of good faith and fair dealing under the warehouse agreements which

UBS had previously terminated.  UBS attempts to avoid the $233 million cap on the UBS Claim

by arguing that the "record evidence" reflects that "the bases for its implied covenant claim

extend beyond the March 2009 transfers."  Opposition p. 25.  Given this statement, one would

expect UBS to provide examples of that "record evidence" in support of its Opposition, and

indeed UBS was required to do so in response to the Motion.  Nonetheless, after spending pages

of its Opposition claiming that it has evidence of additional post-February 24, 2009 conduct,

UBS then fails to identify a single piece of evidence showing any actionable conduct beyond the

March 2009 transfers.  Instead, UBS cites only evidence of pre-February 24, 2009 conduct –

which is not actionable – and its own allegations – which are not competent summary judgment

evidence.  Furthermore, UBS's unsupported allegations themselves amount to nothing more than

an argument that the Debtor supposedly had an implied duty to guarantee payment by the Funds,

a position that cannot be reconciled with the Appellate Division's determination that the

warehouse agreements imposed no duty on the Debtor "to ensure or guarantee" performance by

the Funds, or the fact that the warehouse agreements explicitly place all responsibility for 100%

of any warehouse facility losses on the Funds, **not** the Debtor.

6.      In recognition of the fact that it has not adequately responded to the Motion, UBS

requests that the Court deny or defer the Motion to allow UBS time to conduct additional

discovery on the claims that have been pending for more than a decade.  This is a transparent

attempt to avoid summary judgment.  UBS conducted extensive discovery in the State Court

litigation and certified to the State Court seven years ago that discovery was complete and UBS's case was trial-ready. UBS also insisted to this Court, at the October 6, 2020 status conference on the UBS Claim, that UBS was fully prepared to proceed to trial this month, in advance of the Debtor's confirmation hearing. And, finally, UBS acknowledges that the Debtor's production in response to UBS's document requests has been completed. Therefore, UBS cannot meet its burden of showing, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, that any further discovery will produce evidence creating a genuine issue of material fact in this case.

7.    Finally, the Debtor is entitled to summary judgment enforcing UBS's release of its claims for approximately $172 million of the transfers made in March 2009. The transfers at issue were made to third parties Crusader and Credit Strategies (the "Settling Defendants"). In 2015, UBS entered into Settlement Agreements with the Settling Defendants in which UBS released all claims against the Debtor "**for losses or other relief specifically arising from the fraudulent transfers** to [the Settling Defendants] alleged in the UBS Litigation ...." Crusader Settlement Agreement § 5.3 [A265-266] (emphasis added); *see also* Credit Strategies Settlement Agreement § 5.3 [A299-300]. While UBS may now try to claim that its implied covenant claim is based on something other than the allegedly fraudulent transfers, there is absolutely no dispute that the implied covenant claim **is** a claim for "**losses or other relief specifically arising**" from the allegedly fraudulent transfers covered by the Settlement Agreements. *See, e.g.,* Opposition p. 4 ("Under its implied covenant claim – as UBS repeatedly has explained – UBS is seeking damages from the Debtor resulting not just from the fraudulent transfers in March 2009 ..."). Thus, based on the clear and unambiguous language of the Settlement Agreements, UBS released all of its claims against the Debtor to recover any "losses" arising from the approximately $172 million transferred to the Settling Defendants. Having recovered from the Settling Defendants on account of the alleged losses specifically arising from the transfers to those parties, and having released all claims as to those alleged losses, UBS is not entitled to

-4-

recover the same alleged losses from the Debtor on either its fraudulent transfer claim or its implied covenant claim.

8.     With only approximately $233 million at issue, UBS's release of $172 million of that amount leaves UBS with a theoretical claim against the Debtor in the maximum principal amount of approximately $61 million.  Using the exact amounts of the transfers, summary judgment should be granted in favor of the Debtor disallowing any principal recovery on the UBS Claim in excess of $61,043,362 ($233,455,147-$172,411,785=$61,043,362).

## ARGUMENT

I.     **Any Post-Trial Relief Against the Debtor, Including Any Attempt to Enforce the Approximately $1 Billion Phase I Breach of Contract Judgment Against the Debtor, Must Be Disallowed**

    A.     **Any Post-Trial Relief Against the Debtor is Barred by the UBS Bar Date**

        **(1) Any Post-Trial Relief Against the Debtor Was a Pre-Petition Claim Under the Bankruptcy Code**

9.     UBS contends that it was not required to assert any supposed alter ego liability against the Debtor by the UBS Bar Date because alter ego is not an independent claim, but rather is a "form of liability" under New York law.  Opposition p. 45.  UBS does not even attempt to reconcile its argument with the definition of a "claim" under the Bankruptcy Code.  Under 11 U.S.C. § 101(5), a "claim" includes any "right to payment" a claimant may have against a debtor – in other words, any "form of liability" a debtor may have to a claimant – whether or not reduced to judgment, contingent, unliquidated, unmatured, disputed or otherwise.  11 U.S.C. § 101(5).  UBS's own characterization of alter ego liability places such relief squarely within the definition of "claim" under the Bankruptcy Code.

10.     Moreover, UBS has failed to meaningfully address the cases cited at paragraphs 60-61 of the Opening Brief, all of which establish beyond question that the assertion of alter ego liability against a debtor is indeed the assertion of a "right to payment" under the Bankruptcy Code.  The court in *Yan v. Lombard Flats, LLC (In re Lombard Flats, LLC)*, 2016 U.S. Dist.

LEXIS 38112, *17-20, *26-29 (N.D. Cal. March 23, 2016) specifically considered and rejected the notion that an alter ego theory of liability based on pre-petition conduct is not a pre-petition "claim" under the Bankruptcy Code. Opening Brief ¶ 60. The courts in *In re Hurricane R.V. Park, Inc.*, 185 B.R. 610, 613-14 (Bankr. D. Utah 1995) and *In re Slater*, 573 B.R. 247, 253-55 (Bankr. D. Utah 2017) reached the same conclusion. Opening Brief ¶ 61. While UBS tries to distinguish these cases on the grounds that the debtors in *Lombard Flats*, *Hurricane R.V. Park*, and *Slater* were post-confirmation or post-discharge debtors, whereas here the Debtor's plan has not yet been confirmed, that distinction is irrelevant. In all three cases, the issue was whether the alter ego "form of liability" sought to be imposed on the debtor, based on pre-petition conduct, was a pre-petition claim under the Bankruptcy Code. All three courts correctly answered that question in the affirmative, and UBS has cited nothing to the contrary.

11.     Finally, UBS suggests, again without citation to any relevant authority, that any assertion of alter ego liability against the Debtor was somehow exempt from the UBS Bar Date because, under certain circumstances, alter ego liability can be asserted in New York trial courts in a post-judgment proceeding, with actions to enforce a judgment subject to a 20-year statute of limitations running from entry of judgment. Opposition p. 45. UBS's argument misses the mark. As discussed at length at paragraphs 57-59 of the Opening Brief, federal law, not state law, determines when a claim arises for bankruptcy purposes, and applicable case law is clear that a creditor "need not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a pre-petition claim for purposes of the Code." *United States v. Williams*, 2005 U.S. Dist. LEXIS 15857, *9-10 (N.D. Tex. Aug. 3, 2005) (citation omitted); *see also Veritas DGC, Inc. v. Digicon, Inc. (In re Digicon, Inc.)*, 2003 U.S. App. LEXIS 29535, *22 (5th Cir. June 11, 2003) (creditor's contingent claim was a pre-petition claim, "even though it may not have accrued under [state] law" as of the petition date, because it nonetheless was "a claim that could have and should have been anticipated" by the creditor).

-6-

12.     Thus, any post-trial relief against the Debtor, including any attempt to impose alter ego liability on the Debtor for the Phase I breach of contract judgment (or otherwise), was a pre-petition claim that UBS was required to assert, if at all, by the UBS Bar Date. UBS's deliberate decision not to do so operates as a complete bar to any such claim.

### (2) Neither UBS's Attempted Reservation of Rights to Assert New Untimely Claims Against the Debtor Nor Any Untimely Amendment to the UBS Claim Can Be Used to Vitiate the UBS Bar Date

13.     UBS contends that its unasserted alter ego claim was preserved by its attempted "reservation of rights" in the UBS Claim to assert additional claims against the Debtor, and also argues that it should be allowed to amend the UBS Claim at some point in the future to assert an untimely alter ego claim against the Debtor. Opposition p. 47. It is undisputed that an alter ego theory of liability would be a new claim against the Debtor – UBS itself has insisted that the UBS Claim neither seeks to enforce the Phase I judgment against the Debtor nor asserts alter ego liability against the Debtor. Under these circumstances, UBS cannot use either its attempted reservation of rights or an untimely amendment to the UBS Claim to vitiate the bar date and assert an alter ego theory of liability against the Debtor at some point in the future.

14.     The "principal concern" of claim amendments after the bar date is "that no new claim be tardily asserted." *United States (IRS) v. Kolstad (In re Kolstad)*, 928 F.2d 171, 175 (5th Cir. Tex. 1991). Bar dates "are not to be vitiated by amendments, and the courts must ensure that the amendments do not introduce wholly new grounds of liability." *Highlands Ins. Co. v. Alliance Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174, 1175 (5th Cir. 1995); *see also Metzler v. Energy & Expl. Partners, Inc.*, 2020 U.S. Dist. LEXIS 117491, *9 (N.D. Tex. July 6, 2020) (amendments that change the nature of a claim set forth a new claim). Amendments after the bar date "are not permitted if the purpose of the amendment is to create an entirely new claim." *In re Northstar Offshore Grp., LLC*, 2018 Bankr. LEXIS 2801, *7 (Bankr. S.D. Tex. September 14, 2018) (citation omitted).

-7-

15.     The same principle applies to reservations of rights to assert additional claims – a reservation of rights does not permit a claimant to assert new claims after the bar date. *See, e.g., In re Entergy New Orleans, Inc.*, 2008 Bankr. LEXIS 4269, *9-10 (Bankr. E.D. La. July 17, 2008) (allowing creditor to use reservation of rights to assert new, untimely claim against the debtor would vitiate the role of bar dates); *see also Metzler*, 2020 U.S. Dist. LEXIS 117491 at *13 (reservation of rights in confirmation order relating to assertion of claims did not "create a perpetual opportunity" for claimant to file new claims or revise existing claim).[3]  As stated by the court in *Entergy New Orleans*, allowing creditors to assert new claims after the bar date merely by reserving rights in their original proofs of claim would permit "any creditor filing a proof of claim in a bankruptcy proceeding [to] include a short paragraph of reservation of rights language and [then] have a claim against the debtor for anything that happened between that creditor and the debtor from well before the beginning of the case until the case closed, which in certain bankruptcy cases could mean a period of several years if not decades," thereby negating the role of bar dates in bankruptcy proceedings.  2008 Bankr. LEXIS 4269 at *9-10.

16.     Here, there is no doubt that the assertion of alter ego liability against the Debtor, whether to enforce the Phase I judgment against the Debtor or otherwise, would be a new claim. Six months ago, in its motion for relief from the automatic stay, UBS asserted that it could hold the Debtor "responsible" for the Phase I breach of contract judgment.   D.E. 644 at ¶ 18. Nonetheless, after the Court denied UBS's motion, and set June 26, 2020 as the UBS Bar Date, UBS filed the UBS Claim with a conspicuous absence of any claim against the Debtor for alter ego liability, whether for the Phase I judgment or otherwise.  Since then, UBS has steadfastly

---

[3] *In re Halekua Dev. Corp.*, 2009 Bankr. LEXIS 3095 (Bankr. D. Haw. September 25, 2009), which UBS cites in support of its "reservation of rights" argument, did not hold that the creditor in that case could assert an entirely new claim based on its reservation of rights.  Instead, in evaluating litigation risk for purposes of approving a settlement with the creditor, the court merely noted that the trustee and others had argued that one of the creditor's claims was untimely, the creditor had responded that its original claim reserved the right to seek additional amounts, and thus the new amounts sought in the late claim were "at least arguably" covered by the original claim.  *Id.* at *11.

maintained that the UBS Claim does **not** seek to enforce the Phase I judgment against the Debtor, and that UBS is **not** asserting any alter ego liability against the Debtor. *See, e.g.*, D.E. 1105 at pp. 19-20 ("As UBS informed the Court previously and reiterates here [in response to the objections to the UBS Claim], UBS has not asserted and is not asserting that the Debtor was an alter ego of the Fund Counterparties."); Opposition p. 44 (stating that the UBS Claim "is ***not*** an attempt to enforce the Phase I breach of contract judgment ... against the Debtor, as UBS repeatedly has made clear") (emphasis in original). As a result, any attempt by UBS to assert alter ego liability against the Debtor at some point in the future, whether by an untimely amendment to the UBS Claim or based on UBS's general reservation of rights, would vitiate the UBS Bar Date and is therefore prohibited.

B.   **Any Post-Trial Relief Against the Debtor Based on Pre-February 24, 2009 Claims is Barred by Res Judicata**

17.   As discussed at length in the Opening Brief, any alter ego claim seeking to hold the Debtor responsible for the Funds' breach of the warehouse agreements in December 2008 or the Phase I breach of contract judgment against the Funds also is barred by *res judicata*. Opening Brief ¶¶ 64-67. The Appellate Division already determined that *res judicata* prevents UBS from asserting any direct claim against the Debtor based on conduct that occurred prior to February 24, 2009. *See, e.g., UBS v. Highland Capital Mgmt., L.P.*, 86 A.D.3d 469, 474 (N.Y. App. Div. 2011) (holding that *res judicata* bars UBS from asserting claims against the Debtor that "implicate events alleged to have taken place before the filing of the original complaint" on February 24, 2009, which resulted in a judgment on the merits in favor of the Debtor) [A191]. Here, the State Court found that the breach of contract underlying the Phase I judgment occurred on December 5, 2008, and thus there is no dispute that *res judicata* bars any attempt to hold the Debtor responsible for the breach.

18.   The same holds true for any attempt to hold the Debtor responsible as a purported alter ego of the Funds. While UBS argues that "alter ego is generally not a theory of liability that

is subject to *res judicata* under New York law" [Opposition p. 47], UBS completely ignores the decision by the Appellate Division **in this very litigation** that applied *res judicata* to UBS's assertion of alter ego liability against one of the Debtor's co-defendants (HFP). Specifically, the Appellate Division held in 2012 that *res judicata* bars UBS from seeking alter ego relief to recover against HFP for pre-February 24, 2009 claims, because HFP was in privity with the Debtor and thus is entitled to the same *res judicata* protection. *See UBS v. Highland Capital Mgmt., L.P.*, 93 A.D.3d 489, 490 (N.Y. App. Div. 2012) (holding that UBS's claims against other defendants in privity with the Debtor – including the claim that HFP is the alter ego of one of the Funds – are likewise limited to conduct that occurred after February 24, 2009) [A195].

19.    Moreover, the Appellate Division's decision is consistent with other authority applying New York's *res judicata* doctrine to bar alter ego claims where (as here) a judgment on the merits has been entered in favor of one defendant, and the plaintiff later seeks to hold that defendant liable as an alter ego for a judgment entered against a different defendant arising out of the same dispute. *See, e.g., Bd. of Managers of the 195 Hudson St. Condo. v. Jeffrey M. Brown Assocs.*, 652 F. Supp. 2d 463, 479-81 (S.D.N.Y. 2009) (holding that *res judicata* applied to bar plaintiff from enforcing judgment against defendant as alleged alter ego of judgment debtor, because defendant previously had obtained a judgment in its favor and was dismissed from the prior litigation, and any alter ego relief against defendant could have, and should have, been sought in the prior litigation).[4]

20.    Finally, UBS cites three cases in support of its argument that *res judicata* would not bar an alter ego claim seeking to hold the Debtor liable for the Funds' breach of the warehouse

---

[4] UBS attempts to distinguish *Bd. of Managers* on the grounds that, in that case, the defendant was entirely dismissed from the prior litigation, whereas "UBS has live substantive claims" against the Debtor. Opposition p. 47 fn. 27. UBS overlooks the fact that, in this case, the Debtor **was** entirely dismissed from the prior litigation. UBS's "live" claims against the Debtor were asserted in a new action after the Debtor's dismissal, and have been limited by the Appellate Division to only those claims for conduct that post-dates the filing of UBS's first unsuccessful complaint against the Debtor.

DOCS_LA:333741.3 36027/002

agreements in December 2008 – *Careccia v. MacRae*, 2005 U.S. Dist. LEXIS 48970 (E.D.N.Y. July 15, 2005), *First Capital Asset Mgmt., Inc. v. N.A. Partners, L.P.*, 260 A.D.2d 179 (N.Y. App. Div. 1999), and *Rebh v. Rotterdam Ventures, Inc.*, 252 A.D.2d 609 (N.Y. App. Div. 1998). All three cases cited by UBS were issued well before both the Appellate Division's 2012 decision applying *res judicata* to limit UBS's alter ego claim against HFP in the State Court litigation and the Southern District of New York's 2009 decision in *Bd. of Managers* applying *res judicata* to bar the assertion of a post-judgment alter ego claim against a previously-dismissed defendant. Furthermore, the cases identified by UBS cannot overcome the import of the Appellate Division's 2012 decision <u>in this case</u>: if one of the Debtor's privies is protected by *res judicata* from any alter ego claim based on pre-February 24, 2009 conduct (*e.g.*, the breach of the warehouse agreements) as a result of the prior judgment on the merits entered in favor of the Debtor, then the Debtor itself, as the party that obtained the prior judgment, most certainly is entitled to the same protection. Therefore, summary judgment should be granted in favor of the Debtor barring UBS from asserting any claim against the Debtor based on UBS's approximately $1 billion breach of contract claim against the Funds or any other claim that arose prior to February 24, 2009.

## II.     The UBS Claim Is Based Solely on the Transfers of Approximately $233 Million in March 2009 by HFP or Its Subsidiaries

### A.     UBS Has Failed to Establish Any Dispute of Fact as to the Scope of Its Implied Covenant Claim

21.     UBS bears the ultimate burden of proof for all aspects of the UBS Claim. *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citation omitted). On a motion for summary judgment where (as here) the ultimate burden rests on the non-movant, the motion must be granted if the non-movant fails to "produce evidence to support an essential element of its claim." *Palm Energy Group, LLC v. Greenwich Ins. Co. (In re Tri-Union Dev. Corp.)*, 2012 Bankr. LEXIS 4089, *23 (Bankr. S.D. Tex. September 3, 2012); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (movant is entitled to judgment if non-movant fails to make a

-11-

sufficient showing on an essential element of its case on which it has the burden of proof). To make a sufficient showing, the non-movant "must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). "Needless to say, unsubstantiated assertions are not competent summary judgment evidence." *Id.* The non-movant "may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice." *Morris v. Covan World Wide Moving*, 144 F.3d 377, 380 (5th Cir. 1998).

22. Here, the undisputed facts set forth in the Opening Brief include the fact that UBS's implied covenant claim is based on nothing more than the allegedly fraudulent transfers of approximately $233 million that occurred in March 2009. Opening Brief ¶¶ 52-53. In response, UBS repeatedly insists that it has evidence of additional post-February 24, 2009 conduct, asserting that the "record evidence" reflects that "the bases for its implied covenant claim extend beyond the March 2009 transfers." Opposition p. 25; *see generally* Opposition pp. 24-26.[5] And yet, UBS has not provided a shred of evidence to support that statement. UBS instead relies almost exclusively on its own allegations in the UBS Claim and underlying complaint, and the unsubstantiated assertions it made in response to the objections to the UBS Claim, none of which describe any specific post-February 24, 2009 conduct aside from the

---

[5] UBS also asserts that the Appellate Division already has decided that UBS's implied covenant claim is based on something other than the transfers in March 2009. Opposition pp. 13-14, 24-25. This is just another disingenuous statement made by UBS to this Court, trying to take advantage of the somewhat gnarly procedural history of the State Court litigation. A review of the materials cited by UBS shows that (i) the cited briefs were submitted at a time when the entirety of UBS's fraudulent transfer claim against the Debtor had been dismissed, and the Debtor was arguing that the implied covenant claim should be dismissed as well [UBS333-34], (ii) UBS – much like it is doing here – argued that its implied covenant claim extended beyond the approximately 127 transfers made by HFP or its subsidiaries in March 2009, but cited nothing other than its own rhetoric [UBS361-65], and (iii) the Appellate Division recalled its decision as to the fraudulent transfer claim, and affirmed the reinstatement of the implied covenant claim, but never made any determination as to the scope of the implied covenant claim [UBS196].

March 2009 transfers. Opposition pp. 25-26. Moreover, as set forth above, UBS's own allegations and assertions are not competent summary judgment evidence.

23. The scant "evidence/argument" cited in the Opposition does nothing to meet UBS's burden of showing any even remotely actionable claims against the Debtor based on post-February 24, 2009 conduct beyond the claims UBS already has asserted relating to the March 2009 transfers. The evidence referenced in the Opposition consists of (i) a deposition excerpt discussing a December 2008 email exchange [UBS206], (ii) investment management agreements from 2006 [UBS232] and 2007 [UBS208], which are not evidence of any conduct, (iii) a December 2008 email exchange discussing transfers to be made in December 2008 [UBS243], (iv) a January 2009 email discussing the dispute with UBS [UBS203], and (v) the report of one of UBS's expert witnesses discussing the March 2009 transfers by HFP or its subsidiaries.[6] Opposition pp. 8-9, 25-28. Again, none of this is evidence of any post-February 24, 2009 conduct aside from the March 2009 transfers of approximately $233 million.

24. It also bears noting that UBS's unsupported allegations regarding the bases for its implied covenant claim boil down to nothing more than an argument that the Debtor somehow breached a supposed implied promise to guarantee payment by the Funds. *See, e.g.*, Opposition p. 26. The warehouse agreements expressly place all responsibility for any losses in the warehouse facility on the Funds, **not** the Debtor. *See* Opposition p. 7; Engagement Letter ¶ 3(c) [RC App. 0878]; Cash Warehouse Agreement ¶ 5(A) [RC App. 0846]; Synthetic Warehouse Agreement ¶ 6(C) [RC App. 0900].[7] Moreover, the Appellate Division has determined that the warehouse agreements contained no promise by the Debtor "to undertake liability" with respect to UBS's losses or "to ensure or guarantee" performance by the Funds. *UBS v. Highland Capital*

---

[6] All citations herein to "UBS__" refer to the appendix of exhibits [D.E. 1345] filed by UBS in support of the Opposition.

[7] All citations herein to "RC App.__" refer to the appendix of exhibits [D.E. 1189] filed by the Redeemer Committee in support of its motion for partial summary judgment on the UBS Claim.

*Mgmt., L.P.*, 2010 NY Slip Op 1436, ¶ 1 (N.Y. App. Div.) [A184]. And, the Southern District of New York has rejected a similar attempt by Citibank to imply a promise by the Debtor to ensure that cash would be available for distribution on the HFP notes that were extinguished in the March 2009 transaction. *See Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716 (S.D.N.Y. 2017). In that case, Citibank argued, in seeking to impose alter ego liability on the Debtor, that the Debtor had an implied obligation under a pledge agreement to ensure that cash was available for distribution to Citibank on the HFP Notes. *Citibank*, 270 F. Supp. 3d at 731. The district court granted summary judgment in favor of the Debtor. It was "unpersuaded that HCM [the Debtor] even owed Citi a good faith obligation to ensure that cash was available for distribution on the HFP Notes." *Id.* at 732. "[I]t makes little sense to read into the [agreement] an implied promise that [the Debtor] would ensure that cash was available for distribution on the HFP Notes. To the contrary, such an implied promise would impose a duty on [the Debtor] beyond that which Citi bargained for." *Id.*

25.     In sum, UBS has failed to meet its burden to identify specific evidence demonstrating that there is a material fact issue concerning the scope of UBS's implied covenant claim. The implied covenant claim is therefore limited to the $233,455,147 of assets transferred in March 2009. And, as discussed above and below, UBS released its claims to $172,411,785 of that amount. As a result, summary judgment should be granted in favor of the Debtor disallowing any principal recovery on the UBS Claim in excess of $61,043,362.

**B.     UBS Has Failed to Establish that Further Discovery on Its Claims is Necessary or Appropriate**

26.     UBS cannot defeat the Motion by relying on Rule 56(d) of the Federal Rules of Civil Procedure. The assertion that UBS needs additional time for discovery as to its implied covenant claim, which has been pending since 2010, is disingenuous at best. Discovery was conducted in the State Court litigation, with asset information provided to UBS that obviously was sufficient to allow UBS and its experts to evaluate the solvency of HFP and the Funds, and

-14-

transfers made by HFP, the Funds and other entities. *See, e.g.,* Opposition p. 9. Notably, on September 3, 2013, UBS's counsel certified to the State Court that (i) discovery proceedings known to be necessary had been completed, (ii) there were no outstanding discovery requests, (iii) there had been a reasonable opportunity to complete discovery and other pre-trial proceedings, and (iv) UBS's case was ready for trial. 09/03/13 Note of Issue [B003]. UBS also has repeatedly insisted to this Court that its case is trial-ready. *See, e.g.*, 10/06/20 Hearing Tr. 16:14-18 ("We're all ready to try the case as expeditiously as possible, but certainly before the plan confirmation. We would say let's just adjudicate our claim in, you know, November, whether it's mid-November or late November, sometime so that our claim is just resolved.") [B006].

27. Moreover, "[a] plaintiff's entitlement to discovery before a ruling on a motion for summary judgment is not unlimited and may be cut off when the record shows that the requested discovery will not be likely to produce facts he needs to withstand a summary judgment motion." *Krim v. BancTexas Grp.*, 989 F.2d 1435, 1443 (5th Cir. 1993) (internal quotation marks and citation omitted). A party "cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 162 (5th Cir. 2006) (internal quotation marks and citations omitted). "If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the [court] may, in the exercise of its discretion, grant summary judgment." *Krim*, 989 F.2d at 1442.

28. Here, the affidavit and supporting documents submitted by UBS show that further discovery will not produce evidence creating a genuine issue of material fact. In the Bankruptcy Case, the Debtor produced responsive documents to UBS on a rolling basis, and completed its production by October 30, 2020, with the bulk of the Debtor's production completed well in advance of that date. 11/06/20 Tomkowiak Decl. ¶¶ 10, 13, 15-19 [UBS507-510]; 10/02/20

-15-

Email from R. Feinstein to A. Clubok (email from Debtor's counsel advising UBS's counsel that, notwithstanding objections to UBS's document requests and in the interest of expediency and transparency, the Debtor would produce the requested documents) [UBS552]; 10/30/20 Email from G. Demo to S. Tomkowiak (email from Debtor's counsel advising UBS's counsel that the Debtor's production was substantially complete, *i.e.*, the Debtor had conducted a diligent review and had fulfilled its production obligations, with no known additional documents to produce) [UBS570].

29. Denial of the Motion to permit additional time for discovery will not change the fact that the Debtor has completed its production in response to UBS's document requests. While UBS complains that the Debtor's production is insufficient to allow UBS to assess the assets held by HFP and the Funds as of February 24, 2009 and any subsequent asset-related activity [Opposition pp. 20-21], UBS has known for almost a decade that only limited financial information is available for those entities following the 2008-2009 time period. *See, e.g.,* 08/30/12 C. Stoops Dep. Tr. 569:8-571:14 (testimony by the Debtor's former chief accounting officer that "HFP consolidated" did not go forward with an FYE 2008 audit because operations were limited in scope and therefore there was no need "to spend all the money" for an audit) [B009]. In short, the problem is **not** that the Debtor's production is incomplete, or that additional time is needed for discovery. The problem is that UBS was futilely hoping to find a "smoking gun" that would allow it to claim that its implied covenant cause of action is based on something other than the March 2009 transfers, but even after conducting discovery in both the State Court litigation and the Bankruptcy Case, UBS is unable to do so. As a result, UBS's request for a Rule 56(d) denial or deferral of the Motion should be denied.

DOCS_LA:333741.3 36027/002

**III.** **Any Recovery By UBS On Account of the Approximately $172 Million Transferred to the Settling Defendants Must Be Disallowed**

    **A.** **Summary Judgment Should Be Granted to the Debtor Based on the Plain Language of the Settlement Agreements**

30.    As discussed at length in the Opening Brief, UBS has released all of its claims against the Debtor for the approximately $172 million of assets transferred to the Settling Defendants in March 2009. *See, e.g.*, Opening Brief ¶¶ 68-79, 85-89. The parties agree that the relevant language of the Settlement Agreements is unambiguous: UBS released all "Claims" against the Debtor "for losses or other relief specifically arising from the fraudulent transfers to [the Settling Defendants] alleged in the UBS Litigation ...." Crusader Settlement Agreement § 5.3 [A265-266]; *see also* Credit Strategies Settlement Agreement § 5.3 [A299-300].

31.    UBS argues that this language does not apply to its implied covenant claim because that claim "arises" from the warehouse agreements, not the allegedly fraudulent transfers in March 2009. Opposition p. 32. The question, however, is not whether the implied covenant *claim* arises from the warehouse agreements or the allegedly fraudulent transfers. The question is whether the implied covenant claim is a claim for *losses or other relief* arising from the allegedly fraudulent transfers – and it most certainly is. While UBS disputes whether its implied covenant claim seeks any recovery in addition to the amounts transferred in March 2009, there is absolutely no question that the implied covenant claim **does** seek to recover the amounts transferred in March 2009. *See, e.g.,* Opposition p. 4 ("Under its implied covenant claim – as UBS repeatedly has explained – UBS is seeking damages from the Debtor resulting not just from the fraudulent transfers in March 2009 ..."). As such, the implied covenant claim is clearly and unambiguously a claim "for losses or other relief specifically arising from" the allegedly fraudulent transfers to the Settling Defendants, and thus is covered by the releases granted to the Debtor in the Settlement Agreements.

32.    UBS also fails to meaningfully address the use of the defined term "Claims" in the releases granted to the Debtor. Opposition p. 35. The term "Claims" broadly includes all

causes of action, liabilities, or obligations of any kind, whether contractual, tort, or statutory, arising out of or directly or indirectly relating to the warehouse agreements and/or the UBS litigation. Crusader Settlement Agreement §§ 5.2, 5.3 [A265-266]; Credit Strategies Settlement Agreement §§ 5.2, 5.3 [A299-300]. The implied covenant claim – a contractual cause of action – falls clearly within the definition of the "Claims" released by UBS. UBS's sole contention in response to this point – that the term "Claims" is qualified by reference to "losses or other relief specifically arising from" the allegedly fraudulent transfers – does nothing to establish that UBS's release covered only its fraudulent transfer claim, and not its implied covenant claim.

33. UBS's remaining arguments are similarly unavailing. With respect to the "avoidance of doubt" sentence in Section 5.3 of the Settlement Agreements, that sentence merely repeats that UBS has released the Debtor from its "Claims" for "losses or other relief" specifically arising from the allegedly fraudulent transfers to the Settling Defendants. Opposition p. 36. It does not change the broad scope of the releases granted to the Debtor. Finally, as to the provision permitting UBS to introduce evidence relating to the transfers made to the Settling Defendants to the extent relevant to UBS's remaining claims [Opposition p. 34], that provision cannot be read to mean that UBS's releases did not cover the implied covenant claim. UBS had (and has) numerous other claims that were not released, including its alter ego claim against HFP, and its fraudulent transfer claim against the Debtor and other parties based on other transfers made in March 2009. Particularly in light of the fact that the transfers to the Settling Defendants were made as part of the same transaction as the other transfers, and were reflected in the same documentation extinguishing the HFP notes, it is neither surprising nor significant that UBS reserved the right to introduce evidence relating to the transfers to the Settling Defendants.

34. Based on the clear and unambiguous language of the releases, summary judgment should be granted in favor of the Debtor (i) barring UBS from obtaining any recovery against the

-18-

Debtor on account of the $172,411,785 transferred to the Settling Defendants in March 2009, and (ii) disallowing any principal recovery on the UBS Claim in excess of $61,043,362 ($233,455,147-$172,411,785=$61,043,362).

**B. Even if Parol Evidence is Considered, Summary Judgment Should Be Granted to the Debtor**

35. In the event the Court determines that the release language is ambiguous, and considers relevant extrinsic evidence, summary judgment should be granted in favor of the Debtor. As an initial matter, UBS's assertion that its email negotiations with the Settling Defendants prove that UBS "expressly refused" to release its implied covenant claim is demonstrably false. Opposition p. 38. To the contrary, in response to the suggestion from counsel for Crusader that the release language be edited "[s]o that the parties are clear that the claim for breach of good faith and fair dealing in connection with the transfer of assets to Crusader is encompassed within the scope of the release UBS is granting" to the Debtor, UBS **never** stated that the implied covenant claim was not covered. 06/07/15 Email Chain at pp. 1-2 [A331-332]. Instead, UBS's counsel stated only that UBS would not change the release language because "we spent a lot of time with credit strat on this language and ubs is not going to change it for this agreement because it could create problems and we still don't understand what your concern is beyond a highly improbable hypothetical." *Id*. at p. 1 [A331].

36. Furthermore, neither the email correspondence with counsel for Crusader nor the excerpt from the redline of the Crusader Settlement Agreement [Opposition p. 39] show that Crusader sought to "broaden" the release language, or that UBS ever refused to "broaden" that language. Instead, the extrinsic evidence shows only that counsel for Crusader proposed that the releases be phrased in terms of the "Claims" arising from the alleged fraudulent transfers and related alleged breaches of the implied covenant, and that the "losses or other relief" language be deleted. *See* 06/07/15 Email Chain pp. 1-3 [A331-A333]; Opposition p. 39. The proposed changes suggested a different framework for describing the releases, but did not change the

-19-

broad scope of the releases – as discussed above, there never has been any doubt that the implied covenant claim is a claim for losses arising out of the transfers made in March 2009.

37. For the reasons discussed above and in the Opening Brief, to the extent the Court considers the extrinsic evidence, the only reasonable interpretation of the Settlement Agreements in light of the extrinsic evidence is that UBS released its rights to any recovery against the Debtor specifically arising from the allegedly fraudulent transfers of $172,411,785 to the Settling Defendants, regardless of whether UBS attempts to recover that amount on account of its fraudulent transfer claim or its implied covenant claim. Thus, even if the Court determines that the releases are ambiguous, summary judgment should be granted in favor of the Debtor.

### C. The Debtor Is Not Judicially Estopped from Enforcing the Releases

38. UBS's remaining argument regarding the releases – that the Debtor is judicially estopped from enforcing the releases – is addressed at length in the Opening Brief. Opening Brief ¶¶ 90-93. As set forth therein, UBS has failed to establish judicial estoppel because UBS cannot show (among other things) that the Debtor has asserted a legal position that is inconsistent with any prior position regarding the releases. Indeed, the record establishes that, in the State Court litigation, the Debtor expressly indicated its intent to seek enforcement of the releases at the appropriate time, and never took a contrary position. Opening Brief ¶¶ 91-92. For instance, in an opposition to a motion in limine relating to Phase I of the trial, the Debtor and the Funds argued:

> Accordingly, if any liability against Defendants [*i.e.*, the Funds] is ultimately found, Defendants will be entitled to a substantial offset. Thus, UBS's argument that the Court cannot hear evidence or argument regarding UBS's prior settlements fails. **The settlements likewise release Defendant Highland Capital Management, L.P. from any liability relating to the alleged fraudulent transfers with the Settling Defendants, and the Court will need to likewise enforce these provisions.**

06/13/17 HCMLP et al. Mot. Lim. Opp. at p. 19 of 30 (emphasis added) [A324]. The Debtor's position in June 2017 – that UBS released the Debtor from **any** liability relating to the allegedly

fraudulent transfers to the Settling Defendants – is completely consistent with the position set forth herein and in the Opening Brief. As a result, UBS cannot establish that the Debtor is judicially estopped from enforcing the releases.

## IV. The Debtor's Motion for Partial Summary Judgment Is Procedurally Proper

39. UBS contends that the Motion is procedurally improper because the deadline for filing dispositive motions in the State Court litigation expired on October 17, 2013. Opposition p. 22. UBS makes no effort to explain (i) how the Debtor could have sought summary judgment relating to the UBS Bar Date (a bankruptcy-specific issue) in the State Court litigation, (ii) how the Debtor could have sought summary judgment on the *res judicata* issue in the State Court litigation, given that UBS did not seek alter ego relief against the Debtor in the State Court, or (iii) how the Debtor could have sought summary judgment in October 2013 to enforce releases that were not granted until June 2015. In any event, as UBS is well aware, the Debtor filed the Motion in accordance with the *Scheduling Order With Respect to Proof of Claim Nos. 190 and 191 of UBS Securities LLC and UBS AG, London Branch* [D.E. 1163], which the Court entered after the October 6, 2020 status conference regarding the UBS Claim. The Motion therefore is procedurally proper.

[remainder of page intentionally blank]

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion in its entirety, and grant the Debtor such other and further relief as the Court deems just and proper.

Dated:  November 16, 2020.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
Alan J. Kornfeld (CA Bar No. 130063)
Elissa A. Wagner (CA Bar No. 213589)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
            rfeinstein@pszjlaw.com
            akornfeld@pszjlaw.com
            ewagner@pszjlaw.com
            gdemo@pszjlaw.com

-and-

**HAYWARD & ASSOCIATES PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor and Debtor-in-Possession*