# Appendix Exhibit 64

Case 19-34054-sgj11 Doc 1439 Filed 11/19/20 Entered 11/19/20 18:48:06 Page 1 of 13
Case 3:21-cv-00881-X Document 174-64 Filed 12/16/23 Page 2 of 16 PageID 18392
Docket #1439 Date Filed: 11/19/2020

D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

**ATTORNEYS FOR JAMES DONDERO**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | Case No. 19-34054 |
| | § § | |
| Debtor. | § | Chapter 11 |

**JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
<u>OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS</u>**

James Dondero ("<u>Movant</u>"), a creditor, indirect equity security holder, and party in interest in the above-captioned bankruptcy case, pursuant to sections 1108, 363, and 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), hereby files this *Motion for Entry of an Order Requiring Notice and Hearing for Future Estate Transactions Occurring Outside the Ordinary Course of Business* (the "<u>Motion</u>"). In support thereof, Movant respectfully represents as follows:

**I.    SUMMARY OF ARGUMENT**

1.    Since the Court's approval of the Debtor's settlement with the Committee in January 2020, the Debtor has been operating under certain protocols governing its operations. Under these protocols (the "<u>Protocols</u>") the Debtor has sold a number of significant assets

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS

‖19340542011190000000000012‖

App. 1786

providing notice only to the Committee. The Debtor, under these Protocols, has been selling significant assets of value to the estate outside the ordinary course of business without giving creditors, equity holders, parties in interest, and the U.S. trustee notice and opportunity to be heard. Doing so is inconsistent with the spirit, if not the letter, of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. Until confirmation of a plan that provides otherwise, the sale of assets of the Debtor or its wholly-owned or controlled subsidiaries should occur only after notice and an opportunity for a hearing. While the Protocols may arguably have excused the Debtor from the Bankruptcy Code's requirement that transactions outside the ordinary course be subject to notice and a hearing, there is ample justification for the Court to require them for future transactions. Transparency is a key concept in chapter 11 under the Bankruptcy Code and Bankruptcy Rules, and notice and an opportunity for a hearing before a trustee or debtor in possession acts outside the ordinary course of business is essential to that transparency.

3. Clearly, the sale of a substantial asset owned by a subsidiary of the Debtor is outside the ordinary course of a debtor's business and Bankruptcy Code § 363(b) requires notice and an opportunity for hearing before such an act. Indeed, requiring notice and an opportunity for a hearing increases transparency and provides disclosure to creditors and other parties in interest. Moreover, requiring notice and a hearing often results in competitive bidding, increasing the value received for the asset by the Debtor's estate.

4. For these reasons, the Court should require that, at least until confirmation of a plan, transactions outside the ordinary course, including the disposition of assets held by Debtor's wholly-owned or controlled subsidiaries, only occur after notice and hearing.

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS                    PAGE 2

App. 1210

## II. BACKGROUND

5. On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

6. On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. trustee in Delaware.

7. On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's Bankruptcy Case to this Court [Docket No. 186].

8. On December 27, 2019, the Debtor filed that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] (the "Settlement Motion"). This Court approved the Settlement Motion on January 9, 2020 [Docket No. 339] (the "Settlement Order").

9. In connection with the Settlement Order, an independent board of directors was appointed on January 9, 2020, for the Debtor's general partner, Strand Advisors, Inc. (the "Independent Board"). The members of the Independent Board are James P. Seery, Jr., John S. Dubel, and Russell F. Nelms. Mr. Seery was later retained as the Debtor's Chief Executive Officer.

10. The Settlement Order also approved the Protocols governing the "Debtor's operation in the ordinary course of business."[1]

11. Among other things, the Protocols provide that, for transactions involving the assets held directly on the Debtor's balance sheet or the balance sheet of a wholly-owned subsidiary, the

---

[1] Term Sheet, Docket No. 354-1, p. 5.

Debtor may (i) undertake Ordinary Course Transactions[2] without Court approval; and (ii) with respect to third party transactions in excess of $2,000,000, proceed so long as it receives no objection from the Committee after having provided three business days advance notice.[3]

12. While the Settlement Motion and the underlying Term Sheet appear to state that the Protocols govern the Debtor's operations in the ordinary course of business, the terms of the Protocols seemingly provide the Debtor with authority to conduct transactions outside the ordinary course of business without notice and hearing so long as the Committee (but only the Committee) does not object and the transactions are not with any Related Entity.

13. Pursuant to the authority arguably granted under the Protocols, the Debtor has conducted a number of substantial asset sales outside the ordinary course of business without notice other than to the Committee. Among these are the sale of certain assets held by Highland Multi Strategy Credit Fund, L.P. and Highland Restoration Capital Partners. Most recently, the Debtor, through its wholly-owned subsidiary Trussway, conducted a transaction in which it, on information and belief, sold a Trussway division, d/b/a SSP Holdings, for $50,000,000, netting proceeds to the Debtor's estate of $10,000,000. On information and belief, this transaction has already closed.

14. It is Movant's belief that there was no arm's length competitive process undertaken with respect to this sale. As a result, though certain metrics of SSP had improved materially since it was acquired in 2014, the price to be paid was markedly less than might have been produced through competitive bidding.

15. It is unclear whether the Court or other parties contemplated that the Debtor would

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet and incorporated Protocols.
[3] See Amended Operating Protocols, Docket No. 466-1, p. 4.

dispose of such significant assets without an opportunity for this Court to review the transactions to ensure that they satisfy the requirements of section 363(b) and for creditors and parties in interest to be heard.

16. This is significant in part because, in early October, Movant submitted a proposal to the Debtor and the Committee for a consensual "Pot Plan," which would include a substantial infusion of cash and notes by the Movant for the benefit of creditors and would continue the Debtor's business in its current form, rather than the liquidating of the company under the pending Third Amended Plan (Movant had previously made proposals that were rejected). Movant and the Debtor have engaged in discussions and exchanged term sheets regarding the terms of a Pot Plan, but no agreement has yet been reached. The Movant has also reached out to Committee counsel and members of the Committee, but has not received any definitive response to his proposal. If the Debtor continues to sell significant assets (at what Movant believes to be less than fair value), the amount to be contributed by Movant under such a plan—and even the recoveries to be received under Debtor's Third Amended Plan—may be significantly reduced, which will ultimately lower the recovery to creditors.

17. The Term Sheet governing the Protocols provides the Protocols may be modified either with consent of the Committee or by order of this Court.[4]

### III. RELIEF REQUESTED AND BASIS FOR RELIEF

18. By this Motion, pursuant to sections 1108, 363, and 105(a) of the Bankruptcy Code, Movant respectfully requests that the Court enter an order modifying the Protocols and requiring that, at least until confirmation of a plan, all transactions outside the ordinary course of business, including the disposition of substantial assets held by Debtor's wholly-owned or controlled

---

[4] *See* Term Sheet, Docket No. 354-1, p. 5.

subsidiaries, only occur after notice and an opportunity for hearing.

19.  Section 1108 of the Bankruptcy Code provides authorization for the debtor in possession to operate the debtor's business unless the court, on a request of a party in interest and after notice and a hearing, limits that authority. 11 U.S.C. § 1108.

20.  Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. To sell property under section 363(b), the Trustee must demonstrate a legitimate business justification for the proposed transaction. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). "In determining whether a good business reason exists to grant a motion to approve a sale pursuant to section 363(b), a court should consider all of the salient factors pertaining to the proceeding and act to further the diverse interests of the debtor, creditors, and equity holders." *In re GSC, Inc.*, 453 B.R. 132, 155 (Bankr. S.D.N.Y. 2011) (internal quotations omitted).

21.  Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) "authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code." *Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1116 (5th Cir. 1995).

**A.  The Court should require notice and hearing for all transactions occurring outside the ordinary course of business as required under section 363(b)**

22.  The Court should require that the sale of assets of the Debtor directly or through its wholly-owned subsidiaries be subject to notice and a hearing. While the Protocols may arguably have given the Debtor authority to sidestep the Bankruptcy Code's requirement that transactions

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS                    PAGE 6

App. 1214

outside the ordinary course be subject to notice and a hearing, there is ample justification here for the Court to require them for future transactions. Further, it is unclear whether (i) the Protocols actually provide the Debtor with the authority to dispose of significant direct or indirect estate assets without an opportunity for this Court to review the transactions and for creditors and parties in interest to be heard; and (ii) in the event the Protocols do provide that authority, the Court and other parties contemplated such a result. Accordingly, and in the interest of transparency, the Court should require that all future transactions occurring outside the ordinary course of business be subject to notice and hearing.

    i.    **Requiring notice and hearing ensures compliance with section 363(b) of the Bankruptcy Code, ensures due process, and increases transparency.**

23. First, the Court should approve this request because it ensures compliance with the requirements of section 363(b)(1), ensures due process, and increases transparency.

24. Under section 363(b), a debtor in possession is required not only to provide notice and hearing for a transaction outside the ordinary course, but also to articulate a sound business purpose for the transaction. *See In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

25. The Protocols, as the Debtor and Committee have interpreted them, conflict with section 363(b) and deprive various parties of due process. Unlike the requirements of section 363(b), where all creditors, equity holders, parties in interest, and the Office of the United States trustee are entitled to notice, under the Protocols, as they have been construed, the Debtor is only required to provide notice to the Committee of the proposed transaction and it is only if the Committee objects that the matter is brought before the Court. Such notice is of doubtful value to others, especially given intra-Committee disputes.

26. Without proper notice and hearing, there is the potential that the Debtor will dispose of significant assets without all constituents having an opportunity to be heard. Under the

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS    PAGE 7

App. 1215

Bankruptcy Code and Bankruptcy Rules, creditors, equity holders, and parties in interest are entitled to notice and an opportunity to be heard before their rights are impacted. *In re Bombay Co.*, 2007 Bankr. LEXIS 3218, at *7 (Bankr. N.D. Tex. Sep. 26, 2007) ("[A] party in interest . . . is entitled to notice and an opportunity to be heard before its rights are affected."); *see also* 2 Collier on Bankruptcy P 102.02 (16th Ed. 2020) ("Notwithstanding section 102(1) and the desire for flexibility, an adversely affected party is entitled, consistent with the due process requirements of the Constitution, and with the wording of section 102(1), to notice reasonably calculated to apprise it of the proposed action and an opportunity to be heard.").

27. This Court has stated many times on the record that this case is all about transparency. The Court has provided the Committee and other parties various forms of relief to ensure transparency is achieved. Movant believes the relief requested herein will only increase transparency and is asking for the same treatment here on behalf of himself and other creditors and equity holders.

28. Finally, neither the Debtor nor any other party will be prejudiced by this request. The transactions undertaken by the Debtor and contemplated by this Motion generally take time to consummate. Allowing time for proper notice and a hearing is unlikely to significantly delay any transaction or prejudice any other party to a sale, and in the exceptional case, section 102(1) of the Bankruptcy Code gives the Court great flexibility in fixing notice periods.

   ii. **Consistent with section 363(b), requiring notice and hearing may produce competitive bidding and increase the value received by the Debtor's estate.**

29. Second, requiring notice and hearing may elicit competitive bidding and therefore increase the value received by the Debtor's estate, consistent with one of the purposes of the Bankruptcy Code.

30. The courts have long recognized the need for competitive bidding at hearings on

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS PAGE 8

App. 1216

private sales. *In re Muscongus Bay Company,* 597 F.2d 11 (1st Cir. 1979); *In re Alves,* 52 B.R. 353 (Bankr. D. R.I. 1985); *In re Dartmouth Audio Inc.,* 42 B.R. 871, 874 (Bankr. D. N.H. 1984).

31. "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Prods.,* Inc., 99 B.R. 124, 130 (N.D. Ga. 1988). Competitive bidding yields higher offers and thus benefits the estate. Therefore, the objective is "to maximize the bidding, not to restrict it." *In re The Ohio Corrugating Company,* 59 B.R. 11, 13 (Bankr. N.D. Ohio 1985) (quoting *In re Beck Industries Inc.,* 605 F.2d 624, 637 (2d Cir. 1979)).

32. In this case, the Debtor's actions under the Protocols have not always been consistent with this fundamental bankruptcy purpose. The Debtor has conducted several significant asset sales with advance notice only to the Committee. There has been no opportunity for the other creditors, equity holders, the U.S. trustee, or the Court to scrutinize the transactions or for a competitive bidding process to occur. Case law makes clear that the entirety of the *estate*, not just a few creditors, has an interest in these sales and in ensuring value is maximized. *See In re Fin. News Networks, Inc.*, 126 B.R. 152, 157 (S.D.N.Y. 1991) (a trustee maximizes value for creditors by selecting the "highest and best bid, and thereby protecting the interests of [the debtor], its creditors, and its equity holders); *In re Lionel*, 722 F.2d at 1071 ("In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."); *ASARCO, Inc. v. Elliott Mgmt. (In re Asarco, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (same).

33. The U.S. Court of Appeals for the Second Circuit, in the case of *In re Lionel Corp.*,

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS  PAGE 9

App. 1217

722 F.2d. 1063 (2d Cir. 1983), affirmed the notion that, under section 363(b), the debtor in possession must articulate a good business reason to enter into a substantial sale outside the ordinary course and that a creditors' committee's insistence on such a transaction is, standing alone, not a sound business reason because it ignores the equity interests that are required to be considered. *See also In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business").

34. In *Lionel*, the Court stated that a bankruptcy judge should consider a number of factors in deciding whether a sale under section 363(b) furthers the "diverse interests of the debtor, creditors and equity holders, alike." *Lionel,* 722 F.2d. at 1071. Those factors may include "the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value." *Id.*

35. Here, in conflict with section 363(b), the Protocols arguably allow the Debtor to dispose of assets outside the ordinary course without notice, without any opportunity for a hearing, and without providing a sound business justification as mandated by section 363(b). That the Debtor may dispose of significant assets the value of which runs to the estate without notice, without the opportunity for court review as contemplated by section 363(b), and outside of a plan of reorganization may well disservice the estate. In addition, many of the factors articulated by the

Second Circuit in *Lionel* might well, in e.g., the SSP transaction, have weighed against undertaking the sale.

36. These concerns are particularly relevant in this case for at least two reasons.

37. First, because the Debtor's Third Amended Plan is essentially a liquidation plan that will provide for the "monetization" of the assets held by the Debtor and its subsidiaries, these preconfirmation transactions have the taint of being part of a "creeping" or *sub rosa* plan of reorganization that may fundamentally alter the rights of creditors and equity holders in this case. *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1227 (5th Cir. 1986) ("In *Braniff* we recognized that a debtor in Chapter 11 cannot use § 363(b) to sidestep the protection creditors have when it comes time to confirm a plan of reorganization. Likewise, if a debtor were allowed to reorganize the estate in some fundamental fashion pursuant to § 363(b), creditors' rights under, for example, 11 U.S.C. §§ 1125, 1126, 1129(a)(7), and 1129(b)(2) might become meaningless."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("Undertaking reorganization piecemeal pursuant to § 363(b) should not deny creditors the protection they would receive if the proposals were first raised in the reorganization plan.").

38. Similarly, the disposition of significant assets outside of a plan and without notice raises a number of questions, including why the sale must proceed so quickly that adequate notice cannot be given, whether the asset is increasing or decreasing in value, what the proportionate value of the asset is to the estate as a whole, and other "salient factors pertaining to the proceeding." The constituents in this case (with the exception of the Committee and its few members) and this Court have largely been deprived of the chance to ask these questions.

39. Second, because equity may receive a recovery in this case, equity holders should receive notice and an opportunity to be heard on all significant transactions outside the ordinary

course of business. The Debtor, through the Independent Board, has represented on the record that it believes the Debtor is solvent and that there is a reasonable chance that equity may receive a recovery in this case. The possibility that equity may receive a recovery is all the more reason for the Court to scrutinize closely these transactions to ensure that they satisfy the requirements of section 363(b) and they "further the diverse interests of the debtor, creditors and equity holders."

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court enter an order (i) granting this Motion, (ii) requiring that, at least until confirmation of a plan, transactions outside the ordinary course, including the disposition of assets held by Debtor's wholly-owned or controlled subsidiaries, only be authorized after notice and an opportunity for hearing, and (iii) granting Movant such other and further relief to which he may be justly entitled.

Dated: November 19, 2020

Respectfully submitted,

/s/ D. Michael Lynn
D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: michael.lynn@bondsellis.com
Email: john@bondsellis.com
Email: bryan.assink@bondsellis.com

**ATTORNEYS FOR JAMES DONDERO**

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS                                PAGE 12

App. 1220

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that, on November 19, 2020, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for the Debtor and on all other parties requesting or consenting to such service in this case.

                                    */s/ Bryan C. Assink*
                                    Bryan C. Assink

JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING
NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS
OCCURRING OUTSIDE THE ORDINARY COURSE OF BUSINESS      PAGE 13

App. 1221

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054 |
| | § | |
| Debtor. | § | Chapter 11 |

**ORDER GRANTING JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS <u>OCCURING OUTSIDE THE ORDINARY COURSE OF BUSINESS</u>**

Having considered the *Motion for Entry of an Order Requiring Notice and Hearing for Future Estate Transactions Occurring Outside the Ordinary Course of Business* (the "<u>Motion</u>")[1] filed by James Dondero ("<u>Movant</u>"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

ORDER GRANTING JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS OCCURING OUTSIDE THE ORDINARY COURSE OF BUSINESS

PAGE 1

App. 1222

in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion, any and all other documents filed in support of the Motion and any responses thereto; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. The Debtor is hereby required to provide notice and an opportunity for hearing to all creditors, equity security holders, and parties in interest, including Movant, in accordance with Bankruptcy Code § 363(b) and Bankruptcy Rule 2002 on any transactions outside the ordinary course of business, including the disposition of assets held by Debtor's wholly-owned or controlled subsidiaries.

3. The Court shall retain jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

### ### END OF ORDER ###

Respectfully submitted by:

D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

**ATTORNEYS FOR JAMES DONDERO**

ORDER GRANTING JAMES DONDERO'S MOTION FOR ENTRY OF AN ORDER REQUIRING NOTICE AND HEARING FOR FUTURE ESTATE TRANSACTIONS OCCURING OUTSIDE THE ORDINARY COURSE OF BUSINESS

PAGE 2

App. 1223