# Appendix Exhibit 66

Case 19-34054-sgj11 Doc 1491 Filed 11/30/20 Entered 11/30/20 22:03:18 Page 1 of 12
Case 3:21-cv-00881-X Document 174-66 Filed 12/16/23 Page 2 of 13 PageID 18587
Docket #1491 Date Filed: 11/30/2020

Jason P. Kathman
State Bar No. 24070036
Megan F. Clontz
State Bar No. 24069703
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75093
(214) 658-6500 – Telephone
(214) 658-6509 – Telecopier
Email: jkathman@pronskepc.com
Email: mclontz@pronskepc.com

**CO-COUNSEL FOR PATRICK DAUGHERTY**

Thomas A. Uebler
*Pro Hac Vice to be filed*
Joseph L. Christensen
*Pro Hac Vice to be filed*
MCCOLLOM D'EMILIO
SMITH UEBLER LLC
Little Falls Centre Two
SMITH UEBLER LLC
Little Falls Centre Two
2751 Centerville Road, Suite 401
Wilmington, Delaware 19808
(302) 468-5960 – Telephone
(302) 691-6834 – Facsimile

**CO-COUNSEL FOR
PATRICK DAUGHERTY**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **CASE NO. 19-34054-SGJ-11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P** | § § | **CHAPTER 11** |
| | § | |
| **Debtor.** | § | |

## PATRICK DAUGHERTY'S MOTION TO LIFT THE AUTOMATIC STAY

PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGH MAY BE ENTERED BY DEFAULT.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, RM. 1254, DALLAS, TEXAS 75242-1496 BEFORE CLOSE OF BUSINESS ON DECEMBER 14, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.

TO THE HONORABLE STACEY G. C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:

Patrick Daugherty ("**Daugherty**"), a creditor and party in interest in the above-referenced bankruptcy case, hereby files this *Motion to Confirm Status of Automatic Stay, or Alternatively to Modify Automatic Stay* (the "**Motion**") pursuant to 11 U.S.C. § 362(d) and would respectfully show the Court as follows:

## INTRODUCTION

1. As this Court is aware, Daugherty sued the Debtor and multiple non-Debtor defendants prepetition in the Court of Chancery of the State of Delaware (the "**Delaware Court**"). The initial Delaware trial was in the third day of a three-day trial when the Debtor filed the instant bankruptcy case. As this Court is also aware, the cases in Delaware involve multiple non-debtors (Highland Employee Retention Assets LLC, Highland ERA Management LLC, James Dondero, Hunton Andrews Kurth LLP, Marc Katz, Michael Hurst, Scott Ellington, Thomas Surgent, and Isaac Leventon)(collectively, the "**non-Debtor Defendants**"). The most efficient and economical means for liquidating Daugherty's claims is to lift the stay and allow for the litigation in Delaware to go forward.

2. Lifting the stay and allowing for the litigation to proceed in Delaware not only avoids duplicative litigation (i.e., having to start the trial over), but also avoids costly litigation regarding Constitutional authority and *Stern* issues. The Delaware Court is already very familiar with the facts underlying Daugherty's claims as the first lawsuit has been pending in Delaware for two and a half years. The Delaware Court has had numerous hearings, including multiple discovery disputes related to the very evidence being utilized to support Daugherty's claims, among them, a finding that the crime-fraud exception applied after an *in camera* review. Moreover, as noted above, the Delaware Court has already presided over two days of trial. Finally, as this Court noted

at an earlier hearing, if the Debtor wanted these issues to be litigated in this Court, it could have removed the cases and asked them to be transferred. The Debtor did not. Cause exists to lift the stay because doing so avoids unnecessary additional litigation time and expenses and avoids unnecessary Constitutional and *Stern*-related issues.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

5. The statutory basis for relief is 11 U.S.C. § 362(d)(1).

## I. BACKGROUND

**A. The Delaware Cases.**

6. Prior to the Petition Date, Daugherty sued the Debtor, Highland Employee Retention Assets LLC, Highland ERA Management LLC, and Dondero in the Court of Chancery of the State of Delaware (the "**Delaware Court**") in a case styled: *Daugherty v. Highland Capital Management, L.P.*, C.A. No. 2017-0488-MTZ (the "**Delaware I Case**").[1] In Daugherty's Second Amended Complaint filed in the Delaware I Case, Daugherty explains a scheme contrived by the Debtor, Highland Employee Retention Assets LLC, Highland ERA Management LLC, and Dondero to rob and divert assets that were escrowed for Daugherty.

7. During the two-and-a-half years the Delaware I Case was pending before the Delaware Court, the Delaware Court held multiple hearings, including multiple hearings related to discovery disputes.[2]

8. During the many hearings, the Delaware Court reviewed much of the evidence that is the basis of Daugherty's claims, including reviewing significant amounts of evidence that

---

[1] *See* Declaration of Patrick Daugherty in Support of Motion to lift the Stay ("**Daugherty Declaration**") at ¶ 3.
[2] *See* Daugherty Declaration at ¶ 4.

formed the basis of the Delaware I Court's finding that the crime-fraud exception to attorney client privilege applied. Subsequently, on reargument, Vice Chancellor Zurn again outlined some of the documents she reviewed and the extensive factual basis for her findings.

9. The three-day trial in the Delaware I Case began on October 14, 2019. The Debtor filed its voluntary petition on the third day of that trial, after the Delaware Court had already heard the majority of the evidence. Additionally, at the time of the Debtor's bankruptcy filing, both parties had submitted summary judgment motions and briefs to the Delaware Court and those issues were ripe for determination.[3]

10. During trial of the Delaware I Case (and after the Delaware court found that the crime-fraud exception to attorney-client privilege applied to communications with the Debtor's internal and external attorneys), Dondero and his accomplices' scheme became more clear as did their tardy reliance on an advice of counsel defense. As a result, Daugherty filed a separate lawsuit against Dondero, Highland ERA Management LLC, Highland Employee Retention Assets LLC, Hunton Andrews Kurth LLP, Marc Katz, Michael Hurst, Scott Ellington, Thomas Surgent, and Isaac Leventon in the Delaware Court in a case styled: *Daugherty v. Dondero et al.*, C.A. No. 2019-0956-MTZ (the "**Delaware II Case**") alleging fraudulent transfer and conspiracy.[4]

11. As a result of the litigation, Daugherty has had to spend considerable amounts of money, and has had to cash-in parts of his retirement accounts and borrow money from his own mother.[5]

---

[3] *See* Daugherty Declaration at ¶ 6.
[4] *See* Daugherty Declaration at ¶ 7.
[5] *See* Daugherty Declaration at ¶ 8.

**PATRICK DAUGHERTY'S MOTION TO LIFT THE AUTOMATIC STAY - PAGE 4**

## B. The Bankruptcy Case and Adversary Proceeding.

12. Three days into the trial in the Highland Delaware Case, on October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**").

13. On October 29, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors.

14. On December 4, 2019, the Delaware Bankruptcy Court entered an order transferring this case to this Court.

15. On August 31, 2020, the Debtor sued Daugherty in this case, initiating the Daugherty Adversary Proceeding, in which the Debtor objects to Daugherty's claim and seeks subordination of part of the claim.

16. Daugherty filed his proof of claim in the amount of $40,710,819.42, and the Court recently entered an order temporarily allowing Daugherty's claim in the amount of $9,134,019.00

17. The Debtor recently filed its Fifth Amended Plan of Reorganization (the "**Plan**")[Docket No. 1472] and the Court approved the Debtor's Disclosure Statement for the Fifth Amended Plan (the "**Disclosure Statement**")[Docket No. 1473]. The Plan provides *inter alia* that "Disputed Claims" (i.e., those claims that have not yet been allowed) will be merely reserved pending their allowance. However, the amount reserved can be something substantially less than the full amount of an alleged claim.[6]

18. Confirmation is currently set for January 13, 2021.

---

[6] *See* Plan at 7.

**RELIEF REQUESTED**

19. By this Motion, Daugherty seeks an order from the Court lifting the say to allow him to finalize and finish his trial pending in the Delaware Court, thereby allowing him to liquidate his claims in the most efficient and expedient manner possible.

**BASIS FOR RELIEF REQUESTED**

20. Section 362 of the Bankruptcy Code provides that the court *shall* grant relief from the automatic stay, for cause, including lack of adequate protection. *See* 11 U.S.C. § 362(d)(1). Cause exists to lift the stay for at least four reasons: (1) unnecessary duplication of effort is avoided, (2) Constitutional *Stern* issues are avoided, (3) Debtor's counsel has admitted that Delaware is a capable and suitable forum, and (4) other factors specific to this case. As explained more fully herein, the Court should lift the stay and allow Daugherty to liquidate the claims raised in the Delaware cases.

**A. Cause Exists Because Unnecessary Duplication of Effort is Avoided.**

21. In determining whether "cause" exists to lift the stay, courts should consider "the interests of judicial economy, expeditious and economic resolution of the litigation, comity, jurisdiction, and the balancing of the harms between the parties." *See In re S.H. Leggitt Co.*, 2011 WL 1376772, at *4 (Bankr. W.D. Tex. 2011).

22. The interests of judicial economy are best served by lifting the stay and allowing Daugherty to continue liquidating his claims in the Delaware Court because the Delaware I Case was in its third day of trial, the majority of the witnesses had testified, and the trial was substantially complete. In addition to two days of trial, in the two and a half years prior to the trial, the Delaware Court held multiple hearings, including several hearings related to discovery in which Judge Zurn reviewed the very evidence that was the basis of her crime-fraud exception ruling, and which

supports multiple claims of Daugherty. The Delaware Court is already intimately familiar with the claims and the evidence supporting them. Why then, should this Court devote its resources to retrying issues that have already been litigated to the point of trial in another forum perfectly capable of adjudicating those issues? There is not a stronger argument that the interests of judicial economy absolutely favors lifting the stay.

23. Likewise, the expeditious and economic resolution of the litigation is best served by lifting the stay. The fastest and most economic means for liquidating Daugherty's claims is to the lift the say and allow the litigation to proceed in Delaware. The trial was nearly finished, and thus the parties could finish their trial and Daugherty could begin participating in distributions from the proposed liquidation trust. The Debtor and Committee have consistently noted the high administrative costs of this case. There is no doubt that starting the entire trial over to litigate and liquidate the claims already tried in Delaware would cost the Debtor's estate significantly more (and ultimately the Claimant Trust proposed in the Plan) than simply lifting the stay. Thus, it cannot rationally be argued that it would be more expeditious and economic to re-litigate the issues and claims in this Court.

24. As comity generally deals with one nation recognizing within its territory the "legislative, executive or judicial acts of another nation"[7] concerns for comity are not applicable here.

25. In the current procedural posture, this Court does not presently have jurisdiction over any of the non-Debtor Defendants. In the present adversary proceedings pending before this Court, the only parties to those cases are the Debtor and Daugherty. Accordingly, if this Court denies Daugherty's motion, and Daugherty is required to start his lawsuit over again in this Court,

---

[7] *See Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de CV)*, 701 F.3 1031, 1043-44 (5th Cir. 2012).

**PATRICK DAUGHERTY'S MOTION TO LIFT THE AUTOMATIC STAY - PAGE 7**

he would be required to third-party sue and bring the other non-Debtor Defendants into the pending adversary proceedings. Those third-party non-Debtor Defendants will likely bring dismissal motions (as they are in the process of briefing already in Delaware) and additional significant costs and expenses will be incurred, not to mention the additional judicial resources of this Court devoted to those issues. Although the Court likely has "related to" jurisdiction, those procedural motions add expense and time. At a minimum, those motions will delay an adjudication of Daugherty's claims, and the fact that time and efforts would be devoted to those motions further underscores the arguments that lifting the stay to allow liquidation in Delaware is most efficient and expedient.

26. The balancing of the harms also weighs in favor of lifting the stay. The Debtor's Plan provides that the Claimant Trust[8] may make Trust Distributions to the Claimant Trust Beneficiaries "at any time and/or use Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law."[9] Further, the Plan and Claimant Trust Agreement provide that there will be no distributions on account of "Disputed Claims" while it is pending allowance.[10] A "Disputed Claim" is one that is not yet allowed.[11] For "Disputed Claims," the Debtor proposes to create a "Disputed Claim Reserve."[12] However, the amount placed in the "Disputed Claim Reserve" shall be:

> (a) The amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim or (d) as otherwise ordered by the Bankruptcy Court, *including an order estimating the Disputed Claim*.[13]

---

[8] Capitalize terms not expressly defined herein, shall have the meanings ascribed to them in the Plan.
[9] *See* Plan at 31.
[10] *See* Plan at 44; Claimant Trust Agreement at § 6.4.
[11] *See* Plan at 7.
[12] *See* Plan at 40.
[13] *See* Definition of "Disputed Claims Reserve Amount" Plan at 7 (emphasis added).

**PATRICK DAUGHERTY'S MOTION TO LIFT THE AUTOMATIC STAY - PAGE 8**

Upon a claim being allowed, the Plan provides:

> To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date.[14]

A serious problem with this construct arises if the Debtor under-estimates the amount of the Disputed Claim Reserve, which is a major risk considering (1) the significant amount of "Disputed Claims" and the ability of the Debtor to utilize an order estimating a claim to determine how much to reserve. If any one of the "Disputed Claims" is adjudicated in an amount great than what was reserved (or estimated), then holders of "Disputed Claims" will receive disparate treatment from other creditors in the same case. By way of an example, in Daugherty's case, if his claim is ultimately allowed in an amount in excess of $9,134,019.00, then any amounts paid over and above the amount reserved and estimated will come at the expense of other holders of "Disputed Claims." Likewise, if other creditors settle or resolve their Claims in an allowed amount in excess of what was estimated or what was reserved, their additional recoveries (those above the estimated or reserved amount) would come at the expense of Daugherty and other holders of Disputed Claims. Consequently, any delay in the liquidation of Daugherty's claim severely prejudices him. Each day his claim remains not allowed, his recovery is subject to dilution by the holders of other Disputed Claims and by the holders of Allowed Claims. The conclusion that cause exists to lift the stay is inescapable when the prejudice is added to the harm already caused to Daugherty (including having to utilize retirement funds and borrow money from his mother to fend off the Debtor's

---

[14] *See* Plan at 40.

**PATRICK DAUGHERTY'S MOTION TO LIFT THE AUTOMATIC STAY - PAGE 9**

overly aggressive litigation efforts), and would represent an entirely unnecessary duplication of effort if the Court were to deny the relief requested.

### B. Cause Exists Because Constitutional Authority Issues Are Avoided.

27. This Court is well-versed and is keenly aware of *Stern* and *Stern*-related issues. In *Stern v. Marshall*, the Supreme Court held that a bankruptcy court's constitutional authority to enter final findings of fact and conclusions of law are limited. *See* 564 U.S. 462, 132 S. Ct. 56 (2011). Even before *Stern*, it was universally accepted that, absent consent, a bankruptcy court may only enter final findings of fact and conclusions of law on "core proceedings arising under title 11, or arising in a case under title 11." *See* 28 U.S.C. § 157(b)(1). A proceeding "arises under" Title 11 "if it invokes a substantive right provided by title 11." *Southmark v. Coopers & Lybrand (In re Southmark)*, 163 F.3d 925, 930 (5th Cir. 1999); *In re Wood,* 825 F.2d 90, 93 (5th Cir. 1987). A proceeding "arises in" a case under Title 11 where it is not based on any right expressly created by Title 11, but nevertheless "would have no existence outside of bankruptcy." *In re Wood*, 825 F.2d at 97; *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 376 (Bankr. E.D. Ark. 2003). A proceeding is "related to" a bankruptcy if "the outcome of the proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *See In re U.S. Brass Corp.*, 301 F.3d 296, 303-04 (5th Cir. 2002); *see also In re Wood*, 825 F.2d at 92. Because the claims against the non-Debtor Defendants are neither "arising in" or "arising under" title 11, they are likely merely "related to" claims. Therefore, without consent from the non-Debtor Defendants, this Court would be prohibited from entering final findings of fact and conclusion of law with regard to the claims against those defendants. All of these issues are avoided if the stay is lifted to allow for liquidation of the claims in Delaware because the Delaware Court has jurisdiction and authority to resolve all of the claims against all of the defendants before it.

## CONCLUSION

28. The Delaware Court presided over the Delaware I case for two and a half years. In that time the Court personally reviewed much of the evidence *in camera* that forms the basis of Daugherty's claims. The Delaware Court held multiple hearings and is extremely familiar with the facts, evidence, and arguments related to the claims alleged. But not only is the Delaware Court familiar with all of the evidence, the Delaware Court has actually presided over a substantial amount of the trial. Judicial economy, duplication of efforts, and the extreme burden and prejudice that would befall Daugherty if the Court requires him to start over anew in this Court strongly militate in favor of finding that cause exists to the lift the stay.

## WAIVER OF STAY

29. Daugherty respectfully requests that the 14-day stay in Rule 4001(a)(c) be waived. Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*." *See* Fed. Bankr. P. 4001(a)(3)(emphasis added). As outlined above, every day that Daugherty's claims remain not allowed, he is prejudiced and his recovery is threatened. Accordingly, the Court should waive a stay of entry of its order.

WHEREFORE PREMISES CONSIDERED, Daugherty respectfully requests that this Court enter an order granting the relief requested herein and granting such further relief, whether in law or equity, for which Daugherty may show himself justly entitled.

Dated: November 30, 2020

Respectfully submitted,

*/s/ Jason P. Kathman*
Jason P. Kathman
State Bar No. 24070036
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75093
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: jkathman@pronskepc.com

**COUNSEL FOR
PATRICK DAUGHERTY**

### CERTIFICATE OF CONFERENCE

I hereby certify that on November 25, 2020, I conferred with John Morris, counsel for the Debtor, regarding the relief sought herein and he communicated that the Debtor was opposed.

*/s/ Jason P. Kathman*
Jason P. Kathman

### CERTIFICATE OF SERVICE

I hereby certify that, on November 30, 2020, a true and correct copy of the foregoing was filed electronically and served upon the Debtor, and upon each of the parties receiving notice via the Court's electronic notification system.

*/s/ Jason P. Kathman*
Jason P. Kathman