# Appendix Exhibit 74

Case 19-34054-sgj11 Doc 1669 Filed 01/05/21 Entered 01/05/21 16:37:19 Page 1 of 16
Case 3:21-cv-00881-X Document 174-74 Filed 12/16/23 Page 2 of 27 PageID 18708
Docket #1669 Date Filed: 01/05/2021

Judith W. Ross
State Bar No. 21010670
Frances A. Smith
State Bar No. 24033084
Eric Soderlund
State Bar No. 24037525
**Ross & Smith, PC**
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
        frances.smith@judithwross.com
        eric.soderlund@judithwross.com

Michelle Hartmann
State Bar No. 24032402
**BAKER & McKENZIE LLP**
1900 North Pearl
Suite 1500
Dallas, TX 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
**BAKER & McKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
(*Pro hac vice motion pending*)

**COUNSEL FOR SCOTT ELLINGTON, THOMAS SURGENT,
FRANK WATERHOUSE, AND ISAAC LEVENTON**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re: Highland Capital Management, L.P.,** | § § § | **Case No. 19-34054-sgj-11** |
| **Debtor.** | § § § | **Chapter 11** |

### SENIOR EMPLOYEES' LIMITED OBJECTION TO DEBTOR'S
### FIFTH AMENDED PLAN OF REORGANIZATION

Scott Ellington, Frank Waterhouse, Isaac Leventon, and Thomas Surgent (collectively, the "**Senior Employees**") file this limited objection to the Debtor's Fifth Amended Plan of Reorganization (Dkt. No. 1472) (the "**Plan**") and in support thereof respectfully state as follows:

1934054210105000000000000015

## I. THE SENIOR EMPLOYEES' CLAIMS FOR COMPENSATION ARE ENTITLED TO ADMINISTRATIVE PRIORITY.

As a threshold matter, the Senior Employees' compensation-related claims against the Debtor's estate are entitled to administrative priority, as the Debtor has previously argued to the Court and the Debtor's independent directors repeatedly have represented to the Senior Employees. The Senior Employees will be filing a motion seeking payment of claims as administrative expenses and are not seeking to argue the merits of such claims in the context of the confirmation hearing except as the Debtor's disparate treatment of the Senior Employees is reflected in the terms of the Plan. To the extent, however, that any portion of the Senior Employees' claims are found to be pre-petition claims, the deficiencies in the Plan identified in this objection would apply to such claims. The Senior Employees do not waive any of their rights by filing this limited objection, casting (or not casting) ballots, or making elections for treatment under the Plan. The Senior Employees reserve all their rights with respect to their claims, including without limitation their rights to insurance coverage and indemnification.

## II. THE PLAN AS CURRENTLY DRAFTED IS NOT CONFIRMABLE.

The Debtor's Plan is not confirmable because (A) it violates Bankruptcy Code § 1123(a)(4)'s requirement that claims in the same class be treated the same by (1) unfairly imposing conditions on the Senior Employees that are not imposed on all other employees, (2) arbitrarily providing some members of Class 8 but not others the option to elect treatment under Class 7, and (3) not allowing the Senior Employees to make the Convenience Class Election, resulting in disparate treatment of holders of Class 8 Claims; (B) the Plan appears to impermissibly grant the Debtor, the Reorganized Debtor, and the

Claimant Trustee the unfettered power to "re-classify" any claim as a Subordinated Claim; and (C) the Plan violates Bankruptcy Code § 1127 by failing to provide creditors with all material information required to make an informed decision in voting on the Plan.

### A. The Plan Violates Bankruptcy Code § 1123(A)(4).

The Plan violates the Bankruptcy Code's requirement that the contents of a confirmable plan of reorganization must "provide the same treatment for each claim or interest of a particular class" unless an affected claimant agrees to the less favorable treatment proposed by the Debtor. 11 U.S.C. § 1123(a)(4).

**1. The Plan Provides Senior Employees with Less Favorable Treatment than Other Employees in the Same Class by Requiring them to Sign a "Stipulation" to Obtain Releases and Exculpations.**

Under the Plan, the Debtor proposes to treat the great majority of its employees the same while singling out the similarly situated Senior Employees (whose claims are classified in the same class as the other employees) for disparate—and less favorable—treatment without their consent. Specifically, the Plan grants broad releases to "Employees," but impermissibly conditions the release of four "Senior Employees"—and only these four Employees—on the Senior Employees agreeing to take less favorable treatment on their claims than what other creditors (including Employees) are receiving. *See* Plan Art. IX.D. No other Employees are required to sign a stipulation to be included as a Released or Exculpated Party. And no other Employees in the same class are provided different and lesser treatment with respect to the Plan's treatment of their claims. This violates § 1123(a)(4) because the Plan is providing less favorable treatment to creditors (Employees vs Senior Employees) whose claims are classified in the same class.

2.    **The Stipulation Suffers from Numerous Defects.**

The form of the stipulation the Debtor drafted has not been approved or accepted by any "Senior Employee," for good reason. The form itself suffers from a number of substantial defects. The following are just some of the examples of defects in the Debtor's proposed stipulation.

- The draft stipulation wrongly states that "the Committee objected to the Senior Employee receiving the Earned Amounts during the Chapter 11 Case and the Earned Amounts, although earned, was [sic] not paid" (with no reference to the record of any such alleged objection).

- It fails to explain why the supposed Committee objection is relevant, given that the Debtor obtained Court authority to pay *all* Employees (other than James Dondero and Mark Okada) their bonus amounts. That authority to pay all Employees their bonus payments in the ordinary course of business was not conditioned on Committee approval (or made subject to a Committee veto);

- The draft stipulation contains a vague standard for what constitutes "Confidential Information" that the Senior Employee is required to keep confidential, including "discussions, information, and observations" and undefined "business sensitive information."

- It vests sole authority in the Claimant Trustee and the "Independent Member" of the Claimant Trust Oversight Committee ("CTOC") (who is only "independent" because they do not hold a claim, but otherwise is selected exclusively by the CTOC) to determine whether the Senior Employee has complied with the conditions for a release, with no right of the Senior Employee to dispute such determination and seek a court decision on whether that determination was justified.

- With respect to the "Earned Amount" of a Senior Employee's compensation, the stipulation requires the Senior Employee to reduce his claims to Convenience Claims and then further reduce such claims by 40% in exchange for the possibility that the Senior Employee will be released on the date at some point in the distant future when the Claimant Trust is dissolved. The stipulation provides no mechanism, however, for the Senior Employee to recover claims and distributions that he forfeited, or even to preserve such rights as defenses or offsets against any claims that might be asserted.

In addition to the defects listed above, the stipulation also is rife with vague standards with which the Senior Employee has to comply if the Senior Employee ultimately wants to be released from claims. Moreover, the stipulation provides no requirement that the Claimant Trustee provide notice to the Senior Employee of any purported violation of the Stipulation and ability to cure. The vague requirements include the following: (1) The Senior Employee "works with or assists any person to sue, attempt to sue, or threaten" a number of parties, including any "Released Party" "in connection with any claim or cause of action arising prior to the Effective Date." (What does it mean to "work with or assist"? What if the Senior Employee is compelled to provide information by means of a subpoena or other requirement under applicable law? Read literally, the "causes of action" (which are not defined) do not even have to relate to the Debtor); (2) The Senior Employee "has taken any action that, [sic] impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets" (This language, read literally, could apply even to actions taken prepetition. The draft stipulation provides no specifics about what kinds of action could "impair" the value and does not even require a material impairment as a basis for taking away the Senior Employee's release.); (3) The Senior Employee "has violated the confidentiality provision" (Again, this is not defined by any time frame, could include any discussions that occurred prior to execution of the stipulation, and fails to carve out any disclosure required by a subpoena or otherwise in accordance with applicable law); (4) The Senior Employee, "upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith ... or has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor." (The stipulation should set forth what

actions will be required of the Senior Employee to comply with this standard and should provide for reimbursement to the Senior Employee if compliance with the provision would require the Senior Employee to incur any expenses; otherwise, the Senior Employee should be relieved from any obligation to comply with such provision.).

### 3. The Debtor Improperly Has Attempted to Prevent the Senior Employees from Making the Convenience Class Election.

Each of the Senior Employees has filed a proof of claim in these cases. That proof of claim asserts PTO Claims under the Plan, claims for compensation amounts that have been earned and not paid (the "***Liquidated Awards***"), and other claims that might arise in the future, including contingent indemnification claims and claims for future compensation amounts (the "***Other Claims***"). As reflected in a chart prepared by the Debtor summarizing the Liquidated Awards, attached hereto as **Exhibit A** (the "***Liquidated Awards Spreadsheet***"), the Debtor does not dispute the amount of the Liquidated Awards. The Debtor also does not dispute that the Senior Employees' PTO Claims, which were part of the Senior Employees' proofs of claim, will be paid under Class 6 of the Plan. As of the date hereof, no objection has been filed to any of the claims asserted by the Senior Employees. As such, the PTO Claims, the Liquidated Awards, and the Other Claims all constitute allowed claims within the meaning of § 502(a) of the Bankruptcy Code.[1]

What is in dispute is the priority of the Liquidated Awards and the Other Claims— the Senior Employees assert that the Liquidated Awards and Other Claims are entitled to administrative expense priority, while the Debtor disagrees. The Senior Employees will file

---

[1] Section 502(a) provides, in relevant part, that a "claim …, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects."

a motion requesting payment of such claims as administrative expenses, and the Senior Employees are not asking the Court to address that issue in connection with confirmation. Without prejudice to such such issue, however, the Senior Employees seek to protect their rights under the Plan to elect to have the Liquidated Awards, which otherwise would be General Unsecured Claims within the scope of Class 8 of the Plan, be treated as Convenience Claims under Class 7 the Plan if it is determined that the Liquidated Awards are prepetition claims.

> **a)** *The Plan Gives Class 8 Creditors the Right to Make the Convenience Class Election.*

Article I.B.43 of the Plan defines a "Convenience Claim" as "any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or ***any General Unsecured claim*** that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims" (emphasis added). With respect to holders of General Unsecured Claims in Class 8, Article III.H.8 of the Plan allows any holder of an "Allowed Class 8 Claim" to "make[] a valid Convenience Class Election." The "Convenience Class Election" is "the option provided to each Holder of ***a General Unsecured Claim that is a liquidated Claim*** as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims." Plan Art. I.A.43 (emphasis added). Nowhere does the Plan define what is meant by requiring that a claim be "liquidated," as opposed to "Allowed." In addition, nowhere does the Plan purport to require that a creditor aggregate all their claims within a Class for the purposes of making the Convenience Class Election.

7

Moreover, nowhere does the Plan condition the right of the Senior Employees to make the Convenience Class Election on their execution of the Senior Employee Stipulation. Although the definition of "Convenience Claim" makes it clear that execution of the Senior Employee Stipulation gives rise to a "Reduced Employee Claim" that will be treated as a Convenience Claim, nowhere does the Plan provide for the converse -- that the failure to sign the Senior Employee Stipulation would deprive the Senior Employees of their right to make the Convenience Class Election. Indeed, the only consequence of failing to sign the Senior Employee Stipulation is set forth in Article IX.D. of the Plan, which conditions the release of Senior Employees under Article IX.D. upon execution of the Senior Employee Stipulation. This is consistent with the representations made by the Debtor and its counsel (as reflected in the Liquidated Awards Spreadsheet) -- the Senior Employees could elect not to be released but to have their Liquidated Awards treated as Convenience Claims in the same manner as other holders in Class 7, or the Senior Employees could sign the Senior Employee Stipulation, receive a release, and limit their recovery to the Reduced Employee Claim amount.

> b) **The Debtor Has Contradicted the Plan in Answering Questions Raised by the Senior Employees Concerning the Convenience Class Election.**

Although the Senior Employees had not signed the Senior Employee Stipulation as of the distribution of the solicitation packages, each of the Senior Employees received two ballots -- a Class 7 (Convenience Class) ballot in the Reduced Employee Claim amount and a Class 8 (General Unsecured Claims) ballot in the amount of $1.00 (for voting purposes only).

Because of the confusion created by the ballots and given the Debtor's failure to define "liquidated" in the Plan, the Senior Employees, through their counsel, sought to clarify that their understanding of the Convenience Class Election was consistent with how the Plan had been described to them by the Debtor's advisers—the Liquidated Awards would be "dropped down" to Class 7, but the Other Claims would remain as Class 8. The text of the ensuing email exchange with the Debtor's counsel is attached hereto as **Exhibit B**. In short, the Debtor, for the first time has taken the position that (1) a Class 8 Creditor may only make the Convenience Class Election for all of its Class 8 Claims, and (2) a Class 8 Creditor may only make the Convenience Class Election if all of its Class 8 Claims are liquidated as of the Confirmation Date. As a result, the Debtor's counsel has stated that the Senior Employees have no right to make the Convenient Class Election. This is inconsistent with numerous other representations of the Debtor and its counsel to the Senior Employees.

        *c)*      ***The Debtor's Interpretation of the Convenience Class Election Is Inaccurate and Inconsistent with its Prior Positions.***

The Senior Employees object to this interpretation because (1) it is not supported by the text of the provisions relating to the Convenience Class Election, (2) is inconsistent with the other terms in the Plan, (3) is inconsistent with the Debtor's statements about the Plan in its discussions with the Senior Employees, (4) seemingly ignores that that a creditor may hold multiple claims within a class, and (5), if applied to exclude Class 8 creditors having Claims that also are unliquidated, violates § 1123(a)(4) of the Bankruptcy Code.

As set forth above, the plain language of the Plan regarding the Convenience Class Election provides that the Convenience Class Election may be exercised with respect to *any* General Unsecured Claim that is liquidated. It does not require that *all* of a holder's General Unsecured Claims be liquidated. Nor does it require that a holder of a General Unsecured Claim make the election with respect to all its claims. The text clearly states that the election is available to *a* General Unsecured Claim that is *a* "liquidated claim."

Moreover, the "all or nothing" approach to the Convenience Class Election ignores that the Plan otherwise generally recognizes that a proof of claim may comprise multiple claims. That is why, for example, the Senior Employees' PTO Claims (which are asserted in the same proofs of claim that cover the Liquidated Awards and the Other Claims) are being classified and treated in Class 6. The approach also ignores that the Plan specifically recognizes in the form of Senior Employee Stipulation that *only* the Liquidated Awards (defined in the Senior Employee Stipulation as the "Earned Amounts") would be subject to the Convenience Class Election. Nothing in the form of the Senior Employee Stipulation even purports to characterize allowing only the Senior Employees to opt into the Convenience Class only for the Liquidated Awards as a modification of an "all or nothing" requirement in the Plan.

The Debtor's last-minute interpretation also flies in the face of statements that the Debtor and its counsel made to the Senior Employees about the Convenience Class Election. The Liquidated Awards Spreadsheet, **which was prepared by the Debtor's counsel**, makes this clear -- it shows the recovery to the Senior Employees if they do not sign the Senior Employee Stipulation but make the Convenience Class Election, and it

separately shows the reduced recovery for the Senior Employees if they elect to be released and sign the Senior Employee Stipulation.

In the absence of specific aggregation language in the Plan, a holder of a Class 8 General Unsecured Claim should be allowed to make the Convenience Class Election with respect to all, some, or none of its claims within Class 8. The Debtor seemingly ignores the well-supported principle that a single creditor may hold multiple claims, even within the same class.[2]

Finally, the Plan may not impose a condition to eligibility for the Convenience Class Election that provides some General Unsecured Claims in Class 8 with more favorable treatment than other General Unsecured Claims in Class 8. Putting aside whether the requirement that a particular claim be "liquidated" is itself a valid condition to making the Convenience Class Election, arbitrarily excluding the claims of creditors such as the Senior Employees from making the election with respect to their admittedly liquidated General Unsecured Claims because such creditors also have other claims that have not been liquidated violates § 1123(a)(4)'s proscription against unequal treatment of claims within the same class under a plan.

---

[2] *See, e.g.*, *Figter Ltd. v. Teachers Ins. Annuity Ass'n* (*In re Figter Ltd.*), 118 F.3d 635, 640-641 (9th Cir. 1997) (allowing claims purchaser to vote separately each purchased claim within the same class); *In re Vicor Techs., Inc.*, No. 12-39329-EPK, 2013 WL 1397460, at *9 (Bankr. S.D. Fla. Apr. 5, 2013) ("a single creditor may hold multiple claims against an alleged debtor."); *In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 763 n.8 (Bankr. E.D. Va. 1996) (In applying section 303(b) of the Bankruptcy Code,"The claims of a holder of multiple claims are not dismissed merely because one of them is subject to a bona fide dispute.")*Concord Square Apartments of Wood Cty, Ltd. v. Ottawa Properties, Inc.* (*In re Concord Square Apartments of Wood Cty., Ltd.*), 174 B.R. 71, 74 (Bankr. S.D. Ohio 1994) (creditor with "multiple claims has a voting right for each claim it holds"); *In re Gilbert*, 104 B.R. 206, 211 (Bankr. W.D. Mo. 1989) ("[Creditor with two unsecured claims] is entitled to one vote for each of his unsecured Class X claims").

### 4. The Plan Identifies No Basis for its Disparate and Unfair Treatment of Senior Employees.

With respect to the draft stipulation, the Debtor has not provided any justification for why it is singling out certain "Senior Employees" for disparate treatment, or explained how the Debtor even selected which employees were placed into the "Senior Employees" category. The Debtor has not disclosed why the four apparently arbitrarily selected Senior Employees are not entitled to be released and protected from third party claims under the Plan in the same manner as other similarly situated and classified employees. The Plan identifies no claims or causes of action against any of the Senior Employees. Nor does the Plan identify any reason why the Senior Employees have not been paid their promised bonus payments, which were approved by the Court over a year ago and for which the Debtor has reserved and reported cash being held to pay. Nothing in the Plan or the Debtor's prior representations to the Court and to the Senior Employees throughout the pendency of the bankruptcy case provides any justification for providing disparate and less favorable treatment of the Senior Employees than what all other Employees are receiving.

What the Debtor is offering the Senior Employees is essentially a Hobson's choice: either accept the lesser treatment imposed on them by the terms of the non-negotiable stipulation the Debtor seeks to force on them as a condition for being included as a Released or Exculpated Party (along with treatment of their Class 8 claims that is less favorable treatment than what their fellow employees receive or have received) or receive the same treatment but without the benefit of the Plan's releases and exculpations that are made available to all other Employees who are not required to sign the "stipulation." This is the illusion of choice, and is impermissible under Bankruptcy Code § 1123(a)(4).

Likewise, concerning the Convenience Class Election, the Debtor has provided no justification for arbitrarily permitting Class 8 holders of fully liquidated claims the choice to have their claims treated as Class 7 Convenience Claims while not permitting holders of claims that have not been liquidated or holders of multiple claims (some of which have been liquidated and others not) to do the same. Again, the Debtor has singled out the Senior Employees for disparate and less favorable treatment without explanation and without legal basis, in violation of § 1123(a)(4) of the Bankruptcy Code.

### B.       Under the Plan any Claim Can Be Re-Classified and Subordinated.

The Debtor's Plan provides that claims classified as Subordinated Claims are placed in Class 9, which is subordinate in treatment to Convenience and General Unsecured Claims. This is typical for plans of reorganization. But the Plan also provides the Debtor— and after confirmation, the Claimant Trustee—with apparently unfettered discretion and power to "re-classify" as a Subordinated Claim any claim that had previously been classified differently. This is neither typical nor legally permissible.

Plan Article 3.J provides that "the Debtor the Reorganized Debtor, and the Claimant Trustee *reserve the right to re-classify*, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination." (Emphasis added).

Under the Plan as drafted, then, the Debtor is classifying claims and soliciting votes from claim holders based on those classifications, but at any time and, apparently, for any reason (or no reason at all), the Debtor, the Reorganized Debtor, or Claimant Trustee

"reserve the right" to change the classification of and re-classify it as a Subordinated Claim. There is no basis in law to support such a sweeping power.

### C. The Plan Violates Bankruptcy Code §§ 1125 and 1127.

Section 1127(a) of the Bankruptcy Code allows the Debtor to modify the Plan at any time before confirmation, and § 1127(b) allows the Debtor to modify the Plan after confirmation but before the Plan is substantially consummated. Such modifications, however, are subject to a number of conditions, including the requirement under §1127(c) that the Debtor comply with § 1125 with respect to the Plan, as modified. By reserving the right to make changes without Court approval, failing to provide final versions of the Plan Documents (which are expressly part of the Plan), and asking the Court to approve the Plan in what is essentially draft form, the Debtor is asking the Court to ignore the express requirements of §§ 1125 and 1127.

The Plan provides that, to the extent that the Committee and the Debtor cannot agree upon the terms of any particular document, the issue will be submitted to non-binding mediation. The Plan also provides that finalizing the Plan Documents is a condition to the Effective Date, but the Committee and the Debtor have the right to waive that condition in their sole discretion. And the Plan does not require the Debtor to demonstrate that, upon a document that is part of the Plan being finalized, the Plan as modified complies with the applicable provisions of the Bankruptcy Code. The Debtor and the Committee simply can agree upon terms, and those terms apparently are binding on all creditors without any further Court approval.

Essentially, the Debtors are asking creditors and the Court to consider and approve the Plan before the Plan is even finalized, and the Plan impermissibly grants the Debtor and the Committee carte blanche to make amendments to the Plan post-confirmation without complying with § 1127 of the Bankruptcy Code.

## III. CONCLUSION

The Plan should not be confirmed unless the defects identified in this limited objection are corrected, and the Court should allow the Senior Employees to make the Class 7 Convenience Class Election if they so choose.

*Remainder of Page Intentionally Left Blank*

Respectfully submitted January 5, 2021

By: /s/ Frances A. Smith
Judith W. Ross
State Bar No. 21010670
Frances A. Smith
State Bar No. 24033084
Eric Soderlund
State Bar No. 24037525
**ROSS & SMITH, PC**
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
frances.smith@judithwross.com
eric.soderlund@judithwross.com

Michelle Hartmann
State Bar No. 24032402
**BAKER & McKENZIE LLP**
1900 North Pearl
Suite 1500
Dallas, TX 75201
Telephone: 214-978-3000
Facsimile: 214-978-3099
Email: michelle.hartmann@bakermckenzie.com

Debra A. Dandeneau
**BAKER & McKENZIE LLP**
452 Fifth Ave
New York, NY 10018
Telephone: 212-626-4875
Email: debra.dandeneau@bakermckenzie.com
(*Pro hac vice motion pending*)

**COUNSEL FOR SCOTT ELLINGTON,
THOMAS SURGENT, FRANK WATERHOUSE,
AND ISAAC LEVENTON**

# Exhibit A

| Employee | Earned Bonus | Convenience Class Reduction | Total Convenience Class Claim | Convenience Class Treatment (85%) | Add'l Reduction (40%) | Total Payment | % of Earned Bonus |
|---|---|---|---|---|---|---|---|
| Scott Ellington | $ 1,367,197.00 | $ 367,197.00 | $ 1,000,000.00 | $ 850,000.00 | $ 340,000.00 | $ 510,000.00 | 37% |
| Frank Waterhouse | $ 791,579.00 | $ - | $ 791,579.00 | $ 672,842.15 | $ 269,136.86 | $ 403,705.29 | 51% |
| Thomas Surgent | $ 1,191,748.00 | $ 191,748.00 | $ 1,000,000.00 | $ 850,000.00 | $ 340,000.00 | $ 510,000.00 | 43% |
| Isaac Leventon | $ 589,198.00 | $ - | $ 589,198.00 | $ 500,818.30 | $ 200,327.32 | $ 300,490.98 | 51% |

# Exhibit B

**Dandeneau, Debra A.**

| | |
|---|---|
| **From:** | Jeff Pomerantz <jpomerantz@pszjlaw.com> |
| **Sent:** | Monday, January 4, 2021 9:19 PM |
| **To:** | Dandeneau, Debra A. |
| **Cc:** | Gregory V. Demo; Ira Kharasch; Frances A. Smith; Eric Soderlund; Hartmann, Michelle; Jeff Pomerantz |
| **Subject:** | Re: [EXTERNAL] RE: HIGHLAND:  Question re Convenience Class Election under the Plan -- SENDING AGAIN WITH GREG'S CORRECT EMAIL |

Raise your concerns with the Judge Debra.

Jeff

From: "Dandeneau, Debra A." <Debra.Dandeneau@bakermckenzie.com>
Date: Monday, January 4, 2021 at 9:17 PM
To: Jeffrey Pomerantz <jpomerantz@pszjlaw.com>
Cc: Greg Demo <GDemo@pszjlaw.com>, Ira Kharasch <ikharasch@pszjlaw.com>, "Frances A. Smith"
<Frances.Smith@judithwross.com>, Eric Soderlund <Eric.Soderlund@judithwross.com>, "Hartmann, Michelle"
<Michelle.Hartmann@bakermckenzie.com>
Subject: Re: [EXTERNAL] RE: HIGHLAND: Question re Convenience Class Election under the Plan -- SENDING AGAIN
WITH GREG'S CORRECT EMAIL

Dear Jeff,

A claim is a right to payment, and a claimant may hold multiple claims.  Nowhere in the plan does it state that a claimant
must make the Convenience Class Election with respect to all of its claims.  To the contrary, the definition of
"Convenience Class Election" refers to a "claim" in the singular:  "the option provided to each Holder of a General
Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to
$1,000,000 and receive the treatment provided to Convenience Claims." (Emphasis added)

There are ways for a plan to provide that a creditor's claims must be aggregated for the purposes of the convenience
claim election (and I am sure that Pachulski has come across numerous examples in its practice).  Your plan, however, is
not one of these examples.

Best,

Deb

Debra A. Dandeneau
Chair, Global Restructuring & Insolvency
Baker & McKenzie LLP
452 Fifth Ave<x-apple-data-detectors://0/1>
New York, NY  10018<x-apple-data-detectors://0/1>
Tel: +1 212 626 4875<tel:+1%20212%20626%204875>
Mobile: +1 973 477 6220<tel:+1%20212%20626%204875>

RESTRUCTURING
& INSOLVENCY


Baker's Global Restructuring & Insolvency Blog:
http://restructuring.bakermckenzie.com<http://restructuring.bakermckenzie.com>


On Jan 4, 2021, at 8:39 PM, Jeff Pomerantz <jpomerantz@pszjlaw.com> wrote:
Debra –

App. 1544

Greg responded below that the term liquidated, as that term is used in the plan, means a claim in a sum certain. Your clients do not have a liquidated claim as their claims include amounts which are not in a sum certain. Accordingly, the convenience class treatment is not available to them

Best,
Jeff

From: "Dandeneau, Debra A." <Debra.Dandeneau@bakermckenzie.com>
Date: Monday, January 4, 2021 at 7:53 PM
To: Greg Demo <GDemo@pszjlaw.com>
Cc: Jeffrey Pomerantz <jpomerantz@pszjlaw.com>, Ira Kharasch <ikharasch@pszjlaw.com>, "Frances A. Smith" <Frances.Smith@judithwross.com>, Eric Soderlund <Eric.Soderlund@judithwross.com>, "Hartmann, Michelle" <Michelle.Hartmann@bakermckenzie.com>
Subject: Re: [EXTERNAL] RE: HIGHLAND: Question re Convenience Class Election under the Plan -- SENDING AGAIN WITH GREG'S CORRECT EMAIL

Dear Greg,

Thank you for your response. I think you are conflating the term "Allowed" (which actually is defined in the plan) with the term "liquidated" (which nowhere is defined in the plan). It would be helpful to understand how a claim becomes "liquidated" in your view if it means something other than allowance. Moreover, I would note that, pursuant to section 502(a) of the Bankruptcy Code, a claim, proof of which is properly filed, is deemed allowed unless and until a party in interest objects. I am not aware of any pending objections to our clients' claims, proofs of which were properly filed. If you interpret "liquidated" to mean something more stringent than "allowed," please let me know what that definition is.

In any event, it is helpful to understand that your position is that claimants who do not have allowed claims as of the confirmation date cannot receive the same treatment under the plan as claimants who have "liquidated" claims.

If your view changes, please let me know.

Best,

Deb

Debra A. Dandeneau
Chair, Global Restructuring & Insolvency
Baker & McKenzie LLP
452 Fifth Ave<x-apple-data-detectors://0/1>
New York, NY 10018<x-apple-data-detectors://0/1>
Tel: +1 212 626 4875<tel:+1%20212%20626%204875>
Mobile: +1 973 477 6220<tel:+1%20212%20626%204875>

RESTRUCTURING
& INSOLVENCY


Baker's Global Restructuring & Insolvency Blog:
http://restructuring.bakermckenzie.com<http://restructuring.bakermckenzie.com>>http://restructuring.bakermckenzie.com<http://restructuring.bakermckenzie.com>>


On Jan 4, 2021, at 7:42 PM, Gregory V. Demo <GDemo@pszjlaw.com> wrote:
Your clients' claims are not entitled to make the convenience class election because they are not fully liquidated, which for purposes of the plan provisions means a claim in a sum certain. The component parts of your clients' claims do not matter for purposes of this analysis. They are not entitled to make the convenience class election because their claims are not liquidated.

Your clients had the opportunity to sign the Senior Employee Stipulation, which would have given them a reduced convenience claim amount with respect to three parts of their claim with the balance of their claims being treated as GUCs. That stipulation and the resulting convenience claim provided the consideration for the release. As your clients'

App. 1545

have rejected the Senior Employee Stipulation, there is no pathway to any portion of their claims receiving convenience class treatment.

Gregory V. Demo

Pachulski Stang Ziehl & Jones LLP

Tel: 212.561.7730 | Fax: 212.561.7777

GDemo@pszjlaw.com<mailto:GDemo@pszjlaw.com>

vCard<https://urldefense.com/v3/__http://www.pszjlaw.com/vcard-
130.vcf__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcZFyOyEpA
$<https://urldefense.com/v3/__http://www.pszjlaw.com/vcard-
130.vcf__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcZFyOyEpA
$>> | Bio<https://urldefense.com/v3/__http://www.pszjlaw.com/attorneys-
130.html__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcYZ8MhLG
A$<https://urldefense.com/v3/__http://www.pszjlaw.com/attorneys-
130.html__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcYZ8MhLG
A$>> | LinkedIn<https://urldefense.com/v3/__https://www.linkedin.com/in/gregory-demo-
482aa112__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcarZZ_Yp
w$<https://urldefense.com/v3/__https://www.linkedin.com/in/gregory-demo-
482aa112__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcarZZ_Yp
w$>>
<https://urldefense.com/v3/__http://www.pszjlaw.com/__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c
8d1Q14y7xeCHFwYFqNBPJIpkbcZjsiDugQ$<https://urldefense.com/v3/__http://www.pszjlaw.com/__;!!Hj9Y_P0nvg!A1iO
3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcZjsiDugQ$>>
<image002.jpg><https://urldefense.com/v3/__http://www.pszjlaw.com/__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRB
vvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcZjsiDugQ$<https://urldefense.com/v3/__http://www.pszjlaw.com/__;!!Hj
9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJIpkbcZjsiDugQ$>>

Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

From: Dandeneau, Debra A. [mailto:Debra.Dandeneau@bakermckenzie.com]
Sent: Monday, January 04, 2021 8:34 PM
To: Gregory V. Demo; Jeff Pomerantz; Ira Kharasch
Cc: 'Frances A. Smith'; 'Eric Soderlund'; Hartmann, Michelle
Subject: RE: HIGHLAND: Question re Convenience Class Election under the Plan -- SENDING AGAIN WITH GREG'S
CORRECT EMAIL

Thanks, Greg. I don't mean to be dense about this, but I want to make sure that we are all on the same page in terms of
what you mean by "liquidated," especially as I have never seen this kind of qualification in a plan before. I am not trying to
box anyone into anything in terms of the debtor's ability to object to our clients' claims, but I would like to make sure it is
clear what claims will not be subject to the dropdown election and what claims are permitted to make the dropdown
election. The three categories below are what comprise the "Earned Amounts" category in the draft stipulation. The draft
stipulation provides that all rights are reserved with respect to other claims. I know that our clients have not signed the
stipulation, but we would like to make sure that any future awards or other claims will be part of Class 8 and not subject to
Class 7 treatment if our clients make the Class 7 election. Conversely, we also want to make sure that, subject to
whatever rights the debtor has to object to our clients' claims, if our clients do not prevail in asserting their administrative
expenses, the categories of claims that I listed below are subject to treatment under Class 7.

I think these are fair questions to ask, and I did not see any explanation of your use of the term "liquidated" in the
disclosure statement that would help me understand how the debtor intends for the provision to work.

Finally, in case you are concerned about duplication of effort, I first checked with David Neier to see if he had clarified this
issue, and he confirmed that he has not clarified this outside of the context of the draft stipulation.

Best,

Deb

Debra A. Dandeneau
Chair, Global Restructuring & Insolvency
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018

United States
Tel: +1 212 626 4875
Mobile: +1 973 477 6220
debra.dandeneau@bakermckenzie.com<mailto:debra.dandeneau@bakermckenzie.com>

<image003.png>

bakermckenzie.com<http://www.bakermckenzie.com/en<http://www.bakermckenzie.com/en>> |
Facebook<https://urldefense.com/v3/__https://www.facebook.com/officialbakermckenzie__;!!Hj9Y_P0nvg!A1iO3LDyMTd
Kzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJlpkbcZrv5Yaog$<https://urldefense.com/v3/__https://ww
w.facebook.com/officialbakermckenzie__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeC
HFwYFqNBPJlpkbcZrv5Yaog$>> | LinkedIn<https://urldefense.com/v3/__https://www.linkedin.com/company/baker-&-
mckenzie__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJlpkbcZ6Rgef1g
$<https://urldefense.com/v3/__https://www.linkedin.com/company/baker-&-
mckenzie__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJlpkbcZ6Rgef1g
$>> |
Twitter<https://urldefense.com/v3/__https://twitter.com/bakermckenzie__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRB
vvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJlpkbcYyoyVXcw$<https://urldefense.com/v3/__https://twitter.com/bakermcke
nzie__;!!Hj9Y_P0nvg!A1iO3LDyMTdKzb_4zPQEZYLRBvvdL1zjinidbq3c8d1Q14y7xeCHFwYFqNBPJlpkbcYyoyVXcw$>>


From: Gregory V. Demo <GDemo@pszjlaw.com>
Sent: Monday, January 4, 2021 5:17 PM
To: Dandeneau, Debra A. <Debra.Dandeneau@bakermckenzie.com>; Jeff Pomerantz <jpomerantz@pszjlaw.com>; Ira
Kharasch <ikharasch@pszjlaw.com>
Cc: 'Frances A. Smith' <Frances.Smith@judithwross.com>; 'Eric Soderlund' <Eric.Soderlund@judithwross.com>;
Hartmann, Michelle <Michelle.Hartmann@bakermckenzie.com>
Subject: [EXTERNAL] RE: HIGHLAND: Question re Convenience Class Election under the Plan -- SENDING AGAIN
WITH GREG'S CORRECT EMAIL

Ms. Dandeneau,

As we conveyed to Mr. Neier, only fully liquidated claims are allowed to elect convenience class treatment.  Art. I.B.43;
Art. III.H.8.  Assuming that any portion of your clients' claim is allowed and/or liquidated, partially liquidated claims, like
your clients', are not eligible for conversion.

Best,
Greg
Gregory V. Demo
Pachulski Stang Ziehl & Jones LLP
Tel: 212.561.7730 | Fax: 212.561.7777
GDemo@pszjlaw.com<mailto:GDemo@pszjlaw.com>
vCard<https://urldefense.com/v3/__http:/www.pszjlaw.com/vcard-
130.vcf__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcTKa1-
_Sw$<https://urldefense.com/v3/__http:/www.pszjlaw.com/vcard-
130.vcf__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcTKa1-
_Sw$>> | Bio<https://urldefense.com/v3/__http:/www.pszjlaw.com/attorneys-
130.html__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcSqMu
P9BA$<https://urldefense.com/v3/__http:/www.pszjlaw.com/attorneys-
130.html__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcSqMu
P9BA$>> | LinkedIn<https://urldefense.com/v3/__https://www.linkedin.com/in/gregory-demo-
482aa112__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcT-
iwCu7Q$<https://urldefense.com/v3/__https://www.linkedin.com/in/gregory-demo-
482aa112__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcT-
iwCu7Q$>>
<https://urldefense.com/v3/__http:/www.pszjlaw.com/__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8
UENohmXbycpJ08D0ubpNEqelUnLjLcS61sTc0A$<https://urldefense.com/v3/__http:/www.pszjlaw.com/__;!!Hj9Y_P0nvg!
AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcS61sTc0A$>>
<image002.jpg><https://urldefense.com/v3/__http:/www.pszjlaw.com/__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUm
e92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcS61sTc0A$<https://urldefense.com/v3/__http:/www.pszjlaw.com/_
_;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcS61sTc0A$>>

Los Angeles | San Francisco | Wilmington, DE | New York | Costa Mesa

From: Dandeneau, Debra A. [mailto:Debra.Dandeneau@bakermckenzie.com]
Sent: Monday, January 04, 2021 7:43 PM
To: Jeff Pomerantz; Ira Kharasch; Gregory V. Demo
Cc: 'Frances A. Smith'; 'Eric Soderlund'; Hartmann, Michelle
Subject: RE: HIGHLAND: Question re Convenience Class Election under the Plan -- SENDING AGAIN WITH GREG'S CORRECT EMAIL


Debra A. Dandeneau
Chair, Global Restructuring & Insolvency
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
United States
Tel: +1 212 626 4875
Mobile: +1 973 477 6220
debra.dandeneau@bakermckenzie.com<mailto:debra.dandeneau@bakermckenzie.com>

<image003.png>

bakermckenzie.com<http://www.bakermckenzie.com/en<http://www.bakermckenzie.com/en>> |
Facebook<https://urldefense.com/v3/__https:/www.facebook.com/officialbakermckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrP
R4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcQM8vZt-
w$<https://urldefense.com/v3/__https:/www.facebook.com/officialbakermckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88
B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcQM8vZt-w$>> |
LinkedIn<https://urldefense.com/v3/__https:/www.linkedin.com/company/baker-&-
mckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcRuO
N0gQw$<https://urldefense.com/v3/__https:/www.linkedin.com/company/baker-&-
mckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcRuO
N0gQw$>> |
Twitter<https://urldefense.com/v3/__https:/twitter.com/bakermckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUm
e92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcQkfs4q0g$<https://urldefense.com/v3/__https:/twitter.com/bakermc
kenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcQkfs4q0
g$>>


This message may contain confidential and privileged information. If it has been sent to you in error, please reply to
advise the sender of the error and then immediately delete this message. Please visit
www.bakermckenzie.com/disclaimers<http://www.bakermckenzie.com/disclaimers><http://www.bakermckenzie.com/discl
aimers<http://www.bakermckenzie.com/disclaimers>> for other important information concerning this message.


From: Dandeneau, Debra A.
Sent: Monday, January 4, 2021 4:33 PM
To: 'jpomerantz@pszjlaw.com' <jpomerantz@pszjlaw.com<mailto:jpomerantz@pszjlaw.com>>; 'ikharasch@pszjlaw.com'
<ikharasch@pszjlaw.com<mailto:ikharasch@pszjlaw.com>>; 'gdemo@pszglaw.com'
<gdemo@pszglaw.com<mailto:gdemo@pszglaw.com>>
Cc: 'Frances A. Smith' <Frances.Smith@judithwross.com<mailto:Frances.Smith@judithwross.com>>; Eric Soderlund
<Eric.Soderlund@judithwross.com<mailto:Eric.Soderlund@judithwross.com>>; Hartmann, Michelle
<Michelle.Hartmann@bakermckenzie.com<mailto:Michelle.Hartmann@bakermckenzie.com>>
Subject: HIGHLAND: Question re Convenience Class Election under the Plan

Dear Pachulski friends,

As you know, Baker McKenzie and the Ross & Smith firm have been retained by Scott Ellington, Frank Waterhouse, Isaac
Leventon, and Thomas Surgent (the "Senior Employees") to represent them in connection with the Highland Capital
Management case.

App. 1548

As you also know, the Senior Employees also assert that they have a right to payment in full of all their compensation-related claims as administrative expenses. I acknowledge that the debtor disagrees. Therefore, reserving all of our respective rights with respect to the administrative expense issue, I want to clarify how the plan works with respect to the election by Class 8 to drop down to Class 7 assuming that the debtor prevails in treating such claims as General Unsecured Claims.

The definition of "Convenience Class Election" in the plan references "a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date." With respect to the Senior Employees, it is our understanding that what is meant by "a liquidated Claim as of the Confirmation Date" only refers to the PY 2018 Bonus Installment 3 2/28/2020, the 2017 Deferred Award 3 Year Cliff Vest 5/31/2020, and the PY 2018 Bonus Installment 4 8/31/2020 and that all other claims that might be characterized as General Unsecured Claims will remain in Class 8 notwithstanding the Class 7 election.

Is this consistent with the debtor's understanding? If not, could you please explain what the debtor's understanding is and what "a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date" means?

As the deadline for returning ballots is tomorrow, I would appreciate a quick response on this.

Thanks and best regards,

Deb

Debra A. Dandeneau
Chair, Global Restructuring & Insolvency
Baker & McKenzie LLP
452 Fifth Avenue
New York, NY 10018
United States
Tel: +1 212 626 4875
Mobile: +1 973 477 6220
debra.dandeneau@bakermckenzie.com<mailto:debra.dandeneau@bakermckenzie.com>

<image003.png>

bakermckenzie.com<http://www.bakermckenzie.com/en/<http://www.bakermckenzie.com/en/>> |
Facebook<https://urldefense.com/v3/__https:/www.facebook.com/officialbakermckenzie/__;!!Hj9Y_P0nvg!AeuXWQZthwr
PR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcSnkZ_cBA$<https://urldefense.com/v3/__https:/
www.facebook.com/officialbakermckenzie/__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXb
ycpJ08D0ubpNEqelUnLjLcSnkZ_cBA$>> |
LinkedIn<https://urldefense.com/v3/__https:/www.linkedin.com/company/baker-&-
mckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcRuO
N0gQw$<https://urldefense.com/v3/__https:/www.linkedin.com/company/baker-&-
mckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcRuO
N0gQw$>> |
Twitter<https://urldefense.com/v3/__https:/twitter.com/bakermckenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUm
e92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcQkfs4q0g$<https://urldefense.com/v3/__https:/twitter.com/bakermc
kenzie__;!!Hj9Y_P0nvg!AeuXWQZthwrPR4C88B9yDpUme92tHjUNNmu8UENohmXbycpJ08D0ubpNEqelUnLjLcQkfs4q0
g$>>

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit
www.bakermckenzie.com/disclaimers<http://www.bakermckenzie.com/disclaimers> for other important information concerning this message.

_____

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is

App. 1549

strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

_____

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

_____

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

_____

CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Pachulski Stang Ziehl & Jones LLP, any of its clients, or any other person or entity.

App. 1550