# Appendix Exhibit 80

D. Michael Lynn
State Bar I.D. No. 12736500
John Y. Bonds, III
State Bar I.D. No. 02589100
John T. Wilson, IV
State Bar I.D. No. 24033344
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

**ATTORNEYS FOR JAMES DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT,** | § | **Case No. 19-34054** |
| **L.P.,** | § | |
| | § | |
| **Debtor.** | § | **Chapter 11** |

## JAMES DONDERO'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY
## OF AN ORDER APPROVING SETTLEMENT WITH HARBOURVEST
### [Relates to Docket No. 1625]

James Dondero ("Respondent"), a creditor, indirect equity security holder, and party in interest in the above-captioned bankruptcy case, hereby files this Objection to *Debtor's Motion for Entry of an Order Approving Settlement with HarbourVest (Claim Nos. 143, 147, 149, 150, 153, 154)* [Docket No. 1625] (the "Motion") filed by Highland Capital Management, L.P. (the "Debtor"). Through the Motion, the Debtor seeks approval of its compromise with HarbourVest 2017 Global Fund L.P., HarbourVest 2017 Global AIF L.P., HarbourVest Dover Street IX Investment L.P., HV International VIII Secondary L.P., HarbourVest Skew Base AIF L.P., and HarbourVest Partners L.P. (collectively, "HarbourVest") pursuant to Rule 9019 of the Federal

1934054210106000000000029

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this objection, Respondent respectfully represents as follows:

## I.    INTRODUCTION

1.    Under Bankruptcy Rule 9019, the Bankruptcy Court is tasked with making an independent judgment on the merits of a proposed settlement to ensure that the proposed settlement is "fair, equitable, and in the best interest of the estate."[1] While Respondent recognizes the Debtor's efforts in arranging a settlement, there are at least three significant issues with the terms of the settlement that merit denial of the Motion: (i) the proposed settlement is not reasonable or in the best interest of the estate given the weakness of the HarbourVest Claim (as hereinafter defined); (ii) the proposed settlement is a blatant attempt to purchase votes in support of Debtor's plan by giving HarbourVest a significant claim to which it would not otherwise be entitled; and (iii) the proposed settlement seeks to improperly classify the HarbourVest Claim[2] in two separate classes in order to gerrymander an affirmative vote on its reorganization plan. Moreover, the proposed settlement does not satisfy the factors for approval fixed by case law. On information and belief, Debtor's CEO/CRO, Mr. Seery, has previously asserted on multiple occasions that the HarbourVest Claim had no value and that the Debtor could resolve such claim for no more than $5 million. While Respondent and Mr. Seery have had a number of disagreements in this case, Respondent agrees with Mr. Seery's initial conclusion that the HarbourVest Claim is substantially without merit. Respondent understands that any settlement will not necessarily provide the best possible outcome for the Debtor, but in this instance the proposed settlement far exceeds the bounds of reasonableness and, on its face, is an attempt by the Debtor to purchase votes in favor

---

[1] *See In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

[2] While HarbourVest has filed a number of claims, each filed claim is exactly the same except in the name of the claimant. *See* Claim Nos. 143, 147, 149, 150, 153, and 154.

of confirmation of its Plan. Given the Debtor's prior positions as to the merits of HarbourVest Claim it is necessary for the Court to closely scrutinize the settlement to determine why the Debtor now believes granting HarbourVest a net claim of nearly $60 million[3] resulting from HarbourVest's investment in a non-debtor entity (which was and is managed by a non-debtor) to be in the best interest of the estate. Upon close scrutiny, Respondent believes the Court will find that the proposed settlement is not reasonable or in the best interest of the estate and the Motion therefore should be denied.

## II.   BACKGROUND

2.      On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

3.      On October 29, 2019, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. Trustee in Delaware.

4.      On December 4, 2019, the Delaware Court entered an order transferring venue of the Debtor's Bankruptcy Case to this Court [Docket No. 186].

5.      On December 27, 2019, the Debtor filed that certain *Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course* [Docket No. 281] (the "Settlement Motion"). This Court approved the Settlement Motion on January 9, 2020 [Docket No. 339] (the "Settlement Order").

---

[3] The proposed settlement provides that HarbourVest shall receive an allowed general unsecured (Class 8) claim in the amount of $45 million and an allowed subordinated general unsecured (Class 9) claim in the amount of $35 million. As part of the settlement, HarbourVest will then transfer its entire interest in Highland CLO Funding, Ltd. ("HCLOF") to an entity to be designated by the Debtor. The Debtor states that the value of this interest is approximately $22 million as of December 1, 2020.

6.      In connection with the Settlement Order, an independent board of directors was appointed on January 9, 2020, for the Debtor's general partner, Strand Advisors, Inc. (the "Board"). The members of the Board are James P. Seery, Jr., John S. Dubel, and Russell F. Nelms.

7.      On July 16, 2020, this Court entered an order authorizing the Debtor to employ James P. Seery, Jr. as Chief Executive Officer and Chief Restructuring Officer of the Debtor. *See* Docket No. 854.

8.      On April 8, 2020, HarbourVest filed Proofs of Claim Numbers 143, 149, 149, 150, 153, and 154 (collectively, the "HarbourVest Claim")[4].

9.      On July 30, 2020, the Debtor filed *Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No Liability Claims; and (F) Insufficient-Documentation Claims* [Docket No. 906] (the "Debtor Objection"), which contained an objection to the HarbourVest Claim.

10.     On September 11, 2020, HarbourVest filed *HarbourVest Response to Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No Liability Claims; and (F) Insufficient-Documentation Claims* [Docket No. 1057] (the "HarbourVest Response").

11.     On December 23, 2020, the Debtor filed the Motion seeking approval of a proposed settlement of the HarbourVest Claim under Rule 9019. Docket No. 1625.

### III.     LEGAL STANDARD

12.     The merits of a proposed compromise should be judged under the criteria set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). *TMT Trailer* requires that a compromise must be "fair and equitable." *TMT Trailer*, 390

---

[4] While HarbourVest has filed a number of claims, each filed claim is exactly the same except in the name of the claimant. *See* Claim Nos. 143, 147, 149, 150, 153, and 154.

U.S. at 424; *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984). The terms "fair and equitable,"

commonly referred to as the "absolute priority rule," mean that (i) senior interests are entitled to

full priority over junior interests; and (ii) the compromise is reasonable in relation to the likely

rewards of litigation. *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re*

*Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

13.     In determining whether a proposed compromise is fair and equitable, a Court should

consider the following factors:

(i)      the probabilities of ultimate success should the claim be litigated;

(ii)     the complexity, expense, and likely duration of litigating the claim;

(iii)    the difficulties of collecting a judgment rendered from such litigation; and,

(iv)     all other factors relevant to a full and fair assessment of the wisdom of the

compromise.

*TMT Trailer*, 390 U.S. at 424.

14.     In considering whether to approve a proposed compromise, the bankruptcy judge

"may not simply accept the trustee's word that the settlement is reasonable, nor may he merely

'rubber stamp' the trustee's proposal." *In re Am. Res. Corp.*, 841 F.2d 159, 162 (7th Cir. 1987).

"[T]he bankruptcy judge must apprise himself of all facts necessary to evaluate the settlement and

make an informed and independent judgment about the settlement." *See TMT Trailer*, 390 U.S. at

424, 434.

15.     While the trustee's business judgment is entitled to a certain deference, "business

judgment is not alone determinative of the issue of court approval." *See In re Endoscopy Ctr. of S.*

*Nev., LLC*, 451 B.R. 527, 536 (Bankr. D. Nev. 2011). Further, the business judgment rule does not

provide a debtor with "unfettered freedom" to do as it wishes. *See In re Pilgrim's Pride Corp.*, 403

B.R. 413, 426 (Bankr. N.D. Tex. 2009) ("[A]s a fiduciary holding its estate in trust and responsible

to the court, a debtor in possession must administer its case and conduct its business in a fashion amenable to the scrutiny to be expected from creditor and court oversight."). The Court must conduct an "intelligent, objective and educated evaluation"[5] of the proposed settlement "to ensure that the settlement is fair, equitable, and in the best interest of the estate and creditors." *See In re Mirant Corp.*, 348 B.R. 725, 739 (Bankr. N.D. Tex. 2006) (quoting *Conn. Gen. Life Ins. Co. v. Foster Mortgage Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995)).

## IV.    ARGUMENT AND AUTHORITIES

16.    As discussed in detail below, there are three significant issues with the terms of the settlement that merit denial of the Motion: (i) the proposed settlement is not reasonable or in the best interest of the estate given the weakness of the HarbourVest Claim; (ii) the proposed settlement is a blatant attempt to purchase votes in support of Debtor's plan by giving HarbourVest a substantial claim to which it is not entitled; and (iii) the proposed settlement seeks to improperly classify HarbourVest's one claim in two separate classes in order to gerrymander an affirmative vote on its reorganization plan. For these and certain additional reasons as discussed below, the Motion should be denied.

### A.  Through its Claim, HarbourVest Seeks to Revisit this Court's Orders in the Acis Case

17.    As an initial matter, through its proofs of claim, HarbourVest appears to be second guessing the Court's judgment in the Chapter 11 case of Acis Capital Management, LP and Acis Capital Management GP, LLC (collectively, "Acis") and seeking to revisit the Court's orders entered in that case years ago. HarbourVest appears to being arguing that the TRO and injunction

---

[5] *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) ("To assure a proper compromise the bankruptcy judge, must be apprised of all the necessary facts for an intelligent, objective and educated evaluation. He must compare the terms of the compromise with the likely rewards of litigation.").

entered in the Acis case that prevented redemptions or resets in the CLOs are now the root cause of the decrease in value of its investment in HCLOF.

18.    Specifically, the claim states that HarbourVest incurred "financial harm resulting from, among other things (i) court orders in the Acis bankruptcy that prevented certain CLOs in which HCLOF was invested from being refinanced or reset and court orders that otherwise regulated the activity of HCLOF."[6]

19.    Essentially, HarbourVest is saying that the orders entered in the Acis case did not actually protect the investors and their investments, but instead were a triggering cause for the alleged diminution in value of its investment in HCLOF. Nevertheless, even though the value of HCLOF dropped dramatically only after the Effective Date of Acis's Plan, years later and despite the lack of Debtor involvement in managing HarbourVest's investment, HarbourVest now seeks to impute liability to the Debtor through a flimsy narrative designed to recoup investment losses unrelated to the Debtor and for which the Debtor owed HarbourVest no duty.

20.    That HarbourVest now, years later, seeks to revisit this Court's Acis orders raises a number of issues, including those as to HarbourVest's involvement (or lack thereof) in the Acis case, whether the orders, Plan, or Confirmation Order in the Acis case may bar some of the relief requested by HarbourVest here, and questions related to the merits of the HarbourVest Claim and the legal grounds allegedly supporting it.

---

[6] See Proof of Claim 143, para. 3 ("Due to the Acis bankruptcy and certain conduct alleged to have been undertaken by the Debtor (to whom Acis subcontracted its functions) and Debtor's employees (who were officers, employees, and agents of Acis), the Claimant has suffered significant harm. Such harm includes, but is not limited to, financial harm resulting from, among other things (i) court orders in the Acis bankruptcy that prevented certain CLOs in which HCLOF was invested from being refinanced or reset and court orders that otherwise regulated the activity of HCLOF; and (ii) significant fees and expenses related to the Acis bankruptcy that were charged to HCLOF.").

**B. The HarbourVest Claim Lacks Merit and the Proposed Settlement is Not Reasonable**

21.     Based on the HarbourVest Claim and its filed response to the Debtor's objection, Respondent believes that the HarbourVest claim is meritless and the proposed settlement is not reasonable, fair and equitable, or in the best interest of the estate.

22.     First, the proposed settlement is concerning particularly because HarbourVest's bare bones proof of claim contains very little in terms of allegations of specific conduct against the Debtor that would give rise to a $60 million claim against this estate. While HarbourVest's response to the Debtor's claim objection is lengthy, it contains very little in real substance supporting its right to such a claim against the estate. The response also omits a number of key facts that are relevant and potentially fatal to its claim for damages against the Debtor's estate. Among them is the fact that Acis (and thereafter Reorganized Acis), along with Mr. Joshua Terry, managed HarbourVest's investment for years after it was made.[7] Despite this fact, HarbourVest's alleged damages appear to be based largely on the difference between the value of its initial investment at confirmation of Acis's Plan and the current value of the investment—which amount was directly determined by the performance of the CLOs that Acis managed during this time.[8] Neither the claim nor the response directly address the implications of Acis's management of the CLOs during the period following HarbourVest's investment. Nor does HarbourVest address or discuss performance of the CLOs, the market forces that may have caused HarbourVest's investment to lose value, or other factors influencing the current value of its investment. The

---

[7] *See, e.g.*, HarbourVest Proof of Claim 143, p. 5 ("The Claimant is a limited partner in one of the Debtor's managed vehicles, Highland CLO Funding, Ltd. ("HCLOF"). Acis Capital Management GP, L.L.C. and Acis Capital Management L.P. (together, "Acis"), the portfolio manager for HCLOF, filed for chapter 11 in the United States Bankruptcy Court for the Northern District of Texas (the "Court") on January 30, 2018.").

[8] *See* HarbourVest Response, Docket No. 1057, para. 40 ("HarbourVest has been injured from the Investment: not only has the Investment failed to accrue value, its value plummeted. The Investment's current value is far less than HarbourVest's initial contribution.").

---

speculative nature of the damages and the lack of specificity of the HarbourVest Claim and the role of Acis in the loss of value to HarbourVest all call into question the reliability of the allegations and the legal basis for the claim amount awarded in the settlement.

23.     Also absent from Harbourvest's papers is any discussion of any contract or agreement between (i) HarbourVest and the Debtor; and (ii) any agreement that was executed in conjunction with HarbourVest's initial investment. While the proof of claim references a number of agreements, there is no explanation in the claim or in HarbourVest's response to the Debtor's claim objection of how these agreements give rise to liability against the *Debtor*. For example, neither the claim nor the HarbourVest Response (which includes more than 600 pages of attachments) attach *any* written agreement between HarbourVest and **any other party**. While HarbourVest has alleged a number of claims sounding in tort, many of those claims cannot exist absent a contract or other express relationship between the parties. Moreover, the terms of the relevant contracts themselves likely contain a number of provisions that may call into question Debtor's liability or would be otherwise relevant to merits of the HarbourVest Claim. For example, HarbourVest in its papers appears to assert or imply that the Debtor made a number of false or fraudulent representations to solicit HarbourVest's investment, but then fails to discuss or even identify the applicable agreements it alleges it was induced into signing in connection with its investment (this despite the substantial value of the investment when the Acis plan was confirmed).

24.     Given these issues, among many others, the HarbourVest Claim is unsustainable both from a liability and damages standpoint and there are many very high hurdles HarbourVest would have to clear in seeking to prove liability against the Debtor and in proving its damages. For a long period of time, its investment was managed by Acis and the investment's performance was directly tied to Acis's inadequate performance as portfolio manager. Further, the value of

HarbourVest's investment is also directly tied to various market forces that may have impacted its value. The HarbourVest Claim is largely lacking in relevant facts and omits much salient information, such as who it contracted with in connection with its investment, the terms of such agreements, who controlled its investment during the entire period from November 2017 to the present, and the performance of its investment during the last two years. Given these issues, HarbourVest will be unable to demonstrate a causal connection between any conduct of the Debtor and the alleged damages it suffered from a reduction in value of its investment.

25.     Because of the speculative nature of the HarbourVest Claim, and the fact that very little pleading or litigation has occurred, the proposed settlement in granting such a large claim is unreasonable, not fair and equitable, and not in the best interest of the estate. The lack of pending litigation, narrowing of threshold questions, and lack of detail in HarbourVest Claim make it impossible to determine whether the huge claim awarded under the proposed settlement is justified under the facts. Accordingly, the Motion should be denied.

**C.  The Proposed Settlement is an Improper Attempt by the Debtor to Purchase Votes in Support of its Plan and the Separate Classification of the HarbourVest Claim Constitutes Gerrymandering in Violation of 11 U.S.C. § 1122**

26.     The proposed settlement is a flagrant attempt by the Debtor to purchase votes in support of its Plan by giving HarbourVest a significant claim to which it has not shown itself entitled. Moreover, the separate classification of the HarbourVest Claim into two separate classes constitutes impermissible gerrymandering in violation of section 1122 of the Bankruptcy Code. The proposed settlement essentially gives HarbourVest a claim it is not entitled to in exchange for votes in two separate classes. This is not a proper basis for a settlement and the Court should deny the Motion.

27.     Section 1122 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

28.     "Chapter 11 requires classification of claims against a debtor for two reasons. Each class of creditors will be treated in the debtor's plan of reorganization based upon the similarity of its members' priority status and other legal rights against the debtor's assets. Proper classification is essential to ensure that creditors with claims of similar priority against the debtor's assets are treated similarly." *In re Greystone III Joint Venture*, 995 F.2d 1274, 1277 (5th Cir. 1991).

29.     "Section 1122 consequently must contemplate some limits on classification of claims of similar priority. A fair reading of both subsections suggests that ordinarily substantially similar claims, those which share common priority and rights against the debtor's estate, should be placed in the same class." *Id.* at 1278.

30.     The Fifth Circuit has stated that there is "one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Id.* at 1279. The Court observed:

> There must be some limit on a debtor's power to classify creditors in such a manner. . . . Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class.

*In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991) (quoting *In re U.S. Truck Co.*, 800 F.2d 581, 586 (6th Cir. 1986)).

31.     Here, the HarbourVest settlement and the classification of the HarbourVest Claim under the Plan blatantly violate the Fifth Circuit's "one rule" concerning the classification of claims under section 1122. To the extent that HarbourVest even has a legitimate claim, not only should its claim be classified together with other unsecured creditors, its claim should be classified solely in one class. To allow the Debtor to do otherwise as proposed is improper gerrymandering in order to obtain a consenting class in express violation of section 1122.

### D.  There Are Other Reasons for the Court to Closely Scrutinize the Proposed Settlement that May Warrant Denial of the Motion

32.     There are a number of other reasons for the Court to closely scrutinize the proposed settlement that may warrant denial of the Motion.

33.     First, the granting to HarbourVest of a claim in the total amount of $80 million potentially allows HarbourVest to achieve a significant windfall at the expense of other creditors and equity holders. The Debtor has asserted numerous times that the estate is solvent and, for this reason, the purported subordinated claim of $35 million (if allowed and approved) may be worth just as much as its general unsecured claim. This is a huge figure in this case, outshined only by the Redeemer Committee, which has an actual arbitration award obtained after lengthy litigation. By contrast, the HarbourVest Claim contains only a few paragraphs of generalized allegations that essentially argue that the Debtor's alleged actions related to the Acis bankruptcy, and this Court's orders in the Acis case, are a "but for" cause of the loss of its investment. While the HarbourVest Response is lengthy, it lacks necessary details for the Court to determine whether HarbourVest *may* be entitled to the relief requested by the Motion. The other significant creditors in this case— *inter alia*, Redeemer, UBS and Acis—all had pending claims that were litigated. Nor is HarbourVest a trade creditor, vendor, or other contract counter-party of the Debtor. The HarbourVest Claim is thus uniquely situated in this case and, given the size and the nature of its

claims, should invite close scrutiny. Under these facts, the potential allowance of an $80 million claim (less the value of its share in HCLOF, which may suffer by continued management by Acis) against the estate for an investment which was not held or managed by the Debtor would be a huge undue windfall.

34.     Second, the Motion states that HarbourVest will vote its proposed allowed Class 8 (proposed at $45 million) and Class 9 (proposed at $35 million) claims in support of confirmation. There are at least two potential issues with this proposal. First, the deadline for parties to submit ballots was January 5, 2021, and as of the close of business on January 5, the HarbourVest Claim has not been allowed for voting purposes.[9] Second, the Motion and proposed settlement agreement state that the HarbourVest Claim will be allowed for voting purposes only as a general unsecured claim in the amount of $45 million. It is unclear how HarbourVest can, or would be authorized to, vote its purported Class 8 and 9 Claims in support of the Plan after the voting deadline and when the settlement provides only for a voting claim in Class 8.

35.     Third, while the Motion addresses the factor of probability of success in the litigation, it does not discuss in detail the cost of doing so in relation to the amount to be paid to HarbourVest under the settlement or the likelihood that the Debtor will succeed in the litigation. In addition, unlike the claims filed by Acis and UBS, the HarbourVest Claim does not arise from pending litigation. At this point, relatively little litigation has occurred and the parties have not addressed threshold issues that might dramatically narrow the scope of the HarbourVest Claim. Rule 9019 requires an analysis as to whether the probability of success in litigation is outweighed by the consideration achieved under the settlement. *See In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (The Court must "compare the terms of the compromise with the likely rewards

---

[9] The hearing on the 3018 and 9019 motions are set concurrently with confirmation.

of litigation."). Given the excessive amount to be paid under the settlement and the weakness of the HarbourVest Claim, this factor weighs in favor of denial of the Motion.

36.     Fourth, it is unclear from the settlement papers whether the transfer by HarbourVest of its interest in HCLOF to the Debtor or an entity the Debtor designates will cause the value of the investment to be received by the Debtor's estate. Further, the interest of HCLOF being conveyed under the proposed settlement may be subject to the Acis plan injunction, which could potentially prevent the Debtor's estate from realizing the value of this interest. In the event the Court is inclined to approve the settlement, the order should make clear that the available value of the investment should be realized by the Debtor's estate.

## <u>CONCLUSION</u>

For the reasons set forth above, Respondent respectfully requests that the Court enter an order denying the Motion and providing Respondent such other and further relief to which he may be justly entitled.

**[Remainder of Page Intentionally Left Blank]**

Dated: January 6, 2021   Respectfully submitted,

       /s/ D. Michael Lynn
       D. Michael Lynn
       State Bar I.D. No. 12736500
       John Y. Bonds, III
       State Bar I.D. No. 02589100
       John T. Wilson, IV
       State Bar I.D. No. 24033344
       Bryan C. Assink
       State Bar I.D. No. 24089009
       BONDS ELLIS EPPICH SCHAFER JONES LLP
       420 Throckmorton Street, Suite 1000
       Fort Worth, Texas 76102
       (817) 405-6900 telephone
       (817) 405-6902 facsimile
       Email: michael.lynn@bondsellis.com
       Email: john@bondsellis.com
       Email: john.wilson@bondsellis.com
       Email: bryan.assink@bondsellis.com

       **ATTORNEYS FOR JAMES DONDERO**

### CERTIFICATE OF SERVICE

   I, the undersigned, hereby certify that, on January 6, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on counsel for the Debtor and on all other parties requesting or consenting to such service in this case.

       /s/ Bryan C. Assink
       Bryan C. Assink