# Appendix Exhibit 101

Case 21-03010-sgj Doc 26 Filed 02/25/21 Entered 02/25/21 10:53:27 Page 1 of 239
Case 3:21-cv-00881-X Document 174-101 Filed 12/16/23 Page 2 of 9 PageID 19401
Docket #0026 Date Filed: 2/25/2021

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE NORTHERN DISTRICT OF TEXAS
                                DALLAS DIVISION

                                        )   Case No. 19-34054-sgj-11
 In Re:                                 )   Chapter 11
                                        )
 HIGHLAND CAPITAL                       )   Dallas, Texas
 MANAGEMENT, L.P.,                      )   Tuesday, February 23, 2021
                                        )   9:00 a.m. Docket
         Debtor.                        )
 _____    )
                                        )
 HIGHLAND CAPITAL                       )   Adversary Proceeding 20-3190-sgj
 MANAGEMENT, L.P.,                      )
                                        )
         Plaintiff,                     )   PLAINTIFF'S MOTION FOR ORDER
                                        )   REQUIRING JAMES DONDERO TO
 v.                                     )   SHOW CAUSE WHY HE SHOULD NOT
                                        )   BE HELD IN CIVIL CONTEMPT FOR
 JAMES D. DONDERO,                      )   VIOLATING THE TRO [48]
                                        )
         Defendant.                     )
 _____    )
                                        )
 HIGHLAND CAPITAL                       )   Adversary Proceeding 21-3010-sgj
 MANAGEMENT, L.P.,                      )
                                        )
         Plaintiff,                     )   DEBTOR'S EMERGENCY MOTION FOR
                                        )   MANDATORY INJUNCTION REQUIRING
 v.                                     )   THE ADVISORS TO ADOPT AND
                                        )   IMPLEMENT A PLAN FOR THE
 HIGHLAND CAPITAL MANAGEMENT            )   TRANSITION OF SERVICES BY
 FUND ADVISORS, L.P.,                   )   FEBRUARY 28, 2021 [2]
 et al.,                                )
                                        )
         Defendants.                    )
 _____    )

                      TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                    UNITED STATES BANKRUPTCY JUDGE.

 WEBEX/TELEPHONIC APPEARANCES:

 For the Debtor/Plaintiff:     Jeffrey N. Pomerantz
                               PACHULSKI STANG ZIEHL & JONES, LLP
                               10100 Santa Monica Blvd.,
                                 13th Floor
                               Los Angeles, CA  90067-4003
                               (310) 277-6910
```



Case 21-03010-sgj Doc 26 Filed 02/25/21    Entered 02/25/21 10:53:27    Page 111 of 239
Case 3:21-cv-00881-X   Document 174-101   Filed 12/16/23   Page 3 of 9   PageID 19402

Norris - Direct                                          111

1  service was fulsome, we didn't think we were getting the
2  service that was under the agreements, and the service had
3  dropped off.
4       And in particular, the -- there was -- there were
5  conflicts involved between the Debtor and between the service
6  providers, particularly legal and compliance services, given
7  all that was going on.  And there were a number of matters
8  they couldn't participate on.  Historically used their legal
9  and compliance services significantly.
10      And that, in addition to discovering that there were a
11 number of employees we were reimbursing for in payroll
12 reimbursement agreements that were no longer employed by the
13 Debtor, yet we were paying for the full services.
14      So, with that, we had discussions internally about if and
15 when or how we could terminate them, and --
16 Q   Let me stop you.
17 A   -- termination --
18 Q   Let me stop you.  Ultimately, I take it, the Advisors
19 never tried to terminate these shared services agreements,
20 correct?
21 A   That's correct.
22 Q   Why?
23 A   There was an order specifically that Jim or anybody
24 related to Jim could not terminate an agreement with the
25 Debtor.  And he specifically pointed that out to us when we

Case 21-03010-sgj Doc 26 Filed 02/25/21    Entered 02/25/21 10:53:27    Page 112 of 239
Case 3:21-cv-00881-X   Document 174-101   Filed 12/16/23   Page 4 of 9   PageID 19403

Norris - Direct                        112

1  discussed this, and so we knew we couldn't take action.  There
2  was also -- counsel discussed that the stay with the Court --
3  Q   Let's not -- let's not talk about counsel.  Let's not talk
4  about counsel, --
5  A   Sorry.
6  Q   -- Mr. Norris.  Okay.  But the point is, at least as of
7  last October, would you agree, that the notion that these
8  agreements would be terminated by one or the other parties was
9  known to you?
10 A   Yeah.  So, the -- we expected that at some point there
11 would need to be a termination.  I -- that was discussed.  And
12 there was a plan, and I'm sure we'll talk about it, but a plan
13 to transition the employees and the services to a new company
14 and to new service providers.  And I think both sides had been
15 working for quite a while to ensure there was a smooth
16 transition, and we expected that to happen.  But there would
17 need to be a termination of that agreement -- either a
18 transfer of that agreement or a termination to a new company
19 that would be providing new services, or transferred those
20 services directly to us.
21 Q   So I'd like you to pick what word you'd like to use, but
22 what I've called a backup plan in my objection or what Jim
23 called a divorce plan in his testimony, how -- what shall we
24 call this backup plan?
25 A   All-contingency plannings.  Or we'll call it backup plan.

Case 21-03010-sgj Doc 26 Filed 02/25/21    Entered 02/25/21 10:53:27    Page 230 of 239
Case 3:21-cv-00881-X   Document 174-101   Filed 12/16/23   Page 5 of 9   PageID 19404

230

1  but the Court would expect there to be a cost if it extends
2  past February 28th.  And again, the Court would consider that
3  in a further hearing, how much cost should be imposed on the
4  Advisors.  But the advisors have represented to me through Mr.
5  Norris it's easy, it can be accomplished easily, so therefore
6  I would think it could happen between now and the 28th, and if
7  it does, no cost imposed on anyone.
8       I will further find that the Advisors have represented and
9  the Court therefore finds that there is an operating plan in
10 place for the Advisors to continue to operate uninterrupted
11 beyond today.  And again, the only thing I would envision that
12 needs to happen between today and February 28th is the access
13 to data.
14      So, having made these findings, the Court believes that
15 the request for a mandatory injunction is moot and is
16 therefore denied.
17      Are there any questions?  Mr. Morris, I want you to be the
18 scrivener, and, of course, run it by Mr. Rukavina.  But are
19 there any questions or concerns about what I've just
20 articulated?
21           MR. MORRIS:  I just have one, Your Honor.
22           THE COURT:  Uh-huh.
23           MR. MORRIS:  You made reference to rejection of the
24 contract.  From our perspective, it's not rejection.  We don't
25 want to open this up to a rejection claim of any kind.  It

Case 21-03010-sgj Doc 26 Filed 02/25/21 Entered 02/25/21 10:53:27 Page 232 of 239
Case 3:21-cv-00881-X Document 174-101 Filed 12/16/23 Page 6 of 9 PageID 19405

232

1 to really say anything lest I get myself in trouble.  But I
2 thank you for your time today.
3          THE COURT:  All right.  Well, they are what they are,
4 and I hope we're not in an argument about that down the road.
5 But it seems like my hopes are always dashed when I want
6 things to be worked out.
7     I don't want you to think my calm demeanor means I am a
8 happy camper.  I am not.  I am beyond annoyed.  I mean, I
9 can't even begin to guesstimate how many wasted hours were
10 spent on the drafting Option A, Option B.  Wait.  Let me pull
11 up the exact words.  Mr. Norris confirming, We withdrew Option
12 B after the Debtor accepted it.
13     I mentioned fee-shifting once before in a different
14 context, and, of course, we haven't even gotten to the motion
15 for a show cause order declaring Mr. Dondero in contempt.  I
16 don't know if the lawyers fully appreciate how this looks.
17 Mr. Rukavina, you said that I have formed opinions that you
18 don't think are fair and made comments about vexatious
19 litigation and whatnot.  But while I continue, I promise you,
20 to have an open mind, it is days like this that make me come
21 out with statements that Mr. Dondero, repeating his own words,
22 apparently, he's going to burn the house down if he doesn't
23 get his baby back.
24     I mean, it seems so obviously transparent that he's just
25 driving the legal fees up.  It's as though he doesn't want the

Case 21-03010-sgj Doc 26 Filed 02/25/21    Entered 02/25/21 10:53:27    Page 233 of 239
Case 3:21-cv-00881-X   Document 174-101   Filed 12/16/23   Page 7 of 9   PageID 19406

233

1  creditors to get anything, is the way this looks.  If he wants
2  me to have a different impression, then he needs to start
3  behaving differently.  I mean, I can't even imagine how many
4  hundreds of thousands of dollars of legal fees were probably
5  spent the past two weeks on Option A, Option B, and all the
6  different sub-agreements and whatnot.  And as recently as
7  Friday afternoon, the K&L Gates lawyer saying we have a deal,
8  and then, oh, wait, maybe not, maybe we do, maybe we don't.
9  And then Mr. Dondero acting like he had no clue what the K&L
10 Gates lawyers were saying as far as we have a deal.  And Mr.
11 Norris distancing himself from having seen any of that, and I
12 didn't have power.  You know, I'm sure he had a cell phone,
13 like the rest of us, that gets emails.  I'm making a
14 supposition.  I shouldn't make that.  But it just feels like
15 sickening games.
16      And again, if this keeps on, if this keeps on, one day,
17 one day, there may be an enormous attorney fee-shifting order.
18 And, of course, I would have to find bad faith, and I wouldn't
19 be surprised at all if I get there.
20      So I don't know if Mr. Dondero is listening.  I suspect,
21 if he is, he doesn't care much.  But I am --
22           MR. DONDERO:  I'm on the line, Judge.
23           THE COURT:  Okay.
24           MR. DONDERO:  I'm on the line.
25           THE COURT:  I'm glad you're on the line.  I cannot

Case 21-03010-sgj Doc 26 Filed 02/25/21 Entered 02/25/21 10:53:27 Page 234 of 239
Case 3:21-cv-00881-X Document 174-101 Filed 12/16/23 Page 8 of 9 PageID 19407

234

```
 1   overstate how very annoyed I am by hearing all these hours of
 2   testimony and to feel like none of it was necessary.  None of
 3   it was necessary.  Okay?  There could have been a consensual
 4   deal --
 5           MR. DONDERO:  Judge, you have to pay attention --
 6   Judge, you have to pay attention to what's going on, okay?
 7           THE COURT:  I am --
 8           MR. DONDERO:  When I was president of Highland, --
 9           THE COURT:  -- razor-sharp focused on what is going
10   on.  Okay?  I read every piece of paper.  I listen to every
11   sentence of testimony.  And what is going on --
12           MR. DONDERO:  Okay.  How about this, Your Honor?
13           THE COURT:  -- is an enormous waste of parties and
14   lawyer time and resources.  People need to get their eye on
15   the ball.  Well, certain people do have their eye on the ball,
16   but certain people do not.  Okay?  So we're done.  You've got
17   your divorce now.  Okay?  And if the operating plan is all
18   shored up, as Mr. Norris testified, it sounds like you're in
19   good shape.  All right?
20      Mr. Morris, I'll look for the order from you.
21           MR. MORRIS:  Thank you, Your Honor.
22           THE CLERK:  All rise.
23      (Pause.)
24           THE COURT:  Oh, Michael?
25      (Court confers with Clerk.)
```

Case 21-03010-sgj Doc 26 Filed 02/25/21    Entered 02/25/21 10:53:27    Page 238 of 239
Case 3:21-cv-00881-X   Document 174-101   Filed 12/16/23   Page 9 of 9   PageID 19408

238

```
1              THE CLERK:  All rise.

2         (Proceedings concluded at 4:23 p.m.)

3                          --oOo--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20                        CERTIFICATE

21      I certify that the foregoing is a correct transcript from
     the electronic sound recording of the proceedings in the
22   above-entitled matter.

23    /s/ Kathy Rehling                              02/24/2021

24  _____      _____
     Kathy Rehling, CETD-444                              Date
25   Certified Electronic Court Transcriber
```