# Appendix Exhibit 111

Case 19-34054-sgj11 Doc 2621 Filed 07/29/21 Entered 07/29/21 13:24:21 Page 1 of 6
Case 3:21-cv-00881-X Document 174-111 Filed 12/16/23 Page 2 of 7 PageID 19590
Docket #2621 Date Filed: 07/29/2021

Davor Rukavina, Esq.
Thomas D. Berghman, Esq.
Julian P. Vasek, Esq.
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Ste. 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

*Counsel for NexPoint Advisors, L.P.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | Case No. 19-34054-sgj11 |
| Debtor. | |

**OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I)
AUTHORIZING THE SALE OF CERTAIN PROPERTY
AND (II) GRANTING RELATED RELIEF**

NexPoint Advisors, L.P. ("NPA") files this objection to the *Motion of the Debtor for Entry of an Order (I) Authorizing the Sale of Certain Property and (II) Granting Related Relief* (the "Motion") [Dkt. # 2535] filed by Highland Capital Management, L.P. ("Debtor") and would show the Court as follows:

1. NPA objects to the Motion because the Debtor intentionally created a sale process specifically designed to exclude NPA without articulating a sound business justification for doing so. In addition, the Debtor has exhibited bad faith and abused its discretion by disallowing competitive bidding for the Property (defined below), thereby reducing recoveries for the estate and harming creditors.

2. The Motion seeks authority to sell the real property bearing the common address of 2817 Maple Ave., Dallas, Texas 75201 (the "Property") to Stonelake Capital Holdings, LP

VP/#52039882.2



("Stonelake") in accordance with the Purchase and Sale Agreement attached to the Motion as Exhibit "C" (the "Stonelake APA"). The purchase price under the Stonelake APA was $9.75 million, subject to certain prorations.

3. On July 26, 2021, NPA submitted an increased offer of $10.1 million for the Property, in accordance with the Purchase and Sale Agreement attached hereto as Exhibit "A" (the "NPA PSA"). The NPA PSA is substantially identical to the Stonelake PSA[1]. As such, the offers submitted by NPA and Stonelake are "apples to apples," other than the fact that NPA's offer provides for an additional $350,000 recovery for the estate and its creditors. The Debtor summarily rejected the NPA PSA on July 27, 2021 without considering its benefits to the estate.

4. The Debtor proclaims in the Motion that it simply "will not entertain any offers" from NPA, a decision it has applied to the sale process without considering the benefits of the NPA PSA itself. While the Debtor asserts that disqualifying NPA from the sale process is within its business judgment, the Debtor's own arguments in the Motion blatantly shows an unjustified prejudice toward NPA supported by conclusory statements and incomplete facts.

5. As one of its primary reasons to disqualify NPA from the sale process, the Debtor argues that "allowing [NPA] into the sale process would chill bidding and depress the value of the Property …". Motion, ¶ 32. The facts of the case prove otherwise. According to the Motion, the two early offers received for the Property were $5.8 million from Stonelake and $7.5 million from another bidder. At some point in the sale process, Stonelake increased its existing offer to $9.75 million[2]. Motion, ¶¶ 17-20. Subsequently, NPA submitted a substantially higher bid of $9.82 million. *Id*. In light of the Motion, NPA increased its offer to $10.1 million. Accordingly, rather

---

[1] A true and correct copy of the redline comparison of the NPRE PSA to the Stonelake PSA is attached hereto as Exhibit B.
[2] The exact dates of Stonelake's offers are conspicuously absent from the Motion.

than "chill bidding," NPA's participation in the sale process has resulted in incremental estate recoveries.

6. The Debtor's abuse of discretion during the sale process is further evidenced by the "bid and offer" narrative articulated by the Motion. *See* Motion, ¶ 21 (suggesting that accepting NPA's bid would violate the Debtor's agreement with Stonelake). To be sure, the Debtor admits NPA's initial $9.82 million offer was received on May 18, 2021, but the Debtor admits that it did not enter into a binding agreement with Stonelake until June 22, 2021 (which offer was then later amended on July 8, 2021). The Debtor thus rejected NPA's initial offer before it had a binding offer from Stonelake. *See* Motion, ¶ 21. This timeline illustrates that the Debtor purposefully did not create a process for competitive bidding or establish a bid deadline for this sale, which belies any suggestion that the NPA offer is too late.

7. In addition, the original financial justifications provided by the Debtor have materially changed since the filing of the Motion, further calling into question the Debtor's decision to hold a private sale without competitive bidding. At the time the Motion was filed, the Debtor concluded that the NPA offer for the Property was only "slightly above Stonelake's offer" by $70,000. Motion, ¶ 20. Since that time, however, NPA has increased its offer by another $280,000, an offer the Debtor refuses to consider on its merits. An arbitrary denial of the NPA PSA without considering its actual terms does not satisfy the Debtor's obligations to the estate and creditors. Indeed, the terms of the NPA PSA and the Stonelake PSA are substantively identical, but a a side-by-side comparison of the economics plainly reveals that NPA's is materially superior:

|  | **Stonelake** | **NPA** |
|---|---|---|
| *Purchase Price:* | $9,975,000 | $10,100,000 |
| *Earnest Money:* | $500,000 | $1,000,000 |
| *Inspection Period:* | 15 days | 10 days |
| *Closing Conditions:* | Identical | Identical |

The Debtor should not be afforded deference to its business judgment when it fails to consider the material elements of competing bids, as it has done with this sale.

8. Moreover, the Debtor also attempts to characterize NPA as a litigation risk as an alternative reason to disqualify it from participating in the sale process. However, the existence of unrelated litigation in and of itself is not grounds for disqualification. Importantly, the Debtor has failed to articulate any specific litigation risk related to this sale transaction – nor can it:

- The terms of the agreements are the same, so there is no greater litigation or closing risk with NPA than with Stonelake.

- The Debtor mentions the risk of post-closing litigation, however, the only post-closing issues or adjustments that need to be finalized are simple prorations. The provisions of the NPA PSA and Stonelake PSA are, again, identical on this point, so the risk is identical.[3]

- There is no allegation that NPA lacks the financial wherewithal to close. To the contrary, NPA is proposing to double the Stonelake earnest money deposit from $500,000 to $1 million. NPA thus has twice as much invested in the deal, twice the risk and twice the incentive to make sure the sale closes.

NPA's unquestioned ability to close the transaction, coupled with its identical form of agreement to that proposed by Stonelake, disprove the Debtor's characterization of NPA as a litigation risk with this specific Property-related transaction.

9. The Debtor simply does not want to sell the Property to NPA, and has gone out of this way to convince the Court that its issues with Mr. Dondero (and, by inapt proxy, NPA) outweigh its obligations to maximize recoveries for the estate. However, the "paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate." *In re Dura Automotive Sys., Inc.*, 06-11202 KJC, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15,

---

[3] Any post-closing adjustment should be minimal because the leases are triple net.

2007) (citing *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3rd Cir. 2004); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997)).

10. The Debtor has taken an opposite approach, unabashedly seeking to exclude NPA as a way to further punish Mr. Dondero. The Debtor's actions, however, are directly contrary to the recent ruling by the Fifth Circuit in *Walker County Hosp.*, which noted that the best way to maximize estate recoveries is to promote competitive bidding. *Matter of Walker County Hosp. Corp.*, 3 F.4th 229, 2021 WL 2910595 at *3 (5th Cir. 2021) ("The purpose of § 363 is to promote the finality of bankruptcy sales, thereby maximizing the purchase price of estate assets…. And ultimately, maximizing bidding on and the purchase price for a debtor's assets benefits a debtor's creditors.") (internal citations and quotation marks omitted").

11. Such conduct should not be sanctioned by the Court. In light of the foregoing, the Debtor has abused its discretion and acted in bad faith by summarily disqualifying NPA from the sale process for the Property. As such, the Debtor is not entitled to deference with respect to its unjustified decision to hold a private sale and exclude qualified bidders at the expense of the estate.

12. NPA is ready, willing and able to close a sale of the Property—a property it already knows well. The current NPA PSA eliminates risk and maximizes creditor recoveries. The Debtor should not be allowed to foster a private sale and eliminate competitive bidding to the detriment of creditors simply because the Debtor has an issue with Mr. Dondero. As this Court previously noted, money provided by corporate insiders like NPA "is as green as the money" provided by non-insiders. *In re Equip. Equity Holdings, Inc.*, 491 B.R. 792, 840 (Bankr. N.D. Tex. 2013). There is no basis to hold otherwise here.

Based upon the foregoing, NPA requests that the Court deny the Motion and direct the Debtor to consider the NPA PSA as a qualified bid for the Property.

Dated: July 29, 2021

Respectfully submitted,

NEXPOINT ADVISORS, L.P.

By:   s/ Thomas Berghman
      Davor Rukavina, Esq.
      Thomas D. Berghman, Esq.
      Julian P. Vasek, Esq.
      MUNSCH HARDT KOPF & HARR, P.C.
      500 North Akard Street, Ste. 3800
      Dallas, Texas 75201-6659
      Telephone: (214) 855-7500
      Facsimile: (214) 855-7584

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 29th day of July, 2021, a true and correct copy of this document was served via the Court's ECF notification system on all parties entitled to notice thereby, including counsel for movant.

By: */s/ Thomas Berghman*
     Thomas D. Berghman, Esq.

-6-