# Appendix Exhibit 125

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS (DALLAS)

IN RE:                        .    Case No. 19-34054-11(SGJ)
                              .
HIGHLAND CAPITAL              .    Earle Cabell Federal Building
MANAGEMENT, L.P.,            .    1100 Commerce Street
                              .    Dallas, TX  75242-1496
                              .
          Debtor.            .    Monday, September 12, 2022
. . . . . . . . . . . . . .   .    9:40 a.m.


TRANSCRIPT OF HEARING ON MOTION TO WITHDRAW PROOF OF CLAIM #146
BY HCRE PARTNERS, LLC (3443) AND
REORGANIZED DEBTOR'S (A) OBJECTION TO MOTION TO QUASH AND FOR
PROTECTION [DOCKET NO. 3464] AND
(B) CROSS-MOTION TO ENFORCE SUBPOENAS TO ENFORCE SUBPOENAS AND
TO COMPEL A DEPOSITION (3484)

BEFORE HONORABLE STACEY G. JERNIGAN
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE




TELEPHONIC APPEARANCES:

For Highland Capital          Pachulski Stang Ziehl & Jones LLP
Management, L.P.:             BY:  JOHN MORRIS, ESQ.
                              780 3rd Avenue, 34th Floor
                              New York, New York 10017


For NexPoint Real             Hoge & Gameros, L.L.P.
Estate Partners LLC           BY:  CHARLES W. GAMEROS, JR., ESQ.
f/k/a HCRE Partners           6116 North Central Expressway
LLC:                          Suite 1400
                              Dallas, Texas 75206


Audio Operator:               Michael F. Edmond

Proceedings recorded by electronic sound recording, transcript
produced by a transcript service.

---

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail:  DBPATEL1180@GMAIL.COM**
**(847) 848-49**

2

**INDEX**

Page

MOTION TO WITHDRAW PROOF OF CLAIM #146 BY HCRE
PARTNERS, LLC (3443)

**Court's Ruling - Denied**                                    **55**

REORGANIZED DEBTOR'S (A) OBJECTION TO MOTION TO
QUASH AND FOR PROTECTION [DOCKET NO. 3464] AND
(B) CROSS-MOTION TO ENFORCE SUBPOENAS TO ENFORCE
SUBPOENAS AND TO COMPEL A DEPOSITION (3484)

**Court's Ruling - Granted**                                  **55**


**WITNESSES**

MOTION TO WITHDRAW PROOF OF CLAIM #146 BY HCRE PARTNERS, LLC
(3443)

**FOR THE DEBTOR:**

James Dondero
  Direct Examination by Mr. Gameros                          40/43


**FOR HCRE:**

 (None)

REORGANIZED DEBTOR'S (A) OBJECTION TO MOTION TO QUASH AND FOR
PROTECTION [DOCKET NO. 3464] AND
(B) CROSS-MOTION TO ENFORCE SUBPOENAS TO ENFORCE SUBPOENAS AND
TO COMPEL A DEPOSITION  (3484)


**FOR THE DEBTOR:**

 (None)

**FOR HCRE:**

 (None)

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 104-108nt Filed 36:13/0761 Page 4 of 62   PageID 19753

3

**INDEX**

**EXHIBITS**

MOTION TO WITHDRAW PROOF OF CLAIM #146 BY HCRE PARTNERS, LLC
(3443)

|  | ID | EVD |
|---|---|---|

**FOR THE DEBTOR:**

| 1 through 16 | Docket Number 3488 | 9 | 9 |
|---|---|---|---|
|  | With Declaration of John Morris |  |  |

**FOR HCRE:**

(None)


REORGANIZED DEBTOR'S (A) OBJECTION TO MOTION TO QUASH AND FOR
PROTECTION [DOCKET NO. 3464] AND (B) CROSS-MOTION TO ENFORCE
SUBPOENAS TO ENFORCE SUBPOENAS AND TO COMPEL A DEPOSITION
(3484)


**FOR THE DEBTOR:**

| 1 through 6 | Docket Numbers 3485 and 3486 | 7 | 8 |
|---|---|---|---|
|  | With Declaration of John Morris |  |  |

**FOR HCRE:**

(None)

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Main Document   Filed 01/09/23   Page 5 of 62   PageID 19754   Page 146 of 361

4

1        (Proceedings commenced at 9:40 a.m.)

2            THE COURT:  All right.  We have a setting this

3   morning in Highland Capital, Case Number 19-34054.  We have

4   both a motion to withdraw proof of claim of HCRE Partners, LLC,

5   as well as the reorganized debtor's objection to a motion to

6   quash and cross-motion to enforce subpoenas.

7            All right.  So let's start by getting lawyer

8   appearances, please.  For HCRE, who do we have appearing?

9            Let me get appearances first from the main parties.

10  For the debtor this morning, who is appearing?

11           MR. GAMEROS:  Good morning, Your Honor.  Bill Gameros

12  for NexPoint Real Estate Partners f/k/a HCRE.

13           THE COURT:  All right.  Thank you.

14           For Highland, who do we have appearing this morning?

15           MR. MORRIS:  Good morning, Your Honor.  John Morris,

16  Pachulski Stang Ziehl & Jones for Highland Capital Management,

17  L.P.

18           THE COURT:  Good morning.

19           All right.  I'm guessing these are our only

20  appearances.  These are the only parties involved who filed

21  pleadings.  If there is anyone who felt the need to appear, go

22  ahead.

23       (No audible response)

24           THE COURT:  All right.  Well, I don't know if you all

25  have talked about the sequence we are going to take things this

5

1   morning.  Obviously, the first filed motion is HCRE's motion to

2   withdraw proof of claim.  But we have a discovery dispute and I

3   think -- well, we've got Highland objecting to the motion to

4   withdraw the proof of claim, but I think the backup argument is

5   at the very least let us take discovery before you rule on the

6   motion to withdraw proof of claim.

7          So have you all talked about who's going to go first

8   on this one?

9          MR. GAMEROS:  Your Honor, we haven't spoken about it,

10  but it makes sense to me that if we withdraw the proof of

11  claim, it moots everything else.  And I think that's really

12  what we ought to do, take it all at one time.

13         THE COURT:  All right.  Mr. Morris, do you agree on

14  that sequence?

15         MR. MORRIS:  I'm happy to cede the podium and let Mr.

16  Gameros go first since he filed the first motion, but I do

17  think that Your Honor had your finger on the pulse that before

18  -- either the motion should be denied for the reasons set forth

19  in our papers or we should be permitted discovery.

20         THE COURT:  All right.

21         With that, Mr. Gameros, I'll hear your opening

22  statement and hear what your evidence is going to be.

23         MR. GAMEROS:  We didn't file any evidence today.  We

24  just simply want to withdraw the proof of claim.  I think that

25  we've satisfied the Manchester factors.

6

1          Quite frankly, there's only been the filing of the
2    proof of claim and a scheduling order entered.  Since I've been
3    involved in it, we've only had the scheduling order entered.
4    Anything else that's happened in this case was a motion to
5    disqualify that precipitated our appearance.  We filed the
6    motion to withdraw.  There's no summary judgments pending, no
7    dispositive motions pending.

8          Quite frankly, we've looked at it as the company
9    continued to operate.  The things we were worried about
10   happening didn't happen.  And as a result, we decided we don't
11   need the proof of claim, we don't want to continue it because I
12   think we satisfy <u>Manchester</u>.  If the Court has any concerns at
13   all, A, the debtor's reorganized so proceeding with our proof
14   of claim or withdrawing it doesn't affect it and, B, you can
15   conditionally withdraw with a forecredudous [*sic*] order
16   withdrawing the proof of claim.

17         But, quite frankly, I don't think we could amend it
18   and we passed the claims bar date.  So the Court should simply
19   allow NexPoint Real Estate Partners to discontinue pursuing a
20   proof of claim that they don't want to continue anymore.
21   Everything else falls after that.  That's it.

22         THE COURT:  All right.  Well, assuming the <u>Manchester</u>
23   factors apply here, you're not going to have any evidence on
24   any of these factors?

25         MR. GAMEROS:  I don't believe that we need to have

App. 2573

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 104-108nt FilePage 15 0361    Page 8 of 62    PageID 19757

7

1  evidence on those.  The only one that could possibly be at

2  issue is one that the debtor might be able to bring but they

3  haven't, and that's actual legal prejudice.

4        The withdrawal of the proof of claim here essentially

5  says they win.  And they've objected to our proof of claim, and

6  now we're withdrawing it.  So the proof of claim is resolved in

7  their favor except we're withdrawing it instead of going

8  through all of the exercise to get to a hearing where we don't

9  want to pursue the proof of claim anymore.

10        THE COURT:  All right.  But is it a withdrawal that

11  you seek with prejudice with any bells and whistles about

12  future preclusion of litigation?

13        MR. GAMEROS:  Your Honor, the proof of claim -- I

14  know the Court knows this, it's its own type of proceeding.

15  This isn't a adversary proceeding or a different kind of

16  lawsuit.  It's simply a proof of claim, and we know we're not

17  going to be able to amend it, we're not going to be able to re-

18  assert it because it's after the bar date.  That's why the

19  Court should allow the withdrawal and, to the extent the Court

20  wishes to condition it, condition it with prejudice.  That's

21  it.

22        THE COURT:  Mr. Morris, I'll hear from you.

23        MR. MORRIS:  Thank you, Your Honor.

24        Before I begin, I'd like to move into evidence

25  Exhibits 1 through 6 that appear at Docket 3485 and 3486.

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-10cument FilePage 18/23/23 Page 9 of 62    PageID 19758

8

1  They're mirror images of each other.  They're duplicates of

2  each other, Your Honor.

3          But because our motion -- our objection to the motion

4  for a protective order and the cross-motion to compel were

5  filed as one document, the Court had us file it basically twice

6  so that one is serving as the objection to the motion for the

7  protective order and the other is serving as the cross-motion

8  to compel.  And so you'll see at Dockets 3485 and 3486

9  duplicate declarations from me with Exhibits 1 through 6.

10          THE COURT:  All right.  Any objections?

11          MR. GAMEROS:  Your Honor?

12          THE COURT:  Any objection?

13          MR. MORRIS:  And then -- and then, Your Honor?

14          THE COURT:  I'm sorry, I did not hear what Mr.

15  Gameros said.

16          MR. GAMEROS:  Your Honor, we don't object.

17          THE COURT:  All right.

18          MR. GAMEROS:  We don't necessarily believe it's

19  relevant, but we don't object to its admission.

20          THE COURT:  All right.  They'll --

21          MR. MORRIS:  And then, Your Honor, we've got --

22          THE COURT:  Docket -- Exhibits 1 through 6 are

23  admitted.

24          Go ahead.

25      (Debtor's Exhibits 1 through 6 admitted into evidence)

 1              MR. MORRIS:  And then at Docket 3488 we have another

 2  declaration under my signature with Exhibits 1 through 16,

 3  which are offered in opposition to HCRE's motion to withdraw

 4  their proof of claim.

 5              THE COURT:  Any objection?

 6              MR. GAMEROS:  No, Your Honor.

 7              THE COURT:  Okay.  Those exhibits and that

 8  declaration are admitted, as well.

 9        (Debtor's Exhibits 1 through 16 admitted into evidence)

10              MR. MORRIS:  So, Your Honor, if I may, please, you

11  know, the lack of evidence and the dismissiveness with which

12  HCRE is approaching this proceeding is alarming.

13              We have litigated for two years.  We were forced to

14  move and litigate vigorously a motion to disqualify our prior

15  counsel even though we put into evidence a document that said

16  Wick Phillips represents Highland Capital Management.  We were

17  still forced to do that.  We were forced to engage in expert.

18  We were forced to have a hearing on this.

19              We have gone through discovery not once but twice.

20  We have fulfilled every single obligation that were were

21  required to fulfill under the scheduling orders.  We have

22  engaged in two rounds of written discovery.  We have offered up

23  every witness that has been noticed.  We have produced

24  thousands of pages of documents.

25              We took discovery from third parties, and this is

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125nt FilePage1502f 61 Page 11 of 62    PageID 19760

10

1  really important for a number of reasons, Your Honor.  We

2  served subpoenas on BH Equities.  BH Equities is not subject to

3  the jurisdiction in Dallas, so we served the subpoena.  We took

4  the deposition.

5          They can't be compelled to testify at a hearing.

6  HCRE chose not to ask any questions.  The accounting firm, they

7  chose not to ask any questions.  Discovery is over, okay.  I

8  hear Counsel talk about the proof of claim.  We need -- and

9  this is where the prejudice comes in.  We need an order on the

10  merits.  We need to know that HCRE is never going to challenge

11  again Highland's 46.06 percent interest in SE Multifamily.

12  That's what we need, because that's what we were about to get

13  and they know that.  And that's why they're folding their tent.

14          We informed them that we were moving for summary

15  judgment.  In fact, just seven days before they filed their

16  motion, we negotiated a stipulation in order to extend the

17  expert discovery deadline so that they could file an expert

18  report while preserving Highland's ability to move for summary

19  judgment.  HCRE knew this when it filed its motion.

20          Discovery is now closed.  There's only three things

21  left to do.  There's four things left to do: take the

22  deposition of Mr. Dondero, Mr. McGraner (phonetic) and HCRE and

23  have a hearing on the merits.

24          I want to say right now, Your Honor, Highland is

25  willing to forego its right to move for summary judgment.  We

11

1   don't need to take that step.  Let's just proceed.  This motion

2   should be denied.  They offer no evidence whatsoever.  Let's

3   just proceed with the three depositions because discovery is

4   otherwise closed and let's have a one-day trial live in your

5   courtroom, Your Honor.  We could have this done in six weeks.

6         The legal prejudice is enormous.  We've set it out in

7   our papers.  Our evidence supports it.  But I want to just

8   highlight a few things.  Again, I hear vagueness here.  I hear

9   you can dismiss the proof of claim with prejudice, but somehow

10  I get the feeling from their papers from the cases that they

11  cited to, from the quotations that say just because we get a

12  tactical advantage doesn't mean that the motion should be

13  denied, just because we may choose to file this in a different

14  forum.

15        And that's the question that I really hope the Court

16  will ask Mr. Gameros.  Is HCRE waiving its right to ever

17  challenge this again because if you can't get an unambiguous

18  answer to that question, the motion must be denied because

19  that's the prejudice.

20        But there's more prejudice, too.  They've taken our

21  deposition and based on what Mr. Gameros just told you, based

22  on what's in their papers, they perceive something that

23  happened in that deposition as being advantageous to them.  If

24  this Court were to consider dismissing this case with

25  prejudice, it should do so on the condition that that

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Main Document   Filed 01/09/23   Page 13 of 62   Page 13 of 62   PageID 19762

12

1  transcript cannot be used for any purpose at any time anywhere

2  because otherwise it's not fair, otherwise we've been

3  prejudiced by them being permitted to take our deposition but

4  foreclosing us from taking their deposition.  Either the

5  playing field needs to be level or that deposition transcript

6  should never see the light of day.

7          That's condition number two, not just the dismissal

8  with prejudice here, we need an ironclad commitment that HCRE

9  is irrevocably waiving its right to challenge Highland's

10  interest in SE Multifamily because that would be the result if

11  this went to trial.  And that transcript of Mr. Seery as

12  Highland's 30(b)(6) witness should never see the light of day

13  because they're playing games.  They want to use that for some

14  other purpose.  And if they want to do that, that's fine, but I

15  get to take their depositions.  The playing field has to be

16  level, Your Honor.

17          We have spent hundreds of thousands of dollars on

18  this case.  The excuse that they're giving, the reason that

19  they're giving for dismissing the case at this time makes no

20  sense whatsoever.  There's nothing in the proof of claim,

21  nothing in the pleadings.  There will never be any evidence.

22          There's no affidavit suggesting that Highland was

23  interfering with SE Multifamily, that Highland threatened to

24  interfere with SE Multifamily, that until this motion was filed

25  that HCRE had any concerns whatsoever that Highland would be

13

1  engaging in wrongful conduct.  There will never be any evidence

2  whatsoever that HCRE ever took any steps to protect itself from

3  this so-called interference that they're now so fearful of.

4         And I do want to -- I have to ask this question, Your

5  Honor.  If HCRE believed that they were at risk on Wednesday,

6  August 10th, so that they had to take Mr. Seery's deposition,

7  what happened after that that caused them 48 hours later to

8  file this motion with no notice whatsoever?

9         It's not right, Your Honor.  So let me get to the

10  substance.  This is not a motion under Rule 41.  Under Rule 41,

11  plaintiffs sometimes have the right, the unilateral right to

12  withdraw a pleading.  HCRE has no right to that today.  Rule

13  3006 is very clear.  When there is a proof of claim that is

14  contested, the proof of claim can only be withdrawn with court

15  approval after a hearing and subject to whatever conditions the

16  Court decides are appropriate.

17         And that's to protect the integrity of the process.

18  And that's what we're asking the Court to do, to protect the

19  integrity of the claims resolution process.

20         It is a fact-intensive inquiry.  In this district, as

21  HCRE has pointed out, there is precedent, the Manchester case,

22  that sets forth a long list of factors that a court could

23  consider in the face of such a motion.  As we explain in our

24  opposition, we believe that every single one of those factors

25  weighs in favor of denying the motion.

App. 2580

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Main Document    Page 15 of 62    Filed 10/14/22    Page 15 of 62    PageID 19764

14

1          I'm going to go through just a bit of it, Your Honor,

2    because I think it's very important that everybody see exactly

3    what's happening.  In contrast to the lack of evidence by HCRE,

4    we have all of the exhibits that have just been admitted into

5    evidence here.  The claims stated, the proof of claims, start

6    with the proof of claim, stated that some or all of Highland's

7    interest in SE Multifamily might be the property of HCRE.

8      It's a proof of claim that was signed by Jim Dondero.  It

9    was signed under the penalty of perjury.  There is no good-

10   faith basis for that proof of claim to have been filed, none

11   whatsoever.  If you take a look at their response to Highland's

12   initial objection which can be found at Exhibit 7 on the

13   initial docket, we'll put it up on the screen jut -- here's

14   Exhibit 7 from Docket Number 3488.

15          And this is HCRE's response.  And if we can go to

16   Paragraph 5.  This is the -- this is really their response

17   here.  And it says:

18          "After reviewing what documentation is available to

19          HCRE with the debtor, HCRE believes the

20          organizational documents relating to SC Multifamily

21          improperly allocates the ownership percentages of the

22          members thereto due to mutual mistake, lack of

23          consideration, and/or the failure of consideration.

24          As such, HCRE has a claim to reform, rescind, or

25          modify the agreement."

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 01/09/24   Page 16 of 62   PageID 19765
Main Document   Page 16 of 61

15

1           This is their proof of claim, that there was some

2    mistake that happened in the drafting of the SE Multifamily

3    documents.  There is no good-faith basis for this proof of

4    claim.  There is no good-faith basis for this response that's

5    up on the screen.  And let me show you why.

6           If Your Honor had an opportunity to review BH

7    Equities' deposition transcript, at least the portions that we

8    specifically cited to, BH Equities is a truth third party.

9    They're the only third party that is a member of SE

10   Multifamily.  I took their deposition.  They retained Dentons.

11   They produced documents.  They acted professionally.

12          And their witness testified up, down, and sideways

13   that from their perspective, it was a bilateral negotiation

14   with them on one side and the grand Highland on the other side

15   and that Highland drafted the ultimate agreement, the amended

16   and restated LLC agreement.

17          It's an issue that is not in dispute.  Highland

18   drafted the document.  People working on the Highland platform

19   in the spring of 2019 when Mr. Dondero was in control, solely

20   in control of Highland and HCRE.

21          So they say in that response and in the proof of

22   claim that the allocation, the allocation is the allocation of

23   the membership interest in SE Multifamily, they say, oh my

24   goodness, that allocation was wrong because Highland only put

25   in $49,000.  And Mr. Dondero signed the agreement.

1          Let's take a look just quickly at Exhibit 5, and

2     let's see how it's possible that Mr. Dondero could swear under

3     oath that he made a mistake.  If we can go to Schedule A.

4          Take a look at this, Your Honor.  This is Schedule A.

5     It's about a page or two after Mr. Dondero's signature.  It has

6     the percentage interest that he says was a mistake as if he

7     didn't know the capital contribution that Highland put in.  And

8     if we got to a trial, Your Honor, we would show that Highland

9     actually reached into its pocket for the $49,000.  HCRE, in

10    contrast, borrowed all the money, even though Highland was on

11    the hook for the obligations to Key Bank.

12         But, nevertheless, here it is.  It's in plain, plain,

13    plain terms.  The numbers are next to each other.  It's not

14    just the percentage interest.  It shows the capital

15    contribution.  I'd be really interested in asking Mr. Dondero

16    did he review this.  I suspect he'll say no because that's what

17    he usually says.  But doesn't that scream fraud?  How do you

18    say you made a mistake when the numbers are on that page?  I

19    don't understand it.

20         Yet, we've spent two years and hundreds of thousands

21    of dollars litigating this case.  But here's the thing, Your

22    Honor, it's not just in Schedule A.  If we could go to Section

23    1.7 earlier in the agreement.

24         And remember, this is a document that BH Equities

25    says was drafted by Highland.  Look at 7; 7 is company

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Filed 01/09/23    Page 18 of 62    PageID 19767
Main Document    Page 18 of 62

17

1    ownership.  That's the name of the section.  Again, HCMLP has

2    46.06 percent.  Is that a mistake?  How did this -- somebody

3    should explain how this mistake happened.

4          Let's go to Section 6.1.  Section 6.1 is critical,

5    and we'll see this in a moment.  This is what's known as the

6    waterfall.  It shows how the distributions of cash from SE

7    Multifamily are going to be made to its members.  And you'll

8    see in Section 6.1A that after certain things occur, cash is

9    going to be distributed 46.06 percent to Highland.  Another

10   mistake, I guess, without explanation.

11          Section 9.3.  Section 9 deals with liquidation and

12   termination, and 9.3 is effectively the waterfall that's

13   supposed to be in place upon a liquidation.  And at the bottom

14   of the waterfall in 9.3(e), not surprisingly, you see the exact

15   same allocation.

16          So the allocation that Mr. Dondero swore under oath

17   was the result of a mutual mistake was an allocation that

18   appears in four separate places in a document that was drafted

19   by people under his authority.  Think about that.  It's

20   extraordinary.  We spent two years litigating this case, and

21   now they just want to go home.

22          But wait, there's so much more, Your Honor.  I'm not

23   going to go through all of it, but I want to just show you two

24   other documents because these numbers are not in this document

25   by accident.  They're there on purpose.

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Main Document    Filed 11/02/23    Page 19 of 62    Page 19 of 62    PageID 19768

18

1              If we could go to Exhibit Number 11.

2              So if you've seen from our papers and at all, Your

3    Honor, Highland presented an initial draft of the amended and

4    restated agreement to BH Equities on March 14th.  It had to be

5    completed by March 15th in order t make it retroactive to the

6    prior August because that's for tax reasons.  And you'll see up

7    on the screen there's an email exchange from Mr. Broaddus at

8    Highland to a fellow named Dusty Thomas at BH Management.

9              And it's two emails.  The first one is sent on the

10   afternoon of March 15th.  And the important point is a little

11   bit down where he says: "The contributions schedule in the

12   attached needs to be updated with the actual contribution

13   numbers."

14             So this is Highland telling BH Equities that the

15   contribution schedule, which is Schedule A, needs to be updated

16   so that the actual contribution numbers are in it.  This is the

17   mistake.  This is the mistake, right.  And notice that Mr.

18   McGraner, I'm told is one of the Apex employees, he's got

19   notice of this.  He know exactly what's happening, right.

20             And Mr. Broaddus follows up.  He follows up the next

21   day and says the contribution schedule is attached.  Well,

22   let's take a look at what the contribution schedule is, if we

23   can go to the next page.  Look at that.

24             It's the same contribution schedule that appears in

25   the final agreement.  And this is just critical, Your Honor,

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 11/18/22   Page 20 of 62   PageID 19769
Main Document   Page 19 of 61

19

because this shows that Highland, people working at the
direction of Highland are preparing this document and it's a
stand-alone document.  So it's not as if somebody can say, gee,
you know, it got lost in the sauce, it was deep in the details,
deep in the weeds and I just missed it.

            The very purpose of the sending of this document was
to show the other counterparty, BH Equities, exactly what the
capital contribution and percentage interest were going to be,
not just the percentage interest but the capital contributions.

            Later on that day, if we can go the next document,
Exhibit 13.  BH Equities was very concerned about the
waterfall.  They wanted to make sure that they were going to
get back their capital before other distributions were made.
And you can see here this is an email from Mr. Thomas back to
Mr. Broaddus where he raises this issue, and I'll just kind of
cut to the chase.  Attached to Mr. Thomas' email was a proposal
that BH Equities had made the prior fall with respect to the
waterfall.

            There's no dispute that Mr. Broaddus on behalf of
Highland, the big Highland, rejected BH Equities' proposal.
And if we can go the prior page and see exactly what they did
in response.  Instead, you can see Mr. Chang, Freddie Chang,
another member of the Highland complex, with a very private
email to Mr. Broaddus, right, BH Equities isn't even copied on
it.  And he comes up, it's labeled 6.1, but this is what

1    becomes -- it's labeled 1.1, but this is what becomes 6.1 in

2    the actual agreement.  This is the waterfall.  This is Mr.

3    Chang and Mr. Broaddus exchanging an email with a new version

4    of the waterfall that they wanted.  And the new version that

5    they wanted shows in Section 1.1(a) here that Highland was

6    going to get 46.06 percent of the distributable cash as set

7    forth therein.

8           A mistake?  A mutual mistake when people working

9    under Mr. Dondero's direction drafted these documents in

10   specific -- as part of a negotiation?  This is about the only

11   thing that was the subject of a negotiation.

12          And, of course, there's more because if you take a

13   look at the deposition transcript that we cited from BH

14   Equities from BH Equities' perspective, Section 1.7, 6.1, and

15   9.3 and Schedule A all reflects the parties' intent.  And that

16   deposition is closed, right.  I mean they chose not to ask any

17   questions.  They didn't challenge that.  There is no good-faith

18   basis for this proof of claim to have ever been filed.  And

19   that, Your Honor, is the definition of vexatiousness, and that

20   is one of the <u>Manchester</u> factors.

21          Another one of the factors is the extent to which the

22   suit has progressed.  Other than the depositions that they

23   unilaterally shut down, the only thing left was either a

24   summary judgment motion or a trial.  Again, discovery is over.

25   Highland has fulfilled its obligations.  There is nothing left

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 164-125    Main Document    Filed 12/16/23    Page 22 of 62    Page 22 of 62    PageID 19771

21

 1  to do here except to take three depositions and have a trial on

 2  the merits.  So the suit has progressed far.

 3          Duplicate of expense of re-litigation, are we really

 4  going to do this again?  Are they really going to get the

 5  benefit of new discovery in a new lawsuit somewhere else that's

 6  not a proof of claim but that somehow tries to recraft it

 7  because we've seen stuff like this before from Mr. Dondero.

 8  He's going to say, oh, that was just a proof of claim, that's a

 9  different standard that somehow, you know, I can bring a

10  different claim in a different court at a different time.

11  We're going to do this again?  I hope not.

12          How about the adequacy of the explanation?  They

13  concluded that Highland wasn't interfering.  Where was the

14  evidence that Highland ever interfered?  Where was the evidence

15  that Highland ever threatened to interfere?  Where was the

16  evidence that HCRE ever expressed a concern that Highland would

17  interfere?  Where's their application to the Court for some

18  kind of protective order or some type of protection, some type

19  of injunction relief to prevent us from interfering?  There's

20  nothing.

21          HCRE filed this -- and I'll have to speculate here

22  because they're not -- I don't thing they're being candid with

23  the Court.  They filed it because they hoped to do this trial

24  in a different forum at a different time elsewhere.

25          They're shutting it down because they know that their

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125 Filed 12/16/23    Page 23 of 62    PageID 19772
Main Document    Page 22 of 61

22

witnesses are going to be asked questions that are going to

further buttress Highland's claims to breach of contract, going

to get into some serious tax questions where even BH Equities

wouldn't even rely on the K-1s that HCRE caused to be prepared.

Really tough questions.

I know they want to get out now, but they never

should have filed the proof of claim.  And forcing Highland to

go down this path to incur this expense, to take our deposition

and then try to shut the door, can't think of a better fact

scenario for the denial of a 3006 motion than we have here.

Look at just what happened in the seven days before

they filed their motion because it is extraordinary, and I

didn't even put everything in the papers because one of the

things I forgot to put in is Mr. Gameros sent to me seven days

before the motion the 30(b)(6) notice for Highland.  So that's

sent on August 5th.

On August 5th, we finish negotiating and sign a

stipulation that extends the expert discovery deadline to allow

them to call an expert which we think had no merit which is why

we reserve the right on the motion to strike because we don't

think -- as described to us at the time, but nevertheless, we

reserved our right to either make a motion to strike or to

proceed right to summary judgment.  It's all in the stipulation

that we negotiated, that we signed on behalf of the clients,

and that Your Honor's approved just two days before this is

23

1  filed.

2          I think Mr. Seery's deposition was the 10th.  At 4:00

3  on the 9th, HCRE produced over 4,000 pages of documents like

4  six weeks after the deadline, right.  And Counsel and I spent

5  the next 24 hours -- you know, I was pretty upset, I'll admit

6  it, but you've got -- you know, it's in the record, you know,

7  what my written responses were.  And I tried very hard to avoid

8  motion practice, and I tried very hard as I always do to try to

9  come to a reasonable resolution.  And we actually got to that

10  point just moments before Mr. Seery's deposition.  And then

11  they take Mr. Seery's deposition.

12          So think about it.  They serve a 30(b)(6) notice,

13  they take a deposition, they produce 4,000 pages of documents,

14  they negotiate and sign a stipulation to extend the discovery

15  deadline, the Court takes the time to review the stipulation,

16  orders it.  All of this happens within seven days of their

17  motion, two days after they take Mr. Seery's deposition and

18  just two days before I'm scheduled to take their client's

19  depositions.

20          Based on the complete lack of evidence on HCRE's part

21  and the evidence that I've just shown the Court, we believe the

22  Court should simply deny the -- deny all three motions, you

23  know what I mean?  Let's just cut to the chase, let's take

24  three substantive depositions, and let's set a trial date.

25  That, I believe, is the most appropriate result here.

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125nt FileFage125420f 61 Page 25 of 62    PageID 19774

24

1    If the Court is not inclined to rule on the motion to

2  withdraw, the Court should then deny the motion for a

3  protective order and grant our cross-motion to compel the

4  depositions on this motion.  I assure the Court that if the

5  Court decides to follow that path, my questioning will be

6  limited to the <u>Manchester</u> factors.  And I won't get into the

7  substance because that wouldn't be ripe.

8    The first question is whether or not they have a

9  right to -- whether the Court should grant their motion to

10  withdraw, and I will limit my questioning if we go down, you

11  know, option B to those questions, to the <u>Manchester</u> questions,

12  right.  There's no question that we have the right to

13  discovery.  They filed a motion.  We filed an objection.  We

14  now have a contested matter under the bankruptcy rules.  We're

15  entitled to discovery.

16    I want to address, I guess, on this topic some of the

17  issues that were raised in the motion for the protective order.

18  They say, oh, we didn't serve the witnesses.  That's easily --

19  well, first, I would point out that if you looked at Exhibit 1,

20  you know, Counsel previously accepted service of subpoenas on

21  Mr. Dondero and Mr. McGraner's behalf.  Maybe he's got an

22  explanation why he did it before but he won't do that now.  But

23  if that's the way HCRE wants to do it, we'll hire professional

24  process servers that can -- that give us a couple of weeks and

25  we'll find them.  We'll find them.  And if not, we'll get the

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 12/16/23   Page 26 of 62   PageID 19775
Main Document   Page 25 of 61

25

1   adverse inference.

2            They said we didn't give enough time, that we didn't

3   take into account their scheduling.  Just look at Exhibit 4,

4   Your Honor.  I specifically wrote to Counsel, it's there in

5   writing.  You know, it's there in writing.  If you need an

6   accommodation, let me know.  Let me know if the dates and times

7   work.  I have flexibility.  I told him that in writing.  And

8   yet, the reason the Court should enter a protective order is

9   because we didn't give them sufficient time or we wouldn't take

10  into account their schedules.

11           We've got all the time now, Your Honor.  I'm actually

12  not available next week, but after that, I can take these

13  depositions any time the last week of September, the first week

14  of October, whatever is convenient for them.  That is no reason

15  to grant a protective order.

16           And then, finally, this notion that, you know, Mr.

17  McGraner and Mr. Dondero are some Apex employees, Your Honor,

18  HCRE has no employees.  None.  Mr. Dondero signed the original

19  LLC agreement.  He signed the amended LLC agreement.  He signed

20  the proof of claim.  Who else should I be deposing?  Mr.

21  McGraner owns a substantial interest of HCRE.  He's on the

22  emails that show he had contemporaneous knowledge that people

23  working in the Highland complex were drafting Schedule A in a

24  manner that was ultimately accepted not just by Highland and

25  HCRE but by a third party, BH Equities.

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 12/16/23   Page 27 of 62   PageID 19776

26

1    There's nobody to depose other than Mr. McGraner and

2    Mr. Dondero.  I mean I guess Mr. Ellington, I haven't thought

3    about that.  He is a five percent owner.  But for a company

4    with no employees, who else am I supposed to depose?

5    Finally, Your Honor, I've taken probably enough time

6    here.  But option C, right, I think this just be denied

7    outright.  If not, we should at least be permitted to get some

8    discovery before the Court rules on the motion.  Option C, if

9    the Court really wants to dismiss this -- grant the motion in

10   any respect, there ought to be severe conditions on it.

11   It has to be a dismissal on the merits.  It has to be

12   a dismissal that pays Highland its reasonable legal fees

13   incurred for this waste of time.  And it has to be conditioned

14   on the fact that Mr. Seery's deposition transcript will be

15   barred from use in any proceeding going forward or they have

16   got to show up for the depositions to level the playing field.

17   So that's where we are, Your Honor.  Three choices.

18   You know, they're in the order that we think are most

19   appropriate.  But I've got nothing further at this point, Your

20   Honor.

21   THE COURT:  All right.  A couple of questions for

22   you.

23   You've represented as an officer of the Court that

24   your client, the estate, has incurred hundreds of thousands of

25   dollars of attorneys' fees and costs relating to this proof of

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 12/16/23   Page 28 of 62   PageID 19777
Main Document   Page 28 of 61

27

1  claim.  Is that correct?

2              MR. MORRIS:  Yes, Your Honor.

3              THE COURT:  Okay.  And I'm just curious, did this

4  claimant, HCRE, file other pleadings during the Highland case,

5  like objections to the plan or -- I remember discovery disputes

6  when Wick Phillips was involved in the main case.  But I'm just

7  curious, did you look at other times they may have participated

8  as a party, a creditor?

9              MR. MORRIS:  In all candor, Your Honor, I haven't --

10             THE COURT:  Okay.

11             MR. MORRIS:  -- looked at that.  My memory, which

12 could be wrong, my memory is that they did file other things,

13 although it's possible I'm just confusing it with Wick Phillips

14 representing different entities of Mr. Dondero.  But I believe

15 that Wick Phillips was involved in other matters.  I think HCRE

16 filed other things, but I don't know off the top of my head.

17             THE COURT:  Okay.  So the representation that

18 hundreds of thousands of dollars were spent on this proof of

19 claim dispute, I mean you're zeroing in on this proof of claim

20 dispute.  Is that correct?

21             MR. MORRIS:  One hundred percent limited to this

22 proof of claim.

23             I mean think about what we did here, Your Honor.  We

24 had a whole litigation over Wick Phillips.  Both sides retained

25 experts.  We took fact discovery.  We participated in written

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Main Document    Filed 12/16/23    Page 29 of 62    Page 29 of 62    PageID 19778

28

1   discovery, something that never ever should have happened.  But
2   we were forced to do that, and I do include that as part of
3   this.

4           What else have we done?  Because I think it's -- I
5   think Your Honor's asking a fair question, like how do you get
6   to that number.  Before the Wick Phillips' disqualification
7   motion and the reason that we got to that point is we had
8   engaged in written discovery.  And this is back in the spring
9   of 2021.  We served, you know, document requests, we served
10  requests to admit, we served interrogatories.  All of that was
11  answered.

12          We produced thousands of pages of documents at that
13  time.  And it was in preparing for the depositions that were
14  then scheduled that we saw in the documents the conflict that
15  Wick Phillips had.  So we went though that whole process
16  throughout the rest of 2021, completely unnecessary.  Just
17  completely unnecessary, but nevertheless, we did.  We
18  prevailed.

19          New counsel came in in January and did nothing,
20  right.  It took us six months to get to a scheduling order.  It
21  took me almost three months to get them to respond at all.  But
22  we did the whole thing again, and we went through more written
23  discovery and more interrogatories and more requests to admit
24  and more document requests.  And we produced more documents.
25          We served subpoenas on Mark Patrick, on BH Equities,

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Main Document    Filed 01/09/24    Page 129 of 61    Page 30 of 62    PageID 19779

29

1    on Baker Vigotto, the accounting firm that prepares the tax

2    returns at the direction of HCRE on behalf of SE Multifamily.

3    There's lots of negotiations in there.  There's -- I mean Your

4    Honor can see just how many times depositions were scheduled

5    and rescheduled and rescheduled again to accommodate

6    everybody's summer and business, right.

7          So we took the deposition of Mr. Patrick.  We took

8    the deposition of Barker Vigotto.  We took the deposition of BH

9    Equities.  We defended Mr. Seery and his deposition.  We took

10   the time to prepare for that.  We were reviewing the 4,000

11   documents that they produced belatedly, right.  We're

12   marshaling our evidence, getting ready for our summary judgment

13   motion.  We're negotiating amendments to scheduling orders at

14   HCRE's request.

15         Yeah, we spent several hundred thousand dollars, Your

16   Honor, for sure.

17         THE COURT:  Okay.

18         All right, Mr. Gameros, do you have cross-examination

19   of Mr. Morris?

20         MR. GAMEROS:  I don't have cross-examination of Mr.

21   Morris.  I'd just like to respond to a few points if I could.

22         Is that permitted, Your Honor?

23         THE COURT:  Oh, yes.  I mean this was your chance to

24   cross-examine Mr. Morris since he submitted a declaration with

25   exhibits.  But if you decline to do that, I think Mr. Morris --

App. 2596

30

1            MR. GAMEROS:  Cross-examine Mr. Morris, Your Honor?

2            THE COURT:  Just -- Mr. Morris, the reorganized

3    debtor rests, right?  I got the impression you were resting?

4            MR. MORRIS:  Yes, Your Honor.

5            THE COURT:  All right.

6            MR. MORRIS:  Yes.

7            THE COURT:  Mr. Gameros, now your chance for

8    rebuttal.

9            MR. GAMEROS:  All right.

10            First, in terms of hundreds of thousands of dollars

11    of fees and the activity level since my firm appeared in

12    January of 2022, I think we need to look back at the

13    disqualification proceeding and remember that the estate was

14    denied its request for attorneys' fees on the disqualification

15    and that's in this Court's order.

16            If we proceed to trial, they won't be entitled to

17    attorneys' fees for winning, if they do.  There's no claim here

18    that entitles the estate to shift its attorneys' fees to

19    NexPoint.  None.

20            And I think that's important.  The relief that he's

21    asking for, Your Honor, if you listen to what the estate's

22    requesting, it wants to limit the use of Mr. Seery's

23    deposition.  It wants to have a trial.  Now apparently they may

24    not move for summary judgment.  Okay.  Things that they would

25    like, but all they get is a ruling on a proof of claim.  And

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 104-125 Filed 03/31/23   Page 32 of 62   PageID 19781
Main Document   Page 32 of 61

31

 1  we've already said the Court should allow us to withdraw the

 2  proof of claim and condition it with prejudice.

 3          There is no other lawsuit out there.  There is no

 4  other position being taken anywhere.  Frankly, Your Honor, the

 5  reason why I said admit the exhibits and I question their

 6  relevance is because none of them go to actual legal prejudice.

 7  Can't show it, hasn't shown it, hasn't demonstrated it.  It

 8  says they did a lot of work, gave you the greatest hits of some

 9  email, but quite frankly, Your Honor, that goes to merit, not

10  legal prejudice.  That goes to, I believe, part of their story

11  as to what happened.

12          The story that matters to me is we think things were

13  going to happen during the estate, he's right.  We didn't move

14  for them.  We looked back at it and said we don't need the

15  proof of claim anymore, we should withdraw it.  That's the only

16  thing that's happened, and that's why we're here.  We don't

17  think he's entitled to discovery as to why we withdrew the

18  proof of claim.

19          It's his burden to show legal prejudice.  He can show

20  it or he can't.  He hasn't.

21          THE COURT:  Okay.

22          MR. GAMEROS:  The estate hasn't.

23          THE COURT:  Mr. Gameros?

24          MR. GAMEROS:  (Indiscernible) Mr. Dondero.

25          THE COURT:  I have a question.  I mean I'm looking at

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 01/03/23   Page 33 of 62   PageID 19782

32

1  your pleading, your motion to withdraw the proof of claim, and

2  I'm looking at this wonderful chart you have on Page 7 saying

3  here are the standards under Bankruptcy Rule 3006, you, Court,

4  should consider.  They were articulated in the <u>Manchester</u> case.

5       And it's not merely about is there any prejudice to

6  the estate.  I mean you set forth five factors.  One is "reason

7  for dismissal."  One is diligence in bringing the motion to

8  withdraw.  One is undue vexatiousness.  One is the matter's

9  progression including trial preparation.  One is duplication of

10 expense of relitigation.

11      This is your own authority, which I believe actually

12 is correctly articulating the standards.  It's not just about

13 prejudice.  Yes, I agree that some of the case law has zeroed

14 in on that one in particular.  But I mean you say yourself

15 reason for dismissal is a factor the Court must consider.

16      MR. GAMEROS:  That's correct, Your Honor.  Those are

17 the factors, and I think our analysis on them is correct.

18      If we go all the way to trial and the result is that

19 our proof of claim is denied, we're in the same position we are

20 right now.  So why should the parties, the estate, and the

21 Court go through that exercise?

22      THE COURT:  Okay.  Well, that's another issue, I

23 think, other than the reason for dismissal.  But a follow-up

24 question to what you just said is this.

25      Would you agree to a condition on the withdrawal of

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Main Document   Filed 01/13/23   Page 133 of 61   Page 34 of 62   PageID 19783

33

1  your proof of claim that your client agrees that Highland has a

2  46-point whatever it was percent interest in SE Multifamily

3  Holdings and your client waives any right in the future to

4  challenge that interest?

5          MR. GAMEROS:  Your Honor, if that's what the Court

6  wants to put in an order and I have a chance to confer with my

7  client on it, I'm pretty sure that would be agreeable.

8          THE COURT:  Today's the day.  I'm not going to

9  continue.  I've got, you know, the whole day booked if I needed

10 it because I wasn't sure what you all were going to want to put

11 on.

12         MR. GAMEROS:  Your Honor, we'd agree with that.

13         MR. MORRIS:  Your Honor, I'm sorry to interrupt, but

14 a waiver of any appeal, too.  I just hard that if that's what

15 you want to put in the order, that's okay.  But this case has

16 to end, and that's what we're looking for.

17         We're a post-confirmation estate that will not go

18 forward with the possibility hanging over its head that it may

19 be divested of this asset.  That is what this proof of claim

20 and this dispute is about.

21         And what the debtor needs in order to avoid legal

22 prejudice is the complete elimination of any uncertainty that

23 it owns 46.06 percent of SE Multifamily.  And if HCRE is not

24 willing to give that comfort today, we again renew our request

25 for a direction that the three HCRE witnesses appear for

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Filed 13/14/22    Page 35 of 62    PageID 19784
Main Document    Page 35 of 61

34

1  substantive depositions and we get this on the trial calendar.

2          MR. GAMEROS:  Your Honor, we'll agree to it.

3          THE COURT:  Well, you know what, this is such a big

4  deal I really need a client representative to say that.  It

5  would be that --

6          MR. GAMEROS:  I don't have one here today, but I can

7  get you one.

8          THE COURT:  How soon --

9          MR. GAMEROS:  Do you want me to file a stipulation or

10 an affidavit?

11         THE COURT:  Pardon?

12         MR. GAMEROS:  Do you want me to file an affidavit?

13         THE COURT:  Well, let's be a hundred percent clear.

14 Your client would state that with the granting of the motion to

15 withdraw proof of claim number 146, HCRE is irrevocably waiving

16 the right to ever challenge Highland Capital Management's 46

17 percent interest -- and I know it's 46-point something -- 46

18 percent interest in SE Multifamily Holdings, LLC and is,

19 likewise, waiving the right to appeal or challenge the order to

20 this effect.

21         MR. MORRIS:  Your Honor, if I may, perhaps we can

22 take a ten-minute recess and allow him to consult with his

23 client and perhaps get a client representative on the phone who

24 can make that representation?

25         THE COURT: All right.  Mr. Gameros, you think you

35

1  can get a client rep on the WebEx?

2          MR. GAMEROS:  I'm pretty sure I can, Your Honor.

3          THE COURT:  All right.  Well, how about we take a 15-

4  minute recess.  Does that sound a reasonable amount of time?

5  We've got, you know, two dozen people --

6          MR. GAMEROS:  It does, Your Honor.

7          THE COURT:  Two dozen people on the WebEx.  I don't

8  know if maybe one is a client representative, but we'll take a

9  15-minute break and I'll come back.  Okay.

10          THE CLERK:  All rise.

11      (Recess at 10:33 a.m./Reconvened at 10:50 a.m.)

12          THE CLERK:  All rise.

13          THE COURT:  Please be seated.

14          We're back on the record in Highland.

15          Mr. Gameros, how did you want to proceed now?

16          MR. GAMEROS:  Your Honor wanted me to get a

17  representative of NexPoint Real Estate Partners to state that

18  they agree that the estate has its 46 percent interest in the

19  company agreement subject to the company agreement.  And I've

20  got Mr. Sauter here who has authority to speak on behalf of

21  NexPoint Real Estate Partners.

22          THE COURT:  All right.  Well, so what is his position

23  with HCRE?

24          MR. SAUTER:  Your Honor, I don't have -- this is DC

25  Sauter.  I don't have an official position with HCRE, but I

36

 1  have spoken with Mr. Dondero and he has authorized me to appear

 2  here today and agree to the conditions that Mr. Gameros just

 3  outlined.

 4          THE COURT:  All right.  Well, it sounds like hearsay

 5  to me.  I don't know -- Counsel, let me have you both respond.

 6  You know, I worry about this will fall apart the minute Mr.

 7  Dondero is instructing a lawyer, I never agreed to that.  I

 8  mean I just don't know.  This is highly unusual.

 9          First --

10          MR. GAMEROS:  Your Honor, if I might?

11          THE COURT:  Please.

12          MR. GAMEROS:  Mr. Sauter is an officer of the Court.

13  He works, you know, with Mr. Dondero at his business at

14  NexPoint; certainly an authorized agent on behalf of NexPoint

15  Real Estate Partners to make this agreement on behalf of

16  NexPoint Real Estate Partners.

17          To the extent that the condition that you originally

18  described as a conclusory matter, in other words, how to end

19  the withdrawal, we already agreed to that, that we also can

20  agree on the record to waive any appeal.  Mr. Sauter is

21  authorized to agree to that, as well.

22          So I think as an agent and a lawyer on behalf of

23  NexPoint Real Estate Partners, he's fully able to do that.

24          THE COURT:  How do I know he's able to do that?

25          And, by the way, if Mr. Dondero is in I guess the

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 104-125   Filed 01/03/23   Page 38 of 62   PageID 19787
Main Document   Page 37 of 61

37

 1  last 15 minutes given him authority to testify before the

 2  Court, why couldn't Dondero just get on the WebEx himself?

 3              MR. SAUTER:  Your Honor, I think he felt more

 4  comfortable with me being a lawyer agreeing to those terms so

 5  that he wouldn't misstate something.  He has been listening.  I

 6  believe he's still on, although I'm not certain.

 7              THE COURT:  Mr. Morris, do you want to respond?  I

 8  mean I'm not sure, frankly, I care what you say, no offense.  I

 9  don't think I have a person with clear authority here.

10              MR. MORRIS:  I'll just be quick and say I agree.

11              THE COURT:  Okay.  Mr. Gameros --

12              MR. GAMEROS:  As an attorney for NexPoint Real Estate

13  Partners, I have the authority to make that agreement on the

14  record and it be binding.  Mr. Sauter is confirming that

15  authority having spoken with Mr. Dondero about it.

16              I think that the Court is fully --

17              THE COURT:  Mr. Gameros --

18              MR. GAMEROS:  -- capable of doing that --

19              THE COURT:  Mr. Gameros, come on.  You know this is

20  the client's decision to make.  Okay.  I don't have a client

21  representative.  I don't have an officer or controlling

22  equityholder as evidence here of --

23              MR. MORRIS:  Mr. Dondero --

24              THE COURT:  -- the willingness to make the agreement.

25              Pardon?

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 704-126nt Filed 138/0320f 61Page 39 of 62    PageID 19788

38

1          MR. MORRIS:  Can Mr. Dondero make the representation

2    on the record to the Court that he is authorizing Mr. Sauter to

3    waive any claim that HCRE has to Highland's 46.06 percent

4    interest in SE Multifamily along with any appeal?  This is just

5    step one.  But if Mr. Dondero was on the phone, let him speak

6    up and make it crystal clear that he is delegating the full

7    authority to Mr. Sauter to negotiate and enter into this

8    consensual order on behalf of HCRE.

9          THE COURT:  All right.  Mr. Gameros, do you want to

10   give your client authority to speak up?  Your client

11   representative, someone who's actually an officer or a

12   controller or equity owner?

13         MR. GAMEROS:  Your Honor, if Mr. Dondero can do that,

14   that would be great.  I don't know if he's in a place where he

15   can do that.

16         THE COURT:  All right.  Mr. Dondero, if you can hear

17   us, are you willing to give some quick testimony in that

18   regard?

19       (No audible response)

20         MR. DONDERO:  I can't see the box --

21         UNIDENTIFIED SPEAKER:  Surprising that -- surprising

22   he was on the phone before, but now he's not after delegating.

23   Just I'm not --

24         MR. SAUTER:  Your Honor, he's on the phone.  I'm just

25   -- if you will give me a minute, I got to run around the corner

 1   and try to make sure he knows how to unmute himself.

 2            THE COURT:  Star 6.  If he's on a phone, star 6 is

 3   the way to unmute himself.  But I want to see video, too.

 4            THE OPERATOR:  There we go.  Try again.

 5            MR. DONDERO:  Hello?

 6            THE COURT:  All right.

 7            MR. DONDERO:  Hello?

 8            THE COURT:  Mr. Dondero, is that you?

 9            MR. DONDERO:  It's me.  I've been on the entire time.

10            THE COURT:  All right.  Can you turn your video on,

11   please?

12            MR. DONDERO:  I am on my cell phone.

13            THE COURT:  Okay.  Well, so I guess you just called

14   in on your cell phone, you don't have a WebEx connection on

15   your cell phone?

16            MR. DONDERO:  I don't have a WebEx.

17            THE COURT:  Okay.  Well -- yeah, it sounded like you

18   were in the same office as Mr. Sauter.  Is that -- did I

19   misunderstand?

20            MR. DONDERO:  We work in the same office.  I'm in my

21   car.  I just stepped out of my car.

22            THE COURT:  All right.  Well, this is not ideal, you

23   know, without us seeing you.  But I'll go ahead and swear you

24   in.  All right.  Can you hear me okay?  I need to swear you in.

25            MR. DONDERO:  Yes.

                              Dondero - Direct                    40

 1              THE COURT:  All right.

 2                   JAMES DONDERO, HCRE'S WITNESS, SWORN

 3              THE COURT:  All right.

 4          Mr. Gameros, do you want to ask him the questions we

 5    need to hear answers on, please?

 6              MR. GAMEROS:  Thank you, Your Honor.

 7                        DIRECT EXAMINATION

 8    BY MR. GAMEROS:

 9    Q    Mr. Dondero, on behalf of HCRE, do you agree as a

10    condition for withdrawing the proof of claim that HCRE will not

11    challenge the estate's ownership or equity interest in SE

12    Multifamily subject to the company agreement?

13    A    Yes.

14    Q    Do you agree that you will not appeal and that, therefore,

15    HCRE is waiving any appeal right to that determination as a

16    condition of withdrawing the proof of claim?

17    A    Yes.

18              MR. GAMEROS:  Those are the questions for Mr.

19    Dondero.

20              MR. MORRIS:  Your Honor, if I may?

21              THE COURT:  Mr. Morris, you may.

22              MR. MORRIS:  I'm very uncomfortable.  I'm very

23    uncomfortable with the inclusion of the language subject to the

24    company agreement.  It sounds like a very conditional waiver.

25    We need an irrevocable unconditional admission by HCRE that

                        **WWW.LIBERTYTRANSCRIPTS.COM**

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 104-125   Filed 04/21/23   Page 42 of 62   PageID 19791

41

1  Highland owns 46.06 percent of SE Multifamily, period, full

2  stop.  If they want to keep conditions in there and make it

3  conditional and make it subject to other things, let's please

4  deny the motion and proceed to trial.

5          THE COURT:  All right.  Well, Mr. --

6          MR. GAMEROS:  The equity that they own is part of the

7  company agreement.  It's not modifying the company agreement by

8  saying.

9          THE COURT:  Well --

10         MR. MORRIS:  Our ownership is not subject to the

11  agreement.  We either have an ownership interest or we don't.

12  Our rights and obligations as a member of SE Multifamily are

13  subject to the agreement, but our ownership interest is not.

14  And that's the ambiguity that we need to remove.

15         THE COURT:  Okay.  Well, Mr. Gameros, do you want to

16  rephrase the question or are you not willing to make the

17  agreement as specific as Mr. Morris says he needs it?

18         MR. GAMEROS:  That's what I'm -- I guess I don't

19  understand what his complaint is.  If the estate owns 46

20  percent of the equity of SE Multifamily, it owns that subject

21  to the company agreement.  It's not a separate ownership

22  interest.  So I don't know what the problem is.

23         THE COURT:  Okay.  Let me try to phrase it as I

24  understand it.

25         What I understand has been asserted in the proof of

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125nt FilePdge14222f 61Page 43 of 62    PageID 19792

42

1    claim is that what was set forth in the agreement was a

2    mistake, okay.  A mistake.  And it sounds like you're using

3    language that says we'll agree the agreement, you know, they

4    have a 46 percent interest pursuant to the agreement.  But that

5    doesn't change -- that does not really zero in on the argument

6    made in the proof of claim that there was a mistake in the

7    agreement, right?

8            So you'd have to go broader to completely resolve the

9    issues raised in your proof of claim and say we agree, Highland

10   has a 46.06 interest in SE Multifamily and we agree that is

11   correct and we waive any right to challenge it in the future

12   and we waive any right to appeal this order.

13           MR. GAMEROS:  And, Your Honor, if that's the

14   condition, I guess my concern is that the 46 percent is still

15   part of the company agreement.  We agree not to challenge it on

16   the basis of anything asserted in the proof of claim, that

17   being mistake, lack of consideration, or failure of

18   consideration.  Their 46 percent is their ownership interest in

19   SE Multifamily and HCRE won't challenge that.

20           Is that sufficient?

21           THE COURT:  Well, I need to hear from your client.  I

22   mean he needs to be asked every which way from Sunday whether

23   he is waiving the right to challenge Highland's 46.06 interest

24   from now until eternity, okay.  That's basically, you know, we

25   either have that agreement or we'll just have a trial.

Dondero - Direct                                           43

CONTINUED DIRECT EXAMINATION

1  BY MR. GAMEROS:

2  Q    Mr. Dondero, do you agree that NexPoint Real Estate

3  Partners will not challenge in any way the estate's interest in

4  SE Multifamily, its 46-point whatever percent interest that is?

5  A    I think the nuance is that agreement is okay in current as

6  of today.  But it's part of an operating agreement, and that

7  percentage ownership can change due to capital calls and other

8  things.  And it could change over time.  It's never in a

9  partnership agreement fixed into perpetuity.  And so no

10  businessman can agree to that.

11      If the Court wants it fixed into perpetuity, that would be

12  very odd.

13           MR. MORRIS:  Can we go to trial, Your Honor?  Can we

14  just deny the motion and go to trial?  Let me have my

15  depositions and go to trial.  This is -- if Mr. Dondero wants

16  to take that position, he's welcome to do that.  But I'm

17  entitled to finality, and I'd like to get there.

18           THE COURT:  All right.  Well, Mr. Gameros, anything

19  else you want to ask your client that you think might be

20  helpful?

21  BY MR. GAMEROS:

22  Q    Mr. Dondero, you desire to withdraw the proof of claim.

23  Correct?

24  A    Yes.

**WWW.LIBERTYTRANSCRIPTS.COM**

44

1   Q    And you agree to an order denying the proof of claim with

2   prejudice.  Correct?

3   A    Yes.

4   Q    And can you agree that HCRE will not challenge the equity

5   ownership of its member in SE Multifamily of the estate?

6   A    Yes.

7            MR. GAMEROS:  Your Honor, I think there it is.

8            THE COURT:  Mr. Morris, do you have any --

9            MR. GAMEROS:  He agrees.

10           THE COURT:  -- do you have any follow-up questions --

11           MR. MORRIS:  The waiver of the right to --

12           THE COURT:  -- Mr. Dondero?

13           MR. MORRIS:  The waiver of the right to any appeal

14   whatsoever.  And I do have -- you know, there are the other

15   conditions that we mentioned earlier, right?  Either they have

16   to also agree that Mr. Seery's deposition transcript shall

17   never be used for any purpose at any time or they need to level

18   the playing field and submit their witnesses to examination.

19           The playing field needs to be level here.  Either if

20   they want to use that deposition transcript for some purpose, I

21   have no problem with that.  Just let me take my depositions.

22   If they don't want to submit their witnesses to depositions,

23   then they also have to agree that that transcript will never be

24   used for any other purpose.  It's as if this proof of claim has

25   never been filed, right, for that purpose, right.  Because

1    that's just not fair.  That's the legal prejudice.

2            How do you take my client's deposition on Wednesday

3    and file this motion on Friday knowing your client's supposed

4    to be deposed on Tuesday?  Level the playing field.  That's

5    conditional number two.

6            And condition number three, frankly, Your Honor, this

7    proof of claim was fraudulent.  I mean my client has been

8    damaged.  My client has spent an enormous amount of money on

9    this, and I'd like them to agree to if not make us whole, you

10   know, do something because it's wrong.  It's just wrong that

11   Mr. Dondero files proofs of claim under penalty of perjury that

12   have absolutely no basis in fact.

13           It's distressing.  I'd like those two last issues

14   addressed, as well.

15           MR. GAMEROS:  Your Honor, in terms of the Court's

16   questions in terms of finality with respect to the membership

17   interest in SE Multifamily, Mr. Dondero agrees with the Court.

18   He's already said that he won't waive -- that he waives, rather

19   -- I'm sorry, let me start again.

20           He has said very clearly that he has waived appeal of

21   this order allowing the withdrawal of the proof of claim with

22   the conditions that you asked for.  I think you should grant

23   the motion to withdraw and we can put an end to all of this.

24           THE COURT:  Okay.

25           MR. MORRIS:  Here's the thing, Your Honor.  We know

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125nt Filed 04/14/2320f 61 Page 47 of 62    PageID 19796

46

1  there's going to be more litigation with HCRE.  We know they've

2  breached the contract.  We know because the evidence is in the

3  record.  We know that Highland demanded access to books and

4  records as is its contractual right back in June.  We know that

5  that notice was sent to all of Mr. Dondero's lawyers and HCRE's

6  lawyers.  And we know that that request has been absolutely

7  categorically ignored.  Okay?

8         We are going to --

9         MR. GAMEROS:  This has nothing to do with the proof

10  of claim.

11         MR. MORRIS:  We are going to get -- well, no.

12         To be clear, Your Honor, that is what's driving this

13  concern is because we know that there's going to be additional

14  litigation.  We know the tax forms are not accurate.  We know

15  there's already an existing breach of contract.

16         And what we're trying to make sure is that HCRE is

17  not able to resurrect this concept that we don't have an

18  ownership interest, that it's not 46.06 percent, that Mr. Seery

19  made some admission that they're going to use in some future

20  litigation.  That's the prejudice, okay.

21         So I think step one is (indiscernible), but then we

22  need either an agreement that the transcript isn't going to be

23  used elsewhere or that I get the deposition of the HCRE

24  witnesses because it's unfair prejudice to use this process to

25  take that deposition on Wednesday, August 10th and to file this

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125nt DFileedage4072of 61Page 48 of 62    PageID 19797

47

1  motion on Friday, August 12th.  That is unfair prejudice for

2  them to have taken my client's sworn testimony and then shut it

3  down before I could take theirs.

4          So either eliminate it all or let it all in, right?

5  It can't be.  They can't possibly benefit from this.

6          THE COURT:  Let me understand something, Mr. Morris,

7  you just said.  We know we're going to have future litigation.

8  I mean I'm not asking for revelation of attorney-client

9  privilege, but -- communications, but you kind of dangled it

10 out there.

11         You're saying that the reorganized debtor intends to

12 file litigation against HCRE because of what you think are

13 breaches by it as manager of SE Multifamily of the existing

14 agreement.

15         MR. MORRIS:  The evidence is already in the record,

16 Your Honor.  We have -- Highland as a member of SE Multifamily

17 has the contractual right to obtain access to inspect and copy

18 -- those are the words, inspect and copy SEC *[sic]*

19 Multifamily's books and records.

20         We made that request at the end of June.  It's one of

21 the exhibits that's attached that's in the record now.  I made

22 probably three different follow-up emails, and it's been

23 completely ignored, okay.

24         HCRE is the manager of SE Multifamily, right.

25 They're in control.  They're the ones who dictate how the

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Filed 01/09/23    Page 49 of 62    PageID 19798
Main Document    Page 48 of 61

48

1   accounting is done.  They're the ones who dictate how

2   distributions are made.  They're the ones who dictate how tax

3   forms are prepared.  They have an obligation under the amended

4   and restated agreement to cause SE Multifamily to prepare the

5   tax returns.  They're the ones who are in direct contact with

6   Barker Vigotto.

7          There's a whole host of issues we're going to

8   examine, but the one thing that I do know for certain, Your

9   Honor, is that they are in breach of the agreement today

10  because they have refused for three months now to give us what

11  we're entitled to.  And that is access to inspect and copy SE

12  Multifamily's books and records.

13         So unless they agree to do that, and I mean pretty

14  soon, we're not going to have any alternative.  If you recall,

15  Your Honor, Mr. Dondero's trust, the Dugaboy Trust, filed this

16  valuation motion which we'll address in due course.  I don't

17  know where they got the number, but according to Mr. Dondero's

18  trust, Highland's interest in SE Multifamily is worth $20

19  million.  This is not a small asset.  This is not harassment.

20         But they're not complying with their contractual

21  obligation to give us access to inspect and copy SE

22  Multifamily's books and records.  For a $20-million asset where

23  it's -- I mean they're conceding now that we're the owner of

24  those membership interest.  How can they deny us access?

25         And if they don't give us that access so that we can

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 10/14/22   Page 50 of 62   PageID 19799
Main Document   Page 49 of 61

49

1  verify the value of this asset, so that we can verify whether

2  or not we've gotten the distributions that we're entitled to,

3  so that we can verify that the profits and losses that have

4  been allocated to Highland were actually proper and consistent

5  with the agreement, I'm afraid that there will be further

6  litigation, and that's why we need to -- we need to nail this

7  down right now because I don't want to get a counterclaim that

8  says we left the deal open to challenging Highland's interest

9  in SE Multifamily.  That door needs to close today.

10         THE COURT:  Okay.  All right.  Well, I'm going to

11  start out by saying we're in a very unusual procedural posture.

12         Before I forget, Mr. Gameros, I meant to mention this

13  at the very beginning.  The motion to withdraw the proof of

14  claim of your client, you had an odd way of signing it.  I

15  wonder if this was a mistake or you always sign this way.  You

16  signed the pleading signature Charles W. Gameros, Jr., PC.

17         Is that -- was that inadvertent or do you always sign

18  that way?  I mean a lawyer's supposed to personally sign under

19  Rule 11 a pleading.  Was that just inadvertent or do you think

20  that's fine?

21         MR. GAMEROS:  I've used that signature block for over

22  20 years, and I've never -- no one has ever asked.  I thought

23  it was fine.

24         THE COURT:  Okay.  Well, no one's ever asked and you

25  think it's fine.  I think you need to go back and do some

**WWW.LIBERTYTRANSCRIPTS.COM**

1  research on that, okay.  I'm not sure it's fine.  I'm not sure

2  it's fine.

3        I mean you would agree that you're personally bound

4  under Rule 11 when you file a pleading, right?

5        MR. GAMEROS:  Yes, Your Honor.

6        THE COURT:  I mean I know it feels a little different

7  if you're -- well, I don't know.  You're not a -- you have a

8  firm, Hoge & Gameros, L.L.P.  I mean it wouldn't be

9  appropriate for Mr. Morris to sign a pleading Pachulski Stang,

10  right?  He has to sign his name personally on a pleading,

11  right?

12        MR. GAMEROS:  Your Honor, I'll make that change.

13        THE COURT:  Okay.

14        Well, so we're in an unusual procedural context.  We

15  I think all agree that Bankruptcy Rule 3006 is the applicable

16  authority, and it provides that, you know, a creditor can't

17  just withdraw a claim when there's been an objection filed to

18  it.  There has to be notice and an order from the Court.

19        And so we don't run into this situation very often,

20  but I have seen it before.  And as someone or both correctly

21  noted, it is a rule that sort of goes to the integrity of the

22  system.  Filing a proof of claim is obviously a very

23  significant act in the context of a bankruptcy case.

24        You file a proof of claim under penalty of perjury so

25  it's a big deal from, you know, a criminal exposure standpoint

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 174-125   Filed 01/05/23   Page 52 of 62   PageID 19801
Main Document   Page 52 of 61

51

1   but it's also a big deal because we want to make sure only

2   parties with legitimate claims are given a seat at the table,

3   so to speak, in bankruptcy as far as, you know, their right to

4   a distribution, their right to be heard in a case.

5          So, you know, that's the reason for the rule.  We

6   don't see it come into play very often, but it's there because

7   we want to make sure that we protect the integrity of the

8   bankruptcy process.  And if someone files a proof of claim and

9   it's pending and, you know, activity happens in the bankruptcy

10  case as a result of it, that we don't just let a party say

11  never mind.

12         So the Manchester case, which you both cited in your

13  pleadings, has set forth fact-intensive factors -- fact-

14  intensive inquiry.  And, again, I'm just looking at HCRE's

15  motion, Page 7.  There was a chart and it sets forth the

16  Manchester factors.  Factor number one, diligence in bringing

17  the motion to withdraw the proof of claim.

18         In Mr. Gameros' chart, his response to that factor is

19  that HCRE brought its motion to withdraw immediately after

20  conferring with debtor's counsel.  I don't even know what that

21  means, okay.  But what I do know is in looking at diligence of

22  bringing the motion, the proof of claim was filed April 8th,

23  2020.  It was objected to, the proof of claim, July 30th, 2020.

24  And then on August 12th, 2022, this motion to withdraw the

25  proof of claim was filed.

52

1          So two years and one month after the objection was

2  filed to the proof of claim HCRE withdraws it.  So that doesn't

3  seem very diligent.  It's not diligent at all, to be honest.

4          Your second factor, you cited, Mr. Gameros, undue

5  vexatiousness, and you say HCRE has not been vexatious in

6  pursuing its proof of claim.  And outside the motion to

7  disqualify previous counsel, which is not substantive,

8  everything in the matter has proceeded by agreement and there

9  have been no hearings set or held.

10         Okay.  Well, debtor has represented in its pleadings

11  and today through counsel on the record that it has spent

12  hundreds of thousands of dollars litigating this.  It has

13  mentioned that four depositions have been taken.  It was Mr.

14  Mark Patrick.  It was the tax accounting firm.  We had the B --

15  the entity -- BH Equities, LLC, their representative.  And then

16  Mr. Seery.  So four depositions, and I'm told a lot of written

17  discovery.

18         And on the day before the -- well, the day after, day

19  or two after the Seery deposition, the motion to withdraw the

20  proof of claim was filed after 5:00 in the evening on a Friday,

21  August 12th, and I guess a couple of business days before the

22  depositions were to occur of Mr. Dondero and the fellow, Mr.

23  McGraner, and I feel like there was one other deposition.  I'm

24  losing track of those.

25         But --

**WWW.LIBERTYTRANSCRIPTS.COM**

53

1          THE CLERK:  The 30(b)(6).

2          THE COURT:  Oh, the 30(b)(6).  The 30(b)(6)

3    representative.

4          So on top of all of that, you know, Highland argues

5    there was just simply no good-faith basis for the proof of

6    claim.  Proof of claim asserted the membership interest,

7    Highland's 46.06 interest, set forth in the Multifamily LLC

8    agreement were the result of mistake.

9          Mr. Dondero signed the agreement for both parties,

10   HCRE and Highland.  And then now the motion to withdraw says

11   something to the effect of the anticipated issues have not

12   materialized.  So anyway, the undue vexatiousness factor I

13   think weighs -- because of these factors I've mentioned, weighs

14   in favor of there has been undue vexatiousness.

15         Factor number three, according to HCRE's motion to

16   withdraw the proof of claim, is matter's progression including

17   trial preparation.  Again, four depositions, thousands of pages

18   of written discovery.  We were days away from the last

19   depositions occurring, those of HCRE's potential witnesses and

20   we have trials set.  We have a trial set in November.  So that

21   factor, again, seems to weigh heavily in favor of Highland's

22   objection here.

23         Duplication of expense of relitigation, here's why we

24   got Mr. Dondero on the phone or wanted to have a witness with

25   authority.  Highland is saying we are concerned about

1  relitigation of this ownership interest issue.  And as part of

2  its argument, Highland has said we've got claims, we've got our

3  own claims for breach of agreement and different things that

4  are going to cause us to have to drill down on terms of the LLC

5  agreement.

6       And we can't -- we don't want to face exposure on

7  this issue of, well, you don't have the ownership interest or

8  the rights you say you do, Highland.  So, you know, if we could

9  get ironclad language here of, you know, we waive the right, we

10  agree that Highland has the 46.06 interest and we waive the

11  right to challenge that, then I don't think we'd have to worry

12  about relitigation of the issues in the proof of claim.  But it

13  feels like we had a little bit of reluctance to say it as

14  forcefully as we would need to have it said to avoid

15  relitigation.

16       Reason for dismissal, I don't know.  I don't know

17  what the reason for dismissal.  Again, to quote HCRE's pleading

18  on Page 7, the reason for dismissal is, "The operation of the

19  company" -- I think that means SE Multifamily -- "during the

20  case and the anticipated issues therewith have not materialized

21  and NREP no longer desires to proceed in the matters raised in

22  the proof of claim."

23       I mean that's just not in sync with the theory

24  espoused in the proof of claim that we think there was a

25  mistake made in the LLC agreement.  So, again, looking at these

55

1  legal factors, I do not think that the correct result is to

2  grant the motion to withdraw the proof of claim under Rule 3006

3  under the <u>Manchester</u> factors.  I will throw in that I think

4  there is potential for prejudice here of the debtor.

5         I mean not even considering that hundreds of

6  thousands of dollars have been spent over two-plus years on

7  this issue, you know, I remember very well the disqualifying

8  motion.  And I said Wick Phillips should be disqualified.  I

9  didn't shift fees because I just wasn't sure at the time that,

10 frankly, HCRE should be imposed with the fees attributable to

11 its lawyers, not recognizing the conflict of interest when they

12 saw one.  It was just a little fuzzy in my mind.

13        But I'm just letting you know that now that we are

14 here many years later, many months later and we have all the

15 sudden, okay, never mind, this is just a situation where I have

16 some regrets I didn't shift fees, to be honest.  But -- so the

17 motion is denied.  The depositions shall go forward.  I'm not

18 sure, you know, if the dates that have been proposed are still

19 workable, but if someone wants to speak up now about those

20 deposition dates to avoid an emergency hearing, I'm willing to

21 hear that.

22        I think what I heard was, well, I don't know what --

23 have you talked about dates at all?  Probably not, Mr. Morris,

24 in light of this hearing today.

25        MR. MORRIS:  We have not, Your Honor.  But I do think

Case 19-34054-sgj11    Doc 3519    Filed 09/14/22    Entered 09/14/22 13:43:17    Desc
Case 3:21-cv-00881-X    Document 174-125    Filed 12/16/23    Page 57 of 62    PageID 19806
Main Document    Page 57 of 61

56

 1  that Counsel and I can work that out.  I'm not available until

 2  the week of the 26th.  So it won't be early that week but

 3  sometime between let's say the 28th of September and the 7th of

 4  October, I'll be prepared to take these depositions.  And I

 5  would respectfully request, and we can work with Ms. Ellison to

 6  try to find a trial date sometime the last week of October,

 7  first week of November so we can get this finished.

 8          THE COURT:  Okay.  Did I dream up that there was a

 9  trial set already in November?

10          MR. MORRIS:  You know what?

11          You know what, let's just keep that date, Your Honor.

12  Let's just keep that date.

13          THE COURT:  All right.  Traci, are you still on the

14  line?  Can you confirm my memory?  I thought we had a two-day

15  trial set aside for this in November.

16          MS. ELLISON:  Is this on the merits of HCRE's claims,

17  Judge Jernigan?  I have a note holding November 1 and 2.

18          THE COURT:  Okay.

19          MR. MORRIS:  Yeah.

20          THE COURT:  So we'll go ahead and mark that down.

21          Now the last -- so you'll work on an a mutually

22  agreeable date for these three remaining depositions sometime,

23  you know, late September, early October.  And I trust you will

24  --

25          MR. MORRIS:  Yeah.  I would respectfully request that

57

1   Counsel just propose dates for the depositions.  I'll wait to

2   hear from him.  But I think -- I'm representing to the Court

3   that any time between September 28th and let's just give it two

4   full weeks, October 12th.  That's plenty of time in advance of

5   the trial.

6           THE COURT:  All right.  Mr. Gameros, anything you

7   want to add on that?

8           MR. GAMEROS:  No, Your Honor.  I'm sure we can work

9   with Mr. Morris to get those scheduled.

10          THE COURT:  All right.  And here's actually the last

11  thing I wanted to say.

12          You know, I had thought about, you know, waiting 24

13  hours to give you a ruling on this motion to withdraw the proof

14  of claim and directing you all to kind of talk and see if maybe

15  you could work out language, you know, without the pressure of

16  the Court hovering over you that could make both of your

17  clients satisfied.

18          I still encourage you to do that, but I'm going to

19  pick on our U.S. Trustee.  I see she's observing today, and I'm

20  not going to ask you to say anything, Ms. Lambert.  But if you

21  all do agree, if you all in the next, you know, 24 hours come

22  to some sort of agreement, I don't mean to be alarming, but I

23  want it run by the U.S. Trustee because, you know, I've heard

24  some things that have troubled me about the, you know, lack of

25  good faith with regard to the proof of claim and, you know,

App. 2624

58

1 alleged gamesmanship.

2           And, you know, I talked earlier about this goes to
3 the integrity of the system, you know, filing a proof of claim
4 under penalty of perjury.  Anyway, I'm feeling a little bit
5 uncomfortable about signing off on an agreed order where there
6 may be quid pro quos that went back and forth in connection
7 with withdrawing a proof of claim.  I mean at some point --
8 well, that's why we have scrutiny of these things under Rule
9 3006, right?

10          Again, there are integrity issues.  And so I just --
11 you know, if you were to work out language, I want you to run
12 it by Ms. Lambert and I want to hear that either she was okay
13 with it or she wasn't okay with it or maybe she declines to
14 comment.  You know, I'm not going to tell her how to do her
15 job, but I feel like that needs to happen, okay?

16          It's just something uncomfortable going on in my
17 brain about, you know, again a proof of claim being on file
18 two, almost two and a half years and then, you know, okay,
19 never mind, okay, I agree to never mind as long as you agree to
20 XYZ.

21          And I have no idea what's in the Seery transcript.  I
22 don't have it before me.  But, you know, I don't even know what
23 that's all about.  I don't even know if I care what that's all
24 about.  I just know if there are quid pro quos I feel like, you
25 know, maybe I need to have the U.S. Trustee, you know, not per

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 104-125 Filed 01/31/23   Page 60 of 62   PageID 19809
Main Document   Page 59 of 61

59

 1   se signing off on any agreed order but at least kind of looking

 2   at it and telling me either U.S. Trustee's fine with it, U.S.

 3   Trustee is not fine with it, or U.S. Trustee declines to

 4   comment.  Just I know that I've gone through the drill, okay?

 5         So just letting you know I am still, you know, all

 6   open to an agreed resolution of this, okay.  But we're going

 7   forward as if you can't get there, okay?

 8         All right.  I'll look for -- what am I going to look

 9   for?  I'm going to look for an order denying the motion to

10   withdraw proof of claim.  I'm going to look for an order

11   granting the -- well, an order resolving the objection to

12   motion to quash and cross-motion for subpoenas saying that

13   these three witnesses are going to appear at a mutually

14   agreeable time either late September or early October.

15         All right.  We're adjourned.

16         THE CLERK:  All rise.

17         MR. MORRIS:  Thank you, Your Honor.

18     (Proceedings concluded at 11:35 a.m.)

19                     *  *  *  *  *

20

21

22

23

24

25

60

**C E R T I F I C A T I O N**

1

2          I, DIPTI PATEL, court-approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  electronic sound recording of the proceedings in the above-

5  entitled matter, and to the best of my ability.

6

7  /s/ Dipti Patel

8  DIPTI PATEL, CET-997

9

10  LIBERTY TRANSCRIPTS          DATE: September 13, 2022

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

App. 2627

Case 19-34054-sgj11   Doc 3519   Filed 09/14/22   Entered 09/14/22 13:43:17   Desc
Case 3:21-cv-00881-X   Document 204-125   Filed 01/09/23   Page 62 of 62   PageID 19811

61