# Appendix Exhibit 128

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., THE DUGABOY INVESTMENT TRUST, THE GET GOOD TRUST, and NEXPOINT REAL ESTATE PARTNERS, LLC, F/K/A HCRE PARTNERS, LLC, A DELAWARE LIMITED LIABILITY COMPANY'S REPLY IN SUPPORT OF THEIR AMENDED RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455 |

## MOVANTS' REPLY IN SUPPORT OF AMENDED RENEWED MOTION TO RECUSE PURSUANT TO 28 U.S.C. § 455

1934054221114000000000009

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................... 1

II.     HCMLP'S ITERATION OF THE "FACTS" IS IRRELEVANT AND WRONG............ 1

        A.      HCMLP Misrepresents The Procedural History Of This Case............................. 2

        B.      HCMLP Misreads The Court's Order On Movants' Motion To
                Supplement ................................................................................................. 4

        C.      HCMLP's Arguments About The Outcome Of Various Rulings Are
                Irrelevant .................................................................................................... 5

        D.      HCMLP Distorts The Factual Record And Fails To Cite Relevant
                Evidence...................................................................................................... 6

        E.      HCMLP's Factual Arguments Only Underscore Why Recusal Is
                Necessary ................................................................................................... 12

III.    HCMLP'S LEGAL ARGUMENTS ARE MERITLESS ............................................. 15

        A.      HCMLP's Argument Regarding Timeliness Is Wrong ...................................... 15

        B.      Movants Do Not Rely On Extrajudicial Bias, Nor Is It Required For
                Recusal....................................................................................................... 17

        C.      There Can Be No Doubt Of The Court's Antagonism For Movants.................. 18

        D.      HCMLP Mischaracterizes The Alternative Relief Sought By Movants.............. 21

IV.     CONCLUSION.......................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baldwin v. Zurich Am. Ins. Co.*,
    2017 WL 2963515 (W.D. Tex. July 11, 2017) ..................................................................13

*Caperton v. A.T. Massey Coal Co.*,
    556 U.S. 868 (2009)..........................................................................................................15

*Davis v. Board of School Com'rs of Mobile Cnty.*,
    517 F.2d 1044 (5th Cir. 1975) ....................................................................................16, 18

*Delesdernier v. Porterie*,
    666 F.2d 116 (5th Cir. 1982) ............................................................................................16

*Dondero v. Hon. Stacey G. Jernigan*,
    Civ. Action No. 3-21-CV-0879-K, Dkt. 39 ...........................................................3, 4, 14, 22

*Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for La. System*,
    286 F. App'x 864 (5th Cir. 2008) .....................................................................................16

*Hill v. Schilling*,
    495 F. App'x 480 (5th Cir. 2012) ................................................................................15, 16

*Johnson v. Sawyer*,
    120 F.3d 1307 (5th Cir. 1997) ..........................................................................................20

*Matter of Johnson*,
    921 F.2d 585 (5th Cir. 1991) ............................................................................................21

*Levitt v. Univ. of Texas at El Paso*,
    847 F.2d 221 (5th Cir. 1988) ............................................................................................17

*Likeky v. United States*,
    510 U.S. 540 (1994)..........................................................................................................17

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (2001)..........................................................................................................21

*NexPoint Advisors, L.P. et al. v. Highland Cap. Mgmt., L.P.*,
    No. 21-10449 (5th Cir. Aug. 19, 2022)..............................................................................14

*Nix v. Major League Baseball*,
    2022 U.S. Dist. LEXIS 104770 (S.D. Tex. June 13, 2022) ................................................9, 10

*Rorrer v. City of Stow,*
    743 F.3d 1025 (6th Cir. 2014) .......................................................................21

*Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co,*
    559 F.3d 888 (8th Cir. 2009) .........................................................................21

*In re Shank,*
    569 B.R. 238 (Bankr. S.D. Tex. 2017) ...........................................................6

*Travelers Ins. Co. v. Liljeberg Enters., Inc.,*
    38 F.3d 1404 (5th Cir. 1994) .........................................................................16

*United States v. Bergrin,*
    682 F.3d 261 (3d Cir. 2012)...........................................................................21

*United States v. Microsoft Corp.,*
    56 F.3d 1448 (D.C. Cir. 1995) .......................................................................21

*United States v. Olis,*
    571 F. Supp. 2d 777 (5th Cir. 2008) ..............................................................16

*United States v. Sanford,*
    157 F.3d 987 (5th Cir. 1998) ...................................................................15, 16

*United States v. Whitman,*
    209 F.3d 619 (6th Cir. 2000) .........................................................................21

*United States v. York,*
    888 F.2d 1050 (5th Cir. 1989) .................................................................16, 17

*United Student Aid Funds, Ins. v. Espinosa,*
    559 U.S. 260 (2010)..........................................................................................6

**Statutes**

28 U.S.C. § 455...............................................................................15, 17, 21

Tex. Civ. Prac. & Rem. Code § 11.054 .................................................13

**Other Authorities**

H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974) .......................................15

App. 2638

## I.   INTRODUCTION

The Objection to Renewed Motion to Recuse ("Objection") filed by Highland Capital Management, L.P. ("HCMLP" or the "Debtor") only underscores why recusal is not just warranted but necessary in this case.  HCMLP devotes only nine pages of its Objection to actual legal argument.  But that argument fails to address or distinguish much of the case law cited in Movants' Amended Renewed Motion to Recuse (the "Renewed Motion") [Doc. 3570] and relies on a litany of irrelevant cases that are easily distinguishable.  The remaining 41 pages of the Objection consist of procedural background (critical parts of which are wrong) and "additional background," which is largely rhetoric designed to exploit the Court's existing bias.

The main thrust of HCMLP's Objection is that the Renewed Motion is untimely and that the Court's rulings are correct and final.  But HCMLP cites the wrong legal standard for timeliness and relies on cases that have nothing to do with the posture of *this* case.  HCMLP's other refrain—that all of the Court's rulings discussed in the Renewed Motion are correct and final—is both ironic (given HCMLP's argument that the Court's order on recusal cannot be considered "final") and irrelevant to the ultimate issue of whether the Court's treatment of Movants is objectively biased such that recusal is appropriate.  HCMLP's only answer to that key question is that the Court has said it is not biased, and so it must be true.  That is not the standard for recusal and provides no basis to deny Movants' Renewed Motion.  The Renewed Motion should be granted.

## II.   HCMLP'S ITERATION OF THE "FACTS" IS IRRELEVANT AND WRONG

HCMLP's 41-page recitation of "facts" is laden with unsubstantiated assertions, misinformation, and irrelevant arguments that appear largely designed to distort rather than educate.  Movants see little utility in addressing many of those statements, which are irrelevant to the underlying question of whether the Court bears an objective bias against Movants requiring recusal.  Instead, Movants address only the most egregious examples of factual misstatements.

App. 2639

A.        **HCMLP Misrepresents The Procedural History Of This Case**

Although not relevant to the legal question of whether recusal is warranted, HCMLP devotes substantial space in its Objection to discussing actions supposedly taken by Mr. Dondero early in the bankruptcy case and seeking to hold those actions against him.  *See, e.g.*, Opp., ¶¶ 1, 30-32, 34.  That is surprising, given that HCMLP's counsel, Pachulski Stang Ziehl & Jones LLP ("Pachulski"), was advising Mr. Dondero before the bankruptcy case was even filed and recommending each of the actions that Mr. Dondero took, starting with its recommendation that he file a chapter 11 bankruptcy on HCMLP's behalf in Delaware.  *See* Supplemental Appendix ("Supp. App'x") Ex. X, Declaration of James D. Dondero ("Dondero Decl."), ¶ 2.  At the time, Pachulski advised Mr. Dondero that there was less than a one percent chance the case would get transferred to this Court.  *Id.*  Incredibly, HCMLP now accuses Mr. Dondero of forum shopping by electing to follow Pachulski's advice.  *See* Obj., ¶¶ 30-31.  Pachulski also mounted a lively argument against transferring the case to this Court based on some of the very same concerns Movants have raised in their recusal motion.  Renewed Mot. at 5 & nn.20-22.[1]

HCMLP also says Mr. Dondero is in no position to complain about the transfer of HCMLP's bankruptcy to this Court because he did not appeal that ruling, but omits the fact that Mr. Dondero did not appeal because *Pachulski advised him he could not to do so.  Id.*  It is exceptionally misleading for *the very counsel that advised these early actions* to argue that Mr. Dondero did something wrong or otherwise sat on his hands.

HCMLP likewise alleges that Mr. Dondero "voluntarily surrendered control of Highland to an independent board of directors" and failed to object to or appeal (and to the contrary,

---

[1] HCMLP argues that Mr. Dondero "controlled Highland and directed its counsel to oppose the Transfer Motion" (Obj., ¶ 34), but that argument rings very hollow when it was Pachulski that advised Mr. Dondero to file the chapter 11 petition in Delaware bankruptcy court in the first place and opposed the motion to transfer at a time when Pachulski (as Debtor's counsel) owed fiduciary duties to the estate to take actions in the best interest of the estate.

"affirmatively approved") the language of the related Settlement Order restricting Mr. Dondero's actions and allowing the Court to sanction him. Obj., ¶¶ 38-39.[2] But again, *Pachulski advised Mr. Dondero* to cede control to an independent board, saying his resignation would expedite the exit from bankruptcy, *Pachulski advised Mr. Dondero* to approve the language of the Settlement Order, and *Pachulski assured Mr. Dondero* that his continued cooperation would work to ensure HCMLP emerged from bankruptcy as a going concern. Dondero Decl., ¶ 3. Importantly, at the time, Mr. Dondero reasonably believed Pachulski was acting as his individual counsel in part because Pachulski never advised him that he (or Strand, for that matter) should obtain separate counsel before taking these significant (and as it turns out, highly disadvantageous) steps. *Id.* ¶¶ 3-4.[3]

Finally, in an effort to justify the Court's treatment of Movants, HCMLP repeatedly invokes the supposed "history and culture of litigiousness" at HCMLP under Mr. Dondero's leadership as well as the "plethora" of rulings and other judgments issued against both Mr. Dondero and his affiliates prior to bankruptcy. *See* Obj., ¶¶ 1, 26, 42. Although Movants dispute HCMLP's characterization of the company's culture prior to bankruptcy, it is worth noting that the decisions made by Highland regarding litigation prior to bankruptcy were not "propagated" solely by Mr. Dondero but were often conceived of and approved by other "human beings," including Thomas Surgent, HCMLP's former and current Chief Compliance Officer, its former

---

[2] Mr. Dondero surrendered his positions at Strand, not HCMLP. *See* Settlement Order, Dkt. 339. Notably, while HCMLP argues that Mr. Dondero "voluntarily surrendered" his positions, HCMLP at the same time argues confusingly and contradictorily that Mr. Dondero was "forced to resign." *Compare* Obj., ¶ 38, *with* Obj., ¶ 32.

[3] HCMLP partially waived the attorney-client privilege as part of its settlement with the Unsecured Creditors Committee. *See* Dkt. 281, ¶ 13; Supp. App'x, Ex. Y, January 21, 2020 Hr'g Tr. at 96:7-13 (Mr. Pomerantz: "The settlement also granted standing to the Committee to investigate and prosecute certain insider claims, along with broad access to the Debtor's books and records, including attorney-client privileged information necessary to prosecute those claims."). At the time, this decision was directly adverse to the interests of Mr. Dondero and Strand, notwithstanding that Pachulski simultaneously advised them to accept the settlement and execute various documents to effectuate it. Under these circumstances, neither HCMLP nor Pachulski may hide behind the attorney-client privilege to avoid disclosure of facts that are directly relevant to the issues raised by HCMLP in its Opposition.

App. 2641

Deputy General Counsel, and its current General Counsel. *See* Obj., ¶ 42. HCMLP conveniently buries Mr. Surgent's significant role in the company's past. Further, HCMLP fails to cite a single pre-bankruptcy ruling or judgment *against Mr. Dondero*, and Movants are aware of none. Nonetheless, HCMLP is content to make this statement repeatedly as though it is fact, which is consistent with what HCMLP has done throughout these bankruptcy proceedings.

### B. HCMLP Misreads The Court's Order On Movants' Motion To Supplement

At the outset of its Objection, HCMLP argues that Movants' Renewed Motion should be rejected because it was filed in violation of the Court's order denying Movants' Motion for Final, Appealable Order and Supplement to Motion to Recuse ("<u>Motion to Supplement</u>"). Obj., ¶ 23 & n.21. That order directed Movants to either (1) file a "simple motion," seeking only a "revised and amended recusal order" but removing language that Movants perceived to impede their appellate rights, or (2) "file a new motion . . . based on alleged new evidence or grounds for recusal" not previously considered by the Court. Order, Dkt. 3479 at 3. Importantly, however, the Court's order on the Motion to Supplement came on the heels of a hearing in which the Court specifically told Movants they could file a "new motion to recuse . . . to start this over *and* supplement the record." App'x at 0210 (emphasis added).[4] HCMLP now argues that what Movants were supposed to file was a motion to recuse limited to new record evidence of bias and nothing more. That argument is both nonsensical and irrelevant.

The entire point of Movants' Motion to Supplement was to ensure that an appellate court, when reviewing Movants' request for recusal, has the benefit of the *entire* record supporting recusal, as Movants made clear in their Motion to Supplement and at the hearing on that motion. *See* Dkt. 3470 at 4; App'x at 0207. If the Court's order were read in the manner suggested by

---

[4] All references to "App'x" are to Movants' Appendix filed concurrently with their Renewed Motion. *See* Dkt. 3542-1 and 3571-1.

App. 2642

HCMLP, that would mean an appellate court could only consider a small portion of the record on appeal from the Court's denial of Movants' Renewed Motion, which would give the appellate court only a fraction of the relevant picture.  That makes no sense, and adopting HCMLP's reading of the order would only further impede Movants' due process right to build an appellate record based on all salient evidence, which is all Movants have been trying to do.  In fact, HCMLP acknowledges that such attempt to restrict the record would be improper, as it admits that the Court must focus on the "entirety of the proceedings."  Obj., ¶ 120.

In any event, HCMLP's argument makes no difference to whether the Court should grant or deny Movants' Renewed Motion.  Movants' basis for recusal is not a single fact or an isolated incident.  Instead, Movants seek recusal based on a pattern of treatment throughout the bankruptcy proceedings that, taken as a whole, demonstrate both the appearance of bias and actual animus toward Movants.  There is no procedural or statutory bar to filing a motion to recuse at any time under these circumstances, based on any record evidence the moving party deems relevant to the issue.  The Court may disagree that the evidence cited supports the relief requested, but Movants' mere inclusion of prior evidence is not a reason to deny the Renewed Motion.

### C.  HCMLP's Arguments About The Outcome Of Various Rulings Are Irrelevant

HCMLP also spends much of its time arguing that various rulings by the Court are final, were not appealed or have been upheld on appeal, or were otherwise correct.  *See, e.g.*, Obj., ¶¶ 6, 12 n.11, 35, 39, 45, 64, 69, 71, 80.  That is irrelevant.  As Movants acknowledged in their Renewed Motion, recusal ordinarily should not be used as a mechanism to challenge the outcome of rulings issued by the courts.  *See* Renewed Mot. at 20.  And that is not what Movants seek to do.  Instead, Movants seek recusal because the Court's *process*—including its overt negative rhetoric, its departure from usual procedures, and its general treatment of Movants—reflects the type of deep-

App. 2643

seeded animosity that would cause any objective observer to question the Court's impartiality.[5]

In short, it does not matter whether the Court "got it right" or not. Recusal is required where, as here, the Court has acted in a manner that is partial, or at the very least appears partial.

### D.    HCMLP Distorts The Factual Record And Fails To Cite Relevant Evidence

HCMLP spills a lot of ink describing (in a manner rife with misstatements and distortions but often lacking citations or evidentiary support) what happened at various hearings cited by Movants in the Renewed Motion as evidence of bias. Again, the outcome of various motions and hearings makes little difference to this analysis. *How* those results came to be, on the other hand, makes all the difference. Thus, in addition to clarifying some of the more egregious misstatements made by HCMLP in the Objection, Movants will also clarify its use of the Court's hearing and rulings to demonstrate the Court's bias.

***The June 2020 CLO Holdco Hearing.*** HCMLP argues the Court's statements and actions at the CLO HoldCo hearing are not evidence of bias because "neither CLOH nor the DAF are Movants." Obj., ¶ 47. HCMLP further argues that Movants have the facts wrong because, HCMLP insists, "the $2.5 million was deposited into the court registry *at CLOH's request*." Obj., ¶ 48 (emphasis in original). Both of these arguments are wrong.

First, it makes no difference that CLOH and the DAF are not Movants in the Renewed Motion. Both HCMLP and the Court have repeatedly argued that every entity remotely connected

---

[5] In any event, it is ironic that HCMLP argues so strenuously that any order on recusal cannot be final when it argues that various other interlocutory orders of this Court are necessarily final. *See* Obj., ¶¶ 3, 67. Notably, the issue of finality in this context is not as simple as HCMLP would have this Court think. In chapter 11 cases, there typically is no "final judgment" the way there is in an ordinary civil case in federal district court. For that reason, courts have held that the order confirming the chapter 11 plan of reorganization is the "final judgment" in bankruptcy. *See, e.g.*, *In re Shank*, 569 B.R. 238, 249 (Bankr. S.D. Tex. 2017) (citing *United Student Aid Funds, Ins. v. Espinosa*, 559 U.S. 260, 269 (2010)). The Plan was confirmed and became effective more than a year ago in this case. The vast majority of HCMLP's assets have been liquidated. Unsecured creditors have been paid a significant percentage of their claims. Yet HCMLP would seemingly have the courts conclude that that the case still is not "final" for purposes of appeal.

to Mr. Dondero is "controlled" by him, including CLOH and the DAF.[6]  Moreover, the whole

point is that the Court's animus toward Mr. Dondero results in the Court treating all of Mr.

Dondero's affiliates (or presumed affiliates) as inherently suspicious, leading to rulings that are at

odds with the evidence and the law.   This is precisely what happened at the CLO Holdco hearing.[7]

Second, HCMLP's argument that CLOH's money was deposited into the Court registry

because CLOH wanted it there is disingenuous at best.   Indeed, even the Debtor argued to the

Court at the hearing that the money should be released to CLOH.  *See* March 4, 2020 Hr'g Tr. at

17:8-22, HCMLP App'x at 3234.   However, when it became apparent that the Court was

disinclined to release the money, Mr. Dondero's counsel proposed that, in the event the Court

denied the motion, the funds at issue should be distributed into the registry of the Court as an

alternative to permitting HCMLP to retain them.  *See id.* at 3260.   CLOH and the DAF certainly

did not request that the Court retain the funds in its registry indefinitely, nor did they argue that

depositing the funds in the Court's registry was the correct course of action.

HCMLP also argues that the Court's actions were not biased because CLOH sought a

release of its money from the Court's registry less than a month later, something HCMLP deems

"evidence of CLOH's bad faith."  Obj., ¶ 19.  Accusing Mr. Dondero and any entity connected to

him of "bad faith" is another favorite tactic of HCMLP, likely because the Court has demonstrated

---

[6] Indeed, one of the reasons that the Court refused to release CLOH's money, despite the Debtor's argument that it should do so, is because Matt Clemente, on behalf of the Unsecured Creditors Committee, argued at the hearing that the Court should disallow the distributions to CLOH and the DAF because those entities were "owned and/or controlled by Mr. Dondero."  HCMLP App'x, at 3245.

[7] HCMLP argues that "Movants cannot have it both ways" and "[e]ither CLOH and the DAF are controlled by Mr. Dondero or they are not."  Obj., ¶ 18.  They are not "related" but are "connected."  But it is HCMLP that is trying to have it both ways: it has argued throughout the bankruptcy proceedings that CLOH and the DAF, like many other entities, are "controlled" by Mr. Dondero, but they take the position in their Objection that the Court's treatment of CLOH and the DAF has nothing to do with him.  In any event, the Plan (a document drafted by HCMLP) identifies CLOH and the DAF as "Related Parties," meaning that HCMLP views Mr. Dondero, CLOH, and the DAF as operating in lock-step.  *See* Plan at 14.

its receptiveness to accusations of bad faith against Mr. Dondero, even when there is no valid basis

for or evidence supporting the accusation. But in this particular instance, the Court did not find

that CLOH was acting in bad faith by seeking a release of money that indisputably belonged to it.

And again, CLOH never agreed that its money could remain in the Court's registry indefinitely.

In any event, HCMLP's argument in this regard is particularly misleading because HCMLP agreed

to the release of CLOH's money. It did so because *there was no good faith reason* to refuse to do

so. Notably, although the parties objecting to the release of CLOH's funds indisputably had no

legal basis to object and no right to the funds (i.e., *zero* ownership interest in the funds), at no time

did the Court comment that their objections were "Rule 11 frivolous" or threaten the objectors

with sanctions.

   ***The December 2020 Restriction Motion.***  HCMLP also argues at length about why the

Court's actions at the hearing on the Restriction Motion do not support recusal. Obj., ¶¶ 51-56.

In particular, HCMLP cites a string of "admissions" from one of HCMLP's former Executive Vice

Presidents, Dustin Norris, to argue that Mr. Norris provided "all of the evidence the Court needed

to reach its conclusion" that Mr. Dondero was the sole person responsible for filing the Restriction

Motion (which sought to prevent the liquidation of certain CLO assets). Obj., ¶¶ 54-55. But

HCMLP conveniently fails to include all of the testimony Mr. Norris provided regarding the

decision by the Retail Funds and the Advisors to file the Restriction Motion.[8] Mr. Norris actually

testified that, while Mr. Dondero vocalized concern about HCMLP's decision to liquidate the CLO

assets, the Advisors' internal legal team, compliance team, and Mr. Norris working with outside

---

[8] The "Retail Funds" are Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. The "Advisors" are Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. Renewed Mot. at 19-20. Although there is no evidence of record that these entities are or were owned or controlled by Mr. Dondero (and HCMLP cites to none), in keeping with its tactic of arguing that every entity is "controlled" by Mr. Dondero, HCMLP labels the Retail Funds and Advisors the "Dondero Parties" and argues that the Retail Funds are "controlled" by him. Obj., ¶¶ 53, 63. They are not.

App. 2646

counsel, along with senior management of Highland Capital Management Fund Advisors decided
to pursue filing the Restriction Motion.  *See* December 16, 2020 Hr'g Tr. at 29:21-30:1, HCMLP
App'x at 3368.  This is the critical testimony, and the Court simply ignored because it did not fit
the narrative that Mr. Dondero is the bad actor behind every legal motion made in HCMLP's
bankruptcy proceeding and nobody around him is able to make their own informed decision.

  ***The January 2021 Injunctive Relief Hearing.***  Drawing on one of its favorite unsupported
themes (i.e., Mr. Dondero as puppet master), HCMLP next argues that the Court's treatment of the
Retail Funds and Advisors at the January 2021 injunctive relief hearing was appropriate because
"Mr. Dondero caused the Advisors and Retail Funds to continue interfering with, and unjustifiably
threatening, Highland."  Obj., ¶ 57.  Of course, HCMLP cites no evidence for this accusation.
Then HCMLP doubles down and it accuses Movants of "failing to disclose key facts" relating to
the hearing.  Obj., ¶ 59.  The first such "fact" is HCMLP's argument that Movants "now admit"
the K&L Gates Letters were improper.  Obj., ¶ 60.  In support of this argument, HCMLP quotes a
short-hand description of the K&L Gates Letters from Movants' original recusal motion.  *Id.*, ¶ 60
n.40.  Movants most certainly did not and do not admit that the K&L Gates Letters were improper.
Those letters did nothing more than tell the Debtor that the Retail Funds and Advisors intended to
*seek the Court's permission* to lift the automatic stay to exercise their contractual rights.

  HCMLP nonetheless argues (again, under the guise of "fact") that the K&L Gates Letters
were "quintessentially vexatious and sanctionable conduct" because they sought previously denied
relief through alternative means.  Obj., ¶ 60 (citing *Nix v. Major League Baseball*, 2022 U.S. Dist.
LEXIS 104770, at *58-65 (S.D. Tex. June 13, 2022)).  It is unclear how a letter explaining the
Retail Funds' and Advisors' intent to seek Court permission to act could possibly be considered
vexatious, and the case cited by HCMLP does not clear up that mystery.  In *Nix*, the plaintiff filed

App. 2647

multiple repetitive lawsuits in various jurisdictions and also lawsuits in the same jurisdiction alleging slightly different causes of action.  2022 U.S. Dist. LEXIS, at \*58-65.  That is vastly different from the situation involved here, where the Retail Funds and Advisors took non-judicial action by asking the Debtor not to liquidate CLO assets at below market value and advising the Debtor that they would seek Court intervention if necessary.

*The January 2021 Examiner Motion.*    HCMLP also argues that the Court's disenfranchisement of Movants makes no difference because Movants "admit" they acted for an improper purpose in seeking the appointment of an examiner in advance of the February 2021 confirmation hearing.   Obj., ¶ 67 (citing Movants' original recusal motion).   Specifically, according to HCMLP, Movants "admit" that they filed a motion for an examiner "to force a delay of the long-scheduled Confirmation Hearing."  *Id.*  But the quote HCMLP cites (which is from Movants' original recusal motion as opposed to the Renewed Motion) is taken out of context.  The very next sentence of the original recusal motion explains that Movants sought to have the examiner motion heard on an *expedited basis* to *prevent* delay of the confirmation hearing, which might occur if the motion was heard on an ordinary schedule.  *See* Original Recusal Mot., Dkt. 2061, ¶ 37.[9]  Rather than provide expedited relief—something the Court has done many times at HCMLP's request—the Court set the hearing on Movants' motion on a date *after* the scheduled confirmation hearing, ensuring that Movants could not be meaningfully heard because, as the Court knew, an examiner cannot be appointed after plan confirmation.[10]

*Orders Requiring Mr. Dondero to Appear.*   HCMLP does not meaningfully dispute that

---

[9] Notwithstanding that HCMLP ignores the context of the quote it relies on (which actually shows that Movants' intent was the opposite of delay), HCMLP deems Movants' act of filing the examiner motion "quintessentially vexatious." Obj., ¶ 67.

[10] For that reason, HCMLP's observation that "[n]o party appealed the denial of the Examiner Motion" makes no sense.  As HCMLP's counsel is no doubt aware, an examiner cannot be appointed after plan confirmation, so any appeal of the Court's order would have been futile and no doubt would have been labeled by HCMLP as "vexatious."

the Court took the extraordinary measure of requiring Mr. Dondero to appear at all hearings, including hearings that had nothing to do with him.  Instead, HCMLP argues (without citation) that Mr. Dondero proved that the Court's order was appropriate when he "subsequently failed to appear at a hearing thereby validating the Court's concerns."  Obj., ¶ 76.  This accusation is highly disingenuous.  As Mr. Dondero's counsel explained on the record at that hearing, the motion at issue (a motion to continue) was set on an expedited basis, Mr. Dondero's counsel was not aware that Mr. Dondero needed to attend non-evidentiary hearings in the main bankruptcy case and, therefore, counsel failed to coordinate with Mr. Dondero to apprise him of the hearing and his need to appear, which counsel admitted was an "oversight" on counsel's part.[11]  In other words, there is no evidence that Mr. Dondero deliberately flouted the Court's order.  Notwithstanding counsel's admission that the mistake was his, the Court *sua sponte* issued a new order requiring Mr. Dondero to appear at every hearing going forward, whether substantive or not, and whether he took a position on the issue to be heard or not.  *See* Order dated May 24, 2021, Dkt. 2362.

HCMLP also strenuously argues that the Court "*never* ordered Nancy Dondero to appear at any hearings."  Obj., ¶ 77.  But HCMLP admits that the Court *did* order the trustee of The Dugaboy Investment Trust ("Dugaboy") and Get Good Trust to attend any hearings involving those entities or hearings at which those entities took a position.  Order, Dkt. 2458.  And the Court knew at that point that Mr. Dondero's sister, Nancy Dondero, was the acting trustee of Dugaboy.  The Court only ordered the trustees to appear because it "ha[d] concerns whether these Trusts [were] simply acting at the direction of Mr. Dondero and are not independent parties."  *Id.* at 3.  In other words, the Court's order intentionally targeted Mr. Dondero.[12]  In the more than three years

---

[11] *See* Supp. App'x, Ex. Z, May 20, 2021 Hr'g Tr. at 17:20-22:26.

[12] HCMLP also argues that the Court's order requiring the trustees for Dugaboy and Get Good to appear at hearings was much narrower than the order regarding Mr. Dondero.  Obj., ¶ 77.  While the Court did not order the trustees to attend all hearings, the order was nonetheless incredibly broad.  It required Ms. Dondero as trustee to attend "all future

since this bankruptcy proceeding began, the Court has not ordered any other party to attend all hearings.

**Other Supposed "Facts".**   In addition to these factual misstatements and distortions, HCMLP also fails to cite evidence and, on numerous occasions, couches allegations as fact.  By way of example only:

- HCMLP makes numerous statements of supposed "fact" without citing any evidence to support the allegation, including, but not limited to:  Obj., ¶¶ 28 (Mr. Dondero and his entities are legion), 30 (chapter 11 filed in Delaware because Mr. Dondero thought it would be a more hospitable forum), 37 (settlement was necessary due to Dondero entities' history of self-dealing), 42 (Mr. Dondero and his entities have a history of litigiousness supported only by a footnote that is further factual argument rather than evidence to support such an allegation), 57 (Mr. Dondero continued to cause advisors to interfere with HCMLP), 63 (Mr. Dondero controls all of the Dondero entities and causes them to attempt to reassert control over HCMLP), 82 (Movants filed the HV Complaint).

- HCMLP repeatedly attributes actions to the Movants that the Movants did not take and calls every party it describes a "Dondero party," again without citation to any evidence of ownership, control, or even involvement.  *See, e.g.*, Obj., ¶ 1, 53, 63, 82, 85.

- In describing the Court's "experience with Mr. Dondero," HCMLP cites (as one example of Mr. Dondero's prior "bad acts") that "Mr. Dondero allegedly orchestrated a fraudulent transfer of assets that left the Acis debtors judgment proof."  Obj., ¶ 29.  It is unclear how an unsubstantiated "allegation" could support this Court's opinions of Mr. Dondero, but this highlights the problem.

HCMLP's recitation of supposed facts falls well short of providing any viable reason to reject Movants' Renewed Motion.

### E.   HCMLP's Factual Arguments Only Underscore Why Recusal Is Necessary

What is perhaps most telling about HCMLP's recitation of "facts" is its tendency to repeatedly emphasize those points that it believes will resonate with this Court, even where the

---

hearings in th[e] Bankruptcy Case in which the Trusts have taken or are taking a position."  Order, Dkt. 2458, at 3. The order further clarified: "This directive does not apply merely to evidentiary hearings or "substantive" hearings, and [sic] it applies to the underlying bankruptcy case as well as related adversary proceedings in which the Trusts are parties or take positions."  *Id.*

12

point is untethered to fact.

Most notably, HCMLP repeats its allegations that the problem here is not judicial bias but "the never-ending, meritless, vindictive, and vexatious litigation strategy that Mr. Dondero stubbornly clings to regardless of the burdens imposed on the judicial system, the havoc wrought, and the damages inflicted on himself, Highland's creditors, and even his own steadfast loyalists." Obj., ¶ 2. That statement is remarkably ironic, for a number of reasons. First, as HCMLP acknowledges, "[t]his Court did *not* find or conclude that Movants are 'vexatious litigants.'" *Id.*, ¶ 71 n. 43 (emphasis in original).[13] Nonetheless, HCMLP uses that adjective to describe Mr. Dondero no less than *12 times* in its Objection alone.[14] HCMLP goes as far as using an out-of-context quote to describe Movants as "quintessentially vexatious."[15] "Vexatious" is also the adjective most used by HCMLP and its counsel to describe Mr. Dondero when arguing before this Court.[16] Consequently, it only makes sense that the adjective: (1) found its way into the Court's order confirming HCMLP's Fifth Amended Plan of Reorganization (as Modified) (the "Plan"), (2) provided the purported justification for the Court to adopt a sweeping channeling provision, and

---

[13] Under Texas law, a Court "'may find a *plaintiff* a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant' and one of three additional prerequisites has occurred within the last seven years … These additional elements include (1) the filing of at least five suits as a *pro se* litigant that have been dismissed against the plaintiff; (2) relitigating a case *pro se* after having previously received an adverse and final determination; and (3) a prior finding in state or federal court that the plaintiff is a vexatious litigant in an action concerning the same or substantially similar facts." *Baldwin v. Zurich Am. Ins. Co.*, 2017 WL 2963515, *4 (W.D. Tex. July 11, 2017) (citing Tex. Civ. Prac. & Rem. Code § 11.054).

[14] Obj., ¶¶ 2, 60, 67, 70, 71, 95, 97, 100; *see also id.*, ¶ 42 (describing the "culture of litigiousness" under Mr. Dondero's control).

[15] Obj., ¶¶ 67.

[16] *See, e.g.*, Dkt. 1828, ¶ 22 ("Exculpation is particularly appropriate in this case to stem the tide of frivolous and vexatious litigation against the Exculpated Parties which Dondero and his Related Entities are seeking so desperately to continue to pursue."); Dkt. 3487 at 2 ("abruptly moving to withdraw its Dondero-signed proof of claim after two years of litigation, and after taking Highland's deposition but days before its own Witnesses were to be deposed, is a textbook example of vexatiousness—and is just the latest instance of Mr. Dondero bringing motions, or asserting claims, or filing objections, only to withdraw them after forcing Highland to spend time, money, and effort addressing them."); Dkt. 3550, ¶ 22 ("The Gatekeeper was created to give Highland, among others, breathing room to consummate the Plan and manage Highland's assets free from Mr. Dondero's vexatious and harassing litigation for the benefit of all creditors.").

App. 2651

(3) has been subsequently regurgitated by appellate courts, as if there has been some finding or legal basis to declare Mr. Dondero "vexatious."[17]  There has not, which is why the Court's ubiquitous use of the term is so problematic and so emblematic of the Court's bias.

HCMLP likewise repeats the same tired accusation that a myriad of "courts and arbitration panels" in various states and foreign jurisdictions have adjudicated claims or ruled against Mr. Dondero.  Obj., ¶¶ 1, 6.[18]  HCMLP does not cite any examples of such judgments or rulings, because there are none.[19]  That reality does not seem to bother HCMLP; instead, HCMLP merely argues that the actual parties involved in those legal battles were controlled by Mr. Dondero, so the Court should attribute any bad findings to him.  Obj., ¶ 28 n.7.  Despite being legally and factually unsupported, the Court has previously adopted that logic, which is why HCMLP employs it here.

More importantly, it makes no difference whether *other* courts have ruled against parties controlled by Mr. Dondero on other issues.  The Due Process Clause of the United States Constitution requires an impartial and disinterested tribunal.  *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877 (2009) ("It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process.").  Section 455 was enacted because litigants "ought not have to face a judge where there is a reasonable question of impartiality."  H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 6351, 6355.  Movants are entitled to fair treatment in *this* Court on the evidentiary record actually before it.

---

[17] *See, e.g.*, *NexPoint Advisors, L.P. et al. v. Highland Cap. Mgmt., L.P.*, No. 21-10449 (5th Cir. Aug. 19, 2022), Opinion at 8, 14.

[18] *See also id.*, ¶ 28 (claiming that "[t]he adverse rulings *against Mr. Dondero* and his entities are legion," but citing none).

[19] The only actual examples cited by HCMLP are the arbitration award issued in favor of the Redeemer Committee against HCMLP, and a discovery ruling issued by the Delaware Chancery Court in a totally separate proceeding.  Obj., ¶¶ 26-27 & nn.25-26.  But again, neither the arbitration award or the discovery ruling were issued against Mr. Dondero.

## III.    HCMLP'S LEGAL ARGUMENTS ARE MERITLESS

### A.    HCMLP's Argument Regarding Timeliness Is Wrong

Throughout its Objection, HCMLP repeatedly references the timing of Movants' Renewed Motion, arguing that the length of time that has passed since various rulings issued by the Court makes the Renewed Motion "per se" untimely.  Obj., ¶¶ 102, 108.  HCMLP's argument misstates the law and misses the point.

As a preliminary matter, the Fifth Circuit Court of Appeals has never adopted a "*per se* untimeliness*" rule.  To the contrary, the Fifth Circuit has expressly "declined" to do so.  *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998).  Indeed, even in *Hill v. Schilling*, 495 F. App'x 480, 483 (5th Cir. 2012)—the case cited by HCMLP for its "per se untimeliness" argument—the Fifth Circuit did not adopt or apply a per se rule.  Instead, the Court, faced with *a single alleged act* of judicial impropriety, explained that "*the closest thing to* per se untimeliness" occurs "when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal."  *Hill*, 495 F. App'x at 483 (emphasis added).  In *Hill*, unlike here, the movants sought recusal based solely on their allegation that the trial judge's spouse held an economic interest in one of the parties.  *Id.*  Despite knowing about the economic interest for some time, the movants proceeded through trial and did not move to recuse the judge until after receiving an unfavorable judgment.  *Id.*  In that very different circumstance, the Fifth Circuit agreed that the motion to recuse was untimely.[20]

---

[20] The entirety of the case law cited by HCMLP is similarly inapposite.  In each of those cases, there was a single alleged basis for recusal, either the judge's personal relationship with one of the parties or the judge's economic interest in the outcome of the litigation.  *See Sanford*, 157 F.3d at 988 (recusal based on fact that one party's counsel previously testified against judge); *United States v. Olis*, 571 F. Supp. 2d 777, 783 (5th Cir. 2008) (recusal based on judge's alleged social contacts with interested parties); *Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for La. System*, 286 F. App'x 864, 867 (5th Cir. 2008) (recusal based on court's prior working relationship with counsel, a former judge of the same court); *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)

The Fifth Circuit's reasoning in *Hill* (and the remaining cases cited by Movants) has no application to this case, where Movants assert a *pattern of conduct* that, taken as a whole, reveals both the appearance of bias and actual animus towards Movants. *See Davis v. Board of School Com'rs of Mobile Cnty.*, 517 F.2d 1044, 1051 (5th Cir. 1975) (grounds for recusal exist "where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party"). Nor is this a situation where Movants have employed a "wait and see" approach and only sought recusal after an adverse judgment. As HCMLP itself argues, nothing in this case is "final," the Kirschner litigation (which the Court has recommended it should retain through trial) is in its nascent stages, the Court continues to preside over several other adversary proceedings involving Movants, and the Plan allows the Court to sit as gatekeeper over any potential disputes even touching upon the Plan. Movants seek recusal now because the Court's bias and animus represents a *continuing and ongoing harm* that can only be remedied if a non-biased fact-finder presides over the myriad proceedings still before the Court. There is no timing issue under these circumstances.

Further, HCMLP's contention that concerns of judicial economy render the Renewed Motion untimely is also wrong. As Movants explained in their opening brief, the goal of 28 U.S.C. § 455 is to promote public confidence in the judicial system by avoiding *even the appearance* of partiality. *See* Renewed Mot. at 19-20; *see also Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 226 (5th Cir. 1988). For that reason, courts addressing this issue have consistently chosen impartiality over judicial economy, including in cases where recusal was sought only on remand after trial. *See* Renewed Mot. at 23 & n.122 (citing cases). As these courts have explained, "the

---

(recusal based on judge's social contacts with interested parties); *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989) (recusal based on judge's knowledge of extrajudicial facts as a result of familial relationship with one party); *Delesdernier v. Porterie*, 666 F.2d 116, 122 (5th Cir. 1982) (recusal based on court's prior working relationship with counsel).

App. 2654

gain in protecting against actual bias, prejudice, or conflict of interest outweighs the loss to judicial

economy . . ." *See, e.g.*, *York*, 888 F.2d at 1055. Judicial economy is not more important than

impartial justice and certainly is no reason to deny the Renewed Motion.

### B.    Movants Do Not Rely On Extrajudicial Bias, Nor Is It Required For Recusal

HCMLP next contends that the "core" of the Renewed Motion is extrajudicial bias, which

it claims does not exist. Obj., ¶ 113. This is a gross mischaracterization of Movants' arguments.

Movants expressly do not rely on extrajudicial bias as the basis for recusal, nor is extrajudicial bias

a prerequisite to recusal, as Movants explained in their opening brief. *See* Renewed Mot. at 20

n.102, 103. Rather, in *Liteky*, a case on which HCMLP principally relies, the Supreme Court

clarified that extrajudicial bias, while a common basis for establishing grounds for recusal, is not

the exclusive means. *Likeky v. United States*, 510 U.S. 540, 551, 554 (1994) ("The fact that an

opinion held by a judge derives form a source outside judicial proceedings is not a *necessary*

condition for 'bias or prejudice' recusal, since predispositions developed during the course of a

trial will sometimes (albeit rarely) suffice."). It bears repeating that "judicial remarks during the

course of a trial" that "reveal such a high degree of favoritism or antagonism as to make fair

judgment impossible," *will* support a bias or partiality challenge. *Id.* at 555; Renewed Mot. at 21.

The Fifth Circuit recognized this "pervasive bias" exception to the extrajudicial bias doctrine even

before *Liteky*. *See Davis*, 517 F.2d at 1051.

In any event, as HCMLP acknowledges, Movants do point to at least one instance in which

the Court relied on an extrajudicial source—a news article that the Judge read—to make inquiries

about whether HCMLP applied for or received COVID-related Payroll Protection Plan ("PPP")

loans. Obj., ¶ 46 n. 64. HCMLP nonetheless argues that the Court's reliance on an extrajudicial

source is not evidence of bias because the Court took no action against Mr. Dondero or Movants

and only required HCMLP to respond to the Court's inquiries. *Id.* HCMLP misses the point. The

reason that Movants cite this particular example is because the Court raised the issue of PPP loans

only because of the Court's unfavorable perception (untethered to any factual basis) of Mr.

Dondero. Specifically, the Court stated that it had "extrajudicial knowledge thanks to keeping up

with current events" and openly questioned in Court whether "Mr. Dondero or Highland affiliates"

*improperly* obtained PPP loans.[21] An exchange then occurred between the Court and HCMLP's

counsel in which HCMLP's counsel represented that the Debtor had not obtained a PPP loan but

that he had "no way of answering" whether "Mr. Dondero, or any of his affiliated funds" had done

so.[22] As a result, the Court required Debtor's counsel to investigate whether any such loan had

been obtained and to report back to the Court, explaining "you can probably imagine the different

things going through my brain," and clarifying, "I'm not expecting it to be Highland Capital

Management, LP."[23] In short, the Court directed HCMLP to investigate Mr. Dondero and his

affiliates for suspected wrongdoing based on an admittedly extrajudicial source. That is evidence

of bias based on an extrajudicial source that weighs in favor of recusal.

### C.     There Can Be No Doubt Of The Court's Antagonism For Movants

HCMLP next argues that there is no basis to find that the Court has demonstrated the degree

of favoritism or antagonism necessary for recusal. Obj., ¶ 22. However, in making this argument,

HCMLP cites little more than the Court's own subjective denial of bias. *See* Obj., ¶ 12 (quoting

Court's statements that it has "the utmost respect for [Movants]" and "no disrespect for Mr.

Dondero"); *id.* at ¶ 119 (noting the Court's characterization of its statements as mere "clashes

between a court and counsel" that are "simply insufficient" for recusal). That cursory response

ignores the substantial body of statements made by the Court throughout these proceedings,

---

[21] Movants' App'x, Ex. E at 42:10-20.

[22] *Id.* at 42:25-43:22.

[23] *Id.* at 43:13-22.

App. 2656

including statements where the Court accuses Mr. Dondero and his affiliates of wrongdoing (often based on little more than suspicion), describes them as bad actors, and determines that they lack credibility in virtually every situation in which they are called to give testimony.[24]

HCMLP's response also ignores the substantial body of case law cited in Movants' opening brief, which contain examples of bias warranting recusal that were far less egregious than what has occurred in this case.  If, as HCMLP insists, the Court focuses on the "entirety of the proceedings" (Obj., ¶ 120), there can be no doubt that the Court's statements amount to much more than mere "clashes between a court and counsel."  The Court's negative statements about Mr. Dondero and his affiliates are so consistent and pervasive that they have been regurgitated ad nauseum by his detractors, adopted by HCMLP as a method of bolstering almost every argument it makes before this Court, and repeated by appellate courts even when this Court's statements do not amount to true "findings" of fact.  By way of summary, the Court has:

- admitted that the negative opinions the Court formed about Mr. Dondero during the Acis Bankruptcy cannot be excised from the Court's mind;

- made repeated references to proceedings in the Acis Bankruptcy to justify findings in the HCMLP proceedings that are not otherwise supported by this bankruptcy record;

- made repeated negative statements about Mr. Dondero, as well as entities and individuals that the Court perceives to have some relationship to Mr. Dondero, in connection with the Court's ruling;

- repeatedly threatened Mr. Dondero and his counsel with sanctions, questioned Movants' good faith, or concluded Movants were acting in bad faith for simply: (1) defending lawsuits and motions; (2) asserting valid legal positions; and/or (3) preserving their rights, including in the exact manner in which others have been permitted to do so (e.g., the US Trustee's objections to the Plan);

---

[24] *See, e.g.*, January 26, 2021 H'rg Tr. at 240:14-20 (The Court to Mr. Dondero: "But the more I hear, the more I feel you're just trying to burn the house down. Okay? Maybe it's an either/or proposition with you: I'll either get my company back or I'll burn the house down. That's what it feels like."); Confirmation Order, Dkt. 1943 at ¶ 19 ("[T]he Bankruptcy Court questions [the objectors'] good faith.  Specifically, the Bankruptcy Court considers them all to be marching pursuant to the orders of Mr. Dondero.").

App. 2657

- sanctioned Mr. Dondero in connection with a motion that he and others testified he had no role in filing or responsibility for authorizing;

- prophylactically sanctioned Mr. Dondero and other entities and counsel if and when they assert their lawful appellate rights;

- disregarded the presumption that related corporations have institutional independence and concluded, without supporting evidence, that any entity the Court demes to be connected to or controlled by Mr. Dondero (i.e., including highly regulated, publicly-traded funds governed by independent boards) is essentially no more than a tool of Mr. Dondero;

- disregarded the testimony of any witness with a connection to Mr. Dondero as per se less credible, which includes attorneys and persons who owe fiduciary duties and ethical obligations; and

- ruled against Mr. Dondero and Movants at ever possible opportunity, regardless of the evidence and the testimony before the Court.

In its Renewed Motion, Movants cited the Court to several cases in which the courts held that the same type of obvious antagonism displayed here was sufficient to require recusal. Renewed Mot. at 7 n.32, 9 n.40, 22 n.114. HCMLP does not attempt to address those cases, much less distinguish them. And many of those cases involve much less antagonism than what is at issue here. *See e.g.*, *Johnson v. Sawyer*, 120 F.3d 1307, 1334-38 (5th Cir. 1997) (appearance of bias found based on judicial remarks like: the court had a "bone to pick" with the Internal Revenue Service; questioning the witness's integrity because the testimony contradicted the court's prior order; expressing concern post-trail about the conduct of the lawyers; attributing assertions to the wrong counsel); *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co*, 559 F.3d 888, 904-05 (8th Cir. 2009) (a "sufficiently high degree of antagonism" was found where the court directed profanities at Plaintiffs or Plaintiffs' counsel, denied Plaintiffs a meaningful opportunity to respond to Defendants' argument that misconstrued the court's prior orders, and dismissed Plaintiff's attempt to explain those orders); *see also United States v. Microsoft Corp*., 56 F.3d 1448, 1464 (D.C. Cir. 1995) (noting "the district judge's failure to accord any weight to Microsoft's interests in making

App. 2658

its determination adds to the appearance of bias in this case").

The test for disqualification is simple: would it appear to a reasonable person that the court's impartiality may be questioned?  28 U.S.C. § 455(a); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850 (2001).  A cursory review of the record from these proceedings makes the answer to that question an easy "yes" here.  The Court's orders targeting Mr. Dondero (and those the Court deems associated with him) compromise the appearance of justice.  *Rorrer v. City of Stow*, 743 F.3d 1025, 1049-50 (6th Cir. 2014) (finding the appearance of impartiality from the court's issuance of a one-sided discovery order that limited the number of witness plaintiff may call without explanation or apparent rationale).  So do the Court's consistent expressions suggesting it has already decided Mr. Dondero is a bad actor.  *See Matter of Johnson*, 921 F.2d 585, 587 (5th Cir. 1991) (judge abused discretion in declining to recuse where the record included statements that the judge "all but made up [his] mind as to what he was going to do in the case and that he was "not in the least inclined to be neutral"); *United States v. Bergrin*, 682 F.3d 261, 283-84 (3d Cir. 2012) (the court's repeated expressions of discomfort with the manner in which an indictment was plead allowed the court's impartiality to reasonably be questioned); *United States v. Whitman*, 209 F.3d 619, 625-26 (6th Cir. 2000) (the court's impromptu lecture of defendant's counsel's attitude during proceedings "had the unfortunate effect of creating the impression that the impartial administration of the law was not his primary concern"). Viewed wholistically, this record is more than sufficient to raise the appearance of partiality.

### D.    HCMLP Mischaracterizes The Alternative Relief Sought By Movants

Finally, HCMLP argues that this Court has no authority to grant Movants' request to issue a ruling on Movants' Renewed Motion that eliminates the retention of jurisdiction language that appeared in the Court's prior order denying recusal.  According to HCMLP, "it is not for this Court to determine whether its orders are final and appealable," and the Court "has no authority" to enter

App. 2659

an order of the type requested by Movants.  Again, HCMLP mischaracterizes the relief sought by Movants and is wrong.

Contrary to HCMLP's argument, Movants do not expect (and do not ask) this Court to make any *ruling* that its order on recusal is final, or to otherwise include language of finality. Movants merely ask the Court to *eliminate* any existing "reservation" language that could be construed by an appellate court as rendering the order non-final on the issue.  As Movants have now explained multiple times, when Movants appealed this Court's denial of their original motion to recuse, the District Court held it lacked jurisdiction to consider the appeal because the Bankruptcy Court's ruling was non-final.  *See* Renewed Mot. at 2 & n.6; *see also* Movants' App'x, Ex. U at 5:11-6:9.  In describing the Bankruptcy Court's order, the District Court expressly noted the last sentence of that order, in which the Bankruptcy Court "reserve[d] the right to supplement or amend th[e] ruling."  *Id.*; *see also Dondero v. Hon. Stacey G. Jernigan*, Civ. Action No. 3-21-CV-0879-K, Dkt. 39 at 2.  HCMLP itself argued on appeal that this reservation of rights language was important and impeded finality because "Judge Jernigan's potential future supplementation or amendment of the Recusal Order 'might change the calculus' of the order."  *See id.*, Dkt. 31 at 5. Movants simply ask this Court to remove any perceived impediment to appellate review.

For that reason, HCMLP's argument that the Court does not have authority to give the alternative relief requested by Movants makes no sense.  This Court can obviously craft its orders using whatever language (or eliminating any language) it sees fit.  That is all Movants ask the Court to do.  HCMLP's final argument should be rejected.

## IV.  CONCLUSION

It is time to put motion practice relating to recusal to an end.  Movants respectfully request that the Court consider the *entirety* of the record supporting recusal and issue an order on Movants' motion that accounts for the lengthy history of this case and the whole body of evidence presented.

App. 2660

Movants also request that the Court issue an order that does not contain reservation of rights or other limiting language that could be later interpreted by an appellate court as an impediment to appellate jurisdiction.

Dated: November 14, 2022                    Respectfully submitted,

                                            **CRAWFORD, WISHNEW & LANG PLLC**


                                            */s/ Michael J. Lang*
                                            Michael J. Lang
                                            Texas State Bar No. 24036944
                                            mlang@cwl.law
                                            1700 Pacific Ave, Suite 2390
                                            Dallas, Texas 75201
                                            Telephone: (214) 817-4500

                                            *Attorneys for Movants*



## CERTIFICATE OF SERVICE

The undersigned certifies that on November 14, 2022, a true and correct copy of the above and foregoing document was served on all parties and counsel set to receive notice by the Court's ECF system.

                                            */s/ Michael J. Lang*
                                            Michael J. Lang

App. 2661