# Appendix Exhibit 129

No.

# In the Supreme Court of the United States

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Petitioner,*

v.

NEXPOINT ADVISORS, L.P., *et al.,*

*Respondents.*

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The Fifth Circuit**

**PETITION FOR A WRIT OF CERTIORARI**

JEFFREY N. POMERANTZ
JOHN A. MORRIS
GREGORY V. DEMO
PACHULSKI STANG ZIEHL
  & JONES LLP
10100 Santa Monica Blvd.,
13th Fl.
Los Angeles, CA 90067

ROY T. ENGLERT, JR.
  *Counsel of Record*
MATTHEW M. MADDEN
PAUL BRZYSKI
SHIKHA GARG
  KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
2000 K Street NW, 4th Fl.
Washington, DC 20006
(202) 775-4500
renglert@kramerlevin.com

*Counsel for Petitioner*

1934054230118000000000002

## QUESTION PRESENTED

Section 524(e) of the Bankruptcy Code states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." According to the Fifth Circuit, even though the text refers to the effect of a discharge rather than to the powers of a bankruptcy court, section 524(e) "categorically bars" a court from confirming any chapter 11 plan of reorganization that releases third parties from liability, either in full or through their limited exculpation for negligence claims relating to the administration of the bankruptcy estate as in this case.

In the opinion below, the Fifth Circuit acknowledged that, by contrast, the Second, Third, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits "read[] § 524(e) to allow varying degrees of limited third-party exculpations."

The question presented is whether section 524(e), as its text suggests, states only the effect of a discharge on third parties' liability for a debtor's own debts or instead, as the Fifth Circuit holds, constrains the power of a court when confirming a plan of reorganization.

(i)

ii

## PARTIES TO THE PROCEEDING

Petitioner is Highland Capital Management, L.P., the reorganized chapter 11 debtor in the bankruptcy proceedings below, and the appellee in the court of appeals.

Respondents are NexPoint Advisors, L.P., NexPoint Asset Management, L.P., Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global Allocation Fund, NexPoint Capital, Incorporated, James Dondero, The Dugaboy Investment Trust, and Get Good Trust. Respondents were the appellants in the court of appeals.

## CORPORATE DISCLOSURE STATEMENT

Highland Capital Management, L.P., has no parent corporation, and no publicly held company owns 10% or more of its stock.

## DIRECTLY RELATED PROCEEDINGS

United States Court of Appeals (5th Cir.):

*Highland Capital Management Fund Advisors, L.P., et al.* v. *Highland Capital Management, L.P.*, No. 22-10189

*NexPoint Advisors, L.P.* v. *Pachulski Stang Ziehl & Jones, L.L.P., et al.*, No. 22-10575

*The Dugaboy Investment Trust* v. *Highland Capital Management, L.P.*, No. 22-10831

*James Dondero* v. *Highland Capital Management, L.P.*, No. 22-10889

*The Dugaboy Investment Trust* v. *Highland Capital Management, L.P.*, No. 22-10960

*The Charitable DAF Fund, L.P., et al.* v. *Highland Capital Management, L.P.*, No. 22-11036

iii

**DIRECTLY RELATED PROCEEDINGS—Cont'd**

*The Dugaboy Investment Trust* v. *Highland Capital Management, L.P.*, No. 22-10983

United States District Court (N.D. Tex.):

*Highland Capital Management, L.P., et al.* v. *Highland Capital Management Fund Advisors L.P.*, No. 3:21-cv-881 (consolidated cases: 3:21-cv-880, 3:21-cv-1010, 3:21-cv-1378, 3:21-cv-1379)

*The Charitable DAF Fund, L.P., et al.* v. *Highland Capital Management, L.P.*, No. 3:21-cv-1585

*NexPoint Advisors, L.P., et al.* v. *Highland Capital Management, L.P.*, No. 3:22-cv-02170

*The Charitable DAF Fund, L.P., et al.* v. *Highland Capital Management, L.P.*, No. 3:22-cv-02280

United States Bankruptcy Court (N.D. Tex.):

*In re: Highland Capital Management, L.P.*, No. 19-34054

App. 2666

iv

## TABLE OF CONTENTS

Page

Opinions below ........................................................ 1
Jurisdiction.............................................................. 1
Statutory provisions involved ................................. 1
Statement ............................................................... 2
    A.   Legal background ..................................... 6
    B.   Factual and procedural background........ 7
        1.  The parties ......................................... 7
        2.  Petitioner's chapter 11 bankruptcy.... 7
        3.  The appeal......................................... 11
Reasons for granting the petition .......................... 12
    A.   There is an acknowledged and
        substantial circuit split .......................... 13
    B.   The question presented is a recurring
        and important issue ............................... 18
    C.   The Fifth Circuit's approach is wrong... 21
    D.   This case is an ideal vehicle for
        resolving this important question ......... 22
Conclusion ............................................................. 23
Appendix A: Court of appeals opinion,
              September 7, 2022 ........................... 1a
Appendix B: Bankruptcy court order,
              February 22, 2021......................... 39a
Appendix C: Court of appeals judgment,
              August 19, 2022 .......................... 161a

v

# TABLE OF AUTHORITIES

**Cases**

*Blixseth* v. *Credit Suisse,*
  961 F.3d 1074 (9th Cir. 2020), cert.
  denied, 141 S. Ct. 1394 (2021) ................... 13, 14

*Butner* v. *United States,*
  440 U.S. 48 (1979) ............................................ 20

*In re A.H. Robins Co.,*
  880 F.2d 694 (4th Cir. 1989) ............................ 14

*In re Airadigm Commc'ns, Inc.,*
  519 F.3d 640 (7th Cir. 2008) ................. 14-16, 21

*In re Dow Corning Corp.,*
  280 F.3d 648 (6th Cir. 2002) ....................... 13, 14

*In re Enron Corp.,*
  326 B.R. 497 (S.D.N.Y. 2005) ........................... 18

*In re Metromedia Fiber Network, Inc.,*
  416 F.3d 136 (2d Cir. 2005) ................. 13, 14, 19

*In re Pacific Lumber Co.,*
  584 F.3d 229 (5th Cir. 2009) ........... 11, 16-17, 21

*In re Purdue Pharma L.P.,*
  633 B.R. 53 (Bankr. S.D.N.Y. 2021) ................. 22

*In re Purdue Pharma, L.P.,*
  635 B.R. 26 (S.D.N.Y. 2021), appeal
  pending, No. 22-110 (2d Cir.) (argued
  Apr. 29, 2022) .................................. 13-14, 19, 22

*In re PWS Holding Corp.,*
  228 F.3d 224 (3d Cir. 2000) .......................... 3, 14

*In re Seaside Eng'g & Surveying, Inc.,*
  780 F.3d 1070 (11th Cir. 2015) .................. 13, 15

*In re Western Real Est. Fund, Inc.,*
  922 F.2d 592 (10th Cir. 1990) (per
  curiam) ....................................................... 17-18

App. 2668

vi

## TABLE OF AUTHORITIES—Cont'd

*Travelers Indem. Co.* v. *Bailey*,
   557 U.S. 137 (2009)............................................ 20
*United States* v. *Energy Res. Co.*,
   495 U.S. 545 (1990).................................... 16, 21

## Constitution
U.S. Const. Art. I, § 8, Cl. 4 .................................. 19

## Statutes
Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*
   11 U.S.C. § 105(a) ............................................ 16
   11 U.S.C. § 523................................................... 2
   11 U.S.C. § 523(c)................................................ 2
   11 U.S.C. § 523(d) .............................................. 2
   11 U.S.C. § 524............................................... 1, 6
   11 U.S.C. § 524(a) .......................................... 4, 6
   11 U.S.C. § 524(e)............3-7, 11-13, 15-19, 21-23
   11 U.S.C. § 541(a)(2) .......................................... 2
   11 U.S.C. § 727............................................... 1, 6
   11 U.S.C. § 944............................................... 1, 6
   11 U.S.C. § 1103(c) .......................................... 17
   11 U.S.C. § 1123(b)(6) ............................. 4, 16, 21
   11 U.S.C. § 1141................................................. 1
   11 U.S.C. § 1192........................................... 1, 2, 6
   11 U.S.C. § 1228........................................... 1, 6
   11 U.S.C. § 1228(a)(1) ....................................... 2
   11 U.S.C. § 1328........................................... 1, 6
   11 U.S.C. § 1328(a)(1) ....................................... 2
28 U.S.C. § 158(d)................................................ 11
28 U.S.C. § 1254(1)............................................... 1

vii

**TABLE OF AUTHORITIES—Cont'd**

**Miscellaneous**

American Bankruptcy Institute, Report of
 Commission to Study the Reform of
 Chapter 11 (2014)........................................ 18, 19

Brubaker, Ralph, *Mandatory Aggregation of
 Mass Tort Litigation in Bankruptcy*, 131
 Yale L.J.F. 960 (2022)....................................... 20

4 *Collier on Bankruptcy* (16th ed. 2022).................. 6

Gamble, Elizabeth, *Nondebtor Releases in
 Chapter 11 Reorganizations: A Limited
 Power*, 38 Fordham Urb. L.J. 821 (2011)......... 14

Kurdi, Fouad, *A Question of Power: Non-
 Consensual Third-Party Releases in
 Chapter 11 Plans*, 25 No. 4 J. Bankr. L.
 & Prac. NL Art. 6 (Aug. 2016).......................... 14

Rasmussen, Robert K., *COVID-19 Debt and
 Bankruptcy Infrastructure*, 131 Yale
 L.J.F. 337 (2021) .............................................. 20

Silverstein, Joshua M., *Hiding in Plain
 View: A Neglected Supreme Court
 Decision Resolves the Debate Over Non-
 Debtor Releases in Chapter 11
 Reorganizations*, 23 Emory Bankr. Dev.
 J. 13 (2006)...................................................... 14

## PETITION FOR A WRIT OF CERTIORARI

### OPINIONS BELOW

The opinion of the court of appeals (App., *infra*, 1a-38a) is reported at 48 F.4th 419. The order of the bankruptcy court confirming the plan of reorganization (App., *infra*, 39a-160a) is unreported.

### JURISDICTION

The court of appeals entered judgment on August 19, 2022. App., *infra*, 161a. On September 7, 2022, the court issued a revised opinion without entering a new judgment. On November 8, 2022, Justice Alito extended the time to file a petition for a writ of certiorari to and including January 5, 2023.

This Court's jurisdiction is invoked under 28 U.S.C. § 1254(1).

### STATUTORY PROVISIONS INVOLVED

Section 524 of the Bankruptcy Code, 11 U.S.C. § 524, provides in relevant part:

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1192, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(1)

2

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1192, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

* * *

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

## STATEMENT

The court below, on direct appeal from the bankruptcy court, reversed in part an order confirming a chapter 11 plan of reorganization because the plan contained an exculpation clause that included non-debtors. That clause established that specified persons and entities that guided petitioner during its bankruptcy case would be held to a standard of care excluding their liability for simple

3

negligence.[1] Following circuit precedent—with which most other courts of appeals have disagreed—the Fifth Circuit held that section 524(e) of the Bankruptcy Code, 11 U.S.C. § 524(e), prohibits chapter 11 reorganization plans from exculpating or releasing non-debtors from liability, except as is specifically authorized by some other provision of the Bankruptcy Code. As the court of appeals acknowledged, "[t]he simple fact of the matter is that there is a circuit split" on that issue. App., *infra*, 30a.

The Second, Third, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits all disagree with the Fifth. In those circuits, section 524(e) is not understood to constrain bankruptcy courts from limiting the liability of non-debtors under a chapter 11 plan in appropriate circumstances.

The Fifth and Tenth Circuits, however, read section 524(e) as prohibiting chapter 11 plans from protecting almost all non-debtors from liability in almost any circumstance, even if doing so is vital to the success of the plan and viability of the reorganized debtor.

This deep and intractable dispute among the circuits turns on what section 524(e) means when it

---

[1] "Exculpation clauses" are distinct from third-party releases. Whereas a non-debtor release "eliminat[es]" a non-debtor's liability "altogether," *In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000), an exculpation clause is a *limited* release that sets a standard of care, *id.* at 245. Petitioner's plan contained a non-debtor exculpation, not a third-party release. As explained below, however, the Fifth Circuit treats 11 U.S.C. § 524(e) as equally prohibiting exculpation clauses and third-party releases, except as applied to a narrow set of parties.  For the question presented by this petition, therefore, the distinctions between exculpation clauses and non-debtor releases matter little.

4

states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The seven-circuit majority view is that section 524(e) merely confirms the effect of a discharge under subsection (a) of the same section, *id*. § 524(a): such a discharge does not automatically affect creditors' rights against any other persons or entities also liable on the same debt.

Section 524(e) does not, under the majority view, impose any independent restriction on the bankruptcy court's broad, equitable authority. Among other sources granting that authority, the Bankruptcy Code explicitly empowers a court confirming a plan of reorganization to "include any other appropriate provision not inconsistent with the applicable provisions of" the Bankruptcy Code. 11 U.S.C. § 1123(b)(6).

By contrast, the two-circuit minority view, applied by the court of appeals below, is that section 524(e) states not just the effect of a discharge itself but also a broad limitation of the courts' power to protect non-debtors in any way except under a specific grant of authority elsewhere in the Code.

The majority view is correct, and the decision below is wrong. Section 524(e) simply states that the discharge of a debtor's liability on a debt does not *itself* affect any other creditor's liability *on that same debt*. Section 524(e) uses no mandatory language at all; it does not tell the court or the parties what provisions a plan "shall" or "shall not" include. In other words, section 524(e) is simply a saving clause intended to clarify that a debtor's statutorily defined discharge is limited in scope to the debtor itself.

5

This is an important and recurring issue of bankruptcy law, as is demonstrated by the depth and duration of the circuit split. The facts of this case further demonstrate that importance.

Petitioner is an SEC-registered investment advisor that, during its bankruptcy, continued to manage billions of dollars of financial assets. Petitioner's professionals and related entities now face a barrage of litigation about their bankruptcy-related conduct from petitioner's ousted founder—a "serial litigator," as the bankruptcy court accurately called him—who objected to petitioner's reorganization and threatened to "burn the place down" when he did not get his way before the bankruptcy court.

In these circumstances, the bankruptcy court found that exculpation—a limitation of liability commonplace in corporate law and routinely afforded to the directors and officers of financial companies outside of bankruptcy—was necessary to prevent the post-effective-date estate from being swamped with frivolous litigation arising from conduct that occurred during the bankruptcy case. Petitioner's reorganization plan thus exculpated certain parties, including petitioner and specified non-debtors, from liability other than for acts or omissions constituting bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct.

The court of appeals struck most non-debtors from the confirmed plan's exculpation provision, holding that section 524(e) "categorically bars" their exculpation. The court of appeals acknowledged the bankruptcy court's findings that those exculpations were necessary to the success of petitioner's

6

reorganization plan. Nevertheless, it concluded that circuit precedent bound it to strike certain of those exculpations from the plan. That incorrect holding merits review by this Court.

## A. Legal Background

A principal goal of bankruptcy law is to afford the debtor a "fresh start." The bankruptcy discharge, which releases the debtor from obligations on its pre-petition debts, is an important tool for accomplishing that goal. Each of the Bankruptcy Code chapters under which debtors can seek relief contains a specific provision for how and when the debtor's discharge occurs under that chapter. See 11 U.S.C. §§ 727, 944, 1192, 1228, 1328. Section 524 provides general provisions, applicable across all chapters, about the effect of a discharge.

Under section 524, discharge does not itself extinguish the debtor's underlying debt. Rather, discharge voids the debtor's (and only the debtor's) liability on the debt and enjoins creditors from pursuing actions against the debtor on any claims arising from that debt. 11 U.S.C. § 524(a). The debt otherwise remains valid and enforceable. Judgments on that debt against any non-debtors are unaffected, and creditors may pursue further recovery from any such liable non-debtors. See 4 *Collier on Bankruptcy* ¶ 524.05 (16th ed. 2022).

Section 524(e) makes this point explicit. It states that, "[e]xcept as provided in subsection (a)(3) of this section," which deals with certain community-property debts, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the

7

property of any other entity for, such debt." 11 U.S.C.
§ 524(e).

## B. Factual and Procedural Background

### 1. The Parties

Petitioner Highland Capital Management, L.P., is the reorganized chapter 11 debtor. Highland, a global investment adviser founded in 1993, provided investment management and advisory services, managing billions of dollars of assets, both directly and through affiliates.

Respondent James Dondero is petitioner's co-founder and former CEO. NexPoint Advisors, L.P., and NexPoint Asset Management, L.P. (f/k/a as Highland Capital Management Fund Advisors, L.P.) are registered investment advisors owned or controlled by Dondero. They, in turn, manage Highland Income Fund, NexPoint Strategic Opportunities Fund (n/k/a NexPoint Diversified Real Estate Trust), Highland Global Allocation Fund, and NexPoint Capital Incorporated, which are investment vehicles also controlled by Dondero. The Dugaboy Investment Trust and Get Good Trust are Dondero's family trusts.

### 2. Petitioner's Chapter 11 Bankruptcy

Petitioner's path to bankruptcy was far from typical. It did not suffer a business calamity, have problems with its vendors or landlords, or default on payments to its lenders. Rather, petitioner's chapter 11 case was brought on by "a myriad of massive, unrelated, business litigation claims that it faced * * * after a decade or more of contentious litigation in multiple forums all over the world" instigated by Dondero when he was petitioner's CEO.

App. 2677

8

App., *infra*, 52a. As the bankruptcy court found, Dondero is a "serial litigator" whose litigiousness caused petitioner to file for bankruptcy and strapped it with more than a billion dollars in claims. See *id.* at 52a-55a.

Petitioner filed for chapter 11 bankruptcy on October 16, 2019. Its creditors' committee consisted of three entities holding litigation claims against petitioner, and one of petitioner's litigation discovery vendors. Concerned about Dondero's ability to serve as an estate fiduciary, the U.S. Trustee moved to appoint a chapter 11 trustee to manage petitioner's estate. Petitioner ultimately avoided the appointment of a trustee by entering into a settlement agreement with the creditors' committee (the "Governance Settlement"). That settlement—approved by the bankruptcy court—changed petitioner's management and governance during the pendency of the bankruptcy case.

The Governance Settlement removed Dondero from all control positions at petitioner. It appointed three outside, independent directors to manage petitioner and its reorganization. The bankruptcy court later approved one of petitioner's independent directors, James P. Seery, Jr., to be petitioner's new CEO and Chief Restructuring Officer ("CRO").

To induce the independent directors' service, the Governance Settlement (a) limited their and their agents and advisors' prospective liability to claims asserting willful misconduct or gross negligence, and (b) required the bankruptcy court to act as a gatekeeper by screening for colorability any claims against the protected parties. The order appointing Seery as CEO and CRO included similar protections

9

for Seery in his additional role. The bankruptcy court found as fact that, without the exculpation and gatekeeper provisions, "none of the independent directors would have taken on the role" because of the "litigation culture that enveloped Highland historically." App., *infra*, 60a.

The bankruptcy court found that "this [Governance Settlement] and the appointment of the independent directors changed the entire trajectory of the case and saved the Debtor from the appointment of a trustee." App., *infra*, 58a. Once appointed, Seery and the other independent directors began to negotiate settlements with petitioner's principal creditors, paving the way for approval of the resulting reorganization plan by creditors holding 99.8% in dollar amount of the claims against petitioner.

Petitioner's chapter 11 plan is an "asset monetization plan" in which distributions to creditors will result from the orderly winddown and sale of petitioner's holdings and other assets over the course of several years. App., *infra*, 48a. The bankruptcy court described this plan, and its overwhelming creditor support, as "nothing short of a miracle." *Id.* at 62a.

Dondero, by contrast, had advocated for a reorganization plan that would reinstall him as CEO of an ongoing enterprise. After petitioner and other stakeholders rejected those proposals, Dondero explicitly threatened to "burn the place down." App., *infra*, 111a.

It was no idle threat. Dondero and entities under his control have attempted to frustrate petitioner's reorganization by, among other things, objecting to nearly every settlement between petitioner and its

10

creditors, challenging nearly every motion, appealing from nearly every order, obstructing petitioner's trading activity, and threatening petitioner's employees. To date, these various obstructions have resulted in two contempt findings against Dondero and one against certain of his controlled entities, including one arising from an attempted meritless lawsuit against Seery in violation of the order appointing him CEO and CRO, and nine separate appeals to the Fifth Circuit.

In recognition that such attacks on petitioner and its reorganization were not going to stop, petitioner's confirmed chapter 11 plan provided three "Plan Protections" to certain persons and entities whose efforts were going to be vital to the plan's success:

First, the plan exculpates certain persons and entities—defined as the "Exculpated Parties"—for conduct relating to the administration of the case (including the negotiation and implementation of the plan) from liability other than for bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct. App., *infra*, 106a-111a, 139a. The Exculpated Parties are, among others, petitioner and its agents, the independent directors, the creditors' committee and its members, and service professionals retained by petitioner and the committee. *Id.* at 34a.

Second, the plan enjoins certain persons— defined as the "Enjoined Parties"—from taking actions to interfere with the implementation and consummation of the plan. App., *infra*, 112a. The Enjoined Parties include Dondero and his related entities.

11

Third, the plan has a gatekeeper provision, which precludes the Enjoined Parties from commencing claims against any defined "Protected Party" without first obtaining the bankruptcy court's determination that the proposed claim is colorable. App., *infra*, 112a-117a.

The bankruptcy court found that all three Plan Protections were necessary to the success of petitioner's plan. Most pertinently for present purposes, the bankruptcy court found "that the proposed Exculpated Parties might expect to incur costs that could swamp them and the reorganization based on the prior litigious conduct of Mr. Dondero and his controlled entities." App., *infra*, 111a. That finding, as will be explained below, was undisturbed on appeal, but the court of appeals reversed in part despite that finding.

The bankruptcy court confirmed the plan, which then took effect. The Fifth Circuit authorized a direct appeal under 28 U.S.C. § 158(d).

### 3. The Appeal

The court of appeals affirmed the confirmation order in its entirety except for the plan's exculpation provision, which it found partly violated 11 U.S.C. § 524(e). The court held that "§ 524(e) categorically bars third-party exculpations absent express authority in another provision of the Bankruptcy Code." App., *infra*, 30a (citing *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009)). The court concluded that "the exculpation here partly runs afoul of that statutory bar on non-debtor discharge by reaching beyond Highland Capital, the Committee, and the Independent Directors." *Id.* at 28a. Those three

12

entities, the court held, were entitled to exculpation from liability under other provisions of the Bankruptcy Code. See *id.* at 32a-34a.

By contrast, the court of appeals held that other persons or entities—whose exculpation was not, in the court's view, grounded in a specific provision of the Bankruptcy Code—could not be exculpated from any liability because of section 524(e). App., *infra*, 28a-35a. Those persons and entities include petitioner's officers and agents and certain retained service professionals—even though the bankruptcy court had found protection of each to be indispensable to the plan's success.

The court of appeals acknowledged that "[t]he simple fact of the matter is that there is a circuit split concerning the effect and reach of § 524(e)," and that the Fifth Circuit had adopted the minority position in that split. App., *infra*, 30a. The court rejected petitioner's invitation to distinguish its prior decision on this issue. See *id.* at 30a-33a.

Certain respondents sought panel rehearing, asking the court to hold that the persons and entities it had struck from the plan's exculpation provision must likewise be left unprotected by the plan's injunction and gatekeeper provisions. In response, the court altered a single sentence of its opinion, which did not affect the Fifth Circuit's ruling that "the injunction and gatekeeping provisions are sound," App., *infra*, 28a, or its conclusion about section 524(e).

## REASONS FOR GRANTING THE PETITION

For thirty years, the courts of appeals have been deeply divided over whether section 524(e) prohibits bankruptcy courts from ordering a limited exculpation

13

or release of non-debtor liability as part of a
chapter 11 reorganization plan. That longstanding
circuit split—in which such provisions are authorized
in seven circuits but generally prohibited in two
circuits—shows no signs of dissipating. This Court
should therefore grant certiorari to resolve the
intractable disagreement among the circuits on an
issue of great importance.

## A. There Is An Acknowledged And Substantial Circuit Split

As the court of appeals acknowledged below,
"there is a circuit split concerning the effect and reach
of § 524(e)." App., *infra*, 30a. At least seven circuits
have concluded that nonconsensual non-debtor relief
is not barred by section 524(e). Only two circuits—
including the Fifth Circuit—have reached the
opposite conclusion. See *id.* at 30a-31a (listing cases).

This circuit conflict is widely recognized. See
*Blixseth* v. *Credit Suisse*, 961 F.3d 1074, 1082 n.4 (9th
Cir. 2020) ("There is a long-running circuit split on
this issue."), cert. denied, 141 S. Ct. 1394 (2021); *In re
Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1077
(11th Cir. 2015) ("Other circuits are split as to
whether a bankruptcy court has the authority to issue
a non-debtor release."); *In re Dow Corning Corp.*, 280
F.3d 648, 657 (6th Cir. 2002) ("[S]ome courts have
found that the Bankruptcy Code does not permit
enjoining a non-consenting creditor's claims against a
non-debtor."); *In re Metromedia Fiber Network, Inc.*,
416 F.3d 136, 141 (2d Cir. 2005) (acknowledging
conflicting appellate decisions).

As one district court recently observed, this "long-
standing conflict among the Circuits that have ruled
on the question" has created "the anomaly that

14

whether a bankruptcy court can bar third parties from asserting non-derivative claim against a non-debtor–a matter that surely ought to be uniform throughout the country–is entirely a function of where the debtor files for bankruptcy." *In re Purdue Pharma, L.P.*, 635 B.R. 26, 89 (S.D.N.Y. 2021), appeal pending, No. 22-110 (2d Cir.) (argued Apr. 29, 2022).[2]

1. The majority approach—followed by the Second, Third, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits—allows bankruptcy courts, in certain circumstances, to confirm a chapter 11 plan containing a non-debtor exculpation or third-party release, and to do so over an interested party's objection. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142-143 (2d Cir. 2005); *In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000); *In re A.H. Robins Co.*, 880 F.2d 694, 702 (4th Cir. 1989); *In re Dow Corning Corp.*, 280 F.3d 648, 657-658 (6th Cir. 2002); *In re Airadigm Commc'ns, Inc.*, 519 F.3d 640, 656 (7th Cir. 2008); *Blixseth* v. *Credit Suisse*, 961 F.3d 1074, 1082 (9th Cir. 2020), cert. denied, 141 S. Ct.

---

[2] See also Fouad Kurdi, *A Question of Power: Non-Consensual Third-Party Releases in Chapter 11 Plans*, 25 No. 4 J. Bankr. L. & Prac. NL Art. 6 (Aug. 2016) ("Courts, practitioners, and scholars have vociferously debated the permissibility of non-consensual third-party releases for decades."); Elizabeth Gamble, *Nondebtor Releases in Chapter 11 Reorganizations: A Limited Power*, 38 Fordham Urb. L.J. 821, 831 (2011) ("Courts are divided on whether bankruptcy courts have the power to grant nondebtor third party releases and injunctions."); Joshua M. Silverstein, *Hiding in Plain View: A Neglected Supreme Court Decision Resolves the Debate Over Non-Debtor Releases in Chapter 11 Reorganizations*, 23 Emory Bankr. Dev. J. 13, 14 (2006) (noting "long-standing circuit split on an issue of critical significance to bankruptcy").

15

1394 (2021); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1078 (11th Cir. 2015).

The Seventh Circuit's opinion in *Airadigm Communications*, 519 F.3d 640, sums up the majority approach. See also *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d at 1078 n.7 (recent Eleventh Circuit decision observing that the Seventh Circuit's analysis "squarely supports the majority position"). In *Airadigm Communications*, the confirmed plan released certain non-debtor parties "for any act or omission arising out of or in connection with the Case, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or property to be distributed under this Plan, except for willful misconduct." 519 F.3d at 655.

The court upheld that plan provision, holding that section 524(e) does not "bar[] a bankruptcy court from releasing non-debtors from liability to a creditor without the creditor's consent." 519 F.3d at 656. The "natural reading" of section 524(e), the court explained, "does not foreclose a third-party release from a creditor's claims." *Ibid.* Rather, section 524(e) simply clarifies that the discharge of a debtor's debt "does not affect the liability of any other entity on * * * such debt," 11 U.S.C. § 524(e), and thus acts as a "saving clause" to "preserve[] rights that might otherwise be construed as lost after the reorganization," 519 F.3d at 656. In other words, according to the majority view, section 524(e) simply establishes that, if the debtor and a non-debtor are both liable on the same debt, then the debtor *and only the debtor* benefits from discharge with respect to that debt.

16

The Seventh Circuit also observed that section 524(e) lacks any terms even "purport[ing] to limit the bankruptcy court's powers." 519 F.3d at 656. It does not, for instance, include any "mandatory terms" like "shall" or "will." *Ibid.* By contrast, "where Congress has limited the powers of the bankruptcy court, it has done so clearly—for example, by expressly limiting the court's power." *Ibid.* In the absence of such mandatory, power-limiting language, the court concluded, there is no reason to read section 524(e) as "bar[ring] a non-consensual third-party release from liability." *Ibid.*

The Seventh Circuit further held that "Congress affirmatively gave the bankruptcy court the power to release third parties from a creditor's claims without the creditor's consent" through sections 105(a) and 1123(b)(6) of the Bankruptcy Code. 519 F.3d at 657; see generally *United States* v. *Energy Res. Co.*, 495 U.S. 545, 549 (1990) (construing same provisions). The Seventh Circuit understood those provisions to "permit[] the bankruptcy court to release third parties from liability to participating creditors if the release is 'appropriate' and not inconsistent with any provision of the bankruptcy code." 519 F.3d at 657.[3]

2. Only two circuits—the Fifth and Tenth—disagree with the majority approach. In those circuits, section 524(e) is interpreted as prohibiting bankruptcy courts from exculpating or releasing most non-

---

[3] The Fifth Circuit here rejected reliance on those statutory provisions. App., *infra*, 32a. If, however, the majority construction of section 524(e) is correct, and that section does not limit the powers of a bankruptcy court, then the basis for the Fifth Circuit's opinion evaporates without regard to the correct construction of other provisions of the Code.

17

debtors under chapter 11 plans. *In re Pacific Lumber Co.*, 584 F.3d 229, 252-253 (5th Cir. 2009); *In re Western Real Est. Fund, Inc.*, 922 F.2d 592, 600 (10th Cir. 1990) (per curiam).

In *Pacific Lumber*, the Fifth Circuit held that section 524(e) "broadly * * * foreclose[s] non-consensual non-debtor releases" because it "only releases the debtor, not co-liable third parties." 584 F.3d at 252. The Fifth Circuit thus expressly rejected the "more lenient approach to non-debtor releases taken by other courts" even then—now 14 years ago. *Ibid.*[4] In the decision below, the Fifth Circuit acknowledged the even deeper circuit split that now exists but reaffirmed its view that section 524(e) "categorically bars third-party exculpations." App., *infra*, 30a. The rule in the Tenth Circuit is similar. See *In re Western Real Est. Fund, Inc.*, 922 F.2d at 602

---

[4] In *Pacific Lumber*, the Fifth Circuit affirmed only a non-debtor release of the "disinterested volunteers" on the creditors' committee, concluding that such a limited non-debtor release was consistent with the committee members' "qualified immunity for actions within the scope of their duties" under 11 U.S.C. § 1103(c). 584 F.3d at 253. The Fifth Circuit applied that same holding in its decision below, and likewise correctly affirmed the non-debtor exculpation of petitioner's disinterested, independent directors as being consistent with the limited liability of a bankruptcy trustee. Respondents have obtained an extension of time until January 16, 2023, to file a petition for a writ of certiorari to challenge that holding. No. 22A303. That holding—reached under a minority view of section 524(e) as being a highly restrictive view of bankruptcy courts' powers—does not implicate the circuit split that the Fifth Circuit acknowledged and is not certworthy. Petitioner will elaborate on the uncertworthiness of the issue in its response to any petition for a writ of certiorari that respondents may file.

18

(release of non-debtor liability "improperly insulate[s] nondebtors in violation of section 524(e)").

The Fifth Circuit's decision to double down on its minority approach to section 524(e) demonstrates that the circuits will not resolve their diverging approaches of their own accord.

## B. The Question Presented Is A Recurring And Important Issue

It is of critical and widespread importance to the bankruptcy laws whether chapter 11 plans can incorporate non-debtor releases and exculpations to facilitate a debtor's successful reorganization. The depth and persistence of the circuit split on this issue demonstrate how often this issue arises in chapter 11 bankruptcies, including some of the most complex and consequential corporate reorganizations managed by the bankruptcy courts.

An exculpation clause, like the one in petitioner's plan, serves to provide only "limited immunity" to certain parties for conduct related to the chapter 11 case. American Bankruptcy Institute, Report of Commission to Study the Reform of Chapter 11, at 250 (2014) ("ABI Study"). In connection with plan confirmation, courts have found such limitations of liability to be reasonable and appropriate in a variety of circumstances, particularly (as here) when an exculpation "was narrowly tailored, exculpated only negligent conduct, and was in the best interests of the estate." *Id.* at 250-251 (citing *In re Enron Corp.*, 326 B.R. 497, 504 (S.D.N.Y. 2005)). Such provisions, where permissible, can have laudatory effects on the success of a bankruptcy case, including "encouraging parties to engage in the process and assist the debtor in achieving a confirmable plan—actions that * * *

19

estate representatives and their professionals * * * may not be willing to undertake in the face of litigation risk." *Id.* at 251.

Although petitioner's plan did not include a non-debtor release, such releases—which relieve recipients of all liability for specified claims against them, and which are also categorically prohibited under the Fifth Circuit's reading of section 524(e)—can in certain circumstances also provide significant benefits to the debtor's estate. Courts in the majority circuits generally permit such releases only in "rare," "unique," and "truly unusual" cases in which doing so is "important to the success of the plan." *Metromedia*, 416 F.3d at 141-143.

In those exceptional cases, because of their "particular fact patterns," non-debtor releases can be instrumental in "facilitat[ing] a confirmable plan and ultimately benefit[ing] all stakeholders." ABI Study at 255; see also *id.* at 255-256 (recommending context-specific consideration for third-party releases of claims against non-debtors, and disapproving of any "blanket prohibition" on such releases).

Yet, because of the circuits' divergent approaches, debtors' ability to avail themselves of non-debtor exculpations or releases depends on the happenstance of geography. In an area of the law that prizes "uniform[ity]," such a result is untenable. U.S. Const. Art. I, § 8, Cl. 4; see *In re Purdue Pharma*, 635 B.R. at 104 ("conflicting" circuit decisions on non-debtor releases and exculpation have created "a most unfortunate circumstance when dealing with a supposedly uniform and comprehensive nationwide scheme to adjust debtor-creditor relations").

20

Moreover, these geographic disparaties in the availability of non-debtor plan relief have invited forum shopping. Debtors who perceive non-debtor exculpation or releases as a valuable tool to achieve a successful reorganization seek out jurisdictions that allow for such relief to be granted, and avoid those jurisdictions that do not. See, *e.g.*, Robert K. Rasmussen, *COVID-19 Debt and Bankruptcy Infrastructure*, 131 Yale L.J.F. 337, 354 (2021) (noting a debtor's choice to file for bankruptcy in Chicago because it "decided that the law on third-party releases was more favorable in the Seventh Circuit than in other possible venues"). But this Court has emphasized the importance of "discourag[ing] forum shopping * * * to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy." *Butner* v. *United States*, 440 U.S. 48, 55 (1979) (quotation marks omitted); see also Ralph Brubaker, *Mandatory Aggregation of Mass Tort Litigation in Bankruptcy*, 131 Yale L.J.F. 960, 991-992 (2022) (noting the "well-known and rapidly escalating phenomenon of unrestricted forum shopping" in chapter 11 cases).

Despite the long-standing circuit split and use of non-debtor exculpations and releases in most circuits, this Court has never specifically considered whether such relief is permitted under the Bankruptcy Code. See *Travelers Indem. Co.* v. *Bailey*, 557 U.S. 137, 155 (2009) (noting that the Court did "not resolve whether a bankruptcy court * * * could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing"). Without this Court's review, there is no reason to think that this three-decade-long division of authority will resolve itself.

21

Only this Court can establish a uniform rule concerning debtors' ability to use non-debtor releases and exculpation to achieve successful chapter 11 reorganizations.

## C. The Fifth Circuit's Approach Is Wrong

The acknowledged circuit split on a recurring and important question would warrant this Court's review even if the decision below were correct. But it is not.

*First*, neither *Pacific Lumber* nor the decision below engages with the text of section 524(e) itself. As the Seventh Circuit explained, nothing in section 524(e) actually prohibits a bankruptcy court from granting non-debtor relief. *Airadigm Commc'ns*, 519 F.3d at 656. The provision lacks any mandatory language constraining bankruptcy courts' authority in any respect. *Ibid.* It is merely a "saving clause" intended to clarify that a debtor's discharge from its debts has no effect on the liability of others on those same debts. *Ibid.*

*Second*, other provisions of the Bankruptcy Code do—unlike section 524(e)—expressly address what a court may do rather than what the automatic effect of a discharge is. This Court has underscored, for example, that the Bankruptcy Code "grants the bankruptcy courts residual authority to approve reorganization plans including 'any . . . appropriate provision not inconsistent with the applicable provisions of this title.'" *Energy Res. Co.*, 495 U.S. at 549 (quoting 11 U.S.C. § 1123(b)(6)).

This Court need not resolve any issues concerning the meaning of such other provisions to resolve the question presented by this petition. But Congress's careful attention to courts' authority

22

elsewhere in the Code shows the stark implausibility of construing the words "discharge * * * does not affect" as if they too were a limitation on courts' powers.

## D. This Case Is An Ideal Vehicle For Resolving This Important Question

This case is an ideal vehicle for addressing the question presented. Both the bankruptcy court (App., *infra*, 106a-111a) and the court of appeals (*id.* at 28a-35a) decided the issue following extensive briefing and argument concerning the effect of section 524(e). The Fifth Circuit's decision directly addressed the circuits' competing approaches to section 524(e). *Id.* at 30a-31a.

Furthermore, the Fifth Circuit reversed petitioner's confirmed plan solely as to certain of its non-debtor exculpations; it otherwise affirmed confirmation of the plan in full. App., *infra*, 21a; see also *id.* at 38a ("[T]he Plan violates § 524(e) but only insofar as it exculpates and enjoins certain non-debtors."). The question presented is thus squarely and cleanly presented here.

Finally, this case involves only non-debtor exculpations, not any more comprehensive non-debtor releases. No one has ever identified any basis other than section 524(e) to invalidate exculpation clauses, whereas non-party releases raise a host of other questions as well. See, *e.g.*, *In re Purdue Pharma L.P.*, 633 B.R. 53, 98-101 (Bankr. S.D.N.Y.) (discussing constitutional issues raised by non-debtor releases), rev'd in pertinent part, 635 B.R. 26, 89 (S.D.N.Y. 2021), appeal pending, No. 22-110 (2d Cir.) (argued Apr. 29, 2022).

23

This Court should accordingly grant certiorari to resolve the deep and entrenched circuit split over the interpretation of section 524(e).

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted.

| | |
|---|---|
| JEFFREY N. POMERANTZ | ROY T. ENGLERT, JR. |
| JOHN A. MORRIS | *Counsel of Record* |
| GREGORY V. DEMO | MATTHEW M. MADDEN |
| PACHULSKI STANG ZIEHL | PAUL BRZYSKI |
| & JONES LLP | SHIKHA GARG |
| 10100 Santa Monica Blvd., | KRAMER LEVIN NAFTALIS |
| 13th Fl. | & FRANKEL LLP |
| Los Angeles, CA 90067 | 2000 K Street NW, 4th Fl. |
| | Washington, DC 20006 |
| | (202) 775-4500 |
| | renglert@kramerlevin.com |
| | |
| | *Counsel for Petitioner* |

January 2023

App. 2693