**Appendix Exhibit 131**

**STINSON LLP**
Deborah Deitsch-Perez
Michael P. Aigen
2200 Ross Avenue, Suite 2900
Dallas, Texas 75201
Telephone: (214) 560-2201
Facsimile: (214) 560-2203
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

*Counsel for The Dugaboy Investment Trust
and the Hunter Mountain Investment Trust*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |

**MOTION FOR LEAVE TO FILE PROCEEDING**

CORE/3522697.0002/179160551.9

¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦
1934054230206000000000013

## TABLE OF CONTENTS

Page

MOTION FOR LEAVE TO FILE PROCEEDING............................................................................ 1
SUMMARY AND STATEMENT OF FACTS .............................................................................. 1
ARGUMENT .................................................................................................................................. 8
    A.    The Gatekeeper Provision. ............................................................................................... 8
    B.    The Gatekeeper Provision Is Satisfied Because Movants Were Directed to Raise Valuation Issues through an Adversary Proceeding ...................................................... 8
    C.    The Valuation Proceeding Sets Forth a Colorable Claim. ............................................. 9

i

## MOTION FOR LEAVE TO FILE PROCEEDING

Movants The Dugaboy Investment Trust ("Dugaboy") and Hunter Mountain Investment Trust ("Hunter Mountain" and collectively with Dugaboy, "Movants") file this Motion for Leave to File Proceeding.

## SUMMARY AND STATEMENT OF FACTS[1]

1. Movants file this Motion for Leave to File Proceeding (the "Motion for Leave") out of an abundance of caution in light of the gatekeeper injunction (the "Gatekeeper Provision") contained in the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) ("Plan") confirmed by order of this Court on February 22, 2021, § AA & Ex. A, Article IX.F [Dkt. No.1950]. Specifically, Movants seek an order from the Court finding that the Gatekeeper Provision is inapplicable to the proposed proceeding (the "Valuation Proceeding") to be commenced by Movants in this Court, or that the requisite standard is met.

2. The Valuation Proceeding largely seeks the same relief previously sought by Movants through motion practice. In particular, the Valuation Proceeding seeks information regarding the value of the estate, including the assets and liabilities of the Highland Claimant Trust (the "Claimant Trust") and related determinations by the Court. On December 6, 2022, the Court ordered Movants to seek the relief previously sought by motion practice through an adversary proceeding [Dkt. No. 3645]. As a result, Movants are required to name Highland Capital Management, L.P. ("HCMLP" or "Debtor") and the Highland Claimant Trust (the "Claimant Trust") as defendants in the Valuation Proceeding, notwithstanding that what Movants are really

---

[1] Movants incorporate the facts alleged in their proposed Complaint To (I) Compel Disclosures About The Assets Of The Highland Claimant Trust And (II) Determine (A) Relative Value Of Those Assets, And (B) Nature Of Plaintiffs' Interests In The Claimant Tru[st ("Proposed Complaint" or "Valuation Complaint"), annexed hereto as Exhibit A.

1

seeking is information from HCMLP and the Claimant Trust. Under the circumstances, Movants believe their Valuation Proceeding should fall outside of the Gatekeeper Provision.

3. However, if the Court determines that the Gatekeeper Provision applies to the Valuation Proceeding, Movants seek an order determining that the Valuation Proceeding presents a "colorable claim" within the meaning of the Gatekeeper Provision and should be allowed.

4. As holders of Contingent Claimant Trust Interests[2] that vest into Claimant Trust Interests once all creditors are paid in full, and as defendants in litigation pursued by Marc S. Kirschner ("Kirschner") as Trustee of the Litigation Sub-Trust (which seeks to recover damages on behalf of the Claimant Trust), Movants need to file the Valuation Proceeding in an effort to obtain information about the assets and liabilities of the Claimant Trust established to liquidate the assets of the HCMLP bankruptcy estate.

5. HCMLP's October 21, 2022 and January 24, 2023 post-confirmation reports show that, even with inflated claims and below market sales of assets, cash available is likely more than enough to pay class 8 and class 9 creditors 100 cents on the dollar. Accordingly, Movants and the entire estate would benefit from a close evaluation of current assets and liabilities. Such evaluation will also show whether assets were marked below appraised value during the pandemic and unreasonably held on the books *at those values*, along with overstated liabilities, to justify continued litigation. That litigation serves to enable James P. Seery ("Mr. Seery") and other estate professionals to carefully extract nearly every last dollar out of the estate with (along with incentive fees), leaving little or nothing for the owners that built the company.

6. While grave harm has already been done, valuation now would at least enable the Court to put an end to this already long-running case and salvage some value for equity. As this

---

[2] Capitalized terms not defined have the meanings set forth herein. If no meaning is set forth herein, the terms have the meaning set forth in the Fifth Amended Plan of Reorganization (as Modified) [Dkt. No. 1808].

Court observed in the *In re ADPT DFW Holdings* case, where there is significant uncertainty about insolvency, protections must be put in place so that the conduct of the case itself does not deplete the equity. In some cases, the protection is in the form of an equity committee; here, a prompt valuation of the estate would serve the same purpose and is needed.

7. As set forth in greater detail in the annexed complaint ("Valuation Complaint"), upon information and belief, during the pendency of HCMLP's bankruptcy proceedings, creditor claims and estate assets have been sold in a manner that fails to maximize the potential return to the estate, including Movants. Rather, Mr. Seery, first acting as Chief Executive Officer and Chief Restructuring Officer of the Debtor and then as the Claimant Trustee, facilitated the sale of creditor claims to entities with undisclosed business relationships with Mr. Seery who would then be inclined to approve inflated compensation when the hidden but true value of the estate's assets was realized. Because Mr. Seery and the Debtor have failed to operate the estate in the required transparent manner, they have been able to justify pursuit of unnecessary avoidance actions (for the benefit of the professionals involved), even though the assets of the estate, if managed in good faith, should be sufficient to pay all creditors.

8. Further, by understating the value of the estate and preventing open and robust scrutiny of sales of the estate's assets, Mr. Seery and the Debtor have been able to justify actions to further marginalize equity holders that otherwise would be in the money, such as including plan and trust provisions that disenfranchise equity holders by preventing them from having any input or information unless the Claimant Trustee certifies that all other interest holders have been paid in full. Because of the lack of transparency to date, unless Movants are allowed to proceed, there will be no checks and balances to prevent a wrongful failure to certify, much less any process to

3

ensure that the estate has been managed in good faith so as to enable all interest holders, including the much-maligned equity holders, to receive their due.

9. On the petition date, the estate had over $550 million in assets, with far less in in non-disputed non-contingent liabilities.

10. By June 30, 2022, the estate had $550 million in cash and approximately $120 million of other assets despite paying what appears in reports to be over $60 million in professional fees and selling assets non-competitively, on information and belief, at least $75 million below market price.[3]

11. On information and belief, the value of the assets in the estate as of June 1, 2022, was as follows:

| Highland Capital Assets | | Value in Millions | |
|---|---|---|---|
| | | Low | High |
| Cash as of Feb 1. 2022 | | $125.00 | $125.00 |
| Recently Liquidated | $246.30 | | |
| Highland Select Equity | $55.00 | | |
| Highland MultiStrat Credit Fund | $51.44 | | |
| MGM Shares | $26.00 | | |
| Portion of HCLOF | $37.50 | | |
| Total of Recent Liquidations | $416.24 | $416.24 | $416.24 |
| **Current Cash Balance** | | **$541.24** | **$541.24** |
| | | | |
| Remaining Assets | | | |
| Highland CLO Funding, LTD | | $37.50 | $37.50 |
| Korea Fund | | $18.00 | $18.00 |
| SE Multifamily | | $11.98 | $12.10 |
| Affiliate Notes[4] | | $50.00 | $60.00 |
| Other (Misc. and legal) | | $5.00 | $20.00 |
| **Total (Current Cash + Remaining Assets)** | | **$663.72** | **$688.84** |

---

[3] Additional detail in the Valuation Complaint and its exhibits.
[4] Some of the Affiliate Notes should have been forgiven as of the MGM sale, but litigation continues over that also.

4

12. By June 2022, Mr. Seery had also engineered settlements making the inflated face amount of the major claims against the estate $365 million, but which traded for significantly less.

| Creditor | Class 8 | Class 9 | Beneficiary | Purchase Price |
|---|---|---|---|---|
| Redeemer | $137.0 | $0.0 | Claim buyer 1 | $65 million |
| ACIS | $23.0 | $0.0 | Claim buyer 2 | $8.0 |
| HarbourVest | $45.0 | $35.0 | Claim buyer 2 | $27.0 |
| UBS | $65.0 | $60.0 | Claim buyers 1 & 2 | $50.0 |
| **TOTAL** | **$270.0** | **$95.0** | | **$150.0 million** |

13. On information and belied, Mr. Seery made no efforts to buy the claims into the estate or resolve the estate efficiently. Mr. Seery never made a proposal to the residual holders or Mr. Dondero and never responded with a reorganization plan to the many settlement offers from Mr. Dondero, even though many of Mr. Dondero's offers were in excess of the amounts paid by the claims buyers.

14. Instead, it appears that Mr. Seery brokered transactions enabling colleagues with long-standing but undisclosed business relationships to buy the claims without the knowledge or approval of the Court. Because the claims sellers were on the creditors committee, Mr. Seery and those creditors had been notified that "Creditors wishing to serve as fiduciaries on any official committee are advised that they may not purchase, sell or otherwise trade in or transfer claims against the Debtor while they are committee members absent an order of the Court." Making the transactions particularly suspect is the fact that the claims buyers paid amounts equivalent to the value the Plan estimated would be paid three years' hence. Sophisticated buyers would not pay what appeared to be full price unless they had material non-public information that the claims could and would be monetized for much more than the public estimates made at the time of Plan confirmation – as indeed they have been.

15. On information and belief, Mr. Seery provided such information to claims buyers rather than buying the claims in to the estate for the roughly $150 million for which they were sold.

5

By May 2021, when the claims transfers were announced to the Court, the estate had over 100 million in cash and access to additional liquidity to retire the claims for the sale amounts, leaving an operating business in the hands of its equity owners.

16.  Specifically, Mr. Seery could and should have investigated seeking sufficient funds from equity to pay all claims and return the estate to the equity holders.  This was an obvious path because the estate had assets sufficient to support a line of credit for $59 million, as Mr. Seery eventually obtained. If funds had been raised to pay creditors in the amounts for which claims were sold, much of the massive administrative costs run up by the estate would never have been incurred.  One such avoided cost would be the post effective date litigation now pursued by Marc S. Kirschner, as Litigation Trustee for the Litigation Sub-Trust, whose professionals likely charge over $2000 an hour for senior lawyers and over $800 an hour for first year associates (data obtained from other cases because, of course, there has been no disclosure in the HCMLP bankruptcy of the cost of the Kirschner litigation).  But buying in the claims to resolve the bankruptcy and enabling equity to resume operations would not have had the critical benefit to Mr. Seery that his scheme contained: placing the decision on his incentive bonus, perhaps as much as $30 million, in the hands of grateful business colleagues who received outsized rewards for the claims they were steered into buying.  The parameters of Mr. Seery's incentive compensation is yet another item cloaked in secrecy, contrary to the general rule that the hallmark of the bankruptcy process is transparency.

17.  But worse still, even with all of the manipulation that appears to have occurred, Movants believe that the combination of cash and other assets held by the Claimant Trust in its own name and held in various funds, reserve accounts, and subsidiaries, if not depleted by

6

unnecessary litigation would be sufficient to pay all Claimant Trust Beneficiaries in full, with interest, now.

18. In short, it appears that the professionals representing HCMLP, the Claimant Trust, and the Litigation Sub-Trust are litigating claims against Movants and others, even though the only beneficiaries of any recovery from such litigation would be Movants in this adversary proceeding (and of course the professionals pressing the claims). It is only the cost of the pursuit of those claims that threatens to depress the value of the Claimant Trust sufficiently to justify continued pursuit of the claims, creating a vicious cycle geared only to enrich the professionals, including Mr. Seery, and to strip equity of any meaningful recovery.

19. Based upon the restrictions imposed on Movants including the unprecedented inability for Plaintiffs, as holders of Contingent Claimant Trust Interests, to access virtually any financial information related to the Claimant Trust, Movants have little to no insight into the value of the Claimant Trust assets versus the Claimant Trust's obligations and no method to independently ascertain those amounts until Movants become Claimant Trust Beneficiaries. Because Mr. Seery and the professionals benefiting from Mr. Seery's actions have ensured that Movants are in the dark regarding the estate's assets and liabilities, as well as the estate's professional and incentive fees that are rapidly depleting the estate, there is a compelling need for the relief sought herein.

20. Movants are seeking transparency about the assets currently held in the Claimant Trust and their value—information that would ultimately benefit all creditors and parties-in-interest by moving forward the administration of the Bankruptcy Case.

# ARGUMENT

### A.     The Gatekeeper Provision.

21.     The Debtor's Plan includes a Gatekeeper Provision, limiting how claims can be asserted against Protected Parties (Plan, § AA & Ex. A, Article IX.F), such as the reorganized Debtor and the Claimant Trust.  Plan Ex. A, Article I.B, ¶ 105.

22.     Under the Debtor's Plan confirmed by this Court, an "Enjoined Party" may not:

[C]ommence or pursue a claim or cause of action of any kind against any Protected Party that arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind . . . against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party.

Plan, § AA & Ex. A, Article IX.F.

23.     The Plan defines the term "Enjoined Party" to include "all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor", "any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared", and any "Related Entity." Plan Ex. A, Article I.B, ¶ 56. The Plan expressly defines "Related Entity" to include Dugaboy and Hunter Mountain.  *Id.*, § B, ¶ 110. Accordingly, each of Movants is an "Enjoined Party."  The question thus arises whether Movants must seek Court permission prior to instituting the annexed Valuation Proceeding.

### B.     The Gatekeeper Provision Is Satisfied Because Movants Were Directed to Raise Valuation Issues through an Adversary Proceeding

24.     Movants previously sought by way of contested matter to obtain the relief sought in the Valuation Proceeding [Dkt. Nos. 3382, 3467, and 3533]. Debtor objected, asserting both that that the relief asserted was unwarranted and that it could only be obtained in an adversary proceeding [Dkt No. 3465]. The Court ruled that Movants must pursue an adversary proceeding.

8

Given that the Court has already ordered Movants to proceed in this fashion, the Court has already served its gatekeeper function and this motion is unnecessary [Dkt. No. 3645].

25. However, Movants conferenced the issue with Debtor, and Debtor was only willing to stipulate that no gatekeeper motion was needed if Movants sought exactly the same relief as had been sought in the motion. Because the relief sought is better defined now, and to avoid further delay, in an excess of caution, Movants bring this motion. After filing, Movants will attempt to negotiate a resolution of this motion so that the Court can proceed directly to the merits.

**C. The Valuation Proceeding Sets Forth a Colorable Claim.**

26. Movants present colorable claims that should be authorized to proceed.

27. The Plan does not define what constitutes a "colorable claim of any kind." Nor does the Bankruptcy Code define the term. The case law construing the requirement for "colorable" claims clearly provides that the requisite showing is a relatively low threshold to satisfy, requiring Movants to prove "there is a possibility of success." *See Spring Svc. Tex., Inc. v. McConnell (In re McConnell)*, 122 B.R. 41, 44 (Bankr. S.D. Tex. 1989).

28. The Fifth Circuit has stated that "the colorable claim standard is met if the [movant] has asserted claims for relief that on appropriate proof would allow a recovery. Courts have determined that a court need not conduct an evidentiary hearing, but must ensure that the claims do not lack any merit whatsoever." *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 248 (5th Cir. 1988). The Court therefore need not be satisfied that there is an evidentiary basis for the claims to be asserted but instead should allow the claims if they appear to have some merit.

29. Other federal circuit courts have reached similar conclusions regarding the standard to be applied. For example, the Eighth Circuit held that "creditors' claims are colorable if they would survive a motion to dismiss." *In re Racing Services, Inc.*, 540 F.3d 892, 900 (8th Cir. 2008); *accord In Re Foster*, 516 B.R. 537, 542 (B.A.P. 8th Cir. 2014), *aff'd* 602 Fed. Appx. 356 (8th Cir.

9

2015) (per curiam). The Sixth Circuit has adopted a similar test requiring that the court look only to the face of the complaint to determine if claims are colorable. *In re The Gibson Group, Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995).

30. Other federal courts have adopted roughly the same standard—*i.e.*, a claim is colorable if it is merely "plausible" and thus could survive a motion to dismiss. *See In re America's Hobby Center, Inc.*, 223 B.R. 275, 282 (S.D.N.Y 1998); *see also, e.g., In re GI Holdings*, 313 B.R. at 631 (court must decide whether the committee has asserted "claims for relief that on appropriate proof would support a recovery"); *Official Comm. v. Austin Fin. Serv. (In re KDI Holdings)*, 277 B.R. 493, 508 (Bankr. S.D.N.Y. 1999) (observing that the inquiry into whether a claim is colorable is similar to that undertaken on a motion to dismiss for failure to state a claim); *In re iPCS, Inc.*, 297 B.R. 283, 291-92 (Bankr. N.D. Ga. 2003) (same).

31. In addition, in the non-bankruptcy context, the District Court for this district has explained that "[t]he requirement of a 'colorable claim' means only that the plaintiff must have an 'arguable claim' and not that the plaintiff must be able to succeed on that claim." *Gonzales v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.*, 207 F. Supp. 2d 570, 577 (N.D. Tex. 2002).

32. This Court's analysis of whether the Valuation Proceeding sets forth a colorable claim is not a determination of whether the Court finds there is enough evidence presented. Rather, if on the face of the Valuation Complaint, there appears a plausible claim, then the Valuation Proceeding presents a colorable claim, and this Motion must be granted to allow Movants to file their Valuation Complaint.

33. In the First Claim for Relief of the Valuation Complaint, Movants seek disclosures of Claimant Trust Assets and request an accounting. An equitable accounting is proper "when the facts and accounts presented are so complex that adequate relief may not be obtained at law."

*Gooden v. Mackie*, No. 4:19-CV-02948, 2020 WL 714291 (S.D. Tex. Jan. 23 2020) (quoting *McLaughlin v. Wells Fargo Bank, N.A.*, No. 4:12-CV-02658, 2013 WL 5231486, at *6 (S.D. Tex. Sep. 13, 2013); *Bates Energy Oil & Gas v. Complete Oilfeld Servs.*, 361 F. Supp. 3d 633, 663 (W.D. Tex. 2019) (finding an equitable accounting claim was sufficiently stated when was a party was less than forthcoming in providing information and the available information was insufficient to determine what was done with a party's money); *Phillips v. Estate of Poulin*, No. 03-05-00099-CV, 2007 WL 2980179, at *3 (Tex. App.-Austin, Oct. 12, 2007, no pet.) (finding that an accounting order was appropriate where the facts are complex and when the plaintiff could not obtain adequate relief through standard discovery); *Southwest Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.-San Antonio 1994, writ denied) (finding that an accounting was necessary in order to determine the identity of the property or the amount of money owed to a party).

34.    The requested disclosures and accounting are necessary due to the lack of transparency surrounding the assets and liabilities of the Claimant Trust. The Court has retained jurisdiction to ensure that distributions to Holders of Allowed Equity Interests are accomplished pursuant to the provisions of the Plan. *See* Plan, Article XI. As set forth above and in the Valuation Complaint, Movants have concerns that those provisions are not being appropriately followed, and efforts to obtain the information necessary to confirm otherwise has been unavailable through discovery. As a result of the restrictions imposed on Movants, including Movants' inability, as holders of Contingent Claimant Trust Interests, to access virtually any financial information related to the Claimant Trust, Movants have little to no insight into the value of the Claimant Trust assets versus the Claimant Trust's obligations and no method to independently ascertain those amounts until Movants become Claimant Trust Beneficiaries. Because Movants are in the dark regarding

11

the estate's assets and liabilities, as well as the estate's professional and incentive fees that are rapidly depleting the estate, there is a compelling need for the relief sought. Movants are unable to protect their own interests without an equitable accounting. Therefore, the First Claim for Relief sets forth a colorable claim.

35. The Second Claim for Relief of the Valuation Complaint sets forth Movants' request for a declaratory judgment regarding the value of Claimant Trust Assets compared to the bankruptcy estate obligations. When considering whether a valid declaratory judgment claim exists, a court must engage in a three-step inquiry. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The court must ask (1) whether an actual controversy exists between the parties, (2) whether the court has the authority to grant such declaratory relief; and (3) whether the court should exercise its "discretion to decide or dismiss a declaratory judgment action." *Id*; *see also In re Fieldwood Energy LLC,* No. 20-33948, 2021 WL 4839321, at *4 (Bankr. S.D. Tex. Oct. 15 2021) (seeking declaratory judgment regarding interpretation of a Plan and whether certain claims were discharged); *In re Think3, Inc.,* 529 B.R. 147, 206-07 (Bankr. W.D. Tex. 2015) (sufficient actual controversy to bring a declaratory judgment action to assist with an early and prompt adjudication of claims and to promote judicial and party economy).

36. In this case, there can be no serious doubt that an actual controversy exists between the parties with respect to the relief sought, as the Debtor has already opposed the relief sought in the Valuation Complaint. Additionally, there is no dispute that the Court has the inherent power to grant the relief sought in the Proposed Complaint. Further, the third element is satisfied because this determination is important to the implementation of the Plan and distributions to Holders of Allowed Claims and Allowed Equity Interests. If the value of the Claimant Trust assets exceeds the obligations of the estate, then several currently pending adversary proceedings aimed at

12

recovering value for HCMLP's estate are not necessary to pay creditors in full. As such, the pending adversary proceedings could be brought to a swift close, allowing creditors to be paid and the Bankruptcy Case to be brought to a close. In addition, such a determination by the Court could allow for a settlement that would cover the spread between current assets and obligations before that gap is further widened by the professional fees incurred by the Claimant Trust. Therefore, the Second Claim for Relief pleads a colorable claim.

37. Finally, in the Third Claim for Relief of the Valuation Complaint, Movants request a declaratory judgment and determination regarding the nature of their interests. As with the Second Claim for Relief, there is no serious dispute that an actual controversy exists between the parties and that the Court has the power to grant the relief requested. Additionally, the third element is satisfied because, in particular, in the event that the Court determines that the Claimant Trust assets exceed the obligations of the bankruptcy estate in an amount sufficient to pay all Allowable Claims indefeasibly, Movants seek a declaration and a determination that the conditions are such that their Contingent Claimant Trust Interests are likely to vest into Claimant Trust Interests, making them Claimant Trust Beneficiaries. To be clear, Plaintiffs do not ask the Court to determine that they are Claimant Trust Beneficiaries or otherwise to convert their contingent interests into non-contingent interests. All of that must be done according to the terms of the Plan and the Claimant Trust Agreement. However, the requested determination would further assist parties in interest, such as Movants, to ascertain whether the estate is capable of paying all creditors in full and also paying some amount to residual interest holders, as contemplated by the Plan and the Claimant Trust Agreement. Therefore, the Third Claim for Relief pleads a colorable claim.

38. The equitable relief sought in the Valuation Proceeding certainly meets any iteration of the standard for what constitutes "a colorable claim of any kind." Instead of using the

information governing provisions of the Claimant Trust as a shield, HCMLP and the Claimant Trust are using them as a sword to enable continued litigation that ultimately provides no benefit to Claimant Trust Beneficiaries or Movants as holders of Contingent Claimant Trust Interests.

39. As set forth above, the Valuation Complaint seeks disclosure of information and an accounting that are related to the administration of the Plan and property to be distributed under the Plan, but not otherwise available to Movants. The Valuation Complaint also requests declaratory judgments within the Court's jurisdiction and relevant to the furtherance of the Bankruptcy Case. These claims are colorable, and this Motion for Leave should be granted.

WHEREFORE, Movants request the entry of an order i) granting this Motion for Leave; ii) determining that the Gatekeeping Provision is satisfied as applied to the Valuation Proceeding; and iii) authorizing Movants to file the Valuation Complaint.

    Respectfully submitted,

    **STINSON LLP**

    */s/ Deborah Deitsch-Perez*
    Deborah Deitsch-Perez
    Texas Bar No. 24036072
    Michael P. Aigen
    Texas Bar No. 24012196
    2200 Ross Avenue, Suite 2900
    Dallas, Texas 75201
    Telephone: (214) 560-2201
    Facsimile: (214) 560-2203
    Email: deborah.deitschperez@stinson.com
    Email: michael.aigen@stinson.com

    *Counsel for The Dugaboy Investment Trust and the Hunter Mountain Investment Trust*

14

## CERTIFICATE OF CONFERENCE

      The undersigned hereby certifies that on February 5, 2023, Louis M. Phillips conferenced with counsel for Defendants, John Morris, regarding this motion. Counsel for Defendants was willing to stipulate that no gatekeeper motion was needed if Movants sought exactly the same relief as had been sought in their prior motion addressing these issues. Because the relief sought is better defined now, and to avoid further delay, in an excess of caution, Movants bring this motion. After filing, Movants will attempt to negotiate a resolution of this motion so that the Court can proceed directly to the merits.

      */s/Deborah Deitsch-Perez*
      Deborah Deitsch-Perez

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 6, 2023, a true and correct copy of this document was served electronically via the Court's CM/ECF system to the parties registered or otherwise entitled to receive electronic notices in this case.

*/s/Deborah Deitsch-Perez*
Deborah Deitsch-Perez