# Appendix Exhibit 152



|  |  |
|---|---|
| **Polley Faith LLP** | **Jeffrey Haylock** |
| TD North Tower | Direct Tel: 416.365.0404 |
| 77 King Street West | jhaylock@polleyfaith.com |
| Suite 2110 | |
| Toronto ON  M5K 2A1 | *Assistant: Susan Marshall* |
| Tel: 416.365.1600 | *smarshall@polleyfaith.com* |
| Fax: 416.365.1601 | |
| polleyfaith.com | |

October 27, 2023

Mani Sanghera  
Compliance & Disclosure - General Inquiries  
300 - 100 Adelaide St. West  
Toronto, ON  
M5H 1S3

VIA EMAIL (complianceanddisclosure@tsxventure.com)

Dear Mr. Sanghera,

**Re:    NexPoint Hospitality Trust**

We are Canadian counsel to Highland Capital Management, L.P. ("**Highland**"), a minority unitholder of NexPoint Hospitality Trust ("**NHT**"). We write this letter to draw your attention to three potential breaches of TSXV policies in relation to NHT's having entered into over $82 million in convertible notes with related parties.[1] While NHT has undertaken to amend $56 million of the convertible notes at the request of the TSXV, $26 million of the notes remain unamended and potentially remain in breach of TSXV Policy 4.1. Additionally, NHT inaccurately described the notes in its news releases contrary to TSXV Policy 3.3, and did not obtain minority approval of these notes as may have been required by TSXV Policy 5.9.

Currently, NHT is trading on the TSXV at $0.25 per unit with a market capitalization of $7,338,014. Conversion of the notes therefore poses a significant risk of dilution to NHT's minority unitholders.

*Background of the convertible notes*

NHT is a real estate investment trust (a "**REIT**") that began listing on the TSXV in March 2019.[2] According to NHT's Interim Consolidated Financial Statements for Q2 2023, NHT has $82,723,000 in convertible notes outstanding as of June 30, 2023.[3] These notes were entered into with entities controlled or managed by James Dondero (who is NHT's CEO and one of its trustees), starting in January 2019 through to the end of 2022. NHT consistently disclosed that these notes were exempted from the minority approval requirements under section 5.7(1)(a) of MI 61-101 ("**MI 61-101**") for related party transactions because the notes did not exceed 25% of NHT's market capitalization at the time they were entered into.[4]

---

[1] All dollar amounts are USD.  
[2] NHT Prospectus, dated March 27, 2019, **TAB 1**.  
[3] NHT Interim Consolidated Financial Statements for Q2 2023, **TAB 2**, p. 23 ["**Q2 2023**"].  
[4] See NHT News Releases dated March 30, 2021 (**TAB 3**), April 8, 2022 (**TAB 4**), May 27, 2022 (**TAB 5**), and November 14, 2022 (**TAB 6**).

App. 3358

The notes are described as maturing in 20 years "in most cases" and being convertible into Class B units of NHT's operating partnership (the "**OP**"),[5] which indirectly holds NHT's assets.[6] When the notes were originally disclosed throughout 2021 and 2022—including as recently as NHT's 2022 audited annual financial statements filed on April 4, 2023[7]—the loans were consistently described as being convertible at the option of NHT. For example, NHT's news release on March 30, 2021 described the notes as convertible "at the option of NHT *in its sole discretion*" [emphasis added],[8] and its Q2 2022 financial statements described the notes as "convertible at any time *at the election of the Company* into Class B Units" [emphasis added].[9]

However, in NHT's Q1 2023 financial statements, the description of the loans changed for the first time to "convertible at any time *at the election of the holders* into Class B Units" [emphasis added].[10] This deliberate change in the disclosure suggests that NHT became aware of the misleading disclosure in previous news releases and financial statements, but NHT made the change without any explanation and without any acknowledgement that it was in fact a change to the disclosure.

*The TSXV's required amendments*

In a June 26, 2023 news release, NHT announced that, at the request of the TSXV, it had undertaken to amend $56,165,000 of the convertible notes.[11] NHT also disclosed that MI 61-101 required minority approval of the amendments. On August 31, 2023, NHT set the 2023 annual and special meeting of the unitholders for October 12, 2023.[12]

In its Management Information Circular filed on September 21, 2023 (the "**Information Circular**"), NHT further disclosed that the TSXV required amendments to 32 of the convertible notes issued between June 2021 and September 2022 in the aggregate amount of $56,165,000.[13] The Information Circular explained that, although NHT initially filed the convertible notes with the TSXV under TSXV Policy 5.1 – *Loans, Loan Bonuses, Finder's Fees and Commissions,* the TSXV advised NHT in December 2022 that the notes were required to be treated as "Convertible Securities" under TSXV Policy 4.1 – *Private Placements*. The Information Circular disclosed that "due to this determination, the TSXV required the following amendments":[14]

(i) either the conversion feature be removed or limited to five years from the date of issuance of the loan;
(ii) the conversion feature be limited to the principal amount of the loan; and

---

[5] See Q2 2023, **TAB 2**, p. 23.
[6] NHT Prospectus, **TAB 1**, p. (i).
[7] NHT Audited Consolidated Financial Statements for the years ended December 31, 2022 and December 31, 2021, **TAB 7**.
[8] NHT News Release, dated March 30, 2021, **TAB 3**.
[9] NHT Interim Consolidated Financial Statements for Q2 2022, **TAB 8**, p. 24.
[10] NHT Interim Consolidated Financial Statements for Q1 2023, **TAB 9**, p. 24.
[11] NHT News Release, dated June 26, 2023, **TAB 10**.
[12] Notice, dated August 31, 2023, **TAB 11**.
[13] NHT Notice of Annual and Special Meeting of Unitholders and Management Information Circular, dated September 21, 2023 ["**Information Circular**"], **TAB 12**, p. 17.
[14] Information Circular, **TAB 12**, pp. 18-19.

(iii)   the conversion price be fixed at a price equal to the market price of the REIT's units on the TSXV at the time of the issuance of the loan.

*Highland's application for additional information on the convertible notes*

Highland did not believe that the Information Circular provided sufficient disclosure to allow it to make an informed vote on the proposed amendments. Highland therefore commenced an application to the Capital Markets Tribunal seeking an amended information circular.

In response to Highland's application, NHT moved the meeting to October 26, 2023. Also in response to the application, NHT issued a news release on October 19, 2023 with additional information on the convertible notes.[15] The next day, Highland withdrew its application to the Capital Markets Tribunal. The news release disclosed two key pieces of information.

First, NHT clarified and corrected its earlier disclosure. It disclosed that:

> Previous disclosure of the REIT stated that the Loans were, subject to approval of the TSXV, convertible at any time at the election of the REIT into Class B Units. The REIT wishes to clarify and correct this earlier disclosure. The Loans are, and have always been, only convertible into Class B Units at the option of their respective holder. However, if any of the Loans are converted by their respective holders into Class B Units and the holder then elects to redeem those Class B Units, the REIT may elect to satisfy the redemption by issuing Units to the holder.

The news release does not explain why the previous disclosure did not properly describe the conversion rights, or why NHT failed to correct the misleading disclosure until Highland's application forced the issue.

Second, NHT disclosed that it had initially filed the convertible notes under TSXV Policy 5.1 because the convertible notes were convertible into units of the OP, rather than NHT's "publicly traded units". NHT cited that TSXV Policy 5.1 defined "loan" as excluding "any form of debt instrument issued by an Issuer that is not convertible into Listed Shares". This is an extremely narrow interpretation of TSXV Policy 5.1 that the TSXV clearly rejected as it required amendments to $56 million of the notes to bring them into compliance with Policy 4.1.

*The remaining $26 million in convertible notes may breach Policy 4.1*

Highland has serious concerns about the more than $26 million in convertible notes that have not been subjected to the TSXV's required amendments (the "**Unamended Notes**").

As described above, NHT issued over $82 million in convertible notes, but the TSXV required amendments to only just over $56 million worth of the notes. NHT has never disclosed that the Unamended Notes differ in any significant way from the convertible notes that the TSXV required to be amended. Nor has NHT offered any explanation as to why the Unamended Notes were not subject to the same amendments as the other notes. The Unamended Notes therefore likely also violate the

---

[15] NHT News Release, dated October 19, 2023, **TAB 13**.

requirements of TSXV Policy 4.1. If so, they should be subject to the same amendments as the other $56 million in notes.

Without being subject to amendments to bring about compliance with Policy 4.1, the $26 million in Unamended Notes could be converted at the holders' option at the current NHT unit market price of $0.25, which is a fraction of the unit market price when these notes were issued. This conversion could lead to an additional 104 million units being issued, when the total number of outstanding units is currently only 29,352,055. The Unamended Notes pose a significant risk of dilution for Highland and other minority unitholders. The required amendments would help to mitigate this risk and provide NHT's minority unitholders with the protection that Policy 4.1 intends.

Highland requests that the TSXV review the Unamended Notes, including any amendments to or assignments of those notes, to determine whether amendments are required to bring about compliance with TSXV Policy 4.1.

### *NHT may have breached TSXV Policy 3.3 – Timely Disclosure*

TSXV Policy 3.3 requires accurate disclosure in news releases. Section 3.8(g) of the policy requires reporting issuers to immediately disclose "the borrowing or lending of a significant amount of funds" and section 8.3 states that "The responsibility for the adequacy and accuracy of the content of news releases rests with the directors of an Issuer."[16]

NHT has confirmed that its previous disclosures about its convertible notes are not accurate, as described above. To repeat, NHT disclosed on October 19, 2023 that:[17]

> Previous disclosure of the REIT stated that the Loans were, subject to approval of the TSXV, convertible at any time at the election of the REIT into Class B Units. The REIT wishes to clarify and correct this earlier disclosure. The Loans are, and have always been, only convertible into Class B Units at the option of their respective holder.

We note that under TSXV Policy 3.3 the TSXV has several remedies available to it, up to and including removal of the trustees.[18] We bring this potential breach of the policy to the TSXV's attention for its consideration and possible investigation.

### *NHT may have breached TSXV Policy 5.9 – Protection of Minority Security Holders in Special Transactions*

TSXV Policy 5.9 adopts Multilateral Instrument 61-101 – *Protection of Minority Security Holders in Special Transactions* ("**MI 61-101**").[19] Under section 5.6 of MI 61-101, NHT is required to obtain minority approval for related party transactions, subject to certain exemptions. NHT has consistently disclosed that the convertible notes were exempt from the requirement for minority approval because the fair market value of the transactions did not exceed 25% of NHT's market capitalization at the time they were entered into. However, section 5.5(iii) of MI 61-101 states that the fair market values of "connected transactions" shall be aggregated in determining whether the tests for this exemption are

---

[16] TSXV Policy 3.3 – Timely Disclosure.
[17] NHT News Release, dated October 19, 2023, **TAB 13**.
[18] TSXV Policy 3.3 – Timely Disclosure, s. 12.
[19] TSXV Policy 5.9 – Protection of Minority Security Holders in Special Transactions, s. 2.2.

met.[20] MI 61-101 defines "connected transactions" as "two or more transactions that have at least one party in common, directly or indirectly…and are negotiated or completed at approximately the same time."

NHT's convertible notes appear to be connected transactions. NHT consistently entered into convertible notes with entities affiliated with Dondero between 2019 and 2022, and it disclosed that these notes were all entered into for the purpose of funding NHT's operating expenses. These convertible notes together have far exceeded 25% of NHT's market capitalization—in Q1 2022 alone, NHT entered into $22,925,000 of convertible notes, which was more than 25% of NHT's market capitalization in the same period.

It appears that minority approval may have been required before NHT entered into the convertible notes, even though such approval was not sought. Highland requests that should NHT file any new convertible notes for the TSXV's review, the TSXV consider as part of its review whether minority approval was required, and, if so, obtained.

If we can be of any assistance we would be pleased to discuss this matter further.

Sincerely,

**POLLEY FAITH LLP**

Jeffrey Haylock
JH/dc

Encls.

---

[20] MI 61-101, s. 5.5(iii).