# Appendix Exhibit 153

Amy L. Ruhland
Texas Bar No. 24043561
**Reichman Jorgensen Lehman & Feldberg LLP**
aruhland@reichmanjorgensen.com
101 N. Mopac Expressway
Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1472
Facsimile: (650) 560-3501

*Counsel for James D. Dondero*
*and Strand Advisors, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| | Chapter 11 |
| Debtor. | |

## MOTION OF JAMES D. DONDERO AND STRAND ADVISORS, INC. FOR LEAVE TO FILE ADVERSARY COMPLAINT

¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦¦
1934054231205000000000000001

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................... 1

    I.    Plaintiffs' Attorney-Client Relationship With Pachulski Stang Ziehl &
        Jones LLP .......................................................................................... 1

    II.   The Gatekeeper Provision ...................................................................... 4

LEGAL STANDARD ............................................................................................. 5

ARGUMENT ......................................................................................................... 5

    I.    Plaintiffs Have A Proper Purpose For Bringing Their Claim ...................... 5

    II.   Plaintiffs Have A Colorable Claim Against Pachulski ................................ 7

        A.   Pachulski Had A Fiduciary Duty of Loyalty to Plaintiffs ................... 7

        B.   Pachulski Breached Its Duty of Loyalty to Plaintiffs ....................... 10

        C.   Pachulski's Breach Damaged Plaintiffs And, Separately, Plaintiffs Are
            Entitled to Disgorgement ......................................................... 14

CONCLUSION ...................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

### Federal Cases

*Acme Truck Line, Inc. v. Gardner*,
   2014 WL 6982277 (S.D. Tex. Dec. 9, 2014) ..................................................... 8

*In re Adobe Energy, Inc*,
   82 F. App'x 106 (5th Cir. 2003) ..................................................................... 7

*Avco Corp. v. Turner*,
   2022 WL 2901015 (3d Cir. July 22, 2022) ..................................................... 14

*In re Blast Fitness Grp., LLC*,
   2019 WL 137109 (Bankr. D. Mass. Jan. 8, 2019) ........................................ 13

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
   2023 WL 2346337 (S.D.N.Y. Mar. 3, 2023) ................................................... 6

*Floyd v. Hefner*,
   556 F. Supp. 2d 617 (S.D. Tex. 2008) ............................................................ 6

*Jacobs v. Tapscott*,
   2006 WL 2728827 (N.D. Tex. Sept. 25, 2006), *aff'd*, 277 F. App'x 483
   (5th Cir. 2008) .............................................................................................. 11

*In re Kuykendahl Place Assocs., Ltd.*,
   112 B.R. 847 (Bankr. S.D. Tex. 1989) .......................................................... 12

*In re Life Partners Holdings, Inc.*,
   926 F.3d 103 (5th Cir. 2019) .......................................................................... 7

### State Cases

*Burrow v. Arce*,
   997 S.W.2d 229 (Tex.1999) ............................................................................ 14

*First United Pentecostal Church of Beaumont v. Parker*,
   514 S.W.3d 214 (Tex. 2017) ....................................................................7, 14

*Gillis v. Provost & Umphrey L. Firm, LLP*,
   2015 WL 170240 (Tex. App.—Dallas 2015, no pet.) ...................................... 8

*Goffney v. Rabson,*
   56 S.W.3d 186 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) .............. 10, 11

*Gomez Acosta v. Falvey,*
   594 S.W.3d 386 (Tex. App.—El Paso 2019, no pet.)...................................... 6

*Gregory v. Porter & Hedges, LLP,*
   398 S.W.3d 881 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ................... 14

*Hernandez v. LaBella,*
   2010 WL 431253 (Tex. App.—Houston [14th Dist.] Feb. 9, 2010, no
   pet.) ........................................................................................................ 14

*Hoover Slovacek LLP v. Walton,*
   206 S.W.3d 557 (Tex. 2006) ...........................................................7, 13

*James Mazuca and Associates v. Schumann,*
   82 S.W.3d 90 (Tex. App.—San Antonio 2002, pet. denied) ........................ 6

*Johnson v. Williams,*
   2006 WL 1653656 (Tex. App.—Houston [1st Dist.] 2006, pet.
   denied) ..................................................................................................... 10

*Martin v. State,*
   265 S.W.3d 435 (Tex. App.—Houston [1st Dist.] 2007, no pet.)............................. 12

*Rogers v. Zanetti,*
   517 S.W.3d 123 (Tex. App.—Dallas, 2015), *aff'd*, 518 S.W.3d 394
   (Tex. 2017) ............................................................................................... 14

*Spera v. Fleming, Hovenkamp & Grayson, P.C.,*
   25 S.W.3d 863 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ............................ 13

*In re Thetford,*
   574 S.W.3d 362 (Tex. 2019) .................................................................. 13

*Valls v. Johanson & Fairless, L.L.P.,*
   314 S.W.3d 624 (Tex. App.—Houston [14th Dist.] 2010, no pet.) .......................... 9

*Vinson & Elkins v. Moran,*
   946 S.W.2d 381 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd
   by agr.)....................................................................................................... 7

*Willis v. Maverick,*
   760 S.W.2d 642 (Tex. 1988) ................................................................. 11

App. 3367

**Rules**

Rule 12(b)(6)...................................................................................................................... 5

James D. Dondero ("Mr. Dondero") and Strand Advisors, Inc. ("Strand" and, collectively, "Plaintiffs") respectfully move for leave to file an Adversary Proceeding Complaint (attached as Ex. A) against the law firm of Pachulski Stang Ziehl & Jones LLP ("Pachulski") for breaching its fiduciary duty of loyalty to Plaintiffs under Texas law.

## BACKGROUND

### I.   Plaintiffs' Attorney-Client Relationship With Pachulski Stang Ziehl & Jones LLP

1.   Highland Capital Management, L.P. ("HCMLP") is an SEC-registered investment advisory business founded in 1993 by Mr. Dondero, directly and indirectly constituting a material aspect of Mr. Dondero's personal wealth.  Compl. at ¶16.  From the company's formation until the confirmation of the HCMLP bankruptcy plan in August 2021, Strand was HCMLP's general partner ("GP"), and Mr. Dondero in turn wholly owned Strand.  *Id.* at ¶18.  Prior to filing for bankruptcy, HCMLP provided money management and advisory services for approximately $2.5 billion of assets under management and provided sub-advisory services for an additional $15 billion of assets under management.  *Id.* at ¶17.  Nevertheless, HCMLP suffered losses during the 2008 financial crisis, leading to lawsuits by investors. *Id.* at ¶¶20-26.  After one of the most contentious disputes resulted in a large arbitration award that HCMLP lacked the immediate liquidity to pay, Mr. Dondero sought advice about protecting HCMLP, as well as his and Strand's interest in the entity.

1

2.      In October 2019, Mr. Dondero (HCMLP's co-founder) and Strand
(HCMLP's general partner) turned to Pachulski for help, who advised that Plaintiffs
restructure the arbitration debt by putting HCMLP into Chapter 11 bankruptcy
proceedings in Delaware.  *Id.* at ¶¶28-33.  Bankruptcy, Pachulski counseled, would
protect Plaintiffs' interest in HCMLP by providing an orderly mechanism to address
the arbitration debt while ensuring that Plaintiffs retained control of HCMLP
throughout the bankruptcy, which Pachulski represented would be quick.  *Id.* at ¶
33.

3.      Throughout the next several months, Pachulski continued to advise
Plaintiffs on how to best protect their interests in HCMLP by, among other things,
(a) providing Plaintiffs legal advice regarding their objectives vis-à-vis the
bankruptcy; (b) negotiating on behalf of Plaintiffs with the unsecured creditors
committee ("UCC"); and (c) advising Plaintiffs to relinquish their control of HCMLP
to avoid the appointment of an independent trustee in favor of an independent board,
which was affected through a Governance Settlement.[1]  *Id.* at ¶87.  Pachulski knew
that the appointment of a trustee would likely ensure that their representation of
HCMLP would end (as the trustee would hire new counsel).  *Id.* at ¶66.  But if an
independent board were appointed instead, Pachulski could likely stay on as counsel
to HCMLP.  *Id.*  In short, Pachulski counseled Plaintiffs to engage in a course of
conduct that was in dissonance with Plaintiffs' primary objectives but that was in

---

[1] The Governance Settlement refers to a compromise reached between HCMLP and the UCC that was
approved by the Bankruptcy Court on January 9, 2020.  This agreement outlines the terms for the
governance and operation of HCMLP during the bankruptcy proceedings.  *See* Dkts. 281, 339.

2

consonance with Pachulski's own financial interest as a bankruptcy and restructuring law firm.

4.     Shortly after Plaintiffs executed documents effectuating the Governance Settlement, the independent directors (the majority of whom were selected by the UCC) overseeing HCMLP became hostile towards Plaintiffs. *Id.* at ¶79.   HCMLP then proceeded to take numerous actions adverse to Plaintiffs, including (1) obtaining a temporary restraining order ("TRO") that, among other things, prevented Mr. Dondero from contacting HCMLP's employees; (2) moving to have Dondero held in contempt for violating the TRO (eventually resulting in Mr. Dondero being ordered to pay $450,000 to compensate HCMLP for its legal fees incurred in pursuing a contempt order); (3) filing multiple adversary proceedings against Mr. Dondero and entities affiliated with him; and (4) advocating in favor of the Fifth Amended Plan of Reorganization, which both wiped out Strand's interest in HCMLP and created a Litigation Sub-Trust whose Trustee has since asserted claims against Plaintiffs. *Id.* at ¶¶14, 80.

5.     Though Pachulski knew that HCMLP's creditors might move to appoint a bankruptcy trustee (and thus thwart the Plaintiffs' singular goal of retaining control of HCMLP), Pachulski failed to advise Mr. Dondero and Strand that Pachulski was not representing their interests in the restructuring and that they should retain independent outside counsel.  *Id.* at ¶¶35, 55.  And despite advising Plaintiffs on a host of issues after being approached by Mr. Dondero, Pachulski never

3

advised that its interests as counsel to HCMLP had become adverse to Plaintiffs and thus Plaintiffs should consider retaining independent outside counsel. *Id*.

6.      In short, as detailed in the Adversary Complaint, Pachulski placed its own business interests ahead of Plaintiffs' interests, and its actions both undermined Plaintiffs' primary goals in consenting to the bankruptcy (*i.e.*, a fast exit from bankruptcy with Plaintiffs still in control) and exposed Plaintiffs to substantial liability. *Id*. at ¶81. The Adversary Complaint thus alleges that Pachulski's actions constitute a breach of its fiduciary duty of loyalty to Plaintiffs, entitling Plaintiffs to legal relief. *Id*. at ¶¶14-15, 86-92.

## II.    The Gatekeeper Provision

7.      On February 22, 2021, the Court confirmed the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified, the "Plan"). The Plan became effective in August 2021, and includes a "Gatekeeper Provision." *See* Dkt. 1943 at ¶76. That provision "require[s] that, before a party may commence or pursue claims relating to the bankruptcy case against certain protected parties, it must first obtain (1) a finding from the bankruptcy court that its proposed claims ('Proposed Claims') are 'colorable'; and (2) specific authorization by the bankruptcy court to pursue the Proposed Claims." *See* Dkt. 3903 at 4 (citation omitted). Pachulski is a Protected Party under the Plan. *See* Dkt. 1943, Exhibit A at ¶105(xiv).

8.      Because Plaintiffs are concerned that their fiduciary duty claim is arguably nearing a limitations period, Plaintiffs recently reached out to Pachulski requesting that it sign a tolling agreement to preserve Plaintiffs' claim. *See* Ex. B

4

(Email correspondence between A. Ruhland and J. Morris, dated 11/28/23 – 12/1/23).
Pachulski refused. *Id.* Plaintiffs urged Pachulski to reconsider, both for the
preservation of the value of the Highland estate and to reduce animosity between
the parties. *Id.* As of the filing of this motion, Pachulski has not changed its position,
necessitating the filing of this Motion and attached complaint.

## LEGAL STANDARD

9. Under the Plan, a complaint may be filed against a Protected Party
only if it satisfies the "Gatekeeper Colorability Test." *See* Dkt. 3903 at 91. According
to the Bankruptcy Court, this legal standard is "a broader standard than the
'plausibility' standard applied to Rule 12(b)(6) motions to dismiss" and "involves ***an
additional level of review*** . . . [requiring plaintiffs to make] a prima facie case that
its proposed claims are ***not without foundation***, are ***not without merit***, and are
***not being pursued for any improper purpose such as harassment***." *Id.*
(emphasis in original). The Court explained that the test permits it to consider "its
***knowledge*** of the ***bankruptcy proceedings*** and ***the parties*** and any additional
evidence presented at the hearing on the Motion for Leave." *Id.* (emphasis in
original).[2]

## ARGUMENT

**I.    Plaintiffs Have A Proper Purpose For Bringing Their Claim**

---

[2] Plaintiffs do not concede that the Gatekeeper Colorability Test outlined in Dkt. 3903 is the
appropriate standard under a gatekeeper provision in the Fifth Circuit. Nonetheless, Plaintiffs have
drafted this Motion consistent with the Court's articulation of the Gatekeeper Colorability Test.

10.    A breach of fiduciary duty claim under Texas law has a four-year statute of limitations period. *See Gomez Acosta v. Falvey*, 594 S.W.3d 386, 393 (Tex. App.—El Paso 2019, no pet.).  Letting a client's claim expire may be considered attorney malpractice. *See Floyd v. Hefner*, 556 F. Supp. 2d 617, 643 (S.D. Tex. 2008) (*citing James Mazuca and Associates v. Schumann*, 82 S.W.3d 90, 97 (Tex. App.—San Antonio 2002, pet. denied).

11.    Plaintiffs' claim for breach of fiduciary duty is not brought to harass Pachulski or for any improper purpose.   Plaintiffs have a good faith concern that their claim for breach of fiduciary duty may be nearing its limitations period. Importantly, Plaintiffs did not want to file this Motion for Leave or the attached Adversary Complaint as this time, but Pachulski declined to sign (or even negotiate regarding the terms of) Plaintiffs' tolling agreement. *See* Ex. B; *see also Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc*., 2023 WL 2346337, *7 (S.D.N.Y. Mar. 3, 2023) ("parties who want to forestall the running of the limitations period in order to engage in discussions aimed at resolving a dispute can accomplish that goal by signing toiling agreements to that effect.  In the absence of such agreement . . . the limitations period runs."). Plaintiffs' Adversary Complaint is an effort by Plaintiffs to avail themselves of the only available legal remedy for the harm they have suffered due to Pachulski's actions.  Thus, out of an abundance of caution, Plaintiffs had to file this Motion.  As explained further below and detailed in the attached Adversary Complaint, Plaintiffs' breach of fiduciary duty claim is colorable and its Motion for Leave should be granted.

6

## II.    Plaintiffs Have A Colorable Claim Against Pachulski

12.    Plaintiffs should be granted leave to assert a breach of fiduciary duty claim against Pachulski.  "A Texas law claim for breach of fiduciary duty requires the plaintiff to plead the following elements: (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages."  *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (cleaned up).  The Texas Supreme Court has emphasized:

> In Texas, we hold attorneys to the highest standards of ethical conduct in their dealings with their clients. The duty is highest when the attorney . . . takes a position adverse to his or her client's interests. As Justice Cardozo observed, '[a fiduciary] is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.' Accordingly, a lawyer must conduct his or her business with inveterate honesty and loyalty, *always keeping the client's best interest in mind*.

*Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 560-61 (Tex. 2006) (emphasis added) (citations omitted).  Importantly, a plaintiff need not prove causation or actual damages "as to any equitable remedies [] sought." *Parker*, 514 S.W.3d at 221.

### A.    Pachulski Had A Fiduciary Duty of Loyalty to Plaintiffs

13.    In Texas, an attorney-client relationship exists when an attorney agrees to render professional services to a client. *See Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (citation omitted).  "[A]n attorney-client relationship may [] be . . . implied from actions that reveal the parties' intent to establish the relationship." *See In re Adobe Energy, Inc,*

82 F. App'x 106, 114 (5th Cir. 2003); *see also Acme Truck Line, Inc. v. Gardner*, 2014 WL 6982277, at *2 (S.D. Tex. Dec. 9, 2014).  An attorney owes a fiduciary duty of loyalty to his client throughout the course of the representation.  *Gillis v. Provost & Umphrey L. Firm, LLP*, 2015 WL 170240, at *10 (Tex. App.—Dallas 2015, no pet.).

14.   As set forth in the Adversary Complaint and summarized below, Pachulski's interactions with Plaintiffs evince an attorney-client relationship under Texas law, resulting in a fiduciary relationship with Plaintiffs:

15.   ***Pachulski's Actions Evince An Attorney-Client Relationship With Plaintiffs***.   Pachulski's actions—starting from the moment Plaintiffs approached the firm in September 2019 to discuss their objectives of resolving the outstanding arbitration debt expeditiously and retaining control of HCMLP— demonstrate the existence of an attorney-client relationship.   Specifically, the following acts are indicative of an attorney client relationship: (1) engaging in numerous discussions with Mr. Dondero personally, as well as in his capacity as President of Strand, regarding how best to retain control of HCMLP and to protect his financial interest;[3] (2) advising Mr. Dondero to give up control of Strand (a non-debtor) to an independent board;[4] (3) advising Mr. Dondero to appoint a Chief Restructuring Officer to increase the likelihood that Mr. Dondero and Strand would retain control over HCMLP in bankruptcy;[5] (4) advising Mr. Dondero regarding alternative proposals he should make to the UCC to address their concerns about

---

[3] *See, e.g.*, Compl. at ¶¶9-10, 12-13.
[4] *See, e.g.*, Compl. at ¶¶12, 82.
[5] *See, e.g.*, Compl. at ¶¶10, 34.

Plaintiffs retaining control of HCMLP during the bankruptcy;[6] and (5) advising Plaintiffs to execute various documents to effectuate a change in control without advising Plaintiffs to hire independent outside counsel.[7]  Plaintiffs clearly expected Pachulski to advise them on the above matters (otherwise, why would Pachulski repeatedly provide them advice), yet Pachulski took no steps to communicate that *it was not* representing Plaintiffs' interests.  *See Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A]n attorney-client relationship may arise by implication if the lawyer knows a person reasonably expects him to provide legal services but does nothing to correct that misapprehension.").

16.  ***Plaintiffs' Actions Evince An Attorney-Client Relationship With Pachulski.***  The actions of Plaintiffs suggest that they believed they were clients of Pachulski: (1) Plaintiffs approached Pachulski for legal advice regarding how to protect their substantial financial interest in HCMLP given the large arbitration award and articulated their objectives to retain control of HCMLP;[8] (2) Plaintiffs acted in accordance with Pachulski's advice that Mr. Dondero give up control of Strand (a non-debtor) to an independent board;[9] (3) Plaintiffs acted in accordance with Pachulski's advice that Mr. Dondero appoint a CRO to increase the likelihood that Mr. Dondero and Strand retain control over HCMLP in bankruptcy;[10] (4)

---

[6] *See, e.g.*, Compl. at ¶52.
[7] *See, e.g.*, Compl. at ¶¶47, 52, 54.
[8] *See, e.g.*, Compl. at ¶¶9, 28.
[9] *See, e.g.*, Compl. at ¶¶12, 54, 69, 75.
[10] *See, e.g.*, Compl. at ¶¶10-11, 36.

App. 3377

Plaintiffs acted in accordance with Pachulski's advice to Mr. Dondero regarding alternative proposals to the UCC to address concerns about Plaintiffs' retention of control of HCMLP during the bankruptcy;[11] and (5) Plaintiffs never retained independent outside counsel other than Pachulski because Pachulski had repeatedly advised Plaintiffs with respect to protecting Plaintiffs' interests in HCMLP, both before and after HCMLP filed for bankruptcy.[12] These facts plainly support the existence of an attorney-client relationship. *See Johnson v. Williams*, 2006 WL 1653656, at *6 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (reversing grant of summary judgment because evidence suggested existence of attorney-client relationship when "the lawyer fails to manifest lack of consent . . . and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." (citing Restatement (Third) of the Law Governing Lawyers § 14 (2000))).

### B.  Pachulski Breached Its Duty of Loyalty to Plaintiffs

17.  Attorneys breach their fiduciary duties to clients by their "failure to disclose conflicts of interest, . . . placing personal interests over the clients' interests, improper use of client confidences, taking advantage of the client's trust, engaging in self-dealing, and making misrepresentations." *Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The duty of loyalty

---

[11] *See, e.g.*, Compl. at ¶¶ 52, 54.
[12] *See, e.g.*, Compl. at ¶¶ 65, 69, 75.

App. 3378

encompasses the duty "to render a full and fair disclosure of facts material to the client's representation." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).

18.     The Adversary Complaint includes a colorable claim that Pachulski breached its duty of loyalty to Plaintiffs in multiple ways.   First, Pachulski positioned itself to be retained as debtor's counsel by improperly putting its own self-interest in securing a lucrative engagement over its duty of loyalty to Plaintiffs. *See, e.g.*, Compl. at ¶¶81, 83; *see also Goffney*, 56 S.W.3d at 193 ("placing personal interests over the clients' interests" breaches duty of loyalty).   And even though Pachulski's advice regarding the propriety of bankruptcy for HCMLP failed to achieve any of Plaintiffs' stated goals, the advice resulted in Pachulski earning millions in fees from their engagement with HCMLP. *See* Compl. at ¶¶15, 90.  This constitutes an improper benefit obtained despite a clear conflict of interest. *See, e.g.*, *Jacobs v. Tapscott,* 2006 WL 2728827, at *6 (N.D. Tex. Sept. 25, 2006), *aff'd*, 277 F. App'x 483 (5th Cir. 2008) ("An attorney's 'pursuit of his own pecuniary interests over the interests of his client . . . can be viewed as claims involving breached fiduciary duties.'" (cleaned up, citation omitted)).

19.     Second, Pachulski neither disclosed nor counseled Plaintiffs that the interests of HCMLP might become adverse to Plaintiffs in the future. *See, e.g.*, Compl. at ¶¶81, 82.   More importantly, once it became clear that the interests of Pachulski and its client HCMLP were diverging from those of Plaintiffs, Pachulski never advised Plaintiffs to retain independent outside counsel.  Compl. at ¶¶69, 91. In fact, facing a court likely to appoint a trustee that would be hostile to Plaintiffs

retaining control of HCMLP, Pachulski continued to advise on legal strategy for HCMLP, Strand, and Dondero—each as seemingly aligned but separate clients with potential conflicts of interest between them.  Compl. at ¶¶ 13, 61.  This was improper. *See In re Kuykendahl Place Assocs., Ltd.*, 112 B.R. 847, 850 (Bankr. S.D. Tex. 1989) ("To represent an adverse interest means to serve as an agent or attorney for any individual or entity holding such adverse interest. The firm of Crain, Caton & James has represented Marc S. Geller individually. Mr. Geller is the general partner of Debtor's sole limited partner which is itself a limited partnership. Marc S. Geller has individually guaranteed an indebtedness of the Debtor-in-Possession. The guarantee, by its nature, establishes that Mr. Geller holds an interest which may be adverse to that of the Debtor-in-Possession.").

20.     Further, Pachulski advised HCMLP to act adversely to Plaintiffs' interests with respect to the same issues it previously advised Plaintiffs.  For example, Pachulski filed claims on behalf of HCMLP against Mr. Dondero, supported a bankruptcy plan that wiped out Strand's interest in HCMLP and resulted in a litigation sub-trust that pursued claims against Plaintiffs, and obtained a temporary restraining order against Mr. Dondero.  Compl. at ¶¶ 14, 80.  These actions constitute a breach of fiduciary duty.  *See Hoover,* 206 S.W.3d at 560-61 (Tex. 2006) ("The duty is highest when the attorney . . . takes a position adverse to his or her client's interests. . . . a lawyer must conduct his or her business with inveterate honesty and loyalty, *always keeping the client's best interest in mind.*" (cleaned up)).

12

21.     Third, once Pachulski knew or should have known that there was a conflict of interest between Plaintiffs and HCMLP, Pachulski failed to secure Plaintiffs' informed consent before continuing to represent HCMLP in the bankruptcy proceeding.  Compl. at ¶¶ 35, 55.  "[A]s a general proposition loyalty to a client prohibits undertaking representation directly adverse to the representation of that client in a substantially related matter unless that client's fully informed consent is obtained and unless the lawyer reasonably believes that the lawyer's representation will be reasonably protective of that client's interests."  *In re Thetford*, 574 S.W.3d 362, 376 (Tex. 2019); *see In re Blast Fitness Grp., LLC*, 2019 WL 137109 at *7 (Bankr. D. Mass. Jan. 8, 2019) ("the conflict presented by their simultaneous representations of other potentially adverse parties may have breached that [duty of loyalty]").  Pachulski's failure to sufficiently inform Plaintiffs about the potential conflict with Pachulski's representation of HCMLP in time for Plaintiffs to obtain independent outside counsel is colorable claim for breach of fiduciary duty.  *See Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 873 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (remanding claim for breach of fiduciary duty because fact issue existed concerning whether lawyers had duty to tell clients about potential conflict of interest in time for clients to obtain other counsel prior to hearings).

**C.      Pachulski's Breach Damaged Plaintiffs And, Separately, Plaintiffs Are Entitled to Disgorgement**

22.      Causation is generally an essential element to a client's claim seeking actual damages as a remedy for breach of fiduciary duty.  *See Rogers v. Zanetti*, 517 S.W.3d 123, 136 (Tex. App.—Dallas, 2015), *aff'd*, 518 S.W.3d 394 (Tex. 2017).  But there is no requirement "to show causation and actual damages as to any equitable remedies [] sought."  *Parker*, 514 S.W.3d 214, 221 (Tex. 2017).  Thus, "forfeiture of an attorney's fee is an appropriate remedy when an attorney breaches his fiduciary duty to a client even in the absence of actual damages."  *See Hernandez v. LaBella*, 2010 WL 431253, at *3 n.2 (Tex. App.—Houston [14th Dist.] Feb. 9, 2010, no pet.) (citing *Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex.1999)).

23.      Here, Plaintiffs have a colorable claim that Pachulski's breach of its fiduciary duty entitles Plaintiffs to disgorgement of Pachulski's fees.  *See Gregory v. Porter & Hedges, LLP,* 398 S.W.3d 881, 885 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("fee forfeiture is a deterrent in that it removes the incentive for an attorney to take personal advantage of her position of trust in every situation, whether the client is injured or not." (citations omitted)); *see also Avco Corp. v. Turner*, 2022 WL 2901015, at *3 (3d Cir. July 22, 2022) (reversing summary judgment because "disgorgement need not be a refund of fees paid" and disgorgement, "after all . . . centers on the wrongdoer's gain, not the plaintiff's loss: it is the act of giving up something (such as profits illegally obtained) on demand or by legal compulsion" (cleaned up)).

24.    And though causation is not a necessary element of Plaintiffs' claim, Pachulski's disloyalty clearly caused Plaintiffs' damages.    Among other things, Pachulski's actions resulted in (a) HCMLP filing claims against Dondero; (b) the wiping out of Strand's interest in HCMLP and the creation of a litigation sub-trust that has since sued Strand and Dondero (causing them to incur millions of dollars in legal fees); (c) the issuance of a TRO against Dondero ordering him to pay $450,000 to compensate HCMLP for its legal fees incurred in pursuing a subsequent contempt order; and (d) Plaintiffs' loss of control over HCMLP.  Compl. at ¶88.  That is, Pachulski advised Plaintiffs to voluntarily surrender their governance rights to facilitate a settlement with creditors who harbored animosity toward Mr. Dondero and, as part of the settlement, vested these creditors with standing to sue Mr. Dondero and entities affiliated with him.  *Id*. at ¶76.

25.    For these reasons, Plaintiffs' can make a prima facie case that their proposed claim for breach of fiduciary duty has foundation and is not without merit. *See* Dkt. 3903 at 91.

## CONCLUSION

26.    Plaintiffs respectfully request that the Court grant their Motion for Leave.

**Dated**: December 4, 2023

*/s/* Amy L. Ruhland
Amy L. Ruhland
Texas Bar No. 24043561
**Reichman Jorgensen Lehman & Feldberg LLP**
aruhland@reichmanjorgensen.com
101 N. Mopac Expressway
Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1472
Facsimile: (650) 560-3501

*Counsel for James D. Dondero and Strand Advisors, Inc.*

16

## CERTIFICATE OF CONFERENCE

Beginning on November 28, 2023, and on December 1, 2023, the undersigned counsel reached out to John A. Morris at the Pachulski firm regarding the relief requested in this Motion.  Mr. Morris communicated Pachulski's opposition.

Dated: December 4, 2023

*/s/ Amy L. Ruhland*
Amy L. Ruhland

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 3, 2023, a true and correct copy of the foregoing

Motion was served on all counsel of record through the Court's ECF system, which

provides notice to all parties of interest, and on the Pachulski firm directly.

Dated: December 4, 2023

*/s/ Amy Ruhland*

Amy L. Ruhland

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ------------------------------------------------- | § | |
| In re: HIGHLAND CAPITAL | § | **Chapter 11** |
| MANAGEMENT, L.P.,[1] | § | **Case No. 19-34054 (SGJ)** |
| | § | |
| **Debtor,** | § | |
| ------------------------------------------------- | § | |
| **STRAND ADVISORS, INC. AND** | § | |
| **JAMES DONDERO** | § | |
| | § | |
| **Plaintiffs,** | § | **Adversary Proceeding No.** |
| | § | |
| **v.** | § | |
| | § | _____ |
| **PACHULSKI STANG ZIEHL &** | § | |
| **JONES LLP** | § | |
| | § | |
| **Defendant.** | § | |
| ------------------------------------------------- | § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

**TO THE HONORABLE COURT:**

Plaintiffs Strand Advisors, Inc. ("Strand") and James Dondero ("Dondero") file this Original

Complaint against Defendant Pachulski, Stang, Ziehl & Jones ("Pachulski" or "Defendant"), pursuant

to section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001(1) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and would show the Court as

follows:

---

[1] The Debtor's last four digits of its taxpayer identification number are (6752). The headquarters and service address
for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

## I.    PARTIES

1.    Plaintiff Strand is a Delaware corporation wholly owned by James Dondero. Its members are domiciled in the State of Texas, so it is also a citizen of the State of Texas.

2.    Plaintiff James Dondero is a natural person residing in Dallas County, Texas.

3.    Plaintiffs are the prior owners of the above-stated Debtor, Highland Capital Management and, thus, are affiliates and/or insiders as defined under the Bankruptcy Code (11 U.S.C. § 101(2), (31)).

4.    Defendant Pachulski is a limited liability partnership organized under the laws of California that has partners residing in California, Texas, Delaware, and New York. Accordingly, Pachulski resides in Texas, among other states.

## II.    JURISDICTION AND VENUE

5.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and § 1334 as it is related to a case currently governed by Title 11 of the United States Code. This adversary proceeding is a non-core proceeding.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

7.    Plaintiffs consent to the entry of a final order or judgment by the Bankruptcy Court in this matter.

## III.    SUMMARY OF THIS LAWSUIT

8.    ***Overview.*** This lawsuit involves a law firm (Pachulski) that turned against its clients (Strand and Dondero) when it suited the law firm's own economic interests. Having advised Plaintiffs to put the entity they owned and controlled (Highland Capital Management, LP) into bankruptcy and undertake a series of actions designed to avoid appointment of a trustee, Pachulski then turned against those very same clients by representing the debtor entity in a series of actions adverse to them.

Defendant's blatant breach of its fiduciary and ethical duties caused Plaintiffs' significant harm. This lawsuit seeks redress for that damage.

9.    ***The Parties' Initial Relationship.*** In 2019, Highland Capital Management, LP ("HCMLP") had a large arbitration award issued against it that had not yet been confirmed. Although HCMLP had assets in excess of the award, it did not have the immediate liquidity to pay the award if confirmed. Accordingly, HCMLP engaged Defendant to advise them regarding a potential restructuring to address the award. Both before and after HCMLP formally engaged Defendant, Plaintiffs Strand (HCMLP's general partner) and Dondero (Strand's sole owner) articulated to Defendant their objectives, regarding a potential bankruptcy—namely, that Strand (and Dondero) retain control over HCMLP and that HCMLP quickly emerge from the bankruptcy.

10.    ***Defendant Undermines Bankruptcy.*** Defendant advised Dondero to have HCMLP file for bankruptcy in Delaware, assuring them that Delaware was a better venue; would help avoid the appointment of a trustee; and would be quick. Defendant further advised Dondero to appoint a CRO (Chief Restructuring Officer), which would also help avoid the appointment of a bankruptcy trustee and ensure Plaintiffs remained in control of HCMLP.

11.    Defendant's advice quickly proved to be misguided. The Delaware court appointed an unsecured creditor's committee ("UCC"), most of the members of which had a long history of adverse litigation against Plaintiffs. The Delaware court then transferred the case to Texas. Meanwhile, Defendant's supposed "firewall" strategy of voluntarily appointing a CRO failed as the US Trustee filed a motion to appoint a bankruptcy trustee.

12.    ***Defendant Advises Dondero and Strand to Give Up Rights in HCMLP.*** Facing a court likely to appoint a hostile trustee, Defendant advised a new legal strategy for HCMLP, Strand, and Dondero—each as seemingly aligned but separate clients with potential conflicts of interest between them. Defendant advised that Strand and Dondero propose a restructuring of HCMLP's

App. 3390

corporate governance to the creditors whereby Dondero would relinquish control over HCMLP's
general partner Strand (a non-debtor in the Bankruptcy) to an independent board of directors. In other
words, the main goals of Pachulski's representation (*e.g.,* a fast exit from bankruptcy with Plaintiffs
still in control) were now imperiled. Facing little alternative due to Pachulski's flawed advice, Plaintiffs
followed the recommendation and reached a settlement with the UCC wherein Plaintiffs gave up
material rights (including control of Strand) by agreeing to an independent board in hopes of avoiding
the appointment of a trustee over HCMLP.

13.     Importantly, Defendant advised Plaintiffs to relinquish their own individual rights, not
any rights held by HCMLP. The corporate governance of HCMLP was the subject of Pachulski's
advice. Plaintiffs were the recipients of such advice. This advice clearly was in conflict between
Plaintiffs and HCMLP—while HCMLP benefited from the advice, Plaintiffs followed such advice to
their detriment. Nonetheless, Pachulski, the retained counsel for HCMLP, never advised Plaintiffs of
the conflict of interest or the need for Plaintiffs to retain their own counsel to evaluate Pachulski's
advice.

14.     ***Pachulski Breaches its Fiduciary Duty by Turning on Plaintiffs.*** After HCMLP
was under the control of an independent board of directors, HCMLP and Pachulski quickly became
hostile towards Dondero and Strand. Pachulski breached its fiduciary duty to Plaintiffs by undertaking
a series of adverse actions against them on behalf of HCMLP. Those adverse actions included (a)
filing claims by HCMLP against Dondero; (b) advocating on behalf of a bankruptcy plan that wiped
out Strand's interest in HCMLP and creating a litigation sub-trust that has since pursued claims against
Strand and Dondero; and (c) seeking and obtaining a temporary restraining order against Dondero.

15.     Despite this sudden direct adversity between its former clients (Strand and Dondero)
and current client (HCMLP), Defendant continued to represent HCMLP throughout the Bankruptcy

in breach of duties to its former clients. In the process, Defendant earned millions in legal fees. Meanwhile, Plaintiffs' interest in HCMLP was wiped out and Plaintiffs were left with nothing.

## IV.   FACTUAL BACKGROUND

**A.     The Relationship between Dondero, Strand, and HCMLP.**

16.     James Dondero co-founded HCMLP, a Delaware limited partnership, (together with its affiliates, "Highland") in 1993. Highland operated a diverse investment platform and served institutional and retail investors worldwide. Its investment capabilities included, for example, high yield credit, public equities, real estate, private equity and special situations, structured credit, and sector- and region- specific verticals built around specialized teams.

17.     Prior to its bankruptcy filing, HCMLP—an SEC-registered global investment adviser––was one of the principal operating arms of Highland's business. HCMLP directly provided money management and advisory services for approximately $2.5 billion of assets under management and provided subadvisory services to an additional $15 billion of assets under management. During calendar year 2018, HCMLP's stand-alone revenue totaled approximately $50 million.

18.     Plaintiff Strand was HCMLP's general partner ("GP") from the company's formation until the confirmation of the HCMLP bankruptcy plan in August 2021. As GP, Strand controlled HCMLP. Strand, in turn, is wholly owned by Dondero.

**B.     A Protracted Dispute Arises between HCMLP and Investors in one of its Funds, resulting in an Arbitration Award being issued against HCMLP.**

19.     HCMLP had a dispute with investors related to an investment fund formerly managed by HCMLP (known as the Highland Crusader Fund) which was formed between 2000 and 2002.

20.     Specifically, in September and October 2008, as the financial markets in the United States began to fail, HCMLP was flooded with redemption requests from Crusader Fund investors, as the Crusader Fund's assets lost significant value.

App. 3392

21. On October 15, 2008, HCMLP placed the Crusader Fund in wind-down, thereby compulsorily redeeming the Crusader Fund's limited partnership interests. HCMLP also declared that it would liquidate the Crusader Fund's remaining assets and distribute the proceeds to investors.

22. However, disputes concerning the distribution of the assets arose among certain investors. After several years of negotiations, a Joint Plan of Distribution of the Crusader Fund (the "Crusader Plan") and the Scheme of Arrangement between Highland Crusader Fund and its Scheme Creditors (the "Crusader Scheme") were adopted in Bermuda and became effective in August 2011.

23. As part of the Crusader Plan and the Crusader Scheme, a committee called the Redeemer Committee was elected from among the Crusader Fund's investors to oversee HCMLP's management of the Crusader Fund.

24. Between October 2011 and January 2013, in accordance with the Crusader Plan and the Crusader Scheme, HCMLP distributed in excess of $1.2 billion to the Crusader Fund investors. HCMLP distributed a further $315.3 million through June 2016.

25. However, disputes subsequently arose between the Redeemer Committee and HCMLP. On July 5, 2016, the Redeemer Committee (a) terminated and replaced HCMLP as investment manager of the Crusader Fund, (b) commenced an arbitration against it (the "Arbitration"), and (c) commenced litigation in Delaware Chancery Court, inter alia, to obtain a status quo order in aid of the arbitration, which was subsequently entered.

26. In September 2018, HCMLP and the Redeemer Committee participated in a multi-day evidentiary hearing. In March 2019, following post-trial briefing, the arbitration panel issued its Award, as subsequently modified and finalized, finding in favor of the Redeemer Committee on a variety of claims and requiring HCMLP to pay a gross amount of $189 million, which would be partially netted against certain assets and deferred cash to be sent back to HCMLP. After offsets, HCMLP believed the Award would be roughly $110 million.

**C.      HCMLP Engages Pachulski to Advise the Company concerning a Potential Restructuring.**

27.      HCMLP possessed substantial assets at the time the Award was issued and believed its net worth was several hundred million dollars in excess of all of its liabilities, including the Award. However, HCMLP lacked the immediate liquidity to satisfy the Award.

28.      Against this backdrop, on or about September 26, 2019, HCMLP engaged Pachulski to negotiate with the Redeemer Committee and to advise HCMLP of its options—including regarding the advisability of a potential restructuring.

29.      Both before and after HCMLP formally engaged Pachulski, Dondero informed them of his and Strand's objectives for HCMLP—namely, that (a) Strand (and, thus, Dondero, as Strand's sole owner) remain in control of HCMLP and (b) HCMLP emerge from bankruptcy as quickly as possible, preferably within a few months of filing.

30.      Dondero and Strand sought advice from Pachulski regarding the advisability of HCMLP filing for bankruptcy in light of those objectives, as well as regarding protections to put in place should HCMLP move forward with a bankruptcy filing.

31.      Pachulski understood and accepted the engagement. Pachulski knew it was providing advice *to* Dondero and Strand *about* HCMLP and, as such, that Dondero and Strand were clients of Pachulski. Pachulski also knew and understood that Dondero and Strand were relying on the advice it was providing.

32.      Pachulski knew that if HCMLP filed for bankruptcy, a substantial risk would arise that Strand and Dondero would lose control of HCMLP. For example, HCMLP's creditors might seek the appointment of a bankruptcy trustee. Pachulski knew that this risk was particularly acute, here, because of Dondero's acrimonious relationship with certain of HCMLP's creditors, including the Redeemer Committee and other creditors with whom HCMLP had engaged in acrimonious litigation prior thereto.

7

33.     To address these concerns, Pachulski advised Plaintiffs to have HCMLP file for bankruptcy in Delaware. Pachulski further advised that any bankruptcy filing would be quick and that filing in Delaware would provide preferable protections consistent with Plaintiffs goals.

34.     Pachulski also advised Plaintiffs cause HCMLP to engage a third-party Chief Restructuring Officer ("CRO") whose qualifications and independence could assuage concerns potential bankruptcy creditors might have over Strand and Dondero retaining control over HCMLP, and thus dissuade them from seeking the appointment of an independent trustee over the company.

35.     Defendant failed to advise Dondero or Strand to retain independent counsel to advise them in relation to their goal of retaining control of HCMLP. Instead, Pachulski treated HCMLP and Plaintiffs as their collective clients in advising them on strategy.

36.     Pachulski's advice was heeded, and on October 7, 2019, HCMLP engaged Bradley Sharp, Chief Executive Officer of Development Specialists, Inc. ("DSI")—a provider of management consulting and financial advisory services—as its CRO. Unlike the later-installed Independent Board, the CRO did not have the ability to supplant Plaintiffs' legal control of HCMLP.

**D.     HCMLP Files for Chapter 11 Bankruptcy and Obtains the Bankruptcy Court's Approval to retain Pachulski.**

37.     Based on Pachulski's advice, on October 16, 2019, HCMLP filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Petition").[2]

38.     After filing the Petition, HCMLP continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] On December 4, 2019, the Delaware court granted a motion to transfer venue and the case was transferred to the United States Bankruptcy Court for the Northern District of Texas.

39.     On October 29, 2019, HCMLP filed an application to retain Pachulski *nunc pro tunc* to the Petition date as its counsel in the bankruptcy proceeding.[3] (the "Retention Application").

40.     The Retention Application was signed on behalf of HCMLP by Frank Waterhouse, Treasurer of Strand Advisors, Inc., as HCMLP's General Partner. Notably, therein, HCMLP stated that, "[t]o the best of [HCMLP's] knowledge…[Defendant] Pachulski has not represented [HCMLP], its creditors, **equity security holders, or any other parties in interest**…in any matter relating to the Debtor or its estate. *See* Retention Application at ¶11 (emphasis added).

41.     As previously noted, however, prior to the bankruptcy filing, Dondero and Strand (who were parties in interest) sought and received legal advice from Pachulski related to their objectives, including their goal of retaining control over HCMLP during any bankruptcy.

42.     Accordingly, on October 29, 2019, Defendant was—at the very least—aware of Dondero and Strand's objectives and on notice of the fact that Dondero and Strand believed that Pachulski was acting in furtherance of their interests.

43.     Indeed, an attorney-client relationship had likely formed between Defendant, on the one hand, and Dondero and Strand by this point in time—notwithstanding the contrary position drafted by Pachulski on HCMLP's behalf. To the extent that an attorney-client relationship did not already exist at the time the Retention Application was filed, the parties' simultaneous and subsequent conduct confirms that one was formed shortly thereafter.

**E.     HCMLP Implements Pachulski's Advice to seek the Bankruptcy Court's Approval to Appoint a CRO.**

44.     On October 29, 2019, HCMLP also filed a motion to employ Bradley Sharp as its CRO *nunc pro tunc* as of the Petition Date (the "CRO Motion").

---

[3] *See* Debtor's Application Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtors and Debtors in Possession *Nunc Pro Tunc* to the Petition Date (Dkt. 70).

App. 3396

45.     In the motion, it is expressly noted that:

> **The Debtor has been involved in lengthy and acrimonious prepetition litigation with certain of its creditors**. **The Debtor recognizes that such creditors may question the Debtor's ability to act as an independent fiduciary for the benefit of this estate during the case**. The Debtor also notes that its operations are complex, and its business involves the utilization of an interconnected network of subsidiaries, affiliates, and other related entities and managed funds. The Debtor acknowledges that its affiliate relationships and business structure may lead certain creditors and other parties in interest to question the appropriateness of various actions and transactions that the Debtor may enter into during the pendency of this case.[4]

46.     The above statement tracks the rationale Pachulski had previously given for its recommendation that HCMLP retain a CRO—namely, that an acrimonious relationship existed between HCMLP and certain stakeholders and that an independent CRO would allay the concerns of those stakeholders regarding Strand and Dondero retaining control over HCMLP during the bankruptcy.

47.     The CRO Motion was signed by Dondero in his capacity as President of Strand, GP of HCMLP. In sum, Strand and Dondero followed Pachulski's advice to employ a CRO with the understanding that it would stave off efforts by HCMLP's creditors to take control of HCMLP away from them.

## F.     Battle for Control of HCMLP.

48.     On October 29, 2019, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "UCC"). The creditors appointed to the UCC included the Redeemer Committee, UBS Securities LLC, and UBS AG London Branch (together, "UBS"), Acis Capital Management, L.P. and Acis Capital Management GP, LLP (together, "Acis") and Meta-e Discovery.

49.     Unsurprisingly, notwithstanding HCMLP's retention of a CRO, the UCC, whose members included the Redeemer Committee as well as other entities with whom HCMLP (or its

---

[4] *See* Motion of the Debtor Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, Additional Personnel, and Financial Advisory and Restructuring-Related Services, Nunc Pro Tunc as of the Petition Date (Dkt. 74) (emphasis added).

App. 3397

affiliates) had been involved in acrimonious pre-Petition litigation (UBS and Acis), was opposed to Strand and Dondero retaining control over HCMLP during the bankruptcy.

50.     Thereafter, on November 12, 2019, the UCC filed an omnibus objection to various motions filed by HCMLP, including the CRO Motion and motions related to cash management and approval of protocols for "ordinary course" transactions.[5]  Therein, the UCC expressed its concern with Dondero continuing to manage HCMLP during the bankruptcy.

51.     On December 4, 2019—barely a month later—the Delaware Bankruptcy Court granted a creditor's motion to transfer venue from Delaware to Judge Jernigan in the Bankruptcy Court for the Northern District of Texas. Thus, Pachulski's strategy of filing in Delaware was quickly undone and Pachulski pivoted to a new plan – that Plaintiffs' surrender while Pachulski remained in place at HCMLP.

## G.     Pachulski Advises Plaintiffs to Surrender Control of HCMLP.

52.     The day the court entered the venue order, Pachulski advised Dondero and Strand for the first time that they would have to make radical changes to HCMLP's corporate governance to avoid Judge Jernigan in Dallas from entering an order imposing a Chapter 11 Trustee. At this point, Pachulski first recommended that Dondero and Strand make an alternative proposal to the UCC. As part of Defendant's recommended proposal, Dondero would relinquish control over Strand (HCMLP's GP) and an independent board of directors would be appointed over Strand who would control HCMLP.

53.     Pachulski advised that under this proposed governance structure, HCMLP would likely emerge from the bankruptcy more quickly than if an independent trustee were appointed over

---

[5] *See* Omnibus Objection of the Official Committee of Unsecured Creditors to the Debtor's (I) Motion for Final Order Authorizing Continuance of the Existing Cash Management System, (II) Motion to Employ and Retain Development Specialists, Inc. to Provide a Chief Restructuring Officer, and (III) Precautionary Motion for Approval of Protocols for "Ordinary Course" Transactions (Dkt. 130).

HCMLP and that an independent board would be more beneficial to Plaintiffs as equity holders of HCMLP and, in Dondero's case, as the president of affiliated entities relying on HCMLP for back- and front-office services.

54.     Essentially, Defendant's advice was to propose a change in control over Strand (a non-debtor) and not HCMLP. While this contrary to their very goals that were part of the original engagement. Plaintiffs followed the recommendation, and they made a proposal to the UCC that included a change in control over HCMLP.

55.     On December 6, 2019, a status conference was held before Judge Jernigan. Pachulski represented HCMLP at the status conference. However, neither Strand nor Dondero were represented by independent counsel even as their interests were being affected.

56.     At the status conference, Pachulski as counsel for HCMLP apprised the Court of the status of negotiations with the UCC regarding HCMLP's governance, including that Plaintiffs had made a proposal to the UCC related to the same.

57.     Specifically, counsel for HCMLP informed the Court that, per that proposal, Mr. Dondero would "resign from any and all positions of the debtor," would "use his authority over [Strand] to appoint an independent board that would be in charge with managing the debtor,"[6] and further informed the Court that Mr. Dondero had already signed documents "effectuating those management changes" which were being held Pachulski's possession and trust.[7]

H.     **Defendant advises Strand and Dondero to enter into the Governance Settlement.**

58.     In late December 2019, HCMLP and the UCC reached a compromise for the governance and operation of HCMLP during the bankruptcy (the "Governance Settlement"), as

---

[6] *See* Dec. 6, 2019, Status Conference Tr. (Dkt. 207) at 13:4-11.

[7] *Id.* at 14:1-4.

App. 3399

reflected in a motion for approval of settlement filed on December 27, 2019, and exhibits thereto (the "Settlement Motion").[8]

59.     As contemplated by the Governance Settlement, three independent directors were to be appointed over Strand (the "Independent Directors"). The Independent Directors would have the authority to act on HCMLP's behalf and to appoint an interim Chief Executive Officer ("CEO"), who would manage HCMLP's business. *Id.* at ¶1.

60.     Predictably, the UCC rejected all three directors proposed by Plaintiffs. As a result, two of the Independent Directors, James Seery and John Dubel, were provided by the UCC prior to the filing of the Settlement Motion.  The third had not yet been selected at that time but, under the terms of the Governance Settlement, was to be selected by or otherwise acceptable to the Committee.[9] *Id.*

61.     As reflected in the Settlement Motion, at the time of filing thereof, the parties to the settlement anticipated the possibility, if not the likelihood, that conflict might arise between HCMLP (under the control of the Independent Directors) and Strand and Dondero.

62.     Indeed, paragraph three of the motion reads:

> It bears emphasis that the Independent Directors will not be mere figureheads. The Debtor and the Committee envision that the Independent Directors will be actively involved and intimately familiar with all material aspects of the Debtor's business and restructuring efforts. Moreover, with guidance of the CRO and CEO (if appointed), **the Independent Directors will endeavor to prevent any negative influence Mr. Dondero or any of his affiliates or agents may have on [HCMLP] or its affiliates.**  Further, as part of the Term Sheet, the Committee will be granted standing to pursue estate claims against Mr. Dondero and other former insiders of the Debtor who were not employed by the Debtor as of the execution of the Term Sheet. The Committee will also retain the right to move for a chapter 11 trustee.

*Id.* at ¶3 (emphasis added).

---

[8] *See* Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course (Dkt. 281).

[9] After the filing of the Settlement Motion, but before the Court approved the Governance Settlement, Honorable Russell E. Nelms was selected as the third independent trustee.

63.     Pachulski knew at the time that the interests of HCMLP (under the control of the Independent Directors, as contemplated by the Governance Settlement) and Strand and Dondero might diverge,[10] but Pachulski took no actions to protect their clients Strand and Dondero.

64.     Pachulski knew that Strand, as a non-debtor in the bankruptcy, was not subject to the bankruptcy court's jurisdiction. This fact is reflected on the face of the Settlement Motion, which states:

> With respect to the Independent Directors, they are being appointed to a new independent board of Strand, the Debtor's general partner, and Strand is not a debtor in this case or subject to this Court's jurisdiction.[11]

65.     Nonetheless, Pachulski failed to advise Strand or Dondero to retain independent counsel in connection with the Governance Settlement. Even worse, Pachulski affirmatively advised Strand and Dondero to voluntarily enter into agreements that materially altered *their* rights in connection with the Governance Settlement.

66.     Pachulski knew that the appointment of a trustee would likely ensure that their representation of HCMLP would end (as the trustee would hire new counsel). But if an independent board was appointed, Pachulski could likely stay on as counsel to HCMLP.

67.     The Governance Settlement negotiated on behalf of HCMLP materially impacted Dondero and Strand's rights. For example, as part of the settlement, Strand agreed to modify its By-Laws to create a board of directors and to place restrictions on when Dondero, as the sole shareholder of Strand, could remove the directors,[12] and Dondero was required to resign as a director and officer of Strand.[13]

---

[10] Pachulski's signature block is on the Settlement Motion.

[11] *See Id.* at p.11, n.6.

[12] *See* Preliminary Term Sheet (Dkt. 281-1) at Exhibit D.

[13] *Id.* at p.2.

68.     Indeed, Strand and Dondero's agreement to relinquish certain rights was a critical component of the Governance Settlement. This is reflected on the face of the Settlement Motion. For example, paragraph two of the motion states, in pertinent part:

> Pursuant to the Term Sheet, and effective upon entry of the Order, James Dondero will no longer be a director, officer, managing member, or employee of the Debtor or Strand and will have no authority, directly or indirectly, to act on the Debtor's behalf. Going forward, the Independent Directors, through Strand, will have sole and exclusive management and control of the Debtor.

69.     Nonetheless, Pachulski advised Plaintiffs to agree to the Governance Agreement, claiming it was in their best interest. Pachulski never advised the Plaintiffs about any potential conflict of interest between HCMLP and the Plaintiffs as a result of the agreement.

## I.     Strand and Dondero follow Pachulski' Advice and Enter into the Governance Stipulation.

70.     On January 9, 2020, as contemplated by the Governance Settlement, HCMLP, the UCC, Strand and Dondero entered into a stipulation in support of the Governance Motion.[14]

71.     Therein, Strand and Dondero agreed to the following:

---

[14] *See* Stipulation in Support of Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course (Dkt. 338).

<u>**Stipulation**</u>

10.    In consideration for the Committee entering into the Term Sheet, Mr. Dondero,

being the sole shareholder of Strand, agrees as follows:

     a.    not to transfer or assign his shares in Strand or exercise the voting power of such shares to remove any of the Independent Directors from Strand's Board or further change the authorized number of directors on the Board from three directors;

     b.    to exercise the voting power of his shares so as to cause each of the Independent Directors to be re-elected upon the expiration of each such person's term;

     c.    upon the death, disability, or resignation of any member of the Board, to exercise the voting power of his shares so as to cause the resulting vacancy to be filled by a successor that is both independent and (i) acceptable to Mr. Dondero and the Committee or (ii) selected by the remaining members of the Board; and

     d.    not take any action or exercise the voting power of his shares in Strand in any way that is inconsistent with the Term Sheet or any order of this Court approving the Term Sheet.

72.    Notably, as shown above, the Stipulation materially altered Dondero's rights and

obligations, not only with respect to HCMLP, but also as to Strand, a non-debtor who was not subject

to the Court's jurisdiction. This is significant because, while the appointment of an independent trustee

over HCMLP may have impacted Strand and Dondero's rights with respect to HCMLP, it would **not**

have altered their rights unrelated to HCMLP.

73.    Again, Pachulski did not advise Dondero or Strand to obtain independent counsel

prior to executing the Stipulation on behalf of HCMLP. On information and belief, the Stipulation

was drafted by Pachulski.

74.    The fact that Dondero and Strand's agreement to enter into the Stipulation was

voluntary on their part is expressly acknowledged in HCMLP's briefing in support of the Settlement

Motion. For example, in a reply brief in support of the settlement, HCMLP noted the following:

    [T]he Debtor is not seeking authority from this Court to appoint the Independent Directors. Nor is the Debtor seeking this Court's authority, generally, to enter into the Governing Documents. Strand, as a non-debtor entity, is appointing the Independent Directors and executing the Governing Documents to effectuate such appointment **of**

**its own volition** consistent with Delaware corporate law and its governing documents.[15]

Further, the Debtor recognizes that **this Court would not have the requisite authority to limit Mr. Dondero's right as the sole stockholder of Strand** to remove the Independent Directors or to take any other action that could neuter the settlement embodied in the Term Sheet. To address that issue, the written consent of the sole stockholder of Strand (including in the Governing Documents) contemplates the parties entering into a stipulation…[16]

75.     The fact that Pachulski advised Strand and Dondero to *voluntarily* enter into the Stipulation in order to facilitate the Governance Settlement is particularly galling in light of the fact that, as part of the Governance Settlement, HCMLP granted the UCC "standing to pursue estate claims against Mr. Dondero and other former insiders of [HCMLP]."

76.     In other words, Pachulski advised Strand and Dondero to voluntarily relinquish material rights so that HCMLP could push through a settlement with creditors who had a known antipathy towards Dondero, and, as part of that settlement, gave those creditors standing to sue Dondero. Dondero and Strand entered into this agreement with the understanding it was the best path offered to them by Pachulski as their counsel.

**J.     HCMLP, under Control of the Board, Quickly Becomes Hostile to Dondero and Strand.**

77.     On January 9, 2020, the bankruptcy court entered an order approving the Governance Settlement (the "Settlement Order").[17]

---

[15] Debtor's Reply in Support of Motion of the Debtor for Approval of Settlement with the Official Committee of Unsecured Creditors regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course (Dkt. 329) at ¶14 (emphasis added).

[16] *Id.* at ¶16.

[17] Order Approving Settlement with Official Committee of Unsecured Creditors regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course (Dkt. 339).

17

App. 3404

78.    As contemplated by the Governance Settlement, and reflected in the Settlement Order, Dondero was initially to remain an employee of HCMLP and retain his role as portfolio manager for HCMLP's funds.[18]

79.    It was not long before the Independent Directors became hostile towards Strand and Dondero. On June 23, 2020, HCMLP filed a motion to retain James Seery (one of the Independent Directors) as Chief Executive Officer of HCMLP.[19]  Since that time, HCMLP (under the control of Seery and the Independent Directors) has taken a host of actions adverse to Dondero and Strand.

80.    For example, HCMLP took the following actions (among many others) that were directly adverse to Dondero and Strand:

- sought and obtained a temporary restraining order ("TRO") preventing Dondero from contacting HCMLP's employees and from interfering with the Independent Directors' management of HCMLP. HCMLP then successfully moved to have Dondero held in contempt for violating the TRO. Dondero was ordered to pay. $450,000 to compensate HCMLP for its legal fees incurred in pursuing the contempt order;

- filed multiple adversary proceedings against Dondero;

- advocated in favor of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (the "Plan"), which was confirmed by the Court on February 22, 2021. The Plan created a Litigation Sub-trust that charged the Litigation Trustee with pursuing Estate Claims. The Litigation Trustee, in turn, has asserted claims against both Strand and Dondero; and

- advocated in favor of the Plan in spite of the fact that the Plan called for the liquidation of HCMLP's assets, wiping out Strand's interest in HCMLP and Dondero's indirect equity interest in HCMLP.

---

[18] *Id.* at ¶8.

[19] *See* Debtor's Motion under Bankruptcy Code Sections 105(a) and 363(b) for Authorization to Retain James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer and Foreign Representative *Nunc Pro Tunc* to March 15, 2020 (Dkt. 774).

**K.      Pachulski Turns on their Former Clients.**

81.      Remarkably, Pachulski continued to represent HCMLP throughout the bankruptcy, and, indeed, represent HCMLP to this day. Thus, Pachulski helped HCMLP undertake many of the actions described above that were adverse to and detrimental to Plaintiffs.

82.      This adverse representation occurred despite the fact that Pachulski advised Strand and Dondero to sign the agreements facilitating the very governance structure which has now resulted in HCMLP's direct adversity to Pachulski's former clients, Dondero and Strand.

83.      Pachulski earned millions in fees from their engagement with HCMLP, which constitutes an improper benefit obtained in defiance of clear conflict of interest.

**L.      Tolling of Limitations and Discovery Rule.**

84.      Plaintiffs allege that the claim asserted herein (breach of fiduciary duty) is timely asserted because the wrongful conduct (Pachulski's adverse actions against its former clients) first occurred within four years of the date of filing.

85.      In the alternative, Plaintiffs specifically plead that all limitations periods (i) have been tolled during the bankruptcy period due to the inability to assert certain claims; (ii) tolled during the applicable discovery period during which Plaintiffs could not, in the exercise of reasonable diligence, discover the true nature of Pachulski's wrongdoing and/or (iii) equitably tolled.

**V. <u>CLAIMS</u>**

**COUNT ONE: BREACH OF FIDUCIARY DUTY**

86.      Plaintiffs repeat and reallege each and every allegation made in the previous paragraphs as if fully written herein.

87.      A fiduciary relationship exists between Pachulski, on the one hand, and Strand and Dondero by virtue of the attorney-client relationship which arose from the parties' conduct, including, without limitation,  through (a) Dondero and Strand seeking legal advice from Pachulski in relation to

19

their objectives vis-à-vis the Bankruptcy; (b) Pachulski negotiating on behalf of Strand and Dondero with the Committee; and (c) Pachulski rendering legal advice to Dondero and Strand, including to enter into the Stipulation and Governance Settlement.

88.    Pachulski owed its fiduciary duties to Plaintiffs, including, without limitation (i) its duty of loyalty to Plaintiffs by, without limitation, representing HCMLP in the Bankruptcy after it became directly adverse to Plaintiffs as detailed above; (ii) failing to provide advice so as to safeguard Plaintiffs' interests; and/or (iii) taking actions directly that promoted Pachulski' self-interest over Plaintiffs.

89.    Defendant obtained an improper benefit by failing to disclose a conflict of interest as required by law. Defendant failed to disclose to Plaintiffs that there was a conflict of interest between Plaintiffs and HCMLP in entering into the settlement with the UCC that was memorialized in the Stipulation. Notwithstanding that Defendant knew or should have known about such conflict of interest, Defendant never advised Plaintiffs to retain their own counsel. Instead, Defendant recommended that the Plaintiffs enter into the Stipulation, which supposedly benefited HCMLP but indisputably harmed Plaintiffs.

90.    These breaches of fiduciary duty allowed Pachulski to obtain an improper benefit. Defendant reaped millions in fees by taking positions adverse to its former clients.

91.    At no time did Pachulski ever, as fiduciaries of Plaintiffs, ever advise Plaintiffs to get independent counsel to protect themselves.

92.    Plaintiffs were harmed by Pachulski's breaches in an amount to be proven at trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court enter judgment on Plaintiffs' claims against Defendant:

1.    Actual damages, including direct and consequential damages;

2.    Disgorgement of fees by Defendant;

App. 3407

3.  Pre- and post-judgment interest; and

4.  All such other and further relief at law or in equity that the Court may deem just and

proper.

Dated: December 4, 2023                    Respectfully submitted,

                                           */s/ DRAFT*
                                           Jeffrey M. Tillotson
                                           Texas State Bar No. 20039200
                                           jtillotson@tillotsonlaw.com
                                           **Tillotson Johnson & Patton**
                                           1201 Main St., Suite 1300
                                           Dallas, Texas 75202
                                           (214) 382-3041 Telephone
                                           (214) 292-6564 Facsimile

                                           **ATTORNEYS FOR PLAINTIFFS**

# Exhibit B

**From:** "John A. Morris" <jmorris@pszjlaw.com>
**Date:** December 1, 2023 at 3:35:08 PM CST
**To:** Amy L Ruhland <aruhland@reichmanjorgensen.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>, Jeff Tillotson
<jtillotson@tillotsonlaw.com>
**Subject: FW: Anticipated Motion/Tolling Agreement**

**CAUTION: EXTERNAL SENDER**

Amy:

The draft complaint is frivolous and lacks any basis in fact or law. If Mr. Dondero
pursues it, he and his enablers will be responsible for the consequences.

PSZJ is opposed to the motion.

Regards,

John
**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

**From:** Amy L Ruhland <aruhland@reichmanjorgensen.com>

**Sent:** Friday, December 1, 2023 2:43 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; jtillotson@tillotsonlaw.com
**Subject:** RE: Anticipated Motion/Tolling Agreement

John:

Before we file this motion for leave today, and for purpose of our certificate of conference, I just want to verify that you are opposed to the motion.

I also want to reiterate again that the timing of our filing is driven entirely by the potential statute of limitations issue.  We can't risk waiving our clients' rights to pursue this claim, but I continue to believe it to be in everyone's best interest to avoid initiating the dispute, both for the preservation of the estate's resources and to reduce animosity.  Even a short tolling would accomplish that purpose if you are willing to reconsider.

Thanks,

Amy


Amy L. Ruhland | 512.739.6420 | Reichman Jorgensen Lehman & Feldberg LLP



---

**From:** John A. Morris <jmorris@pszjlaw.com>
**Sent:** Thursday, November 30, 2023 11:40 AM
**To:** Amy L Ruhland <aruhland@reichmanjorgensen.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; jtillotson@tillotsonlaw.com
**Subject:** Anticipated Motion/Tolling Agreement

**CAUTION: EXTERNAL SENDER**

Amy:

Pachulski Stang Ziehl & Jones LLP ("PSZJ") declines Jim Dondero and Strand Advisors, Inc.'s offer to enter into any tolling agreement.

PSZJ reserves all of its rights at law and in equity, including the right to seek sanctions and/or sue for malicious prosecution.

We will accept service by e-mail of your motion for leave to file suit pursuant to the

App. 3411

Gatekeeper provision.

Regards,

John

**John A. Morris**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7760
Tel: 212.561.7700 | Fax: 212.561.7777
jmorris@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

---

**From:** Amy L Ruhland <aruhland@reichmanjorgensen.com>
**Sent:** Tuesday, November 28, 2023 6:07 PM
**To:** John A. Morris <jmorris@pszjlaw.com>
**Cc:** Jeff Pomerantz <jpomerantz@pszjlaw.com>; Jeff Tillotson
<jtillotson@tillotsonlaw.com>
**Subject:** Anticipated Motion/Tolling Agreement

Hi John,

I hope you had a nice Thanksgiving.  I'm writing because we are planning to file a motion for leave to file suit against Pachulski pursuant to the Bankruptcy Court's channeling injunction.  Jeff Tillotson, copied, has been hired to represent Strand Advisors, Inc. and Jim Dondero in that potential lawsuit, which alleges a single claim for breach of fiduciary duty.  For your convenience, I am attaching a draft of the complaint.

For many reasons, including our desire to minimize disputes and additional expense to the estate, I would prefer not to file the motion for leave at this time, but we have reason to believe that we are bumping up against a relevant statute of limitations period and need to act to preserve our clients' rights.  As an alternative to pursuing the motion (and lawsuit) at this time, I would propose that the parties enter into a tolling agreement so that we can all avoid the burden and cost of these proceedings.  To that end, also attached is a draft tolling agreement for your review and feedback.

Obviously, I am happy to discuss any of the above at your convenience.  We intend to file the motion for leave on Friday if we cannot agree on tolling.

Regards,

Amy


Amy L. Ruhland | 512.739.6420 | Reichman Jorgensen Lehman & Feldberg LLP

*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*
*NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.*

IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
TEXAS DALLAS DIVISION

| | |
|---|---|
| In re: | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | Case No. 19-34054 (SGJ) |
| Debtor. | Chapter 11 |

**ORDER GRANTING LEAVE TO FILE ADVERSARY COMPLAINT
AGAINST PACHULSKI STANG ZIEHL & JONES LLP**

Upon consideration of Motion of James D. Dondero and Strand Advisors, Inc. for Leave to File Adversary Complaint ("Motion for Leave"), and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and it appearing that venue is proper in this District pursuant to 28 U.S.C. §§ 1408-1409, it is hereby **ORDERED**:

1.  The Motion for Leave is **GRANTED**.

# # # End of Order # # #

App. 3414

Submitted by:

*/s/*Amy L. Ruhland
Amy L. Ruhland
Texas Bar No. 24043561
**Reichman Jorgensen Lehman & Feldberg LLP**
aruhland@reichmanjorgensen.com
101 N. Mopac Expressway
Bldg. 1, Suite 300
Austin, TX 78746
Telephone: (650) 623-1472
Facsimile: (650) 560-3501

*Counsel for James D. Dondero*
*and Strand Advisors, Inc.*