Dated: April 28, 2021

Respectfully submitted,

*/s/ Bryan C. Assink*

John Y. Bonds, III
State Bar I.D. No. 02589100
Clay Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: john@bondsellis.com
Email: clay.taylor@bondsellis.com
Email: bryan.assink@bondsellis.com

-and-

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

**DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
FIRST REQUEST FOR ADMISSIONS**                                                                                      **PAGE 2 OF 6**
CORE/3522697.0002/166031884.1

Appx. 01385

## <u>CERTIFICATE OF SERVICE</u>

     I, the undersigned, hereby certify that, on April 28, 2021, a true and correct copy of the foregoing document was served via email on counsel for the Debtor.

*/s/ Bryan C. Assink*
Bryan C. Assink

Appx. 01386

## OBJECTIONS AND RESPONSES

**REQUEST FOR ADMISSION NO. 1:**  Admit that attached as Exhibit A is a true and correct copy of a Promissory Note (a) executed by James Dondero, as maker, in favor of the Debtor, as payee, (b) dated February 2, 2018, (c) in the original face amount of $3,825,000 (the "February 2 Note").

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 2:**   Admit that on or about February 2, 2018, the Debtor paid $3,825,000 to James Dondero (or for his benefit) in exchange for the February 2 Note (the "February 2 Consideration").

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 3:**  Admit that on or about February 2, 2018, the Debtor transferred $3,825,000 to an account for James Dondero's benefit.

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 4:**  Admit that neither James Dondero nor any entity he owns and/or controls paid any federal or state income taxes on account of the February 2 Consideration.

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 5:**  Admit that attached as Exhibit B is a true and correct copy of a Promissory Note (a) executed by James Dondero, as maker, in favor of the Debtor, as payee, (b) dated August 1, 2018, (c) in the original face amount of $2,500,000 (the "August 1 Note").

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 6:**  Admit that on or about August 1, 2018, the Debtor paid $2,500,000 to James Dondero (or for his benefit) in exchange for the August 1 Note (the "August 1 Consideration").

**DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S**
**FIRST REQUEST FOR ADMISSIONS**                                                                    **PAGE 4 OF 6**
CORE/3522697.0002/166031884.1

Appx. 01387

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 7:**  Admit that on or about August 1, 2018, the Debtor transferred $2,500,000 to an account for James Dondero's benefit.

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 8:**  Admit that neither James Dondero nor any entity he owns and/or controls paid any federal state income taxes on account of the August 1 Consideration.

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 9:**  Admit that attached as Exhibit C is a true and correct copy of a Promissory Note (a) executed by James Dondero, as maker, in favor of the Debtor, as payee, (b) dated August 13, 2018, (c) in the original face amount of $2,500,000 (the "August 13 Note").

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 10:**  Admit that on or about August 13, 2018, the Debtor paid $2,500,000 to James Dondero (or for his benefit) in exchange for the August 13 Note (the "August 13 Consideration").

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 11:**  Admit that on or about August 13, 2018, the Debtor transferred $2,500,000 to an account for James Dondero's benefit.

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 12:**  Admit that neither James Dondero nor any entity he owns and/or controls paid any federal or state income taxes on account of the August 13 Consideration.

**RESPONSE:**

ADMIT.

**REQUEST FOR ADMISSION NO. 13:**   Admit that attached as Exhibit D is the Debtor's December 3, 2020 demand letter (the "<u>Demand Letter</u>") to James Dondero demanding payment of the accrued interest and principal due and payable on the Promissory Notes in the aggregate amount of $9,004,013.07 (the "<u>Outstanding Amount</u>").

**RESPONSE:**

Admit only that the letter attached as Exhibit D is a letter sent from the Debtor to Dondero making demand on the notes.  The remainder of the request is denied.

**REQUEST FOR ADMISSION NO. 14:**   Admit that, as of January 22, 2021, James Dondero has not paid the Debtor the Outstanding Amount.

**RESPONSE:**

Admit only that Dondero has not paid the Debtor the amount the Debtor asserts is due on the notes in the amount of $9,004,013.07. The remainder of the request is denied.

**DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S FIRST REQUEST FOR ADMISSIONS**                                                                                  **PAGE 6 OF 6**
CORE/3522697.0002/166031884.1

Appx. 01389

# EXHIBIT 82

Appx. 01390

John Y. Bonds, III
State Bar I.D. No. 02589100
Clay Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

ATTORNEYS FOR DEFENDANT JAMES DONDERO

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| v. | § | **Adversary No. 21-03003-sgj** |
| | § | |
| **JAMES D. DONDERO,** | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DEFENDANT JAMES DONDERO'S OBJECTIONS AND ANSWERS
## TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
## FIRST SET OF INTERROGATORIES

TO:   Highland Capital Management, L.P., by and through its attorneys of record, Zachery Z.
Annable, Hayward PLLC, 10501 N. Central Expy., Ste. 106, Dallas, Texas 75231.

Defendant James Dondero ("Defendant" or "Dondero") serves his Objections and

Answers to Debtor Highland Capital Management, L.P.'s ("Debtor" or "Highland") First Set of

Interrogatories ("Requests"), as follows:

**Exhibit 9**

Appx. 01391

Dated: 4/26/2021                        Respectfully submitted,

                                        */s/ Bryan C. Assink*
                                        John Y. Bonds, III
                                        State Bar I.D. No. 02589100
                                        Clay Taylor
                                        State Bar I.D. No. 24033261
                                        Bryan C. Assink
                                        State Bar I.D. No. 24089009
                                        BONDS ELLIS EPPICH SCHAFER JONES LLP
                                        420 Throckmorton Street, Suite 1000
                                        Fort Worth, Texas 76102
                                        (817) 405-6900 telephone
                                        (817) 405-6902 facsimile
                                        Email: john@bondsellis.com
                                        Email: joshua@bondsellis.com
                                        Email: bryan.assink@bondsellis.com


                                        -and-

                                        Deborah Deitsch-Perez
                                        State Bar No. 24036072
                                        Michael P. Aigen
                                        State Bar No. 24012196
                                        STINSON LLP
                                        3102 Oak Lawn Avenue, Suite 777
                                        Dallas, Texas 75219
                                        (214) 560-2201 telephone
                                        (214) 560-2203 facsimile
                                        Email: deborah.deitschperez@stinson.com
                                        Email: michael.aigen@stinson.com

                                        **ATTORNEYS FOR DEFENDANT JAMES DONDERO**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on 4/26/2021, a true and correct copy of the foregoing document was served via email on counsel for the Debtor.

_/s/ Bryan C. Assink_
Bryan C. Assink

## OBJECTIONS AND ANSWERS

**INTERROGATORY NO. 1:** With respect to each Note, identify:

(a)   the person who entered into each Purported Agreement on behalf of the Debtor;

(b)   the date each Purported Agreement was entered into; and

(c)   all documents that reflect or memorialize each Purported Agreement.

**ANSWER:**

The Agreements were entered into on behalf of the Debtor by James Dondero, subsequent to the time each Note was executed. Documents reflecting or memorializing the Agreements, if any, will be produced at a mutually agreeable time and location.

**INTERROGATORY NO. 2:** Identify every person who James Dondero believes has actual knowledge of each Purported Agreement.

**ANSWER:**

Dondero objects to this interrogatory (1) to the extent it seeks privileged information, (2) because it requires Dondero to speculate as to what other people know and believe, and (3) because the phrase "actual knowledge" is not defined. Subject to these objections, Dondero believes the following individuals may have actual knowledge of each Purported Agreement:

James Dondero

Frank Waterhouse

Mark Okada

John Honis

Scott Ellington

**INTERROGATORY NO. 3:** Identify (a) anything of value that was received by James Dondero (or for his benefit) in exchange for each Note, and (b) the date anything of value that was received by James Dondero (or for his benefit) in exchange for each Note.

**ANSWER:**

Dondero received the funds evidenced in each Note on or about the date that each Note was entered into by the parties to the Notes.

**INTERROGATORY NO. 4:** Identify each witness James Dondero intends to call at trial in this Adversary Proceeding.

Appx. 01394

**ANSWER:**

Dondero will identify witnesses in accordance with the scheduling order governing this proceeding.

## **VERIFICATION**

STATE OF TEXAS              )
                           )
COUNTY OF DALLAS           )

On this day, James D. Dondero appeared before me, the undersigned notary public, and upon his oath, certified that he had read Defendant's Objections and Answers to Highland Capital Management, L.P.'s First Set of Interrogatories and that the facts stated therein are within his personal knowledge and are true and correct.



————————————————————
JAMES D. DONDERO

SWORN TO and SUBSCRIBED before me by James D. Dondero on the 26th day of April, 2021.

LINDA LAUCHNER
Notary Public, State of Texas
Comm. Expires 06-19-2021
Notary ID 1049001

————————————————————
Notary Public in and for the State of Texas

# EXHIBIT 83

Docket #0016  Date Filed: 4/6/2021

D. Michael Lynn – State Bar ID 12736500
John Y. Bonds, III – State Bar ID 02589100
John T. Wilson, IV – State Bar ID 24033344
Bryan C. Assink – State Bar ID 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 – Telephone
(817) 405-6902 – Facsimile

ATTORNEYS FOR DEFENDANT JAMES DONDERO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054-SGJ-11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | |
| | § | Adversary No.: 21-03003 |
| JAMES D. DONDERO, | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT JAMES DONDERO'S AMENDED ANSWER

Defendant James Dondero ("Dondero" or "Defendant"), the defendant in the above-styled and numbered adversary proceeding (the "Adversary Proceeding") filed by Highland Capital Management, L.P. (the "Plaintiff"), hereby files this Amended Answer (the "Answer") responding to the *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* [Adv. Dkt. 1] (the "Complaint"). Where an allegation in the Complaint is not expressly admitted in this Answer, it is denied.

**Exhibit 10**

DEFENDANT JAMES DONDERO'S AMENDED ANSWER



1934054210406000000000032

**Appx. 01398**

## PRELIMINARY STATEMENT

1.      The first sentence of paragraph 1 of the Complaint sets forth the Plaintiff's objective in bringing the Complaint and does not require a response. To the extent it contains factual allegations, they are denied. The second sentence contains a legal conclusion that does not require a response. To the extent it contains factual allegations, they are denied.

2.      Paragraph 2 contains a summary of the relief the Plaintiff seeks and does not require a response.  To the extent it contains factual allegations, they are denied.

## JURISDICTION AND VENUE

3.      The Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers Constitutional authority on the Bankruptcy Court to adjudicate this dispute. Any allegations in paragraph 3 not expressly admitted are denied.

4.      The Defendant admits that the Court has statutory (but not Constitutional) jurisdiction to hear this Adversary Proceeding. Any allegations in paragraph 4 not expressly admitted are denied.

5.      The Defendant denies that a breach of contract claim is core.  The Defendant denies that a § 542(b) turnover proceeding is the appropriate mechanism to collect a contested debt. The Defendant admits that a § 542(b) turnover proceeding is statutorily core but denies that it is Constitutionally core under *Stern v. Marshall*.  The Defendant does not consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding.  Any allegations in paragraph 5 not expressly admitted are denied.

6.      The Defendant admits paragraph 6 of the Complaint.

---

## THE PARTIES

7.    The Defendant admits paragraph 7 of the Complaint.

8.    The Defendant admits paragraph 8 of the Complaint.

## CASE BACKGROUND

9.    The Defendant admits paragraph 9 of the Complaint.

10.    The Defendant admits paragraph 10 of the Complaint.

11.    The Defendant admits paragraph 11 of the Complaint.

12.    The Defendant admits paragraph 12 of the Complaint.

## STATEMENT OF FACTS

13.    The Defendant admits that he has executed promissory notes under which the Debtor is the payee. Any allegations in paragraph 13 not expressly admitted are denied.

14.    The Defendant admits that he executed a note as alleged in the first sentence of paragraph 14 of the Complaint. Defendant admits that the attached document appears to be a copy of the referenced note.

15.    The Defendant admits that he executed a note as alleged in the first sentence of paragraph 15 of the Complaint. The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in the second sentence of paragraph 15 of the Complaint and therefore denies same.

16.    The Defendant admits that he executed a note as alleged in the first sentence of paragraph 16 of the Complaint. Defendant admits that the attached document appears to be a copy of the referenced note.

17.    The Defendant admits that section 2 of each note attached to the Complaint contains the provision quoted in paragraph 17 of the Complaint.

18.     The Defendant denies the allegations in paragraph 18 of the Complaint. It appears that the provisions of each Note differ. Accordingly, the allegations made in this paragraph are denied.

19.     The Defendant denies the allegations in paragraph 19 of the Complaint. It appears that the provisions of each Note differ. Accordingly, the allegations made in this paragraph are denied.

20.     In response to paragraph 20 of the Complaint, the Defendant admits that Exhibit 4 to the Complaint (the "Demand Letter") is a true and correct copy of what it purports to be and that the document speaks for itself. To the extent paragraph 20 of the Complaint asserts a legal conclusion, no response is required, and it is denied. To the extent not expressly admitted, paragraph 20 of the Complaint is denied.

21.     To the extent paragraph 21 of the Complaint asserts a legal conclusion, no response is necessary, and it is denied. The Defendant otherwise admits paragraph 21 of the Complaint.

22.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 of the Complaint and therefore denies same.

23.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 of the Complaint and therefore denies same.

24.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 of the Complaint and therefore denies same.

25.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 of the Complaint and therefore denies same.

26.     The Defendant denies the allegations in paragraph 26 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

27.    Paragraph 27 of the Complaint is a sentence of incorporation that does not require a response. All prior denials are incorporated herein by reference.

28.    Paragraph 28 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28 of the Complaint and therefore denies same.

29.    Paragraph 29 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 of the Complaint and therefore denies same.

30.    Paragraph 30 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30 of the Complaint and therefore denies same.

31.    The Defendant denies paragraph 31 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (Turnover by Mr. Dondero Pursuant to 11 U.S.C. § 542(b))

32.    Paragraph 32 of the Complaint is a sentence of incorporation that does not require a response. All prior denials are incorporated herein by reference.

33.    Paragraph 33 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 of the Complaint and therefore denies same.

34.     Paragraph 34 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34 of the Complaint and therefore denies the same.

35.     The Defendant denies paragraph 35 of the Complaint.

36.     Paragraph 36 of the Complaint states a legal conclusion that does not require a response. The Defendant admits that the Plaintiff transmitted the Demand Letter, and that document speaks for itself.  To the extent paragraph 36 alleges other facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36 of the Complaint and therefore denies the same.

37.     The Defendant denies paragraph 37 of the Complaint.

38.     Paragraph 38 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38 of the Complaint and therefore denies the same.

39.     The Defendant denies that the Plaintiff is entitled to the relief requested in the prayer, including as to parts (i), (ii), and (iii).

## AFFIRMATIVE DEFENSES

40.     Defendant asserts that Plaintiff's claims should be barred because prior to the demands for payment Plaintiff agreed that it would not collect on the Notes upon fulfillment of conditions subsequent.

41.     Defendant further asserts that Plaintiff's claim should be barred, or reduced, in whole or in part, pursuant to Defendant's right to set off a mutual obligation owed to Defendant

by Plaintiff under state and/or federal law, including pursuant to <mark>11 U.S.C. § 553</mark>. Plaintiff owes Defendant a debt that should set off or reduce any amounts that Defendant is found to owe Plaintiff on the Notes.

42.     Defendant further asserts that Plaintiff's claims are barred, in whole or in part, due to waiver.

43.     Defendant further asserts that Plaintiff's claims are barred, in whole or in part, due to estoppel.

44.     Defendant further asserts that Plaintiff's claims are barred, in whole or in part, due to failure of consideration.

45.     Defendant further asserts that each Note is ambiguous.

## JURY DEMAND

46.     The Defendant demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.

47.     The Defendant does <u>not</u> consent to the Bankruptcy Court conducting a jury trial and therefore demands a jury trial in the District Court.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully request that, following a trial on the merits, the Court enter a judgment that the Plaintiff take nothing on the Complaint and provide the Defendant such other relief to which he is entitled.

Dated: April 6, 2021

Respectfully submitted,

/s/ Bryan C. Assink
D. Michael Lynn – State Bar ID 12736500
John Y. Bonds, III – State Bar ID 02589100
John T. Wilson, IV – State Bar ID 24033344
Bryan C. Assink – State Bar ID 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
michael.lynn@bondsellis.com
john@bondsellis.com
john.wilson@bondsellis.com
bryan.assink@bondsellis.com

**ATTORNEYS FOR DEFENDANT
JAMES DONDERO**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 6, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

/s/ Bryan C. Assink
Bryan C. Assink

# EXHIBIT 84

John Y. Bonds, III
State Bar No. 02589100
Clay M. Taylor
State Bar No. 24033261
Bryan C. Assink
State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

ATTORNEYS FOR DEFENDANT JAMES DONDERO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| v. | § | **Adversary No. 21-03003-sgj** |
| | § | |
| **JAMES D. DONDERO,** | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES
## TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
## SECOND REQUEST FOR ADMISSIONS

TO:   Highland Capital Management, L.P., by and through its attorneys of record, Zachery Z. Annable, Hayward PLLC, 10501 N. Central Expy., Ste. 106, Dallas, Texas 75231.

Defendant James Dondero ("Defendant" or "Dondero") serves his Objections and Responses to Debtor Highland Capital Management, L.P.'s ("Debtor" or "Highland") Second Request for Admissions ("Requests"), as follows:

**Exhibit 11**

---

DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
SECOND REQUEST FOR ADMISSIONS                                                      PAGE 1 OF 5
CORE/3522697.0002/166180258

Appx. 01407

Dated: May 7, 2021

Respectfully submitted,

*/s/Deborah Deitsch-Perez*

John Y. Bonds, III
State Bar I.D. No. 02589100
Clay M. Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: john@bondsellis.com
Email:  clay.taylor@bondsellis.com
Email: bryan.assink@bondsellis.com

-and-

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile
Email: deborah.deitschperez@stinson.com
Email: michael.aigen@stinson.com

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

**DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S**
**SECOND REQUEST FOR ADMISSIONS** **PAGE 2 OF 5**
CORE/3522697.0002/166180258

Appx. 01408

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that, on May 7, 2021, a true and correct copy of the foregoing document was served via email on counsel for the Debtor.

<div align="right">

*/s/ Michael P. Aigen*
Michael P. Aigen

</div>

DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
SECOND REQUEST FOR ADMISSIONS                                                                    PAGE 3 OF 5
CORE/3522697.0002/166180258

Appx. 01409

## OBJECTIONS AND RESPONSES[1]

**REQUEST FOR ADMISSION NO. 1:**  Admit that in December 2019, James Dondero made a payment to the Debtor, a portion of which was applied to reduce principal and/or interest due under one or more of the Notes.

**RESPONSE:**

    ADMIT.

**REQUEST FOR ADMISSION NO. 2:**  Admit that James Dondero did not file a proof of claim in the Bankruptcy Case concerning or relating to the "mutual obligation" referred to in paragraph 41 of the Amended Answer.

**RESPONSE:**

    ADMIT.

**REQUEST FOR ADMISSION NO. 3:**  Admit that James Dondero did not file a proof of claim in the Bankruptcy Case concerning or relating to the "debt" referred to in paragraph 41 of the Amended Answer.

**RESPONSE:**

    ADMIT.

**REQUEST FOR ADMISSION NO. 4:**  Admit that prior to serving his Amended Answer, James Dondero never informed the Debtor of his belief that any provision of any of the Notes was ambiguous, as alleged in paragraph 45 of the Amended Answer.

**RESPONSE:**

    DENY.

**REQUEST FOR ADMISSION NO. 5:**  Admit that as of the date of the service of these Requests for Admission, James Dondero has not (a) identified any particular provision or clause of any Note that he contends is ambiguous (any such provision or clause, the "Identified Provision"), and (b) informed the Debtor of the Identified Provision.

---

[1] Defendant makes these responses subject in all respects to his Motion for Withdrawal of the Reference [Adv. Dkt. No. 21] and the Motion to Stay Pending the Motion to Withdraw the Reference of Plaintiff's Complaint [Adv. Dkt. No. 22] filed on April 15, 2021. For the reasons stated in the motions, Defendant believes that the reference should be withdrawn and this proceeding stayed while the motion to withdraw the reference is considered. Defendant does not waive, but instead hereby preserves, his right to a jury trial and all rights and requests for relief asserted in the motions. Defendant does not consent to the Bankruptcy Court determining this proceeding or entering final orders or judgments in this proceeding. Defendant requests that the reference be withdrawn and that the District Court adjudicate this proceeding.

DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
SECOND REQUEST FOR ADMISSIONS                                                                      PAGE 4 OF 5
CORE/3522697.0002/166180258

Appx. 01410

**<u>RESPONSE:</u>**

DENY.

**DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S**
**SECOND REQUEST FOR ADMISSIONS**                                                      **PAGE 5 OF 5**
CORE/3522697.0002/166180258

Appx. 01411

**EXHIBIT 85**

# EXHIBIT 20

**Exhibit 12**

Appx. 01413

John Y. Bonds, III
State Bar No. 02589100
Clay M. Taylor
State Bar No. 24033261
Bryan C. Assink
State Bar No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

**ATTORNEYS FOR DEFENDANT JAMES DONDERO**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § | | **Case No. 19-34054** |
| §| | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** § | | **Chapter 11** |
| §| | |
| **Debtor.** § | | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** § | | |
| **Plaintiff.** § | | |
| **v.** § | | **Adversary No. 21-03003-sgj** |
| **JAMES D. DONDERO,** § | | |
| **Defendant.** § | | |

### DEFENDANT JAMES DONDERO'S OBJECTIONS AND ANSWERS
### TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
### SECOND SET OF INTERROGATORIES

TO:    Highland Capital Management, L.P., by and through its attorneys of record, Zachery Z.
       Annable, Hayward PLLC, 10501 N. Central Expy., Ste. 106, Dallas, Texas 75231.

Defendant James Dondero ("Defendant" or "Dondero") serves his Objections and Answers

to Debtor Highland Capital Management, L.P.'s ("Debtor" or "Highland") Second Set of

Interrogatories ("Requests"), as follows:

---

Appx. 01414

Dated: May 7, 2021                                  Respectfully submitted,

                                                    */Deborah Deitsch-Perez*
                                                    John Y. Bonds, III
                                                    State Bar I.D. No. 02589100
                                                    Clay M. Taylor
                                                    State Bar I.D. No. 24033261
                                                    Bryan C. Assink
                                                    State Bar I.D. No. 24089009
                                                    BONDS ELLIS EPPICH SCHAFER JONES LLP
                                                    420 Throckmorton Street, Suite 1000
                                                    Fort Worth, Texas 76102
                                                    (817) 405-6900 telephone
                                                    (817) 405-6902 facsimile
                                                    Email: john@bondsellis.com
                                                    Email: clay.taylor@bondsellis.com
                                                    Email: bryan.assink@bondsellis.com

                                                    -and-

                                                    Deborah Deitsch-Perez
                                                    State Bar No. 24036072
                                                    Michael P. Aigen
                                                    State Bar No. 24012196
                                                    STINSON LLP
                                                    3102 Oak Lawn Avenue, Suite 777
                                                    Dallas, Texas 75219
                                                    (214) 560-2201 telephone
                                                    (214) 560-2203 facsimile
                                                    Email: deborah.deitschperez@stinson.com
                                                    Email: michael.aigen@stinson.com

                                                    **ATTORNEYS FOR DEFENDANT JAMES DONDERO**

Appx. 01415

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on May 7, 2021, a true and correct copy of the foregoing document was served via email on counsel for the Debtor.

/s/ Michael P. Aigen
Michael P. Aigen

DEFENDANT JAMES DONDERO'S OBJECTIONS AND ANSWERS TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
SECOND SET OF INTERROGATORIES                                                    PAGE 3 OF 6
CORE/3522697.0002/166180645.4

Appx. 01416

## OBJECTIONS AND ANSWERS[1]

**INTERROGATORY NO. 1:** Identify the "conditions subsequent" referred to in paragraph 40 of the Amended Answer.

**ANSWER:**

The conditions subsequent referred to in paragraph 40 of the Amended Answer refer to the disposition of the portfolio company interests managed and/or owned, directly or indirectly, by Highland and/or its affiliates or managed funds on a favorable basis or on a basis wholly outside Dondero's control.

**INTERROGATORY NO. 2:** With respect to each Note, identify:

(a) the person who provided legal advice to James Dondero in connection with the

negotiation, drafting, and execution of each Note, if any;

(b) the person who provided legal advice to the Debtor in connection with the negotiation,

drafting, and execution of each Note, if any; and

(c) the person who drafted each Note.

**ANSWER:**

Dondero objects to this interrogatory to the extent that it seeks privileged information. Subject to this objection, Dondero responds as follows:

Dondero does not know who specifically drafted the Notes, however, he believes they were drafted by an individual in either the Highland legal or finance department.

**INTERROGATORY NO. 3:** Identify the "mutual obligation" referred to in paragraph 41 of the Amended Answer, including (a) the date the mutual obligation was incurred, (b) any documents referring to or reflecting the mutual obligation, (c) the amount of the mutual obligation, (d) any demands made by James Dondero to the Debtor for payment on the mutual obligation.

---

[1] Defendant makes these responses subject in all respects to his Motion for Withdrawal of the Reference [Adv. Dkt. No. 21] and the Motion to Stay Pending the Motion to Withdraw the Reference of Plaintiff's Complaint [Adv. Dkt. No. 22] filed on April 15, 2021. For the reasons stated in the motions, Defendant believes that the reference should be withdrawn and this proceeding stayed while the motion to withdraw the reference is considered. Defendant does not waive, but instead hereby preserves, his right to a jury trial and all rights and requests for relief asserted in the motions. Defendant does not consent to the Bankruptcy Court determining this proceeding or entering final orders or judgments in this proceeding. Defendant requests that the reference be withdrawn and that the District Court adjudicate this proceeding.

**ANSWER:**

Defendant is not pursuing in this action the mutual obligation referred to in paragraph 41 of the Amended Answer, which refers to potential contribution and/or indemnity claims that are largely unliquidated and contingent, and which Dondero cannot identify until all potential claims are resolved.

**INTERROGATORY NO. 4:**   Identify every person James Dondero believes has personal knowledge of the alleged mutual obligation referred to in paragraph 41 of the Amended Answer.

**ANSWER:**

James Dondero

Frank Waterhouse

Mark Okada

John Honis

Scott Ellington

**INTERROGATORY NO. 5:**   Identify the "debt" referred to in paragraph 41 of the Amended Answer, including (a) the date the debt was incurred, (b) any documents referring to or reflecting the debt, (c) the amount of the mutual obligation, (d) any demands made by James Dondero to the Debtor for payment on the debt.

**ANSWER:**

See Response to Interrogatory No. 3.

**INTERROGATORY NO. 6:**   Identify every person James Dondero believes has personal knowledge of the alleged debt referred to in paragraph 41 of the Amended Answer.

**ANSWER:**

See Response to Interrogatory No. 3.

**INTERROGATORY NO. 7:**   Identify each provision of each Note that James Dondero contends is ambiguous.

**ANSWER:**

Dondero contends that each Note as a whole is ambiguous because it refers to additional agreements without specifying them.

---

DEFENDANT JAMES DONDERO'S OBJECTIONS AND ANSWERS TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
SECOND SET OF INTERROGATORIES                                                                PAGE 5 OF 6
CORE/3522697.0002/166180645.4

Appx. 01418

## **VERIFICATION**

STATE OF TEXAS      )
                               )

COUNTY OF DALLAS    )

On this day, James D. Dondero appeared before me, the undersigned notary public, and upon his oath, certified that he had read Defendant's Objections and Answers to Highland Capital Management, L.P.'s Second Set of Interrogatories and that the facts stated therein are within his personal knowledge and are true and correct.

_____
JAMES D. DONDERO

SWORN TO and SUBSCRIBED before me by James D. Dondero on the 7th day of May, 2021.

_____
Notary Public in and for the State of Texas

# EXHIBIT 86

Appx. 01420



May 18, 2018

PricewaterhouseCoopers LLP
2001 Ross Avenue, Suite 1800
Dallas, TX 75201

We are providing this letter in connection with your audit of the consolidated financial statements of Highland Capital Management, L.P. and its subsidiaries (Appendix 1), (hereinafter collectively referred to as the "Partnership") as of December 31, 2017 (hereinafter referred to as the "balance sheet date") and the related consolidated statements of income, of changes in partners' capital, and of cash flows for the year then ended (hereinafter referred to as the "period"), (hereinafter collectively referred to as the "consolidated financial statements"), for the purpose of expressing an opinion as to whether such consolidated financial statements present fairly, in all material respects, the financial position, results of operations, changes in partners' capital and of cash flows of the Partnership in conformity with accounting principles generally accepted in the United States of America.  We acknowledge and confirm that we have fulfilled our responsibility, as set out in our engagement letter of February 2, 2018, for the preparation and fair presentation in the consolidated financial statements of financial position, results of operations, changes in partners' capital and of cash flows in conformity with accounting principles generally accepted in the United States of America, including the appropriate selection of accounting policies.

Certain representations in this letter are described as being limited to those matters that are material. Items are considered material, regardless of size, if they involve an omission or misstatement of accounting information that, in the light of surrounding circumstances, makes it probable that the judgment of a reasonable person relying on the information would have been changed or influenced by the omission or misstatement. Materiality used for purposes of these representations is $2,000,000.

We confirm, to the best of our knowledge and belief, as of May 18, 2018, the date of your report, the following representations made to you during your audit:

**General**

1.  The consolidated financial statements referred to above are fairly presented in conformity with accounting principles generally accepted in the United States of America (US GAAP), and include all disclosures necessary for such fair presentation and disclosures otherwise required to be included therein by the laws and regulations to which the Partnership is subject.  We have prepared the Partnership's consolidated financial statements on the basis that the Partnership is able to continue as a going concern. There are no conditions or events, considered in the aggregate, that raise substantial doubt about the Partnership's ability to continue as a going concern within one year after the date these consolidated financial statements are issued.

2.  We have made available to you:

    a.  All financial records and related data.

    b.  Unconditional access to persons within the entity from whom you have requested audit evidence.

Exhibit 14

CONFIDENTIAL

   c. All minutes of the meetings of committees or other governing bodies applicable to the Partnership, including but not limited to, investors, Partners and committees of Partners, including summaries of actions of recent meetings for which minutes have not yet been prepared. The most recent meetings held were Pricing Committee, May 11, 2018.

   d. Partnership agreements, Memoranda and Articles of Association, Confidential Offering Memoranda and amendments thereto (individually or collectively referred to hereinafter as the "Governing Documents"), and all other agreements to which the Partnership is subject.

   e. Contracts or other agreements with the Partnership's service providers.

   f. All official written reports, findings, recommendations and communications from specialists or professional advisors engaged to review investments, systems, processes, operations, or compliance programs of the Partnership that are material to the Partnership, individually or in aggregate.

   g. All side letter arrangements, whether written or oral, with any investors entered into or cancelled during the period for which noncompliance would have a material effect on the Partnership's consolidated financial statements. These side letters are allowed under the terms of the Governing Documents.

   h. Withdrawal requests submitted or communicated by investors through the date of this letter.

3. We are responsible for all significant estimates and judgments affecting the consolidated financial statements. Significant estimates and judgments and their underlying assumptions, methods, procedures and the source and reliability of supporting data are reasonable and based on applicable guidance, are completely and appropriately disclosed in the consolidated financial statements, and appropriately reflect management's intent and ability to carry out specific courses of action, where relevant. The procedures and methods utilized in developing assumptions, estimates and judgments are appropriate and have been consistently applied in the periods presented. There have been no subsequent events which would require the adjustment of any significant estimate and related disclosures.

**Legal and Regulatory Compliance**

4. There have been no communications from regulatory agencies concerning the Partnership's noncompliance with or deficiencies in financial reporting practices.

5. There have been no violations or possible violations of laws or regulations whose effects should be considered for disclosure in the consolidated financial statements or as a basis for recording a loss contingency.

6. The Partnership has complied with all aspects of contractual agreements that would have a material effect on the consolidated financial statements in the event of noncompliance.

**Fraud**

7. We acknowledge our responsibility for the design and implementation of programs and controls to provide reasonable assurance that fraud is prevented and detected.

2

8. We have disclosed to you the results of our assessment of the risk that the consolidated financial statements may be materially misstated as a result of fraud and we have no knowledge of any fraud or suspected fraud affecting the Partnership involving:

    a. Partnership management or its affiliates,

    b. Employees who have significant roles in the Partnership's internal control over financial reporting, or

    c. Others where the fraud could have a material effect on the consolidated financial statements.

9. Except for previously disclosed, we have no knowledge of any allegations of fraud or suspected fraud affecting the Partnership received in communications from employees, former employees, regulators, service providers, counterparties, current or former investors, or others.

(As to items 7, 8, and 9, we understand the term "fraud" to mean those matters described in AICPA AU-C 240.)

**Assets, Liabilities and Capital**

*Assets:*

10. The Partnership has satisfactory title to all owned assets, including investments, and there are no liens or encumbrances on such assets nor has any asset been pledged as collateral, including, but not limited to, assets pledged or assigned as security for liabilities and performance of contracts, except as disclosed in the consolidated financial statements. All deposit and brokerage accounts and all investments and other assets of the Partnership of which we are aware are included in the consolidated financial statements.

11. Receivables recorded in the consolidated financial statements represent bona fide claims against debtors for transactions arising on or before the balance sheet date. All receivables have been appropriately reduced to their estimated net realizable value. Receivables, if any, from shareholders/partners or their affiliates, have been collected before the date of this letter.

12. We have evaluated all transfers of financial assets during the period, including, but not limited to, transfers between the Partnership and other affiliates, to determine that control over the transferred assets has been surrendered and that all of the conditions in accordance with Accounting Standards Codification (ASC) 860, *Transfers and Servicing*, ASC 860-10-40-5 have been met.

*Investments:*

With respect to Partnership's investments:

13. Portfolio investments included in the Partnership's consolidated financial statements have been stated at fair values as determined by management in accordance with the valuation methods set forth in the Governing Documents and related policies and procedures. Such policies are in accordance with US GAAP (e.g., fair value of an investment is that price which would be received to sell or paid to transfer, respectively, those assets or liabilities in orderly transactions between market participants).

3

D-JDNL-033402

**Appx. 01423**

14. The valuation policies used for securities or investments whose fair values have been estimated by management are appropriate and have been consistently applied and documented. The policies for fair value measurement are appropriately disclosed in the Partnership's consolidated financial statements. The methods, assumptions, and inputs used are appropriate and result in a fair value appropriate for consolidated financial statement measurement and disclosure purposes. As of the balance sheet date, the investments for which fair value were determined by estimates made by Partnership are appropriately disclosed in the Partnership's consolidated financial statements.

15. We have informed you of any investments as of the balance sheet date that have restrictions on their sale or transferability. We have appropriately considered restrictions that are an attribute of the investment in our fair value determination.

16. The cost of portfolio securities was determined on the basis of FIFO method.

17. All Partnership investments made during the period were in accordance with the investment policies stated in the Governing Documents. All investments made during the period were authorized by appropriate personnel.

18. We have made available to you all information received from third party specialists engaged with respect to the valuation of investments. We believe that the data used in the work of the third-party specialists is accurate, complete, and relevant, and that our fair value determinations have been properly determined using such data and assumptions. We assume responsibility for, and are responsible for the evaluation of, the findings of third-party specialists in order to determine the fair value of the investments. We have adequately considered the qualifications of the third-party specialists in determining the amounts and disclosures used in the consolidated financial statements and underlying accounting records. We did not give nor cause any instructions to be given to third-party specialists with respect to the values or amounts derived in an attempt to bias their work, and we are not otherwise aware of any matters that have had an impact on the objectivity of the third-party specialists.

19. We evaluated all contracts and financial instruments to determine whether they meet the definition of a derivative under ASC 815, Derivatives and Hedging (ASC 815).

*Liabilities:*

20. All liabilities of the Partnership of which we are aware are included in the consolidated financial statements at the balance sheet date. There are no other liabilities or gain or loss contingencies that are required to be recognized or disclosed by ASC 450, *Contingencies*, and no unasserted claims or assessments that our legal counsel has advised us are probable of assertion and required to be disclosed in accordance with that Topic.

21. The Partnership is not an "SEC registrant" as that term is used in ASC 480, *Distinguishing Liabilities from Equity*, 480-10-65-1. The Partnership has properly classified and disclosed as liabilities its mandatorily redeemable securities and other financial instruments (e.g., payable) that are within the scope of ASC 480-10-65, *Effective Date, Disclosures, and Transition for Mandatorily Redeemable Financial Instruments of Certain Nonpublic Entities and Certain Mandatorily Redeemable Noncontrolling Interests,* in the consolidated financial statements.

22. The actuarial valuation of pension benefit obligations was determined using an acceptable methodology applied on a consistent basis and taking into account the individual characteristics of

4

the plan and reasonable assumptions, including those for the discount rate, rate of return on plan assets, mortality rate and other demographic assumptions.

23. We accurately described the processes used by management to make investment decisions, including the target allocation percentages or range of percentages for each major category of plan assets, and to determine the overall expected long-term rate of return on assets.

24. The amounts of expected employer contributions to the benefit plan during the next fiscal year represent our best estimate.

25. We do not intend to compensate for the reduction of postretirement benefits by granting an increase in pension or other benefits.

26. We applied the recognition, disclosure and measurement date provisions of ASC 715, Compensation-Retirement Benefits (ASC 715). The resulting benefit asset represents the overfunded status of the plan, and accumulated other comprehensive income includes all previously unrecognized prior service costs and credits, net gains/losses and transition assets and obligations, net of taxes.

27. We measured and recognized all plan assets as of the plan's measurement date at fair value in accordance with ASC 715, Compensation- Retirement Benefits (ASC 715).

*Capital:*

28. Partner capital balances, including the allocation of income, gains and losses, and the calculation of management fees and incentive fees/allocation have been properly calculated throughout the period in accordance with the Governing Documents, after giving consideration to the terms identified in each investor's subscription document. The methodology was consistently applied throughout the period and was correctly applied in the computation of contribution and withdrawal transactions during the period.

**Statement of Income**

29. All material expenses charged to the Partnership are permissible under the terms of the Governing Documents. All directed brokerage and other expense reimbursement agreements, if any, have been properly disclosed in the consolidated financial statements.

**Tax Matters**

30. There are no material tax liabilities incurred by the Partnership under the provisions of ASC 740, *Income Taxes*. We have made the necessary provisions and disclosures in the consolidated financial statements as required by ASC 740, *Income Taxes*. The resulting liabilities are supported by specifically identified income tax exposures.

31. We have provided you with all information and our assessment related to all significant uncertain income tax positions that we have taken, or expect to take, of which we are aware. We have also provided you with access to all opinions, rulings, memoranda and analyses that relate to positions we have taken in regard to significant income tax matters. We are responsible for the accuracy and completeness of information provided to external counsel and we believe that the facts are consistent with any stated assumptions made by external counsel for purposes of forming such tax opinions. We have made you aware of and have disclosed all significant tax positions for which it is reasonably

5

possible the amount of unrecognized tax benefit will either increase or decrease in the next 12 months.

**Disclosure and Presentation of Consolidated Financial Statements**

32. The effects of the uncorrected consolidated financial statement misstatements are immaterial, both individually and in the aggregate, to the consolidated financial statements taken as a whole.

33. We have appropriately reconciled the Partnership books and records (including, but not limited to, general ledger accounts, financial accounts maintained outside the general ledger and trial balances) underlying the consolidated financial statements to their related supporting information (e.g., sub ledger, or third-party data). All related reconciling items considered to be material were identified and included on the reconciliations and were appropriately adjusted in the consolidated financial statements, as necessary. There were no material un-reconciled differences or material general ledger suspense account items that should have been adjusted or reclassified to another account balance. There were no material general ledger suspense account items written off to a balance sheet account, which should have been written off to a statement of operations account and vice versa. All consolidating entries have been properly recorded. All intra-entity accounts have been eliminated or appropriately measured and considered for disclosure in the consolidated financial statements.

34. There are no material transactions, agreements or accounts that have not been properly recorded in the accounting records underlying the consolidated financial statements.

35. The following, if material, have been properly recorded or disclosed in the consolidated financial statements:

   a. Agreements to repurchase assets previously sold.

   b. All pertinent rights and privileges of both general partner and limited partner interests in the Partnership.

   c. Fee income and expenses associated with stock lending and borrowing arrangements.

   d. Relationships and transactions with related parties, as described in ASC 850, *Related Party Disclosures*, including revenue, purchases and sales of securities, transfers, guarantees, other fees and expenses charged to the Partnership, and amounts receivable from or payable to related parties.

   e. Significant estimates and material concentrations known to us that are required to be disclosed in accordance with ASC 275, *Risks and Uncertainties*. (Significant estimates are estimates at the balance sheet date that could change materially within the next year. Concentrations refer to matters such as volume of investment activity, available sources of financing, markets or geographic areas for which events could occur that would significantly disrupt investment performance within the next year.)

   f. All cash and deposit accounts and all other properties and assets of the Partnership are included in the consolidated financial statements.

   g. All financial instruments, including those with off-balance-sheet risk (including, but not limited to, swaps, forwards and futures), as required under US GAAP. This includes the following information with respect to the off-balance-sheet risks and the concentrations of credit risk:

6

D-JDNL-033405

**Appx. 01426**

    i.  The extent, nature, and terms of financial instruments with off-balance-sheet risk.

    ii.  The amount of credit risk of financial instruments with off-balance-sheet risk and information about the collateral supporting such financial instruments.

  h.  Each significant concentration of credit risk arising from all financial instruments, and information about the collateral supporting such financial instruments, whether from an individual counterparty/prime broker or group of counterparties/prime brokers in accordance with ASC 825, *Financial Instruments,* and ASC 815, *Derivatives and Hedging* (ASC 815), 815-10-50.

  i.  Commitments to purchase or sell financial instruments, commitments on certain debt instruments such as revolving credit facilities and obligations to fund capital calls.

  j.  Guarantees, whether written or oral, under which the Partnership is contingently liable.

  k.  Transactions made in foreign currencies.

  l.  Transactions made on margin or selling short.

36. We have disclosed to you the identity of the Partnership's related parties and all the related party relationships and transactions of which we are aware.

37. The Partnership has classified and disclosed financial assets and liabilities in the consolidated financial statements as Level 1, Level 2 and Level 3 in accordance with ASC 820, *Fair Value Measurement*, including a description of inputs and information used to develop valuation techniques as well as facts that required a change to such techniques, where applicable. We have made appropriate disclosures in accordance with Accounting Standards Update (ASU) 2011-11, *Disclosures about Offsetting Assets and Liabilities,* when the Partnership has the right of setoff in accordance with a master netting or similar agreement. The netting of assets and liabilities has been performed in accordance with the specific requirements of ASC 210, *Balance Sheet,* 210-20-45-1 and ASC 815-10-45-5.

38. The Partnership has properly recorded, classified and disclosed the prime broker margin collateral requirements in the consolidated financial statements in accordance with ASC 860, *Transfers and Servicing,* as to the recognition and reclassification of collateral and disclosures relating to securitization transactions and collateral.

39. We consistently applied our policy regarding classification of cash and cash equivalents, which are short-term, highly liquid investments that are readily convertible to known amounts of cash and are so near their maturity that there is insignificant risk of changes in value due to interest rate or other credit risk changes.

40. All borrowings and financial obligations of the Partnership have been disclosed to you and are properly recorded in the consolidated financial statements.

41. The Partnership has not made any commitments during the year as underwriter, nor did it engage in joint trading or a joint investment account.

**Other**

7

CONFIDENTIAL

D-JDNL-033406

**Appx. 01427**

    i.  The extent, nature, and terms of financial instruments with off-balance-sheet risk.

    ii.  The amount of credit risk of financial instruments with off-balance-sheet risk and information about the collateral supporting such financial instruments.

  h.  Each significant concentration of credit risk arising from all financial instruments, and information about the collateral supporting such financial instruments, whether from an individual counterparty/prime broker or group of counterparties/prime brokers in accordance with ASC 825, *Financial Instruments,* and ASC 815, *Derivatives and Hedging* (ASC 815), 815-10-50.

  i.  Commitments to purchase or sell financial instruments, commitments on certain debt instruments such as revolving credit facilities and obligations to fund capital calls.

  j.  Guarantees, whether written or oral, under which the Partnership is contingently liable.

  k.  Transactions made in foreign currencies.

  l.  Transactions made on margin or selling short.

36.  We have disclosed to you the identity of the Partnership's related parties and all the related party relationships and transactions of which we are aware.

37.  The Partnership has classified and disclosed financial assets and liabilities in the consolidated financial statements as Level 1, Level 2 and Level 3 in accordance with ASC 820, *Fair Value Measurement*, including a description of inputs and information used to develop valuation techniques as well as facts that required a change to such techniques, where applicable. We have made appropriate disclosures in accordance with Accounting Standards Update (ASU) 2011-11, *Disclosures about Offsetting Assets and Liabilities,* when the Partnership has the right of setoff in accordance with a master netting or similar agreement.  The netting of assets and liabilities has been performed in accordance with the specific requirements of ASC 210, *Balance Sheet,* 210-20-45-1 and ASC 815-10-45-5.

38.  The Partnership has properly recorded, classified and disclosed the prime broker margin collateral requirements in the consolidated financial statements in accordance with ASC 860, *Transfers and Servicing*, as to the recognition and reclassification of collateral and disclosures relating to securitization transactions and collateral.

39.  We consistently applied our policy regarding classification of cash and cash equivalents, which are short-term, highly liquid investments that are readily convertible to known amounts of cash and are so near their maturity that there is insignificant risk of changes in value due to interest rate or other credit risk changes.

40.  All borrowings and financial obligations of the Partnership have been disclosed to you and are properly recorded in the consolidated financial statements.

41.  The Partnership has not made any commitments during the year as underwriter, nor did it engage in joint trading or a joint investment account.

**Other**

7

50. We acknowledge responsibility for the presentation of the Supplemental Consolidating Balance Sheet, Supplemental Consolidating Statement of Income, Supplemental Unconsolidated Balance Sheet and Supplemental Unconsolidated Statement of Income in accordance with US GAAP and we believe such information, including its form and content, is fairly presented in accordance with US GAAP. We have communicated to you all changes in measurement or presentation from those used in the prior period. We have informed you about any significant assumptions or interpretations underlying the measurement or presentation of the information.

To the best of our knowledge and belief, no events have occurred subsequent to the balance sheet date and through the date of this letter that would require adjustments to, or disclosure in, the aforementioned consolidated financial statements.

James Dondero, President
Highland Capital Management, L.P.
By: Strand Advisors, Inc., its general partner

Frank Waterhouse,  Treasurer
Highland Capital Management, L.P.
By: Strand Advisors, Inc., its general partner

9

CONFIDENTIAL

D-JDNL-033408

Appx. 01429

**Appendix 1**

Highland Multi Strategy Credit Fund, L.P.

Highland Multi-Strategy Master Fund, L.P.

Highland Multi-Strategy Fund, L.P.

Highland Restoration Capital Partners Offshore, L.P.

Highland Restoration Capital Partners, L.P.

BB Votorantim, Highland Infrastructure LLC

Highland Capital Special Allocation, LLC

Highland Receivables Finance 1, LLC

Highland Brasil, LLC

Highland Capital Management Partners Charitable Trust #1

Highland Capital Management (Singapore) Pte, Ltd.Highland Capital Management Korea, Ltd.

Highland Capital Management Latin America, L.P.

HE Capital, LLC

De Kooning, Ltd.

Hirst, Ltd.

Hockney, Ltd.

Oldenburg, Ltd.

Eames, Ltd.

Penant Management, L.P.

Pollack, Ltd.

Warhol, Ltd.

HCREF- I Holding Corp.

HCREF-XI Holding Corp.

HCREF-XII Holding Corp.

Highland ERA Management, LLC

The Dondero Insurance Rabbi Trust

**Appendix 1 (continued)**

The Okada Insurance Rabbi Trust

Highland Employee Retention Assets, LLC

Highland Diversified Credit Fund, L.P.

Highland Select Equity Master Fund, L.P.

Highland Select Equity Fund, L.P.

Bandera Strategic Credit Partners I SLP, L.P.

Highland Fund Holdings, LLC

HCM Holdco, LLC

Maple Avenue Holdings, LLC

Highland HCF Advisor, Ltd.

11

# EXHIBIT 87

Docket #0248   Date Filed: 12/13/2019

---

**Fill in this information to identify the case:**

Debtor name    **Highland Capital Management, L.P.**

United States Bankruptcy Court for the:    NORTHERN DISTRICT OF TEXAS

Case number (if known)    **19-34054-SGJ**

☐ Check if this is an
amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy                    04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages,
write the debtor's name and case number (if known).

| Part 1: | Income |
|---------|--------|

1.  **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2019** to **Filing Date** | ☑ Operating a business<br>☑ Other   **Exhibit A** | **$28,431,156.97** |
| **From the beginning of the fiscal year to filing date:**<br>From **1/01/2019** to **Filing Date** | ☐ Operating a business<br>    **Exhibit A - Other**<br>☑ Other   **Gain/(Loss)** | **$125,310,540.63** |
| **For prior year:**<br>From **1/01/2018** to **12/31/2018** | ☑ Operating a business<br>☑ Other   **Exhibit A** | **$50,365,069.40** |
| **For prior year:**<br>From **1/01/2018** to **12/31/2018** | ☐ Operating a business<br>    **Exhibit A - Other**<br>☑ Other   **Gain/(Loss)** | **$-52,929,268.33** |
| **For year before that:**<br>From **1/01/2017** to **12/31/2017** | ☑ Operating a business<br>☑ Other   **Exhibit A** | **$67,911,079.00** |
| **For year before that:**<br>From **1/01/2017** to **12/31/2017** | ☐ Operating a business<br>    **Exhibit A - Other**<br>☑ Other   **Gain/(Loss)** | **$47,701,590.21** |



**Exhibit 19**

**Appx. 01433**

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|---|

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None.

| | Description of sources of revenue | Gross revenue from each source (before deductions and exclusions) |
|---|---|---|

---

**Part 2:** **List Certain Transfers Made Before Filing for Bankruptcy**

**3. Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer *Check all that apply* |
|---|---|---|---|
| 3.1.  **Exhibit B** | | **$23,255,006.86** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

---

**4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None.

| Insider's name and address Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1.  **Exhibit C** | | **$36,608,252.91** | |

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|

---

**Part 3:** **Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

---

**Appx. 01434**

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|---|

☐ None.

| | Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1. | **Exhibit D** | | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| 7.2. | **Internal dispute resolution department within the IRS** | **IRS Appeal** | **Department of the Treasury<br>4050 Alpha Road<br>Suite 517, MC: 8000NDAL<br>Dallas, TX 75201-7849** | ☐ Pending<br>☑ On appeal<br>☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

---

**Part 4:    Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☐ None

| | Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|---|
| 9.1. | **Exhibit E** | **Debtor does not track recipient of gift or contribution.** | | **$445,725.61** |
| | Recipients relationship to debtor | | | |

---

**Part 5:    Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

---

**Part 6:    Certain Payments or Transfers**

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None.

| Who was paid or who received the transfer?<br>Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

---

**Appx. 01435**

Debtor   **Highland Capital Management, L.P.**                              Case number *(if known)*  **19-34054-SGJ**

| | Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Development Specialists, Inc. 10 South LaSalle Suite 3300 Chicago, IL 60603** | | **10/07/2019** | **$250,000.00** |
| | Email or website address **dsiconsulting.com** | | | |
| | Who made the payment, if not debtor? | | | |
| 11.2. | **Pachulski Stang Ziehl & Jones LLP 10100 Santa Monica Blvd. 13th Floor Los Angeles, CA 90067** | | **10/02/2019** | **$500,000.00** |
| | Email or website address **http://www.pszjlaw.com/** | | | |
| | Who made the payment, if not debtor? | | | |
| 11.3. | **Kurtzman Carson Consultants LLC Dept CH 16639 Palatine, IL 60055** | | **10/07/2019** | **$50,000.00** |
| | Email or website address **https://www.kccllc.com/** | | | |
| | Who made the payment, if not debtor? | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

☑ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☐ None.

**Appx. 01436**

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|

| | Who received transfer?<br>Address | Description of property transferred or<br>payments received or debts paid in exchange | Date transfer<br>was made | Total amount or<br>value |
|---|---|---|---|---|
| 13.1<br>. | **Highland Select Equity Fund,<br>L.P.<br>300 Crescent Ct.<br>Dallas, TX 75201** | **Transfer of 888,731 shares of public<br>security in exchange for LP interest.** | **12/26/2018** | **$19,632,067.79** |
| | Relationship to debtor<br>**Fund managed by the debtor.** | | | |
| 13.2<br>. | **Highland Select Equity Fund,<br>L.P.<br>300 Crescent Ct.<br>Dallas, TX 75201** | **Transfer of 214,000 shares of public<br>security in exchange for LP interest.** | **3/12/2018** | **$6,385,760.00** |
| | Relationship to debtor<br>**Fund managed by the debtor** | | | |
| 13.3<br>. | **Highland Select Equity Fund,<br>L.P.<br>300 Crescent Ct.<br>Suite 700<br>Dallas, TX 75201** | **Transfer of 250,000 shares of public<br>security for LP interest** | **7/23/2019** | **$10,297,500.00** |
| | Relationship to debtor<br>**Fund managed by the debtor** | | | |

| Part 7: | Previous Locations |
|---|---|

14. **Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of occupancy<br>From-To |
|---|---|
| 14.1. | **Parkway Bent Tree<br>17130 Dallas Parkway<br>Suite 230<br>Dallas, TX 75248** | **10/16/2016 – 8/30/2018** |
| 14.2. | **2200 Ross Avenue<br>Suite 4700E<br>Storage Site<br>Dallas, TX 75201** | **10/16/2016 – 12/31/2018** |

| Part 8: | Health Care Bankruptcies |
|---|---|

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services<br>the debtor provides | If debtor provides meals<br>and housing, number of<br>patients in debtor's care |
|---|---|---|

**Appx. 01437**

Debtor   **Highland Capital Management, L.P.**          Case number *(if known)*  **19-34054-SGJ**

---

**Part 9:** **Personally Identifiable Information**

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes. State the nature of the information collected and retained.

> **Debtor has information including SS#, tax ID, mailing address, email address, and limited KYC for fund investors.**

Does the debtor have a privacy policy about that information?
☐ No
☑ Yes

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☑ Yes. Does the debtor serve as plan administrator?

> ☐ No Go to Part 10.
> ☑ Yes. Fill in below:
>
> | Name of plan | Employer identification number of the plan |
> |---|---|
> | **Highland 401(K) Plan** | EIN: **75-2716725** |
>
> Has the plan been terminated?
> ☑ No
> ☐ Yes

> ☐ No Go to Part 10.
> ☑ Yes. Fill in below:
>
> | Name of plan | Employer identification number of the plan |
> |---|---|
> | **Highland Capital Management, L.P. Retirement Plan and Trust (Defined Benefit Plan)** | EIN: **75-2716725** |
>
> Has the plan been terminated?
> ☑ No
> ☐ Yes

---

**Part 10:** **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| | | | | |

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|
| | | | |

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

**Appx. 01438**

| Debtor | Highland Capital Management, L.P. | Case number (if known) | 19-34054-SGJ |

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| Iron Mountain PO BOX 915004 Dallas, TX 75391 | Employee has login access to request documents. | Firm-wide documents sent off-site to retain documents per the firm's retention policy. | ☐ No ☑ Yes |
| Natural Disasters Site 900 Venture Dr. Allen, TX 75013 | Highland Capital Management IT Department | Primary Data Center - Storage | ☐ No ☑ Yes |
| Natural Disasters Site 3010 Waterview Parkway Richardson, TX 75080 | Highland Capital Management IT Department | Natural Disasters Site - Storage | ☐ No ☑ Yes |

**Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list any leased or rented property.

☐ None

| Owner's name and address | Location of the property | Describe the property | Value |
|---|---|---|---|
| James Dondero | 300 Crescent Court Suite 700 Dallas, TX 75201 | Artwork | Unknown |

**Part 12:   Details About Environment Information**

For the purpose of Part 12, the following definitions apply:

*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No.
☐ Yes. Provide details below.

| Case title Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Appx. 01439**

Debtor __Highland Capital Management, L.P.__                    Case number *(if known)* __19-34054-SGJ__

☑ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**Part 13:** Details About the Debtor's Business or Connections to Any Business

25. **Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☐ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| 25.1.    **Exhibit F** | | EIN:<br><br>From-To |

26. **Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| Name and address | Date of service<br>From-To |
|---|---|
| 26a.1.   **Frank Waterhouse**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **10/23/06 - Current** |
| 26a.2.   **David Klos**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **03/30/09 - Current** |
| 26a.3.   **Kristin Hendrix**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **12/16/04 - Current** |
| 26a.4.   **Sean Fox**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **06/25/13 - Current** |
| 26a.5.   **Drew Wilson**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **02/06/12 - 09/14/18** |
| 26a.6.   **Hayley Eliason**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **11/26/18 - Current** |
| 26a.7.   **Blair Roeber**<br>**300 Crescent Court**<br>**Suite 700**<br>**Dallas, TX 75201** | **09/01/15 - Current** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Appx. 01440**

Debtor   **Highland Capital Management, L.P.**                                    Case number *(if known)*  **19-34054-SGJ**

---

☐ None

| Name and address | Date of service From-To |
|---|---|
| 26b.1.   **PricewaterhouseCoopers LLP**<br>**2121 N Pearl St**<br>**Dallas, TX 75201** | **2003 - Current** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.   **Boyd Gosserand**<br>**300 Crescent Ct.**<br>**St 700**<br>**Dallas, TX 75201** | |
| 26c.2.   **Deloitte - Tax**<br>**PO Box 844736**<br>**Dallas, TX 75284** | |
| 26c.3.   **Centroid -Accounting Software Consultant**<br>**6860 Dallas Pkwy Suite 560**<br>**Dallas, TX 75204** | |
| 26c.4.   **Oracle - Accounting Software**<br>**PO Box 203448**<br>**Dallas, TX 75320** | |
| 26c.5.   **Wolters Kluwer - Tax**<br>**PO Box 71882**<br>**Chicago, IL 60694** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 26d.1.   **AgeeFisherBarrett, LLC**<br>**750 Hammond Dr BLDG 17**<br>**Atlanta, GA 30328** |
| 26d.2.   **Bowman Law LLC**<br>**840 Tom Wheeler Lane**<br>**Mc Ewen, TN 37101** |
| 26d.3.   **CBIZ Valuation Group, Inc.**<br>**3030 LBJ Freeway, Ste 1650**<br>**Dallas, TX 75234** |
| 26d.4.   **Cole Schotz**<br>**Court Plaza North**<br>**25 Main Street, PO Box 800**<br>**Hackensack, NJ 07602** |
| 26d.5.   **Colorado FSC**<br>**188 Inverness Drive West**<br>**Ste. 100**<br>**Centennial, CO 80112** |

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Appx. 01441**

| Debtor | **Highland Capital Management, L.P.** | | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|---|

| **Name and address** |
|---|

| 26d.6. | **Concordeis**<br>**1120 East Long Lake Road**<br>**Ste 207**<br>**Troy, MI 48085** |
|---|---|
| 26d.7. | **Courtland T Group**<br>**PO Box 11929**<br>**Newport Beach, CA 92658** |
| 26d.8. | **Crown Capital Securities**<br>**725 Town & Country Rd**<br>**Ste 530**<br>**Orange, CA 92868** |
| 26d.9. | **Deloitte Tax LLP**<br>**PO Box 844736**<br>**Dallas, TX 75284** |
| 26d.10. | **DFPG Investments, Inc.**<br>**9017 S. Riverside Dr.**<br>**Ste 210**<br>**Sandy, UT 84070** |
| 26d.11. | **Discipline Advisors**<br>**14135 G-100 Midway Rd.**<br>**Dallas, TX 75244** |
| 26d.12. | **Development Specialists, Inc.**<br>**10 S. LaSalle St.**<br>**Chicago, IL 60603** |
| 26d.13. | **Emerson Equity**<br>**155 Bovet Rd. #725**<br>**San Mateo, CA 94402** |
| 26d.14. | **Frontier Bank**<br>**5100 S I-35 Service Rd.**<br>**Oklahoma City, OK 73129** |
| 26d.15. | **Grant Thornton LLP**<br>**33570 Treasury Center**<br>**Chicago, IL 60694** |
| 26d.16. | **Great Southern Bank**<br>**8201 Preston Road**<br>**Suite 305**<br>**Dallas, TX 75225** |
| 26d.17. | **Key Bank**<br>**ATTN: KREC Loan Services**<br>**4910 Tiedman Road**<br>**3rd Floor**<br>**Cleveland, OH 44144** |
| 26d.18. | **KPMG**<br>**3 Chesnut Ridge Rd**<br>**Montvale, NJ 07645** |
| 26d.19. | **Maples & Calder**<br>**Ugland House PO Box 309**<br>**S. Church Street George Town**<br>**Grand Cayman, Cayman Island** |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com

**Appx. 01442**

| Debtor | **Highland Capital Management, L.P.** | Case number *(if known)* **19-34054-SGJ** |
|---|---|---|

| **Name and address** |
|---|
| 26d.20. | **Payne and Smith**<br>**5952 Royal Lane**<br>**Suite 158**<br>**Dallas, TX 75230** |
| 26d.21. | **PWC**<br>**PO Box 952282**<br>**Dallas, TX 75395** |
| 26d.22. | **Squire Patton Boggs**<br>**PO Box 643051**<br>**Cincinnati, OH 45264** |
| 26d.23. | **WC Capital Partners** |
| 26d.24. | **Western International Securities, Inc.**<br>**70 S. Lake Ave**<br>**Ste 700**<br>**Pasadena, CA 91101** |
| 26d.25. | **Jean Francois Lemay**<br>**52 Harold Street**<br>**Etobicoke M8Z 3R3** |

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| **Name of the person who supervised the taking of the inventory** | **Date of inventory** | **The dollar amount and basis (cost, market, or other basis) of each inventory** |
|---|---|---|

**28.** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Strand Advisors, Inc.** | **300 Crescent Ct, Ste 700**<br>**Dallas, TX 75201** | **General Partner** | **0.2508%** |
| Name | Address | Position and nature of any interest | % of interest, if any |
| **The Dugaboy Investment Trust** | **300 Crescent Ct, Ste 700**<br>**Dallas, TX 75201** | **Voting Limited Partner** | **0.1866%** |
| Name | Address | Position and nature of any interest | % of interest, if any |
| **Mark Okada** | **300 Crescent Ct, Ste 700**<br>**Dallas, TX 75201** | **Voting Limited Partner** | **0.0487%** |
| Name | Address | Position and nature of any interest | % of interest, if any |
| **Mark and Pamela Okada Family Trust** | **300 Crescent Ct, Ste 700**<br>**Dallas, TX 75201** | **Voting Limited Partner** | **0.0098%** |
| Name | Address | Position and nature of any interest | % of interest, if any |
| **Mark and Pamela Okada Family Trust - #2** | **300 Crescent Ct, Ste 700**<br>**Dallas, TX 75201** | **Voting Limited Partner** | **0.0042%** |

**Appx. 01443**

Debtor   **Highland Capital Management, L.P.**                    Case number *(if known)* **19-34054-SGJ**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Hunter Mountain Investment Trust** | **1100 N Market St Wilmington, DE 19890** | **Non-voting Limited Partner** | **99.50%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **James Dondero** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Sole Shareholder of General Partner** | **100%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **James Dondero** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **President of General Partner** | **100% of the General Partner** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Scott Ellington** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Secretary of General Partner** | **0.00%** |

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **Frank Waterhouse** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Treasurer of General Partner** | **0.00%** |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
☑ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Mark Okada** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Executive Vice President** | **Since inception to 9/30/2019** |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| **Trey Parker** | **300 Crescent Ct, Ste 700 Dallas, TX 75201** | **Assistant Secretary** | **8/21/2015 - 4/15/2019** |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☑ Yes. Identify below.

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.1. | **Exhibit G** | **8,722,414.86** | | |
| | **Relationship to debtor** | | | |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

**Appx. 01444**

Debtor    **Highland Capital Management, L.P.**          Case number *(if known)* **19-34054-SGJ**

☑ No
☐ Yes. Identify below.

**Name of the parent corporation**                    **Employer Identification number of the parent corporation**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No
☐ Yes. Identify below.

**Name of the pension fund**                          **Employer Identification number of the parent corporation**

| Part 14: | Signature and Declaration |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **December 13, 2019**

                                                    Bradley Sharp
Signature of individual signing on behalf of the debtor    Printed name

Position or relationship to debtor    Chief Restructuring Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
☑ Yes

**Appx. 01445**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit A - SOFA 1**

| Revenue Account | Year 2019 [1] | Year 2018 | Year 2017 |
|---|---|---|---|
| **Operating Revenue** | | | |
| Management fees | $ 18,776,701.38 | $ 35,264,426.88 | $ 37,098,010.50 |
| Shared services fees | 6,002,769.24 | 9,187,200.55 | 9,445,221.98 |
| Incentive fees | 150,925.36 | 18,465.92 | 10,042,499.76 |
| Interest and Investment Income | 2,625,221.26 | 4,857,157.03 | 4,478,946.34 |
| Miscellaneous Income | 875,539.73 | 1,037,819.02 | 6,846,400.42 |
| **Total Operating Revenue** | $ 28,431,156.97 | $ 50,365,069.40 | $ 67,911,079.00 |
| | | | |
| **Other Gain/(Loss)** | | | |
| Interest income | $ 5,765,215.32 | $ 7,503,164.74 | $ 7,049,038.53 |
| Other income/expense | 838,191.46 | 658,514.02 | 3,723,833.60 |
| Net realized gains on sales of investment transactions | 3,959,534.93 | 13,396,884.40 | 6,494,555.20 |
| Net change in unrealized gains/(losses) of investments | (6,692,741.56) | (56,529,224.39) | 27,322,977.50 |
| Net earnings/(losses) from equity method investees | 121,440,340.48 | (17,958,607.10) | 3,111,185.38 |
| **Total Other Gain/(Loss)** | $ 125,310,540.63 | $ (52,929,268.33) | $ 47,701,590.21 |

*[1] Date ranges from 12/31/2018 to end of business 10/15/2019.*

**Appx. 01446**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Wilmer Cutler Pickering Hale and Dorr LLP | PO Box 7247-8760  Philadelphia PA 19170-8760 | 7/18/2019 | $ 20,275.50 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 7/18/2019 | 1,285.16 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, LB#102 Dallas TX 75201 | 7/18/2019 | 990.00 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 7/19/2019 | 8,789.14 | Professional Services |
| Highland Capital Management Korea Limited | (Seoul Finance Center, Taepyeongro-1-ga) 21F, 136, Sejong-daero, Jung-gu, Seoul, Korea | 7/19/2019 | 630,000.00 | Intercompany Funding |
| American Airlines | 4255 Amon Carter Blvd MD 4106 Fort Worth TX 76155 | 7/22/2019 | 30,000.00 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 7/22/2019 | 28,122.16 | Intercompany Funding |
| Meister Seelig & Fein LLP | 125 Park Avenue 7th Floor New York NY 10017 | 7/22/2019 | 24,228.30 | Professional Services |
| Flagship Cruises & Events | PO Box 120751  San Diego CA 92112 | 7/22/2019 | 16,103.26 | Suppliers/Vendors |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 7/23/2019 | 146,190.02 | Employee Benefits |
| Abrams & Bayliss LLP | 20 Montchanin Road, Suite 200  Wilmington DE 19807 | 7/24/2019 | 53,237.45 | Professional Services |
| Pricewaterhouse Coopers, LLP | 8 Cross St. #17-00 PWC Singapore Building Singapore  048424 | 7/24/2019 | 14,461.66 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 7/25/2019 | 36,084.06 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 7/25/2019 | 6,754.00 | Professional Services |
| Reid Collins & Tsai LLP | 4301 Westbank Drive Building B Suite 230 Austin TX 78746 | 7/30/2019 | 82,831.45 | Professional Services |
| Paxstone Capital LLP | 483 Green Lanes, London, Greater London, N13 4BS | 7/30/2019 | 46,063.81 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 7/31/2019 | 41,053.47 | Employee Benefits |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 628,000.00 | Intercompany Funding |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 7/31/2019 | 11,000.00 | Professional Services |
| Professional Speaker | Koa Kai, LLC PO Box 232307 Leucadia CA 92023 | 7/31/2019 | 15,000.00 | Suppliers/Vendors |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 8/1/2019 | 500,000.00 | Investing |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/1/2019 | 39,586.07 | Professional Services |
| Crescent TC Investors LP | 200 Crescent Ct Suite 250 Dallas TX 75201 | 8/1/2019 | 155,361.38 | Rent Payment |
| Brasilinvest Empreendimentos e Participaç?es S/A | Brazil | 8/1/2019 | 10,000.00 | Intercompany Funding |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 8/1/2019 | 68,002.70 | Secured Loan Payment |
| Massand Capital, LLC | 8140 Walnut Hill Lane, Suite 310 Dallas, TX 75231 | 8/1/2019 | 54,979.21 | Professional Services |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 8/2/2019 | 11,959.71 | Investing |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 8/2/2019 | 252,041.98 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 8/2/2019 | 259.05 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/2/2019 | 86,126.71 | Employee Benefits |
| Abrams & Bayliss LLP | 20 Montchanin Road, Suite 200  Wilmington DE 19807 | 8/7/2019 | 17,133.03 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/7/2019 | 441,000.00 | Intercompany Funding |
| Status Labs.com | 151 South 1st Suite 100 Austin TX 78704 | 8/7/2019 | 9,500.00 | Professional Services |
| PetroCap Partners III, L.P. | 3333 Lee Parkway Suite 750 Dallas TX 75219 | 8/7/2019 | 510,350.41 | Investing |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/8/2019 | 115,843.80 | Employee Benefits |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 8/8/2019 | 3,573.58 | Professional Services |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 8/8/2019 | 12,056.49 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/8/2019 | 3,267.49 | Suppliers/Vendors |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/9/2019 | 157,850.27 | Employee Benefits |
| Liberty Life Assurance Company of Boston - Group Benefits | PO Box 2658  Carol Stream IL 60132-2658 | 8/9/2019 | 5,283.26 | Employee Benefits |
| ICBI | London | 8/13/2019 | 12,420.78 | Professional Services |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/13/2019 | 155,000.00 | Intercompany Funding |
| Connolly Gallagher LLP | 1201 North Market Street 20th Floor Wilmington DE 19801 | 8/13/2019 | 18,295.70 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 8/14/2019 | 41,300.58 | Employee Benefits |
| CBIZ Valuation Group, Inc. | 3030 LBJ Freeway, Ste 1650  Dallas TX 75234 | 8/14/2019 | 15,000.00 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 8/14/2019 | 5,357.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 8/14/2019 | 174,256.34 | Professional Services |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 8/15/2019 | 35,200.00 | Professional Services |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 8/15/2019 | 927.16 | Professional Services |
| ABM | PO Box 419860  Boston MA 02241-9860 | 8/15/2019 | 5,884.76 | Suppliers/Vendors |
| Linkedin Corporation | 62228 Collections Center Drive  Chicago IL 60693-0622 | 8/15/2019 | 19,719.93 | Professional Services |
| PetroCap Partners II, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 1,244,586.77 | Investing |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 8/15/2019 | 55,601.49 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 8/15/2019 | 137,396.00 | Professional Services |
| MacroMavens, LLC | 180 W. 20th Street Suite 1700 New York NY 10011 | 8/15/2019 | 18,816.84 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 8/15/2019 | 13,823.98 | Suppliers/Vendors |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 8/15/2019 | 1,420.63 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 8/16/2019 | 36,135.64 | Intercompany Funding |
| ROWLETT HILL, LLP | 25 Highland Park Village, Suite 100-448  Dallas TX 75205 | 8/16/2019 | 30,187.50 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 8/16/2019 | 634.00 | Suppliers/Vendors |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 8/16/2019 | 6,750.00 | Professional Services |
| BCA Research Inc | 1002 Sherbrooke St. W Suite 1600 Montreal Quebec H3A 3L6 | 8/16/2019 | 19,996.94 | Professional Services |
| Willis of Texas, Inc. | PO Box 731739  Dallas TX 75373-1739 | 8/16/2019 | 5,754.18 | Insurance |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/16/2019 | 89,965.15 | Employee Benefits |
| Thomson West | PO Box 6292  Carol Stream IL 60197-6292 | 8/22/2019 | 21,339.33 | Suppliers/Vendors |
| Duff & Phelps, LLC | DUFF & PHELPS, LLC 12595 Collection Center Drive Chicago IL 60693 | 8/23/2019 | 100,000.00 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 8/23/2019 | 50,934.56 | Intercompany Funding |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 8/23/2019 | 97.96 | Suppliers/Vendors |
| Concur Technologies, Inc. | 62157 Collections Center Drive  Chicago IL 60693 | 8/23/2019 | 4,104.85 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/23/2019 | 91,020.22 | Employee Benefits |
| Thomson West | PO Box 6292  Carol Stream IL 60197-6292 | 8/23/2019 | 3,153.32 | Suppliers/Vendors |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 8/23/2019 | 2,150.47 | Suppliers/Vendors |
| Highland Capital Management New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/26/2019 | 150,000.00 | Intercompany Funding |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 8/26/2019 | 8,657.28 | Professional Services |

**Appx. 01447**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 8/26/2019 | 9,065.13 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/27/2019 | 300,000.00 | Intercompany Funding |
| Acis Capital Management | Attn: Rakhee V. Patel, Winstead PC 500 Winstead Building Dallas TX 75201 | 8/27/2019 | 12,249.65 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/27/2019 | 2,608.49 | Suppliers/Vendors |
| Greenwood Office Outfitters | 2951 Suffolk Drive Suite 640 Fort Worth TX 76133-1149 | 8/28/2019 | 12,877.82 | Suppliers/Vendors |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 8/29/2019 | 95,443.51 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 8/29/2019 | 118,192.57 | Employee Benefits |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 75,000.00 | Intercompany Funding |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 55,000.00 | Intercompany Funding |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 8/29/2019 | 697.89 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, LB#102 Dallas TX 75201 | 8/29/2019 | 14,857.95 | Professional Services |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 111,212.19 | Professional Services |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 8/30/2019 | 11,000.00 | Professional Services |
| Brasilinvest Empreendimentos e Participac?es S/A | Brazil | 9/3/2019 | 10,000.00 | Intercompany Funding |
| Crescent TC Investors LP | PO Box 841772  Dallas TX 75284-1772 | 9/3/2019 | 156,958.51 | Rent Payment |
| AT&T | PO Box 9005  Carol Stream IL 60197-9005 | 9/3/2019 | 5,690.12 | Professional Services |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 9/3/2019 | 404,238.30 | Secured Loan Payment |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/3/2019 | 259.77 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/3/2019 | 295.76 | Professional Services |
| Willis of Texas, Inc. | Dallas/Ft. Worth Division PO Box 730310 Dallas TX 75373-0310 | 9/3/2019 | 21,133.38 | Insurance |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 9/4/2019 | 500,000.00 | Investing |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/4/2019 | 500,000.00 | Intercompany Funding |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 9/4/2019 | 6,451.50 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 9/5/2019 | 18,042.03 | Professional Services |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/5/2019 | 113,788.36 | Employee Benefits |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 9/5/2019 | 11,286.83 | Investing |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/5/2019 | 858,220.29 | Employee Benefits |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/5/2019 | 854,278.60 | Employee Benefits |
| Dow Jones & Company, Inc. | WALL ST JRNL OR BARRONS PO Box 4137 New York NY 10261-4137 | 9/5/2019 | 16,621.23 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/5/2019 | 3,374.19 | Suppliers/Vendors |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 9/5/2019 | 35,200.00 | Professional Services |
| Las Vegas Flamingo Holdco, LLC | Collections Account  TEXAS | 9/5/2019 | 46,536.83 | Intercompany Funding |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 9/5/2019 | 15,518.67 | Suppliers/Vendors |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/6/2019 | 3,573.58 | Professional Services |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 9/9/2019 | 9,138.32 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/9/2019 | 142,884.07 | Employee Benefits |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/11/2019 | 40,000.00 | Intercompany Funding |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/12/2019 | 37,839.05 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/12/2019 | 59,111.49 | Employee Benefits |
| Loews Coronado Bay Resort | 4000 Coronado Bay Road  Coronado CA 92118 | 9/12/2019 | 77,340.18 | Suppliers/Vendors |
| Harbor Yacht Clubs, LLC | 1880 Harbor Island Drive  San Diego CA 92101 | 9/12/2019 | 6,440.00 | Suppliers/Vendors |
| NYSE MARKET, INC | Box #223695  Pittsburgh PA 15251-2695 | 9/13/2019 | 8,857.74 | Professional Services |
| TRICOR BUSINESS OUTSOURCING | 80 Robinson Rd, Singapore 068898 | 9/13/2019 | 35,221.80 | Intercompany Funding |
| Markit North America Inc. | 620 8th Ave 35th floor New York NY 10018 | 9/13/2019 | 91,676.00 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/13/2019 | 7,387.23 | Suppliers/Vendors |
| BDO USA, LLP | 700 North Pearl Suite 2000 Dallas TX 75201 | 9/13/2019 | 8,700.00 | Professional Services |
| ABM | PO Box 419860  Boston MA 02241-9860 | 9/13/2019 | 5,884.76 | Suppliers/Vendors |
| Concur Technologies, Inc. | 62157 Collections Center Drive  Chicago IL 60693 | 9/13/2019 | 8,187.05 | Professional Services |
| Willis of Texas, Inc. | PO Box 731739  Dallas TX 75373-1739 | 9/13/2019 | 5,754.18 | Insurance |
| Reorg Research, Inc. | 1140 Broadway Ste 201 New York NY 10001 | 9/13/2019 | 93,123.35 | Professional Services |
| Sage Search Partners | 3811 Turtle Creek Blvd Suite 850 Dallas TX 75219 | 9/13/2019 | 20,000.00 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 9/16/2019 | 927.16 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/16/2019 | 200,000.00 | Professional Services |
| Lynn Pinker Cox & Hurst, L.L.P. | 2100 Ross Ave Suite 2700 Dallas TX 75201 | 9/17/2019 | 185,576.00 | Professional Services |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 9/17/2019 | 12,056.49 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 9/17/2019 | 327.61 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/17/2019 | 15,210.80 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 9/19/2019 | 1,769.17 | Professional Services |
| ROWLETT HILL, LLP | 25 HIGHLAND PARK VILLAGE STE 100-448 DALLAS TX 75205 | 9/19/2019 | 23,718.75 | Professional Services |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/19/2019 | 500,000.00 | Affiliate Loan |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 9/19/2019 | 185,063.83 | Professional Services |
| Greyline Partners, LLC | P.O. Box 733976  Dallas TX 75373-3976 | 9/19/2019 | 11,250.00 | Professional Services |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/20/2019 | 77,274.56 | Employee Benefits |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 9/20/2019 | 67,658.40 | Employee Benefits |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/23/2019 | 1,000,000.00 | Affiliate Loan |
| Attia Medical, PC | 5820 Oberlin Dr. Suite 205  San Diego CA 92121 | 9/23/2019 | 12,500.00 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/23/2019 | 200,000.00 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 9/24/2019 | 3,059.50 | Suppliers/Vendors |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 300,000.00 | Intercompany Funding |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 9/25/2019 | 8,109.75 | Professional Services |
| Cole Schotz | Court Plaza North 25 Main Street Hackensack NJ 07602-0800 | 9/25/2019 | 100,000.00 | Professional Services |
| Affiliate Loan | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/25/2019 | 900,000.00 | Affiliate Loan |
| S&P Global Market Intelligence | 33356 Collection Center Drive  Chicago IL 60693-0333 | 9/25/2019 | 368,894.61 | Professional Services |

**Appx. 01448**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 9/25/2019 | 1,325.29 | Professional Services |
| Harbor Yacht Clubs, LLC | 1880 Harbor Island Drive  San Diego CA 92101 | 9/25/2019 | 538.75 | Suppliers/Vendors |
| ICE Data Pricing & Reference Data, LLC | PO Box 98616  Chicago IL 60693 | 9/25/2019 | 8,819.61 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 9/26/2019 | 35,354.55 | Employee Benefits |
| Duff & Phelps, LLC | 2397 Paysphere Circle  Chicago IL 60674 | 9/30/2019 | 100,000.00 | Professional Services |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 200,000.00 | Intercompany Funding |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 9/30/2019 | 98,707.96 | Secured Loan Payment |
| Arris Western Corp. | 718 N Buckner #316  Dallas TX 75218 | 9/30/2019 | 11,000.00 | Professional Services |
| Professional Speaker | Koa Kai, LLC PO Box 232307 Leucadia CA 92023 | 9/30/2019 | 15,000.00 | Suppliers/Vendors |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 105,000.00 | Intercompany Funding |
| Attia Medical, PC | 5820 Oberlin Dr. Suite 205  San Diego CA 92121 | 9/30/2019 | 12,500.00 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 9/30/2019 | 200,000.00 | Professional Services |
| AT&T MOBILITY | PO BOX 6463  CAROL STREAM IL 60197-6463 | 10/1/2019 | - | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/1/2019 | 13,059.43 | Bonus |
| Crescent TC Investors LP | 200 Crescent Ct Suite 250 Dallas TX 75201 | 10/1/2019 | 192,588.09 | Rent Payment |
| Frontier State Bank | 5100 S I-35 Service Rd, Oklahoma City, OK 73129 | 10/1/2019 | 128,793.00 | Secured Loan Payment |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 10/2/2019 | 113,095.54 | Professional Services |
| Consultant | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/2/2019 | 28,821.81 | Professional Services |
| Pachulski Stang Ziehl & Jones LLP | 10100 Santa Monica Blvd. 13th Floor Los Angeles CA 90067 | 10/2/2019 | 500,000.00 | Professional Services |
| HIGHLAND CAPITAL MANAGEMENT, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 114,381.18 | Employee Benefits |
| OKADA INSURANCE RABBI TRUST | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 14,875.00 | Insurance |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/3/2019 | 309.51 | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 113,104.52 | Employee Reimbursement |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/4/2019 | 18,042.03 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/4/2019 | 18,042.03 | Professional Services |
| TW Telecom Holdings, llc | PO Box 910182  Denver CO 80291-0182 | 10/4/2019 | 7,710.33 | Professional Services |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 10/4/2019 | 23,277.86 | Suppliers/Vendors |
| CDW Direct | PO BOX 75723  CHICAGO IL 60675-5723 | 10/4/2019 | 23,788.47 | Suppliers/Vendors |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 500,000.00 | Intercompany Funding |
| AT&T | PO BOX 9005  Carol Stream IL 60197-9005 | 10/4/2019 | 2,845.06 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/4/2019 | 3,573.58 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/4/2019 | 146.78 | Professional Services |
| Willis of Texas, Inc. | Dallas/Ft. Worth Division PO Box 730310 Dallas TX 75373-0310 | 10/4/2019 | 5,754.18 | Insurance |
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 10/4/2019 | 109,241.27 | Employee Benefits |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/4/2019 | 55,667.91 | Professional Services |
| Ipreo Data Inc. | 421 Fayetteville Street Suite 900 Raleigh NC 27601 | 10/4/2019 | 9,500.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 10/4/2019 | 182,790.68 | Professional Services |
| Hedgeye Risk Mgmt, LLC | 1 High Ridge Park 3rd Floor Stamford CT 06905 | 10/4/2019 | 25,265.10 | Professional Services |
| Spin-Off Advisors, LLC | 1327 W. Washington Blvd Ste 4-G Chicago IL 60607 | 10/4/2019 | 15,000.00 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 10/4/2019 | 14,343.81 | Suppliers/Vendors |
| Flexential Colorado Corp. | PO Box 732368  Dallas TX 75373-2368 | 10/4/2019 | 24,031.79 | Professional Services |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 75,000.00 | Intercompany Funding |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 10/4/2019 | 200,000.00 | Professional Services |
| Siepe Software, LLC | 5440 Harvest Hill Rd Suite 100, Dallas, TX 75230 | 10/7/2019 | 18,042.03 | Professional Services |
| Pricewaterhouse Coopers, LLP | PO BOX 952282  DALLAS TX 75395-2282 | 10/7/2019 | 24,000.00 | Professional Services |
| LAFFER ASSOCIATES | 103 Murphy Court  NASHVILLE TN 37203 | 10/7/2019 | 28,188.37 | Professional Services |
| MARKIT WSO CORPORATION | Three Lincoln Centre 5430 LBJ Frwy; STe 800 DALLAS TX 75240 | 10/7/2019 | 27,213.92 | Professional Services |
| Strategas Securities LLC | 52 Vanderbilt Ave 8th Fl New York NY 10017 | 10/7/2019 | 27,195.87 | Professional Services |
| Bloomberg Finance LP | PO Box 416604  Boston MA 02241-6604 | 10/7/2019 | 100,000.00 | Professional Services |
| Intex Solutions, Inc. | Accounts Receivable 110 A St Needham MA 02494-2807 | 10/7/2019 | 35,200.00 | Professional Services |
| BCA Research Inc | 1002 Sherbrooke St. W Suite 1600 Montreal Quebec H3A 3L6 | 10/7/2019 | 18,294.21 | Professional Services |
| Consultant | 2620 White Rock Rd.  Dallas TX 75214 | 10/7/2019 | 5,274.50 | Professional Services |
| Employee | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/7/2019 | 43,910.97 | Employee Reimbursement |
| Verity Group | PO Box 940361  Plano TX 75094-0361 | 10/7/2019 | 8,940.84 | Suppliers/Vendors |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 10/7/2019 | 30,017.35 | Suppliers/Vendors |
| ABM | PO Box 419860  Boston MA 02241-9860 | 10/7/2019 | 5,884.76 | Suppliers/Vendors |
| Greenwood Office Outfitters | 2951 Suffolk Drive Suite 640 Fort Worth TX 76133-1149 | 10/7/2019 | 4,628.62 | Suppliers/Vendors |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/7/2019 | 113,092.79 | Professional Services |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/7/2019 | 112,000.00 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/7/2019 | 142,205.00 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/7/2019 | 104,905.00 | Professional Services |
| Siepe Services, LLC | 5440 Harvest Hill Road Suite 100 Dallas TX 75230 | 10/7/2019 | 185,000.00 | Professional Services |
| GRUBHUB for Work | PO Box 748570  Los Angeles CA 90074-8570 | 10/7/2019 | 5,556.50 | Suppliers/Vendors |
| ValueScope, Inc. | 1400 Thetford Ct.  Southlake TX 76092 | 10/7/2019 | 25,000.00 | Professional Services |
| Development Specialists, Inc. | 333 South Grand Avenue Suite 4070 Los Angeles CA 90071-1544 | 10/7/2019 | 250,000.00 | Professional Services |
| Bragalone Conroy PC | Chase Tower 2200 Ross Avenue Dallas TX 75201-7924 | 10/7/2019 | 10,000.00 | Professional Services |
| Kurtzman Carson Consultants LLC | Dept CH 16639  Palatine IL 60055-6639 | 10/7/2019 | 50,000.00 | Professional Services |
| Hunton Andrews Kurth, LLP | 1445 Ross Avenue Suite 3700 Dallas TX 75202-2799 | 10/7/2019 | 156,996.86 | Professional Services |
| Liberty Life Assurance Company of Boston - Group Benefits | PO Box 2658  Carol Stream IL 60132-2658 | 10/7/2019 | 15,928.25 | Employee Benefits |
| ICE Data Pricing & Reference Data, LLC | PO Box 98616  Chicago IL 60693 | 10/7/2019 | 5,879.74 | Professional Services |
| Refinitiv US LLC | 3 Times Square  New York NY 10036 | 10/7/2019 | 12,823.98 | Professional Services |
| Deloitte Tax LLP | PO Box 844736  Dallas TX 75284-4736 | 10/8/2019 | 128,557.00 | Professional Services |
| AT&T | PO BOX 5019  CAROL STREAM IL 60197 | 10/10/2019 | 3,573.58 | Professional Services |

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit B - SOFA 3 [1]**

| Trading Partner Name | Trading Partner Address | Payment Date | Payment Amount | Reason for Transfer |
|---|---|---|---|---|
| Blue Cross Blue Shield of Texas | PO Box 731428  Dallas TX 75373-1428 | 10/10/2019 | 161,497.04 | Employee Benefits |
| Cole Schotz | Court Plaza North 25 Main Street Hackensack NJ 07602-0800 | 10/10/2019 | 34,894.42 | Professional Services |
| Houlihan Lokey | 10250 Constellation Blvd, 5th Floor Attn: Accounts Receivable Los Angeles CA 90067-6802 | 10/10/2019 | 1,092.79 | Professional Services |
| Snell & Wilmer LLP | One Arizona Center 400 E. Van Buren, Suite 1900 Phoenix AZ 85004-2202 | 10/10/2019 | 19,119.65 | Professional Services |
| DLA Piper LLP US | 6225 Smith Avenue  Baltimore MD 21209 | 10/10/2019 | 1,115,000.00 | Professional Services |
| ASW Law Limited | Crawford House 50 Cedar Avenue Hamilton  HM11 | 10/10/2019 | 10,845.00 | Professional Services |
| Carey Olsen | PO Box 10008 Willow House Grand Cayman  KY1-1001 | 10/10/2019 | 48,595.00 | Professional Services |
| Canteen Vending Services | PO Box 417632  Boston MA 02241-7632 | 10/10/2019 | 8,656.51 | Suppliers/Vendors |
| Platinum Parking | 300 Crescent Court Level G1, LB#102 Dallas TX 75201 | 10/10/2019 | 33,007.19 | Professional Services |
| Charles Schwab | PO Box 1270 Tulsa, OK 74101-1270 | 10/11/2019 | 34,454.43 | Employee Benefits |
| Cole Schotz | Court Plaza North 25 Main Street, PO Box 800 Hackensack NJ 07602-0800 | 10/11/2019 | 25,000.00 | Professional Services |
| Pershing LLC | One Pershing Plaza Attn: IBD - 15th Floor Jersey City NJ 07399 | 10/15/2019 | 17,745.66 | Investing |
| CBIZ Valuation Group, Inc. | 3030 LBJ Freeway, Ste 1650  Dallas TX 75234 | 10/15/2019 | 12,400.00 | Professional Services |
| Status Labs.com | 151 South 1st Suite 100 Austin TX 78704 | 10/15/2019 | 18,000.00 | Professional Services |
| Discovery Benefits [2] | 4321 20th Ave. S. Fargo, ND 58103 | Various | 36,473.83 | FSA Transfers |
| Expense Reimbursements [3] | 300 Crescent Court, Suite 700 Dallas, TX 75201 | Various | 557,471.14 | Expense reimbursements |
| **Total** | | | **$   23,255,006.86** | |

*[1] Does not include activity in Jefferies Prime Broker account.*
*[2] Discovery benefits are the daily FSA amounts paid for healthcare related charges.*
*[3] Expense reimbursements are not tracked in The Debtor's accounting software at detail requested*

4 of 4

**Appx. 01450**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Acis Capital Management | Attn: Rakhee V. Patel, Winstead PC 500 Winstead Building Dallas TX 75201 | 8/27/2019 | 12,249.65 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/26/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/1/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/3/2018 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/2/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/25/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/3/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/3/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/1/2019 | 10,000.00 |
| Brasilinvest Empreendimentos e Participaces S/A | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/3/2019 | 10,000.00 |
| Dondero Insurance Rabbi Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/2/2019 | 36,580.00 |
| Dugaboy Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 9,246.96 |
| Dugaboy Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 6,960.38 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/13/2019 | 155,000.00 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 75,000.00 |
| Eagle Equity Advisors, LLC | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/11/2019 | 40,000.00 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 41.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 70.73 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/30/2018 | 13.96 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 50.74 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 26.84 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 56.68 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 58.06 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 183.46 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 18.89 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 28.88 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 105.11 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 23.70 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 34.79 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 110.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 31.76 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 43.23 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 20.56 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 87.13 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 38.96 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 19.48 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 45.08 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 66.22 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 10.82 |
| Frank Waterhouse - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 115.75 |
| Governance Re Ltd | Wellesley House; 2nd Floor 90 Pitts Bay Road Pembroke HM 08 | 6/14/2019 | 300,000.00 |
| HCRE Partners, LLC | | 9/25/2019 | 900,000.00 |
| Highland Capital Management Fund Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/2/2019 | 2,400,000.00 |
| Highland Capital Management Fund Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/3/2019 | 5,000,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/6/2018 | 1,200,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/17/2019 | 1,100,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/8/2019 | 630,000.00 |
| Highland Capital Management Korea | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/19/2019 | 630,000.00 |
| Highland Capital Management Latin America | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/3/2019 | 1,350,000.00 |
| Highland Capital Management Latin America | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 10,000.00 |

**Appx. 01451**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Highland Capital Management Services | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/29/2019 | 400,000.00 |
| Highland Capital Management Services | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/26/2019 | 150,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/26/2018 | 65,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/30/2018 | 5,864.10 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/13/2018 | 3,942.72 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/28/2018 | 3,848.70 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/12/2018 | 3,744.31 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/27/2018 | 4,176.47 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/11/2019 | 3,954.93 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/29/2019 | 4,703.71 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/5/2019 | 50,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/5/2019 | 150,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/26/2019 | 50,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/11/2019 | 55,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/1/2019 | 25,000.00 |
| Highland Capital Of New York | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/26/2019 | 150,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/27/2019 | 100,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 25,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/3/2019 | 15,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 50,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 90,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/29/2019 | 55,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 105,000.00 |
| Highland Latin America Consulting, LTD | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/4/2019 | 75,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/5/2018 | 171,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/18/2019 | 3,000,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/2/2019 | 100,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/14/2019 | 255,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/22/2019 | 1,500,000.00 |
| Highland Select Equity Fund | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/30/2019 | 350,000.00 |
| Hunter Mountain Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 4,930,722.50 |
| Hunter Mountain Investment Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 3,711,456.47 |
| James Dondero | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 3,750,000.00 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 8,986.25 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 65,078.25 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 115,481.36 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 548.19 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 96,786.37 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 38,628.04 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 42,434.77 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 19,062.59 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 50,771.13 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 21,934.60 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 60,190.72 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 7,164.24 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 89,256.54 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 38,804.42 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 82,710.42 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 7,604.98 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 47,005.97 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 748.07 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 85,058.51 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 12,713.97 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 56,762.57 |

**Appx. 01452**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 24,497.96 |
| James Dondero - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 32,977.48 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 1,341.26 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 164.01 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/30/2018 | 61.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 2,378.81 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 285.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/28/2019 | 876.87 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 267.99 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 112.22 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 160.50 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 144.02 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 688.48 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 48.54 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 74.95 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/31/2019 | 153.81 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 217.72 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 3,615.11 |
| Lee Parker - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 5,644.08 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 12/7/2018 | 6,780.65 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 12/12/2018 | 17,215.19 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 1/4/2019 | 95,798.38 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 1/10/2019 | 2,600.00 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 3/7/2019 | 2,453.66 |
| Maples & Calder | Ugland House Po Box 309Gt; S Church St George Town Grand Cayman | 9/16/2019 | 5,218.40 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,600.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/11 | 3,500.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 8,876.22 |

**Appx. 01453**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 8,876.22 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2018/12 | 2,453.66 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/01 | 1,300.00 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/04 | 3,450.68 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/04 | 3,450.68 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| MaplesFS Service Company Limited | PO Box 1093 Boundary Hall Grand Cayman  KY1-1102 | 2019/05 | 1,777.77 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 68.12 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 2,793.61 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 28,862.62 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 1,174.32 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/15/2019 | 740.40 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 10,809.37 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 4,485.01 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 3,584.31 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/14/2019 | 6,121.00 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 2,008.15 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/15/2019 | 139.27 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 675.80 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/13/2019 | 10,961.53 |
| Mark Okada - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 7,312.69 |
| NexPoint Advisors, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/19/2019 | 500,000.00 |
| NexPoint Advisors, LP | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/23/2019 | 1,000,000.00 |
| Okada Insurance Rabbi Trust | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/3/2019 | 14,875.00 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 11/15/2018 | 1,295.64 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/31/2018 | 5,149.90 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 2/15/2019 | 102.32 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/29/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 364.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 8/30/2019 | 205,787.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 59.95 |
| Scott Ellington - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 113,104.52 |
| Strand Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/19/2018 | 12,423.44 |
| Strand Advisors | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 3/28/2019 | 9,351.38 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/31/2018 | 419.21 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 12/14/2018 | 5,024.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 1/31/2019 | 355.30 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/15/2019 | 529.77 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 4/30/2019 | 4,185.33 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/15/2019 | 589.52 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 5/31/2019 | 480.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 6/28/2019 | 1,591.54 |

**Appx. 01454**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit C - SOFA #4**

| Trading Partner | Trading Partner Address | Payment Date | Payment Amount |
|---|---|---|---|
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 7/15/2019 | 125.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 9/30/2019 | 28.00 |
| Thomas Surgent - Expense Reimbursement | 300 Crescent Court, Suite 700 Dallas, TX 75201 | 10/15/2019 | 2,232.89 |
| **Total** | | | **36,608,252.91** |

Refer to SOFA 30 and Exhibit G for other transfers.

**Appx. 01455**

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit D - SOFA 7

| Case Title | Case Number | Nature of Case | Court Name | Court Address | Status of case |
|---|---|---|---|---|---|
| Duff & Phelps, LLC v. Highland Capital Management, L.P. Index No. 653813/2019 | | Claim for breach of contract and unjust enrichment for failure to pay pursuant to a Letter of Engagement and accompanying Terms and Conditions. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Concluded |
| Hamilton Partners, L.P. v. Highland Capital Management, L.P. and Joseph Furlong | Case No. 6547 | Allegedly improper restructuring of American Home Patient | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Concluded |
| In re: Acis Capital Management, L.P. (Case No. 18-30264-SGJ-11), Acis Capital Management GP, LLC (Case No. 18-30265-SGJ-11) as Debtors. Robin Phelan, Chapter 11 Trustee v. Highland Capital Management, L.P., Highland CLO Funding, Ltd. f/k/a Acis Loan Funding, Ltd., CLO Holdco, Ltd., Neutra, Ltd., Acis CLO 2014-3 Ltd., Acis CLO 2014-4 Ltd., Acis CLO 2014-5 Ltd., Acis CLO 2015-6 Ltd., Acis CLO 2014-3 LLC, Acis CLO 2014-4 LLC, Acis CLO 2014-5 LLC, and Acis CLO 2015-6 LLC | Case No. 18-03212-SGJ | Chapter 11 Trustee, on behalf of Debtors, claimed violation of TRO, preliminary injunction, and fraudulent conveyance. | United State Bankruptcy Court for the Northern District of Texas, Dallas Division | George Mahon Federal Building 1205 Texas Ave., Rm 306 Lubbock, TX 79401-4002 | Pending |
| McKool Smith P.C. vs. Highland Capital Management, L.P. JAMS No.: 1310024517 | | Claim for breach of contract pursuant to Crusader Retention Agreement, Terry Retention Agreement, UBS Retention Agreement, and payment plan. | N/A | N/A | Pending |
| NWCC, LLC v. Highland CLO Management, LLC; Highland Capital Management, L.P.; Acis CLO 2014-3 Ltd.; Highland CLO 2014-3R Ltd.; Highland CLO 2014-3R LLC; Highland HCF Advisor, Ltd., as Trustee for Highland CLO Trust; Highland CLO Management Holdings, L.P.; Highland CLO Management GP, LLC; and Highland HCF Advisor, Ltd. | Case No. 654195/2018 | Claim for breach of contract for failure to pay pursuant to Master Repurchase Agreement. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Pending |
| Patrick Daugherty v. Highland Capital Management, L.P., Highland Employee Retention Assets, LLC, Highland ERA Management, LLC, and James Dondero | No. 2017-0488-SG | Claim for collection of judgment against Highland Employee Retention Assets, LLC ("HERA")and allegation of improper transfer of assets from HERA to other Defendants | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Pending |
| Redeemer Committee of the Highland Crusader Fund (acting through its members, (1) Grosvenor Capital Management, L.P., (2) FRM Investment Management Limited, (3) Concord Management, LLC, (4) Baylor University, (5) FIX Asset Management, (6) The United States Army Air Force Exchange Services) vs. Highland Capital Management, L.P. | Case 2019 No. 332 | Motion to enforce Crusader Arbitration Award | Supreme Court of Bermuda | 2nd floor, Government Administration Building 30 Parliament Street Hamilton HM12 Bermuda | Pending |
| Redeemer Committee of the Highland Crusader Fund (acting through its members, (1) Grosvenor Capital Management, L.P., (2) FRM Investment Management Limited, (3) Concord Management, LLC, (4) Baylor University, (5) FIX Asset Management, (6) The United States Army Air Force Exchange Services) vs. Highland Capital Management, L.P. | Cause 153 of 2019 | Motion to enforce Crusader Arbitration Award | Grant Court of the Cayman Islands Financial Services Division | P.O. Box 495 Grand Cayman KY1-1106 Cayman Islands | Pending |
| Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P. | No. 01-16-002-6927 | Injunctive relief and damages sought related to wind down of legacy hedge fund from the 2008 financial crisis. | N/A | N/A | Concluded |
| Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P. | No. 12533-VCG | Injunctive relief and declaratory judgment related to wind down of legacy hedge fund from the 2008 financial crisis. | Court of Chancery of the State of Delaware | 34 The Circle Georgetown, DE 19947 | Pending |
| UBS Securities LLC and UBS AG, London Branch v. Highland Capital Management, L.P., Highland Special Opportunities Holding Company, Highland CDO Opportunity Master Fund, L.P. Highland Financial Partners, L.P., Highland Credit Strategies Fund, Highland Crusader Offshore Partners, L.P., Highland Credit Opportunities CDO, L.P. and Strand Advisors, Inc. | Case No. 650097/2009 | Plaintiff alleges that HCMLP engaged in fraudulent transfers and breached its duty of good faith in fair dealing in managing the obligations of its funds. | Supreme Court of the State of New York, County of New York | 60 Centre St, New York, NY 10007 | Pending |
| Highland Capital Management, L.P. v. Joshua Terry | Case No. DC-16-11396 | Employee Terry was terminated for cause.  Highland filed suit for return of Highland's confidential information and other counterclaims. Terry has filed counterclaims for conversion and defamation. | 162ad District Court of Dallas County, Texas | 00 Commerce Street, 7th Floor New Tower, Dallas, TX 75202 | Pending |

1 of 1

**Appx. 01456**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit E - SOFA #9**

| Vendor | | Amount | Expense Type | Date |
|---|---|---|---|---|
| B&H Photo | $ | 7,000.00 | Business Gifts | Feb 22, 2019 |
| Competitive Cyclist | | 5,000.00 | Business Gifts | Feb 22, 2019 |
| REI | | 3,009.95 | Business Gifts | Feb 22, 2019 |
| The Family Place | | 4,500.00 | Business Gifts | Jan 11, 2019 |
| Neiman Marcus | | 10,000.00 | Business Gifts | Jan 29, 2019 |
| Nordstrom | | 9,000.00 | Business Gifts | Jan 29, 2019 |
| Neiman Marcus | | 2,800.00 | Business Gifts | Aug 10, 2018 |
| Barney's New York | | 3,015.00 | Business Gifts | Dec 27, 2017 |
| Etro Store | | 1,710.35 | Business Gifts | Dec 27, 2017 |
| Sutterfly | | 1,627.64 | Business Gifts | Jun 26, 2019 |
| B&H Video | | 5,015.00 | Business Gifts | Oct 25, 2017 |
| Competitive Cyclist | | 5,000.00 | Business Gifts | Oct 25, 2017 |
| Nordstrom | | 5,000.00 | Business Gifts | Oct 25, 2017 |
| REI | | 5,000.00 | Business Gifts | Oct 25, 2017 |
| JD | | 5,000.00 | Business Gifts | Jan 29, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | | 7,508.95 | Business Gifts | Dec 12, 2018 |
| Dallas Childrens Advocacy | | 17,500.00 | Charitable Contributions | Jan 11, 2019 |
| Political Contribution | | 20,000.00 | Charitable Contributions | May 13, 2019 |
| Political Contribution | | 30,000.00 | Charitable Contributions | May 29, 2019 |
| NORTHPARK CENTER | | 1,230.00 | Gift/Awards | Apr 26, 2018 |
| Kroger | | 1,483.30 | Gift/Awards | Apr 26, 2018 |
| Total Wine | | 1,125.76 | Gift/Awards | Feb 13, 2018 |
| Costco | | 2,168.86 | Gift/Awards | Feb 13, 2018 |
| Apple | | 4,000.00 | Gift/Awards | Feb 26, 2018 |
| B&H Photo | | 3,000.00 | Gift/Awards | Feb 26, 2018 |
| Competetive Cyclist | | 5,000.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 1,350.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 4,650.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 1,250.00 | Gift/Awards | Feb 26, 2018 |
| Nordstrom | | 3,750.00 | Gift/Awards | Mar 13, 2019 |
| Nordstrom | | 7,010.00 | Gift/Awards | Mar 13, 2019 |
| REI | | 4,009.95 | Gift/Awards | Mar 13, 2019 |
| Neiman Marcus | | 2,075.00 | Gift/Awards | Mar 27, 2018 |
| AMAZON.COM*MB5OG1ZC1AMZN.COM/BI 1T5SDTP0V6I MERCHA | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| AMERICAN AIRLINES XXXXX-XXX-XXX XXXX0103 AA.COM | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| BABY.COM EGIFT CRD XXX-XXX-1977 9XXX9375PRC GIFT C | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| WALMART.COM XXX-XXX-6546 AR WMZVYLNO0YU RETAIL | | 1,000.00 | Gift/Awards | Feb 13, 2019 |
| AMAZON.COM*M01N33JX2AMZN.COM/BI 43WY9S9CUK8 MERCHA | | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AMAZON.COM*MX1474TL1AMZN.COM/BI 594WNOFOQ54 MERCHA | | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | | 68,280.95 | Gift/Awards | Dec 12, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX3699QOK GIFT C | | 1,000.00 | Gift/Awards | Dec 12, 2018 |
| AAA INNOVATIONS AAA NORWOOD NJ XXXXXXX8353 NON-DUR | | 4,558.75 | Gift/Awards | Jan 11, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | | 3,508.95 | Gift/Awards | Jan 11, 2019 |
| HOTELS.COM GIFT CARDXXX-XXX-197 9XXX8780BOK GIFT C | | 1,000.00 | Gift/Awards | Jan 11, 2019 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX6040GOK GIFT C | | 1,000.00 | Gift/Awards | Jan 11, 2019 |
| AMEX HILTON GIFT CARXXX-XXX-058 XXXX4162 BOL X0285 | | 5,008.95 | Gift/Awards | Jan 11, 2019 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX2954P90 GIFT C | | 1,000.00 | Gift/Awards | Nov 10, 2017 |
| CS_*BABIESRUSGIFTCARXXX-XXX-197 4XXX6083G9J GIFT C | | 1,000.00 | Gift/Awards | Dec 13, 2017 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXXX3 | | 5,014.19 | Gift/Awards | Dec 13, 2017 |
| RITZ CARLTON GIFT CAMIDVALE UT XXXXXXXXX XXX-XXX-8 | | 1,001.00 | Gift/Awards | Dec 13, 2017 |
| AMAZON.COM AMZN.COM/BILL WA 4HQ4J0AKNMQ MERCHANDIS | | 1,000.00 | Gift/Awards | Jan 10, 2018 |
| AMEX GIFT CARDS XXX-XXX-0582 NY OPWBXXX0386BOL XX2 | | 7,008.95 | Gift/Awards | Mar 13, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXXX3 | | 1,014.93 | Gift/Awards | Mar 13, 2018 |

**Appx. 01457**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit E - SOFA #9**

| Vendor | Amount | Expense Type | Date |
|---|---|---|---|
| AMEX GIFT CARDS XXX-XXX-0582 NY OPWBXXX3116BOL XX2 | 3,520.80 | Gift/Awards | Apr 11, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXX3 | 1,014.93 | Gift/Awards | Apr 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,010.95 | Gift/Awards | May 10, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 16B3JYYTOHX MERCHANDIS | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXX3 | 1,014.93 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXX3 | 5,014.93 | Gift/Awards | Jun 12, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXX3 | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX5955KHG GIFT C | 1,000.00 | Gift/Awards | Jun 12, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 4C5DKHDW6TK MERCHANDIS | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 5AK74J5T9LC MERCHANDIS | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX5284CIM GIFT C | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,001.00 | Gift/Awards | Jul 11, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX6255NHS GIFT C | 1,000.00 | Gift/Awards | Jul 11, 2018 |
| AMAZON.COM AMZN.COM/BILL WA 3NRIPESL5H2 MERCHANDIS | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,522.85 | Gift/Awards | Aug 10, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXXX8611J4 GIFT C | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| HOTELS.COM GIFT CARDXXX-XXX-197 8XXX5959YIW GIFT C | 1,000.00 | Gift/Awards | Aug 10, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,001.00 | Gift/Awards | Aug 10, 2018 |
| AMAZON.COM*MT7OW87B1AMZN.COM/BI 1XJ571A2WYA MERCHA | 1,000.00 | Gift/Awards | Nov 13, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 9XXX5657XMX GIFT C | 1,000.00 | Gift/Awards | Nov 13, 2018 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXX3604JRQ GIFT CA | 1,000.00 | Gift/Awards | Mar 13, 2019 |
| HILTON GC XXX XXX-XXXXX-XXX-XXX XX0847 GIFTCARDS F | 1,008.95 | Gift/Awards | Mar 13, 2019 |
| HOTELS.COM GIFT CARDXXX-XXX-197 4XXX1517JRH GIFT C | 1,000.00 | Gift/Awards | Mar 13, 2019 |
| AMAZON.COM*MW2NP75Y2AMZN.COM/BI 1ZRLAH1KV0Q MERCHA | 1,000.00 | Gift/Awards | May 13, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,515.95 | Gift/Awards | May 13, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,520.85 | Gift/Awards | Jun 12, 2019 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 3,515.95 | Gift/Awards | Jul 11, 2019 |
| ANSE CHASTANET - RESSOUFRIERE LC XXXXXXXXXX XXX-XX | 5,000.00 | Gift/Awards | Sep 11, 2018 |
| Four Seasons 8XX7828WILMINGTON XXXXXXXXXXX XXXXX3 | 5,014.93 | Gift/Awards | Sep 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,010.95 | Gift/Awards | Sep 11, 2018 |
| RITZ CARLTON GIFT CAMIDVALE UT XXXXXXXXX XXX-XXX-8 | 1,010.95 | Gift/Awards | Sep 11, 2018 |
| WLLMS-SONMA CSTR GFTXXX-XXX-197 4XXX6218KG GIFT C | 1,000.00 | Gift/Awards | Sep 11, 2018 |
| AMAZON.COM*MT5FG6LG0AMZN.COM/BI 2CWA16B0JP6 MERCHA | 2,000.00 | Gift/Awards | Oct 11, 2018 |
| AMEXGIFTCARD.COM-BOLATLANTA GA XXXXXXXX XXX-XXX-86 | 7,529.80 | Gift/Awards | Oct 11, 2018 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 5,000.00 | Gift/Awards | Oct 4, 2019 |
| Hotels.com | 1,000.00 | Gift/Awards | Jul 11, 2019 |
| Buy Buy Baby | 1,000.00 | Gift/Awards | Aug 13, 2019 |
| William Sonoma | 1,000.00 | Gift/Awards | Aug 13, 2019 |
| Amazon.com | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| AMAZON.COM*MA02T1UW2AMZN.COM/BI 59I475TIIR3 MERCHA | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *BUYBUYBABY EGTFCXXX-XXX-197 4XXX9435NZ1 GIFT C | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXX4055UYZ GIFT CA | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| MARRIOTT GIFT CARDS MIDVALE UT XXXXXXXXX XXX-XXX-4 | 1,000.00 | Gift/Awards | Sep 10, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXX0073VU5 GIFT CA | 2,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXX9190AU5 GIFT CA | 1,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 9XXXX7723U5 GIFT CA | 2,000.00 | Gift/Awards | May 13, 2019 |
| CS *HOTELS.COM GC XXX-XXX-1977 4XXXX2756TI GIFT CA | 1,000.00 | Gift/Awards | Apr 11, 2019 |
| Beard Supply | 1,623.75 | Gift/Awards | Jan 10, 2018 |
| Patagonia | 2,685.71 | Gift/Awards | Jan 26, 2018 |
| Political Contribution | 25,000.00 | Gift/Charity | Jun 30, 2018 |
| Political Contribution | 25,000.00 | Gift/Charity | Jun 30, 2019 |
| **Total** | $  445,725.61 | | |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 25

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| Aberdeen Loan Funding, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | N/A | CLO Fund | 12/14/2006 | |
| Brentwood CLO, Ltd. | IMA | MaplesFS - PO Box 1093, Grand Cayman, KY1-1102, Cayman Islands | 98-0524481 | CLO Fund | 5/21/2006 | |
| Bristol Bay Funding Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0418113 | CLO Fund | 11/18/2003 | |
| Eastland CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0550088 | CLO Fund | 3/31/2006 | |
| Gleneagles CLO, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 2/25/2005 | |
| Grayson CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0522566 | CLO Fund | 2/7/2006 | |
| Greenbriar CLO, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/24/2007 | |
| Highland CDO Holding Company | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0527935 | HFP sub | 1/24/2006 | |
| Highland CDO Opportunity Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899941 | Hedge fund | 11/3/2005 | Terminated |
| Highland CDO Opportunity Fund, Ltd. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | N/A | Hedge fund | 5/8/2002 | Terminated |
| Highland CDO Opportunity Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0520689 | Hedge fund | 10/31/2005 | Terminated |
| Highland Credit Opportunities CDO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0512429 | Hedge fund | 11/1/2005 | |
| Highland Credit Opportunities Japanese Feeder Sub-Trust | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | N/A | Hedge fund | 8/22/2007 | |
| Highland Credit Strategies Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147211 | Hedge fund | 8/2/2005 | |
| Highland Credit Strategies Fund, Ltd. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0466202 | Hedge fund | 8/8/2005 | |
| Highland Credit Strategies Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0466203 | Hedge fund | 8/19/2005 | |
| Highland Dynamic Income Fund, L.P. (fka Highland Capital Loan Fund, L.P.) | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2123634 | Hedge fund | 2/25/2013 | |
| Highland Dynamic Income Fund, Ltd. (fka Highland Loan Fund, Ltd.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | Hedge fund | 2/26/2013 | |
| Highland Dynamic Income Master Fund, L.P. (fka Highland Loan Master Fund, L.P.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1169838 | Hedge fund | 2/26/2013 | |
| Highland Financial Corp. | IMA - terminated | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-4392555 | HFP sub | 2/28/2006 | |
| Highland Flexible Income UCITS Fund | IMA | 23 St. Stephen's Green, Dblin 2, Ireland | N/A | Separate account | 6/7/2018 | |
| Highland Legacy Limited | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 7/6/1999 | |
| Highland Loan Funding V, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 2/5/2001 | |
| Highland Multi Strategy Credit Fund, L.P. (fka Highland Credit Opportunities Fund, L.P., fka Highland Credit Opportunities CDO, L.P.) | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3874756 | Hedge fund | 12/1/2005 | |
| Highland Multi Strategy Credit Fund, Ltd. (fka Highland Credit Opportunities Fund, Ltd.) | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0587370 | Hedge fund | 12/29/2005 | |
| Highland Park CDO 1, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0515982 | CLO Fund | 7/12/2006 | |
| Highland Prometheus Feeder Fund I, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1334547 | Hedge fund | 11/7/2016 | |
| Highland Prometheus Feeder Fund II, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1353013 | Hedge fund | 2/17/2017 | |
| Highland Prometheus Master Fund, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1334763 | Hedge fund | 11/7/2016 | |
| Highland Restoration Capital Partners Master, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1458205 | Private equity fund | 11/14/2007 | |
| Highland Restoration Capital Partners Offshore, L.P. | IMA | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-0558962 | Private equity fund | 11/13/2007 | |
| Highland Restoration Capital Partners, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1456033 | Private equity fund | 11/14/2007 | |
| Highland Select Equity Fund, L.P. | IMA | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 75-2970177 | Hedge fund | 12/5/2001 | |
| Highland Select Equity Master Fund, L.P. | IMA | MQ Services Ltd, Victoria House, 31 Victoria Street, Hamilton HM10, Bermuda | 98-0520466 | Hedge fund | 4/12/2007 | |
| Highland Special Opportunities Holding Company | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0532735 | HFP sub | 1/24/2006 | Terminated |
| Jasper CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595492 | CLO Fund | 3/9/2005 | |
| Liberty CLO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595490 | CLO Fund | 6/30/2005 | |
| Longhorn Credit Funding, LLC | IMA | United Corporate Services, Inc., 874 Walker Rd, Ste C, Dover, DE 19904 | N/A | Separate account | 10/15/2007 | |
| ML CLO XIX Sterling (Cayman), Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 4/27/1998 | |
| Pam Capital Funding, L.P. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 20-3010953 | CLO Fund | 5/8/1998 | |
| PamCo Cayman Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 1/18/1997 | |
| PensionDanmark Pensionsforsikringsaktieselskab | IMA | Langelinie Allé 43, DK-2100 Copenhagen Ø | N/A | Separate account | 6/24/1992 | |
| Red River CLO, Ltd. | IMA | Elian Fiduciary Services (Cayman) Limted - 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0527219 | CLO Fund | 1/24/2006 | |
| Rockwall CDO II Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 4/12/2006 | |
| Rockwall CDO, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0461407 | CLO Fund | 6/7/2005 | |
| Southfork CLO, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/21/2004 | |
| Stratford CLO, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | N/A | CLO Fund | 10/17/2006 | |
| Valhalla CLO, Ltd. | IMA | Intertrust Corporate Services (Cayman) Limited , 190 Elgin Ave, George Town, Grand Cayman KY1-9005, Cayman Islands | 98-0595491 | CLO Fund | 6/9/2004 | |
| Westchester CLO, Ltd. | IMA | MaplesFS Limited, PO Box 1093, George Town, Grand Cayman KY1-1102, Cayman Islands | 98-0546784 | CLO Fund | 11/10/2006 | |
| Highland Latin America GP, Ltd. | Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominiee for and on behalf of Highland Latin America LP, Ltd. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362190 | GP of the relying advisor to the Argentina fund | 3/6/2017 | |

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 25

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| Highland Capital Management Latin America, L.P. | Highland Capital Management, L.P., as trustee of Highland Latin America Trust and nominee for and on behalf of Highland Latin America LP, Ltd. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362202 | Relying advisor to the Argentina fund | 4/13/2017 | |
| Neutra, Ltd. | Highland Capital Management, L.P., as trustee of Acis CMDA Trust and nominee for and on behalf of Highland CLO Assets Holdings Limited | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090422 | | 12/12/2012 | |
| Asbury Holdings, LLC (fka HCSLR Camelback Investors (Delaware), LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Holds HCMLP's Haygood interest | 2/14/2017 | |
| De Kooning, Inc. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090348 | Formed to hold Select's interest in Barclays' assignment | 12/12/2012 | |
| HCREF-I Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-1998057 | Holds HCMLP interest in HCREF | 12/13/2012 | |
| HCREF-XI Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2030348 | Holds HCMLP's interest in HE Mezz KR, LLC | 12/13/2012 | |
| HCREF-XII Holding Corp. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-2032401 | Holds HCMLP's interest in 2006 Milam East Partners LP | 12/13/2012 | |
| HFP GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 16-1746972 | HFP GP | 1/20/2006 | |
| Highland Brasil, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-4691319 | Managing member of BB Votorantim Highland In | 1/28/2014 | |
| Highland Capital Management (Singapore) Pte Ltd | Highland Capital Management, L.P. | Tricor, 80 Robinson Road #02-00, Singapore 068898 | 98-0580590 | HCMLP's wholly owned sub in Singapore | 4/2/2008 | |
| Highland Capital Management Korea Limited | Highland Capital Management, L.P. | (Seoul Finance Center, Taepyeongno-1-ga) 21F, 136, Sejong-daero, Jung-gu, Seoul, Korea | 98-1120007 | Relying advisor to the Korea PEF | 8/2/2012 | |
| Highland Capital Multi-Strategy Fund, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5237025 | Private fund | 7/6/2006 | |
| Highland Capital Special Allocation, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1175318 | Entity received the incentive allocation from HFP. | 12/21/2006 | |
| Highland CDO Opportunity Fund GP, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899907 | Hedge fund | 10/20/2005 | |
| Highland CDO Opportunity GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899870 | Hedge fund GP | 10/20/2005 | |
| Highland CLO Assets Holdings Limited | Highland Capital Management, L.P. | Maples Corporate Services (BVI) Limited Kingston Chambers, PO Box 173, Road Town Tortola, British Virgin Islands | 98-1417806 | | 12/19/2017 | |
| Highland CLO Management Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1432973 | | 10/27/2017 | |
| Highland Dynamic Income Fund GP, LLC (fka Highland Capital Loan GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 80-0898281 | Hedge fund GP | 2/25/2013 | |
| Highland Employee Retention Assets LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1596366 | HERA | 6/23/2009 | |
| Highland ERA Management, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | HERA manager | 2/1/2013 | |
| Highland Financial Partners, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-0446391 | HFP | 1/20/2006 | Terminated |
| Highland Fund Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | | 5/24/2016 | |
| Highland General Partner, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147210 | Hedge fund GP | 7/26/2005 | |
| Highland GP Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 86-1147208 | Hedge fund GP | 7/26/2005 | |
| Highland HCF Advisor Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1401127 | Advisor to Highland CLO Funding, Ltd. | 10/27/2017 | |
| Highland Latin America LP, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1362186 | Argentina fund structure | 3/6/2017 | |
| Highland Multi Strategy Credit Fund GP, L.P. (fka Highland Credit Opportunities CDO GP, L.P.) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/29/2005 | |
| Highland Multi Strategy Credit Fund GP, LLC (fka Highland Credit Opportunities CDO GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/29/2005 | |
| Highland Multi-Strategy Fund GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5236824 | Private fund GP | 7/6/2006 | |
| Highland Multi-Strategy Fund GP, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-5236931 | Private fund GP | 7/6/2006 | |
| Highland Receivables Finance I, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-8123634 | Entity created in 2006 that purchased all of HCMLP's receivables 100% owned by HCMLP. | 12/28/2006 | |
| Highland Restoration Capital Partners GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1455912 | Private equity fund GP | 11/6/2007 | |
| Highland Select Equity Fund GP, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899917 | Hedge fund GP | 10/20/2005 | |
| Highland Select Equity GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-3899886 | Hedge fund GP | 10/20/2005 | |
| Highland SunBridge GP, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Hedge fund GP | 12/15/2015 | |
| Hirst, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090361 | Formed to hold CDO Ltd's interest in Barclays assignment | 12/12/2012 | |
| Hockney, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090388 | Formed to hold Crusader's interest in Barclays assignment | 12/12/2012 | |
| Maple Avenue Holdings, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 81-3600687 | Holds Uchi loan | 8/17/2016 | |
| NexPoint Hospitality Trust | Highland Capital Management, L.P. | 333 Bay Street, Suite 3400, Toronto, Ontario M5H 2S7, Canada | 83-6637675 | Hospitality REIT | 12/12/2018 | |
| NexPoint Insurance Distributors, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2921534 | Insurance broker | 7/25/2019 | |
| NexPoint Insurance Solutions GP, LLC (fka Highland Capital Insurance Solutions GP, LLC) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2571487 | Insurance advisor GP | 4/4/2019 | |
| NexPoint Insurance Solutions, L.P. (fka Highland Capital Insurance Solutions, L.P.) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-2584142 | Insurance advisor | 4/4/2019 | |
| NexPoint Multifamily Capital Trust, Inc. | Highland Capital Management, L.P. | The Corporation Trust, 2405 York Rd, Ste 201, Lutherville Timonium, MD 21093 | 46-4106316 | NMCT REIT | 11/12/2013 | |
| NexPoint Real Estate Strategies Fund | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 81-1061590 | Retail fund | 3/10/2006 | |
| NexPoint Residential Trust Inc. | Highland Capital Management, L.P. | The Corporation Trust, 2405 York Rd, Ste 201, Lutherville Timonium, MD 21093 | 47-1881359 | NXRT REIT | 9/19/2014 | |
| NexPoint Strategic Opportunities Fund (fka NexPoint Credit Strategies Fund) | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 80-0139099 | Retail fund | 3/10/2006 | |
| NHT Holdco, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-3011801 | Hospitality REIT structure | 1/2/2019 | |
| Oldenburg, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090453 | Formed to hold CDO LP's interest in Barclays assignment | 12/12/2012 | |
| Penant Management LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-1614710 | Holds HCREF's interest in Barclays assignment | 12/12/2012 | |
| PetroCap Incentive Partners III, LP | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | ? | Petrocap fund | 11/16/2017 | |
| PetroCap Partners II, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 46-4691213 | Petrocap fund | 10/7/2013 | |
| PetroCap Partners III, L.P. | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | ? | Petrocap fund | 11/16/2017 | |
| Pollack, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090519 | | 12/12/2012 | |
| SE Multifamily Holdings LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 32-0576655 | RE investment holding | 8/23/2018 | |

Appx. 01460

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit F - SOFA 25

| Name | Relationship | Address | EIN | Description of Business | Date of Creation | Date of Termination (if applicable) |
|---|---|---|---|---|---|---|
| The Dondero Insurance Rabbi Trust | Highland Capital Management, L.P. | 300 Crescent Ct, Ste 700, Dallas, TX 75201 | 75-2716725 | Holds Dondero's life insurance policies and the proceeds to be used to fund HCM's obligation to purchase Dondero Interests from the Trust Beneficiaries per Buy-Sell Agreement | 5/27/2004 | |
| The Okada Insurance Rabbi Trust | Highland Capital Management, L.P. | 300 Crescent Ct, Ste 700, Dallas, TX 75201 | 75-2716725 | Holds Okada's life insurance policies and the proceeds to be used to fund HCM's obligation to purchase Okada Interests from the Trust Beneficiaries per Buy-Sell Agreement | 5/27/2004 | |
| US Gaming SPV, LLC | Highland Capital Management, L.P. | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 84-1769285 | SPV of eSports investment in Korea | 5/14/2019 | |
| Warhol, Ltd. | Highland Capital Management, L.P. | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | 98-1090362 | Formed to hold Ops' interest in Barclays assignment | 12/12/2012 | |
| HE Capital 232 Phase I, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1616599 | Underlying property is a 71.73 acre site consisting of 232 finished single family lots in the NW Phoenix development of Asante. | 12/20/2007 | |
| HE Capital Asante, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-0525645 | Underlying project is a 843 acre multi-phase residential development in NW Phoenix, AZ | 7/5/2007 | |
| HE Capital Fox Trails, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Underlying project is a 889.58 acre vacant parcel in NW Phoenix with PAD approval for 2,320 single family units. | 3/10/2008 | |
| HE Capital KR, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | N/A | Underlying project is a 1,829.67 acre vacant parcel in SW Phoenix proposed for 4,250 single family lots of which 1,431 have final plat approval (Phase I) and 50.94 acres of commercial land. | 7/5/2007 | |
| HE Capital, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 20-8711786 | Parent entity for joint venture between Ellman and Highland. | 3/22/2007 | |
| HE CLO Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 37-1666849 | Blockers that used to hold Ellman interest | 2/3/2011 | |
| HE Mezz Fox Trails, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-2151278 | Underlying project is a 889.58 acre vacant parcel in NW Phoenix with PAD approval for 2,320 single family units. | 3/10/2008 | |
| HE Mezz KR, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-0611280 | Underlying project is a 1,829.67 acre vacant parcel in SW Phoenix proposed for 4,250 single family lots of which 1,431 have final plat approval (Phase I) and 50.94 acres of commercial land. | 7/27/2007 | |
| HE Peoria Place Property, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1600012 | Underlying project is a 127.39 acre vacant parcel in NW Phoenix being improved with interior roadways for ultimate development or sale under the PAD approving 11 acres of office, 23 acres of retail, 50 acres of single family an d43 acres of multi family. | 12/10/2007 | |
| HE Peoria Place, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-1599959 | Underlying project is a 127.39 acre vacant parcel in NW Phoenix being improved with interior roadways for ultimate development or sale under the PAD approving 11 acres of office, 23 acres of retail, 50 acres of single family an d43 acres of multi family. | 11/14/2007 | |
| Hibiscus HoldCo, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1824370 | Blocker to hold Turtle Bay assets | 2/2/2010 | |
| Highland CLO Gaming Holdings, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-3995018 | CLO blocker that used to hold Affinity Gaming int | 11/18/2010 | |
| Highland TCI Holding Company, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 45-2620554 | CLO blocker to hold TCI/Park West assets | 6/21/2011 | |
| Highland's Roads Land Holding Company, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-4572095 | CLO blocker to hold LLV reorg equity | 3/30/2009 | |
| Kulima Montalban Holdings, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 27-1942638 | CLO blocker to hold Turtle Bay equity | 2/19/2010 | |
| Kulima Resort Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 26-4572180 | CLO blocker to hold Turtle Bay equity | 3/18/2009 | |
| Park West Holdco, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 37-1641409 | Holds TCI assets | 4/4/2011 | |
| Park West Portfolio Holdco, LLC | HCMLP-Manager | CT Corporation, 1999 Bryan St, Ste 900, Dallas, TX 75201 | 90-0737248 | Holds TCI assets | 4/14/2011 | |
| PDK Toys Holdco, LLC | HCMLP-Manager | The Corporation Trust Company, 1209 Orange St, Wilmington, DE 19801 | 83-3591646 | PDK blocker to hold Toys R'Us loan | 2/14/2019 | |
| Acis CMOA Trust | HCMLP - Trustee | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | | 3/30/2018 | |
| Highland Latin America Trust | HCMLP - Trustee | Maples Corporate Services Limited PO Box 309, Ugland House Grand Cayman KY1-1104, Cayman Islands | N/A | | 3/30/2018 | |

Appx. 01461

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Dondero, James | 161.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 01/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 01/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 02/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 02/28/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 03/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 03/29/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 04/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 04/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 05/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 05/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 06/14/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 06/28/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 07/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 07/31/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 08/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 08/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 09/13/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 09/30/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 10/15/2019 | Regular Base Pay |
| Dondero, James | 161.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 10/31/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 11/15/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 11/30/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 12/14/2018 | Regular Base Pay |
| Dondero, James | 161.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Dondero, James | 23,437.51 | 12/31/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 01/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 01/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 02/15/2019 | Regular Base Pay |
| Ellington, Scott | 300,000.00 | 02/28/2019 | Bonus |
| Ellington, Scott | 71.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 02/28/2019 | Regular Base Pay |
| Ellington, Scott | 350,000.00 | 03/15/2019 | Bonus |
| Ellington, Scott | 71.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 03/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 03/29/2019 | Regular Base Pay |

**Appx. 01462**

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit G - SOFA 30

| Name | Amounts | Date | Reason |
|------|---------|------|--------|
| Ellington, Scott | 71.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 04/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 04/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 05/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 05/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 06/14/2019 | Regular Base Pay |
| Ellington, Scott | 350,629.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Ellington, Scott | 71.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 06/28/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 07/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 07/31/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 08/15/2019 | Regular Base Pay |
| Ellington, Scott | 650,000.00 | 08/30/2019 | Bonus |
| Ellington, Scott | 71.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 08/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 09/13/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 09/30/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 10/15/2019 | Regular Base Pay |
| Ellington, Scott | 71.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 10/31/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 11/15/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 11/30/2018 | Regular Base Pay |
| Ellington, Scott | 71.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 12/14/2018 | Regular Base Pay |
| Ellington, Scott | 604.78 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Ellington, Scott | 71.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Ellington, Scott | 18,750.00 | 12/31/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 01/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 01/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 02/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 02/28/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 03/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 03/29/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 04/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 04/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 05/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 05/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 06/14/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |

**Appx. 01463**

Highland Capital Management LP
Case # 19-34054-SGJ
Exhibit G - SOFA 30

| Name | Amounts | Date | Reason |
|---|---|---|---|
| Okada, Mark | 32,552.09 | 06/28/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 07/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 07/31/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 08/15/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 08/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 09/13/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 09/30/2019 | Regular Base Pay |
| Okada, Mark | 204.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 10/31/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 11/15/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 11/30/2018 | Regular Base Pay |
| Okada, Mark | 204.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 12/14/2018 | Regular Base Pay |
| Okada, Mark | 272.64 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Okada, Mark | 204.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Okada, Mark | 32,552.09 | 12/31/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 01/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 01/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 02/15/2019 | Regular Base Pay |
| Parker, Lee | 231,250.00 | 02/28/2019 | Bonus |
| Parker, Lee | 47.50 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 02/28/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 03/15/2019 | Regular Base Pay |
| Parker, Lee | 150,000.00 | 03/29/2019 | Bonus |
| Parker, Lee | 47.50 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 03/29/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 04/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 04/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 05/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 05/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 06/14/2019 | Regular Base Pay |
| Parker, Lee | 362,935.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Parker, Lee | 47.50 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 06/28/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 07/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 07/31/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 08/15/2019 | Regular Base Pay |
| Parker, Lee | 381,250.00 | 08/30/2019 | Bonus |
| Parker, Lee | 47.50 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 08/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 09/13/2019 | Regular Base Pay |

**Appx. 01464**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Parker, Lee | 47.50 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 09/30/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 10/15/2019 | Regular Base Pay |
| Parker, Lee | 47.50 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 10/31/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 11/15/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 11/30/2018 | Regular Base Pay |
| Parker, Lee | 47.50 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 12/14/2018 | Regular Base Pay |
| Parker, Lee | 483.56 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Parker, Lee | 47.50 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Parker, Lee | 14,583.33 | 12/31/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 01/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 01/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 02/15/2019 | Regular Base Pay |
| Surgent, Thomas | 300,000.00 | 02/28/2019 | Bonus |
| Surgent, Thomas | 56.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 02/28/2019 | Regular Base Pay |
| Surgent, Thomas | 325,000.00 | 03/15/2019 | Bonus |
| Surgent, Thomas | 56.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 03/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 03/29/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 04/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 04/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 05/15/2019 | Regular Base Pay |
| Surgent, Thomas | 100,000.00 | 05/31/2019 | Bonus and/or Deferred Compensation |
| Surgent, Thomas | 56.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 05/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 06/14/2019 | Regular Base Pay |
| Surgent, Thomas | 482,115.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Surgent, Thomas | 56.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 06/28/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 07/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 07/31/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 08/15/2019 | Regular Base Pay |
| Surgent, Thomas | 625,000.00 | 08/30/2019 | Bonus |
| Surgent, Thomas | 56.25 | 08/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 08/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 09/13/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 09/30/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 16,666.67 | 10/15/2019 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 10/31/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 11/15/2018 | Regular Base Pay |

**Appx. 01465**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit G - SOFA 30**

| Name | Amounts | Date | Reason |
|------|--------:|------|--------|
| Surgent, Thomas | 56.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 11/30/2018 | Regular Base Pay |
| Surgent, Thomas | 56.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 12/14/2018 | Regular Base Pay |
| Surgent, Thomas | 2,344.18 | 12/31/2018 | Gross up value from Dividend Reinvestment Plan |
| Surgent, Thomas | 56.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Surgent, Thomas | 15,625.00 | 12/31/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 01/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 01/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 01/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 01/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 02/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 02/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 206,250.00 | 02/28/2019 | Bonus |
| Waterhouse, Frank | 71.25 | 02/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 02/28/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 03/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 03/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 03/29/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 03/29/2019 | Regular Base Pay |
| Waterhouse, Frank | 212,500.00 | 04/15/2019 | Bonus |
| Waterhouse, Frank | 71.25 | 04/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 04/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 04/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 04/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 05/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 05/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 100,000.00 | 05/31/2019 | Bonus and/or Deferred Compensation |
| Waterhouse, Frank | 71.25 | 05/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 05/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 06/14/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 06/14/2019 | Regular Base Pay |
| Waterhouse, Frank | 306,801.00 | 06/28/2019 | Bonus and/or Deferred Compensation |
| Waterhouse, Frank | 71.25 | 06/28/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 06/28/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 07/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 07/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 07/31/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 07/31/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 08/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 08/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 418,750.00 | 08/30/2019 | Bonus |
| Waterhouse, Frank | 14,583.33 | 08/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 09/13/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 09/13/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 09/30/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 09/30/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 10/15/2019 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 10/15/2019 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 10/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 10/31/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 11/15/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 11/15/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 11/30/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 11/30/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 12/14/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 12/14/2018 | Regular Base Pay |
| Waterhouse, Frank | 71.25 | 12/31/2018 | Group Term Life Insurance (value of premium for coverage in excess of $50 K) |
| Waterhouse, Frank | 14,583.33 | 12/31/2018 | Regular Base Pay |

**Appx. 01466**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODS, AND**
**DISCLAIMER REGARDING DEBTOR'S SCHEDULES OF ASSETS AND**
**LIABILITIES AND STATEMENT OF FINANCIAL AFFAIRS**

      Highland Capital Management, L.P. (the "Debtor") submits its Schedules of Assets and Liabilities (the "Schedules") and Statement of Financial Affairs (the "SoFA") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court"). The Debtor, with the assistance of its advisors and management, prepared the Schedules and SoFA in accordance with section 521 title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

      These Global Notes and Statement of Limitations, Methods, and Disclaimer Regarding the Debtor's Schedules and SoFA (collectively, the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of the Schedules and SoFA. These Global Notes should be referred to, and reviewed in connection with any review of the Schedules and SoFA.[2]

      The Schedules and SoFA have been prepared by the Debtor with the assistance and under the direction of the Debtor's proposed Chief Restructuring Officer and additional personnel at Development Specialists, Inc. (collectively, the "CRO") and are unaudited and subject to further review and potential adjustment and amendment. In preparing the Schedules and SoFA, the CRO relied on financial data derived from the Debtor's books and records that was available at the time of preparation. The CRO has made reasonable efforts to ensure the accuracy and completeness of such financial information, however, subsequent information or discovery of other relevant facts may result in material changes to the Schedules and SoFA and inadvertent errors, omissions, or inaccuracies may exist. The Debtor reserves all rights to amend or supplement its Schedules and SoFA.

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] These Global Notes are in addition to any specific notes contained in the Debtor's Schedules or SoFA. The fact that the Debtor has prepared a "general note" with respect to any of the Schedules and SoFA and not to others should not be interpreted as a decision by the Debtor to exclude the applicability of such general note to any of the Debtor's remaining Schedules and SoFA, as appropriate.

**Reservation of Rights.**  The Debtor reserves all rights to amend the SoFA and Schedules in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."  Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other applicable non-bankruptcy laws.

**Description of the Case and "As Is" Information Date.**  On October 16, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") under Chapter 11 of the Bankruptcy Code.  The Debtor is managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 4, 2019, the Delaware Bankruptcy Court entered an Order transferring this case to the Bankruptcy Court [Docket No. 1].

Asset information in the Schedules reflects the Debtor's best estimate of asset values as of the Petition Date, unless otherwise noted.  No independent valuation has been obtained.

**Basis of Presentation.**  The Schedules and SoFA do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), nor are they intended to fully reconcile to any financial statements otherwise prepared and/or distributed by the Debtor.

Although these Schedules and SoFA may, at times, incorporate information prepared in accordance with GAAP, the Schedules and SoFA neither purport to represent nor reconcile to financial statements prepared and/or distributed by the Debtor in accordance with GAAP or otherwise.  Moreover, given, among other things, the valuation and nature of certain liabilities, to the extent that the Debtor shows more assets than liabilities, this is not a conclusion that the Debtor was solvent at the Petition Date.  Likewise, to the extent that the Debtor shows more liabilities than assets, this is not a conclusion that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Estimates.**  To timely close the books and records of the Debtor, the CRO must make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses.  The Debtor reserves all rights to amend the reported amounts of assets, liabilities, revenue, and expenses to reflect changes in those estimates and assumptions.

**Confidentiality**.  There may be instances within the Schedules and SoFA where names, addresses, or amounts have been left blank.  Due to the nature of an agreement between the Debtor and the third party, concerns of confidentiality, or concerns for the privacy of an individual, the Debtor may have deemed it appropriate and necessary to avoid listing such names, addresses, and amounts.

**Intercompany Claims.**  Any receivables and payables between the Debtor and affiliated or related entities in this case (each an "Intercompany Receivable" or "Intercompany Payable" and, collectively, the "Intercompany Claims") are reported as assets on Schedule B or liabilities on Schedule E and Schedule F.  These Intercompany Claims include the following components, among others:  1) loans to affiliates or related entities, 2) accounts payable and payroll disbursements made out of an affiliate's or related entity's bank accounts on behalf of the Debtor, 3) centrally billed expenses, 4) corporate expense allocations, and 5) accounting for trade and other intercompany transactions.  These Intercompany Claims may or may not result in allowed or enforceable claims by or against the Debtor, and by listing these claims the Debtor is not indicating a conclusion that the Intercompany Claims are enforceable.  Intercompany Claims may also be subject to set off, recoupment, and netting not reflected in the Schedules.  In situations where there is not an enforceable claim, the assets and/or liabilities of the Debtor may be greater or lesser than the amounts stated herein.  All rights to amend intercompany Claims in the Schedules and SoFA are reserved.

The Debtor has listed the intercompany payables as unsecured claims on Schedule F.  The Debtor reserves its rights to later change the characterization, classification, categorization, or designation of such items.

**Insiders.**  For purposes of the Schedules and SoFA, the Debtor defines "insider" pursuant to section 101(31) of the Bankruptcy Code.  Payments to insiders are set forth on Question 3.c. of the SoFA.

Persons listed as "insiders" have been included for informational purposes only.  The Debtor did not take any position with respect to whether such individual could successfully argue that he or she is not an "insider" under applicable law, including without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.  Inclusion of any party in the Schedules and SoFA as an insider does not constitute an admission that such party is an insider or a waiver of such party's right to dispute insider status.

**Excluded Accruals and GAAP Entries.**  The Debtor's balance sheet reflects liabilities recognized in accordance with GAAP; however, not all such liabilities would result in a claim against the Debtor.  Certain liabilities (including but not limited to certain reserves, deferred charges, and future contractual obligations) have not been included in the Debtor's Schedules.   Other immaterial assets and liabilities may also have been excluded.

**Classification and Claim Descriptions**.  Any failure to designate a claim on the Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent" or "unliquidated." The Debtor reserves the right to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules as to amount, liability or classification or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated."

Listing a claim (i) in Schedule D as "secured," (ii) in Schedule E as "priority" or (iii) in Schedule F as "unsecured nonpriority," or listing a contract in Schedule G as "executory" or "unexpired," does not constitute an admission by the Debtor of the legal rights of the claimant or a waiver of the Debtor's right to recharacterize or reclassify such claim or contract.

Moreover, the Debtor reserves all rights to amend the SoFA and Schedules, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or to assert offsets or defenses to any claim reflected on the SoFA and Schedules as to amount, liability or classification of the claim, or to otherwise subsequently designate any claim as "disputed," "contingent" or "unliquidated." Furthermore, nothing contained in the SoFA and Schedules shall constitute a waiver of rights by the Debtor involving any present or future causes of action, contested matters or other issues under the provisions of the Bankruptcy Code or other relevant non-bankruptcy laws.

**Credits and Adjustments.** The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtor. The Debtor reserves all of its rights respecting such credits, allowances or other adjustments.

**Setoffs.** The Debtor may incur setoffs from third parties in its business. Setoffs in the ordinary course can result from various routine transactions, including intercompany transactions, pricing discrepancies, warranty claims and other disputes between the Debtor and third parties. Certain of these constitute normal setoffs consistent with the ordinary course of business in the Debtor's industry. In such instances, such ordinary course setoffs are excluded from the Debtor's responses to Question 13 of the SoFA. The Debtor reserves all rights to enforce or challenge, as the case may be, any setoffs that have been or may be asserted.

**Specific Notes.** These general notes are in addition to the specific notes set forth below or in the related Statement and Schedules hereinafter.

### General Disclaimer

The Debtor has prepared the Schedules and the SoFA based on the information reflected in the Debtor's books and records. However, inasmuch as the Debtor's books and records have not been audited or formally closed and evaluated for proper cut-off on the Petition Date, the Debtor cannot warrant the absolute accuracy of these documents. The Debtor has made a diligent effort to complete these documents accurately and completely. To the extent additional information becomes available, the Debtor will amend and supplement the Schedules and SoFA.

### Specific Schedules Disclosures

a.    **Schedule A/B, Part 4 - Investments; Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses, including any Interest in an LLC, Partnership, or Joint Venture.** Certain ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, at their book value on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors. Fair value of such interests may differ significantly from their net book value. Further, for investments listed at fair value, many of the Debtor's assets are not exchange traded and are fair valued utilizing unobservable

DOCS_DE:226892.2 36027/002

inputs, historical information, and significant and/or subjective estimates. As a result the liquidity and ultimately realized value of such investments may differ materially from the fair value listed on the schedule.

b.   **Schedule A/B, Part 7 - Office Furniture, Fixtures, and Equipment; and Collectibles**.  Dollar amounts are presented net of accumulated depreciation and other adjustments.

c.   **Schedule A/B, Part 11 - All Other Assets**.  Dollar amounts are presented net of impairments and other adjustments. Debtor has reflected "unknown" for value of its interests in various other assets. While the face value of the notes receivable is included, the current value of these as well as the other assets has not been determined and may differ materially.

Additionally, the Debtor may receive refunds, income tax refunds or other sales tax refunds at various times throughout its fiscal year.  As of the Petition Date, however, certain of these amounts are unknown to the Debtor, and accordingly, may not be listed in Schedule A/B.

*Other Contingent and Unliquidated Claims or Causes of Action of Every Nature, including Counterclaims of the Debtor and Rights to Setoff Claims.*  In the ordinary course of its business, the Debtor may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with its customers and suppliers.  Additionally, the Debtor may be party to pending litigation in which the Debtor has asserted, or may assert, claims as a plaintiff or counter-claims and/or cross-claims as a defendant.  Because certain of these claims are unknown to the Debtor and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

d.   **Schedule D - Creditors Who Have Claims Secured by Property**.  The Debtor reserves its rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D.  Moreover, although the Debtor has scheduled claims of various creditors as secured claims, the Debtor reserves all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

The Debtor has not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.  Although there are multiple parties that hold a portion of the debt included in the secured

facilities, only the administrative agents have been listed for purposes of Schedule D.

e.    **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*.  Pursuant to the *Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (11) Granting Related Relief* [Docket No. 39] (the "Wage Order"), the Debtor received authority to pay certain prepetition obligations, including to pay employee wages and other employee benefits, in the ordinary course of business. The Debtor believes that any non-insider employee claims for prepetition amounts related to ongoing payroll and benefits, whether allowable as a priority or nonpriority claim, which were due and payable at the time of the Petition Date have been or will be satisfied as permitted pursuant to the Wage Order.  The Debtor filed the *Motion of the Debtor for Entry of an Order Authorizing the Debtor to Pay and Honor Ordinary Course Obligations under Employee Bonus Plans and Granting Related Relief* [Docket No. 177] pursuant to which the Debtor seeks authority to pay and honor certain prepetition bonus programs.  Employee claims related to these programs are shown in the aggregate amounts in Schedule E/F for privacy reasons.  Additional information is available by appropriate request to the Debtor.  The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtor that such claim or any portion thereof is entitled to priority status.

*Part 2 - Creditors with Nonpriority Unsecured Claims*.  The liabilities identified in Schedule E/F, Part 2, are derived from the Debtor's books and records.  The Debtor made a reasonable attempt to set forth its unsecured obligations, although the actual amount of claims against the Debtor may vary from those liabilities represented on Schedule E/F, Part 2.  The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on the Debtor's books and records.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtor.  The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  Additionally, the amounts of certain litigation claims may be estimates based on the allegations asserted by the litigation counterparty, and do not constitute an admission by the Debtor with respect to either liability for, or the amount of, such claims.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however,

may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease.  In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts and unexpired leases, if any, that may be or have been rejected.

As of the time of filing of the Schedules and Statements, the Debtor had not received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date.  Accordingly, the information contained in Schedules D and E/F may be incomplete.  The Debtor reserves its rights to amend Schedules D and E/F if and as it receive such invoices.

f.     **Schedule G - Executory Contracts and Unexpired Leases**.  While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable.  The Debtor hereby reserves all of its rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary.  Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights.  Such rights, powers, duties and obligations are not set forth separately on Schedule G.  In addition, the Debtor may have entered into various other types of agreements in the ordinary course of its business, such as supplemental agreements, amendments, and letter agreement, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtor reserves all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in Schedule G.  Multiple listings, if any, reflect distinct agreements between the Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtor as to the validity of any such contract.  The Debtor reserves the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or

DOCS_DE:226892.2 36027/002

**Appx. 01473**

unexpired lease.  The Debtor's rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

DOCS_DE:226892.2 36027/002

**Appx. 01474**

# EXHIBIT 88

Case 19-34054-sgj11 Doc 405 Filed 01/27/20   Entered 01/27/20 16:40:55   Page 1 of 11

Docket #0405  Date Filed: 01/27/2020

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

In re:                                              Chapter 11

**HIGHLAND CAPITAL MANGEMENT, LP**                  Case No. 19-12239-CSS

Debtors.

Reporting Period:                 10/31/2019

### MONTHLY OPERATING REPORT
File with Court and submit copy to United States Trustee within 20 days after end of month.

| Required Documents | Form No. | Document Attached | Explanation Attached | Affidavit/ Supplement Attached |
|---|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | x | | |
| Attestation of Bank Reconciliation by the CRO | MOR-1a | x | | |
| Schedule of Professional Fees and Expenses Paid | | n/a | | |
| Cash Disbursements Journals | MOR-1b | | | |
| Statement of Operations | MOR-2 | x | | |
| Balance Sheet | MOR-3 | x | | |
| Status of Postpetition Taxes | | | | |
| Copies of IRS Form 6123 or Payment Receipt | MOR-4a | x | | |
| Copies of Tax Returns Filed During Reporting Period | | n/a | | |
| Summary of Unpaid Postpetition Debts | | | | |
| Listing of Aged Accounts Payable | MOR-4b | x | | |
| Accounts Receivable Reconciliation and Aging | MOR-5a | x | | |
| Debtor Questionnaire | MOR-5b | x | | |
| Budget | MOR-6 | x | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents are true and correct to the best of my knowledge and belief.

_____
Signature of Debtor

Date: _____

_____
Signature of Joint Debtor

Date: _____

_____
Signature of Authorized Individual

Date: 12-2-19

Bradley Sharp
Printed Name of Authorized Individual

Chief Restructuring Officer
Title of Authorized Individual

/s/ Frank Waterhouse
Signature of Authorized Individual

12-2-19

Frank Waterhouse
Printed Name of Authorized Individual

Chief Financial Officer
Title of Authorized Individual



Exhibit 20

1934054200127000000000007

Appx. 01476

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**Cash Disbursements and Receipts from 10/16/2019 - 10/31/2019**
*(in thousands)*

| Week beginning | Compass Operating x6542 | Jefferies x0932 | Nexbank CD x5891 | Nexbank Insurance x7513 | Nexbank Operating x4138 | Maxim Group x1885 | Nexbank Operating x6735 | Total |
|---|---|---|---|---|---|---|---|---|
| **Beginning cash** | $ 2,126 | - | $ 135 | $ 291 | $ - | $ - | $ 1 | $ 2,554 |
| | | | | | | | | |
| **Operating Receipts** | | | | | | | | |
| Other | 4 | - | - | 3 | - | - | - | 7 |
| Management fees and other related receipts | 62 | - | - | - | - | - | - | 62 |
| | | | | | | | | |
| **Compensation and benefits** | | | | | | | | |
| Payroll, benefits, and taxes + exp reimb | (526) | - | - | (212) | - | - | - | (738) |
| Severance payments | - | - | - | - | - | - | - | - |
| Total compensation and benefits | (526) | - | - | (212) | - | - | - | (738) |
| | | | | | | | | |
| **General overhead** | | | | | | | | |
| General overhead - critical vendors (pre-petition) | (2) | - | - | - | - | - | - | (2) |
| General overhead - post-petition vendors | (35) | - | - | - | - | - | - | (35) |
| Singapore service fees | (35) | - | - | - | - | - | - | (35) |
| Total general overhead | (72) | - | - | - | - | - | - | (72) |
| | | | | | | | | |
| **Investing cash flows (principal only on notes)** | | | | | | | | |
| Third party fund actual/expected distributions | 79 | - | - | - | - | - | - | 79 |
| Divs, paydowns, misc from investment assets | - | 410 | - | - | - | - | - | 410 |
| | | | | | | | | |
| **Ending cash** | 1,673 | 410 | 135 | 82 | - | - | 1 | 2,302 |

MOR-1
2 of 11

**Appx. 01477**

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**Attestation of Bank Reconciliation by the CRO**

| Entity | Case No. | Bank | Account Type | Account # (last 4 digits) | Ending Bank Balance |
|--------|----------|------|--------------|---------------------------|---------------------|
| Highland Capital Management, LP | 19-12239-CSS | BBVA Compass | Operating | x6342 | 1,672,176.25 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Operating | x4130 | 250.70 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Insurance | x7513 | 82,272.52 |
| Highland Capital Management, LP | 19-12239-CSS | Jefferies LLC | Brokerage | x0932 | 410,107.71 |
| Highland Capital Management, LP | 19-12239-CSS | Maxim Group | Brokerage | x1885 | 163.61 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | CD | x5891 | 135,205.21 |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Operating | x668 | - |
| Highland Capital Management, LP | 19-12239-CSS | Nexbank | Operating | x0735 | 1,453.59 |
| | | | | **Total:** | **2,301,630** |

No bank statements are being provided with this report. I attest that the bank statements for the above-listed accounts have been reconciled to the Debtor's books and records.

Following month end, The Debtor opened three bank accounts at East West Bank. On November 21, 2019, the Debtor closed accounts ending in x735, x668 x130 and x513.

_____
Signature of Authorized Individual

Frank Waterhouse
_____
Printed Name of Authorized Individual

_____
Signature of Authorized Individual

Bradley Sharp
_____
Printed Name of Authorized Individual

_____
Date

Chief Financial Officer
_____
Title of Authorized Individual

12-2-19
_____
Date

Chief Restructuring Officer
_____
Title of Authorized Individual

Appx. 01478

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**RECEIPTS LISTING**

| Date | Amount | Sender | Bank |
|------|--------|--------|------|
| 10/16/2019 | 2,777.24 | Discovery Benefits | x6342 |
| 10/16/2019 | 592.81 | Discovery Benefits | x6342 |
| 10/21/2019 | 46.00 | Co-op | x4130 |
| 10/22/2019 | 79,266.46 | Third party fund distribution | x6342 |
| 10/22/2019 | 93.83 | Paylocity | x6342 |
| 10/24/2019 | 14,128.70 | Fund Reimbursement | x6342 |
| 10/25/2019 | 438.00 | Discovery Benefits | x6342 |
| 10/28/2019 | 15,000.00 | Shared Services | x6342 |
| 10/31/2019 | 17,763.15 | Fund Reimbursement | x6342 |
| 10/31/2019 | 14,533.49 | Fund Reimbursement | x6342 |
| 10/31/2019 | 13.88 | Interest | x4130 |
| 10/30/2019 | 592.82 | Insurance Premiums | x7513 |
| 10/31/2019 | 2,371.27 | Insurance Premiums | x7513 |
| 10/31/2019 | 0.19 | Interest | x0735 |
| 10/25/2019 | 369,973.45 | Investment receipts | x0932 |
| 10/28/2019 | 12,766.83 | Investment receipts | x0932 |
| 10/28/2019 | 27,367.43 | Investment receipts | x0932 |
| 10/31/2019 | 67.44 | Dividend | x1885 |
| | 557,792.99 | | |

**DISBURSEMENT LISTING**

| Date | Amount | Vendor | Bank |
|------|--------|--------|------|
| 10/16/2019 | 2,047.22 | Zayo | x6342 |
| 10/16/2019 | 836.22 | Discovery Benefits | x6342 |
| 10/16/2019 | 52.79 | Discovery Benefits | x6342 |
| 10/16/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/22/2019 | 11,813.33 | Singapore Service Fee Funding | x6342 |
| 10/22/2019 | 12,600.88 | Singapore Service Fee Funding | x6342 |
| 10/22/2019 | 40.00 | Discovery Benefits | x6342 |
| 10/22/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/23/2019 | 10,335.00 | Delta Risk | x6342 |
| 10/23/2019 | 4,944.58 | Discovery Benefits | x6342 |
| 10/23/2019 | 550.60 | Discovery Benefits | x6342 |
| 10/23/2019 | 25.00 | Discovery Benefits | x6342 |
| 10/23/2019 | 15.00 | Discovery Benefits | x6342 |
| 10/24/2019 | 9.73 | Discovery Benefits | x6342 |
| 10/25/2019 | 75.00 | Discovery Benefits | x6342 |
| 10/25/2019 | 215.00 | Discovery Benefits | x6342 |
| 10/25/2019 | 305.46 | Discovery Benefits | x6342 |
| 10/25/2019 | 1,303.80 | Discovery Benefits | x6342 |
| 10/28/2019 | (26.00) | Discovery Benefits | x6342 |
| 10/28/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/28/2019 | 1,350.04 | Discovery Benefits | x6342 |
| 10/28/2019 | 20.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 245.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 5.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 370.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 5.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 9,770.39 | CDW | x6342 |
| 10/29/2019 | 1,876.88 | Third Party Consultant | x6342 |
| 10/30/2019 | 518.51 | Discovery Benefits | x6342 |
| 10/31/2019 | 11,000.00 | Third Party Consultant | x6342 |
| 10/31/2019 | 100.00 | Discovery Benefits | x6342 |
| 10/29/2019 | 1,475.38 | Third Party Consultant | x6342 |
| 10/31/2019 | 1,667.78 | Third Party Consultant | x6342 |
| 10/31/2019 | 10,219.19 | Singapore Service Fee Funding | x6342 |
| 10/30/2019 | 50,233.99 | Paylocity | x6342 |
| 10/30/2019 | 311,831.36 | Paylocity | x6342 |
| 10/31/2019 | 1,974.64 | Paylocity | x6342 |
| 10/30/2019 | 110,396.48 | Paylocity | x6342 |
| 10/29/2019 | 771.24 | Standard Insurance | x6342 |
| 10/29/2019 | 4,459.96 | Standard Insurance | x6342 |
| 10/30/2019 | 33,670.47 | Charles Schwab | x6342 |
| 10/30/2019 | 1,227.80 | Paylocity | x6342 |
| 10/21/2019 | 59,268.63 | Blue Cross Blue Shield of Texas | x7513 |
| 10/25/2019 | 152,732.21 | Blue Cross Blue Shield of Texas | x7513 |
| | 810,393.55 | | |

\* Payments to Discovery Benefits are for employee Flexible Spending Account (FSA) reimbursement

Appx. 01479

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

Income Statement [1]
(in thousands)

| | Date |
|---|---|
| | 10/16/19 - 10/31/19 |
| **Revenue:** | |
| Management fees | 975 |
| Shared services fees | 283 |
| Other income | 99 |
| **Total operating revenue** | 1,357 |
| **Operating expenses:** | |
| Compensation and Benefits | 997 |
| Professional services | 256 |
| Investment research and consulting | 10 |
| Depreciation expense [3] | 82 |
| Other operating expenses | 201 |
| **Total operating expenses** | 1,545 |
| **Operating income/(loss)** | (188) |
| **Other income/expense:** | |
| Interest income | 250 |
| Interest expense | (107) |
| Re-org related expenses [2] | - |
| Other income/expense | 32 |
| **Total other income/expense** | 175 |
| Net realized gains on investments | 339 |
| Net change in unrealized gains/(losses) of investments [4] | 2,654 |
| | 2,993 |
| **Net earnings/(losses) from equity method investees** [4] | (20) |
| **Net income/(loss)** | $ 2,959 |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. No additional amounts were accrued between October 16, 2019 and October 31, 2019.

(3) Includes full month of depreciation as depreciation is run monthly at month end. Estimated pro-rated depreciation October 16, 2019 to October 31, 2019 is $42k.

(4) Mark to market gains/(losses) on investments include normal course pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

Balance Sheet
(in thousands)

|  | Date |
| --- | --- |
|  | 10/31/2019 |
| **Assets** | |
| Cash and cash equivalents | $ 2,286 |
| Investments, at fair value [3] | 359,448 |
| Equity method investees [3] | 37,508 |
| Management and incentive fee receivable | 3,202 |
| Fixed assets, net | 3,672 |
| Due from affiliates [1] | 152,124 |
| Other assets | 11,261 |
| **Total assets** | **$ 569,501** |
|  | |
| **Liabilities and Partners' Capital** | |
| Pre-petition accounts payable [4] | $ 1,135 |
| Post-petition accounts payable [4] | 102 |
| Secured debt | 35,510 |
| Accrued expenses and other liabilities [4] | 59,184 |
| Accrued re-organization related fees [5] | - |
| Claim accrual [2] | 73,997 |
| Partners' capital | 399,573 |
| **Total liabilities and partners' capital** | **$ 569,501** |

[1] Includes various notes receivable at carrying value (fv undetermined).

[2] Uncontested portion of claim less appplicable offsets. Potential for additional liability based on future events.

[3] Mark to market gains/(losses) on investments include normal course pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

[5] Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed prior to the petition date. No additional amounts were accrued between October 16, 2019 and October 31, 2019

Appx. 01481

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

| Form 6123 (Rev. 06-97) | Department of the Treasury-Internal Revenue Service **Verification of Fiduciary's Federal Tax Deposit** |
|---|---|
| | **Do not attach this Notice to your Return** |
| **TO** | District Director, Internal revenue Service Attn: Chief, Special Procedures Function |
| **FROM:** | Name of Taxpayer    Highland Capital Management, L.P. |
| | Taxpayer Address    300 Crescent Ct. Ste. 700, Dallas, TX 75201 |

The following information is to notify you of Federal tax deposit(s)(FTD) as required by the United States Bankruptcy Court (complete sections 1 and/or 2 as appropriate):

| Section 1 | **Form 941 Federal Tax Deposit (FTD) Information** |
|---|---|
| | For the payroll period from  10/16/2019  to  10/31/2019 |
| Taxes Reported on Form 941,  Employer=s Quarterly Federal Tax Return | Payroll date  10/31/2019 |
| | Gross wages paid to employees $ 557,425.72 |
| | Income tax withheld $ 105,313.71 |
| | Social Security (Employer's plus Employee's share of Social Security Tax) $  36,603.10 |
| | Tax Deposited  $ 141,916.84 |
| | Date Deposited  10/31/2019 |
| **Section 2** | **Form 940 Federal Tax Deposit (FTD) Information** |
| | For the payroll period from  10/16/2019  to  10/31/2019 |
| Taxes Reported on Form 940, Employer=s Annual Federal Unemployment Tax Return | Gross wages paid to employees  $ 557,425.72 |
| | Tax Deposited  $  574.93 |
| | Date Deposited  10/31/2019 |

| **Certification** |
|---|
| **(Certification is limited to receipt or electronic transmittal of deposit only)** |
| This certifies receipt or electronic transmittal of deposits described below for Federal taxes as defined in Circular E, Employer=s Tax Guide (Publication 15) |

| Deposit Method (check box) | 9 Form 8109/8109B Federal Tax Deposit (FTD) coupon X 9 Electronic Federal Tax Payment System (EFTPS) Deposit | |
|---|---|---|
| Amount (Form 941 141,916.84 | Date of Deposit 10/31/2019 | EFTPS acknowledgment number or Form 8109 FTD received by: EFT_COMM01_1034607 |
| Amount (Form 940 574.93 | Date of Deposit 10/31/2019 | EFTPS acknowledgment number or Form 8109 FTD received by: EFT_COMM01_1051577-1-2944938 |
| Depositor=s Employer Identification Number:  75-2716725 | Name and Address of Bank Compass Bank | |
| Under penalties of perjury, I certify that the above federal tax deposit information is true and correct | | |
| Signed: | Date: | |
| Name and Title (print or type) | | |

Cat. #43099Z                                              Form  6123 (rev. 06-97)

**Appx. 01482**

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**Post-Petition Accounts Payable Aging as of 10/31/2019**

|  | 0-30 days | 31 - 60 days old | 61 - 90 days old | 91 + days old | Grand Total |
|---|---|---|---|---|---|
| Remaining Amount | $     102,132 | $                - | $                - | $                - | $   102,132 |

MOR-4b
8 of 11

**Appx. 01483**

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**Accounts Receivable Reconciliation**

| | 0 - 30 days old [1] | 31 - 60 days old | 61 - 90 days old | 91 + days old net of uncollectable balances [2] | Accounts Receivable (Net) |
|---|---|---|---|---|---|
| Management Fees | $ 3,201,548 | $ - | $ - | $ - | $ 3,201,548 |
| Shared Services Fees [3] | 516,469 | - | - | - | 516,469 |
| Expense Reimbursements [3] | 537,514 | 84,081 | 155,514 | 3,440,751 | 4,217,859 |
| **Total Receivable** | $ 4,255,531 | $ 84,081 | $ 155,514 | $ 3,440,751 | $ 7,935,877 |

[1] All management fees and shared services fees are considered to be 0-30 days old as all such receivables are paid current per their investment management contracts.

[2] Receivables shown above are net of certain potentially uncollectible amounts. The net balances also do not include amounts that have been reserved against in prior years relating to management fees, shared services, and fund reimbursements, including but not limited to amounts paid on other entities' behalf with respect to legal related expenses as well as receivable escrowed distributions from fund holdings.

[3] Accounts Receivable from Shared Services Fees and Expense Reimbursements is included in the Other Assets line item on the Balance Sheet (see MOR-3).

Appx. 01484

In re: Highland Capital Management, L.P.

Case No. 19-12239-CSS
Reporting Period: 10/16/2019 - 10/31/2019

**DEBTOR QUESTIONNAIRE**

| Must be completed each month | | Yes | No |
|---|---|---|---|
| 1 | Have any assets been sold or transferred outside the normal course of business this reporting period?  If yes, provide an explanation below. | | x |
| 2 | Have any funds been disbursed from any account other than a debtor in possession account this reporting period?  If yes, provide an explanation below.  $598,419 of funds transferred from non-debtor in possession accounts, while those accounts were in process of being opened.  These debtor in possession accounts were opened following month end and are being used for operating activities as of the date of this submission. | x | |
| 3 | Have all postpetition tax returns been timely filed?  If no, provide an explanation below. | x | |
| 4 | Are workers compensation, general liability and other necessary insurance coverages in effect?  If no, provide an explanation below. | x | |
| 5 | Has any bank account been opened during the reporting period?  If yes, provide documentation identifying the opened account(s).  If an investment account has been opened provide the required documentation pursuant to the Delaware Local Rule 4001-3.  Following month end, The Debtor opened three bank accounts at East West Bank. On November 21, 2019, the Debtor closed accounts ending in x735, x668 x130 and x513. | | x |

Appx. 01485

Next 13 Weeks Commencing October 16, 2019
(in thousands)

| | Actual[1] | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week beginning** | **10/16** | **10/21** | **10/28** | **11/4** | **11/11** | **11/18** | **11/25** | **12/2** | **12/9** | **12/16** | **12/23** | **12/30** | **1/6** | **13 Weeks** |
| **Beginning unrestricted operating cash** | $ 2,126 | $ 2,126 | $ 2,178 | $ 2,775 | $ 4,182 | $ 2,815 | $ 2,317 | $ 1,030 | $ 2,841 | $ 1,069 | $ 1,693 | $ 476 | $ 709 | $ 2,126 |
| Management fees | $ - | $ - | $ 1,600 | $ 1,028 | $ - | $ 1,849 | $ 27 | $ 672 | $ - | $ - | $ - | $ - | $ - | $ 5,176 |
| Shared services receipts | - | - | 105 | 633 | - | - | - | 815 | - | - | - | - | 633 | 2,186 |
| Fund reimbursements | - | 14 | - | 306 | - | - | - | - | - | - | - | - | - | 320 |
| Interest receipts on notes receivable | - | - | - | - | - | - | - | - | - | - | - | 1,155 | - | 1,155 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management fees and other related receipts | $ - | $ 14 | $ 1,705 | $ 1,967 | $ - | $ 1,849 | $ 27 | $ 1,487 | $ - | $ - | $ - | $ 1,155 | $ 633 | $ 8,836 |
| **Compensation and benefits** | | | | | | | | | | | | | | |
| Payroll, benefits, and taxes + exp reimb[2] | - | (7) | (663) | - | (633) | - | (633) | - | (631) | - | - | (631) | - | (3,198) |
| **Total compensation and benefits** | $ - | $ (7) | $ (663) | $ - | $ (633) | $ - | $ (633) | $ - | $ (631) | $ - | $ - | $ (631) | $ - | $ (3,198) |
| **General overhead** | | | | | | | | | | | | | | |
| Outside legal (ordinary course) | - | - | - | (75) | - | - | (75) | - | - | - | (75) | - | - | (225) |
| General overhead - critical vendors (pre-petition) | - | - | (5) | (25) | (25) | (25) | (25) | (20) | (20) | (20) | (20) | (20) | (25) | (230) |
| General overhead - post petition vendors | - | (10) | (428) | (359) | (209) | (209) | (209) | (250) | (250) | (250) | (250) | (250) | (234) | (2,913) |
| Singapore service fees | - | (24) | (11) | - | - | (35) | - | - | - | (35) | - | - | - | (106) |
| **Total general overhead** | $ - | $ (34) | $ (444) | $ (459) | $ (234) | $ (270) | $ (309) | $ (270) | $ (270) | $ (306) | $ (345) | $ (270) | $ (259) | $ (3,473) |
| **Net change in cash due to operating activity** | - | (27) | 597 | 1,508 | (868) | 1,579 | (916) | 1,217 | (901) | (306) | (345) | 254 | 374 | 2,165 |
| **Re-org related[3] - payments to professional fee reserve acct** | | | | | | | | | | | | | | |
| Debtor bankruptcy counsel | - | - | - | - | - | (1,615) | (269) | (269) | (269) | (269) | (269) | (269) | (269) | (3,500) |
| Debtor FA CRO | - | - | - | - | - | (300) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (650) |
| Compensation consultant | - | - | - | - | - | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (128) |
| Committee counsel | - | - | - | - | - | (73) | (18) | (18) | (18) | (18) | (18) | (18) | (18) | (200) |
| Committee FA | - | - | - | - | - | (73) | (18) | (18) | (18) | (18) | (18) | (18) | (18) | (200) |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | (250) | - | (250) |
| **Total re-org related** | $ - | $ - | $ - | $ - | $ - | $ (2,077) | $ (372) | $ (372) | $ (372) | $ (372) | $ (372) | $ (622) | $ (372) | $ (4,928) |
| **Net change in cash from ops + reorg costs** | - | (27) | 597 | 1,508 | (868) | (498) | (1,287) | 845 | (1,273) | (677) | (717) | (368) | 2 | (2,763) |
| **Investing cash flows (principal only on notes)** | | | | | | | | | | | | | | |
| Select Equity Fund equity redemptions | - | - | - | - | - | 1,250 | - | 1,067 | - | 1,301 | - | - | - | 3,618 |
| Third party fund capital call obligations | - | - | - | - | - | (1,650) | - | - | - | - | - | - | - | (1,650) |
| Third party fund actual/expected distributions | - | 79 | - | - | - | 400 | - | - | - | - | - | - | - | 479 |
| Multi Strategy Credit Fund | - | - | - | - | (500) | - | - | - | (500) | - | (500) | - | (500) | (2,000) |
| Highland Capital Management Latin America | - | - | - | (100) | - | - | - | (100) | - | - | - | (100) | - | (300) |
| Proceeds from outstanding notes | - | - | - | - | - | - | - | - | - | - | - | 701 | - | 701 |
| Proceeds from other investments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net change in cash due to investing activities** | - | 79 | - | (100) | (500) | - | - | 967 | (500) | 1,301 | (500) | 601 | (500) | 848 |
| **Ending unrestricted operating cash** | $ 2,126 | $ 2,178 | $ 2,775 | $ 4,182 | $ 2,815 | $ 2,317 | $ 1,030 | $ 2,841 | $ 1,069 | $ 1,693 | $ 476 | $ 709 | $ 211 | $ 211 |
| **Professional fees escrow account[3]** | | | | | | | | | | | | | | |
| Re-org related professional fees escrow beginning balance | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,077 | $ 2,449 | $ 2,820 | $ 3,192 | $ 1,528 | $ 1,900 | $ 2,271 | $ - |
| Inflows from operating account | - | - | - | - | - | 2,077 | 372 | 372 | 372 | 372 | 372 | 622 | 372 | 4,928 |
| Payments to professionals | | | | | | | | | | | | | | |
| Debtor bankruptcy counsel | - | - | - | - | - | - | - | - | - | (1,508) | - | - | - | (1,508) |
| Debtor FA/CRO | - | - | - | - | - | - | - | - | - | (350) | - | - | - | (350) |
| Compensation consultant | - | - | - | - | - | - | - | - | - | (32) | - | - | - | (32) |
| Committee counsel | - | - | - | - | - | - | - | - | - | (73) | - | - | - | (73) |
| Committee FA | - | - | - | - | - | - | - | - | - | (73) | - | - | - | (73) |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | (250) | - | (250) |
| Total outflows to professionals | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ (2,035) | $ - | $ (250) | $ - | $ (2,285) |
| Re-org related professional fees escrow ending balance | $ - | $ - | $ - | $ - | $ - | $ 2,077 | $ 2,449 | $ 2,820 | $ 3,192 | $ 1,528 | $ 1,900 | $ 2,271 | $ 2,643 | $ 2,643 |

*(1) Beginning unrestricted operating cash represents the bank cash balance of the Debtor's operating account as of the Petition Date.*
*(2) Benefits activity includes monthly health insurance premiums sent from the operating account to the insurance account. Within the insurance account monthly premiums are received and are used to pay claims and administrative expenses of the self-insured plan.*
*(3) Forecast assumes that amounts are funded from the operating account to the professional fees escrow account weekly, then the professional fees escrow account is used to pay re-org related vendors 80% of escrowed fees beginning in December 2019, except for the Debtor FA/CRO, which is paid 100%.*

# EXHIBIT 89

Docket #0289  Date Filed: 12/31/2019

**Monthly Operating Report**
ACCRUAL BASIS

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |
| JUDGE: | Stacey Jernigan |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

### REGION 6

### MONTHLY OPERATING REPORT

**MONTH ENDING:** _November_  _2019_
      MONTH      YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

RESPONSIBLE PARTY:

_____        Chief Restructuring Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY        TITLE

Bradley Sharp                    12-31-19
PRINTED NAME OF RESPONSIBLE PARTY        DATE

PREPARER:

_____        Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER        TITLE

Frank Waterhouse                12.31.19
PRINTED NAME OF PREPARER            DATE



Exhibit 21



1934054191231000000000002

Appx. 01488

**Monthly Operating Report**
ACCRUAL BASIS-1

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

|  | 10/15/2019 | 10/31/2019 | 11/30/2019 |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 2,286 | 6,343 |
| Investments, at fair value[3] | 232,620 | 235,144 | 233,776 |
| Equity method investees[3] | 161,819 | 161,813 | 175,381 |
| Management and incentive fee receivable | 2,579 | 3,202 | 1,223 |
| Fixed assets, net | 3,754 | 3,672 | 3,601 |
| Due from affiliates[1] | 151,901 | 152,124 | 152,523 |
| Other assets | 11,311 | 11,260 | 10,621 |
| **Total assets** | $ 566,513 | $ 569,501 | $ 583,468 |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable[4] | 1,176 | 1,135 | 1,250 |
| Post-petition accounts payable[4] | - | 102 | 236 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,315 | 30,268 |
| Accrued expenses and other liabilities[4] | 59,203 | 59,184 | 60,848 |
| Accrued re-organization related fees[5] | - | - | - |
| Claim accrual[2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 399,573 | 411,674 |
| **Total liabilities and partners' capita** | $ 566,513 | $ 569,501 | $ 583,468 |

[1] Includes various notes receivable at carrying value (fv undetermined).

[2] Uncontested portion of claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed prior to the petition date. No additional amounts were accrued between October 16, 2019 and November 30, 2019

Appx. 01489

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Income Statement** [1]

(in thousands)

| | Date | Month ended | Filing to Date |
|---|---|---|---|
| | 10/16/19 - 10/31/19 | 11/30/2019 | |
| **Revenue:** | | | |
| Management fees | 975 | 1,638 | 2,613 |
| Shared services fees | 283 | 709 | 992 |
| Other income | 99 | 418 | 517 |
| **Total operating revenue** | **1,357** | **2,765** | **4,122** |
| **Operating expenses:** | | | |
| Compensation and Benefits | 997 | 1,936 | 2,932 |
| Professional services | 256 | 90 | 346 |
| Investment research and consulting | 10 | 34 | 44 |
| Marketing and advertising expense | - | 35 | 35 |
| Depreciation expense | 82 | 82 | 164 |
| Other operating expenses | 201 | 480 | 681 |
| **Total operating expenses** | **1,545** | **2,657** | **4,202** |
| **Operating income/(loss)** | **(188)** | **108** | **(80)** |
| **Other income/expense:** | | | |
| Interest income | 250 | 484 | 735 |
| Interest expense | (107) | (103) | (211) |
| Re-org related expenses[2] | - | - | - |
| Other income/expense | 32 | - | 32 |
| **Total other income/expense** | **175** | **381** | **555** |
| Net realized gains/(losses) on investments | 339 | 279 | 618 |
| Net change in unrealized gains/(losses) of investment[3] | 2,654 | (2,004) | 650 |
| | **2,993** | **(1,725)** | **1,268** |
| **Net earnings/(losses) from equity method investees** [3] | **(20)** | **13,468** | **13,448** |
| **Net income/(loss)** | **$   2,959** | **$   12,232** | **$   15,192** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.  No additional amounts were accrued between October 16, 2019 and November 30, 2019

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information.  Limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

Case 19-34054-sgj11 Doc 289 Filed 12/31/19   Entered 12/31/19 13:34:55   Page 4 of 9

**Monthly Operating Report**
ACCRUAL BASIS-3A

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | OCTOBER | NOVEMBER | DECEMBER | QUARTER |
|---|---|---|---|---|
| 1.    CASH - BEGINNING OF MONTH [2] | $2,554,230 | $2,286,160 | | $2,554,230 |
| RECEIPTS FROM OPERATIONS | | | | |
| 2.    OTHER OPERATING RECEIPTS | $6,911.97 | $972,733 | | $979,644 |
| 3     MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $15,000.00 | $1,764,749 | | $1,779,749 |
| COLLECTION OF ACCOUNTS RECEIVABLE | | | | |
| 4     PREPETITION | $46,425 | $2,962,108 | | $3,008,534 |
| 5     POSTPETITION [1] | - | - | | - |
| 6     TOTAL OPERATING RECEIPTS | $68,337 | $5,699,590 | | $5,767,928 |
| NON-OPERATING RECEIPTS | | | | |
| 7     THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $79,266 | $320,836 | | $400,103 |
| 8     DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $410,189 | $501,983 | | $912,172 |
| 9     OTHER (ATTACH LIST) | | | | $0 |
| 10    TOTAL NON-OPERATING RECEIPTS | $489,456 | $822,820 | | $1,312,275 |
| 11    TOTAL RECEIPTS | $557,793 | $6,522,410 | | $7,080,203 |
| 12    TOTAL CASH AVAILABLE | $3,112,023 | $8,808,570 | | |
| OPERATING DISBURSEMENTS | | | | |
| 13    PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $737,588 | $961,282 | | $1,698,869 |
| 14    SINGAPORE SERVICE FEES | $34,633 | $32,555 | | $67,189 |
| 15    HCM LATIN AMERICA | | $100,000 | | $100,000 |
| 16    THIRD PARTY FUND CAPITAL CALL OBLIGATION | | $967,555 | | $967,555 |
| 17    UTILITIES | | | | $0 |
| 18    INSURANCE | | | | $0 |
| 19    INVENTORY PURCHASES | | | | $0 |
| 20    VEHICLE EXPENSES | | | | $0 |
| 21    TRAVEL | | | | $0 |
| 22    ENTERTAINMENT | | | | $0 |
| 23    REPAIRS & MAINTENANCE | | | | $0 |
| 24    SUPPLIES | | | | $0 |
| 25    ADVERTISING | | | | $0 |
| 26    OTHER (ATTACH LIST) | $53,642 | $404,581 | | $458,223 |
| 27    TOTAL OPERATING DISBURSEMENTS | $825,863 | $2,465,973 | | $3,291,836 |
| REORGANIZATION EXPENSES | | | | |
| 28    PROFESSIONAL FEES | | | | $0 |
| 29    U.S. TRUSTEE FEES | | | | $0 |
| 30    OTHER (ATTACH LIST) | | | | $0 |
| 31    TOTAL REORGANIZATION EXPENSES | $0 | $0 | | $0 |
| 32    TOTAL DISBURSEMENTS | $825,863 | $2,465,973 | | $3,291,836 |
| 33    NET CASH FLOW | ($268,070) | $4,056,437 | | $3,788,367 |
| 34    CASH - END OF MONTH | $2,286,160 | $6,342,598 | | $6,342,598 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.
2   Beginning cash in October represents the bank balance as of the filing date, while the cash amount shown on the balance sheet includes any outstanding checks.

Case 19-34054-sgj11 Doc 289 Filed 12/31/19   Entered 12/31/19 13:34:55   Page 5 of 9

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 11/1/2019 | $ 155,983 | Crescent TC Invest |
| 11/1/2019 | 26,667 | Third Party Consultant |
| 11/1/2019 | 13,636 | Third Party Consultant |
| 11/8/2019 | 33,007 | Platinum Parking |
| 11/8/2019 | 1,053 | Gold's Gym International |
| 11/12/2019 | 1,525 | MicroTel |
| 11/15/2019 | 1,951 | Compass Bank Operating |
| 11/18/2019 | 2,047 | Zayo |
| 11/20/2019 | 2,894 | Third Party Consultant |
| 11/25/2019 | 24,232 | Coleman Research Group, Inc. |
| 11/26/2019 | 3,092 | Canteen Vending |
| 11/26/2019 | 925 | UPS Small Package |
| 11/26/2019 | 671 | SolarWinds |
| 11/26/2019 | 7,995 | Intralinks Inc |
| 11/26/2019 | 56,522 | Houlihan Lokey Financial Advisors |
| 11/26/2019 | 9,259 | Willis of Texas, Inc. |
| 11/26/2019 | 8,846 | GrubHub for Work |
| 11/29/2019 | 31,894 | Third Party Consultant |
| 11/29/2019 | 11,000 | Third Party Consultant |
| 11/29/2019 | 11,382 | Verity Group |
| | $ 404,581 | |

**Monthly Operating Report**
**ACCRUAL BASIS-4**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | SCHEDULE AMOUNT | October | November | December |
|---|---|---|---|---|---|
| 1. | 0-30 | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | |
| 2. | 31-60 | | $0 | | |
| 3. | 61-90 | | $0 | | |
| 4. | 91+ | | - | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $0 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ 2,578,744 | $ 3,201,548 | $ 1,222,880 | $0 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | November 2019 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. | FEDERAL | | | | | $0 |
| 2. | STATE | | | | | $0 |
| 3. | LOCAL | | | | | $0 |
| 4. | OTHER (ATTACH LIST) | | | | | $0 |
| 5. | TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. | ACCOUNTS PAYABLE | $215,777 | $20,059 | | $235,836 |
|---|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | November 2019 | |
|---|---|---|---|---|---|
| FEDERAL | | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. | WITHHOLDING | | | | $0 |
| 2. | FICA-EMPLOYEE | | | | $0 |
| 3. | FICA-EMPLOYER | | | | $0 |
| 4. | UNEMPLOYMENT | | | | $0 |
| 5. | INCOME | | | | $0 |
| 6. | OTHER (ATTACH LIST) | | | | $0 |
| 7. | TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | | |
| 8. | WITHHOLDING | | | | $0 |
| 9. | SALES | | | | $0 |
| 10. | EXCISE | | | | $0 |
| 11. | UNEMPLOYMENT | | | | $0 |
| 12. | REAL PROPERTY | $ 16,472 | $0 | $0 | $16,472 |
| 13. | PERSONAL PROPERTY | | | | $0 |
| 14. | OTHER (ATTACH LIST) | | | | $0 |
| 15. | TOTAL STATE & LOCAL | $16,472 | $0 | $0 | $16,472 |
| 16. | TOTAL TAXES | $16,472 | $0 | $0 | $16,472 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2  Aging based on when management fee is due and payable.

Case 19-34054-sgj11 Doc 289 Filed 12/31/19   Entered 12/31/19 13:34:55   Page 7 of 9

<div align="right">

**Monthly Operating Report**
ACCRUAL BASIS-5

</div>

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**MONTH:** November     2019

| BANK RECONCILIATIONS | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | BBVA Compass | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | |
| B. | ACCOUNT NUMBER: | x6342 | x4686 | x4693 | x1885 | x0932 | x5891 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Operating | Insurance | Brokerage | Brokerage | CD | |
| 1. | BALANCE PER BANK STATEMENT [1] | $229,247 | $5,477,826 | $105,067 | $164 | $410,108 | $135,205 | $6,357,616 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $0 |
| 3. | SUBTRACT: OUTSTANDING CHECKS | $15,019 | | | | | | $15,019 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $0 |
| 5. | MONTH END BALANCE PER BOOKS | $214,228 | $5,477,826 | $105,067 | $164 | $410,108 | $135,205 | $6,342,598 |
| 6. | NUMBER OF LAST CHECK WRITTEN | **18133** | **100001** | **n/a** | **n/a** | **n/a** | **n/a** | |

| INVESTMENT ACCOUNTS | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| BANK, ACCOUNT NAME & NUMBER | | | | | | | |
| 7. | | | | | | | |
| 8. | | | | | | | |
| 9. | | | | | | | |
| 10. | | | | | | | |
| 11.    TOTAL INVESTMENTS | | | $0 | | | | $0 |

| CASH | | |
| --- | --- | --- |
| 12.    CURRENCY ON HAND | | $0 |
| 13.    **TOTAL CASH - END OF MONTH** | | $6,342,598 |

1   For Compass account x6342, funds transferred in December such that only sufficient cash to cover outstanding checks remains

<div align="right">

**Appx. 01494**

</div>

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ November 2019 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID TO DATE |
| 1 | Frank Waterhouse | Salary | $29,167 | $43,750 |
| 2 | Frank Waterhouse | Expense Reimbursement | $339 | $506 |
| 3 | Scott Ellington | Salary | $37,500 | $56,250 |
| 4 | Scott Ellington | Expense Reimbursement | $84 | $2,010 |
| 5 | James Dondero | Salary | $46,875 | $70,313 |
| 6 | James Dondero | Expense Reimbursement [1] | $11,255 | $15,269 |
| 7 | Thomas Surgent | Salary | $33,333 | $50,000 |
| 8 | Thomas Surgent | Expense Reimbursement | $224 | $248 |
| 9 | Trey Parker | Salary | $29,167 | $43,750 |
| 10 | Trey Parker | Expense Reimbursement | $207 | $425 |
| | TOTAL PAYMENTS TO INSIDERS | | $188,151 | $282,519 |

[1] The total amount of reimbursements also included $83,358 for use of the credit card by the Debtor for office related expenses such as subscriptions, employee lunches, vending supplies, IT equipment/software, employee gifts/awards, training, postage and charitable donations.

| | PROFESSIONALS [2] | | | | | |
|---|---|---|---|---|---|---|
| | NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | TOTAL PAYMENTS TO PROFESSIONALS | | | $0 | $0 | $0 |

2 Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

Appx. 01495

**Monthly Operating Report**
**ACCRUAL BASIS-7**

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:**      November 2019

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | x | |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED
EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

  2   $1,206,592 of funds paid from non-debtor in possession accounts, while those accounts were in the process of being opened.
  3   Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for
       further discussion.
  4   Payments have been made on prepetition liabilities, as approved in the critical vendor motion.

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN
CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION
BELOW.  ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT 90

Case 3:21-cv-00881-X   Document 177-48   Filed 01/09/24   Page 114 of 200   PageID 40506
Case 19-34054-sgj11 Doc 1473 Filed 11/24/20   Entered 11/24/20 10:24:41   Page 171 of
178

**EXHIBIT C**

**LIQUIDATION ANALYSIS/FINANCIAL PROJECTIONS**

**Exhibit 23**

**Appx. 01498**

*Highland Capital Management, L.P.*
*Disclaimer For Financial Projections*

This document includes financial projections for July 2020 through December 2022 (the "Projections") for Highland Capital Management, L.P. "Company"). These Projections have been prepared by DSI with input from management at the Company. The historical information utilized in these Projections has not been audited or reviewed for accuracy by DSI.

This Memorandum includes certain statements, estimates and forecasts provided by the Company with respect to the Company's anticipated future performance. These estimates and forecasts contain significant elements of subjective judgment and analysis that may or may not prove to be accurate or correct. There can be no assurance that these statements, estimates and forecasts will be attained and actual outcomes and results may differ materially from what is estimated or forecast herein.

These Projections should not be regarded as a representation of DSI that the projected results will be achieved.

Management may update or supplement these Projections in the future, however, DSI expressly disclaims any obligation to update its report.

These Projections were not prepared with a view toward compliance with published guidelines of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding historical financial statements, projections or forecasts.

*Highland Capital Management, L.P.*
*Statement of Assumptions*

A.  Plan effective date is January 31 ,2021.

B.  All investment assets are sold by December 31, 2022.

C.  All demand notes are collected in the year 2021.

D.  All notes receivable with maturity dates beyond 12/31/2022 are sold in Q4 2022; in the interim interest income and principal payments are collected as they become due.

E.  Fixed assets used in daily business operations are sold in February 2021.

F.  Accrual for employee bonuses as of January 2021 are reversed and not paid.

G.  All Management advisory or shared service contracts are terminated on their terms by the effective date or shortly thereafter

H.  Post-effective date, the reorganized Debtor would retain three HCMLP employees as contractors to help monetize the remaining assets.

I.  Litigation Trustee budget is $6,500,000.

J.  Unrealized gains or losses are not recorded on a monthly basis; all gains or losses are recorded as realized gains or losses upon sale of asset.

K.  Plan does not provide for payment of interest to Class 8 holders of general unsecured claims, as set forth in the Plan. If holders of general unsecured claims receive 100% of their allowed claims, they would then be entitled to receive interest at the federal judgement rate, prior to any funds being available for claims or interest of junior priority.

L.  Plan assumes zero allowed claims for UBS, IFA, the HarbourVest entities (collectively "HV") and Hunter Mountain Investment Trust ("HM").

M.  Claim amounts listed in Plan vs. Liquidation schedule are subject to change; claim amounts in Class 8 assume $0 for UBS, IFA, HM and HV. Assumes RCP claims will offset against HCMLP's interest in fund and will not be paid from Debtor assets

N.  With the exception of Class 2 - Frontier, Classes 1-7 will be paid in full within 30 days of effective date.

O.  Class 7  payout limited to 85% of each individual creditor claim or in the aggregate $13.15 million. Plan currently projects Class 7 payout of $9.96 million.

P.  See below for Class 8 estimated payout schedule; payout is subject to certain assets being monetized by payout date:

   o  By September 30, 2021 - $50,000,000

   o  By March 31, 2022 – additional $50,000,000

   o  By June 30, 2022 – additional $25,000,000

   o  All remaining proceeds are assumed to be paid out on or soon after all remaining assets are monetized.

**Appx. 01500**

Case 3:21-cv-00881-X   Document 177-48   Filed 01/09/24   Page 117 of 200   PageID 40509
Case 19-34054-sgj11 Doc 1473 Filed 11/24/20   Entered 11/24/20 10:24:41   Page 174 of
178

*Highland Capital Management, L.P.*
*Plan Analysis Vs. Liquidation Analysis*
*(US $000's)*

| | Plan Analysis | Liquidation Analysis |
|---|---|---|
| Estimated cash on hand at 1/31/2020 | $        25,076 | $        25,076 |
| Estimated proceeds from monetization of assets [1][2] | 190,445 | 149,197 |
| Estimated expenses through final distribution[1][3] | (33,642) | (36,232) |
| Total estimated $ available for distribution | 181,879 | 138,042 |
| Less: Claims paid in full | | |
| Unclassified [4] | (1,078) | (1,078) |
| Administrative claims [5] | (10,574) | (10,574) |
| Class 1 - Jefferies Secured Claim | - | - |
| Class 2 - Frontier Secured Claim [6] | (5,463) | (5,463) |
| Class 3 - Other Secured Claims | (551) | (551) |
| Class 4 – Priority Non-Tax Claims | (16) | (16) |
| Class 5 - Retained Employee Claims | - | - |
| Class 6 - PTO Claims | - | - |
| Class 7 – Convenience Claims [7][8][9] | (10,255) | - |
| Subtotal | (27,937) | (17,682) |
| Estimated amount remaining for distribution to general unsecured claims | 153,942 | 120,359 |
| Class 8 – General Unsecured Claims [8][10] | 176,049 | 192,258 |
| Subtotal | 176,049 | 192,258 |
| % Distribution to general unsecured claims | 87.44% | 62.60% |
| Estimated amount remaining for distribution | - | - |
| Class 9 – Subordinated Claims | *no distribution* | *no distribution* |
| Class 10 – Class B/C Limited Partnership Interests | *no distribution* | *no distribution* |
| Class 11 – Class A Limited Partnership Interest | *no distribution* | *no distribution* |

*Footnotes:*
*[1] Assumes chapter 7 Trustee will not be able to achieve same sales proceeds as Claimant Trustee*
*    Assumes Chapter 7 Trustee engages new professionals to help liquidate assets*
*[2] Sale of investment assets, sale of fixed assets, collection of accounts receivable and interest receivable*
*[3] Estimated expenses through final distribution exclude non-cash expenses:*
*    Depreciation of $462 thousand in 2021*
*[4] Unclassified claims include payments for priority tax claims and settlements with previously approved by the Bankruptcy Court*
*[5] Represents $4.7 million in unpaid professional fees and $4.5 million in timing of payments to vendors*
*[6] Debtor will pay all unpaid interest estimated at $253 thousand of Frontier on effective date and continue to pay interest quarterly at 5.25% until Frontier's collateral is sold*
*[7] Claims payout limited to 85% of each individual creditor claim or limited to a total class payout of $13.15 million*
*[8] Class 7 includes $1.1 million estimate for aggregate contract rejections damage and Class 8 includes $1.4 million for contract rejection damages*
*[9] Assumes 3 claimants with allowed claims less than $2.5 million opt into Class 7 along with claims of Senior Employees*
*[10] Class estimates $0 allowed claim for the following creditors: IFA, HV, HM and UBS; assumes RCP claims offset against HCMLP interest in RCP fund*
*Notes:*
*All claim amounts are estimated as of November 20, 2020 and subject to change*

*Highland Capital Management, L.P.*
*Balance Sheet*
*(US $000's)*

| | Actual Jun-20 | Actual Sep-20 | Forecast ---> Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | |
| Cash and Cash Equivalents | $ 14,994 | $ 5,888 | $ 28,342 | $ 4,934 | $ 96,913 | $ 90,428 | $ 106,803 | $ 52,322 | $ 23,641 | $ 21,344 | $ - |
| Other Current Assets | 13,182 | 13,651 | 10,559 | 9,629 | 7,746 | 7,329 | 5,396 | 6,054 | 6,723 | 7,406 | - |
| Investment Assets | 320,912 | 305,961 | 261,333 | 258,042 | 133,026 | 81,793 | 54,159 | 54,159 | 54,159 | 54,159 | - |
| Net Fixed Assets | 3,055 | 2,823 | 2,592 | 1,348 | - | - | - | - | - | - | - |
| **TOTAL ASSETS** | $ 352,142 | $ 328,323 | $ 302,826 | $ 273,952 | $ 237,684 | $ 179,550 | $ 166,358 | $ 112,535 | $ 84,523 | $ 82,910 | $ - |
| | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | |
| Post-petition Liabilities | $ 26,226 | $ 19,138 | $ 19,280 | $ 2,891 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Pre-petition Liabilities | 126,365 | 126,343 | 121,950 | - | - | - | - | - | - | - | - |
| Claims | | | | | | | | | | | |
| Unclassified | - | - | - | - | - | - | - | - | - | - | - |
| Class 1 – Jefferies Secured Claim | - | - | - | - | - | - | - | - | - | - | - |
| Class 2 - Frontier Secured Claim | - | - | - | 5,210 | - | - | - | - | - | - | - |
| Class 3 - Other Secured Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 4 – Priority Non-Tax Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 5 – Retained Employee Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 6 - PTO Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 7 – Convenience Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 8 – General Unsecured Claims | - | - | - | 176,049 | 176,049 | 126,049 | 126,049 | 76,049 | 51,049 | 51,049 | 22,107 |
| Class 9 – Subordinated Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 10 – Class B/C Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Class 11 – Class A Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Claim Payable | 126,365 | 126,343 | 121,950 | 181,259 | 176,049 | 126,049 | 126,049 | 76,049 | 51,049 | 51,049 | 22,107 |
| **TOTAL LIABILITIES** | $ 152,591 | 145,481 | 141,230 | 184,150 | 176,049 | 126,049 | 126,049 | 76,049 | 51,049 | 51,049 | 22,107 |
| | | | | | | | | | | | |
| Partners' Capital | 199,551 | 182,842 | 161,596 | 89,802 | 61,635 | 53,501 | 40,309 | 36,486 | 33,473 | 31,860 | (22,107) |
| **TOTAL LIABILITIES AND PARTNERS' CAPITAL** | $ 352,142 | $ 328,323 | $ 302,826 | $ 273,952 | $ 237,684 | $ 179,550 | $ 166,358 | $ 112,535 | $ 84,523 | $ 82,910 | $ - |

*Highland Capital Management, L.P.*
*Profit/Loss*
*(US $000's)*

| | Actual Jan 2020 to June 2020 Total | Actual 3 month ended Sept 2020 | Forecast ---> 3 month ended Dec 2020 | Total 2020 | 3 month ended Mar 2021 | 3 month ended Jun 2021 | 3 month ended Sept 2021 | 3 month ended Dec 2021 | Total 2021 |
|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | |
| Management Fees | $ 6,572 | $ 1,949 | $ 2,651 | $ 11,173 | $ 779 | $ - | $ - | $ - | $ 779 |
| Shared Service Fees | 7,672 | 3,765 | 3,788 | 15,225 | 1,263 | - | - | - | 1,263 |
| Other Income | 3,126 | 538 | 340 | 4,004 | 113 | - | - | - | 113 |
| Total revenue | $ 17,370 | $ 6,252 | $ 6,779 | $ 30,401 | $ 2,154 | $ - | $ - | $ - | 2,154 |
| | | | | | | | | | |
| Operating Expenses [1] | 13,328 | 9,171 | 9,079 | 31,579 | 8,428 | 1,646 | 1,807 | 2,655 | 14,536 |
| | | | | | | | | | |
| Income/(loss) From Operations | $ 4,042 | $ (2,918) | $ (2,301) | $ (1,177) | $ (6,274) | $ (1,646) | $ (1,807) | $ (2,655) | $ (12,381) |
| | | | | | | | | | |
| Professional Fees | 17,522 | 7,707 | 7,741 | 32,971 | 5,450 | 5,058 | 2,048 | 1,605 | 14,160 |
| | | | | | | | | | |
| Other Income/(Expenses) [2] | 2,302 | 1,518 | 1,057 | 4,878 | (59,016) | 573 | 423 | 423 | (57,598) |
| | | | | | | | | | |
| Operating Gain/(Loss) | $ (11,178) | $ (9,107) | $ (8,985) | $ (29,270) | $ (70,741) | $ (6,130) | $ (3,432) | $ (3,837) | $ (84,139) |
| | | | | | | | | | |
| **Realized and Unrealized Gain/(Loss)** | | | | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | - | (763) | 522 | - | - | (241) |
| Net Realized Gain/(Loss) on Sale of Investment | (28,418) | 1,549 | (12,167) | (39,036) | (290) | 19 | (4,702) | (8,006) | (12,979) |
| Net Change in Unrealized Gain/(Loss) of Investments | (29,929) | (7,450) | - | (37,380) | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | (94) | (94) | - | (22,578) | - | (1,349) | (23,927) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | (80,782) | (1,700) | - | (82,482) | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ (139,129) | $ (7,601) | $ (12,262) | $ (158,992) | $ (1,053) | $ (22,037) | $ (4,702) | $ (9,355) | $ (37,147) |
| | | | | | | | | | |
| Net Income | $ (150,307) | $ (16,708) | $ (21,247) | $ (188,262) | $ (71,794) | $ (28,167) | $ (8,134) | $ (13,192) | $ (121,287) |

Footnotes:
[1] Operating expenses include an adjustment in January 2021 to account
  for expenses that have not been accrued or paid prior to effective date.
[2] Other income and expenses of $61.2 million in January 2021 includes:
   [a] $77.7 million was expensed to record the increase of
     allowed claims.
   [b] Income of $15.8 million for the accrued, but unpaid payroll liability related to
     the Debtor's deferred bonus programs amount written-off.

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Forecast ---> 3 month ended Mar 2022 | 3 month ended Jun 2022 | 3 month ended Sept 2022 | 3 month ended Dec 2022 | Total 2022 | Plan |
|---|---|---|---|---|---|---|
| Revenue | | | | | | |
| Management Fees | $ - | $ - | $ - | $ - | $ - | $ 779 |
| Shared Service Fees | - | - | - | - | - | 1,263 |
| Other Income | - | - | - | - | - | 113 |
| Total revenue | $ - | $ - | $ - | $ - | $ - | $ 2,154 |
| | | | | | | |
| Operating Expenses | 1,443 | 643 | 758 | 1,088 | 3,932 | 18,468 |
| | | | | | | |
| Income/(loss) From Operations | $ (1,443) | $ (643) | $ (758) | $ (1,088) | $ (3,932) | $ (16,314) |
| | | | | | | |
| Professional Fees | 2,788 | 2,788 | 1,288 | 1,288 | 8,153 | 22,313 |
| | | | | | | |
| Other Income/(Expenses) | 408 | 419 | 434 | 184 | 1,444 | (56,154) |
| | | | | | | |
| Operating Gain/(Loss) | $ (3,823) | $ (3,013) | $ (1,613) | $ (2,193) | $ (10,641) | $ (94,780) |
| | | | | | | |
| Realized and Unrealized Gain/(Loss) | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | (51,775) | (51,775) | (52,016) |
| Net Realized Gain/(Loss) on Sale of Investment | - | - | - | - | - | (12,979) |
| Net Change in Unrealized Gain/(Loss) of Investments | - | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | (23,927) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ - | $ - | $ - | $ (51,775) | $ (51,775) | $ (88,922) |
| | | | | | | |
| Net Income | $ (3,823) | $ (3,013) | $ (1,613) | $ (53,967) | $ (62,415) | $ (183,702) |

Case 3:21-cv-00881-X   Document 177-48   Filed 01/09/24   Page 121 of 200   PageID 40513
Case 19-34054-sgj11 Doc 1473 Filed 11/24/20   Entered 11/24/20 10:24:41   Page 178 of
178

**Highland Capital Management, L.P.**
**Cash Flow Indirect**
**(US $000's)**

| | Forecast ----> | | | | | | | | | |
| | Sep-20 | Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|
| Net (Loss) Income | $ (16,708) | $ (21,247) | $ (71,794) | $ (28,167) | $ (8,134) | $ (13,192) | $ (3,823) | $ (3,013) | $ (1,613) | (53,967) |
| Cash Flow from Operating Activity | | | | | | | | | | |
| (Increase) / Decrease in Cash | | | | | | | | | | |
| Depreciation and amortization | 231 | 231 | 231 | 231 | - | - | - | - | - | - |
| Other realized (gain)/ loss | - | - | 763 | (522) | - | - | - | - | - | 51,775 |
| Investment realized (gain)/ loss | (1,549) | 12,262 | 290 | 22,559 | 4,702 | 9,355 | - | - | - | - |
| Unrealized (gain) / loss | (9,150) | - | - | - | - | - | - | - | - | - |
| (Increase) Decrease in Current Assets | (470) | 3,092 | 930 | 1,884 | 417 | 1,933 | (658) | (669) | (684) | 2,010 |
| Increase (Decrease) in Current Liabilities | (7,110) | (4,251) | (54,172) | (2,891) | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Operating Activities | (34,757) | (9,913) | (123,752) | (6,907) | (3,015) | (1,904) | (4,481) | (3,681) | (2,297) | (182) |
| | | | | | | | | | | |
| Cash Flow From Investing Activities | | | | | | | | | | |
| Proceeds from Sale of Fixed Assets | - | - | 250 | 1,639 | - | - | - | - | - | - |
| Proceeds from Investment Assets | 25,650 | 32,366 | 3,002 | 102,457 | 46,531 | 18,278 | - | - | - | 7,780 |
| Net Cash Increase / (Decrease) - Investing Activities | 25,650 | 32,366 | 3,252 | 104,096 | 46,531 | 18,278 | - | - | - | 7,780 |
| | | | | | | | | | | |
| Cash Flow from Financing Activities | | | | | | | | | | |
| Claims payable | - | - | (73,997) | - | - | - | - | - | - | - |
| Claim reclasses/(paid) | - | - | 181,259 | (5,210) | (50,000) | - | (50,000) | (25,000) | - | (28,942) |
| Maple Avenue Holdings | - | - | (4,975) | - | - | - | - | - | - | - |
| Frontier Note | - | - | (5,195) | - | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Financing Activities | - | - | 97,092 | (5,210) | (50,000) | - | (50,000) | (25,000) | - | (28,942) |
| | | | | | | | | | | |
| Net Change in Cash | $ (9,107) | $ 22,454 | $ (23,408) | $ 91,979 | $ (6,484) | $ 16,374 | $ (54,481) | $ (28,681) | $ (2,297) | (21,344) |
| Beginning Cash | 14,994 | 5,888 | 28,342 | 4,934 | 96,913 | 90,428 | 106,803 | 52,322 | 23,641 | 21,344 |
| Ending Cash | $ 5,887 | $ 28,342 | $ 4,934 | $ 96,913 | $ 90,428 | $ 106,803 | $ 52,322 | $ 23,641 | $ 21,344 | $ - |

# EXHIBIT 91

Appx. 01506

*Highland Capital Management, L.P.*
*Disclaimer For Financial Projections*

   This document includes financial projections for July 2020 through December 2022 (the "Projections") for Highland Capital Management, L.P. "Company"). These Projections have been prepared by DSI with input from management at the Company. The historical information utilized in these Projections has not been audited or reviewed for accuracy by DSI.

   This document includes certain statements, estimates and forecasts provided by the Company with respect to the Company's anticipated future performance. These estimates and forecasts contain significant elements of subjective judgment and analysis that may or may not prove to be accurate or correct. There can be no assurance that these statements, estimates and forecasts will be attained and actual outcomes and results may differ materially from what is estimated or forecast herein.

   These Projections should not be regarded as a representation of DSI that the projected results will be achieved.

   Management may update or supplement these Projections in the future, however, DSI expressly disclaims any obligation to update its report.

   These Projections were not prepared with a view toward compliance with published guidelines of the Securities and Exchange Commission or the American Institute of Certified Public Accountants regarding historical financial statements, projections or forecasts.



*Highland Capital Management, L.P.*
*Statement of Assumptions*

A. Plan effective date is March 1, 2021

B. All investment assets are sold by December 31, 2022.

C. All demand notes are collected in the year 2021; 3 term notes defaulted and have been demanded based on default provisions; payment estimated in 2021

D. Dugaboy term note with maturity date beyond 12/31/2022 are sold in Q1 2022; in the interim interest income and principal payments are not collected due to prepayment on note

E. Fixed assets currently used in daily operations are sold in June 2021 for $0

F. Highland bonus plan has been terminated in accordance with its terms. Accrual for employee bonuses as of January 2021 are reversed and not paid.

G. All Management advisory or shared service contracts are terminated on their terms by the effective date or shortly thereafter

H. Post-effective date, the reorganized Debtor would retain up to ten HCMLP employees (or hire similar employees) to help monetize the remaining assets.

I. Litigation Trustee budget is $6,500,000.

J. Unrealized gains or losses are not recorded on a monthly basis; all gains or losses are recorded as realized gains or losses upon sale of asset.

K. Plan does not provide for payment of interest to Class 8 holders of general unsecured claims, as set forth in the Plan. If holders of general unsecured claims receive 100% of their allowed claims, they would then be entitled to receive interest at the federal judgement rate, prior to any funds being available for claims or interest of junior priority.

L. Plan assumes zero allowed claims for IFA and Hunter Mountain Investment Trust ("HM"); UBS claim based on voting amount of $94.8 million, but Debtor and UBS have agreed in principal regarding UBS's allowed claim

M. Claim amounts listed in Plan vs. Liquidation schedule are subject to change; claim amounts in Class 8 assume $0 for IFA and HM, $94.8 million for UBS and $45 million HV. Assumes RCP claims will offset against HCMLP's interest in fund and will not be paid from Debtor assets

N. With the exception of Class 2 - Frontier, Classes 1-7 will be paid in full within 30 days of effective date.

O. Class 7  payout limited to 85% of each individual creditor claim or in the aggregate $13.15 million. Plan currently projects Class 7 payout of $10.3 million.

P. See below for Class 8 estimated payout schedule; payout is subject to certain assets being monetized by payout date (no Plan requirement to do so):

    o  By September 30, 2021 - $50,000,000

    o  By March 31, 2022 – additional $50,000,000

    o  By June 30, 2022 – additional $25,000,000

    o  All remaining proceeds are assumed to be paid out on or soon after all remaining assets are monetized.

Q. Assumptions subject to revision based on business decision and performance of the business

1/28/2021

*Highland Capital Management, L.P.*
*Plan Analysis Vs. Liquidation Analysis*
*(US $000's)*

| | Plan Analysis | Liquidation Analysis |
|---|---:|---:|
| Estimated cash on hand at 1/31/2020 | $ 24,290 | $ 24,290 |
| Estimated proceeds from monetization of assets [1][2] | 257,941 | 191,946 |
| Estimated expenses through final distribution[1][3] | (59,573) | (41,488) |
| Total estimated $ available for distribution | 222,658 | 174,748 |
| Less: Claims paid in full | | |
| Unclassified [4] | (1,080) | (1,080) |
| Administrative claims [5] | (10,574) | (10,574) |
| Class 1 - Jefferies Secured Claim | - | - |
| Class 2 - Frontier Secured Claim [6] | (5,781) | (5,781) |
| Class 3 - Other Secured Claims | (62) | (62) |
| Class 4 – Priority Non-Tax Claims | (16) | (16) |
| Class 5 - Retained Employee Claims | - | - |
| Class 6 - PTO Claims [5] | - | - |
| Class 7 – Convenience Claims [7][8] | (10,280) | - |
| Subtotal | (27,793) | (17,514) |
| Estimated amount remaining for distribution to general unsecured claims | 194,865 | 157,235 |
| % Distribution to Class 7 (Class 7 claims included in Class 8 in Liquidation scenario) | 85.00% | 0.00% |
| Class 8 – General Unsecured Claims [8][10] | 313,588 | 326,468 |
| Subtotal | 313,588 | 326,468 |
| % Distribution to general unsecured claims | 62.14% | 48.16% |
| Estimated amount remaining for distribution | - | - |
| Class 9 – Subordinated Claims | no distribution | no distribution |
| Class 10 – Class B/C Limited Partnership Interests | no distribution | no distribution |
| Class 11 – Class A Limited Partnership Interest | no distribution | no distribution |

*Footnotes:*
[1] Assumes chapter 7 Trustee will not be able to achieve same sales proceeds as Claimant Trustee
   Assumes Chapter 7 Trustee engages new professionals to help liquidate assets and terminates any management agreements with funds or CLOS
[2] Sale of investment assets, sale of fixed assets, collection of accounts receivable and interest receivable; Plan includes revenue from managing CLOs
[3] Estimated expenses through final distribution exclude non-cash expenses:
   Depreciation of $462 thousand in 2021; Bad debt of $124K in 2021
[4] Unclassified claims include payments for priority tax claims and settlements with previously approved by the Bankruptcy Court
[5] Represents $4.7 million in unpaid professional fees, $4.5 million in timing of payments to vendors and $1.2 million to pay PTO
[6] Debtor will pay all unpaid interest estimated at $253 thousand of Frontier on effective date and continue to pay interest quarterly at 5.25% until Frontier's collateral is sold
[7] Claims payout limited to 85% of each individual creditor claim or limited to a total class payout of $13.15 million
[8] Plan: Class 7 includes $1.2 million estimate for aggregate contract rejections damage; Liquidation Class 8 includes $2.0 million for estimated rejection damages
[10] Class estimates $0 allowed claim for the following creditors: IFA and HM; assumes RCP claims offset against HCMLP interest in RCP fund
   UBS claim included at voting amount of $94.8 million. Debtor and UBS have agreed in principal regarding UBS's allowed claim

*Notes:*
*All claim amounts are estimated as of January 26, 2020 and subject to change*

**Highland Capital Management, L.P.**
**Balance Sheet**
**(US $000's)**

| | Actual Jun-20 | Actual Sep-20 | Forecast ---> Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | |
| Cash and Cash Equivalents | $ 14,994 | $ 5,888 | $ 31,047 | $ 10,328 | $ 40,063 | $ 42,833 | $ 135,137 | $ 80,733 | $ 72,238 | $ 69,368 | $ - |
| Other Current Assets | 13,182 | 13,651 | 13,784 | 15,172 | 14,671 | 14,220 | 9,943 | 8,268 | 8,417 | 8,567 | - |
| Investment Assets | 320,912 | 305,961 | 283,812 | 280,946 | 233,234 | 171,174 | 47,503 | 47,503 | 25,888 | 25,888 | - |
| Net Fixed Assets | 3,055 | 2,823 | 2,592 | 1,348 | - | - | - | - | - | - | - |
| **TOTAL ASSETS** | $ 352,142 | $ 328,323 | $ 331,235 | $ 307,793 | $ 287,968 | $ 228,227 | $ 192,583 | $ 136,504 | $ 106,542 | $ 103,823 | $ - |
| | | | | | | | | | | | |
| **Liabilities** | | | | | | | | | | | |
| Post-petition Liabilities | $ 142,730 | $ 135,597 | $ 131,230 | $ 12,891 | $ 10,249 | $ 10,503 | $ - | $ - | $ - | $ - | $ - |
| Pre-petition Liabilities | 9,861 | 9,884 | 10,000 | - | - | - | - | - | - | - | - |
| Claims | | | | | | | | | | | |
| Unclassified | - | - | - | - | - | - | - | - | - | - | - |
| Class 1 – Jefferies Secured Claim | - | - | - | - | - | - | - | - | - | - | - |
| Class 2 - Frontier Secured Claim | - | - | - | 5,528 | - | - | - | - | - | - | - |
| Class 3 - Other Secured Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 4 – Priority Non-Tax Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 5 – Retained Employee Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 6 - PTO Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 7 – Convenience Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 8 – General Unsecured Claims | - | - | - | 313,588 | 313,588 | 263,588 | 263,588 | 213,588 | 188,588 | 188,588 | 118,723 |
| Class 9 – Subordinated Claims | - | - | - | - | - | - | - | - | - | - | - |
| Class 10 – Class B/C Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Class 11 – Class A Limited Partnership Interests | - | - | - | - | - | - | - | - | - | - | - |
| Claim Payable | 9,861 | 9,884 | 10,000 | 319,115 | 313,588 | 263,588 | 263,588 | 213,588 | 188,588 | 188,588 | 118,723 |
| **TOTAL LIABILITIES** | $ 152,591 | 145,481 | 141,230 | 332,007 | 323,836 | 274,091 | 263,588 | 213,588 | 188,588 | 188,588 | 118,723 |
| | | | | | | | | | | | |
| Partners' Capital | 199,551 | 182,842 | 190,005 | (24,214) | (35,868) | (45,863) | (71,004) | (77,083) | (82,045) | (84,764) | (118,722) |
| **TOTAL LIABILITIES AND PARTNERS' CAPITAL** | $ 352,142 | $ 328,323 | $ 331,235 | $ 307,793 | $ 287,968 | $ 228,227 | $ 192,583 | $ 136,504 | $ 106,543 | $ 103,823 | $ - |

1/28/2021

**Highland Capital Management, L.P.**
*Profit/Loss*
*(US $000's)*

| | Actual Jan 2020 to June 2020 Total | Actual 3 month ended Sept 2020 | Forecast ---> 3 month ended Dec 2020 | Total 2020 | 3 month ended Mar 2021 | 3 month ended Jun 2021 | 3 month ended Sept 2021 | 3 month ended Dec 2021 | Total 2021 |
|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | |
| Management Fees | $ 6,572 | $ 1,949 | $ 2,804 | $ 11,325 | $ 1,329 | $ 856 | $ 856 | 856 | $ 3,897 |
| Shared Service Fees | 7,672 | 3,765 | 3,788 | 15,225 | 1,373 | 45 | 45 | - | 1,463 |
| Other Income | 3,126 | 538 | 340 | 4,004 | 316 | 274 | - | - | 591 |
| Total revenue | $ 17,370 | $ 6,252 | $ 6,931 | $ 30,554 | $ 3,018 | $ 1,176 | $ 901 | $ 856 | $ 5,951 |
| | | | | | | | | | |
| Operating Expenses [1] | 13,328 | 9,171 | 9,399 | 31,899 | 12,168 | 4,897 | 3,973 | 3,333 | 24,371 |
| | | | | | | | | | |
| Income/(loss) From Operations | $ 4,042 | $ (2,918) | $ (2,468) | $ (1,345) | $ (9,149) | $ (3,722) | $ (3,072) | $ (2,477) | $ (18,420) |
| | | | | | | | | | |
| Professional Fees | 17,522 | 7,707 | 8,351 | 33,581 | 7,478 | 6,583 | 2,268 | 1,810 | 18,138 |
| | | | | | | | | | |
| Other Income/(Expenses) [2] | 2,302 | 1,518 | 1,059 | 4,879 | (196,410) | 326 | (93) | 29 | (196,149) |
| | | | | | | | | | |
| Operating Gain/(Loss) | $ (11,178) | $ (9,107) | $ (9,761) | $ (30,046) | $ (213,037) | $ (9,978) | $ (5,433) | $ (4,259) | $ (232,707) |
| | | | | | | | | | |
| **Realized and Unrealized Gain/(Loss)** | | | | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | - | (1,013) | 522 | - | - | (491) |
| Net Realized Gain/(Loss) on Sale of Investment | (28,418) | 1,549 | (8,850) | (35,719) | (168) | (2,198) | (4,563) | (7,581) | (14,510) |
| Net Change in Unrealized Gain/(Loss) of Investments | (29,929) | (7,450) | 4,523 | (32,857) | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | (364) | (364) | - | - | - | (13,301) | (13,301) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | (80,782) | (1,700) | - | (82,482) | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ (139,129) | $ (7,601) | $ (4,692) | $ (151,422) | $ (1,182) | $ (1,675) | $ (4,563) | $ (20,882) | $ (28,302) |
| | | | | | | | | | |
| Net Income | $ (150,307) | $ (16,708) | $ (14,453) | $ (181,468) | $ (214,219) | $ (11,654) | $ (9,996) | $ (25,141) | $ (261,009) |

**Footnotes:**
[1] Operating expenses include an adjustment in January 2021 to account
   for expenses that have not been accrued or paid prior to effective date.
[2] Other income and expenses of $197.3 million in Q1 2021 includes:
   [a] $209.7 million was expensed to record for the increase of
      allowed claims.
   [b] Income of $11.7 million for the accrued, but unpaid payroll liability related to
      the Debtor's deferred bonus programs amount written-off.

**Highland Capital Management, L.P.**
**Profit/Loss**
**(US $000's)**

| | 3 month ended Mar 2022 | 3 month ended Jun 2022 | 3 month ended Sept 2022 | 3 month ended Dec 2022 | Total 2022 | Plan |
|---|---|---|---|---|---|---|
| | Forecast ---> | | | | | |
| Revenue | | | | | | |
| Management Fees | $ 580 | $ 580 | $ 580 | $ 580 | $ 2,318 | $ 6,215 |
| Shared Service Fees | - | - | - | - | - | 1,463 |
| Other Income | - | - | - | - | - | 591 |
| Total revenue | $ 580 | $ 580 | $ 580 | $ 580 | $ 2,318 | $ 8,269 |
| | | | | | | |
| Operating Expenses | 3,635 | 2,679 | 1,739 | 6,425 | 14,478 | 38,849 |
| | | | | | | |
| Income/(loss) From Operations | $ (3,056) | $ (2,099) | $ (1,159) | $ (5,846) | $ (12,160) | $ (30,580) |
| | | | | | | |
| Professional Fees | 2,921 | 2,761 | 1,461 | 2,176 | 9,318 | 27,455 |
| | | | | | | |
| Other Income/(Expenses) | (103) | (101) | (100) | (350) | (654) | (196,803) |
| | | | | | | |
| Operating Gain/(Loss) | $ (6,079) | $ (4,961) | $ (2,719) | $ (8,371) | $ (22,131) | $ (254,838) |
| | | | | | | |
| Realized and Unrealized Gain/(Loss) | | | | | | |
| Other Realized Gains/(Loss) | - | - | - | (25,587) | (25,587) | (26,078) |
| Net Realized Gain/(Loss) on Sale of Investment | - | - | - | - | - | (14,510) |
| Net Change in Unrealized Gain/(Loss) of Investments | - | - | - | - | - | - |
| Net Realized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | (13,301) |
| Net Change in Unrealized Gain /(Loss) from Equity Method Investees | - | - | - | - | - | - |
| Total Realized and Unrealized Gain/(Loss) | $ - | $ - | $ - | $ (25,587) | $ (25,587) | $ (53,889) |
| | | | | | | |
| Net Income | $ (6,079) | $ (4,961) | $ (2,719) | $ (33,958) | $ (47,718) | $ (308,727) |

1/28/2021

Appx. 01512

**Highland Capital Management, L.P.**
**Cash Flow Indirect**
**(US $000's)**

| | | Forecast ----> | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sep-20 | Dec-20 | Mar-21 | Jun-21 | Sep-21 | Dec-21 | Mar-22 | Jun-22 | Sep-22 | Dec-22 |
| Net (Loss) Income | $ (16,708) | $ (14,453) | $ (214,219) | $ (11,654) | $ (9,996) | (25,141) | $ (6,079) | $ (4,961) | (2,719) | (33,958) |
| **Cash Flow from Operating Activity** | | | | | | | | | | |
| (Increase) / Decrease in Cash | | | | | | | | | | |
| Depreciation and amortization | 231 | 231 | 231 | 231 | - | - | - | - | - | - |
| Other realized (gain)/ loss | - | - | 1,013 | (522) | - | - | - | - | - | 25,587 |
| Investment realized (gain)/ loss | (1,549) | 9,214 | 168 | 2,198 | 4,563 | 20,882 | - | - | - | - |
| Unrealized (gain) / loss | (9,150) | 4,523 | - | - | - | - | - | - | - | - |
| (Increase) Decrease in Current Assets | (470) | (133) | (1,388) | 501 | 450 | 4,277 | 1,675 | (149) | (150) | 908 |
| Increase (Decrease) in Current Liabilities | (7,110) | (4,251) | (44,172) | (2,643) | 255 | (10,503) | - | - | - | - |
| Net Cash Increase / (Decrease) - Operating Activities | (34,757) | (4,868) | (258,366) | (11,889) | (4,727) | (10,485) | (4,404) | (5,110) | (2,870) | (7,463) |
| | | | | | | | | | | |
| **Cash Flow From Investing Activities** | | | | | | | | | | |
| Proceeds from Sale of Fixed Assets | - | - | | | | | - | | - | |
| Proceeds from Investment Assets | 25,650 | 30,027 | 2,698 | 47,152 | 57,498 | 102,788 | - | 21,616 | - | 7,960 |
| Net Cash Increase / (Decrease) - Investing Activities | 25,650 | 30,027 | 2,698 | 47,152 | 57,498 | 102,788 | - | 21,616 | - | 7,960 |
| | | | | | | | | | | |
| **Cash Flow from Financing Activities** | | | | | | | | | | |
| Claims payable | - | - | (73,997) | - | - | - | - | - | | - |
| Claim reclasses/(paid) | - | - | 319,115 | (5,528) | (50,000) | - | (50,000) | (25,000) | - | (69,865) |
| Maple Avenue Holdings | - | - | (4,975) | - | - | - | - | - | - | - |
| Frontier Note | - | - | (5,195) | - | - | - | - | - | - | - |
| Net Cash Increase / (Decrease) - Financing Activities | - | - | 234,948 | (5,528) | (50,000) | - | (50,000) | (25,000) | - | (69,865) |
| | | | | | | | | | | |
| Net Change in Cash | $ (9,107) | $ 25,159 | $ (20,719) | $ 29,735 | $ 2,770 | $ 92,303 | $ (54,404) | $ (8,495) | $ (2,870) | (69,368) |
| Beginning Cash | 14,994 | 5,888 | 31,047 | 10,328 | 40,063 | 42,833 | 135,137 | 80,733 | 72,238 | 69,368 |
| Ending Cash | $ 5,888 | $ 31,047 | $ 10,328 | $ 40,063 | $ 42,833 | $ 135,137 | $ 80,733 | $ 72,238 | $ 69,368 | $ - |

Appx. 01513

# EXHIBIT 92

| Engagement: | Highland Capital Management LP - 2017 Audit |
|---|---|
| Period end date: | 12/31/2017 |
| Audit unit: | Highland Capital Management LP - 2017 Audit-HQ |
| Associated Risks: | Risk of material misstatement in Other Assets |
| FSLI: | Other Assets |
| EGA title: | Test due from and notes receivable |
| Ref. no.: | 3025-1510 |

## Rollforward - Notes receivable

| When more than one preparer was involved in the completion of this EGA, document the names of the team members involved and the procedures performed. | *[Document the initials or names of team members and procedures performed (e.g., Jane Doe performed step a) below)]*<br><br>**Prepared by Hilda Garcia, PwC** |
|---|---|

| Procedures | Results | Links |
|---|---|---|
| a) Obtain a rollforward schedule of notes receivable balances, agree balances and test mathematical accuracy. | ☐ Obtained a rollforward schedule of notes receivable balances. Attached in tab *'Results Template'* or provided link.<br><br>**Note that the team obtained the closing balances of notes and accounts receivable by account type/entity. Attached schedule in the <Detail> tab. Additionally, note that the due from receivables listing was target tested for accounts greater than $10M and the remaining population was non-stat tested. Refer to selections made and testing performed in the < Results Template>**<br><br><div align="center">**AND**</div><br>☐ Agreed balances to prior period workpapers and closing balances to the general ledger, and<br><br>☐ No reconciling items noted, or<br>☐ Reconciling items are not significant or unusual (when considered both individually and in the aggregate); therefore no further testing performed, or<br>*[Document reconciling items noted and rationale for determination]*<br><br>☐ Significant or unusual reconciling items noted; therefore performed further testing as follows:<br><br>*[Document reconciling items noted and testing performed or provide link]*<br><br><div align="center">**AND**</div><br>☐ Tested mathematical accuracy of the rollforward schedule, as follows:<br>*[Document schedule name(s), details of testing performed or provide link to tickmarked schedule]*<br><br>**Refer to the <Detail> tab for procedures performed.**<br>☐ Verified spreadsheet formula.<br>☐ Manually added or recalculated.<br>☐ Application controls over related report tested.<br>☐ Other [Specify below].<br>*[Document details of testing, if not included in the linked schedule]* | |

Appx. 01515

**Rollforward - Notes receivable**

| b) | Agree activity within the rollforward to testing performed. | ☐ Not applicable.  There was no current period activity, or<br>☑ Agreed activity within the rollforward to testing performed in the following EGAs (check those that apply):<br>  ☑ Total additions to testing performed in the EGA *Test additions - Notes receivable.*<br>  ☑ Total payments to testing performed in the EGA *Test payments - Notes receivable.*<br>  **The team tested additions and payments within this EGA. Refer to the subsequent tabs for procedures performed.**<br>                     **AND**<br>☑ Obtained appropriate supporting documentation for any other adjustments within the rollforward, and:<br>  ☐ Tested a selection of adjustments (test(s) added from Aura Tests of Details template), or<br>  *[Document other items tested and the details of work performed or provide link]*<br><br>  ☐ Tested all adjustments.<br>  *[Document other items tested and the details of work performed or provide link]*<br><br>  **The audit team tested all adjustments for notes selected for testing. Refer to the <Results Template> tab for testing performed.** | Results Template |

| Rollforward - Notes receivable | | |
|---|---|---|
| c)   Obtain detailed listing(s) of the ending balance of notes receivable by asset, agree balances and test mathematical accuracy.<br><br>*Service Delivery Center activities:*<br><br><br><br><br><br>*Tests of Details* | ☐   Not applicable. The rollforward in procedure a) was performed at the individual asset level, or<br><br>☐   Obtained detailed listing(s) of the ending balance of notes receivable.<br>*[Document details of accounts selected or provide link to detailed listing(s) obtained]*<br><br>**Refer to the <Results Template> tab for procedures performed. Additionally, note that the due from receivables listing was target tested for accounts greater than $10M and the remaining population was non-stat tested. Refer to testing performed in the < Results Template>**<br><br><div align="center">**AND**</div><br>☑   Agreed the total per the detailed listing to the ending balance per the rollforward, and:<br>   ☑   No reconciling items noted, or<br>   ☐   Reconciling items are not significant or unusual (when considered both individually and in the aggregate); therefore no further testing performed, or<br>*[Document reconciling items noted and rationale for determination]*<br><br>   ☐   Significant or unusual reconciling items noted; therefore performed further testing as follows:<br><br>*[Document reconciling items noted and testing performed or provide link]*<br><br><div align="center">**AND**</div><br>☐   Tested mathematical accuracy of the detailed listing, as follows:<br>*[Document schedule name(s), details of testing performed or provide link to tickmarked schedule]*<br>   ☑   Verified spreadsheet formula.<br>   ☐   Manually added or recalculated.<br>   ☐   Application controls over related report tested.<br>   ☐   Other [Specify below].<br>   *[Document details of testing, if not included in the linked schedule]* | Results Template |
| d)   Define what constitutes an unexpected or unusual balance and scan the subledgers or detailed listing of ending balances of notes receivable by asset for unexpected (e.g. credit balances, large balances not confirmed, etc.) or unusual items. | ☐   Defined what constitutes an unexpected or unusual balance, as follows:<br>*[Define and document what constitutes an unexpected or unusual balance]*<br><br>**An unexpected or unusual balance is defined as anything that is not considered in Due from Affiliate, within the details. The engagement team performed a Credit Risk Analysis over the material balances within the <Detail> tab to ensure that there were no unexpected or unusual loans. Refer to the <Credit Risk Analysis> tab for the engagement team analysis over the related balances.** | |

**Appx. 01517**

| Rollforward - Notes receivable | | |
|---|---|---|
| | **AND**<br>☑ Scanned the subledgers or detailed listings noting the following:<br>   ☑ No unexpected or unusual balances, or<br>   ☐ Unusual or unexpected balances identified:<br>   *[Document details of unexpected or unusual balances identified and resolution]* | |

| *Additional engagement specific procedures, if necessary* | |
|---|---|
| **Procedures** | **Results** |
| [Document engagement specific additional procedures, if necessary]<br>N/A | [Document results of additional procedures]<br>N/A |

Appx. 01518

**HCMLP**
**Various Assets - Detail**
**12/31/2017**
Prepared by Hilda Garcia, PwC

**Note:** The below detail is for the Due From and Notes Receivable FSLI's. The team tested 100% of the Notes Receivable balance and performed a target test in addition non-stat sample over the Due From Affiliate balance to ensure adequate coverage. Refer below for testing references.

**LS**

**Due from affiliates**



| | | | |
|---|---|---:|---|
| 14010 | CASH INTEREST RECEIVABLE | 935,693 | |
| 14110 | DIVIDENDS RECEIVABLE | 23,760 | |
| 14030 | INVESTMENT INTEREST RECEIVABLE | 216,138 | |
| 14140 | SHARED SVCS FEE RECVBL - PYXIS | 207,501 | |
| 14142 | SHARED SVCS FEE RECVBL - HCLOH | 6,020 | |
| 14145 | SHARED SVCS FEE RECVBL - ACIS | 337,643 | |
| 14146 | SHARED SVCS FEE RECVBL - NEXPOINT | 55,187 | |
| 14148 | SHARED SVCS FEE RECVBL - RAND ADVISORS | 2 | |
| 14149 | SHARED SVCS FEE RECVBL - NREA | 592,251 | **NS** |
| 14530 | DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | 14,122,352 | **TT** |
| 14531 | DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | 4,895,468 | **NS** |
| 14532 | DUE FROM NEXPOINT ADVISORS | 29,721,919 | **TT** |
| 14533 | DUE FROM HCRE PARTNERS | 8,457,837 | **NS** |
| 14565 | DUE FROM OTHER - TAX LOANS | 15,728,031 | **TT** |
| 14575 | DUE FROM HIGHLAND CAPITAL OF NEW YORK | 4,519,542 | |
| 14580 | DUE FROM NEXBANK | 60,000 | |
| 14585 | DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | 60,663,612 | **TT** |
| 14595 | DUE FROM HIGHLAND CAPITAL KOREA | 2,320,798 | |
| 14750 | LONG TERM NOTES RECEIVABLE | 22,860,559 | **TT** |
| | **Total** | 165,724,312 | **Rc** |

| SUMMARY | Rc |
|---|---:|
| **Total Due From** | **165,724,312** |
| Target Test Count | 5 |
| Total Targeted | 143,096,473 |
| Total Non Stat | 13,945,556 |
| # of selections | 3 |
| Total Tested | 157,042,029 |

TOD Form: Test Due from Affiliates

| Interest Income Tested | |
|---|---:|
| HCMSI | 501,807 |
| Dondero Tax Loan | 266,997 |
| Dugaboy | 712,821 |
| HCRE | 284,231 |
| Hunter Mountain | 1,547,673 |
| NexPoint | 1705711 |
| Total Tested | 3,313,529 |

**Tickmark Legend**
**^** Footed without exception.
**Rc** Recalculated amount. Refer to the respective cell's formula for further details.
**LS** Amount agrees to the lead schedule linked below.
   Lead schedule - Assets
**NS** Amount was selected for Non-Statistical Sampling Testing. Refer to the Non-Stat template linked below for further information and to the <Results Template> tab for testing performed.
   TOD Form: Test Due from Affiliates
**TT** Due from affiliate amount was selected for Target Testing. Refer to the Target Testing template linked below for further information and to the <Results Template> tab for testing performed.
   TOD Form: Test Due from Affiliates
**<PM** Remaining balance is below performance materiality, waive further review.

**Tickmark Legend**
**Rc** Recalculated amount. Refer to the respective cell's formula for further details.
**LS** Agrees to the lead schedule linked below without exception.
   Lead schedule - Assets
**NS** The

   TOD Form: Test notes receivables, due from, and other assets
**TT** The

**Appx. 01519**

Highland Capital Management, L.P.,
Credit Risk Analysis
12/31/2017
Prepared by Hilda Garcia, PwC

<Details>

**Note:** The audit team performed a credit analysis for all material (above performance materiality) notes receivable in order to determine the nature and intent of each note as well as assess the ability of the payee to pay the note. Refer to the team's analysis below.

| Account # | Counter Party | Amount | Interest Rate | Maturity Date | Nature | Recoverability |
|---|---|---|---|---|---|---|
| 14530 | Highland Capital Management Services (James Dondero majority owner) | 14,122,352 | 2.75% | 12/31/2047 | Highland Capital Management Services as an S Corp that acts as a platform investment company for one-off investments. Loans are provided to this entity primarily in order to provide seed capital for new investments. | Based on our testing performed over this loan, the engagement team notes that all the previous loans issued to HCMSI have been restructured and consolidated into one loan with a maturity date of 12/31/2047 and a yearly installment payment plan. The audit team also vouched interest payments being made by the fund, which also signifies that they have the ability to continue to make their payments. As such, the team is comfortable that the fund will be able to pay the loan when it becomes due. Further note that HCM Services has also paid back $6.1 M to HCMLP in principal payments for 2017 (vouched by engagement team) and paid off all the interest owed to the fund as of 12/31/2017. As the fund is showing an ability by continuing to make payments subsequent to year end and an installment payment plan has been implemented, the audit team is comfortable that the entity has the ability to pay down this loan when it becomes due. Furthermore, Jim Dondero owns more than 70% of this entity. |
| 14531 | Highland Capital Fund Advisors | 4,895,468 | 2.62% | On demand but not before 5/31/2019 | Loans are made to HCMF for the fund's operational purposes. | Per review of the audited HCMF financial statements, the engagement team notes that the fund is realizing profits and has a positive cash flow. Based on the team's going concern considerations for that fund, the expectation is that the fund will be in positive partners capital by the next fiscal year. Based on the profit and improving performance of the fund, the team is comfortable that they will be able to pay the loan when it becomes due. |
| 14532 | Nexpoint Advisors | 29,721,919 | 6% | 12/31/2047 | Loans are made to Nexpoint for the fund's operational purposes. | Per review of the audited Nexpoint financial statements, the engagement team notes that the fund is realizing profits and has a positive cash flow. Based on the team's going concern considerations for that fund, the expectation is that the fund will be in negative partners' capital balance in the coming years as it continues to improve performance and does not over distribute partners' capital. The engagement team additionally notes that NPA has stopped earning management fees in the current year to the BDC (Nexpoint Capital Strategies) which is expected to significantly increase their revenue for future period. Based on the profit and improving performance of the fund, the team is comfortable that they will be able to pay the loan installments as they become due. |
| 14533 | HCRE Partners (James Dondero) | 8,457,837 | Varies | On demand and 12/31/2047 | HCRE Partners is a real estate investment entity that invests in opportunistic real estate investments and historically has realized substantial gains. Loans are provided to this entity primarily in order to provide seed capital for new investments. Note that 31% of this balance is due on demand. The remaining 69% is made up of a restructured loan that has a maturity date of 12/31/2047. | Per discussion with Dave Klos, HCMLP, the audit team notes that these loans are made at a high interest rate in order to encourage the fund to pay off the loan quickly. Based on our testing performed over this loan, the engagement team notes that the loans issued to HCRE went through a restructure in the current year. As such, 31% of the HCRE balance is due on demand and the remaining 69% is made up of a restructured loan that has a maturity date of 12/31/2047 and implements an installment plan over 30 years. The audit team also vouched interest and principal payments being made by the fund, which also signifies that they have the ability to continue to make their payments. As such, the team is comfortable that the fund will be able to pay the loan when it becomes due. Furthermore, Jim Dondero owns more than 70% of this entity. |
| 14565 | James Dondero | 15,728,031 | 2.03%-2.25% | On demand and 12/31/2047 | Related to Loans given to Limited Partners within the fund including James Dondero and Mark Okada in order to satisfy tax liability. Both have little basis in the fund, therefore a tax loan was given instead of an equity distribution. Note that James Dondero's portion was 92% of this balance and has a maturity date of 12/31/2047. | Per review of the Nexpoint Credit Strategy Fund form 13D filed with the SEC on 5/8/18, the engagement team notes that James Dondero owns 17.6% of this fund. Per review of the audited 12/31/17 financial statements for the fund, we note a total Net Asset Value of $592,308,994, which leaves Dondero's ownership value in the fund at $105,431,000. Additionally, the team notes that per NexPoint Residential Trust, Inc. form DEF 14A filed with the SEC on 4/11/2018, James Dondero also owns 19.98% of NexPoint Residential Trust. Per review of the audited 12/31/17 financial statements for NXRT, we note a total Net Asset Value of $239,444,000 which leaves Dondero's ownership value in the fund at $47,840,911. Based solely on these two investment values ($153,271,912 value), not considering his extensive ownership of other assets, the team notes that Mr. Dondero has significant net worth in excess of the amount that is payable to HCMLP and therefore he has the ability to pay the loan. We note that because NHF is a publicly traded fund, he has the ability to sell his shares or transfer them back to HCMLP to satisfy the debt. |
| 14750 | Dugaboy (James Dondero) | 22,860,559 | 3.26% | 12/31/2047 | The audit team notes that this note was primarily made in order to donate assets held by the fund to charity. Therefore, the fund sold assets in exchange for a Note Payable ultimately from Dugaboy, of which the primary beneficiary is James Dondero. | See above. |
| 14585 | Hunter Mountain Investment Trust (James Dondero) | 60,683,612 | 2.61% | On demand | Note that Hunter Mountain purchased 99.5% of HCMLP (verified through capital funding). This loan was originally made for seller financing of the purchase of HCMLP as a part of the purchase price was paid in cash and a portion was financed as a note payable to HCMLP. | As Hunter Mountain owns 99.5% of HCMLP (verified through capital funding), the audit team notes that if Hunter Mountain did not have the ability to pay when the note became due, HCMLP could simply recover the receivable by netting off Hunter Mountain's capital balance. As such, the team is comfortable with the recoverability of this note. Additionally, the team notes that James Dondero is a significant owner of Hunter Mountain through the Grown Global Life Insurance. Therefore, the team notes that Mr. Dondero has significant net worth in excess of the amount that is payable to HCMLP and therefore he has the ability to pay the loan. |

**Tickmark Legend**
A  Agrees to the note agreements obtained within the <Results Template> tab for testing.

**Appx. 01520**

**Rollforward schedule of notes receivable**

| G/L Account | Account Description | Amount per Client | | Balance per Testing Performed | TM | Rc, imm Differences | |
|---|---|---|---|---|---|---|---|
| **Target Tested** | | | | | | | |
| 14532 | DUE FROM NEXPOINT ADVISORS | 29,721,919 | <Detail> | 29,721,919 | **B** | - | |
| 14565 | DUE FROM OTHER - TAX LOANS | 15,728,031 | <Detail> | 15,728,031 | **C** | 0 | |
| 14585 | DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | 60,663,612 | <Detail> | 60,663,612 | <Due from Hunter Mountain> | (0) | |
| 14750 | LONG TERM NOTES RECEIVABLE | 22,860,559 | <Detail> | 22,860,559 | <Dugaboy> | 0 | |
| 14530 | DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | 14,122,352 | <Detail> | 14,122,352 | <Due from HCMSI> | 0 | |
| | **Total Amount Targeted** | **143,096,473** | | 143,096,473 | | (0) | |
| **Non-Stat** | | | | | | | |
| 14149 | SHARED SVCS FEE RECVBL - NREA | 592,251 | <Detail> | 555,203 | **A** | 37,047.68 | imm |
| 14531 | DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | 4,895,468 | <Detail> | 4,895,468 | **B** | 0 | |
| 14533 | DUE FROM HCRE PARTNERS | 8,457,837 | <Detail> | 8,457,837 | **D** | 0 | |
| | **Total Amount Non-Stat** | **13,945,556** | | 13,908,508 Rc | | 37,047.73 | |
| | **Total Amount Tested** | **157,042,029.10** | | **157,004,981.46** Rc | | **37,047.64** Rc | |
| | | | | ^ | | ^ | |

**Tickmark Legend**
**Rc** Amount recalculated. Refer to respective cell for formula detail.
**imm** Amount is immaterial, below SUM. Further testing is waived.
**^** Amount footed. Refer to respective cell for formula detail.
**PY** Agrees to the prior year Asset lead schedule tested by the audit team without exception.
**A** The engagement team obtained comfort over the Shared Svcs Fee Receivable - NREA amount by performing procedures as documented in the EGA linked below. Per review of the procedures performed, the amount deemed reasonable. Waived further procedures.
Test shared services expenses
**B** The engagement team notes that the receivables above relate to amounts due from other audited HCM entities for loans provided by Highland Capital Management, L.P. ("HCMLP") to Highland Capital Management Fund Advisors ("HCMFA") or NexPoint Advisors ("NPA"). Further note the engagement team prepared and tested the Due to HCMLP rollforwards for both HCMFA and NPA, which correspond to the receivables amount above in conjunction with testing over those entities, without exception. Note that the following procedures were performed within the EGAs linked below.

| | Amount | |
|---|---|---|
| Due from HCMFA | 4,895,468 | HCMFA - Understand debt agreements and test compliance |
| Due from Nexpoint | 29,721,919 | Nexpoint Advisor - Understand debt agreements and test compliance |

**C** The engagement team notes that this amount is made up of 2 separate loans issued for tax purposes to two owners, James Dondero and Mark Okada, in 2016. We note that the James Dondero loans have been restructured and consolidated in the current year. Refer to the <Dondero Tax Loan> tab for testing and support obtained. The note receivable due from Mark Okada has not had any paydowns in the current year. As such  Okada's note receivable balance as of 12/31/2017 is consistent with prior year.

| Date | Lender | Interest Rate | Amount | |
|---|---|---|---|---|
| 5/31/2017 | HCM Dondero - Restructured | 2.03% | 14,478,031 | <Dondero Tax Loan> |
| 4/15/2016 | HCM Okada | 2.25% | 1,250,000 | 04152016 HCM Okada $1.25M |
| | | | 15,728,031 | Rc |
| | | | ^ | |

**D** The engagement team notes that this amount is made up of 3 separate loans issued to HCRE. We not that one of the notes was restructured in the current year and an additional note has been issued. Refer below for support reconciliation and support obtained from Drew Wilson, HCM.

| Date | Lender | Interest Rate | Amount | |
|---|---|---|---|---|
| 11/27/2013 | HCRE #9 | 2.03% | 100,000 | PY |
| 5/31/2017 | HCRE Restructured | 8.00% | 5,857,837 | <HCRE Restructure> |
| 10/12/2017 | HCRE #10 | 8.00% | 2,500,000 | 10122017 HCRE $2.5M |
| | | | 8,457,837 | Rc |
| | | | ^ | |

**Appx. 01521**

**Due from Highland Capital Management Services**
**Account Detail - Year end Balances**
**12/31/2017**
**PBC, tickmarked by Hilda Garcia, PwC**

Note: The engagement team notes that the individual notes issued to HCM Services in the prior years were restructured and consolidated on 5/31/2017. The audit team obtained the original engagement agreement and the debt rollforward from Drew Wilson, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

|  |  |  |
|---|---|---|
| Closing Date | 5/31/2017 | A |
| Beginning Principle Balance $ | 20,247,628.02 |  |
| Interest Rate | 2.75% |  |

| Date | Interest Income (Rc) | Interest Paid (B) | Accrued Interest (Rc) | Beg Prin Bal (Rc) | Principal Paid (B) |  | Ending Prin Bal (Rc) |
|---|---|---|---|---|---|---|---|
| 5/31/2017 | - |  | - | 20,247,628 | - |  | 20,247,628 |
| 6/23/2017 | 35,087 | (35,087) | - | 20,247,628 | (950,130) | 1 | 19,297,498 |
| 6/30/2017 | 10,177 | - | 10,177 | 19,297,498 | - |  | 19,297,498 |
| 7/6/2017 | 8,724 | (18,901) | - | 19,297,498 | (888,395) | 2 | 18,409,103 |
| 7/18/2017 | 16,644 | (16,644) | - | 18,409,103 | (1,014,820) | 3 | 17,394,283 |
| 7/31/2017 | 17,037 | - | 17,037 | 17,394,283 | - |  | 17,394,283 |
| 8/25/2017 | 32,763 | (199,329) | (149,529) | 17,394,283 | (1,771,931) | 4 | 15,622,352 |
| 8/31/2017 | 7,062 | - | (142,467) | 15,622,352 | - |  | 15,622,352 |
| 9/30/2017 | 35,311 | - | (107,156) | 15,622,352 | - |  | 15,622,352 |
| 10/31/2017 | 36,488 | - | (70,668) | 15,622,352 | - |  | 15,622,352 |
| 11/30/2017 | 35,311 | - | (35,358) | 15,622,352 | - |  | 15,622,352 |
| 12/21/2017 | 24,718 | - | (10,640) | 15,622,352 | (1,500,000) | 5 | 14,122,352 |
| 12/31/2017 | 10,640 | - | (0) | 14,122,352 | - |  | 14,122,352 |
| **Totals** | **269,961** | **(269,961)** | **(0)** |  | **(6,125,276)** |  | **14,122,352** |

**Interest Income - 2017**

| Date | Principle | Interest Rate | Interest Income |
|---|---|---|---|
| 12/31/2016 | 21,650,000 | 2.26% |  |
| 1/31/2017 | 21,650,000 | 2.26% | 41,556 |
| 2/28/2017 | 21,650,000 | 2.26% | 37,535 |
| 3/31/2017 | 21,800,000 | 2.78% | 51,472 |
| 4/30/2017 | 21,800,000 | 2.78% | 49,812 |
| 5/31/2017 | 21,800,000 | 2.78% | 51,472 |
| remaining |  |  | 269,961 |
| Total Interest |  |  | 501,807 |



| SUMMARY |  |  |
|---|---|---|
| Ending Principal Bal | 14,122,352 | above |
| Interest Income Bal | 269,961 | <PM |

**Tickmark Legend**
^  Footed without exception. Refer to the respective cell's formula for further details.
Rc  Recalculated amount. Refer to the Test due from (below SUM). Therefore, further analysis is waived.
Imm  Amount is immaterial (below SUM). Therefore, further analysis is waived.
PYWP  Agreed to the prior year workpaper, without exception. Refer to the Test due from notes receivable EGA in prior years database.
<PM  Amount is below performance materiality, further testing waived.
A  Agreed to the restructure Loan Agreement obtained from Drew Wilson, HCM, without exception. Refer to agreement linked below.
    06212017 HCMSI Loan Restructure

B  Agreed to cash deposit in the Nexbank bank account (account #: 1614130) for each respective month noted, without exception. Further testing waived. Refer below for breakdown of payment.

| 1) June |  |  | 2) July |  |  |
|---|---|---|---|---|---|
| Cash Paid to HCM | 1,508,389.34 | B | Principle Payment | 888,395 | above |
| Amount applicable to final payment of HCMSI #45 | (523,172.90) | C | Interest Payment | 18,901 | above |
| Applicable to Restructured Loan | 985,216 | Rc |  | 907,296 | B |
|  |  |  |  | ^ |  |
| Principle Payment | 950,130 | above |  |  |  |
| Interest Payment | 35,087 | above |  |  |  |

| 3) July |  |  | 4) August |  |  |
|---|---|---|---|---|---|
| Principle Payment | 1,014,820 | above | Principle Payment | 1,771,931 | above |
| Interest Payment | 16,644 | above | Interest Payment | 199,329 | above |
|  | 1,031,464 | B |  | 1,971,260 | B |
|  | ^ |  |  | ^ |  |

| 5) December |  |  |
|---|---|---|
| Principle Payment | 1,500,000 | B |

C  The engagement team notes that the following note receivable due from HCMSI was not included in the restructure and was completely paid off on 6/23/2017. No exceptions noted.

D  The engagement team notes that the following notes were issued to HCMI during 2017. Note that the engagement team vouched the cash withdrawal to the March, June, and August  2017 Nexbank bank statement (account #: 1614130). Additionally, not that HCMSI #44 was included in the restructure of the HCMSI loans and HCMSI #45 was completely paid on the current year. No exception noted.

|  | Amount issued | Date issued | Date paid off |  |
|---|---|---|---|---|
| HCMSI #44 | 150,000 | 3/31/2017 | Restructured | Refer to Exhibit A in Restructured Loan Agreement in TM A |
| HCMSI #45 | 1,300,000 | 6/7/2017 | 6/23/2017 |  |
| HCMSI #46 | 500,000 | 8/31/2017 | 10/16/2017 |  |

**Appx. 01522**

**Due from James Dondero - Tax Loan**
**Account Detail - Year end Balances**
**12/31/2017**
PBC, tickmarked by Hilda Garcia, PwC

> **Note:** The engagement team notes that in prior year there were two loans given to James Dondero, HCM Owner, for tax purposes. The original loan balances were agreed to their note agreements in the prior year, without exception. Note that on 5/31/2017, the loans to James Dondero were restructured and consolidated into one note receivable balance. The audit team obtained the original restructured agreement and the debt rollforward from Drew Wilson, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

|  |  |  |
|---|---|---|
| Restructured Closing Date | 5/31/2017 | A |
| Total Commitment Restructured | $ 14,977,274 | |
| Rate | 2.03% | |

| Date | Interest Income (Rc) | Interest Paid (B) | Accrued Interest (Rc) | Beg Prin Bal (Rc) | Principal Paid (B) | Ending Prin Bal (Rc) |
|---|---|---|---|---|---|---|
| 5/31/2017 | - | - | - | 14,977,273.63 above | - | 14,977,273.63 |
| 6/23/2017 | 19,158.60 | | 19,158.60 | 14,977,273.63 | | 14,977,273.63 |
| 6/30/2017 | 5,830.88 | | 24,989.48 | 14,977,273.63 | | 14,977,273.63 |
| 7/31/2017 | 25,822.46 | - | 50,811.94 | 14,977,273.63 | | 14,977,273.63 |
| 8/31/2017 | 25,822.46 | - | 76,634.40 | 14,977,273.63 | | 14,977,273.63 |
| 9/30/2017 | 24,989.48 | - | 101,623.88 | 14,977,273.63 | | 14,977,273.63 |
| 10/31/2017 | 25,822.46 | - | 127,446.34 | 14,977,273.63 | | 14,977,273.63 |
| 11/30/2017 | 24,989.48 | - | 152,435.82 | 14,977,273.63 | | 14,977,273.63 |
| 12/31/2017 | 25,822.46 | (178,258.28) | - | 14,977,273.63 | (499,242.47) | 14,478,031.16 |
| **Totals** | **178,258.28** | **(178,258.28)** | **-** | | **(499,242.47)** | **14,478,031.16** |

**Interest Income - 2017**

| Date | Principle | Interest Rate | Interest Income |
|---|---|---|---|
| 12/31/2016 | 11,000,000 | 1.95% | |
| 1/31/2017 | 11,000,000 | 1.95% | 18,218 |
| 2/28/2017 | 11,000,000 | 1.95% | 16,455 |
| 3/31/2017 | 11,000,000 | 1.95% | 18,218 |
| 4/30/2017 | 11,000,000 | 1.95% | 17,630 |
| 5/31/2017 | 11,000,000 | 1.95% | 18,218 |
| remaining | | | 178,258 |
| Total Interest | | | 266,997 |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 14,478,031 | above |
| Interest Income Bal | 178,258 | <PM |

**Tickmark Legend**
**^** Footed without exception.
**Rc** Recalculated amount. Refer to the respective cell's formula for further details.
**imm** Amount is immaterial (below SUM). Therefore, further analysis is waived.
**PYWP** Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
**<PM** Amount is below performance materiality, further testing waived.
**A** Agreed to the restructure Loan Agreement obtained from Drew Wilson, HCM, without exception. Refer to agreement linked below.
  06212017 Dondero Loan Restructure

**B** Agreed to cash deposit in the December Nexbank bank statement (account #: 1614130), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $677,500.75. Refer below for breakdown of payment.

| | | |
|---|---|---|
| Principle Payment | 499,242 | above |
| Interest Payment | 178,258 | above |
| | 677,501 | B |

**Appx. 01523**

**Due from Get Good**
**Account Detail - Year end Balances**
**12/31/2017**
PBC, tickmarked by Hilda Garcia, PwC

> **Note:** The engagement team notes that this amount is a related to a Note Receivable from Get Good original sold on 12/28/2016. Per review of the original purchase agreement, linked below, the audit team notes that HCMLP exchanged assets (held as a liability) for the right to receive 97.6835% of Get Good's Note receivable. We note that the original note receivable issued to Get Good Trust from the Dugaboy Trust was for $24,268,621.69 on 5/31/2017. The audit team obtained the original restructured agreement and the debt rollforward from Drew Wilson, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

GG and HCM PSA Crusader - Loan Fund - AAL_63370369_2 (2)
06212017 Dugaboy Interest Amendment

|  | HCM |  |  |
|---|---|---|---|
| Original Note Date | 12/28/2016 | 97.6835% | PYWP |
| Original Note Amount | $ 23,817,640 | $ 23,265,904 | |
| | | | |
| Restructured Closing Date | 5/31/2017 | 97.6835% | A |
| Total Restructured Amount | $ 24,268,622 | $ 23,706,439 | |
| Rate | 3.260% | | |

| | Rc | B | Rc | Rc | B | Rc |
|---|---|---|---|---|---|---|
| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
| 5/31/2017 | - | - | - | 23,706,439.07 | - | 23,706,439.07 |
| 6/23/2017 | 48,698.87 | - | 48,698.87 | 23,706,439.07 | | 23,706,439.07 |
| 6/30/2017 | 14,821.40 | - | 63,520.27 | 23,706,439.07 | | 23,706,439.07 |
| 7/31/2017 | 65,637.61 | - | 129,157.88 | 23,706,439.07 | | 23,706,439.07 |
| 8/4/2017 | 8,469.37 | (441,854.32) | (304,227.07) | 23,706,439.07 | (845,879.76) | 22,860,559.31 |
| 8/31/2017 | 55,128.40 | - | (249,098.68) | 22,860,559.31 | | 22,860,559.31 |
| 9/30/2017 | 61,253.77 | - | (187,844.90) | 22,860,559.31 | | 22,860,559.31 |
| 10/31/2017 | 63,295.57 | - | (124,549.34) | 22,860,559.31 | | 22,860,559.31 |
| 11/30/2017 | 61,253.77 | - | (63,295.57) | 22,860,559.31 | | 22,860,559.31 |
| 12/31/2017 | 63,295.57 | - | - | 22,860,559.31 | | 22,860,559.31 |
| **Totals** | **441,854.32** | **(441,854.32)** | **-** | | **(845,879.76)** | **22,860,559.31** |
| | ^ | ^ | | | ^ | ^ |

PYWP

| Interest Income - 2017 | | | |
|---|---|---|---|
| Date | Principle | Interest Rate | Interest Income |
| 12/31/2016 | 23,817,640 | 2.75% | |
| 1/31/2017 | 23,817,640 | 2.75% | 55,629 |
| 2/28/2017 | 23,817,640 | 2.75% | 50,245 |
| 3/31/2017 | 23,817,640 | 2.75% | 55,629 |
| 4/30/2017 | 23,817,640 | 2.75% | 53,834 |
| 5/31/2017 | 23,817,640 | 2.75% | 55,629 |
| remaining | | | 441,854 |
| Total Interest | | | 712,821 |
| | | | ^ |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 22,860,559 | above |
| Interest Income Bal | 441,854 | <PM |

**Tickmark Legend**

^ Footed without exception.
Rc Recalculated amount. Refer to the respective cell's formula for further details.
imm Amount is immaterial (below SUM). Therefore, further analysis is waived.
PYWP Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
<PM Amount is below performance materiality, further testing waived.
A Agreed to the restructure Get Good Note Receivable Loan Agreement obtained from Drew Wilson, HCM, without exception. Refer to agreement linked below
06212017 Dugaboy Interest Amendment
B Agreed to cash deposit in the August Compass Bank statement (account #: 0025876342), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $1,287,734.08. Refer below for breakdown of payment.

| | | |
|---|---|---|
| Principle Payment | 845,880 | above |
| Interest Payment | 441,854 | above |
| | 1,287,734 | B |
| | ^ | |

**Appx. 01524**

**HCRE Restructure**
**Account Detail - Year end Balances**
**12/31/2017**
PBC, tickmarked by Hilda Garcia, PwC

> **Note:** The engagement team notes that some of HCRE's previous notes receivables were restructured and consolidated on 5/31/2017. The audit team obtained the original restructured agreement and the debt rollforward from Drew Wilson, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

| | | | |
|---|---|---|---|
| Restructured Closing Date | 5/31/2017 | A | |
| Total Commitment Restructured | $ 6,059,832 | | |
| Rate | 8.00% | | |

| Date | Interest Income (Rc) | Interest Paid (B) | Accrued Interest (Rc) | Beg Prin Bal (Rc) | Principal Paid (B) | Ending Prin Bal (Rc) |
|---|---|---|---|---|---|---|
| 5/31/2017 | - | - | - | 6,059,831.51 above | - | 6,059,831.51 |
| 6/23/2017 | 30,548.19 | | 30,548.19 | 6,059,831.51 | | 6,059,831.51 |
| 6/30/2017 | 9,297.28 | | 39,845.47 | 6,059,831.51 | | 6,059,831.51 |
| 7/31/2017 | 41,173.65 | - | 81,019.12 | 6,059,831.51 | | 6,059,831.51 |
| 8/31/2017 | 41,173.65 | - | 122,192.77 | 6,059,831.51 | | 6,059,831.51 |
| 9/30/2017 | 39,845.47 | - | 162,038.23 | 6,059,831.51 | | 6,059,831.51 |
| 10/31/2017 | 41,173.65 | - | 203,211.88 | 6,059,831.51 | | 6,059,831.51 |
| 11/30/2017 | 39,845.47 | - | 243,057.35 | 6,059,831.51 | | 6,059,831.51 |
| 12/31/2017 | 41,173.65 | (284,231.00) | - | 6,059,831.51 | (201,994.42) | 5,857,837.09 |
| **Totals** | **284,231.00** | **(284,231.00)** | **-** | | **(201,994.42)** | **5,857,837.09** |

**Interest Income - 2017**   PYWP

| Date | Principle | Interest Rate | Interest Income |
|---|---|---|---|
| 12/31/2016 | 5,750,000 | 7.85% | |
| 1/31/2017 | 5,750,000 | 7.85% | 38,336 |
| 2/28/2017 | 5,750,000 | 7.85% | 34,626 |
| 3/31/2017 | 5,750,000 | 7.85% | 38,336 |
| 4/30/2017 | 5,750,000 | 7.85% | 37,099 |
| 5/31/2017 | 5,750,000 | 7.85% | 38,336 |
| remaining | | | 284,231 |
| Total Interest | | | 470,964 |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 5,857,837 | above |
| Interest Income Bal | 284,231 | <PM |

**Tickmark Legend**
- ^ Footed without exception.
- Rc Recalculated amount. Refer to the respective cell's formula for further details.
- imm Amount is immaterial (below SUM). Therefore, further analysis is waived.
- PYWP Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
- <PM Amount is below performance materiality, further testing waived.
- A Agreed to the restructure Loan Agreement obtained from Drew Wilson, HCM, without exception. Refer to agreement linked below.
  06212017 HCRE Partners Loan Restructure
- B Agreed to cash deposit in the December Nexbank bank statement (account #: 1614130), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $486,225.42. Refer below for breakdown of payment.

| | | |
|---|---|---|
| Principle Payment | 201,994 | above |
| Interest Payment | 284,231 | above |
| | 486,225 | B |

**Appx. 01525**

**HCMLP**
**Notes Receivable**
**12/31/2017**
PBC, tickmarked by Hilda Garcia, PwC

> **Note:** The audit team notes that this Note Receivable balance is made up of a Hunter Mountain Investment Trust note. The audit team obtained the original contribution agreement in prior year, and also obtained the debt rollforward from Sean Fox, HCMLP. Refer below for the rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

Beginning Principal       63,000,000   **A**
Interest Rate             2.61%
Effective Date            12/21/2015

| | **Rc** | | | **Rc** | **Rc** | **D** | **B** | **Rc** |
|---|---|---|---|---|---|---|---|---|
| Date | Interest Income | Interest Paid | | Accrued Interest | Beg Prin Bal | Principal Paid | PIK | Ending Prin Bal |
| 12/31/16 | 46,099 | - | | 46,099 | 64,644,423 | **PYWP** - | - | 64,644,423 **PYWP** |
| 01/05/17 | 23,113 | (69,211) **D** | | - | 64,644,423 | (5,461,994) | - | 59,182,430 |
| 01/31/17 | 110,031 | | | 110,031 | 59,182,430 | - | - | 59,182,430 |
| 02/28/17 | 118,495 | | | 228,525 | 59,182,430 | - | - | 59,182,430 |
| 03/31/17 | 131,190 | - | | 359,716 | 59,182,430 | - | - | 59,182,430 |
| 04/30/17 | 126,958 | | | 486,674 | 59,182,430 | - | - | 59,182,430 |
| 05/31/17 | 131,190 | | | 617,865 | 59,182,430 | - | - | 59,182,430 |
| 06/30/17 | 126,958 | - | | 744,823 | 59,182,430 | - | - | 59,182,430 |
| 07/31/17 | 131,190 | | | 876,013 | 59,182,430 | - | - | 59,182,430 |
| 08/31/17 | 131,190 | - | | 1,007,204 | 59,182,430 | - | - | 59,182,430 |
| 09/30/17 | 126,958 | - | | 1,134,162 | 59,182,430 | - | - | 59,182,430 |
| 10/31/17 | 131,190 | | | 1,265,353 | 59,182,430 | - | - | 59,182,430 |
| 11/30/17 | 126,958 | | | 1,392,311 | 59,182,430 | - | - | 59,182,430 |
| 12/21/17 | 88,871 | (1,481,182) **B** | | - | 59,182,430 | - | 1,481,182 | 60,663,612 |
| 12/31/17 | 43,379 | | | 43,379 | 60,663,612 | - | - | 60,663,612 |
| **Totals** | **1,547,673** **C** | **(1,550,394)** | | **43,379** | | **(5,461,994)** | **1,481,182** | **60,663,612** |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 60,663,612 | above |
| Interest Income Bal | 1,547,673 | above |

**Tickmark Legend**

**^** Footed without exception.

**Rc** Recalculated amount. Refer to the respective cell's formula for further details.

**PYWP** Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.

**A** Agrees to the signed Hunter Mountain contribution agreement linked below without exception. Refer to pg. 49 of the agreement for further details around these amounts.
 Hunter Mountain Contribution Agreement

**B** Per discussion with Sean Fox, HCMLP, and review of the amortization schedule within the promissory note linked below (p. 7/7), the audit team notes that the interest accrued PIKs at it's anniversary date each year. Therefore, the team deems it reasonable that the full value of accrued interest was capitalized into the principal balance on these notes one year anniversary. Refer to the note below for further details.

 HM Secured Promissory Note

**C** Agree to the Interest Income for Hunter Mountain Trust per the <80100> detail tab within an immaterial difference. Refer to the reconciliation within the aforementioned tab linked below for further details.
 <80100>

**D** Agreed to cash deposit in the January Compass Bank statement (account #: 0025876342), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $5,531,205. Refer below for breakdown of payment.

Principal Payment    5,461,994   above
Interest Payment       69,211   above
                    5,531,205   **D**

**Appx. 01526**

Page 1 of 1
**HCM Account Analysis Report**
Parameters given:

| | From | To |
|---|---|---|
| Entry | 0010 | 0010 |
| Dept | 000 | 999 |
| Account | 80100 | 80100 |
| Business | 00 | 99 |
| Future | 0000 | 0000 |
| GL Date | 01-JAN-17 | 31-DEC-17 |
| Range | | |

**Note:** Note that Interest Income makes up a portion of the Other Income balance. As a majority of interest income was calculated within this EGA, the team performed a reconciliation to the detail

| JOURNAL ENTRIES | | | | | | | | | | PAYABLES | | | | RECEIVABLES | | | | FIXED ASSETS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | Date placed in service | Asset Category |
| Receivables | Misc Receipts | Receivables A 1863059 2315167 | JAN-17 Misc Receipts USD | 31-Jan-17 | 5 | Journal Import Created | 0010.000.80100.00.0000 | - | 23,113 | | | | | | 01052017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 1899058 2344091 | JAN-17 Misc Receipts USD | 31-Jan-17 | 6 | Journal Import Created | 0010.000.80100.00.0000 | - | 1,653 | | | | | | 01262017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 1922659 2366196 | FEB-17 Misc Receipts USD | 28-Feb-17 | 7 | Journal Import Created | 0010.000.80100.00.0000 | - | 1,925 | | | | | | 02132017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 1990058 2426146 | MAR-17 Misc Receipts USD | 31-Mar-17 | 3 | Journal Import Created | 0010.000.80100.00.0000 | - | 995 | | | | | | 03272017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2026660 2461091 | APR-17 Misc Receipts USD | 30-Apr-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 1,607 | | | | | | 04122017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2076055 2506411 | MAY-17 Misc Receipts USD | 31-May-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 19,333 | | | | | | 05092017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2077059 2507104 | MAY-17 Misc Receipts USD | 31-May-17 | 6 | Journal Import Created | 0010.000.80100.00.0000 | - | 519 | | | | | | 05152017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2106675 2535026 | MAY-17 Misc Receipts USD | 31-May-17 | 7 | Journal Import Created | 0010.000.80100.00.0000 | - | 9,518 | | | | | | 05312017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2151677 2568629 | JUN-17 Misc Receipts USD | 30-Jun-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 882 | | | | | | 06162017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2163676 2578612 | JUN-17 Misc Receipts USD | 30-Jun-17 | 4 | Journal Import Created | 0010.000.80100.00.0000 | - | 35,362 | | | | | | 06232017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2171694 2581566 | JUN-17 Misc Receipts USD | 30-Jun-17 | 6 | Journal Import Created | 0010.000.80100.00.0000 | - | 168,255 | | | | | | 06282017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2186697 2602193 | JUL-17 Misc Receipts USD | 31-Jul-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 8,724 | | | | | | 07062017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2214695 2629550 | JUL-17 Misc Receipts USD | 31-Jul-17 | 3 | Journal Import Created | 0010.000.80100.00.0000 | - | 16,644 | | | | | | 07182017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2236699 2650232 | AUG-17 Misc Receipts USD | 31-Aug-17 | 4 | Journal Import Created | 0010.000.80100.00.0000 | - | 7,124 | | | | | | 08042017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2271697 2675003 | AUG-17 Misc Receipts USD | 31-Aug-17 | 3 | Journal Import Created | 0010.000.80100.00.0000 | - | 17,037 | | | | | | 08252017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2346698 2747212 | OCT-17 Misc Receipts USD | 31-Oct-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 21 | | | | | | 10022017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2371699 2773151 | OCT-17 Misc Receipts USD | 31-Oct-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 565 | | | | | | 10162017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2382699 2784571 | OCT-17 Misc Receipts USD | 31-Oct-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 101,085 | | | | | | 10202017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2385695 2785572 | OCT-17 Misc Receipts USD | 31-Oct-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 1,979 | | | | | | 10242017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2452698 2798571 | NOV-17 Misc Receipts USD | 30-Nov-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 14 | | | | | | 11012017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2495699 2923167 | DEC-17 Misc Receipts USD | 31-Dec-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 4 | | | | | | 12012017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2501697 2926035 | DEC-17 Misc Receipts USD | 31-Dec-17 | 4 | Journal Import Created | 0010.000.80100.00.0000 | 25,822 | - | | | | | | 12082017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2501697 2926035 | DEC-17 Misc Receipts USD | 31-Dec-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 51,643 | | | | | | 12082017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2507007 2934193 | DEC-17 Misc Receipts USD | 31-Dec-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 35,204 | | | | | | 12052017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2527697 2948397 | DEC-17 Misc Receipts USD | 31-Dec-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 27,620 | | | | | | 12202017ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2538700 2961491 | DEC-17 Misc Receipts USD | 31-Dec-17 | 2 | Journal Import Created | 0010.000.80100.00.0000 | - | 41,174 | | | | | | 12272017ADW | | | | | | | |
| Spreadsheet | Adjustment | Reverses '2017/0531 Interest Receivable JE - NPA 6 True-up Adj'/13-JUN-17 12:28:33 - 2559066 | Reverses '2017/0531 Interest Receivable JE - NPA 6 True-up Adjustment'/USD'/13-JUN-17 | 31-May-17 | 2 | 5/31/2017 Interest Receivable NPA #6 True-up | 0010.000.80100.00.0000 | 43,669 | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2354621 | 20170131 NexBank MM Interest Adjustment/USD | 31-Jan-17 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | - | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2354621 | 20170131 NexBank MM Interest Adjustment/USD | 31-Jan-17 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |

Appx. 01527

| | JOURNAL ENTRIES | | | | | | | | | PAYABLES | | | | RECEIVABLES | | | | FIXED ASSETS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | Date placed in service | Asset Category |
| Spreadsheet | Adjustment | Spreadsheet A 2354621 | 20170131 NexBank MM Interest Adjustment USD | 31-Jan-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 2,697 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2355499 | 20170131 Hunter Mountain Note Receivable Update Adjustment | 31-Jan-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 110,031 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2357551 | 20170131 Interest Receivable JE Adjustment USD | 31-Jan-17 | 2 | 12/31/2016 Interest Receivable | 0010.000.80100.00.0000 | - | 343,993 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2397426 | 20170228 NexBank MM Interest Adjustment USD | 28-Feb-17 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2397426 | 20170228 NexBank MM Interest Adjustment USD | 28-Feb-17 | 5 | Interest (Account *991) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2397426 | 20170228 NexBank MM Interest Adjustment USD | 28-Feb-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 5,131 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2397436 | 20170228 Hunter Mountain Note Receivable Update Adjustment | 28-Feb-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 118,495 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2407378 | 20170228 Interest Receivable JE Adjustment USD | 28-Feb-17 | 2 | 1/31/2017 Interest Receivable | 0010.000.80100.00.0000 | - | 308,550 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2438206 | 20170331 Hunter Mountain Note Receivable Update Adjustment | 31-Mar-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 151,190 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2438877 | 20170331 NexBank MM Interest Adjustment USD | 31-Mar-17 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2438877 | 20170331 NexBank MM Interest Adjustment USD | 31-Mar-17 | 5 | Interest (Account *991) | 0010.210.80100.10.0000 | - | 395 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2438877 | 20170331 NexBank MM Interest Adjustment USD | 31-Mar-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 2,595 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2476400 | 20170331 Cash Transfer Operating to MM Adjustment USD | 16-Mar-17 | 2 | HCMS3 34 Loan Paydown - Int Income | 0010.000.80100.00.0000 | - | 2,012 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2459592 | 20170331 Interest Receivable JE Adjustment USD | 31-Mar-17 | 2 | 3/31/2017 Interest Receivable | 0010.000.80100.00.0000 | - | 359,658 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2463466 | 20170331 Jefferies Reconciliation Adjustment USD | 31-Mar-17 | 39 | Services Loan Repayment | 0010.000.80100.00.0000 | - | 2,012 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2485997 | 20170430 Hunter Mountain Note Receivable Adjustment USD | 30-Apr-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 126,958 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2509281 | 20170430 Interest Receivable JE Adjustment USD | 30-Apr-17 | 5 | Double Booked Mar JE | 0010.000.80100.00.0000 | 2,012 | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2509281 | 20170430 Interest Receivable JE Adjustment USD | 30-Apr-17 | 6 | 4/30/2017 Interest Receivable | 0010.000.80100.00.0000 | - | 327,047 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2521555 | 20170430 NexBank MM Interest Adjustment USD | 30-Apr-17 | 4 | Interest (Account *991) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2521555 | 20170430 NexBank MM Interest Adjustment USD | 30-Apr-17 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2521555 | 20170430 NexBank MM Interest Adjustment USD | 30-Apr-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 744 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2534072 | 20170531 Hunter Mountain Note Receivable Update Adjustment | 31-May-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 151,190 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2536980 | 20170531 Interest Receivable JE Adjustment USD | 31-May-17 | 2 | 5/31/2017 Interest Receivable | 0010.000.80100.00.0000 | - | 289,998 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2537119 | 20170531 NexBank MM Interest Adjustment USD | 31-May-17 | 4 | Interest (Account *991) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2537119 | 20170531 NexBank MM Interest Adjustment USD | 31-May-17 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2537119 | 20170531 NexBank MM Interest Adjustment USD | 31-May-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 645 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2556439 | 20170531 Interest Receivable JE NPA 6 True-up Adjustment USD | 31-May-17 | 2 | 5/31/2017 Interest Receivable NPA #6 True-up | 0010.000.80100.00.0000 | - | 43,660 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2559065 | 20170531 Interest Receivable JE NPA 6 True-up Adjustment USD | 31-May-17 | 2 | 5/31/2017 Interest Receivable NPA #6 True-up | 0010.000.80100.00.0000 | - | 42,290 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2560825 | 20170630 Hunter Mountain Note Receivable Update Adjustment | 30-Jun-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 126,958 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2591843 | 20170630 NexBank MM Interest Adjustment USD | 30-Jun-17 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2591843 | 20170630 NexBank MM Interest Adjustment USD | 30-Jun-17 | 5 | Interest (Account *991) | 0010.210.80100.10.0000 | - | 409 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2591843 | 20170630 NexBank MM Interest Adjustment USD | 30-Jun-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 933 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2611838 | 20170630 Interest Receivable JE Adjustment USD | 30-Jun-17 | 2 | 6/30/2017 Interest Receivable | 0010.000.80100.00.0000 | 1,381 | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2611838 | 20170630 Interest Receivable JE Adjustment USD | 30-Jun-17 | 4 | 6/30/2017 Interest Receivable | 0010.000.80100.00.0000 | - | 329,757 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2649966 | 20170731 NexBank MM Interest Adjustment USD | 31-Jul-17 | 4 | Interest (Account *991) | 0010.210.80100.10.0000 | - | - | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2649966 | 20170731 NexBank MM Interest Adjustment USD | 31-Jul-17 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |

Appx. 01528

| | JOURNAL ENTRIES | | | | | | | | | PAYABLES | | | | RECEIVABLES | | | | FIXED ASSETS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | Date placed in service | Asset Category |
| Spreadsheet | Adjustment | Spreadsheet A 2649966 | 20170731 NexBank MM Interest Adjustment USD | 31-Jul-17 | 6 | Interest (Account *330) | 0010.210.80100.10.0000 | - | 1,306 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2650532 | 20170731 Hunter Mountain Note Receivable Update Adjustment | 31-Jul-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 131,190 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2650573 | 20170731 Interest Receivable JE Adjustment USD | 31-Jul-17 | 2 | 7/31/2017 Interest Receivable JE | 0010.000.80100.00.0000 | 24,909 | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2650573 | 20170731 Interest Receivable JE Adjustment USD | 31-Jul-17 | 3 | 7/31/2017 Interest Receivable JE | 0010.000.80100.00.0000 | - | 2,762 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2650573 | 20170731 Interest Receivable JE Adjustment USD | 31-Jul-17 | 4 | 7/31/2017 Interest Receivable JE | 0010.000.80100.00.0000 | - | 141,895 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2671397 | 20170731 Interest Reconciliation Adjustment USD | 31-Jul-17 | 42 | Carey Interest Payment | 0010.000.80100.00.0000 | - | 49,805 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2671495 | 20170731 Interest Receivable JE True-up Adjustment USD | 31-Jul-17 | 2 | 7/31 Interest Receivable JE True-up | 0010.000.80100.00.0000 | - | 278,887 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2685126 | 20170831 Hunter Mountain Note Receivable Update Adjustment | 31-Aug-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 131,190 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2695370 | 20170831 Interest Receivable JE Adjustment USD | 31-Aug-17 | 4 | Interest (Account *991) | 0010.210.80100.10.0000 | - | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2695370 | 20170831 NexBank MM Interest Adjustment USD | 31-Aug-17 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2695370 | 20170831 NexBank MM Interest Adjustment USD | 31-Aug-17 | 6 | Interest (Account *330) | 0010.210.80100.10.0000 | - | 2,045 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2696075 | 20170831 Interest Receivable JE Adjustment USD | 31-Aug-17 | 2 | 8/31 Interest Receivable JE | 0010.000.80100.00.0000 | - | 338,436 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2712153 | 20170831 Jefferies Reconciliation Adjustment USD | 31-Aug-17 | 1 | | 0010.000.80100.00.0000 | - | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2712153 | 20170831 Jefferies Reconciliation Adjustment USD | 31-Aug-17 | 10 | MT Statutory Trust Interest Income | 0010.000.80100.00.0000 | - | 61,996 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2734904 | 20170930 Hunter Mountain Note Receivable Update Adjustment | 30-Sep-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 126,958 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2746843 | 20170930 Interest Receivable JE Adjustment USD | 30-Sep-17 | 2 | 9/30 Interest Receivable JE True-up | 0010.000.80100.00.0000 | - | 15,726 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2746843 | 20170930 Interest Receivable JE Adjustment USD | 30-Sep-17 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 363,494 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2747543 | 20170930 NexBank MM Interest Adjustment USD | 30-Sep-17 | 5 | Interest (Account *330) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2747543 | 20170930 NexBank MM Interest Adjustment USD | 30-Sep-17 | 6 | Interest (Account *991) | 0010.210.80100.10.0000 | - | 586 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2747543 | 20170930 NexBank MM Interest Adjustment USD | 30-Sep-17 | 7 | Interest (Account *330) | 0010.210.80100.10.0000 | - | 406 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2749161 | 20170930 Jefferies Reconciliation Adjustment USD | 30-Sep-17 | 13 | Carey Interest Payment | 0010.000.80100.00.0000 | - | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2749161 | 20170930 Jefferies Reconciliation Adjustment USD | 30-Sep-17 | 1 | Carey PIK | 0010.000.80100.00.0000 | - | 24,821 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2797447 | 20171031 Hunter Mountain Note Receivable Update Adjustment | 31-Oct-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 131,190 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2797677 | 20171031 Interest Receivable JE Adjustment USD | 31-Oct-17 | 2 | 10/31 Interest Receivable JE | 0010.000.80100.00.0000 | - | 283,722 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2798308 | 20171031 NexBank MM Interest Adjustment USD | 31-Oct-17 | 4 | Interest (Account *991) | 0010.210.80100.10.0000 | - | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2798308 | 20171031 NexBank MM Interest Adjustment USD | 31-Oct-17 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2798308 | 20171031 NexBank MM Interest Adjustment USD | 31-Oct-17 | 6 | Interest (Account *330) | 0010.210.80100.10.0000 | - | 454 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2811284 | 20171031 Jefferies Reconciliation Adjustment USD | 31-Oct-17 | 13 | | 0010.000.80100.00.0000 | - | 55,268 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2874566 | 20171130 Hunter Mountain Note Receivable Update Adjustment | 30-Nov-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 126,958 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2923523 | 20171130 Interest Receivable JE Adjustment USD | 30-Nov-17 | 3 | 11/30 Interest Receivable JE | 0010.000.80100.00.0000 | - | 28,337 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2923523 | 20171130 Interest Receivable JE Adjustment USD | 30-Nov-17 | 4 | Interest (Account *991) | 0010.000.80100.00.0000 | - | 387,964 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2924233 | 20171130 NexBank MM Interest Adjustment USD | 30-Nov-17 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | - | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2924233 | 20171130 NexBank MM Interest Adjustment USD | 30-Nov-17 | 5 | Interest (Account *330) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2924233 | 20171130 Jefferies Reconciliation Adjustment USD | 30-Nov-17 | 6 | Goldfield & Carey PIK | 0010.000.80100.00.0000 | - | 1,720 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2924986 | 20171130 Jefferies Reconciliation Adjustment USD | 30-Nov-17 | 12 | | 0010.000.80100.00.0000 | - | 391,743 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2971371 | 20171231 Hunter Mountain Note Receivable Update Adjustment | 31-Dec-17 | 2 | Hunter Mountain Interest Receivable True-up | 0010.210.80100.10.0000 | - | 132,126 | | | | | | | | | | | | | |

Appx. 01529

| | | | | | Journal Line Number | | | Amount DR | Amount CR | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**JOURNAL ENTRIES** — **PAYABLES** — **RECEIVABLES** — **FIXED ASSETS**

| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | Date placed in service | Asset Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spreadsheet | Adjustment | Spreadsheet A 2971390 | 20171231 NexBank MM Interest Adjustment USD | 31-Dec-17 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | - | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2971390 | 20171231 NexBank MM Interest Adjustment USD | 31-Dec-17 | 5 | Interest (Account *891) | 0010.210.80100.10.0000 | - | 403 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2971390 | 20171231 NexBank MM Interest Adjustment USD | 31-Dec-17 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | - | 1,695 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2985407 | 20171231 Interest Receivable JE Adjustment USD | 31-Dec-17 | 9 | HCMSI Interest True-up | 0010.000.80100.00.0000 | - | 1,093 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2985407 | 20171231 Interest Receivable JE Adjustment USD | 31-Dec-17 | 10 | 12/31 Interest Receivable JE - Dugaboy Interest True-up | 0010.000.80100.00.0000 | - | 3,206 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2985407 | 20171231 Interest Receivable JE Adjustment USD | 31-Dec-17 | 11 | 12/31 Interest Receivable JE - | 0010.000.80100.00.0000 | - | 261,921 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2985407 | 20171231 Interest Receivable JE Adjustment USD | 31-Dec-17 | 12 | Dugaboy Principal True-up Goldfield PIK | 0010.000.80100.00.0000 | - | 395,011 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 2985427 | 20171231 Jefferies Reconciliation Adjustment USD | 31-Dec-17 | 20 | 12/31 Interest Receivable JE - | 0010.000.80100.00.0000 | - | 11,742 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3040434 | 20171231 Dugaboy Interest True-up | 31-Dec-17 | 2 | Dugaboy Interest True-up | 0010.000.80100.00.0000 | 304,227 | | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3056868 | 20171231 Carry PIK Adjustment | 31-Dec-17 | 2 | Carry PIK | 0010.000.80100.00.0000 | - | 216,138 | | | | | | | | | | | | | |
| | | | | | | | | 402,020 | 7,451,059 | | | | | | | | | | | | | |



```
Amount per detail above          7,049,039   Rc
Amount per TB                     7,049,039   LS
Difference (not in thousands)             *   Rc, imm
```

**Hunter Mountain Interest Income Reconciliation**

```
Hunter Mountain Interest Income per above      1,524,439   Rc
Interest Income per <Due from Hunter Mountain> tab  1,547,673   <Due from Hunter Mountain>
Difference                                      (23,234)   Rc, imm
```

**Tickmark Legend**
\*   Footed without exception.
imm   Amount is immaterial. Therefore, further review is waived.
Rc   Recalculated amount. Refer to the respective cell's formula for further details.
LS   Amount agrees to 12/31/17 lead schedule linked below without exception.
Lead schedule - Revenue
Total of highlighted amounts have been recalculated and agree to the interest income per the <Note Receivable> tab within an immaterial difference.

Appx. 01530

# EXHIBIT 93

| Engagement: | Highland Capital Management LP - 2018 Audit |
|---|---|
| Period end date: | 12/31/2018 |
| Audit unit: | Highland Capital Management LP - 2018 Audit-HQ |
| Associated Risks: | Risk of material misstatement in Other Assets |
| FSLI: | Other Assets |
| EGA title: | Test due from and notes receivable |
| Ref. no.: | 3025-1510 |

## Rollforward - Notes receivable

| When more than one preparer was involved in the completion of this EGA, document the names of the team members involved and the procedures performed. | *[Document the initials or names of team members and procedures performed (e.g., Jane Doe performed step a) below)]*<br>**Prepared by Madeline Pacocha, PwC** |
|---|---|

| Procedures | Results | Links |
|---|---|---|
| a) Obtain a rollforward schedule of notes receivable balances, agree balances and test mathematical accuracy. | ☑ Obtained a rollforward schedule of notes receivable balances. Attached in tab *'Results Template'* or provided link.<br><br>**Note that the team obtained the closing balances of notes and accounts receivable by account type/entity. Attached schedule in the <Detail> tab. Additionally, note that the due from receivables listing was target tested for accounts greater than $10M and the remaining population was non-stat tested. Refer to selections made and testing performed in the < Results Template >**<br><br>**AND**<br><br>☑ Agreed balances to prior period workpapers and closing balances to the general ledger, and<br><br>   ☑ No reconciling items noted, or<br>   ☐ Reconciling items are not significant or unusual (when considered both individually and in the aggregate); therefore no further testing performed, or<br>   *[Document reconciling items noted and rationale for determination]*<br><br>   ☐ Significant or unusual reconciling items noted; therefore performed further testing as follows:<br><br>   *[Document reconciling items noted and testing performed or provide link]*<br><br>**AND**<br><br>☑ Tested mathematical accuracy of the rollforward schedule, as follows:<br>*[Document schedule name(s), details of testing performed or provide link to tickmarked schedule]*<br>**Refer to the <Detail> tab for procedures performed.**<br>   ☑ Verified spreadsheet formula.<br>   ☐ Manually added or recalculated.<br>   ☐ Application controls over related report tested.<br>   ☐ Other [Specify below].<br>   *[Document details of testing, if not included in the linked schedule]* | |
| b) Agree activity within the rollforward to testing performed. | ☐ Not applicable. There was no current period activity, or<br>☑ Agreed activity within the rollforward to testing performed in the following EGAs (check those that apply):<br>   ☑ Total additions to testing performed in the EGA *Test additions - Notes receivable*.<br>   ☑ Total payments to testing performed in the EGA *Test payments - Notes receivable*.<br>   **The team tested additions and payments within this EGA. Refer to the subsequent tabs for procedures performed.** | Results Template |

## Rollforward - Notes receivable

| | | |
|---|---|---|
| | **AND**<br>☑ Obtained appropriate supporting documentation for any other adjustments within the rollforward, and:<br>　☐ Tested a selection of adjustments (test(s) added from Aura Tests of Details template), or<br><br>　*[Document other items tested and the details of work performed or provide link]*<br><br>　☐ Tested all adjustments.<br>　*[Document other items tested and the details of work performed or provide link]*<br><br>　**The audit team tested all adjustments for notes selected for testing. Refer to the \<Results Template\> tab for testing performed.** | |

## Rollforward - Notes receivable

| | | |
|---|---|---|
| c) Obtain detailed listing(s) of the ending balance of notes receivable by asset, agree balances and test mathematical accuracy.<br><br>_Service Delivery Center activities:_<br><br><br><br>Tests of Details | ☐ Not applicable. The rollforward in procedure a) was performed at the individual asset level, or<br><br>☑ Obtained detailed listing(s) of the ending balance of notes receivable.<br>_[Document details of accounts selected or provide link to detailed listing(s) obtained]_<br><br>**Refer to the <Results Template> tab for procedures performed. Additionally, note that the due from receivables listing was target tested for accounts greater than $10M and the remaining population was non-stat tested. Refer to testing performed in the < Results Template>**<br><br><br>**AND**<br>☑ Agreed the total per the detailed listing to the ending balance per the rollforward, and:<br>  ☑ No reconciling items noted, or<br>  ☐ Reconciling items are not significant or unusual (when considered both individually and in the aggregate); therefore no further testing performed, or<br>  _[Document reconciling items noted and rationale for determination]_<br><br>  ☐ Significant or unusual reconciling items noted; therefore performed further testing as follows:<br><br>  _[Document reconciling items noted and testing performed or provide link]_<br><br>**AND**<br>☑ Tested mathematical accuracy of the detailed listing, as follows:<br>_[Document schedule name(s), details of testing performed or provide link to tickmarked schedule]_<br>  ☑ Verified spreadsheet formula.<br>  ☐ Manually added or recalculated.<br>  ☐ Application controls over related report tested.<br>  ☐ Other [Specify below].<br>  _[Document details of testing, if not included in the linked schedule]_ | Results Template |
| d) Define what constitutes an unexpected or unusual balance and scan the subledgers or detailed listing of ending balances of notes receivable by asset for unexpected (e.g. credit balances, large balances not confirmed, etc.) or unusual items. | ☑ Defined what constitutes an unexpected or unusual balance, as follows:<br>_[Define and document what constitutes an unexpected or unusual balance]_<br><br>**An unexpected or unusual balance is defined as anything that is not considered in Due from Affiliate, within the details. The engagement team performed a Credit Risk Analysis over the material balances within the <Detail> tab to ensure that there were no unexpected or unusual loans. Refer to the <Credit Risk Analysis> tab for the engagement team analysis over the related balances.**<br><br><br>**AND**<br>☑ Scanned the subledgers or detailed listings noting the following:<br>  ☑ No unexpected or unusual balances, or<br>  ☐ Unusual or unexpected balances identified:<br>  _[Document details of unexpected or unusual balances identified and resolution]_ | |

Appx. 01534

## Rollforward - Notes receivable

### *Additional engagement specific procedures, if necessary*

| Procedures | Results |
|---|---|
| [Document engagement specific additional procedures, if necessary]<br>N/A | [Document results of additional procedures]<br>N/A |

HCMLP
**Various Assets - Detail**
**12/31/2018**
Prepared by Madeline Pacocha, PwC

**Note:** The below detail is for the Due From and Notes Receivable FSLI's. The team tested 100% of the Notes Receivable balance and performed a target test in addition non-stat sample over the Due From Affiliate balance to ensure adequate coverage. Refer below for testing references.

**LS** ⟶

**Due from affiliates**

| Code | Description | Amount | |
|------|-------------|-------:|---|
| 14010 | CASH INTEREST RECEIVABLE | 53,104 | |
| 14140 | SHARED SVCS FEE RECVBL - PYXIS | 235,476 | |
| 14142 | SHARED SVCS FEE RECVBL - HCLOH | 30,036 | |
| 14148 | SHARED SVCS FEE RECVBL - RAND ADVISORS | 2 | |
| 14530 | DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | 13,884,352 | TT |
| 14531 | DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | 4,895,352 | NS |
| 14532 | DUE FROM NEXPOINT ADVISORS | 28,417,403 | TT |
| 14533 | DUE FROM HCRE PARTNERS | 9,005,843 | NS |
| 14565 | DUE FROM OTHER - TAX LOANS | 30,141,021 | TT |
| 14575 | DUE FROM HIGHLAND CAPITAL OF NEW YORK | 4,951,652 | NS |
| 14580 | DUE FROM NEXBANK | 60,000 | |
| 14585 | DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | 60,167,335 | TT |
| 14595 | DUE FROM HIGHLAND CAPITAL KOREA | 3,564,966 | |
| 14750 | LONG TERM NOTES RECEIVABLE | 21,556,268 | TT |
| | **Total** | 176,962,810 | **Rc** |
| | | ^ | |

| SUMMARY | |
|---------|---:|
| **Rc** | |
| **Total Due From** | 176,962,810 |
| Target Test Count | 5 |
| Total Targeted | 154,166,379 |
| Total Non Stat | 18,852,847 |
| # of selections | 3 |
| Total Tested | 173,019,226 |
| | 3,943,584 |

TOD Form: Test Due from Affiliates

| Interest Income Tested | |
|------------------------|---:|
| HCMSI | 265,101 |
| Dondero Tax Loan | 293,571 |
| HCRE | 468,096 |
| Hunter Mountain | 1,582,893 |
| Total Tested | 2,609,679 |
| | ^ |

**Tickmark Legend**
**^** Footed without exception.
**Rc** Recalculated amount. Refer to the respective cell's formula for further details.
**LS** Amount agrees to the lead schedule linked below.
Lead schedule - Assets
**NS** Amount was selected for Non-Statistical Sampling Testing. Refer to the Non-Stat template linked below for further information and to the
TOD Form: Test Due from Affiliates
**TT** Due from
TOD Form: Test Due from Affiliates
**<PM** Remaining balance is below performance materiality, waive further review.

Appx. 01536

**Highland Capital Management, L.P.**
**Credit Risk Analysis**
**12/31/2018**
Prepared by Madeline Pacocha, PwC

Note: The audit team performed a credit analysis for all material (above performance materiality) notes receivable in order to determine the nature and intent of each note as well as assess the ability of the payee to pay the note. Refer to the team's analysis below.

<Details>

| Account # | Counter Party | Amount | Interest Rate | Maturity Date | Nature | Recoverability |
|---|---|---|---|---|---|---|
| 14530 | Highland Capital Management Services (James Dondero majority owner) | 13,884,352 | 2.75% | 12/31/2047 | Highland Capital Management Services is an S Corp that acts as a platform investment company for one-off investments. Loans are provided to this entity primarily in order to provide seed capital for new investments. | Based on our testing performed over this loan, the engagement team notes that all the previous loans issued to HCMSI have been restructured and consolidated into one loan with a maturity date of 12/31/2047 and a yearly installment payment plan. The audit team also vouched interest payments being made by the fund, which also signifies that they have the ability to continue to make their payments. As such, the team is comfortable that the fund will be able to pay the loan when it becomes due. Further note that HCM Services has also paid back $588K to HCMLP in principal payments for 2018 (vouched by engagement team) and paid off all the interest owed to the fund as of 12/31/2018. As the fund is showing an ability by continuing to make payments subsequent to year end and an installment payment plan has been implemented , the audit team is comfortable that the entity has the ability to pay down this loan when it becomes due. Furthermore, Jim Dondero owns more than 70% of this entity. |
| 14531 | Highland Capital Fund Advisors | 4,895,352 | 2.62% | On demand but not before 5/31/2019 | Loans are made to HCMF for the fund's operational purposes. | Per review of the audited HCMF financial statements, the engagement team notes that the fund is realizing profits and has a positive cash flow. Based on the team's going concern considerations for this fund, the expectation is that the fund will be in positive partners capital by the next fiscal year. Based on the profit and improving performance of the fund, the team is comfortable that they will be able to pay the loan when it becomes due. |
| 14532 | Nexpoint Advisors | 28,417,403 | 6% | 12/31/2047 | Loans are made to Nexpoint for the fund's operational purposes. | Per review of the audited Nexpoint financial statements, the engagement team notes that the fund is realizing profits and has a positive cash flow. Based on the team's going concern considerations for this fund, the expectation is that the fund continue to recover from it's negative partners' capital balance in the coming years as it continues to improve performance and does not over distribute partners' capital. The engagement team additionally notes that NPA has stopped waiving management fees to the BDC (Nexpoint Capital Strategies) which is expected to significantly increase their revenue for future period.  Based on the profit and improving performance of the fund, the team is comfortable that they will be able to pay the loan installments as they become due. |
| 14533 | HCRE Partners (James Dondero) | 9,005,843 | Varies | On demand and 12/31/2047 | HCRE Partners is a real estate investment entity that investments in opportunistic real estate investments and historically has realized substantial gains. Loans are provided to this entity primarily in order to provide seed capital for new investments. Note that 31% of this balance is on demand. The remaining 69% is made up of a restructured loan that has a maturity date of 12/31/2047. | Per discussion with Dave Klos, HCMLP, the audit team notes that these loans are made at a high interest rate in order to encourage the fund to pay off the loan quickly. The audit team also vouched interest and principal payments being made by the fund, which also signifies that they have the ability to continue to make their payments. As such, the team is comfortable with the recoverability of this note. Furthermore, Jim Dondero owns more than 70% of this entity. |
| 14565 | James Dondero | 30,141,021 | 2.03%-2.25% | On demand and 12/31/2047 | Related to Loans given to Limited Partners within the fund including James Dondero and Mark Okada in order to satisfy tax liability. Both have little basis in the fund, therefore a tax loan was given instead of an equity distribution. Note that James Dondero's portion was 92% of this balance and has a maturity date of 12/31/2047. | Per review of the Nexpoint Strategy Opportunities Fund form 13D filed with the SEC on 10/25/18, the engagement team notes that James Dondero owns 16.8% of this fund. Per review of the audited 12/31/18 financial statements for NHF, we note a total Net Asset Value of $767.7 million, which leaves Dondero's ownership value in the fund at $128.9 million. Additionally, the team notes that per NexPoint Residential Trust, Inc. form DEF 13D filed with the SEC on 11/20/2018, James Dondero also owns 19.65% of NexPoint Residential Trust. Per review of the audited 12/31/18 financial statements for NXRT, we note a total Net Asset Value of $296,028,000 which leaves Dondero's ownership value in the fund at $58,169,502. Based solely on these two investment values ($188,069,502 value), not considering his extensive ownership of other assets, the team notes that Mr. Dondero has significant net worth in excess of the amount that is payable to HCMLP and therefore he has the ability to pay the loan. We note that because NHF is a publicly traded fund, he has the ability to sell his shares or transfer them back to HCMLP to satisfy the debt. |
| 14750 | Dugaboy (James Dondero) | 21,556,268 | 3.26% | 12/31/2047 | The audit team notes that this note was primarily made in order to donate assets held by the fund to charity. Therefore, the fund sold assets in exchange for a Note Payable ultimately from Dugaboy, of which the primary beneficiary is James Dondero. | See above. |
| 14585 | Hunter Mountain Investment Trust (James Dondero) | 60,167,335 | 2.61% | On demand | Note that Hunter Mountain purchased 99.5% of HCMLP. This loan was originally made for seller financing of the purchase of HCMLP as a part of the purchase price was paid in cash and a portion was financed as a note payable to HCMLP. | As Hunter Mountain owns 99.5% of HCMLP (verified through capital testing), the audit team notes that if Hunter Mountain did not have the ability to pay the note became due, HCMLP could simply recover the receivable by netting off Hunter Mountain's capital balance. As such, the team is comfortable with the recoverability of this note. Additionally, the team notes that James Dondero is a significant owner of Hunter Mountain through the Crown Global Life Insurance. Therefore, the team notes that Mr. Dondero has significant net worth in excess of the amount that is payable to HCMLP and therefore he has the ability to pay the loan. |

**Tickmark Legend**
A Agrees to the note agreements obtained within the <Results Template> tab for testing.

**Rollforward schedule of notes receivable**

| G/L Account | Account Description | Amount per Client | | Balance per Testing Performed | TM | Rc, imm Differences | |
|---|---|---|---|---|---|---|---|
| **Target Tested** | | | | | | | |
| 14530 | DUE FROM HIGHLAND CAPITAL MANAGEMENT SERVICES | 13,884,352 | \<Detail\> | 13,884,352 | \<Due from HCMSI\> | - | imm |
| 14532 | DUE FROM NEXPOINT ADVISORS | 28,417,403 | \<Detail\> | 28,417,403 | A | - | |
| 14565 | DUE FROM OTHER - TAX LOANS | 30,141,021 | \<Detail\> | 30,141,021 | B | 0 | |
| 14585 | DUE FROM HUNTER MOUNTAIN INVESTMENT TRUST | 60,167,335 | \<Detail\> | 60,167,336 | \<Due from Hunter Mountain\> | (1) | |
| 14750 | LONG TERM NOTES RECEIVABLE | 21,556,268 | \<Detail\> | 21,556,268 | \<Dugaboy\> | - | |
| | **Total Amount Targeted** | 154,166,379 | | 154,166,379 | | (0) | |
| **Non-Stat** | | | | | | | |
| 14531 | DUE FROM HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS | 4,895,352 | \<Detail\> | 4,895,468 | A | -116.00 | |
| 14533 | DUE FROM HCRE PARTNERS | 9,005,843 | \<Detail\> | 9,005,843 | C | 0 | |
| 14575 | DUE FROM HIGHLAND CAPITAL OF NEW YORK | 4,951,652 | \<Detail\> | 4,951,652 | \<New York\> | (0) | |
| | **Total Amount Non-Stat** | 18,852,847 | | 18,852,963 Rc | | (115.89) | |
| | **Total Amount Tested** | 173,019,226.00 | | 173,019,342.30 Rc | | -116.30 | Rc, imm |

**Tickmark Legend**

Rc  Amount recalculated. Refer to respective cell for formula detail.

imm  Amount is immaterial, below SUM. Further testing is waived.

^  Amount footed. Refer to respective cell for formula detail.

PY  Agrees to the prior year Asset lead schedule tested by the audit team without exception.

A  The engagement team notes that the receivables above relate to amounts due from other audited HCM entities for loans provided by Highland Capital Management, L.P. ("HCMLP") to Highland Capital Management Fund Advisors ("HCMFA") or NexPoint Advisors ("NPA"). Further note the engagement team prepared and tested the Due to HCMLP rollforwards for both HCMFA and NPA, which correspond to the receivables amount above in conjunction with testing over those entities, without exception. Note that the following procedures were performed within the EGAs linked below.

|  | **Amount** | |
|---|---|---|
| Due from HCMFA | 4,895,468 | Understand debt agreements and test compliance |
| Due from Nexpoint | 28,417,403 | Understand debt agreements and test compliance |

B  The engagement team notes that this amount is made up of 2 separate loans issued for tax purposes to two owners, James Dondero and Mark Okada. Refer to the \<Dondero Tax Loan\> tab for testing and support obtained. The note receivable due from Mark Okada has not had any paydowns in the current year. As such Okada's note receivable balance as of 12/31/2018 is consistent with prior year.

| Date | Lender | Interest Rate | Amount | |
|---|---|---|---|---|
| Various | HCM Dondero | Various | 28,891,021 | \<Dondero Tax Loan\> |
| 4/15/2016 | HCM Okada | 2.25% | 1,250,000 | 04152016 HCM Okada $1.25M |
| | | | 30,141,021 | Rc |

C  The engagement team notes that this amount is made up of 4 separate loans issued to HCRE. We not that one of the notes was restructured in the current year and an additional note has been issued. Refer below for support reconciliation and support obtained from Kristin Hendrix, HCM.

| Date | Lender | Interest Rate | Amount | |
|---|---|---|---|---|
| 11/27/2013 | HCRE #9 | 2.03% | 100,000 | PY |
| 5/31/2017 | HCRE Restructured | 8.00% | 5,655,843 | \<HCRE Restructure\> |
| 10/12/2017 | HCRE #10 | 8.00% | 2,500,000 | 10122017 HCRE $2.5M |
| 10/15/2018 | HCRE #11 | | 750,000 | \<HCRE Restructure\> |
| | | | 9,005,843 | Rc |

**Due from Highland Capital Management Services**
**Account Detail - Year end Balances**
12/31/2018
PBC, tickmarked by Madeline Pacocha, PwC

Note: The engagement team notes that the individual notes issued to HCM Services in the prior years were restructured and consolidated on 5/31/2017. The audit team obtained the original restructured agreement and the debt rollforward from Drew Wilson, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

| | | | |
|---|---|---|---|
| Closing Date | 5/31/2017 A | Closing Date | 6/25/2018 C | Closing Date | 3/26/2018 D |
| Beginning Principle Balance $ | 20,247,628.02 | Beginning Principal | 200,000 | Beginning Principal | 150,000 |
| Interest Rate | 2.75% | Interest Rate | 3.050% | Interest Rate | 2.880% |

| | Rc | B | Rc | Rc | B | Rc |
|---|---|---|---|---|---|---|
| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
| 12/31/2017 | | | | 14,122,352 | PYWP | 14,122,352 |
| 1/31/2018 | 32,984 | 0 | 32,984 | 14,122,352 | | 14,122,352 |
| 2/28/2018 | 29,792 | - | 62,777 | 14,122,352 | | 14,122,352 |
| 3/31/2018 | 32,984 | - | 95,761 | 14,122,352 | | 14,122,352 |
| 4/30/2018 | 31,920 | - | 127,682 | 14,122,352 | | 14,122,352 |
| 5/31/2018 | 32,984 | - | 160,666 | 14,122,352 | - | 14,122,352 |
| 6/30/2018 | 31,920 | - | 192,586 | 14,122,352 | - | 14,122,352 |
| 7/31/2018 | 32,984 | - | 225,571 | 14,122,352 | - | 14,122,352 |
| 8/31/2018 | 32,984 | - | 258,555 | 14,122,352 | - | 14,122,352 |
| 9/30/2018 | 31,920 | - | 290,476 | 14,122,352 | - | 14,122,352 |
| 10/8/2018 | 8,512 | (412,000) | (113,012) | 14,122,352 | (588,000) | 1 | 13,534,352 |
| 10/31/2018 | 31,611 | - | (81,401) | 13,534,352 | - | 13,534,352 |
| 11/30/2018 | 30,591 | - | (50,810) | 13,534,352 | - | 13,534,352 |
| 12/31/2018 | 31,611 | - | (19,199) | 13,534,352 | - | 13,534,352 |
| **Totals** | 265,120 | (412,000) | (19,199) | | (588,000) | **13,534,352** | . |

| SUMMARY | |
|---|---|
| Ending Principal Bal | 13,534,352 above |
| Accrued Interest | (19,199) =FM |

| | Rc | Rc | Rc | Rc |
|---|---|---|---|---|
| Date | Interest Paid | Accrued Interest | Beg. Prin Balance | Principal Paid | Ending Prin Bal |
| 6/25/2018 | | | 200,000 | | 200,000 |
| 6/30/2018 | | 83.06 | 200,000 | | 200,000 |
| 7/31/2018 | | 518.08 | 200,000 | | 200,000 |
| 8/31/2018 | | 518.08 | 200,000 | | 200,000 |
| 9/30/2018 | | 501.37 | 200,000 | | 200,000 |
| 10/31/2018 | | 518.08 | 200,000 | | 200,000 |
| 11/30/2018 | | 501.37 | 200,000 | | 200,000 |
| 12/31/2018 | | 518.08 | 200,000 | | 200,000 |

| Summary | |
|---|---|
| Ending Principal | 200,000 |
| Accrued Interest | 518.08 |

| | Rc | Rc | Rc |
|---|---|---|---|
| Date | Interest Paid | Accrued Interest | Beg. Prin Balance | Principal Paid | Ending Prin Bal |
| 3/26/2018 | | | 150,000 | | 150,000 |
| 3/31/2018 | | 62.67 | 150,000 | | 150,000 |
| 4/30/2018 | | 376.03 | 150,000 | | 150,000 |
| 5/31/2018 | | 388.56 | 150,000 | | 150,000 |
| 6/30/2018 | | 376.03 | 150,000 | | 150,000 |
| 7/31/2018 | | 388.56 | 150,000 | | 150,000 |
| 8/31/2018 | | 388.56 | 150,000 | | 150,000 |
| 9/30/2018 | | 376.03 | 150,000 | | 150,000 |
| 10/31/2018 | | 388.56 | 150,000 | | 150,000 |
| 11/30/2018 | | 376.03 | 150,000 | | 150,000 |
| 12/31/2018 | | 388.56 | 150,000 | | 150,000 |

| Summary | |
|---|---|
| Ending Principal | 150,000 |
| Accrued Interest | 388.56 |

**Tickmark Legend**
* Footed without exception.
Rc Recalculated amount. Refer to the respective cell's formula for further details.
imm Amount is immaterial (below SUM). Therefore, further analysis is waived.
PYWP Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
=FM Amount is below performance materiality, further testing waived.
A Agreed to the restructure Loan Agreement obtained from Kristen Hendrix, HCM, without exception. Refer to agreement linked below.
   05212017 HCMSI Loan Restructure

B Agreed to cash deposit in the Nexbank bank statement (account #, 1614130) for each respective month noted, without exception. Further testing waived. Refer below  for breakdown of payment.

   **1) October**

   | | |
   |---|---|
   | Principle Payment | (588,000) above |
   | Interest Payment | (412,000) above |
   | | (1,000,000) B |

C Agreed to the Loan Agreement obtained from Kristen Hendrix, HCM, without exception. Refer to agreement linked below.
   06252018 HCMSI Loan $200k

D Agreed to the Loan Agreement obtained from Kristen Hendrix, HCM, without exception. Refer to agreement linked below.
   03262018 HCMSI $150K

E See the reconciliation below for total due from HCMSI
   Ending Principal

   | | | |
   |---|---|---|
   | 5/31/2017 | 13,534,352 | Above |
   | 6/25/2018 | 200,000 | |
   | 3/26/2018 | 150,000 | |
   | | 13,884,352 | Rc |
   | | 13,884,352 | LS |
   | Difference | - | Rc, imm |

Appx. 01539

**Due from James Dondero - Tax Loan**
**Account Detail - Year end Balances**
**12/31/2018**
PBC, tickmarked by Madeline Pacocha, PwC

**Note:** The engagement team notes that in prior year there were six loans given to James Dondero, HCM Owner, for tax purposes. The original loan balances were agreed to their note agreements in the prior year, without exception. Note that there were four new note receivables during 2018. The audit team obtained the original agreement and the debt rollforward from Kristin Hendrix, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As some of the ending balance of the notes agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

### Note 1

| Restructured Closing Date | 5/31/2017 | A 06212017 Dondero Loan Restructure |
|---|---|---|
| Total Commitment Restructured | $ 14,977,274 | |
| Rate | 2.03% | |



| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
|---|---|---|---|---|---|---|
| 12/31/2017 | - | - | - | 14,478,031.16 | - | 14,478,031.16 |
| 1/31/2018 | 24,961.71 | | 24,961.71 | 14,478,031.16 | | 14,478,031.16 |
| 2/28/2018 | 22,546.06 | | 47,507.78 | 14,478,031.16 | | 14,478,031.16 |
| 3/31/2018 | 24,961.71 | | 72,469.49 | 14,478,031.16 | | 14,478,031.16 |
| 4/30/2018 | 24,156.50 | | 96,625.98 | 14,478,031.16 | | 14,478,031.16 |
| 5/31/2018 | 24,961.71 | | 121,587.70 | 14,478,031.16 | | 14,478,031.16 |
| 6/30/2018 | 24,156.50 | | 145,744.19 | 14,478,031.16 | | 14,478,031.16 |
| 7/31/2018 | 24,961.71 | | 170,705.90 | 14,478,031.16 | | 14,478,031.16 |
| 8/31/2018 | 24,961.71 | | 195,667.62 | 14,478,031.16 | | 14,478,031.16 |
| 9/30/2018 | 24,156.50 | | 219,824.11 | 14,478,031.16 | | 14,478,031.16 |
| 10/31/2018 | 24,961.71 | | 244,785.82 | 14,478,031.16 | | 14,478,031.16 |
| 11/30/2018 | 24,156.50 | | 268,942.32 | 14,478,031.16 | | 14,478,031.16 |
| 12/19/2018 | 15,299.11 | (283,380.69) | 860.74 | 14,478,031.16 | (499,242.45) | 13,978,788.71 |
| 12/31/2018 | 9,329.41 | | 10,190.15 | 13,978,788.71 | | 13,978,788.71 |
| **Totals** | **293,570.84** | **(283,380.69)** | **10,190.15** | | **(499,242.45)** | **13,978,788.71** |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 13,978,789 | above |
| Accrued Interest | 10,190 | <PM |

### Note 2

| Closing Date | 2/2/2018 | A 02022018 HCM JD $3.825M |
|---|---|---|
| Total Commitment Restructured | 3,825,000 | |
| Rate | 2.66% | |

| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
|---|---|---|---|---|---|---|
| 2/2/2018 | | | | 3,825,000 | | 3,825,000 |
| 2/28/2018 | 7,247.59 | | 7,247.59 | 3,825,000 | | 3,825,000 |
| 3/31/2018 | 8,641.36 | | 15,888.95 | 3,825,000 | | 3,825,000 |
| 4/30/2018 | 8,362.60 | | 24,251.55 | 3,825,000 | | 3,825,000 |
| 5/31/2018 | 8,641.36 | | 32,892.90 | 3,825,000 | | 3,825,000 |
| 6/30/2018 | 8,362.60 | | 41,255.51 | 3,825,000 | | 3,825,000 |
| 7/31/2018 | 8,641.36 | | 49,896.86 | 3,825,000 | | 3,825,000 |
| 8/31/2018 | 8,641.36 | | 58,538.22 | 3,825,000 | | 3,825,000 |
| 9/30/2018 | 8,362.60 | | 66,900.82 | 3,825,000 | | 3,825,000 |
| 10/31/2018 | 8,641.36 | | 75,542.18 | 3,825,000 | | 3,825,000 |
| 11/30/2018 | 8,362.60 | | 83,904.78 | 3,825,000 | | 3,825,000 |
| 12/31/2018 | 8,641.36 | | 92,546.14 | 3,825,000 | | 3,825,000 |
| **Totals** | **92,546.14** | | **92,546.14** | | | **3,825,000** |

| Summary | | |
|---|---|---|
| Ending Principal Bal | 3,825,000 | above |
| Accrued Interest | 92,546 | <PM |

### Note 3

| Closing Date | 8/1/2018 | A 08012018 HCM to JD $2 5M |
|---|---|---|
| Total Commitment Restructured | 2,500,000 | |
| Rate | 2.95% | |

| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
|---|---|---|---|---|---|---|
| 8/1/2018 | | | | 2,500,000 | | 2,500,000 |
| 8/31/2018 | 6,061.64 | | 6,061.64 | 2,500,000 | | 2,500,000 |
| 9/30/2018 | 6,061.64 | | 12,123.29 | 2,500,000 | | 2,500,000 |
| 10/31/2018 | 6,263.70 | | 18,386.99 | 2,500,000 | | 2,500,000 |
| 11/30/2018 | 6,061.64 | | 24,448.63 | 2,500,000 | | 2,500,000 |
| 12/31/2018 | 6,263.70 | | 30,712.33 | 2,500,000 | | 2,500,000 |
| **Totals** | **30,712.33** | | **30,712.33** | | | **2,500,000** |

| Summary | | |
|---|---|---|
| Ending Principal Bal | 2,500,000 | above |
| Accrued Interest | 30,712 | <PM |

### Note 4

| Closing Date | 1/18/2018 | A 01182018 HCM JD $7.9M Loan |
|---|---|---|
| Total Commitment Restructured | 7,900,000 | |
| Rate | 2.59% | |



| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
|---|---|---|---|---|---|---|
| 1/18/2018 | | | | 7,900,000 | | 7,900,000 |
| 1/31/2018 | 7,287.48 | | 7,287.48 | 7,900,000 | | 7,900,000 |
| 2/28/2018 | 15,696.11 | | 22,983.59 | 7,900,000 | | 7,900,000 |
| 3/31/2018 | 17,377.84 | | 40,361.42 | 7,900,000 | | 7,900,000 |
| 4/30/2018 | 16,817.26 | | 57,178.68 | 7,900,000 | | 7,900,000 |
| 5/31/2018 | 17,377.84 | | 74,556.52 | 7,900,000 | | 7,900,000 |
| 6/30/2018 | 16,817.26 | | 91,373.78 | 7,900,000 | | 7,900,000 |
| 7/31/2018 | 17,377.84 | | 108,751.62 | 7,900,000 | | 7,900,000 |
| 8/31/2018 | 17,377.84 | | 126,129.45 | 7,900,000 | | 7,900,000 |
| 9/30/2018 | 16,817.26 | | 142,946.71 | 7,900,000 | | 7,900,000 |
| 10/31/2018 | 17,377.84 | | 160,324.55 | 7,900,000 | | 7,900,000 |
| 11/30/2018 | 16,817.26 | | 177,141.81 | 7,900,000 | | 7,900,000 |
| 12/18/2018 | 10,090.36 | (187,232) | 0.00 | 7,900,000 | (1,812,768) | 6,087,232 |
| 12/31/2018 | 7,287.48 | | 7,287.48 | 6,087,232 | | 6,087,232 |
| **Totals** | **7,287.48** | | **7,287.48** | | **6,087,232** | |

| Summary | | |
|---|---|---|
| Ending Principal Bal | 6,087,232 | above |
| Accrued Interest | 7,287 | <PM |

### Note 5

| Closing Date | 8/13/2018 | A 08132018 HCM to JD $2.5M |
|---|---|---|
| Total Commitment Restructured | 2,500,000 | |
| Rate | 2.95% | |

| Date | Interest Income | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
|---|---|---|---|---|---|---|
| 8/13/2018 | | | | 2,500,000 | | 2,500,000 |
| 8/31/2018 | 3,636.99 | | 3,636.99 | 2,500,000 | | 2,500,000 |
| 9/30/2018 | 6,061.64 | | 9,698.63 | 2,500,000 | | 2,500,000 |
| 10/31/2018 | 6,263.70 | | 15,962.33 | 2,500,000 | | 2,500,000 |
| 11/30/2018 | 6,061.64 | | 22,023.97 | 2,500,000 | | 2,500,000 |
| 12/31/2018 | 6,263.70 | | 28,287.67 | 2,500,000 | | 2,500,000 |
| **Totals** | **28,287.67** | | **28,287.67** | | | **2,500,000** |

| Summary | | |
|---|---|---|
| Ending Principal Bal | 2,500,000 | above |
| Accrued Interest | 28,288 | <PM |

| Summary of Dondero Tax Loans | | |
|---|---|---|
| Total Ending Principal Balances | 28,891,021 | Above |

**Tickmark Legend**
A  Footed without exception.
Rc  Recalculated amount. Refer to the respective cell's formula for further details.
imm  Amount is immaterial (below SUM). Therefore, further analysis is waived.
PYWP  Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
<PM  Amount is below performance materiality, further testing waived.
A  Agreed to the restructure Loan Agreement obtained from Drew Wilson, HCM, without exception. Refer to agreement linked below.

| Note 1 | 06212017 Dondero Loan Restructure |
|---|---|
| Note 2 | 02022018 HCM JD $3.825M |
| Note 3 | 08012018 HCM to JD $2.5M |
| Note 4 | 01182018 HCM JD $7.9M Loan |
| Note 5 | 08132018 HCM to JD $2.5M |

B  Agreed to cash deposit in the December Compass  bank statement (account #: 0025876342), without exception. Further testing waived. Note that the interest and principle payment were made in two lump sum payment of $782,623 and $2,000,000. Refer below  for breakdown of payment.

**Note 1**

| Principle Payment | 499,242 | above |
|---|---|---|
| Interest Payment | 283,381 | above |
| | 782,623 | B |

**Note 4**

| Principle Payment | 1,812,768 | above |
|---|---|---|
| Interest Payment | 187,232 | above |
| | 2,000,000 | |



**Due from Get Good**
**Account Detail - Year end Balances**
**12/31/2018**
PBC, tickmarked by Madeline Pacocha, PwC

> Note: The engagement team notes that this amount is a related to a Note Receivable from Get Good original sold on 12/28/2016. Per review of the original purchase agreement, linked below, the audit team notes that HCMLP exchanged assets (held as a liability) for the right to receive 97.6835% of Get Good's Note receivable. We note that the original note receivable issued to Get Good Trust from the Dugaboy Trust was for $24,268,621.69 on 5/31/2017. The audit team obtained the original restructured agreement and the debt rollforward from Drew Wilson, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.
>
> 06212017 Dugaboy Interest Amendment
> GG and HCM PSA Crusader - Loan Fund - AAL  63370369_2

|  |  | HCM |  |
|---|---|---|---|
| Original Note Date | 12/28/2016 | 97.6835% | PYWP |
| Original Note Amount | $ 23,817,640 | $ 23,265,904 | |
| | | | |
| Restructured Closing Date | 5/31/2017 | 97.6835% | A |
| Total Restructured Amount | $ 24,268,622 | $ 22,860,559 | |
| Rate | 3.260% | | |

| | B | Rc | Rc | B | Rc |
|---|---|---|---|---|---|
| Date | Interest Paid | Accrued Interest | Beg Prin Bal | Principal Paid | Ending Prin Bal |
| 12/31/2017 | | | 22,860,559.00 | PYWP | 22,860,559.00 |
| 1/31/2018 | | 63,295.56 | 22,860,559.00 | | 22,860,559.00 |
| 2/28/2018 | | 57,170.19 | 22,860,559.00 | | 22,860,559.00 |
| 3/31/2018 | | 63,295.56 | 22,860,559.00 | | 22,860,559.00 |
| 4/30/2018 | | 61,253.77 | 22,860,559.00 | | 22,860,559.00 |
| 5/23/2018 | (2,195,709) | 46,961.23 | 22,860,559.00 | (1,304,291.00) | 21,556,268.00 |
| 5/31/2018 | - | 15,402.40 | 21,556,268.00 | | 21,556,268.00 |
| 6/30/2018 | - | 57,758.99 | 21,556,268.00 | | 21,556,268.00 |
| 7/31/2018 | - | 59,684.29 | 21,556,268.00 | | 21,556,268.00 |
| 8/4/2018 | - | 7,701.20 | 21,556,268.00 | | 21,556,268.00 |
| 8/31/2018 | - | 51,983.09 | 21,556,268.00 | | 21,556,268.00 |
| 9/30/2018 | | 57,758.99 | 21,556,268.00 | | 21,556,268.00 |
| 10/31/2018 | - | 59,684.29 | 21,556,268.00 | | 21,556,268.00 |
| 11/30/2018 | - | 57,758.99 | 21,556,268.00 | | 21,556,268.00 |
| 12/31/2018 | | 59,684.29 | 21,556,268.00 | | 21,556,268.00 |
| **Totals** | - | 59,684.29 | | (1,304,291.00) | 21,556,268.00 |
| | ^ | | | ^ | ^ |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 21,556,268 | above |
| Accrued Interest | 59,684 | <PM |

**Tickmark Legend**
^ Footed without exception.
Rc Recalculated amount. Refer to the respective cell's formula for further details.
imm Amount is immaterial (below SUM). Therefore, further analysis is waived.
PYWP Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
<PM Amount is below performance materiality, further testing waived.
A Agreed to the restructure Get Good Note Receivable Loan Agreement obtained from Kristin Hendrix, HCM, without exception. Refer to agreement linked below.
   06212017 Dugaboy Interest Amendment

B Agreed to cash deposit in the May Nex Bank statement (account #: 1614130), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $3,500,000. Refer below  for breakdown of payment.

| Principle Payment | (1,304,291) | above |
|---|---|---|
| Interest Payment | (2,195,709) | above |
| | (3,500,000) | B |
| | ^ | |

HCRE Restructure
Account Detail - Year end Balances
12/31/2018
PBC, tickmarked by Madeline Pacocha, PwC

> **Note:** The engagement team notes that some of HCRE's previous notes receivables were restructured and consolidated on 5/31/2017. The audit team obtained the original restructured agreement and the debt rollforward from Kristen Hendrix, HCMLP. Refer below for the new restructured receivable rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

| Restructured Closing Date | | 5/31/2017 | A |
| Total Commitment Restructured | $ | 6,059,832 | ↓ |
| Rate | | 8.00% | ↓ |

| Date | Interest Income (Rc) | Interest Paid (B) | Accrued Interest (Rc) | Beg Prin Bal (Rc) | | Principal Paid (B) | Ending Prin Bal (Rc) |
|---|---|---|---|---|---|---|---|
| 12/31/2017 | - | - | | 5,857,837.09 | PYWP | - | 5,857,837.09 |
| 1/31/2018 | 39,801.19 | | 39,801.19 | 5,857,837.09 | | | 5,857,837.09 |
| 2/28/2018 | 35,949.47 | | 75,750.66 | 5,857,837.09 | | | 5,857,837.09 |
| 3/31/2018 | 39,801.19 | - | 115,551.85 | 5,857,837.09 | | | 5,857,837.09 |
| 4/30/2018 | 38,517.28 | | 154,069.14 | 5,857,837.09 | | | 5,857,837.09 |
| 5/31/2018 | 39,801.19 | - | 193,870.33 | 5,857,837.09 | | | 5,857,837.09 |
| 6/30/2018 | 38,517.28 | | 232,387.62 | 5,857,837.09 | | | 5,857,837.09 |
| 7/31/2018 | 39,801.19 | - | 272,188.81 | 5,857,837.09 | | | 5,857,837.09 |
| 8/31/2018 | 39,801.19 | | 311,990.01 | 5,857,837.09 | | | 5,857,837.09 |
| 9/30/2018 | 38,517.28 | | 350,507.29 | 5,857,837.09 | | | 5,857,837.09 |
| 10/31/2018 | 39,801.19 | | 390,308.49 | 5,857,837.09 | | | 5,857,837.09 |
| 11/30/2018 | 38,517.28 | | 428,825.77 | 5,857,837.09 | | | 5,857,837.09 |
| 12/19/2018 | 24,394.28 | (453,220.06) | (0.01) | 5,857,837.09 | | (201,994.38) | 5,655,842.71 |
| 12/31/2018 | 14,875.64 | | 14,875.63 | 5,655,842.71 | | | 5,655,842.71 |
| **Totals** | 468,095.69 | (453,220.06) | 14,875.63 | 5,655,842.71 | | (201,994.38) | 5,655,842.71 |
| | ^ | ^ | | | | ^ | ^ |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 5,655,843 | above |
| Accrued Interest | 14,876 | ↓ <PM |

| Restructured Closing Date | | 10/15/2018 | C |
| Total Commitment Restructured | $ | 750,000 | ↓ |
| Rate | | 8.00% | ↓ |

| Date | Interest Income (Rc) | Interest Paid (B) | Accrued Interest (Rc) | Beg Prin Bal (Rc) | Principal Paid (B) | Ending Prin Bal (Rc) |
|---|---|---|---|---|---|---|
| 10/15/2018 | - | | - | 750,000.00 | | 750,000.00 |
| 10/31/2018 | 2,630.14 | | 2,630.14 | 750,000.00 | | 750,000.00 |
| 11/30/2018 | 4,931.51 | | 7,561.64 | 750,000.00 | | 750,000.00 |
| 12/19/2018 | 3,123.29 | - | 10,684.93 | 750,000.00 | - | 750,000.00 |
| 12/31/2018 | 1,972.60 | | 12,657.53 | 750,000.00 | | 750,000.00 |
| **Totals** | 12,657.53 | 793,388.08 | 12,657.53 | 750,000.00 | - | 750,000.00 |

| SUMMARY | |
|---|---|
| Ending Principal Bal | 750,000 |
| Accrued Interest | 12,658 |

**Tickmark Legend**
^ Footed without exception.
Rc Recalculated amount. Refer to the respective cell's formula for details.
imm Amount is immaterial (below SUM). Therefore, further analysis is waived.
PYWP Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
<PM Amount is below performance materiality, further testing waived.
A Agreed to the restructure Loan Agreement obtained from Kristen Hendrix, HCM, without exception. Refer to agreement linked below.
   06212017 HCRE Partners Loan Restructure

B Agreed to cash deposit in the December Compass bank statement (account #: 0025876342), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $655,214. Refer below for breakdown of payment.

| Principle Payment | 201,994 | above |
|---|---|---|
| Interest Payment | 453,220 | above |
| | 655,214 | B |
| | ^ | |

C Agreed to the restructure Loan Agreement obtained from Kristen Hendrix, HCM, without exception. Refer to agreement linked below.
   HCMLP to HCRE 750K 10.15.18

**Appx. 01542**

**Note:** The engagement team notes the receivable based on an agreement with Highland Capital of New York, L.P. Based on the agreement, linked below, Highland Capital of New York, L.P. performs marketing and other services to Highland Capital, for a management fee. Purchases incurred are tracked, as detailed below, and then are netted again the management fee for the period. Further details related to the agreement are described in the transfer pricing agreement linked below. The engagement team performed a reconciliation of the transactions that occured through the year to arrive at the amount described on the trial balance ending 12/31/2018.

HC of NY Mgmt Service Agreement

PBC
Page **1** of **1**
## HCM Account
Parameters given:

|  | From | To |
|---|---|---|
| Entity | 0010 | 0010 |
| Dept | 000 | 000 |
| Account | 14575 | 14575 |
| Business | 00 | 00 |
| Future | 0000 | 0000 |
| Gl Date | 01-JAN- | 31-DEC-18 |

|  |  |  |  |  |  |  | FIXED ASSETS | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **JOURNAL ENTRIES** | | | | | | | **PAYABLES** | | | | **RECEIVABLES** | | |
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | Transaction Description | Asset Number | Asset vendor | Asset Description | placed in service | Asset Category |
| Payables | Purchase Invoices | Payables A 2560696 2986308 2 | JAN-18 Purchase Invoices USD | 31-Jan-18 | 9 | Journal Import Created | 0010.000.14575 .00.0000 | 1290.88 | 0 | Charles Schwab |  | 01152018 CS | 1/15/2018 401k Debits |  |  |  |  |  |  |  |  |  |
| Payables | Purchase Invoices | Payables A 2560696 2986308 2 | JAN-18 Purchase Invoices USD | 31-Jan-18 | 9 | Journal Import Created | 0010.000.14575 .00.0000 | 23385.69 | 0 | HIGHLAND CAPITAL OF NEW YORK |  | 1/15/2018 Payroll Funding | 1/15/2018 Payroll Funding |  |  |  |  |  |  |  |  |  |
| Payables | Purchase Invoices | Payables A 2586696 3013544 2 | JAN-18 Purchase Invoices USD | 31-Jan-18 | 5 | Journal Import Created | 0010.000.14575 .00.0000 | 65000 | 0 | HIGHLAND CAPITAL OF NEW YORK |  | 1/16/2018 Account Funding | 1/16/2018 HCNY Account Funding |  |  |  |  |  |  |  |  |  |
| Receivables | Misc Receipts | Receivable s A 3012696 3492090 | AUG-18 Misc Receipts USD | 31-Aug-18 | 5 | Journal Import Created | 0010.000.14575 .00.0000 | 0 | 370.97 |  |  |  |  |  | 08132018ADW |  |  |  |  |  |  |  |
| Receivables | Misc Receipts | Receivable s A 3121698 3678139 | NOV-18 Misc Receipts USD | 30-Nov-18 | 6 | Journal Import Created | 0010.000.14575 .00.0000 | 0 | 1000 |  |  |  |  |  | KH11022018 |  |  |  |  |  |  |  |
| Receivables | Misc Receipts | Receivable s A 3185728 3774954 | DEC-18 Misc Receipts USD | 31-Dec-18 | 7 | Journal Import Created | 0010.000.14575 .00.0000 | 0 | 1693.25 |  |  |  |  |  | HE12262018 |  |  |  |  |  |  |  |
| Spreadshee t | Adjustment | Spreadshee t A 4017472 | 20181231 Intercompany reclass Adjustment USD | 31-Dec-18 | 2 | Intercompany Reclass | 0010.000.14575 .00.0000 | 0 | 924808.57 |  |  |  |  |  |  |  |  |  |  |  |  |  |

1,360,487  928,377 Rc
^            ^

| PY Ending Balance | 4,519,542 | PYWP |
| Net Change in CY | 432,110 | Above |
| Total Due From | 4,951,652 | Rc |
|  | 4,951,652 | <Detail> |
| *Difference* | 0 | Rc, imm |

**PwC Tickmark Legend**
**Rc** Recalculated amount. Refer to the respective cell's formula for further details.
**^** Footed without exception
**<Detail>** Refer to the <Detail> tab.
**PYWP** Agreed to prior year workpaper without exception.

Appx. 01543

HCMLP
Notes Receivable
12/31/2018
PBC, tickmarked by Madeline Pacocha, PwC

> **Note:** The audit team notes that this Note Receivable balance is made up of a  Hunter Mountain Investment Trust note. The audit team obtained the original contribution agreement in prior year, and also obtained the debt rollforward from Sean Fox, HCMLP. Refer below for the rollforward tied out by the audit team. As the ending balance of the note agrees to the Notes Receivable balance on the lead schedule without exception, further analysis is waived.

| | | |
|---|---|---|
| Beginning Principal | 63,000,000 | **A** |
| Interest Rate | 2.61% | ↓ |
| Effective Date | 12/21/2015 | |

| Date | Rc Interest Income | Interest Paid | Rc Accrued Interest | Rc Beg Prin Bal | D Principal Paid | B PIK | Rc Ending Prin Bal |
|---|---|---|---|---|---|---|---|
| 12/31/17 | 46,099 | - | 46,099 | 60,663,612 **PYWP** | - | - | 60,663,612 **PYWP** |
| 01/31/18 | 134,474 | - | 180,573 | 60,663,612 | - | - | 60,663,612 |
| 02/28/18 | 121,460 | | 302,033 | 60,663,612 | - | - | 60,663,612 |
| 03/31/18 | 134,474 | | 436,507 | 60,663,612 | - | - | 60,663,612 |
| 04/30/18 | 130,136 | - | 566,643 | 60,663,612 | - | - | 60,663,612 |
| 05/31/18 | 134,474 | | 701,116 | 60,663,612 | - | - | 60,663,612 |
| 06/30/18 | 130,136 | | 831,252 | 60,663,612 | - | - | 60,663,612 |
| 07/31/18 | 134,474 | - | 965,726 | 60,663,612 | - | - | 60,663,612 |
| 08/31/18 | 134,474 | - | 1,100,200 | 60,663,612 | - | - | 60,663,612 |
| 09/30/18 | 130,136 | | 1,230,336 | 60,663,612 | - | - | 60,663,612 |
| 10/31/18 | 134,474 | | 1,364,809 | 60,663,612 | - | - | 60,663,612 |
| 11/30/18 | 130,136 | | 1,494,945 | 60,663,612 | - | - | 60,663,612 |
| 12/19/18 | 82,419 | (1,574,526) | 2,839 | 60,663,612 | (504,880) | - | 60,158,732 |
| 12/21/18 | 8,604 | (8,604) **B** | 2,839 | 60,158,732 | - | 8,604 | 60,167,336 |
| 12/31/18 | 43,024 | - | 45,863 | 60,167,336 | - | - | 60,167,336 |
| **Totals** | **1,582,893** **C** | **(1,583,130)** | **45,863** | | **(504,880)** | **8,604** | **60,167,336** |
| | ^ | ^ | | | ^ | ^ | |

| SUMMARY | | |
|---|---|---|
| Ending Principal Bal | 60,167,336 | **above** |
| Accured Interest | 45,863 | **above** |

**Tickmark Legend**
**^**   Footed without exception.
**Rc**   Recalculated amount. Refer to the respective cell's formula for further details.
**PYWP**   Agreed to the prior year workpaper, without exception. Refer to the Test due from and notes receivable EGA in prior years database.
**A**   Agrees to the signed Hunter Mountain contribution agreement linked below without exception. Refer to pg. 49 of the agreement for further details around these amounts.
Hunter Mountain Contribution Agreement
**B**   Per review of the amortization schedule within the promissory note linked below (p. 7/7), the audit team notes that the interest accrued PIKs at it's anniversary date each year. Therefore, the team deems it reasonable that the full value of accrued interest was capitalized into the principal balance on the notes one year anniversary. Refer to the note below for further details.

HM Secured Promissory Note
**C**   Agree to the Interest Income for Hunter Mountain Trust per the <80100> detail tab within an immaterial difference. Refer to the reconciliation within the aforementioned tab linked below for further details.
<80100>
**D**   Agreed to cash deposit in the December Compass Bank statement (account #: 0025876342), without exception. Further testing waived. Note that the Interest and principle payment were made in one lump sum payment of $2,079,406. Refer below  for breakdown of payment.

| | | |
|---|---|---|
| Principal Payment | 504,880 | **above** |
| Interest Payment | 1,583,130 | **above** |
| PIK | (8,604) | |
| | 2,079,406 | **D** |

**HCM Account Analysis Report**

Parameters given:

| | From | To |
|---|---|---|
| Entity | 0010 | 0010 |
| Dept | 000 | 999 |
| Account | 80100 | 80100 |
| Business Unit | 00 | 99 |
| Future | 0000 | 9999 |
| GL Date | 01-JAN-18 | 31-DEC-18 |

Note: Note that Interest Income receivable makes up a portion of the Other Income balance. As a majority of interest income was calculated within this EGA, the

| | | JOURNAL ENTRIES | | | | | | | | PAYABLES | | | | RECEIVABLES | | | | FIXED ASSETS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | placed in service | Asset Category |
| Receivables | Misc Receipts | Receivables A 2720699 3148337 2 | APR-18 Misc Receipts USD | 30-Apr-18 | 2 | Journal Import Created | 0010.000.80100.00.0000 | 0 | 153.05 | | | | | | 04032018ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2927697 3379091 | JUL-18 Misc Receipts USD | 31-Jul-18 | 2 | Journal Import Created | 0010.000.80100.00.0000 | 0 | 115.4 | | | | | | 07032018ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 2955693 3396569 | JUL-18 Misc Receipts USD | 31-Jul-18 | 2 | Journal Import Created | 0010.000.80100.00.0000 | 0 | 337.38 | | | | | | 07172018ADW | | | | | | | |
| Receivables | Misc Receipts | Receivables A 3177740 3762252 2 | DEC-18 Misc Receipts USD | 31-Dec-18 | 3 | Journal Import Created | 0010.000.80100.00.0000 | 0 | 10090.36 | | | | | | HE12192018 | | | | | | | |
| Spreadsheet | Adjustment | Reverses "20180630 Interest Receivable JE Adjustment USD"01-AUG-18 09:05:08 - 3458829 | Reverses "20180630 Interest Receivable JE Adjustment USD"01-AUG-18 09:05:08 | 30-Jun-18 | 2 | 6/30 Interest Receivable JE | 0010.000.80100.00.0000 | 317670.24 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Reverses "20180831 Interest Receivable JE Adjustment USD"10-SEP-18 15:36:26 - 3554954 | Reverses "20180831 Interest Receivable JE Adjustment USD"10-SEP-18 15:36:26 | 31-Aug-18 | 2 | 8/31 Interest Receivable JE | 0010.000.80100.00.0000 | 371485.53 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3030498 | 20180131 Hunter Mountain Note Receivable Update Adjustment USD | 31-Jan-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 134464.4 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3031144 | 20180131 NexBank MM Interest Adjustment USD | 31-Jan-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3031144 | 20180131 NexBank MM Interest Adjustment USD | 31-Jan-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3031144 | 20180131 NexBank MM Interest Adjustment USD | 31-Jan-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 1097.25 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3041181 | 20180131 Interest Receivable JE Adjustment USD | 31-Jan-18 | 2 | 1/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 356027.21 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3055700 | 20180131 Jefferies Reconciliation Adjustment USD | 31-Jan-18 | 12 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 12601.94 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3055700 | 20180131 Jefferies Reconciliation Adjustment USD | 31-Jan-18 | 13 | Carey PIK | 0010.000.80100.00.0000 | 0 | 324206.82 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3056870 | 20180101 Carey PIK Adjustment USD | 1-Jan-18 | 2 | Carey PIK | 0010.000.80100.00.0000 | 216137.88 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3093661 | 20180228 Hunter Mountain Note Receivable Update Adjustment USD | 28-Feb-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 121451.71 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3093710 | 20180228 NexBank MM Interest Adjustment USD | 28-Feb-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3093710 | 20180228 NexBank MM Interest Adjustment USD | 28-Feb-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.17 | | | | | | | | | | | | | |

| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR |
|---|---|---|---|---|---|---|---|---|---|
| Spreadsheet | Adjustment | Spreadsheet A 3093710 | 20180228 NexBank MM Interest Adjustment USD | 28-Feb-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 2058.13 |
| Spreadsheet | Adjustment | Spreadsheet A 3094101 | 20180228 Interest Receivable JE Adjustment USD | 28-Feb-18 | 2 | 2/28 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 337934.42 |
| Spreadsheet | Adjustment | Spreadsheet A 3097972 | 20180228 Jefferies Reconciliation Adjustment USD | 28-Feb-18 | 10 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 |
| Spreadsheet | Adjustment | Spreadsheet A 3097972 | 20180228 Jefferies Reconciliation Adjustment USD | 28-Feb-18 | 11 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 11892 |
| Spreadsheet | Adjustment | Spreadsheet A 3147202 | 20180331 NexBank MM Interest Adjustment USD | 31-Mar-18 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.19 |
| Spreadsheet | Adjustment | Spreadsheet A 3147202 | 20180331 NexBank MM Interest Adjustment USD | 31-Mar-18 | 5 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 399.92 |
| Spreadsheet | Adjustment | Spreadsheet A 3147202 | 20180331 NexBank MM Interest Adjustment USD | 31-Mar-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 840.21 |
| Spreadsheet | Adjustment | Spreadsheet A 3147221 | 20180331 Hunter Mountain Note Receivable Update Adjustment USD | 31-Mar-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 134464.4 |
| Spreadsheet | Adjustment | Spreadsheet A 3147305 | 20180331 Interest Receivable JE Adjustment USD | 31-Mar-18 | 3 | 3/31 Interest Receivable JE - Okada True-up | 0010.000.80100.00.0000 | 0 | 770.55 |
| Spreadsheet | Adjustment | Spreadsheet A 3147305 | 20180331 Interest Receivable JE Adjustment USD | 31-Mar-18 | 4 | 3/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 376399.52 |
| Spreadsheet | Adjustment | Spreadsheet A 3161933 | 20180331 Jefferies Reconciliation Adjustment USD | 31-Mar-18 | 17 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 |
| Spreadsheet | Adjustment | Spreadsheet A 3161933 | 20180331 Jefferies Reconciliation Adjustment USD | 31-Mar-18 | 18 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 11167.62 |
| Spreadsheet | Adjustment | Spreadsheet A 3236844 | 20180430 Hunter Mountain Note Receivable Update Adjustment USD | 30-Apr-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 130126.83 |
| Spreadsheet | Adjustment | Spreadsheet A 3236875 | 20180430 NexBank MM Interest Adjustment USD | 30-Apr-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 |
| Spreadsheet | Adjustment | Spreadsheet A 3236875 | 20180430 NexBank MM Interest Adjustment USD | 30-Apr-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.17 |
| Spreadsheet | Adjustment | Spreadsheet A 3236875 | 20180430 NexBank MM Interest Adjustment USD | 30-Apr-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 498.3 |
| Spreadsheet | Adjustment | Spreadsheet A 3245730 | 20180430 Interest Receivable JE Adjustment USD | 30-Apr-18 | 2 | 4/30 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 363024.99 |
| Spreadsheet | Adjustment | Spreadsheet A 3263927 | 20180430 Jefferies Reconciliation Adjustment USD | 30-Apr-18 | 8 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 12836.42 |
| Spreadsheet | Adjustment | Spreadsheet A 3263927 | 20180430 Jefferies Reconciliation Adjustment USD | 30-Apr-18 | 9 | Carey Interest Receipt | 0010.000.80100.00.0000 | 0 | 75674.11 |
| Spreadsheet | Adjustment | Spreadsheet A 3263927 | 20180430 Jefferies Reconciliation Adjustment USD | 30-Apr-18 | 10 | Carey PIK | 0010.000.80100.00.0000 | 0 | 303377.61 |

Appx. 01546

| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | placed in service | Asset Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spreadsheet | Adjustment | Spreadsheet A 3292395 | 20180531 Hunter Mountain Note Receivable Update Adjustment USD | 31-May-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 134464.4 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3295979 | 20180531 NexBank MM Interest Adjustment USD | 31-May-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3295979 | 20180531 NexBank MM Interest Adjustment USD | 31-May-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.19 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3295979 | 20180531 NexBank MM Interest Adjustment USD | 31-May-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 492.44 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3296208 | 20180531 Interest Receivable JE Adjustment USD | 31-May-18 | 2 | 5/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 358791.49 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3335308 | 20180531 Jefferies Reconciliation Adjustment USD | 31-May-18 | 19 | Reimer Interest Income Reversal | 0010.000.80100.00.0000 | 4099.73 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3335308 | 20180531 Jefferies Reconciliation Adjustment USD | 31-May-18 | 20 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3335308 | 20180531 Jefferies Reconciliation Adjustment USD | 31-May-18 | 21 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 11709.5 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3335308 | 20180531 Jefferies Reconciliation Adjustment USD | 31-May-18 | 22 | JHT PIK | 0010.000.80100.00.0000 | 0 | 52717.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3335535 | 20180630 Hunter Mountain Note Receivable Update Adjustment USD | 30-Jun-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 130126.83 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3354201 | 20180630 NexBank MM Interest Adjustment USD | 30-Jun-18 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3354201 | 20180630 NexBank MM Interest Adjustment USD | 30-Jun-18 | 5 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 410.06 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3354201 | 20180630 NexBank MM Interest Adjustment USD | 30-Jun-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 910.97 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3363051 | 20180630 Interest Receivable JE Adjustment USD | 30-Jun-18 | 2 | 6/30 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 317670.24 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3378836 | 20180630 Jefferies Reconciliation Adjustment USD | 30-Jun-18 | 9 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3378836 | 20180630 Jefferies Reconciliation Adjustment USD | 30-Jun-18 | 10 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 12591.64 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3378940 | 20180630 Interest Receivable JE Adjustment USD | 30-Jun-18 | 2 | 6/30 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 317670.24 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3408762 | 20180731 Hunter Mountain Note Receivable Update Adjustment USD | 31-Jul-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 134464.4 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3458821 | 20180731 NexBank MM Interest Adjustment USD | 31-Jul-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3458821 | 20180731 NexBank MM Interest Adjustment USD | 31-Jul-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |

| | | | | | | | | | PAYABLES | | | | RECEIVABLES | | FIXED ASSETS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **JOURNAL ENTRIES** | | | | | | | | | | | | | | | | | | | | |
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | placed in service | Asset Category |
| Spreadsheet | Adjustment | Spreadsheet A 3458821 | 20180731 NexBank MM Interest Adjustment USD | 31-Jul-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 1744.89 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3458905 | 20180731 Interest Receivable JE Adjustment USD | 31-Jul-18 | 3 | 7/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 57758.99 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3458905 | 20180731 Interest Receivable JE Adjustment USD | 31-Jul-18 | 4 | 7/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 371473.69 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3504909 | 20180731 Jefferies Reconciliation Adjustment USD | 31-Jul-18 | 16 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 12591.64 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3504909 | 20180731 Jefferies Reconciliation Adjustment USD | 31-Jul-18 | 17 | Carey Interest Receipt | 0010.000.80100.00.0000 | 0 | 106164.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3504909 | 20180731 Jefferies Reconciliation Adjustment USD | 31-Jul-18 | 18 | Carey PIK | 0010.000.80100.00.0000 | 0 | 293160.35 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3506570 | 20180831 Hunter Mountain Note Receivable Update Adjustment USD | 31-Aug-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 134464.4 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3538289 | 20180831 NexBank MM Interest Adjustment USD | 31-Aug-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3538289 | 20180831 NexBank MM Interest Adjustment USD | 31-Aug-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.19 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3538289 | 20180831 NexBank MM Interest Adjustment USD | 31-Aug-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 603.26 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3538465 | 20180831 Interest Receivable JE Adjustment USD | 31-Aug-18 | 2 | 8/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 371485.53 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3554799 | 20180831 Interest Receivable JE Adjustment USD | 31-Aug-18 | 2 | 8/31 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 381184.16 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3558805 | 20180831 Jefferies Reconciliation Adjustment USD | 31-Aug-18 | 14 | Carey Interest Receipt | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3558805 | 20180831 Jefferies Reconciliation Adjustment USD | 31-Aug-18 | 15 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3558805 | 20180831 Jefferies Reconciliation Adjustment USD | 31-Aug-18 | 16 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 12421.39 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3583897 | 20180930 Hunter Mountain Note Receivable Update Adjustment USD | 30-Sep-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 130126.83 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3598822 | 20180930 NexBank MM Interest Adjustment USD | 30-Sep-18 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3598822 | 20180930 NexBank MM Interest Adjustment USD | 30-Sep-18 | 5 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 252.31 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3598822 | 20180930 NexBank MM Interest Adjustment USD | 30-Sep-18 | 6 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 673.41 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3598861 | 20180930 Interest Receivable JE Adjustment USD | 30-Sep-18 | 2 | 9/30 Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 368956.99 | | | | | | | | | | | | | |

| | | | | | | | | | **PAYABLES** | | | | **RECEIVABLES** | | | | **FIXED ASSETS** | | | | |
| | **JOURNAL ENTRIES** | | | | | | | | | | | | | | | | | | | | |
| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | placed in service | Asset Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spreadsheet | Adjustment | Spreadsheet A 3611323 | 20180930 Jefferies Reconciliation Adjustment USD | 30-Sep-18 | 10 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3611323 | 20180930 Jefferies Reconciliation Adjustment USD | 30-Sep-18 | 11 | Carey Interest Receipt | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3611323 | 20180930 Jefferies Reconciliation Adjustment USD | 30-Sep-18 | 12 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 14072.91 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3677868 | 20181031 NexBank MM Interest Adjustment USD | 31-Oct-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3677868 | 20181031 NexBank MM Interest Adjustment USD | 31-Oct-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3677868 | 20181031 NexBank MM Interest Adjustment USD | 31-Oct-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 141.15 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3677870 | 20181031 Hunter Mountain Note Receivable Update Adjustment USD | 31-Oct-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 134464.4 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3678489 | 20181031 Interest Receivable JE Adjustment USD | 31-Oct-18 | 2 | Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 378976.46 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3690820 | 20181031 Jefferies Reconciliation Adjustment USD | 31-Oct-18 | 10 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 11254 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3690820 | 20181031 Jefferies Reconciliation Adjustment USD | 31-Oct-18 | 11 | Carey Interest Receipt | 0010.000.80100.00.0000 | 0 | 107050.7 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3690820 | 20181031 Jefferies Reconciliation Adjustment USD | 31-Oct-18 | 12 | Carey PIK | 0010.000.80100.00.0000 | 0 | 299032.86 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3719838 | 20181130 Hunter Mountain Note Receivable Update Adjustment USD | 30-Nov-18 | 2 | Hunter Mountain Note Receivable Update - PIK | 0010.210.80100.10.0000 | 0 | 130126.83 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3720781 | 20181130 Interest Receivable JE Adjustment USD | 30-Nov-18 | 2 | Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 392259.84 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3731221 | 20181130 NexBank MM Interest Adjustment USD | 30-Nov-18 | 4 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3731221 | 20181130 NexBank MM Interest Adjustment USD | 30-Nov-18 | 5 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3731221 | 20181130 NexBank MM Interest Adjustment USD | 30-Nov-18 | 6 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 254.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3761305 | 20181130 Jefferies Reconciliation Adjustment USD | 30-Nov-18 | 11 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3761305 | 20181130 Jefferies Reconciliation Adjustment USD | 30-Nov-18 | 12 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 26489.55 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3774850 | 20181231 Hunter Mountain Note Receivable Update Adjustment USD | 31-Dec-18 | 4 | Hunter Mountain Note Receivable - Interest | 0010.210.80100.10.0000 | 0 | 134046.7 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3786797 | 20181231 HM Note True Up Adjustment USD | 31-Dec-18 | 2 | Hunter Mountain Note Receivable - Interest True UP | 0010.210.80100.10.0000 | 0 | 4438.63 | | | | | | | | | | | | | |

| Source | Category | Journal Batch Name | Journal Name | GL Date | Journal Line Number | Journal Line Description | Account code combination | Amount DR | Amount CR | Supplier name | AP Check # | AP Invoice # | AP Invoice Description | Customer Name | AR Receipt Number | AR Transaction Number | AR Transaction Description | Asset Number | Asset vendor | Asset Description | placed in service | Asset Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Spreadsheet | Adjustment | Spreadsheet A 3801275 | 20181231 NexBank MM Interest Adjustment USD | 31-Dec-18 | 4 | Interest (Account *735) | 0010.210.80100.10.0000 | 0 | 0.18 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3801275 | 20181231 NexBank MM Interest Adjustment USD | 31-Dec-18 | 5 | Interest (Account *130) | 0010.210.80100.10.0000 | 0 | 56.27 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3801275 | 20181231 NexBank MM Interest Adjustment USD | 31-Dec-18 | 6 | Interest (Account *891) | 0010.210.80100.10.0000 | 0 | 669.49 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3801965 | 20181231Interest Receivable JE Adjustment USD | 31-Dec-18 | 2 | Interest Receivable JE | 0010.000.80100.00.0000 | 0 | 368743.85 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3827317 | 20181130 Jefferies Reconciliation Adjustment USD | 31-Dec-18 | 11 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3827317 | 20181130 Jefferies Reconciliation Adjustment USD | 31-Dec-18 | 12 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3864462 | 20191231 Interest Receivable JE True up Adjustment USD | 31-Dec-18 | 2 | Interest Receivable JE True Up | 0010.000.80100.00.0000 | 23453.36 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3878401 | 20181231 HM Note Correction Adjustment USD | 31-Dec-18 | 2 | Hunter Mountain Note Receivable - Interest True UP | 0010.210.80100.10.0000 | 4337.57 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3878742 | 20181231 Jefferies Reconciliation - Turtle Bay Adjustment USD | 31-Dec-18 | 11 | Carey PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3878742 | 20181231 Jefferies Reconciliation - Turtle Bay Adjustment USD | 31-Dec-18 | 12 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 3879365 | 20181130 Jefferies Reconciliation - Carey and American Adjustment USD | 31-Dec-18 | 12 | Goldfield PIK | 0010.000.80100.00.0000 | 0 | 0 | | | | | | | | | | | | | |
| Spreadsheet | Adjustment | Spreadsheet A 4030971 | 20181130 Jefferies Reconciliation - Pendrell Adjust Adjustment USD | 31-Dec-18 | 4 | MTM | 0010.000.80100.00.0000 | 0 | 1177.1 | | | | | | | | | | | | | |
| | | | | | | | | 937184.31 | 8440349.05 | | | | | | | | | | | | | |

Amount per detail above    7,503,165   **Rc**
Amount per TB    7,503,165   **LS**
Difference (not in thousands)    (0)   **Rc, imm**
^

| **Hunter Mountain Interest Income Reconciliation** |
|---|
| Hunter Mountain Interest Income per above   1,582,893   **Rc** |
| Interest Income per <Due from Hunter Mountain> tab   45,863   **<Due from Hunter Mountain>** |
| Difference   1,537,031   **Rc, imm** |

 ^

**Tickmark Legend**
^ Footed without exception.
**imm** Amount is immaterial. Therefore, further review is waived.
**Rc** Recalculated amount. Refer to the respective cell's formula for further details.
**LS** Amount agrees to 12/31/18 lead schedule linked below without exception.
Lead schedule - Revenue
Total of highlighted amounts have been recalculated and agree to the interest income per the <Note Receivable> tab within an immaterial difference.

Appx. 01550

# EXHIBIT 94

1              BURGER

2     IN THE UNITED STATES BANKRUPTCY COURT
      FOR THE NORTHERN DISTRICT OF TEXAS
3              DALLAS DIVISION
   -----------------------------
4   IN RE:

5                  Chapter 11
   HIGHLAND CAPITAL
6   MANAGEMENT, L.P.,        CASE NO.
                  19-34054-SGI11
7
        Debtor.
8   -----------------------------
   HIGHLAND CAPITAL MANAGEMENT, L.P.,
9
        Plaintiff,
10  vs.                    Adversary
                    Proceeding No.
11  HIGHLAND CAPITAL MANAGEMENT      21-03000-sgj
   FUND ADVISORS, L.P.; NEXPOINT
12  ADVISORS, L.P.; HIGHLAND
   INCOME FUND; NEXPOINT
13  STRATEGIC OPPORTUNITIES FUND;
   NEXPOINT CAPITAL, INC.; and
14  CLO HOLDCO, LTD.,

15        Defendants.
   -----------------------------
16

17         REMOTE DEPOSITION OF

18           PEET BURGER

19         July 30, 2021

20

21

22

23

24  Reported by:  Susan S. Klinger, RMR-CRR, CSR

25  Job No. 197393

Page 2

```
1              BURGER
2
3
4          July 30, 2021
5          10:01 a.m.
6
7
8
9      Remote Deposition of PEET BURGER, held
10  before Susan S. Klinger, a Registered Merit
11  Reporter and Certified Realtime Reporter of the
12  State of Texas.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
1                BURGER
2  A P P E A R A N C E S:
3  (All appearances via Zoom.)
4  Attorneys for Debtor:
      BY: John Morris, Esq.
5    PACHULSKI STANG ZIEHL & JONES
      780 Third Avenue
6    New York, New York  10017
7  Attorneys for the PwC and the Witness:
      BY: John Wander, Esq.
8    VINSON & ELKINS
      2001 Ross Avenue
9    Dallas, Texas  75201
10  Attorneys for John Dondero, Highland Capital
    Management Services, NexPoint:
11    BY: Michael Aigen, Esq.
      STINSON
12    3102 Oak Lawn Avenue
      Dallas, Texas 75219
13
    Attorneys for NexPoint Advisors, LP, Highland
14  Capital Fund Advisors:
      BY: Thomas Berghman, Esq.
15    MUNSCH HARDT KOPF & HARR
      500 North Akard Street
16    Dallas, Texas  75201
17  Also Present:
      Ms. La Asia Canty
18
19
20
21
22
23
24
25
```

Page 4

```
1                BURGER
2              I N D E X
3
4  WITNESS                    PAGE
5  PEET BURGER
6  EXAMINATION BY MR. MORRIS          5
7  EXAMINATION BY MR. AIGEN          76
8  EXAMINATION BY MR. MORRIS         92
9
10        E X H I B I T S
11  No.                      Page
12  Exhibit 1  Management representation    18
13        Letter, 6/3/19
14  Exhibit 2  2017 Financial Statements    30
15  Exhibit 3  2017 Workpapers          41
16  Exhibit 4  2018 Financial Statements    47
17  Exhibit 5  2018 Workpapers          55
18
19
20
21
22
23
24
25
```

Page 5

```
1              BURGER
2          P R O C E E D I N G S
3          PEET BURGER,
4  having been first duly sworn testified as
5  follows:
6          EXAMINATION
7  BY MR. MORRIS:
8      Q.   Good morning.  Can you state your
9  name for the record, please?
10     A.   I can.  Peet Burger.
11     Q.   Are you currently employed,
12  Mr. Burger?
13     A.   Yes.
14     Q.   By whom?
15     A.   PricewaterhouseCoopers.
16     Q.   And what is your title at
17  PricewaterhouseCoopers?
18     A.   I'm an audit partner.
19     Q.   When did you become an audit partner
20  at PricewaterhouseCoopers?
21     A.   January 1st of 2014.
22     Q.   Have you been an audit partner at
23  PricewaterhouseCoopers on a consistent basis
24  since January 1st, 2014?
25     A.   Yes, I have.
```

Page 6

BURGER

1
2      Q.   In that capacity, have you overseen
3   the audits for Highland Capital Management,
4   L.P.?
5      A.   Yes, I did.
6      Q.   Just briefly, were you employed by
7   PricewaterhouseCoopers prior to the time you
8   became an audit partner at the beginning of
9   2014?
10     A.   Yes, I have.  Do I need to give the
11  dates?
12     Q.   Can you just tell me when you first
13  joined PwC?
14     A.   I joined in January of 1997 in our
15  South African firm.  Yes, that's correct.
16     Q.   When did you join the audit group?
17     A.   In January of 1997.
18     Q.   So you have been with
19  PricewaterhouseCoopers' audit unit on a
20  consistent basis for more than 20 years; is
21  that fair?
22     A.   Correct.
23     Q.   Okay.  When did you personally begin
24  working on the Highland Capital Management,
25  L.P. audits, do you recall?

Page 7

BURGER

1
2      A.   Somewhere in 2013.  I would say
3   April, 2013.
4      Q.   And were you the audit partner in
5   charge of the Highland engagement from 2013
6   until the time the 2018 financial statements
7   were completed?
8      A.   This is specific to Highland Capital
9   Management, L.P., yes.
10     Q.   I'm just going to refer to Highland
11  Capital Management, L.P. as Highland going
12  forward; is that okay?
13     A.   Yes.
14     Q.   Have you ever been deposed before?
15     A.   No.
16     Q.   Okay.
17     A.   No.
18     Q.   I apologize, I should have started
19  with some ground rules, but I'm trying to be
20  mindful of the time.  It is important that you
21  allow me to finish my questions before you
22  begin your answers; is that okay?
23     A.   Sure.
24     Q.   And if I begin my next question
25  before you begin – before you finish your

Page 8

BURGER

1
2   answer, will you let me know that?
3      A.   Sure.
4      Q.   Do you understand that the court
5   reporter is taking down every word that we say?
6      A.   Yes.
7      Q.   If you want to break at any time,
8   will you let me know?
9      A.   Sure.
10     Q.   If there is anything that you don't
11  understand, if there is a question that I ask
12  that you either don't understand or you think
13  is ambiguous in some way, will you let me know
14  that?
15     A.   Yes.
16     Q.   Okay.  From PricewaterhouseCoopers'
17  perspective, what is the purpose of an audit?
18     A.   To provide reasonable assurance in
19  in terms of the auditing and accounting
20  standards.
21     Q.   What standards are you referring to?
22     A.   In this case Generally Accepted
23  Auditing Standards.
24     Q.   What are Generally Accepted Auditing
25  Standards, if you know?

Page 9

BURGER

1
2      A.   It is a set of rules basically
3   governed by the AICPA of what – considered
4   what is the sort of conglomerate of rules on
5   your professional standards of engagement to
6   sign an audit opinion.
7      Q.   And do I have this correctly, that
8   the purpose of the audit is to provide
9   reasonable assurance that the financial
10  statements are in compliance with Generally
11  Accepted Auditing Standards?
12         MR. WANDER:  Did you say assurance
13  or insurance?
14     Q.   Assurance?
15     A.   Yes, assurance, yes.  The procedures
16  performed by us in terms of Generally Accepted
17  Auditing Standards and the financials itself is
18  presented in terms of Generally Accepted
19  Accounting Practice.
20     Q.   Okay.  And are those standards or
21  practices familiar to you in the course of your
22  duties?
23     A.   Yes, it is.
24     Q.   Okay.  Can you describe for me
25  generally the process that PwC undertook in

**Appx. 01554**

Page 10

BURGER

1
2    connection with its auditing of the Highland
3    financial statements?  Is there, you know, a
4    process that you follow?
5        A.   Yes, there is.  I mean, it is a
6    pretty long process which starts all the way
7    from the planning to completion and you know,
8    through the execution which audit approach
9    outlines all the relevant standards of the
10   procedures that we're supposed perform from the
11   planning, execution and completion stage.
12       Q.   And is that something that you share
13   with Highland so that they understand the
14   process?
15       A.   We don't share our workpapers and
16   absolutely every single part of that, but they
17   -- I mean, they know what we are looking for in
18   the sense of obviously for -- we make requests
19   for information.  And if the information is not
20   clear, we need to explain to them why we are
21   asking them for it.
22       Q.   And how soon after the completion of
23   the fiscal year does PwC begin the process that
24   leads to the final audit?
25       A.   We start this engagement in its

Page 11

BURGER

1
2    fieldwork stage in around about April after --
3    April after the unit.
4        Q.   And what do you mean when you use
5    the phrase fieldwork?
6        A.   Our execution phase.
7        Q.   Is that the time when you begin to
8    send informational requests to Highland?
9        A.   No, we send it through the planning
10   phase as well, which the planning phase is the
11   phase where you get engaged to go through all
12   the planning and setting up the procedures that
13   you are supposed to perform for the -- for the
14   execution phase.  And you can also do some of
15   the execution transaction work during that
16   period to save yourself from having to spend
17   that time in April and May.
18       Q.   And when does the planning stage
19   begin?
20       A.   Each year can be slightly different,
21   but in this case, this was around about the
22   October -- September, October.
23       Q.   So the planning would begin in the
24   fall of each fiscal year and --
25       A.   Correct.

Page 12

BURGER

1
2    Q.   Is that fair?
3    A.   That's fair.
4        Q.   And then during the planning stage,
5    PwC would make information requests to
6    Highland.  Do I have that right?
7        A.   You have got that correct.
8        Q.   And then in response to that,
9    Highland would feed information to PwC for
10   PwC's review.  Do I have that right?
11       A.   Correct.
12       Q.   And then the fieldwork is -- is the
13   next step the fieldwork?
14       A.   Yes.
15       Q.   Okay.  Do you recall during the time
16   that you were the audit partner did you have a
17   primary contact at Highland for purposes of the
18   planning and the execution phases of the audit?
19       A.   There were more than one individual
20   we dealt with, but I recall there was a primary
21   contact which facilitated sort of -- you know,
22   the -- which facilitated all of our
23   communication.
24       Q.   And who was that?
25       A.   That was David Klos.

Page 13

BURGER

1
2        Q.   And who besides Mr. Klos were the
3    primary points of contact?
4        A.   Frank Waterhouse is the CFO and
5    Kristin Hendrix who, for the lack of a better
6    word was the -- the sort of chief -- the
7    accountant.
8        Q.   The accountant?
9        A.   Yes.
10       Q.   Yes.  And how many people typically
11   were on the Price Waterhouse team for purposes
12   of the Highland audits?
13       A.   It depends on the phase of the
14   audit, but at the biggest part of the audit the
15   execution phase we were, including me I would
16   say six or seven people.
17       Q.   Okay.  And how would
18   PricewaterhouseCoopers obtain the information
19   that it needed to prepare the audited financial
20   statements?
21       A.   Sorry.  Just to make sure, say
22   obtain the information.  We -- we have a -- I
23   mean, I did this over seven years.  It morphed
24   over time, but we have a -- a site, a secure
25   site called Connect.  And I think towards the

**Appx. 01555**

Page 14

BURGER

1       end we used that for them to upload
2       information.
3              Previously Highland had its own
4       secure site where we would raise a request and
5       they would upload the information on the secure
6       site.
7       Q.   Okay.  Did PricewaterhouseCoopers
8       rely on management to provide the information
9       that would enable PwC to prepare the audited
10      financial statements?
11      A.   We did.
12      Q.   Did PwC ever make any site visits to
13      Highland in connection with the audits?
14      A.   We did.
15      Q.   And during those visits, was it
16      typical that PricewaterhouseCoopers might have
17      follow-up requests for information?
18             MR. AIGEN:  Objection, form.
19      A.   Yes.
20      Q.   Did PwC ever provide drafts of the
21      audit reports to Highland for their review
22      prior to the time they were finalized?
23      A.   If you mean audit reports, do you
24      mean the one- or two-page opinion that I signed
25

Page 15

BURGER

1       or do you mean the financial statements?
2       Q.   I apologize, thank you for the
3       clarification.
4              I mean, the financial statements and
5       the notes accompanying the financial
6       statements?
7       A.   They compile that and that is their
8       responsibility, so they provide us with that
9       document.
10      Q.   Okay.  So the five or six pages of
11      financial statements and all of the notes are
12      compiled by Highland, not by PwC?
13      A.   Correct, yeah, correct.
14      Q.   And did PwC have an opportunity to
15      review and comment on the drafts of the
16      financial statements on the accompanying notes?
17      A.   Yes, we do.
18      Q.   And did PwC in the course of its
19      engagement ask the questions that PwC thought
20      was relevant in order to give reasonable
21      assurance that the financial statements were in
22      accordance with Generally Accepted Auditing
23      Standards?
24             MR. AIGEN:  Objection, form.
25

Page 16

BURGER

1              MR. WANDER:  You mean, GAAP, not
2       GAAS?
3       Q.   I mean, it is auditing not
4       accounting; right?  So it is Generally Accepted
5       Accounting Standards, do I have that right?
6              MR. WANDER:  The audited – the
7       financials are in accordance with GAAP.
8              The audit is done in accordance with GAAS.
9       Q.   Thank you for the clarification, so
10      let me rephrase the question.
11             Did PwC ask the questions that it
12      believed were necessary in order to provide
13      reasonable assurance that the financial
14      statements were in conformance with GAAP?
15             MR. AIGEN:  Objection, form.
16      A.   We did.
17      Q.   Did PwC receive representation
18      letters from Highland in connection with each
19      audit?
20      A.   Yeah, we did.
21      Q.   And are you personally familiar with
22      the form of management representation letter
23      that Highland provided to PwC each year?
24      A.   Yes, I am.
25

Page 17

BURGER

1       Q.   Was it part of your personal
2       responsibilities to review the management
3       representation letters?
4       A.   It was.
5       Q.   From PwC's perspective, what was the
6       purpose of the management representation
7       letters?
8       A.   It is an opportunity for us to get
9       management to make certain representations of
10      us – in terms of scope of what is expected of
11      us in an audit.
12      Q.   And was that representation letter
13      required by PwC in order for PwC to sign-off on
14      the audit?
15      A.   It is, it was.
16      Q.   And is it fair to say that PwC
17      relied on the management representation letters
18      when it decided to sign-off on the audit?
19      A.   We did.
20      Q.   I would like to put up on the screen
21      a document that I have marked as Exhibit 1,
22      which is the June 3rd, 2019 management
23      representation letter.
24             (Exhibit 1 marked.)
25

Page 18

BURGER

1
2    Q.   Mr. Burger, so --
3         MR. AIGEN:  Sorry was this produced?
4    I just want to make sure, is there a Bates
5    label on this for the record?
6         MR. MORRIS:  I don't know but it was
7    used in Mr. Dondero's deposition.
8         MR. AIGEN:  There is a Bates label.
9    Q.   So Mr. Burger, this is a little
10   awkward.  Usually in a deposition I would be in
11   the room with you and you would have the
12   document in front of you and it would be easy
13   for you to review the document.  Since we can't
14   do that, and I don't know that you have this
15   particular document in front of you, we've put
16   it up on the screen.
17        I'm going to ask you a few questions
18   about it, but I strongly encourage you, I
19   really request that you let me know if you
20   believe that there are other portions of the
21   document that you need to review in order to
22   either refresh your recollection or to put my
23   question into context, okay?
24        We're just going to have to make due
25   with the technology, but with that background,

Page 19

BURGER

1
2    you know, let's -- let's go to the -- to the
3    page ending in 419?
4         Do you see there that there are two
5    signatures?
6    A.   Correct.
7    Q.   And do you understand that those are
8    the signatures of James Dondero and Frank
9    Waterhouse?
10   A.   Yes, correct.
11   Q.   Okay.  If we could go back to the
12   top of the document, do you understand that
13   this is the management representation letter
14   that was provided to PwC by Mr. Dondero and
15   Mr. Waterhouse on June 3rd, 2019?
16   A.   Yes.
17   Q.   Do you know why Mr. Waterhouse and
18   Mr. Dondero were the people who signed this
19   letter?
20   A.   Starting with Mr. Waterhouse, he is
21   the responsible party from management in the
22   sense of being the CFO and Mr. Dondero as the
23   general partner because the entity is a limited
24   partner and we expect the general partner to
25   sign the rep letter.

Page 20

BURGER

1
2    Q.   Do you know who drafted this letter?
3    A.   We did.
4    Q.   Is this a form of management
5    representation that PwC typically prepares in
6    the ordinary course of its audits?
7    A.   Yes, it is derived from a standard
8    template.
9    Q.   And you see in the first paragraph
10   there is a reference to the balance sheet date.
11   Do I have that right?
12   A.   Correct.
13   Q.   And for this particular management
14   representation letter, the balance sheet is for
15   the fiscal year ending December 31st, 2018;
16   correct?
17   A.   Correct.
18   Q.   We can scroll down to the bottom,
19   but there is -- stop right there.
20        There is a series of representations
21   that are made in this letter.  Do you
22   understand that?
23   A.   I do.
24   Q.   And if we scroll down to, I guess,
25   the page ending in 18, you will see that there

Page 21

BURGER

1
2    is 50 separate representations that are made by
3    Mr. Waterhouse and Mr. Dondero, not including
4    the subparts.  Do you see that?
5    A.   I do.
6         MR. MORRIS:  And thank you, La Asia,
7    if we can go back to the top.
8    Q.   So even though the audit letter was
9    for the fiscal year ending December 31st, 2018,
10   do you see in the sentence just before general
11   that Mr. Dondero and Mr. Waterhouse confirmed
12   based on their then current knowledge that each
13   of the 50 representations were still correct as
14   of June 3rd, 2019?
15   A.   I do.
16   Q.   Okay.  And is that a standard
17   practice of PwC to require management to
18   confirm the accuracy of the representations not
19   just as of the end of the fiscal year, but
20   carrying through to the date of the completion
21   of the audit?
22   A.   It is.
23   Q.   And why does PwC require that the
24   representations be carried forward to the date
25   of the completion of the audit?

Appx. 01557

Page 22

BURGER

2    A.   Because per Generally Accepted
3  Auditing Standards we have to consider material
4  events occurring after year-end but prior to
5  our opinion date or prior to on our opinion
6  date.
7    Q.   Okay.  And do you see in the middle
8  of the first page there there is a paragraph
9  that begins "certain representations"?
10    A.   Yes.
11    Q.   And you see that there is a
12  definition of items that are considered
13  material?
14    A.   Yes.
15    Q.   Do you know why the management
16  representation letter included a definition for
17  items considered material?
18    A.   Because we cannot reasonably -- we,
19  the basis of an audit is our reasonable
20  assurance with deals with our definition --
21  which deals with materiality.  So if we expect
22  management to represent to us, we give them a
23  sense of what we consider to be material.
24    Q.   Okay.  And did Highland ever express
25  any concerns about PwC's definition of

Page 23

BURGER

2  materiality?
3    A.   Not that I can recall.
4    Q.   Did PwC rely on Mr. Dondero and
5  Mr. Waterhouse to provide all information
6  concerning items considered material as defined
7  in this letter?
8      MR. AIGEN:  Objection, form.
9    A.   We did.
10    Q.   Are you generally aware that from
11  time-to-time Highland loaned money to
12  Mr. Dondero and certain affiliated entities in
13  exchange for promissory notes?
14    A.   I am.
15    Q.   Can we call those promissory notes
16  the affiliated party notes?
17    A.   That is fine.
18    Q.   For purposes of the audits, were the
19  makers obligations under the affiliated party
20  notes considered receivables of Highland?
21    A.   Yes, receivables of Highland Capital
22  Management, L.P.
23    Q.   Okay.  Can we go to the page that is
24  ending in 413?
25      I'm just going to ask you a few

Page 24

BURGER

2  questions about some of the representations
3  here.  Do you see, Mr. Burger, representation
4  number 11?
5    A.   I do.
6    Q.   Does representation number 11 apply
7  to the affiliated party notes?
8    A.   It does.
9    Q.   Was it PwC's understanding that
10  Mr. Dondero and Mr. Waterhouse represented that
11  the affiliate party notes represented bona fide
12  claims against the makers for transactions
13  arising on or before the balance sheet date?
14      MR. WANDER:  Objection, form.
15    A.   Correct.
16    Q.   This is one of the 50
17  representations that Mr. Dondero and
18  Mr. Waterhouse confirmed as of June 30th, 2019;
19  correct?
20    A.   June 3rd, yes, correct.
21    Q.   Thank you for the clarification.
22  Does the last sentence of representation number
23  11 mean that all affiliated party notes were
24  current as of June 3rd, 2019?
25    A.   It does.

Page 25

BURGER

2    Q.   Stated another way, none of the
3  affiliated notes were in default as of June
4  30th, 2019; correct?
5    A.   That's correct.
6    Q.   All right.  If we can go to page
7  416, please.
8      Take a look at representation number
9  32 at the top of the page.  Do you have an
10  understanding of what representation number 32
11  means?
12    A.   Yeah, that is a representation where
13  if we were to find any misstatements which does
14  not meet the level of materiality, we would put
15  that on what we call a summary of uncorrected
16  misstatements.  And management would --
17  management would defer to the fact that they do
18  not consider those adjustments necessary in
19  terms of neutrality.
20    Q.   Did PwC understand that in
21  representation number 32 Mr. Dondero and
22  Mr. Waterhouse represented that basically if
23  they got anything wrong it was not material?
24      MR. AIGEN:  Objection, form.
25    A.   That is correct.

Page 26

```
1              BURGER
2     Q.   And why did PwC request this
3  particular representation?
4     A.   Because if anything gets sort of
5  found out to be a potential let's call it error
6  to the financial statements, part of the
7  standards require us to assert from management
8  their view that it is not material.
9     Q.   Okay.  Did PwC rely on
10  representation number 32 when signing off on
11  the audit?
12        MR. AIGEN:  Objection, form.
13     A.   We did.
14     Q.   Let's look at representation number
15  34.  Can you tell me what that means from PwC's
16  perspective?
17     A.   It is a assessment of completeness.
18  So in other words, management asserting or,
19  sorry, representing to us that they are not
20  aware of any material transactions or
21  agreements or – agreements being out there
22  that wasn't recorded in the financial
23  statements.
24     Q.   And why did PwC want this material
25  representation?
```

Page 27

```
1              BURGER
2     A.   Under as – under standards it is
3  not our duty to go out and look for necessarily
4  fraud.  And you know, it is on the completeness
5  of transactions we do rely on management to let
6  us know if they were material transactions.
7     Q.   Did PwC rely on representing –
8  withdrawn.
9        Did PwC rely on representation
10  number 34 when signing off on the audit?
11     A.   We did.
12     Q.   Let's take a look at representation
13  35D.  If you can just read that to yourself for
14  a moment?
15     A.   Excuse me, did you say B or D?
16     Q.   D as in dog?
17     A.   D, okay, okay.
18     Q.   Is it fair to say that in
19  representation number 35D, as in dog,
20  Mr. Dondero and Mr. Waterhouse represented that
21  all material transactions with related parties
22  have been properly reported and disclosed in
23  the consolidated financial statements?
24     A.   That's correct.
25     Q.   Did PwC request this particular
```

Page 28

```
1              BURGER
2  representation?
3     A.   We did.
4     Q.   Why?
5     A.   Again, because it is important under
6  alleged party disclosures specifically all
7  disclosures but related party specific that if
8  you have material transactions or events that
9  those be disclosed.  And again, we – we do
10  rely on management to also take ownership for
11  that.
12     Q.   Okay.  Can we go to the next page,
13  please, page ending in 417?  Okay, right there.
14  And take a look at representation number 36,
15  please.
16     A.   Okay, okay.
17     Q.   Can you tell me from PwC's
18  perspective what representation 36 means?
19     A.   Again, for management to let us know
20  or assert to us who the related parties are.
21     Q.   Is it fair to say that in management
22  representation number 36 Mr. Dondero and
23  Mr. Waterhouse represented that they had
24  disclosed, among other things, all related
25  party transactions of which they were aware?
```

Page 29

```
1              BURGER
2     A.   Correct.
3     Q.   And did PwC rely on that
4  representation when it signed off on the audit?
5     A.   We did.
6     Q.   Go to page 419, please.  Okay.  Just
7  before the signature line there is a sentence
8  that begins, "to the best of our knowledge."
9  Do you see that?
10     A.   Correct.
11     Q.   Can you just read that to yourself?
12     A.   Okay.
13     Q.   Can you tell me from PWC's
14  perspective what that sentence means?
15     A.   It means if there were events that
16  occurred after the balance sheet date, before
17  the opinion date that required disclosure, that
18  such disclosures had been made.
19     Q.   And why did – is that
20  representation one that is required by GAAP?
21     A.   It is – it is a GAAS principle, not
22  a GAAP.
23     Q.   And did PwC rely on that
24  representation in the last sentence when it
25  signed off on the audits?
```

Appx. 01559

Page 30

BURGER

1
2     A.   We did.
3     Q.   Let's move to the 2017 financial
4  statements.  Can we please put up the next
5  exhibit.
6          (Exhibit 2 marked.)
7     Q.   Again, Mr. Burger, I will just
8  remind you that if at any time you believe you
9  need to see any other portion of the document
10  in order to capably and fully answer the
11  question that I ask, just let me know, okay?
12          MR. WANDER:  John, he has a hard
13     copy of this one in front of him.
14     Q.   Beautiful.  Maybe it would be easier
15  for you to just take it out and the rest of us
16  will just look on the screen.
17          MR. MORRIS:  Thank you, John.
18     Q.   Do you have the 2017 audited
19  financial statements in front of you, sir?
20     A.   I do.
21     Q.   And did you personally lead PwC's
22  efforts in completing the audit for the debtors
23  for Highland's 2017 financial statements?
24     A.   Would you mind repeating the
25  question?

Page 31

BURGER

1
2     Q.   Did you personally lead PwC's
3  efforts in auditing Highland's 2017 financial
4  statements?
5     A.   I did.
6     Q.   Do you recall any deviations from
7  the process that you described earlier in
8  connection with the preparation of Highland's
9  2017 financial statements?
10     A.   I do not.
11     Q.   Can we go to page 2, please, right
12  there.  Do you see in the top half of the
13  screen there is a list of assets?
14     A.   I do.
15     Q.   And one of those – one of those
16  assets is identified as notes and other amounts
17  due from affiliates.  Do you see that?
18     A.   I do.
19     Q.   And do you know what that relates
20  to?
21     A.   So that is the consolidated amount
22  of Highland Capital Management, L.P. with all
23  its affiliates of notes and other amounts that
24  are due from affiliates as defined.
25     Q.   Do you know why the notes and other

Page 32

BURGER

1
2  amounts due from affiliates are carried as
3  assets on Highland's balance sheets?
4     A.   Because it meets the definition of
5  an asset.
6     Q.   And what is the definition of the
7  asset – withdrawn.
8          What is the definition of an asset
9  that causes the notes and other amounts due
10  from affiliates to appear on the asset portion
11  of the balance sheet?
12     A.   This is amounts in the forms of
13  notes or receivables that the entity has title
14  to in the form of an asset, or the classic
15  definition of an asset is you are entitled to
16  the asset and there is reasonable assurance of
17  the recoverability of the asset.
18     Q.   Did anybody from Highland ever
19  dispute that the notes and other amounts due
20  from affiliates should be carried on Highland's
21  balance sheet as assets?
22          MR. AIGEN:  Objection, form.
23     A.   Sorry?
24          MR. WANDER:  If you understand, you
25     can answer.

Page 33

BURGER

1
2     A.   No, no, they did not.
3     Q.   And that is because these are
4  Highland's balance sheets; correct?
5     A.   Correct.
6     Q.   Highland, in fact, prepared the
7  document that we're looking at right now;
8  correct?
9     A.   Correct, we did not.
10     Q.   And Highland made the decision to
11  record the notes and other amounts due from
12  other affiliates as assets on its own balance
13  sheet; right?
14          MR. AIGEN:  Objection, form.
15     A.   Right.
16     Q.   Did PwC ever have any reason to
17  question the carrying of the notes and other
18  amounts due from affiliates as assets on
19  Highland's balance sheets?
20     A.   We did not.
21     Q.   Is my math right here that the
22  balance sheet shows that as of the end of 2017
23  notes and other amounts due from affiliates
24  constituted more than 10 percent of Highland's
25  assets?

Appx. 01560

Page 34

BURGER

1
2    A.   That's correct.
3    Q.   Okay.  If we could just scroll down
4    to the bottom of the page.  Little further,
5    yeah, right there.
6         Do you see there is a reference that
7    says, quote, the accompanying notes are an
8    integral part of these consolidated financial
9    statements, closed quote?
10   A.   I do.
11   Q.   What does that mean?
12   A.   That is to draw the attention for
13   the reader of not reading this page in a
14   stand-alone basis, because there are further
15   explanations required to the amounts in the
16   footnotes.
17   Q.   Okay.  Let's go to page 28 of the
18   document.  Okay.  Do you see that there is a
19   Section 9 entitled related party transactions?
20   A.   I do.
21   Q.   And can you describe for me your
22   understanding of why there is a note dedicated
23   to related party transactions?
24   A.   It is a GAAP requirement for
25   financial statements to disclose material

Page 35

BURGER

1
2    related-party relationships and transactions.
3    Q.   If we can go to page 30, please, and
4    just scroll straight down so Mr. Burger can see
5    what he's got front of him, if we can go to
6    page 30.
7         Page 30 has a subheading to note 9
8    called notes and other amounts due from
9    affiliates.  Do you see that?
10   A.   Correct.
11   Q.   Okay.  And do I have it –
12   withdrawn.
13        Highland prepared all of the
14   information that is set forth in this section
15   of note 9; is that correct?
16        MR. AIGEN:  Objection, form.
17   A.   I did.
18   Q.   Is it fair to say that this portion
19   of note 9 is intended to describe obligations
20   due to the debtor by affiliates?
21        MR. AIGEN:  Objection, form.
22   A.   That's correct.
23   Q.   Let me ask a different question to
24   deal with Michael's objection.
25        Can you tell me, Mr. Burger, what

Page 36

BURGER

1
2    information is conveyed in the section called
3    notes and other amounts due from affiliates?
4         MR. AIGEN:  Objection, form.
5         MR. WANDER:  You can answer.
6    A.   I can answer, sorry.
7         The purpose of this footnote is to
8    strike out out – because if you look at the
9    balance sheet you just see notes and you have
10   no idea who that is from, which amounts and
11   what the basic terms are.
12   Q.   Is it your understanding that this
13   section of note 9 sets forth the amounts due
14   and owing by each affiliate as of December
15   31st, 2017?
16   A.   That's correct.
17   Q.   And are the amounts included – are
18   those amounts included in the line item that we
19   just looked at in the balance sheet called
20   notes and other amounts due from affiliates?
21   A.   Correct.
22   Q.   Do you know who calculated the
23   amounts due and owing by each affiliate as of
24   December 31st, 2017?
25   A.   It was management.

Page 37

BURGER

1
2    Q.   Okay.  Did management ever tell PwC
3    at any time prior to June – withdrawn.
4         Did management ever tell PwC at any
5    time prior to PwC's signing off on the audited
6    financial statements for 2017 that there was
7    anything inaccurate about this section of the
8    notes?
9         MR. AIGEN:  Objection, form.
10   A.   They did not.
11   Q.   Each of the paragraph ends with a
12   sentence that may differ only in as to whether
13   it is singular or plural, but it says quote,
14   the fair value of the partnership's outstanding
15   notes receivable approximates the carrying
16   value of the notes receivable.  Do you see
17   that?
18   A.   Correct.
19   Q.   And we can scroll down a little bit
20   just so you can – you have got the document in
21   front of you.  I would just ask you to confirm
22   that each paragraph ends with the same sentence
23   except for the last paragraph.  And does it,
24   sir?
25   A.   Yes, it is on each paragraph for

**Appx. 01561**

Page 38

```
1              BURGER
2    that section of the notes except the paragraph
3    starting on December 21st, 2015.
4       Q.   Do you have an understanding of what
5    that sentence means?
6       A.   That sentence means that these notes
7    are per GAAP, the notes are supposed to be
8    recorded at fair value and the assertion is
9    that the carrying value is considered a
10   reasonable proxy for fair value.
11      Q.   I'm sorry, what is fair value in
12   this context?
13      A.   Fair value of all assets would be
14   what you consider to be the reasonable value
15   for exchange of the asset.
16      Q.   And then what is the carrying value?
17   How does that differ from the carrying value?
18      A.   Carrying value is the -- is a
19   contractual, is the term of the contractual
20   amount.  In other words, whatever their loan
21   plus accrued interest minus payments.  And fair
22   value is -- is basically the concept of this
23   sentence is stating that the fair value of the
24   approximate or reasonable proxy for carrying
25   value in its (inaudible).
```

Page 39

```
1              BURGER
2       Q.   So is it fair to say that based on
3    this portion of note 9, the debtors' financial
4    statements -- withdrawn.
5            Is it fair to say that based on this
6    portion of note 9, Highland is saying that the
7    fair value of the promissory notes from the
8    affiliates was approximately equal to the
9    principal and interest then due under the
10   notes?
11           MR. AIGEN:  Objection, form.
12      A.   That's correct.
13      Q.   Is it fair to say that when the
14   audit -- withdrawn.
15           Is it fair to say that -- no,
16   withdrawn.
17           At the time the audit was completed
18   for 2017, did PwC have any reason to discount
19   the value of any of the notes described on page
20   30 or 31?
21      A.   We did not.
22      Q.   Okay.  Can we go to page 41, please.
23   If you scroll down a little bit you will see
24   there is a section entitled subsequent events
25   which is note 16.  Do you see that?
```

Page 40

```
1              BURGER
2       A.   Correct.
3       Q.   Okay.  What is this section intended
4    to capture?
5       A.   This is supposed to capture any
6    significant material events that occurred after
7    the balance sheet that requires disclosure.
8       Q.   And is the information described
9    here information that was provided by Highland
10   Capital?
11      A.   Yeah, correct, by management.
12      Q.   This section notes that Mr. Dondero
13   issued promissory notes to the partnership in
14   the amount of $11.7 million in 2018.  Do you
15   see that?
16      A.   I do.
17      Q.   Those obligations are not included
18   in the balance sheet that we looked at earlier
19   for the period ending December 31st, 2017;
20   correct?
21      A.   That's correct.
22      Q.   The notes issued by Mr. Dondero are
23   the only material subsequent event that PwC was
24   informed about; is that correct?
25      A.   Correct.
```

Page 41

```
1              BURGER
2       Q.   Let's go to the 2017 workpapers, if
3    we can call it the next exhibit, please.
4            (Exhibit 3 marked.)
5       Q.   All right.  I've put up on the
6    screen what I believe are PwC's workpapers in
7    connection with the 2017 audit as it pertains
8    to notes and other amounts due from affiliates.
9    Is that an accurate way to describe this
10   particular document?
11      A.   Yes, it would be a workpaper that we
12   retain in our file.
13      Q.   Was it prepared in connection with
14   the 2017 audit?
15      A.   Yes, this one was.
16      Q.   And when I use the phrase "2017
17   audit," I'm specifically talking about the
18   audit that was prepared for the financial
19   statements for the fiscal year ending December
20   31st, 2017.  Do you understand that?
21      A.   Correct.
22      Q.   Okay.  Who prepared this particular
23   document?
24      Q.   Who prepared it?
25      Q.   I apologize, who prepared it?
```

Page 42

BURGER

1
2    A.    Sorry, Hilda Garcia.
3    Q.    Hilda Garcia, is she employed by
4    PwC?
5    A.    She is.
6    Q.    And what is her title?
7    A.    She is a senior associate now.  She
8    would have been a senior associate back then as
9    well.
10   Q.    Does she report to you or to
11   somebody else?
12   A.    She reports to me.
13   Q.    And are you responsible for
14   overseeing Ms. Garcia's work?
15   A.    I am.
16   Q.    And what is the purpose of this
17   document?
18   A.    The purpose of this document is to
19   layout what are the amounts that makes up the
20   line item that is on the balance sheet of
21   HCMLP.  And then the audit procedure is
22   performed to gain comfort over those -- the
23   existence of those amounts based on
24   materiality.
25   Q.    And did PwC prepare workpapers of

Page 43

BURGER

1
2    this type in the ordinary course of its
3    business?
4    A.    We do.
5    Q.    And did PwC prepare this particular
6    workpaper in the ordinary course of its
7    preparation of Highland's 2017 audit?
8    A.    We did.
9    Q.    Okay.  Can we go to the tab that is
10   marked as detailed, if you look at the bottom?
11   Do you have that, sir?
12   A.    Yes, I have.
13   Q.    Is that tab intended to list all of
14   the -- of the notes and other amounts due from
15   affiliates that were outstanding at the end of
16   the fiscal year?
17   A.    Correct.
18   Q.    And is this information -- where did
19   PwC get the information that is set forth on
20   the detail tab?
21   A.    It is from management from the trial
22   balance.
23   Q.    For the record, can you just tell me
24   what a trial balance is?
25   A.    So that is a summary document

Page 44

BURGER

1
2    listing out the balances of all accounts from
3    the general ledger that is used to produce the
4    set of financial statements.
5    Q.    And was the trial balance made
6    available to PwC by Highland in connection with
7    its audit work?
8    A.    It was.
9    Q.    The next tab is marked credit risk
10   analysis.  Do you see that?
11   A.    Yes.
12   Q.    What is the purpose of the credit
13   risk analysis?
14   A.    The purpose of this is that if you
15   think about a receivable or any amount due it
16   is about intent and ability.  And this is where
17   we deal with ability to ask ourself the
18   question is the counterparty reasonably able to
19   repay the amounts.
20   Q.    And did PwC conclude in 2000 -- in
21   connection with the 2017 audit that the makers
22   of the notes set forth on this particular slide
23   had the ability to pay?
24   A.    In our opinion, yes.
25   Q.    Okay.  And did PwC base that opinion

Page 45

BURGER

1
2    on the information that was provided by
3    management?
4    MR. AIGEN:  Objection, form.
5    A.    Partly management and partly our own
6    due diligence.
7    Q.    Okay.  The next tab is results
8    template.  Do you see that?
9    A.    Yes.
10   Q.    Can you just explain to me what that
11   page is, if we could scroll to the top, please?
12   A.    This -- there are a number of notes
13   that are being dealt with.  This -- so if you
14   go back to the detail tab, those are the
15   individual notes that makes up the amount that
16   ties to the back of the financial statement.
17   And there are relevant tabs here that deal with
18   a number of these loans.  In preparation for
19   this, we focused on due from HCMSI as that is
20   under question.
21   Q.    Why is due from HCMSI under
22   question?
23   A.    That is my understanding of what the
24   deposition relates to.
25   MR. WANDER:  When he says in

Page 46

```
1                BURGER
2       preparation for this, he means in
3       preparation for the deposition he reviewed
4       this piece of it, the HCMSI. Not the rest
5       of the notes, just HCMSI.
6          Q.  Okay. So, so but with respect to
7    this particular page, is there an analysis that
8    PwC is undertaking? Does this reflect an –
9    withdrawn.
10          Does this page reflect an analysis
11    that PwC did?
12          MR. AIGEN: Objection, form.
13       A.  If you add the other relevant tabs
14    to it, yes. So in other words, some of them
15    link to other tabs. Some of them have
16    individual documentation as referenced in the
17    marked legends.
18       Q.  And then there are tabs for the
19    individual maker of each set of notes. Do I
20    have that right?
21       A.  Correct.
22       Q.  All right. Let's go to the 2018
23    financial statements, please. Are you familiar
24    with Highland's audited financial statements
25    for the period ending December 31st, 2018?
```

Page 47

```
1                BURGER
2       A.  I am.
3          MR. AIGEN: Sorry to interrupt. Are
4    you marking this? I'm trying to keep
5    track, is this –
6          MR. MORRIS: Yes, I apologize, this
7    will be Exhibit 4.
8          (Exhibit 4 marked.)
9          MR. AIGEN: 4, okay.
10       Q.  And did you oversee the preparation
11    of the audited financial statements on behalf
12    of PwC for the period ending December 31st,
13    2018?
14       A.  Correction, not preparation, we
15    don't prepare any of these documents.
16       Q.  Let – I apologize, let me restate
17    the question.
18          Did you oversee PwC's audit of
19    Highland's financial statements for the period
20    ending December 31st, 2018?
21       A.  Yeah, I did.
22       Q.  Okay. Do you recall any deviations
23    from the process you described earlier in
24    connection with the preparation of the 2018
25    audited financials?
```

Page 48

```
1                BURGER
2       A.  No, I do not.
3       Q.  Can we go to the third page of the
4    document right there. This document is dated,
5    if you look at the bottom, June 3rd, 2019. Do
6    you see that?
7       A.  I do.
8       Q.  And that was the same date as the
9    management representation letter that we looked
10    at earlier, do you recall that? We can pull it
11    up.
12       A.  No, I do.
13       Q.  Is it a coincidence that they both
14    have the same date?
15       A.  No, it is not. We require that to
16    be the same.
17       Q.  And why do you require that the
18    management representation letter and the report
19    of independent auditors be issued on the same
20    day?
21       A.  This is – this is the date that we
22    effectively consider these financials available
23    to be issued. And under standards, we are
24    required to consider all subsequent events and
25    representations up to this date. So therefore,
```

Page 49

```
1                BURGER
2    we cannot accept a date of, let's call it June
3    2nd or 1st or earlier from management's
4    representation.
5       Q.  Is – is the report that is set out
6    here required by either GAAS or GAAP?
7       A.  This is – GAAS requires the audit
8    opinion to be – to be the document whereby we
9    report to the general partner on our – on our
10    audit.
11       Q.  And does PwC have an internal
12    process by which it determines whether or not
13    to sign-off on – on any particular client's
14    audit?
15       A.  We do.
16       Q.  Can you describe that process for me
17    generally?
18       A.  From an acceptance phase of the
19    client or do you mean the content of their
20    opinion?
21       Q.  The content of the opinion, thank
22    you.
23       A.  Yes. So there is a framework that
24    we follow on going back to whether there –
25    whether we consider two things. Whether there
```

Page 50

BURGER

2 are material uncorrected misstatements to the
3 financials or material deviations from required
4 disclosures. So in other words, are the
5 financials reasonable and accurate in terms of
6 GAAP, and were we able to perform all the
7 procedures. So in other words there weren't
8 any undue scope limitations which -- which got
9 us to a point we weren't able to perform the
10 audit and fulfill our professional duty.
11       If the answer to those are that we
12 fulfill both then we would give what we call an
13 unqualified or a clean opinion.
14     Q.   And is there an opinion committee
15 that is -- that is dedicated to this process?
16     A.   No, it is -- if it is a clean
17 opinion then it is the partner and if
18 applicable the second partner on the engagement
19 is called. If there is anything which goes
20 away from an unqualified opinion, in any
21 deviation, then there is a whole consultation
22 process with our national office.
23     Q.   And did you personally approve this
24 opinion letter?
25     A.   I did, that is my signature.

Page 51

BURGER

2     Q.   Okay. Let's go to page 2, please,
3 consolidated balance sheet.
4       Do you see, again, there is the
5 notes and other amounts due from affiliates?
6     A.   I do.
7     Q.   And does this just carry over from
8 the prior years subject to any payments or
9 additional notes subject to any changes since
10 the end of the prior fiscal year?
11     A.   It does.
12     Q.   As of the end of 2018, is it fair to
13 say that the notes and other amounts due from
14 affiliates now exceeded more than 15 percent of
15 Highland's assets?
16     A.   That is correct.
17     Q.   Now, let's go to page 26, please.
18 And you will see number -- note number 8
19 relates to related-party transactions. Do you
20 see that?
21     A.   I do.
22     Q.   So again, do I have this right that
23 this section of the notes is intended to
24 provide the detail about transactions between
25 Highland and related parties?

Page 52

BURGER

2     A.   It is.
3     Q.   And that is required by GAAP, do I
4 have that right?
5     A.   You have got it correct.
6     Q.   Okay. Let's go to page 28, please.
7       Do you see on page 28 and continuing
8 on page 29 there is again a section of note 9
9 entitled notes and other amounts due from
10 affiliates?
11     A.   I do.
12     Q.   And this information was provided by
13 management; correct?
14     A.   Correct.
15     Q.   And this portion of note 8 is
16 intended to describe the obligations that were
17 owed to the debtor by affiliates; correct?
18     A.   Correct.
19     Q.   Does this section of note 8 set
20 forth the amounts that were due and owing by
21 each affiliate as of the end of fiscal year
22 2018?
23     A.   It does.
24     Q.   And are those amounts included in
25 the line item that we just looked at on the

Page 53

BURGER

2 balance sheet called notes and other amounts
3 due from affiliates?
4     A.   It is.
5     Q.   And can you confirm for me that
6 management is the one who decided -- withdrawn.
7       Can you confirm for me that
8 management is the one who calculated the
9 amounts due and owing by each affiliate as of
10 December 31st, 2018?
11       MR. AIGEN: Objection, form.
12     A.   That is correct.
13     Q.   To the best of your knowledge, did
14 anybody from Highland ever tell anybody from
15 PwC that any of the amounts due and owing as
16 set forth in the notes and other amounts due
17 from affiliates was wrong or incorrect?
18     A.   Not to my knowledge.
19     Q.   And can you confirm for me that in
20 connection with the 2018 financial statements
21 Highland again stated in general that the fair
22 value of the notes and other amounts due from
23 affiliates approximates the carrying value of
24 the notes receivable?
25     A.   That's correct.

**Appx. 01565**

Page 54

BURGER

1
2    Q.    Is it fair to say that when PwC
3    issued its audit opinion on June 3rd, 2019 that
4    they had no reason to discount the fair value
5    of any of the notes described in this portion
6    of note 8?
7           MR. AIGEN:  Objection, form.
8    A.    Yeah, that is correct.
9    Q.    Let's go to page 38, please, note
10   15.  Do you see note 15 beginning on page 38?
11   A.    I do.
12   Q.    And is this the section of the notes
13   that are intended to describe material
14   subsequent events that would require
15   disclosure?
16   A.    It is.
17   Q.    And is the information set forth in
18   section 15 or note 15 information that was
19   provided by Highland?
20   A.    Correct.
21   Q.    To the best of PwC's knowledge, as
22   of June 3rd, 2019, did note 15 in fact include
23   a description of all material subsequent events
24   that required disclosure?
25   A.    That's correct.

Page 55

BURGER

1
2    Q.    Did anyone -- withdrawn.
3           Do you know whether anyone from
4    Highland ever informed anyone at PwC that there
5    were material subsequent events that were
6    omitted from note 15?
7    A.    I'm not.
8    Q.    Let's go to the 2018 workpapers.
9           (Exhibit 5 marked.)
10   Q.    We will mark this as Exhibit 5.
11          MR. MORRIS:  I am trying to go as
12   quickly as I can, Michael, to leave you a
13   little time.
14          MR. AIGEN:  Thanks.
15   Q.    Do you have that, Mr. Burger?
16   A.    Yeah, I do.
17          MR. AIGEN:  This is Exhibit 5, John?
18          MR. MORRIS:  Yes.
19   Q.    Is there anything that you need to
20   look at, Mr. Burger, to confirm that these are
21   PwC's workpapers for the 2018 audit as it
22   relates to notes and other amounts due from
23   affiliates?
24   A.    I can confirm.
25   Q.    Okay.  And was this also prepared in

Page 56

BURGER

1
2    the first instance by Ms. Garcia?
3    A.    No, this was prepared by Madeline
4    Pacocha.
5    Q.    How do you spell her last name?
6    A.    P-a-c-o-c-h-a.
7    Q.    And did she report directly to you?
8    A.    She did.  She was part of the team.
9    Q.    Okay.  And do you know whether the
10   same process that was followed in 2018 was
11   followed in 2000 -- withdrawn.
12          Did PwC follow the same process in
13   creating this document that it did when it
14   created the workpapers in 2017?
15   A.    We did.
16   Q.    Can you confirm that this document
17   was prepared in the ordinary course of PwC's
18   business?
19   A.    It was.
20   Q.    Can you confirm that this document
21   was prepared in the ordinary course of PwC's
22   audit of Highland's 2018 financial statements?
23   A.    That's correct.
24   Q.    Okay.  I'm going to ask a few more
25   detailed questions than we did last time.  Can

Page 57

BURGER

1
2    we go to the section called credit risk
3    analysis, the tab.
4           I think earlier you testified that
5    there was kind of two aspects that PwC looked
6    at when analyzing the notes and they were the
7    intent and the ability to pay.  Do I have that
8    right?
9           MR. AIGEN:  Objection, form.
10   A.    That's correct.
11   Q.    Okay.  And this particular tab,
12   credit risk analysis, related to the ability to
13   pay part of that analysis; correct?
14   A.    That's correct.
15   Q.    Do you see there is a column called
16   recoverability?
17   A.    I do.
18   Q.    What is that?
19   A.    That is a qualitative assessment to
20   give us reasonable assurance that these notes
21   are, A, not in default or -- and B, that the --
22   at least materially the maker has enough assets
23   that we are aware of to -- to be able to repay.
24   Q.    And did Highland provide the data
25   and information related to each maker's ability

Page 58

BURGER

2  to pay?
3      A.   This is a combination but most of
4  this is our own due diligence.
5      Q.   And – and can you describe for me
6  what steps in the due diligence process PwC
7  undertook to ascertain whether the makers have
8  the ability to pay?
9      A.   Mostly – mostly relates to evidence
10 that there are payments on notes and that none
11 of the notes are contractually in default.  And
12 then also very much specifically to
13 Mr. Dondero's ability from known assets that
14 can be found on public filings.
15     Q.   And did PwC analyze public filings
16 and conclude that Mr. Dondero had the ability
17 to repay the notes that had – that he had
18 issued to the debtor?
19     A.   Through public filings which we
20 could obtain, we could at least assess that
21 there are assets in those, sort of let's call
22 it public filings that would be adequate to
23 repay the amounts.
24     Q.   Is it fair to say that this section
25 of the workpapers is an assessment of each

Page 59

BURGER

2  affiliate's creditworthiness?
3      A.   Not each individual, but on a more
4  look-through basis to specifically Mr. Dondero.
5  The purpose of this is not to sign-off on an
6  absolute creditworthiness of each party, but to
7  provide enough evidence to give us reasonable
8  assurance that these notes are recoverable.
9      Q.   And based on the due diligence that
10 PwC did and the information provided by
11 Highland, did PwC conclude that the makers of
12 the notes had the ability to repay the
13 obligations set forth therein?
14     A.   We did.
15     Q.   Did PwC rely on the analysis set
16 forth on this document in deciding to issue the
17 opinion in connection – the clean opinion in
18 connection with the 2018 audit?
19     A.   Yeah, this is part of our workpapers
20 which forms the collective base of our opinion,
21 yes.
22     Q.   If PwC had any concerns that any
23 maker was unable to repay the obligations under
24 any of the notes made to Highland, is there a
25 process or what would happen under that

Page 60

BURGER

2  circumstance?
3          MR. AIGEN:  Objection, form.
4      A.   Do I answer that?
5          MR. WANDER:  Yes.
6      A.   If we become aware of any data or
7  anything which shows us that a counterparty
8  cannot repay the note, the question stems to
9  management as to why they consider the note
10 fully recoverable.  Because the fact that there
11 is a note with a legal agreement to it doesn't
12 mean – there may be adverse data that show
13 that the counterparty is not able to pay and
14 that then results in additional work to assess
15 whether that loan can be recorded at its full
16 value.
17     Q.   But in connection with the 2018
18 audit, management represented that each of the
19 notes was fully recoverable.  Do I have that
20 right?
21         MR. AIGEN:  Objection, form.
22     A.   They did.
23     Q.   Let's go to the results template,
24 please.
25         Now, do you see that there is

Page 61

BURGER

2  approximately 116 or 117 – withdrawn.
3          Do you see that there is
4  approximately $116 difference between the
5  amount per client and the balance per testing?
6      A.   Yes, I do.
7      Q.   Okay.  What – what does –
8  withdrawn.
9          Is the amount per client the total
10 principal and interest due as of the balance
11 sheet date for each of the makers listed under
12 the account description column?
13     A.   That is the amount that is obtained
14 from the trial balance that is used for the
15 financial statements –
16     Q.   Okay.
17     A.   – in Column D.
18     Q.   And did PwC then test those amounts
19 for accuracy or reasonableness?
20     A.   For reasonableness we went back if
21 material to the appropriate legal agreements.
22         MR. AIGEN:  I didn't want to
23 interrupt, but I was objecting to form with
24 that one.
25     Q.   And based on the testing that PwC

Appx. 01567

Page 62

BURGER

1
2  did, did it reach any conclusions as to the
3  reliability of the debtors' of Highland's
4  assessment as to the amount owed by each
5  client?
6      A.   Do you mind repeating that question?
7      Q.   Yeah, that wasn't very good.
8          What is the purpose of the testing
9  that -- that was undertaken that is reflected
10 on this page?
11     A.   So the purpose is, again, the 173 is
12 the amount that goes to the line item in
13 question that we are or that part of feeds into
14 another tab called detail, which goes back into
15 the detail.
16         So from there if we have a balance
17 as recorded in the financial statements we need
18 to obtain the detail behind that, what makes up
19 those amounts.  And for each one individually
20 or collective material, we need to test the, A,
21 the existence of the amount and, B, the
22 evaluation of the amount.
23     Q.   Let's go to the next tab, due from
24 HCMSI.  Do you see that?
25     A.   I do.

Page 63

BURGER

1
2      Q.   So does this show that an entity
3  known as HCMSI had principal and interest due
4  on one or more promissory notes totaling
5  approximately 13 and a half million dollars?
6      A.   It is three promissory notes, which
7  adds up to approximately 13.9 million dollars.
8      Q.   Okay.  So promissory note one is on
9  the left where it says closing date May 31,
10 2017.  Do I have that right?
11     A.   Correct.
12     Q.   And if we scroll down promissory --
13 where is the second promissory note?
14     A.   Just go over to column R and then
15 AB, I can read.
16     Q.   Okay.  So then -- so that is the
17 second promissory note is the one that was
18 issued on June 25th, 2018 in the amount of
19 $200,000, and then the third one is issued on
20 March 26th, 2018 in the amount of $150,000.  Do
21 I have that right?
22     A.   That's correct.
23     Q.   And this shows that under the first
24 note, if we could go to the left a bit, that
25 HCMSI paid Highland exactly $1 million on

Page 64

BURGER

1
2  October 8th, 2018 that was allocated -- a
3  portion of which was allocated to principal and
4  a portion of which was allocated to interest?
5      A.   That's correct.
6      Q.   Okay.  Let's go to the next tab,
7  Dondero tax loans.  Do you know why the loans
8  to Mr. Dondero are described as tax loans?
9      A.   It is -- it is described as tax loan
10 to facilitate tax payments based on earnings is
11 my understanding.
12     Q.   Did PwC ever make any inquiry as to
13 whether the amounts loaned to Mr. Dondero
14 approximated the amount of tax liability that
15 he faced?
16         MR. AIGEN:  Objection, form.
17     A.   We did not.
18     Q.   Does PwC have any information as to
19 whether or not the loans made to Mr. Dondero
20 were related in any way to his actual tax
21 obligations?
22         MR. AIGEN:  Objection, form.
23     A.   We did not.  We didn't consider it
24 necessary.
25     Q.   Did PwC make any inquiry as to the

Page 65

BURGER

1
2  purpose of the loans to Mr. Dondero?
3          MR. AIGEN:  Objection, form.
4      A.   In general.
5      Q.   In general you made an inquiry?
6      A.   Yeah, as to the -- the -- as to
7  whether these loans are considered reasonable
8  and arm's length.
9      Q.   What information do you recall that
10 you have whether the loans were reasonable and
11 arm's length?
12     A.   Related to the notes being at an
13 interest rate which is considered a reasonable
14 interest rate considering all the parties
15 involved.  And then more on, you know, again,
16 the testing that were done and the existence of
17 the notes.
18     Q.   Did PwC make any inquiry as to the
19 purpose of any of the affiliates to any of the
20 affiliates including Mr. Dondero?
21     A.   We did.
22     Q.   Okay.  With respect to Mr. Dondero,
23 do you have any information that you haven't
24 already provided as to PwC's understanding of
25 the purpose of the loans?

Appx. 01568

Page 66

BURGER

1
2    MR. AIGEN: Objection.
3    A.  No.
4    Q.  No.  And who -- who told PwC, if you
5  know, that the loans were being made to
6  Mr. Dondero to pay tax payments based on
7  earnings?
8    A.  Management.  I cannot recall a
9  specific name.
10    Q.  Okay.  But it is your understanding
11  that the loans were made to Mr. Dondero in
12  order to enable him to pay the taxes due on his
13  earnings.  Do I have that right?
14    A.  That's correct.
15    Q.  And who decided the amount of the
16  loans, to the best of your knowledge?
17    MR. AIGEN: Objection, form.
18    A.  It is an agreement between
19  management and Mr. -- management.
20    Q.  Do you have anybody -- do you have
21  any knowledge as to who on behalf of Highland
22  made the agreement with Mr. Dondero about the
23  amount of the loans?
24    A.  I cannot recall the specific name.
25    Q.  If you look at loan number 1 there,

Page 67

BURGER

1
2  the $14 million loan that was first made in
3  December 2017, do I have this right that
4  Mr. Dondero made a payment of over $750,000
5  that was applied to principal and interest on
6  December 19th, 2018?
7    A.  That's correct.
8    Q.  Okay.  And if we scroll down a
9  little bit more, keep going, note number 4.
10  Did Mr. Dondero make a $2 million payment to
11  Highland on December 18th, 2018, a portion
12  of which was used to pay principal and a portion
13  of which was used to pay interest on note
14  number 4?
15    A.  That's correct.
16    Q.  Did anybody ever tell you that in
17  January or February 2019 that Mr. Dondero had
18  entered into an oral agreement with his sister
19  acting on behalf of Highland whereby
20  Mr. Dondero and certain of his affiliates would
21  be relieved of the obligation to pay amounts
22  due under the promissory notes if certain
23  conditions subsequent were met?
24    MR. AIGEN: Objection, form.
25    A.  No, they did not.

Page 68

BURGER

1
2    Q.  Do you know whether anybody at PwC
3  was ever informed by Mr. Dondero -- withdrawn.
4    Do you know if anybody at PwC was
5  ever informed by anybody at Highland that in
6  January or February 2019 Mr. Dondero entered
7  into an oral agreement with his sister acting
8  on behalf of Highland whereby Mr. Dondero and
9  certain of his affiliates would be relieved of
10  all obligations to pay all amounts otherwise
11  due and owing under the promissory notes if
12  certain conditions subsequent were met?
13    MR. AIGEN: Objection, form.
14    A.  I do not.
15    Q.  Okay.  Can we go -- I apologize, but
16  can we go back to tab number -- the detail tab
17  in the -- in the workpapers?
18    MR. WANDER: In Exhibit 5 or Exhibit
19  3?
20    Q.  Exhibit 5, thank you for the
21  clarification.  Okay, so the detail tab and the
22  workpapers for 2018 lists all of the notes
23  receivable that were made by affiliates of
24  Highland; correct?
25    A.  Correct.

Page 69

BURGER

1
2    Q.  Are you aware of any oral or written
3  amendment to any of the promissory notes that
4  are described on the detail page of Exhibit 5?
5    MR. AIGEN: Objection, form.
6    MR. MORRIS:  What -- what is the
7  objection?  Hold on before you answer, what
8  is the objection?
9    MR. AIGEN: I think it is vague.  I
10  don't know which stuff you are talking
11  about here.  Are you asking for a legal
12  conclusion, and there is no foundation.
13    Q.  Yeah, okay.  Certainly not asking
14  for a legal conclusion and I will -- let me ask
15  the question again, sir.
16    This page lists the amounts that
17  each of the affiliates owes to Highland under
18  various promissory notes; correct?
19    A.  Correct.
20    Q.  Are you aware of any oral or written
21  amendment to any of those promissory notes?
22    A.  No, up to June 3rd, 2019.
23    Q.  And do you know whether anyone at
24  PwC was aware of any oral or written amendment
25  to any of the promissory notes as of June 3rd,

Page 70

```
1              BURGER
2   2019?
3          MR. AIGEN:  Objection, form.
4      A.   No, I'm not.
5      Q.   Were you ever informed of any
6   amendment, written or oral, to any promissory
7   note at any time?
8      A.   I was not.
9      Q.   Did anyone ever tell you that any of
10  the notes in -- referred to in the detail tab
11  of Exhibit 5 might be forgiven under certain
12  circumstances?
13     A.   No.
14     Q.   Do you know whether anybody at PwC
15  was ever informed by anybody at Highland that
16  any of the notes in the detail tab in Exhibit 5
17  might be forgiven?
18         MR. AIGEN:  Objection, form.
19     A.   I do not.
20     Q.   Under your understanding of the GAAP
21  rules, did Mr. Dondero and Mr. Waterhouse have
22  a continuing obligation to inform PwC of any
23  circumstances that would call into question the
24  collectability of any of the notes due from
25  affiliates?
```

Page 71

```
1              BURGER
2          MR. AIGEN:  Objection, form.
3      A.   Yes, they had the responsibility.
4      Q.   To the best of your knowledge, did
5   Mr. Dondero ever inform anybody at PwC prior to
6   June 3rd, 2019 that any of the notes might not
7   be collectable?
8          MR. AIGEN:  Objection, form.
9      A.   He did not.
10     Q.   To the best of your knowledge, did
11  Mr. Dondero ever inform anybody at PwC prior to
12  June 3rd, 2019 that any of the notes might be
13  forgiven under certain circumstances?
14         MR. AIGEN:  Objection, form.
15     A.   He did not.
16     Q.   To the best of your knowledge, did
17  Mr. Dondero ever inform anyone at PwC prior to
18  June 3rd, 2019 that any of the notes were
19  amended?
20         MR. AIGEN:  Objection, form.
21     A.   He did not.
22     Q.   To the best of your knowledge, did
23  Mr. Dondero ever inform anyone at PwC prior to
24  June 3rd, 2019 that the obligations under any
25  of the notes would be extinguished based on the
```

Page 72

```
1              BURGER
2   fulfillment of certain conditions subsequent?
3          MR. AIGEN:  Objection, form.
4      A.   Again, he did not.
5      Q.   I'm going to ask the same questions
6   now with respect to Mr. Waterhouse.
7          To the best of your knowledge, did
8   Mr. Waterhouse ever inform anyone at PwC prior
9   to June 3rd, 2019 that any of the notes might
10  not be collectable?
11         MR. AIGEN:  Objection, form.
12     A.   He did not.
13     Q.   To the best of your knowledge, did
14  Mr. Waterhouse ever inform anyone at PwC prior
15  to June 3rd, 2019 that any of the notes might
16  be forgiven under certain circumstances?
17     A.   No, he did not.
18     Q.   To the best of your knowledge, did
19  Mr. Waterhouse ever inform anyone at PwC prior
20  to June 3rd, 2019 that any of the notes were
21  amended?
22     A.   He did not.
23     Q.   To the best of your knowledge, did
24  Mr. Waterhouse ever inform anybody at PwC prior
25  to June 3rd, 2019 that the obligations under
```

Page 73

```
1              BURGER
2   any of the notes would be extinguished upon the
3   fulfillment of certain conditions subsequent?
4          MR. AIGEN:  Objection, form.
5      A.   He did not.
6      Q.   Now, just going to finish up the
7   last set of questions to make it broader for
8   anybody at Highland.
9          To the best of your knowledge, did
10  anyone from Highland ever inform anyone at PwC
11  prior to June 3rd, 2019 that any of the notes
12  might not be collectable?
13         MR. AIGEN:  Objection, form.
14     A.   Not to my knowledge.
15     Q.   To the best of your knowledge, did
16  anyone from Highland ever inform anyone at PwC
17  prior to June 3rd, 2019 that any of the notes
18  might be forgiven under certain circumstances?
19     A.   Not to my knowledge.
20     Q.   To the best of your knowledge, did
21  anyone from Highland ever inform anyone at PwC
22  prior to June 3rd, 2019 that any of the notes
23  were amended?
24         MR. AIGEN:  Objection, form.
25     A.   Not to my knowledge.
```

Appx. 01570

Page 74

```
BURGER
1              BURGER
2      Q.   To the best of your knowledge, did
3   anyone from Highland ever inform anyone at PwC
4   prior to June 3rd, 2019 that the obligations
5   under any of the notes would be extinguished
6   upon the fulfillment of certain conditions
7   subsequent?
8      A.   Not to my knowledge.
9      Q.    If PwC had learned before June 3rd,
10  2019 that any of the notes might not be
11  collectable, would PwC have required that
12  information to be disclosed?
13         MR. AIGEN:  Objection, form.
14     A.   Disclosed or potentially based on
15  materiality financials adjusted.
16     Q.   I'm going to ask that question
17  again.
18     A.   Okay.
19     Q.    If PwC had learned before June 3rd,
20  2019 that any of the notes that had an
21  outstanding principal amount of at least $1.7
22  million might not be collectable, would PwC
23  have required that to be disclosed?
24     A.   Correct.
25         MR. AIGEN:  Objection, form.
```

Page 75

```
BURGER
1              BURGER
2      Q.   And why is that?
3      A.   If you have a material – if you
4   have material adverse effects of the balance
5   sheet which gives a material adjustment to the
6   financial statements, depending on the type of
7   event you require either disclosure or actual
8   adjustment to the balance sheet.
9      Q.   If PwC had learned before June 3rd,
10  2019 that any of the notes that had a
11  outstanding principal amount due of at least
12  $1.7 million might be forgiven, would PwC have
13  required that to be disclosed?
14     A.   Yes.
15         MR. AIGEN:  Objection, form.
16     Q.   Is that for the same reasons that
17  you just articulated with respect to the lack
18  of collectability?
19     A.   Correct.
20     Q.   Just two more questions.  If PwC
21  learned before June 3rd, 2019 that any of the
22  notes that had an outstanding principal amount
23  of $1.7 million or more, if those notes had
24  been amended, would PwC have required that to
25  be disclosed?
```

Page 76

```
BURGER
1              BURGER
2          MR. AIGEN:  Objection, form.
3      A.   We would have.
4      Q.   And finally, if PwC learned before
5   June 3rd, 2019 that any of the notes that had a
6   then outstanding principal amount due of at
7   least $1.7 million would be extinguished based
8   on the fulfillment of certain conditions
9   subsequent, would PwC have required that to be
10  disclosed?
11         MR. AIGEN:  Objection, form.
12     A.   We would have.
13     Q.   Okay.
14         MR. MORRIS:  I have no further
15  questions.  Thank you very much, sir.
16         EXAMINATION
17  BY MR. AIGEN:
18     Q.   All right.  I guess my first
19  question is, how much of a hard stop time is
20  11:45?  I don't mean that for you that can be
21  for counsel.
22     A.   I can go to noon.
23     Q.   I will try – I do not think I'm
24  going to be able to be done by then.  I guess
25  at that point we can stop and it is possible
```

Page 77

```
BURGER
1              BURGER
2   John and I can work out stuff on the side.  But
3   just for the record, I understand this isn't
4   your problem I just want to note that we were
5   never told there would be this sort of time
6   limit today.  Again, not your problem and I
7   just want to reserve all rights if we can't
8   finish today we may have to come back another
9   time.  Hopefully not, I will do my best to ask
10  questions.
11         Let's start with some of the
12  questions you were asked at the end about –
13  Mr. Morris asked you if you had learned certain
14  things.  And he asked you several questions
15  about it, that PwC would have required that
16  information to be disclosed.  Do you remember
17  that?
18     A.   Okay.
19     Q.   Yes, you remember that?
20     A.   Yes, I do.
21     Q.   When you say or he said required to
22  be disclosed, what are you talking about,
23  disclosed where and to whom?
24     A.   Typically that would be disclosed in
25  your subsequent events footnotes, but you can
```

**Appx. 01571**

Page 78

BURGER

1
2  also disclose it in note 9 or 8 in this
3  instance, the relevant note.
4      Q.   And those questions were, for
5  instance, one of the questions were do you
6  remember being asked if PwC had learned that
7  the notes might be forgiven PwC would have
8  required that to have been disclosed.  Do you
9  remember answering that question?
10     A.   Yeah, I do.
11     Q.   And I want to focus on this.  I know
12  these are Mr. Morris' questions, so it may not
13  have been your language, but you were asked if
14  it might be forgiven.
15          What does that mean to you?  Are we
16  talking about is there a difference for you if
17  there was a 1 percent chance that something
18  would be forgiven or a 90 percent change of it
19  being forgiven?
20     A.   If we learned about something, let's
21  say, we learned might be forgiven, that would
22  have resulted in additional audit work.  The
23  question I understood to be and the answer I
24  gave was if something happened where there was
25  an event that actually occurred before or on

Page 79

BURGER

1
2  June 3rd, we would have required disclosure.
3      Q.   Got it.  So is it fair to say that
4  in response to all of Mr. Morris' questions
5  about what would have been required to be
6  disclosed, in your mind he was referring to
7  those events or items having actually occurred
8  and the notes being actually forgiven at that
9  point in time; is that correct?
10          MR. MORRIS:  Objection to the form
11     of the question.
12     Q.   I didn't hear your answer.
13     A.   Correct.
14     Q.   So you haven't provided any
15  testimony today about what PwC might have
16  required to be disclosed or disclosed if
17  certain events took place in the future; is
18  that fair to say?
19          MR. MORRIS:  Objection to the form
20     of the question.
21     A.   That is fair to say, but any events
22  that we learn of may have -- will be assessed
23  for what the impact on the valuation of the
24  loan is.
25     Q.   And is it fair to say, then, that

Page 80

BURGER

1
2  PwC would have to analyze and assess a
3  condition to determine whether it is something
4  this needs to be disclosed?
5      A.   Yeah, we will have to analyze it.
6      Q.   And how would PwC go about analyzing
7  a potential event that might forgive or
8  discharge the notes?
9      A.   It depends on what the event is.  It
10  comes down to a function of materiality and
11  probability and understanding the potential
12  event through discussions with management.
13  Again, it depends on the event.
14     Q.   Okay.  And without knowing the
15  specific event, would you agree that you can't
16  testify today on whether that would need to be
17  disclosed in the financials?
18          MR. MORRIS:  Objection to the form
19     of the question.
20     A.   Again, the purpose of subsequent
21  event disclosure is to disclose to the reader
22  of the financial statements any events that
23  actually occurred.  And if we are aware of
24  something that -- that did not occur but that
25  may have a material adverse effect on the

Page 81

BURGER

1
2  financial statements, that is something that we
3  would consider for disclosure.
4      Q.   And when you say you'd consider it,
5  is it fair that you would analyze the
6  probability that the event would occur?
7          MR. MORRIS:  Objection to the form
8     of the question.
9      A.   Correct.
10     Q.   And would you also --
11     A.   Correct.
12     Q.   Would you also look at the potential
13  materiality of that event?
14     A.   Yes.
15     Q.   And with respect to the promissory
16  notes at issue in this litigation, is it fair
17  to say that no one at PwC made any sort of
18  analysis about whether those notes would be
19  potentially discharged due to events that might
20  occur in the future?
21          MR. MORRIS:  Objection to the form
22     of the question.
23     A.   That is not part of our professional
24  work responsibility to consider potential
25  events that might occur.

Appx. 01572

Page 82

BURGER

2    Q.   And the audits that we were talking
3 about were in 2017 and 2018; is that correct?
4    A.   Yeah, conducted in '18 for '17 and
5 conducted in '19 for '18.
6    Q.   Okay.  And I just want to ask some
7 general questions about the audits that were
8 done.  And to speed things up, I'm going to ask
9 you the questions combining those two years.
10 If you need to break it down per year we can do
11 that, too, but these are pretty general
12 questions.
13          Can you tell me approximately how
14 many people worked on the audits of Highland at
15 PwC in 2017 and 2018?
16    A.   Again, earlier I said six or seven.
17    Q.   And out of those six or seven, how
18 many people had communications with anyone at
19 Highland?
20    A.   I would argue all of them, all of
21 us.
22    Q.   Okay.  And who at Highland did these
23 six or seven people have communications with
24 with respect to the work on the audits?
25    A.   It depends.  It depends on the

Page 83

BURGER

2 nature of the question.  So again, Kristin
3 Hendrix, and actually earlier there is another
4 name Drew Wilson actually have been a person that
5 we dealt with on a day-to-day basis.  Above
6 them would be Dave Klos and above them would be
7 Frank Waterhouse, the CFO.
8          So again, if it is a routine matter,
9 our more junior people probably dealt with
10 Kristin and Drew.  And if it is not a routine
11 matter and on periodic status meetings, my
12 communication would have probably been more
13 with Dave Klos and my managers.
14    Q.   I apologize.  Other than those four,
15 Ms. Hendrix, Mr. Wilson, Mr. Klos and
16 Mr. Waterhouse, is there anyone else at
17 Highland that PwC communicated with as part of
18 the audit that you are aware of?
19    A.   Not that I'm aware of.  I mean,
20 there is a chance that they might have had
21 somebody else involved, but not that I can
22 recall.
23    Q.   Have you ever had any conversations
24 with Mr. Dondero?
25    A.   Not specifically relating to any --

Page 84

BURGER

2 related to the audit directly.
3    Q.   Do you know whether any of the other
4 people at PwC that worked on the audit had any
5 conversations with Mr. Dondero?
6    A.   Not that I'm aware of.
7    Q.   At the end of Mr. Morris' questions
8 if you remember you were asked several
9 questions about whether you or anyone at PwC
10 had different conversations with anyone at
11 Highland about the notes and them being
12 potentially forgivable or discharged or
13 amended.  Do you remember testifying to that?
14    A.   Yeah, I do.
15    Q.   You were asked about conversations
16 you had and you said you had no such
17 conversations; is that correct?
18    A.   Correct.
19    Q.   You also testified that you are not
20 aware of any conversations of anyone else that
21 PwC had with anyone at Highland about this
22 subject; is that correct?
23    A.   That's correct.
24    Q.   Did you -- I know you said you're
25 not aware and I guess my question is how do you

Page 85

BURGER

2 know that?  Did you have any conversations with
3 anyone else at PwC about whether they had any
4 such conversations with anyone at Highland
5 about potential dischargeability of the notes?
6    A.   I would have had discussions with my
7 manager directly through a review of the
8 engagement as we go through all of this.  And
9 in this instance depending on the person
10 involved whether it was Hilda or Madeline, we
11 analyze, review as we try to get towards
12 sign-off.
13          And on this line item, we would have
14 gone through the work done on this note, you
15 know, and the discussion of whether there is
16 any adverse event that anybody is aware of.
17    Q.   These are all the conversations you
18 are aware of during the audit not in the last
19 couple of years; is that correct?
20    A.   Yeah, during the audit.
21    MR. MORRIS:  Objection to the form
22 of the question.
23    Q.   Are you aware of any specific
24 discussions that you had with anyone else at
25 PwC about whether they had any communications

Page 86

BURGER

1          BURGER
2    with anyone at Highland about whether the notes
3    were potentially dischargeable or amended?
4          MR. MORRIS:  Objection.
5    A.   No, I'm not aware.
6    Q.   As part of the audit process, is one
7    of the things that PwC looks at who would be
8    reviewing or relying on the financial
9    statements that you are auditing?
10   A.   Yes, we consider that.
11   Q.   And why is that considered?
12   A.   It is important -- well, A, the --
13   the format of our report and obviously just
14   governed by who relies on it.  So in other
15   words, if you have a public client with the
16   PCAOB standards where everybody in the public
17   relied on there are additional procedures and
18   additional scope than we have to perform.  In a
19   certain sense you can deal with two sets of
20   rules.  And the other part of that is
21   considered in who we address our opinion to.
22   Q.   And in the case of the Highland
23   audits, did PwC make an effort to determine who
24   would be reviewing and relying on the audits,
25   audited financial statements?

Page 87

BURGER

1          BURGER
2    A.   Yes.  As this is a partnership, it
3    is generally available to the general partner
4    and the partners.  And there wasn't any
5    specific need that we were aware of with
6    third-party lenders or banks or anything that
7    we are relying on financials.
8    Q.   Is who is going to end up reviewing
9    and relying on a financial statement relevant
10   to what PwC considers to be material and thus
11   need to be disclosed?
12         MR. MORRIS:  Objection to the form
13   of the question, asked and answered.
14   A.   No, sorry.
15   Q.   Then what is the relevance -- sorry.
16         If it is -- if who is going to
17   review a financial statement is not relevant to
18   what is going to be disclosed, why is it
19   relevant to the work that PwC is doing?
20   A.   We perform audits either in terms of
21   GAAS as promulgated by AICPA or PCAOB, and
22   there are differences in those standards.
23         And a correction to your previous
24   question, on materiality the basis for forming
25   a point of view on what is material is not

Page 88

BURGER

1          BURGER
2    different, but there are certain nuances in our
3    obligation of neutrality as to whether I'm in a
4    PCAOB engagement or a AICPA engagement.
5    Q.   What do you mean by that?
6    A.   So when we decide -- you get to an
7    overall materiality.  So if you for example,
8    are in a fund engagement you can use different
9    metrics as to whether you are in, let's say, a
10   hedge fund or a mutual fund, which is driven by
11   the users of the financials.
12         MR. WANDER:  It is a difference
13   between public and private, Michael.
14   Q.   And this would be a private
15   transaction we're calling it; is that correct?
16   A.   Yes, governed -- sorry, not
17   governed, performed.  Performed under the
18   standards of the AICPA and not the PCAOB.
19   Q.   And would those standards make a
20   difference on what is considered material as
21   part of PwC's work?
22   A.   Depending on the industry, it may.
23   Q.   And would those differences
24   potentially make a difference on what needed to
25   be disclosed in the financial statements?

Page 89

BURGER

1          BURGER
2    A.   Yeah.  The standards from a PCAOB
3    the asset and disclosure requirements under the
4    PCAOB rules, which would not be there under
5    AICPA.
6    Q.   Changing topics a little bit here.
7    We talked about related-party transactions a
8    little earlier.  Do you remember?
9    A.   Sure, I do.
10   Q.   Not we, you and Mr. Morris.  Can you
11   just generally at a high level explain what a
12   related-party transaction is?
13   A.   So related-party I cannot -- I
14   cannot quote the verbatim GAAP or GAAS
15   definition right now, but in effect the
16   related-party is any party that up or down the
17   stream can have material influence or control
18   of the entity.  So it would be key management,
19   anybody in an ownership structure upstream
20   which has significant interest or control as
21   well as even -- it can be in certain
22   circumstances, certain service providers.
23   Q.   Let's concentrate on notes for a
24   second.  There can be --
25   A.   Okay.

Page 90

```
1              BURGER
2     Q.   – related-party notes and then what
3  would you call them non-related-party notes if
4  they're not related-party notes?  Is there a
5  term for that?
6          MR. MORRIS:  Objection to form of
7     the question.
8     A.   Third party, unaffiliated.
9     Q.   When analyzing the collectability of
10 notes, is there any differences in what PwC was
11 doing looking at affiliated – non-affiliated
12 transaction notes versus related-party notes?
13          MR. MORRIS:  Objection to the form
14    of the question.
15    A.   Not really.
16    Q.   You say "not really," that can –
17    A.   Yeah, not – no, there isn't,
18 because at the end of the day whether a note is
19 collectable or not is something that you have
20 to get evidence of, and the existence of the
21 note is something you have to get evidence of.
22    Q.   I think I can finish up with a
23 couple more questions here.  I just want to
24 sort of go back to what we talked about in the
25 beginning.  PwC did not do any sort of analysis
```

Page 91

```
1              BURGER
2  as to whether the notes in question would be
3  potentially forgiven or discharged; is that
4  correct?
5          MR. MORRIS:  Objection to the form
6     of the question.
7          MR. AIGEN:  What is your basis for
8     the objection?
9          MR. MORRIS:  It is not their
10    responsibility to do that.  There is no
11    foundation.
12    Q.   That is fine, you can answer the
13 question.
14    A.   No, we did not as we did not have
15 to.
16    Q.   If PwC had learned that there was
17 some condition down the road that could
18 potentially discharge or forgive the notes,
19 would PwC have had to do some sort of analysis
20 to determine if that condition would need to be
21 disclosed?
22    A.   Yes, if you become aware of any
23 adverse event which may impact the valuation of
24 any asset you have to consider that.
25    Q.   And in order to consider that, you
```

Page 92

```
1              BURGER
2  would look at the probability that that event
3  would occur; is that correct?
4     A.   Correct, probability and potential
5  impact.
6     Q.   And materiality?
7     A.   Materiality.
8     Q.   And that is nothing that you or
9  anyone at PwC did with respect to any potential
10 conditions that might forgive these notes; is
11 that correct?
12    A.   Yeah, we did not.  Yeah, we did not.
13          MR. AIGEN:  That is all the
14    questions I have.
15          FURTHER EXAMINATION.
16 BY MR. MORRIS:
17    Q.   I just have a few more, sir, few
18 follow-ups.
19          PwC made no assessment as to whether
20 or not any of the notes might not be forgiven
21 because they were never given any information
22 that indicated that that was even possible;
23 correct?
24          MR. AIGEN:  Objection, form.
25    A.   That's correct.
```

Page 93

```
1              BURGER
2     Q.   PwC was never given any information
3  about the possibility that any of the
4  affiliated promissory notes might be forgiven;
5  correct?
6     A.   Correct.
7     Q.   PwC was never informed that
8  Mr. Dondero had entered into an agreement that
9  could impact the collectability of any of the
10 promissory notes; correct?
11          MR. AIGEN:  Objection, form.
12    A.   Correct.
13          MR. MORRIS:  I have no further
14    questions.
15          MR. AIGEN:  I don't have anything.
16          MR. MORRIS:  Mr. Burger, I greatly
17    appreciate your time and your patience.
18          Thank you very much, John, same to
19    you.  Thank you for the accommodations and
20    I hope –
21          MR. WANDER:  Certainly, thank you.
22          (Deposition adjourned at 11:41 a.m.)
23
24
25
```

**Appx. 01575**

Page 94

```
1        BURGER
2        _____
3        PEET BURGER
4
5   Subscribed and sworn to before me
6   this      day of          2021.
7
8   -------------------------------
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 95

```
1        BURGER
2        C E R T I F I C A T E
3
4        I, SUSAN S. KLINGER, a certified
5   shorthand reporter within and for the State
6   of Texas, do hereby certify:
7        That PEET BURGER, the witness whose
8   deposition is hereinbefore set forth, was
9   duly sworn by me and that such deposition
10  is a true record of the testimony given by
11  such witness.
12       I further certify that I am not
13  related to any of the parties to this
14  action by blood or marriage; and that I am
15  in no way interested in the outcome of this
16  matter.
17       IN WITNESS WHEREOF, I have hereunto
18  set my hand this 30th of July, 2021.
19
20       _____
21       Susan S. Klinger, RMR-CRR, CSR
22       Texas CSR# 6531
23
24
25
```

Page 96

```
1        ERRATA SHEET
2   Case Name:
3   Deposition Date:
4   Deponent:
5   Pg. No. Now Reads   Should Read  Reason
6   ___ ___ _____  _____  _____
7   ___ ___ _____  _____  _____
8   ___ ___ _____  _____  _____
9   ___ ___ _____  _____  _____
10  ___ ___ _____  _____  _____
11  ___ ___ _____  _____  _____
12  ___ ___ _____  _____  _____
13  ___ ___ _____  _____  _____
14  ___ ___ _____  _____  _____
15  ___ ___ _____  _____  _____
16  ___ ___ _____  _____  _____
17  ___ ___ _____  _____  _____
18  ___ ___ _____  _____  _____
19  ___ ___ _____  _____  _____
20
             _____
21              Signature of Deponent
22  SUBSCRIBED AND SWORN BEFORE ME
23  THIS ____ DAY OF _____, 2021.
24  _____
25  (Notary Public)   MY COMMISSION EXPIRES:_____
```

Index: $1..amount

## $

**$1** 63:25

**$1.7** 74:21 75:12,23 76:7

**$11.7** 40:14

**$116** 61:4

**$14** 67:2

**$150,000** 63:20

**$2** 67:10

**$200,000** 63:19

**$750,000** 67:4

## 1

**1** 17:22,25 66:25 78:17

**10** 33:24

**11** 24:4,6,23

**116** 61:2

**117** 61:2

**11:41** 93:22

**11:45** 76:20

**13** 63:5

**13.9** 63:7

**15** 51:14 54:10,18,22 55:6

**16** 39:25

**17** 82:4

**173** 62:11

**18** 20:25 82:4,5

**18th** 67:11

**19** 82:5

**1997** 6:14,17

**19th** 67:6

**1st** 5:21,24 49:3

## 2

**2** 30:6 31:11 51:2

**20** 6:20

**2000** 44:20 56:11

**2013** 7:2,3,5

**2014** 5:21,24 6:9

**2015** 38:3

**2017** 30:3,18,23 31:3, 9 33:22 36:15,24 37:6 39:18 40:19 41:2,7,14,16,20 43:7 44:21 56:14 63:10 67:3 82:3,15

**2018** 7:6 20:15 21:9 40:14 46:22,25 47:13,20,24 51:12 52:22 53:10,20 55:8, 21 56:10,22 59:18 60:17 63:18,20 64:2 67:6,11 68:22 82:3, 15

**2019** 17:23 19:15 21:14 24:18,24 25:4 48:5 54:3,22 67:17 68:6 69:22 70:2 71:6, 12,18,24 72:9,15,20, 25 73:11,17,22 74:4, 10,20 75:10,21 76:5

**21st** 38:3

**25th** 63:18

**26** 51:17

**26th** 63:20

**28** 34:17 52:6,7

**29** 52:8

**2nd** 49:3

## 3

**3** 41:4 68:19

**30** 35:3,6,7 39:20

**30th** 24:18 25:4

**31** 39:20 63:9

**31st** 20:15 21:9 36:15,24 40:19 41:20 46:25 47:12,20 53:10 67:3 82:3,15

**32** 25:9,10,21 26:10

**34** 26:15 27:10

**35D** 27:13,19

**36** 28:14,18,22

**38** 54:9,10

**3rd** 17:23 19:15 21:14 24:20,24 48:5 54:3, 22 69:22,25 71:6,12, 18,24 72:9,15,20,25 73:11,17,22 74:4,9, 19 75:9,21 76:5 79:2

## 4

**4** 47:7,8,9 67:9,14

**41** 39:22

**413** 23:24

**416** 25:7

**417** 28:13

**419** 19:3 29:6

## 5

**5** 55:9,10,17 68:18,20 69:4 70:11,16

**50** 21:2,13 24:16

## 8

**8** 51:18 52:15,19 54:6 78:2

**8th** 64:2

## 9

**9** 34:19 35:7,15,19 36:13 39:3,6 52:8 78:2

**90** 78:18

## A

**a.m.** 93:22

**AB** 63:15

**ability** 44:16,17,23 57:7,12,25 58:8,13,

16 59:12

**absolute** 59:6

**absolutely** 10:16

**accept** 49:2

**acceptance** 49:18

**Accepted** 8:22,24 9:11,16,18 15:23 16:5 22:2

**accommodations** 93:19

**accompanying** 15:6,17 34:7

**accordance** 15:23 16:8,9

**account** 61:12

**accountant** 13:7,8

**accounting** 8:19 9:19 16:5,6

**accounts** 44:2

**accrued** 38:21

**accuracy** 21:18 61:19

**accurate** 41:9 50:5

**acting** 67:19 68:7

**actual** 64:20 75:7

**add** 46:13

**additional** 51:9 60:14 78:22 86:17,18

**address** 86:21

**adds** 63:7

**adequate** 58:22

**adjourned** 93:22

**adjusted** 74:15

**adjustment** 75:5,8

**adjustments** 25:18

**adverse** 60:12 75:4 80:25 85:16 91:23

**affiliate** 24:11 36:14, 23 52:21 53:9

**affiliate's** 59:2

**affiliated** 23:12,16, 19 24:7,23 25:3 90:11 93:4

**affiliates** 31:17,23,24 32:2,10,20 33:12,18, 23 35:9,20 36:3,20 39:8 41:8 43:15 51:5, 14 52:10,17 53:3,17, 23 55:23 65:20 67:20 68:9,23 69:17 70:25

**African** 6:15

**agree** 80:15

**agreement** 60:11 66:18,22 67:18 68:7 93:8

**agreements** 26:21 61:21

**AICPA** 9:3 87:21 88:4,18 89:5

**AIGEN** 14:19 15:25 16:16 18:3,8 23:8 25:24 26:12 32:22 33:14 35:16,21 36:4 37:9 39:11 45:4 46:12 47:3,9 53:11 54:7 55:14,17 57:9 60:3,21 61:22 64:16, 22 65:3 66:2,17 67:24 68:13 69:5,9 70:3,18 71:2,8,14,20 72:3,11 73:4,13,24 74:13,25 75:15 76:2, 11,17 91:7 92:13,24 93:11,15

**alleged** 28:6

**allocated** 64:2,3,4

**ambiguous** 8:13

**amended** 71:19 72:21 73:23 75:24 84:13 86:3

**amendment** 69:3, 21,24 70:6

**amount** 31:21 38:20 40:14 44:15 45:15 61:5,9,13 62:4,12,21, 22 63:18,20 64:14 66:15,23 74:21 75:11,22 76:6

**amounts** 31:16,23 32:2,9,12,19 33:11, 18,23 34:15 35:8 36:3,10,13,17,18,20, 23 41:8 42:19,23 43:14 44:19 51:5,13 52:9,20,24 53:2,9,15, 16,22 55:22 58:23 61:18 62:19 64:13 67:21 68:10 69:16

**analysis** 44:10,13 46:7,10 57:3,12,13 59:15 81:18 90:25 91:19

**analyze** 58:15 80:2,5 81:5 85:11

**analyzing** 57:6 80:6 90:9

**answering** 78:9

**answers** 7:22

**apologize** 7:18 15:3 41:25 47:6,16 68:15 83:14

**applicable** 50:18

**applied** 67:5

**apply** 24:6

**approach** 10:8

**approve** 50:23

**approximate** 38:24

**approximated** 64:14

**approximately** 39:8 61:2,4 63:5,7 82:13

**approximates** 37:15 53:23

**April** 7:3 11:2,3,17

**argue** 82:20

**arising** 24:13

**arm's** 65:8,11

**articulated** 75:17

**ascertain** 58:7

**Asia** 21:6

**aspects** 57:5

**assert** 26:7 28:20

**asserting** 26:18

**assertion** 38:8

**assess** 58:20 60:14 80:2

**assessed** 79:22

**assessment** 26:17 57:19 58:25 62:4 92:19

**asset** 32:5,7,8,10,14, 15,16,17 38:15 89:3 91:24

**assets** 31:13,16 32:3,21 33:12,18,25 38:13 51:15 57:22 58:13,21

**associate** 42:7,8

**assurance** 8:18 9:9, 12,14,15 15:22 16:14 22:20 32:16 57:20 59:8

**attention** 34:12

**audit** 5:18,19,22 6:8, 16,19 7:4 8:17 9:6,8 10:8,24 12:16,18 13:14 14:22,24 16:9, 20 17:12,15,19 21:8, 21,25 22:19 26:11 27:10 29:4 30:22 39:14,17 41:7,14,17, 18 42:21 43:7 44:7, 21 47:18 49:7,10,14 50:10 54:3 55:21 56:22 59:18 60:18 78:22 83:18 84:2,4 85:18,20 86:6

**audited** 13:19 14:10 16:7 30:18 37:5 46:24 47:11,25 86:25

**auditing** 8:19,23,24 9:11,17 10:2 15:23 16:4 22:3 31:3 86:9

**auditors** 48:19

**audits** 6:3,25 13:12 14:14 20:6 23:18 29:25 82:2,7,14,24 86:23,24 87:20

**aware** 23:10 26:20 28:25 57:23 60:6

69:2,20,24 80:23 83:18,19 84:6,20,25 85:16,18,23 86:5 87:5 91:22

**awkward** 18:10

---

**B**

**back** 19:11 21:7 42:8 45:14,16 49:24 61:20 62:14 68:16 77:8 90:24

**background** 18:25

**balance** 20:10,14 24:13 29:16 32:3,11, 21 33:4,12,19,22 36:9,19 40:7,18 42:20 43:22,24 44:5 51:3 53:2 61:5,10,14 62:16 75:4,8

**balances** 44:2

**banks** 87:6

**base** 44:25 59:20

**based** 21:12 39:2,5 42:23 59:9 61:25 64:10 66:6 71:25 74:14 76:7

**basic** 36:11

**basically** 9:2 25:22 38:22

**basis** 5:23 6:20 22:19 34:14 59:4 83:5 87:24 91:7

**Bates** 18:4,8

**Beautiful** 30:14

**begin** 6:23 7:22,24, 25 10:23 11:7,19,23

**beginning** 6:8 54:10 90:25

**begins** 22:9 29:8

**behalf** 47:11 66:21 67:19 68:8

**believed** 16:13

**biggest** 13:14

**bit** 37:19 39:23 63:24

67:9 89:6

**bona** 24:11

**bottom** 20:18 34:4 43:10 48:5

**break** 8:7 82:10

**briefly** 6:6

**broader** 73:7

**Burger** 5:1,3,10,12 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1, 2,9 19:1 20:1 21:1 22:1 23:1 24:1,3 25:1 26:1 27:1 28:1 29:1 30:1,7 31:1 32:1 33:1 34:1 35:1,4,25 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1,15,20 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1,16

**business** 43:3 56:18

---

**C**

**calculated** 36:22 53:8

**call** 23:15 25:15 26:5 41:3 49:2 50:12 58:21 70:23 90:3

**called** 13:25 35:8 36:2,19 50:19 53:2 57:2,15 62:14

**calling** 88:15

**capably** 30:10

**capacity** 6:2

**Capital** 6:3,24 7:8,11 23:21 31:22 40:10

**capture** 40:4,5

**carried** 21:24 32:2, 20

**carry** 51:7

**carrying** 21:20 33:17 37:15 38:9,16,17,18, 24 53:23

**case** 8:22 11:21 86:22

**CFO** 13:4 19:22 83:7

**chance** 78:17 83:20

**change** 78:18

**Changing** 89:6

**charge** 7:5

**chief** 13:6

**circumstance** 60:2

**circumstances** 70:12,23 71:13 72:16 73:18 89:22

**claims** 24:12

**clarification** 15:4 16:10 24:21 68:21

**classic** 32:14

**clean** 50:13,16 59:17

**clear** 10:20

**client** 49:19 61:5,9 62:5 86:15

**client's** 49:13

**closed** 34:9

**closing** 63:9

**coincidence** 48:13

**collectability** 70:24 75:18 90:9 93:9

**collectable** 71:7 72:10 73:12 74:11,22 90:19

**collective** 59:20 62:20

**column** 57:15 61:12, 17 63:14

**combination** 58:3

**combining** 82:9

**comfort** 42:22

**comment** 15:16

**committee** 50:14

**communicated** 83:17

**communication** 12:23 83:12

**communications** 82:18,23 85:25

**compile** 15:8

**compiled** 15:13

**completed** 7:7 39:17

**completeness** 26:17 27:4

**completing** 30:22

**completion** 10:7,11, 22 21:20,25

**compliance** 9:10

**concentrate** 89:23

**concept** 38:22

**concerns** 22:25 59:22

**conclude** 44:20 58:16 59:11

**conclusion** 69:12,14

**conclusions** 62:2

**condition** 80:3 91:17,20

**conditions** 67:23 68:12 72:2 73:3 74:6 76:8 92:10

**conducted** 82:4,5

**confirm** 21:18 37:21 53:5,7,19 55:20,24 56:16,20

**confirmed** 21:11 24:18

**conformance** 16:15

**conglomerate** 9:4

**Connect** 13:25

**connection** 10:2 14:14 16:19 31:8 41:7,13 44:6,21 47:24 53:20 59:17,18 60:17

**considered** 9:3 22:12,17 23:6,20 38:9 65:7,13 86:11, 21 88:20

**considers** 87:10

**consistent** 5:23 6:20

**consolidated** 27:23 31:21 34:8 51:3

**constituted** 33:24

**consultation** 50:21

**contact** 12:17,21 13:3

**content** 49:19,21

**context** 18:23 38:12

**continuing** 52:7 70:22

**contractual** 38:19

**contractually** 58:11

**control** 89:17,20

**conversations** 83:23 84:5,10,15,17, 20 85:2,4,17

**conveyed** 36:2

**copy** 30:13

**correct** 6:15,22 11:25 12:7,11 15:14 19:6,10 20:12,16,17 21:13 24:15,19,20 25:4,5,25 27:24 29:2, 10 33:4,5,8,9 34:2 35:10,15,22 36:16,21 37:18 39:12 40:2,11, 20,21,24,25 41:21 43:17 46:21 51:16 52:5,13,14,17,18 53:12,25 54:8,20,25 56:23 57:10,13,14 63:11,22 64:5 66:14 67:7,15 68:24,25 69:18,19 74:24 75:19 79:9,13 81:9,11 82:3 84:17,18,22,23 85:19

88:15 91:4 92:3,4,11, 23,25 93:5,6,10,12

**correction** 47:14 87:23

**correctly** 9:7

**counsel** 76:21

**counterparty** 44:18 60:7,13

**couple** 85:19 90:23

**court** 8:4

**created** 56:14

**creating** 56:13

**credit** 44:9,12 57:2, 12

**creditworthiness** 59:2,6

**current** 21:12 24:24

**D**

**data** 57:24 60:6,12

**date** 20:10 21:20,24 22:5,6 24:13 29:16, 17 48:8,14,21,25 49:2 61:11 63:9

**dated** 48:4

**dates** 6:11

**Dave** 83:6,13

**David** 12:25

**day** 48:20 90:18

**day-to-day** 83:5

**deal** 35:24 44:17 45:17 86:19

**deals** 22:20,21

**dealt** 12:20 45:13 83:5,9

**debtor** 35:20 52:17 58:18

**debtors** 30:22

**debtors'** 39:3 62:3

**December** 20:15 21:9 36:14,24 38:3

40:19 41:19 46:25 47:12,20 53:10 67:3, 6,11

**decide** 88:6

**decided** 17:19 53:6 66:15

**deciding** 59:16

**decision** 33:10

**dedicated** 34:22 50:15

**default** 25:3 57:21 58:11

**defer** 25:17

**defined** 23:6 31:24

**definition** 22:12,16, 20,25 32:4,6,8,15 89:15

**depending** 75:6 85:9 88:22

**depends** 13:13 80:9, 13 82:25

**deposed** 7:14

**deposition** 18:7,10 45:24 46:3 93:22

**derived** 20:7

**describe** 9:24 34:21 35:19 41:9 49:16 52:16 54:13 58:5

**description** 54:23 61:12

**detail** 43:20 45:14 51:24 62:14,15,18 68:16,21 69:4 70:10, 16

**detailed** 43:10 56:25

**determine** 80:3 86:23 91:20

**determines** 49:12

**deviation** 50:21

**deviations** 31:6 47:22 50:3

**differ** 37:12 38:17

**difference** 61:4

78:16 88:12,20,24

**differences** 87:22 88:23 90:10

**diligence** 45:6 58:4, 6 59:9

**directly** 56:7 84:2 85:7

**discharge** 80:8 91:18

**dischargeability** 85:5

**dischargeable** 86:3

**discharged** 81:19 84:12 91:3

**disclose** 34:25 78:2 80:21

**disclosed** 27:22 28:9,24 74:12,14,23 75:13,25 76:10 77:16,22,23,24 78:8 79:6,16 80:4,17 87:11,18 88:25 91:21

**disclosure** 29:17 40:7 54:15,24 75:7 79:2 80:21 81:3 89:3

**disclosures** 28:6,7 29:18 50:4

**discount** 39:18 54:4

**discussion** 85:15

**discussions** 80:12 85:6,24

**dispute** 32:19

**document** 15:10 17:22 18:12,13,15,21 19:12 30:9 33:7 34:18 37:20 41:10,23 42:17,18 43:25 48:4 49:8 56:13,16,20 59:16

**documentation** 46:16

**documents** 47:15

**dog** 27:16,19

**dollars** 63:5,7

**Dondero** 19:8,14,18,

22 21:3,11 23:4,12 24:10,17 25:21 27:20 28:22 40:12,22 58:16 59:4 64:7,8,13,19 65:2,20,22 66:6,11, 22 67:4,10,17,20 68:3,6,8 70:21 71:5, 11,17,23 83:24 84:5 93:8

**Dondero's** 18:7 58:13

**drafted** 20:2

**drafts** 14:21 15:16

**draw** 34:12

**Drew** 83:4,10

**driven** 88:10

**due** 18:24 31:17,24 32:2,9,19 33:11,18, 23 35:8,20 36:3,13, 20,23 39:9 41:8 43:14 44:15 45:6,19, 21 51:5,13 52:9,20 53:3,9,15,16,22 55:22 58:4,6 59:9 61:10 62:23 63:3 66:12 67:22 68:11 70:24 75:11 76:6 81:19

**duly** 5:4

**duties** 9:22

**duty** 27:3 50:10

### E

**earlier** 31:7 40:18 47:23 48:10 49:3 57:4 82:16 83:3 89:8

**earnings** 64:10 66:7, 13

**easier** 30:14

**easy** 18:12

**effect** 80:25 89:15

**effectively** 48:22

**effects** 75:4

**effort** 86:23

**efforts** 30:22 31:3

**employed** 5:11 6:6 42:3

**enable** 14:10 66:12

**encourage** 18:18

**end** 14:2 21:19 33:22 43:15 51:10,12 52:21 77:12 84:7 87:8 90:18

**ending** 19:3 20:15,25 21:9 23:24 28:13 40:19 41:19 46:25 47:12,20

**ends** 37:11,22

**engaged** 11:11

**engagement** 7:5 9:5 10:25 15:20 50:18 85:8 88:4,8

**entered** 67:18 68:6 93:8

**entities** 23:12

**entitled** 32:15 34:19 39:24 52:9

**entity** 19:23 32:13 63:2 89:18

**equal** 39:8

**error** 26:5

**evaluation** 62:22

**event** 40:23 75:7 78:25 80:7,9,12,13, 15,21 81:6,13 85:16 91:23 92:2

**events** 22:4 28:8 29:15 39:24 40:6 48:24 54:14,23 55:5 77:25 79:7,17,21 80:22 81:19,25

**evidence** 58:9 59:7 90:20,21

**EXAMINATION** 5:6 76:16 92:15

**exceeded** 51:14

**exchange** 23:13 38:15

**Excuse** 27:15

**execution** 10:8,11 11:6,14,15 12:18 13:15

**exhibit** 17:22,25 30:5,6 41:3,4 47:7,8 55:9,10,17 68:18,20 69:4 70:11,16

**existence** 42:23 62:21 65:16 90:20

**expect** 19:24 22:21

**expected** 17:11

**explain** 10:20 45:10 89:11

**explanations** 34:15

**express** 22:24

**extinguished** 71:25 73:2 74:5 76:7

### F

**faced** 64:15

**facilitate** 64:10

**facilitated** 12:21,22

**fact** 25:17 33:6 54:22 60:10

**fair** 6:21 12:2,3 17:17 27:18 28:21 35:18 37:14 38:8,10,11,13, 21,23 39:2,5,7,13,15 51:12 53:21 54:2,4 58:24 79:3,18,21,25 81:5,16

**fall** 11:24

**familiar** 9:21 16:22 46:23

**February** 67:17 68:6

**feed** 12:9

**feeds** 62:13

**fide** 24:11

**fieldwork** 11:2,5 12:12,13

**file** 41:12

**filings** 58:14,15,19, 22

**final** 10:24

**finalized** 14:23

**finally** 76:4

**financial** 7:6 9:9 10:3 13:19 14:11 15:2,5,6, 12,17,22 16:14 26:6, 22 27:23 30:3,19,23 31:3,9 34:8,25 37:6 39:3 41:18 44:4 45:16 46:23,24 47:11,19 53:20 56:22 61:15 62:17 75:6 80:22 81:2 86:8,25 87:9,17 88:25

**financials** 9:17 16:8 47:25 48:22 50:3,5 74:15 80:17 87:7 88:11

**find** 25:13

**fine** 23:17 91:12

**finish** 7:21,25 73:6 77:8 90:22

**firm** 6:15

**fiscal** 10:23 11:24 20:15 21:9,19 41:19 43:16 51:10 52:21

**focus** 78:11

**focused** 45:19

**follow** 10:4 49:24 56:12

**follow-up** 14:18

**follow-ups** 92:18

**footnote** 36:7

**footnotes** 34:16 77:25

**forgivable** 84:12

**forgive** 80:7 91:18 92:10

**forgiven** 70:11,17 71:13 72:16 73:18 75:12 78:7,14,18,19, 21 79:8 91:3 92:20 93:4

**form** 14:19 15:25 16:16,23 20:4 23:8 24:14 25:24 26:12 32:14,22 33:14 35:16,21 36:4 37:9 39:11 45:4 46:12 53:11 54:7 57:9 60:3, 21 61:23 64:16,22 65:3 66:17 67:24 68:13 69:5 70:3,18 71:2,8,14,20 72:3,11 73:4,13,24 74:13,25 75:15 76:2,11 79:10, 19 80:18 81:7,21 85:21 87:12 90:6,13 91:5 92:24 93:11

**format** 86:13

**forming** 87:24

**forms** 32:12 59:20

**forward** 7:12 21:24

**found** 26:5 58:14

**foundation** 69:12 91:11

**framework** 49:23

**Frank** 13:4 19:8 83:7

**fraud** 27:4

**front** 18:12,15 30:13, 19 35:5 37:21

**fulfill** 50:10,12

**fulfillment** 72:2 73:3 74:6 76:8

**full** 60:15

**fully** 30:10 60:10,19

**function** 80:10

**fund** 88:8,10

**future** 79:17 81:20

### G

**GAAP** 16:2,8,15 29:20,22 34:24 38:7 49:6 50:6 52:3 70:20 89:14

**GAAS** 16:3,9 29:21 49:6,7 87:21 89:14

**gain** 42:22

**Garcia** 42:2,3 56:2

**Garcia's** 42:14

**gave** 78:24

**general** 19:23,24 21:10 44:3 49:9 53:21 65:4,5 82:7,11 87:3

**generally** 8:22,24 9:10,16,18,25 15:23 16:5 22:2 23:10 49:17 87:3 89:11

**give** 6:10 15:21 22:22 50:12 57:20 59:7

**good** 5:8 62:7

**governed** 9:3 86:14 88:16,17

**greatly** 93:16

**ground** 7:19

**group** 6:16

**guess** 20:24 76:18, 24 84:25

**H**

**half** 31:12 63:5

**happen** 59:25

**happened** 78:24

**hard** 30:12 76:19

**HCMLP** 42:21

**HCMSI** 45:19,21 46:4,5 62:24 63:3,25

**hear** 79:12

**hedge** 88:10

**Hendrix** 13:5 83:3,15

**high** 89:11

**Highland** 6:3,24 7:5, 8,10,11 10:2,13 11:8 12:6,9,17 13:12 14:4, 14,22 15:13 16:19,24 22:24 23:11,20,21 31:22 32:18 33:6,10 35:13 39:6 40:9 44:6 51:25 53:14,21 54:19

**55:4** 57:24 59:11,24 63:25 66:21 67:11,19 68:5,8,24 69:17 70:15 73:8,10,16,21 74:3 82:14,19,22 83:17 84:11,21 85:4 86:2,22

**Highland's** 30:23 31:3,8 32:3,20 33:4, 19,24 43:7 46:24 47:19 51:15 56:22 62:3

**Hilda** 42:2,3 85:10

**Hold** 69:7

**hope** 93:20

**I**

**idea** 36:10

**identified** 31:16

**impact** 79:23 91:23 92:5 93:9

**important** 7:20 28:5 86:12

**inaccurate** 37:7

**inaudible** 38:25

**include** 54:22

**included** 22:16 36:17,18 40:17 52:24

**including** 13:15 21:3 65:20

**incorrect** 53:17

**independent** 48:19

**individual** 12:19 45:15 46:16,19 59:3

**individually** 62:19

**industry** 88:22

**influence** 89:17

**inform** 70:22 71:5, 11,17,23 72:8,14,19, 24 73:10,16,21 74:3

**information** 10:19 12:5,9 13:18,22 14:3, 6,9,18 23:5 35:14 36:2 40:8,9 43:18,19

**45:2** 52:12 54:17,18 57:25 59:10 64:18 65:9,23 74:12 77:16 92:21 93:2

**informational** 11:8

**informed** 40:24 55:4 68:3,5 70:5,15 93:7

**inquiry** 64:12,25 65:5,18

**instance** 56:2 78:3,5 85:9

**insurance** 9:13

**integral** 34:8

**intended** 35:19 40:3 43:13 51:23 52:16 54:13

**intent** 44:16 57:7

**interest** 38:21 39:9 61:10 63:3 64:4 65:13,14 67:5,13 89:20

**internal** 49:11

**interrupt** 47:3 61:23

**involved** 65:15 83:21 85:10

**issue** 59:16 81:16

**issued** 40:13,22 48:19,23 54:3 58:18 63:18,19

**item** 36:18 42:20 52:25 62:12 85:13

**items** 22:12,17 23:6 79:7

**J**

**James** 19:8

**January** 5:21,24 6:14,17 67:17 68:6

**John** 30:12,17 55:17 77:2 93:18

**join** 6:16

**joined** 6:13,14

**June** 17:23 19:15

**21:14** 24:18,20,24 25:3 37:3 48:5 49:2 54:3,22 63:18 69:22, 25 71:6,12,18,24 72:9,15,20,25 73:11, 17,22 74:4,9,19 75:9, 21 76:5 79:2

**junior** 83:9

**K**

**key** 89:18

**kind** 57:5

**Klos** 12:25 13:2 83:6, 13,15

**knowing** 80:14

**knowledge** 21:12 29:8 53:13,18 54:21 66:16,21 71:4,10,16, 22 72:7,13,18,23 73:9,14,15,19,20,25 74:2,8

**Kristin** 13:5 83:2,10

**L**

**L.P.** 6:4,25 7:9,11 23:22 31:22

**La** 21:6

**label** 18:5,8

**lack** 13:5 75:17

**language** 78:13

**layout** 42:19

**lead** 30:21 31:2

**leads** 10:24

**learn** 79:22

**learned** 74:9,19 75:9, 21 76:4 77:13 78:6, 20,21 91:16

**leave** 55:12

**ledger** 44:3

**left** 63:9,24

**legal** 60:11 61:21 69:11,14

**legends** 46:17

**lenders** 87:6

**length** 65:8,11

**letter** 16:23 17:13,24 19:13,19,25 20:2,14, 21 21:8 22:16 23:7 48:9,18 50:24

**letters** 16:19 17:4,8, 18

**level** 25:14 89:11

**liability** 64:14

**limit** 77:6

**limitations** 50:8

**limited** 19:23

**link** 46:15

**list** 31:13 43:13

**listed** 61:11

**listing** 44:2

**lists** 68:22 69:16

**litigation** 81:16

**loan** 38:20 60:15 64:9 66:25 67:2 79:24

**loaned** 23:11 64:13

**loans** 45:18 64:7,8, 19 65:2,7,10,19,25 66:5,11,16,23

**long** 10:6

**look-through** 59:4

**looked** 36:19 40:18 48:9 52:25 57:5

**M**

**made** 20:21 21:2 29:18 33:10 44:5 59:24 64:19 65:5 66:5,11,22 67:2,4 68:23 81:17 92:19

**Madeline** 56:3 85:10

**make** 10:18 12:5 13:21 14:13 17:10 18:4,24 64:12,25 65:18 67:10 73:7

86:23 88:19,24

**maker** 46:19 57:22 59:23

**maker's** 57:25

**makers** 23:19 24:12 44:21 58:7 59:11 61:11

**makes** 42:19 45:15 62:18

**management** 6:3,24 7:9,11 14:9 16:23 17:3,7,10,18,23 19:13,21 20:4,13 21:17 22:15,22 23:22 25:16,17 26:7,18 27:5 28:10,19,21 31:22 36:25 37:2,4 40:11 43:21 45:3,5 48:9,18 52:13 53:6,8 60:9,18 66:8,19 80:12 89:18

**management's** 49:3

**manager** 85:7

**managers** 83:13

**March** 63:20

**mark** 55:10

**marked** 17:22,25 30:6 41:4 43:10 44:9 46:17 47:8 55:9

**marking** 47:4

**material** 22:3,13,17, 23 23:6 25:23 26:8, 20,24 27:6,21 28:8 34:25 40:6,23 50:2,3 54:13,23 55:5 61:21 62:20 75:3,4,5 80:25 87:10,25 88:20 89:17

**materiality** 22:21 23:2 25:14 42:24 74:15 80:10 81:13 87:24 88:7 92:6,7

**materially** 57:22

**math** 33:21

**matter** 83:8,11

**means** 25:11 26:15 28:18 29:14,15 38:5, 6 46:2

**meet** 25:14

**meetings** 83:11

**meets** 32:4

**met** 67:23 68:12

**metrics** 88:9

**Michael** 55:12 88:13

**Michael's** 35:24

**middle** 22:7

**million** 40:14 63:5,7, 25 67:2,10 74:22 75:12,23 76:7

**mind** 30:24 62:6 79:6

**mindful** 7:20

**minus** 38:21

**misstatements** 25:13,16 50:2

**moment** 27:14

**money** 23:11

**morning** 5:8

**morphed** 13:23

**Morris** 5:7 18:6 21:6 30:17 47:6 55:11,18 69:6 76:14 77:13 79:10,19 80:18 81:7, 21 85:21 86:4 87:12 89:10 90:6,13 91:5,9 92:16 93:13,16

**Morris'** 78:12 79:4 84:7

**move** 30:3

**mutual** 88:10

---

**N**

**national** 50:22

**nature** 83:2

**necessarily** 27:3

**needed** 13:19 88:24

**neutrality** 25:19 88:3

**non-affiliated** 90:11

**non-related-party** 90:3

**noon** 76:22

**note** 34:22 35:7,15, 19 36:13 39:3,6,25 51:18 52:8,15,19 54:6,9,10,18,22 55:6 60:8,9,11 63:8,13,17, 24 67:9,13 70:7 77:4 78:2,3 85:14 90:18, 21

**notes** 15:6,12,17 23:13,15,16,20 24:7, 11,23 25:3 31:16,23, 25 32:9,13,19 33:11, 17,23 34:7 35:8 36:3, 9,20 37:8,15,16 38:2, 6,7 39:7,10,19 40:12, 13,22 41:8 43:14 44:22 45:12,15 46:5, 19 51:5,9,13,23 52:9 53:2,16,22,24 54:5, 12 55:22 57:6,20 58:10,11,17 59:8,12, 24 60:19 63:4,6 65:12,17 67:22 68:11,22 69:3,18,21, 25 70:10,16,24 71:6, 12,18,25 72:9,15,20 73:2,11,17,22 74:5, 10,20 75:10,22,23 76:5 78:7 79:8 80:8 81:16,18 84:11 85:5 86:2 89:23 90:2,3,4, 10,12 91:2,18 92:10, 20 93:4,10

**nuances** 88:2

**number** 24:4,6,22 25:8,10,21 26:10,14 27:10,19 28:14,22 45:12,18 51:18 66:25 67:9,14 68:16

---

**O**

**objecting** 61:23

**objection** 14:19 15:25 16:16 23:8 24:14 25:24 26:12 32:22 33:14 35:16, 21,24 36:4 37:9 39:11 45:4 46:12 53:11 54:7 57:9 60:3, 21 64:16,22 65:3 66:2,17 67:24 68:13

69:5,7,8 70:3,18 71:2,8,14,20 72:3,11 73:4,13,24 74:13,25 75:15 76:2,11 79:10, 19 80:18 81:7,21 85:21 86:4 87:12 90:6,13 91:5,8 92:24 93:11

**obligation** 67:21 70:22 88:3

**obligations** 23:19 35:19 40:17 52:16 59:13,23 64:21 68:10 71:24 72:25 74:4

**obtain** 13:18,22 58:20 62:18

**obtained** 61:13

**occur** 80:24 81:6,20, 25 92:3

**occurred** 29:16 40:6 78:25 79:7 80:23

**occurring** 22:4

**October** 11:22 64:2

**office** 50:22

**omitted** 55:6

**one-** 14:25

**opinion** 9:6 14:25 22:5 29:17 44:24,25 49:8,20,21 50:13,14, 17,20,24 54:3 59:17, 20 86:21

**opportunity** 15:15 17:9

**oral** 67:18 68:7 69:2, 20,24 70:6

**order** 15:21 16:13 17:14 18:21 30:10 66:12 91:25

**ordinary** 20:6 43:2,6 56:17,21

**ourself** 44:17

**outlines** 10:9

**outstanding** 37:14 43:15 74:21 75:11,22 76:6

**oversee** 47:10,18

**overseeing** 42:14

**overseen** 6:2

**owed** 52:17 62:4

**owes** 69:17

**owing** 36:14,23 52:20 53:9,15 68:11

**ownership** 28:10 89:19

---

**P**

**P-A-C-O-C-H-A** 56:6

**Pacocha** 56:4

**pages** 15:11

**paid** 63:25

**paragraph** 20:9 22:8 37:11,22,23,25 38:2

**part** 10:16 13:14 17:2 26:6 34:8 56:8 57:13 59:19 62:13 81:23 83:17 86:6,20 88:21

**parties** 27:21 28:20 51:25 65:14

**partly** 45:5

**partner** 5:18,19,22 6:8 7:4 12:16 19:23, 24 49:9 50:17,18 87:3

**partners** 87:4

**partnership** 40:13 87:2

**partnership's** 37:14

**party** 19:21 23:16,19 24:7,11,23 28:6,7,25 34:19,23 59:6 89:16 90:8

**patience** 93:17

**pay** 44:23 57:7,13 58:2,8 60:13 66:6,12 67:12,13,21 68:10

**payment** 67:4,10

**payments** 38:21 51:8 58:10 64:10

66:6

**PCAOB** 86:16 87:21 88:4,18 89:2,4

**Peet** 5:3,10

**people** 13:10,16 19:18 82:14,18,23 83:9 84:4

**percent** 33:24 51:14 78:17,18

**perform** 10:10 11:13 50:6,9 86:18 87:20

**performed** 9:16 42:22 88:17

**period** 11:16 40:19 46:25 47:12,19

**periodic** 83:11

**person** 83:4 85:9

**personal** 17:2

**personally** 6:23 16:22 30:21 31:2 50:23

**perspective** 8:17 17:6 26:16 28:18 29:14

**pertains** 41:7

**phase** 11:6,10,11,14 13:13,15 49:18

**phases** 12:18

**phrase** 11:5 41:16

**piece** 46:4

**place** 79:17

**planning** 10:7,11 11:9,10,12,18,23 12:4,18

**plural** 37:13

**point** 50:9 76:25 79:9 87:25

**points** 13:3

**portion** 30:9 32:10 35:18 39:3,6 52:15 54:5 64:3,4 67:11,12

**portions** 18:20

**possibility** 93:3

**potential** 26:5 80:7, 11 81:12,24 85:5 92:4,9

**potentially** 74:14 81:19 84:12 86:3 88:24 91:3,18

**practice** 9:19 21:17

**practices** 9:21

**preparation** 31:8 43:7 45:18 46:2,3 47:10,14,24

**prepare** 13:19 14:10 42:25 43:5 47:15

**prepared** 33:6 35:13 41:13,18,22,24,25 55:25 56:3,17,21

**prepares** 20:5

**presented** 9:18

**pretty** 10:6 82:11

**previous** 87:23

**Previously** 14:4

**Price** 13:11

**Pricewaterhouse opers** 5:15,17,20,23 6:7 13:18 14:8,17

**Pricewaterhouseco opers'** 6:19 8:16

**primary** 12:17,20 13:3

**principal** 39:9 61:10 63:3 64:3 67:5,12 74:21 75:11,22 76:6

**principle** 29:21

**prior** 6:7 14:23 22:4,5 37:3,5 51:8,10 71:5, 11,17,23 72:8,14,19, 24 73:11,17,22 74:4

**private** 88:13,14

**probability** 80:11 81:6 92:2,4

**problem** 77:4,6

**procedure** 42:21

**procedures** 9:15 10:10 11:12 50:7 86:17

**process** 9:25 10:4,6, 14,23 31:7 47:23 49:12,16 50:15,22 56:10,12 58:6 59:25 86:6

**produce** 44:3

**produced** 18:3

**professional** 9:5 50:10 81:23

**promissory** 23:13, 15 39:7 40:13 63:4,6, 8,12,13,17 67:22 68:11 69:3,18,21,25 70:6 81:15 93:4,10

**promulgated** 87:21

**properly** 27:22

**provide** 8:18 9:8 14:9,21 15:9 16:13 23:5 51:24 57:24 59:7

**provided** 16:24 19:14 40:9 45:2 52:12 54:19 59:10 65:24 79:14

**providers** 89:22

**proxy** 38:10,24

**public** 58:14,15,19, 22 86:15,16 88:13

**pull** 48:10

**purpose** 8:17 9:8 17:7 36:7 42:16,18 44:12,14 59:5 62:8, 11 65:2,19,25 80:20

**purposes** 12:17 13:11 23:18

**put** 17:21 18:15,22 25:14 30:4 41:5

**Pwc** 6:13 9:25 10:23 12:5,9 14:10,13,21 15:13,15,19,20 16:12,18,24 17:14,17 19:14 20:5 21:17,23 23:4 25:20 26:2,9,24 27:7,9,25 29:3,23

33:16 37:2,4 39:18 40:23 42:4,25 43:5, 19 44:6,20,25 46:8, 11 47:12 49:11 53:15 54:2 55:4 56:12 57:5 58:6,15 59:10,11,15, 22 61:18,25 64:12, 18,25 65:18 66:4 68:2,4 69:24 70:14, 22 71:5,11,17,23 72:8,14,19,24 73:10, 16,21 74:3,9,11,19, 22 75:9,12,20,24 76:4,9 77:15 78:6,7 79:15 80:2,6 81:17 82:15 83:17 84:4,9, 21 85:3,25 86:7,23 87:10,19 90:10,25 91:16,19 92:9,19 93:2,7

**PWC's** 12:10 17:6 22:25 24:9 26:15 28:17 29:13 30:21 31:2 37:5 41:6 47:18 54:21 55:21 56:17,21 65:24 88:21

---

## Q

**qualitative** 57:19

**question** 7:24 8:11 16:11 18:23 30:11,25 33:17 35:23 44:18 45:20,22 47:17 60:8 62:6,13 69:15 70:23 74:16 76:19 78:9,23 79:11,20 80:19 81:8, 22 83:2 84:25 85:22 87:13,24 90:7,14 91:2,6,13

**questions** 7:21 15:20 16:12 18:17 24:2 56:25 72:5 73:7 75:20 76:15 77:10, 12,14 78:4,5,12 79:4 82:7,9,12 84:7,9 90:23 92:14 93:14

**quickly** 55:12

**quote** 34:7,9 37:13 89:14

---

## R

**raise** 14:5

**rate** 65:13,14

**reach** 62:2

**read** 27:13 29:11 63:15

**reader** 34:13 80:21

**reading** 34:13

**reason** 33:16 39:18 54:4

**reasonable** 8:18 9:9 15:21 16:14 22:19 32:16 38:10,14,24 50:5 57:20 59:7 65:7, 10,13

**reasonableness** 61:19,20

**reasons** 75:16

**recall** 6:25 12:15,20 23:3 31:6 47:22 48:10 65:9 66:8,24 83:22

**receivable** 37:15,16 44:15 53:24 68:23

**receivables** 23:20, 21 32:13

**receive** 16:18

**recollection** 18:22

**record** 5:9 18:5 33:11 43:23 77:3

**recorded** 26:22 38:8 60:15 62:17

**recoverability** 32:17 57:16

**recoverable** 59:8 60:10,19

**refer** 7:10

**reference** 20:10 34:6

**referenced** 46:16

**referred** 70:10

**referring** 8:21 79:6

**reflect** 46:8,10

**reflected** 62:9

**refresh** 18:22

**related** 27:21 28:7, 20,24 34:19,23 51:25 57:12,25 64:20 65:12 84:2

**related-party** 35:2 51:19 89:7,12,13,16 90:2,4,12

**relates** 31:19 45:24 51:19 55:22 58:9

**relating** 83:25

**relationships** 35:2

**relevance** 87:15

**relevant** 10:9 15:21 45:17 46:13 78:3 87:9,17,19

**reliability** 62:3

**relied** 17:18 86:17

**relies** 86:14

**relieved** 67:21 68:9

**rely** 14:9 23:4 26:9 27:5,7,9 28:10 29:3, 23 59:15

**relying** 86:8,24 87:7, 9

**remember** 77:16,19 78:6,9 84:8,13 89:8

**remind** 30:8

**rep** 19:25

**repay** 44:19 57:23 58:17,23 59:12,23 60:8

**repeating** 30:24 62:6

**rephrase** 16:11

**report** 42:10 48:18 49:5,9 56:7 86:13

**reported** 27:22

**reporter** 8:5

**reports** 14:22,24 42:12

**represent** 22:22

**representation** 16:18,23 17:4,7,13, 18,24 19:13 20:5,14 22:16 24:3,6,22 25:8, 10,12,21 26:3,10,14, 25 27:9,12,19 28:2, 14,18,22 29:4,20,24 48:9,18 49:4

**representations** 17:10 20:20 21:2,13, 18,24 22:9 24:2,17 48:25

**represented** 24:10, 11 25:22 27:20 28:23 60:18

**representing** 26:19 27:7

**request** 14:5 18:19 26:2 27:25

**requests** 10:18 11:8 12:5 14:18

**require** 21:17,23 26:7 48:15,17 54:14 75:7

**required** 17:14 29:17,20 34:15 48:24 49:6 50:3 52:3 54:24 74:11,23 75:13,24 76:9 77:15,21 78:8 79:2,5,16

**requirement** 34:24

**requirements** 89:3

**requires** 40:7 49:7

**reserve** 77:7

**respect** 46:6 65:22 72:6 75:17 81:15 82:24 92:9

**response** 12:8 79:4

**responsibilities** 17:3

**responsibility** 15:9 71:3 81:24 91:10

**responsible** 19:21 42:13

**rest** 30:15 46:4

**restate** 47:16

**resulted** 78:22

**results** 45:7 60:14,23

**retain** 41:12

**review** 12:10 14:22 15:16 17:3 18:13,21 85:7,11 87:17

**reviewed** 46:3

**reviewing** 86:8,24 87:8

**rights** 77:7

**risk** 44:9,13 57:2,12

**road** 91:17

**room** 18:11

**routine** 83:8,10

**rules** 7:19 9:2,4 70:21 86:20 89:4

---

**S**

**save** 11:16

**scope** 17:11 50:8 86:18

**screen** 17:21 18:16 30:16 31:13 41:6

**scroll** 20:18,24 34:3 35:4 37:19 39:23 45:11 63:12 67:8

**section** 34:19 35:14 36:2,13 37:7 38:2 39:24 40:3,12 51:23 52:8,19 54:12,18 57:2 58:24

**secure** 13:24 14:5,6

**send** 11:8,9

**senior** 42:7,8

**sense** 10:18 19:22 22:23 86:19

**sentence** 21:10 24:22 29:7,14,24 37:12,22 38:5,6,23

**separate** 21:2

**September** 11:22

**series** 20:20

**service** 89:22

**set** 9:2 35:14 43:19 44:4,22 46:19 49:5 52:19 53:16 54:17 59:13,15 73:7

**sets** 36:13 86:19

**setting** 11:12

**share** 10:12,15

**sheet** 20:10,14 24:13 29:16 32:11,21 33:13,22 36:9,19 40:7,18 42:20 51:3 53:2 61:11 75:5,8

**sheets** 32:3 33:4,19

**show** 60:12 63:2

**shows** 33:22 60:7 63:23

**side** 77:2

**sign** 9:6 19:25

**sign-off** 17:14,19 49:13 59:5 85:12

**signature** 29:7 50:25

**signatures** 19:5,8

**signed** 14:25 19:18 29:4,25

**significant** 40:6 89:20

**signing** 26:10 27:10 37:5

**single** 10:16

**singular** 37:13

**sir** 30:19 37:24 43:11 69:15 76:15 92:17

**sister** 67:18 68:7

**site** 13:24,25 14:5,7, 13

**slide** 44:22

**slightly** 11:20

**sort** 9:4 12:21 13:6 26:4 58:21 77:5 81:17 90:24,25 91:19

**South** 6:15

**specific** 7:8 28:7 66:9,24 80:15 85:23 87:5

**specifically** 28:6 41:17 58:12 59:4 83:25

**speed** 82:8

**spell** 56:5

**spend** 11:16

**stage** 10:11 11:2,18 12:4

**stand-alone** 34:14

**standard** 20:7 21:16

**standards** 8:20,21, 23,25 9:5,11,17,20 10:9 15:24 16:6 22:3 26:7 27:2 48:23 86:16 87:22 88:18,19 89:2

**start** 10:25 77:11

**started** 7:18

**starting** 19:20 38:3

**starts** 10:6

**state** 5:8

**stated** 25:2 53:21

**statement** 45:16 87:9,17

**statements** 7:6 9:10 10:3 13:20 14:11 15:2,5,7,12,17,22 16:15 26:6,23 27:23 30:4,19,23 31:4,9 34:9,25 37:6 39:4 41:19 44:4 46:23,24 47:11,19 53:20 56:22 61:15 62:17 75:6 80:22 81:2 86:9,25 88:25

**stating** 38:23

**status** 83:11

**stems** 60:8

**step** 12:13

**steps** 58:6