# Highland Capital Management, L.P.
## Notes to Consolidated Financial Statements
**December 31, 2009**

Consolidated Investment Funds are exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower.

The current economic recession has severely disrupted the market for most high-yield bonds and loans and may continue to have an adverse effect on the value of such instruments.  It is also probable that the economic downturn could adversely affect the ability of the issuers of such securities to repay principal and interest thereon and increase the incidence of default for such securities.

### CLO Equity Investments
The Partnership and its Consolidated Investment Funds may invest in CLO equity that are not rated by various credit rating agencies and are generally considered to be speculative with respect to the issuer's ability to repay principal and interest.  The yields and prices of these non-rated CLO equity tranches are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.  In addition, certain of the Consolidated Investment Funds' investments have resale or transfer restrictions that further limit their liquidity.  Given a backdrop of deteriorating general economic conditions, the Partnership and its consolidated investment funds are exposed to the potential non-payment of principal and interest from their CLO equity investments.  As of December 31, 2009, 2 of the 29 CLO's managed by the Partnership paid interest to the equity holders on their last payment date.

### Distressed Investments
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Investment Funds invest have been issued by distressed companies in an unstable financial condition.  These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions.

### Credit Default Swaps
Credit default swaps involve greater risks than if the Partnership or its Consolidated Investment Funds had shorted the reference obligations directly.  In addition to the market risk discussed above, credit default swaps are subject to liquidity risk and credit risk.  If a credit event occurs, the value of the reference obligation received by the Partnership or its Consolidated Investment Funds, couple with the periodic payments previously received, may be less than the full notional amount it pays to the buyer, resulting in loss of value.

### Limited Diversification
The Investment Manager attempts to diversify the Consolidated Investment Funds' investments.  However, the Consolidated Investment Funds' portfolio could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Investment Funds.  In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments.  This limited diversity could expose the Consolidated Investment Funds to losses that are disproportionate to market movements as a whole.

### Custody Risk
The clearing operations for the Partnership and its Consolidated Investment Funds are provided by major financial institutions.  In addition, all of the Partnership and its Consolidated Investment Funds' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges.  The Partnership or its Consolidated Investment Funds may lose all or a portion of the assets held by these banks or

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Investment Funds' might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Leverage Risk**
The Consolidated Investment Funds may borrow funds from brokers, banks and other lenders to finance its trading operations.  The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Investment Funds' investment portfolio may be subject.  The use of margin and short-term borrowings creates several risks for the Consolidated Investment Funds. If the value of the Consolidated Investment Funds' securities fall below the margin level required by a counterparty, additional margin deposits are required.  If the Consolidated Investment Funds are unable to satisfy a margin call, the counterparty could liquidate the position in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Investment Funds to incur significant losses.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Investment Funds' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Investment Funds.  In addition, because the use of leverage allows the Consolidated Investment Funds to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Investment Funds may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Investment Funds' assets, the Consolidated Investment Funds may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements.  As a result, the Consolidated Investment Funds may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Investment Funds have the ability to apply discretionary margin, haircut, financing and collateral valuation policies.  Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar.  The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2009, the Consolidated Investment Funds' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Wind-Down Risk**
The ultimate proceeds that the Consolidated Investment Funds' are able to realize on the sale of its investments will directly affect the amounts that the investors in the Feeder Funds are able to redeem in connection with the wind down process.  These amounts may differ materially from the partners' capital balances as of December 31, 2009.

**Litigation Risk**

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
## Notes to Consolidated Financial Statements
### December 31, 2009

The Partnership and its Consolidated Investment Funds are periodically subject to legal actions arising from the ordinary course of business.  In addition, certain of the Consolidated Investment Funds' Feeder Fund investors have filed lawsuits after receiving notification of the decision to wind-down certain Consolidated Investment Funds' investment portfolios.  Refer to Note 16 for a discussion of the open litigation.

9.   **Related Party Transactions**

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2009, approximately $9.3 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other current assets* in the accompanying consolidated balance sheet.

**Long Term Incentive Plan and Intercompany Loan Payable to Highland Capital Management Services, Inc. ("HCMSI")**
Effective January 1, 2001, all of the Partnership's employees were transferred to HCMSI, which provides personnel management and consulting services to the Partnership.  The Partnership and HCMSI entered into a management agreement whereby the Partnership compensated HCMSI for its employee expenses plus a consulting services fee.  As of January 1, 2005, there were no further transactions with HCMSI as all employees were transferred to the Partnership.

Effective January 1, 2001, HCMSI approved a long-term incentive plan ("the LTIP") for select employees who are eligible to receive Long-Term Incentive Units ("the Units") under the LTIP.  The number of Units authorized under the LTIP is 30,000,000 and a majority of the Units granted vest 40% during the grant year and 30% for each of the two years thereafter, expiring 10 years after such grant date, unless different terms are agreed upon between the Plan Administrator and the employee.  The fair value of the Units are based upon the fair value of the Partnership, as determined in good faith, by James Dondero, the Plan Administrator and the sole shareholder of the general partner and a limited partner of the Partnership.  The LTIP was transferred to the Partnership from HCMSI on January 1, 2005.

The Units are exercisable at the discretion of the Plan Administrator, or upon a triggering event defined as the earlier of the following events:

- Change in control

- Initial public offering

- Participant's voluntary or involuntary termination due to death, disability, retirement, or hardship

- Participant's voluntary or involuntary termination other than due to death, disability, retirement, hardship, or cause is exercisable to the extent the Participant is entitled to only 80% of the vested shares.

A total of 2,479,281 Units are outstanding as of December 31, 2009 under the LTIP.  During the year ended December 31, 2009, the liability under the LTIP decreased by approximately $4.1 million, which is included in *Compensation and benefits* in the consolidated statement of income.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

The total balance payable to HCMSI was approximately $2.6 million as of December 31, 2009, which is related to the LTIP accrual.

Effective December 31, 2004, all of the employees at HCMSI were transferred to the Partnership, and the management agreement between the Partnership and HCMSI was terminated as to the provision of future services.  However, all of the outstanding and unfunded obligations of the Partnership to HCMSI as of December 31, 2004, as well as any additional obligations that may arise in relation to these amounts, will continue to be due and payable to HCMSI until satisfied in accordance with the provisions of the agreements in place.

**Accounts Held with Related Party**
During the year the Partnership and its subsidiaries maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control.  As of December 31, 2009, balances in the accounts were approximately $52.2 million.

HIGHLY CONFIDENTIAL

D-CNL000290

**Appx. 00988**

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

**Controlling Positions**

Various members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests. Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable. Any director's fees received by the Partnership for these services as directors are paid to and retained by the Partnership. As of December 31, 2009, the Partnership and its subsidiaries held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| American Banknote Corporation | Common Equity | $ 25,564 |
| Biosyntech | Bond | 2,963 |
| Biosyntech | Options | 1,529 |
| Biosyntech | Common Equity | 434 |
| Blackwell BMC, LLC | Term Loan | 3,201 |
| Broadstripe Holdings, LLC | Loan Revolver | 2,363 |
| Broadstripe Holdings, LLC | Term Loan - First Lien | 8,857 |
| Broadstripe Holdings, LLC | Term Loan - Second Lien | 4,265 |
| Complete Genomics | Preferred Equity | 8,497 |
| Consolidated Restaurant Companies, Inc. | Term Loan | 20,263 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 48,205 |
| Cornerstone Healthcare Group Holding, Inc. | Term Loan | 17,031 |
| Cornerstone Healthcare Group Holding, Inc. | Loan - Second Lien | 4,537 |
| Decision One Corporation | Term Loan | 981 |
| Decision One Corporation | Term Loan B | 1,578 |
| Epocal, Inc. | Preferred Equity | 68,613 |
| Ginn-LA Resorts Holdings, LLC | Term Loan | 1,027 |
| Highland Special Situations Fund | Mutual Fund | 2,952 |
| Highland Long/Short Equity Fund | Mutual Fund | 225 |
| Highland Healthcare Fund | Mutual Fund | 3,571 |
| Highland Credit Strategies Fund | Closed-End Mutual Fund | 4,012 |
| Home Interiors & Gifts, Inc. | Proof of Claims | 210 |
| Marcal Paper Mills, LLC | Common Equity | 8 |
| Nex-Tech Aerospace Holdings, Inc. | Common Equity | 134 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 480 |
| Safety-Kleen Inc. | Common Equity | 115,471 |
| Solstice Neurosciences, Inc. | Preferred Equity | 14,686 |
| Terrestar | Preferred Equity | 1,772 |
| Trussway Industries, Inc. | Common Equity | 15,993 |

During the year ended December 31, 2009, the Partnership earned approximately $0.2 million of income from those entities where members of management serve as members of the Board of Directors. The amount is included in *Other income* in the consolidated statement of income.

**Investment in Affiliated Loans**

During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank, SSB, an affiliate of the Partnership, was the agent bank. Interest earned on the loans during the year was approximately $16.3 million. At December 31, 2009, these subsidiaries

32

D-CNL000291
Appx. 00989

# Highland Capital Management, L.P.
## Notes to Consolidated Financial Statements
### December 31, 2009

were invested in NexBank, SSB agented loans with commitments and market values totaling approximately $323.6 million and $85.1 million, respectively.

**Affiliated Transactions**

On August 20, 2008, the Partnership issued a promissory note in the amount of $330,000 to an employee of the Partnership. The note accrues interest at a rate of LIBOR plus 1.75%. The note is payable in one lump sum on the earlier of August 20, 2015 or an event of acceleration. The note has specific forgiveness provisions of principal and interest prior to maturity if certain milestone dates are obtained. As of December 31, 2009, the principal amount on the promissory note was $259,286 with interest accrued of approximately $2,000.

On August 1, 2008, the Partnership issued a promissory note in the amount of $500,000 to an employee of a subsidiary. The note accrues interest at a rate of LIBOR plus 1.75%, compounded quarterly. The note is payable in one lump sum on the earlier of August 1, 2011 or an event of acceleration. As of December 31, 2009, the principal amount on the promissory note was $500,000 with interest accrued of approximately $20,000.

On October 20, 2008, the Partnership received a Highland Financial Partners, L.P. ("HFP") senior secured note in the amount of $22.3 million from CDO Master Fund. The note was transferred to the Partnership to satisfy a prior obligation. The Partnership received assets from HFP of approximately $7.4 million on March, 26, 2009 for satisfaction of the note.

On September 26, 2008, HFP issued $316 million of senior secured notes to the Consolidated Investment Funds in exchange for an interest in certain assets which included collateralized loan obligation securities. Due to a lack of a transfer of control caused by certain restrictive covenants associated with the exchange, these assets continue to be recognized on the Consolidated Statement of Assets, Liabilities and Partners' Capital of the Consolidated Investment Funds. Upon full payment of the outstanding principal of the senior secured notes, the restrictive covenants of the assets will be satisfied and HFP will have unencumbered interests in the assets. The Consolidated Investment Funds have recorded a liability to account for the future release of the assets, which is classified on their balance sheets as *Obligation to return collateral*. The Consolidated Investments Funds elected to apply the fair value option prescribed by current accounting guidance when they first recognized the liability, which resulted in the liability being carried at the same value as the assets in aggregate. Accordingly, the change in the fair value of the liability was recognized in the Consolidated Statement of Operations as an unrealized gain.

On March 20, 2009, the Partnership and its Consolidated Investment Funds agreed to terminate the senior secured notes that were issued by HFP. As a result, the Consolidated Investment Funds have been relieved of their obligation to transfer the underlying assets to HFP.

In accordance with the terms of a Master Indenture Agreement (the "Indenture") dated November 2, 2006, the Credit Opportunities Master acquired 250,000 Preferred Shares of Highland Credit Opportunities CDO, Ltd (the "CDO"). The Indenture requires Credit Opportunities Master to hold, directly or indirectly, more than 99% of the CDO's outstanding Preferred Shares at all times. As of December 31, 2009, the Credit Opportunities Master held 350,000 Preferred Shares and was the sole beneficial preferred shareholder.

The CDO invests primarily in floating rate syndicated bank loans, fixed income securities, and equity investments. These investments were purchased with funds the CDO received from the issuance of rated floating rate notes and Credit Opportunities Master's purchase of the Preferred Shares. Credit Opportunities Master is the sole beneficiary of all residual income from the CDO's portfolio. Although the Preferred Shares do not have a voting interest in the CDO, they carry certain rights. Specifically, they are entitled to receive quarterly preferential dividends, without requiring any declaration by the Directors, from the date they were issued until they are redeemed.

33

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

The Investment Manager serves as the Collateral Manager for the CDO but does not receive any fees for its services to the CDO.

During the fourth quarter of 2008, the CDO failed to meet certain over-collateralization tests set forth in the First Supplement to the Indenture dated November 2, 2006. This breach would have given the CDO's Majority of Controlling Debt Class the option to accelerate repayment of the CDO's outstanding debt or initiate a liquidation of its assets. To protect the value of its investment in the CDO, Credit Opportunities Master entered into a forbearance agreement whereby the Majority Controlling Class of the CDO's note holders waived the breach and agreed not to exercise the rights discussed above. The Majority Controlling Class also agreed to waive any future events of default resulting from the CDO's failure to meet the overcollateralization tests through December 31, 2011. In return, the CDO agreed not make any preferred dividend payments to Credit Opportunities Master until the over-collateralization tests exceed certain thresholds.

Credit Opportunities Master paid certain expenses related to the forbearance agreement, which have been recorded as an increase to the cost basis of its investment in the CDO's Preferred Shares. Credit Opportunities Master has also committed to pay certain expenses in 2010 and 2011.

The Consolidated Investment Funds periodically enter into transactions to buy or sell securities with affiliated entities.  During the year ended December 31, 2009, the Consolidated Investment Funds purchased approximately $10.8 million of securities from affiliated entities and sold approximately $37.1 million of securities to affiliated entities, which generated net losses of approximately $8.7 million.

**Services Performed by an Affiliate**
In March 2007, Highland Capital of New York, L.P., a New York limited partnership ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf.  For the year ended December 31, 2009, total marketing fee expense charged to the Partnership by Highland New York was approximately $3.4 million and as of December 31, 2009, amounts owed to Highland New York for services rendered was approximately $1.2 million.

**Intercompany and Affiliate Balances**
During 2008, the Partnership and affiliates engaged in a series of short-term, non-interest bearing transactions.  As part of the satisfaction of the outstanding affiliated balances, approximately $14.4 million of assets were transferred to the affiliates during 2009.  Additionally, $12.6 million of the remaining balance was converted to equity in the Partnership during 2009.

10. **Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

final outcome will not have a materially adverse effect on the Partnership's consolidated balance sheet, consolidated statement of income, or its liquidity.  See Note 16.

**Warehouse Guarantee**
On July 6, 2007, the Partnership was a party to a warehouse agreement as a first loss guarantor. HCM Trident entered into the warehouse agreement and is entitled to the positive net carry or is required to pay the negative net carry.  The Partnership guaranteed the payment of the negative net carry owed by HCM Trident.  This guarantee was capped at 25% of the initial purchase price of the warehouse assets of $25.7 million, or approximately $6.4 million plus accrued interest.  The Partnership paid $3.8 million to HCM Trident as a deposit for the first loss guarantee.

On July 14, 2008, the warehouse agreement was amended to reflect the Partnership guaranteeing 100% of the negative net carry.  The Partnership posted an additional $1.5 million, for a total guarantee deposit on hand of $3.1 million, net of any prior loss amounts.

On November 2, 2008, the warehouse agreement was amended to reflect the Partnership guaranteeing any credit facility amortization payments of principal and interest on HCM Trident's behalf.  On June 15, 2009, the warehouse agreement was paid in full and the asset in the warehouse was transferred to the Partnership.

**Operating Leases**
Future minimum lease payments under operating lease commitments of the Partnership and its consolidated entities with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

| **Years Ending December 31,** | | |
|---|---|---|
| 2010 | $ | 2,071 |
| 2011 | | 1,804 |
| Thereafter | | - |
| | $ | 3,875 |

Total rental expense of the Partnership and its consolidated entities for operating leases was approximately $4.4 million for the year ended December 31, 2009.

**Loan Commitments**
Loan and other participation interests purchased by the Consolidated Investment Funds such as bank debt and trade claims may include accompanying letters of credit, revolving credit arrangements or other financing commitments obligating the Consolidated Investment Funds to advance additional amounts on demand.  At December 31, 2009, the Consolidated Investment Funds had outstanding loan commitments of approximately $30.5 million.  The total amount of outstanding commitments does not necessarily reflect the actual future cash requirements, as commitments may expire unused.

11.   **Postretirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  Therefore, no new participants shall enter the plan after 2008 and

HIGHLY CONFIDENTIAL

D-CNL000294

**Appx. 00992**

**Highland Capital Management, L.P.**
Notes to Consolidated Financial Statements
December 31, 2009

no new benefits shall accrue under the plan after 2008.  The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2009 are reconciled in the tables below.

*(in thousands)*

| Change in projected benefit obligation | | 2009 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 3,543 |
| Service cost | | - |
| Interest cost | | 199 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 630 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (956) |
| Benefit obligation at end of year | $ | 3,416 |

| Change in plan assets | | 2009 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 1,146 |
| Actual return on plan assets | | 457 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | 2,966 |
| Plan participants' contributions | | - |
| Benefits paid | | (956) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 3,613 |

| Reconciliation of Funded Status | | 2009 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 3,416 |
| Projected benefit obligation at end of year | | 3,416 |
| Fair value of assets at end of year | | 3,613 |
| Funded status at end of year | $ | 197 |

The Partnership does not expect to contribute to the plan during 2010.

HIGHLY CONFIDENTIAL

D-CNL000295

Appx. 00993

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2009:

| | |
|---|---|
| Discount rate | 6.10% |
| Rate of compensation increase | N/A |

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2009:

| | |
|---|---|
| Discount rate | 6.30% |
| Expected long-term return on plan assets | 6.30% |
| Rate of compensation increase | N/A |

As of December 31, 2009, approximately $0.6 million of the plan assets were categorized as Level 3.

12. **Goodwill and Other Intangible Assets**

Below is a summary of the Partnership's goodwill and other intangible assets as of December 31, 2009:

| (in thousands) | | Carrying Value |
|---|---|---|
| Highland Floating Rate Fund | $ | 12,672 |
| Highland Floating Rate Advantage Fund | | 11,328 |
| Goodwill for Highland Europe | | 8,020 |
| | $ | 32,020 |

On April 9, 2004, the Partnership purchased the management agreements Highland Floating Rate Fund (the "Floating Rate Fund") and Highland Floating Rate Advantage Fund (the "Advantage Fund"). The combined purchase price for the above agreements was $24.0 million. The purchase price was allocated among the Purchased Funds pro-rata based on the approximate combined total managed assets of the funds as of the date of purchase. As a result, $12.7 million of the purchase price was allocated to the Floating Rate Fund and $11.3 million was allocated to the Advantage Fund.

The Partnership performs an impairment test as required by U.S. GAAP on a yearly basis. The Partnership's management analyzes market multiples on retail asset managers within the industry as of December 31, 2009 to determine fair value of these assets. The Partnership has determined that no impairment charge is necessary for the current year.

13. **Lehman Claim**

On October 3, 2008, Lehman Brothers Special Financing Inc. (U.A.) ("LBSF"), an entity underlying the Consolidated Investment Fund's North American OTC derivative relationship with Lehman Brothers, filed for Chapter 11 bankruptcy.

The Consolidated Investment Fund's legal right with respect to these assets and the probability of their return is currently unclear. The unwinding of LBSF is described as large and exceptionally complex and may take years to complete. The Consolidated Investment Fund's expected losses of approximately $4.7 million relating to LBSI's bankruptcy are recorded as a component of the net

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

change in unrealized depreciation on investments and swap contracts on the Consolidated Statement of Operations. The current value assigned to the Consolidated Investment Fund's claim on LBSF of $13 million has been determined by the Investment Manager in good faith based on the information currently available and does not necessarily represent the amount that may ultimately be realized. This value is included in the investments balance on the Consolidate Statement of Assets, Liabilities and Partners' Capital.

**14.    Reverse Repurchase Agreements**

Crusader Master and Credit Strategies Master are parties to collateralized financing transactions consisting of securities sold under agreements to repurchase. As of December 31, 2009, Crusader Master and Credit Strategies Master held high yield corporate bonds and equities with a fair value of $77.2 million under reverse repurchase agreements. The gross amount payable to the counterparty (including accrued interest) was approximately $44.4 million and is recorded as a component of due to brokers in the Consolidated Statement of Assets, Liabilities and Partners' Capital.

**15.    Income Taxes**

The Partnership

For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2009, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2005 forward (with limited exceptions).

The Partnership adopted the authoritative guidance on accounting for and disclosure of uncertainty in tax positions on January 1, 2009, which required the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2009.

Crusader Master

Crusader Master is an exempted limited partnership organized in Bermuda. Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Crusader Master. Crusader Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Crusader Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Crusader Master's net taxable income.

Since Crusader Master trades investments for its own account, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The General Partner intends to conduct Crusader Master's business in

38

D-CNL000297

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

such a way that it does not constitute a U.S. trade or business or create a taxable presence in any of the jurisdictions in which the Investment Manager has offices, including the United Kingdom.

Dividends as well as certain interest and other income received by Crusader Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles.  Interest, dividend and other income realized by Crusader Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Crusader Master adopted the authoritative guidance on accounting for and disclosure of uncertainty in tax positions on January 1, 2009, which required management to determine whether a tax position of Crusader Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. As a result of adopting this guidance, management has established a reserve of approximately $9.8 million for uncertain tax positions, which includes approximately $0.5 million of interest and $2.3 million of penalties. Of this amount, approximately $1.3 million related to the current year and was recorded as a tax expense in Statement of Operations.  The remaining $8.5 million related to prior years and was recorded as an adjustment to the beginning partners' capital available for distribution as of January 1, 2009.  Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2009.

Crusader Master files tax returns as prescribed the tax laws of the jurisdictions in which it operates. In the normal course of business, Crusader Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2009, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2006 forward.

A wholly owned corporation of Crusader Master has incurred capital losses on the sale of investments that exceed the amount of capital gains it has earned.  Management has concluded that the subsidiary is not likely to generate additional gains in future periods and has established a valuation allowance to reserve for the entire amount of the deferred tax asset associated with the unused capital losses.

Credit Opportunities Master
The Credit Opportunities Master adopted the authoritative guidance on accounting for and disclosure of uncertainty in tax positions on January 1, 2009, which required management to determine whether a tax position of Credit Opportunities Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. As a result of adopting this guidance, management has increased their tax liability by approximately $1.6 million to account for uncertain tax positions, which includes approximately $0.4 million of interest and penalties. This amount relates to prior years and was recorded as an adjustment to beginning partners' capital as of January 1, 2009. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2009.

Credit Opportunities Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Credit Opportunities Master is subject to

HIGHLY CONFIDENTIAL

D-CNL000298

Appx. 00996

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

examination by federal and foreign jurisdictions, where applicable. As of December 31, 2009, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2006 forward (with limited exceptions).

Credit Opportunities Master invests in equity securities. To the extent these securities pay dividends, the Credit Opportunities Master is required to withhold 30% of the gross dividends allocable to the Feeder Fund and remit the amounts to the Internal Revenue Service. As of December 31, 2009, a withholding tax liability of $2.2 million is included in other liabilities in the Consolidated Statement of Assets, Liabilities, and Partners' Capital of the Master Partnership.

<u>Credit Strategies Master</u>
Credit Strategies Master is an exempted limited partnership organized in Bermuda. Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Credit Strategies Master. Credit Strategies Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Credit Strategies Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Credit Strategies Master's net taxable income.

The Credit Strategies Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Credit Strategies Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2009, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2006 forward (with limited exceptions).

Credit Strategies Master adopted the authoritative guidance on accounting for and disclosure of uncertainty in tax positions on January 1, 2009, which required the General Partner to determine whether a tax position of Credit Strategies Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2009.

Dividends as well as certain interest and other income received by Credit Strategies Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Credit Strategies Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

The remaining entities consolidated by the Partnership did not accrue for uncertain tax positions as required by U.S. GAAP.

**16.    Legal Proceedings**
In April 2007, CDO Master Fund entered into a risk sharing agreement structured as a derivative whereby it absorbed 51% of the gains and losses generated from a loan warehouse agreement. The remaining 49% of the warehouse gains and losses were absorbed by Highland Special Opportunities Holding Company.  The warehouse was financed by a reputable financial institution and held collateral consisting of investments in collateralized loan obligations and credit default swaps.  Although the agreement expired on August 15, 2007, the counterparty agreed to extend it

40

D-CNL000299

**Appx. 00997**

# Highland Capital Management, L.P.
## Notes to Consolidated Financial Statements
### December 31, 2009

for one year on March 15, 2008.  As a condition of the extension, CDO Master Fund posted $10.2 million of cash as collateral.  In addition, HFC posted certain securities on behalf of CDO Master Fund and HFP.  During October and November 2008, the counterparty requested additional collateral calls from CDO Master Fund and HFP totaling $20 million.  Due to liquidity constraints, CDO Master Fund was unable to meet the November call, and the counterparty elected to terminate the agreement as of December 5, 2008.  The collateral held in the warehouse was subsequently seized by the counterparty and sold on the open market through bids-wanted-in-competition.  After offsetting the proceeds received from the sale and the income earned on the collateral prior to the sale, the counterparty notified CDO Master Fund that its pro-rata share of the losses incurred under the agreement was $350.2 million.  CDO Master Fund has accrued a liability in its financial statements for this amount.  On February 24, 2009, the counterparty (the "Plaintiffs") filed a lawsuit against CDO Master Fund. HFP and the Partnership in the New York State Supreme Court of Manhattan alleging that they suffered losses in excess of $745 million due to the depreciation in value of the warehouse collateral.  The Plaintiffs are seeking leave to amend their complaint to add additional claims and defendants, including other hedge funds managed by the Partnership.  On February 19, 2010 a New York Appeals Court sided with the Partnership and dismissed UBS' claims against the Partnership.

Certain consolidated investment funds (collectively, the "Plaintiffs") filed a claim against Deutsche Bank AG and Deutsche Bank Securities, Inc. (collectively, "Deutsche Bank") in Dallas County District Court alleging fraudulent inducement, fraud and breach of contract in connection with three repurchase agreements to which the Plaintiffs and Deutsche Bank were a party.  Deutsche Bank subsequently filed a lawsuit against the Plaintiffs in the United Kingdom on November 7, 2008 alleging breach of contract and fraud.  During 2009, the Plaintiffs settled all of the outstanding litigation with Deutsche Bank and recorded a gain of approximately $33.1 million on the settlement, which is included as a component of realized gains on investment transactions in the Consolidated Statement of Operations.

In April 2009, HYMF, Inc. filed a lawsuit in the New York State Court against the Partnership and certain consolidated investment funds (collectively "the Defendants").  The lawsuit alleges that the Defendants breached their contractual and fiduciary duties by failing to return HYMF's original investment in the consolidated investment funds.  The Defendants intend to vigorously defend against the lawsuit.  At this time, management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

In January 2009, Crusader Master, the Partnership and other affiliated entities were named as parties to a lawsuit claiming breach of fiduciary duties for their alleged failure to comply with obligations owed under a credit agreement.  Crusader Master reached a settlement with the plaintiff in October 2009.  Under the terms of the settlement agreement, the investments that Crusader Master held in a term loan and revolving credit facility issued by the plaintiff were transferred to a third party in exchange for other assets and cash of equivalent value.

On July 15, 2008, Crusader Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida.  The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated.  On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement. In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%. Based on the ruling, Crusader Master recorded a reserve of approximately $34 million as of December 31, 2009, which represents its ratable share of the judgment.  However, the Defendants believe they acted in good faith pursuant to the terms of the relevant agreements and have filed the appeal and final adjudication of the appeal is pending. The reserve is included as a

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

component of accrued expenses on the Consolidated Statement of Assets and Liabilities and a component of net realized losses from investment transactions on the Consolidated Statement of Operations.

During the first quarter of 2009, certain investors in Highland Credit Strategies Fund, Ltd. filed lawsuits in response to the decision to wind-down Credit Strategies Master's investment portfolio. Each of these investors is seeking to recover the outstanding balances due under the redemption requests that they submitted prior to the announcement of the wind-down. They have also made various claims, including breach of fiduciary duties, committed negligence, tortuous interference with the payment of redemption amounts, and/or committed fraud. Both the Partnership and Highland Credit Strategies Fund, Ltd. have been named as parties to the lawsuits. Management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

17.   **Fund Wind Down**
On February 4, 2009, the Partnership informed investors of CDO Master that the fund was effectively insolvent and that it was in the best interest of the fund to liquidate the fund's remaining assets. The proceeds from the asset liquidations will be distributed to the remaining financing counterparties and other senior and trade creditors as the liabilities in the fund exceed the assets to such a degree that proceeds from the asset sales will not be able to satisfy any unpaid redemptions or to distribute amounts to any current investors.

18.   **Subsequent Events**
In May 2009, the Financial Accounting Standards Board issued guidance regarding subsequent events, which detailed general standards for the accounting and disclosure of events that occur after the balance sheet date but before the financial statements are issued or available to be issued. This guidance did not have an impact on the Partnership or its consolidated entities' results of operations or financial position. In preparing the financial statements, management evaluated subsequent events though May 21, 2010, which is the date these financial statements were available to be issued.

Pursuant to the terms of the Purchase Agreement discussed in Note 7, approximately $36.2 million of withdrawals previously recorded by Credit Opportunities Master were paid to investors in the Master Partnership and the Feeder Fund.

CDO Financing received a waiver from the holders of the senior secured convertible notes allowing it to prepay principal, premium and accrued interest on the notes. Approximately $45 million of principal, $6.8 million of premium and $8.1 million of interest were paid to the note holders.

Highland Europe reduced its share premium account by £800,000 and remitted the funds to its parent company. Share premium was reduced as it was determined that the entity was overcapitalized.

The Partnership funded $7 million of capital calls to Restoration Onshore and Restoration Master, collectively.

42

# Supplemental Information
# Highland Capital Management, L.P.
# Unconsolidated Balance Sheet and Income Statement (Unaudited)
# December 31, 2009

HIGHLY CONFIDENTIAL

D-CNL000302

Appx. 01000

# Highland Capital Management, L.P
## Supplemental Unconsolidated Balance Sheet (unaudited)
## December 31, 2009

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---|
| Cash and cash equivalents | $ | 90 |
| Restricted cash | | 3,501 |
| Investments at fair value (cost $103,533) | | 65,154 |
| Equity method investees | | 25,655 |
| Management and incentive fees receivable | | 15,292 |
| Due from brokers | | 1,116 |
| Other current assets | | 19,547 |
| Deferred incentive fees receivable | | 28,891 |
| Purchased investment management contracts | | 24,000 |
| Goodwill and other intangible assets, net | | 388 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $8,444 | | 6,597 |
| | $ | 190,231 |

**Liabilities and Partners' Capital**

**Liabilities**

| | | |
|---|---|---|
| Accounts payable | $ | 2,852 |
| Accrued and other liabilities | | 32,752 |
| Debt and notes payable | | 143,901 |
| Long-term incentive plan | | 2,858 |
| Total liabilities | | 182,363 |
| Partners' capital | | 7,868 |
| **Total liabilities and partners' capital** | $ | 190,231 |

The above information was derived from the audited December 31, 2009 consolidated financial statements of Highland Capital Management, L.P. This information should be read in conjunction with such audited financial statements and should not be used for tax purposes.

HIGHLY CONFIDENTIAL

D-CNL000303

Appx. 01001

**Highland Capital Management, L.P**
**Supplemental Unconsolidated Balance Sheet (unaudited)**
**December 31, 2009**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 83,437 |
| Incentive fees/allocations | | 1,550 |
| Interest and investment income | | 1,483 |
| Other income | | 7,463 |
| Total revenue | | 93,933 |
| | | |
| **Operating expenses:** | | |
| Compensation and benefits | | 47,440 |
| Professional fees | | 4,192 |
| Investment and research consulting | | 810 |
| Amortization and depreciation | | 2,093 |
| Interest expense | | 9,023 |
| Other operating expenses | | 13,032 |
| Total operating expenses | | 76,590 |
| | | |
| Income/(loss) before investment activities | | 17,343 |
| | | |
| **Realized and unrealized gain/(loss) from investment transactions:** | | |
| Net realized loss on sale of investment transactions | | (73,174) |
| Net change in unrealized gain/(loss) on investments | | 50,966 |
| Total realized and unrealized loss from investment transactions | | (22,208) |
| | | |
| **Realized and unrealized earnings from equity method investee:** | | |
| Net unrealized earnings from equity method investees | | 4,788 |
| Total realized and unrealized earnings from equity method investees | | 4,788 |
| | | |
| **Net income** | $ | (77) |

The above information was derived from the audited December 31, 2009 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements and should not be used for tax purposes.

HIGHLY CONFIDENTIAL

D-CNL000304

Appx. 01002

# EXHIBIT 65

Appx. 01003

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2010**

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Index**
**December 31, 2010**

Page(s)

**Report of Independent Auditors** ......................................................................................................... 1

**Audited Consolidated Financial Statements**

Balance Sheet ..................................................................................................................................... 2

Statement of Income .......................................................................................................................... 3

Statement of Changes in Partners' Capital ........................................................................................ 4

Statement of Cash Flows ................................................................................................................... 5

Notes to Financial Statements ..................................................................................................... 6–42

Supplemental Information……………………………………………………………………………...43-45



## Report of Independent Auditors

To the General and Limited Partners of
Highland Capital Management, L.P.:

In our opinion, the accompanying consolidated balance sheet and the related consolidated statements of income, of changes in partners' capital and of cash flows (hereinafter referred to as the "financial statements") present fairly, in all material respects, the. consolidated financial position of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership") at December 31, 2010, and the results of their operations, the changes in their partners' capital, and their cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America. These financial statements are the responsibility of the Partnership's management. Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit of these statements in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The supplemental unconsolidated balance sheet and statement of income are presented for purposes of additional information, and are not a required part of the basic consolidated financial statements. Such information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and, in our opinion, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

May 20, 2011

*PricewaterhouseCoopers LLP, 2001 Ross Avenue, Suite 1800, Dallas, Texas 75201*
*T: (214) 999-1400, F: (214) 754-7991, www.pwc.com/us*

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2010**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 96,115 |
| Restricted cash | | 29,101 |
| Investments at fair value (cost $3,622,415) | | 2,350,386 |
| Unrealized gains on derivative contracts | | 953 |
| Management and incentive fees receivable | | 17,611 |
| Due from brokers | | 33,100 |
| Other assets | | 37,805 |
| Deferred incentive fees receivable | | 35,883 |
| Purchased investment management contracts | | 24,000 |
| Goodwill and other intangible assets | | 8,020 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,057 | | 11,267 |
| **Total assets** | $ | 2,644,241 |

**Liabilities and Partners' Capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 2,198 |
| Securities sold, not yet purchased (proceeds $14,366) | | 21,406 |
| Withdrawals payable | | 15,736 |
| Interest payable | | 7,061 |
| Due to brokers | | 420,846 |
| Due to brokers for securities purchased not yet settled | | 67,548 |
| Accrued and other liabilities | | 84,084 |
| Secured borrowing | | 3,803 |
| Debt and notes payable | | 190,139 |
| Long-term incentive plan | | 1,081 |
| Total liabilities | | 813,902 |
| Non-controlling interest | | 1,798,232 |
| Commitments (Note 11) | | |
| **Partners' capital** | | 32,107 |
| **Total liabilities and partners' capital** | $ | 2,644,241 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000308
**Appx. 01007**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Income**
**Year Ended December 31, 2010**

*(in thousands)*

| | | |
|---|---|---:|
| Revenue: | | |
| Management fees | $ | 85,927 |
| Incentive fees/allocations | | 8,066 |
| Interest and investment income | | 140,136 |
| Other income | | 16,233 |
| Total revenue | | 250,362 |
| | | |
| Expenses: | | |
| Compensation and benefits | | 60,717 |
| Professional fees | | 26,406 |
| Investment and research consulting | | 785 |
| Amortization and depreciation | | 2,086 |
| Interest expense | | 48,056 |
| Tax expense | | 6,907 |
| Other expenses | | 22,359 |
| Total expenses | | 167,316 |
| | | |
| Income before investment and derivative activities and extinguishment of debt | | 83,046 |
| | | |
| Realized and unrealized gain/(loss) from investment and derivative transactions: | | |
| Net realized loss on investment and derivative transactions | | (416,398) |
| Net change in unrealized gain on investment and derivative transactions | | 780,716 |
| Total realized and unrealized gain from investment and derivative transactions | | 364,318 |
| | | |
| Net realized gain on extinguishment of debt | | 10,000 |
| | | |
| Net income | | 457,364 |
| | | |
| Net income attributable to the non-controlling interest | | (431,023) |
| | | |
| Net income attributable to Highland Capital Management, L.P. | $ | 26,341 |

The accompanying notes are an integral part of these consolidated financial statements.

3

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2010**

*(in thousands)*

| | General Partner | Limited Partners | Total |
|---|---|---|---|
| **Partners' capital, December 31, 2009** | $ 506 | $ 7,362 | $ 7,868 |
| Net gain attributable to Highland Capital  Management, L.P. | - | 26,341 | 26,341 |
| Partner contributions | - | | - |
| Partner distributions | (11) | (2,091) | (2,102) |
| **Partners' capital, December 31, 2010** | $ 495 | $ 31,612 | $ 32,107 |

The accompanying notes are an integral part of these consolidated financial statements.

4

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2010**

*(in thousands)*

| | | |
|---|---|---:|
| **Cash flows from operating activities:** | | |
| Net income | $ | 457,364 |
| Adjustment to reconcile net income to cash and cash equivalents | | |
| provided by operating activities: | | |
| Net realized loss on investments and derivative transactions | | 416,398 |
| Net realized gain on extinguishment of debt | | (10,000) |
| Net change in unrealized gain on investments and derivative transactions | | (780,716) |
| Amortization and depreciation | | 2,086 |
| **Changes in assets and liabilities:** | | |
| Restricted cash | | 218,942 |
| Management and incentive fee receivable | | (828) |
| Deferred incentive fees | | (6,992) |
| Other assets | | 7,908 |
| Due from brokers | | (24,316) |
| Accounts payable | | (2,253) |
| Accrued and other liabilities | | 3,176 |
| Due to brokers for unsettled trades | | (48,342) |
| Interest payable | | 3,324 |
| Withdrawals payable | | (20,495) |
| Long-term incentive plan | | (1,777) |
| Due to Affiliate | | 23,685 |
| Net cash provided by operating activities | | 237,164 |
| | | |
| **Cash flows from investing activities:** | | |
| Proceeds from fixed assets and leasehold improvements, net | | 1,539 |
| Purchases of investments | | (404,384) |
| Proceeds from dispositions of investments | | 331,663 |
| Net cash required by investing activities | | (71,182) |
| **Cash flows from financing activities:** | | |
| Payments on long-term debt | | (47,684) |
| Payments on revolving debt and promissory notes | | (45,000) |
| Proceeds from affiliate loans | | 13,314 |
| Net payments on secured borrowings | | (58,039) |
| Due to brokers | | 27,552 |
| Capital contributions from minority interest investors of consolidated entities | | 119,745 |
| Capital withdrawals by minority interest investors of consolidated entities | | (127,900) |
| Partner distributions | | (2,101) |
| Net cash required by financing activities | | (120,113) |
| Net increase in cash and cash equivalents | | 45,869 |
| | | |
| **Cash and cash equivalents** | | |
| Beginning of year | | 50,246 |
| End of year | $ | 96,115 |
| | | |
| **Supplemental disclosure of cash flow information:** | | |
| Interest paid during the year | $ | 53,704 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

1. **Description of Business**

   Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware. The Partnership is a registered investment advisor under the Investment Advisors Act of 1940 that manages collateralized loan obligations ("CLOs"), registered investment companies ("RICs"), hedge funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds. The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business. The Partnership's general partner is Strand Advisors, Inc. (the "General Partner"). The Partnership is 100% owned by senior management of the Partnership.

   As of December 31, 2010, the Partnership provided investment advisory services for twenty-seven CLOs, seven RICs, two separate accounts, one master limited partnership, and twelve hedge fund structures, with total fee-earning assets under management of approximately $21.7 billion.

2. **Liquidity Considerations**

   As further discussed in Note 8, the Partnership has a Revolving Credit Facility (the "Credit Agreement") scheduled to mature on July 21, 2011, including forbearance from the exercising of remedies for events of default from July 21, 2011 to November 18, 2011. Management is currently in negotiations to extend or refinance the Credit Agreement with the lenders. Management is also considering alternative sources of financing to repay in the event that an extension of the existing Credit Agreement cannot be obtained although to date, such alternative sources have not been secured. The Credit Agreement is collateralized by assets of the Partnerships with an estimated fair value of approximately $100 million at December 31, 2010. Although there can be no assurance that these assets could be sold at that value, management has the ability to sell these and certain other assets should it become necessary in order to pay off the remaining balance of the Credit Agreement in the event an extension cannot be obtained. There can be no assurance that management will be successful in their attempts to extend the Credit Agreement, to identify alternative sources of financing or to sell assets for proceeds sufficient to repay the balance of the Credit Agreement.

3. **Summary of Significant Accounting Policies**

   The following is a summary of the significant accounting policies followed by the Partnership in preparation of its financial statements.

   **Basis of Accounting**
   The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification.

   **Use of Estimates**
   The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements. Actual results could differ from those estimates and those differences could be material.

HIGHLY CONFIDENTIAL

D-CNL000312

**Appx. 01011**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

**Consolidation of Non-Variable Interest Entities**
The Partnership consolidates the following non-VIE's (collectively referred to as the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Crusader Offshore Partners, L.P. ("Crusader Master"), a Bermuda exempted limited partnership that commenced operations on July 10, 2000;

- Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund"), a Bermuda limited partnership that commenced operations on November 9, 2005;

- Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master"), a Bermuda exempted limited partnership that commenced operations on August 24, 2005

- Highland Credit Opportunities CDO, L.P. ("Credit Opportunities Master"), a Delaware limited partnership that commenced operations on December 29, 2005;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Canopy Timberlands, L.P., a Delaware limited partnership that commenced operations on April 29, 2008;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore") a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore") a Delaware limited partnership that commenced operations on September 2, 2008; and

- Highland Restoration Capital Partners Master, L.P. ("Restoration Master") a Delaware limited partnership that began commenced on September 2, 2008.

7

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Consolidation of Majority Owned Entities**
The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Management Europe, Ltd. ("Highland Europe"), a company organized in the United Kingdom and purchased by the Partnership on April 6, 2005;

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in HFP GP, LLC, a Delaware limited liability company that commenced operations on January 20, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd, a company organized in the Republic of Singapore that commenced operations on April 2, 2008; and

- 100% interest in Highland Employee Retention Assets, LLC, a Delaware limited liability company that commenced operations on October 26, 2009.

- 100% interest in Highland Special Situations Fund, a Delaware statutory trust that is registered with the Securities and Exchange Commission under the Investment Company Act of 1940, as amended, as a non-diversified, closed-end management investment company, and commenced operations on May 18, 2005.

All significant interpartnership and intercompany accounts and transactions have been eliminated in consolidation of all of the aforementioned consolidated entities. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide - Investment Companies. The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

**Investment Transactions**
Investment transactions are recorded on a trade date basis. Investments in securities are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements. Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value. The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages. During the year ended December 31, 2010, the Partnership and its consolidated entities recognized management and incentive fees of approximately $85.9 million, and $8.1 million, respectively. The Partnership recognized approximately $7.0 million of appreciation on incentive fees earned prior to 2008, previously

8

D-CNL000314

**Appx. 01013**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

deferred under Sec. 409(A) of the Internal Revenue Code, which has been presented in *Other Income* in the Consolidated Statement of Income.

**Derivative Contracts**
Credit Default Swaps are marked-to-market based upon values from third party vendors or broker quotations and the change in value is recorded as unrealized appreciation/depreciation. Swap contracts with cumulative unrealized gains as of a reporting date are recorded as assets on the Consolidated Balance Sheet, while swap contracts with cumulative unrealized losses as of the reporting date are recorded as liabilities. Upfront payments made/received by the Consolidated Funds are amortized or accreted for financial reporting purposes, with the unamortized or unaccreted portion included in the Consolidated Balance Sheet. A termination payment by the counterparty or the Consolidated Funds is recorded as a realized gain or loss, as well as the net periodic payments received or paid by the Consolidated Fund.

**Dividends, Interest and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. Of the entities consolidated, only Highland Europe is subject to these provisions.

The Consolidated Investments Funds are not subject to federal income taxes and therefore no provision has been made in the accompanying consolidated financial statements.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Foreign cash of $2.8 million is included in the cash and cash equivalents on the consolidated balance sheet, a portion of which exceeds Federal deposit insurance limits.

9

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions.  These amounts are reported as restricted cash.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

**Debt Securities**
The Consolidated Funds invest in various types of debt, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Consolidated Funds first seek to obtain reliable market quotes from other parties dealing in the specific asset. Absent both a reliable market quote and third-party pricing service date, the Consolidated Funds may use various models to establish an estimated exit price. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Investment Manager's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Private Equity Investments**
The Consolidated Funds hold private equity investments which resulted from the restructuring of other instruments.  These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available.  In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Consolidated Funds will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis.  When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances.

10

D-CNL000316

**Appx. 01015**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Asset Backed Securities**
The Consolidated Funds invest in a variety of asset backed securities. Asset backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity. The Consolidated Funds generally utilize an independent third party firm to perform these calculations and provide the relevant inputs. The Consolidated Funds evaluate the results based on visible market activity and market research. When appropriate, the Consolidated Funds may apply other techniques based on a specific asset's characteristics.

**Total Return Swaps**
A total return swap agreement is a two-party contract under which an agreement is made to exchange returns from predetermined investments or instruments. The gross returns to be exchanged or "swapped" between the parties are calculated based on a "notional amount," which is valued monthly according to the valuation policy mentioned above to determine each party's obligation under the contract.

Risks could arise from entering into swap agreements from the potential inability of counterparties to meet the terms of their contracts, and from the potential inability to enter into a closing contract. The Partnership's Consolidated Investment Funds recognize all cash flows received (paid) or receivable (payable) from swap transactions on a net basis as realized or unrealized gains or losses on investment transactions in the consolidated statement of income. The Partnership and the Consolidated Investment Funds are charged a finance cost by counterparties with respect to each agreement. The finance cost is reported as part of the realized or unrealized gains or losses.

**Credit Default Swaps**
As discussed in Note 7, under a credit default swap agreement two parties agree to transfer the credit exposure of an asset between one another. The seller of the swap guarantees the credit worthiness of a specific instrument by agreeing to pay the buying party a specific amount (generally par value) in the event that the instrument defaults.

At December 31, 2010, the Partnership's Consolidated Investment Funds were party to credit default swaps in which they act as the guaranteeing party. In the event that any of the underlying instruments default prior to the expiration of the agreements, the Consolidated Investment Funds are obligated to pay the swap counterparty the par value of the specific instrument. The Consolidated Investment Funds collect a fee based on the size of the underlying positions which are treated as realized gains once received. The difference between the current market value of the swaps and the original price of the swap is reported as an unrealized gain or loss.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand. Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash or securities. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender.

HIGHLY CONFIDENTIAL

D-CNL000317

**Appx. 01016**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Securities Loaned**
The Partnership's Consolidated Investment Funds may lend securities to their financing counterparties for margin. The lending entity receives the interest associated with the securities loaned. The loans are secured by the fair value of the securities. Gains or losses in the fair value of the securities loaned that occur during the term of the loan will be for the account of the lender. The lender has the right under the lending agreement to recover the securities from the prime brokers on demand. The lender pays a fee to the broker for the cash collateral received. This is accounted for as interest expense. A credit risk exists to the lender under this type of transaction to the extent that the counterparty defaults on its obligation to return the securities loaned.

**Revolving Credit Agreements**
The funded portion of revolving credit agreements is recorded at fair value on the Consolidated Balance Sheet as a component of investments, net of the fair value of unfunded commitments for which the Consolidated Funds may be liable in the future (Note 11).

**Margin Transactions**
In order to obtain more investable cash, the Partnership and its subsidiaries may use various forms of leverage including purchasing securities on margin. Such leverage may allow the Partnership and its subsidiaries to increase net assets at a greater rate during increasing markets, but also may lead to a more rapid decrease in net assets in a declining market. A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable. This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2010. Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. Withdrawals payable may be treated as capital for purposes of allocations of gains/losses pursuant to the partnerships' governing documents. At December 31, 2010, the Consolidated Investment Funds had withdrawals payable of $15.7 million.

**Foreign Currency Transactions**
The Partnership's subsidiary Highland Europe uses British Pounds as its functional currency and enters into transactions in multiple foreign currencies. All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2010. Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period. Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the consolidated statement of income.

The Consolidated Investment Funds do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held. Such fluctuations are included within the *Net realized and unrealized gains or loss from investments*.

12

D-CNL000318

**Appx. 01017**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Financial Instruments**
The Partnership and its consolidated entities determine fair value of financial instruments as required by U.S. GAAP. The carrying amounts for cash and cash equivalents, receivables, accounts payable and accrued liabilities approximate their fair values because of their short maturities.

**Life Settlement Contracts**
One of the Partnership's Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. The contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of "Purchase of investments" and "Proceeds from the disposition of investments" on the Consolidated Statement of Cash Flows.

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

**Goodwill and Other Intangible Assets**
The Partnership purchased Highland Europe on April 6, 2005. Goodwill represents the amount paid in excess of the fair value of the assets of Highland Europe at the date of acquisition. No goodwill impairments existed as of December 31, 2010.

The Partnership has obtained the rights to the management contracts of certain RICs by acquiring the underlying contracts from the predecessor investment manager. The Partnership performs an impairment test on the purchased investment contracts on an annual basis. Any depreciation in the value of the purchased investment management contracts are accounted for in the year when it occurs. The carrying values of the purchased investment contracts are not adjusted for appreciation. The goodwill and purchased investment management contracts are indefinite-lived assets and are not amortized.

**Recently Issued Accounting Standards and Interpretations**
In June 2009, the FASB issued amended guidance on accounting for transfers of financial assets (originally issued as SFAS No. 166, *Accounting for Transfers of Financial Assets, an amendment of FASB Statement No. 140,* and subsequently reissued as ASU 2009-16, *Accounting for Transfers of Financial Assets*). The amendments were issued to improve the information that a reporting entity provides in its financial statements about a transfer of financial assets, the effects of a transfer on its financial statements, and a transferor's continuing involvement, if any, in transferred financial assets. The amendments eliminate the concept of qualifying special purpose entities from U.S. GAAP. These entities will now be evaluated for consolidation in accordance with the applicable consolidation criteria. The amendments are effective for reporting periods beginning on or after November 15, 2009. The adoption of ASU 2009-16 did not have a material impact on the Company's financial position or results of operations.

In June 2009, the FASB issued amended guidance on accounting for variable interest entities (originally issued as SFAS No. 167, *Amendments to FASB Interpretation No. 46(R),* and subsequently reissued as ASU 2009-17, *Improvements to Financial Reporting by Enterprises*

13

D-CNL000319
**Appx. 01018**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

*Involved with Variable Interest Entities*). The amendments were issued to address the effects of the removal of the concept of qualifying special purpose entities from U.S. GAAP and to address concerns regarding the consolidation of variable interest entities. ASU 2009-17 will require a qualitative approach rather than a quantitative approach when determining the primary beneficiary of a variable interest entity and will also change the criteria by which an enterprise determines whether it is the primary beneficiary of an entity. In addition, the amended interpretation will no longer consider removal rights when determining whether an entity is a variable interest entity and whether to consolidate a variable interest entity as the primary beneficiary unless those rights are held by a single party. ASU 2009-17 is effective for reporting periods beginning on or after November 15, 2009. The adoption of ASU 2009-17 did not have a material impact on the Partnership's financial position or results of operations, as substantially all of the entities in which it holds variable interests will qualify for the scope deferral included in ASU 2010-10, *Amendments to Statement 167 for Certain Investment Funds.*

In February 2010, the FASB issued ASU 2010-10, *Amendments to Statement 167 for Certain Investment Funds.* ASU 2010-10 defers the effective date of ASU 2009-17 for certain investment entities to allow the FASB to work with the International Accounting Standards Board ("IASB") in developing consistent consolidation guidance. The deferral will apply to a reporting entity's (i.e. investment manager's) interest in an entity (i) that has the attributes of an investment company or (ii) for which it is industry practice to apply measurement principles for financial reporting purposes that are consistent with those followed by investment companies. The deferral in ASU 2010-10 would not apply in situations in which a reporting entity has the explicit or implicit obligation to fund actual losses of an entity that could potentially be significant to the entity. ASU 2010-10 is effective for annual reporting periods beginning on or after November 15, 2009, and for interim periods within that first annual reporting period. The adoption of ASU 2010-10 did not have a material impact on the Company's financial position or results of operations, as adoption of the deferral results in the Company continuing to apply consolidation and disclosure requirements in effect during prior periods.

In January 2010, the FASB issued guidance on improving disclosures about fair value measurements. The guidance requires additional disclosure on transfers in and out of Levels I and II fair value measurements in the fair value hierarchy and the reasons for such transfers. In addition, for fair value measurements using significant unobservable inputs (Level III), the reconciliation of beginning and ending balances shall be presented on a gross basis, with separate disclosure of gross purchases, sales, issuances and settlements and transfers in and transfers out of Level III. The new guidance also requires enhanced disclosures on the fair value hierarchy to disaggregate disclosures by each class of assets and liabilities. In addition, an entity is required to provide further disclosures on valuation techniques and inputs used to measure fair value for fair value measurements that fall in either Level II or Level III. The guidance is effective for interim and annual periods beginning after December 15, 2009, except for the disclosures about purchases, sales, issuances, and settlements in the roll forward of activity in Level III fair value measurements, which are effective for fiscal years beginning after December 15, 2010. Adoption did not have a material impact on the Partnership's financial statements.

In December 2010, the FASB issued enhanced guidance on when to perform step two of the goodwill impairment test for reporting units with zero or negative carrying amounts. The updated guidance modifies existing requirements under step one of the goodwill impairment test for reporting units with zero or negative carrying amounts and requires step two to be performed if it is more likely than not that a goodwill impairment exists. The guidance is effective for interim and annual reporting periods beginning after December 15, 2010. As the Partnership and Consolidated

14

D-CNL000320

**Appx. 01019**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

entities do not currently have zero or negative carrying values, adoption will not have a material impact on the Partnership's financial statements.

**4.      Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2010:

*(in thousands)*

| | | |
|---|---:|---:|
| Buildings | $ | 8,250 |
| Land | | 1,084 |
| Leasehold improvements | | 4,064 |
| Computer and equipment | | 3,488 |
| Furniture and fixtures | | 3,141 |
| Computer software | | 2,297 |
| Accumulated depreciation | | (11,057) |
| | $ | 11,267 |

The Partnership and its consolidated entities are depreciating fixed assets as follows:

| | **Period** |
|---|---:|
| Buildings | 29 - 40 years |
| Leasehold improvements | Lease term |
| Computer and equipment | 5 years |
| Furniture and fixtures | 7 years |
| Computer software | 3 years |

Depreciation expense in 2010 totaled approximately $2.1 million for the Partnership and its subsidiaries.

15

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

5.    **Investments**

Detailed below is a summary of the Partnership's investments at December 31, 2010:

| (in thousands) | Amortized Cost/Cost | | Value | |
|---|---|---|---|---|
| Floating rate syndicated bank loans | $ | 680,415 | $ | 222,695 |
| Fixed rate syndicated bank loans | | 11,320 | | 15,644 |
| Fixed income securites | | 907,237 | | 708,957 |
| Equity securities | | 1,373,233 | | 1,037,090 |
| Life settlement contracts | | 270,802 | | 165,223 |
| CLOs (mezz tranches) | | 51,730 | | 25,846 |
| CLOs (residual CLO equity tranches) | | 31,077 | | 5,436 |
| Closed-end mutual funds | | 11,799 | | 14,580 |
| Private placement real estate | | 116,190 | | 524 |
| Limited partnerships | | 162,515 | | 150,775 |
| Warrants | | 6,097 | | 3,616 |
| Total investments | $ | 3,622,415 | $ | 2,350,386 |
| Credit default swaps | $ | - | $ | 953 |
| Net unrealized gain/loss on swaps | $ | - | $ | 953 |

| | Proceeds | | Value | |
|---|---|---|---|---|
| Securities sold, not yet purchased | $ | 14,366 | $ | 21,406 |

**Affiliated Investments**
***Investments in Residual CLO Equity and Mezzanine Tranches***
Investments in affiliated residual CLO equity tranches primarily represent tranches of CLOs for which the Partnership and Highland Europe provide investment advisory services. The Consolidated Investment Funds receive quarterly distributions based on the excess interest after paying the stated interest distributions to the senior and mezzanine note holders, and paying the investment manager, trustee and other related fees. A portion of these distributions are amortized against the cost basis of the investment based on the actual cash distributions received during the year versus the total expected remaining cash distributions to the residual CLO equity tranche. The remainder of the distribution is recorded as interest income.

Investments in residual equity and mezzanine tranches of CLOs are not actively traded. The estimated fair value of the CLOs is derived from broker quotes and valuation models. The estimated fair value of these investments as presented in the consolidated balance sheet does not necessarily represent the amount that could be obtained from the sale of these investments. Changes in the credit quality or the performance of the underlying collateral, the availability and price of assets available for reinvestment, interest rates and/or the interest rate curve, or other market conditions could have a material impact on the estimated fair value of the investments.

16

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

*Investment in Highland Long/Short Equity Fund*
The Partnership invests in Highland Long/Short Equity Fund ("HEOF"), a diversified, open-end RIC for which the Partnership provides investment advisory services. As of December 31, 2010, the market value of the Partnership's investment in HEOF was approximately $0.2 million.

*Investment in Highland Healthcare Fund*
The Partnership invests in Highland Healthcare Fund ("HHF"), a non-diversified, open-end RIC for which the Partnership provides investment advisory services. As of December 31, 2010, the market value of the Partnership's investment in HHF was approximately $7.4 million.

*Investment in Highland Credit Strategies Fund*
The Partnership invests in Highland Credit Strategies Fund ("HCF"), a diversified, closed-end RIC for which the Partnership provides investment advisory services. As of December 31, 2010, the market value of the Partnership's investment in HCF was approximately $4.8 million. During the year ended December 31, 2010, the Partnership received approximately $0.4 million in dividends from HCF.

*Investment in Highland Diversified Credit Fund*
The Partnership invests in Highland Diversified Credit Fund ("DCF"), a hedge fund for which the Partnership provides investment advisory services. As of December 31, 2010, the market value of the Partnership's investment in DCF was approximately $2.0 million. During the year ended December 31, 2010, the Partnership did not receive any dividends from DCF.

*Prepaid Forward Contract*
On July 28, 2006, Highland Multi-Strategy Onshore Master Subfund I, LLC ("Subfund") and Barclays Bank PLC ("Barclays") entered into a prepaid forward contract. The Partnership and affiliates redeemed approximately $312.7 million of a reference portfolio, which was comprised of the following basket of funds advised by the Partnership: Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund and Select Equity Fund. Barclays simultaneously contributed approximately $312.7 million as a hedge to its obligation under the prepaid forward contract.

Barclays was prepaid approximately $156.3 million, or one-half of the reference portfolio value at initiation of the transaction. A notional amount, (the initial reference portfolio value less the amount prepaid), accretes interest to Barclays at monthly LIBOR plus 0.90% per annum.

A collateral account in the amount of approximately $53.2 million was established to further secure the transaction. Due to extreme market volatility, all of the underlying holdings in the collateral account were sold during 2008.

The term of the prepaid forward contract was three years and allowed for net settlement upon termination. The contract expired on July 31, 2009 whereby Barclays was to remit in cash the greater of the difference between the reference portfolio value and the notional amount, as valued on the scheduled termination date, or zero. Upon expiration, Barclays was not obligated to make a cash payment to the Subfund.

On October 7, 2008, Barclays submitted a notice of early termination for the prepaid forward contract.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

*Accreting Strike Option*
On February 28, 2007, Highland Multi-Strategy Onshore Master Subfund II, LLC entered into an Accreting Strike Option ("ASO") with Barclays.  The ASO's value is based on the following basket of funds ("the reference portfolio") advised by the Partnership: Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund, Select Equity Fund and Credit Opportunities Domestic Feeder.  The value of the reference portfolio at inception was approximately $250.2 million.

Barclays was paid a $71.4 million premium on the option.  The strike price, (the initial reference portfolio value less the premium paid), accretes interest to Barclays at monthly LIBOR plus 1.4% per annum.  As of December 31, 2010, the strike price was approximately $182.6 million.

The term of the accreting strike option is five years and allows for net settlement upon termination.  At contract expiration, Barclays will remit in cash the greater of the difference between the reference portfolio value and the strike price, as valued on the scheduled termination date, or zero.  As of December 31, 2010, the ASO did not have a positive net fair value. As such, no amount was recorded in the Partnership's financial statements.

Detailed below is a summary of the transaction as of December 31, 2010:

*(in thousands)*

| Reference Portfolio | | Value |
|---|---|---|
| Select Equity Fund | $ | 113,506 |
| Crusader Domestic Feeder | | 15,138 |
| Equity Focus Fund | | 5,978 |
| Credit Opportunities Domestic Feeder | | 4,828 |
| Real Estate Fund | | - |
| Highland CDO Opportunity Fund, Ltd. | | - |
| Credit Strategies Domestic Feeder | | - |
| Reference Portfolio Total | $ | 139,450 |
| Notional Amount | $ | (182,631) |
| Deficit of Reference Portfolio Total to Notional Amount | $ | (43,181) |

On October 13, 2008, Barclays served notice of early termination for the accreting strike option.

*Investment in Highland Employee Retention Assets LLC ("HERA")*
During 2009, the Partnership established HERA, an employee deferred compensation vehicle. On October 26, 2009, approximately $12.1 million of assets were transferred to HERA.  As of December 31, 2010, the Partnership's equity investment in HERA was approximately $3.5 million.

18

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

6.    **Fair Value of Financial Instruments**

**Fair Value Measurement**

In accordance with the authoritative guidance on fair value measurements and disclosures under U.S. GAAP, the Consolidated Investment Funds disclose the fair value of their investments in a hierarchy that prioritizes the inputs to valuation techniques used to measure the fair value. The hierarchy gives the highest priority to valuations based upon unadjusted quoted prices in active markets for identical assets or liabilities (level 1 measurements) and the lowest priority to valuation based upon unobservable inputs that are significant to the valuation (level 3 measurements). The guidance establishes three levels of the fair value hierarchy as follows:

- Level 1 – Valuation based on quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Investment Funds have the ability to access as of the measurement date. Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction. When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs. For certain instruments, the inputs used to measure the fair value may fall into different levels of the hierarchy discussed above. In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Investment Funds use prices and inputs that are current as of the measurement dates. The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments. During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being re-classified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates.

Whenever possible, the Partnership and its Consolidated Investment Funds use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities. In cases where observable inputs are not available, the Partnership and Consolidated Investment Funds develop methodologies that provide appropriate fair value estimates. These methodologies are reviewed on a continuous basis to account for changing market conditions.

19

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

As of December 31, 2010, the Partnership and its consolidated entities' investments consisted of floating rate syndicated bank loans, high yield corporate bonds, CLO securities, private placements, private placement real estate debt and equity, life settlement contracts and common and preferred equity securities. In addition, the consolidated entities are parties to various credit default swaps. The majority of these financial instruments are not listed on national securities exchanges, and management is required to use significant judgment to estimate their values.

The fair value of the loans, corporate bonds and CLO securities are generally based on quotes received from brokers or independent pricing services. The policy of the Partnership and its consolidated subsidiaries is to classify loans and bonds that are prices in this manner as Level 3 assets because the markets in which they trade are not active and the inputs used by the brokers and pricing services are not readily observable. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

The consolidated entities' private placement real estate investments include equity interests in limited liability companies and debt issued by entities that invest in commercial real estate. The fair value of these investments is based on internal models developed by the Partnership. The significant inputs to the models include cash flow projections for the underlying properties and appraisals performed by independent valuation firms. Since these inputs are not readily observable, the investments are classified as Level 3 assets.

Common and preferred equity securities traded on national exchanges are valued at their closing prices as of December 31, 2010. These securities are classified as Level 1 assets. The consolidated entities also hold certain equity securities for which no active market exists. The value of these securities, which are classified as Level 3 assets, is based on a combination of broker quotes and internal valuation models.

Life settlement contracts are valued using mortality tables and interest rate assumptions that are deemed appropriate for the demographic characteristics of the parties insured in the underlying policies. Since these inputs are not readily observable, they are classified as Level 3 assets.

The Consolidated Funds engage in "short sales" as part of its investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand. Pending the return of such securities, the Consolidated Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash or securities. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Funds are required to return to the lender.

The fair value of credit default swaps is based on quotes received from an independent pricing service. The inputs used to derive the quotes are not readily observable and are therefore classified as Level 3 liabilities.

20

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. All of the Consolidated Investment Fund's investments and derivatives at December 31, 2010 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2010:

*(in thousands)*

| | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/10 |
|---|---|---|---|---|
| Loans | $        - | $   11,885 | $   226,453 | $   238,338 |
| Bonds & Asset Backed Securities | - | 409,448 | 313,814 | 723,262 |
| Collateralized loan obligations | - | - | 16,977 | 16,977 |
| Rights & Warrants | 573 | 1,799 | 1,244 | 3,616 |
| Private placement real estate | - | - | 524 | 524 |
| Limited partnership interest | - | - | 150,775 | 150,775 |
| Common equity securities | 211,944 | 73,774 | 316,209 | 601,927 |
| Mutual Funds | 14,580 | - | - | 14,580 |
| Privately held equity | - | - | 296,339 | 296,339 |
| Life Settlement Contracts | - | - | 165,223 | 165,223 |
| Preferred stock | - | - | 138,824 | 138,824 |
| Common stock sold short | (21,406) | - | - | (21,406) |
| **Total** | **$205,691** | **$496,906** | **$ 1,626,382** | **$ 2,328,979** |

The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2010:

*(in thousands)*

| | Estimated Fair Value as of December 31, 2009 | Purchases, Sales and Maturities, Net | Net Transfers In/(Out) | Net Realized Losses | Net Unrealized Gains / (Losses) | Total Fair Value at December 31, 2010 |
|---|---|---|---|---|---|---|
| Loans | $  360,828 | $  (130,417) | $   (6,216) | $(116,820) | $  119,078 | $  226,453 |
| Bonds & Asset Backed Securities | 414,356 | (21,867) | (148,769) | (80,500) | 150,594 | 313,814 |
| Collateralized loan obligations | 8,142 | 1,075 | - | 28 | 7,732 | 16,977 |
| Rights & Warrants | 5,003 | (3,083) | (2,574) | 6,020 | (4,122) | 1,244 |
| Private placement real estate | 12,180 | (5,330) | - | (5,856) | (470) | 524 |
| Limited partnership interest | 129,393 | 2,150 | - | - | 19,232 | 150,775 |
| Common equity securities | 249,553 | 38,842 | 1,097 | (48,880) | 75,597 | 316,209 |
| Privately held equity | 246,090 | (52,811) | 85 | (754) | 103,729 | 296,339 |
| Life Settlement Contracts | 144,952 | 28,323 | - | - | (8,052) | 165,223 |
| Preferred stock | 141,103 | (14,526) | - | (18,808) | 31,055 | 138,824 |
| | $1,711,600 | $  (157,644) | $(156,377) | $(265,570) | $  494,373 | $1,626,382 |

21

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

Transfers from Level 2 to Level 3 or from Level 3 to Level 2 are due to a decline or an increase in market activity (e.g. frequency of trades), which resulted in a lack of or increase in available market inputs to determine price. No significant transfers between Level 1 or Level 2 fair value measurements occurred during the year ended December 31, 2010.

The following table provides a summary of the derivative contracts recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2010:

*(in thousands)*

|  | Level 1 | Level 2 | Level 3 | Total |
|---|---|---|---|---|
| Derivative contracts, asset | $        - | $        - | $     953 | $     953 |
| Derivative contracts, liability | - | - | - | - |
| **Derivative contracts, net** | **$        -** | **$        -** | **$     953** | **$     953** |

The following table provides a roll forward of the derivative contracts classified within Level 3 for the year ended December 31, 2010:

*(in thousands)*

| | |
|---|---|
| **Estimated Fair Value as of December 31, 2009** | $     (102,605) |
| Settlement of open contracts, net | 126,383 |
| Net transfers in/(out) of Level 3 | - |
| Net realized losses | (123,821) |
| Net change in unrealized gain | 100,996 |
| **Estimated Fair Value as of December 31, 2010** | $          953 |

**7.     Derivative Financial Instruments**

**Credit Default Swaps**

Credit default swap ("CDS") contracts are financial instruments that involve the payment of a fixed rate premium for protection against the loss in value of an underlying debt instrument, referenced entity or index, or the occurrence of a defined credit event.  Under the terms of the swap, one party acts as a "guarantor" (the Seller), receiving the periodic stream of payments (from the Buyer) over the term of the contract and agreeing to the remedies that are specified within the credit default agreement.  A credit event for corporate reference obligations includes bankruptcy, failure to pay, obligation acceleration, repudiation/moratorium or restructuring.  If a credit event occurs, the seller must pay the contingent payment to the buyer, which is typically the par value (full notional amount) of the reference obligation, though the actual payment may be mitigated by terms of the International Swaps and Derivative Agreement ("ISDA"), allowing for netting arrangements and collateral.  In addition, the payment may be reduced by anticipated recovery rates, segregated collateral and netting arrangements that may incorporate multiple transactions with a given counterparty.

22

D-CNL000328

**Appx. 01027**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

The following table summarizes the CDS contracts the Consolidated Investment Funds held as of December 31, 2010:

*(in thousands)*

| Industry | Purchased / Sold | Maturity Date | Fixed Rate of Payment | Notional Amount / Exposure Purchased | Unamortized Upfront Payment | Market Value |
|---|---|---|---|---|---|---|
| Beverage, Food and Tobacco | Sold | 9/20/2012 | 4.65% | $ 7,500 | $ - | $ 402 |
| Electronics | Sold | 9/20/2012 | 2.65% | 7,500 | - | 171 |
| Diversified/Conglomerate Service | Sold | 9/20/2012 | 3.55% | 3,750 | - | 117 |
| Broadcasting and Entertainment | Sold | 9/20/2012 | 3.00% | 6,000 | - | 92 |
| Buildings and Real Estate | Sold | 9/20/2012 | 4.05% | 3,750 | - | 63 |
| Electronics | Sold | 9/20/2012 | 3.20% | 7,500 | - | 62 |
| Media/Telecom | Sold | 9/20/2012 | 3.00% | 3,000 | - | 46 |
| **Total** | | | | $ 39,000 | $ - | $ 953 |

The following table provides a summary of the Consolidated Investment Fund's maximum exposure by maturity credit rating under the swaps for which it sold protection. All of the contracts mature within the next five years.

*(in thousands)*

Current issuer credit rating*

| | |
|---|---|
| BB- | $ 7,500 |
| B | 12,750 |
| B- | 18,750 |
| | $ 39,000 |

\*   The credit rating on the underlying bond provides an indicator of the risk that the Consolidated Investment Funds will have to perform under the swap arrangement. Lower credit ratings with a shorter contract term indicate a higher likelihood of performance by the Consolidated Investment Funds.

**Total Return Swaps**
A total return swap is a two-party contract under which the parties agree to exchange returns from a predetermined portfolio of investments. The gross returns to be exchanged or swapped between the parties are calculated based on a notional amount, which is valued monthly to determine each party's obligation under the contract. The investments held in the swap portfolio consist primarily of corporate bank debt.

During the year ended December 31, 2010, the Consolidated Investment Funds' were invested in a total return swap program with a major international financial institution. The Consolidated Investment Funds realized approximately $2.2 million of net gains, which are included as a component of net realized loss from investments and derivative contracts in the Consolidated Statement of Income, and were netted against collateral previously posted with the counterparty upon termination of the program.

23

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

### 8.    Debt and Notes Payable

Consolidated debt and notes payable as of December 31, 2010 consists of:

| (in thousands) | | December 31, 2010 |
|---|---|---|
| Partnership revolving credit facility | $ | 86,296 |
| Credit Opportunities Master note payable | | 83,603 |
| Highland Capital Management Europe note payable | | 13,314 |
| Nolen Drive note payable | | 6,926 |
| | $ | 190,139 |

**Revolving Credit Facility**

On July 21, 2009, the Partnership amended and restated the Credit Agreement with Bank of America as syndication agent and The Bank of Nova Scotia as administrative agent in the amount of $147.3 million.  The Credit Agreement provides for loans which are scheduled to mature on July 21, 2011.

Interest is payable on the last day of each month.  The applicable spread for LIBOR loans under the Credit Agreement is LIBOR plus 5% per annum.  For base rate loans, the spread is 4% per annum over the prevailing prime rate.

Under the terms of the Credit Agreement, the availability of credit was subject to financial covenants requiring the Partnership to maintain a minimum amount of fee earning assets under management, a minimum amount of management fees earned, a minimum collateral ratio and a maximum on compensation paid.

On September 15, 2009 and February 22, 2010, the Credit Agreement was amended and restated to clarify some documentation items and reporting requirements.

On December 28, 2010, a waiver to the Credit Agreement was executed which allowed the Partnership to reduce its debt from $141.3 million to $86.3 million as of December 31, 2010.  The waiver called for a cash payment of $45.0 million on or before December 30, 2010 which would result in the retirement of $55.0 million in face value of debt.  The waiver allowed for the sources of the cash payment to be from cash on hand, sale of collateral or additional subordinated indebtedness. This cash payment resulted in a gain on the extinguishment of the debt of $10.0 million which is recorded in the Net Realized Gain on Extinguishment of Debt line item on the Consolidated Statement of Income. In addition to the cash payment made on December 30, 2010, the waiver also called for a cash payment of $12.8 million on or before March 31, 2011 which would result in the retirement of an additional $15.6 million in face value of debt.  The sources of cash available for the March 31, 2011 payment was to consist of cash on hand, sale of collateral or additional subordinated indebtedness.

On March 31, 2011, the Partnership amended the Revolving Credit Agreement a third to extend a number of provisions from the December 28, 2010 waiver, including forbearance from the exercising of remedies for events of default from July 21, 2011 to November 18, 2011. As referred to above, cash of $12.8 million was paid, retiring $15.6 million in face value. In order to help fund a portion of the March 31, 2011 repayment, the Partnership obtained loans from its co-founders

HIGHLY CONFIDENTIAL

D-CNL000330
Appx. 01029

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

totaling $6.7 million. The loans accrue interest at a rate of LIBOR plus five percent and mature on December 31, 2015 with all interest and principal due upon maturity.

The balance as of the date of this report is $66.7 million.

The fair value of the facility as of December 31, 2010 was approximately $83.6 million.

**Credit Opportunities Master Note Payable**
On December 19, 2008, Highland Credit Opportunities CDO Financing, LLC ("CDO Financing"), a wholly-owned subsidiary of Credit Opportunities Master, executed a Note Purchase Agreement (the "Purchase Agreement") with certain investors that provided for the issuance of up to $218 million of senior secured convertible notes guaranteed by Credit Opportunities Master. Pursuant to the terms of the Purchase Agreement and concurrent with the execution of the Purchase Agreement, CDO Financing issued $116.6 million of senior secured convertible notes for $115.6 million of cash and securities with a fair value of $0.9 million. The proceeds from the notes were used primarily to fund an additional equity investment in Highland Credit Opportunities, Ltd. (the "CDO"). This investment was required under the terms of a forbearance agreement that the Credit Opportunities Master executed with the Majority Controlling Class of the CDO's note holders.

The notes have a stated maturity date of December 31, 2012 and accrue interest on a quarterly basis at a rate of 25% per year. The terms of the Purchase Agreement allow for up to 75% of the accrued interest due at any payment date to be capitalized as additional principal owed to the holders of the notes. For the year ended December 31, 2010, no interest payable was capitalized and $45.0 million of senior secured convertible notes were repaid. As of December 31, 2010, there are $83.6 million of senior secured convertible notes outstanding.

Subject to certain conditions, the Purchase Agreement allows for CDO Financing to issue up to $101.4 million of additional notes to the existing note holders. The Purchase Agreement requires payment of a fee of 2.5% per annum on the unfunded portion of the note commitment. For the year ended December 31, 2010, approximately $2.6 million of unfunded commitment fees is recorded in interest expense in the Consolidated Statement of Income. As of December 31, 2010, a liability of approximately $5.3 million is included in interest payable in the Consolidated Balance Sheet. The fees will be paid on the stated maturity date, or on the full repayment of the notes.

Under the terms of the Purchase Agreement, the Credit Opportunities Master was not able to make any prepayments until July 1, 2010. From July 1, 2010 through December 31, 2010, the Credit Opportunities Master could elect to prepay 50% of the outstanding principal balance. After that period, Credit Opportunities Master may prepay all or a portion of the outstanding principal, provided that each partial payment made to the note holders is in an aggregate principal amount of at least $0.5 million.

25

D-CNL000331
**Appx. 01030**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

The Purchase Agreement stipulates a premium due to the note holders upon full or partial payment of the outstanding principal of the notes. The premium due is determined by the date the principal is repaid and is calculated as a percentage of that principal balance, with a minimum of 5% due on the stated maturity date of the notes. The following table presents the premium rates by payment period:

| Prepayment Period | Fees |
|---|---|
| July 1, 2010 - Dec. 31, 2010 | 15.0% |
| July 1, 2011 - Dec. 31, 2011 | 10.0% |
| July 1, 2012 - Dec. 31, 2012 | 6.0% |
| Dec. 31 2012 | 5.0% |

Credit Opportunities Master is accruing the minimum premium due, 5% of the outstanding balance, over the contractual life of the notes using the effective-yield method. For the year ended December 31, 2010, approximately $0.8 million of this premium due is recorded as a component of interest expense in Credit Opportunities Master's consolidated statement of operations. As of December 31, 2010 a liability of approximately $1.7 million for the total premium recognized over the life of the notes is included in interest payable in the Consolidated Balance Sheet. Premium of $6.8 million was paid upon the prepayment during the year and is recorded in interest expenses in the Consolidated Statement of Income.

At the note holders' option, up to 50% of the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master between January 1, 2010 and June 30, 2010. From July 1, 2010 through December 31, 2012, up to 100% of the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master. As of December 31, 2010, no unpaid principal or accrued interest on the notes was converted into limited partnership interests in the Feeder Fund or Credit Opportunities Master.

The Purchase Agreement grants the note holders a lien on certain assets held by Credit Opportunities Master. In addition, it requires Credit Opportunities Master and the CDO to comply with various financial covenants. Failure to meet these covenants may result in an event of default and give the note holders the right to accelerate repayment of the debt or initiate a liquidation of certain assets. Credit Opportunities Master was in compliance with the covenants as of December 31, 2010 and for the year then ended.

As of December 31, 2010, the estimated fair value of the notes was approximately $115.2 million, which is based on value of the risk-adjusted yield from the expected future cash flows of the notes relative to comparable investments. Actual values may vary significantly from the estimates, particularly since the terms of the Company's debt are complex, and the market for the instruments is illiquid.

**Highland Capital Management Europe, Ltd. Credit Facility**
On December 29, 2010, Highland Europe entered into a $13.3 million non-recourse credit facility with Natixis Financial Products, LLC. The facility is secured by the management fees of Highland Europe. Payments are made on the 15th day of February, May, August and November until the facility is fully paid down. The facility matures on December 31, 2015. The facility bears interest at a rate of 4.00% per annum. The rate shall be reduced to 3.50% per annum once the principal balance is reduced below $10.8 million. The rate shall again be reduced to 3.00% per annum once

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

the principal balance is reduced below $6.2 million. As of December 31, 2010, the estimated fair market value of the facility was approximately $13.3 million.

**HCREA Nolen Drive Note Payable**
On September 18, 2006, Nolen Drive entered into a $7.0 million note payable with Artesia Mortgage Capital Corporation, which is secured by the underlying property in Nolen Drive (the "Term Loan"). The Term Loan matures with all principal and accrued interest due on October 11, 2011. The Term Loan bears interest at a rate of 6.52% per annum. Payments are due on the 11th of every month. As of December 31, 2010, the estimated fair market value of the note was approximately $7.1 million.

9.    **Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its consolidated entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans. The consolidated entities may also invest in derivative instruments, including total return and credit default swaps. Investments in these derivative instruments throughout the year subject the consolidated entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Investment Funds due to a change in the market value of its investments or the value of the investments underlying swap agreements. The Partnership and its Consolidated Investment Fund's exposure to market risk is affected by a number of factors, including the size, composition and diversification of its investments and swap agreements; interest rates; and market volatility. The Partnership and its Consolidated Investment Funds use various forms of leverage, including notes, which increase the effect of any investment value changes on net assets.

**Credit Risk**
Credit risk is the potential loss the Partnership and its consolidated entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the consolidated entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties. To limit the credit risk associated with such transactions, the consolidated entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Investment Fund's limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law. There is no public market for the interests, and neither the Consolidated Investment Funds nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the consolidated investment funds. The Consolidated Investment Funds could be materially affected by the liquidity, credit and other events of the Partnership.

27

D-CNL000333

Appx. 01032

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**High Yield Bonds and Loans**
The Partnership and its Consolidated Investment Funds' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange.  These investments trade in a limited market and it may not be possible to immediately liquidate them if needed.  In addition, certain of the Partnership and its Consolidated Investment Funds' investments have resale or transfer restrictions that further reduce their liquidity.  Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Investment Funds' purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower.  Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Investment Funds have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Investment Funds may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**CLO Equity Investments**
The Partnership and its Consolidated Investment Funds may invest in CLO equity that are not rated by various credit rating agencies and are generally considered to be speculative with respect to the issuer's ability to repay principal and interest.  The yields and prices of these non-rated CLO equity tranches are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.  In addition, certain of the Consolidated Investment Funds' investments have resale or transfer restrictions that further limit their liquidity. The Partnership and its consolidated investment funds are exposed to the potential non-payment of principal and interest from their CLO equity investments.  As of December 31, 2010, 1 of the 29 CLO's managed by the Partnership paid interest to the equity holders on their last payment date.

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Investment Funds invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings.  These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

28

D-CNL000334

**Appx. 01033**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Credit Default Swaps**
Credit default swaps involve greater risks than if the Partnership or its Consolidated Investment Funds had shorted the reference obligations directly. In addition to the market risk discussed above, credit default swaps are subject to liquidity risk and credit risk. If a credit event occurs, the value of the reference obligation received by the Partnership or its Consolidated Investment Funds, couple with the periodic payments previously received, may be less than the full notional amount it pays to the buyer, resulting in loss of value.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Investment Funds' investments. However, the Consolidated Investment Funds' portfolio could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Investment Funds. In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments. This limited diversity could expose the Consolidated Investment Funds to losses that are disproportionate to market movements as a whole.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Investment Funds are provided by major financial institutions. In addition, all of the Partnership and its Consolidated Investment Funds' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges. The Partnership or its Consolidated Investment Funds may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Investment Funds' might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Leverage Risk**
The Consolidated Investment Funds may borrow funds from brokers, banks and other lenders to finance its trading operations. The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Investment Funds' investment portfolio may be subject. The use of margin and short-term borrowings creates several risks for the Consolidated Investment Funds. If the value of the Consolidated Investment Funds' securities fall below the margin level required by a counterparty, additional margin deposits are required. If the Consolidated Investment Funds are unable to satisfy a margin call, the counterparty could liquidate the position in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Investment Funds to incur significant losses. In addition, to the extent the Consolidated Investment Funds has posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Investment Funds' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Investment Funds. In addition, because the use of leverage allows the Consolidated Investment Funds to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Investment Funds may lose in the event of adverse price movements is high in relation to the amount of their investment.

HIGHLY CONFIDENTIAL

D-CNL000335

**Appx. 01034**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

In the event of a sudden drop in the value of the Consolidated Investment Funds' assets, the Consolidated Investment Funds may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements. As a result, the Consolidated Investment Funds may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Investment Funds have the ability to apply discretionary margin, haircut, financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar. The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2010, the Consolidated Investment Funds' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Wind-Down Risk**
The ultimate proceeds that the Consolidated Investment Funds' are able to realize on the sale of its investments will directly affect the amounts that the investors in the Feeder Funds are able to redeem in connection with the wind down process. These amounts may differ materially from the partners' capital balances as of December 31, 2010.

**Litigation Risk**
The Partnership and its Consolidated Investment Funds are periodically subject to legal actions arising from the ordinary course of business. In addition, certain of the Consolidated Investment Funds' Feeder Fund investors have filed lawsuits after receiving notification of the decision to wind-down certain Consolidated Investment Funds' investment portfolios. Refer to Note 17 for a discussion of the open litigation.

10. **Related Party Transactions**

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages. A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds. As of December 31, 2010, approximately $8.1 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in Other Assets in the accompanying Consolidated Balance Sheet.

**Long Term Incentive Plan and Intercompany Loan Payable to Highland Capital Management Services, Inc. ("HCMSI")**
Effective January 1, 2001, all of the Partnership's employees were transferred to HCMSI, which provides personnel management and consulting services to the Partnership. The Partnership and

30

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

HCMSI entered into a management agreement whereby the Partnership compensated HCMSI for its employee expenses plus a consulting services fee.  As of January 1, 2005, there were no further transactions with HCMSI as all employees were transferred to the Partnership.

Effective January 1, 2001, HCMSI approved a long-term incentive plan ("the LTIP") for select employees who are eligible to receive Long-Term Incentive Units ("the Units") under the LTIP.  The number of Units authorized under the LTIP is 30,000,000 and a majority of the Units granted vest 40% during the grant year and 30% for each of the two years thereafter, expiring 10 years after such grant date, unless different terms are agreed upon between the Plan Administrator and the employee.  The fair value of the Units are based upon the fair value of the Partnership, as determined in good faith, by James Dondero, the Plan Administrator and the sole shareholder of the general partner and a limited partner of the Partnership.  The LTIP was transferred to the Partnership from HCMSI on January 1, 2005.

The Units are exercisable at the discretion of the Plan Administrator, or upon a triggering event defined as the earlier of the following events:

- Change in control

- Initial public offering

- Participant's voluntary or involuntary termination due to death, disability, retirement, or hardship

- Participant's voluntary or involuntary termination other than due to death, disability, retirement, hardship, or cause is exercisable to the extent the Participant is entitled to only 80% of the vested shares.

A total of 1,104,353 Units are outstanding as of December 31, 2010 under the LTIP.  During the year ended December 31, 2010, the liability under the LTIP decreased by approximately $1.8 million, which is included in *Compensation and benefits* in the Consolidated Statement of Income.

The total balance payable to HCMSI was approximately $0.9 million as of December 31, 2010, which is related to the LTIP accrual.

Effective December 31, 2004, all of the employees at HCMSI were transferred to the Partnership, and the management agreement between the Partnership and HCMSI was terminated as to the provision of future services.  However, all of the outstanding and unfunded obligations of the Partnership to HCMSI as of December 31, 2004, as well as any additional obligations that may arise in relation to these amounts, will continue to be due and payable to HCMSI until satisfied in accordance with the provisions of the agreements in place.

**Accounts Held with Related Party**
During the year the Partnership and its subsidiaries maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control.  As of December 31, 2010, balances in the accounts were approximately $19.8 million, a portion of which exceeds Federal deposit insurance limits.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Controlling Positions**
Various members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests. Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable. Any director's fees received by the Partnership for these services as directors are paid to and retained by the Partnership. As of December 31, 2010, the Partnership and its subsidiaries held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| American Banknote Corporation | Common Equity | $    14,821 |
| American Home Patient | Common Equity | 5,653 |
| Blackwell BMC, LLC | Term Loan | 3,547 |
| Blackwell BMC, LLC | Common Equity | 28,769 |
| Consolidated Restaurant Companies, Inc. | Term Loan | 13,626 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 57,171 |
| Cornerstone Healthcare Group Holding, Inc. | Term Loan | 18,513 |
| Cornerstone Healthcare Group Holding, Inc. | Loan - Second Lien | 5,250 |
| Epocal, Inc. | Preferred Equity | 80,419 |
| Ginn LA Resorts Holdings, LLC | Term Loan | 1,194 |
| Ginn LA Conduit Lender, Inc. | Loan - Second Lien | 33 |
| Highland Long/Short Equity Fund | Mutual Fund | 231 |
| Highland Healthcare Fund | Mutual Fund | 7,371 |
| Highland Credit Strategies Fund | Closed-End Mutual Fund | 4,819 |
| Home Interiors & Gifts, Inc. | Proof of Claims | 2 |
| Marcal Paper Mills, LLC | Common Equity | - |
| Nex-Tech Aerospace Holdings, Inc. | Common Equity | 1,206 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 618 |
| Safety-Kleen Inc. | Common Equity | 178,486 |
| Solstice Neurosciences, Inc. | Preferred Equity | 263 |
| Terrestar | Preferred Equity | 1,022 |
| Trussway Industries, Inc. | Common Equity | 11,001 |

During the year ended December 31, 2010, the Partnership did not earn material income from those entities where members of management serve as members of the Board of Directors.

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank. Interest earned on the loans during the year was approximately $6.5 million. At December 31, 2010, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $264.4 million and $63.9 million, respectively.

HIGHLY CONFIDENTIAL

D-CNL000338

**Appx. 01037**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

**Affiliated Transactions**

On August 20, 2008, the Partnership issued a promissory note in the amount of $330,000 to an employee of the Partnership. The note accrues interest at a rate of LIBOR plus 1.75%. The note is payable in one lump sum on the earlier of August 20, 2015 or an event of acceleration. The note has specific forgiveness provisions of principal and interest prior to maturity if certain milestone dates are obtained. As of December 31, 2010, the principal amount on the promissory note was $212,000 with interest accrued of approximately $3,000.

In accordance with the terms of a Master Indenture Agreement (the "Indenture") dated November 2, 2006, the Credit Opportunities Master acquired 250,000 Preferred Shares of Highland Credit Opportunities CDO, Ltd (the "CDO"). The Indenture requires Credit Opportunities Master to hold, directly or indirectly, more than 99% of the CDO's outstanding Preferred Shares at all times. As of December 31, 2010, the Credit Opportunities Master held 350,000 Preferred Shares and was the sole beneficial preferred shareholder.

The CDO invests primarily in floating rate syndicated bank loans, fixed income securities, and equity investments. These investments were purchased with funds the CDO received from the issuance of rated floating rate notes and Credit Opportunities Master's purchase of the Preferred Shares. Credit Opportunities Master is the sole beneficiary of all residual income from the CDO's portfolio. Although the Preferred Shares do not have a voting interest in the CDO, they carry certain rights. Specifically, they are entitled to receive quarterly preferential dividends, without requiring any declaration by the Directors, from the date they were issued until they are redeemed.

The Investment Manager serves as the Collateral Manager for the CDO but does not receive any fees for its services to the CDO.

During the fourth quarter of 2008, the CDO failed to meet certain over-collateralization tests set forth in the First Supplement to the Indenture dated November 2, 2006. This breach would have given the CDO's Majority of Controlling Debt Class the option to accelerate repayment of the CDO's outstanding debt or initiate a liquidation of its assets. To protect the value of its investment in the CDO, Credit Opportunities Master entered into a forbearance agreement whereby the Majority Controlling Class of the CDO's note holders waived the breach and agreed not to exercise the rights discussed above. The Majority Controlling Class also agreed to waive any future events of default resulting from the CDO's failure to meet the overcollateralization tests through December 31, 2011. In return, the CDO agreed not make any preferred dividend payments to Credit Opportunities Master until the over-collateralization tests exceed certain thresholds.

Credit Opportunities Master paid certain expenses related to the forbearance agreement, which have been recorded as an increase to the cost basis of its investment in the CDO's Preferred Shares.

The Consolidated Investment Funds periodically enter into transactions to buy or sell securities with affiliated entities. During the year ended December 31, 2010, the Consolidated Investment Funds did not purchase or sell a material amount of securities to affiliated entities.

**Services Performed by an Affiliate**

In March 2007, Highland Capital of New York, L.P., a New York limited partnership ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools

33

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf.  For the year ended December 31, 2010, total marketing fee expense charged to the Partnership by Highland New York was approximately $3.7 million and as of December 31, 2010, amounts owed to Highland New York for services rendered was approximately $1.4 million.

**11.    Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business.  While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, consolidated statement of income, or its liquidity.  See Note 16.

**Operating Leases**
Future minimum lease payments under operating lease commitments of the Partnership and its consolidated entities with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

| Years Ending December 31, | | |
|---|---|---:|
| 2011 | $ | 1,757 |
| Thereafter | | - |
| | $ | 1,757 |

Total rental expense of the Partnership and its consolidated entities for operating leases was approximately $2.5 million for the year ended December 31, 2010.

**Loan Commitments**
At December 31, 2010, the Consolidated Investment Funds had unfunded loan commitments of approximately $1.1 million.  Unfunded loan commitments are marked to market on the relevant day of valuation in accordance with the Partnership's valuation policies.  Any applicable unrealized gain (loss) and unrealized appreciation (depreciation) on unfunded loan commitments are recorded on the Consolidated Balance Sheet and Consolidated Income Statement, respectively.  The net change in unrealized appreciation on unfunded transactions is not material to the Income Statement.

34

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

12.    **Postretirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements. The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals. Therefore, no new participants shall enter the plan after 2008 and no new benefits shall accrue under the plan after 2008. The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2010 are reconciled in the tables below.

*(in thousands)*

| Change in projected benefit obligation | | 2010 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 3,416 |
| Service cost | | - |
| Interest cost | | 195 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 184 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (437) |
| Benefit obligation at end of year | $ | 3,358 |

| Change in plan assets | | 2010 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 3,614 |
| Actual return on plan assets | | 391 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (437) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 3,568 |

| Reconciliation of Funded Status | | 2010 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 3,358 |
| Projected benefit obligation at end of year | | 3,358 |
| Fair value of assets at end of year | | 3,568 |
| Funded status at end of year | $ | 210 |

35

D-CNL000341
Appx. 01040

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

The Partnership does not expect to contribute to the plan during 2011.

**Assumptions**
Weighted-average assumptions used to determine benefit obligations at December 31, 2010:

| | |
|---|---|
| Discount rate | 5.70% |
| Rate of compensation increase | N/A |

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2010:

| | |
|---|---|
| Discount rate | 6.10% |
| Expected long-term return on plan assets | 6.10% |
| Rate of compensation increase | N/A |

As of December 31, 2010, approximately $0.7 million of the plan assets were categorized as Level 3.

13.   **Goodwill and Other Intangible Assets**

Below is a summary of the Partnership's goodwill and other intangible assets as of December 31, 2010:

| (in thousands) | | Carrying Value |
|---|---|---|
| Highland Floating Rate Fund | $ | 12,672 |
| Highland Floating Rate Advantage Fund | | 11,328 |
| Goodwill for Highland Europe | | 8,020 |
| | $ | 32,020 |

On April 9, 2004, the Partnership purchased the management agreements of Highland Floating Rate Fund (the "Floating Rate Fund") and Highland Floating Rate Advantage Fund (the "Advantage Fund"), collectively the "Purchased Funds." The combined purchase price for the above agreements was $24.0 million. The purchase price was allocated among the Purchased Funds pro-rata based on the approximate combined total managed assets of the funds as of the date of purchase. As a result, $12.7 million of the purchase price was allocated to the Floating Rate Fund and $11.3 million was allocated to the Advantage Fund.

The Partnership performs an impairment test as required by U.S. GAAP on a yearly basis. The Partnership's management analyzes market multiples on retail asset managers within the industry as of December 31, 2010 to determine fair value of these assets. The Partnership has determined that no impairment charge is necessary for the current year.

HIGHLY CONFIDENTIAL

D-CNL000342

**Appx. 01041**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

---

14.    **Reverse Repurchase Agreements**

Credit Strategies Master is party to collateralized financing transactions consisting of securities sold under agreements to repurchase.  As of December 31, 2010, Credit Strategies Master held high yield corporate bonds and equities with a fair value of $39.9 million under reverse repurchase agreements.   The gross amount payable to the counterparty (including accrued interest) was approximately $20.6 million and is recorded as a component of due to brokers in the Consolidated Balance Sheet.

15.    **Income Taxes**

**The Partnership**
For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.   In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.   As of December 31, 2010, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2007 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.   For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.   The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2010.

**Crusader Master**
Crusader Master is an exempted limited partnership organized in Bermuda.  Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Crusader Master. Crusader Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Crusader Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Crusader Master's net taxable income.

Since Crusader Master trades investments for its own account, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below).  The General Partner intends to conduct Crusader Master's business in such a way that it does not constitute a U.S. trade or business or create a taxable presence in any of the jurisdictions in which the Investment Manager has offices, including the United Kingdom.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

Dividends as well as certain interest and other income received by Crusader Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Crusader Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2010, a withholding tax liability of $0.3 million is included in the accrued expenses in the Consolidated Balance Sheet.

It is management's responsibility to determine whether a tax position of Crusader Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. As a result of adopting this guidance, management has established a reserve of approximately $12.5 million for uncertain tax positions, which includes approximately $1.2 million of interest and $4.0 million of penalties. Of this amount, approximately $2.7 million related to the current year and was recorded as a tax expense in Statement of Income. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2010.

Crusader Master files tax returns as prescribed the tax laws of the jurisdictions in which it operates. In the normal course of business, Crusader Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2010, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2007 forward.

A wholly owned corporation of Crusader Master has incurred capital losses on the sale of investments that exceed the amount of capital gains it has earned. Management has concluded that the subsidiary is not likely to generate additional gains in future periods and has established a valuation allowance to reserve for the entire amount of the deferred tax asset associated with the unused capital losses.

**Credit Opportunities Master**
The Credit Opportunities Master has adopted authoritative guidance which requires management to determine whether a tax position of Credit Opportunities Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. Credit Opportunities Master has determined that there was no effect on the financial statements from the application of this guidance. As of December 31, 2010, a liability to account for uncertain tax positions of $0.2 million is classified within other liabilities within the Consolidated Balance Sheet. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2010.

Credit Opportunities Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Credit Opportunities Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2010, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2007 forward (with limited exceptions).

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

Dividends as well as certain interest and other income received by Credit Opportunities Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles.  Interest, dividend and other income realized by Credit Opportunities Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

**Credit Strategies Master**
Credit Strategies Master is an exempted limited partnership organized in Bermuda.  Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Credit Strategies Master.  Credit Strategies Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Credit Strategies Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines.  Each partner is individually liable for income taxes, if any, on its share of Credit Strategies Master's net taxable income.

The Credit Strategies Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.  In the normal course of business, Credit Strategies Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2010, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2007 forward (with limited exceptions).

It is management's responsibility to determine whether a tax position of Credit Strategies Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.   For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner has determined that there was no effect on the financial statements from the application of this guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2010.

Dividends as well as certain interest and other income received by Credit Strategies Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles.  Interest, dividend and other income realized by Credit Strategies Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

A wholly-owned corporation of the Credit Strategies Master incurred approximately $0.9 million of tax expense on income earned by the entity. No portion of this amount was unpaid as of December 31, 2010.

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

39

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Notes to Consolidated Financial Statements
December 31, 2010

16.    **Legal Proceedings**

In April 2007, CDO Master Fund entered into a risk sharing agreement structured as a derivative whereby it absorbed 51% of the gains and losses generated from a loan warehouse agreement. The remaining 49% of the warehouse gains and losses were absorbed by Highland Special Opportunities Holding Company ("SOHC").  The warehouse was financed by a reputable financial institution and held collateral consisting of investments in collateralized loan obligations and credit default swaps.  Although the agreement expired on August 15, 2007, the counterparty agreed to extend it for one year on March 15, 2008.  Due to liquidity constraints, CDO Master Fund was unable to meet a November call, and the counterparty elected to terminate the agreement as of December 5, 2008.  The collateral held in the warehouse was subsequently seized by the counterparty and sold on the open market through bids-wanted-in competition.  After offsetting the proceeds received from the sale and the income earned on the collateral prior to the sale, the counterparty notified CDO Master Fund that its pro-rata share of the losses incurred under the agreement was $350.2 million.  CDO Master Fund has accrued a liability in its financial statements for this amount.  On February 24, 2009, the counterparty (the "Plaintiffs") filed a lawsuit against CDO Master Fund, SOHC and the Partnership in the New York State Supreme Court of Manhattan alleging that they suffered losses in excess of $745 million due to the depreciation in value of the warehouse collateral.  On February 19, 2010 a New York Appeals Court sided with the Partnership and dismissed UBS' claims against the Partnership.  Thereafter on June 22, 2010, Plaintiffs filed an amended complaint with the Court against the Partnership and certain affiliated registered and unregistered investment vehicles alleging $687 million in damages.  On March 15, 2011, the First Appellate Division heard the Partnership's appeal of the ruling regarding dismissal of the amended complaint.  The First Appellate Division has not yet issued a ruling on this matter.

In April 2009, HYMF, Inc. filed a lawsuit in the New York State Court against the Partnership and certain consolidated investment funds (collectively "the Defendants").  The lawsuit alleges that the Defendants breached their contractual and fiduciary duties by failing to return HYMF's original investment in the consolidated investment funds.  The Defendants intend to vigorously defend against the lawsuit.  At this time, management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

On July 15, 2008, Crusader Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida.  The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated.   On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement.  In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%.  Based on the ruling, Crusader Master recorded a reserve of approximately $5.3 million as of December 31, 2010, which represents its ratable share of the judgment.  However, the Defendants believe they acted in good faith pursuant to the terms of the relevant agreements and intend to appeal the decision.  The reserve is included as a component of accrued expenses on the Consolidated Balance Sheet and a component of net realized losses from investment transactions on the Consolidated Statement of Income.

During the first quarter of 2009, certain investors in Highland Credit Strategies Fund, Ltd. filed lawsuits in response to the decision to wind-down Credit Strategies Master's investment portfolio.  They have made various claims, including breach of fiduciary duties, negligence, tortuous

40

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2010**

interference with the payment of redemption amounts, and/or fraud.  Both the Partnership and Highland Credit Strategies Fund, Ltd. have been named as parties to the lawsuits.  Management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.  As of December 31, 2010, approximately $1.3 million of required cash payments made by Credit Strategies Master to retain legal firms to defend these matters are included in Other Assets in the Consolidated Balance Sheet.

**17.    Fund Wind Down**

On February 4, 2009, the Partnership informed investors of CDO Master that the fund was effectively insolvent and that it was in the best interest of the fund to liquidate the fund's remaining assets.  The proceeds from the asset liquidations will be distributed to the remaining financing counterparties and other senior and trade creditors as the liabilities in the fund exceed the assets to such a degree that proceeds from the asset sales will not be able to satisfy any unpaid redemptions or to distribute amounts to any current investors.

During 2008, Crusader Master and Credit Strategies Master were negatively affected by deteriorating conditions in the overall economy and credit markets. These conditions became more severe during the third and fourth quarters of 2008 and generated significant losses on various derivative transactions and repurchase agreements to which Crusader Master and Credit Strategies Master were parties. In addition, certain assets that Crusader Master and Credit Strategies Master purchased on margin through prime brokerage agreements experienced a significant decline in value.  In certain cases, Crusader Master and Credit Strategies Master were unable to post the collateral required to secure these losses, and the counterparties provided notice of their intent to terminate the agreements.  As a result, access to the credit that Crusader Master and Credit Strategies Master used to manage its investing and financing activities became highly constrained, and in some cases unavailable.   In light of these circumstances, the General Partners (the general partner of Highland Crusader Fund, L.P. and the general partner of Highland Credit Strategies Fund, L.P.) and the Board of Directors of Highland Credit Strategies Fund, Ltd. and Highland Crusader Fund, Ltd. concluded, in consultation with the Investment Manager, that it would be in the best interests of their investors to wind down the investment portfolios of Credit Strategies Master and Crusader Master.  On October 15, 2008, the Investment Manager notified investors that it would begin the wind-down process.  The Investment Manager also restricted subscriptions and the payment of withdrawals to the Feeder Funds effective the same date.

In connection with the wind down, the limited partner interests of the Feeder Funds were compulsorily withdrawn/redeemed on November 15, 2008 in accordance with the terms of the governing documents.  The General Partner has suspended payment of distributions, and any outstanding balances with respect to withdrawal and/or redemption amounts. A formal plan of liquidation has not been finalized by management, and there are no assurances that investors will realize the remaining equity balance over the course of the wind down. Distributions will ultimately be made on a pro-rata basis based on the respective redemption amounts as of November 15, 2008 unless a plan of distribution dictates otherwise. Future distributions will be made as the value of Crusader Master and Credit Strategies Master's investments are realized and all obligations due to counterparties and service providers of Crusader Master, Credit Strategies Master, and the Feeder Funds have been satisfied.

Subsequent to December 31, 2010 a Plan of Distribution was agreed to for Credit Strategies Master.  See Note 18 for additional discussion.

41

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2010**

As of December 31, 2010, the estimated value of the partners' capital available for distribution from Crusader Master to its Feeder funds was approximately $1,488.7 million. The actual amounts that will be distributed upon completion of the wind down process are inherently uncertain. The Investment Manager estimates that the wind down could take up to four years to complete. Capital will be distributed as it becomes available in accordance with a plan of distribution, once approved and implemented.

On October 14th 2010, certain investors in Highland Crusader Fund II,, Ltd. presented a Petition to Wind-Up the Fund to the Supreme Court of Bermuda Companies (Winding Up) Commercial Court ("the Court") for the purpose of appointing a liquidator. If a Winding-Up Order is issued, a liquidator will be appointed and the liquidator will take steps to collect in and realize the company's assets and will deal with creditors' claims. If a Winding-Up order is not issued by the Court, the Investment Manager will continue to work on finalizing a formal plan of distribution with all interested parties. Crusader Master and consequently the other Feeder Funds are not parties to this petition, but could be subject to subsequent actions taken by the creditors, shareholders, or the Court. The Investment Manager believes it is currently not possible to evaluate the likelihood of any particular outcome from the matter at this point. The matter is currently scheduled to be decided by the Court at a hearing commencing on May 30, 2011.

18.   **Subsequent Events**

On January 4, 2011 and February 4, 2011 Credit Opportunities Master elected to prepay $10.0 million and $17.0 million of the outstanding principal balance of the notes, respectively, including interest and prepayment premium.

Crusader Master had previously recorded a reserve of approximately $5.3 million relating to an unfavorable decision in a legal case that involved Crusader Master. In February 2011, the District Court of Florida quashed the judgment against the Defendants and overturned the ruling that resulted in Crusader Master recording the reserve. Crusader Master does not believe an appeal of this decision will be successful and relieved the reserve, which will be reflected in the Consolidated Statement of Income for the year ending December 31, 2011.

On March 31, 2011, the Partnership amended the Revolving Credit Agreement a third time to extend a number of provisions from the December 29, 2010 waiver. A discussion of the amendment can be found in Note 8.

On March 31, 2011, the Partnership obtained loans from its co-founders totaling $6.7 million. A discussion of the loans can be found in Note 8.

In April 2011, the Bermuda Commercial Court approved a plan to distribute the assets of Credit Strategies Master. The Scheme of Arrangement for the offshore fund and Plan of Distribution for the onshore fund were implemented on May 1, 2011. As part of the arrangement, the Partnership paid $3.0 million to Credit Strategies Master.

In April 2011, the Partnership entered into a 10-year lease agreement with Crescent TC Investors, L.P.

42

D-CNL000348

Appx. 01047

**Supplemental Information**

HIGHLY CONFIDENTIAL

D-CNL000349

**Appx. 01048**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2010**

*(in thousands)*

The above information was derived from the audited December 31, 2010 consolidated financial
Statements of Highland Capital Management, L.P.  This information should be read in conjunction with
such audited financial statements and should not be used for tax purposes.

**Assets**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 1,991 |
| Restricted cash | | 1,656 |
| Investments at fair value (cost $72,055) | | 65,749 |
| Equity method investees | | 17,926 |
| Management and incentive fees receivable | | 15,282 |
| Due from brokers | | 137 |
| Other current assets | | 13,317 |
| Deferred incentive fees receivable | | 35,883 |
| Purchased investment management contracts | | 24,000 |
| Goodwill and other intangible assets, net | | 388 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $10,237 | | 4,830 |
| | $ | 181,159 |

**Liabilities and Partners' Capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 2,187 |
| Accrued and other liabilities | | 59,488 |
| Debt and notes payable | | 86,296 |
| Long-term incentive plan | | 1,081 |
| Total liabilities | | 149,052 |
| Partners' capital | | 32,107 |
| **Total liabilities and partners' capital** | $ | 181,159 |

44

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**December 31, 2010**

*(in thousands)*

The above information was derived from the audited December 31, 2010 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements and should not be used for tax purposes.

| | | |
|---|---:|---:|
| **Revenue:** | | |
| Management fees | $ | 78,353 |
| Incentive fees/allocations | | 8,066 |
| Interest and investment income | | 2,286 |
| Other income | | 11,193 |
| Total revenue | | 99,898 |
| | | |
| **Operating expenses:** | | |
| Compensation and benefits | | 48,802 |
| Professional fees | | 10,294 |
| Investment and research consulting | | 785 |
| Amortization and depreciation | | 1,820 |
| Interest expense | | 8,353 |
| Other operating expenses | | 19,275 |
| Total operating expenses | | 89,329 |
| | | |
| Income/(loss) before investment activities | | 10,569 |
| | | |
| **Realized and unrealized gain/(loss) from investments transactions:** | | |
| Net realized loss on sale of investment transactions | | (7,866) |
| Net change in unrealized gain on investments | | 14,628 |
| Total realized and unrealized loss from investments transactions | | 6,762 |
| | | |
| **Realized and unrealized earnings from equity method investee:** | | |
| Net unrealized losses from equity method investees | | (990) |
| Total realized and unrealized losses from equity method investees | | (990) |
| | | |
| Net realized gain on extinguishment of debt | | 10,000 |
| | | |
| **Net income** | $ | 26,341 |

45

HIGHLY CONFIDENTIAL

# EXHIBIT 66

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2011**

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Index**
**December 31, 2011**

Page(s)

Report of Independent Auditors ........................................................................................................................1

**Audited Consolidated Financial Statements**

Balance Sheet ...............................................................................................................................................2

Statement of Income .....................................................................................................................................3

Statement of Changes in Partners' Capital ..................................................................................................4

Statement of Cash Flows ..............................................................................................................................5

Notes to Financial Statements ...............................................................................................................6–44

Supplemental Information……………………………………………………………………………………….45-47



**Report of Independent Auditors**

To the General and Limited Partners of
Highland Capital Management, L.P:


In our opinion, the accompanying consolidated balance sheet and the related consolidated statements of income, of changes in partners' capital and of cash flows (hereinafter referred to as the "financial statements") present fairly, in all material respects, the consolidated financial position of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership") at December 31, 2011, and the results of their operations, the changes in their partners' capital, and their cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.  These financial statements are the responsibility of the Partnership's management.  Our responsibility is to express an opinion on these financial statements based on our audit.  We conducted our audit of these statements in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation.  We believe that our audit provides a reasonable basis for our opinion.

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole.  The supplemental unconsolidated balance sheet and statement of income are presented for purposes of additional information, and are not a required part of the basic consolidated financial statements.  Such information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and, in our opinion, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

May 21, 2012

*PricewaterhouseCoopers LLP, 2001 Ross Avenue, Suite 1800, Dallas, TX 75201-2997*
*T: (214) 999 1400, F: (214) 754 7991, www.pwc.com/us*

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2011**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 74,668 |
| Restricted cash | | 14,691 |
| Investments at fair value (cost $2,901,075) | | 1,926,277 |
| Unrealized gains on derivative contracts | | 162 |
| Management and incentive fees receivable | | 29,402 |
| Due from brokers | | 20,708 |
| Other assets | | 26,800 |
| Deferred incentive fees receivable | | 29,428 |
| Goodwill and other intangible assets | | 8,020 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,562 | | 6,869 |
| **Total assets** | $ | 2,137,025 |

**Liabilities and Partners' Capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 2,048 |
| Securities sold, not yet purchased (proceeds $6,134) | | 8,390 |
| Withdrawals payable | | 15,516 |
| Obligations to return collateral | | 6,792 |
| Interest payable | | 11,326 |
| Due to brokers | | 370,711 |
| Due to brokers for securities purchased not yet settled | | 66,882 |
| Accrued and other liabilities | | 70,256 |
| Secured borrowing | | 3,812 |
| Debt and notes payable | | 114,813 |
| Total liabilities | | 670,546 |
| Non-controlling interest | | 1,427,281 |
| Commitments (Note 11) | | |
| **Partners' capital** | | 39,198 |
| **Total liabilities and partners' capital** | $ | 2,137,025 |

The accompanying notes are an integral part of these consolidated statements.

HIGHLY CONFIDENTIAL

D-CNL000355

**Appx. 01055**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Income**
**December 31, 2011**

*(in thousands)*

| | | |
|---|---:|---:|
| Revenue: | | |
| Management fees | $ | 154,218 |
| Incentive fees/allocations | | 1,381 |
| Interest and investment income | | 136,483 |
| Other income | | 13,772 |
| Total revenue | | 305,854 |
| | | |
| Expenses: | | |
| Compensation and benefits | | 56,455 |
| Professional fees | | 30,717 |
| Investment and research consulting | | 708 |
| Amortization and depreciation | | 1,346 |
| Interest expense | | 26,416 |
| Tax expense | | 4,999 |
| Other expenses | | 21,155 |
| Total expenses | | 141,796 |
| | | |
| Income before investment and derivative activities | | 164,058 |
| | | |
| Realized and unrealized gain/(loss) from investment and derivative transactions: | | |
| Net realized loss on investment and derivative transactions | | (373,502) |
| Net change in unrealized gain on investment and derivative transactions | | 335,343 |
| Total realized and unrealized loss from investment and derivative transactions | | (38,159) |
| | | |
| **Extraordinary Items** | | |
| Net realized gain on extinguishment of debt | | 2,823 |
| Novation of purchased investment management contracts | | (24,000) |
| Fund wind down costs (Note 17) | | (23,292) |
| | | |
| Net income | | 81,430 |
| | | |
| Net income attributable to the non-controlling interest | | (55,183) |
| | | |
| Net income attributable to Highland Capital Management, L.P. | $ | 26,247 |

The accompanying notes are an integral part of these consolidated statements.

3

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2011**

*(in thousands)*

| | General Partner | Limited Partners | Total |
|---|---|---|---|
| Partners' capital, December 31, 2010 | $ 495 | $ 31,612 | $ 32,107 |
| Net income attributable to Highland Capital Management, L.P. | - | 26,247 | 26,247 |
| Partner distributions | (105) | (19,051) | (19,156) |
| Partners' capital, December 31, 2011 | $ 390 | $ 38,808 | $ 39,198 |

The accompanying notes are an integral part of these consolidated statements.

4

HIGHLY CONFIDENTIAL

D-CNL000357

**Appx. 01057**

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2011**

*(in thousands)*

| | | |
|---|---|---:|
| **Cash flows from operating activities:** | | |
| Net income | $ | 81,430 |
| Adjustment to reconcile net income to cash and cash equivalents | | |
| provided by operating activities: | | |
| Net realized loss on investments and derivative transactions | | 373,502 |
| Net realized gain on extinguishment of debt | | (2,823) |
| Net change in unrealized gain on investments and derivative transactions | | (335,343) |
| Net change in unrealized gain from securities sold, not yet purchased | | (4,783) |
| Deferred tax expense on unrealized gains | | 1,068 |
| Amortization and depreciation | | 1,346 |
| **Changes in assets and liabilities:** | | |
| Restricted cash | | 14,410 |
| Management and incentive fee receivable | | (11,791) |
| Deferred incentive fees | | 6,455 |
| Investment management contracts | | 24,000 |
| Other assets | | 11,005 |
| Due from brokers | | 12,392 |
| Accounts payable | | (150) |
| Accrued and other liabilties | | (19,948) |
| Due to brokers for unsettled trades | | (666) |
| Interest payable | | 4,265 |
| Withdrawals payable | | (220) |
| Long-term incentive plan | | (1,081) |
| Obligations to retun collateral | | 6,792 |
| Net cash provided by operating activities | | 159,860 |
| | | |
| **Cash flows from investing activities:** | | |
| Purchases of fixed assets and leasehold improvements, net | | (3,381) |
| Purchases of investments | | (169,981) |
| Proceeds from dispositions of investments | | 562,705 |
| Purchases of investments to cover securities sold, not yet purchased | | (15,650) |
| Net cash provided by investing activities | | 373,693 |
| **Cash flows from financing activities:** | | |
| Payments on long-term debt | | (25,756) |
| Payments on revolving debt and promissory notes | | (26,991) |
| Payments on affiliate loans, net | | (6,614) |
| Due to brokers | | (50,349) |
| Capital contributions from minority interest investors of consolidated entities | | 107,394 |
| Capital withdrawals by minority interest investors of consolidated entities | | (533,528) |
| Partner distributions | | (19,156) |
| Net cash used in financing activities | | (555,000) |
| Net decrease in cash and cash equivalents | | (21,447) |
| | | |
| **Cash and cash equivalents** | | |
| Beginning of year | | 96,115 |
| End of year | $ | 74,668 |
| | | |
| **Supplemental disclosure of cash flow informaton:** | | |
| Interest paid during the year | $ | 26,768 |

The accompanying notes are an integral part of these consolidated statements.

5

D-CNL000358
**Appx. 01058**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**1.     Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment advisor under the Investment Advisors Act of 1940 that manages collateralized loan obligations ("CLOs"), hedge funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business.   The Partnership's general partner is Strand Advisors, Inc. (the "General Partner").  The Partnership is 100% owned by senior management of the Partnership.

As of December 31, 2011, the Partnership provided investment advisory services for twenty-eight CLOs, five separate accounts, one registered investment company, one master limited partnership, and fourteen hedge fund structures, with total fee-earning assets under management of approximately $19.8 billion.

**2.     Liquidity Considerations**

As further discussed in Note 8, the Partnership has a Revolving Credit Facility (the "Credit Agreement") originally scheduled to mature on July 21, 2011. Forbearance from the exercising of remedies for events of default was extended from July 21, 2011 through April 30, 2012 and subsequent to year-end, was further extended from April 30, 2012 to May 2, 2013. See further discussion in Note 8. The Credit Agreement is collateralized by assets of the Partnerships with an estimated fair value of approximately $115 million at December 31, 2011.

**3.     Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements.  Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected

6

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

**Consolidation of Non-Variable Interest Entities**
The Partnership consolidates the following non-VIE's (collectively referred to as the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Crusader Offshore Partners, L.P. ("Crusader Master"), a Bermuda exempted limited partnership that commenced operations on July 10, 2000;

- Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund"), a Bermuda limited partnership that commenced operations on November 9, 2005;

- Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master"), a Bermuda exempted limited partnership that commenced operations on August 24, 2005

- Highland Credit Opportunities CDO, L.P. ("Credit Opportunities Master"), a Delaware limited partnership that commenced operations on December 29, 2005;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Canopy Timberlands, L.P., a Delaware limited partnership that commenced operations on April 29, 2008;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore") a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore") a Delaware limited partnership that commenced operations on September 2, 2008; and

**Consolidation of Majority Owned Entities**
The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Management Europe, Ltd. ("Highland Europe"), a company organized in the United Kingdom and purchased by the Partnership on April 6, 2005;

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in HFP GP, LLC, a Delaware limited liability company that commenced operations on January 20, 2006;

7

D-CNL000360

**Appx. 01060**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd, a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 59% interest in HCREA Nolen Drive, L.P., a Texas limited partnership that commenced operations on July 17, 2006;

- 100% interest in Highland Special Situations Fund, a Delaware statutory trust that is registered with the Securities and Exchange Commission under the Investment Company Act of 1940, as amended, as a non-diversified, closed-end management investment company, and commenced operations on May 18, 2005.

- 100% interest in Highland Energy and Materials Fund, a Delaware statutory trust that is registered with the Securities and Exchange Commission under the Investment Company Act of 1940, as amended, as a non-diversified, closed-end management investment company, and commenced operations on December 1, 2011.

All significant interpartnership and intercompany accounts and transactions have been eliminated in consolidation of all of the aforementioned consolidated entities. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide - Investment Companies. The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

**Reclassifications**
Previously reported amounts for the prior year have in some instances been reclassified to conform to the current year presentation.

**Investment Transactions**
Investment transactions are recorded on a trade date basis. Investments in securities are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements. Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value. The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages. During the year ended December 31, 2011, the Partnership and its consolidated entities recognized management and incentive fees of approximately $154.0 million, and $1.4 million, respectively. The Partnership recognized approximately $1.8 million of appreciation on incentive fees earned prior to 2008, previously deferred under Sec. 409(A) of the Internal Revenue Code, which has been presented in *Other Income* in the Consolidated Statement of Income.

8

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Derivative Contracts**
Credit Default Swaps are marked-to-market based upon values from third party vendors or broker quotations and the change in value is recorded as unrealized appreciation/depreciation. Swap contracts with cumulative unrealized gains as of a reporting date are recorded as assets on the Consolidated Balance Sheet, while swap contracts with cumulative unrealized losses as of the reporting date are recorded as liabilities. Upfront payments made/received by the Consolidated Funds are amortized or accreted for financial reporting purposes, with the unamortized or unaccreted portion included in the Consolidated Balance Sheet. A termination payment by the counterparty or the Consolidated Funds is recorded as a realized gain or loss, as well as the net periodic payments received or paid by the Consolidated Fund.

**Dividends, Interest and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. Of the entities consolidated, only Highland Europe is subject to these provisions. See further discussion in Note 15..

**Extraordinary Items**
Extraordinary items consist of events or transactions of a material nature that are both unusual in nature and infrequent in occurrence. An event or transaction is unusual in nature if it is abnormal and clearly unrelated to typical activities of the business. It is infrequent in occurrence if it is not reasonably expected to recur in the foreseeable future.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Foreign cash of $1.4 million is included in the cash and cash equivalents on the consolidated balance sheet. A portion of cash and cash equivalents exceeds Federal deposit insurance limits.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions. These amounts are reported as restricted cash on the Consolidated Balance Sheet.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

**Debt Securities**
The Consolidated Funds invest in various types of debt, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Consolidated Funds first seek to obtain reliable market quotes from other parties dealing in the specific asset. Absent both a reliable market quote and third-party pricing service date, the Consolidated Funds may use various models to establish an estimated exit price. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

**Private Equity Investments**
The Consolidated Funds hold private equity investments which resulted from the restructuring of other instruments. These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Consolidated Funds will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis. When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances.

**Asset Backed Securities**
The Consolidated Funds invest in a variety of asset backed securities. Asset backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity. The Consolidated Funds generally utilize an independent third party firm to perform these calculations and provide the relevant inputs. The Consolidated Funds evaluate the results based on visible market activity and market research. When appropriate, the Consolidated Funds may apply other techniques based on a specific asset's characteristics.

HIGHLY CONFIDENTIAL

D-CNL000363

**Appx. 01063**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Credit Default Swaps**
As discussed in Note 7, under a credit default swap agreement two parties agree to transfer the credit exposure of an asset between one another. The seller of the swap guarantees the credit worthiness of a specific instrument by agreeing to pay the buying party a specific amount (generally par value) in the event that the instrument defaults.

At December 31, 2011, the Partnership's Consolidated Investment Funds were party to credit default swaps in which they act as the guaranteeing party. In the event that any of the underlying instruments default prior to the expiration of the agreements, the Consolidated Investment Funds are obligated to pay the swap counterparty the par value of the specific instrument. The Consolidated Investment Funds collect a fee based on the size of the underlying positions which are treated as realized gains once received. The difference between the current market value of the swaps and the original price of the swap is reported as an unrealized gain or loss.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand. Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash or securities. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender.

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Investment Manager's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Securities Loaned**
The Partnership's Consolidated Investment Funds may lend securities to their financing counterparties for margin. The lending entity receives the interest associated with the securities loaned. The loans are secured by the fair value of the securities. Gains or losses in the fair value of the securities loaned that occur during the term of the loan will be for the account of the lender. The lender has the right under the lending agreement to recover the securities from the prime brokers on demand. The lender pays a fee to the broker for the cash collateral received. This is accounted for as interest expense. A credit risk exists to the lender under this type of transaction to the extent that the counterparty defaults on its obligation to return the securities loaned.

**Revolving Credit Agreements**
The funded portion of revolving credit agreements is recorded at fair value on the Consolidated Balance Sheet as a component of investments, net of the fair value of unfunded commitments for which the Consolidated Funds may be liable in the future (Note 11).

**Margin Transactions**
In order to obtain more investable cash, the Consolidated Investment Funds may use various forms of leverage including purchasing securities on margin. A margin transaction consists of

11

D-CNL000364

Appx. 01064

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date.  Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing. Such leverage may allow the Partnership and its subsidiaries to increase net assets at a greater rate during increasing markets, but also may lead to a more rapid decrease in net assets in a declining market.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable.  This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request.  As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2011.  Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined.  Withdrawals payable may be treated as capital for purposes of allocations of gains/losses pursuant to the partnerships' governing documents.  At December 31, 2011, the Consolidated Investment Funds had withdrawals payable of $15.5 million.

**Foreign Currency Transactions**
The Partnership's subsidiary Highland Europe uses British Pounds as its functional currency and enters into transactions in multiple foreign currencies.  All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2011.  Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period.  Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the consolidated statement of income.

The Consolidated Investment Funds do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments*.

**Financial Instruments**
The Partnership and its consolidated entities determine fair value of financial instruments as required by U.S. GAAP.  The carrying amounts for cash and cash equivalents, receivables, accounts payable and accrued liabilities approximate their fair values because of their short maturities.

**Life Settlement Contracts**
One of the Partnership's Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method.  These contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. The contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet.  Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement.   Cash flows relating to the purchase and sale of the contracts are recorded as a component of "Purchase of investments" and "Proceeds from the disposition of investments" on the Consolidated Statement of Cash Flows.

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

12

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Goodwill and Other Intangible Assets**
The Partnership purchased Highland Europe on April 6, 2005. Goodwill represents the amount paid in excess of the fair value of the assets of Highland Europe at the date of acquisition. No goodwill impairments existed as of December 31, 2011.

**Recently Issued Accounting Standards and Interpretations**
In May 2011, the Financial Accounting Standards Board issued Accounting Standards Update 2011-04 "Amendments to Achieve Common Fair Value Measurement and Disclosure Requirements in U.S. GAAP and IFRS" ("ASU 2011-04"). ASU 2011-04 includes common requirements for measurement of and disclosure about fair value between U.S. GAAP and International Financial Reporting Standards ("IFRS"). ASU 2011-04 will require reporting entities to disclose quantitative information about the unobservable inputs used in the fair value measurements categorized within Level 3 of the fair value hierarchy. The new and revised disclosures are effective for interim and annual reporting periods beginning after December 15, 2011. At this time, management is evaluating the implications of ASU 2011-04 and its impact on the financial statements has not been determined.

In June 2011, the FASB amended existing standards to comprehensive income to require all non-owner changes in stockholders' equity be presented either in a single continuous statement of comprehensive income or in two separate but consecutive statements. Under Accounting Standards Update 2011-05, "Presentation of Comprehensive Income", the option to present the components of other comprehensive income as part of the statement of changes in stockholders' equity has been eliminated. In addition, it requires an entity to present reclassification adjustments on the face of the financial statements from other comprehensive income to net income. The guidance is effective for non-public filers during interim and annual periods beginning after December 15, 2012, and as such, the Partnership has not adopted this guidance for the year ending December 31, 2011.

In December 2011, the FASB amended existing standards to require an entity to disclose information about offsetting and related arrangements to enable users of its financial statements to evaluate the effect or potential effect of netting arrangements on an entity's financial position, including the effect or potential effect of rights of setoff associated with certain financial instruments and derivative instruments. The guidance, Accounting Standards Update No. 2011-11 "Balance Sheet – Disclosures about Offsetting Assets and Liabilities", is effective for annual reporting periods beginning on or after January 1, 2013, and interim periods within those annual periods, with retrospective disclosures required for all comparative periods presented. The Partnership is currently evaluating the impact of this accounting update on our financial disclosures but do not expect the update to have a material impact on financial position or results of operations.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

4.    **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2011:

*(in thousands)*

| | | |
|---|---|---:|
| Buildings | $ | 2,595 |
| Leasehold improvements | | 4,242 |
| Computer and equipment | | 3,758 |
| Furniture and fixtures | | 2,474 |
| Computer software | | 2,349 |
| Construction-in-Progress | | 3,013 |
| Accumulated depreciation | | (11,562) |
| | $ | 6,869 |

The Partnership and its consolidated entities are depreciating fixed assets as follows:

| | **Period** |
|---|---:|
| Buildings | 29 - 40 years |
| Leasehold improvements | Lease term |
| Computer and equipment | 5 years |
| Furniture and fixtures | 7 years |
| Computer software | 3 years |

Depreciation expense in 2011 totaled approximately $1.3 million for the Partnership and its subsidiaries.

14

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

5.     **Investments**

Detailed below is a summary of the Partnership's investments at December 31, 2011:

| (in thousands) | Amortized Cost/Cost | | Fair Value | |
|---|---:|---:|---:|---:|
| Syndicated bank loans | $ | 358,557 | $ | 161,418 |
| Fixed income securites | | 489,703 | | 273,832 |
| Equity securities | | 1,400,491 | | 1,079,044 |
| Life settlement contracts | | 307,677 | | 175,700 |
| CLOs (mezz tranches) | | 38,246 | | 22,083 |
| CLOs (residual CLO equity tranches) | | 31,077 | | 8,163 |
| Closed-end mutual funds | | 10,997 | | 12,928 |
| Private placement real estate | | 84,951 | | 358 |
| Limited partnerships | | 179,376 | | 180,399 |
| Rights and Warrants | | - | | 12,352 |
| Total investments | $ | 2,901,075 | $ | 1,926,277 |
| Credit default swaps | $ | - | $ | 162 |

| | Proceeds | | Fair Value | |
|---|---:|---:|---:|---:|
| Securities sold, not yet purchased | $ | 6,134 | $ | 8,390 |

**Affiliated Investments**
*Investments in Residual CLO Equity and Mezzanine Tranches*
Investments in affiliated residual CLO equity tranches primarily represent tranches of CLOs for which the Partnership and Highland Europe provide investment advisory services.  The Consolidated Investment Funds receive quarterly distributions based on the excess interest after paying the stated interest distributions to the senior and mezzanine note holders, and paying the investment manager, trustee and other related fees.  A portion of these distributions are amortized against the cost basis of the investment based on the actual cash distributions received during the year versus the total expected remaining cash distributions to the residual CLO equity tranche.  The remainder of the distribution is recorded as interest income.

Investments in residual equity and mezzanine tranches of CLOs are not actively traded.  The estimated fair value of the CLOs is derived from broker quotes and valuation models.  The estimated fair value of these investments as presented in the consolidated balance sheet does not necessarily represent the amount that could be obtained from the sale of these investments.  Changes in the credit quality or the performance of the underlying collateral, the availability and price of assets available for reinvestment, interest rates and/or the interest rate curve, or other market conditions could have a material impact on the estimated fair value of the investments.

*Investment in Pyxis Long/Short Equity Fund*
The Partnership invests in Pyxis Long/Short Equity Fund ("HEOF"), a diversified, open-end RIC for which the Partnership provides investment advisory services.  As of December 31, 2011, the market value of the Partnership's investment in HEOF was approximately $0.2 million.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

*Investment in Pyxis Healthcare Fund*
The Partnership invests in Pyxis Healthcare Fund ("HHF"), a non-diversified, open-end RIC for which the Partnership provides investment advisory services. As of December 31, 2011, the market value of the Partnership's investment in HHF was approximately $7.0 million.

*Investment in Pyxis Credit Strategies Fund*
The Partnership invests in Pyxis Credit Strategies Fund ("HCF"), a diversified, closed-end RIC for which the Partnership provides investment advisory services. As of December 31, 2011, the market value of the Partnership's investment in HCF was approximately $3.9 million. During the year ended December 31, 2011, the Partnership received approximately $0.3 million in dividends from HCF.

*Investment in Pyxis Energy and Materials Fund*
The Partnership invests in Pyxis Energy and Materials Fund ("HEF"), a non-diversified, closed-end RIC for which the Partnership provides investment advisory services. As of December 31, 2011, the market value of the Partnership's investment in HEF was approximately $3.0 million.

*Investment in Highland Diversified Credit Fund*
The Partnership invests in Highland Diversified Credit Fund ("DCF"), a hedge fund for which the Partnership provides investment advisory services. As of December 31, 2011, the market value of the Partnership's investment in DCF was approximately $2.2 million.

*Investment in Cummings Bay Healthcare Fund*
The Partnership invests in Cummings Bay Healthcare Fund, L.P. ("Cummings Bay"), a hedge fund for which the Partnership provides investment advisory services. As of December 31, 2011, the market value of the Partnership's investment in Cummings Bay was approximately $3.0 million.

*Prepaid Forward Contract*
On July 28, 2006, Highland Multi-Strategy Onshore Master Subfund I, LLC ("Subfund") and Barclays Bank PLC ("Barclays") entered into a prepaid forward contract. The Partnership and affiliates redeemed approximately $312.7 million of a reference portfolio, which was comprised of the following basket of funds advised by the Partnership: Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund and Select Equity Fund. Barclays simultaneously contributed approximately $312.7 million as a hedge to its obligation under the prepaid forward contract.

Barclays was prepaid approximately $156.3 million, or one-half of the reference portfolio value at initiation of the transaction. A notional amount, (the initial reference portfolio value less the amount prepaid), accretes interest to Barclays at monthly LIBOR plus 0.90% per annum.

A collateral account in the amount of approximately $53.2 million was established to further secure the transaction. Due to extreme market volatility, all of the underlying holdings in the collateral account were sold during 2008.

The term of the prepaid forward contract was three years and allowed for net settlement upon termination. The contract expired on July 31, 2009 whereby Barclays was to remit in cash the greater of the difference between the reference portfolio value and the notional amount, as valued on the scheduled termination date, or zero. Upon expiration, Barclays was not obligated to make a cash payment to the Subfund.

16

D-CNL000369

**Appx. 01069**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

On October 7, 2008, Barclays submitted a notice of early termination for the prepaid forward contract.

***Accreting Strike Option***
On February 28, 2007, Highland Multi-Strategy Onshore Master Subfund II, LLC entered into an Accreting Strike Option ("ASO") with Barclays.  The ASO's value is based on the following basket of funds ("the reference portfolio") advised by the Partnership: Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund, Select Equity Fund and Credit Opportunities Domestic Feeder.  The value of the reference portfolio at inception was approximately $250.2 million.

Barclays was paid a $71.4 million premium on the option. The strike price, (the initial reference portfolio value less the premium paid), accretes interest to Barclays at monthly LIBOR plus 1.4% per annum.  As of December 31, 2011, the strike price was approximately $185.6 million.

The term of the accreting strike option is five years and allows for net settlement upon termination.  At contract expiration, Barclays will remit in cash the greater of the difference between the reference portfolio value and the strike price, as valued on the scheduled termination date, or zero.  As of December 31, 2011, the ASO did not have a positive net fair value. As such, no amount was recorded in the Partnership's financial statements.

Detailed below is a summary of the transaction as of December 31, 2011:

*(in thousands)*

| Reference Portfolio | | Value |
|---|---|---|
| Select Equity Fund | $ | 117,395 |
| Crusader Domestic Feeder | | 16,295 |
| Equity Focus Fund | | 5,436 |
| Credit Opportunities Domestic Feeder | | 3,915 |
| Real Estate Fund | | - |
| Highland CDO Opportunity Fund, Ltd. | | - |
| Credit Strategies Domestic Feeder | | - |
| | | |
| Reference Portfolio Total | $ | 143,041 |
| | | |
| Notional Amount | $ | (185,577) |
| | | |
| Deficit of Reference Portfolio Total to Notional Amount | $ | (42,536) |

On October 13, 2008, Barclays served notice of early termination for the accreting strike option.

**6.**   **Fair Value of Financial Instruments**

**Fair Value Measurement**
In accordance with the authoritative guidance on fair value measurements and disclosures under U.S. GAAP, the Consolidated Investment Funds disclose the fair value of their investments in a

17

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

hierarchy that prioritizes the inputs to valuation techniques used to measure the fair value.  The hierarchy gives the highest priority to valuations based upon unadjusted quoted prices in active markets for identical assets or liabilities (level 1 measurements) and the lowest priority to valuation based upon unobservable inputs that are significant to the valuation (level 3 measurements).  The guidance establishes three levels of the fair value hierarchy as follows:

- Level 1 – Valuation based on quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Investment Funds have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs.  For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Investment Funds use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

Whenever possible, the Partnership and its Consolidated Investment Funds use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities.  In cases where observable inputs are not available, the Partnership and Consolidated Investment Funds develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

As of December 31, 2011, the Partnership and its consolidated entities' investments consisted of floating rate syndicated bank loans, high yield corporate bonds, CLO securities, private placements, private placement real estate debt and equity, life settlement contracts and common and preferred equity securities.  In addition, the consolidated entities engage in short sale transactions and are parties to various credit default swaps.  The majority of these financial instruments are not listed on national securities exchanges, and management is required to use significant judgment to estimate their values.

The fair value of the loans, corporate bonds and CLO securities are generally based on quotes received from brokers or independent pricing services, which may or may not reflect actual trade

18

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

activity.  The policy of the Partnership and its consolidated subsidiaries is to classify loans and bonds that are prices in this manner as Level 3 assets because the markets in which they trade are not active and the inputs used by the brokers and pricing services are not readily observable. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

The consolidated entities' private placement real estate investments include equity interests in limited liability companies and debt issued by entities that invest in commercial real estate.  The fair value of these investments is based on internal models developed by the Partnership.  The significant inputs to the models include cash flow projections for the underlying properties and appraisals performed by independent valuation firms.  These inputs are not readily observable, and the investments are classified as Level 3 assets.

Common and preferred equity securities traded on national exchanges are valued at their closing prices as of December 31, 2011.  These securities are classified as Level 1 assets.  The consolidated entities also hold certain equity securities for which no active market exists.  The value of these securities, which are classified as Level 3 assets, is based on a combination of broker quotes and internal valuation models.

Life settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies.  Since these inputs are not readily observable, they are classified as Level 3 assets.

The fair value of credit default swaps is based on quotes received from an independent pricing service.  The inputs used to derive the quotes are not readily observable and are therefore classified as Level 3 liabilities.

HIGHLY CONFIDENTIAL

D-CNL000372

**Appx. 01072**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Notes to Consolidated Financial Statements
December 31, 2011

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. A majority of the Consolidated Investment Fund's investments and derivatives at December 31, 2011 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2011:

*(in thousands)*

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/11 |
|---|---|---|---|---|
| Loans | $          - | $   21,912 | $   139,506 | $   161,418 |
| Bonds & Asset Backed Securities | - | 177,207 | 96,625 | 273,832 |
| Collateralized loan obligations | - | - | 30,246 | 30,246 |
| Rights & Warrants | 463 | 253 | 11,636 | 12,352 |
| Private placement real estate | - | - | 358 | 358 |
| Limited partnership interest | - | - | 180,399 | 180,399 |
| Common equity securities | 204,344 | 56,832 | 365,293 | 626,469 |
| Mutual Funds | 12,928 | - | - | 12,928 |
| Privately held equity | - | - | 271,137 | 271,137 |
| Life Settlement Contracts | - | - | 175,700 | 175,700 |
| Preferred stock | - | - | 181,438 | 181,438 |
| **Total** | **$217,735** | **$256,204** | **$ 1,452,338** | **$ 1,926,277** |

| Liabilities | | | | |
|---|---|---|---|---|
| Securities sold, not yet purchased | $   8,390 | - | - | $    8,390 |

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2011:

*(in thousands)*

| | Total Fair Value at December 31, 2010 | Purchases | Sales and Maturities | Transfers Into Level 3 | Transfers Out of Level 3 | Net Realized Losses | Net Unrealized Gains / (Losses) | Total Fair Value at December 31, 2011 |
|---|---|---|---|---|---|---|---|---|
| Loans | $  226,453 | $  57,806 | $ (150,996) | $      - | $      (356) | $(251,924) | $  258,523 | $  139,506 |
| Bonds & Asset Backed Securities | 302,177 | 36,335 | (253,458) | - | - | (46,110) | 57,681 | 96,625 |
| Collateralized loan obligations | 28,614 | 73 | (7,449) | - | - | 1,875 | 7,133 | 30,246 |
| Rights & Warrants | 1,244 | - | - | - | (309) | (6,097) | 16,798 | 11,636 |
| Private placement real estate | 524 | - | 1,170 | - | - | (32,410) | 31,074 | 358 |
| Limited partnership interest | 150,775 | 2,974 | 22,000 | - | - | (8,113) | 12,763 | 180,399 |
| Common equity securities | 316,209 | 23 | 39,069 | - | - | (26,160) | 36,152 | 365,293 |
| Mutual Funds | - | - | - | - | - | - | - | - |
| Privately held equity | 289,864 | 16,362 | (18,000) | - | - | - | (17,089) | 271,137 |
| Life Settlement Contracts | 171,698 | 36,573 | (20,000) | - | - | 12,621 | (25,192) | 175,700 |
| Preferred stock | 138,824 | 1,573 | 49,477 | - | - | 2,239 | (10,675) | 181,438 |
| | $1,626,382 | $ 151,719 | $ (338,187) | $      - | $      (665) | $(354,079) | $ 367,168 | $1,452,338 |

Transfers from Level 2 to Level 3 or from Level 3 to Level 2 are due to a decline or an increase in market activity (e.g. frequency of trades), which resulted in a lack of or increase in available market inputs to determine price. No significant transfers between Level 1 or Level 2 fair value measurements occurred during the year ended December 31, 2011.

20

D-CNL000373

Appx. 01073

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $104.2 million of the net unrealized losses presented in the table above relate to investments held as of December 31, 2011.

The following table provides a summary of the derivative contracts recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2011:

*(in thousands)*

|  | Level 1 | Level 2 | Level 3 | Total |
|---|---|---|---|---|
| Derivative contracts, asset | $    - | $    - | $    162 | $    162 |

The following table provides a roll forward of the derivative contracts classified within Level 3 for the year ended December 31, 2011:

*(in thousands)*

| | |
|---|---|
| **Estimated Fair Value as of December 31, 2010** | $    953 |
| Settlement of open contracts, net | (1,313) |
| Net transfers into Level 3 | - |
| Net transfers out of Level 3 | - |
| Net realized losses | 1,314 |
| Net change in unrealized gain | (792) |
| **Estimated Fair Value as of December 31, 2011** | $    162 |

**7.    Derivative Financial Instruments**

**Credit Default Swaps**

Credit default swap ("CDS") contracts are financial instruments that involve the payment of a fixed rate premium for protection against the loss in value of an underlying debt instrument, referenced entity or index, or the occurrence of a defined credit event.  Under the terms of the swap, one party acts as a "guarantor" (the Seller), receiving the periodic stream of payments (from the Buyer) over the term of the contract and agreeing to the remedies that are specified within the credit default agreement.  A credit event for corporate reference obligations includes bankruptcy, failure to pay, obligation acceleration, repudiation/moratorium or restructuring.  If a credit event occurs, the seller must pay the contingent payment to the buyer, which is typically the par value (full notional amount) of the reference obligation, though the actual payment may be mitigated by terms of the International Swaps and Derivative Agreement ("ISDA"), allowing for netting arrangements and collateral.  In addition, the payment may be reduced by anticipated recovery rates, segregated collateral and netting arrangements that may incorporate multiple transactions with a given counterparty.

HIGHLY CONFIDENTIAL

D-CNL000374

**Appx. 01074**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

The following table summarizes the CDS contracts the Consolidated Investment Funds held as of December 31, 2011:

*(in thousands)*

| Industry | Purchased / Sold | Maturity Date | Fixed Rate of Payment | Notional Amount / Exposure Purchased | Upfront Payment | Market Value |
|---|---|---|---|---|---|---|
| Beverage, Food and Tobacco | Sold | 9/20/2012 | 4.65% | $  7,500 | $  - | $  143 |
| Electronics | Sold | 9/20/2012 | 2.65% | 7,500 | - | 51 |
| Diversified/Conglomerate Service | Sold | 9/20/2012 | 3.55% | 3,750 | - | (66) |
| Broadcasting and Entertainment | Sold | 9/20/2012 | 3.00% | 6,000 | - | 48 |
| Buildings and Real Estate | Sold | 9/20/2012 | 4.05% | 3,750 | - | (37) |
| Electronics | Sold | 9/20/2012 | 3.20% | 7,500 | - | (1) |
| Media/Telecom | Sold | 9/20/2012 | 3.00% | 3,000 | - | 24 |
| **Total** | | | | $  39,000 | $  - | $  162 |

The following table provides a summary of the Consolidated Investment Fund's maximum exposure by maturity credit rating under the swaps for which it sold protection.  All of the contracts mature within the next five years.

*(in thousands)*

Current issuer credit rating*

| | |
|---|---|
| B+ | $  7,500 |
| B | 24,000 |
| B- | 3,750 |
| CCC | 3,750 |
| | $  39,000 |

* The credit rating on the underlying bond provides an indicator of the risk that the Consolidated Investment Funds will have to perform under the swap arrangement.  Lower credit ratings with a shorter contract term indicate a higher likelihood of performance by the Consolidated Investment Funds.

**Total Return Swaps**
A total return swap is a two-party contract under which the parties agree to exchange returns from a predetermined portfolio of investments.  The gross returns to be exchanged or swapped between the parties are calculated based on a notional amount, which is valued monthly to determine each party's obligation under the contract.

During the year ended December 31, 2011, the Consolidated Investment Funds' were invested in a total return swap program with a major international financial institution, consisting primarily of corporate bank debt. The Consolidated Investment Funds realized approximately $0.1 million of net gains, which are included as a component of net realized loss from investments and derivative contracts in the Consolidated Statement of Income, and were netted against collateral previously posted with the counterparty upon termination of the program.

22

D-CNL000375
Appx. 01075

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

8.    **Debt and Notes Payable**

Consolidated debt and notes payable as of December 31, 2011 consists of:

| (in thousands) | | December 31, 2011 |
|---|---|---|
| Partnership revolving credit facility | $ | 58,210 |
| Credit Opportunities Master note payable | | 56,603 |
| | $ | 114,813 |

**Revolving Credit Facility**
On July 21, 2009, the Partnership amended and restated the Credit Agreement with Bank of America as syndication agent and The Bank of Nova Scotia as administrative agent in the amount of $147.3 million.  The Credit Agreement provides for loans, which were scheduled to mature on July 21, 2011.

Interest is payable on the last day of each month.  The applicable spread for LIBOR loans under the Credit Agreement is LIBOR plus 5% per annum.  For base rate loans, the spread is 4% per annum over the prevailing prime rate.

Under the terms of the Credit Agreement, the availability of credit was subject to financial covenants requiring the Partnership to maintain a minimum amount of fee earning assets under management, a minimum amount of management fees earned, a minimum collateral ratio and a maximum on compensation paid.

On September 15, 2009 and February 22, 2010, the Credit Agreement was amended and restated to clarify some documentation items and reporting requirements.

On December 28, 2010, a waiver to the Credit Agreement was executed which allowed the Partnership to reduce its debt from $141.3 million to $86.3 million as of December 31, 2010. In addition to debt retired on December 30, 2010, the waiver also called for a cash payment of $12.8 million on or before March 31, 2011 which would result in the retirement of an additional $15.6 million in face value of debt.

On March 31, 2011, the Partnership amended the Revolving Credit Agreement to extend a number of provisions from the December 28, 2010 waiver, including forbearance from the exercising of remedies for events of default from July 21, 2011 to November 17, 2011. As referred to above, cash of $12.8 million was paid, retiring $15.6 million in face value.

On November 17, 2011, the Partnership amended the Revolving Credit Agreement to extend a number of provisions from the March 31, 2011 amendment, including forbearance from the exercising of remedies for events of default from November 17, 2011 to April 30, 2012. The amendment also called for two separate principal payments of $7.5 million on November 17, 2011 and on or before March 1, 2012.

On December 9, 2011, the Partnership amended the Revolving Credit Agreement for the resignation, consent and appointment of a new administrative agent. As amended, Bank of America, N.A. replaced The Bank of Nova Scotia as administrative agent.

23

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

On March 14, 2012, the Partnership amended the Revolving Credit Agreement to extend a number of provisions from the November 17, 2011 amendment, including forbearance from the exercising of remedies for events of default from April 30, 2012 to May 2, 2013. The amendment also called for five quarterly principal payments, commencing May 2, 2012. The first four such payments are for $6.0 million each and the final payment is for the remaining balance outstanding. The first payment for $6.0 million has been made as of the date of this report. Any mandatory prepayments made reduce future scheduled payments pro rata. Financial covenants were also modified during the forbearance period.

The balance as of the date of this report is $24.0 million.

The fair value of the facility as of December 31, 2011 was approximately $58.2 million.

**Credit Opportunities Master Note Payable**
On December 19, 2008, Highland Credit Opportunities CDO Financing, LLC ("CDO Financing"), a wholly-owned subsidiary of Credit Opportunities Master, executed a Note Purchase Agreement (the "Purchase Agreement") with certain investors that provided for the issuance of up to $218 million of senior secured convertible notes guaranteed by Credit Opportunities Master. Pursuant to the terms of the Purchase Agreement and concurrent with the execution of the Purchase Agreement, CDO Financing issued $116.6 million of senior secured convertible notes for $115.6 million of cash and securities with a fair value of $0.9 million. The proceeds from the notes were used primarily to fund an additional equity investment in Highland Credit Opportunities, Ltd. (the "CDO"). This investment was required under the terms of a forbearance agreement that the Credit Opportunities Master executed with the majority controlling class of the CDO's note holders.

The notes have a stated maturity date of December 31, 2012 and accrue interest on a quarterly basis at a rate of 25% per year. The terms of the Purchase Agreement allow for up to 75% of the accrued interest due at any payment date to be capitalized as additional principal owed to the holders of the notes. For the year ended December 31, 2011, no interest payable was capitalized and $27.0 million of senior secured convertible notes were repaid. As of December 31, 2011, there are $56.6 million of senior secured convertible notes outstanding.

Subject to certain conditions, the Purchase Agreement allows for CDO Financing to issue up to $101.4 million of additional notes to the existing note holders. The Purchase Agreement requires payment of a fee of 2.5% per annum on the unfunded portion of the note commitment. For the year ended December 31, 2011, approximately $2.5 million of unfunded commitment fees is recorded in interest expense in the Consolidated Statement of Income. As of December 31, 2011, a liability of approximately $7.9 million is included in interest payable in the Consolidated Balance Sheet. The fees will be paid on the stated maturity date, or on the full repayment of the notes.

Under the terms of the Purchase Agreement, the Credit Opportunities Master was not able to make any prepayments until July 1, 2010. From July 1, 2010 through December 31, 2010, the Credit Opportunities Master could elect to prepay 50% of the outstanding principal balance. After that period, Credit Opportunities Master may prepay all or a portion of the outstanding principal, provided that each partial payment made to the note holders is in an aggregate principal amount of at least $0.5 million.

The Purchase Agreement stipulates a premium due to the note holders upon full or partial payment of the outstanding principal of the notes. The premium due is determined by the date the principal is repaid and is calculated as a percentage of that principal balance, with a minimum of

24

D-CNL000377
**Appx. 01077**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

5% due on the stated maturity date of the notes.  The following table presents the premium rates by payment period:

| Prepayment Period | Fees |
| --- | --- |
| July 1, 2011 - Dec. 31, 2011 | 10.0% |
| July 1, 2012 - Dec. 31, 2012 | 6.0% |
| Dec. 31 2012 | 5.0% |

Credit Opportunities Master is accruing the minimum premium due, 5% of the outstanding balance, over the contractual life of the notes using the effective-yield method.  For the year ended December 31, 2011, approximately $0.3 million of this premium due is recorded as a component of interest expense in Credit Opportunities Master's consolidated statement of operations.  As of December 31, 2011 a liability of approximately $2.0 million for the total premium recognized over the life of the notes is included in interest payable in the Consolidated Balance Sheet.  Premium of $2.7 million was paid upon the prepayment during the year and is recorded in interest expenses in the Consolidated Statement of Income.

At the note holders' option, up to 50% of the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master between January 1, 2010 and June 30, 2010.  From July 1, 2010 through December 31, 2012, up to 100% of the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master.  As of December 31, 2011, no unpaid principal or accrued interest on the notes was converted into limited partnership interests in the Feeder Fund or Credit Opportunities Master.

The Purchase Agreement grants the note holders a lien on certain assets held by Credit Opportunities Master.  In addition, it requires Credit Opportunities Master and the CDO to comply with various financial covenants.  Failure to meet these covenants may result in an event of default and give the note holders the right to accelerate repayment of the debt or initiate a liquidation of certain assets.  Credit Opportunities Master was in compliance with the covenants as of December 31, 2011 and for the year then ended.

As of December 31, 2011, the estimated fair value of the notes was approximately $74.5 million, which is based on value of the risk-adjusted yield from the expected future cash flows of the notes relative to comparable investments.  Actual values may vary significantly from the estimates, particularly since the terms of the Company's debt are complex, and the market for the instruments is illiquid.

9.    **Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its Consolidated Investment Funds' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans.  The consolidated entities may also invest in derivative instruments, including total return and credit default swaps.  Investments in these derivative instruments throughout the year subject the consolidated entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

25

D-CNL000378
**Appx. 01078**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Investment Funds due to a change in the market value of its investments or the value of the investments underlying swap agreements.  The Partnership and its Consolidated Investment Fund's exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations.  These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Investment Funds investments. Volatility or illiquidity could impair the Partnership and its Consolidated Investment Funds performance or result in losses.  The Partnership and its Consolidated Investment Funds may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets. The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**
Credit risk is the potential loss the Partnership and its consolidated entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the consolidated entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties.  To limit the credit risk associated with such transactions, the consolidated entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Investment Fund's limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.  There is no public market for the interests, and neither the Consolidated Investment Funds nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the consolidated investment funds.  The Consolidated Investment Funds could be materially affected by the liquidity, credit and other events of the Partnership.

**High Yield Bonds and Loans**
The Partnership and its Consolidated Investment Funds' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange.  These investments trade in a limited market and it may not be possible to immediately liquidate them if needed.  In addition, certain of the Partnership and its Consolidated Investment Funds' investments have resale or transfer restrictions that further reduce their liquidity.  Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

26

D-CNL000379

Appx. 01079

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

When the Partnership and its Consolidated Investment Funds' purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower. Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Investment Funds have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Investment Funds may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies. Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest. They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions. Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**CLO Equity Investments**
The Partnership and its Consolidated Investment Funds may invest in CLO equity that are not rated by various credit rating agencies and are generally considered to be speculative with respect to the issuer's ability to repay principal and interest. The yields and prices of these non-rated CLO equity tranches are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed. In addition, certain of the Consolidated Investment Funds' investments have resale or transfer restrictions that further limit their liquidity. The Partnership and its consolidated investment funds are exposed to the potential non-payment of principal and interest from their CLO equity investments. As of December 31, 2011, 1 of the 29 CLO's managed by the Partnership paid interest to the equity holders on their last payment date.

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Investment Funds invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings. These investments have substantial inherent risks. Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates. The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

**Credit Default Swaps**
Credit default swaps involve greater risks than if the Partnership or its Consolidated Investment Funds had written the reference obligations directly. In addition to the market risk discussed above, credit default swaps are subject to liquidity risk and credit risk. If a credit event occurs, the value of the reference obligation received by the Partnership or its Consolidated Investment Funds, coupled with the periodic payments previously received, may be less than the full notional amount it pays to the buyer, resulting in loss of value.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Investment Funds' investments. However, the Consolidated Investment Funds' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of

D-CNL000380

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

credit risk may increase the losses suffered by the Consolidated Investment Funds. In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments. This limited diversity could expose the Consolidated Investment Funds to losses that are disproportionate to market movements as a whole.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Investment Funds are provided by major financial institutions. In addition, all of the Partnership and its Consolidated Investment Funds' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges. The Partnership or its Consolidated Investment Funds may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Investment Funds' might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Leverage Risk**
The Consolidated Investment Funds may borrow funds from brokers, banks and other lenders to finance its trading operations. The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Investment Funds' investment portfolio may be subject. The use of margin and short-term borrowings creates several risks for the Consolidated Investment Funds. If the value of the Consolidated Investment Funds' securities fall below the margin level required by a counterparty, additional margin deposits would be required. If the Consolidated Investment Funds are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Investment Funds' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Investment Funds to incur significant losses. In addition, to the extent the Consolidated Investment Funds have posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Investment Funds' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Investment Funds. In addition, because the use of leverage allows the Consolidated Investment Funds to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Investment Funds may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Investment Funds' assets, the Consolidated Investment Funds may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements. As a result, the Consolidated Investment Funds may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Investment Funds have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar. The Partnership and its Consolidated

HIGHLY CONFIDENTIAL

D-CNL000381

**Appx. 01081**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2011, the Consolidated Investment Funds' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Wind-Down Risk**
The ultimate proceeds that the Consolidated Investment Funds' are able to realize on the sale of its investments will directly affect the amounts that the investors in the feeder funds are able to redeem in connection with the wind down process.  These amounts may differ materially from the partners' capital balances as of December 31, 2011.

**Litigation Risk**
The Partnership and its Consolidated Investment Funds are periodically subject to legal actions arising from the ordinary course of business.  The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Investment Funds.  Refer to Note 16 for a discussion of open litigation.

10.     **Related Party Transactions**

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2011, approximately $7.2 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in Other Assets in the accompanying Consolidated Balance Sheet.

**Long Term Incentive Plan and Intercompany Loan Payable to Highland Capital Management Services, Inc. ("HCMSI")**
Effective January 1, 2001, all of the Partnership's employees were transferred to HCMSI, which provides personnel management and consulting services to the Partnership.  The Partnership and HCMSI entered into a management agreement whereby the Partnership compensated HCMSI for its employee expenses plus a consulting services fee.  As of January 1, 2005, there were no further transactions with HCMSI as all employees were transferred to the Partnership.

Effective January 1, 2001, HCMSI approved a long-term incentive plan ("the LTIP") for select employees who are eligible to receive Long-Term Incentive Units ("the Units") under the LTIP.  The number of Units authorized under the LTIP is 30,000,000 and a majority of the Units granted vest 40% during the grant year and 30% for each of the two years thereafter, expiring 10 years after such grant date, unless different terms are agreed upon between the Plan Administrator and the employee.  The fair value of the Units are based upon the fair value of the Partnership, as determined in good faith, by James Dondero, the Plan Administrator and the sole shareholder of the general partner and a limited partner of the Partnership.  The LTIP was transferred to the Partnership from HCMSI on January 1, 2005.

29

D-CNL000382

**Appx. 01082**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

The Units are exercisable at the discretion of the Plan Administrator, or upon a triggering event defined as the earlier of the following events:

- Change in control

- Initial public offering

- Participant's voluntary or involuntary termination due to death, disability, retirement, or hardship

- Participant's voluntary or involuntary termination other than due to death, disability, retirement, hardship, or cause is exercisable to the extent the Participant is entitled to only 80% of the vested shares.

A total of 562,299 Units are outstanding as of December 31, 2011 under the LTIP. During the year ended December 31, 2011, the liability under the LTIP decreased by approximately $0.4 million, which is included in *Compensation and benefits* in the Consolidated Statement of Income.

The total balance payable to HCMSI was approximately $0.5 million as of December 31, 2011, which is related to the LTIP accrual.

Effective December 31, 2004, all of the employees at HCMSI were transferred to the Partnership, and the management agreement between the Partnership and HCMSI was terminated as to the provision of future services. However, all of the outstanding and unfunded obligations of the Partnership to HCMSI as of December 31, 2004, as well as any additional obligations that may arise in relation to these amounts, will continue to be due and payable to HCMSI until satisfied in accordance with the provisions of the agreements in place.

**Accounts Held with Related Party**
During the year the Partnership and its subsidiaries maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control. As of December 31, 2011, balances in the accounts were approximately $1.4 million, a portion of which exceeds Federal deposit insurance limits.

30

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Controlling Positions**

Various members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests. Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable. Any director's fees received by the Partnership for these services as directors are paid to and retained by the Partnership. During the year ended December 31, 2011, the Partnership did not earn material income from those entities where members of management serve as members of the Board of Directors. As of December 31, 2011, the Partnership and its subsidiaries held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---:|
| American Banknote Corporation | Common Equity | $ 10,587 |
| American Home Patient | Common Equity | 7,340 |
| American Home Patient | Term Loan | 7,998 |
| American Home Patient | Term Loan - Second Lien | 3,376 |
| Blackwell BMC, LLC | Common Equity | 34,828 |
| Broadstripe Holdings, LLC | Revolver | 1,065 |
| Broadstripe Holdings, LLC | Term Loan | 4,467 |
| Carey International, Inc | Term Loan | 15,987 |
| Carey Holdings, Inc. | Class A Common Stock | 99 |
| CCS Medical, Inc. | Term Loan | 5,853 |
| CCS Medical, Inc. | Term Loan - Second Lien | 4,813 |
| Consolidated Restaurant Companies, Inc. | Common Equity | 6,364 |
| Consolidated Restaurant Companies, Inc. | Term Loan | 7,398 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 81,490 |
| Cornerstone Healthcare Group Holding, Inc. | Term Loan | 18,345 |
| Cornerstone Healthcare Group Holding, Inc. | Loan - Second Lien | 4,298 |
| Epocal, Inc. | Preferred Equity | 60,944 |
| Euramax International Holdings B.V. | Common | 1,684 |
| Ginn LA Resorts Holdings, LLC | Term Loan | 1,506 |
| Highland Long/Short Equity Fund | Mutual Fund | 222 |
| Highland Long/Short Healthcare Fund | Mutual Fund | 7,050 |
| Highland Credit Strategies Fund | Closed-End Mutual Fund | 3,929 |
| Home Interiors & Gifts, Inc. | Proof of Claims | 2 |
| Marcal Paper Mills, LLC | Common Equity | - |
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 56,833 |
| Molecular Insight Pharmaceuticals, Inc. | Preferred Stock | 17,257 |
| Molecular Insight Pharmaceuticals, Inc. | Warrants | 9,742 |
| Molecular Insight Pharmaceuticals, Inc. | Term Loan | 19,198 |
| Nex-Tech Aerospace Holdings, Inc. | Common Equity | 141 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 774 |
| Safety-Kleen Inc. | Common Equity | 226,920 |
| Solstice Neurosciences, Inc. | Preferred Equity | 246 |
| Terrestar | Preferred Equity | 1,006 |
| Trussway Industries, Inc. | Common Equity | 3,256 |

31

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank. Interest earned on the loans during the year was approximately $7.1 million. At December 31, 2011, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $300.4 million and $77.0 million, respectively.

**Affiliated Transactions**
In accordance with the terms of a Master Indenture Agreement (the "Indenture") dated November 2, 2006, the Credit Opportunities Master acquired 250,000 Preferred Shares of Highland Credit Opportunities CDO, Ltd (the "CDO"). The Indenture requires Credit Opportunities Master to hold, directly or indirectly, more than 99% of the CDO's outstanding Preferred Shares at all times. As of December 31, 2011, the Credit Opportunities Master held 350,000 Preferred Shares and was the sole beneficial preferred shareholder.

The CDO invests primarily in floating rate syndicated bank loans, fixed income securities, and equity investments. These investments were purchased with funds the CDO received from the issuance of rated floating rate notes and Credit Opportunities Master's purchase of the Preferred Shares. Credit Opportunities Master is the sole beneficiary of all residual income from the CDO's portfolio. Although the Preferred Shares do not have a voting interest in the CDO, they carry certain rights. Specifically, they are entitled to receive quarterly preferential dividends, without requiring any declaration by the Directors, from the date they were issued until they are redeemed. The Investment Manager serves as the Collateral Manager for the CDO but does not receive any fees for its services to the CDO.

During the fourth quarter of 2008, the CDO failed to meet certain over-collateralization tests set forth in the First Supplement to the Indenture dated November 2, 2006. This breach would have given the CDO's Majority of Controlling Debt Class the option to accelerate repayment of the CDO's outstanding debt or initiate a liquidation of its assets. To protect the value of its investment in the CDO, Credit Opportunities Master entered into a forbearance agreement whereby the Majority Controlling Class of the CDO's note holders waived the breach and agreed not to exercise the rights discussed above. The Majority Controlling Class also agreed to waive any future events of default resulting from the CDO's failure to meet the overcollateralization tests through December 31, 2011. In return, the CDO agreed not make any preferred dividend payments to Credit Opportunities Master until the over-collateralization tests exceed certain thresholds.

Credit Opportunities Master paid certain expenses related to the forbearance agreement, which have been recorded as an increase to the cost basis of its investment in the CDO's preferred shares. The CDO was in compliance with all over-collateralization tests at expiration of the forbearance agreement on December 31, 2011.

**Services Performed by an Affiliate**
In March 2007, Highland Capital of New York, L.P., a New York limited partnership ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager. The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf. For the year ended December 31, 2011, total marketing fee expense charged to the Partnership by Highland New York was approximately $3.7 million and as of December 31, 2011, amounts owed to Highland New York for services rendered was approximately $0.9 million.

32

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**11.   Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, consolidated statement of income, or its liquidity.  See Note 16.

**Operating Leases**
Future minimum lease payments under operating lease commitments of the Partnership and its consolidated entities with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

| Years Ending December 31, | | |
|---|---|---:|
| 2012 | $ | - |
| 2013 | | 290 |
| 2014 | | 1,377 |
| 2015 | | 1,343 |
| 2016 | | 1,333 |
| Thereafter | | 6,639 |
| Total | $ | 10,982 |

Total rental expense of the Partnership and its consolidated entities for operating leases was approximately $2.2 million for the year ended December 31, 2011.

**Unfunded Loan Commitments**
At December 31, 2011, the Consolidated Investment Funds had unfunded loan commitments of approximately $2.1 million.  Unfunded loan commitments are marked to market on the relevant day of valuation in accordance with the Partnership's valuation policies.  Any applicable unrealized gain/(loss) and unrealized appreciation/(depreciation) on unfunded loan commitments are recorded on the Consolidated Balance Sheet and Consolidated Income Statement, respectively.  The net change in unrealized appreciation on unfunded transactions of approximately $0.2 million is recorded in the Consolidated Income Statement.

**12.   Postretirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

33

D-CNL000386
**Appx. 01086**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2011 expense reflects a service cost charge for the value of the new participant's benefit earned during 2011. The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2011 are reconciled in the tables below

*(in thousands)*

| Change in projected benefit obligation | | 2011 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 3,358 |
| Service cost | | 4 |
| Interest cost | | 174 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | (101) |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (597) |
| Benefit obligation at end of year | $ | 2,838 |

| Change in plan assets | | 2011 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 3,568 |
| Actual return on plan assets | | 161 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (597) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 3,132 |

| Reconciliation of Funded Status | | 2011 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 2,838 |
| Projected benefit obligation at end of year | | 2,838 |
| Fair value of assets at end of year | | 3,132 |
| Funded status at end of year | $ | 294 |

The Partnership does not expect to contribute to the plan during 2012.

**Assumptions**
Weighted-average assumptions used to determine benefit obligations at December 31, 2011:

34

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

| | |
|---|---|
| Discount rate | 4.40% |
| Rate of compensation increase | N/A |

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2011:

| | |
|---|---|
| Discount rate | 5.70% |
| Expected long-term return on plan assets | 5.70% |
| Rate of compensation increase | N/A |

As of December 31, 2011, approximately $0.5 million of the plan assets were categorized as Level 3.

**13.    Goodwill and Other Intangible Assets**

Below is a summary of the Partnership's goodwill and other intangible assets as of December 31, 2011:

| (in thousands) | Carrying Value |
|---|---|
| Goodwill for Highland Europe | $        8,020 |
| | $        8,020 |

On April 9, 2004, the Partnership purchased the management agreements of Highland Floating Rate Fund (the "Floating Rate Fund") and Highland Floating Rate Advantage Fund (the "Advantage Fund"), collectively the "Purchased Funds." The combined purchase price for the above agreements was $24.0 million, which was included on the Partnership's Consolidated Balance Sheet. The Partnership performed yearly impairment tests subsequent to the purchase and recorded no impairments through the year ended December 31, 2010.

On December 15, 2011, the management agreements of the Floating Rate Fund, the Advantage Fund and three other registered investment companies were novated so that a replacement investment advisor would be substituted for the Partnership. Because the Partnership released its rights and obligations under the agreements, the Partnership fully amortized any intangible value related to these agreements. An expense of $24.0 million is recorded in the Partnership's Consolidated Income Statement.

The Partnership performs an impairment test on the Goodwill of Highland Europe as required by U.S. GAAP on a yearly basis. Due to the pending sale of the management agreements of the entity, goodwill was assessed for impairment based on the sale price. The Partnership has determined that no impairment charge is necessary for the current year. Please refer to Note 18 for further discussion of the sale of the Highland Europe management agreements.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

**14.     Reverse Repurchase Agreements**

Credit Strategies Master is party to collateralized financing transactions consisting of securities sold under agreements to repurchase.  For the year ended December 31, 2011, approximately $22.7 million was paid to the counterparty to repurchase the securities sold under the repurchase agreements. Additionally $0.5 million of financing interest was paid to the counterparty. As of December 31, 2011, Credit Strategies Master was not a party to any reverse repurchase agreements.

**15.     Income Taxes**

**The Partnership**
For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.  In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2011, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2011.

**Crusader Master**
Crusader Master is an exempted limited partnership organized in Bermuda.  Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Crusader Master. Crusader Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Crusader Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Crusader Master's net taxable income.

Since Crusader Master trades investments for its own account, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below).  The General Partner intends to conduct Crusader Master's business in such a way that it does not constitute a U.S. trade or business or create a taxable presence in any of the jurisdictions in which the Investment Manager has offices, including the United Kingdom.

Dividends as well as certain interest and other income received by Crusader Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at

36

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

the rate of 30% for non-U.S. Investment Vehicles.  Interest, dividend and other income realized by Crusader Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.  As of December 31, 2011, a withholding tax liability of $0.9 million is included in the accrued expenses in the Consolidated Balance Sheet.

It is management's responsibility to determine whether a tax position of Crusader Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  As a result of adopting this guidance, management has established an immaterial reserve for uncertain tax positions, The full amount relates to the current year and was recorded with net realized loss from investments and derivative contracts in the Consolidated Income Statement. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2011.

Crusader Master files tax returns as prescribed the tax laws of the jurisdictions in which it operates. In the normal course of business, Crusader Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2011, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

**Credit Opportunities Master**
For U.S. income tax purposes, Credit Opportunities Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

Credit Opportunities Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Credit Opportunities Master's business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices, including the United Kingdom.

Dividends as well as certain interest and other income received by Credit Opportunities Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Credit Opportunites Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. Deferred tax liability is a result of a temporary difference related to the unrealized appreciation on Credit Opportunities Master's investments that will become taxable income in future years. The deferred tax liability will become payable upon realization of the gain when the investment is sold and it is measured using the applicable enacted tax rate and the provisions of the enacted tax law. As of December 31, 2011, a liability to account for such withholdings and other taxes of approximately $2.1 million is classified within accrued expenses and withholding tax payable on the Consolidated Balance Sheet.

The Credit Opportunities Master applies authoritative guidance which requires management to determine whether a tax position of Credit Opportunities Master is more likely than not to be

37

D-CNL000390

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  As of December 31, 2011, a liability to account for uncertain tax positions of $0.1 million is classified within accrued expenses within the Consolidated Balance Sheet. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2011.

Credit Opportunities Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.  In the normal course of business, Credit Opportunities Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2011, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

**Credit Strategies Master**
Credit Strategies Master is an exempted limited partnership organized in Bermuda.  Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Credit Strategies Master.  Credit Strategies Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Credit Strategies Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines.  Each partner is individually liable for income taxes, if any, on its share of Credit Strategies Master's net taxable income.

The Credit Strategies Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.  In the normal course of business, Credit Strategies Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2011, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

It is management's responsibility to determine whether a tax position of Credit Strategies Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.    For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner has determined that there was no effect on the financial statements from the application of this guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2011.

Dividends as well as certain interest and other income received by Credit Strategies Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles.  Interest, dividend and other income realized by Credit Strategies Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. Deferred tax liabilities may result from temporary differences related to the unrealized appreciation on Credit Strategies Master's investments that will become taxable income in future years. Deferred tax liabilities will become payable upon

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

realization of the gains when the investments are sold, and are measured using the applicable enacted tax rate and provisions of the enacted tax law.

**Restoration Onshore**
Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income. Interest, dividends and other income realized by the Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2011. Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2011, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

**Restoration Offshore**
Restoration Offshore is a Cayman Islands exempted company. Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore. Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. In accordance with this authoritative guidance, the General Partner has established a reserve of approximately $0.1 million for uncertain tax positions. The full amount relates to the current year and was recorded as a tax expense in the Consolidated Statement of Operations. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31,

39

D-CNL000392

Appx. 01092

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

2011.  As of December 31, 2011, the tax years that remain subject to examination by major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

**16.    Legal Proceedings**

In April 2007, CDO Master Fund entered into a risk sharing agreement structured as a derivative whereby it absorbed 51% of the gains and losses generated from a loan warehouse agreement. The remaining 49% of the warehouse gains and losses were absorbed by Highland Special Opportunities Holding Company ("SOHC").  The warehouse was financed by a recognized financial institution and held collateral consisting of investments in collateralized loan obligations and credit default swaps.  Although the agreement expired on August 15, 2007, the counterparty agreed to extend it for one year on March 15, 2008.  Due to liquidity constraints, CDO Master Fund was unable to meet a November call, and the counterparty elected to terminate the agreement as of December 5, 2008.  The collateral held in the warehouse was subsequently seized by the counterparty and sold on the open market through bids-wanted-in competition.  After offsetting the proceeds received from the sale and the income earned on the collateral prior to the sale, the counterparty notified CDO Master Fund that its pro-rata share of the losses incurred under the agreement was $350.2 million.  CDO Master Fund has accrued a liability in its financial statements for this amount.  On February 24, 2009, the counterparty (the "Plaintiffs") filed a lawsuit against CDO Master Fund, SOHC and the Partnership in the New York State Supreme Court of Manhattan alleging that they suffered losses in excess of $745 million due to the depreciation in value of the warehouse collateral.  On February 19, 2010 a New York Appeals Court sided with the Partnership and dismissed UBS' claims against the Partnership.  Thereafter on June 22, 2010, Plaintiffs filed an amended complaint with the Court against the Partnership and certain affiliated registered and unregistered investment vehicles alleging $687 million in damages.  On March 13, 2012, the First Appellate Division dismissed two of the four claims against the Partnership, and severely limited the scope of the two remaining claims.

In April 2009, HYMF, Inc. filed a lawsuit in the New York State Court against the Partnership and certain consolidated investment funds (collectively "the Defendants").  The lawsuit alleges that the Defendants breached their contractual and fiduciary duties by failing to return HYMF's original investment in the consolidated investment funds.   The Defendants believe they acted in accordance with the provisions of the partnership agreements and intend to vigorously defend against the lawsuit.  Management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

On July 15, 2008, Crusader Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida.  The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated.   On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement.   In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%.

HIGHLY CONFIDENTIAL

D-CNL000393

**Appx. 01093**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

Based on the ruling, Crusader Master recorded a reserve of approximately $5.3 million as of December 31, 2009, which represented its ratable share of the judgment. The reserve was included as a component of accrued expenses on the Consolidated Balance Sheet.

The Defendants believe they acted in good faith pursuant to the terms of the relevant agreements and appealed the decision. In February 2011, the Disctrict Court of Florida reversed the judgment against the Defendants and overturned the ruling that resulted in Crusader Master recording the reserve. Crusader Master does not believe an appeal of this decision will be successful and relieved the reserve. This was included as a component of the net realized loss from investments and derivative contracts on the Consolidated Income Statement.

17. **Fund Wind Down**

On February 4, 2009, the Partnership informed investors of CDO Master that the fund was effectively insolvent and that it was in the best interest of the fund to liquidate the fund's remaining assets. The proceeds from the asset liquidations will be distributed to the remaining financing counterparties and other senior and trade creditors as the liabilities in the fund exceed the assets to such a degree that proceeds from the asset sales will not be able to satisfy any unpaid redemptions or to distribute amounts to any current investors.

During 2008, Crusader Master and Credit Strategies Master were negatively affected by deteriorating conditions in the overall economy and credit markets. These conditions became more severe during the third and fourth quarters of 2008 and generated significant losses on various derivative transactions and repurchase agreements to which Crusader Master and Credit Strategies Master were parties. In addition, certain assets that Crusader Master and Credit Strategies Master purchased on margin through prime brokerage agreements experienced a significant decline in value. In certain cases, Crusader Master and Credit Strategies Master were unable to post the collateral required to secure these losses, and the counterparties provided notice of their intent to terminate the agreements. As a result, access to the credit that Crusader Master and Credit Strategies Master used to manage its investing and financing activities became highly constrained, and in some cases unavailable. In light of these circumstances, the General Partners (the general partner of Highland Crusader Fund, L.P. and the general partner of Highland Credit Strategies Fund, L.P.) and the Board of Directors of Highland Credit Strategies Fund, Ltd. and Highland Crusader Fund, Ltd. concluded, in consultation with the Investment Manager, that it would be in the best interests of their investors to wind down the investment portfolios of Credit Strategies Master and Crusader Master. On October 15, 2008, the Investment Manager notified investors that it would begin the wind-down process. The Investment Manager also restricted subscriptions and the payment of withdrawals to its feeder funds effective the same date.

In connection with the wind down, the limited partner interests of the Feeder Funds were compulsorily withdrawn/redeemed on November 15, 2008 in accordance with the terms of the governing documents.

**Crusader Master**
On July 15, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Scheme") that facilitates the winding-down of the investments of Crusader Master and the distribution of its assets. A substantial majority of the investors in its feeder funds consented to the plan of distribution as outlined in the Scheme. The Scheme became effective as of August 1, 2011.

HIGHLY CONFIDENTIAL

D-CNL000394

Appx. 01094

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

The Scheme establishes two classes of claims; those feeder fund investors who had timely submitted withdrawal/redemption requests for withdrawal/redemption dates that fell on or before June 30, 2008 and who had not received full payment ("Prior Redeemers"), and those feeder fund investors that had not timely submitted such withdrawal/redemption requests for redemption/withdrawal dates that fell on or before June 30, 2008 ("Compulsory Redeemers") (together "Redeemers"). The basis for ratable distribution amongst both classes of Redeemers was the November 15, 2008 balances of said Redeemers ("Redemption Amount"), adjusted to add back any redemption penalties assessed against Prior Redeemers during 2008. A realization schedule for distributions is set forth in Appendix A of the Scheme (the "Realization Schedule"). The terms of the Scheme are outlined as follows:

1.  Prior Redeemers shall be entitled to 60% in aggregate of the total distributions made by the Master Partnership constituting excess cash (the "Crusader Fund Prior Redeemers' Distribution"). Each Prior Redeemer shall be entitled to their pro rata share of the Crusader Fund Prior Redeemers' Distribution based on the Prior Redeemer's Redemption Amount relative to the total of all Prior Redeemers' Redemption Amounts (inclusive of all feeders).

2.  Compulsory Redeemers shall be entitled to 40% in aggregate of the total distributions made by the Master Partnership constituting excess cash (the "Crusader Fund Compulsory Redeemers' Distribution"). With the exception of the non-consenting Compulsory Redeemers discussed below, each Compulsory Redeemer shall be entitled to their pro rata share of the Crusader Fund Compulsory Redeemers' Distribution based on the Compulsory Redeemer's Redemption Amount relative to the total of all Compulsory Redeemers' Redemption Amounts (inclusive of all feeders). This method of distribution resulted in a shift of capital from the Prior Redeemers to the Compulsory Redeemers. Since the redistribution is indifferent with respect to the Feeder Funds, total capital within each of the Feeder Funds changed as a result. This capital transfer is reflected in the Consolidated Statement of Changes in Partners' Capital as a restructure. In the event the Investment Manager fails to make distributions in accordance with the Realization Schedule for two consecutive quarters without receiving a waiver from the committee of Redeemers appointed to help oversee the Scheme (the "Redeemer Committee"), the Investment Manager can be removed for cause as the Investment Manager of the Master Partnership by the Redeemer Committee.

In connection with the implementation of the Scheme, the Partnership made a settlement payment to be allocated to Crusader investors in the amount of $6.0 million. Additionally, the Partnership reserved $8.2 million of its interest in deferred incentive fees. Both of these amounts can be found within the *Fund wind down costs* line of the Consolidated Income Statement.

**Credit Strategies Master**
A Plan of Distribution (the "Plan") was also adopted by Credit Strategies Master and its feeder funds and was consented to by a substantial majority of the investors in its feeder funds. On April 14, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Scheme") that incorporates the terms of the Plan so as to be binding upon Highland Credit Strategies Fund, Ltd. and its investors. The Scheme became effective on May 1, 2011. The Plan established two classes of claims; those investors of the Feeder Funds whose withdrawals/redemptions became effective on or before September 30, 2008 and who have not received full payment of their redemption amount ("Prior Redeemers") and those investors of the feeder funds who were compulsorily withdrawn/redeemed on October 15, 2008 ("Compulsory Redeemers").

HIGHLY CONFIDENTIAL

D-CNL000395

**Appx. 01095**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2011**

As investments in Credit Strategies Master are realized, distributions will be made in the following order, which summarizes the terms outlined in the Plan.

1.  Payments for fund expenses
2.  The first $30 million available for distribution ratably to Prior Redeemers
3.  The next approximately $5.3 million available for distribution ratably to consenting Compulsory Redeemers and a trust account established for the benefit of non-consenting Compulsory Redeemers ("Redeemer Trust Account")
4.  All remaining funds will be distributed as follows:
    a.  85% ratably to Prior Redeemers
    b.  15% to consenting Compulsory Redeemers and the Redeemer Trust Account

This method of distribution results in a shift of capital from the Prior Redeemers to the consenting Compulsory Redeemers and the Redeemer Trust Account. It also created a shift of capital from its offshore feeder to its onshore feeder, since there was a greater proportion of Compulsory Redeemers to Prior Redeemers in the onshore feeder than in the offshore feeder.

In connection with the implementation of the Scheme, the Partnership made a settlement payment to be allocated to Credit Strategies investors in the amount of $3.0 million. Additionally, the Partnership will make a second payment of $6.0 million on or before May 1, 2014. Both of these amounts can be found within the *Fund wind down costs* line of the Consolidated Income Statement.

**18.  Subsequent Events**

In accordance with the Scheme of Arrangement, Crusader Master made distributions of approximately $102.8 million and $102.6 million effective January 31, 2012 and April 30, 2012, respectively.

In accordance with the Plan of Distribution, the $6.8 million distribution payable was distributed to the feeder funds by Credit Strategies Master.

In accordance with the Plan of Distribution, Credit Strategies Master made a distribution of approximately $5.0 million effective February 29, 2012.

On February 29, 2012, Credit Opportunities CDO, Ltd. paid $16.5 million, collectively, of preferred dividends to Credit Opportunities Master, which is restricted by the Purchase Agreement to pay interest, principal and any applicable premium.

On April 3, 2012, Credit Opportunities CDO, Ltd. paid $17.0 million, collectively, of preferred dividends to Credit Opportunities Master, which is restricted by the Purchase Agreement to pay interest, principal and any applicable premium.

On March 14, 2012, Credit Opportunities Master elected to prepay $12.3 million of the outstanding principal balance of the notes and approximately $1.4 million in interest and prepayment premium.

On April 2, 2012, Credit Opportunities Master elected to prepay $14.1 million of the outstanding principal balance of the notes and approximately $1.0 million in interest and prepayment premium.

On February 28, 2012, the Partnership completed the sale of the management contracts of four European CLOs. Gross consideration of €33.5 million was received upon completion of the sale. Beyond the closing date, the Partnership is further entitled to 65% of all future incentive fees paid

43

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2011**

under any of the four European CLOs as well as 80% of the subordinated fees accrued and unpaid as of December 31, 2011 with respect to Highlander Euro CDO B.V. After-tax net proceeds from the sale were used to reduce the Partnership's bank debt outstanding as well as to pay accrued interest and principal on affiliated notes payable.

On March 14, 2012, the Partnership amended the Revolving Credit Agreement. Further discussion of the amendment can be found in Note 8.

The Partnership has performed an evaluation of subsequent events through May 21, 2012, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000397

**Appx. 01097**

**Supplemental Information**

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2011**

*(in thousands)*

The above information was derived from the audited December 31, 2011 consolidated financial Statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements and should not be used for tax purposes.

**Assets**

| | | |
|---|---|---:|
| Current assets: | | |
| Cash and cash equivalents | $ | 6,443 |
| Restricted cash | | 3,508 |
| Investments at fair value (cost $24,599) | | 60,662 |
| Equity method investees | | 24,118 |
| Management and incentive fees receivable | | 28,962 |
| Due from brokers | | 127 |
| Other assets | | 12,935 |
| Deferred incentive fees receivable | | 29,428 |
| Goodwill and other intangible assets, net | | 388 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,053 | | 6,869 |
| **Total Assets** | $ | 173,440 |

**Liabilities and Partners' Capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 2,061 |
| Accrued and other liabilities | | 73,971 |
| Debt and notes payable | | 58,210 |
| Total liabilities | | 134,242 |
| Partners' capital | | 39,198 |
| **Total liabilities and partners' capital** | $ | 173,440 |

46

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**December 31, 2011**

*(in thousands)*

The above information was derived from the audited December 31, 2011 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements and should not be used for tax purposes.

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 141,146 |
| Incentive fees/allocations | | 1,381 |
| Interest and investment income | | 341 |
| Other income | | 7,286 |
| Total revenue | | 150,154 |
| | | |
| **Operating expenses:** | | |
| Compensation and benefits | | 46,815 |
| Professional fees | | 12,986 |
| Investment and research consulting | | 707 |
| Amortization and depreciation | | 1,342 |
| Interest expense | | 5,587 |
| Other operating expenses | | 16,999 |
| Total operating expenses | | 84,436 |
| | | |
| Income before investment activities | | 65,718 |
| | | |
| **Realized and unrealized gain/(loss) from investments transactions:** | | |
| Net realized loss on sale of investment transactions | | (2,939) |
| Net change in unrealized gain on investments | | 1,779 |
| Total realized and unrealized loss from investments transactions | | (1,160) |
| | | |
| **Realized and unrealized earnings from equity method investee:** | | |
| Net unrealized gains from equity method investees | | 6,158 |
| Total realized and unrealized gains from equity method investees | | 6,158 |
| | | |
| **Extraordinary Items** | | |
| Net realized gain on extinguishment of debt | | 2,823 |
| Novation of purchased investment contracts | | (24,000) |
| Fund wind down costs (Note 17) | | (23,292) |
| | | |
| **Net income** | $ | 26,247 |

HIGHLY CONFIDENTIAL

D-CNL000400

**Appx. 01100**

# EXHIBIT 67

| Copy B - For Employee's Federal Income Tax Return | | | **2019** OMB No. 1545-0008 |
|---|---|---|---|
| a Employee's social security number [redacted] | 1 Wages, tips, other comp. 1944956.01 | 2 Federal income tax withheld 569633.72 | |
| b Employer ID number 47-1881359 | 3 Social security wages 132900.00 | 4 Social security tax withheld 8239.80 | |
| | 5 Medicare wages and tips 1944956.01 | 6 Medicare tax withheld 43906.46 | |

c Employer's name, address, and ZIP code
Nexpoint Residential Trust Inc
300 Crescent Ct
Suite 700
Dallas, TX 75201

d Control number
12437 11

e Employee's name, address, and ZIP code
James Dondero [redacted]

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a | | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|---|
| 12b | | 14 Other |
| 12c | | |
| 12d | | |

| N/A | N/A | N/A |
|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | 20 Locality name N/A |

Form W-2 Wage and Tax Statement
Dept. of the Treasury - IRS
This information is being furnished to the Internal Revenue Service.

| Copy 2 - For Employee's State Income Tax Return | | [TX] | **2019** OMB No. 1545-0008 |
|---|---|---|---|
| a Employee's social security number [redacted] | 1 Wages, tips, other comp. 1944956.01 | 2 Federal income tax withheld 569633.72 | |
| b Employer ID number 47-1881359 | 3 Social security wages 132900.00 | 4 Social security tax withheld 8239.80 | |
| | 5 Medicare wages and tips 1944956.01 | 6 Medicare tax withheld 43906.46 | |

c Employer's name, address, and ZIP code
Nexpoint Residential Trust Inc
300 Crescent Ct
Suite 700
Dallas, TX 75201

d Control number
12437 11

e Employee's name, address, and ZIP code
James Dondero [redacted]

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |

| 12a | | 13 Statutory employee   Retirement plan   3rd-party sick pay |
|---|---|---|
| 12b | | 14 Other |
| 12c | | |
| 12d | | |

| TX   NOT NEEDED | 1944956.01 | | |
|---|---|---|---|
| 15 State Employer's State ID# | 16 State wages, tips, etc. | | 17 State income tax |
| 18 Local wages, tips, etc. N/A | 19 Local income tax N/A | | 20 Locality name N/A |

Form W-2 Wage and Tax Statement
Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 1 of 2

Confidential

| Copy C - FOR EMPLOYEE'S RECORDS ONLY | **2019** | OMB No. 1545-0008 |
|---|---|---|

| a Employee's social security number [redacted] | 1 Wages, tips, other comp. 1944956.01 | 2 Federal income tax withheld 569633.72 |
|---|---|---|
| b Employer ID number 47-1881359 | 3 Social security wages 132900.00 | 4 Social security tax withheld 8239.80 |
| | 5 Medicare wages and tips 1944956.01 | 6 Medicare tax withheld 43906.46 |

c Employer's name, address, and ZIP code

Nexpoint Residential Trust Inc
300 Crescent Ct
Suite 700
Dallas, TX 75201

d Control number
12437 11

e Employee's name, address, and ZIP code

James Dondero
[redacted]

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | |
| 12a | | 13 Statutory employee   Retirement plan   3rd-party sick pay |
| 12b | | 14 Other |
| 12c | | |
| 12d | | |

| TX | NOT NEEDED | 1944956.01 | |
|---|---|---|---|
| 15 State Employer's State ID# | | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. N/A | | 19 Local income tax N/A | 20 Locality name N/A |

**Form W-2 Wage and Tax Statement**                    Dept. of the Treasury - IRS

This information is being furnished to the IRS. If you are required to file a tax return, a negligence penalty/other sanction may be imposed on you if this income is taxable and you fail to report it.

Printed by Paylocity Payroll
Page 2 of 2

# EXHIBIT 67-2

| 44444 | For Official Use Only ▶ OMB No. 1545-0008 | | Safe, accurate, FAST! Use | IRS *e* ~ *file* | Visit the IRS website at **www.irs.gov.** |
|---|---|---|---|---|---|

| **a** Employer's name, address, and ZIP code | **c** Tax year/Form corrected | **d** Employee's correct SSN |
|---|---|---|
| Nexpoint Residential Trust Inc<br>300 Crescent Ct<br>Suite 700<br>Dallas, TX 75201 | 2017   / **W-2** | ▓▓▓▓▓▓▓ |
| | **e** Corrected SSN and/or name (Check this box and complete boxes f and/or g if incorrect on form previously filed.) | ☑ |
| | Complete boxes f and/or g only if incorrect on form **previously filed** ▶ | |
| | **f** Employee's **previously reported** SSN<br>▓▓▓▓▓▓ | |
| **b** Employer's Federal EIN<br>47-1881359 | **g** Employee's **previously reported** name | |
| | **h** Employee's first name and initial: James | Last name: Dondero | Suff. |
| **Note.** Only complete money fields that are being corrected (exception: for corrections involving MQGE, see the General Instructions for Forms W-2 and W-3, under Specific Instructions for Form W-2c, boxes 5 and 6). | ▓▓▓▓▓▓▓▓ | |
| | **i** Employee's address and ZIP code | |

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| **1** Wages, tips, other compensation<br>603,363.72 | **1** Wages, tips, other compensation<br>625,466.64 | **2** Federal income tax withheld<br>150,840.93 | **2** Federal income tax withheld<br>156,366.66 |
| **3** Social security wages | **3** Social security wages | **4** Social security tax withheld | **4** Social security tax withheld |
| **5** Medicare wages and tips<br>603,363.72 | **5** Medicare wages and tips<br>625,466.64 | **6** Medicare tax withheld<br>12,379.04 | **6** Medicare tax withheld<br>12,898.46 |
| **7** Social security tips | **7** Social security tips | **8** Allocated tips | **8** Allocated tips |
| **9** | **9** | **10** Dependent care benefits | **10** Dependent care benefits |
| **11** Nonqualified plans | **11** Nonqualified plans | **12a** See instructions for box 12 | **12a** See instructions for box 12 |
| **13** Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | **13** Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | **12b** | **12b** |
| **14** Other (see instructions) | **14** Other (see instructions) | **12c** | **12c** |
| | | **12d** | **12d** |

### State Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| **15** State<br>TX | **15** State<br>TX | **15** State | **15** State |
| Employer's state ID number<br>NOT NEEDED | Employer's state ID number<br>NOT NEEDED | Employer's state ID number | Employer's state ID number |
| **16** State wages, tips, etc.<br>603,363.72 | **16** State wages, tips, etc.<br>625,466.64 | **16** State wages, tips, etc. | **16** State wages, tips, etc. |
| **17** State income tax<br>0.00 | **17** State income tax<br>0.00 | **17** State income tax | **17** State income tax |

### Locality Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| **18** Local wages, tips, etc. | **18** Local wages, tips, etc. | **18** Local wages, tips, etc. | **18** Local wages, tips, etc. |
| **19** Local income tax | **19** Local income tax | **19** Local income tax | **19** Local income tax |
| **20** Locality name | **20** Locality name | **20** Locality name | **20** Locality name |

**Copy B—To Be Filed with Employee's FEDERAL Tax Return**

Form **W-2c** (Rev. 8-2014)  **Corrected Wage and Tax Statement**  Department of the Treasury Internal Revenue Service

Confidential

| 44444 | **For Official Use Only ▶** OMB No. 1545-0008 | | | Safe, accurate, FAST! Use | IRS *e~file* | Visit the IRS website at **www.irs.gov.** |
|---|---|---|---|---|---|---|

**a** Employer's name, address, and ZIP code

Nexpoint Residential Trust Inc
300 Crescent Ct
Suite 700
Dallas, TX 75201

**b** Employer's Federal EIN

47-1881359

**c** Tax year/Form corrected

2017   / **W-2**

**d** Employee's correct SSN ███████████

**e** Corrected SSN and/or name (Check this box and complete boxes f and/or g if incorrect on form previously filed.) ☑

Complete boxes f and/or g only if incorrect on form **previously filed** ▶

**f** Employee's **previously reported** SSN ███████████

**g** Employee's **previously reported** name

**h** Employee's first name and initial: James   Last name: Dondero   Suff.

███████████

**i** Employee's address and ZIP code

**Note.** Only complete money fields that are being corrected (exception: for corrections involving MQGE, see the General Instructions for Forms W-2 and W-3, under Specific Instructions for Form W-2c, boxes 5 and 6).

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| **1** Wages, tips, other compensation | **1** Wages, tips, other compensation | **2** Federal income tax withheld | **2** Federal income tax withheld |
| 603,363.72 | 625,466.64 | 150,840.93 | 156,366.66 |
| **3** Social security wages | **3** Social security wages | **4** Social security tax withheld | **4** Social security tax withheld |
|  |  |  |  |
| **5** Medicare wages and tips | **5** Medicare wages and tips | **6** Medicare tax withheld | **6** Medicare tax withheld |
| 603,363.72 | 625,466.64 | 12,379.04 | 12,898.46 |
| **7** Social security tips | **7** Social security tips | **8** Allocated tips | **8** Allocated tips |
|  |  |  |  |
| **9** | **9** | **10** Dependent care benefits | **10** Dependent care benefits |
|  |  |  |  |
| **11** Nonqualified plans | **11** Nonqualified plans | **12a** See instructions for box 12 | **12a** See instructions for box 12 |
| **13** Statutory employee / Retirement plan / Third-party sick pay | **13** Statutory employee / Retirement plan / Third-party sick pay | **12b** | **12b** |
| **14** Other (see instructions) | **14** Other (see instructions) | **12c** | **12c** |
|  |  | **12d** | **12d** |

### State Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| **15** State   TX | **15** State   TX | **15** State | **15** State |
| Employer's state ID number   NOT NEEDED | Employer's state ID number   NOT NEEDED | Employer's state ID number | Employer's state ID number |
| **16** State wages, tips, etc.   603,363.72 | **16** State wages, tips, etc.   625,466.64 | **16** State wages, tips, etc. | **16** State wages, tips, etc. |
| **17** State income tax   0.00 | **17** State income tax   0.00 | **17** State income tax | **17** State income tax |

### Locality Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| **18** Local wages, tips, etc. | **18** Local wages, tips, etc. | **18** Local wages, tips, etc. | **18** Local wages, tips, etc. |
| **19** Local income tax | **19** Local income tax | **19** Local income tax | **19** Local income tax |
| **20** Locality name | **20** Locality name | **20** Locality name | **20** Locality name |

**Copy C—For EMPLOYEE's RECORDS**

Form **W-2c** (Rev. 8-2014)     **Corrected Wage and Tax Statement**     Department of the Treasury Internal Revenue Service

Confidential

| 44444 | **For Official Use Only ▶** OMB No. 1545-0008 | | | |
|---|---|---|---|---|

**a** Employer's name, address, and ZIP code

Nexpoint Residential Trust Inc
300 Crescent Ct
Suite 700
Dallas, TX 75201

**c** Tax year/Form corrected

2017　/ **W-2**

**d** Employee's correct SSN

████████████

**e** Corrected SSN and/or name (Check this box and complete boxes f and/or g if incorrect on form previously filed.) ☑

Complete boxes f and/or g only if incorrect on form **previously filed** ▶

**f** Employee's **previously reported** SSN

████████████

**b** Employer's Federal EIN

47-1881359

**g** Employee's **previously reported** name

**h** Employee's first name and initial — Last name — Suff.

James — Dondero

**Note.** Only complete money fields that are being corrected (exception: for corrections involving MQGE, see the General Instructions for W-2 and W-3, under Specific Instructions for Form W-2c, boxes 5 and 6).

████████████████████

**i** Employee's address and ZIP code

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| 1 Wages, tips, other compensation<br>603,363.72 | 1 Wages, tips, other compensation<br>625,466.64 | 2 Federal income tax withheld<br>150,840.93 | 2 Federal income tax withheld<br>156,366.66 |
| 3 Social security wages | 3 Social security wages | 4 Social security tax withheld | 4 Social security tax withheld |
| 5 Medicare wages and tips<br>603,363.72 | 5 Medicare wages and tips<br>625,466.64 | 6 Medicare tax withheld<br>12,379.04 | 6 Medicare tax withheld<br>12,898.46 |
| 7 Social security tips | 7 Social security tips | 8 Allocated tips | 8 Allocated tips |
| 9 | 9 | 10 Dependent care benefits | 10 Dependent care benefits |
| 11 Nonqualified plans | 11 Nonqualified plans | 12a See instructions for box 12 | 12a See instructions for box 12 |
| 13 Statutory employee / Retirement plan / Third-party sick pay | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b | 12b |
| 14 Other (see instructions) | 14 Other (see instructions) | 12c | 12c |
| | | 12d | 12d |

## State Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| 15 State<br>TX | 15 State<br>TX | 15 State | 15 State |
| Employer's state ID number<br>NOT NEEDED | Employer's state ID number<br>NOT NEEDED | Employer's state ID number | Employer's state ID number |
| 16 State wages, tips, etc.<br>603,363.72 | 16 State wages, tips, etc.<br>625,466.64 | 16 State wages, tips, etc. | 16 State wages, tips, etc. |
| 17 State income tax<br>0.00 | 17 State income tax<br>0.00 | 17 State income tax | 17 State income tax |

## Locality Correction Information

| Previously reported | Correct information | Previously reported | Correct information |
|---|---|---|---|
| 18 Local wages, tips, etc. | 18 Local wages, tips, etc. | 18 Local wages, tips, etc. | 18 Local wages, tips, etc. |
| 19 Local income tax | 19 Local income tax | 19 Local income tax | 19 Local income tax |
| 20 Locality name | 20 Locality name | 20 Locality name | 20 Locality name |

**Copy 2—To Be Filed with Employee's State, City, or Local Income Tax Return**

Form **W-2c** (Rev. 8-2014)　　**Corrected Wage and Tax Statement**　　Department of the Treasury Internal Revenue Service

**EXHIBIT 67-3**

Appx. 01108

**Form 1040 (2013)**  JAMES D. DONDERO   Page 2

## Tax and Credits

| | | | |
|---|---|---|---|
| 38 | Amount from line 37 (adjusted gross income) | 38 | 48,945,921. |
| 39a Check if: | ☐ You were born before January 2, 1949, ☐ Blind. ☐ Spouse was born before January 2, 1949, ☐ Blind. } Total boxes checked ▶ 39a | | |
| b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b ☒ | | |
| 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 40 | 2,342,092. |
| 41 | Subtract line 40 from line 38 | 41 | 46,603,829. |
| 42 | Exemptions. If line 38 is $150,000 or less, multiply $3,900 by the number on line 6d. Otherwise, see inst. | 42 | 0. |
| 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 46,603,829. |
| 44 | Tax. Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ | 44 | 13,035,847. |
| 45 | Alternative minimum tax. Attach Form 6251 | 45 | 0. |
| 46 | Add lines 44 and 45 ▶ | 46 | 13,035,847. |
| 47 | Foreign tax credit. Attach Form 1116 if required | 47 | 177. | |
| 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | | |
| 49 | Education credits from Form 8863, line 19 | 49 | | |
| 50 | Retirement savings contributions credit. Attach Form 8880 | 50 | | |
| 51 | Child tax credit. Attach Schedule 8812, if required | 51 | | |
| 52 | Residential energy credits. Attach Form 5695 | 52 | | |
| 53 | Other credits from Form: a ☐ 3800 b ☐ 8801 c ☐ | 53 | | |
| 54 | Add lines 47 through 53. These are your total credits | 54 | 177. |
| 55 | Subtract line 54 from line 46. If line 54 is more than line 46, enter -0- ▶ | 55 | 13,035,670. |

## Other Taxes

| | | | |
|---|---|---|---|
| 56 | Self-employment tax. Attach Schedule SE | 56 | 5,374. |
| 57 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | 57 | |
| 58 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 58 | |
| 59a | Household employment taxes from Schedule H | 59a | |
| b | First-time homebuyer credit repayment. Attach Form 5405 if required | 59b | |
| 60 | Taxes from: a ☒ Form 8959 b ☒ Form 8960 c ☒ inst.; enter code(s) STMT 15 | 60 | 2,070,082. |
| 61 | Add lines 55 through 60. This is your total tax ▶ | 61 | 15,111,126. |

## Payments

| | | | |
|---|---|---|---|
| 62 | Federal income tax withheld from Forms W-2 and 1099 | 62 | 393,106. | STATEMENT 14 |
| 63 | 2013 estimated tax payments and amount applied from 2012 return | 63 | 41,508. | |
| 64a | Earned income credit (EIC) | 64a | | |
| b | Nontaxable combat pay election | 64b | | |
| 65 | Additional child tax credit. Attach Schedule 8812 | 65 | | |
| 66 | American opportunity credit from Form 8863, line 8 | 66 | | |
| 67 | Reserved | 67 | | |
| 68 | Amount paid with request for extension to file | 68 | 16,500,000. | |
| 69 | Excess social security and tier 1 RRTA tax withheld | 69 | | |
| 70 | Credit for federal tax on fuels. Attach Form 4136 | 70 | | |
| 71 | Credits from Form: a ☐ 2439 b ☐ Reserved c ☐ 8885 d ☐ | 71 | | |
| 72 | Add lines 62, 63, 64a, and 65 through 71. These are your total payments ▶ | 72 | 16,934,614. |

## Refund

| | | | |
|---|---|---|---|
| 73 | If line 72 is more than line 61, subtract line 61 from line 72. This is the amount you overpaid | 73 | 1,823,488. |
| 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | 74a | 1,561,228. |
| b | Routing number ▮▮▮ ▶ c Type: ☒ Checking ☐ Savings ▶ d Account number ▮▮▮ | | |
| 75 | Amount of line 73 you want applied to your 2014 estimated tax ▶ | 75 | |

## Amount You Owe

| | | | |
|---|---|---|---|
| 76 | Amount you owe. Subtract line 72 from line 61. For details on how to pay, see instructions ▶ | 76 | |
| 77 | Estimated tax penalty (see instructions) | 77 | 262,260. |

## Third Party Designee

Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ Yes. Complete below. ☐ No
Designee's name ▶ TODD CRAWFORD   Phone no. ▶ 713-982-2000   Personal identification number (PIN) ▶ 28788

## Sign Here

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature — Date 10/15/14 — Your occupation Executive — Daytime phone number 972-___-4100

## Paid Preparer Use Only

| | | |
|---|---|---|
| Print/Type preparer's name TODD CRAWFORD | Preparer's signature TODD CRAWFORD | Date 10/14/14 Check ☐ if self-employed PTIN P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | Firm's EIN ▶ 86-1065772 |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500 HOUSTON, TX 77002-2591 | | Phone no. 713-982-2000 |

310002 04-02-14

EXPERT 0000031
Appx. 01109

JAMES D. DONDERO

███████████

| | FORM 1040 | WAGES RECEIVED AND TAXES WITHHELD | | | | | STATEMENT | 12 |

| T S | EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|---|
| T | HIGHLAND CAPITAL MANAGEMENT LP | 1,911,538. | 377,643. | | | 7,049. | 43,250. |
| T | HIGHLAND CAPITAL MGMT PTE LTD. | 76,085. | | | | | |
| | TOTALS | 1,987,623. | 377,643. | | | 7,049. | 43,250. |

| FORM 1040 | QUALIFIED DIVIDENDS | | STATEMENT | 13 |

| NAME OF PAYER | ORDINARY DIVIDENDS | QUALIFIED DIVIDENDS |
|---|---|---|
| NEXPOINT | 1,209,750. | 63,077. |
| NEXPOINT - GET GOOD #2 | 67,084. | 3,498. |
| NEXPOINT ADVISORS LP | 19,065. | 280. |
| FROM K-1 - HIGHLAND CAPITAL MANAGEMENT SERVICES, INC. | 175,652. | 9,217. |
| FROM K-1 - PCMG TRADING PARTNERS XXIII, ( | 10,567. | 724. |
| FROM K-1 - STRAND ADVISORS III, INC. | 143. | 10. |
| FROM K-1 - STRAND ADVISORS, INC. | 11,447. | 1,240. |
| FROM K-1 - SERENGETI PARTNERS, LP - GET GOOD #2 | 57,678. | 30,335. |
| FROM K-1 - HAYMAN CAPITAL PARTNERS LP - GET GOOD #2 | 22,591. | 11,341. |
| FROM K-1 - HIGHLAND CAPITAL MGMT, LP | 1,360,353. | 165,565. |
| FROM K-1 - SERENGETI OPPORTUNITIES PARTNERS LP - DUGABOY LLC | 3,498. | 1,841. |
| FROM K-1 - GRANITE BAY ADVISORS, LP | 336. | 2. |
| FROM K-1 - ACIS CAPITAL MANAGEMENT, LP - ACIS GP LLC | 20. | 11. |
| FROM K-1 - ACIS CAPITAL MANAGEMENT, LP - DUGABOY | 12,199. | 6,759. |
| FROM K-1 - NEXPOINT ADVISORS, GP LLC | 58. | 19. |
| FROM K-1 - NEXPOINT ADVISORS, L.P. - DUGABOY | 57,549. | 19,149. |
| TOTAL INCLUDED IN FORM 1040, LINE 9B | | 313,068. |

(

Confidential                                                    EXPERT 0000308
                                                                **Appx. 01110**

# EXHIBIT 67-4

Form 1040 (2014)   JAMES D. DONDERO                                                                                          Page **2**

| | | | |
|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | 38 | 59,549,723. |

| | | |
|---|---|---|
| Standard Deduction for - | 39a Check { You were born before January 2, 1950, ☐ Blind. } Total boxes<br>if: { Spouse was born before January 2, 1950, ☐ Blind. } checked ▶ 39a | |
| • People who check any box on line 39a or 39b or who can be claimed as a dependent, see Instructions. | b If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b [X] | |
| | 40 Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 40 | 3,242,658. |
| | 41 Subtract line 40 from line 38 | 41 | 56,307,065. |
| | 42 Exemptions. If line 38 is $152,525 or less, multiply $3,950 by the number on line 6d. Otherwise, see inst. | 42 | 0. |
| • All others: | 43 Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 56,307,065. |
| Single or Married filing separately, $6,200 | 44 Tax. Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ | 44 | 13,190,542. |
| | 45 Alternative minimum tax. Attach Form 6251 | 45 | 0. |
| Married filing jointly or Qualifying widow(er), $12,400 | 46 Excess advance premium tax credit repayment. Attach Form 8962 | 46 | |
| | 47 Add lines 44, 45, and 46 ▶ | 47 | 13,190,542. |
| Head of household, $9,100 | 48 Foreign tax credit. Attach Form 1116 if required | 48 | 98,016. | | |
| | 49 Credit for child and dependent care expenses. Attach Form 2441 | 49 | | | |
| | 50 Education credits from Form 8863, line 19 | 50 | | | |
| | 51 Retirement savings contributions credit. Attach Form 8880 | 51 | | | |
| | 52 Child tax credit. Attach Schedule 8812, if required | 52 | | | |
| | 53 Residential energy credits. Attach Form 5695 | 53 | | | |
| | 54 Other credits from Form: a ☐ 3800 b ☐ 8801 c ☐ | 54 | | | |
| | 55 Add lines 48 through 54. These are your total credits | 55 | 98,016. |
| | 56 Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- ▶ | 56 | 13,092,526. |
| **Other Taxes** | 57 Self-employment tax. Attach Schedule SE | 57 | 15,692. |
| | 58 Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | 58 | |
| | 59 Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 59 | 60,882. |
| | 60a Household employment taxes from Schedule H | 60a | |
| | b First-time homebuyer credit repayment. Attach Form 5405 if required | 60b | |
| | 61 Health care: individual responsibility (see instructions) Full-year coverage [X] | 61 | |
| | 62 Taxes from: a [X] Form 8959 b [X] Form 8960 c ☐ Inst; enter code(s) STATEMENT 23 | 62 | 2,080,425. |
| | 63 Add lines 56 through 62. This is your total tax ▶ | 63 | 15,249,525. STATEMENT 22 |
| **Payments** | 64 Federal income tax withheld from Forms W-2 and 1099 | 64 | 388,958. | | |
| If you have a qualifying child, attach Schedule EIC. | 65 2014 estimated tax payments and amount applied from 2013 return | 65 | | | |
| | 66a Earned income credit (EIC) | 66a | | | |
| | b Nontaxable combat pay election 66b | | | | |
| | 67 Additional child tax credit. Attach Schedule 8812 | 67 | | | |
| | 68 American opportunity credit from Form 8863, line 8 | 68 | | | |
| | 69 Net premium tax credit. Attach Form 8962 | 69 | | | |
| | 70 Amount paid with request for extension to file | 70 | | | |
| | 71 Excess social security and tier 1 RRTA tax withheld | 71 | | | |
| | 72 Credit for federal tax on fuels. Attach Form 4136 | 72 | | | |
| | 73 Credits from Form: a ☐ 2439 b ☐ Reserved c ☐ Reserved d ☐ | 73 | | | |
| | 74 Add lines 64, 65, 66a, and 67 through 73. These are your total payments ▶ | 74 | 388,958. |
| **Refund** | 75 If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you overpaid | 75 | |
| Direct deposit? See instructions. | 76a Amount of line 75 you want refunded to you. If Form 8888 is attached, check here ▶ | 76a | |
| | b Routing number ▶ c Type: ☐ Checking ☐ Savings d Account number ▶ | | |
| | 77 Amount of line 75 you want applied to your 2015 estimated tax ▶ 77 | | |
| **Amount You Owe** | 78 Amount you owe. Subtract line 74 from line 63. For details on how to pay, see instructions ▶ | 78 | 15,126,613. |
| | 79 Estimated tax penalty (see instructions) 79 | 266,046. | |

| | | |
|---|---|---|
| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see instructions)? [X] Yes. Complete below. ☐ No | |
| | Designee's name ▶ TODD CRAWFORD   Phone no. ▶ 713-982-2000   Personal identification number (PIN) ▶ 28788 | |

**Sign Here**
Joint return? See instructions. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| *[signature]* | 1/2/2015 | Executive | 972-628-4100 |
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TODD CRAWFORD | TODD CRAWFORD | 11/02/15 | | P00848788 |
| Firm's name ▶ DELOITTE TAX LLP | | | Firm's EIN ▶ 86-1065772 | |
| Firm's address ▶ 1111 BAGBY STREET, SUITE 4500<br>HOUSTON, TX 77002-2591 | | | Phone no. 713-982-2000 | |

410002
12-31-14

EXPERT 0000390

**Appx. 01112**

JAMES D. DONDERO

FORM 1040          WAGES RECEIVED AND TAXES WITHHELD          STATEMENT  20

| T S | EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|---|
| T | HIGHLAND CAPITAL MANAGEMENT LP | 3,282,693. | 361,201. | | | 7,254. | 75,343. |
| T | HIGHLAND CAPITAL MGMT PTE LTD. | 73,227. | | | | | |
| | TOTALS | 3,355,920. | 361,201. | | | 7,254. | 75,343. |

FORM 1040                 QUALIFIED DIVIDENDS                 STATEMENT  21

| NAME OF PAYER | ORDINARY DIVIDENDS | QUALIFIED DIVIDENDS |
|---|---|---|
| NEXPOINT | 2,292,312. | 207,477. |
| NEXPOINT - GET GOOD #2 | 91,123. | 8,247. |
| FROM K-1 - HIGHLAND CAPITAL MANAGEMENT SERVICES, INC. | 170,404. | 17,154. |
| FROM K-1 - PCMG TRADING PARTNERS XXIII, LP | 18,241. | 4,500. |
| FROM K-1 - STRAND ADVISORS III, INC. | 247. | 61. |
| FROM K-1 - STRAND ADVISORS, INC. | 30,676. | 22,761. |
| FROM K-1 - SERENGETI PARTNERS, LP - GET GOOD #2 | 80,697. | 53,802. |
| FROM K-1 - HAYMAN CAPITAL PARTNERS LP - GET GOOD #2 | 265,627. | 242,852. |
| FROM K-1 - HIGHLAND CAPITAL MGMT, LP | 4,097,501. | 3,040,190. |
| FROM K-1 - SERENGETI OPPORTUNITIES PARTNERS LP - DUGABOY LLC | 4,945. | 3,297. |
| FROM K-1 - GRANITE BAY ADVISORS, LP | 1,778. | 33. |
| FROM K-1 - ICONIQ STRATEGIC PARTNERS, L.P. | 1. | 1. |
| FROM K-1 - NEXPOINT ADVISORS, GP LLC | 81. | 4. |
| FROM K-1 - NEXPOINT ADVISORS, L.P. - DUGABOY | 80,929. | 3,738. |
| TOTAL INCLUDED IN FORM 1040, LINE 9B | | 3,604,117. |

Confidential                                                    EXPERT 0000623
                                                               Appx. 01113

# EXHIBIT 67-5

Form 1040 (2015)   JAMES D. DONDERO                                      Page 2

| Tax and Credits | 38 | Amount from line 37 (adjusted gross income) | | | 38 | 106,251,803. |
|---|---|---|---|---|---|---|
| Standard Deduction for— | 39a | Check if: ☐ You were born before January 2, 1951, ☐ Blind. ☐ Spouse was born before January 2, 1951, ☐ Blind. | Total boxes checked ▶ 39a | | | |
| ● People who check any box on line 39a or 39b OR who can be claimed as a dependent, see instructions. | b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b | | | | |
| | 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | | | 40 | 40,448,879. |
| | 41 | Subtract line 40 from line 38 | | | 41 | 65,802,924. |
| | 42 | Exemptions. If line 38 is $154,950 or less, multiply $4,000 by the number on line 6d. Otherwise, see inst. | | | 42 | 0. |
| ● All others: | 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | | | 43 | 65,802,924. |
| Single or Married filing separately, $6,300 | 44 | Tax. Check if any from: a ☐ Form(s) 8814  b ☐ Form 4972  c ☐ | | | 44 | 24,485,784. |
| | 45 | Alternative minimum tax. Attach Form 6251 | | | 45 | 0. |
| Married filing jointly or Qualifying widow(er), $12,600 | 46 | Excess advance premium tax credit repayment. Attach Form 8962 | | | 46 | |
| | 47 | Add lines 44, 45, and 46 | | ▶ | 47 | 24,485,784. |
| Head of household, $9,250 | 48 | Foreign tax credit. Attach Form 1116 if required | 48 | 41,902. | | |
| | 49 | Credit for child and dependent care expenses. Attach Form 2441 | 49 | | | |
| | 50 | Education credits from Form 8863, line 19 | 50 | | | |
| | 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | | | |
| | 52 | Child tax credit. Attach Schedule 8812, if required | 52 | | | |
| | 53 | Residential energy credits. Attach Form 5695 | 53 | | | |
| | 54 | Other credits from Form: a ☒ 3800  b ☐ 8801  c ☐ | 54 | | | |
| | 55 | Add lines 48 through 54. These are your total credits | | | 55 | 41,902. |
| | 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- | | ▶ | 56 | 24,443,882. |
| Other Taxes | 57 | Self-employment tax. Attach Schedule SE | | | 57 | 27,478. |
| | 58 | Unreported social security and Medicare tax from Form: a ☐ 4137  b ☐ 8919 | | | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | | 59 | |
| | 60a | Household employment taxes from Schedule H | | | 60a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | | | 60b | |
| | 61 | Health care: individual responsibility (see instructions)   Full-year coverage ☒ | | | 61 | |
| | 62 | Taxes from: a ☒ Form 8959  b ☒ Form 8960  c ☐ Inst.; enter code(s) STATEMENT 26 | | | 62 | 1,176,409. |
| | 63 | Add lines 56 through 62. This is your total tax | | ▶ | 63 | 25,647,769. STATEMENT 25 |
| Payments | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | 384,653. | | |
| If you have a qualifying child, attach Schedule EIC. | 65 | 2015 estimated tax payments and amount applied from 2014 return | 65 | | | |
| | 66a | Earned income credit (EIC) | 66a | | | |
| | b | Nontaxable combat pay election | 66b | | | |
| | 67 | Additional child tax credit. Attach Schedule 8812 | 67 | | | |
| | 68 | American opportunity credit from Form 8863, line 8 | 68 | | | |
| | 69 | Net premium tax credit. Attach Form 8962 | 69 | | | |
| | 70 | Amount paid with request for extension to file | 70 | | | |
| | 71 | Excess social security and tier 1 RRTA tax withheld | 71 | | | |
| | 72 | Credit for federal tax on fuels. Attach Form 4136 | 72 | | | |
| | 73 | Credits from Form: a ☐ 2439  b ☐ Reserved  c ☐ 8885  d ☐ | 73 | | | |
| | 74 | Add lines 64, 65, 66a, and 67 through 73. These are your total payments | | ▶ | 74 | 384,653. |
| Refund | 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you overpaid | | | 75 | |
| Direct deposit? See instructions. | 76a | Amount of line 75 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | | | 76a | |
| | ▶ b | Routing number | ▶ c | Type: ☐ Checking ☐ Savings | | |
| | ▶ d | Account number | | | | |
| | 77 | Amount of line 75 you want applied to your 2016 estimated tax ▶ | 77 | | | |
| Amount You Owe | 78 | Amount you owe. Subtract line 74 from line 63. For details on how to pay, see instructions | | ▶ | 78 | 25,263,116. |
| | 79 | Estimated tax penalty (see instructions) | 79 | | | |

**Third Party Designee**   Do you want to allow another person to discuss this return with the IRS (see instructions)?   ☒ Yes. Complete below.   ☐ No
Designee's name ▶ TODD CRAWFORD   Phone no. ▶ 713-982-2000   Personal identification number (PIN) ▶ 28788

**Sign Here**
Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.
Joint return? See instructions. Keep a copy for your records.
Your signature   Date 10/17/2016   Your occupation  Executive   Daytime phone number 972-628-4100
Spouse's signature. If a joint return, both must sign.   Date   Spouse's occupation   If the IRS sent you an Identity Protection PIN, enter it here

**Paid Preparer Use Only**
Print/Type preparer's name TODD CRAWFORD   Preparer's signature TODD CRAWFORD   Date 10/17/16   Check ☐ if self-employed   PTIN P00848788
Firm's name ▶ DELOITTE TAX LLP   Firm's EIN ▶ 86-1065772
Firm's address ▶ 1111 BAGBY STREET, SUITE 4500   HOUSTON, TX 77002-2591   Phone no. 713-982-2000

510002 12-30-15

EXPERT 0001325
Appx. 01115

JAMES D. DONDERO

| FORM 1040 | WAGES RECEIVED AND TAXES WITHHELD | STATEMENT 23 |
| --- | --- | --- |

| T<br>S | EMPLOYER'S NAME | AMOUNT<br>PAID | FEDERAL<br>TAX<br>WITHHELD | STATE<br>TAX<br>WITHHELD | CITY<br>SDI<br>TAX W/H | FICA<br>TAX | MEDICARE<br>TAX |
| --- | --- | --- | --- | --- | --- | --- | --- |
| T | HIGHLAND CAPITAL<br>MANAGEMENT LP | 2,875,058. | 360,577. | | | 7,347. | 65,764. |
| T | HIGHLAND CAPITAL MGMT<br>PTE LTD. | 61,880. | | | | | |
| | TOTALS | 2,936,938. | 360,577. | | | 7,347. | 65,764. |

| FORM 1040 | QUALIFIED DIVIDENDS | STATEMENT 24 |
| --- | --- | --- |

| NAME OF PAYER | ORDINARY<br>DIVIDENDS | QUALIFIED<br>DIVIDENDS |
| --- | --- | --- |
| NEXPOINT CREDIT #1061004 - GET GOOD NE2 | 424,450. | 7,055. |
| NEXPOINT CREDIT #10671 - DUGABOY INVST, | 5,075,869. | 84,367. |
| NEXPOINT CREDIT #1061005 - OTHER | 668. | 11. |
| FROM K-1 - HIGHLAND CAPITAL MANAGEMENT<br>SERVICES, INC. | 1,121,758. | 17,419. |
| FROM K-1 - PCMG TRADING PARTNERS XXIII,<br>LP | 81,701. | 2,742. |
| FROM K-1 - STRAND ADVISORS III, INC. | 1,104. | 37. |
| FROM K-1 - STRAND ADVISORS, INC. | 107,555. | 10,350. |
| FROM K-1 - SERENGETI PARTNERS, LP - GET<br>GOOD #2 | 122,685. | 36,501. |
| FROM K-1 - HAYMAN CAPITAL PARTNERS LP -<br>GET GOOD #2 | 5,733. | 2,373. |
| FROM K-1 - HIGHLAND CAPITAL MGMT, LP | 14,222,996. | 1,368,700. |
| FROM K-1 - SERENGETI OPPORTUNITIES<br>PARTNERS LP - DUGABOY LLC | 7,513. | 2,235. |
| FROM K-1 - GRANITE BAY ADVISORS, LP | 586. | 12. |
| FROM K-1 - NEXBANK CAPITAL, INC. -<br>DUGABOY | 2,126. | 1,429. |
| FROM K-1 - ICONIQ STRATEGIC PARTNERS,<br>L.P. | 89. | 89. |
| FROM K-1 - NEXPOINT ADVISORS, GP LLC | 1,231. | 3. |
| FROM K-1 - NEXPOINT ADVISORS, L.P. -<br>DUGABOY | 1,229,938. | 3,483. |
| TOTAL INCLUDED IN FORM 1040, LINE 9B | | 1,536,806. |

Confidential

EXPERT 0001523<br>**Appx. 01116**

# EXHIBIT 67-6

Form 1040 (2016)   JAMES D. DONDERO                                                                      Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | 38 | 67,070,747. |

**Standard Deduction for –**

39a Check { ☐ You were born before January 2, 1952, ☐ Blind. } **Total boxes**
if: { ☐ Spouse was born before January 2, 1952, ☐ Blind. } checked ▶ 39a

* People who check any box on line 39a or 39b or who can be claimed as a dependent, see instructions.

b If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b

| 40 | Itemized deductions (from Schedule A) or your **standard deduction** (see left margin) | 40 | 35,026,261. |
|---|---|---|---|
| 41 | Subtract line 40 from line 38 | 41 | 32,044,486. |
| 42 | Exemptions. If line 38 is $155,650 or less, multiply $4,050 by the number on line 6d. Otherwise, see inst. | 42 | 0. |
| 43 | **Taxable income.** Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 32,044,486. |
| 44 | Tax. Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ | 44 | 10,668,862. |
| 45 | Alternative minimum tax. Attach Form 6251 | 45 | 0. |

* All others:
Single or
Married filing separately,
$6,300

Married filing jointly or
Qualifying widow(er),
$12,600

Head of household,
$9,300

| 46 | Excess advance premium tax credit repayment. Attach Form 8962 | 46 | |
|---|---|---|---|
| 47 | Add lines 44, 45, and 46 | 47 | 10,668,862. |
| 48 | Foreign tax credit. Attach Form 1116 if required | 48 | 23,346. |
| 49 | Credit for child and dependent care expenses. Attach Form 2441 | 49 | |
| 50 | Education credits from Form 8863, line 19 | 50 | |
| 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | |
| 52 | Child tax credit. Attach Schedule 8812, if required | 52 | |
| 53 | Residential energy credits. Attach Form 5695 | 53 | |
| 54 | Other credits from Form: a ☒ 3800 b ☐ 8801 c ☐ | 54 | |
| 55 | Add lines 48 through 54. These are your **total credits** | 55 | 23,346. |
| 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- | 56 | 10,645,516. |

| **Other Taxes** | 57 | Self-employment tax. Attach Schedule SE | 57 | 33,600. |
|---|---|---|---|---|
| | 58 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | 58 | |
| | 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 59 | |
| | 60a | Household employment taxes from Schedule H | 60a | |
| | b | First-time homebuyer credit repayment. Attach Form 5405 if required | 60b | |
| | 61 | Health care: Individual responsibility (see instructions) Full-year coverage ☒ | 61 | |
| | 62 | Taxes from: a ☒ Form 8959 b ☒ Form 8960 c ☒ Inst; enter code(s) STATEMENT 17 | 62 | 1,128,115. |
| | 63 | Add lines 56 through 62. This is your **total tax** | 63 | 11,807,231. |

STATEMENT 16

| **Payments** | 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | 361,603. | |
|---|---|---|---|---|---|
| | 65 | 2016 estimated tax payments and amount applied from 2015 return | 65 | * 7,900,000. | |

If you have a qualifying child, attach Schedule EIC.

| | 66a | Earned income credit (EIC) | 66a | |
|---|---|---|---|---|
| | b | Nontaxable combat pay election 66b | | |
| | 67 | Additional child tax credit. Attach Schedule 8812 | 67 | |
| | 68 | American opportunity credit from Form 8863, line 8 | 68 | |
| | 69 | Net premium tax credit. Attach Form 8962 | 69 | |
| | 70 | Amount paid with request for extension to file | 70 | |
| | 71 | Excess social security and tier 1 RRTA tax withheld STMT 15 | 71 | 7,347. |
| | 72 | Credit for federal tax on fuels. Attach Form 4136 | 72 | |
| | 73 | Credits from Form: a ☐ 2439 b ☐ Reserved c ☐ 8885 d ☐ | 73 | |
| | 74 | Add lines 64, 65, 66a, and 67 through 73. These are your **total payments** | 74 | 8,268,950. |

| **Refund** | 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you **overpaid** | 75 | |
|---|---|---|---|---|

Direct deposit?
See
instructions.

| | 76a | Amount of line 75 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | 76a | |
|---|---|---|---|---|
| | ▶ b | Routing number | ▶ c Type: ☐ Checking ☐ Savings | ▶ d Account number |
| | 77 | Amount of line 75 you want **applied to your 2017 estimated tax** ▶ | 77 | |

| **Amount You Owe** | 78 | **Amount you owe.** Subtract line 74 from line 63. For details on how to pay, see instructions ▶ | 78 | 3,810,722. |
|---|---|---|---|---|
| | 79 | Estimated tax penalty (see instructions) | 79 | 272,441. |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see instructions)? ☒ Yes. Complete below. ☐ No

Designee's name ▶ TODD CRAWFORD   Phone no. ▶ 713-982-2000   Personal identification number (PIN) ▶ 28788

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurately list all amounts and sources of income I received during the tax year. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return?
See instructions.
Keep a copy for your records.

Your signature   Date 1/25/18   Your occupation Executive   Daytime phone number

Spouse's signature. If a joint return, **both** must sign.   Date   Spouse's occupation   If the IRS sent you an Identity Protection PIN, enter it here

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TODD CRAWFORD | TODD CRAWFORD | 01/18/18 | | P00848788 |

Firm's name ▶ DELOITTE TAX LLP   Firm's EIN ▶ 86-1065772

Firm's address ▶ 1111 BAGBY STREET, SUITE 4500   Phone no. 713-982-2000
HOUSTON, TX 77002-2591

810002 11-30-16

* $7,900,000 PAYMENT MADE ON 1/18/2018. SEE CONFIRMATION ATTACHED.

EXPERT 0001999
**Appx. 01118**

JAMES D. DONDERO                                    ████████████

---

FORM 1040              WAGES RECEIVED AND TAXES WITHHELD            STATEMENT  13

| T S EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|
| T HIGHLAND CAPITAL MANAGEMENT LP | 772,904. | 260,529. | | | 7,347. | 16,363. |
| T NEXPOINT ADVISORS LP | 1,628,736. | 83,026. | | | 7,347. | 36,475. |
| T HIGHLAND CAPITAL MGMT PTE LTD. | 67,166. | | | | | |
| TOTALS | 2,468,806. | 343,555. | | | 14,694. | 52,838. |

---

FORM 1040                  QUALIFIED DIVIDENDS                      STATEMENT  14

| NAME OF PAYER | ORDINARY DIVIDENDS | QUALIFIED DIVIDENDS |
|---|---|---|
| NEXPOINT CREDIT #1061004 - GET GOOD NE2 | 114,812. | 9,964. |
| NEXPOINT CREDIT #1061005 - OTHER | 1,447. | 126. |
| NEXPOINT CREDIT #10671 - DUGABOY INVST, | 1,741,293. | 151,116. |
| FROM K-1 - HIGHLAND CRUSADER FUND, LP - JIM | 1. | 1. |
| FROM K-1 - HIGHLAND CAPITAL MANAGEMENT SERVICES, INC. | 301,224. | 25,062. |
| FROM K-1 - PCMG TRADING PARTNERS XXIII, LP | 23,745. | 1,635. |
| FROM K-1 - STRAND ADVISORS III, INC. | 321. | 22. |
| FROM K-1 - STRAND ADVISORS, INC. | 21,524. | 1,432. |
| FROM K-1 - SERENGETI PARTNERS, LP - GET GOOD #2 | 140,229. | 29,857. |
| FROM K-1 - HIGHLAND CAPITAL MGMT, LP | 16,011. | 1,065. |
| FROM K-1 - SERENGETI OPPORTUNITIES PARTNERS LP - DUGABOY LLC | 8,818. | 1,835. |
| FROM K-1 - GRANITE BAY ADVISORS, LP | 837. | 316. |
| FROM K-1 - HCM - MULTI-STRATEGY INSURANCE DEDICATED FUND, L.P. | 153. | 153. |
| FROM K-1 - NEXBANK CAPITAL, INC. - DUGABOY | 60,393. | 59,222. |
| FROM K-1 - ICONIQ STRATEGIC PARTNERS, L.P. | 368. | 368. |
| FROM K-1 - NEXPOINT ADVISORS, GP LLC | 1,403. | 57. |
| FROM K-1 - NEXPOINT ADVISORS, L.P. - DUGABOY | 1,401,150. | 56,892. |
| FROM K-1 - HCRE PARTNERS, LLC | 17,215. | 14,820. |
| FROM K-1 - NEXBANK CAPITAL, INC. | 2,371. | 2,325. |
| FROM K-1 - RAND PE FUND I LP | 67,914. | 4,633. |
| FROM K-1 - NEXBANK CAPITAL-GRANT SCOTT SLHC TRUST | 836. | 819. |
| | | 361,720. |

Confidential                                          EXPERT 0002179
                                                            **Appx. 01119**

# EXHIBIT 67-7

Form 1040 (2017)   JAMES D. DONDERO   Page **2**

## Tax and Credits

| | | | |
|---|---|---|---|
| 38 | Amount from line 37 (adjusted gross income) | **38** | 46,135,397. |
| 39a | Check if: ☐ You were born before January 2, 1953, ☐ Blind. ☐ Spouse was born before January 2, 1953, ☐ Blind. Total boxes checked ▶ 39a | | |
| b | If your spouse itemizes on a separate return or you were a dual-status alien, check here ▶ 39b ☐ | | |
| 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | **40** | 25,717,217. |
| 41 | Subtract line 40 from line 38 | **41** | 20,418,180. |
| 42 | Exemptions. If line 38 is $156,900 or less, multiply $4,050 by the number on line 6d. Otherwise, see inst. | **42** | 0. |
| 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | **43** | 20,418,180. |
| 44 | Tax. Check if any from: a ☐ Form(s) 8814 b ☐ Form 4972 c ☐ | **44** | 7,995,763. |
| 45 | Alternative minimum tax. Attach Form 6251 | **45** | 0. |
| 46 | Excess advance premium tax credit repayment. Attach Form 8962 | **46** | |
| 47 | Add lines 44, 45, and 46 ▶ | **47** | 7,995,763. |

Standard Deduction for -
● People who check any box on line 39a or 39b **or** who can be claimed as a dependent, see instructions.
● All others:
Single or Married filing separately, $6,350
Married filing jointly or Qualifying widow(er), $12,700
Head of household, $9,350

| | | | | |
|---|---|---|---|---|
| 48 | Foreign tax credit. Attach Form 1116 if required | 48 | | |
| 49 | Credit for child and dependent care expenses. Attach Form 2441 | 49 | | |
| 50 | Education credits from Form 8863, line 19 | 50 | | |
| 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | | |
| 52 | Child tax credit. Attach Schedule 8812, if required | 52 | | |
| 53 | Residential energy credits. Attach Form 5695 | 53 | | |
| 54 | Other credits from Form: a ☒ 3800 b ☐ 8801 c ☐ | 54 | | |
| 55 | Add lines 48 through 54. These are your total credits | | **55** | |
| 56 | Subtract line 55 from line 47. If line 55 is more than line 47, enter -0- ▶ | | **56** | 7,995,763. |

## Other Taxes

| | | | | |
|---|---|---|---|---|
| 57 | Self-employment tax. Attach Schedule SE | | **57** | 116,052. |
| 58 | Unreported social security and Medicare tax from Form: a ☐ 4137 b ☐ 8919 | | **58** | |
| 59 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | | **59** | |
| 60a | Household employment taxes from Schedule H | | **60a** | |
| b | First-time homebuyer credit repayment. Attach Form 5405 if required | | **60b** | |
| 61 | Health care: Individual responsibility (see instructions)   Full-year coverage ☒ | | **61** | |
| 62 | Taxes from: a ☒ Form 8959 b ☒ Form 8960 c ☒ Inst.; enter code(s) STATEMENT 12 | | **62** | 496,784. |
| 63 | Add lines 56 through 62. This is your total tax ▶ | | **63** | 8,608,599. STATEMENT 11 |

## Payments

If you have a qualifying child, attach Schedule EIC.

| | | | | |
|---|---|---|---|---|
| 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | 994,763. | |
| 65 | 2017 estimated tax payments and amount applied from 2016 return | 65 | | |
| 66a | Earned income credit (EIC) | 66a | | |
| b | Nontaxable combat pay election | 66b | | |
| 67 | Additional child tax credit. Attach Schedule 8812 | 67 | | |
| 68 | American opportunity credit from Form 8863, line 8 | 68 | | |
| 69 | Net premium tax credit. Attach Form 8962 | 69 | | |
| 70 | Amount paid with request for extension to file | 70 | | |
| 71 | Excess social security and tier 1 RRTA tax withheld   STMT 10 | 71 | 15,772. | |
| 72 | Credit for federal tax on fuels. Attach Form 4136 | 72 | | |
| 73 | Credits from Form: a ☐ 2439 b ☐ Reserved c ☐ 8885 d ☐ | 73 | | |
| 74 | Add lines 64, 65, 66a, and 67 through 73. These are your total payments ▶ | | **74** | 1,010,535. |

## Refund

Direct deposit? See instructions.

| | | | | |
|---|---|---|---|---|
| 75 | If line 74 is more than line 63, subtract line 63 from line 74. This is the amount you overpaid | | **75** | |
| 76a | Amount of line 75 you want refunded to you. If Form 8888 is attached, check here ▶ ☐ | | **76a** | |
| b | Routing number   ▶ c Type: ☐ Checking ☐ Savings   d Account number | | | |
| 77 | Amount of line 75 you want applied to your 2018 estimated tax ▶ | 77 | | |

## Amount You Owe

| | | | | |
|---|---|---|---|---|
| 78 | Amount you owe. Subtract line 74 from line 63. For details on how to pay, see instructions ▶ | | **78** | 7,777,274. |
| 79 | Estimated tax penalty (see instructions) | 79 | 179,210. | |

## Third Party Designee

Do you want to allow another person to discuss this return with the IRS (see instructions)?   ☒ Yes. Complete below.   ☐ No

Designee's name ▶ TODD CRAWFORD   Phone no. ▶ 713-982-2000   Personal identification number (PIN) ▶ 77002

## Sign Here

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurately list all amounts and sources of income I received during the tax year. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See instructions. Keep a copy for your records.

| Your signature | Date | Your occupation | |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | If the IRS sent you an Identity Protection PIN, enter it here |

## Paid Preparer Use Only

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| TODD CRAWFORD | TODD CRAWFORD | 10/15/18 | | P00848788 |

Firm's name ▶ DELOITTE TAX LLP   Firm's EIN ▶ 86-1065772
Firm's address ▶ 1111 BAGBY STREET, SUITE 4500   Phone no. 713-982-2000
HOUSTON, TX 77002-2591

710012 02-22-18

SEE STMT FOR INT AND PEN NOT INCLUDED. TOTAL DUE $8198081

EXPERT 0000704

Appx. 01121

JAMES D. DONDERO

| FORM 1040 | TAX-EXEMPT INTEREST | STATEMENT 7 |
|---|---|---|

| NAME OF PAYER | AMOUNT |
|---|---|
| JP MORGAN #05641 – T/E | 67. |
| FROM K-1 – SERENGETI OPPORTUNITIES PARTNERS LP – DUGABOY LLC | 1. |
| FROM K-1 – ICONIQ STRATEGIC PARTNERS, L.P. | 7. |
| FROM K-1 – NEXBANK CAPITAL, INC. & SUBS | 216,400. |
| FROM K-1 – NEXBANK CAPITAL-GRANT SCOTT SLHC TRUST | 4,208,755. |
| TOTAL TO FORM 1040, LINE 8B | 4,425,230. |

| FORM 1040 | WAGES RECEIVED AND TAXES WITHHELD | STATEMENT 8 |
|---|---|---|

| T S | EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|---|
| T | HIGHLAND CAPITAL MANAGEMENT LP | 566,370. | 177,722. | | | 7,886. | 11,510. |
| T | NEXPOINT ADVISORS LP | 3,118,250. | 627,283. | | | 7,886. | 71,479. |
| T | NEXPOINT RESIDENTIAL TRUST INC | 625,467. | 156,367. | | | 7,886. | 12,898. |
| T | HIGHLAND CAPITAL MGMT PTE LTD. | 96,000. | | | | | |
| | TOTALS | 4,406,087. | 961,372. | | | 23,658. | 95,887. |

Confidential

EXPERT 0000872

**Appx. 01122**

# EXHIBIT 67-8

Form **1040**
Department of the Treasury - Internal Revenue Service (99)

**U.S. Individual Income Tax Return**

**2018**  OMB No. 1545-0074

EXTENSION GRANTED TO 10/15/19
IRS Use Only - Do not write or staple in this space.

Filing status: ☐ Single  ☐ Married filing jointly  ☐ Married filing separately  ☒ Head of household  ☐ Qualifying widow(er)

Your first name and initial: JAMES D.    Last name: DONDERO

Your standard deduction: ☐ Someone can claim you as a dependent   ☐ You were born before January 2, 1954   ☐ You are blind

If joint return, spouse's first name and initial:    Last name:

Spouse's social security number:

Spouse standard deduction: ☐ Someone can claim your spouse as a dependent   ☐ Spouse was born before January 2, 1954
☐ Spouse is blind   ☐ Spouse itemizes on a separate return or you were dual-status alien
☒ Full-year health care coverage or exempt (see inst.)

Home address (number and street). If you have a P.O. box, see instructions.    Apt. no.

Presidential Election Campaign. (see inst.) ☐ You ☐ Spouse

City, town or post office, state, and ZIP code. If you have a foreign address, attach Schedule 6.

If more than four dependents, see inst. and ✓ here ▶

**Dependents** (see instructions):
| (1) First name   Last name | (2) Social security number | (3) Relationship to you | (4) ✓ if qualifies for (see inst.): Child tax credit | Credit for other dependents |
|---|---|---|---|---|
| | | | ☒ | |

**Sign Here**
Joint return? See instructions. Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature    Date 10/12/19    Your occupation Executive

If the IRS sent you an Identity Protection PIN, enter it here

Spouse's signature. If a joint return, **both** must sign.    Date    Spouse's occupation

If the IRS sent you an Identity Protection PIN, enter it here

**Paid Preparer Use Only**
| Preparer's name | Preparer's signature | PTIN | Firm's EIN | Check if: |
|---|---|---|---|---|
| TODD CRAWFORD | | P00848788 | 86-1065772 | ☒ 3rd Party Designee ☐ Self-employed |

Firm's name ▶ DELOITTE TAX LLP    Phone no. 713-982-2000
1111 BAGBY STREET, SUITE 4500
Firm's address ▶ HOUSTON, TX 77002-2591

LHA  **For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see separate instructions.**    Form **1040** (2018)

813021  12-13-18

JAMES D. DONDERO

---

| FORM 1040 | | WAGES RECEIVED AND TAXES WITHHELD | | | | STATEMENT 9 | |
|---|---|---|---|---|---|---|---|
| T<br>S  EMPLOYER'S NAME | AMOUNT<br>PAID | FEDERAL<br>TAX<br>WITHHELD | STATE<br>TAX<br>WITHHELD | CITY<br>SDI<br>TAX W/H | FICA<br>TAX | MEDICARE<br>TAX |
| T HIGHLAND CAPITAL<br>  MANAGEMENT LP | 566,370. | 172,663. | | | 7,961. | 11,510. |
| T NEXPOINT ADVISORS LP | 2,870,278. | 682,902. | | | 7,961. | 65,651. |
| T NEXPOINT RESIDENTIAL<br>  TRUST INC | 893,262. | 196,518. | | | 7,961. | 19,192. |
| T HIGHLAND CAPITAL MGMT<br>  PTE LTD. | 68,840. | | | | | |
| TOTALS | 4,398,750. | 1,052,083. | | | 23,883. | 96,353. |

---

| FORM 1040 | TAX-EXEMPT INTEREST | STATEMENT 10 |
|---|---|---|
| NAME OF PAYER | | AMOUNT |
| JP MORGAN #05641 | | 174. |
| FROM K-1 - SERENGETI OPPORTUNITIES PARTNERS - DUGABOY LLC | | 1. |
| TOTAL TO FORM 1040, LINE 2A | | 175. |

STATEMENT(S) 9, 10

Confidential

# EXHIBIT 67-9

Form 1040 (2019)  JAMES D. DONDERO                                                                 Page 2

| | | | | | | |
|---|---|---|---|---|---|---|
| 12a | **Tax** (see inst.) Check if any from Form(s): 1 ☐ 8814  2 ☐ 4972  3 ☐ _____ | | | 12a | 448,223. | |
| b | Add Schedule 2, line 3, and line 12a and enter the total ▶ | | | 12b | 497,662. |
| 13a | Child tax credit or credit for other dependents | | 13a | | | |
| b | Add Schedule 3, line 7, and line 13a and enter the total ▶ | | | 13b | | |
| 14 | Subtract line 13b from line 12b. If zero or less, enter -0- | | | 14 | 497,662. |
| 15 | Other taxes, including self-employment tax, from Schedule 2, line 10 | | | 15 | 682,137. |
| 16 | Add lines 14 and 15. This is your **total tax** ▶ | | | 16 | 1,179,799. |
| 17 | Federal income tax withheld from Forms W-2 and 1099   SEE STATEMENT 4 | | | 17 | 1,461,134. |
| 18 | Other payments and refundable credits: | | | | |

- If you have a qualifying child, attach Sch. EIC.
- If you have nontaxable combat pay, see instructions.

| | | | | | | |
|---|---|---|---|---|---|---|
| a | Earned income credit (EIC) | | 18a | | | |
| b | Additional child tax credit. Attach Schedule 8812 | | 18b | | | |
| c | American opportunity credit from Form 8863, line 8 | | 18c | | | |
| d | Schedule 3, line 14 | | 18d | 16,480. | | |
| e | Add lines 18a through 18d. These are your **total other payments and refundable credits** ▶ | | | 18e | 16,480. |
| 19 | Add lines 17 and 18e. These are your **total payments** ▶ | | | 19 | 1,477,614. |

**Refund**
| | | | | | | |
|---|---|---|---|---|---|---|
| 20 | If line 19 is more than line 16, subtract line 16 from line 19. This is the amount you **overpaid** | | | 20 | 297,815. |
| 21a | Amount of line 20 you want **refunded to you.** If Form 8888 is attached, check here ▶ ☐ | | | 21a | 297,815. |

Direct deposit? See instructions.
- ▶ b Routing number _____  ▶ c Type: ☐ Checking  ☐ Savings
- ▶ d Account number _____

| | | | | | | |
|---|---|---|---|---|---|---|
| 22 | Amount of line 20 you want applied to your 2020 estimated tax ▶ | | 22 | | | |

**Amount You Owe**
| | | | | | | |
|---|---|---|---|---|---|---|
| 23 | Amount you owe. Subtract line 19 from line 16. For details on how to pay, see instructions ▶ | | | 23 | | |
| 24 | Estimated tax penalty (see instructions) ▶ | | 24 | | | |

**Third Party Designee**
(Other than paid preparer)

Do you want to allow another person (other than your paid preparer) to discuss this return with the IRS? See instructions.   ☐ Yes. Complete below.   ☒ No

| Designee's name ▶ | Phone no. ▶ | Personal identification number (PIN) ▶ |
|---|---|---|

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature _[signature]_   Date 10/15/20   Your occupation President

If the IRS sent you an Identity Protection PIN, enter it here (see inst.) _____

Joint return? See instructions. Keep a copy for your records.

Spouse's signature. If a joint return, **both** must sign.   Date   Spouse's occupation

If the IRS sent your spouse an Identity Protection PIN, enter it here (see inst.) _____

Phone no. _____   Email address _____

**Paid Preparer Use Only**

| Preparer's name | Preparer's signature | Date | PTIN | Check if: |
|---|---|---|---|---|
| TODD CRAWFORD | _[signature]_ Todd Crawford | 10/13/20 | P00848788 | ☒ 3rd Party Designee ☐ Self-employed |

Firm's name ▶ DELOITTE TAX LLP
1111 BAGBY STREET, SUITE 4500
Firm's address ▶ HOUSTON, TX 77002-2591

Phone no. 713-982-2000
Firm's EIN 86-1065772

Go to www.irs.gov/Form1040 for instructions and the latest information.                    Form **1040** (2019)

913022 12-02-19

JAMES D. DONDERO ████████

---

FORM 1040          WAGES RECEIVED AND TAXES WITHHELD          STATEMENT 1

| T S | EMPLOYER'S NAME | AMOUNT PAID | FEDERAL TAX WITHHELD | STATE TAX WITHHELD | CITY SDI TAX W/H | FICA TAX | MEDICARE TAX |
|---|---|---|---|---|---|---|---|
| T | HIGHLAND CAPITAL MANAGEMENT LP | 568,542. | 171,707. | | | 8,240. | 11,561. |
| T | NEXPOINT ADVISORS LP | 1,953,455. | 684,952. | | | 8,240. | 44,106. |
| T | NEXPOINT RESIDENTIAL TRUST INC | 1,944,956. | 569,634. | | | 8,240. | 43,906. |
| T | HIGHLAND CAPITAL MGMT PTE LTD. | 29,352. | | | | | |
| | TOTALS | 4,496,305. | 1,426,293. | | | 24,720. | 99,573. |

---

FORM 1040          TAX-EXEMPT INTEREST          STATEMENT 2

| NAME OF PAYER | AMOUNT |
|---|---|
| JP MORGAN #05641 | 169. |
| TOTAL TO FORM 1040, LINE 2A | 169. |

STATEMENT(S) 1, 2

# EXHIBIT 68

**James Dondero**
**Compensation and Benefit Statement**

Job Title: Partner
Department: Executive

| EARNINGS AND AWARDS | |
|---|---|

2016 Base Salary (as of 12/31/16)                                           $1,062,500

**Effective March 1, 2017, your new base salary will be: $2,500,000**

2016 Other Awards
    401(k) Match                                                          $ 4,800
    Estimated 2016 Profit Sharing (will be contributed in 2017)          $ 19,875
    *Final profit sharing award subject to passing IRS mandated testing
    2016 Deferred Compensation Award                                     $1,200,000
        • It is expected that you will receive approximately 50,000 restricted stock units of NXRT relating
          to the 2016 performance year, which have a current market value of approximately $1,200,000

| *2016 Total Earnings and Awards* | **$2,287,175** |
|---|---|

| HIGHLAND PAID BENEFITS | |
|---|---|

Medical & Dental Insurance                                                  $ 13,056
Life, AD&D and Disability Insurance                                         $  968
Executive Long Term Disability                                             $ 1,260
Daily Catered Lunches                                                       $ 3,000
Parking                                                                     $ 2,160

| *2016 Estimated Total Value of Highland Paid Benefits* | **$ 20,444** |
|---|---|

| **TOTAL COMPENSATION PACKAGE** | **$2,307,619** |
|---|---|

HIGHLY CONFIDENTIAL

D-CNL003585
**Appx. 01130**

# EXHIBIT 69

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2014**

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Index**
**December 31, 2014**

**Page(s)**

**Independent Auditor's Report** ....................................................................................................................1

**Audited Consolidated Financial Statements**

Consolidated Balance Sheet....................................................................................................................2

Consolidated Statement of Income.........................................................................................................3

Consolidated Statement of Changes in Partners' Capital.......................................................................4

Consolidated Statement of Cash Flows..................................................................................................5

Consolidated Notes to Financial Statements .....................................................................................6–42

Supplemental Information……………………………………………………………………………..43-47

HIGHLY CONFIDENTIAL



**Independent Auditor's Report**

To the General Partner of Highland Capital Management, L.P.:

We have audited the accompanying consolidated financial statements of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership"), which comprise the consolidated balance sheet as of December 31, 2014, and the related consolidated statements of income, of changes in partners' capital and of cash flows for the year then ended.

***Management's Responsibility for the Consolidated Financial Statements***

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

***Auditor's Responsibility***

Our responsibility is to express an opinion on the consolidated financial statements based on our audit.  We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements.  The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error.  In making those risk assessments, we consider internal control relevant to the Partnership's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control.  Accordingly, we express no such opinion.  An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements.  We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

***Opinion***

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Highland Capital Management, L.P. and its subsidiaries at December 31, 2014, and the results of their operations, changes in their partners' capital and their cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

***Other Matter***

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The Supplemental Consolidating Balance Sheet, the Supplemental Consolidating Statement of Income, the Supplemental Unconsolidated Balance Sheet and the Supplemental Unconsolidated Statement of Income are presented for purposes of additional analysis and are not a required part of the consolidated financial statements.  The information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements.  The information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves and other additional procedures, in accordance with auditing standards generally accepted in the United States of America.  In our opinion, the information is fairly stated, in all material respects, in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

May 21, 2015

*PricewaterhouseCoopers LLP, 2001 Ross Avenue, Suite 1800, Dallas, Texas 75201*
*T: (214) 999-1400, F: (214) 754-7991, www.pwc.com/us*

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2014**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 66,033 |
| Restricted cash | | 137,855 |
| Investments at fair value (cost $2,266,538) | | 1,877,339 |
| Management and incentive fees receivable | | 8,570 |
| Due from broker for securities sold, not yet settled | | 32,536 |
| Other assets | | 64,443 |
| Deferred incentive fees receivable | | 32,592 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $5,768 | | 8,067 |
| **Total assets** | $ | 2,227,435 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 5,167 |
| Securities sold, not yet purchased (proceeds $43,015) | | 41,815 |
| Withdrawals payable | | 82,833 |
| Due to brokers | | 739,483 |
| Due to brokers for securities purchased, not yet settled | | 67,541 |
| Accrued and other liabilities | | 100,538 |
| Debt and notes payable | | 41,639 |
| **Total liabilities** | | 1,079,016 |
| | | |
| Non-controlling interest | | 621,306 |
| | | |
| Commitments (Note 10) | | |
| | | |
| **Partners' capital** | | 527,113 |
| | | |
| **Total liabilities and partners' capital** | $ | 2,227,435 |

The accompanying notes are an integral part of these consolidated statements.

2

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
## Consolidated Statement of Income
## Year Ended December 31, 2014

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 67,570 |
| Interest and investment income | | 57,451 |
| Other income | | 10,490 |
| Total revenue | | 135,511 |
| **Expenses:** | | |
| Compensation and benefits | | 37,693 |
| Professional fees | | 23,935 |
| Marketing and advertising expense | | 6,140 |
| Investment and research consulting | | 507 |
| Depreciation and amortization | | 1,358 |
| Tax expense | | 1,892 |
| Other operating expenses | | 17,265 |
| Total expenses | | 88,790 |
| Other income | | 1,655 |
| Income before investment and derivative activities | | 48,376 |
| **Realized and unrealized gain/loss from investment and derivative transactions:** | | |
| Net realized loss on investment and derivative transactions | | (172,002) |
| Net change in unrealized gain on investment and derivative transactions | | 260,351 |
| Total realized and unrealized gain from investment and derivative transactions | | 88,349 |
| Net income | | 136,725 |
| Net loss attributable to the non-controlling interest | | 8,604 |
| Net income attributable to Highland Capital Management, L.P. | $ | 145,329 |

The accompanying notes are an integral part of these consolidated statements.

HIGHLY CONFIDENTIAL

D-CNL000113

Appx. 01136

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2014**

*(in thousands)*

| | General Partner | Limited Partners | Total |
|---|---|---|---|
| Partners' capital, December 31, 2013 | $ 131 | $ 407,431 | $ 407,562 |
| Net income attributable to Highland Capital Management, L.P. | - | 145,329 | 145,329 |
| Partner distributions | (131) | (25,647) | (25,778) |
| Partners' capital, December 31, 2014 | $ - | $ 527,113 | $ 527,113 |

The accompanying notes are an integral part of these consolidated statements.

4

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2014**

*(in thousands)*

| | | |
|---|---:|---:|
| **Cash flows from operating activities:** | | |
| Net income | $ | 136,725 |
| Adjustment to reconcile net income to cash and cash equivalents | | |
| provided by operating activities: | | |
| Cash provided by operating activities: | | |
| Net realized loss on investments and derivative transactions | | 172,002 |
| Net change in unrealized gain on investments and derivative transactions | | (260,351) |
| Amortization and depreciation | | 1,358 |
| **Changes in assets and liabilities:** | | |
| Restricted cash | | (135,154) |
| Management and incentive fee receivable | | 6,064 |
| Deferred incentive fees | | 224 |
| Other assets | | 1,053 |
| Accounts payable | | 79 |
| Accrued and other liabilties | | 22,000 |
| Due from brokers | | (1,294) |
| Due to brokers for securities purchased, not yet settled | | 11,193 |
| Tax Payable | | (8,232) |
| Due to Brokers | | 237,280 |
| Net cash provided by operating activities | | 182,947 |
| **Cash flows from investing activities:** | | |
| Purchases of fixed assets and leasehold improvements, net | | (356) |
| Purchases of investments | | (805,656) |
| Proceeds from dispositions of investments | | 597,251 |
| Proceeds from securities sold, not yet purchased | | 59,267 |
| Issuance of notes receivable | | (37,351) |
| Purchases of investments to cover securities sold, not yet purchased | | (17,228) |
| Net cash used in investing activities | | (204,073) |
| **Cash flows from financing activities:** | | |
| Capital contributions from minority interest investors of consolidated entities | | 4,914 |
| Capital withdrawals by minority interest investors of consolidated entities | | (118,973) |
| Capital withdrawals by investors | | 58,145 |
| Partner distributions | | (25,778) |
| Net cash used in financing activities | | (81,692) |
| Net decrease in cash and cash equivalents | | (102,818) |
| **Cash and cash equivalents** | | |
| Beginning of year | | 162,510 |
| Additional cash from new consolidated funds | | 6,341 |
| End of year | $ | 66,033 |
| **Supplemental disclosure of cash flow informaton:** | | |
| Interest paid during the year | $ | (734) |
| Taxes paid during the year | | (7,377) |
| **Non-cash investing activities** | | |
| Investments purchased in-kind | | 41,639 |

The accompanying notes are an integral part of these consolidated statements.

5

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2014**

---

1.  **Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment adviser under the Investment Advisers Act of 1940 that manages collateralized loan obligations ("CLOs"), hedge funds, private equity funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business.  The Partnership's general partner is Strand Advisors, Inc. (the "General Partner"). The Partnership is 100% owned by senior management of the Partnership.

As of December 31, 2014, the Partnership provided investment advisory services for twenty-seven CLOs, six separate accounts, one registered investment company, one master limited partnership, and sixteen hedge fund or private equity structures, with total fee-earning assets under management of approximately $11.4 billion.

2.  **Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements.  Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs' expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

6

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Consolidation of Non-Variable Interest Entities**

The Partnership consolidates the following non-VIEs (along with majority owned funds: Highland Diversified Credit Fund, L.P., Highland Select Equity Fund, L.P., Highland Equity Partners, L.P., Highland Merger Arbitrage Fund, L.P., and Highland Equity Focus Fund, L.P., collectively the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Crusader Offshore Partners, L.P. ("Crusader Master"), a Bermuda exempted limited partnership that commenced operations on July 10, 2000;

- Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund"), a Bermuda limited partnership that commenced operations on November 9, 2005;

- Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master"), a Bermuda exempted limited partnership that commenced operations on August 24, 2005;

- Highland Multi Strategy Credit Fund, L.P. ("Multi Strategy Master"), formerly Highland Credit Opportunities CDO, L.P., a Delaware limited partnership that commenced operations on December 29, 2005 and changed its name on August 26, 2014;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Canopy Timberlands, L.P., a Delaware limited partnership that commenced operations on April 29, 2008;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore") a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore") a Delaware limited partnership that commenced operations on September 2, 2008

- BB Votorantim, Highland Infrastructure LLC ("BB Votorantim"), a Delaware limited liability company which began operations on May 29, 2014; and

**Consolidation of Majority Owned Entities**

The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in HCM Europe, Ltd. ("HCM Europe") a company organized in the United Kingdom and formed by the Partnership on December 7, 2012;

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in HFP GP, LLC, a Delaware limited liability company that commenced operations on January 20, 2006;

7

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd, a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 100% interest in Highland Capital Management Korea, Ltd. a company organized in the Republic of Korea that commenced operations on August 2, 2012;

- 100% interest in HE Capital, LLC., a Delaware limited liability company that was formed on March 22, 2007;

- 100% interest in De Kooning, Ltd, a Cayman company that was formed on December 1, 2012;

- 100% interest in Hirst, Ltd. a Cayman company that was formed on December 1, 2012;

- 100% interest in Hockney, Ltd. a Cayman company that was formed on December 1, 2012;

- 100% interest in Oldenburg, Ltd. a Cayman company that was formed on December 1, 2012;

- 99.9% interest in Penant Management, LP. a Delaware limited partnership that was formed on December 12, 2012;

- 100% interest in Semence, LLC a Delaware limited liability company that was formed on December 16, 2013;

- 100% interest in SK Shareholder Services, LLC a Delaware limited liability company that was formed on October 24, 2013;

- 100% interest in Pollack, Ltd. a Cayman company that was formed on December 1, 2012;

- 100% interest in Warhol, Ltd. a Cayman company that was formed on December 1, 2012;

- 100% interest in HCREF-I Holding Corp. a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-X Holding Corp. a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XI Holding Corp. a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XII Holding Corp. a Delaware company that was formed on December 13, 2012;

- 80% interest in Highland Employee Retention Assets, LLC a Delaware limited liability company that was formed on October 26th, 2009;

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

- 100% interest in Highland Diversified Credit Fund, LP, a Delaware limited partnership which began operations on February 29, 2000 and was organized for the sole purpose of investing substantially all of its assets in Highland Offshore Partners, L.P;

- 99.6% interest in Highland Select Equity Fund, LP, a Delaware limited partnership which began operations on January 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value

- 100% interest in Highland Equity Partners, LP, a Delaware limited partnership which began operations on August 1, 2013 and was organized for the purpose of investing with long-term perspective in a concentrated portfolio of stocks;

- 99.6% interest in Highland Equity Focus Fund, LP, a Delaware limited partnership which began operations on September 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value;

- 100% interest in Highland Merger Arbitrage Fund, LP, a Delaware limited partnership which began operations on October 16, 2014; and

All inter-partnership and intercompany accounts and transactions have been eliminated in consolidation of all of the aforementioned consolidated entities. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide - Investment Companies. The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

Due to the deconsolidation of certain investment funds, some prior year balances referenced within the following notes to the consolidated financial statements may not tie to prior year issued financial statements.

The following table includes a rollforward of noncontrolling interests from December 31, 2013, to December 31, 2014.

*(in thousands)*

| | |
|---|---|
| Noncontrolling interest, December 31, 2013 | $748,463 |
| Net loss attributable to noncontrolling interest | (8,604) |
| Noncontrolling partner contributions | 4,914 |
| Noncontrolling partner distributions | (118,973) |
| Noncontrolling interest of deconsolidated entities | (4,494) |
| Noncontrolling interest, December 31, 2014 | $621,306 |

HIGHLY CONFIDENTIAL

D-CNL000119

**Appx. 01142**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Investment Transactions**
Investment transactions are recorded on a trade date basis.  Investments in securities are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

See Note 5 for the Partnership's fair value process and hierarchy disclosures.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements.  Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value.  The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages.  During the year ended December 31, 2014, the Partnership and its consolidated entities recognized management fees of approximately $67.5 million.  The Partnership recognized approximately $0.2 million of depreciation on incentive fees earned prior to 2008, previously deferred under Sec. 409(A) of the Internal Revenue Code, which has been presented in *Other Income* in the Consolidated Statement of Income.

**Shared Services Revenue**
The Partnership recognizes revenue as earned in connection with services provided to related parties under various shared services agreements. Under these agreements, the Partnership earns fees for services including, but not limited to, back office support functions, marketing, and investment advisory services. During the year ended December 31, 2014, the Partnership and its consolidated entities recognized shared services revenue of approximately $9.2 million, which has been presented in *Other Income* in the Consolidated Statement of Income. See further discussion in Note 8.

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes.  In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums associated with purchases of investments are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis over the life of the investment.  Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements.  Income taxes are the responsibility of the partners.  Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these financial statements are subject to federal and/or state income taxes.  Deferred tax assets and liabilities are recognized for the future tax consequences

HIGHLY CONFIDENTIAL

D-CNL000120

**Appx. 01143**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. See further discussion in Note 12.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Cash equivalents are carried at cost, which approximates market value. At December 31, 2014, the Partnership and Consolidated Funds held cash balances at certain financial institutions in excess of the federally insured limit of $0.3 million. The Partnership and Consolidated Funds regularly monitor the credit quality of these institutions.

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions. These amounts are reported as restricted cash on the Consolidated Balance Sheet.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Investment Manager's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.

Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender. A gain (which cannot exceed the price at which the Consolidated Investment Funds sold the security short) or a loss (which theoretically could be unlimited in size) will be settled upon termination of a short sale.

**Options Contracts**
The Partnership and the Consolidated Investment Funds may purchase and write call and put options to gain market exposure or to hedge investments. A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period. When the Partnership or the Consolidated Investment Funds purchase (write) an option, an amount equal to the premium paid (received) by the entity is reflected as an asset (liability). The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold. When an option expires (or the Partnership or the Consolidated Investment Funds enter into a closing transaction), the entity realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid). Exercise of a written option could result in the Partnership or the Consolidated Investment Funds purchasing a security at a price different from the current market value.

The Partnership and the Consolidated Investment Funds are exposed to counterparty risk from the potential that a seller of an option contract does not sell or purchase the underlying asset as agreed under the terms of the option contract. The maximum risk of loss from counterparty risk to the Partnership and the Consolidated Investment Funds is the greater of the fair value of its open option contracts or the premiums paid to purchase the open option contracts. The Partnership and the Consolidated Investment Funds consider the credit risk of the intermediary counterparties to its option transactions in evaluating potential credit risk.

**Margin Transactions**
To obtain more investable cash, the Consolidated Investment Funds may use various forms of leverage including purchasing securities on margin. A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable. This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2014. Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. At December 31, 2014, the Consolidated Investment Funds had withdrawals payable of $82.8 million.

**Foreign Currency Transactions**
The Partnership's subsidiaries HCM Europe and HCM Singapore use British Pounds and Singapore dollars as their functional currency, respectively. All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2014. Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period. Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the consolidated statement of income.

The Consolidated Investment Funds do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments*.

**Life Settlement Contracts**
One of the Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of *Purchase of investments* and *Proceeds from dispositions of investments* on the Consolidated Statement of Cash Flows.

**Financial Instruments**
The Partnership and its consolidated entities determine fair value of financial instruments as required by U.S. GAAP.  The carrying amounts for cash and cash equivalents, receivables, accounts payable and accrued liabilities approximate their fair values because of their short maturities.

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

**Recently Issued Accounting Standards and Interpretations**
In August, 2014, the FASB issued Accounting Standards Update 2014-15 – "Presentation of Financial Statement – Going Concern" (Subtopic 205-40).  The amendments in this Update apply to all reporting entities. The main provisions of this Update are in connection with preparing annual and interim financial statements. Management should evaluate whether there are conditions or events, considered in the aggregate, that raise substantial doubt about the entity's ability to continue as a going concern within one year after the date that the financial statement are issued. The amendments are effective for the annual period ending after December 15, 2016. This statement is not expected to have a material impact on the Partnership's financial statements.

In February 2015, the FASB issued ASU 2015-02 "ASC Topic 810, Consolidation."  ASU 2015-02 modifies the evaluation of whether limited partnerships and similar legal entities are variable interest entities or voting interest entities, eliminates the presumption that a general partner should consolidate a limited partnership, affects the consolidation analysis of reporting entities that are involved with VIEs, and provides other updates on guidance regarding consolidation.  ASU 2015-02 is effective for fiscal years beginning after December 15, 2016.  Management is evaluating the impact of ASU 2015-02 on the Partnership's financial statements.

HIGHLY CONFIDENTIAL

D-CNL000123

Appx. 01146

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

3.  **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2014:

*(in thousands)*

| | | |
|---|---|---:|
| Leasehold improvements | $ | 6,441 |
| Buildings | | 2,595 |
| Furniture and fixtures | | 2,596 |
| Computer and equipment | | 1,932 |
| Computer software | | 271 |
| Accumulated depreciation | | (5,768) |
| | $ | 8,067 |

The Partnership and its consolidated entities are depreciating fixed assets as follows:

| | Period |
|---|:---:|
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 5 years |
| Computer software | 3 years |

Depreciation expense in 2014 totaled approximately $1.4 million for the Partnership and its subsidiaries.

14

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

4.     **Investments**

Detailed below is a summary of the Partnership and its consolidated entities investments at December 31, 2014:

| (in thousands) | Amortized Cost/Cost | | Fair Value | |
|---|---|---|---|---|
| Common equity securities | $ | 875,293 | $ | 1,027,376 |
| Limited partnership interests | | 134,080 | | 205,900 |
| Asset-backed securities | | 249,269 | | 182,054 |
| Preferred equity | | 59,994 | | 121,500 |
| Floating rate syndicated bank loans | | 201,845 | | 116,952 |
| Life settlement contracts | | 418,467 | | 114,640 |
| Closed-end mutual funds | | 58,443 | | 68,433 |
| LLC interests | | 72,985 | | 31,378 |
| Rights & warrants | | 50,732 | | 6,477 |
| Corporate bonds | | 144,712 | | 2,546 |
| Options contracts | | 718 | | 83 |
| Total investments | $ | 2,266,538 | $ | 1,877,339 |
| | Proceeds | | Fair Value | |
| Securities sold, not yet purchased | $ | (43,015) | $ | (41,815) |

5.     **Fair Value of Financial Instruments**

**Fair Value Measurement**
U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Investment Funds have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

15

D-CNL000125
Appx. 01148

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment than it would for observable inputs.  For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Investment Funds use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership and its Consolidated Investment Funds use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities.  In cases where observable inputs are not available, the Partnership and Consolidated Investment Funds develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

The Partnership has established policies, as described above, processes and procedures to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of various personnel from the Partnership. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments. The Pricing Committee is responsible for establishing the valuation policies and evaluating the overall fairness and consistent application of those policies.

As of December 31, 2014, the Partnership and its consolidated entities' investments consisted primarily of common equity securities, asset-backed securities, limited partnership interests, life settlement contracts, floating rate syndicated bank loans, preferred equity, LLC interests, right and warrants, closed-end mutual funds, options contracts, and corporate bonds. In addition, the consolidated entities engage in short sale transactions.  The majority of these financial instruments are not listed on national securities exchanges, and management is required to use significant judgment to estimate their values.

**Equity Investments**
Publicly traded equities are valued at the closing price at the date of the financial statements. The fair value of equity investments that are not traded on national exchanges or through real-time quotation services are derived from methodologies that provide appropriate fair value estimates. Equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. The Consolidated Investment Funds also holds a number of private equity investments. These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Consolidated Investment Funds will fair value the assets using

D-CNL000126

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis. When utilizing comparable trading multiples, the Consolidated Investment Funds determine comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publicly available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Consolidated Investment Funds to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances.

**Debt Securities**
The Consolidated Funds invest in various types of debt, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Consolidated Funds first seek to obtain reliable market quotes from other parties dealing in the specific asset. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Loans and bonds that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

Absent both a reliable market quote and third-party pricing service date, the Consolidated Funds may use various models to establish an estimated exit price. These investments are classified as Level 3 assets. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

**Asset-Backed Securities**
The Consolidated Funds invest in a variety of asset-backed securities. Asset-backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity. The Consolidated Funds generally utilize an independent third party firm to perform these calculations and provide the relevant inputs.  The Consolidated Funds evaluate the results based on visible market activity and market research.  When appropriate, the Consolidated Funds may apply other techniques based on a specific asset's characteristics. Asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Asset-backed securities that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

17

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Private Equity Investments**
The Consolidated Funds hold private equity investments which resulted from the restructuring of other instruments. These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Consolidated Funds will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis. When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances. Private equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Private equity investments that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

The Consolidated Investment Funds also invest in warrant securities of publicly–traded companies. The fair value of these investments is based on an option pricing model. The option model bases warrant value on a number of factors including underlying equity price as of the valuation date, strike price, exercise date, time to expiration and volatility. Warrant investments that have observable volatility are classified as Level 2 assets. Warrant investments where volatility inputs are not observable are valued using an estimated volatility input, and are classified as Level 3 assets.

**Life Settlement Contracts**
Life Settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. Management generally utilizes an independent third party firm to perform these calculations and provide the relevant inputs. Management evaluates the results based on visible market activity and market research. Since these inputs are not readily observable, these contracts are classified as Level 3 assets.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

At December 31, 2014, the Consolidated Investment Funds' investments in life settlement contracts consisted of the following:

(U.S. dollars in thousands, except number of policies)

| Remaining Life Expectancy (in years) | Number of Policies | Face Value | Fair Value |
|---|---|---|---|
| 1-2 | 1 | $ 5,000 | $ 2,956 |
| 2-3 | 3 | 13,250 | 4,426 |
| 3-4 | 11 | 68,500 | 14,452 |
| 4-5 | 9 | 51,250 | 15,024 |
| Thereafter | 96 | 971,998 | 77,782 |
| Total | 120 | $ 1,109,998 | $ 114,640 |

**Limited Partnership Interests**
The Partnership and its Consolidated Funds hold limited partnership interests in various entities. These assets are valued as the net asset value of the limited partnership interests because the entities utilize fair value accounting for their own financial statements. These interests are classified as Level 3 assets.

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. A majority of the Consolidated Investment Fund's investments and derivatives at December 31, 2014 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2014:

(in thousands)

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/14 |
|---|---|---|---|---|
| Common equity securities | $ 516,162 | $ 290,748 | $ 220,466 | $ 1,027,376 |
| Limited partnership interests | - | - | 205,900 | 205,900 |
| Asset-backed securities | - | 172,757 | 9,297 | 182,054 |
| Preferred equity | 95,170 | 19,370 | 6,960 | 121,500 |
| Floating rate syndicated bank loans | - | 5,102 | 111,850 | 116,952 |
| Life settlement contracts | - | - | 114,640 | 114,640 |
| Closed-end mutual funds | 68,433 | - | - | 68,433 |
| LLC interests | - | 8,827 | 22,551 | 31,378 |
| Rights & warrants | 515 | - | 5,962 | 6,477 |
| Corporate bonds | - | 2,469 | 77 | 2,546 |
| Options | 83 | - | - | 83 |
| **Total** | $ 680,363 | $ 499,273 | $ 697,703 | $ 1,877,339 |

| Liabilities | | | | |
|---|---|---|---|---|
| Common stock & Options sold short | $ 41,815 | $ - | - | $ 41,815 |

19

D-CNL000129

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2014:

(in thousands)

| | Total Fair Value at December 31, 2013 | Purchases | Sales and Maturities | Transfers Into Level 3 | Transfers Out of Level 3 | Net Realized Losses | Net Unrealized Gains / (Losses) | Total Fair Value at December 31, 2014 |
|---|---|---|---|---|---|---|---|---|
| Common equity securities | $ 190,391 | $ 7,883 | $ (3,457) | $ 1,869 | $ (82) | $ (3,378) | $ 27,240 | $ 220,466 |
| Limited partnership interests | 169,797 | 1,609 | (779) | - | - | (116) | 35,389 | 205,900 |
| Life settlement contracts | 100,521 | 39,671 | (10,000) | - | - | 4,715 | (20,267) | 114,640 |
| Floating rate syndicated bank loans | 128,357 | 12,435 | (10,800) | - | - | (143,080) | 124,938 | 111,850 |
| LLC interests | 32,597 | 599 | (1,487) | 3,249 | - | 2,136 | (14,543) | 22,551 |
| Asset-backed securities | 19,903 | 6,462 | (14,815) | - | (1) | (1,839) | (413) | 9,297 |
| Preferred equity | 19,392 | - | (14,837) | - | (100) | 9,768 | (7,263) | 6,960 |
| Rights & warrants | 9,763 | - | (1,476) | - | - | 23 | (2,348) | 5,962 |
| Corporate bonds | 5,838 | 400 | - | 255 | (5,837) | - | (579) | 77 |
| | $ 676,559 | $ 69,059 | $ (57,651) | $ 5,373 | $ (6,020) | $ (131,771) | $ 142,154 | $ 697,703 |

Transfers from Level 2 to Level 3 or from Level 3 to Level 2 are due to changes in observable pricing inputs as compared to the prior year. No significant transfers between Level 1 or Level 2 fair value measurements occurred during the year ended December 31, 2014.

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $26.5 million of the net unrealized gains presented in the table above relate to investments held as of December 31, 2014.

Transfers out of Level 3 are recognized at the beginning of the period. The transfers out of Level 3 at December 31, 2014 were due to increases in market activity (e.g. frequency of trades) or the availability of a market clearing broker quote.

The following page includes a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
## (A Delaware Limited Partnership)
## Notes to Consolidated Financial Statements
## December 31, 2014

(Ending balance in thousands)

| Category | Ending Balance at 12/31/2014 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| Asset-backed securities | $ 9,297 | Third-party pricing vendor | N/A | N/A |
| | | Net Asset Value of Underlying Assets and Liabilities | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| | | Debt-yield | Credit Specific Risk | 5% |
| | | | Liquidity | 1% |
| Common equity securities | 220,466 | Multiples analysis | Multiple of EBITDA | 2.5x - 11.5x |
| | | | Multiple of Revenue | .45x - .55x |
| | | | Liquidity discount | 15% - 30% |
| | | | Credit Specific Discount | 30% |
| | | Third-party pricing vendor | N/A | N/A |
| | | DCF | Discount Rate | 11.5% - 19% |
| | | | Terminal Multiple | 3.0x - 9.0x |
| | | Black-Scholes Option Model | Holding Period | .58 Yrs |
| | | | Volatility | 30% |
| | | Liquidation | N/A | N/A |
| | | Previous Transaction | N/A | N/A |
| Floating rate syndicated bank loans | 111,850 | DCF | Discount rate | 11.5% - 19.0% |
| | | | Terminal Multiple | 3.0x - 9.0x |
| | | Liquidation | Settlement discount | 30% |
| | | Multiples analysis | Multiple of EBITDA | 2.5x - 11.5x |
| | | | Multiple of Revenue | .45x - .55x |
| | | Previous Transaction | N/A | N/A |
| | | Third-party pricing vendor | N/A | N/A |
| | | Appraisal | N/A | N/A |
| Limited partnership investments | 205,900 | Third-party appraisal | N/A | N/A |
| | | Net Asset Value of Underlying Assets and Liabilities | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| Preferred equity | 6,960 | Recent Transaction | N/A | N/A |
| | | Black Scholes | Holding Period | .58 Yrs |
| | | | Volatility | 30% |
| | | Probability Weighted Scenarios | Scenario Probabilities | Equal Weights |
| Life Settlement Contracts | 114,640 | Net Asset Value of Underlying Assets | Discount rate | 18.0% -27.5% |
| LLC interests | 22,551 | DCF | Discount rate | 50% |
| | | | PW Profile of Reserve Categories | PW-8 - PW-30 |
| | | Net Asset Value of Underlying Assets and Liabilities | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| | | Appraisal | N/A | N/A |
| | | Third-party pricing vendor | N/A | N/A |
| Corporate bonds | 77 | Liquidation | Discount Rate | 50% |
| | | Adjusted Appraisal | Liquidity discount | 30% |
| Rights & Warrants | 5,962 | DCF | Discount Rate | 14% |
| | | Liquidation | Discount Rate | 14% |
| **Total** | **$ 697,703** | | | |

21

D-CNL000131

**Appx. 01154**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

6.    **Derivative Financial Instruments**

**Total Return Swaps**
A total return swap is a two-party contract under which the parties agree to exchange returns from a predetermined portfolio of investments.  The gross returns to be exchanged or swapped between the parties are calculated based on a notional amount, which is reviewed periodically to determine each party's obligation under the contract.

The Partnership entered into an agreement during 2012 in which it sold its rights to five quarters of variable net senior and subordinated fee receipts from certain collateralized loan obligations managed by the Partnership for fixed monthly payments from a counter-party. In doing so, the Partnership monetized rights to potential future payments for the certainty and predictability of a fixed schedule of receipts. On December 20, 2013 the counter-party exercised its option to purchase an additional four quarters of variable net senior and subordinated fee receipts. For the year ended December 31, 2014, the Partnership recorded a realized loss of $3.2 million.

7.    **Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its Consolidated Investment Funds' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans.  The consolidated entities may also invest in derivative instruments, including total return and credit default swaps.  Investments in these derivative instruments throughout the year subject the consolidated entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Investment Funds due to a change in the market value of its investments or the value of the investments underlying swap agreements.  The Partnership and its Consolidated Investment Fund's exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations.  These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Investment Funds investments. Volatility or illiquidity could impair the Partnership and its Consolidated Investment Funds performance or result in losses.  The Partnership and its Consolidated Investment Funds may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets. The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**
Credit risk is the potential loss the Partnership and its consolidated entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the consolidated entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties.  To limit the credit risk associated with such transactions, the consolidated entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Liquidity Risk**
The Consolidated Investment Fund's limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.  There is no public market for the interests, and neither the Consolidated Investment Funds nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the consolidated investment funds.   The Consolidated Investment Funds could be materially affected by the liquidity, credit and other events of the Partnership.

**High Yield Bonds and Loans**
The Partnership and its Consolidated Investment Funds' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange.  These investments trade in a limited market and it may not be possible to immediately liquidate them if needed.  In addition, certain of the Partnership and its Consolidated Investment Funds' investments have resale or transfer restrictions that further reduce their liquidity.  Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Investment Funds' purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower.  Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Investment Funds have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Investment Funds may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Investment Funds invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings.   These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

HIGHLY CONFIDENTIAL

D-CNL000133

Appx. 01156

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Investment Funds' investments. However, the Consolidated Investment Funds' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Investment Funds.  In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments.  This limited diversity could expose the Consolidated Investment Funds to losses that are disproportionate to market movements as a whole.

At December 31, 2014, the Consolidated Investment Funds' investments were predominantly concentrated in the United States.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Investment Funds are provided by major financial institutions.  In addition, all of the Partnership and its Consolidated Investment Funds' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges.  The Partnership or its Consolidated Investment Funds may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations.  While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Investment Funds' might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Leverage Risk**
The Consolidated Investment Funds may borrow funds from brokers, banks and other lenders to finance its trading operations.  The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Investment Funds' investment portfolio may be subject.  The use of margin and short-term borrowings creates several risks for the Consolidated Investment Funds. If the value of the Consolidated Investment Funds' securities fall below the margin level required by a counterparty, additional margin deposits would be required.  If the Consolidated Investment Funds are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Investment Funds' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Investment Funds to incur significant losses.  In addition, to the extent the Consolidated Investment Funds have posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Investment Funds' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Investment Funds.  In addition, because the use of leverage allows the Consolidated Investment Funds to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Investment Funds may lose in the event of adverse price movements is high in relation to the amount of their investment.

HIGHLY CONFIDENTIAL

D-CNL000134

Appx. 01157

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

In the event of a sudden drop in the value of the Consolidated Investment Funds' assets, the Consolidated Investment Funds may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements.  As a result, the Consolidated Investment Funds may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Investment Funds have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Investment Funds may invest in securities or maintain cash denominated in currencies other than the U.S. dollar.  The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2014, the Consolidated Investment Funds' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Wind-Down Risk**
The ultimate proceeds that certain Consolidated Investment Funds' are able to realize on the sale of its investments will directly affect the amounts that the investors in the feeder funds are able to redeem in connection with the wind down process.  These amounts may differ materially from the partners' capital balances as of December 31, 2014.

**Litigation Risk**
The Partnership and its Consolidated Investment Funds are periodically subject to legal actions arising from the ordinary course of business.  The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Investment Funds.  Refer to Note 12 for a discussion of open litigation.

8.    **Related Party Transactions**

In the normal course of business, the Partnership and the Consolidated Investment Funds may conduct trades with affiliates. Such trades are transacted at fair value as determined, in good faith, using third party information where available. During the period ended December 31, 2014, the Partnership and the Consolidated Investment Funds purchased various securities for approximately $11.2 million from various affiliated entities and a non-discretionary, advised account.

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2014, approximately $3.2 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in Other Assets in the accompanying Consolidated Balance Sheet.

25

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Accounts Held with Related Party**
During the year the Partnership and its subsidiaries maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control. As of December 31, 2014, balances in the accounts were approximately $60.8 million, a portion of which exceeds Federal deposit insurance limits.

**Investments Under Common Control**
Certain members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests. Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable. As of December 31, 2014, the Partnership and its subsidiaries held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| American Banknote Corporation | Common Equity | $ 9,856 |
| American Home Patient | Common Equity | 1,856 |
| American Home Patient | Term Loan | 13,172 |
| Blackwell BMC, LLC | Common Equity | 12,737 |
| Canopy Timberlands, L.P. | Limited Partnership Interest | 80,164 |
| Canopy Timberlands Spout Springs, L.P. | Limited Partnership Interest | 26,003 |
| Carey International, Inc | Term Loan | 26,169 |
| Carey Holdings, Inc. | Class A Common Stock | 235 |
| CCS Medical, Inc. | Loan | 5,055 |
| CCS Medical, Inc. | Common Equity | 18 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 97,407 |
| Euramax International Holdings B.V. | Common | 9,643 |
| Euramax International Holdings B.V. | Term Loan | 27,361 |
| Ginn LA Resorts Holdings, LLC | Term Loan | 410 |
| Ginn LA Conduit Lender, Inc. | First Lien Tranche A Credit-Linked Deposit | 142 |
| Ginn LA Conduit Lender, Inc. | First Lien Tranche B Term Loan | 354 |
| Highland Capital Healthcare Partners, L.P. | Limited Partnership Interest | 3,973 |
| Highland Long/Short Equity Fund | Mutual Fund | 268 |
| Highland Long/Short Healthcare Fund | Mutual Fund | 10,740 |
| Highland Park CDO 2006-1A | Asset backed debt | 1,394 |
| JHT Holdings Inc. | Term Loan | 19,879 |
| JHT Holdings Inc. | Revolving Term Loan | 3,174 |
| JHT Holdings Inc. | Common Stock | 6,372 |
| Las Vegas Land Holding | LLC Units | 48 |
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 302,784 |
| NexPoint Credit Strategies Fund | Closed-End Mutual Fund | 37,899 |
| Nex-Tech Aerospace Holdings, Inc. | Common Equity | 2,183 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 200 |
| Terrestar | Common Equity | 59,585 |
| Trussway Industries, Inc. | Common Equity | 22,671 |
| Turtle Bay Holdings, LLC | Equity Units | 5,029 |

26

D-CNL000136
Appx. 01159

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

Certain investments are issued and managed by affiliates of the Partnership. These investments are subject to the same valuation policies and procedures as similar investments within the same level of the fair value hierarchy. As of December 31, 2014, the Partnership and the Consolidated Investment Funds held the following investments that were issued and managed by affiliates of the Partnership:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| ACIS 2013-2A | Asset backed debt | $ 30,150 |
| ACIS 2013-2A | Asset backed equity | 51,800 |
| ACIS 2014-5A | Asset backed debt | 57,805 |
| BB Highland Floating Rate Fund I | Floating rate equity | 4,914 |
| BB Votorantim Highland Infrastructure LLC | Common equity | 1,539 |
| Gleneagles CLO, Ltd. | Asset backed equity | 4,800 |
| Greenbriar CLO, Ltd. | Asset backed equity | 18,238 |
| Highland Capital Healthcare Fund | Limited Partnership interest | 2,974 |
| Highland Energy MLP Fund | Mutual fund shares | 2,796 |
| Highland Floating Rate Opportunities Fund | Mutual fund shares | 708 |
| Highland Global Allocation Fund | Closed-end mutual fund shares | 2,165 |
| Highland Opportunistic Credit Fund | Mutual fund shares | 5,187 |
| Highland Park CDO, Ltd. | Asset backed debt tranche | 33 |
| Highland Multi Strategy Fund | Limited Partnership interest | 23,715 |
| Highland Long/Short Equity Fund | Mutual fund shares | 268 |
| Highland Long/Short Healthcare Fund | Mutual fund shares | 10,740 |
| NexPoint Credit Strategies Fund | Closed-end mutual fund shares | 15,269 |
| Rockwall CDO, Ltd. | Asset backed debt | 2,340 |
| Southfork CLO, Ltd. | Asset backed equity | 4,455 |
| Valhalla CLO, Ltd. | Asset backed debt | 1,760 |

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank.  Interest earned on the loans during the year was approximately $10.8 million.  At December 31, 2014, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $105.0 million and $85.9 million, respectively.

**Affiliated Transactions**
Effective February 26, 2014, the Partnership issued a promissory note to HCMFA in the amount of $4.0 million. The note accrues interest at a rate of 1.97%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2014 total interest and principal due on the promissory note was approximately $4.1 million.

Effective August 27, 2014, the Partnership issued a promissory note to HCMFA in the amount of $2.1 million. The note accrues interest at a rate of 3.09%, the long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2014 total interest and principal due on the promissory note was approximately $2.1 million.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

During the year ended December 31, 2014, the Partnership issued promissory notes to NexPoint in the aggregate amount of $12.7 million. The notes accrue interest at a rate of 6.0%. As of December 31, 2014 total interest and principal due on the promissory notes was approximately $13.0 million.

During the year ended December 31, 2014, the Partnership issued promissory notes to HCRE Partners, LLC, ("HCRE") in the aggregate amount of $10.0 million. The notes accrue interest at a rate of 9.0%. As of December 31, 2014 total interest and principal due on the promissory notes was approximately $9.8 million.

During the year ended December 31, 2014, The Partnership issued promissory notes to Highland Capital Management Services, Inc. ("HCMSI") in the aggregate amount of $8.5 million. The notes accrue interest at an average rate of 3.12%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2014 total interest and principal due on the promissory notes was approximately $8.6 million.

**Services Performed by or on Behalf of an Affiliate**
In March 2007, Highland Capital of New York, Inc. a New York, corporation, ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf.  For the year ended December 31, 2014, total marketing fee expense charged to the Partnership by Highland New York was approximately $4.0 million and as of December 31, 2014, amounts owed to Highland New York for services rendered was approximately $2.5 million.

Effective December 15, 2011, the Partnership commenced performing services on behalf of Highland Capital Management Fund Advisors, L.P. ("HCMFA"), a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2014, the total fee charged by the Partnership to HCMFA was approximately $2.0 million and as of December 31, 2014, amounts owed to the Partnership by HCMFA for services rendered were approximately $0.2 million.

Effective July 29, 2010, the Partnership commenced performing services on behalf of Falcon E&P Opportunities GP, LLC. ("Falcon"), a Delaware limited liability company and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2014, the total fee charged by the Partnership to Falcon was approximately $0.6 million and as of December 31, 2014, amounts owed to the Partnership by Falcon for services rendered were approximately $0.4 million.

Effective January 1, 2011, the Partnership commenced performing services on behalf of Acis Capital Management, L.P. ("Acis"), a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2014, the total fee charged by the Partnership to Acis was approximately $3.8 million and as of December 31, 2014, no amounts were owed to the Partnership by Acis for services rendered.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

Effective January 1, 2013, the Partnership commenced performing services on behalf of NexPoint Advisors, L.P. ("NexPoint"), a Delaware limited partnership. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2014, the total fee charged by the Partnership to NexPoint was approximately $1.4 million and as of December 31, 2014, amounts owed to the Partnership by NexPoint for services rendered were approximately $0.8 million.

Effective September 24, 2013, the Partnership commenced performing services on behalf of NexBank Capital, Inc. ("NexBank Capital"), financial services company. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2014, the total fee charged by the Partnership to NexBank Capital was approximately $0.4 million and as of December 31, 2014, amounts owed to the Partnership by NexBank Capital for services rendered were approximately $0.1 million.

Effective September 24, 2013, the Partnership commenced performing services on behalf of NexBank SSB, ("NexBank"), a Texas savings bank. Services include investment advisory services. The Partnership charges a fee for the services performed. For the year ended December 31, 2014, the total fee charged by the Partnership to NexBank was approximately $0.7 million and as of December 31, 2014, no amounts were owed to the Partnership by NexBank for services rendered.

9.    **Debt and Notes Payable**

**Promissory Note**
On December 31, 2014, the Partnership entered in to a promissory note (the "Promissory Note") with an investor in the amount of $18.6 million, in exchange for 100% of its LP interest in Highland Multi Strategy Credit Fund, L.P. The Partnership must pay one-third of the initial note amount, plus accumulated interest on each of the first three anniversaries of the note. The Promissory Note will mature on December 31, 2017.  The Promissory Note accrues interest at a rate of 3% per annum.

**Select Master Securities Loan Agreement**
On October 14, 2014, Highland Select Equity Master Fund, L.P. received a master securities loan agreement (the "Securities Agreement") from The Dugaboy Investment Trust ("Dugaboy") in the amount of $23.0 million for securities borrowed. The Securities Agreement accrues a Loan Fee at a rate of 0.38%, the short term Applicable Federal Rate. The fair value of the loan will fluctuate with the fair value of the borrowed securities, throughout the term of the Securities Agreement.

10.    **Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, consolidated statement of income, or its liquidity.  See Note 13.

**Operating Leases**
The Partnership has an operating lease and associated commitments related to its main office space. Future minimum lease payments under operating lease commitments with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

| Years Ending December 31, | |
|---|---|
| 2015 | 1,477 |
| 2016 | 1,506 |
| 2017 | 1,521 |
| 2018 | 1,521 |
| 2019 | 1,550 |
| Thereafter | 3,655 |
| Total | $ 11,230 |

Total rental expense of the Partnership and its consolidated entities for operating leases was approximately $1.4 million for the year ended December 31, 2014.

**11.    Postretirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2011 expense reflects a service cost charge for the value of the new participant's benefit earned during 2011.

HIGHLY CONFIDENTIAL

D-CNL000140

Appx. 01163

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2014 are reconciled in the tables below.

*(in thousands)*

| Change in projected benefit obligation | | 2014 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 2,339 |
| Service cost | | 5 |
| Interest cost | | 108 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 59 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (261) |
| Benefit obligation at end of year | $ | 2,250 |

| Change in plan assets | | 2014 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 2,635 |
| Actual return on plan assets | | 72 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (261) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 2,446 |

| Reconciliation of Funded Status | | 2014 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 2,250 |
| Projected benefit obligation at end of year | | 2,250 |
| Fair value of assets at end of year | | 2,446 |
| Funded status at end of year | $ | 196 |

The Partnership does not expect to contribute to the plan during 2014.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2014:

| | |
|---|---|
| Discount rate | 3.70% |
| Rate of compensation increase | N/A |

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2014:

| | |
|---|---|
| Discount rate | 4.90% |
| Expected long-term return on plan assets | 4.90% |
| Rate of compensation increase | N/A |

As of December 31, 2014, there were no plan assets categorized as Level 3.

**12.   Income Taxes**

**The Partnership**
For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2014, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2011 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2014.

**Crusader Master**
Crusader Master is an exempted limited partnership organized in Bermuda. Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Crusader Master. Crusader Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Crusader Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Crusader Master's net taxable income.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

Since Crusader Master trades investments for its own account, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The General Partner intends to conduct Crusader Master's business in such a way that it does not constitute a U.S. trade or business or create a taxable presence in any of the jurisdictions in which the Investment Manager has offices, including the United Kingdom.

Dividends as well as certain interest and other income received by Crusader Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Crusader Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2014, a withholding tax liability of $0.2 million is included in the accrued expenses in the Consolidated Balance Sheet.

It is management's responsibility to determine whether a tax position of Crusader Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. In accordance with this authoritative guidance, management has established a reserve for federal income tax of approximately $7.8 million for uncertain tax positions. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2014.

Crusader Master files tax returns as prescribed the tax laws of the jurisdictions in which it operates. In the normal course of business, Crusader Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2014, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2011 forward (with limited exceptions).

**Multi Strategy Credit Master**
For U.S. income tax purposes, Multi Strategy Credit Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

Multi Strategy Credit Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Multi Strategy Credit Master's business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices, including the United Kingdom.

Dividends as well as certain interest and other income received by Multi Strategy Credit Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Multi Strategy Credit Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2014, a withholding tax liability of $1.0 million is classified within accrued expenses and withholding tax payable on the Consolidated Balance Sheet.

33

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

Multi Strategy Credit Master applies authoritative guidance which requires management to determine whether a tax position of Multi Strategy Credit Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. As of December 31, 2014, a liability to account for uncertain tax positions of $0.1 million is classified within accrued expenses within the Consolidated Balance Sheet. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2014.

Multi Strategy Credit Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Multi Strategy Credit Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2014, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2011 forward (with limited exceptions).

**Credit Strategies Master**
Credit Strategies Master is an exempted limited partnership organized in Bermuda. Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Credit Strategies Master. Credit Strategies Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 28, 2016.

For U.S. income tax purposes, Credit Strategies Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Credit Strategies Master's net taxable income.

It is management's responsibility to determine whether a tax position of Credit Strategies Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. The General Partner has determined that there was no effect on the financial statements from the application of this guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2014.

Dividends as well as certain interest and other income received by Credit Strategies Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Credit Strategies Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2014, a withholding tax liability of $0.7 million is included in tax payable in the Consolidated Balance Sheet. Deferred tax liabilities may result from temporary differences related to the unrealized appreciation on Credit Strategies Master's investments that will become taxable income in future years. Deferred tax liabilities will become payable upon realization of the gains when the investments are sold, and are measured using the applicable enacted tax rate and provisions of the enacted tax law.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

The Credit Strategies Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.  In the normal course of business, Credit Strategies Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2014, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2011 forward (with limited exceptions).

A wholly owned corporation at Credit Strategies Master may be subject to Federal U.S. Income Tax based on the nature of income, expense, and capital gains/losses. As of December 31, 2014, the wholly owned corporation has a tax refund receivable of $1.7 million included in other assets in the Consolidated Balance Sheet.

**Restoration Onshore**
Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income.  Interest, dividends and other income realized by Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2014.  Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates.  In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable.  As of December 31, 2014, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2011 forward (with limited exceptions).

**Restoration Offshore**
Restoration Offshore is a Cayman Islands exempted company.  Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore.  Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

Dividends as well as certain interest and other income received by the master partnership of Restoration Offshore from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the master partnership of Restoration Offshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2014. As of December 31, 2014, the tax years that remain subject to examination by major tax jurisdictions under the statute of limitations is from the year 2011 forward (with limited exceptions).

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

**13.  Legal Proceedings**

On July 15, 2008, Crusader Master, Highland Offshore Partners, CDO Master Fund, Multi Strategy Credit Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida ('the Tousa action"). The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated. On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement. In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%. The US Supreme Court case was heard on January 14, 2015, and the Parties are waiting the decision. Based on the ruling, Crusader Master and Highland Offshore Partners recorded a combined reserve of approximately $12.3 million as of December 31, 2014, which represents its ratable share of the judgment.

On July 8, 2009, one investor filed suit against Highland Credit Strategies Fund, LP, the Partnership, and other affiliated entities (collectively, the "Defendants"). The lawsuit alleges that the Defendants misrepresented the amount of redemptions in Credit Strategies Master. The Defendants intend to vigorously defend against the lawsuit. Accordingly, Highland Credit Strategies Fund, LP has recorded a reserve of approximately $11.3 million, which is recorded in the Consolidated Balance Sheet.

36

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

On January 31, 2011, one investor filed suit against Highland Credit Strategies Fund, LP, the Partnership, and other affiliated entities (collectively, the "Defendants"). The lawsuit alleges that the Defendants made misrepresentations and omissions relating to the level of the amount of redemptions in Credit Strategies Master. Effective March 28, 2014, Credit Strategies settled the on-going litigation for $1.5 million. Cash was paid on April 11, 2014 and an Agreed Order of Dismissal was filed seven days later dismissing all claims asserted or that could have been asserted in the lawsuit against the Fund. The settlement resulted in a gain of $1.0 million for the year ended December 31, 2014, and is recognized as a reduction to legal expense on the Consolidated financial statements.

In April 2007, CDO Master Fund entered into a risk sharing agreement with UBS Securities LLC and UBS AG, London Branch (collectively, "UBS" or "UBS Plaintiffs") structured as a derivative whereby it absorbed 51% of the gains and losses generated from a loan warehouse agreement. The remaining 49% of the warehouse gains and losses were absorbed by Highland Special Opportunities Holding Company ("SOHC"). The warehouse was financed by UBS and held collateral consisting of investments in collateralized loan obligations and credit default swaps. Although the agreement expired on August 15, 2007, UBS agreed to extend it for one year on March 15, 2008. Due to liquidity constraints, CDO Master Fund was unable to meet a November margin call, and UBS elected to terminate the agreement as of December 5, 2008. The collateral held in the warehouse was subsequently seized by UBS and sold on the open market through bids-wanted-in competition. After offsetting the proceeds received from the sale and the income earned on the collateral prior to the sale, UBS notified CDO Master Fund that its pro-rata share of the losses incurred under the agreement was $350.2 million. CDO Master Fund has accrued a liability in its financial statements for this amount.

On February 24, 2009, the UBS Plaintiffs filed a lawsuit against CDO Master Fund, SOHC and the Partnership in the New York State Supreme Court of Manhattan alleging that they suffered losses in excess of $745 million due to the depreciation in value of the warehouse collateral. On February 19, 2010, the First Appellate Division sided with the Partnership and dismissed UBS' claims against the Partnership. Thereafter on June 22, 2010, the UBS Plaintiffs filed an amended complaint with the Court against the Partnership alleging $687 million in damages. On March 13, 2012, the First Appellate Division dismissed two of the four claims against the Partnership, and severely limited the scope of the two remaining claims.

In the June 22, 2010 amended complaint, the UBS Plaintiffs also asserted claims against Highland Credit Strategies Fund, LP, Highland Multi Strategy Credit Fund, LP, Crusader Master, and certain of their affiliates (collectively, the "Additional Fund Defendants"). The UBS Plaintiffs seek to unwind alleged fraudulent transfers involving the Additional Fund Defendants. Although the UBS Plaintiffs have not pled a specific damages amount against the Additional Fund Defendants, any eventual damages award would be subject to pre-judgment interest of 9% (accrued as of December 3, 2008) as well as post-judgment interest of 9% (accrued as of the date a judgment, if any, is entered against the Additional Fund Defendants). Each of the Additional Fund Defendants filed a separate motion to dismiss, each of which was denied. In addition, the Additional Fund Defendants filed a motion for summary judgment, which was heard by the Court on February 14, 2014. On March 11, 2014, the First Appellate Division heard each of the Additional Fund Defendants' respective appeals of the Court's denials of their respective motions to dismiss.

Discovery is completed, but the matter is stayed pending the outcome of the interlocutory appeals. A trial date has not yet been set. Though the Defendants continue to vigorously defend against the UBS Plaintiffs' claims, at this time, the General Partners are unable to provide a reasonably probable estimate of the expected outcome.

37

D-CNL000147

**Appx. 01170**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

On July 16, 2013, Credit Suisse Securities (USA), LLC ("Credit Suisse") filed suit against the Highland Credit Strategies Fund, LP, Highland Multi Strategy Credit Fund, LP, and other affiliates (the "Credit Suisse Defendants"). Credit Suisse's claims relate to several outstanding trades of debt tranches of Goldfield Ranch Reality Holdings, LLC and Westgate Investments, LLC. On May 5, 2014, Credit Suisse moved for summary judgment on both the principal amount and statutory pre-judgment interest.  The Court granted the motion on August 6, 2014, and issued judgment on September 11, 2014 in the amount of $25.5 million in principal, plus $13.5 million in interest, for a total of $39.0 million.  The Funds have previously reserved for the principal amount, and now has reserved for the interest amount.  Interest continues to accrue based on the New York statutory rate.  As of December 31, 2014, an additional $1.2 million in interest has been accrued, for a total of $14.7 million.  The full amount of interest and principal is recognized on the consolidated financial statements.  The Funds will appeal the application of a statutory pre-judgment interest rate as opposed to the contract rate of interest.

In April 2012, the Partnership filed suit against a former employee for breach of contract, defamation and theft of trade secrets.  The former employee filed a counterclaim with numerous, unrelated allegations. The partnership refuted each allegation in detail. The former employee seeks unspecified damages against the Partnership and certain affiliates.  On February 6, 2014, the jury found the former employee breached his fiduciary duty to the Partnership. The jury found that neither the Partnership nor any of its employees had breached any duty, and awarded $2.8 million to the Partnership. The jury also found that the Partnership's consolidated entity Highland Employee Retention Assets, LLC ("HERA") owed $2.6 million related to an employee retention plan.  The court entered judgment on the verdict on July 11, 2014.  The former employee has filed his appeal against the Partnership and HERA has filed its appeal against the judgment amount.

**14.    Fund Wind Down**

On February 4, 2009, the Partnership informed investors of CDO Master that the fund was effectively insolvent and that it was in the best interest of the fund to liquidate the fund's remaining assets.  The proceeds from the asset liquidations will be distributed to the remaining financing counterparties and other senior and trade creditors as the liabilities in the fund exceed the assets to such a degree that proceeds from the asset sales will not be able to satisfy any unpaid redemptions or to distribute amounts to any current investors.

HIGHLY CONFIDENTIAL

D-CNL000148

**Appx. 01171**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

During 2008, Crusader Master and Credit Strategies Master were negatively affected by deteriorating conditions in the overall economy and credit markets. These conditions became more severe during the third and fourth quarters of 2008 and generated significant losses on various derivative transactions and repurchase agreements to which Crusader Master and Credit Strategies Master were parties. In addition, certain assets that Crusader Master and Credit Strategies Master purchased on margin through prime brokerage agreements experienced a significant decline in value.  In certain cases, Crusader Master and Credit Strategies Master were unable to post the collateral required to secure these losses, and the counterparties provided notice of their intent to terminate the agreements.  As a result, access to the credit that Crusader Master and Credit Strategies Master used to manage its investing and financing activities became highly constrained, and in some cases unavailable.   In light of these circumstances, the General Partners (the general partner of Highland Crusader Fund, L.P. and the general partner of Highland Credit Strategies Fund, L.P.) and the Board of Directors of Highland Credit Strategies Fund, Ltd. and Highland Crusader Fund, Ltd. concluded, in consultation with the Investment Manager, that it would be in the best interests of their investors to wind down the investment portfolios of Credit Strategies Master and Crusader Master.  On October 15, 2008, the Investment Manager notified investors that it would begin the wind-down process.  The Investment Manager also restricted subscriptions and the payment of withdrawals to its feeder funds effective the same date.

In connection with the wind down, the limited partner interests of the Feeder Funds of Credit Strategies and Crusader were compulsorily withdrawn/redeemed on October 15, 2008 and November 15, 2008, respectively, in accordance with the terms of the governing documents.

**Crusader Master**
On July 15, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Scheme") that facilitates the winding-down of the investments of Crusader Master and the distribution of its assets. A substantial majority of the investors in its feeder funds consented to the plan of distribution as outlined in the Scheme. The Scheme became effective as of August 1, 2011 (the "Effective Date").

The Scheme establishes two classes of claims; those feeder fund investors who had timely submitted withdrawal/redemption requests for withdrawal/redemption dates that fell on or before June 30, 2008 and who had not received full payment ("Prior Redeemers"), and those feeder fund investors that had not timely submitted such withdrawal/redemption requests for redemption/withdrawal dates that fell on or before June 30, 2008 ("Compulsory Redeemers") (together "Redeemers"). The basis for ratable distribution amongst both classes of Redeemers was the November 15, 2008 balances of said Redeemers ("Redemption Amount"), adjusted to add back any redemption penalties assessed against Prior Redeemers during 2008. A realization schedule for distributions is set forth in Appendix A of the Scheme (the "Realization Schedule"). The terms of the Scheme are outlined as follows:

1.  Prior Redeemers shall be entitled to 60% in aggregate of the total distributions made by the Master Partnership constituting excess cash (the "Crusader Fund Prior Redeemers' Distribution"). Each Prior Redeemer shall be entitled to their pro rata share of the Crusader Fund Prior Redeemers' Distribution based on the Prior Redeemer's Redemption Amount relative to the total of all Prior Redeemers' Redemption Amounts (inclusive of all feeders).

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

2. Compulsory Redeemers shall be entitled to 40% in aggregate of the total distributions made by the Master Partnership constituting excess cash (the "Crusader Fund Compulsory Redeemers' Distribution"). With the exception of the non-consenting Compulsory Redeemers discussed below, each Compulsory Redeemer shall be entitled to their pro rata share of the Crusader Fund Compulsory Redeemers' Distribution based on the Compulsory Redeemer's Redemption Amount relative to the total of all Compulsory Redeemers' Redemption Amounts (inclusive of all feeders).

In the event the Investment Manager fails to make distributions in accordance with the Realization Schedule for two consecutive quarters without receiving a waiver from the committee of Redeemers appointed to help oversee the Scheme (the "Redeemer Committee"), the Investment Manager can be removed for cause as the Investment Manager of the Master Partnership by the Redeemer Committee.

**Crusader Redeemer Trust Account**
Effective July 15, 2011, a trust account was set-up and funded for the benefit of Compulsory Redeemers who had consented to the Scheme and Prior Redeemers (the "Redeemer Trust Account"). The portion of amounts in excess of the Redemption Amounts otherwise attributable to non-consenting Compulsory Redeemers was contributed to the Redeemer Trust Account and not distributed to non-consenting Compulsory Redeemers. Amounts in the Redeemer Trust Account are reserved and used to pay all costs of Crusader Master to defend, respond to, settle and satisfy any claims by Redeemers other than for their Scheme claim.

The non-consenting Compulsory Redeemers do not receive any allocation of profit and loss; the portion of profit and loss that would otherwise be allocated to their accounts is instead allocated to the Redeemer Trust Account. The Redeemer Trust Account is accounted for as a component of equity in the Crusader Onshore Feeder Fund. Within the earlier of 30 days after all redeemer claims have been resolved or dismissed with prejudice or the sixth anniversary of the effective date, any amounts remaining in the Redeemer Trust Account shall be distributed 100% to consenting Compulsory Redeemers pro rata based on their relative Redemption Amounts.

**Crusader Deferred Fee Account**
In accordance with the Scheme, the "Deferred Fee Account" was established on the Effective Date by allocating the right for owners of existing deferred fees to potentially receive payment in respect of deferred fees equal to $10 million.

In the event that Crusader Master makes aggregate distributions of at least $1.7 billion prior to the forty-third month following the effective date, the Partnership shall be entitled to receive payment in respect of the Deferred Fee Account.

In the event that the Master Partnership does not make aggregate distributions of at least $1.7 billion prior to the forty-third month following the effective date, then the Partnership will cause the Feeder Funds to distribute the right to receive payment 100% to consenting Compulsory Redeemers (pro rata based on their relative Redemption Amounts). The Deferred Fee Account will continue to be allocated its pro rata portion of profit and loss.

**Crusader Wind Down Progress**
Crusader Master distributed approximately $205.3 million to the Feeder Funds in accordance with the Scheme for the year ended December 31, 2014. Since the Scheme's effective date, approximately $1,351.2 million has either been distributed to the Feeder Funds for purposes of disbursement, or withheld and specially allocated for tax payments.

40

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

As of December 31, 2014, the estimated value of the partners' capital of Crusader Master was approximately $457.3 million.  The actual amounts that will be distributed upon completion of the wind down process are inherently uncertain and may differ materially from the partners' capital as of December 31, 2014.  Capital will be distributed as it becomes available in accordance with the Scheme.

**Credit Strategies Master**
To facilitate the winding-down of the investments in Credit Strategies Master, a Plan of Distribution (the "Plan") was also adopted by Credit Strategies Master and its feeder funds and was consented to by a substantial majority of the investors in its feeder funds. On April 14, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Scheme") that incorporates the terms of the Plan so as to be binding upon Highland Credit Strategies Fund, Ltd. and its investors. The Scheme became effective on May 1, 2011. The Plan established two classes of claims; those investors of the Feeder Funds whose withdrawals/redemptions became effective on or before September 30, 2008 and who have not received full payment of their redemption amount ("Prior Redeemers") and those investors of the feeder funds who were compulsorily withdrawn/redeemed on October 15, 2008 ("Compulsory Redeemers").

As investments in Credit Strategies Master are realized, distributions will be made in the following order, which summarizes the terms outlined in the Plan:

1.  Payments for fund expenses
2.  The first $30 million available for distribution ratably to Prior Redeemers
3.  The next approximately $5.3 million available for distribution ratably to consenting Compulsory Redeemers and a trust account established for the benefit of non-consenting Compulsory Redeemers ("Redeemer Trust Account")
4.  All remaining funds will be distributed as follows:
    a.    85% ratably to Prior Redeemers
    b.    15% to consenting Compulsory Redeemers and the Redeemer Trust Account

This method of distribution results in a shift of capital from the Prior Redeemers to the consenting Compulsory Redeemers and the Redeemer Trust Account. It also created a shift of capital from its offshore feeder to its onshore feeder, since there was a greater proportion of Compulsory Redeemers to Prior Redeemers in the onshore feeder than in the offshore feeder.

**Credit Strategies Redeemer Trust Account**
The Redeemer Trust Account is used to pay for litigation costs involving the non-consenting Compulsory Redeemers.  The Plan outlines which expenses related to litigation ("Covered Claims") will be paid using funds from the Redeemer Trust Account, and any litigation will continue to be assessed under an ASC 450 (Contingencies) model.  Any remaining funds in the Redeemer Trust Account that are not used for expenses related to Covered Claims by the "Trust Account Final Distribution Date" (defined as 30 days after all Covered Claims have been resolved, or the sixth anniversary of the effective date, whichever is earlier) will be distributed to consenting Compulsory Redeemers.

The Redeemer Trust Account is treated as a component of equity.  It is allocated its share of profit and loss and existing capital as outlined above, and any expenses related to Covered Claims will decrease the account in the period in which the expenses are incurred.

HIGHLY CONFIDENTIAL

D-CNL000151

Appx. 01174

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2014**

**Credit Strategies Contribution Trust Account**

In accordance with the Plan and in exchange for certain releases, a trust account (the "Contribution Trust Account") was established and initially funded on the effective date with $3.0 million contributed by the Partnership.  The Partnership also paid an additional $6.0 million on April 25, 2014, approximately the third anniversary of the effective date of the Plan. This $6.0 million was recognized as a subscription into Credit Strategies Master during the year ended December 31, 2014.

The Contribution Trust Account will be used to pay for expenses related to Covered Claims to the extent that the Redeemer Trust Account is insufficient to pay such expenses.  Within 30 days after all Covered Claims have been resolved or dismissed with prejudice, or the sixth anniversary of the effective date, provided that no suits asserting Covered Claims are then pending, whichever is earlier, any remaining balance in the Contribution Trust Account will be distributed 85% to consenting Compulsory Redeemers and 15% to consenting Prior Redeemers.

Similar to the Redeemer Trust Account, the Contribution Trust Account is treated as a separate component of equity.  Additionally, the initial payment of the $3.0 million was treated as a contribution to the Master Partnership.  However, the Contribution Trust Account does not receive an allocation of profit and loss.  The only changes to the account will occur when contributions are made or expenses related to Covered Claims are paid.

15.   **Subsequent Events.**

On January 26, 2015, the Partnership issued a promissory note to HCRE in the amount of $1.5 million. The note accrues interest at a rate of 9.0%.

On January 29, 2015, the Partnership issued a promissory note to NexPoint in the amount of $3.1 million. The note accrues interest at a rate of 6.0%.

The Partnership has performed an evaluation of subsequent events through May 21, 2015, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

HIGHLY CONFIDENTIAL

**Supplemental Information**

HIGHLY CONFIDENTIAL

D-CNL000153

**Appx. 01176**

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Balance Sheet**
**December 31, 2014**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 1,813 | $ 64,220 | $ - | $ 66,033 |
| Restricted cash | 2,621 | 135,234 | - | 137,855 |
| Investments at fair value | 185,260 | 1,692,079 | - | 1,877,339 |
| Equity method investees | 338,778 | - | (338,778) | - |
| Management and incentive fees receivable | 8,662 | - | (92) | 8,570 |
| Due from brokers | - | 32,536 | - | 32,536 |
| Other assets | 55,435 | 10,459 | (1,451) | 64,443 |
| Deferred incentive fees receivable | 32,592 | - | - | 32,592 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $5,768 | 8,067 | - | - | 8,067 |
| **Total assets** | $ 633,228 | $ 1,934,528 | $ (340,321) | $ 2,227,435 |
| **Liabilities and partners' capital** | | | | |
| **Liabilities** | | | | |
| Accounts payable | $ 5,144 | $ 23 | $ - | $ 5,167 |
| Securities sold, not yet purchased (proceeds $43,015) | - | 41,815 | - | 41,815 |
| Withdrawals payable | - | 82,833 | - | 82,833 |
| Due to brokers | 47,215 | 692,925 | (657) | 739,483 |
| Due to brokers for securities purchased, not yet settled | - | 67,541 | - | 67,541 |
| Accrued and other liabilities | 35,108 | 66,316 | (886) | 100,538 |
| Debt and notes payable | 18,648 | 22,991 | - | 41,639 |
| **Total liabilities** | 106,115 | 974,444 | (1,543) | 1,079,016 |
| Non-controlling interest | - | 621,306 | - | 621,306 |
| Commitments (Note 10) | | | | |
| **Partners' capital** | 527,113 | 338,778 | (338,778) | 527,113 |
| **Total liabilities and partners' capital** | $ 633,228 | $ 1,934,528 | $ (340,321) | $ 2,227,435 |

HIGHLY CONFIDENTIAL

D-CNL000154

**Appx. 01177**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Statement of Income**
**Year Ended December 31, 2014**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $ 67,570 | $ - | $ - | $ 67,570 |
| Interest and investment income | 1,847 | 55,604 | - | 57,451 |
| Other income | 9,180 | 1,310 | | 10,490 |
| Total revenue | 78,597 | 56,914 | - | 135,511 |
| **Expenses:** | | | | |
| Compensation and benefits | 37,027 | 666 | - | 37,693 |
| Professional fees | 7,192 | 16,743 | - | 23,935 |
| Marketing and advertising expense | 6,140 | - | - | 6,140 |
| Investment and research consulting | 507 | - | - | 507 |
| Depreciation and amortization | 1,358 | - | - | 1,358 |
| Tax expense | - | 1,892 | - | 1,892 |
| Bad debt expense | 3,303 | - | (3,303) | - |
| Other operating expenses | 7,229 | 6,733 | 3,303 | 17,265 |
| Total expenses | 62,756 | 26,034 | - | 88,790 |
| Other expense | 1,655 | - | - | 1,655 |
| Income before investment and derivative activities | 17,496 | 30,880 | - | 48,376 |
| **Realized and unrealized gain from investment and derivative transactions:** | | | | |
| Net realized loss on investment and derivative transactions | (2,441) | (169,561) | - | (172,002) |
| Net change in unrealized gain on investment and derivative transactions | 41,961 | 218,390 | - | 260,351 |
| Total realized and unrealized gain from investment and derivative transactions | 39,520 | 48,829 | - | 88,349 |
| Net unrealized earnings from equity method investees | 88,313 | - | (88,313) | - |
| Net income | 145,329 | 79,709 | (88,313) | 136,725 |
| Net loss attributable to the non-controlling interest | - | 8,604 | - | 8,604 |
| Net income attributable to Highland Capital Management, L.P. | $ 145,329 | $ 88,313 | $ (88,313) | $ 145,329 |

45

D-CNL000155

**Appx. 01178**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2014**

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---|
| Cash and cash equivalents | $ | 1,813 |
| Restricted cash | | 2,621 |
| Investments at fair value (cost $173,856)* | | 286,010 |
| Equity method investees | | 238,028 |
| Management and incentive fees receivable | | 8,662 |
| Other assets | | 55,435 |
| Deferred incentive fees receivable | | 32,592 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $5,768 | | 8,067 |
| **Total assets** | $ | 633,228 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---|
| Accounts payable | $ | 5,144 |
| Due to brokers | | 47,215 |
| Accrued and other liabilities | | 35,108 |
| Notes payable | | 18,648 |
| Total liabilities | | 106,115 |
| Partners' capital | | 527,113 |
| **Total liabilities and partners' capital** | $ | 633,228 |

*Investments, at fair value includes $100.8 million of limited partnership interest ownership of Consolidated Non-Variable Interest Entities, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2014 consolidated financial Statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements.

HIGHLY CONFIDENTIAL

D-CNL000156

Appx. 01179

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2014**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 67,570 |
| Interest and investment income | | 1,847 |
| Shared services fees and miscellaneous income | | 9,180 |
|    Total revenue | | 78,597 |
| | | |
| **Operating expenses:** | | |
| Compensation and benefits | | 37,027 |
| Professional fees | | 7,192 |
| Marketing and advertising expense | | 6,140 |
| Investment and research consulting | | 507 |
| Depreciation and amortization | | 1,358 |
| Bad debt expense | | 3,303 |
| Other operating expenses | | 7,229 |
|    Total operating expenses | | 62,756 |
| | | |
| Other income | | 1,655 |
| | | |
| Income before investment activities | | 17,496 |
| | | |
| **Realized and unrealized gains/losses from investments:** | | |
| Net realized loss on sale of investments | | (2,441) |
| Net change in unrealized gain on investments* | | 46,709 |
|    Total realized and unrealized gain from investments | | 44,268 |
| | | |
| Earnings from equity method investees | | 83,565 |
| | | |
| **Net income** | $ | 145,329 |

\*Net change in unrealized gain on investments includes $4.8 million of unrealized gains from holdings of limited partnership interests of Consolidated Non-Variable Interest entities, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2014 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements.

HIGHLY CONFIDENTIAL

# EXHIBIT 70

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2015**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Index**
**December 31, 2015**

Page(s)

**Independent Auditor's Report** ............................................................................................................1

**Audited Consolidated Financial Statements**

Consolidated Balance Sheet...........................................................................................................2

Consolidated Statement of Income.................................................................................................3

Consolidated Statement of Changes in Partners' Capital...............................................................4

Consolidated Statement of Cash Flows..........................................................................................5

Consolidated Notes to Financial Statements .............................................................................6-47

Supplemental Information…………………………………………………………………………..48-52

HIGHLY CONFIDENTIAL



**Independent Auditor's Report**

To the General Partner of Highland Capital Management, L.P.

We have audited the accompanying consolidated financial statements of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership"), which comprise the consolidated balance sheet as of December 31, 2015, and the related consolidated statements of income, of changes in partners' capital and of cash flows for the year then ended.

***Management's Responsibility for the Consolidated Financial Statements***

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

***Auditor's Responsibility***

Our responsibility is to express an opinion on the consolidated financial statements based on our audits.  We conducted our audits in accordance with auditing standards generally accepted in the United States of America.  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements.  The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error.  In making those risk assessments, we consider internal control relevant to the Partnership's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control.  Accordingly, we express no such opinion.  An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements.  We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

***Opinion***

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Highland Capital Management, L.P. and its subsidiaries as of December 31, 2015, and the results of their operations and their cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

***Other Matter***

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The Supplemental Consolidating Balance Sheet, the Supplemental Consolidating Statement of Income, the Supplemental Unconsolidated Balance Sheet and the Supplemental Unconsolidated Statement of Income are presented for purposes of additional analysis and are not a required part of the consolidated financial statements.  The information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the consolidated financial statements.  The information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the consolidated financial statements or to the consolidated financial statements themselves and other additional procedures, in accordance with auditing standards generally accepted in the United States of America.  In our opinion, the information is fairly stated, in all material respects, in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

May 19, 2016

*PricewaterhouseCoopers LLP, 2001 Ross Avenue, Suite 1800, Dallas, Texas 75201*
*T: (214) 999-1400, F: (214) 754-7991, www.pwc.com/us*

D-CNL000160

**Appx. 01184**