PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § § | Adversary Proceeding No. |
| vs. | § § § | _____ |
| HCRE PARTNERS, LLC (N/K/A/ NEXPOINT REAL ESTATE PARTNERS, LLC, | § § § | |
| Defendant. | § § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**COMPLAINT FOR (I) BREACH OF CONTRACT
AND (II) TURNOVER OF PROPERTY OF THE DEBTOR'S ESTATE**

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by its undersigned counsel, as and for its complaint (the "Complaint") against defendant HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("HCRE" or "Defendant"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

**PRELIMINARY STATEMENT**

1.      The Debtor brings this action against HCRE as a result of HCRE's defaults under (i) four demand notes in the aggregate principal amount of $4,250,000 and payable upon the Debtor's demand, and (ii) one term note in the aggregate principal amount of $6,059,831.51 payable in the event of default, all executed by HCRE in favor of the Debtor.  HCRE has failed to pay amounts due and owing under the notes and the accrued but unpaid interest thereon.

2.      Through this Complaint, the Debtor seeks (a) damages from HCRE in an amount equal to (i) the aggregate outstanding principal due under the Notes (as defined below), plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the notes) for HCRE's breach of its obligations under the Notes, and (b) turnover by HCRE to the Debtor of the foregoing amounts.

**JURISDICTION AND VENUE**

3.      This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      The Debtor is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

8.      Upon information and belief, HCRE is a limited liability company with offices located in Dallas, Texas and is organized under the laws of the state of Delaware.

## CASE BACKGROUND

9.      On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

10.      On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members:  (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis LP and Acis GP.

11.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[2]

12.     The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

## STATEMENT OF FACTS

### A.     The HCRE Demand Notes

13.     HCRE is the maker under a series of demand notes in favor of the Debtor.

14.     Specifically, on November 27, 2013, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $100,000 ("HCRE's First Demand Note").  A true and correct copy of HCRE's First Demand Note is attached hereto as **Exhibit 1**.

15.     On October 12, 2017, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $2,500,000 ("HCRE's Second Demand Note").  A true and correct copy of HCRE's Second Demand Note is attached hereto as **Exhibit 2.**

16.     On October 15, 2018, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $750,000 ("HCRE's Third Demand Note").  A true and correct copy of HCRE's Third Demand Note is attached hereto as **Exhibit 3**

17.     On September 25, 2019, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $900,000 ("HCRE's Fourth Demand Note," and collectively, with HCRE's First Demand Note, HCRE's Second Demand Note, and HCRE's Third Demand Note, the "Demand Notes").  A true and correct copy of HCRE's Fourth Demand Note is attached hereto as **Exhibit 4.**

---

[2] All docket numbers refer to the main docket for the Highland Bankruptcy Case maintained by this Court.

18.     Section 2 of the Demand Notes provide: "**Payment of Principal and Interest**.
The accrued interest and principal of this Note shall be due and payable on demand of the
Payee."

19.     Section 4 of the Demand Notes provides:

**Acceleration Upon Default**.   Failure to pay this Note or any installment
hereunder as it becomes due shall, at the election of the holder hereof, without
notice, demand, presentment, notice of intent to accelerate, notice of acceleration,
or any other notice of any kind which are hereby waived, mature the principal of
this Note and all interest then accrued, if any, and the same shall at once become
due and payable and subject to those remedies of the holder hereof.  No failure or
delay on the part of the Payee in exercising any right, power, or privilege
hereunder shall operate as a waiver hereof.

20.     Section 6 of the Demand Notes provides:

**Attorneys' Fees**.  If this Note is not paid at maturity (whether by acceleration or
otherwise) and is placed in the hands of an attorney for collection, or if it is
collected through a bankruptcy court or any other court after maturity, the Maker
shall pay, in addition to all other amounts owing hereunder, all actual expenses of
collection, all court costs and reasonable attorneys' fees and expenses incurred by
the holder hereof.

**B.     HCRE's Defaults under Each Demand Note**

21.     By letter dated December 3, 2020, the Debtor made demand on HCRE for
payment of the Demand Notes by December 11, 2020 (the "Demand Letter").  A true and correct
copy of the Demand Letter is attached hereto as **Exhibit 5**.  The Demand Letter provides:

By this letter, Payee is demanding payment of the accrued interest and principal
due and payable on the Notes in the aggregate amount of $5,012,260.96, which
represents all accrued interest and principal through and including December 11,
2020.

**Payment is due on December 11, 2020, and failure to make payment in full
on such date will constitute an event of default under the Notes.**

Demand Letter (emphasis in the original).

22.     Despite the Debtor's demand, HCRE did not pay all or any portion of the amount
demanded by the Debtor on December 11, 2020 or at any time thereafter.

23. As of December 11, 2020, there was an outstanding principal amount of $171,542 on HCRE's First Demand Note and accrued but unpaid interest in the amount of $526.10, resulting in a total outstanding amount as of that date of $172,068.10.

24. As of December 11, 2020, there was an outstanding principal balance of $3,149,919.12 on HCRE's Second Demand Note and accrued but unpaid interest in the amount of $41,423.60, resulting in a total outstanding amount as of that date of $3,191,342.72.

25. As of December 11, 2020, there was an outstanding principal balance of $874,977.53 on HCRE's Third Demand Note and accrued but unpaid interest in the amount of $10,931.23, resulting in a total outstanding amount as of that date of $885,908.76.

26. As of December 11, 2020, there was an outstanding principal balance of $750,279.14 on HCRE's Fourth Demand Note and accrued but unpaid interest in the amount of $12,662.24, resulting in a total outstanding amount as of that date of $762,941.38.

27. Thus, as of December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the Demand Notes was $5,012,260.96.

28. Pursuant to Section 4 of each Note, each Note is in default and is currently due and payable.

**C.** **The HCRE Term Note**

29. HCRE is the maker under a term note in favor of the Debtor.

30. Specifically, on May 31, 2017, HCRE executed a term note in favor of the Debtor, as payee, in the original principal amount of $6,059,831 (the "Term Note," and together with the Demand Notes, the "Notes"). A true and correct copy of the Term Note is attached hereto as **Exhibit 6**.

31. Section 2 of the Term Note provides: "**Payment of Principal and Interest**. Principal and interest under this Note shall be due and payable as follows:

**2.1** **Annual Payment Dates.** During the term of this Note, Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**Annual Installment**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note, commencing on the first such date to occur after the date of execution of this note.

**2.2** **Final Payment Date**. The final payment in the aggregate amount of the then outstanding and unpaid Note, together with all accrued and unpaid interest thereon, shall become immediately due and payable in full on December 31, 2047 (the "**Maturity Date**").

32. Section 3 of the Term Note provides:

**Prepayment Allowed: Renegotiation Discretionary**. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

33. Section 4 of the Term Note provides:

**Acceleration Upon Default**. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

34. Section 6 of the Term Note provides:

**Attorneys' Fees**. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**D.** **HCRE's Default under the Term Note**

35. HCRE failed to make the payment due under the Term Note on December 31, 2020.

36.     By letter dated January 7, 2021, the Debtor made demand on HCRE for immediate payment under the Term Note (the "Second Demand Letter").  A true and correct copy of the Second Demand Letter is attached hereto as **Exhibit 7**.  The Demand Letter provides:

> Because of Maker's failure to pay, the Note is in default.  Pursuant to Section 4 of the Note, all principal, interest, and any other amounts due on the Note are immediately due and payable.  The amount due and payable on the Note as of January 8, 2021 is $6,145,466.84; however, interest continues to accrue under the Note.

> **The Term Note is in default, and payment is due immediately.**

Second Demand Letter (emphasis in the original).

37.     Despite the Debtor's demands, HCRE did not pay the amount demanded by the Debtor on January 7, 2021 or at any time thereafter.

38.     As of January 8, 2021, the total outstanding principal and accrued but unpaid interest under the Term Note was $6,145,466.84.

39.     Pursuant to Section 4 of the Term Note, the Note is in default and is currently due and payable.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

40.     The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

41.     Each Note is a binding and enforceable contract.

42.     HCRE breached each Demand Note by failing to pay all amounts due to the Debtor upon the Debtor's demand.

43.     HCRE breached the Term Note by failing to pay all amounts due to the Debtor upon HCRE's default and acceleration.

8

44.     Pursuant to each Note, the Debtor is entitled to damages from HCRE in an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for HCRE's breach of its obligations under each of the Notes.

45.     As a direct and proximate cause of HCRE's breach of each Demand Note, the Debtor has suffered damages in the amount of at least $5,012,260.96 as of December 11, 2020, plus an amount equal to all accrued but unpaid interest from that date, plus the Debtor's cost of collection.

46.     As a direct and proximate cause of HCRE's breach of the Term Note, the Debtor has suffered damages in the amount of at least $6,145,466.84 as of January 8, 2021, plus an amount equal to all accrued but unpaid interest from that date, plus the Debtor's cost of collection.

## SECOND CLAIM FOR RELIEF
### (Turnover by HCRE Pursuant to 11 U.S.C. § 542(b))

47.     The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

48.     HCRE owes the Debtor an amount equal to (i) the aggregate outstanding principal due under each of the Notes, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for HCRE's breach of its obligations under each of the Notes.

49.     Each Demand Note is property of the Debtor's estate and the amounts due under each Demand Note are matured and payable upon demand.

DOCS_NY:42002.4 36027/002

50.     The Term Note is property of the Debtor's estate and the amounts due under the Term Note are matured and payable upon default and acceleration.

51.     The Debtor has made demand for turnover of the amounts due under each of the Notes.

52.     As of the date of filing this Complaint, HCRE has not turned over to the Debtor all or any of the amounts due under each of the Notes.

53.     The Debtor is entitled to the turnover of all amounts due under each of the Notes.

WHEREFORE, the Debtor prays for judgment as follows:

(i)     On its First Claim for Relief, damages in an amount to be determined at trial, including, among other things, (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's cost of collection (including all court costs and reasonable attorneys' fees and expenses);

(ii)     On its Second Claim for Relief, ordering turnover by HCRE to the Debtor of an amount equal to (a) the aggregate principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's cost of collection (including all court costs and reasonable attorneys' fees and expenses); and

(iii)     Such other and further relief as this Court deems just and proper.

Dated:  January 22, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com
            hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# EXHIBIT 1

EXHIBIT 1

# PROMISSORY NOTE

$100,000                                                                November 27, 2013

FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of ONE HUNDRED THOUSAND and 00/100 Dollars ($100,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1. Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2. Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3. Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4. Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5. Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6. Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7. Limitation on Agreements. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.     <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

HCRE PARTNERS, LLC

# EXHIBIT 2

EXHIBIT 2

# PROMISSORY NOTE

$2,500,000                                                                                          October 12, 2017

FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    Payment of Principal and Interest. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    Limitation on Agreements. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.      Governing Law. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

HCRE PARTNERS, LLC

2

# EXHIBIT 3

EXHIBIT 3

# PROMISSORY NOTE

$750,000                                                                October 15, 2018

      FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of SEVEN HUNDRED FIFTY THOUSAND and 00/100 Dollars ($750,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

      1.    <u>Interest Rate</u>.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

      2.    <u>Payment of Principal and Interest</u>.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

      3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

      4.    <u>Acceleration Upon Default</u>.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

      5.    <u>Waiver</u>.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

      6.    <u>Attorneys' Fees</u>.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

      7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

HCRE PARTNERS, LLC

# EXHIBIT 4

EXHIBIT 4

# PROMISSORY NOTE

$900,000                                                                          September 25, 2019

      FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of NINE HUNDRED THOUSAND and 00/100 Dollars ($900,000.00), together with interest, on the terms set forth below (the "***Note***").  All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

      1.    <u>Interest Rate</u>.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

      2.    <u>Payment of Principal and Interest</u>.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

      3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

      4.    <u>Acceleration Upon Default</u>.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

      5.    <u>Waiver</u>.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

      6.    <u>Attorneys' Fees</u>.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

      7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

       8.    <u>Governing Law</u>. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

HCRE PARTNERS, LLC

# EXHIBIT 5

EXHIBIT 5

HIGHLAND CAPITAL MANAGEMENT, L.P.

December 3, 2020

HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)
c/o NexPoint Advisors, LP
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:  James Dondero

   Re:  Demand on Promissory Notes:

Dear Mr. Dondero,

HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("Maker") entered into the following promissory notes (collectively, the "Notes") in favor of Highland Capital Management, L.P. ("Payee"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (12/11/20) | Accrued But Unpaid Interest (12/11/20) | Total Amount Outstanding (12/11/20) |
|---|---|---|---|---|
| 11/27/13 | $100,000 | $171,542.00 | $526.10 | $172,068.10 |
| 10/12/17 | $2,500,000 | $3,149,919.12 | $41,423.60 | $3,191,342.72 |
| 10/15/18 | $750,000 | $874,977.53 | $10,931.23 | $885,908.76 |
| 9/25/19 | $900,000 | $750,279.14 | $12,662.24 | $762,941.38 |
| **TOTALS** | **$4,250,000** | **$4,946,717.79** | **$65,543.17** | **$5,012,260.96** |

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee.  By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $5,012,260.96, which represents all accrued and unpaid interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds.  Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are expressly reserved.  Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full.  Any such interest will remain the obligation of Maker.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:    Fred Caruso
       James Romey
       Jeffrey Pomerantz
       Ira Kharasch
       Gregory Demo
       DC Sauter

**Appendix A**

ABA #:            322070381
Bank Name:        East West Bank
Account Name:  Highland Capital Management, LP
Account #:        5500014686

# EXHIBIT 6

EXHIBIT 6

## PROMISSORY NOTE

**$6,059,831.51**                                                    **May 31, 2017**

THIS PROMISSORY NOTE (this "**Note**") is in substitution for and supersedes in their entirety each of those certain promissory notes described in Exhibit A hereto, from HCRE Partners, LLC, as Maker, and Highland Capital Management, L.P. as Payee (collectively, the "**Prior Notes**"), together with the aggregate outstanding principal and accrued and unpaid interested represented thereby.

FOR VALUE RECEIVED, HCREA PARTNERS, LLC ("**Maker**") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, L.P. ("**Payee**"), in legal and lawful tender of the United States of America, the principal sum of SIX MILLION, FIFTY NINE THOUSAND, EIGHT HUNDRED THIRTY ONE AND 51/100 DOLLARS ($6,059,831.51), together with interest, on the terms set forth below.  All sums hereunder are payable to Payee at 300 Crescent Court, Suite 700, Dallas, Texas 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate.   The unpaid principal balance of this Note from time to time outstanding shall bear interest at the rate of eight percent (8.00%) per annum from the date hereof until Maturity Date (hereinafter defined), compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable annually.

2.    Payment of Principal and Interest. Principal and interest under this Note shall be payable as follows:

2.1    Annual Payment Dates. During the term of this Note, Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**Annual Installment**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note, commencing on the first such date to occur after the date of execution of this Note.

2.2    Final Payment Date.       The final payment in the aggregate amount of the then outstanding and unpaid Note, together with all accrued and unpaid interest thereon, shall become immediately due and payable in full on December 31, 2047 (the "**Maturity Date**").

3.    Prepayment Allowed; Renegotiation Discretionary.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same

shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.      Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.      Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.      Limitation on Agreements. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.      Governing Law. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

9.      Prior Notes. The original of each of the Prior Notes superseded hereby shall be marked "VOID" by Payee.

**MAKER:**

HCRE PARTNERS, LLC

By: _____
Name: James Dondero
Title:

## EXHIBIT A

## PRIOR NOTES

| Loan Date | Initial Note Amount | Interest Rate | Principal and Interest Outstanding as of May 31, 2017 |
|---|---|---|---|
| 1/9/14 | $100,000.00 | 8.00% | $108,000.00 |
| 1/29/14 | $600,000.00 | 8.00% | $648,000.00 |
| 3/10/14 | $2,000,000.00 | 8.00% | $2,009,643.84 |
| 3/28/14 | $50,000.00 | 8.00% | $54,000.00 |
| 1/26/15 | $1,500,000.00 | 8.00% | $1,545,356.16 |
| 4/2/15 | $1,500,000.00 | 8.00% | $1,545,356 |
| | $5,750,000.00 | | $6,059,831.51 |

3

# EXHIBIT 7

EXHIBIT 7

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

January 7, 2021

HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)
c/o NexPoint Advisors, LP
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention:  James Dondero

       Re:  Demand on Promissory Note

Dear Mr. Dondero,

On May 31, 2017, HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("Maker") entered into that certain promissory note in the original principal amount of $6,059,831.51 (the "Note") in favor of Highland Capital Management, L.P. ("Payee").

As set forth in Section 2 of the Note, accrued interest and principal on the Note is due and payable in thirty equal annual payments with each payment due on December 31 of each calendar year.  Maker failed to make the payment due on December 31, 2020.

Because of Maker's failure to pay, the Note is in default.  Pursuant to Section 4 of the Note, all principal, interest, and any other amounts due on the Note are immediately due and payable.  The amount due and payable on the Note as of January 8, 2021 is $6,145,466.84; however, interest continues to accrue under the Note.

**The Note is in default, and payment is due <u>immediately</u>.**  Payments on the Note must be made in immediately available funds.  Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Note or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are expressly reserved.  Interest, including default interest if applicable, on the Note will continue to accrue until the Note is paid in full.  Any such interest will remain the obligation of Maker.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:     Fred Caruso
        James Romey
        Jeffrey Pomerantz
        Ira Kharasch
        Gregory Demo
        DC Sauter

**Appendix A**

| | |
|---|---|
| ABA #: | 322070381 |
| Bank Name: | East West Bank |
| Account Name: | Highland Capital Management, LP |
| Account #: | 5500014686 |

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Highland Capital Management, L.P. | HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Hayward PLLC<br>10501 N. Central Expressway, Suite 106<br>Dallas, Texas 75231  Tel.: (972) 755-7100 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☑ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☑ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Count 1:  Breach of contract; Count 2:  Turnover pursuant to 11 U.S.C. 542

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- [2] 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 11,157,727.80 plus interest, fees, and expenses |
| Other Relief Sought | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br> Highland Capital Management, L.P. | BANKRUPTCY CASE NO.<br> 19-34054-sgj11 | |
| DISTRICT IN WHICH CASE IS PENDING<br> Northern District of Texas | DIVISION OFFICE<br> Dallas | NAME OF JUDGE<br>Stacey G. C. Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br> January 22, 2021 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br> Zachery Z. Annable | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

COUNSEL FOR HCRE PARTNERS, LLC
(N/K/A NEXPOINT REAL ESTATE
PARTNERS, LLC)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Case No.: 19-34054-sgj11** |
| | § | |
| **Debtor.** | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Adv. Pro. No. 21-03007-sgj** |
| **vs.** | § | |
| | § | |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC),** | § | |
| | § | |
| **Defendant.** | § | |

## HCRE PARTNERS, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("HCRE" or

"Defendant") files this Answer in response to Highland Capital Management L.P.'s ("Plaintiff" or

"Debtor") Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's

Estate (the "Complaint") in the above-referend adversary proceeding (the "Adversary Proceeding") and respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1.      The first sentence of Paragraph 1 sets forth Plaintiff's objective in bringing the Complaint and does not require a response. To the extent a response is required, Defendant denies the allegations in the first sentence of Paragraph 1. The second sentence contains a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in the second sentence of Paragraph 1.

2.      Paragraph 2 contains a summary of the relief Plaintiff seeks and does not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 2.

## JURISDICTION AND VENUE

3.      Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers constitutional authority on the Bankruptcy Court to adjudicate this dispute. Defendant denies any allegations in Paragraph 3 that are not expressly admitted.

4.      Paragraph 4 states a legal conclusion that does not require a response. To the extent a response is required, Defendant admits the Bankruptcy Court has statutory jurisdiction over this Adversary Proceeding but denies that the Court has constitutional authority over this Adversary Proceeding. Defendant denies any allegations in Paragraph 4 that are not expressly admitted.

5.      Defendant denies that Plaintiff's breach of contract claim is a core proceeding. Defendant further denies that a turnover proceeding under 11 U.S.C. § 542(b) is the appropriate mechanism to collect a contested debt. Defendant admits that a turnover proceeding under 11

---

[1]   The headings herein are from Plaintiff's Complaint and are solely included for the Court's convenience.

U.S.C. § 542(b) is a statutorily core proceeding but denies that it is constitutionally core under *Stern v. Marshall*. Defendant does not consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding. Defendant denies any allegations in Paragraph 5 that are not expressly admitted.

6.      Paragraph 6 states a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that venue is proper in this District.

## THE PARTIES

7.      Defendant admits the allegations in Paragraph 7 of the Complaint.

8.      Defendant admits the allegations in Paragraph 8 of the Complaint.

## CASE BACKGROUND

9.      Defendant admits the allegations in Paragraph 9 of the Complaint.

10.      Defendant admits the allegations in Paragraph 10 of the Complaint.

11.      Defendant admits the allegations in Paragraph 11 of the Complaint.

12.      Defendant admits the allegations in Paragraph 12 of the Complaint.

## STATEMENT OF FACTS

**A.      The HCRE Demand Notes**

13.      Defendant admits it has executed at least one promissory note under which the Debtor is the payee. Defendant denies any allegations in Paragraph 13 that are not expressly admitted.

14.      Defendant admits that it signed the document attached to the Complaint as Exhibit 1. Defendant denies any allegations in Paragraph 14 that are not expressly admitted.

15.      Defendant admits that it signed the document attached to the Complaint as Exhibit 2. Defendant denies any allegations in Paragraph 15 that are not expressly admitted.

16.     Defendant admits that it signed the document attached to the Complaint as Exhibit 3. Defendant denies any allegations in Paragraph 16 that are not expressly admitted.

17.     Defendant admits that it signed the document attached to the Complaint as Exhibit 4. Defendant denies any allegations in Paragraph 17 that are not expressly admitted.

18.     Defendant admits that Plaintiff correctly transcribed Section 2 of Exhibits 1-4 to the Complaint in Paragraph 18.

19.     Defendant admits that Plaintiff correctly transcribed Section 4 of Exhibits 1-4 to the Complaint in Paragraph 19.

20.     Defendant admits that Plaintiff correctly transcribed Section 6 of Exhibits 1-4 of the Complaint in Paragraph 20.

**B.     Allegations regarding the Demand Notes**

21.     Defendant admits that Plaintiff sent it a copy of Exhibit 5. Defendant admits that Plaintiff correctly transcribed an excerpt of Exhibit 5 in the third sentence of Paragraph 21. Defendant denies any allegations in Paragraph 21 that are not expressly admitted.

22.     To the extent Paragraph 22 asserts a legal conclusion, no response is required, and it is denied. Defendant otherwise admits the allegations in Paragraph 22.

23.     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 23 and, therefore, denies them.

24.     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 24 and, therefore, denies them.

25.     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 25 and, therefore, denies them.

26.     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 26 and, therefore, denies them.

27.     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 27 and, therefore, denies them.

28.     Defendant denies the allegations in Paragraph 28 of the Complaint.

**C.     The HCRE Term Note**

29.     Defendant admits that it has executed at least one promissory note under which Debtor is the payee. Defendant denies any allegations in Paragraph 29 that are not expressly admitted.

30.     Defendant admits it signed the document attached to the Complaint as Exhibit 6. Defendant denies any allegations in Paragraph 30 that are not expressly admitted.

31.     Defendant admits that Plaintiff correctly transcribed Section 2 of Exhibit 6 to the Complaint in Paragraph 31. Defendant denies any allegations in Paragraph 31 that are not expressly admitted.

32.     Defendant admits that Plaintiff correctly transcribed Section 3 of Exhibit 6 to the Complaint in Paragraph 32. Defendant denies any allegations in Paragraph 32 that are not expressly admitted.

33.     Defendant admits that Plaintiff correctly transcribed Section 4 of Exhibit 6 to the Complaint in Paragraph 33. Defendant denies any allegations in Paragraph 33 that are not expressly admitted.

34.     Defendant admits that Plaintiff correctly transcribed Section 6 of Exhibit 6 to the Complaint in Paragraph 34. Defendant denies any allegations in Paragraph 34 that are not expressly admitted.

**D.     Allegations regarding the Term Note.**

35.     To the extent Paragraph 35 of the Complaint asserts a legal conclusion, no response is required, and it is denied. Defendant otherwise admits Paragraph 35 of the Complaint.

36.     Defendant admits that Plaintiff sent it a copy of Exhibit 7. Defendant admits that Plaintiff correctly transcribed an excerpt of Exhibit 7 in the third sentence of Paragraph 36 of the Complaint. Defendant denies any allegations in Paragraph 36 that are not expressly admitted.

37.     To the extent Paragraph 37 of the Complaint asserts a legal conclusion, no response is required, and it is denied. Defendant otherwise admits Paragraph 37 of the Complaint.

38.     Defendant is without sufficient information or knowledge to admit or deny the allegations in Paragraph 38 of the Complaint and, therefore, denies them.

39.     Defendant denies Paragraph 39 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

40.     Paragraph 40 of the Complaint seeks to incorporate the allegations in the preceding paragraphs and does not require a response. Defendant incorporates all prior denials herein by reference.

41.     Paragraph 41 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

42.     Paragraph 42 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

43.     Paragraph 43 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

44.    Paragraph 44 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

45.    Defendant denies Paragraph 45 of the Complaint.

46.    Defendant denies Paragraph 46 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (Turnover by HCRE Pursuant to 11 U.S.C. § 549(b))

47.    Paragraph 47 seeks to incorporate the allegations in the preceding paragraphs and does not require a response. Defendant incorporates all prior denials herein by reference.

48.    Paragraph 48 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

49.    Paragraph 49 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

50.    Paragraph 50 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

51.    Defendant admits that Plaintiff transmitted Exhibits 5 and 7 to the Complaint. Defendant lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 51 of the Complaint and, therefore, denies them.

52.    Defendant lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 52 of the Complaint and, therefore, denies them.

53.    Defendant denies Paragraph 53 of the Complaint.

54.     Defendant denies that Plaintiff is entitled to the relief requested in the prayer of the Complaint, including parts (i), (ii), and (iii).

## AFFIRMATIVE DEFENSES

55.     Plaintiff's claims are barred in whole or in part by the doctrine of justification and/or repudiation.

56.     Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

57.     Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

58.     Plaintiff's claims are barred in whole or in part by the doctrines of offset and/or setoff.

## JURY DEMAND

59.     HCRE demands a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38 and Federal Rule of Bankruptcy Procedure 9015.

60.     HCRE does not consent to the Bankruptcy Court conducting a jury trial and therefore demands such jury trial in the District Court.

## PRAYER

For these reasons, HCRE respectfully requests that, following a trial on the merits, the Court deny the relief Plaintiffs seeks through its Complaint, enter a judgment that the Plaintiff take nothing on the Complaint, and grant HCRE such other relief at law or in equity to which it may be entitled.

Respectfully submitted,

*/s/ Lauren K. Drawhorn*

Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email:  jason.rudd@wickphillips.com
        lauren.drawhorn@wickphillips.com

**COUNSEL FOR HCRE PARTNERS, LLC (N/K/A
NEXPOINT REAL ESTATE PARTNERS, LLC)**

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system upon counsel for the Plaintiff and all other parties requesting or consenting to such service in this adversary case.

Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
Ira D. Kharasch
ikharasch@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Facsimile: (310) 201-0760
*Counsel for Highland Capital Management, L.P.*

Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Fax: (972) 755-7110

*/s/ Lauren K. Drawhorn*

Lauren K. Drawhorn

---

Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

**COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | **Case No.: 19-34054-sgj11** |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adv. Pro. No. 21-03007-sgj** |
| vs. | § | |
| | § | |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC),** | § | |
| | § | |
| Defendant. | § | |

## NEXPOINT REAL ESTATE PARTNERS, LLC F/K/A HCRE PARTNERS, LLC'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT

Defendant NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP" or

"Defendant") files this First Amended Answer in response to Highland Capital Management L.P.'s

("Plaintiff" or "Debtor") Complaint for (I) Breach of Contract and (II) Turnover of Property of the

Debtor's Estate (the "<u>Complaint</u>") in the above-referend adversary proceeding (the "<u>Adversary Proceeding</u>") and respectfully states as follows:

**PRELIMINARY STATEMENT[1]**

1.      The first sentence of Paragraph 1 sets forth Plaintiff's objective in bringing the Complaint and does not require a response. To the extent a response is required, Defendant denies the allegations in the first sentence of Paragraph 1. The second sentence contains a legal conclusion that does not require a response. To the extent a response is required, Defendant denies the allegations in the second sentence of Paragraph 1.

2.      Paragraph 2 contains a summary of the relief Plaintiff seeks and does not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 2.

**JURISDICTION AND VENUE**

3.      Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers constitutional authority on the Bankruptcy Court to adjudicate this dispute. Defendant denies any allegations in Paragraph 3 that are not expressly admitted.

4.      Paragraph 4 states a legal conclusion that does not require a response. To the extent a response is required, Defendant admits the Bankruptcy Court has statutory jurisdiction over this Adversary Proceeding but denies that the Court has constitutional authority over this Adversary Proceeding. Defendant denies any allegations in Paragraph 4 that are not expressly admitted.

5.      Defendant denies that Plaintiff's breach of contract claim is a core proceeding. Defendant further denies that a turnover proceeding under 11 U.S.C. § 542(b) is the appropriate mechanism to collect a contested debt. Defendant admits that a turnover proceeding under 11

---

[1]    The headings herein are from Plaintiff's Complaint and are solely included for the Court's convenience.

U.S.C. § 542(b) is a statutorily core proceeding but denies that it is constitutionally core under *Stern v. Marshall*. Defendant does not consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding. Defendant denies any allegations in Paragraph 5 that are not expressly admitted.

6.      Paragraph 6 states a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that venue is proper in this District.

## THE PARTIES

7.      Defendant admits the allegations in Paragraph 7 of the Complaint.

8.      Defendant admits the allegations in Paragraph 8 of the Complaint.

## CASE BACKGROUND

9.      Defendant admits the allegations in Paragraph 9 of the Complaint.

10.      Defendant admits the allegations in Paragraph 10 of the Complaint.

11.      Defendant admits the allegations in Paragraph 11 of the Complaint.

12.      Defendant admits the allegations in Paragraph 12 of the Complaint.

## STATEMENT OF FACTS

**A.      The Demand Notes**

13.      Defendant admits it has executed at least one promissory note under which the Debtor is the payee. Defendant denies any allegations in Paragraph 13 that are not expressly admitted.

14.      Defendant admits that it signed the document attached to the Complaint as Exhibit 1. Defendant denies any allegations in Paragraph 14 that are not expressly admitted.

15.      Defendant admits that it signed the document attached to the Complaint as Exhibit 2. Defendant denies any allegations in Paragraph 15 that are not expressly admitted.

16.      Defendant admits that it signed the document attached to the Complaint as Exhibit 3. Defendant denies any allegations in Paragraph 16 that are not expressly admitted.

17.      Defendant admits that it signed the document attached to the Complaint as Exhibit 4. Defendant denies any allegations in Paragraph 17 that are not expressly admitted.

18.      Defendant admits that Plaintiff correctly transcribed Section 2 of Exhibits 1-4 to the Complaint in Paragraph 18.

19.      Defendant admits that Plaintiff correctly transcribed Section 4 of Exhibits 1-4 to the Complaint in Paragraph 19.

20.      Defendant admits that Plaintiff correctly transcribed Section 6 of Exhibits 1-4 of the Complaint in Paragraph 20.

**B.      Allegations regarding the Demand Notes**

21.      Defendant admits that Plaintiff sent it a copy of Exhibit 5. Defendant admits that Plaintiff correctly transcribed an excerpt of Exhibit 5 in the third sentence of Paragraph 21. Defendant denies any allegations in Paragraph 21 that are not expressly admitted.

22.      To the extent Paragraph 22 asserts a legal conclusion, no response is required, and it is denied. Defendant otherwise admits the allegations in Paragraph 22.

23.      Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 23 and, therefore, denies them.

24.      Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 24 and, therefore, denies them.

25.      Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 25 and, therefore, denies them.

26.      Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 26 and, therefore, denies them.

27.     Defendant lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 27 and, therefore, denies them.

28.     Defendant denies the allegations in Paragraph 28 of the Complaint.

**C.     The Term Note**

29.     Defendant admits that it has executed at least one promissory note under which Debtor is the payee. Defendant denies any allegations in Paragraph 29 that are not expressly admitted.

30.     Defendant admits it signed the document attached to the Complaint as Exhibit 6. Defendant denies any allegations in Paragraph 30 that are not expressly admitted.

31.     Defendant admits that Plaintiff correctly transcribed Section 2 of Exhibit 6 to the Complaint in Paragraph 31. Defendant denies any allegations in Paragraph 31 that are not expressly admitted.

32.     Defendant admits that Plaintiff correctly transcribed Section 3 of Exhibit 6 to the Complaint in Paragraph 32. Defendant denies any allegations in Paragraph 32 that are not expressly admitted.

33.     Defendant admits that Plaintiff correctly transcribed Section 4 of Exhibit 6 to the Complaint in Paragraph 33. Defendant denies any allegations in Paragraph 33 that are not expressly admitted.

34.     Defendant admits that Plaintiff correctly transcribed Section 6 of Exhibit 6 to the Complaint in Paragraph 34. Defendant denies any allegations in Paragraph 34 that are not expressly admitted.

**D.     Allegations regarding the Term Note.**

35.     To the extent Paragraph 35 of the Complaint asserts a legal conclusion, no response is required, and it is denied. Defendant otherwise denies Paragraph 35 of the Complaint.

36.     Defendant admits that Plaintiff sent it a copy of Exhibit 7. Defendant admits that Plaintiff correctly transcribed an excerpt of Exhibit 7 in the third sentence of Paragraph 36 of the Complaint. Defendant denies any allegations in Paragraph 36 that are not expressly admitted.

37.     To the extent Paragraph 37 of the Complaint asserts a legal conclusion, no response is required, and it is denied. Defendant otherwise admits Paragraph 37 of the Complaint.

38.     Defendant is without sufficient information or knowledge to admit or deny the allegations in Paragraph 38 of the Complaint and, therefore, denies them.

39.     Defendant denies Paragraph 39 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

40.     Paragraph 40 of the Complaint seeks to incorporate the allegations in the preceding paragraphs and does not require a response. Defendant incorporates all prior denials herein by reference.

41.     Paragraph 41 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

42.     Paragraph 42 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

43.     Paragraph 43 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

44.     Paragraph 44 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

45.     Defendant denies Paragraph 45 of the Complaint.

46.     Defendant denies Paragraph 46 of the Complaint.

**SECOND CLAIM FOR RELIEF**
**(Turnover Pursuant to 11 U.S.C. § 549(b))**

47.     Paragraph 47 seeks to incorporate the allegations in the preceding paragraphs and does not require a response. Defendant incorporates all prior denials herein by reference.

48.     Paragraph 48 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

49.     Paragraph 49 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

50.     Paragraph 50 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, Defendant lacks sufficient information or knowledge to admit or deny the allegations and, therefore, denies them.

51.     Defendant admits that Plaintiff transmitted Exhibits 5 and 7 to the Complaint. Defendant lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 51 of the Complaint and, therefore, denies them.

52.     Defendant lacks sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 52 of the Complaint and, therefore, denies them.

53.     Defendant denies Paragraph 53 of the Complaint.

54.     Defendant denies that Plaintiff is entitled to the relief requested in the prayer of the Complaint, including parts (i), (ii), and (iii).

## AFFIRMATIVE DEFENSES

55.     Plaintiff's claims are barred in whole or in part by the doctrine of justification and/or repudiation.

56.     Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

57.     Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

58.     Plaintiff's claims are barred in whole or in part because prior to the demands for payment, Plaintiff agreed that it would not collect the Notes upon fulfillment of conditions subsequent. Specifically, sometime between December of the year in which each Note was made and February of the following year, Nancy Dondero, as representative for a majority of the Class A shareholders of Plaintiff agreed with Mr. James Dondero, acting for Defendant, that Plaintiff would forgive the Notes if certain portfolio companies were sold for greater than cost or on a basis outside of Mr. Dondero's control. This agreement setting forth the conditions subsequent to demands for payment on the Notes was an oral agreement; however, Defendant believes there may be testimony or email correspondence that discusses the existence of this agreement that may be uncovered through discovery in this Adversary Proceeding.

59.     Defendant further asserts that each Note is ambiguous as a whole based on references to unspecified related agreements.

## JURY DEMAND

60.     Defendant demands a trial by jury of all issues so triable under Federal Rule of Civil Procedure 38 and Federal Rule of Bankruptcy Procedure 9015.

61.     Defendant does not consent to the Bankruptcy Court conducting a jury trial and therefore demands such jury trial in the District Court.

# PRAYER

For these reasons, Defendant respectfully requests that, following a trial on the merits, the Court deny the relief Plaintiffs seeks through its Complaint, enter a judgment that the Plaintiff take nothing on the Complaint, and grant Defendant such other relief at law or in equity to which it may be entitled.

Respectfully submitted,

/s/ Lauren K. Drawhorn
Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email:  jason.rudd@wickphillips.com
       lauren.drawhorn@wickphillips.com

**COUNSEL FOR NEXPOINT REAL ESTATE PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2021, a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system upon counsel for the Plaintiff and all other parties requesting or consenting to such service in this adversary case.

Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Facsimile: (310) 201-0760
*Counsel for Highland Capital Management, L.P.*

Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Fax: (972) 755-7110

*/s/ Lauren K. Drawhorn*
Lauren K. Drawhorn

```
                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION

                                    )   Case No. 19-34054-sgj-11
In Re:                              )   Chapter 11
                                    )
HIGHLAND CAPITAL                    )   Dallas, Texas
MANAGEMENT, L.P.,                   )   Thursday, June 10, 2021
                                    )   9:30 a.m. Docket
         Debtor.                    )
                                    )   MOTION TO COMPEL COMPLIANCE
                                    )   WITH BANKRUPTCY RULE 2015.3
                                    )   FILED BY GET GOOD TRUST AND
                                    )   THE DUGABOY INVESTMENT TRUST
                                    )   (2256)
_____     )
                                    )
HIGHLAND CAPITAL                    )   Adversary Proceeding 21-3006-sgj
MANAGEMENT, L.P.,                   )
                                    )
         Plaintiff,                 )   DEFENDANT'S MOTION FOR LEAVE
                                    )   TO FILE AMENDED ANSWER AND
v.                                  )   BRIEF IN SUPPORT [15]
                                    )
HIGHLAND CAPITAL                    )
MANAGEMENT SERVICES, INC.,          )
                                    )
         Defendant.                 )
_____     )
                                    )
HIGHLAND CAPITAL                    )   Adversary Proceeding 21-3007-sgj
MANAGEMENT, L.P.,                   )
                                    )
         Plaintiff,                 )   DEFENDANT'S MOTION FOR LEAVE
TO                                  )   TO AMEND ANSWER TO PLAINTIFF'S
v.                                  )   COMPLAINT [16]
                                    )
HCRE PARTNERS, LLC                  )
N/K/A NEXPOINT REAL                 )
ESTATE PARTNERS, LLC,               )
                                    )
         Defendant.                 )
_____     )

                        TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
                      UNITED STATES BANKRUPTCY JUDGE.
```

```
 1   WEBEX APPEARANCES:

 2   For the Get Good Trust       Douglas S. Draper
     and Dugaboy Investment       HELLER, DRAPER & HORN, LLC
 3   Trust:                       650 Poydras Street, Suite 2500
                                  New Orleans, LA  70130
 4                                (504) 299-3300

 5   For the Debtor:             Jeffrey Nathan Pomerantz
                                  PACHULSKI STANG ZIEHL & JONES, LLP
 6                                10100 Santa Monica Blvd.,
                                    13th Floor
 7                                Los Angeles, CA  90067-4003
                                  (310) 277-6910
 8
     For the Debtor:             John A. Morris
 9                                PACHULSKI STANG ZIEHL & JONES, LLP
                                  780 Third Avenue, 34th Floor
10                                New York, NY  10017-2024
                                  (212) 561-7700
11
     For the Official Committee  Matthew A. Clemente
12   of Unsecured Creditors:      SIDLEY AUSTIN, LLP
                                  One South Dearborn Street
13                                Chicago, IL  60603
                                  (312) 853-7539
14
     For James Dondero:          Clay M. Taylor
15                                BONDS ELLIS EPPICH SCHAFER
                                    JONES, LLP
16                                420 Throckmorton Street,
                                    Suite 1000
17                                Fort Worth, TX  76102
                                  (817) 405-6900
18
     For the NexPoint            Lauren K. Drawhorn
19   Parties:                     WICK PHILLIPS
                                  3131 McKinney Avenue, Suite 100
20                                Dallas, TX  75204
                                  (214) 692-6200
21
     Recorded by:                Michael F. Edmond, Sr.
22                                UNITED STATES BANKRUPTCY COURT
                                  1100 Commerce Street, 12th Floor
23                                Dallas, TX  75242
                                  (214) 753-2062
24

25
```

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-25   Filed 09/29/21   Page 59 of 213   PageID 53952
Document   Page 59 of 291

3

```
 1    Transcribed by:              Kathy Rehling
                                   311 Paradise Cove
 2                                 Shady Shores, TX  76208
                                   (972) 786-3063
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
              Proceedings recorded by electronic sound recording;
24                transcript produced by transcription service.

25
```

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 25    Filed 09/29/21    Page 60 of 213    PageID 53953

4

1               DALLAS, TEXAS - JUNE 10, 2021 - 9:44 A.M.

2               THE COURT:  All right.  Let me change my stacks here.

3   I will now hear what was Matter No. 1 on the docket, Highland

4   Capital, Case No. 19-34054.  We have a motion from the Dugaboy

5   and Get Good Trusts seeking compliance with Bankruptcy Rule

6   2015.3.

7          Who do we have appearing for the trusts this morning?

8               MR. DRAPER:  Douglas Draper, Your Honor.

9               THE COURT:  All right.  And for the Debtor this

10  morning?

11              MR. POMERANTZ:  Good morning, Your Honor.  Jeffrey

12  Pomerantz; Pachulski Stang Ziehl & Jones; on behalf of the

13  Debtor.

14              THE COURT:  All right.  Do we have any other parties

15  wishing to make an appearances?  These are the only parties

16  who filed pleadings, but I'll go ahead and ask if anyone wants

17  to appear for any reason.

18              MR. CLEMENTE:  Good morning, Your Honor.  It's Matt

19  Clemente at Sidley on behalf of the Committee.  I'm here.

20              THE COURT:  All right.  Thank you, Mr. Clemente.

21          All right.  Mr. Draper, how did you want to proceed?

22              MR. DRAPER:  I'd just -- I think the issue is

23  primarily a legal issue, Your Honor.

24              THE COURT:  Uh-huh.

25              MR. DRAPER:  So we've filed with the Court our

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 25   Filed 09/29/21   Page 61 of 213   PageID 53954

5

1    response to the Debtor's opposition, I have some comments I'd

2    I like to make, and just leave it at that.  I think -- as I

3    said, I believe the issue is purely a legal issue --

4              THE COURT:  Uh-huh.  Okay.

5              MR. DRAPER:  -- and can go from that.

6              THE COURT:  All right.

7              MR. DRAPER:  All right.  We are here -- thank you,

8    Your Honor.  Can I start?

9              THE COURT:  Yes, you may.

10              MR. DRAPER:  Thank you.  We're here before the Court

11   today on what should be a rather routine matter.  All I'm

12   asking the Court to do is to require the Debtor to do what it

13   should have done when the case was filed and is required

14   pursuant to Bankruptcy Rule 2015.3.

15       2015.3 uses the term "shall" and requires the Debtor to

16   file an official form -- and this is important, because I'm

17   going to come back to the official form -- with respect to the

18   value, operations, and profitability of each entity in which

19   the Debtor has a substantial or controlling interest.

20       The reports, the Rule says, shall be filed seven days

21   before the first meeting of creditors and every six months

22   thereafter.

23       Under 2015.3(d), I recognize a court may, after notice and

24   a hearing, modify the reporting requirement.  No request has

25   been made by counsel for the Debtor, who I will stipulate

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 25    Filed 09/29/21    Page 62 of 213    PageID 53955
Document    Page 61 of 291

6

1    knows the Rules, are experienced, and understand that the rule

2    existed the day they came into the case.  And quite frankly,

3    what we have now is, from what I can see, an intentional

4    decision not to file the report.

5        As the Court knows, this matter was brought before this

6    Court in February, when the confirmation hearing was held.

7    And if the Court will recall, Mr. Seery's comment was (a) it

8    slipped through the cracks; and (b) he implied that it would

9    be done.  That was February.  I had hoped, and I think

10   everybody had hoped, that Mr. Seery, Highland, and Debtor's

11   counsel would be so embarrassed by the fact that they didn't

12   file [sic] the rule that they would have either (a) filed

13   [sic] the rule; or (b) sought -- sought a waiver of the rule.

14   They did neither.

15       Now, let's -- let's go through the 2015.3(d).  There are

16   two items that are not exclusive, and so I recognize it.  The

17   first is that they can't do it, and second is with respect to

18   the information is publicly available.  If you look at the

19   cases that the Debtor has cited in support of their position

20   that courts have waived compliance with the rule, you'll note

21   that three of the four cases deal with first day motions when

22   in fact they ask for extensions of time to file their

23   schedule, Statement of Financial Affairs, and other things.

24   These are normal first day motions.  I understand the

25   extension in that case.  And quite frankly, those extensions

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 25    Filed 09/29/21    Page 63 of 213    PageID 53956

7

1    are -- fall into the "I can't do it."

2        The only excuse the Debtor has offered, other than their

3    response to date, was, oh, I forgot, or it slipped through the

4    cracks.  That is not a legitimate excuse.  It never has been

5    and never will be, and should not be countenanced by the

6    Court.

7        And so let's start with the after-the-fact excuses offered

8    by the Debtor.  The first is the bad guy defense -- *i.e.*,

9    Dugaboy is a Dondero entity; they're asking for this

10   information for nefarious purposes.  That has to -- that

11   should be completely disregarded by the Court.  This is a

12   systematic issue that neither you nor I nor the Debtor's

13   counsel put in the Code or put in the Rules.  It is a

14   requirement, it's systematic, and we, as counsel and people

15   acting on behalf of the estate and sort of people who oversee

16   the system, should insist that this be filed.  The bad guy

17   defense is not an excuse.  And quite frankly, this is

18   information that is required.

19       So what I'm asking for today is not gamesmanship.  I don't

20   think it is ever gamesmanship when you ask for the compliance

21   with a rule that says shall.  Again, it's systematic, and we

22   are here -- and I don't know why -- either the U.S. Trustee

23   was asleep at the switch or anybody else was asleep at the

24   switch -- that this matter hadn't been brought to the Court's

25   attention.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 1-25    Filed 09/09/21    Page 64 of 213    PageID 53957

8

1          So the word "shall" is not strained in any fashion.  It's

2     not limited in any fashion.  The word "shall" is absolute.

3          So, again, had -- was there some secret deal between the

4     Trustee -- U.S. Trustee and the Debtor?  I don't know.  That

5     may have been.  But quite frankly, --

6                THE COURT:  A secret deal?

7                MR. DRAPER:  -- the Code, in 2015 --

8                THE COURT:  Did you just use the term "a secret

9     deal"?

10               MR. DRAPER:  Well, some --

11               THE COURT:  What --

12               MR. DRAPER:  I'm not using the term.  What I --

13               THE COURT:  That's highly charged, that --

14    =          MR. DRAPER:  No, --

15               THE COURT:  -- choice of words.

16               MR. DRAPER:  What I mean, what I really mean is

17    sometimes we go to the U.S. Trustee and say, look, can we have

18    an extension?  Can we have -- can we do this a little bit

19    later?  And the U.S. Trustee, in fairness to them, basically

20    says, okay, you can do this or that.  I don't know if that

21    occurred in this case.  But quite frankly, what we have are 20

22    months of noncompliance.  And so I don't know if they said,

23    look, --

24               THE COURT:  Okay.

25               MR. DRAPER:  -- you don't have to file it now.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-5   Filed 09/29/21   Page 65 of 213   PageID 53958
Document   Page 65 of 291

9

1          THE COURT:  So you meant an informal deal, not secret

2     deal?

3          MR. DRAPER:  Yes.

4          THE COURT:  A secret deal, that sounds like something

5     nefarious.  Okay?  So, --

6          MR. DRAPER:  No, it is not intended in that -- it's

7     --

8          THE COURT:  Okay.

9          MR. DRAPER:  Judge, it's not intended in that

10    fashion.

11         THE COURT:  Okay.

12         MR. DRAPER:  This goes to my issue that it's

13    systematic.  It's a systematic compliance.

14       And let's also go the fact that the Bankruptcy Code

15    requires complete and open disclosure.  It does not matter who

16    or why compliance is requested.

17       The next objection is I waited too long.  And they offer

18    an excuse, Judge, we're going to go effective.  Let's look at

19    what the Code requires -- the rule requires.  It says it shall

20    be filed, it has to be filed at certain points, through the

21    effective date of a plan.  It doesn't say after the effective

22    date of a plan is filed or after the effective date of a -- of

23    a plan occurs, your compliance is not required.

24       And I'll point out something where you ruled against me,

25    and we've contrasted that in our motion -- in our opposition.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 01/09/24   Page 66 of 213   PageID 53959

10

 1   If you look at the examiner statute, which I know the Court

 2   has looked at and completely disagreed with my reading of it,

 3   it basically says after confirmation you don't have to do it.

 4   This statute doesn't say that.  This statute says you have to

 5   file these through the effective date of a plan.

 6       And so, you know, that "You waited too long" is really not

 7   a legitimate excuse.

 8       The next issue is -- and --

 9           THE COURT:  Well, on that point, --

10           MR. DRAPER:  And let's look at the cases.

11           THE COURT:  On that point, can I just ask, what is

12   the utility?  I mean, let's say we're one -- okay.  Let's say

13   we're one month away from the effective date.  Let's say we're

14   three months away from the effective date.  What is the

15   utility at this point?  There's a confirmed plan.  Now,

16   granted, it's on appeal.  But, you know, what -- what would

17   you --

18           MR. DRAPER:  Well, --

19           THE COURT:  What would you do with this information

20   at this point?  We have a confirmed plan.

21           MR. DRAPER:  Well, there are two responses to that.

22   First of all, the rule says you have to file it through the

23   effective date of a plan.  Somebody in rulemaking authority

24   made that determination.  And so it's not for you or I to

25   question.  That's the rule.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X   Document 79-15   Filed 10/06/21   Page 67 of 213   PageID 53960

11

1    The second is the utility may be for further actions in

2    the case that occur after the effective date.  We just don't

3    know.

4    And so the rule is designed to require things to be filed

5    --

6    THE COURT:  Wait.  What did that last statement mean,

7    --

8    MR. DRAPER:  -- through the effective date.

9    THE COURT:  -- for actions that might occur after the

10   effective date?

11   MR. DRAPER:  It may be --

12   THE COURT:  What does that mean?

13   MR. DRAPER:  After the effective date of a plan.

14   There may be some -- some matter that comes up before the

15   Court.  And I'll give you the best example --

16   THE COURT:  Well, --

17   MR. DRAPER:  -- of all of them.

18   THE COURT:  Okay.

19   MR. DRAPER:  If you look -- if you look at the form,

20   all right, and what I'd ask the Court to look at is -- I think

21   it's Exhibit E that's required on the form.  And what Exhibit

22   E requires is disclosure of information where one of the

23   subsidiaries has either paid or has decided -- has incurred a

24   liability to somebody who would have an administrative expense

25   against the Debtor.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-1   Filed 12/09/21   Page 68 of 213   PageID 53961

12

1          The utility of that post-effective date is important,

2     because post-effective date you'll be dealing with fee

3     applications and other things.  So the rule envisions

4     disclosure --

5                   THE COURT:  Okay, I -- say that again for me slowly.

6     How --

7                   MR. DRAPER:  Okay.

8                   THE COURT:  How could there be an administrative

9     expense --

10                  MR. DRAPER:  If you'll --

11                  THE COURT:  -- claim against the estate in your

12    scenario, again?

13                  MR. DRAPER:  Well, my scenario, if you look at

14    Exhibit E that's required in the form, --

15                  THE COURT:  Do I have that, Nate?

16                  MR. DRAPER:  -- it basically requires a disclosure.

17                  THE COURT:  Okay.  I don't know if I have it in my

18    stack of paper.  I --

19                  MR. DRAPER:  Well, let me read it to -- I can read it

20    to you, Your Honor.  It's easy.  Let me pull it up.

21         Exhibit E, "Describe any payment by the controlled

22    nondebtor entity of any claim, administrative expense, or

23    professional fee that have been paid or could be asserted

24    against the Debtor or the incurrence of any obligation to make

25    such payments, together with the reason for the entity's

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 09/07/21   Page 69 of 213   PageID 53962

13

1   payment thereof or the incurrence of any obligation with

2   respect thereof."

3       That is clearly a post-effective date issue that the Court

4   should be concerned about, all parties should be concerned

5   about, and so if that occurred, then everybody needs to know

6   about it.

7       So E envisions something that is absolutely after the

8   effective date that will be -- has a utility after the

9   effective date.

10      Let's look at B.  Again, something that may have something

11  to do with after the effective date.  That deals with tax-

12  sharing agreements and tax-sharing attributes.

13      So -- and then C, which also has something to do with

14  after the effective date and how things sort out through the

15  liquidation, is described claims between controlled debtor,

16  controlled nondebtor entity and any other controlled nondebtor

17  entity.

18      So there needs to be a disclosure of due-to's and due-

19  from's between the entities.  This is -- this is not secret

20  stuff.  This is stuff that transcends the effective date of a

21  plan.

22      And so when I focused on the rule, what I think the Court

23  really needs to look at for the utility of this is exactly

24  what the -- is required by a 2015.3 disclosure.

25      Does that answer the Court's question?

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 10/06/21   Page 70 of 213   PageID 53963

14

1    THE COURT:  Yes.

2    MR. DRAPER:  Now, my favorite excuse that's been

3  offered is really what I'll call the secret sauce dispute --

4  excuse, or the former lawyers for the Debtor.  Again, let's

5  break this down and let's look at the form.

6    What the form requires is there's nothing the Debtor's

7  former lawyers did or who were working for Mr. Dondero.  If

8  you look at Exhibit A that's required, is contains the most

9  readily-available balance sheet.  That's not a legal issue.

10  Statement of income or loss.  That's -- that's just an

11  accounting concept.  Statement of cash flows.  That's also an

12  accounting concept.  And statement of changes in shareholders

13  or partners equity for the period covered by the entire

14  report.

15    B again has nothing to do with the lawyers, is describe

16  the controlled nondebtor business entity's business

17  operations.

18    So the information that's here is purely accounting

19  information and it is not secret.

20    Let's, again, let's focus on A, which -- which I think

21  just deals with financial information.  The first one is

22  balance sheet.  All right.  They've argued that this tells

23  what the value -- what we think the value of an asset is.

24  That's not true.  A balance sheet may have a fair market

25  value.  A balance sheet may have a book value.  I don't know

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-1   Filed 05/07/21   Page 71 of 213   PageID 53964

15

1    what they have here.  But quite frankly, if you or I sell my

2    house, our house, we go to our agent and we say, hey, look,

3    agent, you know, this is my listing price.  That's my opinion

4    as to value.  It may not be somebody else's opinion as to

5    value.  And quite frankly, when somebody asks or wants to buy

6    an asset, what they come to, don't they ask, hey, what do you

7    want for it?

8         You know, book value does not equal value.  And I know the

9    Court has held -- has had before it many clients or many

10   debtors, and I've represented a lot of debtors, who think a

11   Bic pen that they have is not worth ten cents but is worth a

12   gazillion dollars.

13        So that issue doesn't go to any secret information.  The

14   statement of income doesn't go to secret information.

15   Statement of cash flows does not.  And changes in shareholders

16   does not.  There's no secret information.  The only person who

17   this may be kept away from, possibly, and that -- that, I

18   don't think applies, is a competitor who may want to look at

19   these.  And a court can fashion that relief and say, okay,

20   let's put this under seal.  If somebody signs a

21   confidentiality agreement, they can have access to this.

22        But this is purely accounting information.  It's nothing

23   more.

24        And the reference to trade secrets that the Debtor

25   attempts to make is just not true.  This is not a trade

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 9-1   Filed 10/06/21   Page 72 of 213   PageID 53965

16

1    secret.  There's no confidential research or development or

2    commercial information that's being disclosed.  And 9018 that

3    they cite is truly an evidentiary rule.  We're not -- this --

4    this requirement does not go to customers.  It does not go to

5    pricing.  It does not go to business processes.  It just goes

6    to financial information.

7        So the global argument that they're making is undercut

8    significantly by the -- by what is required under the rule.

9    I'm just asking for mere compliance with the rule, nothing

10   more.

11       And so, you know, what -- I still don't understand what

12   the issue is, why it hadn't been done.  And quite frankly,

13   again, this is systematic.  It has nothing to do with who is

14   requesting it, what is requesting it.  It should have been

15   done.  It should have been done probably by the U.S. Trustee.

16   You know, somebody -- you know, and quite frankly, I've been

17   in this case since December.  It was raised in February.  You

18   know, I don't understand why, from February to the time I

19   filed this motion, they didn't come in and either (a) file the

20   reports, which on their face appear to be benign; or (b) ask

21   for some reason other than, oops, I forgot.

22       And so I'd ask the Court to require compliance.  I don't

23   think the information here falls into any category of for

24   cause.  They can do it.  This -- and the cases -- any case

25   they cite does not support their proposition that it shouldn't

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 10/07/21    Page 73 of 213    PageID 53966

17

1    be done.

2         Does the Court have any questions for me?

3              THE COURT:  Well, I do.  My brain just constantly

4    goes to standing.  And remind me again, the trusts you

5    represent have each filed proofs of claim, correct?

6              MR. DRAPER:  Yes.  And they're objected to, --

7              THE COURT:  They are objected to.

8              MR. DRAPER:  -- just so the Court's aware.

9              THE COURT:  Okay.  Remind me again what the substance

10   of the claim is about.

11             MR. DRAPER:  The substance of the claim is I have a

12   -- I have a $17 million debt owed to me by Highland Select.

13   And it is our position that this Debtor is also liable for the

14   Highland Select debts through its general partner status,

15   through its comingling of things, and how these assets fit

16   together, between Highland Select, which is a hundred percent

17   owned by the -- ultimately owned by this Debtor.  So I'd --

18   again, the standing issue --

19             THE COURT:  And the debt is --

20             MR. DRAPER:  And I am also an equity holder.

21             THE COURT:  And the debt is pursuant to a note?

22             MR. DRAPER:  It's pursuant to a loan agreement

23   between my client and Highland Select.

24             THE COURT:  All right.  And was an administrative

25   expense filed by your client?

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-15   Filed 10/29/21   Page 74 of 213   PageID 53967

18

1          MR. DRAPER:  Not by my client.  No.  And I'm also an

2    equity holder in the Debtor that, when the plan goes

3    effective, I ultimately have, at best, a residual interest

4    when the Star Trek Enterprise returns.

5          THE COURT:  Okay.  And what is that residual

6    interest?  Remind me again.  Isn't it less than one percent --

7          MR. DRAPER:  After the --

8          THE COURT:  -- of a subordinated --

9          MR. DRAPER:  After all the class --

10         THE COURT:  Go ahead.

11         MR. DRAPER:  Right.  Well, after all the classes are

12   paid in full plus a hundred cents on the dollar -- get a

13   hundred cents on the dollar plus some interest factor, and the

14   -- there's another party who has an equity interest that's

15   ahead of me get paid, I get some -- some money.

16      Again, I have a residual interest.  It's very tangential.

17   And I'll be very frank to the Court and honest, I think

18   ultimately I will receive nothing under that residual

19   interest.

20      However, my -- the standing is not really an issue here.

21   Honestly, this is a systematic issue.  I've tried to make that

22   clear for the Court.  It's something that should be employed,

23   and who is asking for it is irrelevant.  The Code requires --

24   the Rules require it.  There is no excuse that they've given

25   that should absolve them of that.  And whatever excuse they've

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 10/06/21    Page 75 of 213    PageID 53968

19

1    given basically falls in -- falls in the face of what the rule

2    -- the official form requires.

3        I'm not asking for a variance of the official form.  I'm

4    asking that this Court not allow a "Oops, I forgot" or "It

5    slipped through the cracks" excuse.

6            THE COURT:  All right.  And who is the current

7    trustee of these trusts now?

8            MR. DRAPER:  My trusts?  Nancy Dondero is the trustee

9    of the Dugaboy Trust, and I think Grant Scott is the trustee

10   of the Get Good Trust.

11           THE COURT:  Okay.  I'm asking because we heard

12   earlier this week that Grant Scott has resigned from certain

13   roles.

14       All right.  Mr. Pomerantz, do you have evidence, --

15           MR. POMERANTZ:  Yes, Your Honor.

16           THE COURT:  -- or argument only?

17           MR. POMERANTZ:  Argument only, Your Honor.

18           THE COURT:  Okay.

19           MR. POMERANTZ:  As with -- as with many of the other

20   motions that have been filed with this -- in this case and has

21   burdened the Court's docket over the last several months, I

22   really can't help to wonder why we are here.

23       Eighteen months after the case was filed, after plan

24   confirmation, and with the effective date that's set to occur

25   soon, Dugaboy and Get Good, the family trusts, ask the Court

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-15   Filed 12/09/21   Page 76 of 213   PageID 53969

20

1    to compel the Debtor's compliance with 2015.3.  It reminds me

2    of the motion that Mr. Draper mentioned that he filed on the

3    eve of confirmation, the eve of confirmation, fourteen months

4    after the case had been filed, seeking an examiner.  And the

5    Court denied that motion without a hearing.

6        Now they're back again with, as Your Honor mentioned and

7    I'll get to in a little bit, with the same tangential

8    connection to the bankruptcy case and the same tenuous

9    standing that the Court has alluded to on several occasions,

10   including just a couple minutes ago.

11       It's clear that the motion, which is not supported by any

12   other creditor in the case and is actually opposed by the

13   Official Unsecured Creditors' Committee, is not about

14   financial transparency, as Mr. Draper would like Your Honor to

15   believe, but it's filed as a further litigation tactic to gain

16   access to information that Mr. Dondero would not be able to

17   obtain through discovery, who has tried to obtain through

18   other means, and that the Debtor believes will be used for

19   improper purposes.

20       One of the Movants, Dugaboy, is actually the holder of two

21   claims against the Debtor.  I guess Mr. Draper forgot about

22   his administrative claim, which really goes to the validity of

23   it.  One is the claim against the Select Fund, a subsidiary of

24   the Debtor, for which Mr. Draper says they should be liable,

25   including under an alter ego theory.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-15   Filed 12/01/21   Page 77 of 213   PageID 53970

21

1    Yes, Your Honor heard me right.  Dugaboy is saying that

2    the Debtor is an alter ego with a nondebtor entity.  One would

3    think that, given the recent disclosures and commencement of

4    litigation -- and I'm talking about the UBS litigation -- that

5    Mr. Dondero would be the last one to raise alter ego.  In any

6    event, that claim is disputed.

7    The second claim is an administrative claim that Mr.

8    Draper filed on account of their 1.71 percent interest in

9    Multistrat, saying they were damaged by decisions Mr. Seery

10    made by selling certain life insurance policies in the spring

11    of 2020.

12    There is a theme here, Your Honor:  Claims that Mr. Seery

13    made decisions that harmed -- in this case -- Dugaboy's 1.71

14    percent interest.

15    The claim has no merit.  The Debtor will contest it.  But

16    even if it was allowed, the claim would be paid a hundred

17    cents on the dollar under the plan.  And accordingly, the

18    information under 2015.3 is not relevant.

19    Get Good filed a claim which alleges they may have a claim

20    from its limited partnership interest in the Debtor.  But for

21    the record, Get Good is not a limited partner of the Debtor.

22    So, how did we get here, Your Honor?  The Dondero entities

23    sandbagged the Debtor by raising the issue for the first time

24    during the confirmation trial.  Not in their briefs, not in

25    communications to the Debtor in advance of the confirmation,

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 79-15    Filed 12/20/21    Page 78 of 213    PageID 53971

22

1    but while the Debtor had its witness on the stand.

2        And why did they do it that way?  Because they wanted to

3    be able to argue, and they did argue to Your Honor, that the

4    Court couldn't confirm the plan because the Debtor did not

5    comply with Rule 2015.3, was in violation of 1129(a)(2), and

6    the Court could not confirm the plan.

7        Of course, the Court rejected that argument.  And when the

8    Debtor entity -- when the Dondero entities raised it as a

9    reason for Your Honor to enter a stay pending appeal, Your

10   Honor commented that that claim bordered on frivolous.  And of

11   course, that issue has been raised to the Fifth Circuit as one

12   of the reasons to overturn Your Honor's confirmation order.

13       And why are the Dondero entities persisting now in their

14   effort to obtain disclosure?  It's because they're desperate

15   to obtain financial information about the Debtor because they

16   want to become involved in the Debtor's future asset

17   dispositions at the nondebtor affiliates and they want to get

18   information.

19       As Your Honor will recall, Mr. Dondero filed a motion in

20   January asking for this Court to require the Debtor to bring

21   affiliated -- affiliated entity asset sales to the Court.  The

22   Debtor opposed the motion, and before the hearing it was

23   withdrawn.

24       Your Honor has heard testimony from Mr. Seery throughout

25   the case that Mr. Dondero previously interfered with the

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-15   Filed 12/09/21   Page 79 of 213   PageID 53972

23

1   Debtor's asset sales and that -- and on that basis, the Debtor

2   was not comfortable including Mr. Dondero in sale processes.

3   And I'm not talking about the AVYA and the SKY stock from the

4   CLO funds, but rather certain transactions regarding SSP and

5   OmniMax which were subject to a motion made by, I believe, the

6   Funds or the Advisors -- I get them confused sometimes --

7   accusing the Debtor of mismanaging the CLOs.  And if Your

8   Honor recalls, Your Honor denied that motion based upon a

9   directed verdict.

10       So, having been rebuffed by the Debtor in its attempts to

11   obtain financial information that they're not entitled to, the

12   trusts have one last effort.  Press 2015.3 arguments, because,

13   of course, they're very interested in the integrity of the

14   process, in the institution, in the following of the

15   Bankruptcy Code.  That is exactly what their motivation is.

16       But there's yet another reason, Your Honor, the Debtor

17   believes Mr. Dondero, through the trusts, is pursuing this

18   motion.  As Your Honor is aware, the Debtor recently

19   discovered some extremely troubling information regarding a

20   massive fraud involving a previous --

21       (Audio cuts out.)

22           THE COURT:  Uh-oh.

23           THE CLERK:  He froze up.

24       (Pause.)

25           THE COURT:  All right.  Mr. Pomerantz, you're frozen.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 12/09/21   Page 80 of 213   PageID 53973

24

1    Is everybody frozen, or is it just him?

2              MR. POMERANTZ:  There'll be some judicial estoppel.

3              THE COURT:  Okay.  Mr. Pomerantz?

4              MR. POMERANTZ:  Yes.

5              THE COURT:  You were frozen for about one minute.  So

6    I am sorry, --

7              MR. POMERANTZ:  Uh-huh.

8              THE COURT:  -- you're going to need to repeat the

9    past minute for me.

10              MR. POMERANTZ:  Just to check if you were listening,

11   Your Honor, what was the last thing you remember me saying?

12              THE COURT:  I was listening.

13              MR. POMERANTZ:  Okay.  So I will -- did you hear me

14   talk about Mr. Seery's testimony throughout the case?

15              THE COURT:  No.  No.

16              MR. POMERANTZ:  Okay.  I'll go back a paragraph

17   before.  Okay.  Okay.

18        And why are the Debtor -- why are the Dondero entities

19   persisting now in their effort to obtain disclosure?  It's

20   because the Dondero entities are desperate to try to obtain

21   financial information, information they would not otherwise be

22   entitled to under discovery rules, because they want to become

23   involved, he wants to become involved in the Debtor's asset

24   dispositions in the future regarding affiliated nondebtor

25   entities.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 79-15    Filed 12/59/21    Page 81 of 213    PageID 53974

25

1    If Your Honor will recall, Mr. Dondero made a motion in

2    January seeking an order from this Court requiring the Debtor

3    to bring to this Court asset sales from nondebtor affiliates.

4    The Debtor opposed the motion, and before the hearing on the

5    motion it was withdrawn.

6    Your Honor has heard testimony from Mr. Seery throughout

7    the case that Mr. Dondero previously interfered or tried to

8    interfere with the Debtor's asset sales, and on that basis the

9    Debtor was not comfortable inviting Mr. Dondero into its asset

10    sale processes.

11    And I'm not talking about the AVYA and SKY stock from the

12    CLOs, but rather certain transactions regarding SSP and

13    OmniMax, which were closed for fair value, which were subject

14    of a motion that the Advisors or the Funds -- and I often get

15    them confused -- that they made, accusing the Debtor of

16    mismanaging the CLOs.  And I'm sure Your Honor recalls.  Your

17    Honor denied that motion on a directed verdict basis.

18    So, having been rebuffed in their attempts to try to get

19    the information that they weren't entitled to, they're now

20    proceeding under 2015.3.  And, of course, Mr. Draper say he is

21    a protector of the process, the integrity of the system

22    demands it.  It has nothing to do with Mr. Dondero's

23    interests, of course, because Mr. Draper is just there to make

24    sure everything runs on time and everything is done according

25    to the law, notwithstanding the fact that the U.S. Trustee

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 79-15    Filed 12/09/21    Page 82 of 213    PageID 53975

26

1   hasn't brought this motion, notwithstanding the fact that the

2   Unsecured Creditors' [Committee] supports our position, and

3   notwithstanding the fact that not one creditor, not one

4   unaffiliated creditor, has asked this Court for that

5   information and relief.

6       There's yet another reason, Your Honor, the Debtor

7   believes that the trusts are pursuing this motion.  As Your

8   Honor is aware, the Debtor recently discovered some extremely

9   troubling information regarding a massive fraud involving a

10  previously-unknown entity called Sentinel Reinsurance.  And

11  that information is the subject of an adversary proceeding

12  filed by UBS, which Your Honor heard substantial information

13  about both in connection with hearings on that motion practice

14  and also at the UBS 9019 motion.

15      The Debtor believes that the 2015.3 motion is a veiled or

16  pretty transparent effort of Dondero trying to find out what

17  the Debtor knows and what the Debtor doesn't know and trying

18  to get the Debtor to go on record with information that later

19  in litigation they will use as a judicial estoppel.

20      Your Honor, that's not an appropriate predicate for the

21  motion.  Mr. Draper will deny that that's the reason, of

22  course, but I leave it for Your Honor to look at the

23  circumstances and make your own conclusions.

24      As the Court has mentioned many times, context matters,

25  and the Court should take this context into account in looking

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 12/16/21   Page 83 of 213   PageID 53976

27

1    at the motion and the requested relief.

2         In our opposition, we argue that the Court should either

3    waive the 2015.3 compliance, given the anticipated effective

4    date, or continue the hearing to September 1 for a further

5    status conference if the effective date doesn't occur.

6         The burden on the estate if it was required to comply with

7    2015.3 is significant, and this goes to the issue Your Honor

8    mentioned, that, really, what's the point at this stage of the

9    case?  There are more than 150 entities that arguably meet the

10   definition of substantial or controlling interest for which

11   the Debtor would be required to file reports under 2015.3.  As

12   the Court knows, the Debtor is down to 12 staff, 13 if you

13   include Mr. Seery.  And if those employees working with the

14   Debtor's financial advisors were required to devote the

15   necessary time and effort to prepare the reports, the time and

16   the cost it would take would be substantial.  The Debtor just

17   doesn't have the bandwidth to comply.

18        More importantly, Your Honor, as we mention in our

19   opposition, Mr. Seery and the board are extremely concerned

20   with the quality of information it has received from the

21   Debtor's employees who have since been terminated by the

22   Debtor and now most of them are working for Mr. Dondero and

23   his related entities in one form or another.  It's not just

24   the lawyers, as Mr. Draper says.  It's the financial advisors,

25   who, in other contexts, and you'll hear a little later, are

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 12/09/21    Page 84 of 213    PageID 53977

28

1    coming up with new information, new defenses on notes, et

2    cetera.  The Debtor has no confidence that the information in

3    its records is accurate from a financial perspective or from a

4    legal perspective.

5        As I mentioned, the Court is aware of the Sentinel cover-

6    up.  And uncovering just the facts regarding Sentinel was a

7    very difficult process and required the Debtor to essentially

8    conduct discovery against itself.  It just couldn't rely on

9    its information.  So conducting the diligence that would be

10   required to provide accurate information for 150 entities,

11   intercompany claims, administrative claims, back and forth,

12   due-to's, due-from's, tax issues, all the stuff required by

13   the forms would be an extremely arduous task.  It would take

14   millions of dollars of forensic accounting.  And it wouldn't

15   -- and for what purpose?  There is no purpose.

16       In addition, Your Honor, to waiving filing the reports,

17   2015.3 also allows the Court to modify the reports requirement

18   for cause when the debtor is not able, in making a good faith

19   effort, to comply with the requirements.  Your Honor, in this

20   case, cause is clearly established under 2015.3.

21       Dugaboy spends a lot of time in their reply attacking the

22   cases that the Debtor cites in its opposition.  While the

23   facts in those cases are different from the case here, they

24   all share something in common which is the key point:  All of

25   the cases involve a waiver of the 2015.3 requirement for plans

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 12/22/21    Page 85 of 213    PageID 53978

29

1  that will be confirmed or will soon become effective.

2       Mr. Draper doesn't contest that this Court has the power

3  to waive.  He says, well, those requests were made in the

4  first 30 days of the case or in the initial part of the case.

5  But they all granted relief where the effective date -- where

6  either the confirmation date occurred and they were waiting

7  for the effective date, or the confirmation case was -- was

8  pending.

9       And Your Honor, we would ask the Court to treat the

10 Debtor's opposition as a motion to waive the requirement under

11 2015.3.  We could file a separate motion after this hearing.

12 It would be a waste of time.  But we would ask Your Honor,

13 treat our opposition as a motion.

14      Dugaboy spends the rest of its time, in the papers and its

15 argument that Mr. Draper made, challenging several arguments,

16 other arguments the Debtor makes in its opposition.  First,

17 they argue that there is no deadline for seeking compliance

18 and that the insinuation that we made that this is

19 gamesmanship is off base.  I'll acknowledge, Your Honor,

20 2015.3 does not contain a deadline for a party seeking

21 compliance.  But as I said before, context matters.  And given

22 how this motion has come to be before your court, I will leave

23 it for Your Honor to determine which party is the true one

24 playing games here.

25      Second, Dugaboy argues that there's nothing confidential

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 01/09/24    Page 86 of 213    PageID 53979

30

1    in any of the information required to be filed in the 2015.3

2    reports and that the disclosure of information will facilitate

3    interest in the assets and maximization of the Debtor's

4    assets.   Twenty months into this case, Your Honor, no party

5    other than Mr. Dondero or his related entities has complained

6    to the Court that the Debtor is not being transparent or

7    forthcoming.

8         And there's good reason for that.  Even during the early

9    stages of this case, when the Debtor and the Committee had

10    their differences, the Debtor was entirely forthcoming with

11    information about its assets, nondebtor affiliates, and

12    strategy for maximizing assets of the Debtor and its

13    affiliated entities.  That collaborative effort continues

14    today, and I suspect is one of the reasons that the Committee

15    has joined in the Debtor's opposition here.

16         Similarly, the Debtor's nondebtor affiliates have

17    transacted business with third parties postpetition.  The

18    Debtor has provided information to those parties as

19    appropriate, subject to nondisclosure agreement, and several

20    successful processes have been run that have maximized value.

21         And just to make clear, Your Honor, we do not believe that

22    Mr. Dondero or his related entities signed a nondisclosure

23    agreement that they would comply with the obligations.  So we

24    have no interest and no desire, unless ordered by the Court,

25    either in this context or another context, to provide Mr.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 79-15    Filed 10/06/21    Page 87 of 213    PageID 53980

31

1    Dondero or his related entities with information that the

2    Debtor believes would prejudice its ability to monetize

3    assets.

4        The alleged transparency that Mr. Draper and the trusts

5    seek is not borne out of a desire to open the playing field

6    and make it level and put financial information in the public

7    domain for the good of the case.  It's about getting access to

8    information that the Debtor, in the exercise of its business

9    judgment -- should not be disclosed.

10        Lastly, Mr. Draper again, during oral argument, harped on

11    Mr. Seery's testimony that the reason the reports were not

12    filed is that they fell through the cracks.  It's misleading.

13    He also stated that Mr. Seery said they would file the

14    reports.  I've looked at the testimony.  That's not what he

15    said.  But he did say at confirmation that it slipped through

16    the cracks.  No doubt.  That's in the transcript.

17        And yes, the Debtor stands behind the fact that, in the

18    months leading to the confirmation hearing, neither Mr. Seery

19    nor the Debtor's professionals even thought about 2015.3.

20        But Your Honor, it's what has happened since that

21    justifies the Debtor's request for a waiver.  The plan is soon

22    to become effective.  As I said, the Debtor is down to 12

23    employees, who could not possibly prepare this information

24    without substantial time and effort.  Their effort and their

25    time should be focused on monetizing assets that will put

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 0179-1t   Filed 11/22/21   Page 88 of 213   PageID 53981

32

1    money in creditors' pockets, hopefully sooner than later.

2         And on top of that, given the massive fraud that

3    management has uncovered, and continues to uncover information

4    to this day, Your Honor, on matters separate from the Sentinel

5    matter -- every week, we are finding out new information that

6    has not been made public that causes us real concern, and at

7    the appropriate time that information will be brought before

8    the Court -- the Debtors simply can't rely on that

9    information.  And to be required to go through the effort to

10   put that information out in the public record so Mr. Dondero

11   can later say that the Debtor was judicially estopped, or use

12   that information for an ulterior purpose or a litigation

13   strategy, just does not make sense.

14        Based upon the foregoing, Your Honor, we would ask that

15   the Court deny the motion and grant the Debtor a waiver of the

16   2015.3 requirements.

17        Does Your Honor have any questions?

18             THE COURT:  I do not think so.  Well, I just -- am I

19   correct in remembering the Debtor had somewhere around 75

20   employees at the beginning of this case?  And I didn't know it

21   was down to 12.  I knew it was down very low.  But that's what

22   we're talking about?

23             MR. POMERANTZ:  Yeah, that -- that sounds about

24   right, Your Honor.

25             THE COURT:  Okay.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 08/30/21   Page 89 of 213   PageID 53982

33

1          MR. POMERANTZ:  And I should mention, you know, I was

2     there at the beginning.  I was there before the board.  The

3     first couple months of the case, it was extremely difficult to

4     get the Debtor's employees focused on trying to get the

5     information for the 2015.3.  They did not want that

6     information disclosed.  And it's sort of a -- sort of a little

7     ironic that now they're here asking for disclosure.

8          But, look, we're not going to walk away from the fact

9     that, yeah, it slipped through the cracks.  After the board

10    took over, Your Honor has heard many times what they did, the

11    efforts they went to.  If the U.S. Trustee had approached us,

12    if Mr. Dondero had approached us early on, we would have

13    figured out a way to address that and deal with that.  The

14    fact of the matter, it wasn't.  The fact of the matter, it was

15    brought up as a litigation tactic on confirmation, to defeat

16    confirmation of the plan.  And as I mentioned, for the

17    reasons, it's being used as a tactic now as well.

18          THE COURT:  All right.  Thank you.

19          MR. DRAPER:  Your Honor, I -- can I -- can I make a

20    few comments?

21          THE COURT:  No, not --

22          MR. DRAPER:  I'll be short.

23          THE COURT:  Not yet.  Mr. Clemente, --

24          MR. DRAPER:  Okay.

25          THE COURT:  -- I neglected to mention when I was

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 03/02/41    Page 90 of 213    PageID 53983

34

1    taking appearances, you filed a joinder on behalf of the

2    Committee with regard to --

3                MR. CLEMENTE:  That's correct, Your Honor.

4                THE COURT:  So I need to hear from you next, and then

5    I'll circle back to Mr. Draper.

6                MR. CLEMENTE:  That's correct, Your Honor.  And just

7    for the record, Matt Clemente from Sidley Austin.

8                THE COURT:  I should say, a joinder in the

9    opposition.  That was a confusing statement I just made.

10               MR. CLEMENTE:  Yeah, that's correct, Your Honor.

11               THE COURT:  Uh-huh.

12               MR. CLEMENTE:  And so I will be very brief, because

13   Mr. Pomerantz was obviously very thorough.  But just to echo

14   what he said, you know, the Committee is comfortable with the

15   information that it has received.  And as Your Honor knows, we

16   haven't been and won't be shy about coming to the Court if we

17   felt that that was not the case.

18        You know, we obviously had our issues early on in the

19   case, including with respect to getting information from the

20   Debtor.  But, again, the Committee, you know, has been

21   comfortable with the information that it's received from the

22   Debtor.

23        Therefore, at this point, Your Honor, from the Committee's

24   perspective, there doesn't seem to be any bona fide purpose to

25   making the Debtor go through the cost and the expensive effort

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 01/13/22    Page 91 of 213    PageID 53984
Document    Page 135 of 191

35

1    that Mr. Pomerantz said would be required to create the Rule

2    2015.3 reports.  And, again, I -- without casting aspersions,

3    it would suggest, based on previous activity, that there's

4    really only a nefarious purpose for what is being pressed

5    before Your Honor today.

6        So, Your Honor, again, we support the Debtor's position.

7    I absolutely agree with Mr. Pomerantz's arguments.  We would

8    request that Your Honor, you know, enter the relief that the

9    Debtor is requesting today.

10            THE COURT:  All right.  And Mr. Clemente, I just --

11            MR. CLEMENTE:  Yes?

12            THE COURT:  I just want to seal in my brain the

13    context that I think applies here.  The January 2020 corporate

14    governance settlement order.  In there, we all know there were

15    lots of protocols about lots of things, but one of them or a

16    set of the protocols dealt with transfers of assets in these

17    nondebtor subs or entities controlled by the Debtor.  And, of

18    course, Mr. Pomerantz alluded to this, but I'm just going to

19    make sure I'm crystal clear on what I remember.  You know, the

20    whole -- well, it was a protocol that the Committee would have

21    to be consulted on transfers of assets of those nondebtor

22    subs, those nondebtor controlled entities, and, you know,

23    there was a discussion that 363 doesn't apply, of course, to

24    nondebtor assets, and you could really argue all day, even if

25    it did apply, about whether these are ordinary course or non-

1   ordinary course because of the business Highland is in.  But

2   the Debtor negotiated with you and your clients:  We're going

3   to have full transparency to let you all get notice of

4   transfers of assets of these subs, and you could even object

5   and bring a motion.  I mean, you can file some sort of

6   pleading, even though we were not so sure 363 under any

7   stretch might apply.

8       Am I correctly restating the context that -- you know, Mr.

9   Pomerantz alluded to it, but I just want to make sure I'm

10  clear and the record is clear.

11      MR. CLEMENTE:  Your Honor, you are -- you are

12  absolutely correct.  There's a very complex set of protocols

13  that we painstakingly negotiated with the Debtor that had

14  different categories depending upon the asset --

15      THE COURT:  Uh-huh.

16      MR. CLEMENTE:  -- and the Debtor's ownership and its

17  relationship with respect to the nondebtor entities or the

18  related parties.  That required the Debtor to come to the

19  Committee in certain sets of circumstances and explain a

20  potential transaction and get the input from the Committee,

21  and either the Committee could consent to the transaction, or

22  if the Committee did not consent to the transaction, the

23  Debtor could seek relief from the Court.

24      Your Honor will remember that, in fact, one of the

25  hearings we had with respect to the monies that were placed in

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 08/09/21   Page 93 of 213   PageID 53986

37

1   the Court registry arose out of the protocols.  So the

2   protocols worked from that perspective in requiring the Debtor

3   to come to the Committee, allow the Committee to make an

4   evaluation, and then the Debtor would make a decision from the

5   perspective of how it wished to proceed.

6       So, Your Honor is absolutely correct.  That was all part

7   of the governance settlement that was negotiated back in

8   January.  And from the Committee's perspective, again, it

9   hasn't always been lemon water and rose petals, but we believe

10  that those protocols worked, and worked to provide the

11  Committee with information so it could appropriately evaluate

12  what the Debtor was doing.

13          THE COURT:  All right.  So I'm correct, you would

14  say, in thinking there was a lot of transparency built in?  It

15  didn't always work smoothly in the beginning, and as we know,

16  there were document production requests, many of them from the

17  Committee.  That all came to a head last July, with more

18  protocols put in place.  But lots of transparency was

19  negotiated by the Committee with regard to all of these

20  controlled entities and subs?

21          MR. CLEMENTE:  That was a critical, Your Honor, that

22  was a critical component of the governance settlement.

23          THE COURT:   Okay.

24          MR. CLEMENTE:  Because that was obviously the impetus

25  for us wanting that governance settlement, so we could get

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 179-15    Filed 08/09/21    Page 94 of 213    PageID 53987

38

1    that transparency.

2         So, to answer your question, Your Honor, yes, the

3    protocols served that function of providing the Committee with

4    information on transactions that the Debtor was proposing to

5    enter into.

6              THE COURT:  Okay.  And of course, there was a waiver

7    of the privilege -- I don't know if that's the word; I guess

8    that is the right word -- with regard to possible estate

9    causes of action.  Maybe I'm getting into something unrelated.

10   Maybe I'm not.  But that was part of the protocol, too, right,

11   the Debtor would waive its --

12             MR. CLEMENTE:  That's correct, Your Honor.

13             THE COURT:  -- privilege with regard to --

14             MR. MORRIS:  Your Honor, I apologize for

15   interrupting.  This is John Morris from Pachulski Stang.  I

16   just want to recharacterize that a bit.

17             THE COURT:  Okay.

18             MR. MORRIS:  It's not a waiver of the privilege.  We

19   agreed to share the privilege --

20             THE COURT:  Share the privilege.  Okay.

21             MR. MORRIS:  -- with the Debtor.  The Debtor --

22             MR. CLEMENTE:  I --

23             MR. MORRIS:  I'm sorry to -- sorry to correct you,

24   but it's a --

25             THE COURT:  Well, no, --

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 79-15    Filed 08/06/21    Page 95 of 213    PageID 53988

39

1          MR. MORRIS:  -- very important point.

2          THE COURT:  -- that's why I hesitated on that word.

3   I wasn't sure if that was the word, the concept.

4          MR. MORRIS:  There's no waiver.

5          THE COURT:  Okay.  Okay.  I'm not always --

6          MR. CLEMENTE:  That is -- and that is correct, Your

7   Honor.

8          THE COURT:  Okay.

9          MR. CLEMENTE:  Mr. Morris is correct.  As are you.

10         THE COURT:  Okay.  So I'm asking you, is all of this

11  protocol that was in place, I mean, is it reasonable for me to

12  think maybe that's the reason you all never pressed the 2015.3

13  issue, because you were getting a full look, as best you could

14  tell, and more?  You were getting more information, perhaps,

15  than these reports would have provided, even.  Is that fair

16  for me to think?

17         MR. CLEMENTE:  It is fair for you to think that, Your

18  Honor.  We viewed the protocols as our mechanism to get the

19  information that was necessary for the Committee to evaluate

20  the transactions that the Debtor wanted to engage in.  And so

21  we were looking to the protocols, and in fact, I think the

22  protocols were very broad in certain respects, and we were not

23  thinking about the Rule 2015 reports, nor would we have said

24  that that would have been a substitute for negotiating those

25  protocols and implementing them.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 9-15   Document   Filed 04/09/21   Page 96 of 213   PageID 53989

40

1          THE COURT:  Uh-huh.

2          MR. CLEMENTE:  So that's how the Committee was

3     looking at it, Your Honor.

4          THE COURT:  Okay.  All right.  Well, okay.  Mr.

5     Draper, I'm going to come back to you.  You get the last word

6     on that.

7          MR. DRAPER:  Thank you.  First of all, the answer is

8     yes, there are extensive protocols between the Debtor and the

9     Committee.  I one hundred percent agree with you.  And the

10    other point I'd make with that is this information is a

11    scaled-down version of what they're giving the Committee on a

12    regular basis.  So the argument that it would take hundreds of

13    man hours and millions of dollars to do that is absolutely not

14    true.  This information, in large measure, even vaster

15    portions of it have already been given to the Committee.

16    Number one.

17       Number two, we as lawyers are literalists --

18          THE COURT:  But I presume not in this format.  I

19    presume not in the format of filling out the form A through E

20    exhibits.  I mean, maybe it's an email.

21          MR. DRAPER:  Well, --

22          THE COURT:  Maybe it's a phone call.

23          MR. DRAPER:  -- it's not in a form -- no, there is --

24    there is -- they both have financial advisors who I'm sure

25    you're going to see whopping fee applications from who have

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 79-15   Filed 11/09/21   Page 97 of 213   PageID 53990

41

1    pored through all of this.  My bet, and I'd bet big dollars on

2    this, is that financial -- balance sheets are given to them on

3    a regular basis, statements of financial information for

4    subsidiaries and changes in cash flow are given to them.

5    Otherwise, there's no way the Creditors' Committee could

6    monitor what's going on and what's happening.

7        So, really, this is -- this is not a phone call thing.

8    There is real financial data that's being given that is

9    available and can be given on a scaled-down basis.

10       My real point of this is we as lawyers are literalists

11   until it suits our purposes not to be literalists.  There is

12   no exception in 2015.3 for information being given to a

13   creditors' committee.  In fact, when you look at 2015.3, it

14   basically figures there is information going to a creditors'

15   committee.  This is for the others who don't have access to

16   that information.

17       And the interesting part of that is, as the Court's aware,

18   the Bankruptcy Code was amended that if I had gone to the

19   Creditors' Committee and made a request as a creditor, I

20   probably have a right to get even more information than 2015.3

21   allows me to get.

22       Next, which is the giant smokescreen.  We're basically

23   dealing now with the gee, Mr. Dondero's a bad guy; gee, they

24   want this information because they want to uncover what we

25   know.  That's just not true with respect to these reports.  If

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 04/29/24   Page 98 of 213   PageID 53991

42

1    you look at what the reports do, the reports start from the

2    day that the case was filed and ask for changes in financial

3    condition from the day the case was filed going forward.  It

4    is all postpetition in its effect.  And to the extent they've

5    uncovered things that are incorrect in the Debtor's schedules,

6    the truth is the amendment of the schedules is warranted.

7    2015.3 does not deal with prepetition activity in any way,

8    shape, or form.  They are balance sheets that ask for -- or

9    changes in financial condition that go from the filing of the

10   case, or seven days before, and require reports every six

11   months.

12       So this giant smokescreen that there's a massive fraud,

13   there's all this other stuff that's been uncovered, is just

14   not true.  It is an attempt to cover up or give an excuse that

15   is unwarranted with respect to why they haven't done the

16   2015.3.

17       Next point.  There is no secret stuff that's being done.

18   There's no valuation that we're asking for.  2015.3 asks for

19   balance sheet information.  So, in fact, if they own ten

20   pieces of property, 2015.3 would bind them together in a

21   balance sheet and say, this is the total real estate that we

22   have.  If an entity has 15 entities under its umbrella, it

23   would have a balance sheet entry.  Assets and liabilities.

24   It's not broken down.  The assets are probably at book value

25   or some sort of mark to market.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-15   Filed 12/03/21   Page 99 of 213   PageID 53992

43

1    But honestly, this is -- there is no way that this

2    information gives anybody any benefit in terms of any bidding.

3    And the other point that's problematic is anybody who

4    wants to buy these assets would walk in and say, look, I want

5    a data room, let me look at this.  If what Mr. Pomerantz is

6    saying, which I don't understand, is that we're not going to

7    let a Dondero entity buy an asset, notwithstanding the fact

8    that they may pay more for the asset than somebody else would,

9    I think that's -- I have a huge problem with that.  We're here

10   for monetization of assets.  We're here to maximize the value.

11   And if, in fact, somebody walks in that may be a tangentially-

12   related Dondero entity and is willing to pay more, they should

13   be thrilled with that fact, not jettison it or disregard it.

14   That is -- their job is to maximize value, not minimize value

15   through a controlled sale process.

16   Again, I'm looking at the Code section.  I'm looking at

17   2015.3.  It basically says what it says.  It's designed to

18   give basic financial information.  It has nothing to do and

19   offers no disclosures of anything Mr. Pomerantz has thrown up

20   before the Court or that Mr. Dondero or any of his entities or

21   people are alleged to have done.

22   And the last is, if in fact there's financial information

23   that's incorrect in any of these entities, I question what the

24   Debtor's financial advisors have been doing for the last

25   months.  Honestly, they should be poring over these books.  If

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document Document   File Page 49 of 91 Page 100 of 213   PageID 53993

44

1   they find a problem, they should correct 'em and address them.

2   And so there's no basis under the Code.  We've -- what's been

3   given to you and what their argument is is an excuse for not

4   doing something they should have done.  It can't be couched as

5   to who's asking.  It is systematic in nature.  And what's been

6   thrown up before the Court in Mr. Pomerantz's arguments are

7   just not true when you look at what the form requires.

8        THE COURT:  You know, I can't remember ever being in

9   a contested matter involving this rule.  And I was kind of

10   pondering before coming out here, I wonder why that is.  And,

11   you know, I'm thinking the vast majority of our complex

12   Chapter 11s that involve many, many, many entities, they all

13   file.  Okay?  You know, they're kind of a different animal, if

14   you will, from Highland.

15        You know, we know how it normally works.  You've got maybe

16   the mothership, holding company, and many, many subs, and

17   you've got asset-based lending, right, where, you know, maybe

18   the majority of the entities in the big corporate complex are

19   liable, so you just put them all in.  Okay?

20        We don't have -- I have not experienced a lot of Chapter

21   11s where you have basically just the mothership and then you

22   keep subs and lots of affiliates out.  Okay?  So I'm thinking

23   that's one reason.

24        Another thing, I can't remember how old this rule is.

25   Does anyone -- can anyone educate me?  How long has this rule

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 29    Filed 09/07/21    Page 101 of 213    PageID 53994

45

1    been around?

2           MR. DRAPER:  Your Honor, this is Douglas.  I think it

3    came in after Lehman Brothers.  And it came --

4           THE COURT:  Uh-huh.

5           MR. DRAPER:  It was put in to deal with off-balance

6    sheet items.

7           THE COURT:  Uh-huh.

8           MR. POMERANTZ:  2008, Your Honor.

9           THE COURT:  2008?

10          MR. DRAPER:  Which is exactly right.  It --

11          THE COURT:  Okay.

12          MR. DRAPER:  Yep.

13          THE COURT:  Okay.  So that, that's another reason.

14   Because I was thinking like *Enron* days.  You know, that's a

15   big giant, a gazillion entities, and, of course, a whole huge

16   slew of them were all put in.

17       So, there's not a lot of case law.  And you know, maybe

18   there are other situations where a judge ruled on this issue

19   but without issuing an opinion.  So, anyway, that's neither

20   here nor there.

21       Mr. Draper, you've urged me to focus on the literal

22   wording of the rule.  It's "shall" language.  You've talked

23   about essentially the integrity of the system as being the

24   reason for the rule.  You've told me not to accept the

25   Debtor's "bad guy" defense, you know, as an excuse.  This is

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 170    Filed 09/09/21    Page 102 of 213    PageID 53995

46

1   just Dondero, you know, wanting the information, and therefore

2   I should discount the motivations here.

3       But let me tell you something that is nagging very, very

4   much at me, and I'll hear whatever response you want to give

5   to this.  I just had an all-day hearing a couple of days ago,

6   and this involved the Charitable DAF entities and a contempt

7   motion the Debtor filed because those entities went into the

8   U.S. District Court upstairs in April and filed a lawsuit that

9   was all about Mr. Seery's alleged mismanagement with regard to

10  HarbourVest.

11      So what I'm really worried about is the idea that your

12  client wants this information to cobble together a new

13  adversary alleging mismanagement.  How can I not be worried

14  about that?

15          MR. DRAPER:  It's real simple.  Because the

16  information that's here doesn't go to management decisions.

17  The information that's requested here has balance sheet items.

18  It has to do with changes in cash flow.  It is not something

19  that you can cobble together a claim, because it doesn't deal

20  with discrete transactions.  It deals with only transactions

21  between affiliated entities.  It only deals with disclosure of

22  administrative expenses that are incurred by a subsidiary for

23  which the Debtor is liable.  It only deals with changes in

24  condition on a go-forward basis and a balance sheet.  It

25  doesn't say, gee, we have to disclose that, with respect to

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document    Document    Filed 09/04/21    Page 103 of 213    PageID 53996

47

1    HarbourVest or with respect to the MGM stock or whatever,

2    we're doing A, B, or C.  It doesn't go there.

3        That's why I asked the Court in my opening, look at the

4    form.  Because the form is what I'm asking for adherence to.

5    I'm not asking the form to be varied.  I'm just asking the

6    form to be approved -- to be addressed.  And the form

7    controls.  It is not something you can cobble together a

8    complaint with.

9            THE COURT:  Well, you left out when I asked, you

10   know, did your client have an administrative expense claim in

11   this case, and Mr. Pomerantz corrected the record on that.

12   Your client, while it's not a lawsuit in another court, has

13   filed an administrative expense that there was mismanagement

14   of a nondebtor sub or nondebtor controlled entity, --

15           MR. DRAPER:  That -- that's --

16           THE COURT:  -- Multistrat.

17           MR. DRAPER:  No, that's not -- if -- if I understand

18   the claim -- again, I didn't file it, and I forgot, that's an

19   oops on me as opposed to an oops on Mr. Seery for not filing,

20   and I apologize for the Court for that.  But if I understand

21   that claim, is when he acquired whatever he acquired, he

22   should have offered it to the other -- to the other members of

23   the -- that group.  Again, I'm not -- that's not -- I'm a

24   bankruptcy lawyer, as the Court's well aware.  This other

25   stuff is beyond me.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document    Document    Filed 09/04/21    Page 104 of 213    PageID 53997

48

1          But the truth is, my understanding of the claim, it goes

2    to who should have benefited by the transaction and whether

3    the Debtor got CLO interests or got cash for it is irrelevant

4    and that it should have been offered.  That's what I

5    understand the claim.

6               THE COURT:  Okay.  So the same sort of theory --

7               MR. DRAPER:  So, the claim --

8               THE COURT:  -- as HarbourVest?  The same sort of

9    theory as HarbourVest?

10              MR. DRAPER:  No.  No.  Well, no, I'm just saying,

11   that's -- that's what -- again, you're asking me for something

12   that's outside my expertise.

13              THE COURT:  Okay.

14              MR. DRAPER:  Yes, we may have filed a claim.

15              THE COURT:  Who filed a proof of claim?

16              MR. DRAPER:  And the point I'm making --

17              THE COURT:  Who filed the proof of claim?

18              MR. DRAPER:  What?  I did not -- I have not filed the

19   proof of claims that were asserted by Dugaboy.

20              THE COURT:  I mean, --

21              MR. DRAPER:  I think that was --

22              THE COURT:  -- request for administrative expense.

23   Who filed this?  You say you don't -- you didn't file it.

24              MR. DRAPER:  I did -- I don't think I did.

25              MR. POMERANTZ:  Your Honor, to clarify, it was filed

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 27-11   Filed 09/04/91   Page 105 of 213   PageID 53998

49

1    as a proof of claim, but it related to postpetition actions.

2    And, again, I don't have it before me.  This has been raised

3    --

4            MR. DRAPER:  I --

5            MR. POMERANTZ:  -- several times in the confirmation

6    hearing when Mr. Draper was there, so I guess he must have

7    just forgotten about it.  But I don't know who actually filed

8    it.  But it is -- it is -- it is a proof of claim that is on

9    the record.

10           MR. DRAPER:  Mr. Pomerantz, God forbid that I should

11   forget something.  I'm sure you never have.

12           THE COURT:  Okay.  Well, here's what I'm going to do.

13   I'm not going to grant the relief being sought today, but I

14   will continue the hearing to a date in early September.  And

15   Mr. Draper, you can coordinate with my courtroom deputy, Traci

16   Ellison, with regard to a setting in early September.

17           I can assure you it's not going to be until after Labor

18   Day.  I think Labor Day falls on the 6th, maybe, and I plan to

19   be far away the first few days of September, far away from

20   this country.

21           But here are a few things I want to say.  First, I care

22   about transparency, and I tend to strictly construe a rule

23   like this.  I think, you know, it should be very clear for

24   anyone who's appeared before me that I really like -- I say

25   open kimono.  I probably shouldn't use that expression, but I

50

1    use that expression a lot.  You know, when you're in Chapter

2    11, the world changes and you have to be very transparent.

3        But while I generally feel that way, we have -- as I also

4    always say, facts matter, contexts matter -- and here we are

5    twenty months into a case and we're post-confirmation.  This

6    motion was filed post-confirmation.  So I acknowledge that the

7    Rule 2015.3(b) has the requirement of filing reports as to

8    these nondebtor controlled entities until the effective date

9    of a plan.  We're so -- we're presumably so very close to the

10    effective date that I think I should exercise my discretion

11    under Subsection (d) of this rule to, after notice and a

12    hearing, vary the reporting requirements for cause.  I think

13    there's cause, and that cause is I think we're oh so close to

14    the effective date.  That's number one.  Number two, we're

15    down to 12 staff members.  And I've heard that 150 entities

16    may be implicated, and I don't think that is a necessary and

17    reasonable use of staff members at this extremely late

18    juncture of the case.

19        And my third reason for cause under Subsection (d) of this

20    rule is we have had an active, a very active Creditors'

21    Committee in this case with sophisticated members and

22    sophisticated professionals who negotiated getting more

23    information, I think more useful information than this rule

24    even contemplates with the various form blanks.

25        Now, obviously, I'm continuing this to September because,

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 125   Filed 09/04/91   Page 107 of 213   PageID 54000

51

1    if we don't have an effective date by early September, well,

2    context matters, maybe that causes me to view this in a whole

3    different light.  But that is the ruling of the Court.

4        You know, I just want to say on behalf of the U.S.

5    Trustee, I don't know if anyone's listening in, but it was an

6    unfortunate use of words earlier, I think, saying, you know,

7    secret deal with them.  And I use unfortunate words all the

8    time.  I'm not being critical.  But I just want to defend

9    their honor here.  Oh my goodness, they --

10       (Phone ringing.)

11           THE COURT:  -- exercise integrity in every case I see

12   to the utmost degree, and I suspect they were satisfied that

13   the Committee was getting so much access to the Debtor, with

14   the sharing of the privilege and the protocols, that it just

15   didn't seem necessary in the facts and circumstances of this

16   case to require strict compliance with 2015.3.

17       So I'm going to ask Mr. Pomerantz to upload a form of

18   order reflective of my ruling.  And, again, if --

19       Whose phone is ringing?  Is there something going on with

20   our equipment?

21           THE CLERK:  No.

22           THE COURT:  I don't know where that phone ringing is

23   coming from.

24           THE CLERK:  I can hear it.

25           THE COURT:  Okay.  So, you'll get a day from Ms.

 1    Ellison in -- after labor day, and we'll see where we are.

 2    This will be a moot matter as far as I'm concerned if we've

 3    had an effective date at that point.

 4         (Continued phone ringing.)

 5         MR. POMERANTZ:  Your Honor, one clarification I would

 6    ask to have.  I don't think -- I think Your Honor intends that

 7    to be a status conference, so to save the Debtor from, you

 8    know, spending time in doing a pleading, and Mr. Draper as

 9    well, and Your Honor from reading them, I would say that there

10    should be no pleadings filed in advance.  We will appear

11    before Your Honor with a status conference.  And to the extent

12    Your Honor determines there's further briefings or further

13    issues that need to be decided, you could decide at that

14    point.  But no further briefing.

15         THE COURT:  Okay.  I think that is a fair request.

16      (Ringing stops.)

17         THE COURT:  And so that -- that is the way we'll set

18    this up.  Status conference.  No further pleading.

19         MR. DRAPER:  Your Honor?

20         THE COURT:  All right?  Mr. Draper?

21         MR. DRAPER:  Can I make a request, Your Honor?  Can I

22    change -- can I make a comment about the Court's ruling?

23    Because I want to be transparent about this.  And I think the

24    Court's ruling, I would request that you shapeshift it a

25    little bit.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 25-1   Filed 09/04/91   Page 109 of 213   PageID 54002
Document   Page 59 of 491

53

1    If, in fact, you're going to take the position that if the

2  plan goes effective, this issue -- this -- this motion is moot

3  and will be denied, I think, quite frankly, why don't we enter

4  that order now, rather than waiting.  Because that at least

5  gives me the ability to address the issue.

6    I don't think the rule has a waiver of it on the effective

7  date.  Let's -- let's get the issue before the -- before

8  everybody.  Because, again, as I said, if in fact your

9  position is that if it goes effective I'm going to deny the

10  relief and claim it's -- and assert it's moot in a ruling, I'm

11  fine, let's get the ruling now.  Because -- because my

12  position is that that waiver -- there is no basis for that

13  waiver due to time.  The rule requires being filed through a

14  point.

15    And, look, again, that way I'm not wasting the Court's

16  time.  We're not rearguing it.  If we're not having new

17  pleadings, let's get it over with.

18        MR. POMERANTZ:  Your Honor, I would reject that.

19  It's pretty transparent what Mr. Draper wants.  He wants

20  another appeal --

21        THE COURT:  Uh-huh.

22        MR. POMERANTZ:  -- because he wants to go to another

23  court, and he's unhappy that Your Honor has essentially given

24  an interlocutory order that he will be stuck with.

25    So we have, I think, close to a dozen appeals.  We're

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 170-25    Filed 09/04/21    Page 110 of 213    PageID 54003

54

1    spending millions of dollars.  And I find -- I find Mr.

2    Draper's request, quite honestly, offensive, that it would

3    require us to -- a lot more time and money on an issue we

4    shouldn't.  So, I would ask Your Honor to reject Mr. Draper's

5    request.

6                THE COURT:  All right.  I do --

7                MR. DRAPER:  And again, my --

8                THE COURT:  -- reject it.  That's exactly where my

9    brain went, Mr. Draper.  This is an order continuing your

10   motion.  Okay?  And we'll have a status conference in early

11   September on your motion.

12        And you know, again, I'm just letting you know my view it

13   will be moot if the effective date has occurred, and then

14   we'll get some sort of order to that effect issued at that

15   time.  And then I guess you'll have your final order that you

16   can appeal if you want at that point.

17        The last thing I'm going to say is this.  Mr. Draper, as

18   I'm sure you remember, at some point many weeks back -- I

19   think it was in January, actually -- I ordered that Mr.

20   Dondero should be on the WebEx, or if we're live in the court

21   for a hearing, live in the court, any time there's a hearing

22   where he, his lawyers, have taken a position, filed an

23   objection or filed the motion himself.  If he and his lawyers

24   are requesting relief or --

25                MR. DONDERO:  I'm here.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 25-1   Filed 05/04/91   Page 111 of 213   PageID 54004

55

1          THE COURT:  -- objecting to relief, that he has to be

2    in the courtroom.

3       I am now going to make the same requirement with regard to

4    the trusts.  Any time the trusts file a pleading seeking

5    relief, object to a pleading seeking relief, file any kind of

6    position paper, I'm going to require a trust representative to

7    be in court.

8          Now, I don't know if that's the trustee, Nancy Dondero.  I

9    don't know if that's Mr. Dondero's wife, a sister, who that

10   is.  But it'll either be her or whoever the trustee is or Mr.

11   Dondero as beneficiary.  But it has gotten to that point.

12   Okay?  And --

13          MR. DRAPER:  Your Honor?

14          THE COURT:  And it's not -- it's not personal.  I

15   have said this before.  I've done this in many cases.  If we

16   have a party who feels so invested in what's going on that

17   they're waging litigation, litigation, litigation, at some

18   point very often I will make this order.  Like, okay, we're

19   all spending a lot of time on what you want, so you need to

20   show you're invested in it and be here with the rest of us.

21   And, you know, potentially we're going to want testimony in

22   certain contexts.  Okay?

23      So I don't know who that human being is for the trusts,

24   but I'm now to the point where I'm making that same order that

25   I did with regard to Mr. Dondero personally.  All right?

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 27-25    Filed 06/09/41    Page 112 of 213    PageID 54005

56

1          MR. POMERANTZ:  Your Honor?

2          THE COURT:  Yes?

3          MR. POMERANTZ:  Your Honor, just to clarify, that's

4    Mr. Dondero and the trustee.

5          And I would also ask Your Honor, I know Mr. Dondero will

6    say that he was on, and that's what Mr. Taylor is going to

7    say, he was on audio.  I think, in order to have them actively

8    participating, they should be on the video the entire hearing.

9    Because if they're just on the phone on mute, Your Honor is

10    not able to really tell if they are really listening.  So I

11    would ask Your Honor to clarify to both Mr. Draper and Mr.

12    Taylor that, for both the trustee and Mr. Dondero, they should

13    be on video.

14          THE COURT:  All right.

15          MR. DRAPER:  Your Honor, Mr. Dondero is on.  You can

16    see him down in the lower screen.

17          THE COURT:  All right.  Just so you know, I mean, the

18    screen I'm looking at is not quite the same screen you're

19    looking at.  We have this Polycom.  And I show that there are,

20    you know, thirty-something people, but I only see the people

21    who have most recently talked.  Okay?  So, I see you, Mr.

22    Draper.  I see Mr. Pomerantz.  I see Mr. Clemente.  A few

23    minutes ago, I saw Mr. Morris.  But, you know, we've set it up

24    where I'm not overwhelmed with blocks; I'm just seeing the

25    people when they speak.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 17-25    Filed 09/04/21    Page 113 of 213    PageID 54006
Document    Page 57 of 91

57

```
 1              MR. POMERANTZ:  Your Honor, and those were the only

 2    four people whose videos were on during the entire hearing.

 3              THE COURT:  Oh, okay.

 4              MR. POMERANTZ:  So I hope Mr. Draper is not going to

 5    say that Mr. Dondero was on video, because he was not.

 6              THE COURT:  Okay.

 7              MR. DRAPER:  No, you can see -- Mr. Pomerantz, what I

 8    said is you can see him on the screen here.  You can see that

 9    he has dialed in.  I don't see him jumping up and down or his

10    person.

11              THE COURT:  Oh, okay.

12              MR. DRAPER:  But it is clear that somebody dialed in

13    on his behalf.

14              MR. POMERANTZ:  Well, --

15              MR. DRAPER:  Or he dialed in.  He is -- he is

16    present.

17              MR. POMERANTZ:  Exactly.  That's my point, Your

18    Honor, that someone may have dialed in on his behalf.  And I

19    think Mr. Dondero, for them to have active, meaningful

20    participation, because I think that's what Your Honor is

21    getting at, that they should be here, engaged.  And if we were

22    in court like we were the other day, Mr. Dondero would have

23    had to sit in Your Honor's courtroom.  And if he is going to

24    take up the time of Your Honor and all the parties, he and the

25    trustee should be really engaged, which you cannot be if
```

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-25   Filed 08/09/21   Page 114 of 213   PageID 54007

58

1   you're only on the phone.

2            THE COURT:  Okay.  All right.  Well, --

3            MR. DRAPER:  Your Honor?

4            THE COURT:  Go ahead, Mr. Draper.

5            MR. DRAPER:  Mr. Dondero just talked a few moments

6    ago, so Mr. Pomerantz heard him.  This is -- this is truly

7    unwarranted.  He's appeared, he's here, and he's made a

8    comment to the Court.  So, again, we are invested.  He was

9    present at this hearing.  He heard the hearing.  And so, you

10   know, I just don't know where this is coming from.  I

11   understand he missed a hearing before, but he is here for this

12   one.

13           THE COURT:  Okay.  Well, I'm not going to get bogged

14   down in this issue.  I am going to issue an order, though,

15   that is going to be reflective of what I said, and we'll just

16   -- we'll make sure we have him check in or whoever the

17   representative is of the trusts in future hearings and turn

18   the video on and we'll make sure.

19       Again, this is -- I used the word frustrated the other

20   day.  I'm very frustrated.  This is just -- this is -- it's

21   out of control.  Okay?  I ordered mediation earlier in this

22   case.  I believed that an earnest effort was put in.  But if

23   we're not going to have settlement of issues, you know, I'll

24   address these issues, but everyone who files a pleading,

25   whether it's Mr. Dondero personally or the trusts, the family

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 25   Filed 09/04/21   Page 115 of 213   PageID 54008

59

1    trusts, and, of course, we're going to get -- I'm going to go

2    the same direction, actually, with all these other entities.

3    You know, it's -- I've gotten to where I had my law clerk the

4    other day prepare me basically what was like a program from a

5    sports event, you know, who represents which entities, because

6    it's gotten overwhelming.  And --

7              MR. POMERANTZ:  Your --

8              THE COURT:  And I mentioned the other day, I'm very

9    close to requiring some sort of disclosures about the

10   ownership of each of these entities, because I -- you know,

11   the standing is just so tenuous, so tenuous with regard to

12   certain of these entities.  And I've erred on the side of

13   being conservative and, you know, okay, we maybe have

14   prudential standing, constitutional standing, even if it's

15   kind of hard finding statutory standing under the Bankruptcy

16   Code.  But it's gotten to the point where it's just costing

17   too much time and expense for me to not press some of these

18   issues and hold people accountable.

19       So, Mr. Pomerantz, were you about to say something?  I

20   know that we had talked at another hearing about the Court

21   maybe requiring some sort of disclosures for me to really

22   understand party in interest status maybe better than I do.

23             MR. POMERANTZ:  That, Your Honor, was where I was

24   going to go before Your Honor made the comment.  Your Honor

25   made that comment a few weeks ago.  I think, since then, quite

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-16   Document Filed 00/01/91   Page 116 of 213   PageID 54009

60

1   honestly, nothing really has changed.  And I think it would be

2   helpful -- it would be helpful for the Debtor, and more

3   importantly, I think it would be helpful to the Court to have

4   a list that you can refer to every time we are in a hearing of

5   every entity that has appeared that Mr. Dondero has a

6   relationship with, who the lawyers are, what the claims they

7   filed, what the status of the claims they filed, and maybe

8   even what litigation they are in pending with the Debtor.

9        We're happy with -- part of it we could prepare.  But I

10  would think Your Honor should order that from Mr. Dondero's

11  related entities, because it might cut through a lot of it,

12  and give Your Honor the information Your Honor needs and the

13  context and perspective as you're hearing a lot of these

14  motions.

15            THE COURT:  All right.  Well, is there anything else

16  before we move on to the other matter?  I'm about to close the

17  loop on this by saying I am --

18            MR. TAYLOR:  Your Honor?  Your Honor?

19            THE COURT:  Who is that speaking?

20            MR. TAYLOR:  This is Clay -- this is Clay Taylor,

21  Your Honor, --

22            THE COURT:  All right.

23            MR. TAYLOR:  -- representing Jim Dondero

24  individually.

25            THE COURT:  Okay.

1          MR. TAYLOR:  And I just wanted to be heard.  I've

2     just listened in, even though Mr. Dondero was not the movant,

3     because sometimes issues like this do come up where his name

4     is thrown about.

5          First of all, Jim Dondero was indeed, as Mr. Draper said,

6     was indeed present.  He did indeed try to speak.  I kind of

7     overrode him.  And because, you know, he needs to speak

8     through his lawyer most of the time and shouldn't address the

9     Court directly.  But I wanted to let you know that Mr. Dondero

10    was indeed on the line, was actively listening, and was

11    participating.

12         As far as additional disclosures, it would be, I would

13    just note, somewhat ironic if the Court denies the motion for

14    what appears to be mandatory disclosures under Rule 2015.3 but

15    then imposes additional disclosure requirements on somebody --

16    on another party, without any rule stating that there is such

17    disclosures.  It just -- it strikes me as ironic, and I would

18    like Your Honor to consider that, at least, as Your Honor

19    says, context matters.

20         You know, that's the context in which this arises.  And we

21    would just ask Your Honor to reflect upon that before she

22    imposes additional duties upon my client.

23         But there is -- and the Debtor has asked for the response

24    to be taken as a motion for leave to not comply with a rule,

25    but yet Mr. Seery is not here.  The UCC regularly

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 17-25   Filed 02/03/21   Page 118 of 213   PageID 54011
Document   Page 62 of 491

62

 1   participates.  Its members are not here.  And so I just, to

 2   the extent Your Honor is going to impose duties upon certain

 3   parties, then what's good for the goose is good for the

 4   gander, Your Honor.

 5              THE COURT:  All right.

 6              MR. POMERANTZ:  Your Honor, I would point out that

 7   Mr. --

 8              THE COURT:  I respect your argument.  I always

 9   respect your arguments, Mr. Taylor.

10       By the way, you aren't wearing a jacket.  You know, next

11   time you need to wear a jacket.  And forgive me if I seem

12   nagging, but I'm letting you all know, if you all are soon

13   going to be having lots of litigation in the District Court, I

14   promise you the district judges are way more formal than me

15   and sticklers for every rule.  You'll also be doing everything

16   live in the courtroom, too.  I'm just letting you know that.

17       But while I respect your argument, apples and oranges.  I

18   mean, the 2015.3 rule, not only is it not -- not -- I wouldn't

19   say mandatory, since the Court has discretion for cause to

20   waive the requirement.  But it's a very onerous set of forms

21   that would have to be filled out for 150 entities by 12 staff

22   members.  I don't really consider that the same as the

23   disclosure that I'm now going to require.

24       But my law clerk and I will -- we'll craft a form of order

25   that will be specific as far as what I'm going to require.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 27-51    Filed 09/04/91    Page 119 of 213    PageID 54012

63

1      And, again, I think it's way beyond the point of this

2   being necessary.  And just so -- again, I'm wanting to explain

3   this thoroughly.  You know, standing -- for the nonlawyers; I

4   don't know how many nonlawyers are on the phone, WebEx -- it's

5   a subject matter jurisdiction thing.  Okay?  And, you know, if

6   there's a dispute and someone involved in a dispute

7   technically doesn't have standing, that means the Court didn't

8   have subject matter jurisdiction to be adjudicating it.  Okay?

9   That's first year law school concept.

10      And it's been mentioned we have lots and lots of appeals,

11   and I can promise you, if you've never been through the

12   appellate process, that's the very first thing they'll look at

13   -- you know, District Court, Fifth Circuit, any Court of

14   Appeals -- because they have an overwhelming docket.  And if

15   there's a reason to push out this appeal before then because

16   of lack of subject matter jurisdiction, which would include

17   lack of standing, of course they are going to quickly get it

18   off their plates because they have other things to get to,

19   like criminal matters that are, you know, their top priority

20   because of the Constitution.

21      So this has been an evolving thing with me.  At some

22   point, I feel like the Courts of Appeals that are involved

23   with all of these appeals, they might be really, really

24   zeroing in on the standing of parties more than perhaps even I

25   have.  So I want to do my job and I want it clear on the

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document Document    File Page 64 0f491 Page 120 of 213    PageID 54013

64

1    record, this is why this person has standing or doesn't have

2    standing.  Okay?  I just feel like we've gotten to that point.

3    And so we'll issue an order in that regard, and it will, I

4    promise you, be crystal clear.

5        Anything else?

6            MR. POMERANTZ:  Your Honor, one last point.  Mr.

7    Taylor insinuated that the board is not present here, which is

8    incorrect.  A member or two members or three members of the

9    board have been present at every hearing before Your Honor.

10   And that's without an order requiring them to do so, because

11   they are -- they are interested, they are engaged.  Mr. Dubel

12   is on the phone.  He has been on the phone.  I think this may

13   have been only the second hearing that Mr. Seery has missed,

14   felt it wasn't necessary to take him away from his running the

15   company.  So the Debtor has been, through its board members,

16   fully engaged, and I just wanted Your Honor to know that, that

17   we would never have a hearing before Your Honor without at

18   least one member of the independent board listening in and

19   participating as necessary.

20           THE COURT:  All right.  Thank you.

21       All right.  Well, let's move on to the other contested

22   matters, or adversary proceeding matters, I should say.  And

23   they're Adversary 21-3006 and 21-3007.  We have Motions for

24   Leave to Amend Answers.  And do we have Ms. Drawhorn appearing

25   for that motion or those motions?

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 30-15   Filed 09/04/91   Page 121 of 213   PageID 54014

65

1          MS. DRAWHORN:  Yes, Your Honor.  Lauren Drawhorn with

2    Wick Phillips on behalf of Highland Capital Management

3    Services, Inc. and NexPoint Real Estate Partners, LLP,

4    formerly known as HCRE Partners, LLC.

5          THE COURT:  All right.  And who will be making the

6    argument for the Debtor on this one?

7          MR. MORRIS:  John Morris, Your Honor; Pachulski Stang

8    Ziehl & Jones; for the Debtor.

9          THE COURT:  All right.  Are there any other

10   appearances on this?

11      Okay.  Ms. Drawhorn?

12          MS. DRAWHORN:  Yes, Your Honor.  We are -- so, my

13   clients are seeking leave to amend the answer to add two

14   affirmative defenses.  As you know, under Rule 15(a), there is

15   a bias towards granting leave, and leave should be freely

16   granted unless there's a substantial reason to deny it.

17      The main factors that are considered in determining

18   whether there is a substantial reason to deny a motion for

19   leave to amend are prejudice, bad faith, and futility.

20      Here, there is no prejudice to the Plaintiff.  Under the

21   case law, if the -- as long as a proposed amendment is not

22   presented on the eve of trial, continuing deadlines or

23   reopening discovery does not constitute sufficient prejudice

24   to deny leave.

25      Here, discovery does not close until July 5th for Highland

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 175-1    Filed 09/08/21    Page 122 of 213    PageID 54015
Document    Page 66 of 91

66

 1   Capital Management Services, and it does not close until July

 2   26th for NexPoint Real Estate Partners.

 3       The Plaintiff has not -- neither party has taken any

 4   depositions in this case.  And we are open and willing to

 5   extend the discovery deadlines if necessary.  We think that

 6   discovery can be extended as necessary without extending any

 7   dispositive motion deadline or the docket call which are set

 8   in August.  Dispositive motions are August 16th for Highland

 9   Capital Management and September 6th for NexPoint Real Estate

10   Partners, with docket call in those cases being October and

11   November.

12       So there's significant time.  If the -- if the party just

13   wants to conduct additional written discovery, I think that

14   that -- they would be easily be able to do that.

15       We're also open to continuing all the deadlines in this

16   case, and practically speaking, those -- the deadlines may be

17   continued depending on what happens with the pending motion to

18   withdraw the reference and the motion to stay.

19       So we don't think -- we don't see any reason why our

20   amended additional affirmative defenses will result in any

21   prejudice to the Plaintiff, and don't see that as a reason --

22   a substantial reason to deny the motion for leave.

23       There is no bad faith here.  The motion for leave was

24   filed two months after our original answer.  Again, this is

25   not a situation where we're trying to add a new defense on the

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 25   Document   Filed 09/04/91   Page 123 of 213   PageID 54016

67

1    eve of trial.  We're not even waiting until after discovery is

2    closed to try and add this new defense.  And it's not after

3    one of our prior defenses failed.  Instead, we've been

4    conducting additional investigations, preparing for written

5    discovery.  And as set forth in more detail in the Sauter

6    declaration that was filed yesterday, we discovered these

7    additional defenses through that additional investigation.

8        So there's certainly no bad faith here in adding these two

9    defenses.  We are just trying to make sure that we can prove

10   up our defenses and prove up our case on the merits, as we

11   need to.

12       And then the last factor, the new affirmative defenses

13   we're seeking to add, they're not futile.  I cited some cases

14   in the pleadings.  There are some judges in the Northern

15   District of Texas that refrain from even evaluating futility

16   at this stage, at a motion for leave to amend stage,

17   preferring to address those on a motion for summary judgment

18   situation.  But even when it is considered, futility looks

19   more at is there a statute of limitations that prevents the

20   claim from being successful, or does the court lack subject

21   matter on its face, based on this defense?  And that's not the

22   case here.

23       The Debtor -- the Plaintiff tries to argue on the merits

24   of our affirmative defenses, and a motion for leave to amend

25   is not a basis for that.  This isn't a motion for summary

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 179-25   Filed 08/09/21   Page 124 of 213   PageID 54017

68

1    judgment.  This is just -- just a motion for leave to add

2    these defense, and they can certainly address the merits later

3    on in the case.

4          So we think we provided sufficient notice in our proposed

5    amendment.  I mean, our proposed amended answer.  To the

6    extent we need to add any specifics, we are certainly open to.

7    We've noted them in our reply.  The ambiguity is -- is to the

8    notes as a whole.  We noted the Highland Capital Management,

9    there's two notes that are signed by Frank Waterhouse without

10   indication of corporate capacity, which creates some

11   ambiguity.  The notes reference other related agreements,

12   which create some ambiguity.  So we think there's sufficient

13   pleading of these new defenses to support leave to amend and

14   address those on the merits.

15         And then the condition subsequent defenses, while we --

16   the schedules and the SOFAs, the notes related to that

17   reference that some loans between parties and related -- to

18   affiliates and related entities may not be enforceable, we

19   think that supports our position and this defense here, now

20   that we've furthered our investigation and heard about this

21   additional subsequent agreement that supports the condition

22   subsequent.

23         And the opposition, the Plaintiff's opposition notes that

24   there has been some discovery on this defense.  It's similar

25   to one that's asserted in a related note adversary.  And

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 27-25   Filed 09/04/91   Page 125 of 213   PageID 54018

69

1    while, again, they try to assert the merits and the

2    credibility of certain testimony, that's -- that's a decision,

3    credibility of a witness is a decision for a fact finder and

4    not for this stage of the proceedings and not for a motion for

5    leave to amend.

6        So we don't believe there's a substantial reason to deny

7    leave.  Again, under Rule 15, leave should be granted freely.

8    And so we would request that the Court grant our motion for

9    leave to amend so that we can have our amended answer and

10   affirmative defenses in this case.

11       THE COURT:  All right.  Well, Mr. Morris, you know,

12   the law is not too much in your favor on this one.  So what do

13   you have to say?

14       MR. MORRIS:  I have to say a few things first, Your

15   Honor.  The notes are one of the most significant assets of

16   the estate.  As the Court will recall at the confirmation

17   hearing, Mr. Dondero and all of his affiliated entities

18   objected to confirmation on the ground -- challenging, among

19   other things, both the liquidation analysis as well as the

20   projections on feasibility going forward.

21       One of the assumptions in those projections and in the

22   liquidation analysis was indeed the collection of these notes

23   in 2021.  They all sat on their hands, attacked the

24   projections, attacked the liquidation analysis, but never on

25   the grounds that the notes wouldn't be collectable in 2001

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document Document Filed 00/04/91    Page 126 of 213    PageID 54019

70

1    [sic], never informing the Court that there was some agreement

2    by which collection would be called into question, never ever

3    disclosing to anybody that the plan might not be feasible or

4    the liquidation analysis might not be accurate because these

5    notes were uncollectable.

6        So what happened after that, Your Honor?  We commenced

7    these actions.  Actually, before the hearing.  We actually

8    commenced these actions before the confirmation hearing, when

9    they sat silently on this.

10        And Mr. Dondero's first answer, because this is all very

11    important because they say that they're -- they're

12    piggybacking on Mr. Dondero.  Mr. Dondero's first answer to

13    the complaint said, I don't have to pay because there is an

14    agreement by which the Debtor said they would not collect.

15    It's in the record.  It's attached to my declaration.  And

16    that was it.  Full stop.  I don't have to pay because the

17    Debtor agreed that I would not have to collect.

18        So we served a request for admission.  Admit that you

19    didn't pay taxes.  He realized, okay, that defense doesn't

20    work, so he changes it completely and he amends his answer.

21    Now the amended answer says, I don't -- the Debtor agreed that

22    I wouldn't have to pay based on conditions subsequent.

23        And we said, what are those conditions subsequent?  Please

24    tell us in an interrogatory response.  And under oath, Mr.

25    Dondero said, I don't have to pay if the Debtor sells their

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 27-25   Filed 09/04/91   Page 127 of 213   PageID 54020

71

1    assets in the future.  At a favorable price, I think it says.

2    Again, this is in the record.  And we asked him under oath,

3    who made that agreement on behalf of the Debtor?  And he said,

4    I did.

5        And Your Honor will recall that we had a hearing on that

6    very defense, on the motion to compel, where they said Mr.

7    Seery has to come in and testify to the defense that Mr.

8    Dondero made this agreement with himself.  And then the

9    following week, on a Tuesday, we had the hearing on the motion

10   to withdraw the reference, and Your Honor said finish

11   discovery, because we told you discovery was going to be

12   concluded on Friday with Mr. Dondero's deposition.  You know

13   what they did, Your Honor?  The night before the hearing, they

14   amended Mr. Dondero's interrogatory.  Again, these are sworn

15   statements.  They amended it again to say he didn't enter the

16   agreement on behalf of the Debtor; Nancy Dondero, his sister,

17   did.

18       And then I took his deposition.  And we're going to get to

19   that in a moment, because I'm going to put it up on the screen

20   so you can see these answers, Your Honor.  And I say this by

21   way of background because it goes to both good faith -- or,

22   actually, bad faith -- as well as the lack of a bona fide

23   affirmative defense here.

24       This is -- there are five notes litigation.  One against

25   Mr. Dondero.  So that's package number one.  And they're

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 170-25   Filed 09/04/21   Page 128 of 213   PageID 54021

72

1    represented by the Stinson firm, who is signing all of these

2    things.  The Stinson firm is out there claiming that in good

3    faith each of these -- each of these amendments, each of these

4    amendments to the interrogatories, are in good faith.  They're

5    not in good faith, Your Honor.  They're just not.

6         And the Bonds firm.

7         Then bucket two is what we have here today.  That's HCRE

8    and Highland Capital Management Services.  They're represented

9    by Ms. Drawhorn.  I think the Stinson firm has now also

10   entered an appearance in those two adversary proceedings.

11        And the other two are against the two Advisors.  More

12   entities controlled by Dondero.  And Mr. Rukavina, I believe,

13   last night filed his motion to amend to add these same

14   defenses.

15        Okay?  Is this good faith?  I don't think this is good

16   faith.

17        Let's look at Mr. Dondero's testimony so that the Court

18   has an understanding of what we're talking about here.  I

19   think I have Ms. Canty on the phone, and I'd ask her to go to

20   Page 178.  3.  Just going to read (garbled) so you can see.

21   This was Mr. Dondero's testimony the day after telling me that

22   he amended his interrogatory -- sworn interrogatory answer to

23   say that he didn't enter the agreement on behalf of the Debtor

24   but Ms. -- but Ms. Dondero, his sister, did.

25        Question.  Are we -- 178, please.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document Document Filed 09/04/91 Page 129 of 213    PageID 54022

73

1              MS. DRAWHORN:  Your Honor, I would --

2              MR. MORRIS:  Question.  Please --

3              MS. DRAWHORN:  This is not testimony in this

4     adversary and I was not -- my clients were not present at this

5     deposition that Mr. Morris is referring to, so I --

6              MR. MORRIS:  Your Honor, with all due respect, she's

7     interrupting me, and I would ask her to allow me to finish my

8     presentation and then she can make whatever comments she

9     wants.  Because -- because --

10             MS. DRAWHORN:  Well, I'm objecting to this testimony

11    --

12             THE COURT:  Okay.

13             MS. DRAWHORN:  -- coming into evidence.

14             THE COURT:  Okay.  So your objection is -- if you

15    could just articulate your objection for the record, please,

16    Ms. Drawhorn.

17             MS. DRAWHORN:  I would object to this -- this

18    deposition is not in this proceeding, this adversary

19    proceeding, either of these two the adversary proceedings, and

20    my client was not present at this deposition, so I would

21    object to it as hearsay.

22             THE COURT:  Response?

23             MR. MORRIS:  Your Honor, if I may, I think this --

24    this points to just one of the fundamental problems that we

25    have here.  As we pointed out in our objection, the Debtor, as

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 27-25   Filed 04/04/91   Page 130 of 213   PageID 54023

74

1    we sit here right now, still has no notice of the facts and

2    circumstances surrounding this alleged agreement.  We still

3    don't know who entered into the agreement on behalf of the

4    Debtor.  We don't know what the terms of the agreement were.

5    We don't know when the agreement was entered into.  We don't

6    -- right?

7        If they're going to assert that there's an agreement --

8    and they seem to be piggybacking on this conversation between

9    Mr. Dondero and his sister.  If there's a different one, they

10   need to say that right now.  They need to put their cards on

11   the table and they need to inform the Debtor who entered the

12   agreement on behalf of the Debtor pursuant to which the Debtor

13   agreed to waive millions and millions of dollars without

14   telling anybody.

15           THE COURT:  Okay.  I overrule the objection.  We can

16   go through the transcript.

17           MR. MORRIS:  So, I'm just going to use part of it,

18   Your Honor.  But on Lines 3 to 7:

19       "Q   Did  anybody  else  participate  --  did  anybody

20        participate in any of the conversations other than you

21        and your sister?

22       "A   I don't believe it was necessary.   It didn't

23        include anybody else."

24       Go down to Line 19, please.

25       "Q   Was the agreement subject to any negotiation?  Did

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 27-25    Filed 09/04/21    Page 131 of 213    PageID 54024

75

1    she make any kind of -- any counterproposal of any

2    kind?

3    "A    No."

4    Page 179, Line 2.

5    "Q    Do you know if she sought any independent advice

6    before entering into the agreement that you have

7    described?

8    "A    I don't know."

9    Line 23, please.

10   "Q    Do you know if there were any resolutions that

11   were adopted by Highland to reflect the agreement

12   that's referred to in the -- in the answer?

13   "A    Resolutions that -- no.  Not that I'm aware of."

14   Page 180, Line 5.

15   "Q    Did you give Nancy a copy of the promissory notes

16   that were a subject of the agreement?

17   "A    No."

18   Continue.

19   "Q    Did she ask to see any documents before entering

20   into the agreement that's referred to?

21   "A    I don't remember."

22   Page 181, Line 19.

23   "Q    Under the agreement that you reached with Nancy

24   that's referred to in Paragraph 40, was it your

25   understanding that Highland surrendered its right to

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 27-25   Filed 09/08/21   Page 132 of 213   PageID 54025

76

1    make a demand for payment of unpaid principal and

2    interest under the notes?

3    "A   Essentially, I think so."

4    Page 219.  I'll just summarize 219, Your Honor.  Mr.

5    Dondero has no recollection of telling Mr. Waterhouse, the

6    chief financial officer, or any other employee of Highland

7    that he'd entered into this agreement with his sister pursuant

8    to which the Debtor agreed to not collect almost $10 million

9    of principal and interest.

10    Now let's -- let's go -- I think it's really -- because it

11    took me an awfully long time to get there.  On Page 214 at

12    Lines 16 through 24.  This is what the agreement was, because

13    this is -- this is -- this is his third try to describe the

14    agreement.  Right?  The first time -- it's just his third try,

15    and this is what the agreement is, Your Honor.

16    "Q   Did you and Nancy agree in January or February

17        2019 that if Highland sold either MGM or Cornerstone or

18        Trussway for an amount that was equal to at least one

19        dollar more than cost, that Highland would forgive your

20        obligations under the three notes?

21    "A   I believe that is correct."

22    That's -- that's the agreement.  It took him three times

23    to get there, but look at -- look at that.  He and his sister

24    did that.

25    And I do want to point out, Your Honor, that in their

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-25   Filed 09/04/91   Page 133 of 213   PageID 54026

77

1   opposition that they filed last night, the Defendants claim

2   that Ms. Dondero was authorized because she was -- she was the

3   trustee of Dugaboy and Dugaboy holds the majority of the

4   limited partnership interests in the Debtor and therefore she

5   had the authority to enter into the agreement on behalf of the

6   Debtor.

7        There is that flippant -- there is just that unsupported

8   statement out there.  Section 4.2(b) of the limited

9   partnership agreement says, and I quote, "No limited partner

10  shall take part in the control of the partnership's business,

11  transact any business in the partnership's name, or have the

12  power to sign documents for or otherwise bind the partnership,

13  other than as specifically set forth in the agreement."

14       So I look forward to hearing what basis there was to

15  submit a document to this Court that Nancy Dondero had the

16  authority to bind the Debtor in an agreement with her brother

17  pursuant to which tens of millions of dollars was apparently

18  forgiven.

19       Can we go to Page 238?  This is the last piece, Your

20  Honor.  The Debtor's outside auditors were

21  PricewaterhouseCoopers.  There's management representation

22  letters signed by both Mr. Dondero and Mr. Waterhouse

23  attesting that they had given their auditors all of the

24  information necessary to conduct the audit.  We will get to

25  that in due course, but these are very important questions

1    right here.

2        What page are we on?  Is it 238?  Okay.  So, Line 16, I

3    believe.

4        "Q   You knew at the time -- you knew at the time the

5        audited financials were finalized that Highland was

6        carrying on its balance sheet notes and other amounts

7        due from affiliates?

8        "A   Yep."

9        And if we could just keep going, Your Honor, you will see:

10       "Q   Did   you   personally   tell   anybody   at

11       PricewaterhouseCoopers   in   connection   with   the

12       preparation  of  the  audited  financial  statements  for

13       2018  that  you  and  your  sister  had  entered  into  the

14       agreement with your sister Nancy in January or February

15       of 2019?

16       "A   Not that I recall."

17       There's a lot more here, Your Honor.  I'm really just

18   touching the surface.  I am going to take Nancy's deposition

19   later this month.  But there is -- this is wrong.  This is

20   just all so wrong.  For three different reasons.  At least.

21   This is not a viable defense and will never be a viable

22   defense.

23       The audited financial statements carry these loans as

24   assets on the books, without qualification, and they were

25   subject to Mr. Dondero and Mr. Waterhouse's representations.

1          There is partial performance.  These entities that we're

2     talking about today, they made payments on these notes.  How

3     do you make payments on the notes and then come to this Court

4     and say the notes are ambiguous?  How do you -- how do you

5     make payments on the notes and come to this Court and tell

6     this Court, I just learned that there was an agreement by

7     which I don't have to pay, subject to conditions precedent in

8     the future.

9          Mr. Sauter submits a declaration in support of this

10    motion.  He has no personal knowledge.  He states in Paragraph

11    14 that his review of the Defendants' books and records did

12    not reveal any background facts regarding the notes.  Mr.

13    Dondero is the maker on all of the notes except for two of

14    them.  Mr. Dondero owns and controls the Defendants.  Mr.

15    Dondero was not employed or otherwise affiliated with the

16    Debtor after these actions were commenced.  Mr. Sauter takes

17    Mr. Seery to task for telling the Debtor's employees not to

18    take actions that were adverse, and he uses that as his excuse

19    for not knowing these facts.  He is the general counsel.  He

20    was served with a complaint that alleged that his clients were

21    liable for millions and millions of dollars.  His boss is

22    James Dondero.  He had unfettered access to James Dondero.

23    Mr. Dondero is the one who signed the notes, except for two of

24    them.  There is absolutely no excuse for not doing the

25    diligence to find out from Mr. Dondero that this defense

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 79    Filed 09/04/21    Page 136 of 213    PageID 54029

80

1    existed.

2        And you know why it didn't happen?  Because the defense is

3    not real.  It is completely fabricated.  It continues to

4    change and evolve every single time I -- every single time I

5    talk about these note cases, it's a new defense, it's a

6    different defense, the contours change, somebody else is

7    involved.  This is an abuse of process, Your Honor.  It is bad

8    faith.  It just really is.  And somebody's got to start to

9    take responsibility and say, I won't do this.  I won't do

10    this.

11        Somebody's got to stand up and say that, because, I'm

12    telling you, it's not enough, Your Honor, that the Debtor is

13    going to collect all of its fees under the notes at the end of

14    this process.  It's not enough,  because we're now giving an

15    interest-free loan.  These are -- these are notes that are

16    part of the Debtor's plan that nobody objected to, that nobody

17    suggested were the subject of some condition subsequent.

18        This is not your normal, you know, gee, I'd like leave to

19    amend the complaint.  They're simply following what Mr.

20    Dondero did.  And I would really ask the Court to press the

21    Defendants to identify specifically who made the agreement on

22    behalf of the Debtors, when was the agreement made, is there

23    any document that they know of today that reflects this

24    agreement, and what were the terms of the agreement?  Is it

25    really that he would sell -- if he sells MGM for a dollar over

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 12-5   Filed 09/04/21   Page 137 of 213   PageID 54030

81

1    cost, $70 million of notes get forgiven?  How is that

2    possible?  How is that possible?  It doesn't pass the good

3    faith test.  The Court should deny the motion.

4         Thank you, Your Honor.

5         THE COURT:  Mr. Morris, in all of your listing of

6    allegedly problematic things, one trail my brain was going

7    down is this:  Is this adversary going to morph even further

8    to add fraudulent transfer allegations?  I mean, if notes --

9         MR. MORRIS:  Here's the --

10        THE COURT:  -- were forgiven or agreements were made

11   --

12        MR. MORRIS:  Yeah, I --

13        THE COURT:  -- that they would be forgiven if, you

14   know, assets are sold at a dollar more than cost, is the

15   Debtor going to say, well, okay, if this is an agreement,

16   there was a fraudulent transfer?

17        MR. MORRIS:  Your Honor, that is an excellent

18   question, one which I was discussing with my partners just

19   this morning.  You know, we have to -- we're balancing a

20   number of things on our side, including the delay that that

21   might entail; including, you know, what happens if we go down

22   that path.  You know, the benefit of suing under the notes, of

23   course, is that he's contractually obligated to pay all of our

24   fees.

25        And so we're balancing all of those things as these -- as

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 1-25   Filed 09/04/21   Page 138 of 213   PageID 54031

82

1 these defenses metastasize.  But it's something that we're

2 considering, and we reserve the right to do exactly that, as

3 these defenses continue to get -- and it would be fraudulent

4 transfer, it would be breach of fiduciary duty against Nancy

5 Dondero, it would be breach of fiduciary duty against Jim

6 Dondero.  I'm sure that there are other claims, Your Honor.

7 But if they want to -- if I'm forced to go down that path, I'm

8 certainly going to use every tool that I have available to

9 recover these amounts from the -- for the Debtor and their

10 creditors.  This is just an abuse of process.

11      How do you -- how does one enter into agreements of this

12 type without telling your CFO, without telling your auditors,

13 without putting it in writing?  And I asked Mr. Dondero, what

14 benefit did the Debtor get from all of this?  And you know

15 what his answer was, Your Honor?  Because it's really -- it's

16 appalling.  It was going to give him heightened focus on

17 getting the job done because of this agreement that he entered

18 into with his sister, Nancy, acting on behalf of the Debtor,

19 with no information, with no documents, with no notes, with no

20 advice, with no corporate resolutions.  The Debtor was going

21 to get Mr. Dondero's heightened focus to sell MGM, Trussway,

22 or Cornerstone for one dollar above cost.

23      I think the fraudulent transfer claim is probably a pretty

24 solid one.  But why do we have to do this?  Why do we have to

25 do this?

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document Document   Filed 09/0491   Page 139 of 213   PageID 54032

83

1              THE COURT:  Well, one of the reasons I'm asking is I

2       would not set the motion to withdraw the reference status

3       conference on an expedited basis, which I was asked to do a

4       few days ago in these two adversary proceedings, and I can't

5       remember when I've set it, but now I'm even worried, if I

6       grant this motion, is it going to be premature to have that

7       status conference in a month or so, whenever I've set it,

8       because if I grant this motion I'm wondering, am I going to

9       have your motion to amend to add fraudulent transfer claims?

10      It's -- you know, I want to give as complete a package to the

11      District Court as I can whenever I have that motion to

12      withdraw the reference.

13          All right.  Ms. Drawhorn, back to you.  As I said --

14              MS. DRAWHORN:  Yes.

15              THE COURT:  -- before inviting Mr. Morris to make his

16      argument, I know the law is very much on your clients' favor

17      as far as the law construing Rule 15(a).  But my goodness, I'm

18      wondering if your client needs -- your client needs to be

19      careful what they're asking for here, after what I've just

20      heard.

21          Anyway, what -- you get the last word on this.

22              MS. DRAWHORN:  Yes.  Thank you, Your Honor.  My

23      response is that Mr. Morris's argument was all on the merits

24      of the defenses, and certainly he is free to argue on the

25      merits, but that's not a determination for today and that's

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 25    Filed 09/04/21    Page 140 of 213    PageID 54033

84

1    not a determination for the motion for leave to amend.  That's

2    a determination for if he files a dispositive motion.

3        Like I said, we are still in the discovery phase.  Mr.

4    Morris mentioned at least three parties that will be -- likely

5    be deposed and potentially give us the additional information

6    that he's asking for to support this defense.  He mentioned

7    PricewaterhouseCoopers; Nancy Dondero, who he's already got

8    scheduled in a different adversary; Frank Waterhouse.

9        So it's too early, as you know, to look at the merits.

10   That's not -- that's not what's the focus of a motion for

11   leave to amend.

12       As to the -- the what amendment, what agreement, what are

13   the conditions subsequent, I believe we provided sufficient

14   information in our reply.  And if the Court would like us to

15   update our proposed amended answer, if the Court is inclined

16   to grant our motion, we can certainly do that.  But I think

17   the Plaintiff seems to be well aware of what the defenses are,

18   especially after his argument today on why he thinks it's not

19   a valid defense.

20       And then, on the due diligence, we did -- we did do due

21   diligence.  That's why we're seeking to amend the answer,

22   obviously, and add these claims.

23       If the Court -- if the Plaintiff wants to file a motion to

24   amend later, then we can address those amendments then.

25       But I think, on the Rule 15 standard, we have met our

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X    Document 1    Document    File 06/30/21    Page 141 of 213    PageID 54034

85

1  burden and there's no substantial reason to deny the motion to

2  amend to add these defenses.

3          THE COURT:  All right.  By the way, have your

4  clients, have they filed proofs of claim?  And I'm asking for

5  a different reason than maybe I was asking earlier.  NexPoint

6  Real Estate Partners?

7          MS. DRAWHORN:  They're -- NexPoint Real Estate

8  Partners, LLC, formerly known as HCRE Partners, does have a

9  proof of claim on file.  It's unrelated to the notes.  And it

10  is subject to a contested matter that's pending -- that's a

11  separate matter that's before the Court being addressed.

12      And then HCMS initially filed a proof of claim that was

13  objected to in the Debtor's first omnibus objection and then

14  was disallowed.  There was no response to that omnibus

15  objection, so there's no longer a proof of claim for Highland

16  Capital Management Services.

17          THE COURT:  Okay.  Again, I'm just thinking ahead to

18  this report and recommendation I'm eventually going to have to

19  make on the motions to withdraw the reference.  And as I

20  alluded to, if this morphs to the point of including

21  fraudulent transfer claims, that certainly --

22          MS. DRAWHORN:  And Your Honor, one --

23          THE COURT:  It's going to affect the report and

24  recommendation.  And, you know, proofs of claim affect that,

25  too.  So, --

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 25   Page 86 of 491   Page 142 of 213   PageID 54035

86

1              MS. DRAWHORN:  Uh-huh.  Yes.  And I understand that,

2    Your Honor.  And the issue, I think, with you -- we need to

3    have this motion resolved, because it -- unless the Court is

4    going to continue discovery or stay.  You know, one of the

5    reasons why we had initially requested the expedited hearing

6    was because of the discovery is continued -- continuing to --

7    discovery deadlines are continuing to move.  And obviously

8    whatever the Court decides on this motion for leave to amend

9    will determine what the scope of that discovery is.

10        Similarly, if the Debtor decides to amend, that could

11   change the scope of discovery as well.

12        So we are open to continuing deadlines, and I think, you

13   know, might end up filing a motion to continue.  I haven't

14   conferred with Mr. Morris yet.  I suspect he's opposed, based

15   on our prior conversations.  But that's something that might

16   be helpful, especially if the Court is concerned on how it

17   will affect the motion to withdraw the reference, to -- maybe

18   we continue some of these upcoming deadlines, and that might

19   appease, you know, solve some of your concerns.

20             THE COURT:  All right.  Well, Rule 15(a), of course,

21   is the governing rule here, and the case law is abundant that

22   courts "should freely give leave when justice so requires."

23   And the law is also abundantly clear that the rule "evinces a

24   bias in favor of granting leave to amend."  And again and

25   again, cases say that leave should be granted unless there's

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-15   Document   Filed 09/04/21   Page 143 of 213   PageID 54036
                                                                           Page 87 of 191

87

1    substantial reason to deny leave, and courts may consider

2    factors such as delay or prejudice to the non-movant, bad

3    faith or dilatory motives on the part of the movant, repeated

4    failure to cure deficiencies, or futility of the amendment.

5        While the Debtor has presented arguments that there might

6    be bad faith here on the part of the Movants and there might

7    be futility in allowing the amendments because of various

8    strong arguments and defenses the Debtor believes it has to

9    this issue of agreements with regard to the notes that

10   allegedly provide affirmative defenses, the Court believes the

11   rule requires me to allow leave to amend the answer.

12       Now, a couple of things.  I am going to require, though,

13   that the amended answer be more specific than has been

14   suggested.  I am going to agree that if new affirmative

15   defenses are made that there was this agreement to forgive

16   when certain conditions happened, then there does need to be

17   identification of who the human beings were that were involved

18   in making the agreement, the date of any agreement or

19   agreements, and disclose what documents substantiate the

20   agreement or reflect the agreement.  All right?  So if that

21   could --

22            MR. MORRIS:  Your Honor?

23            THE COURT:  Yes?

24            MR. MORRIS:  John Morris.  I apologize for

25   interrupting, but just a fourth thing is what is the

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 1   Filed 09/01/91   Page 144 of 213   PageID 54037
Document   Page 89 of 191

88

 1   agreement?  I mean, what is the agreement?

 2            THE COURT:  Well, okay.  That's fair enough.  What is

 3   the agreement?  I guess --

 4            MR. MORRIS:  And -- and --

 5            THE COURT:  -- that needs to be spelled out.  I mean,

 6   I guess I was assuming that that would be spelled out in --

 7   but maybe it's not.  So we'll go ahead and add that.

 8        As far as extension of the discovery, Ms. Drawhorn has

 9   offered that.  I think it would be reasonable if the Debtor or

10   Plaintiff wants that.  Do you want an extension of discovery?

11            MR. MORRIS:  What I really want, Your Honor, is a

12   direction for them to serve this amended answer within 24 or

13   48 hours and grant leave to the Debtor to promptly file

14   written discovery.  We've got Nancy Dondero -- if it turns out

15   -- and maybe Ms. Drawhorn can just answer the question right

16   now.  Who entered the agreement on behalf of the Debtor?

17   Because I'm already taking Nancy Dondero's deposition on the

18   28th.  And it seems to me, if they would just answer the

19   question of whether Ms. Dondero is the person who did that, I

20   could just add a notice of deposition and take the deposition

21   on that date, too, and it would be, really, more efficient for

22   everybody.

23            THE COURT:  Ms. Drawhorn, who was the human being?

24            MS. DRAWHORN:  Yes.  It was -- yes, Nancy Dondero

25   entered into the -- the subsequent agreement.

Case 21-03007-sgj   Doc 35   Filed 06/12/21   Entered 06/12/21 21:39:05   Desc Main
Case 3:21-cv-00881-X   Document 29-5 Filed 09/04/21   Page 145 of 213   PageID 54038

89

1          MR. MORRIS:  Okay.  Super.

2          THE COURT:  All right.  You said you've already --

3          MR. MORRIS:  So, --

4          THE COURT:  -- got a depo scheduled of her?

5          MS. DRAWHORN:  Well, what's the date --

6          MR. MORRIS:  I do --

7          MS. DRAWHORN:  -- Mr. Morris?

8          MR. MORRIS:  I believe it's the 28th.  Your co-

9    counsel can confirm, but I think it's the 28th.

10       And I'll just get another deposition notice for that one,

11   and we'll figure out a time to take Mr. Sauter's deposition,

12   too.

13       But I don't think that there is a need, frankly, for --

14   having been told by Mr. Dondero that there's no documents

15   related to this, having the Court just ordered the Defendants

16   to disclose the identity of any documents that relate to this

17   agreement, I don't think we need to extend the discovery

18   deadline at all.  I can take Ms. Dondero's deposition, I can

19   take Mr. Dondero's deposition, and I can take Mr. Sauter's

20   deposition in due course over the next four weeks.

21          THE COURT:  All right.  Well, Ms. Drawhorn, we'll say

22   that this amended answer needs to be filed by midnight Friday

23   night, 11:59.  That gives you a day and a half to get it done.

24   All right.  If you could please --

25          MS. DRAWHORN:  Yes, Your Honor.

Case 21-03007-sgj    Doc 35    Filed 06/12/21    Entered 06/12/21 21:39:05    Desc Main
Case 3:21-cv-00881-X   Document 25-1   Filed 09/04/21   Page 146 of 213   PageID 54039
Document    Page 90 of 91

90

1          THE COURT:  Please upload an order, Ms. Drawhorn,

2     granting your motion with these specific requirements that

3     I've orally worked in.

4        I think clients need to be careful what they ask for.  I'm

5     very concerned.  And I know it was just argument and I'll hear

6     evidence, but of all of the things that I guess -- well, I'm

7     concerned about a lot of things, but do we have audited

8     financial statements that didn't disclose these agreements

9     with regard to --

10          MR. MORRIS:  Yes, Your Honor.

11          THE COURT:  I mean, that's -- I'm just -- you know,

12     there's a lot to be concerned about on that point alone, I

13     would think.  But, all right.  If there's nothing further, we

14     are adjourned.  Thank you.

15          THE CLERK:  All rise.

16        (Proceedings concluded at 11:58 a.m.)

17                          --oOo--

18

19                        CERTIFICATE

20        I certify that the foregoing is a correct transcript from
      the electronic sound recording of the proceedings in the
21     above-entitled matter.

22     **/s/ Kathy Rehling**                          **06/12/2021**

23     _____          _____

24     Kathy Rehling, CETD-444                            Date
      Certified Electronic Court Transcriber

25

91

INDEX

PROCEEDINGS                                                                4

WITNESSES

-none-

EXHIBITS

-none-

RULINGS

19-34054-sgj

Motion to Compel Compliance with Bankruptcy Rule 2015.3   49/54
filed by Get Good Trust, The Dugaboy Investment Trust
(2256)

21-3006-sgj

Motion for Leave to File Amended Answer and Brief in       86
Support filed by Defendant Highland Capital Management
Services, Inc. (15)

21-3007-sgj

Motion for Leave to Amend Answer to Plaintiff's            86
Complaint filed by Defendant HCRE Partners, LLC (n/k/a
NexPoint Real Estate Partners, LLC) (16)

END OF PROCEEDINGS                                          90

INDEX                                                       91

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re: | § | |
| Highland Capital Management, L.P. | § | |
| | § | Case No.:    19−34054−sgj11 |
| Debtor(s) | § | Chapter No.:  11 |
| | § | |
| Highland Capital Management, L.P. | § | |
| Plaintiff(s) | § | Adversary No.:   21−03007−sgj |
| vs. | § | |
| HCRE Partners, LLC (n/k/a NexPoint Real Estate | § | |
| Partners, LLC) | § | Civil Case No.: |
| Defendant(s) | § | |
| | § | |
| Highland Capital Management, L.P. | § | |
| Plaintiff(s) | § | |
| vs. | § | |
| HCRE Partners, LLC (n/k/a NexPoint Real Estate | § | |
| Partners, LLC) | § | |
| Defendant(s) | § | |

## NOTICE OF TRANSMITTAL REGARDING WITHDRAWAL OF REFERENCE

I am transmitting:

☑ One copy of the Motion to Withdraw Reference (USDC Civil Action No. − DNC Case) **NOTE**:
A Status Conference has been set for 7/12/2021 at 2:30pm, in  via
https://us−courts.webex.com/meet/jerniga  before U.S. Bankruptcy Judge  Stacey G. Jernigan .
The movant/plaintiff, respondent/defendant or other affected parties are required to attend the
Status Conference.

☑ One copy of:  Brief and Support documents .

**TO ALL ATTORNEYS:** Fed.R.Bankr.P. 5011(a) A motion for withdrawal of a case or proceeding shall be heard by
a district judge, [*implied*] that any responses or related papers be filed likewise.


DATED:  6/14/21                     FOR THE COURT:
                                    Robert P. Colwell, Clerk of Court

                                    by: /s/Sheniqua Whitaker, Deputy Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# WITHDRAWAL OF REFERENCE SERVICE LIST

## Transmission of the Record

BK Case No.:  19−34054−sgj11

Adversary No.:  21−03007−sgj

Received in District Court by:  _____

Date:  _____

Volume Number(s):  _____

cc: Stacey G. Jernigan
    Robert (Bob) Schaaf
    Nathan (Nate) Elner
    Attorney(s) for Appellant
    US Trustee

**Plaintiff**  Highland Capital Management, L.P.

Zachery Z. Annable
Hayward PLLC
10501 N. Central Expressway
Suite 106
Dallas, TX 75231
(972) 755−7108

**Defendant**  HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)

Michael P. Aigen
Stinson, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
(214) 560−2201
Fax : (214) 560−2203
Email: michael.aigen@stinson.com

Deborah Rose Deitsch−Perez
Stinson Leonard Street
3102 Oak Lawn Avenue
Suite 777
Dallas, TX 75219
(214) 560−2201
Fax : (214) 560−2203
Email: deborah.deitschperez@stinson.com

Lauren Kessler Drawhorn
Wick Phillips Gould & Martin, LLP
100 Throckmorton Street
Suite 1500

Fort Worth, TX 76102
(817) 332−7788

BTXN 150 (rev. 11/10)

| | |
|---|---|
| In Re: | § |
| Highland Capital Management, L.P. | § |
| | § |
| Debtor(s) | § Case No.:   19−34054−sgj11 |
| | § Chapter No.:   11 |
| Highland Capital Management, L.P. | § |
| Plaintiff(s) | § Adversary No.:   21−03007−sgj |
| vs. | § |
| HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) | § |
| Defendant(s) | § |

## CIVIL CASE COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I. (a) PLAINTIFF**
Highland Capital Management, L.P.

**(b)** County of Residence of First Listed Party:
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Zachery Z. Annable
Hayward PLLC
10501 N. Central Expressway
Suite 106
Dallas, TX 75231
(972) 755−7108

**DEFENDANT**
HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)

County of Residence of First Listed Party:
(IN U.S. PLAINTIFF CASES ONLY)

Attorney's (If Known)
Michael P. Aigen
Stinson, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
(214) 560−2201
Fax : (214) 560−2203
Email: michael.aigen@stinson.com

Deborah Rose Deitsch−Perez
Stinson Leonard Street
3102 Oak Lawn Avenue
Suite 777
Dallas, TX 75219
(214) 560−2201
Fax : (214) 560−2203
Email: deborah.deitschperez@stinson.com

Lauren Kessler Drawhorn
Wick Phillips Gould & Martin, LLP
100 Throckmorton Street
Suite 1500
Fort Worth, TX 76102
(817) 332−7788

**II. BASIS OF JURISDICTION**

○ 1  U.S. Government
Plaintiff

○ 2  U.S. Government
Defendant

◉ 3  Federal Question
(U.S. Government
Not a Party)

○ 4  Diversity
(Indicate Citizenship
of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**

| | | | |
|---|---|---|---|
| Citizen of This State | ○ 1    ○ 1 | Incorporated *or* Principal Place of Business In This State | ○ 4    ○ 4 |
| Citizen of Another State | ○ 2    ○ 2 | Incorporated *and* Principal Place of Business In Another State | ○ 5    ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3    ○ 3 | Foreign Nation | ○ 6    ○ 6 |

**IV. NATURE OF SUIT**

○ 422 Appeal 28 USC 158      ◉ 423 Withdrawal 28 USC 157      ○ 890 Other Statutory Actions

**V. ORIGIN**

◉ 1  Original Proceeding

○ 2  Removed from State
Court

○ 3  Remanded from Appellate Court

○ 4  Reinstated or
Reopened

○ 5  Transferred from
another district

○ 6  Multidistrict
Litigation

○ 7  Appeal to District Judge from
Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
423 Withdrawal 28 USC 157

Brief description of cause:
Motion to withdraw the reference

**VII. REQUESTED IN COMPLAINT:**

☐     CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23          DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**
Judge:                                           Docket Number: 3:21−cv−01378−N

DATED:  6/14/21                      FOR THE COURT:
                                     Robert P. Colwell, Clerk of Court
                                     by: /s/Sheniqua Whitaker, Deputy Clerk

Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

**COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Case No.: 19-34054-sgj11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adv. Pro. No. 21-03007-sgj** |
| vs. | § | |
| | § | |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC),** | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE

Defendant NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP" or

"Defendant") files this Motion seeking to withdraw the reference of Highland Capital Management

L.P.'s ("Plaintiff" or "Debtor") Complaint for (I) Breach of Contract and (II) Turnover of Property

of the Debtor's Estate (the "Complaint") from the United States Bankruptcy Court for the Northern

District of Texas (the "Bankruptcy Court") to the United States District Court for the Northern

District of Texas (the "<u>District Court</u>") under <mark>28 U.S.C. §§ 157(d)</mark> and <mark>(e)</mark>, <mark>Federal Rule of Bankruptcy Procedure 5011</mark> and Local Bankruptcy Rule 5011-1.[1] In support of its Motion, Defendant respectfully states as follows:

1.      This Adversary Proceeding was automatically referred to the Bankruptcy Court under <mark>28 U.S.C. § 157(a)</mark> and District Court Miscellaneous Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc*.

2.      Under <mark>28 U.S.C. § 157(d)</mark> and for the reasons set forth in the accompanying *Brief in Support of Defendant's Motion to Withdraw the Reference*, as supported by the *Appendix in Support of Defendant's Motion to Withdraw the Reference*, filed contemporaneously herewith and incorporated by reference herein, Defendant respectfully requests that the District Court withdraw from the Bankruptcy Court the reference (*i.e.* the referral) of the Adversary Proceeding, in which case the Adversary Proceeding will continue as a Civil Action in the District Court.

For these reasons, Defendant respectfully requests that the Court enter an order (i) granting the Motion; (ii) withdrawing from the Bankruptcy Court the reference of this Adversary Proceeding; and (iii) granting Defendant such other and further relief to which it may be entitled.

---

[1]   This motion for withdrawal "shall be heard by a district judge;" however, under Local Bankruptcy Rule 5011-1(a), the motion must be filed with the Clerk of the Bankruptcy Court. <mark>Fed. R. Bankr. P. 5011(a)</mark>; L.B.R. 5011-1(a). Accordingly, this motion is addressed to the District Court, but filed in the Bankruptcy Court.

Respectfully submitted,

/s/ Lauren K. Drawhorn

Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email:  jason.rudd@wickphillips.com
            lauren.drawhorn@wickphillips.com

**COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 2-3, 2021, I conferred with counsel for the Plaintiff regarding the relief requested herein. Counsel for Plaintiff indicated it is unopposed to the Motion to Withdraw on the condition that the Bankruptcy Court include in its report and recommendation to the District Court that the Bankruptcy Court will hear all pre-trial matters, including summary judgment motions.

/s/ Lauren K. Drawhorn

Lauren K. Drawhorn

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 3, 2021, a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system upon counsel for the Plaintiff and all other parties requesting or consenting to such service in this adversary case.

| | |
|---|---|
| Jeffrey N. Pomerantz | Melissa S. Hayward |
| jpomerantz@pszjlaw.com | MHayward@HaywardFirm.com |
| John A. Morris | Zachery Z. Annable |
| jmorris@pszjlaw.com | ZAnnable@HaywardFirm.com |
| Gregory V. Demo | HAYWARD PLLC |
| gdemo@pszjlaw.com | 10501 N. Central Expy, Ste. 106 |
| Hayley R. Winograd | Dallas, Texas 75231 |
| hwinograd@pszjlaw.com | Fax: (972) 755-7110 |
| PACHULSKI STANG ZIEHL & JONES LLP | |
| 10100 Santa Monica Blvd., 13th Floor | |
| Los Angeles, California 90067 | |
| Facsimile: (310) 201-0760 | |
| *Counsel for Highland Capital Management, L.P.* | |

                    */s/ Lauren K. Drawhorn*
                    Lauren K. Drawhorn

Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | **Case No.: 19-34054-sgj11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | **Adv. Pro. No. 21-03007-sgj** |
| vs. | § | |
| | § | |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC),** | § | |
| | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S BRIEF IN SUPPORT
## OF ITS MOTION TO WITHDRAW THE REFERENCE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................III

I. INTRODUCTION ..........................................................................................1

II. RELEVANT BACKGROUND.......................................................................3

    A.    The Bankruptcy Case ...........................................................................3

    B.    The NREP Proof of Claim ....................................................................3

    C.    This Adversary Proceeding...................................................................4

III. ARGUMENTS AND AUTHORITY ..............................................................5

    A.    Defendant demands a jury trial and does not consent to a jury trial in the
            Bankruptcy Court.................................................................................7

    B.    HCRE has not a waived its' jury trial right or right to Article III adjudication.......9

    C.    The Bankruptcy Court does not have constitutional authority to enter a final
            judgment in this Adversary Proceeding. ..............................................11

    D.    The remaining applicable *Holland* factors favor withdrawal. ..............12

    E.    The District Court is best suited to conduct pretrial proceedings as well as
            hear the sole pending and determinative breach of contract claim. ......16

IV. CONCLUSION.............................................................................................17

CERTIFICATE OF SERVICE ...........................................................................18

## TABLE OF AUTHORITIES

*Cases*

*Bleecker v. Standard Fire Inc. Co.*,
   130 F. Supp. 2d 726 (E.D.N.C. 2000) ........................................................... 10
*Bowles v. Bennett*,
   629 F.2d 1092 (5th Cir.1980) ...................................................................... 10
*BP RE, L.P. v. RML Waxahachie Dodge, L.L.P. (In re DP RE, L.P.)*,
   735 F.3d 279 (5th Cir. 2013) ...................................................................... 12
*Case Energy Servs., LLC v. Padco Energy Servs., LLC*,
   No. CV 17-1043, 2017 WL 4544719 (W.D. La. Oct. 11, 2017) ........................ 9, 10
*Curtis v. Cerner Corp.*,
   No. 7:29-CV-00417, 2020 WL 1983937 (S.D. Tex. Apr. 27, 2020) .................... 16
*Dimick v. Schiedt*,
   293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935) ........................................ 10
*Granfinanciera, S.A. v. Norberg*,
   492 U.S. 33 (1989) ............................................................................. 7, 12
*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985) ......................................................................... 6
*In re Align Strategic Partners LLC*,
   No. 16-35702, 2019 WL 2527221 (Bankr. S.D. Tex. Mar. 5, 2019) ................... 14
*In re Bella Vita Custom Homes*,
   No. 16-34790-BJH, 2018 WL 2966838 (N.D. Tex. May 29, 2018) ...................... 8
*In re Brown Med. Ctr., Inc.*,
   No. BR 15-3229, 2016 WL 406959 (S.D. Tex. Feb. 3, 2016) ........................... 16
*In re CBI Holding Co.*,
   529 F.3d 432 (2d Cir. 2008) .......................................................................... 9
*In re Gulf States Long Term Acute Care of Covington, L.L.C.*,
   455 B.R. 869 (E.D. La. 2011) ...................................................................... 14
*In re Guynes Printing Co. of Tex., Inc.*,
   No. 15-CV-149-KC, 2015 WL 3824070 (W.D. Tex. June 19, 2015) ................... 16
*In re Keener*,
   No. 03-44804, 2008 WL 912933 (Bankr. S.D. Tex. Apr. 2, 2008) ....................... 8
*In re Lapeyre*,
   No. CIV. A. 99-1312, 1999 WL 486888 (E.D. La. July 8, 1999) ....................... 13
*In re Lopez*,
   No. 09-70659, 2017 WL 3382099 (Bankr. S.D. Tex. Mar. 20, 2017) .................. 14
*In re MPF Holding US LLC*,
   No. 08-36084-H4-11, 2013 WL 12146958 (Bankr. S.D. Tex. Apr. 26, 2013) .... 6, 15
*In re Royce Homes, LP*,
   578 B.R. 748 (Bankr. S.D. Tex. 2017) ........................................................... 14
*In re Satelco, Inc.*,
   58 B.R. 781 (Bankr. N.D. Tex. 1986) ............................................................. 8
*In re Sentry Operating Co. of Texas, Inc.*,
   273 B.R. 515 (Bankr. S.D. Tex. 2002) ........................................................... 10

*In re Soundview Elite Ltd.*,
   543 B.R. 78 (Bankr. S.D.N.Y. 2016) ......................................................................... 8
*McAfee v. U.P. Martin*,
   63 F.3d 436 (5th Cir.1995) ........................................................................................ 10
*McManus-Wyatt Produce Co. v. Tex. Dep't of Agric. Produce Recovery Fund Bd.*,
   140 S.W.3d 826 (Tex. App. 2004) .............................................................................. 7
*Mirant Corp. v. The Southern Co.*,
   337 B.R. 107 (N.D. Tex. Jan. 10, 2006) ................................................................... 15
*NuVan Tech., Inc. v. Cottrell, Inc.*,
   No. 01-49589-DML-11, 2003 WL 23785355 (Bankr. N.D. Tex. Oct. 14, 2003) ..... 12
*Perlman v. Wells Fargo Bank, N.A.*,
   No. 10-81612-CV, 2012 WL 12854876 (S.D. Fla. Apr. 3, 2012) .............................. 10
*Schott, Tr. for Est. of InforMD, LLC v. Massengale*,
   618 B.R. 444 (M.D. La. 2020) ................................................................................... 10
*Stern v. Marshall*,
   564 U.S. 462, 131 S.Ct. 2594 (2011) ............................................................... 9, 11, 12
*Tex.Capital Bank, N.A. v. Dallas Roadster, Ltd.*,
   Adv. No. 13-40332013 WL 5758632 (E.D. Tex. Bankr. Sept. 27, 2013) ................ 13
*Tow v. Speer*,
   No. 09-32467-H4-7, 2011 WL 13340482 (Bankr. S.D. Tex. Oct. 13, 2011) ............ 12
*U.S. Bank Nat. Ass'n v. Verizon Comm. Inc.*,
   761 F.3d 409 (5th Cir. 2014) ................................................................................. 9, 10
*Veldekens v. GE HFS Holdings, Inc.*,
   362 B.R. 762 (S.D. Tex. 2007) .................................................................................. 14
*Waldman v. Stone*,
   698 F.3d 910 (6th Cir. 2012) ..................................................................................... 12
*Wellness Int'l Network, Ltd. v. Sharif*,
   575 U.S. 665, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015) ............................................ 12

**Statutes**

11 U.S.C. § 542(b) ..................................................................................................... 4, 8
28 U.S.C. § 157(a) ........................................................................................................... 1
28 U.S.C. § 157(b)(2) ...................................................................................................... 8
28 U.S.C. § 157(c)(1) ..................................................................................................... 15
28 U.S.C. § 157(d) ...................................................................................................... 1, 5
28 U.S.C. § 157(e) ......................................................................................................... 11
28 U.S.C. § 1334(a), (b) .................................................................................................. 1
28 U.S.C. §§ 157(d) and (e) ........................................................................................... 1

**Rules**

Fed. R. Bankr. P. 9033(a), (d) ...................................................................................... 15
Federal Rule of Bankruptcy Procedure 5011 .................................................................. 1

Defendant NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP" or "Defendant") files this Brief in Support of its Motion seeking to withdraw the reference of Highland Capital Management L.P.'s ("Plaintiff" or "Debtor") Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate (the "Complaint") from the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") to the United States District Court for the Northern District of Texas (the "District Court") under 28 U.S.C. §§ 157(d) and (e), Federal Rule of Bankruptcy Procedure 5011 and Local Bankruptcy Rule 5011-1.[1] In support of its Motion, and respectfully states as follows:

## I. INTRODUCTION

1.    Federal district courts have original and exclusive jurisdiction of civil cases under title 11 and original but not exclusive jurisdiction of proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334(a), (b). District courts can refer these cases and proceedings to the bankruptcy court within that district. 28 U.S.C. § 157(a). This Adversary Proceeding is referred to the Bankruptcy Court under a local order of the United States District Court for the Northern District of Texas. *Ord. of Reference of Bankr. Cases and Proc. Nunc Pro Tunc, In re Misc. Ord*. No. 33, No. 3:04-MI-00033 (N.D. Tex. Oct. 4, 1982) (the "Reference Order").

2.    Defendant respectfully requests the United States District Court for the Northern District of Texas, Dallas Division withdraw the Reference Order as to the above-referenced Adversary Proceeding for all purposes, including all pre-trial matters, under 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a) and the Northern District of Texas Local

---

[1]    This motion for withdrawal "shall be heard by a district judge;" however, under Local Bankruptcy Rule 5011-1(a), the motion must be filed with the Clerk of the Bankruptcy Court.  Fed. R. Bankr. P. 5011(a); L.B.R. 5011-1(a). Accordingly, this motion is addressed to the District Court, but filed in the Bankruptcy Court.

Bankruptcy Rule 5011-1(a). Defendant has a constitutional right to a jury trial under the Seventh Amendment if a trial is necessary. Defendant does not consent to the Bankruptcy Court conducting a jury trial in this Adversary Proceeding and does not consent to the Bankruptcy Court entering final orders or judgments in this Adversary proceeding. In addition, Defendant respectfully requests that the reference be withdrawn immediate because: (1) the Bankruptcy Court has not yet decided any substantive matters related to these claims; (2) the inherent nature of the state law breach of contract claim is not within the specialized expertise of the Bankruptcy Court; and (3) efficiency and expediency would be served by obviating the need for two courts to become familiar with this matter, when the District Court can efficiently and cost-effectively address the pretrial matters and jury trial on the foundational breach of contract issue.

3.      The Bankruptcy Court already determined it should recommend the reference be withdrawn in three similar adversary proceedings in which the Debtor asserts breach of contract and turnover claims based on certain demand and term notes. *Highland Capital Management LP v. Dondero*, Adv. No. 21-03003; *Highland Capital Management LP v. Highland Capital Management Fund Advisors, L.P.*, Adv. No. 21-03004; *Highland Capital Management LP v. NexPoint Advisors LP*, Adv. No. 21-03005.[2] The claims, facts, and circumstances surrounding those adversary proceedings and motions to withdraw the reference are substantially similar to the claims, facts, and circumstances here. As such, Defendant respectfully requests the Bankruptcy Court determine the reference should similarly be withdrawn here.

---

[2]    The Bankruptcy Court concluded it would follow the "usual protocol" and recommend that the reference only be withdrawn at such time as the matters are trial ready and therefore recommend the District Court defer to the bankruptcy judge to handle all pretrial matters. Defendant respectfully requests that, due to the nature of this Adversary Proceeding and the underlying issues, it would be beneficial to all parties and a more effective use of the parties' and Court's time to have the District Court withdraw the reference for pretrial matters as well as opposed to having to revisit potentially every order the Bankruptcy Court enters in the interim before trial.

## II.  RELEVANT BACKGROUND

### A.    The Bankruptcy Case

4.    On October 16, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") commencing this Bankruptcy Case in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). On October 29, 2019, the Delaware U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). On December 4, 2019, the Delaware Bankruptcy Court entered an Order transferring venue of this Bankruptcy Case to the United States Bankruptcy Court for the Northern District of Texas.

5.    On November 24, 2020, the Debtor filed its *Disclosure Statement* [Dkt. No. 1473] (the "Disclosure Statement") for the *Fifth Amended Plan of Reorganization* [Dkt. No. 1472, as modified Dkt. No. 1808] (the "Plan"). The Bankruptcy Court approved the Disclosure Statement on November 24, 2020 [Dkt. No. 1476] and set a hearing to consider the confirmation of the Plan on January 14, 2021, which was continued to January 26, 2021, and then again to February 2, 2021. On February 22, 2021, after a hearing, the Bankruptcy Court entered its *Order Confirming the Plan* [Dkt. No. 1943] (the "Confirmation Order").[3] The Confirmation Order is currently on appeal.

### B.    The NREP Proof of Claim

6.    On April 8, 2020, NREP filed Proof of Claim No. 146 asserting a relating to its interest in SE Multifamily Holdings, LLC (the "Proof of Claim").[4] On July 30, 2020, the Debtor filed its *First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims* [Dkt. No. 906] ("First Omnibus Objection"), including objections to the

---

[3]   App. 087-248 (Order Confirming Fifth Amended Plan of Reorganization).
[4]   App. 070-075 (Proof of Claim).

NREP Proof of Claim. On October 19, 2020, NREP filed its Response to the First Omnibus

Objection, asserting a claim against the Debtor because the SE Multifamily Holdings LLC

company agreement improperly allocates the ownership percentages of the members due to mutual

mistake, lack of consideration, and/or failure of consideration and seeking to reform, rescind,

and/or modify the company agreement [Dkt. 1212] ("NREP Response to Claim Objection"),

initiating a contested matter.[5] Accordingly, while the NREP Proof of Claim has not yet been

resolved, the result of finding in favor of NREP will result in the modification of the company

agreement, not a claim or setoff against the Debtor's estate.

**C.      This Adversary Proceeding**

7.      On January 22, 2021, the Debtor filed its Complaint initiating the above-referenced

Adversary Proceeding against Defendant. In the Complaint, the asserting two causes of action: (i)

the state law, non-core breach of contract claim, and (ii) asserting turnover under 11 U.S.C. §

542(b). The Complaint alleges Defendant breached four demand notes in the aggregate principal

amount of $4,250,000 and one term note in the aggregate principal amount of $6,059,831.51.[6]

8.      Defendant's counsel accepted service of the Complaint on February 1, 2021, and

the parties agreed that Defendant's deadline to answer or otherwise respond to the Complaint was

March 3, 2021. Defendant filed its Answer on March 3, 2021, expressly stating it did not consent

to the Bankruptcy Court entering final orders or judgment, that it did not consent to the Bankruptcy

Court conducting a jury trial, and that it demanded a jury trial. [Dkt. No. 7, ¶¶ 3-5, 59-60].[7]

9.      On May 10, 2021, Defendant filed its Motion for Leave to Amend its Answer,

seeking to add in two affirmative defenses, among other things. [Dkt. No. 16].[8] The hearing on

---

[5]    App. 076-086 (Dkt. 1212 Response).
[6]    App. 001-038 (Complaint).
[7]    App. 039-048 (Answer).
[8]    App. 049-069 (Motion for Leave).

Defendant's Motion for Leave is set for June 10, 2021. Defendant again states in its proposed First Amended Answer that it does not consent to the Bankruptcy Court entering final orders or judgment, that it does not consent to the Bankruptcy Court conducting a jury trial and demanding a jury trial. [Dkt. No. 16-1, ¶¶ 3-5, 60-61].[9]

10.     Because this Adversary Proceeding involves the non-core proceeding of a state law breach of contract claim, for which Defendant is entitled to a jury trial, the result of Plaintiff's breach of contract claim wholly controls the determination of Plaintiff's turnover claim. As such, the claims asserted by the Plaintiff arise under state law and because, at a minimum, the District Court will be conducting a *de novo* review, cause exists for permissive withdrawal of the reference for the entire Adversary Proceeding.

### III.  ARGUMENTS AND AUTHORITY

11.     Under the Reference Order, "any and all cases under Title 11 and any all proceeding arising under Title 11 or arising in or related to a case under Title 11 … which may be filed herein hereafter … be and they hereby are referred to the Bankruptcy Judges of this District for consideration and resolution consistent with law." However, 28 U.S.C. § 157(d) authorizes the district court to withdraw the reference in certain circumstances: "[t]he district court may withdraw, in whole or in party, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

12.     The Fifth Circuit has set forth a number of factors to consider in determining whether to withdraw the reference for cause, including: (i) whether the proceeding involves core or non-core issues; (ii) whether a party has demanded a jury trial; (iii) whether the withdrawal would promote uniformity in bankruptcy administration; (iv) whether the withdrawal reduces

---

[9]   App. 058-067 – Motion for Leave, Ex. A.

forum shopping; (v) whether the withdrawal would foster the economical use of the debtors' and creditors' resources; and (vi) whether the withdrawal would expedite the bankruptcy process. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998-99 (5th Cir. 1985).[10]

13.     Here, the factors support the District Court withdrawing the reference for this Adversary Proceeding. The Bankruptcy Court does not have constitutional authority to enter a final judgment in this action without the consent of Defendant. More importantly, Defendant has a right to a jury trial. Not only do the *Holland* factors militate in favor of withdraw of the reference, but courts within this Circuit recognize that the right to a jury trial should be given substantial weight in undertaking an analysis of withdrawal of the reference. *In re MPF Holding US LLC,* No. 08-36084-H4-11, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013). For these reasons, the District Court should grant this Motion, withdraw the reference as to this Adversary Proceeding, and hear all matters in connection with the Adversary Proceeding.

---

[10] L.B.R. 5011-1 provides that the Bankruptcy Court conduct a status conference upon motions to withdraw reference and after such conference the Bankruptcy Court shall prepare a report and recommendation to the District Court. At the status conference the Bankruptcy Court shall consider:
>    (1) whether any response to the motion to withdraw the reference was filed;
>    (2) whether a motion to stay the proceeding pending the district court's decision on the motion to withdraw the reference has been filed, in which court the motion was filed, and the status (pending, granted or denied) of the motion;
>    (3) whether the proceeding is core or non-core, or both and with regard to the noncore and mixed issues, whether the parties consent to entry of a final order by the bankruptcy judge;
>    (4) whether a jury trial has been timely requested, and if so, whether the parties consent to the bankruptcy judge conducting a jury trial, and whether the district court is requested to designate the bankruptcy judge to conduct a jury trial;
>    (5) if a jury trial has not been timely requested or if the proceeding does not involve a right to jury trial;
>    (6) whether a scheduling order has been entered in the proceeding;
>    (7) whether the parties are ready for trial;
>    (8) whether the bankruptcy judge recommends that
>>           (A) the motion be granted,
>>           (B) the motion be granted upon certification by the bankruptcy judge that the parties are ready for trial,
>>           (C) the motion be granted but that pre-trial matters be referred to the bankruptcy judge, or
>>           (D) the motion be denied; and
>    (9) any other matters relevant to the decision to withdraw the reference.

*See* L.B.R. 5011-1(a).

---

**A.      Defendant demands a jury trial and does not consent to a jury trial in the Bankruptcy Court.**

14.      Under applicable law, the Defendant has a right to a jury trial on the Debtor's breach of contract claim. The Seventh Amendment provides the right to a jury trial in cases where the amount in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at least analogous to one which was tried at law (as opposed to equitable suits) in the late 18th century English courts. *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 41 (1989). This analysis requires (i) a comparison of the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity and (ii) a determination as to whether the remedy sought is legal or equitable in nature. *Id*. at 42. The second prong is considered the more significant of the two. *Id*.

15.      Count I of the Complaint asserts a breach of contract claim on various demand and term notes between the Plaintiff and Defendant (the "Notes"). All of the Notes are "governed by the laws of the United States of America and by the laws of the State of Texas . . . ."[11] The Texas Constitution guaranties a party to a contract a jury trial, and Defendant is therefore entitled to a jury trial on Plaintiff's breach of contract claim. *McManus-Wyatt Produce Co. v. Tex. Dep't of Agric. Produce Recovery Fund Bd.*, 140 S.W.3d 826, 833 (Tex. App. 2004) (holding the Texas Constitution, at Art. 1, §15, and by practice previously, provides a right to jury trial in breach of contract cases, such that a party's "right to defend against [a breach of contract claim], and to bring its own claim for breach of contract, were established rights that could be tried to a jury before the enactment of our constitution in 1876.").

---

[11]   App. 013-024; 029-032 – Complaint, Exs. 1-4, 6.

16.     In addition, Plaintiff's breach of contract claim is non-core proceeding. A claim involving a pre-petition contract (even if the alleged breach is post-petition) is not a core proceeding. *In re Keener*, No. 03-44804, 2008 WL 912933, at *3 (Bankr. S.D. Tex. Apr. 2, 2008) (where a contract entered pre-petition was allegedly breached post-petition, the bankruptcy court, assessing 28 U.S.C. § 157(b)(2), determined the breach of contract claim to be non-core); *In re Bella Vita Custom Homes*, No. 16-34790-BJH, 2018 WL 2966838, at *2 (N.D. Tex. May 29, 2018), report and recommendation adopted sub nom. *In re Bella Vita Custom Homes, LLC*, No. 3:18-CV-0994-N, 2018 WL 2926149 (N.D. Tex. June 8, 2018) (holding the sole cause of action is a breach of contract claim against a non-debtor, which is non-core under 28 U.S.C. § 157(b)(2)). While Plaintiff also asserts a turnover claim under Bankruptcy Code section 542(b)—which, if free-standing, is a core claim—such claim is wholly derivative of the breach of contract claim and, thus, does not magically transform the non-core matter to a core matter. Instead, it is improper to bring a turnover claim "as a Trojan Horse for bringing garden variety contract claims . . ." *In re Soundview Elite Ltd.*, 543 B.R. 78, 97 (Bankr. S.D.N.Y. 2016) (citation omitted); *see also, Satelco, Inc.*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986) ("Unless and until Debtor's claims against the defendants are liquidated in a court of competent jurisdiction or by agreement, they cannot be enforced here through a turnover order.").

17.     For example, in *In re Soundview Elite Ltd.*, 543 B.R. 78, 82 (Bankr. S.D.N.Y. 2016), the trustee sought turnover of the debtor's investment in the debtor's wholly owned company. When determining whether the bankruptcy court had the constitutional authority to hear the turnover claim, the SDNY found, that while this "matter [was] close" on this issue, the trustee using turnover to pursue non-core claims was constitutionally inappropriate given *Stern*, in substantial part because the amount to be turned over was uncertain. *Id.* at 97-8.

18.     Here the amount to be turned over is similarly uncertain because it depends on the resolution of the breach of contract claim. The result is that Count I must be tried before a jury, in District Court, to determine what, if any, balance is owed, the result directly driving the turnover claim. Compounding the above with Defendant's clear demand for a jury trial, and express lack of consent to the Bankruptcy Court entering final orders or holding a jury trial, the result is the first two factors under *Granfinanciera* are undoubtedly met.

**B.    HCRE has not a waived its' jury trial right or right to Article III adjudication.**

19.     In the Bankruptcy Case, HCRE filed proofs of claim, which are unrelated and will not result in any set off or offset in connection with this Adversary Proceeding. Notably, the mere filing of a proof of claim does not constitute a waiver of the right to trial by jury. Filing "a proof of claim is a necessary but not sufficient condition to forfeiting a creditor's right to a jury trial." *In re CBI Holding Co*., 529 F.3d 432, 460 (2d Cir. 2008). "Rather, a creditor loses its jury trial right ***only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim***." *Id.* (emphasis added); *accord Stern,* 564 U.S. 462, 499, 131 S.Ct. 2594 (2011) (stating in the Article III context that "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."); *see also U.S Bank Nat. Ass'n v. Verizon Comm. Inc.*, 761 F.3d 409, 418 (5th Cir. 2014) (the right to a jury is waived where the resolution of a creditor's a claim "[would] necessarily require resolution" of a creditor's claims against the debtor). As a court in this Circuit recently explained, the Fifth Circuit has interpreted *Stern* not to mean that a chapter 5 cause of action was integrally related to the restructuring of the debtor-creditor relationship simply because the creditor filed a claim. *Case Energy Servs., LLC v. Padco Energy Servs., LLC*, No. CV 17-1043, 2017 WL 4544719, at *5 (W.D. La. Oct. 11, 2017) (interpreting *U.S. Bank* and *Stern*). Rather, "to decide

whether a creditor is entitled to a jury trial, courts must examine whether the resolution of the creditor's proofs of claim will necessarily require the resolution of the debtor's claims against the creditor." *Id*. (citing to *U.S. Bank*, 761 F.3d at 418-19).

20.     Applying this precedent, to determine if a jury right was extinguished with the filing of a proof of claim, courts within this Circuit consider "in relevant part: whether the proofs of claim had been resolved, and, if not, whether their resolution would necessarily require the resolution of the debtor's fraudulent transfer claims (asserted by the Trustee)." *Schott, Tr. for Est. of InforMD, LLC v. Massengale*, 618 B.R. 444, 451–52 (M.D. La. 2020) (citing to *U.S. Bank*, 761 F.3d at 418). In addition, the right to a jury trial is evaluated claim by claim rather than for a case in its entirety. *See, e.g., Bleecker v. Standard Fire Inc. Co*., 130 F. Supp. 2d 726, 737 (E.D.N.C. 2000); *Perlman v. Wells Fargo Bank, N.A.*, No. 10-81612-CV, 2012 WL 12854876, at *3 (S.D. Fla. Apr. 3, 2012); *In re Sentry Operating Co. of Texas, Inc*., 273 B.R. 515 (Bankr. S.D. Tex. 2002) (explaining that a creditor retains a jury trial right "with respect to any issue" not part of its filed pleading). "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Bowles v. Bennett*, 629 F.2d 1092, 1095 (5th Cir.1980) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935)). Thus, courts should "indulge every reasonable presumption against waiver" and waiver should not be found in a "doubtful situation." *McAfee v. U.P. Martin*, 63 F.3d 436, 437 (5th Cir.1995) (quoting *Bowles*, 629 F.2d at 1095).

21.     Here, while HCRE filed the Proof of Claim, the Proof of Claim does not and will not involve the allowance of claims process and the HCRE's Proof of Claim has no effect upon this Adversary Proceeding. Defendant has a right to a jury trial and does not consent to the

Bankruptcy Court conducting a jury trial. <mark>28 U.S.C. § 157(e)</mark> (permitting a bankruptcy judge to conduct a jury trial if the judge is specifically designated to exercise such authority by the district court, but only with the express consent of all the parties). Nor has Defendant waived its right to an Article III adjudication. The Bankruptcy Court has recently determined that these circumstances, in similar adversary proceedings brought by the same Debtor, were sufficient to recommend the District Court withdraw the reference. *Highland Capital Management LP v. Dondero*, Adv. No. 21-03003; *Highland Capital Management LP v. Highland Capital Management Fund Advisors, L.P.*, Adv. No. 21-03004; *Highland Capital Management LP v. NexPoint Advisors LP*, Adv. No. 21-03005.

**C.     The Bankruptcy Court does not have constitutional authority to enter a final judgment in this Adversary Proceeding.**

22.     The Bankruptcy Court does not have the constitutional authority to enter a final judgment in this action because determination of the Plaintiff's claims cannot be involved in the claims-allowance process.

23.     In *Stern v. Marshall*, the United States Supreme Court held that even though bankruptcy courts are statutorily authorized to enter final judgment on certain types of bankruptcy related claims, Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims. *Stern v. Marshall*, <mark>564 U.S. 462</mark> (2011). Because there is no claim allowance or disallowance process related to HCRE's Proof of Claim, the Plaintiff's claims are *Stern*-type claims. *Id.*

24.     *Stern* clarified that "*Langenkamp* ... explained ... that a preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because then the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship." *Id.* But, in *Stern*, "there was never any reason to believe that the process of

adjudicating [the creditor's] proof of claim would necessarily resolve [the debtor's] counterclaim." *Id*. In fact, in *Stern* the non-estate party had filed a claim that had been resolved by summary judgment (against the claimant); in this case the HCRE proof of claim will not result in any monetary set off or offset, instead, it will result in the modification or reformation of an company agreement. The *Stern* court maintained the rights of the party against whom the estate representative was proceeding to Article III adjudication, which is what Defendant here seeks.

25.    Here, Plaintiff pleads state law claims at common law which are not integral to the restructuring of debtor-creditor relations. *Granfinanciera*, 492 U.S. at 58-59. While the Plaintiff's claims would augment the bankruptcy estate, the claims will not necessarily be resolved in the claims allowance process and therefore, the Bankruptcy Court is constitutionally prohibited from entering a final judgment. *BP RE, L.P v. RML Waxahachie Dodge, L.L.P. (In re DP RE, L.P.)*, 735 F.3d 279, 286 (5th Cir. 2013) (quoting *Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012)).

26.    The Defendant does not consent to the Bankruptcy Court entering final orders on these claims. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015) (explaining that "consent—whether express or implied—must still be knowingly and voluntary"). There has been no knowing or voluntary consent by the Defendant, and as such, the Bankruptcy Court cannot enter final orders on the Plaintiff's claims.

**D.    The remaining applicable *Holland* factors favor withdrawal.**

27.    As discussed above, in its Answer (and Amended Answer if leave to amend is granted) Defendant demands a jury trial and Article III adjudication. Therefore, this factor mandates withdrawal of the reference. *See e.g. Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01-49589-DML-11, 2003 WL 23785355, *4 (Bankr. N.D. Tex. Oct. 14, 2003) ("[T]his court is convinced that Plaintiff's claims must be heard by an Article III court and that the reference must be withdrawn."); *Tow v. Speer (In re Royce Homes, L.P.)*, No. 09-32467-H4-7,

2011 WL 13340482, *5 (Bankr. S.D. Tex. Oct. 13, 2011) (noting that a valid jury demand is a "crucial factor" in a *Holland* analysis); *In re Lapeyre*, No. CIV. A. 99-1312, 1999 WL 486888, *3 (E.D. La. July 8, 1999) ("[T]he inability of a bankruptcy court to hold a jury trial in a related matter is sufficient ground for a district court to withdraw reference…"). Analysis of the other factors—uniformity, forum shopping, and efficiency—also support withdrawal of the reference.

28.    Withdrawing the reference would not at all undermine uniformity in the administration of the bankruptcy. While the Bankruptcy Court may be familiar with certain of the parties, and of the business of the Debtor, it is not familiar with the facts of this Adversary Proceeding. As of the date of this filing, no hearings have been held in this matter; no scheduling orders have been issued.  Not even all defendants have been served. No evidentiary hearings have been held or motions on the merits of the claims in the Adversary Proceeding have been filed to allow the Bankruptcy Court to gain familiarity with the underlying facts in the Adversary Proceeding.  S*ee Tex. Capital Bank, N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.),* Case No. 11-43725, Adv. No. 13-40332013 WL 5758632, at *2 (E.D. Tex. Bankr. Sept. 27, 2013), report and recommendation adopted, 11-43725, 2013 WL 5769916 (E.D. Tex. Oct. 21, 2013) ("[t]he claims in the Adversary Proceeding are predominantly based on state law, and there are no claims under federal bankruptcy law. Thus, the District Court's determination of the merits of these claims should not undermine any concerns for the uniformity of bankruptcy administration."). In addition, the Bankruptcy Court recommended the reference be withdrawn in several similar adversary proceedings in which the Debtor asserts breach of contract and turnover in connection with certain demand and term notes.[12]

---

[12]  *Highland Capital Management L.P. v. James D. Dondero*, Adv. No. 21-03003, [Dkt. No. 53]; *Highland Capital Management L.P. v. Highland Capital Management Fund Advisors, L.P.*, Adv. No. 21-03004, [Dkt. No. 36]; *Highland Capital Management L.P. v. NexPoint Advisors, L.P.*, Adv. No. 21-03005, [Dkt. No. 30].

29.     While it is true that any motion to withdraw the reference is "'[i]n some sense . . .

forum shopping[,] . . . '[a] good faith claim of right, even when motivated (at least in part) by a

desire for a more favorable decision maker, should not on that basis alone be denied as forum

shopping.'" *In re Royce Homes, LP,* 578 B.R. 748, 761 (Bankr. S.D. Tex. 2017) (citation omitted).

The critical focus is whether the movant is engaging in bad faith or improper forum shopping by,

for example, "'lay[ing] behind the log' to determine how [the Bankruptcy Court] would rule before

filing its motion to withdraw the reference." *Id.* "A good faith claim of right ... should not on that

basis alone be denied as forum shopping." *Veldekens v. GE HFS Holdings, Inc.,* 362 B.R. 762

(S.D. Tex. 2007) (quoted in Royce Homes, Adv. No. 11–03191. Adv. Doc. No. 201, p. 7, ¶ 3).

Here, Defendant has a good faith right to a jury trial in the District Court. *In re Align Strategic*

*Partners LLC,* No. 16-35702, 2019 WL 2527221, at *4 (Bankr. S.D. Tex. Mar. 5, 2019). Given

the early stage of this adversary proceeding, Defendant is plainly not engaging in bad faith or

improper forum shopping. *Compare In re Royce Homes, LP,* 578 B.R. at 761 (where party moved

quickly to withdraw the reference, before any substantive rulings had been made, party did not

engage in bad faith forum shopping) *with In re Lopez,* No. 09-70659, 2017 WL 3382099, at *10

(Bankr. S.D. Tex. Mar. 20, 2017) (holding that confusion was more likely if reference was

withdrawn when defendant did not move to withdraw the reference until over one year after

adversary proceeding was filed).

30.     Concerns of judicial efficiency weigh in favor of withdrawing the reference.  First,

because there will be a jury trial, it will be more efficient for the District Court to handle pretrial

matters so as to be fully acquainted with the case as it makes it way to trial in this District Court.

*In re Gulf States Long Term Acute Care of Covington, L.L.*C., 455 B.R. 869, 878 (E.D. La. 2011).

Second, because of the jury trial rights of Defendant, the Bankruptcy Court cannot hear the *Stern-*

claims presented in the Adversary Proceeding, as proposed findings of fact and conclusions of law on the merits is antithetical to the right to trial by jury. FED. R. BANKR. P. 9033(a), (d). While the Plaintiff's turnover claim may be core, the turnover claim is the sidecar to Plaintiff's breach of contract claim, in that the turnover claim only goes where the jury on the breach of contract claim goes. Having the District Court adjudicate the breach of contract claim while the Bankruptcy Court simultaneously hears the turnover claim is an inefficient, impractical, and expensive path forward. On the other hand, having the Bankruptcy Court adjudicate both the non-core, state law, breach of contract claim, and the turnover claim would violate applicable law, as cited earlier in this motion. In addition, the Bankruptcy Court would need to submit its recommended findings of fact and conclusions of law on the entirely pivotal breach of contract claim to the District Court, which would then conduct a *de novo* review. 28 U.S.C. § 157(c)(1). Thus, the only practical and cost-effective manner of proceeding is for the District Court to conduct a jury trial on Plaintiff's non-core, breach of contract claim, which will ultimately determine the viability of the turnover claim. *In re MPF Holding US, LLC,* No. 08–36084–H4–11, 2013 WL 12146958, at *3 (Bankr. S.D. Tex. Apr. 26, 2013) (recommending withdrawal, and noting "immediate withdrawal of [the] reference will serve the interests of judicial economy" because it would allow the District Court to familiarize itself with the matter).

31.    Finally, the Debtor's Plan has been confirmed. As such, the "expediting-the-bankruptcy-process factor" is irrelevant. *Mirant Corp. v. The Southern Co.*, 337 B.R. 107, 123 (N.D. Tex. Jan. 10, 2006) (where the bankruptcy judge had already confirmed the reorganization plan, the "expediting-the-bankruptcy-process factor" was not relevant to the withdrawal decision). Consideration of the *Holland* factors evidence a need to withdraw the reference in this Adversary Proceeding. Again, as mentioned above, the Bankruptcy Court has recently determined that it

would recommend the District Court withdraw the reference in three similar adversary proceedings. *Highland Capital Management LP v. Dondero*, Adv. No. 21-03003; *Highland Capital Management LP v. Highland Capital Management Fund Advisors, L.P.*, Adv. No. 21-03004; *Highland Capital Management LP v. NexPoint Advisors LP*, Adv. No. 21-03005.

**E.      The District Court is best suited to conduct pretrial proceedings as well as hear the sole pending and determinative breach of contract claim.**

32.      While the District Court has discretion to allow the Bankruptcy Court to preside over pretrial proceedings, with the District Court then trying the jury, it would be most efficient for the District Court to conduct all pretrial proceedings. (*In re Guynes Printing Co. of Tex., Inc.*, No. 15-CV-149-KC, 2015 WL 3824070, at *3 (W.D. Tex. June 19, 2015)). Courts consider the following factors when determining whether the District Court should retain all pretrial matters: (i) does referral promote judicial efficiency; (ii) is the Bankruptcy Court familiar with the allegations; and (iii) do the allegations require interpretation of federal bankruptcy law. *See Curtis v. Cerner Corp.*, No. 7:29-CV-00417, 2020 WL 1983937, at *5 (S.D. Tex. Apr. 27, 2020); *see also In re Brown Med. Ctr., Inc.*, No. BR 15-3229, 2016 WL 406959, at *2 (S.D. Tex. Feb. 3, 2016) (exercising its discretion to retain all pretrial matters as a means to maintain an active role in the case, gain familiarity with the issues that will be presented for trial, and ensure the efficient use of judicial resources). These factors weigh heavily toward the District Court withdrawing the pretrial matters.

33.      First, because the breach of contract claim is dispositive of the turnover claim, and the breach of contract claim requires a jury trial, it is most efficient for the District Court to hear the case from the start. Second, the Bankruptcy Court has not yet decided any substantive issues on this Adversary Proceeding; therefore, the Bankruptcy Court is no more familiar with the

substance of the matter than the District Court can be in relatively short order. Third, there is no

particular area of bankruptcy law expertise required.

## IV.  CONCLUSION

For these reasons, Defendant respectfully requests that the District Court grant its Motion,

withdraw the reference of the Adversary Proceeding from the Bankruptcy Court, and grant it such

other relief at law or in equity to which it may be entitled.

Respectfully submitted,


_/s/ Lauren K. Drawhorn_____
Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email:  jason.rudd@wickphillips.com
         lauren.drawhorn@wickphillips.com

**COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2021, a true and correct copy of the foregoing pleading was served via the Court's CM/ECF system upon counsel for the Plaintiff and all other parties requesting or consenting to such service in this adversary case.

Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
Ira D. Kharasch
ikharasch@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
Hayley R. Winograd
hwinograd@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Facsimile: (310) 201-0760
*Counsel for Highland Capital Management, L.P.*

Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Fax: (972) 755-7110

*/s/ Lauren K. Drawhorn*
Lauren K. Drawhorn

Brant C. Martin
Texas State Bar No. 24002529
brant.martin@wickphillips.com
Jason M. Rudd
Texas State Bar No. 24028786
jason.rudd@wickphillips.com
Lauren K. Drawhorn
Texas State Bar No. 24074528
lauren.drawhorn@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255

**COUNSEL FOR NEXPOINT REAL ESTATE PARTNERS, LLC**
**F/K/A HCRE PARTNERS, LLC**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Chapter 11** |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | **Case No.: 19-34054-sgj11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | **Adv. Pro. No. 21-03007-sgj** |
| vs. | § | |
| | § | |
| **HCRE PARTNERS, LLC (n/k/a NEXPOINT REAL ESTATE PARTNERS, LLC),** | § | |
| | § | |
| | § | |
| Defendant. | § | |

## APPENDIX IN SUPPORT OF HCRE PARTNERS, LLC'S
## BRIEF IN SUPPORT OF ITS MOTION TO WITHDRAW THE REFERENCE

NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC ("NREP") hereby files this

Appendix in Support of its Motion to Withdraw the Reference.

| Tab | Document Description | Appendix page number |
|-----|--------------------|---------------------|
| 1. | Highland Capital Management, L.P.'s Adversary Complaint | App. 001 – 038 |
| 2. | HCRE Partners, LLC's Answer to Plaintiff's Complaint | App. 039 – 048 |
| 3. | HCRE Partners, LLC's Motion for Leave to File Amended Answer | App. 049 – 069 |
| 4. | HCRE Partners, LLC's Proof of Claim | App. 070 – 075 |
| 5. | NexPoint Real Estate Partners, LLC's Response to the Debtor's First Omnibus Objection to Certain (A) Duplicate Claims; (B) Overstated Claims; (C) Late-Filed Claims; (D) Satisfied Claims; (E) No-Liability Claims; and (F) Insufficient-Documentation Claims | App. 076 – 086 |
| 6. | Order (I) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (II) Granting Related Relief | App. 087 – 248 |

Respectfully submitted,

*/s/ Lauren K. Drawhorn*
Brant C. Martin
Texas Bar No. 24002529
Jason M. Rudd
Texas Bar No. 24028786
Lauren K. Drawhorn
Texas Bar No. 24074528
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Fax: (214) 692-6255
Email: brant.martin@wickphillips.com
        jason.rudd@wickphillips.com
        lauren.drawhorn@wickphillips.com

**COUNSEL FOR NEXPOINT REAL ESTATE
PARTNERS, LLC F/K/A HCRE PARTNERS, LLC**

## CERTIFICATE OF SERVICE

       I hereby certify that on June 3, 2021, a true and correct copy of the foregoing Joinder was served via the Court's electronic case filing (ECF) system upon all parties receiving such service in this bankruptcy case; and via e-mail upon the following parties:

Jeffrey N. Pomerantz
Ira D. Kharasch
John A. Morris
Gregory V. Demo
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Email: jpomerantz@pszjlaw.com
       ikharasch@pszjlaw.com
       jmorris@pszjlaw.com
       gdemo@pszjlaw.com

Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Email: MHayward@HaywardFirm.com
       ZAnnable@HaywardFirm.com

          */s/ Lauren K. Drawhorn*
          Lauren K. Drawhorn

# TAB 1

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § § § | Case No. 19-34054-sgj11 |
| Debtor. | § § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § | |
| Plaintiff, | § § § | Adversary Proceeding No. |
| vs. | § § § | _____ |
| HCRE PARTNERS, LLC (N/K/A/ NEXPOINT REAL ESTATE PARTNERS, LLC, | § § § | |
| Defendant. | § § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

## COMPLAINT FOR (I) BREACH OF CONTRACT
## AND (II) TURNOVER OF PROPERTY OF THE DEBTOR'S ESTATE

Plaintiff, Highland Capital Management, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case and the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by its undersigned counsel, as and for its complaint (the "Complaint") against defendant HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("HCRE" or "Defendant"), alleges upon knowledge of its own actions and upon information and belief as to other matters as follows:

### PRELIMINARY STATEMENT

1.      The Debtor brings this action against HCRE as a result of HCRE's defaults under (i) four demand notes in the aggregate principal amount of $4,250,000 and payable upon the Debtor's demand, and (ii) one term note in the aggregate principal amount of $6,059,831.51 payable in the event of default, all executed by HCRE in favor of the Debtor.  HCRE has failed to pay amounts due and owing under the notes and the accrued but unpaid interest thereon.

2.      Through this Complaint, the Debtor seeks (a) damages from HCRE in an amount equal to (i) the aggregate outstanding principal due under the Notes (as defined below), plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses, as provided for in the notes) for HCRE's breach of its obligations under the Notes, and (b) turnover by HCRE to the Debtor of the foregoing amounts.

### JURISDICTION AND VENUE

3.      This adversary proceeding arises in and relates to the Debtor's case pending before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court") under chapter 11 of the Bankruptcy Code.

DOCS_NY:42002.4 36027/002

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and, pursuant to Rule 7008 of the Bankruptcy Rules, the Debtor consents to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      The Debtor is a limited liability partnership formed under the laws of Delaware with a business address at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

8.      Upon information and belief, HCRE is a limited liability company with offices located in Dallas, Texas and is organized under the laws of the state of Delaware.

## CASE BACKGROUND

9.      On October 16, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Highland Bankruptcy Case").

10.     On October 29, 2019, the U.S. Trustee in the Delaware Court appointed an Official Committee of Unsecured Creditors (the "Committee") with the following members: (a) Redeemer Committee of Highland Crusader Fund, (b) Meta-e Discovery, (c) UBS Securities LLC and UBS AG London Branch, and (d) Acis LP and Acis GP.

11.     On December 4, 2019, the Delaware Court entered an order transferring venue of the Highland Bankruptcy Case to this Court [Docket No. 186].[2]

12.     The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

## STATEMENT OF FACTS

**A.     The HCRE Demand Notes**

13.     HCRE is the maker under a series of demand notes in favor of the Debtor.

14.     Specifically, on November 27, 2013, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $100,000 ("HCRE's First Demand Note").  A true and correct copy of HCRE's First Demand Note is attached hereto as **Exhibit 1**.

15.     On October 12, 2017, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $2,500,000 ("HCRE's Second Demand Note").  A true and correct copy of HCRE's Second Demand Note is attached hereto as **Exhibit 2.**

16.     On October 15, 2018, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $750,000 ("HCRE's Third Demand Note").  A true and correct copy of HCRE's Third Demand Note is attached hereto as **Exhibit 3**

17.     On September 25, 2019, HCRE executed a demand note in favor of the Debtor, as payee, in the original principal amount of $900,000 ("HCRE's Fourth Demand Note," and collectively, with HCRE's First Demand Note, HCRE's Second Demand Note, and HCRE's Third Demand Note, the "Demand Notes").  A true and correct copy of HCRE's Fourth Demand Note is attached hereto as **Exhibit 4.**

---

[2] All docket numbers refer to the main docket for the Highland Bankruptcy Case maintained by this Court.

18.     Section 2 of the Demand Notes provide: "**Payment of Principal and Interest**.

The accrued interest and principal of this Note shall be due and payable on demand of the

Payee."

19.     Section 4 of the Demand Notes provides:

> **Acceleration Upon Default**.   Failure to pay this Note or any installment
> hereunder as it becomes due shall, at the election of the holder hereof, without
> notice, demand, presentment, notice of intent to accelerate, notice of acceleration,
> or any other notice of any kind which are hereby waived, mature the principal of
> this Note and all interest then accrued, if any, and the same shall at once become
> due and payable and subject to those remedies of the holder hereof.  No failure or
> delay on the part of the Payee in exercising any right, power, or privilege
> hereunder shall operate as a waiver hereof.

20.     Section 6 of the Demand Notes provides:

> **Attorneys' Fees**.  If this Note is not paid at maturity (whether by acceleration or
> otherwise) and is placed in the hands of an attorney for collection, or if it is
> collected through a bankruptcy court or any other court after maturity, the Maker
> shall pay, in addition to all other amounts owing hereunder, all actual expenses of
> collection, all court costs and reasonable attorneys' fees and expenses incurred by
> the holder hereof.

**B.     HCRE's Defaults under Each Demand Note**

21.     By letter dated December 3, 2020, the Debtor made demand on HCRE for

payment of the Demand Notes by December 11, 2020 (the "Demand Letter").  A true and correct

copy of the Demand Letter is attached hereto as **Exhibit 5**.  The Demand Letter provides:

> By this letter, Payee is demanding payment of the accrued interest and principal
> due and payable on the Notes in the aggregate amount of $5,012,260.96, which
> represents all accrued interest and principal through and including December 11,
> 2020.
>
> **Payment is due on December 11, 2020, and failure to make payment in full
> on such date will constitute an event of default under the Notes.**

Demand Letter (emphasis in the original).

22.     Despite the Debtor's demand, HCRE did not pay all or any portion of the amount

demanded by the Debtor on December 11, 2020 or at any time thereafter.

DOCS_NY:42002.4 36027/002

23.     As of December 11, 2020, there was an outstanding principal amount of $171,542 on HCRE's First Demand Note and accrued but unpaid interest in the amount of $526.10, resulting in a total outstanding amount as of that date of $172,068.10.

24.     As of December 11, 2020, there was an outstanding principal balance of $3,149,919.12 on HCRE's Second Demand Note and accrued but unpaid interest in the amount of $41,423.60, resulting in a total outstanding amount as of that date of $3,191,342.72.

25.     As of December 11, 2020, there was an outstanding principal balance of $874,977.53 on HCRE's Third Demand Note and accrued but unpaid interest in the amount of $10,931.23, resulting in a total outstanding amount as of that date of $885,908.76.

26.     As of December 11, 2020, there was an outstanding principal balance of $750,279.14 on HCRE's Fourth Demand Note and accrued but unpaid interest in the amount of $12,662.24, resulting in a total outstanding amount as of that date of $762,941.38.

27.     Thus, as of December 11, 2020, the total outstanding principal and accrued but unpaid interest due under the Demand Notes was $5,012,260.96.

28.     Pursuant to Section 4 of each Note, each Note is in default and is currently due and payable.

**C.     The HCRE Term Note**

29.      HCRE is the maker under a term note in favor of the Debtor.

30.     Specifically, on May 31, 2017, HCRE executed a term note in favor of the Debtor, as payee, in the original principal amount of $6,059,831 (the "Term Note," and together with the Demand Notes, the "Notes").  A true and correct copy of the Term Note is attached hereto as **Exhibit 6**.

31.     Section 2 of the Term Note provides: "**Payment of Principal and Interest**. Principal and interest under this Note shall be due and payable as follows:

**2.1**     **Annual Payment Dates.**    During the term of this Note, Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**Annual Installment**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note, commencing on the first such date to occur after the date of execution of this note.

**2.2**     **Final Payment Date**.    The final payment in the aggregate amount of the then outstanding and unpaid Note, together with all accrued and unpaid interest thereon, shall become immediately due and payable in full on December 31, 2047 (the "**Maturity Date**").

32.     Section 3 of the Term Note provides:

**Prepayment Allowed: Renegotiation Discretionary**.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

33.     Section 4 of the Term Note provides:

**Acceleration Upon Default**.   Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of the Payee in exercising any right, power, or privilege hereunder shall operate as a waiver hereof.

34.     Section 6 of the Term Note provides:

**Attorneys' Fees**.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**D.**     **HCRE's Default under the Term Note**

35.     HCRE failed to make the payment due under the Term Note on December 31, 2020.

36.    By letter dated January 7, 2021, the Debtor made demand on HCRE for immediate payment under the Term Note (the "Second Demand Letter").  A true and correct copy of the Second Demand Letter is attached hereto as **Exhibit 7**.  The Demand Letter provides:

> Because of Maker's failure to pay, the Note is in default.  Pursuant to Section 4 of the Note, all principal, interest, and any other amounts due on the Note are immediately due and payable.  The amount due and payable on the Note as of January 8, 2021 is $6,145,466.84; however, interest continues to accrue under the Note.

**The Term Note is in default, and payment is due _immediately_.**

Second Demand Letter (emphasis in the original).

37.    Despite the Debtor's demands, HCRE did not pay the amount demanded by the Debtor on January 7, 2021 or at any time thereafter.

38.    As of January 8, 2021, the total outstanding principal and accrued but unpaid interest under the Term Note was $6,145,466.84.

39.    Pursuant to Section 4 of the Term Note, the Note is in default and is currently due and payable.

**FIRST CLAIM FOR RELIEF**
**(For Breach of Contract)**

40.    The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

41.    Each Note is a binding and enforceable contract.

42.    HCRE breached each Demand Note by failing to pay all amounts due to the Debtor upon the Debtor's demand.

43.    HCRE breached the Term Note by failing to pay all amounts due to the Debtor upon HCRE's default and acceleration.

DOCS_NY:42002.4 36027/002

44.     Pursuant to each Note, the Debtor is entitled to damages from HCRE in an amount equal to (i) the aggregate outstanding principal due under each Note, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for HCRE's breach of its obligations under each of the Notes.

45.     As a direct and proximate cause of HCRE's breach of each Demand Note, the Debtor has suffered damages in the amount of at least $5,012,260.96 as of December 11, 2020, plus an amount equal to all accrued but unpaid interest from that date, plus the Debtor's cost of collection.

46.     As a direct and proximate cause of HCRE's breach of the Term Note, the Debtor has suffered damages in the amount of at least $6,145,466.84 as of January 8, 2021, plus an amount equal to all accrued but unpaid interest from that date, plus the Debtor's cost of collection.

### SECOND CLAIM FOR RELIEF
### (Turnover by HCRE Pursuant to 11 U.S.C. § 542(b))

47.     The Debtor repeats and re-alleges the allegations in each of the foregoing paragraphs as though fully set forth herein.

48.     HCRE owes the Debtor an amount equal to (i) the aggregate outstanding principal due under each of the Notes, plus (ii) all accrued and unpaid interest thereon until the date of payment, plus (iii) an amount equal to the Debtor's costs of collection (including all court costs and reasonable attorneys' fees and expenses) for HCRE's breach of its obligations under each of the Notes.

49.     Each Demand Note is property of the Debtor's estate and the amounts due under each Demand Note are matured and payable upon demand.

50.     The Term Note is property of the Debtor's estate and the amounts due under the Term Note are matured and payable upon default and acceleration.

51.     The Debtor has made demand for turnover of the amounts due under each of the Notes.

52.     As of the date of filing this Complaint, HCRE has not turned over to the Debtor all or any of the amounts due under each of the Notes.

53.     The Debtor is entitled to the turnover of all amounts due under each of the Notes.

WHEREFORE, the Debtor prays for judgment as follows:

(i)     On its First Claim for Relief, damages in an amount to be determined at trial, including, among other things, (a) the aggregate outstanding principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's cost of collection (including all court costs and reasonable attorneys' fees and expenses);

(ii)    On its Second Claim for Relief, ordering turnover by HCRE to the Debtor of an amount equal to (a) the aggregate principal due under each Note, plus (b) all accrued and unpaid interest thereon until the date of payment, plus (c) an amount equal to the Debtor's cost of collection (including all court costs and reasonable attorneys' fees and expenses); and

(iii)   Such other and further relief as this Court deems just and proper.

10

Dated:  January 22, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:      jpomerantz@pszjlaw.com
             ikharasch@pszjlaw.com
             jmorris@pszjlaw.com
             gdemo@pszjlaw.com
             hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

DOCS_NY:42002.4 36027/002

**App. 012**

# EXHIBIT 1

EXHIBIT 1

App. 013

# PROMISSORY NOTE

$100,000                                                        November 27, 2013

FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of ONE HUNDRED THOUSAND and 00/100 Dollars ($100,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.  Interest Rate.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.  Payment of Principal and Interest.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.  Prepayment Allowed; Renegotiation Discretionary.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.  Acceleration Upon Default.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.  Waiver.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.  Attorneys' Fees.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.  Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

       8.     <u>Governing Law</u>. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

HCRE PARTNERS, LLC

# EXHIBIT 2

**EXHIBIT 2**

# PROMISSORY NOTE

$2,500,000                                                                October 12, 2017

    FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("**Maker**") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("**Payee**"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), together with interest, on the terms set forth below (the "**Note**"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

    1.    <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

    2.    <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

    3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

    4.    <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

    5.    <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

    6.    <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

    7.    <u>Limitation on Agreements</u>. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

     8.    Governing Law. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

HCRE PARTNERS, LLC

2

# EXHIBIT 3

**EXHIBIT 3**

# PROMISSORY NOTE

$750,000                                                                October 15, 2018

     FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("**Maker**") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("**Payee**"), in legal and lawful tender of the United States of America, the principal sum of SEVEN HUNDRED FIFTY THOUSAND and 00/100 Dollars ($750,000.00), together with interest, on the terms set forth below (the "**Note**"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

    1.    <u>Interest Rate</u>.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

    2.    <u>Payment of Principal and Interest</u>.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

    3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

    4.    <u>Acceleration Upon Default</u>.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

    5.    <u>Waiver</u>.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

    6.    <u>Attorneys' Fees</u>.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

    7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

      8.    <u>Governing Law</u>. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

      **MAKER:**

      HCRE PARTNERS, LLC

2

# EXHIBIT 4

**EXHIBIT 4**

**App. 022**

# PROMISSORY NOTE

$900,000                                                           September 25, 2019


     FOR VALUE RECEIVED, HCRE PARTNERS, LLC ("***Maker***") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP. ("***Payee***"), in legal and lawful tender of the United States of America, the principal sum of NINE HUNDRED THOUSAND and 00/100 Dollars ($900,000.00), together with interest, on the terms set forth below (the "***Note***"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

     1.    <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to 8.00% per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

     2.    <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

     3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

     4.    <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

     5.    <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

     6.    <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

     7.    <u>Limitation on Agreements</u>. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or

performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

       8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

HCRE PARTNERS, LLC

2

**App. 024**

# EXHIBIT 5

**EXHIBIT 5**

**App. 025**

Case 21-03007-sgj Doc 135 Filed 01/02/21 Entered 01/02/21 18:05:15 Page 2 of 4
Case 21-03007-sgj Doc 135 Filed 01/02/21 Entered 01/02/21 18:05:15 Page 2 of 4
Case 13-21006-cl7 Doc Document 18 Filed 06/04/22 Page 207 of 213 Page ID 60100

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

December 3, 2020

HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)
c/o NexPoint Advisors, LP
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James Dondero

      Re: Demand on Promissory Notes:

Dear Mr. Dondero,

HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("Maker") entered into the following promissory notes (collectively, the "Notes") in favor of Highland Capital Management, L.P. ("Payee"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (12/11/20) | Accrued But Unpaid Interest (12/11/20) | Total Amount Outstanding (12/11/20) |
|---|---|---|---|---|
| 11/27/13 | $100,000 | $171,542.00 | $526.10 | $172,068.10 |
| 10/12/17 | $2,500,000 | $3,149,919.12 | $41,423.60 | $3,191,342.72 |
| 10/15/18 | $750,000 | $874,977.53 | $10,931.23 | $885,908.76 |
| 9/25/19 | $900,000 | $750,279.14 | $12,662.24 | $762,941.38 |
| **TOTALS** | **$4,250,000** | **$4,946,717.79** | **$65,543.17** | **$5,012,260.96** |

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee. By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $5,012,260.96, which represents all accrued and unpaid interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds. Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are expressly reserved. Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full. Any such interest will remain the obligation of Maker.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer

cc:    Fred Caruso
       James Romey
       Jeffrey Pomerantz
       Ira Kharasch
       Gregory Demo
       DC Sauter

App. 027

**Appendix A**

ABA #:            322070381
Bank Name:        East West Bank
Account Name:     Highland Capital Management, LP
Account #:        5500014686

# EXHIBIT 6

**EXHIBIT 6**

**PROMISSORY NOTE**

**$6,059,831.51**                                            **May 31, 2017**

THIS PROMISSORY NOTE (this "**Note**") is in substitution for and supersedes in their entirety each of those certain promissory notes described in Exhibit A hereto, from HCRE Partners, LLC, as Maker, and Highland Capital Management, L.P. as Payee (collectively, the "**Prior Notes**"), together with the aggregate outstanding principal and accrued and unpaid interested represented thereby.

FOR VALUE RECEIVED, HCREA PARTNERS, LLC ("**Maker**") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, L.P. ("**Payee**"), in legal and lawful tender of the United States of America, the principal sum of SIX MILLION, FIFTY NINE THOUSAND, EIGHT HUNDRED THIRTY ONE AND 51/100 DOLLARS ($6,059,831.51), together with interest, on the terms set forth below. All sums hereunder are payable to Payee at 300 Crescent Court, Suite 700, Dallas, Texas 75201, or such other address as Payee may specify to Maker in writing from time to time.

    1.    Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall bear interest at the rate of eight percent (8.00%) per annum from the date hereof until Maturity Date (hereinafter defined), compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable annually.

    2.    Payment of Principal and Interest. Principal and interest under this Note shall be payable as follows:

        2.1    Annual Payment Dates. During the term of this Note, Borrower shall pay the outstanding principal amount of the Note (and all unpaid accrued interest through the date of each such payment) in thirty (30) equal annual payments (the "**Annual Installment**") until the Note is paid in full. Borrower shall pay the Annual Installment on the 31st day of December of each calendar year during the term of this Note, commencing on the first such date to occur after the date of execution of this Note.

        2.2    Final Payment Date. The final payment in the aggregate amount of the then outstanding and unpaid Note, together with all accrued and unpaid interest thereon, shall become immediately due and payable in full on December 31, 2047 (the "**Maturity Date**").

    3.    Prepayment Allowed; Renegotiation Discretionary. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

    4.    Acceleration Upon Default. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same

shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    Limitation on Agreements. All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    Governing Law. This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

9.    Prior Notes.    The original of each of the Prior Notes superseded hereby shall be marked "VOID" by Payee.

**MAKER:**

HCRE PARTNERS, LLC

By: _____
Name: James Dondero
Title:

2

# EXHIBIT A

## PRIOR NOTES

| Loan Date | Initial Note Amount | Interest Rate | Principal and Interest Outstanding as of May 31, 2017 |
|-----------|---------------------|---------------|-------------------------------------------------------|
| 1/9/14 | $100,000.00 | 8.00% | $108,000.00 |
| 1/29/14 | $600,000.00 | 8.00% | $648,000.00 |
| 3/10/14 | $2,000,000.00 | 8.00% | $2,009,643.84 |
| 3/28/14 | $50,000.00 | 8.00% | $54,000.00 |
| 1/26/15 | $1,500,000.00 | 8.00% | $1,545,356.16 |
| 4/2/15 | $1,500,000.00 | 8.00% | $1,545,356 |
| | $5,750,000.00 | | $6,059,831.51 |