# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Statement of Income**
**Year Ended December 31, 2018**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---:|---:|---:|---:|
| **Revenue:** | | | | |
| Management fees | $ 35,264 | $ 1,336 | $ - | $ 36,600 |
| Interest and investment income | 4,857 | 10,974 | - | 15,831 |
| Incentive fees | 17 | 53 | - | 70 |
| Shared services fees | 9,187 | - | - | 9,187 |
| Other income | 1,038 | 1,584 | - | 2,622 |
| Total revenue | 50,363 | 13,947 | - | 64,310 |
| **Expenses:** | | | | |
| Compensation and benefits | 33,670 | 805 | - | 34,475 |
| Professional fees | 14,624 | 3,055 | - | 17,679 |
| Interest expense | 1,695 | 3,975 | - | 5,670 |
| Marketing and advertising expense | 2,413 | - | - | 2,413 |
| Depreciation and amortization | 1,304 | 13 | - | 1,317 |
| Investment and research consulting | 1,082 | - | - | 1,082 |
| Bad debt expense | 7,862 | - | - | 7,862 |
| Other operating expenses | 6,786 | 3,241 | - | 10,027 |
| Total expenses | 69,436 | 11,089 | - | 80,525 |
| **Other Income/(Expense):** | | | | |
| Other income | 9,816 | 10 | - | 9,826 |
| Impairment on intangible assets | (2,830) | - | - | (2,830) |
| Total other income | 6,986 | 10 | - | 6,996 |
| Income/(loss) before investment and derivative activities | (12,087) | 2,868 | - | (9,219) |
| **Realized and unrealized gain/(loss) on investments and derivatives:** | | | | |
| Net realized gain/(loss) on investments and derivatives | 13,397 | (44,914) | - | (31,517) |
| Net change in unrealized loss on investments and derivatives | (406) | (93,349) | - | (93,755) |
| Net realized and unrealized loss on investments and derivatives | 12,991 | (138,263) | - | (125,272) |
| Net unrealized losses from equity method investees | (74,082) | - | 74,082 | - |
| Net loss | (73,178) | (135,395) | 74,082 | (134,491) |
| Net loss attributable to non-controlling interest | - | (61,313) | - | (61,313) |
| Net loss attributable to Highland Capital Management, L.P. | $ (73,178) | $ (74,082) | $ 74,082 | $ (73,178) |

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2018**

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 2,567 |
| Investments at fair value (cost $263,008*) | | 259,460 |
| Equity method investees | | 24,415 |
| Management and incentive fees receivable | | 2,242 |
| Intangible assets | | 8,421 |
| Notes and other amounts due from affiliates | | 176,963 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,177 | | 4,538 |
| **Total assets** | $ | 478,606 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,838 |
| Due to affiliate | | 4,542 |
| Due to brokers | | 31,194 |
| Due to brokers for securities purchased not yet settled | | 1,640 |
| Accrued and other liabilities | | 35,574 |
| Notes payable | | 16,722 |
| Investment liabilities | | 12,135 |
| Total liabilities | | 106,645 |
| Partners' capital | | 371,961 |
| **Total liabilities and partners' capital** | $ | 478,606 |

*Investments, at fair value includes $97.5 million of limited partnership interest ownership of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2018 consolidated financial statements of Highland Capital Management, L.P. This information should be read in conjunction with such audited financial statements.

HIGHLY CONFIDENTIAL

D-CNL000256

Appx. 00786

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2018**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 35,264 |
| Incentive fees | | 17 |
| Shared services fees | | 9,187 |
| Interest and investment income | | 4,857 |
| Miscellaneous income | | 1,038 |
| Total revenue | | 50,363 |
| | | |
| **Expenses:** | | |
| Compensation and benefits | | 33,670 |
| Professional fees | | 14,624 |
| Marketing and advertising expense | | 2,413 |
| Interest expense | | 1,695 |
| Depreciation and amortization | | 1,304 |
| Investment and research consulting | | 1,082 |
| Bad debt expense | | 7,862 |
| Other operating expenses | | 6,786 |
| Total expenses | | 69,436 |
| | | |
| **Other Income/(Expense):** | | |
| Other income | | 9,816 |
| Impairment on intangible assets | | (2,830) |
| Total other income | | 6,986 |
| | | |
| Loss before investment activities | | (12,087) |
| | | |
| **Realized and unrealized gains/losses on investments:** | | |
| Net realized gain on sale of investments | | 13,397 |
| Net change in unrealized loss on investments* | | (56,529) |
| Total realized and unrealized loss on investments | | (43,132) |
| | | |
| Loss from equity method investees: | | (17,959) |
| | | |
| **Net loss** | $ | (73,178) |

*Net change in unrealized gain on investments includes $56.1 million of unrealized loss from holdings of limited partnership interests of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2018 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000257

**Appx. 00787**

# EXHIBIT 35

**HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

**INCUMBENCY CERTIFICATE**

I am the sole Director of STRAND ADVISORS XVI, INC., a Delaware corporation (the "*General Partner*"), the general partner of **HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**, a Delaware limited partnership (the "*Partnership*"). In that capacity, I certify that the persons listed below have been duly appointed and qualified as, and currently are, officers of the General Partner of the Partnership. I also certify that each person listed below holds the position that is listed opposite his or her name in the General Partner, and that the signatures attached are the genuine signatures of the persons indicated. I also certify that in their capacity as officers of the General Partner, the persons listed below are authorized to execute any and all agreements on behalf of the General Partner in its capacity as the general partner of the Partnership. I further certify that in their capacity as officers of the General Partner, the persons listed below are authorized to give any party on behalf of the Partnership all notices, orders, directions, or instructions (including but not limited to written, facsimile, or oral funds transfer instructions) in connection with any transaction to which the Partnership is or in the future may be a party to in any capacity.

| Name of Officer | Title | Signature |
|---|---|---|
| Dustin Norris | Executive Vice President | |
| Frank Waterhouse | Treasurer | |
| Lauren Thedford | Secretary | |

WITNESS my hand to be effective as of the 11th day of April, 2019.

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.

By: Strand Advisors XVI, Inc., its general partner

By: _____
James D. Dondero, Sole Director

# EXHIBIT 36

**From:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>
**Sent:** Tuesday, October 6, 2020 6:19 PM
**To:** Lauren Thedford <LThedford@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** Thomas Surgent <TSurgent@HighlandCapital.com>; Jason Post <JPost@HighlandCapital.com>; Dustin Norris <DNorris@NexPointSecurities.com>; Will Mabry <WMabry@HighlandCapital.com>
**Subject:** RE: 15(c) Follow up (10_2_20).DOCX

No shared services outstanding.  The HCMFA note is a demand note.  The NexPoint note Kristin can give the end term.  There was an agreement between HCMLP and HCMFA the earliest they could demand is May 2021.  The attorneys think that BK doesn't change that but don't know for sure at the end of the day.  The response should include as I covered in the Board meeting that both entities have the full faith and backing from Jim Dondero and to my knowledge that hasn't changed.

---

**From:** Lauren Thedford <LThedford@HighlandCapital.com>
**Sent:** Tuesday, October 6, 2020 6:14 PM
**To:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** Thomas Surgent <TSurgent@HighlandCapital.com>; Jason Post <JPost@HighlandCapital.com>; Dustin Norris <DNorris@NexPointSecurities.com>; Will Mabry <WMabry@HighlandCapital.com>
**Subject:** RE: 15(c) Follow up (10_2_20).DOCX

I see the below from the 6/30 financials –

NPA: Due to HCMLP and affiliates as of June 30, 2020 - 23,683,000
HCMFA: Due to HCMLP as of June 30, 2020 - 12,286

I expect the follow-up question will be regarding terms and structure of the notes and whether any of the shared services invoices are outstanding.

Draft answer below.

> Are there any material outstanding amounts currently payable or due in the future (*e.g.*, notes) to HCMLP by HCMFA or NexPoint Advisors or any other affiliate that provide services to the Funds?
>
> **Response**: As of June 30, 2020, $23,683,000 remains outstanding to HCMLP and its affiliates from NexPoint and $12,286,000 remains outstanding to HCMLP from HCMFA. The Notes between HCMLP and NexPoint come due on [DATE]. The Notes between HCMLP and HCMFA come due on [DATE]. All amounts owed by each of NexPoint and HCMFA pursuant to the shared services arrangement with HCMLP have been paid as of [DATE].

---

**From:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>
**Sent:** Tuesday, October 6, 2020 6:05 PM
**To:** Lauren Thedford <LThedford@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** Thomas Surgent <TSurgent@HighlandCapital.com>; Jason Post <JPost@HighlandCapital.com>; Dustin Norris

CONFIDENTIAL

D-HCMFA290880

**Appx. 00791**

<DNorris@NexPointSecurities.com>; Will Mabry <WMabry@HighlandCapital.com>
**Subject:** RE: 15(c) Follow up (10_2_20).DOCX

It's on the balance sheet that was provided to the board as part of the 15c materials.

**From:** Lauren Thedford <LThedford@HighlandCapital.com>
**Sent:** Tuesday, October 6, 2020 6:04 PM
**To:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** Thomas Surgent <TSurgent@HighlandCapital.com>; Jason Post <JPost@HighlandCapital.com>; Dustin Norris <DNorris@NexPointSecurities.com>; Will Mabry <WMabry@HighlandCapital.com>
**Subject:** RE: 15(c) Follow up (10_2_20).DOCX

Could you provide the amounts?

Thanks

**From:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>
**Sent:** Tuesday, October 6, 2020 5:53 PM
**To:** Lauren Thedford <LThedford@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** Thomas Surgent <TSurgent@HighlandCapital.com>; Jason Post <JPost@HighlandCapital.com>; Dustin Norris <DNorris@NexPointSecurities.com>; Will Mabry <WMabry@HighlandCapital.com>
**Subject:** RE: 15(c) Follow up (10_2_20).DOCX

Yes

**From:** Lauren Thedford <LThedford@HighlandCapital.com>
**Sent:** Tuesday, October 6, 2020 5:52 PM
**To:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>; Kristin Hendrix <KHendrix@HighlandCapital.com>
**Cc:** Thomas Surgent <TSurgent@HighlandCapital.com>; Jason Post <JPost@HighlandCapital.com>; Dustin Norris <DNorris@NexPointSecurities.com>; Will Mabry <WMabry@HighlandCapital.com>
**Subject:** RE: 15(c) Follow up (10_2_20).DOCX

Good evening Frank, Klos, Kristin – please advise on the below in connection with the Board's follow-up request. Thanks!

> Are there any material outstanding amounts currently payable or due in the future (*e.g.*, notes) to HLCMLP by HCMFA or NexPoint Advisors or any other affiliate that provide services to the Funds?

**From:** Lauren Thedford
**Sent:** Friday, October 2, 2020 2:50 PM
**To:** Thomas Surgent <TSurgent@HighlandCapital.com>
**Cc:** Jason Post <JPost@HighlandCapital.com>; Dustin Norris <DNorris@Nexpointsecurities.com>; Will Mabry <WMabry@HighlandCapital.com>; David Klos <DKlos@HighlandCapital.com>
**Subject:** FW: 15(c) Follow up (10_2_20).DOCX

Thomas – please see attached (and reproduced below) additional 15c follow-up questions from the Board.

CONFIDENTIAL

D-HCMFA290881

**Appx. 00792**

1. Please provide, to the extent practicable, the contingency plans with respect to the services provided under the Shared Services Agreements in the event that the outcome of the HCMLP bankruptcy proceedings were to impact the current servicing structure. For example, has the Advisers considered any outside service providers if necessary?

   Note prior question and response on related topic:

   With respect to the Estimated Adviser Profitability chart (Item A.2.a in the Board book), is the "Shared Services" line the only expenses attributable to HCMLP? Has any work been done or consideration been given to the solicitation of a third party bid on performing these services or bringing them in house to HCMFA?

   **Response**: Shared services, along with a portion of the investment professional compensation & benefits lines, are the only allocations attributable to HCMLP employees' support of the Advisers. HCMFA does not have the resources to bring these services in-house at this time, but given that HCMLP staffing levels for the provision of the shared services have remained fairly consistent and HCMLP remains capable of providing such shared services on economically reasonable terms, outsourced third-party bids have not been solicited at this time.

2. Are there any material outstanding amounts currently payable or due in the future (*e.g.*, notes) to HLCMLP by HCMFA or NexPoint Advisors or any other affiliate that provide services to the Funds?

3. The Board notes the provision of the updated list of current co-investments provided by HCMFA/NexPoint Advisors and the Advisers' discussion, including the senior-level team in place, to address any potential conflicts of interest matters. With respect to the compliance function, please confirm that the Funds' Chief Compliance Officer overall will continue in his usual role with respect to the Funds. Are there any other potential conflicts outside of the specific co-investment matters identified?

Please let me know if you would like me to set up a call on Monday to discuss.

---

**From:** Louizos, Stacy <SLouizos@BlankRome.com>
**Sent:** Friday, October 2, 2020 1:54 PM
**To:** Dustin Norris <DNorris@NexPointSecurities.com>; Lauren Thedford <LThedford@HighlandCapital.com>
**Cc:** Jason Post <JPost@HighlandCapital.com>; Zornada, George <George.Zornada@klgates.com>; Charles.Miller@klgates.com; Jon-Luc.Dupuy@klgates.com
**Subject:** 15(c) Follow up (10_2_20).DOCX

Hi Dustin and Lauren—Please see attached follow up questions from the Trustees after the latest Board call. Happy to have a call to discuss if helpful.

Best,
Stacy

**Stacy H. Louizos** | BLANKROME
1271 Avenue of the Americas | New York, NY 10020
O: 212.885.5147 | F: 917.332.3028 | slouizos@blankrome.com
M: 203.918.3666

CONFIDENTIAL

D-HCMFA290882
**Appx. 00793**

*********************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

*********************************************************************************************************

PRIVILEGE WARNING: The sender or recipient of this message is a member of the legal department at Highland Capital Management. This message and any attachments hereto may constitute attorney work product or be protected by the attorney-client privilege. Do not disclose this message or any attachments hereto without prior consent of a member of the legal department at Highland Capital Management.

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

CONFIDENTIAL

D-HCMFA290883
**Appx. 00794**

# EXHIBIT 37

## NEXPOINT ADVISORS, L.P.

### INCUMBENCY CERTIFICATE

I am the President of NEXPOINT ADVISORS GP, LLC, a Delaware limited liability company (the "*General Partner*"), the general partner of **NEXPOINT ADVISORS, L.P.**, a Delaware limited partnership (the "*Partnership*"). In that capacity, I certify that the persons listed below have been duly appointed and qualified as, and currently are, officers of the General Partner of the Partnership. I also certify that each person listed below holds the position that is listed opposite his or her name in the General Partner, and that the signatures attached are the genuine signatures of the persons indicated. I also certify that in their capacity as officers of the General Partner, the persons listed below are authorized to execute any and all agreements on behalf of the General Partner in its capacity as the general partner of the Partnership. I also certify that in their capacity as officers of the General Partner, the persons listed below are authorized to give any party on behalf of the Partnership all notices, orders, directions, or instructions (including but not limited to written, facsimile, or oral funds transfer instructions) in connection with any transaction to which the Partnership is or in the future may be a party to in any capacity.

| Name of Officer | Title | Signature |
|---|---|---|
| James Dondero | President | |
| Dustin Norris | Executive Vice President | |
| Frank Waterhouse | Treasurer | |
| Lauren Thedford | Secretary | |

WITNESS my hand to be effective as of the 11th day of April, 2019.

NEXPOINT ADVISORS, L.P.

By: NexPoint Advisors GP, LLC, its general partner

By: _____
James Dondero, President

HIGHLY CONFIDENTIAL

# EXHIBIT 38

Cash payment history after 12/31/2018 - Other Notes subject to the Alleged Agreement

**HCRE**

| Date | Cash receipt amount | "HCRE Restructure note" Principal | "HCRE Restructure note" Interest | November 27, 2013 Note Principal | November 27, 2013 Note Interest | October 12, 2017 Note Principal | October 12, 2017 Note Interest | October 15, 2018 Note Principal | October 15, 2018 Note Interest | September 25, 2019 Note Principal | September 25, 2019 Note Interest | Total Received in respect of notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/30/2019 | $ 341,758 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 204,733 | $ 986 | $ 205,719 |
| 12/30/2019 | 477,482 | 201,994 | 275,487 | - | - | - | - | - | - | - | - | 477,482 |
| 1/21/2021 | 665,811 | 30,542 | 301,847 | 171,452 | 2,067 | - | 69,730 | - | 18,794 | - | 71,380 | 665,811 |
| **Total** | **$ 1,485,051** | **$ 232,537** | **$ 577,334** | **$ 171,452** | **$ 2,067** | **$ -** | **$ 69,730** | **$ -** | **$ 18,794** | **$ 204,733** | **$ 72,366** | **$ 1,349,012** |

\* Difference between cash receipt and total received in respect of the notes of $136,039 was returned to HCRE on September 30, 2019.

**HCMSI**

| Date | Cash receipt amount | "Services Restructure note" Principal | "Services Restructure note" Interest | | | | | | | | | Total Received in respect of notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/5/2019 | $ 1,015,000 | $ 977,095 | $ 37,905 | | | | | | | | | $ 1,015,000 |
| 8/9/2019 | 550,000 | 550,000 | - | | | | | | | | | 550,000 |
| 8/21/2019 | 5,600,000 | 5,595,862 | 4,138 | | | | | | | | | 5,600,000 |
| 12/30/2019 | 65,360 | - | 65,360 | | | | | | | | | 65,360 |
| 1/21/2021 | 181,227 | - | 181,227 | | | | | | | | | 181,227 |
| **Total** | **$ 7,411,587** | **$ 7,122,957** | **$ 288,630** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 7,411,587** |

**HCMFA**

| Date | Cash receipt amount | February 26, 2014 Note Principal | February 26, 2014 Note Interest | | | | | | | | | Total Received in respect of notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/29/2019 | $ 1,000,000 | $ 978,102 | $ 21,898 | | | | | | | | | $ 1,000,000 |
| 6/4/2019 | 500,000 | 500,000 | - | | | | | | | | | 500,000 |
| 9/5/2019 | 500,000 | 484,172 | 15,828 | | | | | | | | | 500,000 |
| 10/3/2019 | 375,000 | 375,000 | - | | | | | | | | | 375,000 |
| **Total** | **$ 2,375,000** | **$ 2,337,274** | **$ 37,726** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 2,375,000** |

**NexPoint**

| Date | Cash receipt amount | "NexPoint Restructure note" Principal | "NexPoint Restructure note" Interest | September 19, 2019 Note Principal | September 19, 2019 Note Interest | September 23, 2019 Note Principal | September 23, 2019 Note Interest | | | | | Total Received in respect of notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/29/2019 | $ 725,000 | $ 411,079 | $ 313,921 | - | - | - | - | | | | | $ 725,000 |
| 4/16/2019 | 1,300,000 | 1,216,918 | 83,082 | - | - | - | - | | | | | 1,300,000 |
| 6/4/2019 | 300,000 | 282,207 | 17,793 | - | - | - | - | | | | | 300,000 |
| 6/19/2019 | 2,100,000 | 2,033,972 | 66,028 | - | - | - | - | | | | | 2,100,000 |
| 7/9/2019 | 630,000 | 548,650 | 81,350 | - | - | - | - | | | | | 630,000 |
| 8/13/2019 | 1,300,000 | 1,160,793 | 139,207 | - | - | - | - | | | | | 1,300,000 |
| 12/9/2019 | 1,518,575 | - | - | 500,000 | 6,658 | 1,000,000 | 11,918 | | | | | 1,518,575 |
| 12/30/2019 | 530,112 | - | 530,112 | - | - | - | - | | | | | 530,112 |
| 1/14/2021 | 1,406,112 | 575,551 | 830,561 | - | - | - | - | | | | | 1,406,112 |
| **Total** | **$ 9,809,800** | **$ 6,229,170** | **$ 2,062,054** | **$ 500,000** | **$ 6,658** | **$ 1,000,000** | **$ 11,918** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 9,809,800** |

| Total of HCRE, HCMSI, HCMFA, NexPoint after December 31, 2018 | $ 20,945,399 |
|---|---|

# EXHIBIT 39



OPERATING RESULTS

**February 2018**

**Appx. 00800**

**Highland Capital Management, L.P.**
**Significant Items Impacting HCMLP's Balance Sheet**
**February 2018**

CLOs



Operating Activities

Investments

Other
 - ($3.8M) partner loan

**Highland Capital Management, L.P.**
**Financial/Operational Highlights**
**February 2018 Close Package**
*(in millions)*

| | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|
| **Cash** | $ 6.4 | $ 10.2 | $ 2.2 | $ 9.6 |
| **Operating Revenue** | $ 4.3 | $ 13.9 | $ 4.2 | 4.4 |
| **Operating Expenses** [1] | (4.2) | (19.7) | (3.7) | (4.5) |
| **Operating Income** | $ 0.1 | $ (5.8) | $ 0.5 | $ (0.1) |
| **Add back: Non-Recurring Items** | $ - | $ - | $ - | $ - |
| **Adjusted Operating Income** | $ 0.1 | $ (5.8) | $ 0.5 | $ (0.1) |
| **Net Income/(Loss)** | $ 20.4 | $ 17.0 | $ 7.2 | $ (26.1) |

| | MTD | YTD | LTM |
|---|---|---|---|
| **Operating Cash Flow** [2] | $ (6.0) | $ (4.2) | $ (7.6) |
| Interest Expense | (0.1) | (0.2) | (1.6) |
| **Adjusted Operating Cash Flow** | $ (6.1) | $ (4.4) | $ (9.2) |

| **Assets Under Management (billions)** | 11/30/2017 | 12/31/2017 | 1/31/2018 |
|---|---|---|---|
| CLO 1.0 | $ 2.1 | $ 1.9 | $ 1.8 |
| Sep. Accounts | 1.9 | 2.0 | 2.0 |
| Hedge/PE | 1.1 | 1.1 | 1.1 |
| **Total** | $ 5.0 | $ 5.0 | $ 4.9 |

| **Headcount - including affiliates** | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|
| Front Office | 47 | 45 | 45 | 42 |
| Institutional Marketing and Client Service | 7 | 7 | 9 | 8 |
| Legal | 14 | 15 | 15 | 16 |
| Admin | 13 | 14 | 13 | 13 |
| Retail Operations (HCMLP) | 4 | 4 | 4 | 4 |
| Back Office | 41 | 38 | 39 | 39 |
| HCFD/NSI | 21 | 21 | 17 | 16 |
| HCMF Strategy/Marketing | 5 | 5 | 5 | 5 |
| Total | 152 | 149 | 147 | 143 |

**Notes:**
(1) Excludes deferred compensation MTM
(2) Operating Cash Flow = Operating Income + Dep. + Deferred Comp + Non-Cash Bonus Expense

2

**Appx. 00802**

**HCMLP Rolling Fee Earning AUM Schedule**
*(in millions)*

| | | 2/28/2017 | | 3/31/2017 | | 4/30/2017 | | 5/31/2017 | | 6/30/2017 | | 7/31/2017 | | 8/31/2017 | | 9/30/2017 | | 10/31/2017 | | 11/30/2017 | | 12/31/2017 | | 1/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ | 3,396 | $ | 3,405 | $ | 3,402 | $ | 2,250 | $ | 2,250 | $ | 2,249 | $ | 2,063 | $ | 2,060 | $ | 2,072 | $ | 1,859 | $ | 1,827 | $ | 1,831 |
| Sep Accounts | | 2,251 | | 2,282 | | 1,538 | | 1,741 | | 1,732 | | 1,787 | | 1,823 | | 1,855 | | 1,905 | | 1,951 | | 1,987 | | 2,003 |
| Hedge/PE | | 1,189 | | 1,195 | | 1,213 | | 1,076 | | 1,065 | | 1,049 | | 1,058 | | 1,067 | | 1,072 | | 1,112 | | 1,073 | | 1,084 |
| Total | $ | 6,742 | $ | 6,882 | $ | 6,153 | $ | 5,067 | $ | 5,047 | $ | 5,085 | $ | 4,945 | $ | 4,981 | $ | 5,049 | $ | 4,922 | $ | 4,887 | $ | 4,917 |



Appx. 00803

**HCMLP Monthly Management Fees**
*(in thousands)*

| | | 3/31/2017 | | 4/30/2017 | | 5/31/2017 | | 6/30/2017 | | 7/31/2017 | | 8/31/2017 | | 9/30/2017 | | 10/31/2017 | | 11/30/2017 | | 12/31/2017 | | 1/31/2018 | | 2/28/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ | 1,433 | $ | 1,081 | $ | 961 | $ | 961 | $ | 1,644 | $ | 793 | $ | 802 | $ | 1,082 | $ | 768 | $ | 765 | $ | 817 | $ | 713 |
| Sep Accounts | | 577 | | 762 | | 586 | | 327 | | 792 | | 635 | | 563 | | 516 | | 678 | | 584 | | 622 | | 626 |
| Subadvised Account | | 566 | | 526 | | 505 | | 588 | | 538 | | 520 | | 529 | | 447 | | 620 | | 621 | | 491 | | 497 |
| Hedge/PE Funds | | 414 | | 446 | | 409 | | 2,617 | | 797 | | 837 | | 831 | | 814 | | 818 | | 817 | | 1,177 | | 1,138 |
| Total | $ | 2,990 | $ | 2,815 | $ | 2,462 | $ | 4,494 | $ | 3,771 | $ | 2,785 | $ | 2,725 | $ | 2,860 | $ | 2,885 | $ | 2,786 | $ | 3,107 | $ | 2,974 |



Highland Capital Management, LP



**Statement of Income**
**Twelve Months Ended February 2018**
**(in thousands)**

| | Mar-17 | Apr-17 | May-17 | Jun-17 | Jul-17 | Aug-17 | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | LTM | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue:** | | | | | | | | | | | | | | |
| Management fees | $ 2,990 $ | 2,815 $ | 2,462 $ | 4,494 $ | 3,771 $ | 2,785 $ | 2,725 $ | 2,860 $ | 2,885 $ | 3,265 $ | 3,129 $ | 2,974 $ | 37,154 $ | 6,103 |
| Shared services fees | 817 | 871 | 794 | 620 | 779 | 803 | 757 | 732 | 871 | 873 | 930 | 866 | 9,713 | 1,796 |
| Incentive fees | - | - | - | - | - | - | - | - | - | 10,057 | - | - | 10,057 | - |
| Other income | 431 | 217 | 560 | 477 | 274 | 614 | 562 | 234 | 586 | 912 | 215 | 596 | 5,679 | 811 |
| **Total operating revenue** | 4,237 | 3,904 | 3,816 | 5,591 | 4,824 | 4,202 | 4,043 | 3,827 | 4,342 | 15,107 | 4,274 | 4,436 | 62,603 | 8,710 |
| **Operating expenses:** | | | | | | | | | | | | | | |
| Compensation and benefits | 2,769 | 2,539 | 2,495 | 2,702 | 2,885 | 2,800 | 2,368 | 2,308 | 2,795 | 2,692 | 2,755 | 2,769 | 31,876 | 5,524 |
| Deferred compensation | 222 | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | (489) | 3,201 | 260 |
| Professional services | 629 | 307 | 1,168 | 511 | 616 | 1,531 | 472 | 1,031 | 649 | 16,650 | 181 | 314 | 24,060 | 495 |
| Investment research and consulting | 226 | 175 | 8 | 208 | 14 | 15 | 160 | 22 | 8 | 242 | 13 | 20 | 1,111 | 33 |
| Depreciation | 110 | 110 | 110 | 114 | 112 | 112 | 113 | 112 | 112 | 108 | 109 | 108 | 1,328 | 217 |
| Other operating expenses | 875 | 684 | 702 | 1,021 | 645 | 988 | 805 | 723 | 497 | 662 | 580 | 683 | 8,866 | 1,263 |
| **Total operating expenses** | 4,831 | 4,057 | 4,640 | 4,770 | 4,697 | 5,495 | 4,216 | 4,482 | 4,816 | 20,646 | 3,798 | 3,995 | 70,442 | 7,793 |
| **Operating income** | (594) | (153) | (824) | 821 | 127 | (1,292) | (172) | (655) | (474) | (5,539) | 476 | 441 | (7,839) | 917 |
| **Other income/expense:** | | | | | | | | | | | | | | |
| Interest and investment income, net | 478 | 454 | 493 | 661 | 606 | 558 | 532 | 574 | 937 | 839 | 612 | 473 | 7,219 | 1,086 |
| Interest expense | (143) | (141) | (149) | (146) | (142) | (148) | (136) | (141) | (134) | (147) | (141) | (65) | (1,632) | (206) |
| Other income/expense | 59 | 170 | 4,060 | 947 | 39 | 13 | 63 | 77 | 64 | 19,147 | 81 | 64 | 24,784 | 145 |
| **Total other income/expense** | 394 | 484 | 4,405 | 1,462 | 503 | 424 | 459 | 510 | 867 | 19,839 | 552 | 472 | 30,370 | 1,024 |
| **Realized and unrealized gain/(loss) from investments:** | | | | | | | | | | | | | | |
| Net realized gain/(loss) on sale of investment transactions | 1,547 | (20) | 2,560 | 272 | 496 | 2,811 | - | 22 | - | (1,155) | - | - | 6,533 | - |
| Net change in unrealized gain/(loss) of investments | (189) | (460) | 4,729 | 4,338 | 3,144 | (9,361) | 9,180 | (1,004) | 6,375 | 2,170 | 10,678 | (10,201) | 19,398 | 477 |
| **Total realized and unrealized gain/(loss) from investments** | 1,358 | (480) | 7,290 | 4,610 | 3,640 | (6,550) | 9,180 | (982) | 6,375 | 1,015 | 10,678 | (10,201) | 25,931 | 477 |
| **Earnings and losses from equity method investees** | | | | | | | | | | | | | | |
| | 225 | 235 | (16) | 258 | 44 | (201) | 333 | 12 | 200 | 329 | 926 | (210) | 2,135 | 716 |
| ▇▇▇▇ | (2,857) | (558) | (624) | 818 | (1,908) | 1,709 | (1,136) | (203) | 4,333 | 529 | (1,674) | (5,137) | (6,708) | (6,811) |
| ▇▇▇▇▇▇▇ | (5,870) | (1,935) | (1,352) | 1,692 | (3,860) | 3,454 | (2,300) | (419) | 8,353 | 1,019 | (3,731) | (11,446) | (16,395) | (15,177) |
| ▇▇▇▇▇▇ | - | - | - | - | - | 9 | 0 | 15 | - | 18 | - | - | 42 | - |
| ▇▇▇▇▇▇ | - | (184) | - | (6) | (15) | - | (14) | (18) | 11 | 102 | - | - | (125) | - |
| ▇▇▇▇▇▇ | - | - | - | - | - | - | - | - | 768 | - | - | - | 768 | - |
| ▇▇▇▇ | - | - | (1,534) | - | - | - | - | - | - | - | - | - | (1,534) | - |
| ▇▇▇ | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total earnings/(loss) from equity method investees** | (8,502) | (2,441) | (3,525) | 2,762 | (5,740) | 4,971 | (3,118) | (613) | 13,664 | 1,996 | (4,479) | (16,794) | (21,817) | (21,273) |
| **Net income** | (7,345) | (2,591) | 7,345 | 9,655 | (1,470) | (2,447) | 6,348 | (1,739) | 20,432 | 17,311 | 7,227 | (26,081) $ | 26,645 $ | (18,854) |
| **Profit margin** | -173% | -66% | 192% | 173% | -30% | -58% | 157% | -45% | 471% | 115% | 169% | -588% | 43% | -216% |
| **Operating Cash Flow Calculation:** | | | | | | | | | | | | | | |
| Operating income | (594) | (153) | (824) | 821 | 127 | (1,292) | (172) | (655) | (474) | (5,539) | 476 | 441 | (7,839) | 917 |
| Add  Depreciation expense | 110 | 110 | 110 | 114 | 112 | 112 | 113 | 112 | 112 | 108 | 109 | 108 | 1,328 | 217 |
| Adjustment  Deferred compensation | (2,767) | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | (489) | (378) | (330) |
| Bonus awards | 1,000 | 956 | 1,000 | 1,000 | 1,000 | (5,190) | 986 | 1,000 | 1,300 | 1,300 | 1,000 | (6,049) | (696) | (5,049) |
| **Operating Cash Flow** | (2,251) | 1,155 | 442 | 2,149 | 1,664 | (6,320) | 1,224 | 743 | 1,693 | (3,840) | 1,744 | (5,989) $ | (7,585) $ | (4,245) |
| Less  Interest expense | (143) | (141) | (149) | (146) | (142) | (148) | (136) | (141) | (134) | (147) | (141) | (65) | (1,632) | (206) |
| **Adjusted Operating Cash Flow** | (2,395) | 1,015 | 293 | 2,003 | 1,523 | (6,468) | 1,087 | 603 | 1,559 | (3,987) | 1,603 | (6,054) $ | (9,217) $ | (4,451) |
| Add cash bonus expense | 1,063 | 1,001 | 1,000 | 1,100 | 1,032 | 1,025 | 1,000 | 1,008 | 1,304 | 1,300 | 1,000 | 1,000 | 12,832 | 2,000 |
| Less cash bonuses paid | (63) | (45) | - | (100) | (32) | (6,215) | (14) | (8) | (4) | - | - | (7,049) | (13,528) | (7,049) |
| Non-cash bonus add-back | 1,000 | 956 | 1,000 | 1,000 | 1,000 | (5,190) | 986 | 1,000 | 1,300 | 1,300 | 1,000 | (6,049) | (696) | (5,049) |
| Add deferred compensation MTM | 222 | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | 101 | 3,201 | 260 |
| Less cash deferred awards paid | (2,989) | - | - | - | - | - | - | - | - | - | - | (590) | (3,579) | (590) |
| Non-cash deferred award add-back | (2,767) | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | (489) | (378) | (330) |



**Balance Sheet**
**February 2018 vs. January 2018**
**(in thousands)**

|  | February 28, 2018 | January 31, 2018 | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 9,607 | $ 2,161 | $ 7,446 | 344.6% |
| Investments, at fair value | 266,615 | 277,888 | (11,273) | -4.1% |
| Equity method investees | 59,692 | 82,690 | (22,997) | -27.8% |
| Management and incentive fee receivable | 1,918 | 4,988 | (3,070) | -61.5% |
| Deferred incentive fees | - | 6,944 | (6,944) | 0.0% |
| Fixed assets, net | 5,557 | 5,665 | (109) | -1.9% |
| Due from affiliates | 181,222 | 175,605 | 5,617 | 3.2% |
| Other assets | 9,408 | 10,353 | (945) | -9.1% |
| **Total assets** | **$ 534,020** | **$ 566,295** | **$ (32,275)** | **(5.7%)** |
| **Liabilities and Partners' Capital** | | | | |
| Accounts payable | $ 2,036 | $ 2,667 | $ (631) | -23.7% |
| Due to brokers | 35,777 | 35,842 | (64) | -0.2% |
| Accrued expenses and other liabilities | 54,361 | 59,860 | (5,498) | -9.2% |
| Partners' capital | 441,846 | 467,927 | (26,081) | -5.6% |
| **Total liabilities and partners' capital** | **$ 534,020** | **$ 566,295** | **$ (32,275)** | **(5.7%)** |

**Partners' Capital Walk**

| | |
|---|---|
| Partners' capital at 1/31 | $ 467,927 |
| Net subscriptions/(redemptions) | - |
| Net income/(loss) | (26,081) |
| Partners' capital at 2/28 | $ 441,846 |



Income Statement
February 2018 YTD  vs. January 2017 YTD
(in thousands)

| | 2018 YTD | 2017 YTD | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $ 6,103 | $ 6,106 | $ (3) | 0.0% |
| Shared services fees | 1,796 | 1,574 | 221 | 14.1% |
| Other income | 811 | 808 | 3 | 0.4% |
| **Total operating revenue** | **8,710** | **8,488** | **222** | **2.6%** |
| **Operating expenses:** | | | | |
| Salaries and overtime | 2,331 | 2,274 | 57 | 2.5% |
| Bonus | 2,000 | 1,995 | 5 | 0.2% |
| Other compensation and benefits | 1,193 | 1,125 | 68 | 6.1% |
| Deferred compensation | 260 | 666 | (406) | -61.0% |
| Professional services | 495 | 740 | (245) | -33.1% |
| Investment research and consulting | 33 | 23 | 10 | 45.5% |
| Marketing and advertising expense | 341 | 460 | (119) | -25.8% |
| Depreciation expense | 217 | 221 | (4) | -2.0% |
| Other operating expenses | 922 | 747 | 175 | 23.4% |
| **Total operating expenses** | **7,793** | **8,252** | **(460)** | **-5.6%** |
| **Operating income/(loss)** | **917** | **236** | **681** | **288.5%** |
| **Other income/expense:** | | | | |
| Interest income | 1,086 | 916 | 170 | 18.6% |
| Interest expense | (206) | (244) | 39 | -15.8% |
| Other income/expense | 145 | 251 | (106) | -42.3% |
| **Total other income/expense** | **1,024** | **922** | **103** | **11.1%** |
| **Realized and unrealized gains from investments:** | | | | |
| Net realized losses on sales of investment transactions | - | - | - | 0.0% |
| Net change in unrealized gains/(losses) of investments | 477 | 10,093 | (9,616) | 95.3% |
| **Total realized and unrealized gains from investments** | **477** | **10,093** | **(9,616)** | **-95.3%** |
| **Net earnings/(losses) from equity method investees** | **(21,273)** | **6,393** | **(27,666)** | **432.8%** |
| **Net income/(loss)** | **$ (18,854)** | **$ 17,644** | **$ (36,498)** | **206.9%** |
| **Profit margin** | **-216%** | **208%** | | |

| Other operating expenses detail | | | | |
|---|---|---|---|---|
| Rent expense | 258 | 196 | 61 | 31 2% |
| Fees and dues | 44 | 55 | (11) | -19 6% |
| Travel and entertainment | 137 | 201 | (63) | -31 6% |
| Insurance expense | 128 | 50 | 78 | 155 8% |
| Bad debt expense | - | - | - | 0 0% |
| Miscellaneous expenses | 354 | 245 | 110 | 44 9% |
| **Total other operating expenses** | **922** | **747** | **175** | **23.4%** |

7

**HCMLP Analytics**
*(in thousands)*

**Accounts Payable Aging Analysis**

| Vendor Type | Current | | 30 Days | | 45 Days | | 90 Days | | 120 Days | | Greater Than 120 Days | | Grand Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Overhead | $ | 678 | $ | 45 | $ | 433 | $ | 86 | $ | - | $ | - | $ | 1,242 | 61% |
| Legal | | - | | - | | - | | - | | - | | 794 | | 794 | 39% |
| Grand Total | $ | 678 | $ | 45 | $ | 433 | $ | 86 | $ | - | $ | 794 | | 2,036 | 100% |

| % Outstanding | 33% | 2% | 21% | 4% | 0% | 39% |
|---|---|---|---|---|---|---|



Overhead — Current, 30 Days, 45 Days, 90 Days, 120 Days, Greater Than 120 Days

Legal — Current, 30 Days, 45 Days, 90 Days, 120 Days, Greater Than 120 Days

Grand Total — Current, 30 Days, 45 Days, 90 Days, 120 Days, Greater Than 120 Days

| Top 5 Legal Greater than 120 Days | February 2018 | Top 5 Overhead Greater than 120 Days* | February 2018 |
|---|---|---|---|
| | $ 292 | N/A | - |
| | 200 | | |
| | 180 | | |
| | 112 | | |
| | 10 | | |
| Total | $ 794 | Total | $ - |
| % Total of AP Outstanding | 39% | % Total of AP Outstanding | 0% |

**Fund Reimbursements**

| Funds | 2/28/2018 | | 1/31/2018 | | 2/28/2017 | | Year-Over-Year $ Change | | % Change |
|---|---|---|---|---|---|---|---|---|---|
| US CLOs | $ | 851 | $ | 1,893 | $ | 633 | $ | 217 | 34% |
| Hedge/Private Equity | | 611 | | 622 | | 497 | | 114 | 23% |
| Separate Accounts | | 30 | | 30 | | 17 | | 13 | 77% |
| Retail | | 194 | | 194 | | 557 | | (363) | -65% |
| International/Portfolio Co | | 3,413 | | 3,668 | | 3,954 | | (541) | -14% |
| Research Unallocated | | 759 | | 311 | | 888 | | (129) | -15% |
| Unallocated | | 1,345 | | 1,297 | | 1,350 | | - | 0% |
| Total | $ | 7,202 | $ | 8,015 | $ | 7,896 | $ | (688) | -9% |

| | 1/31/2018 | Net Additions | Receipts | 2/28/2018 |
|---|---|---|---|---|
| Month to Month Change | $ 8,015 | $ 330 | $ (1,143) | $ 7,202 |

| | 2/28/2017 | 2/28/2018 | 2017 YTD | 2018 YTD |
|---|---|---|---|---|
| Fund Reimbursement Receipts | $ 1,620 | $ 1,143 | $ 2,225 | $ 2,256 |

**HCMLP Invoice Metrics**

| | February 2018 | January 2018 |
|---|---|---|
| Invoices Processed: | 162 | 120 |
| $ Amount Processed: | $ 8,077 | $ 11,918 |
| # of Payments: | 166 | 152 |
| $ Amount of Payments: | $ 8,558 | $ 13,302 |

**Self-Insurance Summary**

| Entity | Premium Balance |
|---|---|
| | 693 |
| | 370 |
| | 89 |
| | 9 |
| | (156) |
| | (154) |
| | (197) |
| | (392) |
| | (258) |
| Total over/(under) funded | $ 4 |

**Shared Services Receivables Summary**

| Entity | Balance |
|---|---|
| | 3,730 |
| | 367 |
| | 200 |
| | 40 |
| | 54 |
| | - |
| | - |
| Total | $ 4,391 |

**Highland Capital Management, LP**
**Schedule of Investments**
**As of February 2018**



**Historical Legal Summary through February 28, 2018**
**Includes only matters allocated to HCMLP**
**in thousands**

**HCMLP Legal by Matter**                     **HCMLP Legal by Vendor**



| | | | | |
|---|---|---|---|---|
| Sub-Total Top 25 Matters | 3,469 | 3,513 | 8,039 | 512 |
| Sub-Total Other Matters | 31 | 1 | - | - |
| Total Matters | 3,500 | 3,514 | 8,039 | 512 |

| | | | | |
|---|---|---|---|---|
| Sub-Total Top 25 Vendors | 2,865 | 3,045 | 7,450 | 450 |
| Sub-Total Other Vendors | 635 | 469 | 589 | 61 |
| Total Vendors | 3,500 | 3,514 | 8,039 | 512 |

Sorted largest to smallest Matter by 2018 dollars invoiced

Sorted largest to smallest Vendor by cumulative dollars invoiced ('12 - YTD '18)

**Employee Expenses through February 28, 2018**
**Excludes all Dondero Reimbursements**
**HCMLP & Certain Affiliated Advisors**
**in thousands**

**Employee Expenses - Including Reimbursable**

| Company | 2015 | 2016 | 2017 | 2018 | 2018 Annualized |
|---|---|---|---|---|---|
| ▮▮▮▮ | $ 838 | $ 707 | $ 818 | $ 93 | $ 557 |
| ▮▮▮ | 2,447 | 1,860 | 1,041 | 85 | 509 |
| ▮▮ | 742 | 511 | 292 | 23 | 139 |
| ▮ | - | 57 | 141 | 18 | 108 |
| Total | $ 4,027 | $ 3,135 | $ 2,293 | $ 219 | $ 1,312 |

**Employee Expenses - Non-Reimbursable Only**

| Company | 2015 | 2016 | 2017 | 2018 | 2018 Annualized |
|---|---|---|---|---|---|
| HCMLP | $ 387 | $ 174 | $ 396 | $ 61 | $ 363 |
| HCFD | 2,219 | 933 | 543 | 39 | 231 |
| HCMFA | 450 | 380 | 256 | 18 | 110 |
| NPA | - | 16 | 61 | 9 | 55 |
| Total | $ 3,056 | $ 1,503 | $ 1,257 | $ 127 | $ 759 |

# EXHIBIT 40

Appx. 00812

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Highland Capital Management, L.P.** |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF TEXAS |
| Case number (if known) | **19-34054-SGJ** |

☐ Check if this is an amended filing

# Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals
**12/15**

| Part 1: | Summary of Assets |
|---|---|

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*................................................................ $ **523,970.00**

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*............................................................. $ **409,580,813.30**

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.............................................................. $ **410,104,783.30**

| Part 2: | Summary of Liabilities |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................................... $ **34,862,225.94**

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................................ $ **Unknown**

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*................................................ +$ **244,455,350.78**

4. **Total liabilities** ...........................................................................................
   Lines 2 + 3a + 3b                                                                                    $ **279,317,576.72**

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                         Best Case Bankruptcy

**Appx. 00813**

| Debtor | **Highland Capital Management, L.P.** | Case number *(If known)* **19-34054-SGJ** |
|---|---|---|
| | Name | |

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61. **Internet domain names and websites** **139 Domain Names** | $0.00 | N/A | Unknown |
| 62. **Licenses, franchises, and royalties** **3rd Party Private Equity Management Company** | $0.00 | N/A | Unknown |
| 63. **Customer lists, mailing lists, or other compilations** | | | |
| 64. **Other intangibles, or intellectual property** | | | |
| 65. **Goodwill** | | | |

66. **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

**Unknown**

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107?
☐ No
☑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
☑ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
☑ No
☐ Yes

| **Part 11:** | **All other assets** |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
☑ Yes Fill in the information below.

| | Current value of debtor's interest |
|---|---|

71. **Notes receivable**
Description (include name of obligor)

**Notes Receivable (Exhibit D)**     150,331,222.61 – Total face amount     Unknown doubtful or uncollectible amount = **Unknown**

72. **Tax refunds and unused net operating losses (NOLs)**
Description (for example, federal, state, local)

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

**Highland Capital Management LP**
**Case # 19-34054-SGJ**
**Exhibit D - Schedule 71A**

| Notes Receivable | Total Face Amount [1] |
|---|---|
| Hunter Mountain Investment Trust | $ 56,873,209.22 |
| Affiliate Note Receivable - A | 24,534,644.03 |
| The Dugaboy Investment Trust | 18,286,268.16 |
| Affiliate Note Receivable - B | 10,413,539.53 |
| Affiliate Note Receivable - C | 10,394,680.47 |
| James Dondero | 9,334,012.00 |
| Highland Capital Management Services, Inc. | 7,482,480.88 |
| Siepe | 2,019,256.35 |
| Highland Mult Strategy Credit Fund, LP | 3,269,000.00 |
| Highland Capital Management Korea Ltd. [2] | 3,132,278.05 |
| Private Portfolio Company - A | 2,198,610.05 |
| Mark Okada | 1,336,287.84 |
| Private Portfolio Company - B | 1,056,956.03 |
| **Total** | **$ 150,331,222.61** |

*[1]Doubtful or Uncollectible accounts are evaluated at year end.*
*[2] Includes $72,278.05 of intercompany receivable.*

1 of 1

**Appx. 00815**

# EXHIBIT 41

**Monthly Operating Report**
ACCRUAL BASIS

| **CASE NAME:** | Highland Capital Management |
| --- | --- |

| **CASE NUMBER:** | 19-34054 |
| --- | --- |

| **JUDGE:** Stacey Jernigan |
| --- |

# UNITED STATES BANKRUPTCY COURT

## NORTHERN & EASTERN DISTRICTS OF TEXAS

## REGION 6

## MONTHLY OPERATING REPORT

**MONTH ENDING:**   December   2019
                    MONTH       YEAR

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.

**RESPONSIBLE PARTY:**

_____          Chief Restructuring Officer
ORIGINAL SIGNATURE OF RESPONSIBLE PARTY          TITLE

Bradley Sharp                                    1/31/2020
PRINTED NAME OF RESPONSIBLE PARTY          DATE

**PREPARER:**

_____          Chief Financial Officer
ORIGINAL SIGNATURE OF PREPARER          TITLE

Frank Waterhouse                          _____
PRINTED NAME OF PREPARER          DATE

Appx. 00817

**Monthly Operating Report**
**ACCRUAL BASIS-1**

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 10/31/2019 | 11/30/2019 | 12/31/2019 [6] |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | 2,529 | 2,286 | 6,343 | 9,501 |
| Investments, at fair value [3] | 232,620 | 235,144 | 233,776 | 235,054 |
| Equity method investees [3] | 161,819 | 161,813 | 175,381 | 174,815 |
| Management and incentive fee receivable | 2,579 | 3,202 | 1,223 | 1,828 |
| Fixed assets, net | 3,754 | 3,672 | 3,601 | 3,521 |
| Due from affiliates [1] | 151,901 | 152,124 | 152,523 | 146,245 |
| Reserve against notes recievable | | | | (57,963) |
| Other assets | 11,311 | 11,260 | 10,621 | 10,663 |
| **Total assets** | **$ 566,513** | **$ 569,501** | **$ 583,468** | **$ 523,664** |
| | | | | |
| **Liabilities and Partners' Capital** | | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,135 | 1,250 | 1,068 |
| Post-petition accounts payable [4] | - | 102 | 236 | 624 |
| Secured debt: | | | | |
| Frontier | 5,195 | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,315 | 30,268 | 30,020 |
| Accrued expenses and other liabilities [4] | 59,203 | 59,184 | 60,848 | 66,423 |
| Accrued re-organization related fees [5] | - | - | - | 5,693 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 399,573 | 411,674 | 340,644 |
| **Total liabilities and partners' capital** | **$ 566,513** | **$ 569,501** | **$ 583,468** | **$ 523,664** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($58M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have been updated based upon the most recent statement available, or marked to an estimate to the extent available.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices. For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] At December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

Appx. 00818

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE  NUMBER: | 19-12239-CSS |

**Income Statement** [1]
(in thousands)

| | Date | Month ended | Month ended [4] | Filing to Date |
|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 11/30/2019 | 12/31/2019 | |
| **Revenue:** | | | | |
| Management fees | 975 | 1,638 | 1,804 | 4,417 |
| Shared services fees | 283 | 709 | 596 | 1,588 |
| Other income | 99 | 418 | 1,032 | 1,549 |
| **Total operating revenue** | **1,357** | **2,765** | **3,433** | **7,555** |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,936 | 2,256 | 5,188 |
| Professional services | 256 | 90 | 354 | 700 |
| Investment research and consulting | 10 | 34 | 10 | 54 |
| Marketing and advertising expense | - | 35 | (15) | 20 |
| Depreciation expense | 82 | 82 | 80 | 244 |
| Bad debt expense reserve | - | - | 8,420 | 8,420 |
| Other operating expenses | 201 | 480 | 310 | 991 |
| **Total operating expenses** | **1,545** | **2,657** | **11,415** | **15,617** |
| **Operating income/(loss)** | **(188)** | **108** | **(7,982)** | **(8,062)** |
| **Other income/expense:** | | | | |
| Interest income | 250 | 484 | 495 | 1,230 |
| Interest expense | (107) | (103) | (135) | (346) |
| Reserve against notes receivable | - | - | (57,963) | (57,963) |
| Re-org related expenses[2] | - | - | (5,693) | (5,693) |
| Other income/expense | 32 | - | - | 32 |
| **Total other income/expense** | **175** | **381** | **(63,296)** | **(62,741)** |
| Net realized gains/(losses) on investments | 339 | 279 | - | 618 |
| Net change in unrealized gains/(losses) of investments[3] | 2,654 | (2,004) | 988 | 1,638 |
| | **2,993** | **(1,725)** | **988** | **2,256** |
| **Net earnings/(losses) from equity method investees** [3] | **(20)** | **13,468** | **(692)** | **12,756** |
| **Net income/(loss)** | **$     2,959** | **$     12,232** | **$     (70,982)** | **$     (55,791)** |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date. At December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Limited partnership interests normally marked to a NAV statement have been updated based upon the most recent statement available, or marked to an estimate to the extent available.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

Case 19-34054-sgj11 Doc 1468 Filed 03/30/20 Entered 03/30/20 11:32:27 Page 54 of 19

**Monthly Operating Report**
**ACCRUAL BASIS-3A**

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | | OCTOBER | | NOVEMBER | | DECEMBER | | QUARTER |
|---|---|---|---|---|---|---|---|---|
| 1. | CASH - BEGINNING OF MONTH [2] | $ 2,554,230 | $ | 2,286,160 | $ | 6,342,598 | $ | 2,554,230 |
| **RECEIPTS FROM OPERATIONS** | | | | | | | | |
| 2. | OTHER OPERATING RECEIPTS | $ 6,912 | $ | 972,733 | $ | 883,113 | $ | 1,862,757 |
| 3 | MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 15,000 | $ | 1,764,749 | $ | 1,376,993 | $ | 3,156,742 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | | | | |
| 4 | PREPETITION | $ 46,425 | $ | 2,962,108 | $ | 584,575 | $ | 3,593,108 |
| 5 | POSTPETITION [1] | $ - | $ | - | $ | - | $ | - |
| 6 | TOTAL OPERATING RECEIPTS | $ 68,337 | $ | 5,699,590 | $ | 2,844,680 | $ | 8,612,608 |
| **NON-OPERATING RECEIPTS** | | | | | | | | |
| 7 | THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 79,266 | $ | 320,836 | $ | 23,365 | $ | 423,468 |
| 8 | DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | 410,189 | $ | 501,983 | $ | 425,897 | $ | 1,338,069 |
| 9 | OTHER (ATTACH LIST) | | | | $ | 3,390,286 | $ | 3,390,286 |
| 10 | TOTAL NON-OPERATING RECEIPTS | $ 489,456 | $ | 822,820 | $ | 3,839,547 | $ | 5,151,822 |
| 11 | TOTAL RECEIPTS | $ 557,793 | $ | 6,522,410 | $ | 6,684,227 | $ | 13,764,430 |
| 12 | TOTAL CASH AVAILABLE | $ 3,112,023 | $ | 8,808,570 | 13,026,825 | | |
| **OPERATING DISBURSEMENTS** | | | | | | | | |
| 13 | PAYROLL, BENEFITS, AND TAXES + EXP REIMB [3] | $ 737,588 | $ | 961,282 | $ | 2,077,577 | $ | 3,776,446 |
| 14 | SINGAPORE SERVICE FEES | $ 34,633 | $ | 32,555 | $ | 27,930 | $ | 95,118 |
| 15 | HCM LATIN AMERICA | | $ | 100,000 | $ | 100,000 | $ | 200,000 |
| 16 | THIRD PARTY FUND CAPITAL CALL OBLIGATION | | $ | 967,555 | $ | 459,432 | $ | 1,426,987 |
| 17 | UTILITIES | | | | | | $ | - |
| 18 | INSURANCE | | | | | | $ | - |
| 19 | INVENTORY PURCHASES | | | | | | $ | - |
| 20 | VEHICLE EXPENSES | | | | | | $ | - |
| 21 | TRAVEL | | | | | | $ | - |
| 22 | ENTERTAINMENT | | | | | | $ | - |
| 23 | REPAIRS & MAINTENANCE | | | | | | $ | - |
| 24 | SUPPLIES | | | | | | $ | - |
| 25 | ADVERTISING | | | | | | $ | - |
| 26 | OTHER (ATTACH LIST) | $ 53,642 | $ | 404,581 | $ | 860,477 | | 1,318,700 |
| 27 | TOTAL OPERATING DISBURSEMENTS | $ 825,863 | $ | 2,465,973 | $ | 3,525,415 | $ | 6,817,251 |
| **REORGANIZATION EXPENSES** | | | | | | | | |
| 28 | PROFESSIONAL FEES | | | | | | $ | - |
| 29 | U.S. TRUSTEE FEES | | | | | | $ | - |
| 30 | OTHER (ATTACH LIST) | | | | | | $ | - |
| 31 | TOTAL REORGANIZATION EXPENSES | $ - | $ | - | $ | - | $ | - |
| 32 | TOTAL DISBURSEMENTS | $ 825,863 | $ | 2,465,973 | $ | 3,525,415 | $ | 6,817,251 |
| 33 | NET CASH FLOW | $ (268,070) | $ | 4,056,437 | $ | 3,158,812 | $ | 6,947,179 |
| 34 | CASH - END OF MONTH | $ 2,286,160 | $ | 6,342,598 | $ | 9,501,409 | $ | 9,501,409 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Recepits.
2   Beginning cash in October represents the bank balance as of the filing date, while the cash amount shown on the balance sheet includes any outstanding checks.
3   November 30th, 2019 payroll in the amount of $478,337 did not debit the account until December 2nd, 2019. For comparability purposes this $478,337 amount
    should be added to the November total and subtracted from the December total.

**Monthly Operating Report**
ACCRUAL BASIS-3B

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

**NON-OPERATING RECEIPTS - OTHER**

| Date | Amount | Description |
|---|---|---|
| 12/9/2019 | 1,518,575.34 | Note principal or interest |
| 12/9/2019 | 739.72 | Note principal or interest |
| 12/23/2019 | 783,011.86 | Note principal or interest |
| 12/30/2019 | 530,112.36 | Note principal or interest |
| 12/30/2019 | 65,360.49 | Note principal or interest |
| 12/30/2019 | 201,994.40 | Note principal or interest |
| 12/30/2019 | 275,487.21 | Note principal or interest |
| 12/31/2019 | 15,004.30 | Voided Checks |
| | $3,390,285.68 | |

**OPERATING DISBURSMENTS - OTHER**

| Date | Amount | Vendor |
|---|---|---|
| 12/2/2019 | 155,084.39 | Crescent TC Investors LP |
| 12/3/2019 | 18,289.49 | Platinum Parking |
| 12/3/2019 | 672.72 | ProStar Services, Inc |
| 12/3/2019 | 1,191.25 | Gold's Gym International |
| 12/3/2019 | 1,021.44 | Chick-fil-A |
| 12/3/2019 | 5,052.88 | Iron Mountain Records Management |
| 12/3/2019 | 1,472.00 | Platinum Parking |
| 12/5/2019 | 110.00 | FINRA |
| 12/11/2019 | 5,780.50 | Third Party Consultant |
| 12/13/2019 | 110.00 | FINRA |
| 12/13/2019 | 163.35 | Arkadin Inc |
| 12/13/2019 | 356.00 | Jordan Fraker Photography |
| 12/13/2019 | 480.00 | Action Shred of Texas |
| 12/13/2019 | 1,023.67 | UPS Small Package |
| 12/13/2019 | 1,489.20 | Canteen |
| 12/13/2019 | 3,032.73 | Greenwood Office Outfitters, Inc. |
| 12/13/2019 | 3,659.07 | Third Party Consultant |
| 12/13/2019 | 2,887.50 | Centroid Systems, Inc. |
| 12/13/2019 | 2,394.28 | Thomson Reuters West |
| 12/13/2019 | 8,642.37 | Concur Technologies Inc |
| 12/13/2019 | 23,950.60 | Flexential Colorado Corp |
| 12/13/2019 | 3,234.81 | ICE Data Pricing Ref Data LLC |
| 12/13/2019 | 226.25 | Third Party Consultant |
| 12/13/2019 | 1,155.00 | Centroid Systems, Inc. |
| 12/13/2019 | 4,788.56 | Thomson Reuters West |
| 12/13/2019 | 4,090.46 | Concur Technologies Inc |
| 12/16/2019 | 155,452.35 | Bloomberg Finance LP |
| 12/16/2019 | 1,582.66 | Compass Bank Oper |
| 12/16/2019 | 32,508.98 | Bloomberg Finance LP |
| 12/17/2019 | 259.60 | East West Bank |
| 12/17/2019 | 13,516.50 | ATT Mobility |
| 12/17/2019 | 516.91 | DIRECTV |
| 12/19/2019 | 477.59 | PITNEY BOWES |
| 12/19/2019 | 400.00 | PITNEY BOWES |
| 12/19/2019 | 1,611.00 | PITNEY BOWES |
| 12/20/2019 | 348.00 | Visix, Inc. |
| 12/20/2019 | 1,000.00 | Marco Quintana |
| 12/20/2019 | 21.40 | CHASE COURIERS, INC |
| 12/20/2019 | 751.26 | Four Seasons Plantscaping, LLC |
| 12/20/2019 | 36,084.06 | SIEPE SOFTWARE |
| 12/20/2019 | 248,637.49 | SIEPE SERVICES |
| 12/20/2019 | 31,050.00 | McLagan |
| 12/20/2019 | 6,495.61 | ATT Mobility |
| 12/23/2019 | 27,891.43 | Third Party Consultant |
| 12/23/2019 | 6,942.54 | TW Telecom |
| 12/23/2019 | 6,934.01 | TW Telecom |
| 12/24/2019 | 398.22 | Xerox |
| 12/26/2019 | 548.83 | Pitney Bowes |
| 12/27/2019 | 5,076.50 | Third Party Consultant |
| 12/31/2019 | 17,147.40 | Wolters Kluwer |
| 12/31/2019 | 1,419.08 | Oracle America, Inc. |
| 12/31/2019 | 2,047.22 | Zayo Group |
| 12/31/2019 | 11,000.00 | Third Party Consultant |
| | $ 860,477.16 | |

Appx. 00821

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | SCHEDULE AMOUNT | | October | | November | December |
|---|---|---|---|---|---|---|---|
| 1. | 0-30 | $ | 2,578,744 | $ | 3,201,548 | $ 1,222,880 | $1,828,180 |
| 2. | 31-60 | | | | | | |
| 3. | 61-90 | | | | | | |
| 4. | 91+ | | | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $ | 2,578,744 | $ | 3,201,548 | $ 1,222,880 | $1,828,180 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $ | 2,578,744 | $ | 3,201,548 | $ 1,222,880 | $1,828,180 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | | MONTH: | December 2019 |
|---|---|---|---|---|---|

| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
|---|---|---|---|---|---|
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |
| 6. ACCOUNTS PAYABLE | $413,201 | $60,483 | $150,355 | | $624,038 |

| STATUS OF POSTPETITION TAXES [1] | | | | MONTH: | December 2019 |
|---|---|---|---|---|---|

| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
|---|---|---|---|---|
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.

2  Aging based on when management fee is due and payable.

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH:   December                                       2019

| BANK RECONCILIATIONS | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
|---|---|---|---|---|---|---|---|---|
| **A.** | **BANK:** | BBVA Compass | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | |
| **B.** | **ACCOUNT NUMBER:** | x6342 | x4686 | x4693 | x1885 | x0932 | x5891 | TOTAL |
| **C.** | **PURPOSE (TYPE):** | Operating | Operating | Insurance | Brokerage | Brokerage | CD | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 15,004 | $ 8,562,272 | $ 132,822 | $ 245,849 | $ 410,108 | $ 136,105 | $ 9,502,160 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | 751 | | | | | $ 751 |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 15,004 | $ 8,561,521 | $ 132,822 | $ 245,849 | $ 410,108 | $ 135,205 | $ 9,501,409 |
| 6. | NUMBER OF LAST CHECK WRITTEN | **18133** | **100009** | n/a | n/a | n/a | n/a | |

| INVESTMENT ACCOUNTS | | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
|---|---|---|---|---|---|---|---|---|
| | BANK, ACCOUNT NAME & NUMBER | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

| CASH | | | |
|---|---|---|---|
| 12. | CURRENCY ON HAND | | $0 |

| 13. | TOTAL CASH - END OF MONTH | $9,501,409 |
|---|---|---|

1   For Compass account x6342, subsequent to year end balance was transferred to the East West operating account and the account was closed.

Appx. 00823

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH: _____ December 2019 _____

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | INSIDERS | | | |
|---|---|---|---|---|
| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
| 1 | Frank Waterhouse | Salary | $29,167 | $72,917 |
| 2 | Frank Waterhouse | Expense Reimbursement | $1,003 | $1,508 |
| 3 | Scott Ellington | Salary | $37,500 | $93,750 |
| 4 | Scott Ellington | Expense Reimbursement | $24 | $2,034 |
| 5 | James Dondero | Salary | $46,875 | $117,188 |
| 6 | James Dondero | Expense Reimbursement [1] | $1,077 | $16,346 |
| 7 | Thomas Surgent | Salary | $33,333 | $83,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $1,007 | $1,254 |
| 9 | Trey Parker | Salary | $29,167 | $72,917 |
| 10 | Trey Parker | Expense Reimbursement | $240 | $665 |
| | TOTAL PAYMENTS TO INSIDERS | | $179,393 | $461,911 |

[1] The total amount of reimbursements during the reporting month also included $24,556 for use of the credit card by the Debtor for office related expenses such as subscriptions, employee lunches, vending supplies, IT equipment/software, employee gifts/awards, non-employee related travel, training and postage.

| | PROFESSIONALS [2] | | | | |
|---|---|---|---|---|---|
| | NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | TOTAL PAYMENTS TO PROFESSIONALS | | | $0 | $0 | $0 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

Appx. 00824

**Monthly Operating Report**

**ACCRUAL BASIS-7**

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** _____December 2019_____

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | x | |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | x | |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

2 $272,727 of funds transferred from non-debtor-in-possession accounts to debtor-in-possession account.

3 Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion.

4 Payments have been made on prepetition liabilities, as approved in the critical vendor motion.

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

| INSTALLMENT PAYMENTS | | | |
|---|---|---|---|
| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Appx. 00825**

# EXHIBIT 42

|  | **Monthly Operating Report**<br>**ACCRUAL BASIS** |
|---|---|

| **CASE NAME:** | Highland Capital Management |
|---|---|
| **CASE NUMBER:** | 19-34054 |
| **JUDGE:** Stacey Jernigan | |

# UNITED STATES BANKRUPTCY COURT

# NORTHERN & EASTERN DISTRICTS OF TEXAS

# REGION 6

# MONTHLY OPERATING REPORT

**MONTH ENDING:** _____September_____ ___2020___
                         MONTH              YEAR

**IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING MONTHLY OPERATING REPORT (ACCRUAL BASIS-1 THROUGH ACCRUAL BASIS-7) AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT, AND COMPLETE. DECLARATION OF THE PREPARER (OTHER THAN RESPONSIBLE PARTY) IS BASED ON ALL INFORMATION OF WHICH PREPARER HAS ANY KNOWLEDGE.**

**RESPONSIBLE PARTY:**

_____          Chief Restructuring Officer/ Chief Executive Officer
ORIGINAL  SIGNATURE  OF  RESPONSIBLE  PARTY                              TITLE

James Seery
PRINTED NAME OF RESPONSIBLE PARTY                                     DATE

**PREPARER:**

_____          Chief Financial Officer
ORIGINAL  SIGNATURE  OF  PREPARER                              TITLE

Frank Waterhouse
PRINTED NAME OF PREPARER                                     DATE

**Monthly Operating Report**
ACCRUAL BASIS-1

| CASE NAME: | Highland Capital Management, LP |
|---|---|
| CASE NUMBER: | 19-12239-CSS |

**Comparative Balance Sheet**
(in thousands)

| | 10/15/2019 | 12/31/2019 [6] | 9/30/2020 [6] |
|---|---|---|---|
| **Assets** | | | |
| Cash and cash equivalents | 2,529 | 9,501 | 5,888 |
| Investments, at fair value [3] | 232,620 | 232,820 | 109,479 |
| Equity method investees [3] | 161,819 | 183,529 | 101,213 |
| Management and incentive fee receivable | 2,579 | 1,929 | 3,350 |
| Fixed assets, net | 3,754 | 3,521 | 2,823 |
| Due from affiliates [1] | 151,901 | 146,276 | 152,585 |
| Reserve against notes recievable | | (57,963) | (59,140) |
| Other assets | 11,311 | 11,463 | 12,105 |
| **Total assets** | **$    566,513** | **$    531,076** | **$    328,302** |
| | | | |
| **Liabilities and Partners' Capital** | | | |
| Pre-petition accounts payable [4] | 1,176 | 1,141 | 1,051 |
| Post-petition accounts payable [4] | - | 2,042 | 583 |
| Secured debt: | | | |
| Frontier | 5,195 | 5,195 | 5,195 |
| Jefferies | 30,328 | 30,020 | - |
| Accrued expenses and other liabilities [4] | 59,203 | 63,275 | 58,733 |
| Accrued re-organization related fees [5] | - | 5,547 | 5,922 |
| Claim accrual [2] | 73,997 | 73,997 | 73,997 |
| Partners' capital | 396,614 | 349,857 | 182,821 |
| **Total liabilities and partners' capital** | **$    566,513** | **$    531,076** | **$    328,302** |

[1] Includes various notes receivable at carrying value, except note due from Hunter Mountain Investment Trust which is fully reserved against ($59M reserve). Fair value has not been determined with respect to any of the notes.

[2] Uncontested portion of Redeemer claim less appplicable offsets. Potential for additional liability based on future events. No interest has been accrued beyond petition date. No additional accruals will be made on settlement claims until further approval by the court.

[3] Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

[4] Note on accruals: expenses recorded in Accounts Payable and Accrued Expenses and Other Liabilities reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.  For balance sheet dates other than the Petition Date, amounts include both pre-petition and post-petition liabilities.

[5] Beginning December 31st, 2019, Debtor accrued for post-petition re-organization fees based upon an estimate of fees incurred to date.

[6] All balances at December 31st, 2019 are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, balances for subsequent months have and will fluctuate.

**Monthly Operating Report**
ACCRUAL BASIS-2

| CASE NAME: | Highland Capital Management, LP | |
|---|---|---|
| CASE NUMBER: | 19-12239-CSS | |

**Income Statement[1]**
(in thousands)

| | Date | Filing to Year Ended [4] | Month ended [4] | Filing to date [4] |
|---|---|---|---|---|
| | 10/16/19 - 10/31/19 | 2019 | 9/30/2020 | |
| **Revenue:** | | | | |
| Management fees | 975 | 4,528 | 1,495 | 18,993 |
| Shared services fees | 283 | 1,588 | 645 | 7,248 |
| Other income | 99 | 1,582 | 401 | 5,058 |
| **Total operating revenue** | 1,357 | 7,697 | 2,541 | 31,299 |
| **Operating expenses:** | | | | |
| Compensation and benefits | 997 | 1,498 | 1,668 | 15,778 |
| Professional services | 256 | 64 | 190 | 2,167 |
| Investment research and consulting | 10 | 266 | 241 | 960 |
| Marketing and advertising expense | - | 370 | 36 | 521 |
| Depreciation expense | 82 | 244 | 76 | 940 |
| Bad debt expense reserve | - | 8,410 | 124 | 9,586 |
| Other operating expenses | 201 | 1,265 | 463 | 4,665 |
| **Total operating expenses** | 1,545 | 12,118 | 2,799 | 34,617 |
| **Operating income/(loss)** | (188) | (4,421) | (258) | (3,318) |
| **Other income/expense:** | | | | |
| Interest income | 250 | 1,230 | 488 | 5,616 |
| Interest expense | (107) | (286) | (21) | (675) |
| Reserve against notes receivable | - | (57,963) | - | (57,963) |
| Re-org related expenses [2] | - | (5,547) | (3,816) | (28,800) |
| Independent director fees | - | - | (30) | (1,977) |
| Other income/expense | 32 | 32 | (6) | (144) |
| **Total other income/expense** | 175 | (62,534) | (3,386) | (83,943) |
| Net realized gains/(losses) on investments | 339 | 618 | 1,133 | (27,738) |
| Net change in unrealized gains/(losses) of investments [3] | 2,654 | (955) | 1,480 | (36,847) |
| | 2,993 | (337) | 2,613 | (64,585) |
| **Net earnings/(losses) from equity method investees** [3] | (20) | 14,918 | 337 | (67,564) |
| **Net income/(loss)** | $ 2,959 | $ (52,374) | $ (694) | $ (219,410) |

(1) Note on accruals: expenses recorded in the Income Statement reflect invoices recorded through accounts payable, legal invoice accruals, and normal course operating accruals, but do not reflect estimates for other incurred, but not yet received invoices.

(2) Debtor funded various retainers totaling $790k prior to the petition date, which were entirely expensed as of the petition date.

(3) Mark to market gains/(losses) on investments include pricing updates for publicly traded securities and other positions with readily available market price information. Certain limited partnership interests normally marked to a NAV statement have not been updated as of period end as statements are generally available on a one-month lag.

(4) All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process. As a result, operating results will change as these entries are made.

Case 19-34054-sgj11 Doc 1129 Filed 03/03/20 Entered 03/03/20 15:45:31 Page 46 of 119

| | | | | | Monthly Operating Report |
| | | | | | ACCRUAL BASIS-3A |

| CASE NAME: | Highland Capital Management |
| CASE NUMBER: | 19-34054 |

| CASH RECEIPTS AND DISBURSEMENTS | FILING TO YEAR END 2019 | QUARTER 1 | QUARTER 2 | SEPTEMBER | QUARTER 3 |
|---|---|---|---|---|---|
| 1. CASH - BEGINNING OF MONTH | $ 2,554,230 | $ 9,501,409 | $ 12,532,467 | $ 10,025,528 | 14,993,872 |
| **RECEIPTS FROM OPERATIONS** | | | | | |
| 2. OTHER OPERATING RECEIPTS | $ 1,862,757 | $ 1,379,338 | $ 2,983,221 | $ 716,191 | 2,259,736 |
| 3 MANAGEMENT FEES AND OTHER RELATED RECEIPTS | $ 3,156,742 | $ 7,555,297 | $ 6,179,437 | $ 1,515,102 | 5,575,680 |
| **COLLECTION OF ACCOUNTS RECEIVABLE** | | | | | |
| 4 PREPETITION | $ 3,593,108 | $ 76,569 | $ 3,727 | $ - | $ - |
| 5 POSTPETITION [1] | $ - | $ - | $ - | $ - | $ 5,311 |
| 6 TOTAL OPERATING RECEIPTS | $ 8,612,608 | $ 9,011,204 | $ 9,166,385 | $ 2,231,293 | 7,835,415 |
| **NON-OPERATING RECEIPTS** | | | | | |
| 7 THIRD PARTY FUND ACTUAL/EXPECTED DISTRIBUTIONS | $ 423,468 | $ 18,992,786 | $ 797,571 | $ 389,357 | 610,254 |
| 8 DIVS, PAYDOWNS, MISC FROM INVESTMENT ASSETS | $ 1,338,069 | $ 477,479 | $ 74,376 | $ 1,769 | $ 5,311 |
| 9 OTHER (ATTACH LIST) | $ 3,390,286 | $ 1,407,103 | $ 10,010,000 | $ 67,099 | 8,817,099 |
| 10 TOTAL NON-OPERATING RECEIPTS | $ 5,151,822 | $ 20,877,369 | $ 10,881,947 | $ 458,225 | 9,432,664 |
| 11 TOTAL RECEIPTS | $ 13,764,430 | $ 29,888,573 | $ 20,048,331 | $ 2,689,517 | 17,268,080 |
| 12 TOTAL CASH AVAILABLE | | | | $ 12,715,045 | 32,261,951 |
| **OPERATING DISBURSEMENTS** | | | | | |
| 13 PAYROLL, BENEFITS, AND TAXES + EXP REIMB | $ 3,776,446 | $ 8,825,042 | $ 4,886,314 | $ 1,428,122 | 8,806,880 |
| 14 SINGAPORE SERVICE FEES | $ 95,118 | $ 58,129 | $ 2,965 | $ - | $ - |
| 15 HCM LATIN AMERICA | $ 200,000 | $ 100,000 | $ - | $ - | $ - |
| 16 THIRD PARTY FUND CAPITAL CALL OBLIGATION | $ 1,426,987 | $ 7,812,469 | $ 3,087,163 | $ - | 979,631 |
| 17 UTILITIES | $ - | $ - | $ - | $ - | $ - |
| 18 INSURANCE | $ - | $ 533,940 | $ 376,376 | $ - | 163,400 |
| 19 INVENTORY PURCHASES | $ - | $ - | $ - | $ - | $ - |
| 20 VEHICLE EXPENSES | $ - | $ - | $ - | $ - | $ - |
| 21 TRAVEL | $ - | $ - | $ - | $ - | $ - |
| 22 ENTERTAINMENT | $ - | $ - | $ - | $ - | $ - |
| 23 REPAIRS & MAINTENANCE | $ - | $ - | $ - | $ - | $ - |
| 24 SUPPLIES | $ - | $ - | $ - | $ - | $ - |
| 25 ADVERTISING | $ - | $ - | $ - | $ - | $ - |
| 26 OTHER (ATTACH LIST) | $ 1,318,700 | $ 3,283,898 | $ 3,195,054 | $ 1,286,630 | 3,633,331 |
| 27 TOTAL OPERATING DISBURSEMENTS | $ 6,817,251 | $ 20,613,478 | $ 11,547,870 | $ 2,714,752 | 13,583,243 |
| **REORGANIZATION EXPENSES** | | | | | |
| 28 PROFESSIONAL FEES | $ - | $ 5,460,546 | $ 5,572,032 | $ 3,902,480 | 11,551,682 |
| 29 U.S. TRUSTEE FEES | $ - | $ 68,173 | $ 167,025 | $ - | 277,924 |
| 30 OTHER (ATTACH LIST) | $ - | $ 715,317 | $ 300,000 | $ 210,000 | 961,289 |
| 31 TOTAL REORGANIZATION EXPENSES | $ - | $ 6,244,037 | $ 6,039,057 | $ 4,112,480 | 12,790,896 |
| 32 TOTAL DISBURSEMENTS | $ 6,817,251 | $ 26,857,515 | $ 17,586,927 | $ 6,827,232 | 26,374,138 |
| 33 NET CASH FLOW | $ 6,947,179 | $ 3,031,058 | $ 2,461,404 | $ (4,137,715) | (9,106,059) |
| 34 CASH - END OF MONTH | $ 9,501,409 | $ 12,532,467 | $ 14,993,872 | $ 5,887,813 | 5,887,813 |

1   All postpetition receipts are included in line 3, Management Fees and Other Related Receipts.



**Monthly Operating Report**
ACCRUAL BASIS-JB

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**OPERATING RECEIPTS - OTHER**

| Date | Amount | Type |
| --- | --- | --- |
| | 67,098.85 | Nexpoint Real Estate Strategies Fund redemption |

**OPERATING DISBURSEMENTS - INVESTMENT**

| Date | Amount | Type |
| --- | --- | --- |
| | 383,041.29 | Carey term-loan purchase |

**OPERATING DISBURSEMENTS - OTHER**

| Date | Amount | Vendor |
| --- | --- | --- |
| 9/1/2020 | 18,412.07 | Ace Parking Management Inc. |
| 9/1/2020 | 2,257.01 | Bloomberg Finance LP |
| 9/1/2020 | 3,009.00 | Brighthouse Life Insurance Company |
| 9/1/2020 | 10,611.00 | Brighthouse Life Insurance Company |
| 9/1/2020 | 1,889.22 | Canteen Vending Services |
| 9/1/2020 | 145.20 | Chase Couriers, Inc |
| 9/1/2020 | 950.00 | Cresent Research |
| 9/1/2020 | 144,048.21 | Crescent TC Investors LP |
| 9/1/2020 | 2,067.50 | CT Corporation System |
| 9/1/2020 | 37,583.75 | Third Party Consultant |
| 9/1/2020 | 1,548.97 | GRUBHUB for Work |
| 9/1/2020 | 47,654.00 | Houlihan Lokey |
| 9/1/2020 | 7,617.26 | ICE Data Pricing & Reference Data, LLC |
| 9/1/2020 | 9,500.00 | Ipreo Data Inc |
| 9/1/2020 | 89.24 | Iron Mountain Records Management |
| 9/1/2020 | 495.86 | Jordan Fraker Photography |
| 9/1/2020 | 3,392.01 | NYSE MARKET, INC |
| 9/1/2020 | 3,051.14 | Oak Cliff Office Products |
| 9/1/2020 | 1,625.00 | Paessler |
| 9/1/2020 | 441.34 | ProStar Services, Inc |
| 9/1/2020 | 107.15 | UPS Supply Chain Solutions |
| 9/9/2020 | 5,884.76 | ABM |
| 9/9/2020 | 432.00 | Ace Parking Management Inc. |
| 9/9/2020 | 600.00 | Action Shred of Texas |
| 9/9/2020 | 1,492.38 | Canteen Vending Services |
| 9/9/2020 | 510.61 | CDW Direct |
| 9/9/2020 | 11,131.97 | CT Corporation System |
| 9/9/2020 | 1,617.81 | GRUBHUB for Work |
| 9/9/2020 | 47,470.00 | Houlihan Lokey |
| 9/9/2020 | 35,200.00 | Intex Solutions, Inc. |
| 9/9/2020 | 2,668.57 | Iron Mountain Records Management |
| 9/9/2020 | 7,500.00 | MacroMavens, LLC |
| 9/9/2020 | 1,570.00 | MICRO-TEL |
| 9/9/2020 | 507.47 | ProStar Services, Inc |
| 9/9/2020 | 16,335.06 | S&P Global Market Intelligence |
| 9/9/2020 | 151,448.26 | Siepe Services, LLC |
| 9/9/2020 | 18,042.03 | Siepe Software, LLC |
| 9/9/2020 | 535.34 | Standard Insurance Company |
| 9/9/2020 | 6,369.17 | TW Telecom Holdings, llc |
| 9/9/2020 | 6,866.42 | Willis of Texas, Inc. |
| 9/11/2020 | 263.81 | Directv, LLC |
| 9/11/2020 | 1,000.00 | Pitney Bowes- Purchase Power |
| 9/11/2020 | 4,335.10 | Third Party Consultant |
| 9/14/2020 | 500.00 | Pitney Bowes |
| 9/17/2020 | 2,082.70 | Zayo Group, LLC |
| 9/18/2020 | 253.94 | Arkadin, Inc. |
| 9/18/2020 | 4,192.71 | Third Party Consultant |
| 9/18/2020 | 2,955.06 | AT&T |
| 9/18/2020 | 137.50 | AT&T |
| 9/18/2020 | 768.58 | Audio Visual Innovations, Inc |
| 9/18/2020 | 8,140.16 | Bloomberg Finance LP |
| 9/18/2020 | 1,636.20 | Canteen Vending Services |
| 9/18/2020 | 21,863.25 | CDW Direct |
| 9/18/2020 | 700.00 | Centroid |
| 9/18/2020 | 4,059.81 | Concur Technologies, Inc. |
| 9/18/2020 | 369.00 | CT Corporation System |
| 9/18/2020 | 3,031.00 | Daltex Janitorial Services, LLC |
| 9/18/2020 | 859.36 | DTCC ITP LLC |
| 9/18/2020 | 11,887.73 | Flexential Colorado Corp. |
| 9/18/2020 | 2,162.11 | Grubhub for Work |
| 9/18/2020 | 3,762.48 | ICE Data Pricing & Reference Data, LLC |
| 9/18/2020 | 112.21 | Iron Mountain Records Management |
| 9/18/2020 | 3,766.00 | MacroView Business Technology |
| 9/18/2020 | 2,128.81 | NYSE Market, Inc |
| 9/18/2020 | 548.83 | Pitney Bowes Financial Services |
| 9/18/2020 | 6,757.16 | Proofpoint |
| 9/18/2020 | 2,466.10 | Thomson West |
| 9/18/2020 | 301.48 | UPS Supply Chain Solutions |
| 9/18/2020 | 259.80 | Venture Mechanical, Inc |
| 9/18/2020 | 273.47 | Verity Group |
| 9/18/2020 | 416.57 | Analysis Charge |
| 9/18/2020 | 23.00 | Chase Couriers |
| 9/25/2020 | 16,750.65 | Ace Parking Management Inc. |
| 9/25/2020 | 1,740.82 | AT&T |
| 9/25/2020 | 763.22 | AT&T |
| 9/25/2020 | 7,147.16 | AT&T |
| 9/25/2020 | 1,431.77 | Canteen Vending Services |
| 9/25/2020 | 2,491.11 | CDW Direct |
| 9/25/2020 | 15,000.00 | Centroid |
| 9/25/2020 | 58.62 | Chase Couriers |
| 9/25/2020 | 320.70 | CT Corporation System |
| 9/25/2020 | 7,752.34 | Fitch Solutions, Inc |
| 9/25/2020 | 484.96 | Four Seasons Plantscaping, LLC |
| 9/25/2020 | 1,480.74 | Grubhub for Work |
| 9/25/2020 | 4,840.01 | Liberty Life Assurance Company of Boston - Group Benefits |
| 9/25/2020 | 562.50 | Maples & Calder |
| 9/25/2020 | 124,634.61 | Siepe Services, LLC |
| 9/28/2020 | 1,412.83 | Southland Property Tax Consultants, Inc |
| 9/29/2020 | 980.96 | Xerox Corporation |
| 9/30/2020 | 11,000.00 | Third Party Consultant |
| 9/30/2020 | 25.00 | Bank fees returned Foley Wire |
| | 903,589 | |

**REORGANIZATION EXPENSES - OTHER**

| Date | Amount | Description |
| --- | --- | --- |
| 9/1/2020 | 30,000 | Dubel & Associates, L.L.C. |
| 9/1/2020 | 150,000 | J.P. Seery & Co. LLC |
| 9/1/2020 | 30,000 | Nelms and Associates |
| | 210,000 | |

**Monthly Operating Report**
ACCRUAL BASIS-4

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

| MGMT FEE RECEIVABLE AGING [2] | | June [3] | July [3] | August [3] | September [3] |
|---|---|---|---|---|---|
| 1. | 0-30 | $   1,813,292 | $2,428,715 | $1,768,818 | $2,577,696 |
| 2. | 31-60 | | $1,163,000 | $1,285,718 | $772,384 | |
| 3. | 61-90 | | | | $772,384 |
| 4. | 91+ | | | | |
| 5. | TOTAL MGMT FEE RECEIVABLE | $   2,976,292 | $   3,714,432 | $   2,541,202 | $3,350,080 |
| 6. | AMOUNT CONSIDERED UNCOLLECTIBLE | | | | |
| 7. | MGMT FEE RECEIVABLE (NET) | $   2,976,292 | $   3,714,432 | $   2,541,202 | $3,350,080 |

| AGING OF POSTPETITION TAXES AND PAYABLES | | | MONTH: | September 2020 | |
|---|---|---|---|---|---|
| TAXES PAYABLE | 0-30 DAYS | 31-60 DAYS | 61-90 DAYS | 91+ DAYS | TOTAL |
| 1. FEDERAL | | | | | $0 |
| 2. STATE | | | | | $0 |
| 3. LOCAL | | | | | $0 |
| 4. OTHER (ATTACH LIST) | | | | | $0 |
| 5. TOTAL TAXES PAYABLE | $0 | $0 | $0 | $0 | $0 |

| 6. ACCOUNTS PAYABLE | $418,457 | $16,057 | $0 | $320,995 | $755,509 |
|---|---|---|---|---|---|

| STATUS OF POSTPETITION TAXES [1] | | | MONTH: | September 2020 | |
|---|---|---|---|---|---|
| FEDERAL | BEGINNING TAX LIABILITY | AMOUNT WITHHELD AND/ 0R ACCRUED | AMOUNT PAID | ENDING TAX LIABILITY |
| 1. WITHHOLDING | | | | $0 |
| 2. FICA-EMPLOYEE | | | | $0 |
| 3. FICA-EMPLOYER | | | | $0 |
| 4. UNEMPLOYMENT | | | | $0 |
| 5. INCOME | | | | $0 |
| 6. OTHER (ATTACH LIST) | | | | $0 |
| 7. TOTAL FEDERAL TAXES | $0 | $0 | $0 | $0 |
| STATE AND LOCAL | | | | |
| 8. WITHHOLDING | | | | $0 |
| 9. SALES | | | | $0 |
| 10. EXCISE | | | | $0 |
| 11. UNEMPLOYMENT | | | | $0 |
| 12. REAL PROPERTY | $0 | $0 | $0 | $0 |
| 13. PERSONAL PROPERTY | | | | $0 |
| 14. OTHER (ATTACH LIST) | | | | $0 |
| 15. TOTAL STATE & LOCAL | $0 | $0 | $0 | $0 |
| 16. TOTAL TAXES | $0 | $0 | $0 | $0 |

1  The Debtor funds all state and federal employment taxes to Paylocity, who files all required federal and state related employment reports and withholdings.
2  Aging based on when management fee is due and payable.
3  All balances are preliminary, unaudited, and subject to further year-end closing entries pursuant to the normal year-end closing process.

Appx. 00832

**Monthly Operating Report**
ACCRUAL BASIS-5

| CASE NAME: | Highland Capital Management |
| --- | --- |
| CASE NUMBER: | 19-34054 |

**MONTH:** September                2020

**BANK RECONCILIATIONS**

| | | Account #1 | Account #2 | Account #3 | Account #4 | Account #5 | Account #6 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| A. | BANK: | East West Bank | East West Bank | Maxim Group | Jefferies LLC | Nexbank | East West Bank | |
| B. | ACCOUNT NUMBER: | x6686 | x4693 | x1885 | x0932 | x5891 | x5848 | TOTAL |
| C. | PURPOSE (TYPE): | Operating | Insurance | Brokerage | Brokerage | CD | Prepaid Card | |
| 1. | BALANCE PER BANK STATEMENT [1] | $ 5,617,167 | $ 32,373 | $ 30 | $ - | $ 138,190 | $ 100,052 | $ 5,887,812 |
| 2. | ADD: TOTAL DEPOSITS NOT CREDITED | | | | | | | $ - |
| 3. | SUBTRACT: OUTSTANDING CHECKS | | | | | | | $ - |
| 4. | OTHER RECONCILING ITEMS | | | | | | | $ - |
| 5. | MONTH END BALANCE PER BOOKS | $ 5,617,167 | $ 32,373 | $ 30 | $ - | $ 138,190 | $ 100,052 | $ 5,887,812 |
| 6. | NUMBER OF LAST CHECK WRITTEN | **100510** | **n/a** | **n/a** | **n/a** | **n/a** | **n/a** | |

**INVESTMENT ACCOUNTS**

| | BANK, ACCOUNT NAME & NUMBER | DATE OF PURCHASE | TYPE OF INSTRUMENT | PURCHASE PRICE | | | | CURRENT VALUE |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 7. | | | | | | | | |
| 8. | | | | | | | | |
| 9. | | | | | | | | |
| 10. | | | | | | | | |
| 11. | TOTAL INVESTMENTS | | | $0 | | | | $0 |

**CASH**

| | | |
| --- | --- | --- |
| 12. | CURRENCY ON HAND | $0 |

| | | |
| --- | --- | --- |
| 13. | **TOTAL CASH - END OF MONTH** | $5,887,812 |

1    Account x6342 is now closed.

**Monthly Operating Report**
ACCRUAL BASIS-6

| CASE NAME: | Highland Capital Management |
|---|---|
| CASE NUMBER: | 19-34054 |

MONTH:  September 2020

**PAYMENTS TO INSIDERS AND PROFESSIONALS**

| | NAME | TYPE OF PAYMENT | AMOUNT PAID | TOTAL PAID POST PETITION |
|---|---|---|---|---|
| | | INSIDERS | | |
| 1 | Frank Waterhouse | Salary | $33,333 | $360,417 |
| 2 | Frank Waterhouse | Expense Reimbursement | $807 | $5,918 |
| 3 | Scott Ellington | Salary | $37,500 | $431,250 |
| 4 | Scott Ellington | Expense Reimbursement | $252 | $6,095 |
| 5 | James Dondero | Salary | $0 | $129,972 |
| 6 | James Dondero | Expense Reimbursement [1] | $0 | $16,918 |
| 7 | Thomas Surgent | Salary | $33,333 | $383,333 |
| 8 | Thomas Surgent | Expense Reimbursement | $456 | $4,222 |
| 9 | Trey Parker | Salary | $0 | $131,250 |
| 10 | Trey Parker | Expense Reimbursement | $0 | $6,212 |
| | TOTAL PAYMENTS TO INSIDERS | | $105,681 | $1,475,585 |

[1] The total amount of reimbursements during the reporting month also included $5,675 for use of the credit card by the Debtor for office related expenses such as subscriptions, vending supplies, and IT equipment/software.

| | NAME | DATE OF MONTHLY FEE APPLICATION | AMOUNT APPROVED | AMOUNT PAID | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID |
|---|---|---|---|---|---|---|
| | | PROFESSIONALS [2] | | | | |
| 1. | Kurtzman Carson Consultants LLC | | 41,966 | 41,966 | 532,521 | 95,605 |
| 2. | Sidley Austin LLP | | 814,318 | 814,318 | 5,807,091 | 1,333,420 |
| 3. | Young Conaway Stargatt & Taylor LLP | | | - | 281,156 | - |
| 4. | FTI Consulting, Inc. | | 626,333 | 626,333 | 3,607,292 | 559,823 |
| 5. | Pachulski Stang Ziehl & Jones LLP | | 1,283,329 | 1,283,329 | 8,435,219 | 1,512,143 |
| 6. | Hayward & Associates PLLC | | 60,736 | 60,736 | 256,412 | 10,828 |
| 7. | Development Specialists, Inc. | | 237,828 | 237,828 | 2,351,224 | 249,129 |
| 8. | Foley & Lardner LLP | | - | | 464,294 | 119,516 |
| 9. | Mercer (US) Inc. | | 54,328 | 54,328 | 170,284 | - |
| 10 | Wilmer Cutler Pickering Hale and Dorr LLP | | 618,643 | 618,643 | 618,643 | |
| 11 | Meta-e Discovery LLC | | 165,000 | 165,000 | 165,000 | |
| | TOTAL PAYMENTS TO PROFESSIONALS | | 3,902,480 | | 22,689,136 | 3,880,463 |

[2] Does not include payments to ordinary course professionals.

**POSTPETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS**

| | NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENTS DUE | AMOUNTS PAID DURING MONTH | TOTAL UNPAID POSTPETITION |
|---|---|---|---|---|
| 1. | Crescent TC Investors LP (rent portion only) | 130,364 | 130,364 | - |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | TOTAL | 130,364 | $130,364 | $0 |

Appx. 00834

**Monthly Operating Report**
ACCRUAL BASIS-7

| CASE NAME: | Highland Capital Management |
|---|---|

| CASE NUMBER: | 19-34054 |
|---|---|

**MONTH:** September 2020

**QUESTIONNAIRE**

| | | YES | NO |
|---|---|---|---|
| 1. | HAVE ANY ASSETS BEEN SOLD OR TRANSFERRED OUTSIDE THE NORMAL COURSE OF BUSINESS THIS REPORTING PERIOD? | | x |
| 2. | HAVE ANY FUNDS BEEN DISBURSED FROM ANY ACCOUNT OTHER THAN A DEBTOR IN POSSESSION ACCOUNT? | | x |
| 3. | ARE ANY POSTPETITION RECEIVABLES (ACCOUNTS, NOTES, OR LOANS) DUE FROM RELATED PARTIES? | x | |
| 4. | HAVE ANY PAYMENTS BEEN MADE ON PREPETITION LIABILITIES THIS REPORTING PERIOD? | | x |
| 5. | HAVE ANY POSTPETITION LOANS BEEN RECEIVED BY THE DEBTOR FROM ANY PARTY? | | x |
| 6. | ARE ANY POSTPETITION PAYROLL TAXES PAST DUE? | | x |
| 7. | ARE ANY POSTPETITION STATE OR FEDERAL INCOME TAXES PAST DUE? | | x |
| 8. | ARE ANY POSTPETITION REAL ESTATE TAXES PAST DUE? | | x |
| 9. | ARE ANY OTHER POSTPETITION TAXES PAST DUE? | | x |
| 10. | ARE ANY AMOUNTS OWED TO POSTPETITION CREDITORS DELINQUENT? | | x |
| 11. | HAVE ANY PREPETITION TAXES BEEN PAID DURING THE REPORTING PERIOD? | | x |
| 12. | ARE ANY WAGE PAYMENTS PAST DUE? | | x |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "YES," PROVIDE A DETAILED EXPLANATION OF EACH ITEM. ATTACH ADDITIONAL SHEETS IF NECESSARY.

3   Debtor generates fee income and other receipts from various related parties in normal course, see cash management motion for further discussion.

**INSURANCE**

| | | YES | NO |
|---|---|---|---|
| 1. | ARE WORKER'S COMPENSATION, GENERAL LIABILITY AND OTHER NECESSARY INSURANCE COVERAGES IN EFFECT? | x | |
| 2. | ARE ALL PREMIUM PAYMENTS PAID CURRENT? | x | |
| 3. | PLEASE ITEMIZE POLICIES BELOW. | | |

IF THE ANSWER TO ANY OF THE ABOVE QUESTIONS IS "NO," OR IF ANY POLICIES HAVE BEEN CANCELLED OR NOT RENEWED DURING THIS REPORTING PERIOD, PROVIDE AN EXPLANATION BELOW. ATTACH ADDITIONAL SHEETS IF NECESSARY.

**INSTALLMENT PAYMENTS**

| TYPE OF POLICY | CARRIER | PERIOD COVERED | PAYMENT AMOUNT & FREQUENCY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Appx. 00835

# EXHIBIT 43

Appx. 00836

# PROMISSORY NOTE

$7,900,000                                                           January 18, 2018

     FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of SEVEN MILLION, NINE HUNDRED THOUSAND and 00/100 Dollars ($7,900,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

     1.    <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.59%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

     2.    <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

     3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

     4.    <u>Tax Loan</u>. This Note is paid to the Maker to help satisfy any current tax obligations of a former partner or current partner.

     5.    <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

     6.    <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

     7.    <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

8.      Limitation on Agreements.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

9.      Governing Law.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

JAMES DONDERO

2

D-CNL000551

**Appx. 00838**

**EXHIBIT 44**

# INTENTIONALLY

# OMITTED

# EXHIBIT 45

# TO BE FILED

# UNDER SEAL

**EXHIBIT 46**

# TO BE FILED

# UNDER SEAL

# EXHIBIT 47

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 21-03005 |
| | § | |
| NEXPOINT ADVISORS, L.P., JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| Defendants. | § | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Appx. 00843

**PLAINTIFF'S AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION
TO NEXPOINT ADVISORS, L.P.**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, Highland Capital Management, L.P. ("Highland"), the plaintiff in the above-referenced adversary proceeding in the above-captioned chapter 11 case, shall take the deposition of NexPoint Advisors, L.P. ("NexPoint") by the person(s) most qualified to testify on NexPoint's behalf with respect to the topics described in **Exhibit A** attached hereto on **October 20, 2021**, commencing at 9:30 a.m. Central Time or at such other day and time as the Plaintiff may agree in writing.  The deposition will be taken under oath before a notary public or other person authorized by law to administer oaths and will be visually recorded by video or otherwise.

The deposition will be taken remotely via an online platform due to the coronavirus pandemic such that no one will need to be in the same location as anyone else in order to participate in the deposition and by use of Interactive Realtime.  Parties who wish to participate in the deposition should contact **John A. Morris**, Pachulski Stang Ziehl & Jones LLP, at jmorris@pszjlaw.com **no fewer than 72 hours before the start of the deposition** for more information regarding participating in this deposition remotely.

Dated:  October 8, 2021.                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ John A. Morris*
_____
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:        jpomerantz@pszjlaw.com
               ikharasch@pszjlaw.com
               jmorris@pszjlaw.com
               gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

_____
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**EXHIBIT A**

**DEFINITIONS**

1.        "Answer" means *Defendant NexPoint Advisors, L.P.'s Answer to Amended Complaint*, lodged in Adv. Proc. 21-03005 at Docket No. 64.

2.        "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI (and any attachments thereto), Documents, telephone conversations, text messages, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

3.        "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

4.        "Discovery Requests" means *Plaintiff's Requests for Admission, Interrogatories, and Requests for Production Directed to NexPoint Advisors, L.P.* served on Your counsel by e-mail on September 7, 2021.

5.        "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made.  This includes, but is not limited to, Communications, ESI, "writings" as defined by Rule 1001 of the Federal Rules of Evidence, copies or drafts, and any tangible or intangible thing or item that contains any information.  Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

6.      "Note" shall have the meaning ascribed to that term in paragraph 21 of the the *Amended Complaint for (I) Breach of Contract, (II) Turnover of Property, (III) Fraudulent Transfer, and (IV) Breach of Fiduciary Duty*, filed by Highland at Adv. Pro. 21-03005, Docket No. 63.

7.      "You" or "Your" means NexPoint Advisors, L.P., and anyone authorized to act on its behalf.

### Rule 30(b)6) Topics

**Topic No. 1:**

Your Answer.

**Topic No. 2:**

Each Affirmative Defense asserted in Your Answer, including but not limited to all facts and circumstances, Communications, and Documents Concerning each Affirmative Defense.  *See* Answer ¶¶ 80-86.

**Topic No. 3:**

The Note, including but not limited to (a) the negotiation of the Note, (b) the terms of the Note, (c) Communications Concerning the Note, (d) any payments of principal or interest made by You or on Your behalf with respect to the Note; (e) the use of the proceeds of the Note, (f) Your communications with Your outside auditors Concerning the Note and the obligations thereunder, and (g) all agreements Concerning the Note.

**Topic No. 4:**

Your responses to the Discovery Requests.

2

**Appx. 00847**

# EXHIBIT 48

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 21-03006 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT SERVICES, INC., JAMES DONDERO, NANCY DONDERO, AND DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**PLAINTIFF'S AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION
TO HIGHLAND CAPITAL MANAGEMENT SERVICES, INC.**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, Highland Capital Management, L.P. ("Highland"), the plaintiff in the above-referenced adversary proceeding in the above-captioned chapter 11 case, shall take the deposition of Highland Capital Management Services, Inc. ("HCMS") by the person(s) most qualified to testify on HCMS's behalf with respect to the topics described in **Exhibit A** attached hereto on **October 20, 2021**, commencing at 9:30 a.m. Central Time or at such other day and time as the Plaintiff may agree in writing.  The deposition will be taken under oath before a notary public or other person authorized by law to administer oaths and will be visually recorded by video or otherwise.

The deposition will be taken remotely via an online platform due to the coronavirus pandemic such that no one will need to be in the same location as anyone else in order to participate in the deposition and by use of Interactive Realtime.  Parties who wish to participate in the deposition should contact **John A. Morris**, Pachulski Stang Ziehl & Jones LLP, at jmorris@pszjlaw.com **no fewer than 72 hours before the start of the deposition** for more information regarding participating in this deposition remotely.

Dated:  October 8, 2021.                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ John A. Morris*
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## EXHIBIT A

## DEFINITIONS

1.      "Answer" means *Defendant Defendant Highland Capital Management Services, Inc.'s Answer to Amended Complaint*, lodged in Adv. Proc. 21-03006 at Docket No. 73.

2.      "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI (and any attachments thereto), Documents, telephone conversations, text messages, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

3.      "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

4.      "Discovery Requests" means *Plaintiff's Requests for Admission, Interrogatories, and Requests for Production Directed to Highland Capital Management Services, Inc.* served on Your counsel by e-mail on September 7, 2021.

5.      "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made.  This includes, but is not limited to, Communications, ESI, "writings" as defined by Rule 1001 of the Federal Rules of Evidence, copies or drafts, and any tangible or intangible thing or item that contains any information.  Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

6.     "Demand Notes" shall have the meaning ascribed to that term in paragraph 24 of the the *Amended Complaint for (I) Breach of Contract, (II) Turnover of Property, (III) Fraudulent Transfer, and (IV) Breach of Fiduciary Duty*, filed by Highland at Adv. Pro. 21-03006, Docket No. 68.

7.     "You" or "Your" means Highland Capital Management Services, Inc., and anyone authorized to act on its behalf.

**Rule 30(b)6) Topics**

**Topic No. 1:**

Your Answer.

**Topic No. 2:**

Each Affirmative Defense asserted in Your Answer, including but not limited to all facts and circumstances, Communications, and Documents Concerning each Affirmative Defense. *See* Answer ¶¶ 94-102.

**Topic No. 3:**

The Demand Notes, including but not limited to (a) the negotiation of the Demand Notes, (b) the terms of the Demand Notes, (c) Communications Concerning the Demand Notes, (d) any payments of principal or interest made by You or on Your behalf with respect to the Demand Notes; (e) the use of the proceeds of the Demand Notes, (f) Your communications with Your outside auditors Concerning the Demand Notes and the obligations thereunder, and (g) all agreements Concerning the Demand Notes.

**Topic No. 4:**

Your responses to the Discovery Requests.

2

**Appx. 00853**

# EXHIBIT 49

Appx. 00854

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (*admitted pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 21-03007 |
| | § | |
| HCRE PARTNERS LLC (N/K/A NEXPOINT REAL ESTATE PARTNERS LLC), JAMES DONDERO, NANCY DONDERO, AND THE DUGABOY INVESTMENT TRUST, | § | |
| | § | |
| Defendants. | § | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**PLAINTIFF'S AMENDED NOTICE OF RULE 30(b)(6) DEPOSITION
TO HCRE PARTNERS LLC (N/K/A NEXPOINT REAL ESTATE PARTNERS, LLC).**

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable herein pursuant to Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, Highland Capital Management, L.P. ("Highland"), the plaintiff in the above-referenced adversary proceeding in the above-captioned chapter 11 case, shall take the deposition of HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC) ("HCRE") by the person(s) most qualified to testify on HCRE's behalf with respect to the topics described in **Exhibit A** attached hereto on **October 20, 2021**, commencing at 9:30 a.m. Central Time or at such other day and time as the Plaintiff may agree in writing.  The deposition will be taken under oath before a notary public or other person authorized by law to administer oaths and will be visually recorded by video or otherwise.

The deposition will be taken remotely via an online platform due to the coronavirus pandemic such that no one will need to be in the same location as anyone else in order to participate in the deposition and by use of Interactive Realtime.  Parties who wish to participate in the deposition should contact **John A. Morris**, Pachulski Stang Ziehl & Jones LLP, at jmorris@pszjlaw.com **no fewer than 72 hours before the start of the deposition** for more information regarding participating in this deposition remotely.

Dated:  October 8, 2021.                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ John A. Morris*
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:     jpomerantz@pszjlaw.com
            ikharasch@pszjlaw.com
            jmorris@pszjlaw.com
            gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## EXHIBIT A

## DEFINITIONS

1.      "Answer" means *Defendant HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC)'s Answer to Amended Complaint*, lodged in Adv. Proc. 21-03007 at Docket No. 68.

2.      "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI (and any attachments thereto), Documents, telephone conversations, text messages, discussions, meetings, facsimiles, e-mails, pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

3.      "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

4.      "Discovery Requests" means *Plaintiff's Requests for Admission, Interrogatories, and Requests for Production Directed to HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners LLC)* served on Your counsel by e-mail on September 7, 2021.

5.      "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made.  This includes, but is not limited to, Communications, ESI, "writings" as defined by Rule 1001 of the Federal Rules of Evidence, copies or drafts, and any tangible or intangible thing or item that contains any information.  Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document.

6.      "Demand Notes" shall have the meaning ascribed to that term in paragraph 24 of the the *Amended Complaint for (I) Breach of Contract, (II) Turnover of Property, (III) Fraudulent Transfer, and (IV) Breach of Fiduciary Duty*, filed by Highland at Adv. Pro. 21-03006, Docket No. 63.

7.      "You" or "Your" means HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC), and anyone authorized to act on its behalf.

### Rule 30(b)6) Topics

**Topic No. 1:**

Your Answer.

**Topic No. 2:**

Each Affirmative Defense asserted in Your Answer, including but not limited to all facts and circumstances, Communications, and Documents Concerning each Affirmative Defense.  *See* Answer ¶¶ 96-104.

**Topic No. 3:**

The Demand Notes, including but not limited to (a) the negotiation of the Demand Notes, (b) the terms of the Demand Notes, (c) Communications Concerning the Demand Notes, (d) any payments of principal or interest made by You or on Your behalf with respect to the Demand Notes; (e) the use of the proceeds of the Demand Notes, (f) Your communications with Your outside auditors Concerning the Demand Notes and the obligations thereunder; and (g) any agreements Concerning the Demand Notes.

**Topic No. 4:**

Your responses to the Discovery Requests.

2

Appx. 00859

# EXHIBIT 50

**James Dondero**
**Compensation and Benefit Statement**

Job Title: Partner
Department: Executive

| EARNINGS AND AWARDS | |
|---|---|

2017 Base Salary (as of 12/31/17)                                       $2,500,024

2017 Other Awards
    401(k) Match                                              $ 4,800
    Estimated 2017 Profit Sharing (will be contributed in 2018)      $ 20,250
    *Final profit sharing award subject to passing IRS mandated testing
    2018 NXRT RSU Award                                       $1,550,250
      • You have been granted 65,772 restricted stock units of NXRT for the 2017 performance year

| *2017 Total Earnings and Awards* | **$4,075,324** |
|---|---|

| HIGHLAND PAID BENEFITS | |
|---|---|
| Medical & Dental Insurance | $ 14,134 |
| Life, AD&D and Disability Insurance | $   968 |
| Executive Long Term Disability | $ 1,260 |
| Daily Catered Lunches | $ 3,000 |
| Parking | $ 2,160 |
| Cell Phone | $ 1,680 |

| *2017 Estimated Total Value of Highland Paid Benefits* | **$ 23,203** |
|---|---|

| TOTAL COMPENSATION PACKAGE | $4,098,527 |
|---|---|

HIGHLY CONFIDENTIAL

# EXHIBIT 51

Appx. 00862

**James Dondero**
**Compensation and Benefit Statement**

Job Title: Partner
Department: Executive

| EARNINGS AND AWARDS | |
|---|---|

| 2018 Base Salary (as of 12/31/18) | $2,500,000 |
|---|---|

| 2018 Other Awards | |
|---|---|
| 401(k) Match | $ 4,800 |
| Estimated 2018 Profit Sharing (will be contributed in 2019) | $ 20,625 |
| *Final profit sharing award subject to passing IRS mandated testing | |
| 2019 NXRT RSU Award | $1,669,500 |
| • You have been granted 44,520 restricted stock units of NXRT for the 2018 performance year | |

| ***2018 Total Earnings and Awards*** | **$4,194,925** |
|---|---|

| HIGHLAND PAID BENEFITS | |
|---|---|
| Medical & Dental Insurance | $ 14,192 |
| Life, AD&D and Disability Insurance | $ 1,044 |
| Executive Long Term Disability | $ 1,260 |
| Daily Catered Lunches | $ 3,000 |
| Parking | $ 2,160 |
| Cell Phone | $ 1,680 |

| ***2018 Estimated Total Value of Highland Paid Benefits*** | **$ 23,336** |
|---|---|

| **TOTAL COMPENSATION PACKAGE** | **$4,218,262** |
|---|---|

# EXHIBIT 52

**James Dondero**
**Compensation and Benefit Statement**

Job Title: Partner
Department: Executive

| EARNINGS AND AWARDS | |
|---|---|
| 2019 Base Salary (as of 12/31/19) | $2,500,000 |

2019 Other Awards

| | |
|---|---|
| 401(k) Match | $ 5,000 |
| Estimated 2019 Profit Sharing (will be contributed in 2020) | $ 21,000 |

*Final profit sharing award subject to passing IRS mandated testing

| | |
|---|---|
| 2019 Deferred Compensation Award | $5,608,500 |

- $2,465,000 grant amount in NXRT; 5-year vesting period
- $850,500 grant amount in NREF; 4-year vesting period
- $1,771,000 grant amount in VineBrook; 4-year vesting period

| ***2019 Total Earnings and Awards*** | **$8,134,500** |
|---|---|

| HIGHLAND PAID BENEFITS | |
|---|---|
| Medical & Dental Insurance | $ 14,417 |
| Life, AD&D and Disability Insurance | $ 1,044 |
| Executive Long Term Disability | $ 1,260 |
| Daily Catered Lunches | $ 3,000 |
| Parking | $ 2,160 |
| Cell Phone | $ 1,680 |

| ***2019 Estimated Total Value of Highland Paid Benefits*** | **$ 23,562** |
|---|---|

| **TOTAL COMPENSATION PACKAGE** | **$8,158,062** |
|---|---|

HIGHLY CONFIDENTIAL

# EXHIBIT 53

**From:** David Klos
**Sent:** Thursday, May 02, 2019 3:54 PM
**To:** Blair Roeber <BRoeber@HighlandCapital.com>
**Cc:** Kristin Hendrix <KHendrix@HighlandCapital.com>
**Subject:** FW: Calc

$2,398,842 – Please send to GAF asap per Frank.

**From:** Frank Waterhouse
**Sent:** Thursday, May 2, 2019 2:23 PM
**To:** David Klos ; Kristin Hendrix
**Subject:** FW: Calc

Here is the support for the payment to GAF from HCMFA. As soon as I hear from Thomas I will let you know.

**From:** Will Mabry <WMabry@HighlandCapital.com>
**Sent:** Thursday, May 2, 2019 2:18 PM
**To:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>
**Cc:** Clifford Stoops <CStoops@HighlandCapital.com>
**Subject:** RE: Calc

It's available now. The amount is per the response $2,398,842 calc. Support attached.

**From:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>
**Sent:** Thursday, May 2, 2019 2:15 PM
**To:** Will Mabry <WMabry@HighlandCapital.com>
**Cc:** Clifford Stoops <CStoops@HighlandCapital.com>
**Subject:** Calc

Will-

Do you have an eta of when you will have?

Thanks
Frank

**FRANK WATERHOUSE | PARTNER & CHIEF FINANCIAL OFFICER**

D-CNL003768

Appx. 00867



300 Crescent Court | Suite 700 | Dallas, Texas 75201
O: 972.419.2538 | F: 972.628.4147
fwaterhouse@highlandcapital.com | www.highlandcapital.com

2

D-CNL003769
**Appx. 00868**

**Numerical summary as set forth in the 4/7/19 amended memorandum of TerreStar Equity NAV Error**

| | Transaction Date(s) | Loss to Fund | Estimated Loss to Shareholders [3] | Totals |
|---|---|---|---|---|
| Estimated Net Loss | 3/14/18 thru 1/7/19 | (6,068,851) | (1,373,272) | (7,442,123) |
| Processing, Fees, Interest | 3/14/18 thru 1/7/19 | (375,000) | - | (375,000) |
| Insurance Proceeds | 2/15/2019 | 3,566,248 | 1,373,272 | 4,939,520 |
| Insurance deductible paid by Adviser | 2/15/2019 | 246,976 | - | 246,976 |
| Management fee offset | 4/1/2019 | 47,000 | - | 47,000 |
| Additional payment from Adviser | 5/2/2019 | 2,339,627 [2] | - | 2,339,627 |
| Reimbursement of Processing costs from Adviser | Note 1 | 244,000 | - | 244,000 |
| Total | | - | - | - |
| **Supplemental Numerical Update** | | | | |
| Additional estimated loss to fund and shareholders | 1/8/19 thru 1/28/19 [5] | (19,789) | | |
| Additional processing, management fees, and interest | Note 4 | (39,426) | | |
| Additional payment from Adviser | 5/2/2019 | 59,215 | | |
| **Total additional payment from Adviser** | **5/2/2019** | **2,398,842** | | |

**Notes**

1 - Expected to be incurred thru 12/31/19, and will be reimbursed by Adviser as incurred.

2 - Includes $2,255,628 of previously outstanding balance, and $84,000 of interest calculated through 1/7/19, which was the "as of date" used for the calculations in the OCA submission.

3 - Represents the estimated losses to shareholder subscribing into the fund during the NAV Restatement Period and estimated losses to be determined after reprocessing individual capital activity that was held in Omnibus accounts.

4 - Proposal from service provider was higher than original estimate, and includes interest thru date of final payment made by Adviser.

5 - This includes the calculations subsequent to 1/7/19 (which was the "as of date" used for the calculations in the OCA submission) "through date" 1/28/19, which the final date in which the revised mark was fully reflected in the NAV.

D-CNL003770

Appx. 00869

# EXHIBIT 54

**From:** Kristin Hendrix
**Sent:** Thursday, May 02, 2019 12:33 PM
**To:** Hayley Eliason <HEliason@HighlandCapital.com>; Blair Roeber <BRoeber@HighlandCapital.com>
**Subject:** FW: HCMLP to HCMFA loan

Blair,

Here is a copy of the note for support.

Hayley – FYI for your loan tracker.

**From:** David Klos
**Sent:** Thursday, May 02, 2019 11:24 AM
**To:** Corporate Accounting
**Subject:** HCMLP to HCMFA loan

Blair,
Please send $2,400,000 from HCMLP to HCMFA. This is a new interco loan. Kristin, can you or Hayley please prep a note for execution. I'll have further instructions later today, but please process this payment as soon as possible.

**DAVID KLOS | CONTROLLER**



300 Crescent Court | Suite 700 | Dallas, Texas 75201
C: 214.674.2926 | O: 972.419.4478 | F: 972 628.4147
dklos@highlandcapital.com | www.highlandcapital.com

1

D-CNL003777

**Appx. 00871**

# PROMISSORY NOTE

$2,400,000.00                                                                    May 2, 2019

      FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("***Maker***") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("***Payee***"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION FOUR HUNDRED THOUSAND and 00/100 Dollars ($2,400,000.00), together with interest, on the terms set forth below (the "***Note***").  All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

      1.    <u>Interest Rate</u>.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the short-term "***applicable federal rate***" (2.39%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

      2.    <u>Payment of Principal and Interest</u>.  The accrued interest and principal of this Note shall be due and payable on demand.

      3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

      4.    <u>Acceleration Upon Default</u>.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

      5.    <u>Waiver</u>.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

      6.    <u>Attorneys' Fees</u>.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.    <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.  The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.    <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

FRANK WATERHOUSE

2

D-CNL003779

**Appx. 00873**

# EXHIBIT 55

## 5/2/2019 Wires

|  |  |  | Description | Notes |
|---|---|---|---|---|
| **HCM** | | | | |
| HCMFA | USD | 2,400,000.00 | Loan | |
| Siepe Services | USD | 187,856.26 | March | |
| HCM *513 | USD | 123,842.97 | May 2019 BCBS | |
| Select | USD | 100,000.00 | Margin Call | |
| CDW | USD | 4,145.57 | | |
| CT Corp | USD | 1,077.75 | | |
| | | | | |
| **HCMFA** | | | | |
| Highland Opp Credit Fund | USD | 27,694.31 | | |
| HCM *513 | USD | 19,968.45 | May 2019 BCBS | |
| Highland Merger Arb | USD | 18,494.04 | April 2019 Advisory Fees | |
| Highland Tax Exempt | USD | 12,783.25 | | |
| Morgan Stanley | USD | 11,107.39 | | |
| Highland MLP Fund | USD | 10,354.06 | | |
| Wells Fargo | USD | 7,814.20 | | |
| Pershing | USD | 5,719.83 | | |
| Highland Commissions DDA | USD | 5,000.00 | DST Daily Commissions Debit Account Funding | |
| Financial Data Services | USD | 277.66 | | |

D-CNL003772

**Appx. 00875**

# EXHIBIT 56

**From:** Kristin Hendrix
**Sent:** Friday, May 03, 2019 3:06 PM
**To:** Corporate Accounting <CorporateAccounting@hcmlp.com>
**Subject:** HCMLP Loan to HCMFA

Blair,

Please set up a wire from HCMLP to HCMFA for $5M as a new loan ($4.4M should be coming in from Jim soon).

Hayley, please add this to your loan tracker. I will paper the loan.

Thanks,

**Kristin Hendrix, CPA** | Manager, Corporate Accounting



300 Crescent Court | Suite 700 | Dallas, Texas 75201
O: 972.628.4127 | F: 972.628.4147
khendrix@highlandcapital.com | www.highlandcapital.com



1

D-CNL003763

Appx. 00877

# EXHIBIT 57

## PROMISSORY NOTE

$5,000,000.00                                                                                          May 3, 2019

FOR VALUE RECEIVED, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, LP. ("**Maker**") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT, LP ("**Payee**"), in legal and lawful tender of the United States of America, the principal sum of FIVE MILLION and 00/100 Dollars ($5,000,000.00), together with interest, on the terms set forth below (the "**Note**"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    <u>Interest Rate</u>.   The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the short-term "***applicable federal rate***" (2.39%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    <u>Payment of Principal and Interest</u>.   The accrued interest and principal of this Note shall be due and payable on demand.

3.    <u>Prepayment Allowed; Renegotiation Discretionary</u>.   Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    <u>Acceleration Upon Default</u>.   Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    <u>Waiver</u>.   Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    <u>Attorneys' Fees</u>.   If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

7.     <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.     <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____

FRANK WATERHOUSE

2

D-CNL003765

**Appx. 00880**

# EXHIBIT 58

**Highland Capital Management, L.P. - Cash**
Next 13 Weeks Commencing December 14, 2020
*(in thousands)*
*CONFIDENTIAL DRAFT FOR ILLUSTRATIVE PURPOSES ONLY - NOT FINAL OR APPROVED FOR FURTHER DISTRIBUTION*

| | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week beginning | 12/7 | 12/14 | 12/21 | 12/28 | 1/4 | 1/11 | 1/18 | 1/25 | 2/1 | 2/8 | 2/15 | 2/22 | 3/1 | 3/8 |
| **Beginning unrestricted operating cash** | $ 12,537 | $ 11,948 | $ 10,684 | $ 11,051 | $ 11,771 | $ 11,048 | $ 11,188 | $ 11,353 | $ 10,486 | $ 11,445 | $ 10,860 | $ 10,279 | $ 8,145 | 8,381 |
| **Operating Receipts** | | | | | | | | | | | | | | |
| Management fees | | | | | | | | | | | | | | |
| CLOs | - | - | - | - | - | - | - | - | 676 | - | - | - | - | - |
| Hedge funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Private Equity, PetroCap, Port Co's | - | - | - | - | 63 | - | - | - | - | - | 270 | - | - | - |
| Separate accounts | - | - | - | 776 | - | - | - | - | 750 | 165 | - | 579 | - | - |
| Management fees - managed funds | $ - | $ - | $ - | 776 | $ - | $ - | 63 | $ - | $ - | 750 | $ 841 | $ - | 849 | $ - |
| HCMFA / NPA investment support | - | - | - | 668 | - | - | 668 | - | - | 668 | - | - | - | 668 |
| Shared services receipts | 39 | - | 168 | 385 | - | - | 168 | 290 | 135 | - | 290 | 60 | 15 | - |
| Interoompany and shared services revenue | 39 | $ - | - | 836 | $ 385 | $ - | - | 836 | $ 290 | 135 | 668 | $ 290 | 60 | $ 15 | 668 | $ - |
| Fund reimbursements | - | - | 60 | - | - | - | - | 100 | - | - | - | 100 | - | - |
| Interest receipts on notes receivable | - | - | - | 2,051 | - | - | - | - | - | - | - | - | - | - |
| Dividend receipts (unencumbered) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other miscellaneous receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total other receipts | $ - | $ - | - | 60 | $ 2,051 | $ - | - | $ - | 100 | $ - | $ - | $ - | 100 | $ - | - | $ - |
| **Total operating receipts** | $ 39 | $ - | $ - | 1,672 | $ 2,436 | $ - | 63 | $ 836 | $ 390 | $ 885 | 1,509 | $ 290 | 1,009 | $ 15 | 668 | $ - |
| **Compensation and benefits** | | | | | | | | | | | | | | |
| Payroll, benefits, and taxes + exp reimb | (408) | (31) | - | (556) | - | (471) | - | (561) | - | (535) | - | (625) | - | (460) |
| Cash bonuses | - | - | - | - | - | - | - | - | - | - | - | (3,394) | - | - |
| **Total compensation and benefits** | $ (408) | $ (31) | $ - | $ - | (556) | $ - | $ - | (471) | $ - | (561) | $ - | (535) | $ - | (4,019) | $ - | (460) |
| **General overhead** | | | | | | | | | | | | | | |
| Outside legal (ordinary course) | (62) | - | (499) | - | (560) | - | - | (560) | - | - | - | (560) | - | - |
| Independent director fees | - | - | - | (210) | - | - | - | - | (210) | - | - | - | (210) | - |
| General overhead - critical vendors (pre-petition) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| General overhead - post-petition vendors | (158) | (1,233) | (275) | (275) | (225) | (225) | (225) | (225) | (340) | (340) | (340) | (340) | (222) | (222) |
| **Total general overhead** | $ (220) | $ (1,233) | (774) | $ (485) | (785) | $ (225) | (225) | $ (785) | (550) | $ (340) | (340) | $ (900) | (432) | $ (222) |
| **Net change in cash due to operating activity** | (589) | (1,264) | 898 | 1,395 | (723) | 140 | 165 | (461) | 959 | (585) | 669 | (4,904) | 236 | (682) |
| **Re-org related - payments direct to professionals** | | | | | | | | | | | | | | |
| Debtor bankruptcy counsel | - | - | - | (300) | - | - | - | (720) | - | - | - | (720) | - | - |
| Debtor FA/CRO | - | - | - | - | - | - | - | (300) | - | - | - | (300) | - | - |
| Compensation consultant | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Committee counsel | - | - | (359) | (339) | - | - | - | (600) | - | - | - | (600) | - | - |
| Committee FA | - | - | (172) | (138) | - | - | - | (480) | - | - | - | (480) | - | - |
| Claims / noticing agent | - | - | - | - | - | - | - | (30) | - | - | - | (30) | - | - |
| Regulatory & compliance counsel | - | - | - | (100) | - | - | - | (100) | - | - | - | (100) | - | - |
| Mediation | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| US Trustee | - | - | - | - | - | - | - | (175) | - | - | - | (175) | - | - |
| **Total re-org related** | $ - | $ - | $ - | (531) | $ (877) | $ - | - | $ - | $ - | (2,405) | $ - | $ - | $ - | (2,230) | $ - | $ - |
| **Net change in cash from ops + reorg costs** | (589) | (1,264) | 367 | 518 | (723) | 140 | 165 | (2,866) | 959 | (585) | 669 | (7,134) | 236 | (682) |
| **Investing cash flows (principal only on notes)** | | | | | | | | | | | | | | |
| Jefferies prime brokerage, net or Select Equity Fund funding | - | - | - | - | - | - | - | 2,000 | - | - | 5,000 | - | - | - |
| Third party fund capital call obligations | - | - | - | - | - | - | - | - | - | - | (1,650) | - | - | - |
| Third party fund expected distributions | - | - | - | - | - | - | - | - | - | - | 400 | - | - | - |
| Highland Capital Management Korea (capital call funding) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Multi Strategy Credit Fund | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Highland Capital Management Latin America | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Proceeds from outstanding notes | - | - | - | 202 | - | - | - | - | - | - | - | - | - | - |
| Divs, paydowns, misc from non-PB assets | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Purchases of other investments (non-PB) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Proceeds from other investments (non-PB) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net change in cash due to investing activities** | - | - | - | 202 | - | - | - | 2,000 | - | - | (1,250) | 5,000 | - | - |
| **Financing cash flows** | | | | | | | | | | | | | | |
| Required equity distributions | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Equity contributions | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Existing debt paydowns | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net change in cash due to financing activities** | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending unrestricted operating cash** | $ 11,948 | $ 10,684 | $ 11,051 | $ 11,771 | $ 11,048 | $ 11,188 | $ 11,353 | $ 10,486 | $ 11,445 | $ 10,860 | $ 10,279 | $ 8,145 | $ 8,381 | 7,699 |

D-CNL003810
**Appx. 00882**

# EXHIBIT 59

 

| | |
|---|---|
| **TO:** | Board of Trustees or Board of Directors (as the case may be) (collectively, the "<u>Board</u>") of Highland Funds I, Highland Funds II, Highland Income Fund, Highland Global Allocation Fund, NexPoint Strategic Opportunities Fund, NexPoint Real Estate Strategies Fund and NexPoint Capital, Inc. |
| **FROM:** | Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P. and NexPoint Securities, Inc. |
| **RE:** | Supplemental 15(c) Information Request |
| **DATE:** | October 23, 2020 |

Pursuant to your supplemental request dated October 2, 2020, Highland Capital Management Fund Advisors, L.P. ("<u>HCMFA</u>"), NexPoint Advisors, L.P. ("<u>NexPoint</u>", and with HCMFA, each, an "<u>Adviser</u>", and together, the "<u>Advisers</u>") and NexPoint Securities, Inc. ("<u>NSI</u>" the "<u>Distributor</u>") submit the following supplemental information to the Board in order to assist the Board in fulfilling its obligations under Section 15(c) of the Investment Company Act of 1940, as amended (the "<u>1940 Act</u>"), and to assist in the Board's consideration of the investment advisory, and other contractual arrangements, for the funds listed on <u>Appendix A</u> (each, a "<u>Fund</u>" and, collectively, the "<u>Funds</u>"). References to the 2020 15(c) Response dated August 13, 2020 and the supplemental response dated September 17-18, 2020 are referred to as the "<u>2020 15(c) Response</u>" and "<u>2020 Supplemental 15(c) Response</u>", respectively.

Your requests have been noted below, each of which is followed by our response. Unless otherwise specified, reference documents are located on Director's Desk at the following location: Home > Documents > Corporate Documents > 15c Reference Documents.

**A.**     <u>*Nature, Extent and Quality of Services*</u>

1.     Please provide, to the extent practicable, the contingency plans with respect to the services provided under the Shared Services Agreements in the event that the outcome of the HCMLP bankruptcy proceedings were to impact the current servicing structure. For example, has the Advisers considered any outside service providers if necessary?

**Response**: As a result of the Highland Capital Management, L.P. ("<u>HCMLP</u>") bankruptcy, NexPoint's senior management's plan as a backup/contingency plan is to extend employment offers to the vast majority of HCMLP's employees by December 31, 2020.  This will help ensure that there is no disruption in services to the Funds.  Once we have further details of this we will advise.  In the interim, the plan is to continue with existing shared services.

Representatives of HCMLP and NexPoint will be available to discuss the structure of these contingency plans, relevant employees, and communications

1

to current employees regarding these matters. Representatives of HCMLP and NexPoint are working to facilitate the shared use of and/or transfer of services such as the intranet, shared computer drives, and third-party contracts.

2.  Are there any material outstanding amounts currently payable or due in the future (*e.g.*, notes) to HLCMLP by HCMFA or NexPoint Advisors or any other affiliate that provide services to the Funds?

    **Response**: As of June 30, 2020, $23,683,000 remains outstanding to HCMLP and its affiliates from NexPoint and $12,286,000 remains outstanding to HCMLP from HCMFA. The Note between HCMLP and NexPoint comes due on December 31, 2047. The earliest the Note between HCMLP and HCMFA could come due is in May 2021. All amounts owed by each of NexPoint and HCMFA pursuant to the shared services arrangement with HCMLP have been paid as of the date of this letter. The Adviser notes that both entities have the full faith and support of James Dondero.

3.  The Board notes the provision of the updated list of current co-investments provided by HCMFA/NexPoint Advisors and the Advisers' discussion, including the senior-level team in place, to address any potential conflicts of interest matters.  With respect to the compliance function, please confirm that the Funds' Chief Compliance Officer overall will continue in his usual role with respect to the Funds.  Are there any other potential conflicts outside of the specific co-investment matters identified?

    **Response**: The Advisers confirm that the Funds' Chief Compliance Officer overall will continue in his usual role with respect to the Funds. As of October 14, 2020, the Funds' Chief Compliance Officer is an employee of NexPoint. Please see <u>Exhibit A</u> for a list of current co-investments and cross-held positions where a future conflict may arise together with <u>Exhibit B</u> for the list of non-HCMLP employees available to assist the Board in any future conflicts.

**<u>Exhibit A</u>**

**Co-Investment Analysis**

CONFIDENTIAL                HCMFAS 000027

**Appx. 00886**

Highland Capital Management, LP ("HCMLP")
Condensed Co-Investment Analysis
As of 9/30/20

**Condensed Co-Investments** [1]

| | Investment | HCMLP MV | Funds Managed by HCMLP MV | Retail Funds | Non-HCMLP Investment Coverage |
|---|---|---|---|---|---|
| 1 | Metro-Goldwyn-Mayer Inc. Class A Common Stock | $13,085,369 | $418,019,027 | $61,820,908 | Dondero |
| 2 | CCS Medical, Inc. (Chronic Care) Loan 1st Lien @ PRIME 7%  7/31/2021 | - | 121,166,994 | 47,510,599 | Dondero |
| 3 | TerreStar Corporation Term Loan A @ LIBOR 11%  2/28/2022 | - | 49,742,043 | 40,159,485 | Dondero |
| 4 | VST US Equity | - | 41,904,280 | 24,381,982 | Sowin |
| 5 | NXRT | 10,799,003 | 2,228,410 | 21,256,955 | McGraner |
| 6 | Grayson CLO, Ltd. Class II Preference Shares | - | 2,201,500 | 18,861,500 | Sowin |
| 7 | NHT/U CN | 2,028,793 | - | 18,524,594 | McGraner |
| 8 | NHF | 2,208,872 | 2,954,619 | 15,808,648 | Dondero |
| 9 | Advantage Sales & Marketing Inc. Term Loan (Second Lien) @ LIBOR 6.5%  7/25/2022 | - | 1,940,140 | 13,784,695 | Sowin |
| 10 | Procera Networks, Inc.  (aka Sandvine Corp) Initial Term Loan (First Lien) @ LIBOR 4.5%  10/3 | - | 1,367,373 | 13,681,487 | Sowin |
| 11 | Gruden Acquisition, Inc. (aka Quality Distribution) ITL (First Lien) @ LIBOR 5.5%  8/18/2022 | - | 2,568,463 | 11,124,738 | Sowin |
| 12 | Westchester CLO, Ltd Class I Preference Shares 144A | - | 3,373,333 | 10,888,813 | Sowin |
| 13 | HRTX | - | 81,510 | 10,686,168 | Dondero |
| 14 | Vistra Energy Corp. (fka TCEH Corp.) TXU TRA rights | - | 3,494,825 | 10,476,054 | Sowin |
| 15 | American Banknote Common | 693,467 | - | 1,843,371 | Dondero |
| 16 | American Airlines Escrow | 154,650 | 630,365 | 1,444,839 | Dondero |
| 17 | Ginn LA Conduit Lender, Inc. 1st Lien A CL Deposit @ PRIME 4.5%  6/8/2011 | 68,860 | 812,716 | 846,955 | Sowin |
| 18 | TerreStar Corporation TL C @ LIBOR 11%  2/28/2022 | - | 25,418 | 553,282 | Dondero |
| 19 | CCS Medical, Inc. (Chronic Care) Common | - | 6,008 | 5,797 | Dondero |
| | **Sub-Total** | **$29,039,013** | **$652,517,024** | **$323,660,869** | |

**Additional HCMLP Ownership of Retail Funds (non-co-investments)** [2]

| Investment | HCMLP MV | Retail Fund MV | Funds Managed by HCMLP MV |
|---|---|---|---|
| Highland Opportunistic Credit Fund (HNRZX) | $2,911,923 | - | - |
| NexPoint Real Estate Strategies Fund (NRSZX) | 663,982 | - | - |
| **Sub-Total** | **$3,575,905** | **$0** | **$0** |

Footnote:
1 - Listing includes the following: 1) all investments held by both HCMLP and retail funds, regardless of materiality 2) investments for which retail funds hold $10 million or greater in the aggregate and are also held by funds advised by HCMLP 3) investments for which retail funds hold ownership less than $10 million in the aggregate, the position is private and fair valued, and are also held by funds advised by HCMLP.
2 - 'Additional HCMLP Ownership of Retail Funds' does not reflect other immaterial holdings of investments below $5,000.

HCMFAS 000028

Highland Capital Management, LP ("HCMLP")
Co-Investment Analysis
As of 9/30/20

**Co-Investments, excluding holdings with zero market value**

| | Investment | HCMLP MV | Funds Managed by HCMLP MV | Retail Funds |
|---|---|---|---|---|
| 1 | Metro-Goldwyn-Mayer Inc. Class A Common Stock | $13,085,369 | $418,019,027 | $61,820,908 |
| 2 | CCS Medical, Inc. (Chronic Care) Loan 1st Lien @ PRIME 7%  7/31/2021 | - | 121,166,994 | 47,510,599 |
| 3 | TerreStar Corporation Term Loan A @ LIBOR 11%  2/28/2022 | - | 49,742,043 | 40,159,485 |
| 4 | VST US Equity | - | 41,904,280 | 24,381,982 |
| 5 | NXRT | 10,799,003 | 2,228,410 | 21,256,955 |
| 6 | Grayson CLO, Ltd. Class II Preference Shares | - | 2,201,500 | 18,861,500 |
| 7 | NHT/U CN | 2,028,793 | - | 18,524,594 |
| 8 | NHF | 2,208,872 | 2,954,619 | 15,808,648 |
| 9 | Advantage Sales & Marketing Inc. Term Loan (Second Lien) @ LIBOR 6.5%  7/25/2022 | - | 1,940,140 | 13,784,695 |
| 10 | Procera Networks, Inc.  (aka Sandvine Corp) Initial Term Loan (First Lien) @ LIBOR 4.5%  10/31/2025 | - | 3,463,973 | 13,681,487 |
| 11 | Gruden Acquisition, Inc. (aka Quality Distribution) ITL (First Lien) @ LIBOR 5.5%  8/18/2022 | - | 2,568,463 | 11,124,738 |
| 12 | Westchester CLO, Ltd Class I Preference Shares 144A | - | 3,373,333 | 10,888,813 |
| 13 | HRTX | - | 81,510 | 10,686,168 |
| 14 | Vistra Energy Corp. (fka TCEH Corp.) TXU TRA rights | - | 3,494,825 | 10,476,054 |
| 15 | Traverse Midstream Partners LLC Advance @ LIBOR 5.5%  9/27/2024 | - | 25,916,705 | 9,945,051 |
| 16 | VM Consolidated, Inc. (aka American Traffic Solutions) B-1 1st Lien Non-ext @ LIBOR 3.25%  2/28/2025 | - | 2,719,702 | 9,594,505 |
| 17 | Edelman Financial Center, LLC, The (fka Flight Debt Merger Sub Inc.) Initial Term Loan (Second Lien) @ LIBOR 6.75%  7/20/2026 | - | 125,340 | 9,078,334 |
| 18 | Forest City Enterprises, L.P. Replacement TL @ LIBOR 3.5%  12/8/2025 | - | 2,228,334 | 8,828,237 |
| 19 | Avaya Inc. B TL @ LIBOR 4.25%  12/15/2024 | - | 1,357,685 | 8,802,760 |
| 20 | MPMQ Appraisal Rights Claims | - | 527,460 | 8,224,455 |
| 21 | USS Ultimate Holdings, Inc. (aka United Site Services, Inc.) Initial Term Loan (First Lien) @ LIBOR 3.75%  8/25/2024 | - | 2,877,263 | 6,691,414 |
| 22 | PSC Industrial Holdings Corp. Term Loan (First Lien) @ LIBOR 3.75%  10/11/2024 | - | 3,685,775 | 6,511,970 |
| 23 | EnergySolutions, LLC (aka Envirocare of Utah, LLC) Initial Term Loan @ LIBOR 3.75%  5/9/2025 | - | 7,194,271 | 5,678,512 |
| 24 | Truck Hero, Inc. Initial TL 2nd Lien @ LIBOR 8.25%  4/21/2025 | - | 645,557 | 5,561,471 |
| 25 | Envision Healthcare Corporation Initial Term Loan @ LIBOR 3.75%  10/10/2025 | - | 2,854,870 | 5,502,657 |
| 26 | AERI | - | 35,310 | 5,211,756 |
| 27 | MDPK 2014-15A Float - 01/2026 - DR - 55818WAG0 @ LIBOR 5.4400 1/27/2026 | - | 1,249,500 | 4,774,875 |
| 28 | Brentwood CLO Ltd Class II Preference Shares | - | 7,424,000 | 4,416,000 |
| 29 | Jo-Ann Stores, LLC Initial Loan @ LIBOR 5%  10/20/2023 | - | 2,354,854 | 4,384,100 |
| 30 | Advantage Sales & Marketing Inc. Initial Term Loan @ LIBOR 3.25%  7/23/2021 | - | 1,896,829 | 3,571,805 |
| 31 | Radnet Management, Inc. T B-1 L @ LIBOR 3.75%  6/30/2023 | - | 1,601,339 | 3,479,728 |
| 32 | Fort Dearborn Holding Company, Inc. Initial Term Loan (First Lien) @ LIBOR 4%  10/19/2023 | - | 1,394,305 | 3,406,180 |
| 33 | Sound Inpatient Physicians, Inc. Initial Term Loan (Second Lien) @ LIBOR 6.75%  6/26/2026 | - | 326,460 | 3,264,600 |
| 34 | Liberty CLO, Ltd. Preferred | - | 8,339,310 | 2,989,000 |
| 35 | UDFI | - | 1,291,306 | 2,801,645 |
| 36 | Auris Luxembourg III S.a r.l. Facility B2 @ LIBOR 3.75%  2/27/2026 | - | 1,891,886 | 2,364,858 |
| 37 | BIO | - | 171,133 | 2,319,570 |
| 38 | Dayco Products LLC - (Mark IV Industries, Inc.) Term Loan @ LIBOR 4.25%  5/19/2023 | - | 1,587,518 | 2,121,554 |
| 39 | Rockwall CDO, Ltd. Preferred Shares | - | 5,211,000 | 2,026,500 |
| 40 | AVYA | - | 30,877,250 | 1,911,598 |
| 41 | RWIC NOT LISTED | - | 579,000 | 1,852,800 |
| 42 | American Banknote Common | 693,467 | - | 1,843,371 |
| 43 | TCW 2019-2A D2A Float - 10/02032 - 87242BAS9 @ 4.89 10/20/2032 | - | 1,250,000 | 1,750,000 |
| 44 | Red River CLO, Ltd. Red River CLO | - | 3,797,722 | 1,744,900 |
| 45 | American Airlines Escrow | 154,650 | 630,365 | 1,444,839 |
| 46 | Refinitiv US Holdings Inc. (fka Financial & Risk US Holdings, Inc.) Initial Dollar Term Loan @ LIBOR 3.25%  10/1/2025 | - | 1,950,070 | 1,231,425 |
| 47 | Scientific Games International, Inc. Initial Term B-5 Loan @ LIBOR 2.75%  8/14/2024 | - | 3,715,025 | 1,213,050 |
| 48 | ACIS 2015-6A Zero Coupon - 05/2027 - SUB - 004524AD6 @ Zero Coupon 0.0000 5/1/2027 | - | 8,296,000 | 1,200,000 |
| 49 | CIFC 2015-5A DR Float - 10/02027 - 12550NAJ7 @ 5.55 10/25/2027 | - | 1,109,375 | 1,198,325 |
| 50 | General Nutrition Centers, Inc. FILO Term Loan @ PRIME 8%  12/31/2022 | - | 487,190 | 1,148,178 |
| 51 | Change Healthcare Holdings, LLC closing date TL @ LIBOR 2.5%  3/1/2024 | - | 2,709,671 | 991,845 |
| 52 | CIFC 2016-1A D2R Float - 10/02031 - 17180TAW2 @ 4.43 10/21/2031 | - | 980,000 | 980,000 |
| 53 | TMO | - | 201,775 | 927,192 |
| 54 | ACIS 2015-6A Float - 05/2027 - D - 00452PAR8 @ LIBOR 3.7700 5/1/2027 | - | 1,810,000 | 905,000 |
| 55 | Edelman Financial Center, LLC, The (fka Flight Debt Merger Sub Inc.) Initial Term Loan (First Lien) @ LIBOR 3%  7/21/2025 | - | 3,329,415 | 903,218 |
| 56 | AHT1 2018-KEYS E Float - 05/02035 - 04410CAN0 @ 4.15 05/15/2035 | - | 695,663 | 850,255 |
| 57 | ABERD | - | 905,975 | 847,525 |
| 58 | Ginn LA Conduit Lender, Inc. 1st Lien A CL Deposit @ PRIME 4.5%  6/8/2011 | 68,860 | 812,716 | 846,955 |
| 59 | Bausch Health Companies Inc. (fka Valeant Pharmaceuticals International, Inc.) Initial Term Loan @ LIBOR 3%  6/2/2025 | - | 3,010,042 | 825,922 |
| 60 | CSC Holdings, LLC (fka CSC Holdings Inc. (Cablevision)) March 2017 Refinancing Term Loan @ LIBOR 2.25%  7/17/2025 | - | 1,142,030 | 824,572 |
| 61 | Hub International Limited Initial Term Loan @ LIBOR 3%  4/25/2025 | - | 1,270,064 | 819,121 |
| 62 | Nielsen Finance LLC (VNU, Inc.) Class B-4 Term Loan @ LIBOR 2%  10/4/2023 | - | 480,085 | 813,503 |
| 63 | PRTK | - | 100,626 | 757,508 |
| 64 | MPH Acquisition Holdings LLC Initial Term Loan @ LIBOR 2.75%  6/7/2023 | - | 3,767,027 | 739,421 |
| 65 | VICI Properties 1 LLC Term B Loan @ LIBOR 1.75%  12/20/2024 | - | 969,035 | 726,776 |
| 66 | McAfee, LLC Term B USD Loan @ LIBOR 3.75%  9/30/2024 | - | 1,469,387 | 722,848 |
| 67 | IRB Holding Corp. (aka Arby's / Buffalo Wild Wings) 2020 Replacement Term B Loan @ Libor 2.75%  2/5/2025 | - | 531,087 | 716,184 |
| 68 | Global Medical Response, Inc.  (aka Air Medical) 2018 Term Loan @ LIBOR 3.25%  4/28/2022 | - | 969,179 | 699,346 |
| 69 | CityCenter Holdings, LLC Term B Loan @ LIBOR 2.25%  4/18/2024 | - | 344,250 | 694,346 |
| 70 | Missy Limited (aka Almonde/Tahoe, Finastra USA) Dollar Term Loan (First Lien) @ LIBOR 3.5%  6/13/2024 | - | 920,265 | 693,200 |
| 71 | Golden Nugget, Inc. (aka Landry's Inc.) TL @ LIBOR 2.5%  10/4/2023 | - | 383,374 | 671,846 |
| 72 | H.B. Fuller Company Commitment @ LIBOR 2%  10/20/2024 | - | 250,488 | 638,664 |
| 73 | Lightstone Holdco LLC Refinancing Term B Loan @ LIBOR 3.75%  1/30/2024 | - | 4,262,832 | 616,367 |
| 74 | ACHC | - | 73,700 | 589,600 |
| 75 | Crown Finance US, Inc. (aka Cineworld Group plc) Initial Dollar Tranche Term Loan @ LIBOR 2.5%  2/28/2025 | - | 11,999,814 | 572,658 |
| 76 | Calpine Corporation Term Loan (2015) @ LIBOR 2.25%  1/15/2024 | - | 375,085 | 567,158 |
| 77 | TerreStar Corporation TL C @ LIBOR 11%  2/28/2022 | - | 25,418 | 553,282 |
| 78 | TransDigm Inc. Tranche E Refinancing Term Loan @ LIBOR 2.25%  5/30/2025 | - | 6,149,465 | 542,437 |
| 79 | Tronox Finance LLC Initial Dollar Term Loan (First Lien) @ LIBOR 3%  9/23/2024 | - | 3,327,701 | 493,305 |
| 80 | Solera, LLC (Solera Finance, Inc.) Dollar TL @ LIBOR 2.75%  3/3/2023 | - | 446,555 | 490,314 |
| 81 | AlixPartners, LLP 2017 Refinancing Term Loan @ LIBOR 2.75%  4/4/2024 | - | 3,254,084 | 483,887 |
| 82 | iHeartCommunications, Inc. (fka Clear Channel Communications, Inc.) 6.375% - 05/2026 - 45174HBC0 FIX 6.375% 5/1/2026 | - | 1,446 | 482,002 |
| 83 | Fieldwood Energy LLC Closing Date Loan (First Lien) @ LIBOR 2.5%  4/11/2022 | - | 10,941,771 | 479,396 |
| 84 | HLF 1X Floating - 08/2014 - C1 - 43037QAE9 @ LIBOR 0.0000 8/2/2018 | - | 318,583 | 477,874 |
| 85 | Ineos US Finance LLC New 2024 Dollar Term Loan @ LIBOR 2%  4/1/2024 | - | 2,131,748 | 474,805 |
| 86 | CGMS 2019-4A Float - 01/02033 - 14317WAA6 @ 7.65 01/15/2033 | - | 930,500 | 465,250 |
| 87 | BJ's Wholesale Club, Inc. Tranche B Term Loan (First Lien) @ LIBOR 2%  2/3/2024 | - | 515,535 | 460,180 |
| 88 | Titan Acquisition Limited (aka Husky IMS International Ltd.) Initial Term Loan @ LIBOR 3%  3/28/2025 | - | 923,108 | 459,071 |
| 89 | Plantronics, Inc. Initial Term Loan @ LIBOR 2.5%  7/2/2025 | - | 12,145,824 | 376,874 |
| 90 | SS&C Technologies Holdings, Inc. Term B-5 Loan @ LIBOR 2.25%  4/16/2025 | - | 952,120 | 264,538 |
| 91 | Berry Global, Inc. (fka Berry Plastics Corporation) Term W Loan @ LIBOR 2%  10/1/2022 | - | 339,055 | 248,184 |
| 92 | Applied Systems, Inc. Closing Date Term Loan (First Lien) @ LIBOR 3.25%  9/19/2024 | - | 1,693,433 | 245,795 |
| 93 | SolarWinds Holdings, Inc. 2018 Refinancing Term Loan (First Lien) @ LIBOR 2.75%  2/5/2024 | - | 956,532 | 243,383 |
| 94 | VAHA 2004-1A Variable - 08/2012 - 91914QAA4 @ Variable 0.0000 8/1/2012 | - | 375,000 | 225,000 |
| 95 | SRC | - | 1,212 | 220,219 |
| 96 | COLL | - | 62,398 | 166,456 |
| 97 | Texas Competitive Electric Holdings Company LLC (TXU) Escrow Loan Extended @ LIBOR 0% | - | 2,079 | 151,087 |
| 98 | AAMRQ escrow Common Stock | - | 57,400 | 123,000 |
| 99 | Tecton 9 PERP | - | 467,201 | 114,573 |
| 100 | ACRG/A/U CN | - | 41,887 | 111,422 |
| 101 | NRG | - | 26,498 | 83,767 |
| 102 | FGI Operating Company, LLC Common | - | 51,252 | 68,922 |
| 103 | Fieldwood Energy LLC Common1 | - | 15,420 | 56,288 |
| 104 | ACRG/B/U CN | - | 15,022 | 39,960 |
| 105 | Lightstone Holdco LLC Refinancing Term C Loan @ LIBOR 3.75%  1/30/2024 | - | 240,430 | 34,764 |
| 106 | SMTA (Delisted 01/02/2020) | - | 93,852 | 7,880 |
| 107 | CCS Medical, Inc. (Chronic Care) Common | - | 6,008 | 5,797 |
| | **Total** | **$29,039,013** | **$878,908,335** | **$495,707,848** |

**Additional HCMLP Ownership of Retail Funds (non-co-investments)[1]**

| | Investment | HCMLP MV | Retail Fund MV | Funds Managed by HCMLP MV |
|---|---|---|---|---|
| | Highland Opportunistic Credit Fund (HNRZX) | $2,911,923 | - | - |
| | NexPoint Real Estate Strategies Fund (NRSZX) | 663,982 | - | - |
| | **Total** | **$3,575,905** | **0.00** | **$0** |

Footnote:
1 - 'Additional HCMLP Ownership of Retail Funds' does not reflect other immaterial holdings of investments below $5,000.

HCMFAS 000029

**Appx. 00888**

**Exhibit B**

**Non-HCMLP Employees**

| Name | Role | Current Title | Employed By |
|------|------|---------------|-------------|
| Jim Dondero | Senior Investment Team Member | Partner | NPA |
| Jason Post | Chief Compliance Officer | Chief Compliance Officer | NPA |
| Joe Sowin | Senior Investment Team Member | Co-CIO and Head of Global Equity Trading | HCMFA |
| Brad Heiss | Senior Investment Team Member | Managing Director | HCMFA |
| Matt McGraner | Senior Investment Team Member | Managing Director | NPA |
| Dustin Norris | Fund Officer/Liaison | Head of Distribution and Chief Product Strategist | NPA |
| DC Sauter | Legal | General Counsel | NPA |
| Eric Holt | Compliance | Chief Compliance Officer, Affiliated Broker Dealers | NSI |
| David Willmore | Accounting/Operations | Senior Manager, Real Estate Accounting | NXRT |
| Paul Richards | Valuation | Director, Real Estate | NPA |
| Jackie Graham | PR/Marketing | Investor Relations Manager | NPA |

| | |
|------|------|
| HCMFA | Highland Capital Management Fund Advisors, L.P. |
| NPA | NexPoint Advisors, L.P. |
| NSI | NexPoint Securities, Inc. |
| NXRT | NexPoint Residential Trust, Inc. |

.

CONFIDENTIAL

## Appendix A

**Open-End Funds**

Highland Funds I:

1. Highland Healthcare Opportunities Fund
2. Highland/iBoxx Senior Loan ETF
3. Highland Opportunistic Credit Fund (*in liquidation*)
4. Highland Merger Arbitrage Fund

Highland Funds II:

5. Highland Small-Cap Equity Fund
6. Highland Socially Responsible Equity Fund
7. Highland Fixed Income Fund (*sub-advised*)
8. Highland Total Return Fund (*sub-advised*)

**Closed-End Funds**

9. NexPoint Capital, Inc.
   a. BDC REIT Sub, LLC                    (*REIT Subsidiary*)
10. NexPoint Strategic Opportunities Fund
    a. NexPoint Real Estate Opportunities, LLC    (*REIT Subsidiary*)
    b. NexPoint Real Estate Capital, LLC        (*REIT Subsidiary*)
11. Highland Income Fund
    a. HFRO Sub, LLC                       (*Credit Subsidiary*)
    b. NFRO REIT Sub, LLC                  (*REIT Subsidiary*)
12. Highland Global Allocation Fund
    a. GAF REIT, LLC                       (*REIT Subsidiary*)

**Interval Funds:**

13. NexPoint Real Estate Strategies Fund
    a. NRESF REIT Sub, LLC                 (*REIT Subsidiary*)

# EXHIBIT 60

**From:** Kristin Hendrix
**Sent:** Saturday, August 29, 2020 2:47 PM
**To:** Jim Dondero <JDondero@HighlandCapital.com>
**Cc:** Frank Waterhouse <FWaterhouse@HighlandCapital.com>
**Subject:** 7/31/2020 HCMLP Requests

Hi Jim,

Please see attached data you had requested for HCMLP.

- 7/31/2020 SOI
- 7/31/2020 affiliate notes
- Oct 2019 – July 2020 equity balances

Please let us know if you have any questions or need anything else.

Thanks,
Kristin

**Kristin Hendrix, CPA**   |   Assistant Controller



300 Crescent Court   |   Suite 700   |   Dallas, Texas 75201
O: 972.628.4127   |   F: 972.628.4147
khendrix@highlandcapital.com   |   www.highlandcapital.com

DISCLAIMER- This email is intended for the recipient(s) only and should not be copied or reproduced without explicit permission. The material provided herein is for informational purposes only and does not constitute an offer or commitment, a solicitation of an offer, or any advice or recommendation, to enter into or conclude any transaction. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it.

D-CNL003795

Appx. 00892

**Highland Capital Management, LP**
**Schedule of Investments, net**

| Fund | Ticker | 7/31/2020 FMV |
|---|---|---|
| **INVESTMENTS, AT FAIR VALUE:** | | |
| **HEDGE FUNDS:** | | |
| Multi-Strategy Credit Fund [4] | | $ 7,026,019 |
| Highland Dynamic Income Fund | | - |
| Highland Select Equity Fund - Jefferies | | $ - |
| SUBTOTAL | | 7,026,019 |
| | | |
| **PRIVATE EQUITY FUNDS:** | | |
| Highland Select Equity Fund - PE [4] | | $ 95,472,589 |
| Restoration Capital Partners [4] | | 27,626,237 |
| Petrocap Partners II [1] | | 10,142,249 |
| Petrocap Partners III [1] | | 2,725,623 |
| Highland CLO Funding [1] | | 269,275 |
| SUBTOTAL | | 136,235,973 |
| | | |
| **CORPORATE SECURITIES - PUBLIC:** | | |
| Public securities - Jefferies account, net of borrow [3] | | 20,949,643 |
| NexPoint Hospitality Trust | NHT (TSX) | 4,458,885 |
| NexPoint Real Estate Strategies Fund (custodied at AST) | NRSZX | 225,302 |
| NexPoint Residental Trust (custodied at Maxim) | NXRT | - |
| NexPoint Strategic Opportunities Fund (custodied at Maxim) | NHF | - |
| Minerva Neuroscience Inc. | NERV | - |
| SUBTOTAL | | 25,633,830 |
| | | |
| **CORPORATE SECURITIES - PRIVATE/OTC:** | | |
| MGM Common Stock [2] | | 8,085,367 |
| JHT Holdings, Inc. Common | | 5,102,801 |
| Cornerstone Common | | 2,967,377 |
| NHT Holdco | | 2,069,886 |
| HE Capital Asante, LLC Loan C | | 1,215,531 |
| American Banknote Corp. | | 837,564 |
| Goldfield Ranch Realty Holdings, LLC Loan | | 832,048 |
| American Airlines Escrow | | 113,410 |
| BEA CBO | | 100,000 |
| Ginn LA Conduit Lender, Inc. 1st Lien | | 68,880 |
| Goldfield Ranch Realty Holdings, LLC Incremental TL | | 66,516 |
| Turtle Bay Units | | 56,934 |
| Progenics Pharmaceuticals Contingent Rights | | 42,560 |
| Carey International, Inc. Term Loan | | 268,095 |
| Romacorp Common Stock | | 120,796 |
| OmniMax International, Inc. Common | | 171 |
| SUBTOTAL | | 21,947,915 |
| | | |
| **OTHER:** | | |
| Little Terrell Land | | 398,450 |
| SUBTOTAL | | 398,450 |
| | | |
| **TOTAL INVESTMENTS, AT FAIR VALUE** | | $ 191,242,187 |
| | | |
| **SUBSIDIARIES:** | | |
| Highland Capital Management Korea Limited | | $ 968,322 |
| Maple Avenue Holdings | | 586,989 |
| Penant, Ltd. | | 417,366 |
| SUBTOTAL | | $ 1,972,678 |
| | | |
| **TOTAL INVESTMENTS** | | $ 193,214,865 |

[1] 7/31/20 FMV carried forward from 3/31/20, as that is the most recent available information
[2] MVs represents a value, net of $5.2mm Frontier borrow
[3] MV represents value of Jefferies account
[4] 7/31/20 FMV is as of 6/30/20, as that is the most recent available information

D-CNL003796

Appx. 00893

**HCMLP Equity**
**10/31/19 - 7/31/20**
**(all values in millions)**

| | |
|---|---|
| 10/31/19 | 399,573 |
| 11/30/19 | 411,674 |
| 12/31/19 | 349,812 |
| 1/31/20 | 347,150 |
| 2/29/20 | 323,569 |
| 3/31/20 | 181,954 |
| 4/30/20 | 182,351 |
| 5/31/20 | 195,713 |
| 6/30/20 | 199,105 |
| 7/31/20 | 247,665 |

D-CNL003797
**Appx. 00894**

**HCMLP Notes Receivable**
**As of 7/31/2020**

| | | |
|---|---:|---|
| NexPoint Advisors | $ 23,846,944 | 30 yr Amort (issued 2017) |
| Dugaboy | 17,788,532 | 30 yr Amort (issued 2017) |
| Highland Capital Management Services | 6,677,529 | 30 yr Amort (issued 2017) |
| HCRE | 5,938,670 | 30 yr Amort (issued 2017) |
| Trussway | 1,004,993 | Due upon maturity -  11/1/2021 |
| SSP Holdings, LLC | 2,037,898 | Due upon maturity -  11/22/2022 |
| Siepe | 2,334,606 | Equity conversion option |
| Highland Capital Management Fund Advisors | 10,530,971 | Demand |
| James Dondero | 8,911,977 | Demand |
| Multi-Strategy Credit Fund | 1,269,000 | Demand |
| HCRE | 4,859,929 | Demand |
| Highland Select Equity Fund | 3,000,000 | Demand |
| Highland Capital Management Korea | 3,760,000 | Due upon maturity -  4/21/2037 |
| Highland Capital Management Services | 934,331 | Demand |
| **Total Notes Receivable** | **$ 92,895,380** | |

**Demand**                29,506,208

D-CNL003798
**Appx. 00895**

# EXHIBIT 61

# INTENTIONALLY

# OMITTED

**EXHIBIT 62**

# INTENTIONALLY

# OMITTED

# EXHIBIT 63

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements**
**With Report of Independent Auditors**
**December 31, 2008**

**Highland Capital Management, L.P.**
Contents
December 31, 2008

| | Page |
|---|---|
| **Report of Independent Auditors** | 1 |
| **Audited Consolidated Financial Statements** | |
| Consolidated Balance Sheet | 2 |
| Consolidated Statement of Income | 3 |
| Consolidated Statement of Partners' Capital | 4 |
| Consolidated Statement of Cash Flows | 5–6 |
| Notes to Consolidated Financial Statements | 7–51 |
| **Supplemental Information** | |
| Unconsolidated Balance Sheet (unaudited) | 52 |
| Income Statement (Unaudited) | 53 |

**Report of Independent Auditors**

To the General and Limited Partners of
Highland Capital Management, L.P

In our opinion, the accompanying consolidated balance sheet and the related consolidated statements of income, of changes in partners' capital and of cash flows (hereinafter referred to as the "financial statements") present fairly, in all material respects, the consolidated financial position of Highland Capital Management, L.P. (the "Partnership") and its subsidiaries at December 31, 2008, and the consolidated results of their operations and their consolidated cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.  These financial statements are the responsibility of the Partnership's management.  Our responsibility is to express an opinion on these financial statements based on our audits.  We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America.  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation.  We believe that our audit provides a reasonable basis for our opinion.

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole.  The supplemental unconsolidated balance sheet and unconsolidated statement of income are presented for purposes of additional information, and are not a required part of the consolidated financial statements.  Such information has been subjected to the auditing procedures applied in the audits of the consolidated financial statements and, in our opinion, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

July 21, 2009

1

HIGHLY CONFIDENTIAL

D-CNL000003

**Appx. 00901**

**Highland Capital Management, L.P.**
**Consolidated Balance Sheet**
**December 31, 2008**

*(in thousands of dollars)*

| | | |
|---|---|---:|
| **Assets** | | |
| Cash and cash equivalents | $ | 53,230 |
| Restricted cash | | 358,877 |
| Investments, at fair value (cost $5,457,411) | | 2,338,759 |
| Unrealized gains on derivative contracts, at fair value (proceeds $3,887) | | 8,974 |
| Equity method investees | | 4,977 |
| Management and incentive fees receivable | | 20,120 |
| Due from brokers | | 145,311 |
| Other assets | | 86,708 |
| Deferred incentive fees receivable | | 25,997 |
| Purchased investment management contracts | | 24,000 |
| Goodwill and other intangible assets, net | | 25,474 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $11,578 | | 131,555 |
| Total assets | $ | 3,223,982 |
| **Liabilities and Partners' Capital** | | |
| Liabilities | | |
| Accounts payable | $ | 18,498 |
| Securities sold, not yet purchased, at fair value (proceeds $60,094) | | 71,831 |
| Unrealized losses on derivative contracts at fair value (proceeds $3,319) | | 261,815 |
| Obligations to return capital | | 161,882 |
| Due to brokers | | 464,252 |
| Due to brokers for securities purchased not yet settled | | 181,938 |
| Accrued and other liabilities | | 191,880 |
| Secured borrowing | | 127,868 |
| Debt and notes payable | | 397,822 |
| Long-term incentive plan | | 6,945 |
| Total liabilities | | 1,884,731 |
| Minority interest | | 1,338,461 |
| Commitments (Note 13) | | |
| Partners' capital | | 790 |
| Total liabilities, minority interest and partners' capital | $ | 3,223,982 |

The accompanying notes are an integral part of these consolidated financial statements.

2

D-CNL000004

Appx. 00902

**Highland Capital Management, L.P.**
**Consolidated Statement of Income**
**Year Ended December 31, 2008**

*(in thousands of dollars)*

| | | |
|---|---:|---:|
| **Revenue** | | |
| Management fees | $ | 204,917 |
| Incentive fees/allocations | | 870 |
| Interest and investment income | | 424,322 |
| Other income | | 46,144 |
| Total revenue | | 676,253 |
| **Expenses** | | |
| Compensation and benefits | | 4,029 |
| Professional fees | | 40,475 |
| Investment and research consulting | | 2,384 |
| Amortization and depreciation | | 12,026 |
| Interest expense | | 144,244 |
| Net depreciation on deferred incentive fees | | 150,281 |
| Other expenses | | 87,150 |
| Total expenses | | 440,589 |
| Net income before investment transactions | | 235,664 |
| **Realized and unrealized loss from investment transactions** | | |
| Net realized loss | | (2,110,841) |
| Net change in unrealized loss | | (3,070,895) |
| Total realized and unrealized loss from investment transactions | | (5,181,736) |
| **Realized and unrealized loss from equity method investees** | | |
| Net realized loss from equity method investees | | (128,462) |
| Net unrealized loss from equity method investees | | (1,778) |
| Total realized and unrealized loss from equity method investees | | (130,240) |
| Net loss before minority interest in net income of consolidated entities | | (5,076,312) |
| Minority interest in net loss of consolidated entities | | 4,469,051 |
| Net loss | $ | (607,261) |

The accompanying notes are an integral part of these consolidated financial statements.

3

HIGHLY CONFIDENTIAL

D-CNL000005

**Appx. 00903**

**Highland Capital Management, L.P.**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2008**

| *(in thousands of dollars)* | General Partner | Limited Partners | Total |
|---|---|---|---|
| **Partners' capital at December 31, 2007** | $ 6,466 | $ 666,958 | $ 673,424 |
| Net loss | (5,416) | (601,845) | (607,261) |
| Partner distributions | (533) | (59,232) | (59,765) |
| Other comprehensive income (loss) | (50) | (5,558) | (5,608) |
| **Partners' capital at December 31, 2008** | $ 467 | $ 323 | $ 790 |

The accompanying notes are an integral part of these consolidated financial statements.

4

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2008**

*(in thousands of dollars)*

| | | |
|---|---:|---:|
| **Cash flows from operating activities** | | |
| Net loss | $ | (607,261) |
| Adjustment to reconcile net loss to cash and cash equivalents | | |
| provided by operating activities | | |
| Cash provided by operating activities: | | |
| Net realized loss on investments and derivative contracts | | 2,110,841 |
| Net unrealized loss on investments and derivative contracts | | 3,070,895 |
| Amortization of equity distributions on CLOs | | 54,586 |
| Net realized loss from equity method investees | | 128,462 |
| Net unrealized loss from equity method investees | | 1,778 |
| Minority interest in net loss of consolidated entities | | (4,469,051) |
| Depreciation and amortization | | 12,026 |
| Changes in assets and liabilities | | |
| Management and incentive fees receivable | | 210 |
| Deferred incentive fees | | 150,281 |
| Investment management contracts | | 5,662 |
| Other assets | | 118,535 |
| Due from brokers | | 1,970,423 |
| Accounts payable | | 11,521 |
| Accrued and other liabilities | | (100,327) |
| Due to brokers for unsettled trades | | (59,527) |
| Long-term incentive plan | | (38,111) |
| Obligations to return collateral | | 161,882 |
| Net cash provided by operating activities | | 2,522,825 |
| **Cash flows from investing activities** | | |
| Restricted cash | | 921,167 |
| Purchase of fixed assets and leasehold improvements, net | | 5,498 |
| Purchases of investments | | (8,624,670) |
| Proceeds from dispositions of investments | | 11,044,838 |
| Purchases of investments to cover securities sold, not yet purchased | | (12,920,295) |
| Proceeds from securities sold, not yet purchased | | 10,748,348 |
| Net cash provided by financing activities | | 1,174,886 |

The accompanying notes are an integral part of these consolidated financial statements.

5

# Highland Capital Management, L.P.
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2008**

*(in thousands of dollars)*

| | | |
|---|---|---:|
| **Cash flows from financing activities** | | |
| Payments on long-term debt | | (63,574) |
| Proceeds from revolving debt and promissory notes | | 115,649 |
| Proceeds from affiliate loans | | 48,448 |
| Net payments on secured borrowings | | (3,306,382) |
| Change in due to brokers | | (944,702) |
| Capital contributions from minority interest investors of consolidated entities | | 907,113 |
| Capital withdrawals from minority interest investors of consolidated entities | | (783,503) |
| Partner distributions | | (52,265) |
| Net cash used in financing activities | | (4,079,216) |
| Net decrease in cash and cash equivalents | | (381,506) |
| **Cash and cash equivalents** | | |
| Beginning of year | | 434,736 |
| End of year | $ | 53,230 |
| **Supplemental disclosure of cash flow information** | | |
| Interest paid during the year | $ | 65,035 |
| Non-cash distributions to partners | | 7,500 |

The accompanying notes are an integral part of these consolidated financial statements.

6

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**1.      Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment advisor under the Investment Advisors Act of 1940 that manages collateralized loan obligations ("CLOs"), registered investment companies ("RICs"), hedge funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity and other securities in the normal course of business.  The Partnership's general partner is Strand Advisors, Inc.  (the "General Partner").  The Partnership is 100% owned by senior management of the Partnership.

As of December 31, 2008, the Partnership provided investment advisory services in accordance with management agreements for thirty CLOs, sixteen RICs, one warehouse transaction, five separate accounts, one master limited partnership, and twelve hedge fund structures, with total assets under management of approximately $28.5 billion.

**2.      Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in the preparation of its financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America ("US GAAP") and are stated in United States dollars.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment of 50% or more and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership consolidates all VIEs for which it is considered to be the primary beneficiary, pursuant to Financial Accounting Standards Board ("FASB") Interpretation No. 46 (revised December 2003), *Consolidation of Variable Interest Entities — an interpretation of ARB No. 51, as revised* ("FIN 46R").  FIN 46R clarifies the consolidation guidance for entities in which the equity investors do not have the characteristics of a controlling financial interest or do not have sufficient equity at risk for the entity to finance activities without additional subordinated financial support from other parties.  These entities are defined as VIEs.  In general, FIN 46R requires an enterprise to consolidate a VIE when the enterprise holds a variable interest in the VIE and is deemed to be the primary beneficiary of the VIE.  An enterprise is the primary beneficiary if it absorbs a majority of the VIEs expected losses, receives a majority of the VIEs expected residual returns, or both.

The Partnership consolidates non-VIEs in which it as the general partner has control over significant operating, financial and investing decisions of the entity, pursuant to the Emerging Issues Task Force ("EITF") 04-5, *Whether a General Partner, or the General Partners as a Group, Controls a Limited Partnership or Similar Entity When the Limited Partners Have Certain Rights*.

7

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

*Consolidation of Non-Variable Interest Entities*
Under EITF 04-5, the Partnership consolidates the following non-VIEs (collectively referred to as the "Consolidated Investment Funds").  The Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations.  :

- Highland Crusader Offshore Partners, L.P. ("Crusader Master"), a Bermuda exempted limited partnership that commenced operations on July 10, 2000;

- Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund"), a Bermuda limited partnership that commenced operations on November 9, 2005;

- Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master"), a Bermuda exempted limited partnership that commenced operations on August 24, 2005;

- Highland Credit Opportunities CDO, L.P. ("Credit Opportunities Master"), a Delaware limited partnership that commenced operations on December 29, 2005;

- Highland Select Equity Fund, L.P. ("Select Equity Fund"), a Delaware limited partnership that commenced operations on January 1, 2002;

- Highland Equity Focus Fund, L.P. ("Equity Focus Fund"), a Delaware limited partnership that commenced operations on September 1, 2002;

- Highland Real Estate Fund 2002-A, L.P. ("Real Estate Fund"), a Delaware limited partnership that commenced operation on April 1, 2002;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Prospect Management Advisors, L.P. ("PMA"), a Delaware limited partnership that commenced operations on November 22, 2004 (not an investment fund);

- Canopy Timberlands, L.P., a Delaware limited partnership that commenced operations on April 29, 2008;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore") a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore") a Delaware limited partnership that commenced operations on September 2, 2008; and

- Highland Restoration Capital Partners Master, L.P. ("Restoration Master") a Delaware limited partnership that began commenced on September 2, 2008.

8

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

***Consolidation of Variable Interest Entities***
Under FIN 46R the Partnership consolidated the following VIEs as it is the primary beneficiary:

- Highland Financial Corporation ("HFC"), a company incorporated on February 28, 2006 under the laws of the state of Delaware;

- Highland Financial Real Estate Corporation ("HFREC"), a company incorporated on March 15, 2006 under the laws of the state of Maryland; and

- HCM Trident (Delaware) Corporation ("HCM Trident"), a company incorporated on July 3, 2007 under the laws of the state of Delaware.

***Consolidation of Majority Owned Entities***
The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Management Europe, Ltd. ("Highland Europe"), a company organized in the United Kingdom and purchased by the Partnership on April 6, 2005;

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in HFP GP, LLC, a Delaware limited liability company that commenced operations on January 20, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd, a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 87.5% interest in HySky Communications, LLC, a Delaware limited liability company that commenced operations on December 22, 2006; and

- 84.5% interest in HE Capital, LLC, a Delaware limited liability company that commenced operations on March 22, 2007.

All significant interpartnership and intercompany accounts and transactions have been eliminated in consolidation of all of the aforementioned consolidated entities.  All the Consolidated Investment Funds are, for US GAAP purposes, investment companies under the AICPA Audit and Accounting Guide - Investment Companies.  The Partnership has retained the specialized accounting of these funds pursuant to EITF No. 85-12 *Retention of Specialized Accounting for Investments in Consolidation.*

The Partnership and its majority owned entities have a 29.3% interest in an affiliate, Highland Financial Partners, L.P. ("HFP"), which is considered a VIE.  The Partnership and its consolidated entities have a 48.11% interest in HFP.  The Partnership is not the primary beneficiary, and the financial results for HFP have not been consolidated, but have been accounted for using the equity method of accounting whereby it records its share of the underlying income or loss of HFP.

**Investment Transactions**
Investment transactions are recorded on a trade date basis.  Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

9

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Fair Value Measurement**

Effective January 1, 2008, the Partnership and its consolidated entities adopted the provisions of Statement of Financial Accounting Standards ("SFAS") No. 157, *Fair Value Measurements*, for the financial assets and liabilities recorded at fair value on the Consolidated Statement of Assets, Liabilities and Partners' Capital.

SFAS No. 157 defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Investment Funds have the ability to access as of the measurement date. Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on models in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction. When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs. For certain instruments, the inputs used to measure the fair value may fall into different levels of the hierarchy discussed above. In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Investment Funds use prices and inputs that are current as of the measurement dates. The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being re-classified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates.

Whenever possible, the Partnership and its Consolidated Investment Funds use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities. In cases where observable inputs are not available, the Partnership and Consolidated Investment Funds develop methodologies that provide appropriate fair value estimates. These methodologies are reviewed on a continuous basis to account for changing market conditions.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

As of December 31, 2008, the Partnership and its consolidated entities investments consisted of floating rate syndicated bank loans, high yield corporate bonds, CLO securities, private placements, private placement real estate debt and equity, life settlement contracts and common and preferred equity securities.  In addition, the consolidated entities are parties to various credit default swaps.  The majority of these financial instruments are not listed on national securities exchanges, and management is required to use significant judgment to estimate their values.

The fair value of the loans, corporate bonds and CLO securities are generally based on quotes received from brokers or independent pricing services.  Due to the recent disruption in the credit markets, an increasing number of these quotes are derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades.  The policy of the Partnership and its consolidated subsidiaries is to classify loans and bonds that are prices in this manner as Level 3 assets because the markets in which they trade are not active and the inputs used by the brokers and pricing services are not readily observable.  Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

The consolidated entities private placement real estate investments include equity interests in limited liability companies and debt issued by entities that invest in commercial real estate.  The fair value of these investments is based on internal models developed by the Partnership.  The significant inputs to the models include cash flow projections for the underlying properties and appraisals performed by independent valuation firms.  Since these inputs are no readily observable, the investments are classified as Level 3 assets.

Common and preferred equity securities traded on national exchanges are valued at their closing prices as of December 31, 2008.  These securities are classified as Level 1 assets.  The consolidated entities also hold certain equity securities for which no active market exists.  The value of these securities, which are classified as Level 3 assets, is based on a combination of broker quotes and internal valuation models.

Life settlement contracts are valued using mortality tables and interest rate assumptions that are deemed appropriate for the demographic characteristics of the parties insured under the policies.  Since these inputs are not readily observable, they are classified as Level 3 assets.

The fair value of credit default swaps is based on quotes received from an independent pricing service.  The inputs used to derive the quotes are not readily observable and are therefore classified as Level 3.

Refer to Note 5 for the disclosures required by SFAS No. 157.

**Management and Incentive Fee/Allocation Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements.  Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value.  The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages.  During the year ended December 31, 2008, the Partnership and its consolidated entities recognized management and incentive fees and incentive allocations of approximately $204.9 million, and $0.9 million, respectively.  The Partnership recognized approximately $150.3 million of depreciation on incentive fees previously deferred under Sec. 409(A) of the Internal Revenue Code.  This has been presented in *Net depreciation on deferred incentive fees* in the consolidated statement of income.

11

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Dividends, Interest and Expense Recognition**
Dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. Operating expenses, including interest on securities sold short, not yet purchased are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes, which have been recognized in accordance with SFAS No. 109, *Accounting for Income Taxes*.

Certain entities that are included in these financial statements are subject to federal and/or state income taxes. The stated objectives of SFAS No. 109 are to recognize (a) the amount of taxes payable or refundable for the current year and (b) deferred tax liabilities and assets for the future tax consequences of events that have been recognized in financial statements or filed tax returns. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. The following subsidiaries are subject to these provisions: Highland Europe, HFC and HFREC. Deferred tax assets of approximately $0.2 million are presented in *Other assets* in the consolidated balance sheet. Federal, state and city taxes for the Partnership and its consolidated corporate subsidiaries of approximately $20,000 are presented in *Other expense* in the consolidated statement of income.

The Consolidated Investments Funds are not subject to federal income taxes and therefore no provision has been made in the accompanying consolidated financial statements.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Foreign cash of $1.8 million is included in the cash and cash equivalents on the consolidated balance sheet.

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions. These amounts are reported as restricted cash.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

**Total Return Swaps**
A total return swap agreement is a two-party contract under which an agreement is made to exchange returns from predetermined investments or instruments. The gross returns to be exchanged or "swapped" between the parties are calculated based on a "notional amount," which is valued monthly according to the valuation policy mentioned above to determine each party's obligation under the contract.

12

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

Risks could arise from entering into swap agreements from the potential inability of counterparties to meet the terms of their contracts, and from the potential inability to enter into a closing contract. The Partnership's Consolidated Investment Funds recognize all cash flows received (paid) or receivable (payable) from swap transactions on a net basis as realized or unrealized gains or losses in the consolidated statement of income. The Partnership and the Consolidated Investment Funds are charged a finance cost by counterparties with respect to each agreement. The finance cost is reported as part of the realized or unrealized gains or losses.

**Credit Default Swaps**
As discussed in Note 7, under a credit default swap agreement two parties agree to transfer the credit exposure of an asset between one another. The seller of the swap guarantees the credit worthiness of a specific instrument by agreeing to pay the buying party a specific amount (generally par value) in the event that the instrument defaults.

At December 31, 2008, the Partnership's Consolidated Investment Funds were party to multiple credit default swaps in which it acts as the guaranteeing party. In the event that any of the underlying instruments default prior to the expiration of the agreements, the Consolidated Investment Funds are obligated to pay the swap counterparty the par value of the specific instrument. The Consolidated Investment Funds collect a fee based on the size of the underlying positions which are treated as realized gains once received. The difference between the current market value of the swaps and the original price of the swap is reported as an unrealized gain or loss.

At December 31, 2008, the Partnership's Consolidated Investment Funds were party to several credit default swaps in which it was the guaranteed party. In the event that any of the instruments underlying the various swap agreements default before the swap agreement expires, the Partnership and the Consolidated Investment Funds will be made whole by the swap counterparty. The Partnership and the Consolidated Investment Funds treat the fees paid as a realized loss once paid. The difference between the current market value of the swaps and the original price of the swap is reported as an unrealized gain or loss.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand. Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash or securities. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender.

**Securities Loaned**
The Partnership's Consolidated Investment Funds may lend securities to their financing counterparties for margin. The lending entity receives the interest associated with the securities loaned. The loans are secured by the fair value of the securities. Gains or losses in the fair value of the securities loaned that occur during the term of the loan will be for the account of the lender. The lender has the right under the lending agreement to recover the securities from the prime brokers on demand. The lender pays a fee to the broker for the cash collateral received. This is accounted for as interest expense. A credit risk exists to the lender under this type of transaction to the extent that the counterparty defaults on its obligation to return the securities loaned.

13

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Options**
The Partnership's Consolidated Investment Funds purchase and sell call and put options on equity securities and equity indices as part of its overall portfolio management strategies. Purchased call or put options may be used to obtain economic exposure equivalent to a long or short position, respectively, or to hedge existing or anticipates portfolio positions. Certain options contracts are index options, under which amounts due or payable upon exercise are settled entirely in cash based on the difference between the value of the index at maturity and its contract (or strike) value. The potential risk of loss for purchased options is limited to the premium paid.

The premium paid for the purchase of an option is included in the consolidated balance sheet as an investment and subsequently marked-to-market to reflect the current value of the option. If an option expires on the stipulated expiration date, the Consolidated Investment Funds realize a loss equal to the cost of the option. If the Consolidated Investment Funds enter into a closing sale transaction, the Consolidated Investment Funds realize a gain or loss, depending on whether the proceeds from the closing sale transaction are greater or less than the cost of the option. If the Consolidated Investment Funds exercise a call option, the cost of the securities acquired upon exercise is increased by the premium paid to buy the call. If the Consolidated Investment Funds exercise a put option, it realizes a gain or loss from the sale of the underlying security and the proceeds from such sale are decreased by the premium originally paid.

**Margin Transactions**
In order to obtain more investable cash, the Partnership and its subsidiaries may use various forms of leverage including purchasing securities on margin. Such leverage may allow the Partnership and its subsidiaries to increase net assets at a greater rate during increasing markets, but also may lead to a more rapid decrease in net assets in a declining market. A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable. This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2008. Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. Withdrawals payable may be treated as capital for purposes of allocations of gains/losses pursuant to the partnerships' governing documents. At December 31, 2008, the Partnership and its consolidated entities had withdrawals payable of $16,825. Refer to Note 16.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with US GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements. Actual results could differ from those estimates.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Foreign Currency Transactions**

The Partnership's subsidiary Highland Europe uses British Pounds as its functional currency and enters into transactions in multiple foreign currencies. All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2008. Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period. Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the consolidated statement of income.

The Consolidated Investment Funds do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held. Such fluctuations are included within the Net realized and unrealized gains or loss from investments.

**Financial Instruments**

The Partnership and its consolidated entities determine fair value of financial instruments as required by SFAS No. 107, *Disclosures About Fair Values of Financial Instruments*. The carrying amounts for cash and cash equivalents, receivables, accounts payable and accrued liabilities approximate their fair values because of their short maturities.

**Derivative Financial Instruments**

During 2008, the Partnership was a party to a total return swap agreement. In addition, the Partnership engaged in purchases and sales (including "short sales") of exchange traded commodities and the short sale of subprime backed collateralized mortgage obligations through a purchase of a credit default swap. The Partnership has not designated any derivative transactions as accounting hedges, and, consequently, has not applied hedge accounting treatment under SFAS No. 133, *Accounting for Derivative Instruments and Hedging Activities*, as amended and interpreted.

As discussed in more detail in Note 6, all realized gains or losses related to the Partnership's total return swap, credit default swap and commodity purchases and sales are recorded in *Net realized loss on investment transactions*. The cash flows associated with derivative transactions are classified as investing in the consolidated statement of cash flows.

As of December 31, 2008, the Partnership was not a party to a derivative transaction.

**Life Settlement Contracts**

Two of the Partnership's Consolidated Investment Funds invest in life settlement contracts (the "Policies") and account for them using the fair value method in accordance with FASB Staff Position FTB85-4-1, *Accounting for Life Settlement Contracts by Third-Party Investors*. The Policies are reflected as a component of "Investments, at fair value" in the Consolidated Statement of Assets, Liabilities and Partners' capital. Realized and unrealized gains (losses) on the Policies are reflected in the Consolidated Statement of Income. Cash flows used to purchase the Policies are reflected as a component of "Purchases of Investments" in the Consolidated Statement of Cash Flows.

The Consolidated Investment Funds were invested in 138 Policies at December 31, 2008 with a total face value of approximately $1,216 million.

**Partners' Capital**

The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

15

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Goodwill and Other Intangible Assets**

The Partnership purchased Highland Europe on April 6, 2005. Goodwill represents the amount paid in excess of the fair value of the assets of Highland Europe at the date of acquisition. No goodwill impairments existed as of December 31, 2008.

The Partnership has obtained the rights to the management contracts of certain RICs it manages by acquiring the underlying contracts from the predecessor investment manager. In accordance with SFAS No. 142, *Goodwill and Other Intangible Assets,* the Partnership performs an impairment test on the purchased investment contracts on an annual basis. Any depreciation in the value of the purchased investment management contracts are accounted for in the year when it occurs. The carrying values of the purchased investment contracts are not adjusted for appreciation. During 2008, two RICs were reorganized into a fund managed by the Partnership. As more fully described in Note 15, the carrying value of these purchased management contracts were written off at that time. For the remaining contracts, there was no impairment.

The goodwill and purchased investment management contracts are indefinite-lived assets and are not amortized.

During 2007, the underlying companies consolidated by HFREC purchased rental property (the "Project"). The Projects' purchase prices were allocated to the fair value of tangible and intangible assets and liabilities acquired with the purchases. Lease intangibles represent the measurement of certain intangibles associated with operating leases.

The lease intangible components are the estimated values of 1) leasing commissions (prepaid origination costs), 2) in-place leases, and 3) tenant/customer relationships. Leasing commissions and in-place leases represent the value associated with "cost avoidance" of acquiring in-place leases and are computed as the estimated loss of revenue, net of costs incurred for the period required to lease the "assumed vacant" property to the occupancy level when purchased. These amounts are amortized using the straight-line method over the remaining term of the lease of 2.5 years and are included in depreciation and amortization. Tenant relationships represent the present value of the anticipated renewals of in-place leases, adjusted for the probability of the renewals. The value of tenant relationships is amortized using the straight-line method over the average renewal term of the lease of 7 years and is included in depreciation and amortization. Refer to Note 15.

**Recently Issued Accounting Standards & Interpretations**

In September 2008, the Financial Accounting Standards Board ("FASB") issued FSP FAS 133-1 and FIN 45-4, *Disclosures about Credit Derivatives and Certain Guarantees: An Amendment of FASB Statement No. 133 and FASB Interpretation No. 45; and Clarification of the Effective Date of FASB Statement No. 161.* FSP FAS 133-1 and FIN 45-4 requires enhanced disclosures about credit derivatives and guarantees and amends FIN 45, *Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others* to exclude derivatives instruments accounted for at fair value under SFAS 133. The Consolidated Investment Funds adopted FSP FAS 133-1 and FIN 45-4 as of December 31, 2008. Since FSP FAS 133-1 and FIN 45-4 only requires additional disclosures concerning credit derivatives and guarantees, it did not have any effect on the Consolidated Investment Fund's financial position, results of operations or cash flows. Refer to Note 7 for the disclosures required by FSP FAS 133-1 and FIN 45-4.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

In December 2008, the FASB issued FIN 48-3, Effective Date of FASB Interpretation No. 48 for Certain Nonpublic Enterprises ("FSP 48-3"), which deferred the effective date of FASB Interpretation No. 48, Accounting for Uncertainty in Income Taxes, an Interpretation of FASB Statement No. 109 ("FIN 48"). Under FSP 48-3, in the absence of early adoption, FIN 48 will become effective for the Partnership and its Consolidated Investment Funds at December 31, 2009. Management has elected to take advantage of the deferral and will continue to accrue for liabilities relating to uncertain tax positions only when such liabilities are probably and estimable. Based on its continued analysis, management has determined that adoption of FIN 48 will not have a material impact to the financial statements. However, management's conclusions regarding FIN 48 may be subject to review and adjustment at a later date based on ongoing analyses of tax laws, regulation and interpretations thereof and other factors.

FIN 48 requires management to determine whether a tax position is more likely than not to be sustained upon examination by the applicable taxing authority, including resolution of any related appeals or litigation processes, based on the technical merits of the position. The tax benefit to be recognized is measured as the largest amount of benefit that is greater than 50% likely of being realized upon ultimate settlement which could result in recording a tax liability that would reduce partners' capital. FIN 48 must be applied to all existing tax positions upon initial adoption and the cumulative effect, if any, is to be reported as an adjustment to the beginning balance of partners' capital upon adoption.

In February 2007, the FASB released SFAS No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities — Including an amendment of FASB Statement No. 115*, or SFAS 159. This statement permits entities to choose to measure many financial instruments and certain other items at fair value. SFAS 159 may be adopted and the fair value option may be elected in the first quarter of 2008. The Partnership has elected to adopt this statement and evaluates securities on an instrument by instrument basis.

In December 2007, the FASB issued SFAS No. 160, *Accounting for Non-controlling Interests*, or SFAS 160. SFAS 160 clarifies the classification of minority interests in the consolidated balance sheet and statement of income. This Statement is effective for fiscal years beginning on or after December 15, 2008. Under SFAS 160, the ownership of consolidated subsidiaries by other consolidated subsidiaries will be presented separately in the equity section of the consolidated balance sheet. Also, upon the deconsolidation of any subsidiary, the retained equity investment will be measured at fair value. The Partnership has not yet determined the impact, if any, that the implementation of SFAS No. 157 would have on our consolidated results of operations or financial condition.

In December 2007, the Financial Accounting Standards Board ("FASB") issued Statement of Financial Accounting Standards ("SFAS") No. 141 (revised 2007), *Business Combinations* ("SFAS 141(R)"). SFAS 141(R) requires assets acquired, liabilities assumed, contractual contingencies and contingent consideration to be measured at their fair values at the acquisition date. In addition, SFAS 141(R) requires subsequent adjustments to any acquisition-related tax reserves to be recognized in net income rather than as an adjustment to the purchase price. SFAS 141(R) is effective for business combinations completed in periods beginning on or after December 15, 2008. The Partnership has not yet determined the impact, if any, that the implementation of SFAS No. 157 would have on our consolidated results of operations or financial condition.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

In October 2008, the Financial Accounting Standards Board ("FASB") issued Staff Position 157-3, *Determining the Fair Value of a Financial Asset in a Market That Is Not Active,* ("FSP 157-3") which clarifies the application of SFAS No. 157, *Fair Value Measurements,* ("SFAS 157") in an inactive market and provides an illustrative example to demonstrate how the fair value of a financial asset is determined when the market for that financial asset is not active.  The guidance provided by FSP 157-3 is consistent with the Partnership and its consolidated entities' approach to valuing financial assets for which there are no active markets.

3.      **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2008:

*(in thousands of dollars)*

| | | |
|---|---|---:|
| Buildings | $ | 100,536 |
| Land | | 25,168 |
| Leasehold improvements | | 4,907 |
| Computer and equipment | | 3,917 |
| Furniture and fixtures | | 2,911 |
| Computer software | | 2,423 |
| Tenant improvements | | 2,285 |
| Site improvements | | 986 |
| Accumulated depreciation | | (11,578) |
| | $ | 131,555 |

The Partnership and its consolidated entities are depreciating fixed assets as follows:

| | **Period** |
|---|---:|
| Buildings | 29 - 40 years |
| Leasehold improvements | Lease term |
| Computer and equipment | 5 years |
| Furniture and fixtures | 7 years |
| Computer software | 3 years |
| Site improvements | 10 years |
| Tenant improvements | Shorter of lease term or estimated life of tenant improvement |

Depreciation expense in 2008 totaled approximately $6.1 million for the Partnership and its subsidiaries.

The Partnership and its consolidated entities had approximately $5.5 million of capital expenditures in 2008.

HIGHLY CONFIDENTIAL

D-CNL000020

Appx. 00918

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

4.    **Investments**

Detailed below is a summary of the Partnership and its subsidiaries' investments at December 31, 2008:

| (in thousands) | Amortized Cost/Cost | | Value | |
|---|---|---|---|---|
| Investments in floating rate syndicated bank loans | $ | 489,400 | $ | 206,847 |
| Investments in fixed rate syndicated bank loans | | 88,749 | | 62,918 |
| Investments in fixed income securities | | 1,432,684 | | 435,497 |
| Investments in floating income investments | | 315,363 | | 84,335 |
| Investments in equity securities | | 1,583,804 | | 770,028 |
| Investments in life settlement contracts | | 247,668 | | 200,386 |
| Investments in CLOs (mezz tranches) | | 254,453 | | 84,214 |
| Investments in CLOs (residual CLO equity tranches) | | 470,421 | | 70,700 |
| Investments in closed-end mutual funds | | 26,253 | | 9,244 |
| Investments in private placement real estate | | 439,095 | | 282,428 |
| Investments in limited partnerships | | 121,433 | | 130,077 |
| Investments in warrants | | 6,088 | | 2,085 |
| Total investments | $ | 5,475,411 | $ | 2,338,759 |
| Total return swaps | $ | - | $ | (96,228) |
| Credit default swaps | | (7,206) | | (156,613) |
| Net unrealized gain/loss on swaps | $ | (7,206) | $ | (252,841) |

| | Proceeds | | Value | |
|---|---|---|---|---|
| Securities sold short, not yet purchased | $ | 60,094 | $ | 71,831 |

**Affiliated Investments**
***Investments in Residual CLO Equity and Mezzanine Tranches***
Investments in affiliated residual CLO equity tranches primarily represent tranches of CLOs for which the Partnership and Highland Europe provide investment advisory services. The CDO Master Fund receives quarterly distributions based on the excess interest after paying the stated interest distributions to the senior and mezzanine note holders, and paying the investment manager, trustee and other related fees. A portion of these distributions are amortized against the cost basis of the investment based of the actual cash distributions received during the year versus the total expected remaining cash distributions to the residual CLO equity tranche. The remainder of the distribution is recorded as interest income.

Investments in residual equity and mezzanine tranches of CLOs are not actively traded. The estimated fair value of the CLOs is derived from broker quotes and valuation models. The estimated fair value of these investments as presented in the consolidated balance sheet does not necessarily represent the amount that could be obtained from the sale of these investments. Changes in the credit quality or the performance of the underlying collateral, the availability and price of assets available for reinvestment, interest rates and/or the interest rate curve, or other market conditions could have a material impact on the estimated fair value of the investments.

19

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

*Investment in Highland Special Situations Fund*
The Partnership invests in Highland Special Situations Fund ("HSSF"), a diversified, closed end RIC for which the Partnership provides investment advisory services. As of December 31, 2008, the market value of the Partnership's investment in HSSF was approximately $2.1 million. During the year ended December 31, 2008, the Partnership accrued approximately $0.3 million in dividends from HSSF.

*Investment in Highland Equity Opportunities Fund*
The Partnership invests in Highland Equity Opportunities Fund ("HEOF"), a diversified, open end RIC for which the Partnership provides investment advisory services. As of December 31, 2008, the market value of the Partnership's investment in HEOF was approximately $0.2 million. During the year ended December 31, 2008, the Partnership received approximately $152 in dividends from HEOF, which the Partnership reinvested in the fund.

*Investment in Highland Distressed Opportunities, Inc.*
The Partnership invests in Highland Distressed Opportunities, Inc. ("HCD"), a non-diversified, closed-end RIC for which the Partnership provides investment advisory services. As of December 31, 2008, the market value of the Partnership's investment in HCD was approximately $2.1 million. During the year ended December 31, 2008, the Partnership received approximately $0.1 million in dividends from HCD, which the Partnership reinvested in the fund.

*Investment in Highland High Income Fund*
The Partnership invests in Highland High Income Fund. ("HHIF"), a non-diversified, closed-end RIC for which the Partnership provides investment advisory services. As of December 31, 2008, the market value of the Partnership's investment in HHIF was approximately $0.2 million. During the year ended December 31, 2008, the Partnership received approximately $0.3 million in dividends from HHIF, which the Partnership reinvested in the fund.

*Investment in Highland Income Fund*
The Partnership invests in Highland Income Fund ("HIF"), a non-diversified, open-end RIC for which the Partnership provides investment advisory services. As of December 31, 2008, the market value of the Partnership's investment in HIF was approximately $0.3 million. During the year ended December 31, 2008, the Partnership received approximately $0.3 million in dividends from HIF, which the Partnership reinvested in the fund.

*Prepaid Forward Contract*
On July 28, 2006, Highland Multi-Strategy Onshore Master Subfund I, LLC and Barclays Bank PLC ("Barclays") entered into a prepaid forward contract. The Partnership and affiliates redeemed approximately $312.7 million of a reference portfolio, which was comprised of the following basket of funds advised by the Partnership: Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund and Select Equity Fund. Barclays simultaneously contributed approximately $312.7 million as a hedge to its obligation under the prepaid forward contract.

Barclays was prepaid approximately $156.3 million, or one-half of the reference portfolio value at initiation of the transaction. A notional amount, (the initial reference portfolio value less the amount prepaid), accretes interest to Barclays at monthly LIBOR plus 0.90% per annum. As of December 31, 2008, the notional amount was approximately $184.3 million.

A collateral account in the amount of approximately $53.2 million was established to further secure the transaction. Due to extreme market volatility, all of the underlying holdings in the collateral account were sold during 2008.

20

D-CNL000022

**Appx. 00920**

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

The term of the prepaid forward contract is three years and allows for net settlement upon termination. At contract expiration, Barclays will remit in cash the greater of the difference between the reference portfolio value and the notional amount, as valued on the scheduled termination date, or zero. As of December 31, 2008, the contract did not have a positive net fair value.

Detailed below is a summary of the transaction as of December 31, 2008:

*(in thousands of dollars)*

| Reference Portfolio | Value |
|---|---:|
| Real Estate Fund | $ 46,265 |
| Highland Crusader Fund, L.P. | 30,483 |
| Select Equity Fund | 15,337 |
| Equity Focus Fund | 8,451 |
| Highland Credit Opportunities CDO, L.P. | 295 |
| Highland CDO Opportunity Fund, Ltd. | - |
| Highland Credit Strategies Fund, L.P. | - |
| Reference portfolio total | 100,831 |
| Notional amount | (184,272) |
| Fair value of prepaid forward contract | $ (83,441) |

On October 7, 2008, Barclays submitted a notice of early termination for the prepaid forward contract. Refer to Note 17 for further discussion.

***Accreting Strike Option***
On February 28, 2007, Highland Multi-Strategy Onshore Master Subfund II, LLC entered into an Accreting Strike Option ("ASO") with Barclays. The ASO's value is based on the following basket of funds ("the reference portfolio") advised by the Partnership: Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund, Select Equity Fund and Credit Opportunities Domestic Feeder. The value of the reference portfolio at inception was approximately $250.2 million

Barclays was paid a $71.4 million premium on the option. The strike price, (the initial reference portfolio value less the premium paid), accretes interest to Barclays at monthly LIBOR plus 1.4% per annum. As of December 31, 2008, the strike price was approximately $176.4 million.

The term of the accreting strike option is five years and allows for net settlement upon termination. At contract expiration, Barclays will remit in cash the greater of the difference between the reference portfolio value and the strike price, as valued on the scheduled termination date, or zero. As of December 31, 2008, the ASO did not have a positive net fair value.

21

D-CNL000023

**Appx. 00921**

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

Detailed below is a summary of the transaction as of December 31, 2008:

*(in thousands of dollars)*

| Reference Portfolio | | Value |
|---|---|---:|
| Select Equity Fund | $ | 93,228 |
| Real Estate Fund | | 20,687 |
| Highland Crusader Fund, L.P. | | 11,040 |
| Equity Focus Fund | | 5,749 |
| Highland Credit Opportunities CDO, L.P. | | 365 |
| Highland CDO Opportunity Fund, Ltd. | | - |
| Highland Credit Strategies Fund, L.P. | | - |
| Reference portfolio total | | 131,069 |
| Notional amount | | (176,400) |
| Fair value of prepaid forward contract | $ | (45,331) |

On October 13, 2008, Barclays served notice of early termination for the accreting strike option. Refer to Note 17 for further discussion.

***Investment in Highland Financial Partners, L.P. ("HFP")***
The Partnership invests in HFP, a holding company organized to provide investors with the earnings of its leveraged credit subsidiaries. As of December 31, 2008, the Partnership's equity investment in HFP had no value and was permanently impaired. The Partnership recognized a $74.7 million realized loss in Net realized loss from equity method investees.

On October 20, 2008, the Partnership received an HFP senior secured note in the amount of $22.3 million from CDO Master Fund. The note was transferred to the Partnership to satisfy a prior obligation. The note accrues interest at a rate of 10% per annum, payable quarterly. As of December 31, 2008, the fair value of the note was approximately $7.4 million.

***Investment in Highland Capital Special Allocation, LLC***
The Partnership is the sole owner of HCSA, which was organized to receive management incentive allocations from HFP. During 2008, HCSA did not receive an incentive allocation. As of December 31, 2008, the Partnership's investment in HCSA had no value and was permanently impaired. The Partnership recognized a $53.8 million realized loss in Net realized loss from equity method investees.

**5.    Fair Value of Financial Instruments**

As discussed in Note 2, the Partnership and its consolidated entities categorize investments recorded at fair value in accordance with the hierarchy established by SFAS No. 157.

HIGHLY CONFIDENTIAL

D-CNL000024

**Appx. 00922**

**Highland Capital Management, L.P.**
Notes to Consolidated Financial Statements
December 31, 2008

The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2008:

| *(in thousands of dollars)* | Level 1 | Level 2 | Level 3 | Total Fair Value at December 31, 2008 |
|---|---|---|---|---|
| Investments | $    221,571 | $    43,837 | $  2,073,351 | $  2,338,759 |
| Derivatives | - | - | (252,841) | (252,841) |
| Securities sold, not yet purchased | 71,831 | - | - | 71,831 |

The following table provides a roll forward of the financial instruments classified within Level 3 for the year ended December 31, 2008.  The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement.

**Fair Value Measurements Using Significant Unobservable Inputs**

| *(in thousands of dollars)* | Investments | Derivatives |
|---|---|---|
| Estimated fair values as of January 1, 2008 | $    5,740,260 | $    78,060 |
| Purchases, sales and maturities, net | (788,142) | 51,512 |
| Net transfers in/(out) of Level 3 | 10,959 | - |
| Net realized (losses)/gains | (1,014,179) | (181,345) |
| Net unrealized losses | (1,875,546) | (201,068) |
| Estimated fair values as of December 31, 2008 | $    2,073,352 | $    (252,841) |

6.    **Derivative Transactions**

In June 2008, the Partnership terminated a total return swap ("TRS") and began the process of selling the underlying assets in the TRS.  The Partnership recognized a $7.8 million loss on the sale of the underlying assets in the TRS.  The loss and net settlement interest are recorded in Net realized loss on investment transactions in the Consolidated Statement of Income.  As of December 31, 2008, all of the assets in the TRS had been sold; however, there were certain assets that remained unsettled.  As of December 31, 2008, approximately $2.5 million in collateral posted was owed to the Partnership for these unsettled trades.  This amount is recorded in Due from broker.

During the first quarter of 2008, the Partnership held short positions in exchange traded commodities and realized a loss of $16.7 million from these transactions.  This activity is recorded in Net realized loss on investment transactions.

23

D-CNL000025

Appx. 00923

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

During the first quarter of 2008, the Partnership participated in a credit-default swap ("CDS") through one of the Partnership's Consolidated Investment Funds.  The underlying assets in the CDS were subprime mortgage backed securities.  In this transaction, the Partnership was a purchaser of protection against the lack of future cash flows from these securities.  The Partnership realized a gain of $74.5 million from the sale of the CDS, which is recorded in Net realized loss on investment transactions.  The Partnership's premium recognized for the transaction in 2008 was $0.9 million.  The premiums are recorded in Net realized loss on investment transactions.

**7.    Total Return Swaps**

Detailed below is an analysis of the total return swap balances of the Consolidated Investment Funds at December 31, 2008:

| (in thousands of dollars) | | Value |
|---|---|---:|
| Collateral included in "Restricted cash" | $ | 196,409 |
| Notional value of underlying investments | $ | 231,586 |
| Fair value of underlying investments | | 101,588 |
| Unrealized depreciation of underlying investments included in "Unrealized losses on derivatives contracts" | $ | (117,046) |

**8.    Credit Default Swaps**

The Consolidated Investment Funds enter into credit default swaps to simulate long and short bond positions that are either unavailable or considered to be less attractively priced in the bond market.  The Consolidated Investment Funds use these swaps to reduce risk where they have exposure to the issuer, or to take an active long or short position with respect to the likelihood of an event of default.

The buyer of a credit default swap is generally obligated to pay the seller a periodic stream of payments over the term of the contract in return for a contingent payment upon the occurrence of a credit event with respect to an underlying reference obligation.  A credit event for corporate reference obligations includes bankruptcy, failure to pay, obligation acceleration, repudiation/moratorium or restructuring.  If a credit event occurs, the seller must pay the contingent payment to the buyer, which is typically the par value (full notional value) of the reference obligation, though the actual payment may be mitigated by terms of the International Swaps and Derivative Agreement ("ISDA"), allowing for netting arrangements and collateral.  In addition, the payment may be reduced by anticipated recovery rates, segregated collateral and netting arrangements that may incorporate multiple transactions with a given counterparty.

The seller of credit default swaps receives a fixed rate of income throughout the term of the contract, which typically is between one month and five years, provided that no credit event occurs. If a credit event occurs, the seller may be required to pay the buyer the full notional value of the reference obligation.

HIGHLY CONFIDENTIAL

D-CNL000026

**Appx. 00924**

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

As of December 31, 2008, the Consolidated Investment Funds were the buyers of credit default swaps ("receiving protection") on a total notional amount of $72.5 million and the sellers of credit default swaps ("providing protection") on a total notional amount of $387.1 million. The notional amount of the swaps is not recorded in the financial statements; however it approximates the maximum potential amount of future payments that the Consolidated Investment Funds could be required to make if they are the seller of protection and a credit event were to occur.

Those credit default swaps for which the Partnership provided protection at December 31, 2008 are summarized in the tables below. The reference obligations for all of these swaps are single issuers.

| *(in thousands of dollars)* | Underlying Referenced Asset | | |
|---|---|---|---|
| | Corporate Debt | Collateralized Loan Obligation Securities | Total |
| Fair value of credit default swaps | $ (109,184) | $ (48,875) | $ (158,059) |
| Maximum potential amount of future payme | 328,110 | 59,000 | 387,110 |
| Collateral posted with counterparties by the consolidated investment funds | 152,787 | 18,563 | 171,350 |

| *(in thousands of dollars)* | Maximum Potential Amount of Future Payments by Contract Term | | | |
|---|---|---|---|---|
| Current Credit Rating* on Underlying Bond | 1-5 Years | 5-10 Years | Greater than 10 Years | Total |
| BBB | $ (213,110) | $ - | $ (20,000) | $ (233,110) |
| BB | (40,000) | - | (24,000) | (64,000) |
| BB- | (10,000) | (15,000) | (5,000) | (30,000) |
| B+ | (10,000) | - | - | (10,000) |
| B- | (20,000) | - | - | (20,000) |
| CCC+ | (15,000) | - | - | (15,000) |
| CCC- | (15,000) | - | - | (15,000) |
| | $ (323,110) | $ (15,000) | $ (49,000) | $ (387,110) |

The fair value of the credit default swaps for which the Consolidated Investment Funds purchased protection at December 31, 2008 was approximately $5.5 million.

25

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2008**

9.   **Debt and Notes Payable**

Consolidated debt and notes payable as of December 31, 2008 consists of:

| (in thousands of dollars) | December 31, 2008 |
|---|---|
| Partnership revolving credit facility | $     150,000 |
| Credit Opportunities Master note payable | 116,590 |
| HFREC notes payable | 98,482 |
| Real Estate Fund revolving credit facility | 20,000 |
| HCM Trident | 11,875 |
| Partnership promissory note | 875 |
| | $     397,822 |

**Revolving Credit Facilities**

On January 26, 2007, the Partnership entered into a syndicated credit agreement with Bank of America as syndication agent and The Bank of Nova Scotia as administrative agent in the amount of $60 million (the "Credit Agreement"). The Credit Agreement provides for revolving loans which are scheduled to mature on June 30, 2009, or March 26, 2010 if certain derivative transactions are extended by the Partnership.

Interest is payable on the last day of each loan, or if the loan is greater than three months, then interest is payable in three month increments. The applicable spread for LIBOR loans under the Credit Agreement is LIBOR plus 1.75% per annum. For base rate loans, the spread is 0.50% per annum over the prevailing prime rate.

Under the terms of the Credit Agreement, the availability of credit was subject to financial covenants requiring the Partnership to maintain a minimum amount of fee earning assets under management, a minimum tangible net worth, and a maximum leverage ratio.

On March 20, 2007, the Credit Agreement was amended and restated, increasing the availability under the facility to $150 million and increasing the lender group to include five other banks. On November 2, 2007, the Credit Agreement was amended a second time to allow the Partnership to maintain certain insurance policies through an affiliate.

On December 19, 2008, the Partnership was notified by the Bank of Nova Scotia of an event of default under the terms of the Credit Agreement. The default was related to a failure to maintain a minimum tangible net worth. As a result, on December 24, 2008, the spread over LIBOR for LIBOR loans not maturing before December 31, 2008 increased to 3.75% per annum. On December 30, 2008, all LIBOR loans not maturing before December 31, 2008 were converted to base rate loans, with the applicable spread being 2.5% per annum. All other outstanding LIBOR borrowings with maturities prior to December 31, 2008 were financed at the applicable base rate. The note was subsequently refinanced in July 2009, see note 18.

The fair value of the facility as of December 31, 2008 was approximately $126.3 million.

HIGHLY CONFIDENTIAL

D-CNL000028

**Appx. 00926**

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

In 2005, the CDO Master Fund entered into a credit agreement in the amount of $150 million (the "CDO Credit Agreement") with Citibank, N.A. and Citigroup Financial Products Inc. The CDO Credit Agreement was restated on the original maturity date of August 27, 2008. The restated agreement stated that equity cash flows earned on the assets in the facility would be pledged against the debt principal until paydown with no further drawdowns available. Interest is charged at Federal Funds open rate plus 1.50%. As of December 31, 2008, the facility had been paid back in full.

In February 2006, the Real Estate Fund entered into a credit agreement in the amount of $31 million (the "REF Credit Agreement") with Wachovia Bank. Interest is charged at LIBOR plus 2%. Interest is payable on the first day of each quarter. On September 29, 2008, the REF credit agreement was amended and restated, decreasing the availability under the facility to $25 million. Interest is charged at LIBOR plus 2.25%. As of December 31, 2008, $20 million was outstanding under the REF Credit Agreement and approximately $116.5 million of investments were pledged as collateral. The Partnership considers the book value of the line of credit at December 31, 2008 to approximate its fair value. As of December 31, 2008, Real Estate Fund was in payment default for its failure to make a required $5 million principal reduction payment. Real Estate Fund has subsequently received a forbearance agreement. See Note 16.

**Term Loan**
On July 6, 2007, HCM Trident entered into a term loan facility agreement (the "Facility Agreement") with Nomura International PLC in the amount of $26.25 million. The Facility Agreement is scheduled to mature on the July 6, 2008, unless extended. The Facility Agreement interest is charged at LIBOR plus 0.75% and is payable quarterly on July 6, October 6, January 6, and April 6.

On July 14, 2008, the Facility Agreement was amended to reduce the availability to $25 million. The Facility Agreement rate of interest was increased to 2.25% in excess of LIBOR. Interest is payable quarterly on July 6, October 6, January 6, and April 6.

On November 2, 2008, the Facility Agreement was amended to allow for periodic payments of principal and interest. The amortization schedule of the facility is as follows:

| *(in thousands of dollars)* | Repayment Amount |
|---|---|
| **Payment Date** | |
| October 28, 2008 | $  1,000 |
| November 3, 2008 | 5,000 |
| December 15, 2008 | 4,000 |
| February 16, 2009 | 3,000 |
| March 16, 2009 | 2,000 |
| April 15, 2009 | 2,000 |
| May 15, 2009 | 2,000 |
| June 15, 2009 | 2,800 |
| | $  21,800 |

As of December 31, 2008, the estimated fair market value of the facility was approximately equal to the carrying value.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Promissory Notes**
On January 4, 2006, the Partnership received a promissory note (the "Promissory Note") from Compass Bank in the amount of $2 million.  The Partnership must make monthly payments of principal and accumulated interest on the fifth day of each month.  The Promissory Note will mature on February 1, 2011.  On February 8, 2007, the Partnership and Compass Bank modified the Promissory Note, which reduced the interest rate from 2.0% to 1.7% in excess of LIBOR.  The outstanding balance of the Promissory Note as of December 31, 2008 was $0.9 million.  As of December 31, 2008, the estimated fair market value of the note was approximately equal to the carrying value.

**Credit Opportunities Master Note Payable**
On December 19, 2008, Highland Credit Opportunities CDO Financing, LLC ("CDO Financing"), a wholly owned subsidiary of Credit Opportunities Master, issued $122.4 million par value of senior secured convertible notes and received cash proceeds of $115.6 million and investment securities with an estimated fair value of $0.9 million.  The notes are governed by a Note Purchase Agreement (the "Purchase Agreement") and guaranteed by Credit Opportunities Master and Highland Credit Opportunities, Ltd. (the "CDO").  At the note holders' option, the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master between January 1, 2010 and December 31, 2012.  Subject to certain conditions, the Purchase Agreement also allows for CDO Financing to issue up to $106.7 million par value of additional notes to the existing note holders in exchange for proceeds of $101.4 million.

The proceeds from the notes were used primarily to fund an additional equity investment in the CDO.  This investment was required under the terms of a forbearance agreement that Credit Opportunities Master executed with the Majority Controlling Class of the CDO's note holders.

The notes have a stated maturity date of December 31, 2012 and accrue interest on a quarterly basis at a rate of 25% per annum.  In addition, the Purchase Agreement requires payment of a 2.5% fee on the unfunded portion of the note commitment.

Credit Opportunities Master may elect to prepay up to 50% of the outstanding principal balance from July 1, 2010 through December 31, 2010.  After that period, Credit Opportunities Master may prepay all or a portion of the outstanding principal, provided that each partial payment made to the note holders is in an aggregate principal amount of at least $0.5 million.

The Agreement requires Credit Opportunities Master to pay the following fees, as a percentage of the principal balance, in the event of a prepayment:

| Prepayment Period | Fees |
|---|---|
| July 1, 2010 - December 31, 2010 | 15.0% |
| July 1, 2011 - December 31, 2011 | 10.0% |
| July 1, 2012 - December 31, 2012 | 6.0% |

28

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

The Purchase Agreement grants the note holders a lien on certain assets held by Credit Opportunities Master and the CDO. In addition, it requires Credit Opportunities Master and the CDO to comply with various financial covenants. Failure to meet these covenants may result in an event of default and give the note holders the right to accelerate repayment of the debt or initiate a liquidation of certain assets. Credit Opportunities Master was not in technical compliance with a liquidity calculation specified in the debt covenants as of December 31, 2008. However, the calculation was in compliance with covenants as of January 31, 2009.

As of December 31, 2008, the estimated fair market value of the notes was approximately equal to the par value.

**HFREC Notes Payable**
*HE Sugar Land Project, LLC "HE Sugar Land" Note Payable*
On August 27, 2007, HE Sugar Land assumed a mortgage loan from KeyBank Real Estate Capital secured by the underlying property in HE Sugar Land. The note had an original principal balance of $46 million and a balance of $43.4 million on the date of assumption. HE Sugar Land paid an assumption fee of $0.2 million and deposited $5.3 million into a reserve fund in connection with the assumption of the note. The note accrues interest at a fixed rate of 7.72% per annum. The note matures with all principal and accrued interest due on July 11, 2011. The monthly payment for principal and interest is $0.3 million and is due on the eleventh of each month. As of December 31, 2008, the estimated fair market value of the note was approximately equal to the carrying value.

*HE 1001 West Loop Project, LLC "1001 West Loop" Note Payable*
On December 13, 2007, 1001 West Loop entered into a $19.5 million loan with affiliates of the Partnership, which is secured by the underlying property in 1001 West Loop (the "Term Loan"). The Term Loan matures with all principal and accrued interest due on December 13, 2012. The Term Loan bears interest at a rate of 3.5% plus 90-day LIBOR, set on the 13th day of every third month (5.5% on December 31, 2008). Interest payments are due on the first day of the third month after the date of the Term Loan agreement, and on the first day of every third month thereafter.

In addition, 1001 West Loop entered into a $6.5 million loan with affiliates of the Partnership on December 13, 2007, which is secured by a pledge of 1001 West Loop's ownership interests in its subsidiaries and the Manager's Subordination of Property Management Agreement (the "Mezz Loan"). The Mezz Loan matures with all principal and accrued interest due on December 31, 2012. The Mezz Loan bears interest at a fixed rate of 12%. Interest payments are due on the first day of the third month after the date of the Mezz Loan agreement, and on the first day of every third month thereafter.

As of December 31, 2008, the estimated fair market values of the notes were approximately equal to their carrying values.

*HE 2425 West Loop Project, LLC "2425 West Loop" Note Payable*
On December 13, 2007, 2425 West Loop entered into a $22.9 million loan with affiliates of the Partnership, which is secured by the underlying property in 1001 West Loop (the "Term Loan"). The Term Loan matures with all principal and accrued interest due on December 13, 2012. The Term Loan bears interest at a rate of 3.5% plus 90-day LIBOR, set on the 13th day of every third month (5.5% on December 31, 2008). Interest payments are due on the first day of the third month after the date of the Term Loan agreement, and on the first day of every third month thereafter.

29

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

In addition, 2425 West Loop entered into a $7.6 million loan with affiliates of the Partnership on December 4, 2007, which is secured by a pledge of 1001 West Loop's ownership interests in its subsidiaries and the Manager's Subordination of Property Management Agreement (the "Mezz Loan"). The Mezz Loan matures with all principal and accrued interest due on December 31, 2012. The Mezz Loan bears interest at a fixed rate of 12%. Interest payments are due on the first day of the third month after the date of the Mezz Loan agreement, and on the first day of every third month thereafter.

As of December 31, 2008, the estimated fair market values of the notes were approximately equal to their carrying values.

***HCREA Nolen Drive, L.P. ("Nolen Drive") Note Payable***
On September 18, 2006, Nolen Drive entered into a $7.1 million note payable with Artesia Mortgage Capital Corporation, which is secured by the underlying property in Nolen Drive (the "Term Loan"). The Term Loan matures with all principal and accrued interest due on October 11, 2011. The Term Loan bears interest at a rate of 6.52% per annum. Payments are due on the 11th of every month. As of December 31, 2008, the estimated fair market value of the note was approximately equal to the carrying value.

**10.   Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its consolidated entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans. The consolidated entities may also invest in derivative instruments, including total return and credit default swaps. Investments in these derivative instruments throughout the year subject the consolidated entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the consolidated balance sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Master Partnership due to a change in the market value of its investments or the value of the investments underlying swap agreements. The Partnership and its Consolidated Investment Fund's exposure to market risk is affected by a number of factors, including the size, composition and diversification of its investments and swap agreements; interest rates; and market volatility. The Partnership and its Consolidated Investment Funds use various forms of leverage, including notes, which increase the effect of any investment value changes on partners' capital.

**Credit Risk**
Credit risk is the potential loss the Partnership and its consolidated entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the consolidated entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties. To limit the credit risk associated with such transactions, the consolidated entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Investment Fund's limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law. There is no public market for the interests, and neither the Consolidated Investment Funds nor their manager expect such a market to develop.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Business Risk**
The Partnership provides advisory services to the consolidated investment funds.  The Consolidated Investment Funds could be materially affected by the actions and liquidity of the Partnership.

**High Yield Bonds and Loans**
The Partnership and its Consolidated Investment Funds may invest in high-yield bonds that have been assigned a lower rating categories or are not rated by various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.  In addition, certain of the Consolidated Investment Funds' investments have resale or transfer restrictions that further reduce their liquidity.  The Consolidated Investment Funds also invest in senior secured syndicated bank loans and enter into direct contractual relationships with the corporate borrowers.  As such, the Partnership and its Consolidated Investment Funds are exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower.

The current economic recession has severely disrupted the market for most high-yield bonds and loans and may continue to have an adverse effect on the value of such instruments.  It is also probable that the economic downturn could adversely affect the ability of the issuers of such securities to repay principal and interest thereon and increase the incidence of default for such securities.

**CLO Equity Investments**
The Partnership and its Consolidated Investment Funds may invest in CLO equity that are not rated by various credit rating agencies and are generally considered to be speculative with respect to the issuer's ability to repay principal and interest.  The yields and prices of these non-rated CLO equity tranches are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.  In addition, certain of the Consolidated Investment Funds' investments have resale or transfer restrictions that further limit their liquidity.  Given a backdrop of deteriorating general economic conditions, the Partnership and its consolidated investment funds are exposed to the potential non-payment of principal and interest from their CLO equity investments.  As of December 31, 2008, 25 of the 30 CLOs managed by the Partnership paid interest to the equity holders on their last payment date.

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Investment Funds invest have been issued by distressed companies in an unstable financial condition.  These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Credit Default Swaps**
Credit default swaps involve greater risks than if the Partnership or its Consolidated Investment Funds had shorted the reference obligations directly.  In addition to the market risk discussed above, credit default swaps are subject to liquidity risk and credit risk.  If a credit event occurs, the value of the reference obligation received by the Partnership or its Consolidated Investment Funds, couple with the periodic payments previously received, may be less than the full notional amount it pays to the buyer, resulting in loss of value.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Investment Funds' investments.  However, the Consolidated Investment Funds' portfolio could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Investment Funds.  In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments.  This limited diversity could expose the Consolidated Investment Funds to losses that are disproportionate to market movements as a whole.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Investment Funds are provided by major financial institutions.  In addition, all of the Partnership and its Consolidated Investment Funds' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges.  The Partnership or its Consolidated Investment Funds may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations.  While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Investment Funds' might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Leverage Risk**
The Consolidated Investment Funds may borrow funds from brokers, banks and other lenders to finance its trading operations.  The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Investment Funds' investment portfolio may be subject.  The use of margin and short-term borrowings creates several risks for the Consolidated Investment Funds.  If the value of the Consolidated Investment Funds' securities fall below the margin level required by a counterparty, additional margin deposits are required.  If the Consolidated Investment Funds are unable to satisfy a margin call, the counterparty could liquidate the position in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Investment Funds to incur significant losses.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Investment Funds' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Investment Funds.  In addition, because the use of leverage allows the Consolidated Investment Funds to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Investment Funds may lose in the event of adverse price movements is high in relation to the amount of their investment.

HIGHLY CONFIDENTIAL

D-CNL000034

**Appx. 00932**

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

In the event of a sudden drop in the value of the Consolidated Investment Funds' assets, the Consolidated Investment Funds may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements. As a result, the Consolidated Investment Funds may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Investment Funds have the ability to apply discretionary margin, haircut, financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar. The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2008, the Partnership and Consolidated Investment Funds' investments and derivative contracts were predominantly concentrated in the United States and the Cayman Islands and across several industries.

**Wind-Down Risk**
The ultimate proceeds that the Consolidated Investment Funds' are able to realize on the sale of its investments will directly affect the amounts that the investors in the Feeder Funds are able to redeem in connection with the wind down process. These amounts may differ materially from the partners' capital balances as of December 31, 2008.

**Litigation Risk**
The Partnership and its Consolidated Investment Funds are periodically subject to legal actions arising from the ordinary course of business. In addition, certain of the Consolidated Investment Funds' Feeder Fund investors have filed lawsuits after receiving notification of the decision to wind-down certain Consolidated Investment Funds' investment portfolios (Note 16). Refer to Note 17 for a discussion of the open litigation.

**11.    Related Party Transactions**

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages. A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds. As of December 31, 2008, approximately $18.8 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other current assets* in the accompanying consolidated balance sheet.

33

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Long Term Incentive Plan and Intercompany Loan Payable to Highland Capital Management Services, Inc. ("HCMSI")**

Effective January 1, 2001, all of the Partnership's employees were transferred to HCMSI, which provides personnel management and consulting services to the Partnership. The Partnership and HCMSI entered into a management agreement whereby the Partnership compensated HCMSI for its employee expenses plus a consulting services fee. As of January 1, 2005, there were no further transactions with HCMSI as all employees were transferred to the Partnership.

Effective January 1, 2001, HCMSI approved a long-term incentive plan ("the LTIP") for select employees who are eligible to receive Long-Term Incentive Units ("the Units") under the LTIP. The number of Units authorized under the LTIP is 30,000,000 and a majority of the Units granted vest 40% during the grant year and 30% for each of the two years thereafter, expiring 10 years after such grant date, unless different terms are agreed upon between the Plan Administrator and the employee. The fair value of the Units are based upon the fair value of the Partnership, as determined in good faith, by James Dondero, the Plan Administrator and the sole shareholder of the general partner and a limited partner of the Partnership. The LTIP was transferred to the Partnership from HCMSI on January 1, 2005.

The Units are exercisable at the discretion of the Plan Administrator, or upon a triggering event defined as the earlier of the following events:

- Change in control

- Initial public offering

- Participant's voluntary or involuntary termination due to death, disability, retirement, or hardship

- Participant's voluntary or involuntary termination other than due to death, disability, retirement, hardship, or cause is exercisable to the extent the Participant is entitled to only 80% of the vested shares.

A total of 3,425,074 Units are outstanding as of December 31, 2008 under the LTIP. During the year ended December 31, 2008, a total of 350,366 Units were exercised. These exercised Units reverted back to the LTIP. During the year ended December 31, 2008, the liability under the LTIP decreased by approximately $38.1 million, which is included in Compensation and benefits in the consolidated statement of income.

The total balance payable to HCMSI was approximately $3.8 million as of December 31, 2008, which is related to the LTIP accrual.

Effective December 31, 2004, all of the employees at HCMSI were transferred to the Partnership, and the management agreement between the Partnership and HCMSI was terminated as to the provision of future services. However, all of the outstanding and unfunded obligations of the Partnership to HCMSI as of December 31, 2004, as well as any additional obligations that may arise in relation to these amounts, will continue to be due and payable to HCMSI until satisfied in accordance with the provisions of the agreements in place.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Accounts Held with Related Party**
During the year the Partnership and its subsidiaries maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control. As of December 31, 2008, balances in the accounts were approximately $15.8 million. Approximately $0.1 million of interest was earned on this account for the year ended December 31, 2008.

**Controlling Positions**
Various members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests. Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable. Any director's fees received by the Partnership for these services as directors are paid to and retained by the Partnership. As of December 31, 2008, the Partnership and its subsidiaries held the following investments in these companies:

HIGHLY CONFIDENTIAL

D-CNL000037
**Appx. 00935**

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

*(in thousands of dollars)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| American Banknote Corporation | Common Equity | $ 15,161 |
| Complete Genomics | Common Equity | 16,000 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 17,857 |
| Highland Financial Corporation | Common Equity | 2,871 |
| Legacy Pharmaceuticals | Common Equity | 385 |
| Marcal paper Mills, LLC | Common Equity | 55 |
| Nex-Tech Aerospace Holdings, Inc. | Common Equity | 5,533 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 767 |
| Safety-Kleen Inc. | Common Equity | 183,720 |
| Trussway Industries, Inc. | Common Equity | 11,519 |
| Blackwell BMC, LLC | Common Equity | 17,225 |
| Epocal, Inc. | Preferred Equity | 76,403 |
| Solstice Neurosciences, Inc. | Preferred Equity | 10,700 |
| Terrestar Corporation | Preferred Equity | 60,250 |
| Highland Distressed Opportunities Fund | Closed-End Mutual Fund | 2,140 |
| Highland Credit Strategies Fund | Closed-End Mutual Fund | 3,607 |
| Highland Special Situations Fund | Mutual Fund | 2,094 |
| Highland Long/Short Equity Fund | Mutual Fund | 193 |
| Highland High Income Fund | Mutual Fund | 177 |
| Highland Income Fund | Mutual Fund | 330 |
| Highland Healthcare Fund | Mutual Fund | 2,295 |
| Broadstripe Holdings, LLC | Loan Revolver | 1,986 |
| Home Interiors & Gifts, Inc. | Loan Revolver | 5,024 |
| Legacy Pharmaceuticals | Loan Revolver | (871) |
| Home Interiors & Gifts, Inc. | Initial Term Loan | 18,988 |
| Consolidated Restaurant Companies, Inc. | Term Loan | 9,366 |
| Blackwell BMC, LLC | Term Loan | 2,376 |
| Decision One Corporation | Term Loan | 1,000 |
| Legacy Pharmaceuticals | Term Loan | 13,121 |
| Broadstripe Holdings, LLC | Term Loan - First Lien | 7,806 |
| Cornerstone Healthcare Group Holding, Inc. | Loan - Second Lien | 24,014 |
| Broadstripe Holdings, LLC | Term Loan - Second Lien | 8,918 |
| Decision One Corporation | Term Loan B | 1,601 |
| Highland Financial Partners, L.P. | Long-Term Debt | 15,661 |
| Home Interiors & Gifts, Inc. | Swap | (9,878) |

During the year ended December 31, 2008, the Partnership earned approximately $0.3 million of income from those entities where members of management serve as members of the Board of Directors. The amount is included in Other income in the consolidated statement of income.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Real Estate Partnerships**
The Partnership and its principals serve as the general partner of the general partner of various partnership investments in the Real Estate Fund and Highland Financial Real Estate Corporation. Such investments are listed below:

*(in thousands of dollars)*

| Limited Partnership | | Value |
|---|---|---|
| HE Sugar Land Project, LLC | $ | 13,719 |
| HCREA Prosper Crossing West, L.P. | | 13,632 |
| HCREA Canyon Falls | | 10,175 |
| HCREA Prosper Crossing East, L.P. | | 8,983 |
| HCREA Canyon Falls Town Center, L.P. | | 8,511 |
| HCREA Kings Wood | | 6,672 |
| HCREA Indian Creek, L.P. | | 5,467 |
| HCREA Terrell Land, L.P. | | 5,124 |
| HE 2425 West Loop Project, LLC | | 4,415 |
| HE 1001 West Loop Project, LLC | | 3,922 |
| HCREA Wilcox 190, L.P. | | 3,629 |
| HCREA Celina Springs, L.P. | | 3,504 |
| HE Mezz KR, LLC | | 3,133 |
| HCREA The Tribute, L.P. | | 2,986 |
| HCREA Nolen Drive, L.P. | | 2,193 |
| HCREA Wylie Partners I, L.P. | | 1,764 |
| HCREA Princeton 380, L.P. | | 1,411 |
| HCREA Highland Village, L.P. | | 1,202 |
| HCREA Lockhill, Retail, L.P. | | 1,049 |
| HCREA Pilot Point Land, L.P. | | 1,030 |
| HCREA Grey Walls, L.P. | | 880 |
| Highland Capital Terrell Investment Partners, L.P. | | 565 |
| HCREA Embarcadero, L.P. | | 278 |
| HCREA Hutchins Truck Service, L.P. | | 110 |
| HCREA Trimarchi of North Dallas, L.P. | | - |
| HCREA Court Glen, L.P. | | - |
| HCREA Breckenridge, L.P. | | - |

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank, SSB, an affiliate of the Partnership, was the agent bank. Interest earned on the loans during the year was approximately $27.8 million. At December 31, 2008, these subsidiaries were invested in NexBank, SSB agented loans with commitments and market values totaling approximately $462.1 million and $175 million, respectively.

37

D-CNL000039
**Appx. 00937**

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Notes to Affiliates**

On July 31, 2006, the Partnership issued a promissory note in the amount of $400,000 to an employee of an affiliate.  The note accrued interest at the mid-term applicable federal rate as promulgated by the Internal Revenue Service.  The note is payable in one lump sum on the earlier of July 31, 2010 or an event of acceleration.  In July 2008, the remaining balance of the promissory note was forgiven.

On August 1, 2008, the Partnership issued a promissory note in the amount of $500,000 to an employee of a subsidiary.  The note accrues interest at a rate of LIBOR plus 1.75%, compounded quarterly.  The note is payable in one lump sum on the earlier of August 1, 2011 or an event of acceleration.  As of December 31, 2008, the principal amount on the promissory note was $500,000 with interest accrued of approximately $15,000.

On May 21, 2007, the Partnership issued two loans to employees of a subsidiary aggregating $2.0 million, each with a principal balance of $1.0 million.  The note accrues interest at a rate of LIBOR plus 1.75%, compounded quarterly.  The principal balance plus all accrued interest is due on the earlier of May 1, 2010 or an event of acceleration.  During 2008, 30% of the outstanding principal of each loan was forgiven.  As of December 31, 2008, each loan principal was $0.7 million, with interest accrued of approximately $65,000.

On August 20, 2008, the Partnership issued a promissory note in the amount of $330,000 to an employee of the Partnership.  The note accrues interest at a rate of LIBOR plus 1.75%.  The note is payable in one lump sum on the earlier of August 20, 2015 or an event of acceleration.  As of December 31, 2008, the principal amount on the promissory note was $330,000 with interest accrued of approximately $5,000.

On August 1, 2008, the Partnership issued a promissory note in the amount of $500,000 to an employee of a subsidiary.  The note accrues interest at a rate of LIBOR plus 1.75%, compounded quarterly.  The note is payable in one lump sum on the earlier of August 1, 2011 or an event of acceleration.  As of December 31, 2008, the principal amount on the promissory note was $500,000 with interest accrued of approximately $9,000.

On October 15, 2008, the Partnership issued a promissory note in the amount of $500,000 to an employee of a subsidiary.  The note accrues interest at a rate of LIBOR plus 1.75%, compounded quarterly.  The note is payable in one lump sum on the earlier of October 15, 2011 or an event of acceleration.  As of December 31, 2008, the principal amount on the promissory note was $500,000 with interest accrued of approximately $4,000.

On December 19, 2007, the Partnership issued a promissory note in the amount of $30 million to a subsidiary of HFP.  The note accrues interest quarterly on the principal balance on the last business day of each quarter ending March 31, June 30, September 30, and December 31 at a rate equal to the Fed Funds Rate as published by the Federal Reserve Bank of New York on the Business Day next succeeding each quarter end.  The note is payable in $5 million quarterly installments commencing June 30, 2008 and is due and payable in full on June 30, 2009, subject however to acceleration.  All payments are first applied to interest and then to principal.  In July 2008, the Partnership received six million common units of HFP through a conversion of the promissory note at a conversion price of $5 per common unit.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

On September 12, 2008, the Partnership issued a promissory note in the amount of $13.9 million to a subsidiary of HFP.  The note accrues interest monthly on the principal balance on the last business day of each month at a rate equal to the Fed Funds Rate as published by the Federal Reserve Bank of New York on the Business Day next succeeding each month end.  As of December 31, 2008, the principal amount on the promissory note was $0.9 million.

**Investments in Affiliates**
The Partnership and its subsidiaries are the investment/collateral manager for approximately $69.2 million of the CDO Master Fund's investments, consisting of United States and European Floating Rate CLO Mezzanine Tranches, Residual CLO Equity Tranches, common stock, Investment Funds, total return swaps, credit default swaps, long-term debt and claims.  During the year, CDO Master Fund earned interest income of $74.9 million and net realized/unrealized losses on investment transactions of $386 million from related party investments.

In 2006, the Partnership was granted 124,468 restricted HFP units and 809,263 non-qualified HFP unit options.  The options were granted with a strike price of $15.00 and $16.50 per unit.  Both the restricted units and options vest in thirds on the anniversary of the grant date.  In 2008, 41,489 and 273,087 of restricted units and options vested, respectively.  Of the options that vested, 114,476 were exercised at a strike price of $15.

On June 25, 2008, HCSA received an in kind distribution of 3,049,732 units of HFP in lieu of their incentive allocation balance.  The conversion of HCSA's incentive allocation balance to HFP units implied a conversion price of $5 per unit.

On September 26, 2008, HFP issued $316 million of senior secured notes to the Consolidated Investment Funds in exchange for an interest in certain assets which included collateralized loan obligation securities.  Due to a lack of a transfer of control caused by certain restrictive covenants associated with the exchange, these assets continue to be recognized on the Consolidated Statement of Assets, Liabilities and Partners' Capital of the Consolidated Investment Funds.  Upon full payment of the outstanding principal of the senior secured notes, the restrictive covenants of the assets will be satisfied and HFP will have unencumbered interests in the assets.  The Consolidated Investment Funds have recorded a liability to account for the future release of the assets, which is classified on their balance sheets as Obligation to return collateral.  The Consolidated Investments Funds elected to apply the fair value option prescribed by SFAS No. 159 when they first recognized the liability, which resulted in the liability being carried at the same value as the assets in aggregate.  Accordingly, the change in the fair value of the liability between September 26 and December 31, 2008 has been recognized as an unrealized gain.  As discussed in Note 18, the senior secured notes were terminated subsequent to December 31, 2008.

**Charitable Contributions**
One of the Partnership's limited partners serves on the board of directors of Grace Ministries, a not-for-profit organization.  During the year, the Partnership made a charitable contribution of $0.1 million to Grace Ministries.  This amount is presented in Other operating expenses.

HIGHLY CONFIDENTIAL

D-CNL000041

Appx. 00939

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Services Performed by an Affiliate**
In March 2007, Highland Capital of New York, L.P., a New York limited partnership ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf.  For the year ended December 31, 2008, total marketing fee expense charged to the Partnership by Highland New York was approximately $4.8 million and as of December 31, 2008, amounts owed to Highland New York for services rendered was approximately $2.4 million.

**Participation Agreement**
The Partnership and its Consolidated Investment Funds purchased protection under credit default swaps referencing residential mortgage-backed collateralized debt obligations during the year.  The Partnership and some of its Consolidated Investment Funds along with an affiliated entity under common control (collectively, the "Participants") entered into related participation agreements (collectively, the "Agreements") at the time the positions were established.  During the year, the Participants traded credit default swaps with a notional value of approximately $294.8 million that were governed under the Agreements with the Participants.  As of December 31, 2008, all Agreements between the Participants were closed.

**Letter of Credit**
In April 2007, the Partnership entered into a $4 million standby letter of credit ("LC") on behalf of one of its Consolidated Investment Funds with the Bank of Nova Scotia.  Interest is charged at 1.95%.  As of December 24, 2008, the rate of interest had increased to 3.95%.  As of December 31, 2008, there were no amounts drawn against the LC.  Any interest paid by the Partnership on behalf of the Consolidated Investment Fund is reimbursed through an investment in the fund.  For the year ended December 31, 2008, $0.1 million of interest had been paid by the Partnership on the funds behalf.

**Notes from Affiliates**
On April 15, 2008, the Partnership entered into a $24.6 million promissory note with an employee of the Partnership.  The note accrues interest at a rate of 6% per annum, compounded annually and is payable upon demand.  As of December 31, 2008, the principal amount on the promissory note was $3.5 million with interest accrued of approximately $12,000.

On April 15, 2008, the Partnership entered into an $8.2 million promissory note with an employee of the Partnership.  The note accrues interest at a rate of 6% per annum, compounded annually and is payable upon demand.  As of December 31, 2008, the principal amount on the promissory note was $4 million with interest accrued of approximately $17,000.

On October 3, 2008, the Partnership entered into a $2 million promissory note with Governance RE, Ltd ("Gov Re").  The note accrues interest at a rate of LIBOR plus 1.75%, compounded annually and is payable on demand.  As of December 31, 2008, the principal amount on the promissory note was $2 million with interest accrued of approximately $28,000.

**Loans to Affiliates**
During 2008 the Partnership entered into short-term, non-interest bearing loans to its Consolidated Investment Funds and affiliates.  The total amount of borrowings made to the Consolidated Investment Funds and affiliates in 2008 was approximately $127.7 million.  As of December 31, 2008, all amounts borrowed had been repaid to the Partnership.

40

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Intercompany Balance**
During 2008, the Partnership and an affiliate engaged in a series of short-term, non-interest bearing transactions.  The affiliate's primary function is to provide personnel management and consulting services to the Partnership.  As of December 31, 2008, the Partnership's intercompany liability to the affiliate was $20.7 million.

**12.    Rentals Under Operating Leases**

The following is a schedule of future rental payments on noncancelable tenant operating leases for properties consolidated by HFREC at December 31, 2008.  The schedule does not include any amounts due from tenants upon the exercise of renewal options under certain leases.  The underlying companies consolidated by HFREC also received reimbursements from tenants for certain common area maintenance ("CAM") expenses, which may include CAM costs, insurance and real estate taxes.  Reimbursements for insurance and real estate taxes are not included in the following schedule.

*(in thousands of dollars)*

**Years Ending December 31,**

| | | |
|---|---|---:|
| 2009 | $ | 15,224 |
| 2010 | | 7,841 |
| 2011 | | 4,666 |
| 2012 | | 3,703 |
| 2013 | | 2,827 |

**13.    Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business.  While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's consolidated balance sheet, consolidated statement of income, or its liquidity.

**Warehouse Guarantee**
On July 6, 2007, the Partnership was a party to a warehouse agreement as a first loss guarantor.  HCM Trident entered into the warehouse agreement and is entitled to the positive net carry or is required to pay the negative net carry.  The Partnership guaranteed the payment of the negative net carry owed by HCM Trident.  This guarantee was capped at 25% of the initial purchase price of the warehouse assets of $25.7 million, or approximately $6.4 million plus accrued interest.  The Partnership fronted $3.8 million to HCM Trident as a deposit for the first loss guarantee.

On July 14, 2008, the warehouse agreement was amended to reflect the Partnership guaranteeing 100% of the negative net carry.  The Partnership posted an additional $1.5 million, for a total guarantee deposit on hand of $3.1 million, net of any prior loss amounts.

41

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

On November 2, 2008, the warehouse agreement was amended to reflect the Partnership guaranteeing any credit facility amortization payments of principal and interest on HCM Trident's behalf.  As of December 31, 2008, the remaining balance on the facility with accrued interest was approximately $12.3 million.

**Operating Leases**
Future minimum lease payments under operating lease commitments of the Partnership and its consolidated entities with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands of dollars)*

| Years Ending December 31, | | |
|---|---|---:|
| 2009 | $ | 2,354 |
| 2010 | | 2,230 |
| 2011 | | 2,022 |
| Thereafter | | - |
| | $ | 6,606 |

Total rental expense of the Partnership and its consolidated entities for operating leases was approximately $4.9 million for the year ended December 31, 2008.

**Loan Commitments**
Loan and other participation interests purchased by the Consolidated Investment Funds such as bank debt and trade claims may include accompanying letters of credit, revolving credit arrangements or other financing commitments obligating the Consolidated Investment Funds to advance additional amounts on demand.  At December 31, 2008, the Consolidated Investment Funds had outstanding loan commitments of approximately $70.8 million.  The total amount of outstanding commitments does not necessarily reflect the actual future cash requirements, as commitments may expire unused.

**14.     Postretirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

HIGHLY CONFIDENTIAL

D-CNL000044

**Highland Capital Management, L.P.**
Notes to Consolidated Financial Statements
December 31, 2008

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  Therefore, no new participants shall enter the plan after 2008 and no new benefits shall accrue under the plan after 2008.  The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2008 are reconciled in the tables below.

*(in thousands of dollars)*

| Change in projected benefit obligation | | 2008 |
|---|---|---|
| Benefit obligation at commencement of plan | $ | 4,486 |
| Service cost | | 2,608 |
| Interest cost | | 254 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | (3,008) |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (797) |
| Benefit obligation at end of year | $ | 3,543 |

| Change in plan assets | | 2008 |
|---|---|---|
| Fair value of plan assets at commencement of the plan | $ | 2,588 |
| Actual return on plan assets | | (2,783) |
| Acquisition/(divestiture) | | - |
| Employer contribution | | 2,138 |
| Plan participants' contributions | | - |
| Benefits paid | | (797) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 1,146 |

| Reconciliation of Funded Status | | 2008 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 3,543 |
| Projected benefit obligation at end of year | | 3,543 |
| Fair value of assets at end of year | | 1,146 |
| Funded status at end of year | $ | (2,397) |

The Partnership expects to contribute $2.6 million to the plan during 2009.

**Assumptions**
Weighted-average assumptions used to determine benefit obligations at December 31, 2008:

| | |
|---|---|
| Discount rate | 6.30% |
| Rate of compensation increase | N/A |

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2008:

| | |
|---|---|
| Discount rate | 6.50% |
| Expected long-term return on plan assets | 6.50% |
| Rate of compensation increase | N/A |

**15.    Goodwill, Other Intangible Assets and Purchased Investment Management Contracts**

Below is a summary of the Partnership's goodwill and other intangible assets as of December 31, 2008:

| *(in thousands of dollars)* | Carrying Value |
|---|---|
| Lease intangibles, net | $ 14,425 |
| Highland Floating Rate Fund | 12,672 |
| Highland Floating Rate Advantage Fund | 11,328 |
| Goodwill for Highland Europe | 8,020 |
| Licenses | 2,021 |
| Patents | 1,008 |
| | $ 49,474 |

On April 9, 2004, the Partnership purchased the management agreements Highland Floating Rate Fund (the "Floating Rate Fund") and Highland Floating Rate Advantage Fund (the "Advantage Fund"). The combined purchase price for the above agreements was $24.0 million. The purchase price was allocated among the Purchased Funds pro-rata based on the approximate combined total managed assets of the funds as of the date of purchase. As a result, $12.7 million of the purchase price was allocated to the Floating Rate Fund and $11.3 million was allocated to the Advantage Fund.

On January 21, 2000, the Partnership purchased the investment advisory agreement for Prospect Street High Income Shares, Inc. ("PHY"), a diversified, closed-end RIC. The purchase price was approximately $11.9 million.

On July 31, 2001, the Partnership purchased the investment advisory agreement for Prospect Street Income Shares, Inc. ("CNN"), a diversified, closed-end RIC. The purchase price was approximately $2.2 million.

On July 21, 2008, PHY and CNN were reorganized into Highland Credit Strategies Fund. The reorganization was based on the respective Funds' relative net asset values as of 4:00 p.m. on Friday July 18, 2008. As PHY and CNN ceased to exist after the reorganization, the prior capitalized costs of $5.7 million for the purchased investment advisory agreements were recognized into income.

For the remaining purchased investment advisory agreements, the Partnership performed an impairment test under SFAS No. 142. The Partnership's management analyzed market multiples on retail asset managers within the industry as of December 31, 2008 to determine fair value of these assets. The Partnership has determined no impairment charge is necessary for the current year.

44

**Highland Capital Management, L.P.**
Notes to Consolidated Financial Statements
December 31, 2008

On December 17, 2007, HySky, LLC ("HySky") purchased all of the assets and liabilities of Equitas, LLC for approximately $3.8 million.  Through this purchase, HySky obtained two patents with a purchase price value of $1.1 million and an FCC license with a value of $2.2 million.  As of December 31, 2008, $0.3 million in amortization has been recognized on these assets.

During 2007, the companies consolidated by HFREC capitalized $20.6 million of lease intangibles related to their property acquisitions.  As of December 31, 2008, lease intangibles are as follows:

Lease intangibles consist of the following at December 31, 2008:

*(in thousands of dollars)*

| | |
|---|---:|
| Leasing commissions | $ 1,634 |
| Value of in-place leases | 8,495 |
| Tenant relationships | 10,426 |
| Total lease intangibles | 20,555 |
| Less:  Accumulated amortization | (6,130) |
| Lease intangibles, net | $ 14,425 |

The amortization expense of lease intangibles is as follows for the five years ending December 31:

*(in thousands of dollars)*

| | |
|---|---:|
| 2009 | $ 4,070 |
| 2010 | 2,535 |
| 2011 | 1,123 |
| 2012 | 1,121 |
| 2013 | 1,118 |

45

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
Notes to Consolidated Financial Statements
December 31, 2008

16.   **Consolidated Investment Fund Wind-Downs**

Throughout 2008, Credit Strategies Master and Crusader Master were negatively affected by deteriorating conditions in the overall economy and credit markets.  These conditions became more severe during the third and fourth quarters of 2008 and generated significant losses on various derivative transactions and repurchase agreements to which Credit Strategies Master and Crusader Master were a party.  In addition, certain assets that Credit Strategies Master and Crusader Master purchased on margin through prime brokerage agreements experienced a significant decline in value. In certain cases, Credit Strategies Master and Crusader Master were unable to post the collateral required to secure these losses, and the counterparties provided notice of their intent to terminate the agreements.  As a result, access to the credit that Credit Strategies Master and Crusader Master used to manage their investing and financing activities became highly constrained, and in some cases unavailable.  In light of these circumstances, the General Partners (the general partner of Highland Credit Strategies Fund, L.P. and the general partner of Highland Crusader Fund, L.P.) and the Board of Directors of Highland Credit Strategies Fund, Ltd. and Highland Crusader Fund, Ltd. concluded, in consultation with the Investment Manager, that it would be in the best interests of their investors to wind down the investment portfolios of Credit Strategies Master and Crusader Master.  On October 15, 2008, the Investment Manager notified investors that it would begin the wind-down process immediately.  The Investment Manager also restricted subscriptions and the payment of withdrawals to the Feeder Funds effective immediately.

In connection with the wind down, the limited partner interests of the Feeder Funds were compulsorily withdrawn/redeemed as set forth in the terms of the governing documents.  A formal plan of liquidation has not been finalized by management, and there are no assurances that investors will realize the remaining equity balance over the course of the wind down of Credit Strategies Master and Crusader Master.  The General Partner has suspended payment of distributions, and any outstanding balances with respect to withdrawal and/or redemption requests that were made prior to October 15, 2008, will be made on a pro-rata basis with the amounts owed to investors that have been compulsorily withdrawn/redeemed, unless a plan of distribution dictates otherwise.  The equity of the investors for Credit Strategies Master that were compulsorily redeemed was zero.  The equity of the investors for Crusader Master that were compulsorily redeemed was $423.6 million.  Future distributions will only be made as the value of Credit Strategies and Crusader Masters' investments are realized and all obligations due to counterparties and service providers of Credit Strategies and Crusader Master and their representative Feeder Funds have been satisfied.

As of December 31, 2008, the estimated value of the net assets available for distribution from Crusader Master and Credit Strategies Master to their Feeder Funds was approximately $1,092 million and $163.5 million, respectively.  The actual amounts distributed upon completion of the wind down process are inherently uncertain and may differ materially from the partners' capital as of December 31, 2008.  The Investment Manager estimates that the wind-down of Credit Strategies Master and Crusader Master could take up to four years to complete.  Capital will be distributed as it becomes available in accordance with a plan of distribution, once implemented.

A summary of the significant events that were considered by the General Partners and the Board of Directors of Highland Credit Strategies Fund, Ltd. and Highland Crusader Fund, Ltd. in the decision to wind-down the investment portfolios of Credit Strategies Master and Crusader Master are provided below.

HIGHLY CONFIDENTIAL

D-CNL000048
**Appx. 00946**

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

**Credit Strategies Master Wind-Down**
***Total Return Swap***
Since its inception, Credit Strategies Master was invested in a total return swap program that allowed it to gain exposure to bank loans and high yield corporate bonds.  During September 2008, the leveraged loan market began to deteriorate, and Credit Strategies Master was required to post cash collateral based on the declining value of the loans held in the swap portfolio.  As of September 30, 2008, Credit Strategies Master had met multiple collateral calls.

The fall in leveraged loan prices accelerated dramatically during the first week of October, which resulted in approximately $43.1 million of additional collateral calls.  Credit Strategies Master did not have sufficient sources of liquidity to post all of the required collateral and could not sell assets at prices that reflected their long-term value.  Therefore, the counterparty delivered notice of its intent to terminate the swap agreement effective October 15, 2008.  The counterparty then offered to (1) sell the remaining assets in the swap portfolio, which would have required Credit Strategies Master to compensate the counterparty for any realized losses in excess of the $473.3 million of collateral that it had previously posted; or (2) allow Credit Strategies Master to forfeit any rights to the collateral in exchange for terminating all current and future exposures under the swap agreement.  Credit Strategies Master elected to forfeit its rights to the collateral and executed a release and waiver with the counterparty.  The release and waiver became effective on October 16, 2008.

***Repurchase Agreement***
Credit Strategies Master entered into a repurchase agreement with a counterparty, which allowed it to gain exposure to high yield corporate bonds and structured credit securities on a leveraged basis.  In October 2008, the counterparty contended that Credit Strategies Master failed to meet margin calls that were required due to a decline in the fair value of the assets. The counterparty delivered a formal notice of default and their intent to exercise the rights and remedies available to it.

The repurchase agreement stipulated that the termination values for the underlying assets would be established through bids received from the market or recognized pricing sources. The counterparty contends that it offered the assets for sale through bids-wanted-in-competition. After netting the proceeds received from the sales, the counterparty requested payment from Credit Strategies Master of $14.3 million.  Credit Strategies Master has disputed the liability, and the counterparty filed a lawsuit seeking recovery of the balance (Note 17).

***Credit Default Swaps***
Credit Strategies Master entered into various credit default swap transactions with a major financial institution for both hedging and speculative purposes. In October 2008, the counterparty provided a notice of termination due to a decline in the value of swaps.  Credit Strategies Master disputed the notice on the basis that an event of default had not occurred; however, the counterparty proceeded to terminate the outstanding swap transactions, which resulted in realized losses of approximately $6.0 million.  Credit Strategies Master has a net outstanding claim payable to the counterparty of $2.6 million.

47

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

*Prime Brokerage Agreement*
During the first two quarters of 2008, Credit Strategies Master actively purchased equity securities, treasury bonds, investment grade corporate bonds and other liquid assets on margin through a prime brokerage agreement with a major financial institution.  The value of the investments declined during the third quarter, and in October 2008, the counterparty issued a notice of default based on a decline the net asset value of the account during the twelve month period ended September 30, 2008.  As a result, Credit Strategies Master was required to liquidate the remaining investments in the account and by the end of the year had realized an aggregate net loss of approximately $68.2 million on the margin transactions.

**Crusader Master Wind-Down**
*Lehman Exposure*
Crusader Master provided protection under a credit default swap agreement that referenced debt issued by Lehman Brothers Holding, Inc. ("Lehman").  Following Lehman's bankruptcy filing on September 15, 2008, Crusader Master was required to post $39.1 million of cash to satisfy a margin call from the counterparty. In aggregate, Crusader Master realized net losses $54.6 million of losses under the agreement.

*Repurchase Agreement*
Crusader Master entered into a repurchase agreement with a counterparty, which allowed it to gain exposure to high yield corporate bonds and structured credit securities on a leveraged basis.  In October 2008, the counterparty contended that Crusader Master failed to meet margin calls that were required due to a decline in the fair value of the assets. The counterparty delivered a formal notice of default and its intent to exercise the rights and remedies available to them.

The repurchase agreement stipulated that the termination values for the underlying assets would be established through bids received from the market or recognized pricing sources. The counterparty contends that it offered the assets for sale through bids-wanted-in-competition. After netting the proceeds received from the sales and certain balances to Crusader Master, the counterparty requested payment from Crusader Master of approximately $50.0 million. Crusader Master has disputed the amount of the liability, and the counterparty filed a lawsuit seeking recovery of the balance.

*Prime Brokerage Agreement*
During the first two quarters of 2008, Crusader Master actively purchased equity securities, treasury bonds, investment grade corporate bonds and other liquid assets on margin through a prime brokerage agreement with a major financial institution.  The value of the investments declined during the third quarter, and in September 2008, the counterparty issued a notice of default based on Crusader Master's alleged failure to meet a margin call.  Crusader Master was ultimately required to transfer or liquidate the remaining investments held in the account and by the end of the year had realized an aggregate net loss of approximately $21.6 million on the margin transactions.

48

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

---

### 17.    Legal Proceedings

In April 2007, CDO Master Fund entered into a risk sharing agreement structured as a derivative whereby it absorbed 51% of the gains and losses generated from a loan warehouse agreement. The remaining 49% of the warehouse gains and losses were absorbed by Highland Financial Partners, L.P. ("HFP"), which is an affiliated entity. The warehouse was financed by a reputable financial institution and held collateral consisting of investments in collateralized loan obligations and credit default swaps. Although the agreement expired on August 15, 2007, the counterparty agreed to extend it for one year on March 15, 2008. As a condition of the extension, CDO Master Fund posted $10.2 million of cash as collateral. In addition, HFC posted certain securities on behalf of CDO Master Fund and HFP. During October and November 2008, the counterparty requested additional collateral calls from CDO Master Fund and HFP totaling $20 million. Due to liquidity constraints, CDO Master Fund was unable to meet the November call, and the counterparty elected to terminate the agreement as of December 5, 2008. The collateral held in the warehouse was subsequently seized by the counterparty and sold on the open market through bids-wanted-in-competition. After offsetting the proceeds received from the sale and the income earned on the collateral prior to the sale, the counterparty notified CDO Master Fund that its pro-rate share of the losses incurred under the agreement was $350.2 million. CDO Master Fund has accrued a liability in its financial statements for this amount.

On February 24, 2009, the counterparty filed a lawsuit against CDO Master Fund and HFP in the New York State Supreme Court of Manhattan alleging that it had suffered no less than $745 million in aggregate losses due to the depreciation in value of the warehouse collateral. The Partnership was also named as a party to the lawsuit. The Partnership does not believe it has any liability in this case and has filed a motion to have its name removed from the lawsuit.

Certain consolidated investment funds (collectively, the "Plaintiffs") filed a claim against Deutsche Bank AG and Deutsche Bank Securities, Inc. (collectively, "Deutsche Bank") in Dallas County District Court alleging fraudulent inducement, fraud and breach of contract in connection with three repurchase agreements to which the Plaintiffs and Deutsche Bank were a party. Deutsche Bank subsequently filed a lawsuit against the Plaintiffs in the United Kingdom on November 7, 2008 alleging breach of contract and fraud. The court in the United Kingdom has granted Deutsche Bank an injunction, which compels the Plaintiffs to stay the action in Dallas County Court until the action in the United Kingdom is resolved. The Plaintiffs have filed a motion to appeal the injunction and are waiting for the court to rule. Based on the demand for payment that Deutsche Bank sent prior to the onset of the litigation, the consolidated investment funds have accrued liabilities of $64.3 million in the accompanying consolidated financial statements.

### 18.    Subsequent Events

In January 2009, the Partnership, certain consolidated investment funds and other affiliated entities were named as parties to a lawsuit claiming breach of fiduciary duties for their alleged failure to comply with obligations owed under a credit agreement. The plaintiff is seeking an unspecified amount of actual damages as well as exemplary damages and attorney's fees. Management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

49

## Highland Capital Management, L.P.
**Notes to Consolidated Financial Statements**
**December 31, 2008**

On February 4, 2009, the Partnership informed investors of CDO Master that the fund was effectively insolvent and that it was in the best interest of the fund to liquidate the fund's remaining assets. The proceeds from the asset liquidations will be distributed to the remaining financing counterparties and other senior and trade creditors as the liabilities in the fund exceed the assets to such a degree that proceeds from the asset sales will not be able to satisfy any unpaid redemptions or to distribute amounts to any current investors.

On March 20, 2009, the Partnership and its Consolidated Investment Funds agreed to terminate the senior secured notes that were issued by HFP. As a result, the Consolidated Investment Funds have been relieved of their obligation to transfer the underlying assets to HFP. As of January 1, 2009, the fair value of the assets securitizing the note was $233.6 million.

In April 2009, a partner withdrew from the Partnership. The departing partner's Partnership interest is to be purchased by the Partnership or the remaining partners.

In April 2009, HYMF, Inc. filed a lawsuit in the New York State Court against the Partnership and certain consolidated investment funds (collectively "the Defendants"). The lawsuit alleges that the Defendants breached their contractual and fiduciary duties by failing to return HYMF's original investment in the consolidated investment funds. The Defendants believe they acted in accordance with the provisions of their partnership agreements and intend to vigorously defend against the lawsuit. At this time, discovery has not yet been initiated, and management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

In April 2009, the Partnership and certain consolidated investment funds (collectively "the Plaintiffs") filed a lawsuit in Texas District Court against HYMF, Inc. The lawsuit states that HYMF, Inc. failed to properly terminate the prepaid forward contract and accreting strike option. The Plaintiffs believe they acted in accordance with the provisions of the prepaid forward and accreting strike option contracts. At this time management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount of range of potential loss with any reasonable degree of certainty.

In April 2009, Real Estate Fund received a forbearance agreement with respect to the REF credit agreement. The lender allowed for the forbearance of any prior obligations until October 15, 2009 where at such time, the facility is due in full.

During the first quarter of 2009, certain investors in Highland Credit Strategies Fund, Ltd. filed lawsuits in response to the decision to wind-down Credit Strategies Master's investment portfolio (Note 16). Each of these investors is seeking to recover the outstanding balances due under the redemption requests that they submitted prior to the announcement of the wind-down. They have also made various claims, including breach of fiduciary duties, committed negligence, tortuous interference with the payment of redemption amounts, and/or committed fraud. Both the Partnership and Highland Credit Strategies Fund, Ltd. have been named as parties to the lawsuits. Management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree of certainty.

HIGHLY CONFIDENTIAL

D-CNL000052

Appx. 00950

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2008**

In July 2009, the Partnership amended and restated its Credit Agreement (the "2009 Credit Agreement").  All amounts borrowed under the 2009 Credit Agreement are due on July 21, 2011.  For base rate loans, interest is charged at a rate of 4% plus the highest of (i) the prime rate, (ii) 2% plus the Federal Funds Rate, and (iii) 2% plus LIBOR.  For LIBOR loans, interest is charged at a rate of 5% plus LIBOR.  For base rate loans, interest is payable on the last business day of each calendar month, as well as the maturity date.  For LIBOR loans, interest is payable on the last day of each calendar month, as well as the maturity date.

In July 2009, certain investors in Highland Credit Strategies Fund, L.P. and Highland Credit Strategies Fund, Ltd. filed a lawsuit seeking damages for alleged recission, fraud, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, various violations of Massachusetts general law, and aiding and abetting fiduciary duty.  The Partnership, Highland Credit Strategies Fund, L.P., Highland Credit Strategies Fund, Ltd., employees of the Partnership, J.P. Morgan Investor Services Co., and J.P. Morgan Hedge Fund Services (Bermuda), Ltd. have been named as parties to the lawsuit.  Management believes it is currently not possible to evaluate the likelihood of any particular outcome or estimate the amount or range of potential loss with any reasonable degree or certainty.

51

HIGHLY CONFIDENTIAL

# Supplemental Information
# Highland Capital Management, L.P.
# Unconsolidated Balance Sheet and Income Statement (Unaudited)
# December 31, 2008

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
### Supplemental Unconsolidated Balance Sheet (unaudited)
### December 31, 2008

*(in thousands of dollars)*

**Assets**

Current assets

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 10,725 |
| Restricted cash | | 1,400 |
| Investments, at fair value (cost $141,819) | | 75,821 |
| Equity method investees | | 36,149 |
| Management and incentive fees receivable | | 19,715 |
| Due from brokers | | 8,189 |
| Other current assets | | 29,076 |
| Deferred incentive fees receivable | | 25,997 |
| Purchased investment management contracts | | 24,000 |
| Goodwill and other intangible assets, net | | 388 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $6,399 | | 9,511 |
| Total assets | $ | 240,971 |

**Liabilities and Partners' Capital**

Liabilities

| | | |
|---|---|---:|
| Accounts payable | $ | 12,992 |
| Accrued and other liabilities | | 69,369 |
| Debt and notes payable | | 150,875 |
| Long-term incentive plan | | 6,945 |
| Total liabilities | | 240,181 |
| Partners' capital | | 790 |
| Total liabilities and partners' capital | $ | 240,971 |

Should be read in conjunction with audited financial statements.

HIGHLY CONFIDENTIAL

D-CNL000055

Appx. 00953

**Highland Capital Management, L.P.**
**Unconsolidated Statement of Income (unaudited)**
**Year Ended December 31, 2008**

*(in thousands of dollars)*

| | | |
|---|---|---:|
| **Revenue** | | |
| Management fees | $ | 201,660 |
| Incentive fees/allocations | | 870 |
| Interest and investment income | | 4,009 |
| Other income | | 11,278 |
| Total revenue | | 217,817 |
| **Operating expenses** | | |
| Compensation and benefits | | (1,970) |
| Professional fees | | 24,717 |
| Investment and research consulting | | 2,281 |
| Amortization and depreciation | | 2,191 |
| Interest expense | | 9,568 |
| Net depreciation on deferred incentive fees | | 150,281 |
| Other operating expenses | | 32,614 |
| Total expenses | | 219,682 |
| Income/(loss) before investment and derivative activities | | (1,865) |
| **Realized and unrealized gain/(loss) from investments and derivative transactions:** | | |
| Net realized gain/(loss) on sale of investment transactions | | 20,156 |
| Net change in unrealized gain/(loss) on investments | | (490,052) |
| Total realized and unrealized gain/(loss) from investments and derivative transactions | | (469,896) |
| **Realized and unrealized earnings from equity method investees:** | | |
| Net realized earnings from equity method investees | | (128,462) |
| Net unrealized earnings from equity method investees | | (7,038) |
| Total realized and unrealized earnings from equity method investees | | (135,500) |
| Net income | $ | (607,261) |

Should be read in conjunction with audited financial statements.

53

HIGHLY CONFIDENTIAL

**EXHIBIT 64**

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements**
**And Supplemental Information**
**With Report of Independent Auditors**
**Year Ended December 31, 2009**

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
Contents
**December 31, 2009**

Page

**Report of Independent Auditors** ........................................................................................................... 1

**Audited Consolidated Financial Statements**

Consolidated Balance Sheet .................................................................................................................... 2

Consolidated Statement of Income .......................................................................................................... 3

Consolidated Statement of Changes in Partners' Capital ......................................................................... 4

Consolidated Statement of Cash Flows .................................................................................................... 5

Notes to Consolidated Financial Statements ........................................................................................... 7

Supplemental Information ....................................................................................................................... 43

HIGHLY CONFIDENTIAL

**Report of Independent Auditors**

To the General and Limited Partners of
Highland Capital Management, L.P:

In our opinion, the accompanying consolidated balance sheet and the related consolidated statements of income, of changes in partners' capital and of cash flows (hereinafter referred to as the "financial statements") present fairly, in all material respects, the consolidated financial position of Highland Capital Management, L.P. (the "Partnership") and its subsidiaries at December 31, 2009, and the consolidated results of their operations, the changes in their partners' capital, and their cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.  These financial statements are the responsibility of the Partnership's management.  Our responsibility is to express an opinion on these financial statements based on our audits.  We conducted our audits of these statements in accordance with auditing standards generally accepted in the United States of America.  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation.  We believe that our audit provides a reasonable basis for our opinion.

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole.  The supplemental unconsolidated balance sheet and statement of income are presented for purposes of additional information, and are not a required part of the consolidated financial statements.  Such information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and, in our opinion, is fairly stated in all material respects in relation to the consolidated financial statements taken as a whole.

May 21, 2010

**Highland Capital Management, L.P.**
**Consolidated Balance Sheet**
**December 31, 2009**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 50,246 |
| Restricted cash | | 248,044 |
| Investments, at fair value (cost $3,953,077) | | 2,013,858 |
| Restricted investments, at fair value (cost $5,245) | | 5,508 |
| Unrealized gains on derivative contracts | | 1,045 |
| Management and incentive fees receivable | | 16,783 |
| Due from brokers | | 8,784 |
| Other assets | | 45,712 |
| Deferred incentive fees receivable | | 28,891 |
| Purchased investment management contracts | | 24,000 |
| Goodwill and other intangible assets, net | | 8,020 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $9,536 | | 14,891 |
| **Total assets** | $ | 2,465,782 |

**Liabilities and Partners' Capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,451 |
| Securities sold, not yet purchased (proceeds $15,093) | | 21,406 |
| Unrealized losses on derivative contracts (proceeds $2,563) | | 103,650 |
| Withdrawals payable | | 54,631 |
| Interest payable | | 3,737 |
| Due to brokers | | 394,359 |
| Due to brokers for securities purchased not yet settled | | 115,890 |
| Accrued and other liabilities | | 57,221 |
| Secured borrowing | | 61,842 |
| Debt and notes payable | | 279,509 |
| Long-term incentive plan | | 2,858 |
| Total liabilities | | 1,099,554 |
| Non-controlling interest | | 1,358,360 |
| Commitments (Note 10) | | |
| Partners' capital | | 7,868 |

The accompanying notes are an integral part of these consolidated financial statements.

2

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Consolidated Statement of Income**
**Year Ended December 31, 2009**

*(in thousands)*

| | | |
|---|---|---:|
| Revenue: | | |
| Management fees | $ | 91,920 |
| Incentive fees/allocations | | 1,550 |
| Interest and investment income | | 168,134 |
| Other income | | 17,610 |
| Total revenue | | 279,214 |
| | | |
| Expenses: | | |
| Compensation and benefits | | 52,163 |
| Professional fees | | 36,942 |
| Investment and research consulting | | 838 |
| Amortization and depreciation | | 5,064 |
| Interest expense | | 52,607 |
| Other expenses | | 31,134 |
| Total expenses | | 178,748 |
| | | |
| Income before investment and derivative activities | | 100,466 |
| | | |
| Realized and unrealized gain/(loss) from investment transactions: | | |
| Net realized loss on sale of investment transactions | | (1,001,610) |
| Net change in unrealized gain on investment transactions | | 1,214,188 |
| Total realized gain from investment transactions | | 212,578 |
| | | |
| Unrealized earnings from equity method investees: | | |
| Net unrealized earnings from equity method investees | | 2,377 |
| Total unrealized earnings from equity method investees | | 2,377 |
| | | |
| Net income | | 315,421 |
| | | |
| Net income attributable to the non-controlling interest | | (315,498) |
| | | |
| Net loss attributable to Highland Capital Management, L.P. | $ | (77) |

The accompanying notes are an integral part of these consolidated financial statements.

3

**Highland Capital Management, L.P.**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2009**

| *(in thousands)* | General Partner | | Limited Partners | | Total | |
|---|---|---|---|---|---|---|
| Partners' capital, December 31, 2008 | $ | 467 | $ | 323 | $ | 790 |
| Net loss | | – | | (78) | | (78) |
| Partner contributions | | 68 | | 12,509 | | 12,577 |
| Partner distributions | | (29) | | (5,392) | | (5,421) |
| Partners' capital, December 31, 2009 | $ | 506 | $ | 7,362 | $ | 7,868 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000263

**Appx. 00961**

**Highland Capital Management, L.P.**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2009**

*(in thousands)*

| | | |
|---|---|---:|
| **Cash flows from operating activities:** | | |
| Net income | $ | 315,420 |
| Adjustment to reconcile net income to cash and cash equivalents | | |
| provided by operating activities: | | |
| Cash provided by operating activities: | | |
| Net realized loss on investments and derivative contracts | | 1,001,610 |
| Net unrealized loss on investments and derivative contracts | | (1,214,188) |
| Net unrealized gain from equity method investees | | (2,377) |
| Depreciation and amortization | | 2,728 |
| Changes in assets and liabilities: | | |
| Restricted cash | | 103,696 |
| Management and incentive fee receivable | | 4,677 |
| Deferred incentive fees | | (2,894) |
| Other assets | | 27,507 |
| Due from brokers | | 31,439 |
| Accounts payable | | (9,318) |
| Accrued and other liabilties | | (154,724) |
| Due to brokers for unsettled trades | | 145,957 |
| Interest payable | | 3,737 |
| Withdrawals payable | | 54,631 |
| Long-term incentive plan | | (4,087) |
| Obligations to retun collateral | | (161,882) |
| Net cash provided by operating activities | | 141,932 |
| | | |
| **Cash flows from investing activities:** | | |
| Purchase of fixed assets and leasehold improvements, net | | 16,431 |
| Purchases of investments | | (397,439) |
| Proceeds from dispositions of investments | | 392,040 |
| Net cash provided by investing activities | | 11,032 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000264

Appx. 00962

**Highland Capital Management, L.P.**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2009**

*(in thousands)*

| | |
|---|---:|
| **Cash flows from financing activities:** | |
| Payments on long-term debt | (8,381) |
| Net payments on secured borrowings | (66,026) |
| Due to brokers | (73,451) |
| Capital contributions from minority interest investors of consolidated entities | 62,342 |
| Capital withdrawals by minority interest investors of consolidated entities | (72,300) |
| Partner distributions | (1,421) |
| Net cash used in financing activities | (146,660) |
| | |
| Net decrease in cash and cash equivalents | (4,728) |
| | |
| **Cash and cash equivalents** | |
| Beginning of year | 43,942 |
| End of year | $     39,214 |
| | |
| | |
| **Supplemental disclosure of cash flow informaton:** | |
| Interest paid during the year | $     42,124 |
| Non-cash distributions to partners | 4,000 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000265

Appx. 00963

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

**1.   Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment advisor under the Investment Advisors Act of 1940 that manages collateralized loan obligations ("CLOs"), registered investment companies ("RICs"), hedge funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business.  The Partnership's general partner is Strand Advisors, Inc.  (the "General Partner").  The Partnership is 100% owned by senior management of the Partnership.

As of December 31, 2009, the Partnership provided investment advisory services in accordance with management agreements for twenty-nine CLOs, nine RICs, four separate accounts, one master limited partnership, and twelve hedge fund structures, with total fee-earning assets under management of approximately $24.5 billion.

**2.   Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment of 50% or more and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether, if by design, an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

7

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

**Consolidation of Non-Variable Interest Entities**

The Partnership consolidates the following non-VIE's (collectively referred to as the "Consolidated Investment Funds").  The Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations:

- Highland Crusader Offshore Partners, L.P. ("Crusader Master"), a Bermuda exempted limited partnership that commenced operations on July 10, 2000;

- Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund"), a Bermuda limited partnership that commenced operations on November 9, 2005;

- Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master"), a Bermuda exempted limited partnership that commenced operations on August 24, 2005;

- Highland Credit Opportunities CDO, L.P. ("Credit Opportunities Master"), a Delaware limited partnership that commenced operations on December 29, 2005;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Canopy Timberlands, L.P., a Delaware limited partnership that commenced operations on April 29, 2008;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore") a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore") a Delaware limited partnership that commenced operations on September 2, 2008; and

- Highland Restoration Capital Partners Master, L.P. ("Restoration Master") a Delaware limited partnership that began commenced on September 2, 2008.

**Consolidation of Variable Interest Entities**

The Partnership consolidated the following VIE's as it is the primary beneficiary:

- Highland Financial Corporation ("HFC"), a company incorporated on February 28, 2006 under the laws of the state of Delaware;

- Highland Financial Real Estate Corporation ("HFREC"), a company incorporated on March 15, 2006 under the laws of the state of Maryland; and

- HCM Trident (Delaware) Corporation ("HCM Trident"), a company incorporated on July 3, 2007 under the laws of the state of Delaware.

8

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

**Consolidation of Majority Owned Entities**
The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Management Europe, Ltd. ("Highland Europe"), a company organized in the United Kingdom and purchased by the Partnership on April 6, 2005;

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in HFP GP, LLC, a Delaware limited liability company that commenced operations on January 20, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd, a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 100% interest in Highland Employee Retention Assets, LLC, a Delaware limited liability company that commenced operations on October 26, 2009;

- 86.5% interest in HySky Communications, LLC, a Delaware limited liability company that commenced operations on December 22, 2006; and

- 84.5% interest in HE Capital, LLC, a Delaware limited liability company that commenced operations on March 22, 2007.

**Deconsolidation of Hedge Funds**
The following funds have been deconsolidated for 2009 as the limited partners have been granted substantive participating rights:

- Highland Select Equity Fund, L.P., a Delaware limited partnership that commenced operations on January 1, 2002;
- Highland Equity Focus Fund, L.P., a Delaware limited partnership that commenced operations on September 1, 2002; and
- Highland Capital Real Estate Fund, L.P., a Delaware limited partnership that commenced operation on April 1, 2002.

All significant interpartnership and intercompany accounts and transactions have been eliminated in consolidation of all of the aforementioned consolidated entities.  All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the AICPA Audit and Accounting Guide - Investment Companies.  The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

**Investment Transactions**
Investment transactions are recorded on a trade date basis.  Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

**Fair Value Measurement**
Fair value represents the price that would be received upon the sale of an asset or paid upon the transfer of a liability in an orderly transaction between market participants at the measurement date (exit price).  Assets and liabilities measured at fair value are classified into one of the following categories:

- Level 1 – Valuation based on quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Investment Funds have the ability to access as of

9

D-CNL000268

Appx. 00966

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on models in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs.  For certain instruments, the inputs used to measure the fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Investment Funds use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change.  These circumstances may result in the instruments being re-classified to different levels within the hierarchy over time.  They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates.

Whenever possible, the Partnership and its Consolidated Investment Funds use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities.  In cases where observable inputs are not available, the Partnership and Consolidated Investment Funds develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

As of December 31, 2009, the Partnership and its consolidated entities investments consisted of floating rate syndicated bank loans, high yield corporate bonds, CLO securities, private placements, private placement real estate debt and equity, life settlement contracts and common and preferred equity securities.  In addition, the consolidated entities are parties to various credit default swaps. The majority of these financial instruments are not listed on national securities exchanges, and management is required to use significant judgment to estimate their values.

The fair value of the loans, corporate bonds and CLO securities are generally based on quotes received from brokers or independent pricing services.  Due to the recent disruption in the credit markets, an increasing number of these quotes are derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades.  The policy of the Partnership and its consolidated subsidiaries is to classify loans and bonds that are prices in this manner as Level 3 assets because the markets in which they trade are not active and the inputs used by the brokers and pricing services are not readily observable.  Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

10

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

The consolidated entities private placement real estate investments include equity interests in limited liability companies and debt issued by entities that invest in commercial real estate. The fair value of these investments is based on internal models developed by the Partnership. The significant inputs to the models include cash flow projections for the underlying properties and appraisals performed by independent valuation firms. Since these inputs are no readily observable, the investments are classified as Level 3 assets.

Common and preferred equity securities traded on national exchanges are valued at their closing prices as of December 31, 2009. These securities are classified as Level 1 assets. The consolidated entities also hold certain equity securities for which no active market exists. The value of these securities, which are classified as Level 3 assets, is based on a combination of broker quotes and internal valuation models.

Life settlement contracts are valued using mortality tables and interest rate assumptions that are deemed appropriate for the demographic characteristics of the parties insured under the policies. Since these inputs are not readily observable, they are classified as Level 3 assets.

The fair value of credit default swaps is based on quotes received from an independent pricing service. The inputs used to derive the quotes are not readily observable and are therefore classified as Level 3.

Refer to Note 5 for the required fair value disclosures.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements. Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value. The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages. During the year ended December 31, 2009, the Partnership and its consolidated entities recognized management and incentive fees of approximately $92 million, and $1.6 million, respectively. The Partnership recognized approximately $2.9 million of appreciation on incentive fees previously deferred under Sec. 409(A) of the Internal Revenue Code, which has been presented in *Other Income* in the consolidated statement of income.

**Dividends, Interest and Expense Recognition**
Dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. Operating expenses, including interest on securities sold short, not yet purchased are recorded on the accrual basis, if any incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. The following subsidiaries are subject to these provisions: Highland Europe, HFC and HFREC.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
December 31, 2009

The Consolidated Investments Funds are not subject to federal income taxes and therefore no provision has been made in the accompanying consolidated financial statements.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds.  Foreign cash of $4.1 million is included in the cash and cash equivalents on the consolidated balance sheet.

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions.  These amounts are reported as restricted cash.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation.  Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

**Total Return Swaps**
A total return swap agreement is a two-party contract under which an agreement is made to exchange returns from predetermined investments or instruments.  The gross returns to be exchanged or "swapped" between the parties are calculated based on a "notional amount," which is valued monthly according to the valuation policy mentioned above to determine each party's obligation under the contract.

Risks could arise from entering into swap agreements from the potential inability of counterparties to meet the terms of their contracts, and from the potential inability to enter into a closing contract.  The Partnership's Consolidated Investment Funds recognize all cash flows received (paid) or receivable (payable) from swap transactions on a net basis as realized or unrealized gains or losses in the consolidated statement of income.  The Partnership and the Consolidated Investment Funds are charged a finance cost by counterparties with respect to each agreement.  The finance cost is reported as part of the realized or unrealized gains or losses.

**Credit Default Swaps**
As discussed in Note 6, under a credit default swap agreement two parties agree to transfer the credit exposure of an asset between one another.  The seller of the swap guarantees the credit worthiness of a specific instrument by agreeing to pay the buying party a specific amount (generally par value) in the event that the instrument defaults.

At December 31, 2009, the Partnership's Consolidated Investment Funds were party to credit default swaps in which it acts as the guaranteeing party.  In the event that any of the underlying instruments default prior to the expiration of the agreements, the Consolidated Investment Funds are obligated to pay the swap counterparty the par value of the specific instrument.  The Consolidated Investment Funds collect a fee based on the size of the underlying positions which are treated as realized gains once received.  The difference between the current market value of the swaps and the original price of the swap is reported as an unrealized gain or loss.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies.  Short selling is the practice of selling securities that are borrowed from a third party.  The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.  Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash or securities.  The amount of the required deposit, which earns interest, is

12

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender.

**Securities Loaned**

The Partnership's Consolidated Investment Funds may lend securities to their financing counterparties for margin. The lending entity receives the interest associated with the securities loaned. The loans are secured by the fair value of the securities. Gains or losses in the fair value of the securities loaned that occur during the term of the loan will be for the account of the lender. The lender has the right under the lending agreement to recover the securities from the prime brokers on demand. The lender pays a fee to the broker for the cash collateral received. This is accounted for as interest expense. A credit risk exists to the lender under this type of transaction to the extent that the counterparty defaults on its obligation to return the securities loaned.

**Options**

The Partnership's Consolidated Investment Funds purchase and sell call and put options on equity securities and equity indices as part of its overall portfolio management strategies. Purchased call or put options may be used to obtain economic exposure equivalent to a long or short position, respectively, or to hedge existing or anticipates portfolio positions. Certain options contracts are index options, under which amounts due or payable upon exercise are settled entirely in cash based on the difference between the value of the index at maturity and its contract (or strike) value. The potential risk of loss for purchased options is limited to the premium paid.

The premium paid for the purchase of an option is included in the consolidated balance sheet as an investment and subsequently marked-to-market to reflect the current value of the option. If an option expires on the stipulated expiration date, the Consolidated Investment Funds realize a loss equal to the cost of the option. If the Consolidated Investment Funds enter into a closing sale transaction, the Consolidated Investment Funds realize a gain or loss, depending on whether the proceeds from the closing sale transaction are greater or less than the cost of the option. If the Consolidated Investment Funds exercise a call option, the cost of the securities acquired upon exercise is increased by the premium paid to buy the call. If the Consolidated Investment Funds exercise a put option, it realizes a gain or loss from the sale of the underlying security and the proceeds from such sale are decreased by the premium originally paid.

**Margin Transactions**

In order to obtain more investable cash, the Partnership and its subsidiaries may use various forms of leverage including purchasing securities on margin. Such leverage may allow the Partnership and its subsidiaries to increase net assets at a greater rate during increasing markets, but also may lead to a more rapid decrease in net assets in a declining market. A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**

Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable. This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2009. Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. Withdrawals payable may be treated as capital for purposes of allocations of gains/losses pursuant to the partnerships' governing documents. At December 31, 2009, the Consolidated Investment Funds had withdrawals payable of $36.2 million.

**Use of Estimates**

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements.  Actual results could differ from those estimates.

**Foreign Currency Transactions**
The Partnership's subsidiary Highland Europe uses British Pounds as its functional currency and enters into transactions in multiple foreign currencies.  All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2009.  Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period.  Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the consolidated statement of income.

The Consolidated Investment Funds do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments*.

**Financial Instruments**
The Partnership and its consolidated entities determine fair value of financial instruments as required by U.S. GAAP.  The carrying amounts for cash and cash equivalents, receivables, accounts payable and accrued liabilities approximate their fair values because of their short maturities.

**Life Settlement Contracts**
One of the Partnership's Consolidated Investment Funds invests in life settlement contracts (the "Policies").  The Policies are reflected as a component of "Investments, at fair value" in the Consolidated Statement of Assets, Liabilities and Partners' capital.  Realized and unrealized gains/ (losses) on the Policies are reflected in the Consolidated Statement of Income.  Cash flows used to purchase the Policies are reflected as a component of "Purchases of Investments" in the Consolidated Statement of Cash Flows.

The Consolidated Investment Funds were invested in 119 policies at December 31, 2009 with a total face value of approximately $1 billion.

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

**Goodwill and Other Intangible Assets**
The Partnership purchased Highland Europe on April 6, 2005.  Goodwill represents the amount paid in excess of the fair value of the assets of Highland Europe at the date of acquisition.  No goodwill impairments existed as of December 31, 2009.

The Partnership has obtained the rights to the management contracts of certain RICs it manages by acquiring the underlying contracts from the predecessor investment manager.  The Partnership performs an impairment test on the purchased investment contracts on an annual basis.  Any depreciation in the value of the purchased investment management contracts are accounted for in the year when it occurs.  The carrying values of the purchased investment management contracts are not adjusted for appreciation.  The goodwill and purchased investment management contracts are indefinite-lived assets and are not amortized.

**Recently Issued Accounting Standards & Interpretations**

14

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

In September 2009, the FASB issued ASU 2009-06, *Income Taxes (Topic 740)—Implementation Guidance on Accounting for Uncertainty in Income Taxes and Disclosure Amendments for Nonpublic Entities* (formerly proposed as FASB Staff Position No. 48-d, *Application Guidance for Pass-Through Entities and Tax-Exempt Not-for-Profit Entities and Disclosure Modifications for Nonpublic Entities)*, which amended Accounting Standards Codification Subtopic 740-10, *Income Taxes – Overall*. ASU 2009-06 clarifies that an entity's assertion that it is a pass-through entity is a tax position and should be assessed in accordance with Subtopic 740-10. Additionally, the ASU provides implementation guidance on the attribution of income taxes to entities and owners. The revised guidance is effective for periods ending after September 15, 2009. The adoption of ASU 2009-06 did not have a material impact on the Partnership's financial position or results of operations at the date of adoption.

In June 2009, the FASB issued Statement of Financial Accounting Standards ("SFAS") No. 168, *The FASB Accounting Standards Codification and the Hierarchy of Generally Accepted Accounting Principles, a replacement of FASB Statement No. 162* (subsequently codified into FASB ASC Topic 105) which established the FASB Accounting Standards Codification ("ASC" or the "Codification") as the single source of authoritative accounting principles for U.S. GAAP issued by the FASB. The Codification supersedes all existing non-SEC accounting and reporting standards and subsequent to adoption, the FASB will issue new standards in the form of ASUs, and no longer as SFASs, FASB Staff Positions or Emerging Issues Task Force Abstracts. The Codification is effective for reporting periods ending on or after September 15, 2009. The adoption of the Codification did not have any impact on the Partnership's financial position or results of operations at the date of adoption.

In April 2009, the FASB issued guidance on determining fair value when the volume and level of activity for an asset or liability has significantly decreased and identifying transactions that are not orderly (originally issued as FASB Staff Position SFAS 157-4, *Determining Fair Value When the Volume and Level of Activity for the Asset or Liability Have Significantly Decreased and Identifying Transactions That Are Not Orderly,* and subsequently codified within FASB ASC Topic 820). The guidance provides additional guidance to expand on the factors that should be considered in estimating fair value when there has been a significant decrease in market activity for an asset or liability. The guidance is effective for interim and annual periods ending after June 15, 2009. The adoption did not have any impact on the Partnership's financial position or results of operations at the date of adoption.

In December 2007, the FASB issued guidance on noncontrolling interests in consolidated financial statements (originally issued as SFAS No. 160, *Noncontrolling Interests in Consolidated Financial Statements—an amendment of ARB No. 51,* and subsequently codified within FASB ASC Topic 810). The guidance requires a company to clearly identify and present ownership interests in subsidiaries held by parties other than the company within the equity section of the consolidated financial statements. Additionally, Topic 810 requires: (i) the amount of consolidated net income (loss) attributable to the controlling and the noncontrolling interests to be clearly identified and presented on the face of the consolidated statements of operations; (ii) acquisitions of noncontrolling interest to be accounted for as equity transactions with no step-up to fair value; (iii) when a subsidiary is deconsolidated, any retained noncontrolling interest and the gain or loss upon deconsolidation to be measured at fair value; and (iv) losses to be allocated to noncontrolling interest regardless of whether cumulative losses have exceeded the noncontrolling interest in the subsidiary's capital. The guidance is effective for reporting periods beginning on or after December 15, 2008.  The adoption of the revised guidance did not have any impact on the Partnership's financial position or results of operations at the date of adoption.

In June 2009, the FASB issued amended guidance on accounting for transfers of financial assets (originally issued as SFAS No. 166, *Accounting for Transfers of Financial Assets, an amendment of FASB Statement No. 140,* and subsequently reissued as ASU 2009-16, *Accounting for Transfers of*

15

D-CNL000274
**Appx. 00972**

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

*Financial Assets*). The amendments were issued to improve the information that a reporting entity provides in its financial statements about a transfer of financial assets, the effects of a transfer on its financial statements, and a transferor's continuing involvement, if any, in transferred financial assets. The amendments eliminate the concept of qualifying special purpose entities from U.S. GAAP. These entities will now be evaluated for consolidation in accordance with the applicable consolidation criteria. The amendments are effective for reporting periods beginning on or after November 15, 2009. The adoption of ASU 2009-16 is not expected to have any impact on the Company's financial position or results of operations.

In June 2009, the FASB issued amended guidance on accounting for variable interest entities (originally issued as SFAS No. 167, *Amendments to FASB Interpretation No. 46(R)*, and subsequently reissued as ASU 2009-17, *Improvements to Financial Reporting by Enterprises Involved with Variable Interest Entities*). The amendments were issued to address the effects of the removal of the concept of qualifying special purpose entities from U.S. GAAP and to address concerns regarding the consolidation of variable interest entities. ASU 2009-17 will require a qualitative approach rather than a quantitative approach when determining the primary beneficiary of a variable interest entity and will also change the criteria by which an enterprise determines whether it is the primary beneficiary of an entity. In addition, the amended interpretation will no longer consider removal rights when determining whether an entity is a variable interest entity and whether to consolidate a variable interest entity as the primary beneficiary unless those rights are held by a single party. ASU 2009-17 is effective for reporting periods beginning on or after November 15, 2009. The adoption of ASU 2009-17 is not expected to have any impact on the Partnership's financial position or results of operations, as substantially all of the entities in which it holds variable interests will qualify for the scope deferral included in ASU 2010-10, *Amendments to Statement 167 for Certain Investment Funds.*

In February 2010, the FASB issued ASU 2010-10, *Amendments to Statement 167 for Certain Investment Funds.* ASU 2010-10 defers the effective date of ASU 2009-17 for certain investment entities to allow the FASB to work with the International Accounting Standards Board ("IASB") in developing consistent consolidation guidance. The deferral will apply to a reporting entity's (i.e. investment manager's) interest in an entity (i) that has the attributes of an investment company or (ii) for which it is industry practice to apply measurement principles for financial reporting purposes that are consistent with those followed by investment companies. The deferral in ASU 2010-10 would not apply in situations in which a reporting entity has the explicit or implicit obligation to fund actual losses of an entity that could potentially be significant to the entity. ASU 2010-10 is effective for annual reporting periods beginning on or after November 15, 2009, and for interim periods within that first annual reporting period. The adoption of ASU 2010-10 is not expected to have any impact on the Company's financial position or results of operations, as adoption of the deferral results in the Company continuing to apply consolidation and disclosure requirements in effect during prior periods.

In September 2009, the FASB issued Accounting Standards Update ("ASU") 2009-12, *Fair Value Measurements and Disclosures (Topic 820)—Investments in Certain Entities That Calculate Net Asset Value Per Share (or Its Equivalent)* which amended Accounting Standards Codification Subtopic 820-10, *Fair Value Measurements and Disclosures—Overall*. The amended guidance offers investors a practical expedient for measuring the fair value of investments in certain entities that calculate net asset value per share (NAV). The ASU is effective for the first reporting period (including interim periods) ending after December 15, 2009. The Partnership has not yet determined the impact, if any, that the implementation of ASU 2009-12 would have on our consolidated results of operations or financial condition.

3.   **Fixed Assets and Leasehold Improvements**

HIGHLY CONFIDENTIAL

D-CNL000275

**Appx. 00973**

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2009:

*(in thousands)*

| | | |
|---|---|---|
| Buildings | $ | 10,119 |
| Leasehold improvements | | 4,060 |
| Computer and equipment | | 3,448 |
| Furniture and fixtures | | 3,185 |
| Computer software | | 2,287 |
| Land | | 1,328 |
| Accumulated depreciation | | (9,536) |
| | $ | 14,891 |

The Partnership and its consolidated entities are depreciating fixed assets as follows:

| | **Period** |
|---|---|
| Buildings | 29 - 40 years |
| Leasehold improvements | Lease term |
| Computer and equipment | 5 years |
| Furniture and fixtures | 7 years |
| Computer software | 3 years |

Depreciation expense in 2009 totaled approximately $4.8 million for the Partnership and its subsidiaries.

The Partnership and its consolidated entities had approximately $16.4 million of capital expenditures in 2009.

**4.      Investments**

Detailed below is a summary of the Partnership and its subsidiaries' investments at December 31, 2009:

HIGHLY CONFIDENTIAL

D-CNL000276
**Appx. 00974**

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

| *(in thousands)* | Amortized Cost/Cost | | Fair Value | |
|---|---|---|---|---|
| Investments in floating rate syndicated bank loans | $ | 937,360 | $ | 365,304 |
| Investments in fixed rate syndicated bank loans | | 6,695 | | 7,822 |
| Investments in fixed income securites | | 948,995 | | 528,096 |
| Investments in equity securities | | 1,277,263 | | 761,508 |
| Investments in life settlement contracts | | 242,472 | | 144,952 |
| Investments in CLOs (mezz tranches) | | 83,369 | | 37,254 |
| Investments in CLOs (residual CLO equity tranches) | | 150,381 | | 11,084 |
| Investments in closed-end mutual funds | | 13,238 | | 12,558 |
| Investments in private placement real estate | | 132,373 | | 22,372 |
| Investments in limited partnerships | | 160,133 | | 119,180 |
| Investments in warrants | | 6,076 | | 9,236 |
| Total investments | $ | 3,958,355 | $ | 2,019,366 |
| Net unrealized gain/loss on credit default swaps | $ | (2,563) | $ | (102,605) |

| | Proceeds | | Fair Value | |
|---|---|---|---|---|
| Securities sold, not yet purchased | $ | 15,093 | $ | 21,406 |

**Affiliated Investments**
***Investments in Residual CLO Equity and Mezzanine Tranches***
Investments in affiliated residual CLO equity tranches primarily represent tranches of CLOs for which the Partnership and Highland Europe provide investment advisory services. The Consolidated Investment Funds receive quarterly distributions based on the excess interest after paying the stated interest distributions to the senior and mezzanine note holders, and paying the investment manager, trustee and other related fees. A portion of these distributions are amortized against the cost basis of the investment based of the actual cash distributions received during the year versus the total expected remaining cash distributions to the residual CLO equity tranche. The remainder of the distribution is recorded as interest income.

18

D-CNL000277
Appx. 00975

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

Investments in residual equity and mezzanine tranches of CLOs are not actively traded.  The estimated fair value of the CLOs is derived from broker quotes and valuation models.  The estimated fair value of these investments as presented in the consolidated balance sheet does not necessarily represent the amount that could be obtained from the sale of these investments.  Changes in the credit quality or the performance of the underlying collateral, the availability and price of assets available for reinvestment, interest rates and/or the interest rate curve, or other market conditions could have a material impact on the estimated fair value of the investments.

***Investment in Highland Special Situations Fund***
The Partnership invests in Highland Special Situations Fund ("HSSF"), a diversified, closed end RIC for which the Partnership provides investment advisory services.  As of December 31, 2009, the market value of the Partnership's investment in HSSF was approximately $3 million.  During the year ended December 31, 2009, the Partnership accrued approximately $0.2 million in dividends from HSSF.

***Investment in Highland Long/Short Equity Fund***
The Partnership invests in Highland Long/Short Equity Fund ("HEOF"), a diversified, open-end RIC for which the Partnership provides investment advisory services.  As of December 31, 2009, the market value of the Partnership's investment in HEOF was approximately $0.2 million.

***Investment in Highland Healthcare Fund***
The Partnership invests in Highland Healthcare Fund ("HHF"), a non-diversified, open-end RIC for which the Partnership provides investment advisory services.  As of December 31, 2009, the market value of the Partnership's investment in HHF was approximately $3.6 million.

***Investment in Highland Credit Strategies Fund***
The Partnership invests in Highland Credit Strategies Fund ("HCF"), a diversified, closed-end RIC for which the Partnership provides investment advisory services.  As of December 31, 2009, the market value of the Partnership's investment in HCF was approximately $4 million.  During the year ended December 31, 2009, the Partnership received approximately $0.1 million in dividends from HCF.

***Prepaid Forward Contract***
On July 28, 2006, Highland Multi-Strategy Onshore Master Subfund I, LLC ("Subfund") and Barclays Bank PLC ("Barclays") entered into a prepaid forward contract.  The Partnership and affiliates redeemed approximately $312.7 million of a reference portfolio, which was comprised of the following basket of funds advised by the Partnership:  Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund and Select Equity Fund.  Barclays simultaneously contributed approximately $312.7 million as a hedge to its obligation under the prepaid forward contract.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

Barclays was prepaid approximately $156.3 million, or one-half of the reference portfolio value at initiation of the transaction.  A notional amount, (the initial reference portfolio value less the amount prepaid), accretes interest to Barclays at monthly LIBOR plus 0.90% per annum.

A collateral account in the amount of approximately $53.2 million was established to further secure the transaction.  Due to extreme market volatility, all of the underlying holdings in the collateral account were sold during 2008.

The term of the prepaid forward contract was three years and allowed for net settlement upon termination.  The contract expired on July 31, 2009 whereby Barclays was to remit in cash the greater of the difference between the reference portfolio value and the notional amount, as valued on the scheduled termination date, or zero.  Upon expiration, Barclays was not obligated to make a cash payment to the Subfund.

On October 7, 2008, Barclays submitted a notice of early termination for the prepaid forward contract.  Refer to Note 17 for further discussion.

***Accreting Strike Option***
On February 28, 2007, Highland Multi-Strategy Onshore Master Subfund II, LLC entered into an Accreting Strike Option ("ASO") with Barclays.  The ASO's value is based on the following basket of funds ("the reference portfolio") advised by the Partnership:  Highland Crusader Offshore Fund II, Ltd., Credit Strategies Domestic Feeder, Highland CDO Opportunity Fund, Ltd., Real Estate Fund, Equity Focus Fund, Select Equity Fund and Credit Opportunities Domestic Feeder.  The value of the reference portfolio at inception was approximately $250.2 million

Barclays was paid a $71.4 million premium on the option.  The strike price, (the initial reference portfolio value less the premium paid), accretes interest to Barclays at monthly LIBOR plus 1.4% per annum.  As of December 31, 2009, the strike price was approximately $179.6 million.

The term of the accreting strike option is five years and allows for net settlement upon termination.  At contract expiration, Barclays will remit in cash the greater of the difference between the reference portfolio value and the strike price, as valued on the scheduled termination date, or zero.  As of December 31, 2009, the ASO did not have a positive net fair value.

Detailed below is a summary of the transaction as of December 31, 2009:

HIGHLY CONFIDENTIAL

D-CNL000279

**Appx. 00977**

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

*(in thousands)*

| Reference Portfolio | | Fair Value |
|---|---|---|
| Select Equity Fund | $ | 110,491 |
| Crusader Domestic Feeder | | 12,156 |
| Equity Focus Fund | | 6,974 |
| Credit Opportunities Domestic Feeder | | 3,238 |
| Real Estate Fund | | - |
| Highland CDO Opportunity Fund, Ltd. | | - |
| Credit Strategies Domestic Feeder | | - |
| Reference portfolio total | | 132,859 |
| Notional amount | | (179,563) |
| Fair value of accreting strike option | | (46,704) |

On October 13, 2008, Barclays served notice of early termination for the accreting strike option. Refer to Note 16 for further discussion.

***Investment in Highland Employee Retention Assets LLC ("HERA")***
During 2009, the Partnership established HERA, an employee deferred compensation vehicle. On October 26, 2009, approximately $12.1 million of assets were transferred to HERA. As of December 31, 2009, the Partnership's equity investment in HERA was approximately $11 million.

**5.    Fair Value of Financial Instruments**

As discussed in Note 2, the Partnership and its consolidated entities categorize investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. A majority of the Consolidated Investment Fund's investments and derivatives at December 31, 2009 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2009:

HIGHLY CONFIDENTIAL

D-CNL000280

**Appx. 00978**

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

*(in thousands)*

| | Level 1 | Level 2 | Level 3 | Estimated Fair Value at 12/31/09 |
|---|---|---|---|---|
| Loans | $ - | $ 16,048 | $ 357,077 | $ 373,125 |
| Bonds & Asset Backed Securities | - | 148,511 | 402,020 | 550,531 |
| Collateralized loan obligations | - | - | 16,001 | 16,001 |
| Rights & Warrants | 3,275 | - | 4,995 | 8,270 |
| Private placement real estate | - | - | 12,180 | 12,180 |
| Limited partnership interest | 11,552 | - | 129,372 | 140,924 |
| Common equity securities | 133,123 | - | 245,612 | 378,735 |
| Mutual Funds | 9,605 | - | 2,952 | 12,557 |
| Privately held equity | - | - | 246,090 | 246,090 |
| Life Settlement Contracts | - | - | 144,952 | 144,952 |
| Preferred stock | - | - | 136,000 | 136,000 |
| Common stock sold short | (21,406) | - | - | (21,406) |
| Credit Default Swaps | - | - | (102,605) | (102,605) |
| **Total** | **$ 136,149** | **$ 164,559** | **$ 1,594,646** | **$ 1,895,354** |

The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2009:

*(in thousands)*

| | Estimated Fair Value as of December 31, 2008 | Purchases, Sales and Maturities, Net Level 3 | Net Transfers In/(Out) of Level 3 | Net Realized Losses | Net Unrealized Gains / (Losses) | Total Fair Value at December 31, 2009 |
|---|---|---|---|---|---|---|
| Loans | $ 337,962 | $ 32,004 | $ 22,878 | $ (49,165) | $ 13,398 | $ 357,077 |
| Bonds & Asset Backed Securities | 469,197 | (122,399) | (6,469) | (241,960) | 303,651 | 402,020 |
| Collateralized loan obligations | 123,730 | (57,985) | - | (385,826) | 336,082 | 16,001 |
| Rights & Warrants | 192 | (871) | (140) | (5) | 5,819 | 4,995 |
| Private placement real estate | 68,721 | (12,461) | 14,100 | (9,337) | (48,843) | 12,180 |
| Limited partnership interest | 137,544 | (13,274) | 120 | 6,002 | (1,020) | 129,372 |
| Common equity securities | 304,595 | (10,149) | - | (14,434) | (34,400) | 245,612 |
| Mutual Funds | 2,094 | - | - | - | 858 | 2,952 |
| Privately held equity | 109,543 | (45,119) | - | (34,963) | 216,629 | 246,090 |
| Life Settlement Contracts | 199,178 | (6,123) | - | (7,595) | (40,508) | 144,952 |
| Preferred stock | 175,778 | 3,085 | - | - | (42,863) | 136,000 |
| | $ 1,928,534 | $ (233,292) | $ 30,489 | $ (737,283) | $ 708,803 | $ 1,697,251 |

The following table provides a roll forward of the derivative contracts classified within Level 3 for the year ended December 31, 2009:

22

D-CNL000281

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

*(in thousands)*

| | | |
|---|---|---|
| **Estimated Fair Value as of December 31, 2008** | $ | (194,761) |
| Settlement of open contracts, net | | 123,096 |
| Net transfers in/(out) of Level 3 | | - |
| Net realized losses | | (126,158) |
| Net change in unrealized gain | | 95,218 |
| **Estimated Fair Value as of December 31, 2009** | $ | (102,605) |

6. **Derivative Financial Instruments**

Effective January 1, 2009, the Consolidated Investment Funds adopted the amended authoritative guidance on disclosures about derivative instruments. The new requirement amends and expands the disclosure requirement related to derivative instruments, to provide users of the financial instruments with an enhanced understanding of the use of derivative instruments by the Consolidated Investment Funds and how these derivatives affect the financial condition, financial performance, and cash flows of the Consolidated Investment Funds. This guidance requires qualitative disclosures about the objectives and strategies for using derivative instruments, quantitative disclosures about their fair value of, and gains and losses on, derivative instruments, as well as disclosures about credit-risk-related contingent features in derivative agreements.

Credit Default Swaps

The Consolidated Investment Funds enter into credit default swaps to simulate long and short bond positions that are either unavailable or considered to be less attractively priced in the bond market. The Consolidated Investment Funds use these swaps to manage risk where they have exposure to the issuer, or to take an active long or short position with respect to the likelihood of an event of default.

The buyer of a credit default swap is generally obligated to pay the seller a periodic stream of payments over the term of the contract in return for a contingent payment upon the occurrence of a credit event with respect to an underlying reference obligation. A credit event for corporate reference obligations includes bankruptcy, failure to pay, obligation acceleration, repudiation/moratorium or restructuring. If a credit event occurs, the seller must pay the contingent payment to the buyer, which is typically the par value (full notional value) of the reference obligation, though the actual payment may be mitigated by terms of the International Swaps and Derivative Agreement ("ISDA"), allowing for netting arrangements and collateral. In addition, the payment may be reduced by anticipated recovery rates, segregated collateral and netting arrangements that may incorporate multiple transactions with a given counterparty.

The seller of credit default swaps receives a fixed rate of income throughout the term of the contract, which typically is between one month and five years, provided that no credit event occurs. If a credit event occurs, the seller may be required to pay the buyer the full notional value of the reference obligation.

As of December 31, 2009, the Consolidated Investment Funds sellers of credit default swaps ("providing protection") on a total notional amount of $248.6 million. The notional amount of the swaps is not recorded in the financial statements; however it approximates the maximum potential amount of future payments that the Consolidated Investment Funds could be required to make if they are the seller of protection and a credit event were to occur. The fair value of the swaps as of December 31, 2009 was approximately ($102.6 million), and the Consolidated Investment Funds have posted approximately $144.4 million of cash collateral with the counterparty to secure these unrealized losses.

23

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

The Consolidated Investment Funds reduced their overall exposure to credit default swaps by closing several positions, which generated approximately $78.7 million of net realized losses that are recorded in the Consolidated Statement of Operations as a component of net realized losses from investment transactions.  The Consolidated Investment Fund's average exposure to credit default swap contracts for which it provided protection during the year ended December 31, 2009 was approximately $247 million.

The following table provides a summary of the Consolidated Investment Fund's maximum exposure by maturity credit rating under the swaps for which it sold protection.  All of the contracts mature within the next five years.

*(in thousands)*

Current issuer credit rating*

| | |
|---|---:|
| BBB | $ 29,500 |
| B+ | 7,500 |
| B | 7,500 |
| B- | 20,250 |
| CC | 135,410 |
| | $ 200,160 |

* The credit rating on the underlying bond provides an indicator of the risk that the Consolidated Investment Funds will have to perform under the swap arrangement.  Lower credit ratings with a shorter contract term indicate a higher likelihood of performance by the Consolidated Investment Funds.

<u>Total Return Swaps</u>
A total return swap is a two-party contract under which the parties agree to exchange returns from a predetermined portfolio of investments.  The gross returns to be exchanged or swapped between the parties are calculated based on a notional amount, which is valued monthly to determine each party's obligation under the contract.  All of the Consolidated Investment Fund's total return swap programs were terminated in 2009.  As of December 31, 2009, approximately $45.2 million was owed to various counterparties, on a net basis.  Approximately $54.1 million of cash and securities have been posted to secure the balance payable.  During the year, the Consolidated Investment Funds realized $96.4 million in realized losses related to the contracts closed out during the year.

**7.    Debt and Notes Payable**

Consolidated debt and notes payable as of December 31, 2009 consists of:

| *(in thousands)* | December 31, 2009 |
|---|---:|
| Partnership revolving credit facility | $ 143,435 |
| Credit Opportunities Master note payable | 128,603 |
| HCREA Nolen Drive note payable | 7,005 |
| Partnership promissory note | 466 |
| | $ 279,509 |

24

**Highland Capital Management, L.P.**
**Notes to Consolidated Financial Statements**
**December 31, 2009**

**Revolving Credit Facility**
On July 21, 2009, the Partnership amended and restated its credit agreement with Bank of America as syndication agent and The Bank of Nova Scotia as administrative agent in the amount of $147.3 million (the "Credit Agreement").  The Credit Agreement provides for loans which are scheduled to mature on July 21, 2011.

Interest is payable on the last day of each month.  The applicable spread for LIBOR loans under the Credit Agreement is LIBOR plus 5% per annum.  For base rate loans, the spread is 4% per annum over the prevailing prime rate.

Under the terms of the Credit Agreement, the availability of credit was subject to financial covenants requiring the Partnership to maintain a minimum amount of fee earning assets under management, a minimum amount of management fees earned, a minimum collateral ratio and a maximum on compensation paid.

On September 15, 2009, the Credit Agreement was amended and restated to clarify some documentation items.  On February 22, 2010, the Credit Agreement was amended a second time to clarify some of the reporting requirements.

The fair value of the facility as of December 31, 2009 was approximately $127 million.

**Promissory Note**
On January 4, 2006, the Partnership received a promissory note (the "Promissory Note") from Compass Bank in the amount of $2 million.  The Partnership must make monthly payments of principal and accumulated interest on the fifth day of each month.  The Promissory Note will mature on February 1, 2011.  On February 8, 2007, the Partnership and Compass Bank modified the Promissory Note, which reduced the interest rate from 2.0% to 1.7% in excess of LIBOR.  The outstanding balance of the Promissory Note as of December 31, 2009 was $0.5 million.  As of December 31, 2009, the estimated fair market value of the note was approximately equal to the carrying value.

**Credit Opportunities Master Note Payable**
On December 19, 2008, Highland Credit Opportunities CDO Financing, LLC ("CDO Financing"), a wholly-owned subsidiary of Credit Opportunities Master, executed a Note Purchase Agreement (the "Purchase Agreement") with certain investors that provided for the issuance of up to $218 million of senior secured convertible notes guaranteed by Credit Opportunities Master. Pursuant to the terms of the Purchase Agreement and concurrent with the execution of the Purchase Agreement, CDO Financing issued $116.6 million of senior secured convertible notes for $115.6 million of cash and securities with a fair value of $0.9 million. The proceeds from the notes were used primarily to fund an additional equity investment in Highland Credit Opportunities, Ltd. (the "CDO").  This investment was required under the terms of a forbearance agreement that the Credit Opportunities Master executed with the Majority Controlling Class of the CDO's note holders.

The notes have a stated maturity date of December 31, 2012 and accrue interest on a quarterly basis at a rate of 25% per year. The terms of the Purchase Agreement allow for up to 75% of the accrued interest due at any payment date to be capitalized as additional principal owed to the holders of the notes. For the year ended December 31, 2009, approximately $12 million of interest payable was capitalized and issued to the note holders.

Subject to certain conditions, the Purchase Agreement allows for CDO Financing to issue up to $101.4 million of additional notes to the existing note holders. The Purchase Agreement requires payment of a fee of 2.5% per annum on the unfunded portion of the note commitment. For the year ended December 31, 2009, approximately $2.6 million of unfunded commitment fees is recorded in

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

interest expense in the Credit Opportunities Master's consolidated statement of operations. As of December 31, 2009, a liability of approximately $2.7 million is included in interest payable in Credit Opportunities Master's consolidated statement of assets, liabilities, and partners' capital.

Under the terms of the Purchase Agreement, the Credit Opportunities Master may not make any prepayments until July 1, 2010. From July 1, 2010 through December 31, 2010, the Credit Opportunities Master may elect to prepay 50% of the outstanding principal balance. After that period, Credit Opportunities Master may prepay all or a portion of the outstanding principal, provided that each partial payment made to the note holders is in an aggregate principal amount of at least $0.5 million.

The Purchase Agreement stipulates a premium due to the note holders upon full or partial payment of the outstanding principal of the notes. The premium due is determined by the date the principal is repaid and is calculated as a percentage of that principal balance, with a minimum of 5% due on the stated maturity date of the notes. The following table presents the premium rates by payment period:

| Prepayment Period | Fees |
|---|---|
| July 1, 2010 - Dec. 31, 2010 | 15.0% |
| July 1, 2011 - Dec. 31, 2011 | 10.0% |
| July 1, 2012 - Dec. 31, 2012 | 6.0% |
| Dec. 31 2012 | 5.0% |

Credit Opportunities Master is accruing the minimum premium due, 5% of the outstanding balance, over the contractual life of the notes using the effective-yield method. For the year ended December 31, 2009, approximately $0.9 million of this premium due is recorded as a component of interest expense in Credit Opportunities Master's consolidated statement of operations. As of December 31, 2009 a liability of approximately $0.9 million for the total premium recognized over the life of the notes is included in interest payable in Credit Opportunities Master's consolidated statement of assets, liabilities, and partners' capital.

At the note holders' option, up to 50% of the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master between January 1, 2010 and June 30, 2010. From July 1, 2010 through December 31, 2012, up to 100% of the unpaid principal and accrued interest on the notes may be converted, in whole or in part, to limited partnership interests in the Feeder Fund or Credit Opportunities Master.

The Purchase Agreement grants the note holders a lien on certain assets held by Credit Opportunities Master. In addition, it requires Credit Opportunities Master and the CDO to comply with various financial covenants. Failure to meet these covenants may result in an event of default and give the note holders the right to accelerate repayment of the debt or initiate a liquidation of certain assets. Credit Opportunities Master was in compliance with the covenants as of December 31, 2009 and for the year then ended. As of December 31, 2009, the estimated fair value of the notes was approximately $167.4 million, which is based on value of the risk-adjusted yield from the expected future cash flows of the notes relative to comparable investments. Actual values may vary significantly from the estimates, particularly since the terms of the Company's debt are complex, and the market for the instruments is illiquid.

**HCREA Nolen Drive Note Payable**
On September 18, 2006, Nolen Drive entered into a $7 million note payable with Artesia Mortgage Capital Corporation, which is secured by the underlying property in Nolen Drive (the "Term Loan"). The Term Loan matures with all principal and accrued interest due on October 11, 2011.  The Term

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
### Notes to Consolidated Financial Statements
### December 31, 2009

Loan bears interest at a rate of 6.52% per annum.  Payments are due on the 11th of every month.  As of December 31, 2009, the estimated fair market value of the note was approximately $7.2 million.

**8.      Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its consolidated entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans.  The consolidated entities may also invest in derivative instruments, including total return and credit default swaps.  Investments in these derivative instruments throughout the year subject the consolidated entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Statement of Assets, Liabilities and Partners' Capital.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Master Partnership due to a change in the market value of its investments or the value of the investments underlying swap agreements.  The Partnership and its Consolidated Investment Fund's exposure to market risk is affected by a number of factors, including the size, composition and diversification of its investments and swap agreements; interest rates; and market volatility.  The Partnership and its Consolidated Investment Funds use various forms of leverage, including notes, which increase the effect of any investment value changes on net assets.

**Credit Risk**
Credit risk is the potential loss the Partnership and its consolidated entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract.  Because the consolidated entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties.  To limit the credit risk associated with such transactions, the consolidated entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Investment Fund's limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.  There is no public market for the interests, and neither the Consolidated Investment Funds nor their manager expect such a market to develop.

**Business Risk**
The Partnership provides advisory services to the consolidated investment funds.  The Consolidated Investment Funds could be materially affected by the actions and liquidity of the Partnership.

**High Yield Bonds and Loans**
The Partnership and its Consolidated Investment Funds may invest in high-yield bonds that have been assigned a lower rating category or are not rated by various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.  In addition, certain of the Consolidated Investment Funds' investments have resale or transfer restrictions that further reduce their liquidity.  The Consolidated Investment Funds also invest in senior secured syndicated bank loans and enter into direct contractual relationships with the corporate borrowers.  As such, the Partnership and its

27

HIGHLY CONFIDENTIAL