# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2015**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 45,580 |
| Restricted cash | | 74,935 |
| Investments at fair value (cost $2,166,029) | | 1,562,553 |
| Management and incentive fees receivable | | 7,542 |
| Due from broker for securities sold, not yet settled | | 8,607 |
| Other assets | | 16,363 |
| Deferred incentive fees receivable | | 31,214 |
| Due from affiliates | | 63,031 |
| Note receivable | | 63,000 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $7,683 | | 47,710 |
| **Total assets** | $ | 1,920,535 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,667 |
| Securities sold, not yet purchased (proceeds $195,298) | | 198,605 |
| Withdrawals payable | | 78,733 |
| Due to brokers | | 485,246 |
| Due to brokers for securities purchased, not yet settled | | 55,934 |
| Accrued and other liabilities | | 89,681 |
| Debt and notes payable | | 104,659 |
| **Total liabilities** | | 1,017,525 |
| Non-controlling interest | | 517,353 |
| Commitments | | |
| **Partners' capital** | | 385,657 |
| **Total liabilities and partners' capital** | $ | 1,920,535 |

The accompanying notes are an integral part of these consolidated statements.

HIGHLY CONFIDENTIAL

D-CNL000161

Appx. 01185

# Highland Capital Management, L.P.
## Consolidated Statement of Income
## Year Ended December 31, 2015

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 54,644 |
| Interest and investment income | | 56,113 |
| Other income | | 17,626 |
| Total revenue | | 128,383 |
| | | |
| **Expenses:** | | |
| Legal settlement | | 55,000 |
| Compensation and benefits | | 36,936 |
| Professional fees | | 35,779 |
| Marketing and advertising expense | | 7,452 |
| Investment and research consulting | | 967 |
| Depreciation and amortization | | 2,744 |
| Tax expense | | 875 |
| Other operating expenses | | 23,254 |
| Total expenses | | 163,007 |
| | | |
| Other income | | 4,869 |
| | | |
| Loss before investment and derivative activities | | (29,755) |
| | | |
| **Realized and unrealized loss from investment and derivative transactions:** | | |
| Net realized loss on investment and derivative transactions | | (52,005) |
| Net change in unrealized loss on investment and derivative transactions | | (199,485) |
| Total realized and unrealized loss from investment and derivative transactions | | (251,490) |
| | | |
| Net loss | | (281,245) |
| | | |
| Net loss attributable to the non-controlling interest | | 104,780 |
| | | |
| Net loss attributable to Highland Capital Management, L.P. | $ | (176,465) |

The accompanying notes are an integral part of these consolidated statements.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2015**

*(in thousands)*

|  | General Partner | Limited Partners | Total |
|---|---|---|---|
| Partners' capital, December 31, 2014 | $ - | $ 527,113 | $ 527,113 |
| Net loss attributable to Highland Capital Management, L.P. | - | (176,465) | (176,465) |
| Partner contributions | - | 70,000 | 70,000 |
| Partner distributions | - | (34,991) | (34,991) |
| Partners' capital, December 31, 2015 | $ - | $ 385,657 | $ 385,657 |

The accompanying notes are an integral part of these consolidated statements.

4

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2015**

*(in thousands)*

| | | |
|---|---:|---:|
| **Cash flows from operating activities:** | | |
| Net loss | $ | (281,245) |
| Adjustment to reconcile net loss to net cash | | |
| used in operating activities: | | |
| Net realized loss on investments and derivative transactions | | 52,005 |
| Net change in unrealized loss on investments and derivative transactions | | 199,485 |
| Amortization and depreciation | | 2,744 |
| **Changes in assets and liabilities:** | | |
| Restricted cash | | 62,920 |
| Management and incentive fee receivable | | 1,028 |
| Deferred incentive fees | | 1,378 |
| Other assets | | 3,515 |
| Accounts payable | | (499) |
| Accrued and other liabilties | | (10,975) |
| Due from brokers | | 33,145 |
| Due from affiliate | | 7,037 |
| Due to brokers for securities purchased, not yet settled | | (13,057) |
| Due to brokers | | (254,237) |
| Net cash used in operating activities | | (196,756) |
| **Cash flows from investing activities:** | | |
| Purchases of fixed assets and leasehold improvements, net | | (42,387) |
| Purchases of investments | | (281,350) |
| Proceeds from dispositions of investments | | 353,688 |
| Proceeds from securities sold, not yet purchased | | 260,033 |
| Issuance of notes receivable to affiliates | | (25,500) |
| Purchases of investments to cover securities sold, not yet purchased | | (99,737) |
| Net cash provided by investing activities | | 164,747 |
| **Cash flows from financing activities:** | | |
| Payments on long-term debt | | (7,347) |
| Proceeds from long-term debt | | 58,419 |
| Capital contributions from minority interest investors of consolidated entities | | 500 |
| Capital withdrawals by minority interest investors of consolidated entities | | (7,798) |
| Partner contributions | | 7,000 |
| Capital withdrawals by investors | | (4,227) |
| Partner distributions | | (34,991) |
| Net cash provided by financing activities | | 11,556 |
| Net decrease in cash and cash equivalents | | (20,453) |
| **Cash and cash equivalents** | | |
| Beginning of year | | 66,033 |
| End of year | $ | 45,580 |
| **Supplemental disclosure of cash flow informaton:** | | |
| Interest paid during the year | $ | (4,330) |
| Taxes paid during the year | | (492) |
| Investments received in-kind | | 33,833 |
| Investments distributed in-kind | | (9,690) |

The accompanying notes are an integral part of these consolidated statements.

HIGHLY CONFIDENTIAL

D-CNL000164

**Appx. 01188**

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**1.      Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment adviser under the Investment Advisers Act of 1940 that manages collateralized loan obligations ("CLOs"), hedge funds, private equity funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business.  The Partnership's general partner is Strand Advisors, Inc. (the "General Partner").  The Partnership is owned by an unaffiliated trust as well as affiliated trusts and personal holdings of the senior management of the Partnership.

As of December 31, 2015, the Partnership provided investment advisory services for twenty-nine CLOs, seven separate accounts, one registered investment company, one master limited partnership, and sixteen hedge fund or private equity structures, with total fee-earning assets under management of approximately $9.5 billion.

**2.      Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements.  Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs' expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

6

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Consolidation of Non-Variable Interest Entities**

The Partnership consolidates the following non-VIEs (along with majority owned funds: Highland Diversified Credit Fund, L.P., Highland Capital Healthcare Partners Master, LP, Highland Select Equity Fund, L.P., Highland Equity Partners, L.P., Highland Merger Arbitrage Fund, L.P., and Highland Equity Focus Fund, L.P., collectively the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Crusader Offshore Partners, L.P. ("Crusader Master"), a Bermuda exempted limited partnership that commenced operations on July 10, 2000;

- Highland CDO Opportunity Master Fund, L.P. ("CDO Master Fund"), a Bermuda limited partnership that commenced operations on November 9, 2005;

- Highland Credit Strategies Master Fund, L.P. ("Credit Strategies Master"), a Bermuda exempted limited partnership that commenced operations on August 24, 2005;

- Highland Multi Strategy Credit Fund, L.P. ("Multi Strategy Master"), formerly Highland Credit Opportunities CDO, L.P., a Delaware limited partnership that commenced operations on December 29, 2005 and changed its name on August 26, 2014;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Canopy Timberlands, L.P., a Delaware limited partnership that commenced operations on April 29, 2008;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore"), a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore"), a Delaware limited partnership that commenced operations on September 2, 2008

- BB Votorantim, Highland Infrastructure LLC ("BB Votorantim"), a Delaware limited liability company which began operations on May 29, 2014; and

**Consolidation of Majority Owned Entities**

The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in HFP GP, LLC, a Delaware limited liability company that commenced operations on January 20, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

7

D-CNL000166

**Appx. 01190**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd, a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 100% interest in Highland Capital Management Korea, Ltd., a company organized in the Republic of Korea that commenced operations on August 2, 2012;

- 100% interest in HE Capital, LLC., a Delaware limited liability company that was formed on March 22, 2007;

- 100% interest in De Kooning, Ltd, a Cayman company that was formed on December 1, 2012;

- 100% interest in Hirst, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Hockney, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Oldenburg, Ltd., a Cayman company that was formed on December 1, 2012;

- 99.9% interest in Penant Management, LP., a Delaware limited partnership that was formed on December 12, 2012;

- 100% interest in Semence, LLC, a Delaware limited liability company that was formed on December 16, 2013;

- 100% interest in SK Shareholder Services, LLC, a Delaware limited liability company that was formed on October 24, 2013;

- 100% interest in Pollack, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Warhol, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in HCREF-I Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-X Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XI Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XII Holding Corp., a Delaware company that was formed on December 13, 2012;

- 80% interest in Highland Employee Retention Assets ("HERA"), LLC, a Delaware limited liability company that was formed on October 26th, 2009;

- 100% interest in Highland Diversified Credit Fund, LP ("Highland Offshore Partners"), a Delaware limited partnership which began operations on February 29, 2000 and was organized for the sole purpose of investing substantially all of its assets in Highland Offshore Partners, L.P;

8

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

- 99.6% interest in Highland Select Equity Fund, LP, a Delaware limited partnership which began operations on January 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value

- 100% interest in Highland Equity Partners, LP, a Delaware limited partnership which began operations on August 1, 2013 and was organized for the purpose of investing with long-term perspective in a concentrated portfolio of stocks;

- 99.6% interest in Highland Equity Focus Fund, LP, a Delaware limited partnership which began operations on September 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value;

- 50.87% interest in Highland Capital Healthcare Partners Master, LP ("Healthcare Master"), a Cayman limited partnership which began operations on February 1, 2011 and was organized for the purpose of achieving appreciation of its assets through the investment and trading of securities, primarily by investing with a long-term perspective in a concentrated portfolio of stocks primarily in the healthcare industry;

- 100% interest in HCM Holdco, LLC, a Delaware limited liability company formed on October 27th, 2015;

- 100% interest in Heimskringla, LLC, a Nevada limited liability company formed on November 9th, 2015;

- 100% interest in Highland Merger Arbitrage Fund, LP, a Delaware limited partnership which began operations on October 16, 2014; and

- 95% interest in Estates on Maryland Holdco, LLC ("Estates on Maryland"), a Delaware limited liability company which began operations on July 24, 2015 and was organized for the purpose of owning, operating and managing real estate

All inter-partnership and intercompany accounts and transactions involving the above listed consolidated entities ("Consolidated Entities") have been eliminated in all of the aforementioned consolidating schedules. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide - Investment Companies. The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

Due to the deconsolidation of certain investment funds, some prior year balances referenced within the following notes to the consolidated financial statements may not tie to prior year issued financial statements.

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

The following table includes a rollforward of noncontrolling interests from December 31, 2014, to December 31, 2015.

*(in thousands)*

| | |
|---|---:|
| Noncontrolling interest, December 31, 2014 | $ 621,306 |
| Net loss attributable to noncontrolling interest | (104,780) |
| Noncontrolling partner contributions | 500 |
| Noncontrolling partner distributions | (7,798) |
| Noncontrolling interest of newly consolidated entities | 8,125 |
| Noncontrolling interest, December 31, 2015 | $ 517,353 |

**Investment Transactions**
Investment transactions are recorded on a trade date basis.  Investments in securities are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

See Note 5 for the Partnership's fair value process and hierarchy disclosures.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements.  Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value.  The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages.  During the year ended December 31, 2015, the Partnership and its Consolidated Entities recognized management fees of approximately $54.6 million.  The Partnership recognized approximately $0.1 million of depreciation on incentive fees earned prior to 2008, previously deferred under Sec. 409(A) of the Internal Revenue Code, which has been presented in *Other Income* in the Consolidated Statement of Income.

**Shared Services Revenue**
The Partnership recognizes revenue as earned in connection with services provided to related parties under various shared services agreements. Under these agreements, the Partnership earns fees for services including, but not limited to, back office support functions, marketing, and investment advisory services. During the year ended December 31, 2015, the Partnership and its Consolidated Entities recognized shared services revenue of approximately $12.4 million, which has been presented in *Other Income* in the Consolidated Statement of Income. See further discussion in Note 8.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums associated with purchases of investments are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis over the life of the investment. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. See further discussion in Note 14.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Cash equivalents are carried at cost, which approximates market value. At December 31, 2015, the Partnership and Consolidated Entities held cash balances at certain financial institutions in excess of the federally insured limit of $0.3 million. The Partnership and Consolidated Entities regularly monitor the credit quality of these institutions.

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions. These amounts are reported as restricted cash on the Consolidated Balance Sheet.

**Notes Receivable**
Notes receivable consists of secured promissory notes with maturities greater than one year. When available, the Partnership uses observable market data, including pricing on recent closed transactions to value notes. When appropriate, these notes may be valued using collateral values. Adjustments to the value may be performed in circumstances where attributes specific to the collateral exist suggesting impairment.

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

HIGHLY CONFIDENTIAL

D-CNL000170

**Appx. 01194**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Partnership's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.

Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender. A gain (which cannot exceed the price at which the Consolidated Investment Funds sold the security short) or a loss (which theoretically could be unlimited in size) will be settled upon termination of a short sale.

**Options Contracts**
The Partnership and the Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments. A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period. When the Partnership or the Consolidated Entities purchase (write) an option, an amount equal to the premium paid (received) by the entity is reflected as an asset (liability). The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold. When an option expires (or the Partnership or the Consolidated Entities enter into a closing transaction), the entity realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid). Exercise of a written option could result in the Partnership or the Consolidated Entities purchasing a security at a price different from the current market value.

The Partnership and the Consolidated Entities are exposed to counterparty risk from the potential that a seller of an option contract does not sell or purchase the underlying asset as agreed under the terms of the option contract. The maximum risk of loss from counterparty risk to the Partnership and the Consolidated Entities is the greater of the fair value of its open option contracts or the premiums paid to purchase the open option contracts. The Partnership and the Consolidated Entities consider the credit risk of the intermediary counterparties to its option transactions in evaluating potential credit risk.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Margin Transactions**
To obtain more investable cash, the Consolidated Entities may use various forms of leverage including purchasing securities on margin.  A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable.  This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2015.  Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. At December 31, 2015, the Consolidated Investment Funds had withdrawals payable of $78.7 million.

**Foreign Currency Transactions**
The Partnership's subsidiary HCM Singapore uses Singapore dollars as their functional currency.  All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2015.  Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period.  Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the Consolidated Statement of Income.

The Consolidated Entities do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments* on the Consolidated Statement of Income.

**Life Settlement Contracts**
One of the Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of *Purchase of investments* and *Proceeds from dispositions of investments* on the Consolidated Statement of Cash Flows.

**Financing**
The Partnership and its Consolidated Entities may finance the acquisition of its investments in securities and loans through financing arrangements.  The Partnership and its Consolidated Entities recognize interest expense on all borrowings on the accrual basis in the Consolidated Statement of Income.

**Financial Instruments**
The Partnership and its Consolidated Entities determine fair value of financial instruments as required by U.S. GAAP.  The carrying amounts for cash and cash equivalents, receivables, accounts payable and accrued liabilities approximate their fair values because of their short maturities.

13

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

**Recently Issued Accounting Standards and Interpretations**
In February 2015, the FASB issued ASU 2015-02 "ASC Topic 810, Consolidation." ASU 2015-02 modifies the evaluation of whether limited partnerships and similar legal entities are variable interest entities or voting interest entities, eliminates the presumption that a general partner should consolidate a limited partnership, affects the consolidation analysis of reporting entities that are involved with VIEs, and provides other updates on guidance regarding consolidation. ASU 2015-02 is effective for fiscal years beginning after December 15, 2016. Management is evaluating the impact of ASU 2015-02 on the Partnership's financial statements.

3.     **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2015:

*(in thousands)*

| | | |
|---|---|---:|
| Land | $ | 5,080 |
| Leasehold improvements | | 7,192 |
| Buildings | | 36,890 |
| Building improvements | | 580 |
| Furniture and fixtures | | 3,035 |
| Computer and equipment | | 2,338 |
| Computer software | | 278 |
| Accumulated depreciation | | (7,683) |
| | $ | 47,710 |

The Partnership and its Consolidated Entities are depreciating fixed assets as follows:

| | Period |
|---|---:|
| Land | Not depreciated |
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Building improvements | 15 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 3 - 5 years |
| Computer software | 3 years |

Depreciation expense in 2015 totaled approximately $1.9 million for the Partnership and its subsidiaries.

HIGHLY CONFIDENTIAL

D-CNL000173
**Appx. 01197**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

4.   **Investments**

Detailed below is a summary of the Partnership and its Consolidated Entities' investments at December 31, 2015:

| (in thousands) | Amortized Cost/Cost | | Fair Value | |
|---|---|---|---|---|
| Common equity securities | $ | 708,716 | $ | 762,119 |
| Limited partnership interests | | 149,460 | | 197,154 |
| Asset-backed securities | | 231,177 | | 151,777 |
| Life settlement contracts | | 437,942 | | 147,973 |
| Floating rate syndicated bank loans | | 216,938 | | 113,785 |
| Preferred equity | | 17,278 | | 84,843 |
| LLC interests | | 132,257 | | 33,739 |
| Closed-end mutual funds | | 2,329 | | 49,500 |
| Options contracts | | 15,034 | | 9,058 |
| Rights & warrants | | 50,740 | | 8,642 |
| Corporate bonds | | 203,932 | | 3,737 |
| American depositary receipts | | 226 | | 226 |
| Total investments | $ | 2,166,029 | $ | 1,562,553 |

| | Proceeds | | Fair Value | |
|---|---|---|---|---|
| Securities sold, not yet purchased | $ | (195,298) | $ | (198,605) |

5.   **Fair Value of Financial Instruments**

**Fair Value Measurement**
U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Entities have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

15

D-CNL000174
**Appx. 01198**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs.  For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Entities use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership and its Consolidated Entities use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities.  In cases where observable inputs are not available, the Partnership and Consolidated Entities  develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

The Partnership has established policies, as described above, processes and procedures to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of various personnel from the Partnership. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments. The Pricing Committee is responsible for establishing the valuation policies and evaluating the overall fairness and consistent application of those policies.

As of December 31, 2015, the Partnership and its Consolidated Entities' investments consisted primarily of common equity securities, limited partnership interests, asset-backed securities, life settlement contracts, floating rate syndicated bank loans, preferred equity, LLC interests, closed-end mutual funds, option contracts, rights and warrants, corporate bonds, and American depositary receipts. In addition, the Consolidated Entities engage in short sale transactions. The majority of these financial instruments are not listed on national securities exchanges and management is required to use significant judgment to estimate their values.

HIGHLY CONFIDENTIAL

D-CNL000175

**Appx. 01199**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Equity Investments**

Publicly traded equities are valued at the closing price at the date of the financial statements. The fair value of equity investments that are not traded on national exchanges or through real-time quotation services are derived from methodologies that provide appropriate fair value estimates. Equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. The Consolidated Entities also holds a number of private equity investments. These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Consolidated Entities  will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis. When utilizing comparable trading multiples, the Consolidated Entities  determine comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publicly available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Consolidated Entities to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances.

**Debt Securities**

The Partnership and Consolidated Entities invest in various types of debt, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Partnership and Consolidated Entities   first seek to obtain reliable market quotes from other parties dealing in the specific asset. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Loans and bonds that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

Absent both a reliable market quote and third-party pricing service date, the Partnership and Consolidated Entities may use various models to establish an estimated exit price. These investments are classified as Level 3 assets. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

**Asset-Backed Securities**

The Consolidated Entities invest in a variety of asset-backed securities. Asset-backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity.   The Consolidated Entities generally utilize an independent third party firm to perform these calculations and provide the relevant inputs.  The Consolidated Entities evaluate the results based on visible

HIGHLY CONFIDENTIAL

D-CNL000176

**Appx. 01200**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

market activity and market research.  When appropriate, the Consolidated Entities may apply other techniques based on a specific asset's characteristics. Asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Asset-backed securities that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

**Private Equity Investments**
The Partnership and Consolidated Entities hold private equity investments which resulted from the restructuring of other instruments.  These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Partnership and Consolidated Entities  will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis.  When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances. Private equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Private equity investments that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

The Consolidated Entities also invest in warrant securities of publicly–traded companies. The fair value of these investments is based on an option pricing model. The option model bases warrant value on a number of factors including underlying equity price as of the valuation date, strike price, exercise date, time to expiration and volatility. Warrant investments that have observable volatility are classified as Level 2 assets. Warrant investments where volatility inputs are not observable are valued using an estimated volatility input, and are classified as Level 3 assets.

**Life Settlement Contracts**
Life Settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. Management generally utilizes an independent third party firm to perform these calculations and provide the relevant inputs. Management evaluates the results based on visible market activity and market research. Since these inputs are not readily observable, these contracts are classified as Level 3 assets.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

At December 31, 2015, the Consolidated Entities' investments in life settlement contracts consisted of the following:

(U.S. dollars in thousands, except number of policies)

| Remaining Life Expectancy (in years) | Number of Policies | Face Value | Fair Value |
|---|---|---|---|
| 2-3 | 6 | $ 30,000 | $ 12,617 |
| 3-4 | 4 | 25,750 | 10,790 |
| 4-5 | 10 | 62,000 | 16,854 |
| Thereafter | 94 | 963,918 | 107,712 |
| Total | 114 | $1,081,668 | $ 147,973 |

**Limited Partnership Interests**
The Partnership and its Consolidated Entities hold limited partnership interests in various entities. These assets are valued as the net asset value of the limited partnership interests because the entities utilize fair value accounting for their own financial statements. These interests are classified as Level 3 assets.

**Options Contracts**
The Partnership and its Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments. A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period. When the Partnership and its Consolidated Entities purchase (writes) an option, an amount equal to the premium paid (received) by the purchaser is reflected as an asset (liability). The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold. When an option expires (or the purchaser enters into a closing transaction), the purchaser realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid). Exercise of a written option could result in the Partnership and its Consolidated Entities purchasing a security at a price different from the current market value.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2015**

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. A majority of the Consolidated Entities investments and derivatives at December 31, 2015 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2015:

*(in thousands)*

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/15 |
|---|---|---|---|---|
| Common equity securities | $ 273,431 | $ 292,688 | $ 196,002 | $ 762,121 |
| Limited partnership interests | - | - | 197,154 | 197,154 |
| Asset-backed securities | - | 144,167 | 7,610 | 151,777 |
| Life settlement contracts | - | - | 147,973 | 147,973 |
| Floating rate syndicated bank loans | - | 10,646 | 103,138 | 113,784 |
| Preferred equity | 60,433 | 20,004 | 4,405 | 84,842 |
| LLC interests | - | 5,794 | 27,945 | 33,739 |
| Closed-end mutual funds | 49,500 | - | - | 49,500 |
| Options | 9,058 | - | - | 9,058 |
| Rights & warrants | 198 | 579 | 7,865 | 8,642 |
| Corporate bonds | 363 | 3,374 | - | 3,737 |
| American depository receipts | 226 | - | - | 226 |
| **Total** | $ 393,209 | $ 477,252 | $ 692,092 | $ 1,562,553 |

| Liabilities | | | | |
|---|---|---|---|---|
| Common stock & Options sold short | $ 198,605 | $ - | - | $ 198,605 |

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2015:

*(in thousands)*

| | Total Fair Value at December 31, 2014 | Purchases | Sales and Maturities | Transfers Into Level 3 | Transfers Out of Level 3 | Net Realized Gains / (Losses) | Net Unrealized Gains / (Losses) | Total Fair Value at December 31, 2015 |
|---|---|---|---|---|---|---|---|---|
| Common equity securities | $ 220,466 | $ 2 | $ (17,125) | $ 14,605 | $ (13,041) | $ 7,161 | $ (16,066) | $ 196,002 |
| Limited partnership interests | 205,900 | 1,043 | (3,896) | - | - | 129 | (2,048) | 197,154 |
| Life settlement contracts | 114,640 | 41,422 | (32,149) | - | - | 10,203 | 13,857 | 147,973 |
| Floating rate syndicated bank loans | 111,850 | 4,205 | (7,381) | 1,043 | (7,256) | 159 | 518 | 103,138 |
| LLC interests | 22,551 | 1,685 | (80) | 1,918 | - | - | 1,871 | 27,945 |
| Rights & warrants | 5,962 | - | - | - | - | - | 1,903 | 7,865 |
| Asset-backed securities | 9,227 | - | (502) | 16 | - | - | (1,131) | 7,610 |
| Preferred equity | 7,030 | - | - | - | - | - | (2,625) | 4,405 |
| Corporate bonds | 77 | - | - | - | - | - | (77) | - |
| | $ 697,703 | $ 48,357 | $ (61,133) | $ 17,582 | $ (24,271) | $ 17,652 | $ (3,798) | $ 692,092 |

Transfers from Level 2 to Level 3 or from Level 3 to Level 2 are due to changes in observable pricing inputs as compared to the prior year. No significant transfers between Level 1 or Level 2 fair value measurements occurred during the year ended December 31, 2015.

20

D-CNL000179

Appx. 01203

## Highland Capital Management, L.P.
### (A Delaware Limited Partnership)
### Notes to Consolidated Financial Statements
### December 31, 2015

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $8.9 million of the net unrealized gains presented in the table above relate to investments held as of December 31, 2015.

Transfers out of Level 3 are recognized at the beginning of the period. The transfers out of Level 3 at December 31, 2015 were due to increases in market activity (e.g. frequency of trades) or the availability of a market clearing broker quote.

The following page includes a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy.

(Ending balance in thousands)

| Category | Ending Balance at 12/31/2015 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| Common equity securities | $ 196,002 | Multiples analysis | Multiple of EBITDA | 2.75x - 10.0x |
| | | | Price/MHz-PoP | $0.13 - $0.50 |
| | | | Liquidity Discount | 25 - 30% |
| | | | Discount for Lack of Marketability | 15 - 25% |
| | | | Credit Specific Discount | 20% |
| | | Discounted Cash Flow | Discount Rate | 8 - 16% |
| | | | Terminal Multiple | 3.3x - 7.5x |
| | | Black-Scholes Option Model | Holding Period | .75 - 2.67 Yrs |
| | | | Volatility | 15 - 20% |
| | | Transaction recovery analysis | N/A | N/A |
| Limited partnership investments | 197,154 | Appraisal | N/A | N/A |
| | | Net Asset Value of Underlying Assets and Liabilities | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| Life Settlement Contracts | 147,973 | Net Asset Value of Underlying Assets | Discount rate | 17 - 24% |
| Bank loans | 103,138 | Multiples analysis | Multiple of EBITDA | 3.5x - 7.25x |
| | | | Multiple of Revenue | .4x - .5x |
| | | Discounted Cash Flow | Discount rate | 15 - 15.5% |
| | | | Terminal Multiple | 3.75x - 6.5x |
| | | | Spread Adjustment | 1.7 - 2.3% |
| | | Transaction recovery analysis | Discount rate | 11% |
| | | Adjusted appraisal | Minority Discount | 25% |
| | | Third-party pricing vendor | N/A | N/A |
| LLC interests | 27,945 | Discounted Cash Flow | PW Profile of Reserve Categories | PV-8 - PV-20 |
| | | Adjusted appraisal | Minority Discount | 25% |
| | | Third-party pricing vendor | N/A | N/A |
| | | Appraisal | N/A | N/A |
| Rights & Warrants | 7,865 | Multiples analysis | Multiple of EBITDA | 8.0x - 10.0x |
| | | Discounted Cash Flow | Discount Rate | 12 - 14% |
| | | | Terminal Multiple | 7.5x |
| Asset-backed securities | 7,610 | Third-party pricing vendor | N/A | N/A |
| | | Look-through analysis of underlying assets | Various models including liquidation analysis | N/A |
| | | Debt-yield | Credit Specific Risk | 5% |
| | | | Liquidity | 1% |
| Preferred equity | 4,405 | Recovery analysis | Scenario Probabilities | Various |
| **Total** | $ 692,092 | | | |

21

D-CNL000180

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

6.   **Securities Sold under Agreements to Repurchase**

Transactions involving securities sold under agreements to repurchase are treated as collateralized financial transactions, and are recorded at their fair market values.  In addition, interest earned on the securities is included in interest receivable, and interest accrued on amounts borrowed is included in interest payable.  For the year ended December 31, 3015, Multi Strategy Master expensed approximately $0.7 million for interest charged on the amounts borrowed for repurchase agreements.

In connection with transactions in agreements to repurchase, it is Multi Strategy Master's policy that its counterparty take possession of the underlying collateral securities, the fair value of which exceeds the principal amount of the agreements to repurchase, including accrued interest, at all times. If the counterparty defaults under agreements to resell, and the fair value of the collateral declines, the realization of the collateral by Multi Strategy Master may be delayed or limited.

To reduce counterparty credit risk with respect to repurchase agreements, Multi Strategy Master has entered into a master repurchase agreement, which allows Multi Strategy Master to make (or to have an entitlement to receive) a single net payment in the event of default (close-out netting) for outstanding payables and receivables with respect to repurchase agreements with the counterparty.

The master repurchase agreement includes credit related contingent features which allow the counterparty to terminate the agreement prior to maturity in the event Multi Strategy Master's net assets decline by a stated percentage or Multi Strategy Master fails to meet the terms of the agreement, which would cause the Master Partnership to accelerate payment of any net liability owed to the counterparty.

For financial reporting purposes, Multi Strategy Master does not offset repurchase agreement assets and liabilities that are subject to netting arrangements in the Consolidated Balance Sheet. Bankruptcy or insolvency laws of a particular jurisdiction may impose restrictions on or prohibitions against the right of offset in bankruptcy, insolvency or other events.

Collateral terms are contract specific for repurchase agreements. For repurchase agreements traded under master repurchase agreements, the collateral requirements are typically calculated by netting the mark to market amount for each transaction under such agreement and comparing that to the value of any collateral currently pledged by Multi Strategy Master or the counterparty.

For financial reporting purposes, cash collateral that has been pledged to cover obligations of Multi Strategy Master, if any, is reported in due to/from brokers on the Consolidated Balance Sheet.  Generally, the amount of collateral due from or to a party must exceed a minimum transfer amount threshold before a transfer has to be made.  To the extent amounts due to Multi Strategy Master from its counterparties are not fully collateralized, contractually or otherwise, Multi Strategy Master bears the risk of loss from counterparty non-performance.

At December 31, 2015, securities with a fair value of approximately $61.2 million, which are included in investments in securities on the Consolidated Balance Sheet, were pledged to collateralize securities sold under agreements to repurchase.

22

D-CNL000181

**Appx. 01205**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

The following table presents, by counterparty, Multi Strategy Master's liabilities net of the related collateral pledged by Multi Strategy Master at December 31, 2015:

*(U.S. dollars in thousands)*

| Counterparty | Decription | Class of Related Collateral | Gross Value of Liability | Net Amount Due to Counterparty | Financial Instruments | Cash Collateral Pledged | Net Exposure After Collateral | Interest Rate | Maturity |
|---|---|---|---|---|---|---|---|---|---|
| Mizuho | Repurchase agreement | Asset-backed securities | $ 10,147 | $ 10,147 | $ (10,147) | $ - | $ - | 2.10% | 10/14/2022 |
| Mizuho | Repurchase agreement | Asset-backed securities | 30,215 | 30,215 | (30,215) | $ - | $ - | 1.10% | 11/1/2026 |
| Mizuho | Repurchase agreement | Asset-backed securities | 2,735 | 2,735 | (2,735) | $ - | $ - | 2.10% | 5/1/2027 |
| Mizuho | Repurchase agreement | Asset-backed securities | 2,508 | 2,508 | (2,508) | $ - | $ - | 2.10% | 11/1/2026 |
| Jefferies LLC | Repurchase agreement | Asset-backed securities | 2,148 | 2,148 | (2,148) | $ - | $ - | 2.74% | 11/1/2026 |
| | | | $ 47,753 | $ 47,753 | $ (47,753) | | | | |

## 7. Financial Instruments with Concentration of Credit and Other Risks

**Financial Instruments**

The Partnership and its Consolidated Entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans. The Consolidated Entities may also invest in derivative instruments, including total return and credit default swaps. Investments in these derivative instruments throughout the year subject the Consolidated Entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**

Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Entities due to a change in the market value of its investments or the value of the investments underlying swap agreements. The Partnership and its Consolidated Entities' exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations. These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Entities investments. Volatility or illiquidity could impair the Partnership and its Consolidated Entities performance or result in losses. The Partnership and its Consolidated Entities may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets. The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**

Credit risk is the potential loss the Partnership and its Consolidated Entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the Consolidated Entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties. To limit the credit risk associated with such transactions, the Consolidated Entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

HIGHLY CONFIDENTIAL

D-CNL000182

**Appx. 01206**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Liquidity Risk**
The Consolidated Entities' limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.  There is no public market for the interests, and neither the Consolidated Entities nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the Consolidated Entities.  Consolidated Entities could be materially affected by the liquidity, credit and other events of the Partnership.

**High Yield Bonds and Loans**
The Partnership and its Consolidated Entities' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange.  These investments trade in a limited market and it may not be possible to immediately liquidate them if needed.  In addition, certain of the Partnership and its Consolidated Entities' investments have resale or transfer restrictions that further reduce their liquidity.  Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Entities purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower.  Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Entities  have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Entities may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**Debt Obligations**
The Partnership and its Consolidated Entities' investment portfolio consists of collateralized loan obligations that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. Because of the inherent uncertainty of these investments, the Partnership's best estimates may differ significantly from values that would have been used had broader market for the investments existed.

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Entities invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings.  These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the

24

D-CNL000183

**Appx. 01207**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Entities' investments. However, the Consolidated Entities' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Entities. In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments. This limited diversity could expose the Consolidated Entities to losses that are disproportionate to market movements as a whole.

At December 31, 2015, the Consolidated Entities' investments were predominantly concentrated in the United States and Cayman Islands.

**Exit Difficulties**
The Partnership and its Consolidated Entities cannot assure investors that it will be able to exit its investments by sale or other disposition at attractive prices, if at all. The mergers and acquisitions and public securities markets are highly cyclical, which means that the Consolidated Entities' investments, even its best performing investments, may be illiquid for extended periods of time despite the Consolidated Entities' efforts to identify attractive exit opportunities. Additionally, a significant portion of the Consolidated Entities' assets at any time will likely consist of debt obligations and other securities that are thinly-traded, for which no market exists and/or are restricted as to their transferability under applicable law and/or documents governing particular transactions of the Consolidated Entities. In some cases, the Consolidated Entities may be unable to realize an investment prior to the date on which the Consolidated Entities are scheduled to terminate and/or have to sell or otherwise dispose of one or more investments on disadvantageous terms as a result of the Consolidated Entities' termination, or distribute such investments in kind.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Entities are provided by major financial institutions. In addition, all of the Partnership and its Consolidated Entities' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges. The Partnership or its Consolidated Entities may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations. While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Entities might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

**Leverage Risk**
The Consolidated Entities may borrow funds from brokers, banks and other lenders to finance its trading operations. The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Entities' investment portfolio may be subject. The use of margin and short-term borrowings creates several risks for the Consolidated Entities. If the value of the Consolidated Entities' securities fall below the margin level required by a counterparty, additional margin deposits would be required. If the Consolidated Entities are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Entities' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Entities to incur significant losses. In addition, to the extent the Consolidated Entities have posted excess collateral for margin

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Entities' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Entities. In addition, because the use of leverage allows the Consolidated Entities to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Entities may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Entities' assets, the Consolidated Entities may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements. As a result, the Consolidated Entities may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Entities have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar. The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2015, the Consolidated Entities' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Wind-Down Risk**
The ultimate proceeds that certain Consolidated Entities are able to realize on the sale of its investments will directly affect the amounts that the investors in the feeder funds are able to redeem in connection with the wind down process. These amounts may differ materially from the partners' capital balances as of December 31, 2015.

**Litigation Risk**
The Partnership and its Consolidated Entities are periodically subject to legal actions arising from the ordinary course of business. The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Entities. Refer to Note 15 for a discussion of open litigation.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Notes to Consolidated Financial Statements
December 31, 2015

8.    **Related Party Transactions**

**Investments Under Common Control**
Certain members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests.  Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable.  As of December 31, 2015, the Partnership and its Consolidated Entities held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---:|
| American Banknote Corporation | Common Equity | $    6,928 |
| American Home Patient | Common Equity | 1,012 |
| American Home Patient | Term Loan | 13,463 |
| Blackwell BMC, LLC | Common Equity | 8,623 |
| Canopy Timberlands, L.P. | Limited Partnership Interest | 78,528 |
| Canopy Timberlands Spout Springs, L.P. | Limited Partnership Interest | 28,702 |
| Carey International, Inc | Term Loan | 10,160 |
| Carey Holdings, Inc. | Common Stock | 52 |
| CCS Medical, Inc. | Loan | 22,451 |
| CCS Medical, Inc. | Common Equity | 6 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 73,724 |
| Euramax International Holdings B.V. | Warrants | 887 |
| Euramax International Holdings B.V. | Term Loan | 31,768 |
| Euramax International Holdings B.V. | Common Stock | 2,803 |
| Ginn LA Resorts Holdings, LLC | Term Loan | 512 |
| Ginn LA Conduit Lender, Inc. | First Lien Tranche A Credit-Linked Deposit | 178 |
| Ginn LA Conduit Lender, Inc. | First Lien Tranche B Term Loan | 443 |
| Highland Capital Healthcare Partners, L.P. | Limited Partnership Interest | 3,680 |
| Highland Long/Short Equity Fund | Mutual Fund | 263 |
| Highland Long/Short Healthcare Fund | Mutual Fund | 2,843 |
| Highland Park CDO 2006-1A | Asset Backed Debt | 756 |
| JHT Holdings Inc. | Term Loan | 19,780 |
| JHT Holdings Inc. | Revolving Term Loan | (25) |
| JHT Holdings Inc. | Common Stock | 660 |
| Las Vegas Land Holding | LLC Units | 16 |
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 312,691 |
| NexPoint Credit Strategies Fund | Closed-End Mutual Fund | 7,356 |
| NexPoint Residential Trust, Inc. | Publicly-traded REIT | 16,700 |
| Nex-Tech Aerospace Holdings, Inc. | Common Equity | 1,936 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 174 |
| Terrestar | Common Equity | 57,598 |
| Trussway Industries, Inc. | Common Equity | 16,425 |
| Turtle Bay Holdings, LLC | Equity Units | 8,655 |

27

D-CNL000186

Appx. 01210

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

Certain investments are issued and managed by affiliates of the Partnership. These investments are subject to the same valuation policies and procedures as similar investments within the same level of the fair value hierarchy. As of December 31, 2015, the Partnership and the Consolidated Entities held the following investments that were issued and managed by affiliates of the Partnership: *(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| ACIS 2013-2A | Asset backed debt | $  28,100 |
| ACIS 2013-2A | Asset backed equity | 23,800 |
| ACIS 2014-5A | Asset backed debt | 41,342 |
| ACIS 2015-6A | Asset backed equity | 10,830 |
| ACIS 2015-6A | Asset backed debt | 4,180 |
| BB Highland Floating Rate Fund I | Floating rate equity | 4,596 |
| BB Votorantim Highland Infrastructure LLC | Common equity | 1,328 |
| Greenbriar CLO, Ltd. | Asset backed equity | 15,327 |
| Highland Capital Healthcare Fund | Limited Partnership interest | 3,680 |
| Highland Energy MLP Fund | Mutual fund shares | 1,871 |
| Highland Floating Rate Opportunities Fund | Mutual fund shares | 654 |
| Highland Global Allocation Fund | Closed-end mutual fund shares | 1,603 |
| Highland Opportunistic Credit Fund | Mutual fund shares | 3,802 |
| Highland Park CDO, Ltd. - 1A | Asset backed debt tranche | 33 |
| Highland Park CDO, Ltd. - 1X | Asset backed equity | 2,100 |
| Highland Multi Strategy Fund | Limited Partnership interest | 22,314 |
| Highland Long/Short Equity Fund | Mutual fund shares | 263 |
| Highland Long/Short Healthcare Fund | Mutual fund shares | 2,843 |
| NexPoint Credit Strategies Fund | Closed-end mutual fund shares | 7,356 |
| PAMCO 1997 - 1A | Asset backed debt tranche | 692 |
| Rockwall Investors Corp. | Asset backed equity | 1,880 |
| Southfork CLO, Ltd. | Asset backed equity | 7,496 |
| Valhalla CLO, Ltd. | Asset backed debt | 1,480 |
| Westchester CLO, Ltd | Asset backed equity | 4,125 |

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2015, approximately $8.6 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other Assets* in the accompanying Consolidated Balance Sheet.

**Accounts Held with Related Party**
During the year the Partnership and its Consolidated Entities maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control.  As of December 31, 2015, balances in the accounts were approximately $53.0 million, a portion of which exceeds Federal deposit insurance limits.

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank.  Interest earned on the loans during the year was approximately $10.9 million.  At December 31, 2015, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $105.0 million and $82.1 million, respectively.

**Affiliated Transactions**
During the years ended December 31, 2014, and December 31, 2015, Highland Capital Management Fund Advisors, L.P. ("HCMFA") issued promissory notes to the Partnership in the amount of $6.0 million. The notes accrue interest at rates ranging from 1.97% - 2.82%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2015 total interest and principal due on the promissory notes was approximately $6.1 million and is payable on demand. The Partnership will not demand payment on amounts owed prior to May 31, 2017. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the years ended December 31, 2014, and December 31, 2015, NexPoint Advisors, L.P. ("NexPoint") issued promissory notes to the Partnership in the aggregate amount of $15.8 million. A revolving note was established with NexPoint on July 22, 2015. This allowed for an initial advance on principal of $1.3 million. As of December 31, 2015, the total principal outstanding on the revolving note was approximately $4.0 million. Both the notes and revolving line of credit accrue interest at a rate of 6.0%. As of December 31, 2015 total interest and principal due on the promissory notes was approximately $21.1 million and is payable on demand. The Partnership will not demand payment on amounts owed prior to May 31, 2017. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the years ended December 31, 2014, and December 31, 2015, HCRE Partners, LLC ("HCRE") issued promissory notes to the Partnership in the aggregate amount of $13.0 million. The notes accrue interest at a rate of 8.0%. As of December 31, 2015 total interest and principal due on the promissory notes was approximately $13.3 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the years ended December 31, 2014, and December 31, 2015, Highland Capital Management Services, Inc. ("HCMSI") issued promissory notes to the Partnership in the aggregate amount of $23.0 million. The notes accrue interest at rates ranging from 2.60% - 3.12%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. During the years ended December 31, 2014, and December 31, 2015, HCMSI repaid $8.1 million of principal. As of December 31, 2015 total interest and principal due on the promissory notes was approximately $14.9 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

**Services Performed by or on Behalf of an Affiliate**
In March 2007, Highland Capital of New York, Inc. a New York corporation ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf.  For the

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

year ended December 31, 2015, total marketing fee expense charged to the Partnership by Highland New York was approximately $5.8 million and as of December 31, 2015, amounts owed to Highland New York for services rendered was approximately $3.1 million.

Effective December 15, 2011, the Partnership commenced performing services on behalf of HCMFA, a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2015, the total fee charged by the Partnership to HCMFA was approximately $2.2 million and as of December 31, 2015, amounts owed to the Partnership by HCMFA for services rendered were approximately $0.2 million.

Effective July 29, 2010, the Partnership commenced performing services on behalf of Falcon E&P Opportunities GP, LLC. ("Falcon"), a Delaware limited liability company and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2015, the total fee charged by the Partnership to Falcon was approximately $0.4 million and as of December 31, 2015, no amounts were owed to the Partnership by Falcon for services rendered.

Effective January 1, 2011, the Partnership commenced performing services on behalf of Acis Capital Management, L.P. ("Acis"), a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2015, the total fee charged by the Partnership to Acis was approximately $6.1 million and as of December 31, 2015, no amounts were owed to the Partnership by Acis for services rendered.

Effective January 1, 2013, the Partnership commenced performing services on behalf of NexPoint. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2015, the total fee charged by the Partnership to NexPoint was approximately $1.0 million and as of December 31, 2015, no amounts were owed to the Partnership by NexPoint for services rendered.

Effective September 24, 2013, the Partnership commenced performing services on behalf of NexBank Capital, Inc. ("NexBank Capital"), financial services company. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2015, the total fee charged by the Partnership to NexBank Capital was approximately $0.1 million and as of December 31, 2015, no amounts were owed to the Partnership by NexBank Capital for services rendered.

Effective September 24, 2013, the Partnership commenced performing services on behalf of NexBank SSB, ("NexBank"), a Texas savings bank. Services include investment advisory services. The Partnership charges a fee for the services performed. For the year ended December 31, 2015, the total fee charged by the Partnership to NexBank was approximately $0.8 million and as of December 31, 2015, amounts owed to the Partnership by NexBank for services rendered were approximately $0.2 million.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2015**

Effective April 1, 2015, the Partnership commenced performing services on behalf of NexPoint Real Estate Advisors, L.P. ("NREA"). Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. NREA is charged a fee for the services provided. For the year ended December 31, 2015, the total fee charged to NREA by the Partnership was approximately $0.4 million and as of December 31, 2015, amounts owed by NREA to the Partnership for services rendered were approximately $0.4 million.

On April 20, 2016, to be effective as of January 1, 2008 the Partnership commenced performing services on behalf of Markham Fine Jewelers, L.P. ("Markham"). Services include, but are not limited to management oversight and planning services, and operational support, in each case, on an ad hoc/as needed basis. Markham is charged a fee for the services provided. For the year ended December 31, 2015, the total fee charged to Markham by the Partnership was approximately $1.9 million and as of December 31, 2015, amounts owed by Markham to the Partnership for services rendered were approximately $1.9 million.

Effective January 1, 2015, the Partnership commenced receiving services from Acis. Services include providing certain subadvisory services to the Partnership, to assist the Partnership with its services provided under the Investment Management Agreements with Bandera Strategic Credit Partners I, L.P. and Multi Strategy Master. For the year ended December 31, 2015, the total fee charged by Acis to the Partnership was $0.4 million and as of December 31, 2015, amounts owed by the Partnership to Acis for services received were approximately $0.1 million.

9.    **Note Receivable**

On December 21, 2015, the Partnership entered into a contribution agreement (the "Contribution Agreement") with an unaffiliated trust.  Pursuant to the Contribution Agreement a note (the "Note Receivable") in the amount of $63.0 million was due to the Partnership.  The Note Receivable will mature on December 21, 2030.  The Note Receivable accrues interest at a rate of 2.61% per annum. Accrued interest is paid-in-kind, with principal receipts occurring pursuant to a note amortization schedule, with such annual receipts commencing December 21, 2019.

10.    **Debt and Notes Payable**

**Promissory Note**
On December 31, 2014, the Partnership entered in to a promissory note with an investor in the amount of $18.6 million, in exchange for 100% of its LP interest in Highland Multi Strategy Credit Fund, L.P. The Partnership must pay one-third of the initial note amount, plus accumulated interest on each of the first three anniversaries of the note. The promissory note will mature on December 31, 2017.  The promissory note accrues interest at a rate of 3.00% per annum. The promissory note is collateralized by limited partnership interest in Multi Strategy Master. As of December 31, 2015 the remaining principal payable on the promissory note was $12.4 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On August 5, 2015, the Partnership entered in to a bridge credit agreement with KeyBank, National Association ("KeyBank") in the amount of $10.0 million. The term loan will mature on February 4, 2016.  The term loan accrues interest at the Daily Libor plus 3.00%. Accrued interest shall be paid monthly. The term loan is collateralized by the real property owned by Estates on Maryland. Subsequent to year end, the maturity date was extended to April 7, 2017, as discussed in Note 17. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

On August 17, 2015, the Partnership entered in to a promissory note with Frontier State Bank in the amount of $9.5 million. The promissory note will mature on August 17, 2018.  The promissory note accrues interest at the 3 month LIBOR rate plus 4.75%, adjusted each date of change, per annum. Accrued interest shall be paid quarterly. The promissory note is collateralized by shares of voting common stock of MGM Holdings, Inc. As of December 31, 2015 the remaining principal payable on the promissory note was 9.4 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On August 28, 2015, Highland Select Equity Partnership, L.P. ("Select") entered in to a promissory note with Eagle Sky Foundation, Inc. in the amount of $12.0 million. The promissory note accrues interest at 12.00% for the first twelve months, 10.00% for the following twelve months, and 8.00% for the last twelve months. Select must pay one-twelfth of the initial note amount, plus accumulated interest on a quarterly basis. The promissory note will mature on August 28, 2018. The promissory note is collateralized by shares of voting common stock of MGM Holdings, Inc. As of December 31, 2015 the remaining principal payable on the promissory note was $11.0 million. The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

On September 23, 2015, the Partnership received a master securities loan agreement (the "Securities Agreement") from The Get Good Non-Exempt Trust #2 ("Get Good") in the amount of $6.7 million for securities borrowed. The Securities Agreement accrues interest at a rate of 0.54%, the short term Applicable Federal Rate. The fair value of the loan will fluctuate with the fair value of the borrowed securities, throughout the term of the Securities Agreement. As of December 31, 2015 the fair value of the loan was $6.9 million. The fair value of the Partnership's securities loan approximates the carrying value of the securities loan.

On August 5, 2015, Estates on Maryland entered in to a loan and security agreement with KeyBank in the amount of $26.9 million. The loan will mature on September 1, 2020. The loan accrues interest at a rate of 4.00% above the 1 month LIBOR rate in effect from time to time, not to exceed the maximum interest rate allowed by applicable law. Accrued interest shall be paid monthly. The loan is collateralized by the mortgaged property. The fair value of Estates on Maryland's outstanding notes payable approximates the carrying value of the notes payable.

11.   **Due to Broker**

As of December 31, 2015 the due to broker balance of approximately $485.2 million represents approximately $240.4 million payable to financing counterparties for margin transactions.

12.   **Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.  In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Unfunded Loan Commitments**

As of December 31, 2015, Multi Strategy Master had unfunded loan commitments of approximately $4.9 million, which could be funded at the option of the borrower. The loan commitments carried no funded balance at December 31, 2015, but Multi Strategy Master will be contractually obligated to provide financial support up to the amount of the unfunded loan commitment upon the request of the borrower. Unfunded loan commitments are marked to market on the relevant day of valuation in accordance with Multi Strategy Master's valuation policies. Any applicable unrealized gain/(loss) and change in unrealized gain/(loss) on unfunded loan commitments are recorded on the Consolidated Balance Sheet and the Consolidated Statement of Income, respectively.

**Legal Proceedings**

The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, Consolidated statement of Income, or its liquidity.  See Note 15.

**Operating Leases**

The Partnership has an operating lease and associated commitments related to its main office space. Future minimum lease payments under operating lease commitments with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

| Years Ending December 31, | |
|---|---|
| 2016 | 1,506 |
| 2017 | 1,521 |
| 2018 | 1,521 |
| 2019 | 1,550 |
| 2020 | 1,566 |
| Thereafter | 2,089 |
| Total | $ 9,752 |

Total rental expense of the Partnership and its Consolidated Entities for operating leases was approximately $1.4 million for the year ended December 31, 2015.

**13.   Postretirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2011 expense reflects a service cost charge for the value of the new participant's benefit earned during 2011.

The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2015 are reconciled in the tables below.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

*(in thousands)*

| **Change in projected benefit obligation** | **2015** |
|---|---:|
| Benefit obligation at beginning of year | $ 2,250 |
| Service cost | 5 |
| Interest cost | 77 |
| Plan participants' contributions | - |
| Amendments | - |
| Actuarial loss/(gain) | (310) |
| Acquisition/(divestiture) | - |
| Benefits paid | (300) |
| Benefit obligation at end of year | $ 1,722 |

| **Change in plan assets** | **2015** |
|---|---:|
| Fair value of plan assets at beginning of year | $ 2,446 |
| Actual return on plan assets | (310) |
| Acquisition/(divestiture) | - |
| Employer contribution | - |
| Plan participants' contributions | - |
| Benefits paid | (300) |
| Other increase/(decrease) | - |
| Fair value of plan assets at year end | $ 1,836 |

| **Reconciliation of Funded Status** | **2015** |
|---|---:|
| Accumulated benefit obligation at end of year | $ 1,722 |
| Projected benefit obligation at end of year | 1,722 |
| Fair value of assets at end of year | 1,836 |
| Funded status at end of year | $ 114 |

The Partnership does not expect to contribute to the plan during 2015.

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2015:

| | |
|---|---:|
| Discount rate | 4.00% |
| Rate of compensation increase | N/A |

HIGHLY CONFIDENTIAL

D-CNL000193

**Appx. 01217**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2015**

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2015:

| | |
|---|---|
| Discount rate | 3.70% |
| Expected long-term return on plan assets | 3.70% |
| Rate of compensation increase | N/A |

As of December 31, 2015, there were no plan assets categorized as Level 3.

**14.   Income Taxes**

**The Partnership**

For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2015, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2008 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015.

**Crusader Master**

Crusader Master is an exempted limited partnership organized in Bermuda.  Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Crusader Master. Crusader Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 31, 2035.

For U.S. income tax purposes, Crusader Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Crusader Master's net taxable income.

Since Crusader Master trades investments for its own account, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below).  The General Partner intends to conduct Crusader Master's business in such a way that it does not create a taxable presence in any of the jurisdictions in which the Investment Manager has offices.

Dividends as well as certain interest and other income received by Crusader Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the

HIGHLY CONFIDENTIAL

D-CNL000194

**Appx. 01218**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2015**

rate of 30% for non-U.S. Investment Vehicles.  Interest, dividend and other income realized by Crusader Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.  As of December 31, 2015, a withholding tax liability of $0.2 million is included in the accrued expenses in the Consolidated Balance Sheet.

It is management's responsibility to determine whether a tax position of Crusader Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  In accordance with this authoritative guidance, management has established a reserve for federal income tax of approximately $10.6 million for uncertain tax positions. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015.

Crusader Master files tax returns as prescribed the tax laws of the jurisdictions in which it operates. In the normal course of business, Crusader Master is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2015, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2012 forward (with limited exceptions).

A wholly-owned corporation of Crusader Master is subject to federal income tax. For the year ended December 31, 2015, approximately $0.9 million of tax expense was included in the Consolidated Balance Sheet. Additionally, this wholly-owned corporation has incurred capital losses on the sale of investments that exceed the amount of capital gains it has earned. A deferred tax asset related to these excess capital losses of approximately $1.4 million is included in *Other Assets* on the Consolidated Balance Sheet.

**Multi Strategy Master**
For U.S. income tax purposes, Multi Strategy Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

Multi Strategy Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Multi Strategy Master business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices.

Dividends as well as certain interest and other income received by Multi Strategy Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Multi Strategy Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2015, a minimal withholding tax liability of $1.0 million is classified within accrued expenses and withholding tax payable on the Consolidated Balance Sheet.

HIGHLY CONFIDENTIAL

D-CNL000195

**Appx. 01219**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

Multi Strategy Master applies authoritative guidance which requires management to determine whether a tax position Multi Strategy Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. As of December 31, 2015, a liability to account for uncertain tax positions of $0.1 million is classified within accrued expenses within the Consolidated Balance Sheet. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015.

Multi Strategy Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Multi Strategy Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2015, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2012 forward (with limited exceptions).

**Credit Strategies Master**

Credit Strategies Master is an exempted limited partnership organized in Bermuda. Under the current laws of Bermuda, there is no income, estate, transfer, sale or other taxes payable by Credit Strategies Master. Credit Strategies Master has received an undertaking from the government of Bermuda exempting it from all such taxes until March 31, 2035.

For U.S. income tax purposes, Credit Strategies Master is treated as a pass-through entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on its share of Credit Strategies Master's net taxable income.

It is management's responsibility to determine whether a tax position of Credit Strategies Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015.

Dividends as well as certain interest and other income received by Credit Strategies Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the Credit Strategies Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. Deferred tax liabilities may result from temporary differences related to the unrealized appreciation on the Credit Strategies Master's investments that will become taxable income in future years. Deferred tax liabilities will become payable upon realization of the gains when the investments are sold, and are measured using the applicable enacted tax rate and provisions of the enacted tax law. Credit Strategies Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Credit Strategies Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2015, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2012 forward (with limited exceptions).

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

A wholly owned corporation at Credit Strategies Master may be subject to Federal U.S. Income Tax based on the nature of income, expense, and capital gains/losses. As of December 31, 2015 the wholly owned corporation has a minimal tax expense accrual included in the consolidated financial statements.

**Restoration Onshore**
Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income. Interest, dividends and other income realized by Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015. Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2015, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2012 forward (with limited exceptions).

**Restoration Offshore**
Restoration Offshore is a Cayman Islands exempted company. Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore. Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.

Dividends as well as certain interest and other income received by the master partnership of Restoration Offshore from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the master partnership of Restoration Offshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution

HIGHLY CONFIDENTIAL

D-CNL000197

**Appx. 01221**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015. As of December 31, 2015, the tax years that remain subject to examination by major tax jurisdictions under the statute of limitations is from the year 2012 forward (with limited exceptions).

**Healthcare Master**

Healthcare Master is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of Healthcare Master's net taxable income. Interest, dividends and other income realized by Healthcare Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at the rate of 30% for nonU.S. Investment Vehicles. Interest, dividends and other income realized by Healthcare Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. Healthcare Master applies the authoritative guidance which requires Management to determine whether a tax position of Healthcare Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. Management has determined that there was no effect on the financial statements from the application of this guidance. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2015. Healthcare Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Healthcare Master is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2015, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2012 forward.

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

**15.   Legal Proceedings**

On July 15, 2008, Crusader Master, Highland Offshore Partners, CDO Master Fund, Multi Strategy Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida ('the Tousa action"). The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated. On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement. In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%. The Defendants believed they acted in good faith pursuant to the terms of the relevant agreements and appealed the decision. In February 2011, the District Court of Florida quashed the judgment against the Defendants and overturned the ruling that resulted in the Defendants recording the reserve. The plaintiffs appealed the ruling of the District Court, and the issue was sent to the Eleventh Circuit of Florida. On May 15, 2012, the Eleventh Circuit unexpectedly reversed the District Court's ruling, and

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

remanded the case back to the District Court for review. The last such case was heard by the US Supreme Court case on January 14, 2015. On June 23, 2015, the District Court remanded the case back to the Bankruptcy Court for a report and recommendations regarding the effects of certain settlements on the Plaintiff's available damages. The Bankruptcy Court heard oral arguments on November 19, 2015, but has not yet issued a ruling. The additional liability and damages issues remain stayed at the District Court until the Bankruptcy Court issues its report. Based on the ruling, the Consolidated Entities recorded a combined reserve of approximately $12.3 million as of December 31, 2015. This reserve is included in *Accrued and other liabilities* on the Consolidated Balance Sheet.

On July 8, 2009, one investor filed suit against Credit Strategies Master, the Partnership, and other affiliated entities (collectively, the "Defendants"). The lawsuit alleges that the Defendants misrepresented the amount of redemptions in Credit Strategies Master. On August 28, 2015, the Dallas Court of Appeals affirmed a summary judgement against the Plaintiffs' claims. As such, the reserve of $11.3 million has been reversed and is included as a component of Professional fees on the Consolidated Income Statement.

In April 2007, CDO Master Fund entered into a risk sharing agreement with UBS Securities LLC and UBS AG, London Branch (collectively, "UBS" or "UBS Plaintiffs") structured as a derivative whereby it absorbed 51% of the gains and losses generated from a loan warehouse agreement. The remaining 49% of the warehouse gains and losses were absorbed by Highland Special Opportunities Holding Company ("SOHC"). The warehouse was financed by UBS and held collateral consisting of investments in collateralized loan obligations and credit default swaps. Although the agreement expired on August 15, 2007, UBS agreed to extend it for one year on March 15, 2008. Due to liquidity constraints, CDO Master Fund was unable to meet a November margin call, and UBS elected to terminate the agreement as of December 5, 2008. The collateral held in the warehouse was subsequently seized by UBS and sold on the open market through bids-wanted-in competition. After offsetting the proceeds received from the sale and the income earned on the collateral prior to the sale, UBS notified CDO Master Fund that its pro-rata share of the losses incurred under the agreement was $350.2 million. CDO Master Fund has accrued a liability in its financial statements for this amount.

On February 24, 2009, the UBS Plaintiffs filed a lawsuit against CDO Master Fund, SOHC and the Partnership in the New York State Supreme Court of Manhattan alleging that they suffered losses in excess of $745 million due to the depreciation in value of the warehouse collateral. On February 19, 2010, the First Appellate Division sided with the Partnership and dismissed UBS' claims against the Partnership. Thereafter on June 22, 2010, the UBS Plaintiffs filed an amended complaint with the Court against the Partnership alleging $687 million in damages. On March 13, 2012, the First Appellate Division dismissed two of the four claims against the Partnership, and severely limited the scope of the two remaining claims. The Court has yet to rule on motions for summary judgment pending for over two years, and has not set the matter for trial.

In the June 22, 2010 amended complaint, the UBS Plaintiffs also asserted claims against Credit Strategies Master, Multi Strategy Master, Crusader Master, and certain of their affiliates (collectively, the "Additional Fund Defendants"). The UBS Plaintiffs seek to unwind alleged fraudulent transfers involving the Additional Fund Defendants. Although the UBS Plaintiffs have not pled a specific damages amount against the Additional Fund Defendants, any eventual damages award would be subject to pre-judgment interest of 9% (accrued as of December 3, 2008) as well as post-judgment interest of 9% (accrued as of the date a judgment, if any, is entered against the Additional Fund Defendants). Each of the Additional Fund Defendants filed a separate motion to dismiss, each of which was denied. In addition, the Additional Fund Defendants filed a motion for summary judgment,

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

which was heard by the Court on February 14, 2014.  On March 11, 2014, the First Appellate Division heard each of the Additional Fund Defendants' respective appeals of the Court's denials of their respective motions to dismiss. On August 19, 2013, the Court restrained the Defendants from transferring or otherwise disposing of property received (or if property had already been transferred or disposed of, the cash equivalent) in March 2009 from Highland Financial Partners, L.P. in connection with the Termination, Settlement and Release Agreement dated March 20, 2009. Shortly thereafter, the UBS Plaintiffs and the UBS Additional Fund Defendants' mutually agreed that, notwithstanding the restraining order, the Additional Fund Defendants' could market and sell any restrained property provided that the proceeds of such sales were not transferred. On November 27, 2013, the Court removed the restraining order, but the UBS Plaintiffs immediately appealed On January 30, 2014, the Appellate Court reinstated the restraining order pending resolution of the UBS Plaintiffs' appeal on the original terms set forth by the Court on August 19, 2013, and without the modification agreed to with the UBS Plaintiffs. On June 12, 2015, the UBS Plaintiffs settled their claims against the Additional Fund Defendants' for scheduled cash payment totaling $72.5 million. That restraining order remained in place until January 21, 2016 when the Appellate Court dismissed the appeal as moot following the Defendant's settlement with the UBS Plaintiffs.

On July 17, 2013, Credit Suisse Securities (USA), LLC ("Credit Suisse") filed suit against Credit Strategies Master, Multi Strategy Master, and other affiliates (the "Credit Suisse Defendants"). Credit Suisse's claims relate to several outstanding trades of debt tranches of Goldfield Ranch Reality Holdings, LLC and Westgate Investments, LLC. On May 5, 2014, Credit Suisse moved for summary judgment on both the principal amount and statutory pre-judgment interest.  The Court granted the motion on August 6, 2014, and issued judgment on September 11, 2014 in the amount of $25.5 million in principal, plus $13.5 million in interest, for a total of $39.0 million.  On January 14, 2016, the Credit Suisse Defendants reached settlement with Credit Suisse for payment of approximately $77.4 million in satisfaction and release of Credit Suisse's claims.  The difference between the settlement amount and total exposure accrued at November 30, 2015, was recognized as of December 31, 2015, bringing the total accrued liability down to the settlement amount. The December 31, 2015 accrual of $77.4 million is included in *Accrued and other liabilities* on the Consolidated Balance Sheet.

On or about April 10, 2012, CDO Master Fund filed suit against Citibank, N.A. ("CBNA"), Citigroup Global Markets Inc. ("CGMI"), Citigroup Global Markets Limited ("CGML"), and Citigroup Financial Products Inc. ("CFPI") (collectively "Citi" or "Defendants") seeking damages for breach of contract related to Defendants' improper valuation of collateral, improper margin calls, improper declaration of default and improper seizure of collateral.  More specifically, Defendants' breaches have proximately caused CDO Master Fund to suffer damages resulting from Defendants' misappropriation of assets that rightfully belong to CDO Master Fund.  CDO Master Fund seeks recovery in the form of a return of the assets improperly seized by Defendants.  To the extent that a return of the improperly-seized assets to CDO Master Fund is not possible or feasible, CDO Master Fund seeks damages in an amount sufficient to put it in the same economic position it would have been in had Defendants properly performed under the contracts.

Over one year after CDO Master Fund filed its suit, and having failed in its efforts to dismiss the lawsuit, Citi filed two breach of contract counterclaims against CDO Master Fund and two other counter-defendants, Highland CDO Opportunity Fund GP, L.P. and the Partnership.  CDO Master Fund believes this post-hoc claim is baseless and merely brought to try to create a bargaining position.  On or about March 30, 2016, the Court granted certain of the parties' motions for summary judgment.  As a result of this ruling, both CDO Master Fund and Citi's claims have been pared down. The Court also ordered additional limited discovery be conducted, and that the parties submit a final round of motions for summary judgment following the conclusion of that discovery.  CDO Master

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2015**

Fund has accrued a liability in its financial statements for this claim in the amount of $10.8 million and is included in *Due to brokers* on the Consolidated Balance Sheet. No trial has been set in this matter.

In April 2012, the Partnership filed suit against a former employee for breach of contract, defamation and theft of trade secrets. The former employee filed a counterclaim with numerous, unrelated allegations. The Partnership refuted each allegation in detail. The former employee seeks unspecified damages against the Partnership and certain affiliates. On February 6, 2014, the jury found the former employee breached his fiduciary duty to the Partnership. The jury found that neither the Partnership nor any of its employees had breached any duty, and awarded $2.8 million to the Partnership. The jury also found that HERA owed $2.6 million related to an employee retention plan. The court entered judgment on the verdict on July 11, 2014. The former employee has filed his appeal against the Partnership and HERA has filed its appeal against the judgment amount. The appellate court has yet to rule on the pending appeals.

In addition to the legal actions that are discussed above, the Partnership is subject to other legal actions arising from the ordinary course of its business. The ultimate outcome of these other cases is inherently uncertain and could result in additional losses to the Partnership.

## 16. Fund Wind Down

On February 2, 2009, the Partnership informed investors of CDO Master that the fund was effectively insolvent as the liabilities in the fund exceed the assets to such a degree that proceeds from the asset sales will not be able to satisfy any unpaid redemptions or to distribute amounts to any current investors.

During 2008, Crusader Master and Credit Strategies Master were negatively affected by deteriorating conditions in the overall economy and credit markets. These conditions became more severe during the third and fourth quarters of 2008 and generated significant losses on various derivative transactions and repurchase agreements to which Crusader Master and Credit Strategies Master were parties. In addition, certain assets that Crusader Master and Credit Strategies Master purchased on margin through prime brokerage agreements experienced a significant decline in value. In certain cases, Crusader Master and Credit Strategies Master were unable to post the collateral required to secure these losses, and the counterparties provided notice of their intent to terminate the agreements. As a result, access to the credit that Crusader Master and Credit Strategies Master used to manage its investing and financing activities became highly constrained, and in some cases unavailable. In light of these circumstances, the General Partners (the general partner of Crusader Master and the general partner of Credit Strategies Master) and the Board of Directors of Highland Credit Strategies Fund, Ltd. and Highland Crusader Fund, Ltd. concluded, in consultation with the Investment Manager, that it would be in the best interests of their investors to wind down the investment portfolios of Credit Strategies Master and Crusader Master. On October 15, 2008, the Investment Manager notified investors that it would begin the wind-down process. The Investment Manager also restricted subscriptions and the payment of withdrawals to its feeder funds effective the same date.

In connection with the wind down, the limited partner interests of the Feeder Funds of Credit Strategies and Crusader were compulsorily withdrawn/redeemed on October 15, 2008 and November 15, 2008, respectively, in accordance with the terms of the governing documents.

42

D-CNL000201
**Appx. 01225**

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Crusader Master**

On July 15, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement (the "Scheme") that facilitates the winding-down of the investments of Crusader Master and the distribution of its assets. A substantial majority of the investors in its feeder funds consented to The Plan of Distribution ("The Plan") as outlined in the Scheme. The Scheme became effective as of August 1, 2011 (the "Effective Date").

The Scheme establishes two classes of claims; those feeder fund investors who had timely submitted withdrawal/redemption requests for withdrawal/redemption dates that fell on or before June 30, 2008 and who had not received full payment ("Prior Redeemers"), and those feeder fund investors that had not timely submitted such withdrawal/redemption requests for redemption/withdrawal dates that fell on or before June 30, 2008 ("Compulsory Redeemers") (together "Redeemers"). The basis for ratable distribution amongst both classes of Redeemers was the November 15, 2008 balances of said Redeemers ("Redemption Amount"), adjusted to add back any redemption penalties assessed against Prior Redeemers during 2008. A realization schedule for distributions is set forth in Appendix A of the Scheme (the "Realization Schedule"). The terms of the Scheme are outlined as follows:

1.  Prior Redeemers shall be entitled to 60% in aggregate of the total distributions made by the Master Partnership constituting excess cash (the "Crusader Fund Prior Redeemers' Distribution"). Each Prior Redeemer shall be entitled to their pro rata share of the Crusader Fund Prior Redeemers' Distribution based on the Prior Redeemer's Redemption Amount relative to the total of all Prior Redeemers' Redemption Amounts (inclusive of all feeders).

2.  Compulsory Redeemers shall be entitled to 40% in aggregate of the total distributions made by the Master Partnership constituting excess cash (the "Crusader Fund Compulsory Redeemers' Distribution"). With the exception of the non-consenting Compulsory Redeemers discussed below, each Compulsory Redeemer shall be entitled to their pro rata share of the Crusader Fund Compulsory Redeemers' Distribution based on the Compulsory Redeemer's Redemption Amount relative to the total of all Compulsory Redeemers' Redemption Amounts (inclusive of all feeders).

    In the event the Investment Manager fails to make distributions in accordance with the Realization Schedule for two consecutive quarters without receiving a waiver from the committee of Redeemers appointed to help oversee the Scheme (the "Redeemer Committee"), the Investment Manager can be removed for cause as the Investment Manager of the Master Partnership by the Redeemer Committee.

**Crusader Redeemer Trust Account**

Effective July 15, 2011, a trust account was set-up and funded for the benefit of Compulsory Redeemers who had consented to the Scheme and Prior Redeemers (the "Redeemer Trust Account"). The portion of amounts in excess of the Redemption Amounts otherwise attributable to non-consenting Compulsory Redeemers was contributed to the Redeemer Trust Account and not distributed to non-consenting Compulsory Redeemers. Amounts in the Redeemer Trust Account are reserved and used to pay all costs of Crusader Master to defend, respond to, settle and satisfy any claims by Redeemers other than for their Scheme claim.

The non-consenting Compulsory Redeemers do not receive any allocation of profit and loss; the portion of profit and loss that would otherwise be allocated to their accounts is instead allocated to the Redeemer Trust Account. The Redeemer Trust Account is accounted for as a component of equity in the Crusader Onshore Feeder Fund. Within the earlier of 30 days after all redeemer claims have been resolved or dismissed with prejudice or the sixth anniversary of the effective date, any

43

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

amounts remaining in the Redeemer Trust Account shall be distributed 100% to consenting Compulsory Redeemers pro rata based on their relative Redemption Amounts.

**Crusader Deferred Fee Account**
In accordance with the Scheme and Plan, the "Deferred Fee Account" was established on the effective date by allocating the right for the Partnership to potentially receive payment in respect of deferred fees ("Deferred Fees") equal to $10.0 million.

The Plan and Scheme provide that in the event that the Crusader Master makes aggregate distributions of at least $1.7 billion prior to the forty-third month following the effective date ("Aggregate Distribution Date"), the Partnership shall be entitled to receive payment in respect of the Deferred Fee Account.

The Plan and Scheme further provide that in the event that the Crusader Master does not make aggregate distributions of at least $1.7 billion prior to the Aggregate Distribution Date, then the Partnership will cause the Feeder Funds to distribute the right to receive payment 100% to consenting Compulsory Redeemers (pro rata based on their relative Redemption Amounts). The Deferred Fee Account will continue to be allocated it's pro rata portion of profit and loss.

The Partnership believes that the restraining order imposed against the Crusader Master in connection with the UBS Litigation (as defined in Note 15) rendered performance of the stated Realization Schedule impossible as a matter of law. Accordingly, the Partnership believes that any non-performance attributable to such restraining order is excused as a matter of law and thus all periods of the Realization Schedule have been extended for the period of non-performance attributable to such restraining order as a matter of law ("Realization Schedule Extension").

**Crusader Deferred Fee Distributions**
The Partnership shall continue to be entitled to receive payment in respect of the Deferred Fees from the applicable Feeder Fund. However, the Partnership similarly believes that the restraining order prevented the full liquidation of the Crusader Master's portfolio prior to the forty-third month after the effective date. In this situation, the Partnership would have received the Deferred Fees prior to, or on, the forty-third month after the effective date, but-for the impact of the restraining order still was in place. Therefore, the Partnership believes it has the right to receive the ratable and nonforfeitable portion of such fees crystalized as of the date the restraining order was lifted.

Until the all of the Deferred Fees have been paid, the Crusader Master shall distribute to each applicable Feeder Fund amounts, and such Feeder Fund shall fully reserve for such distributions in cash. The cash held in reserve for such Deferred Fees shall be maintained in an interest bearing account, with all interest being retained by the applicable Feeder Fund for the benefit of its Redeemers.

**Crusader Distribution Fee**
Under the Plan and Scheme, provided that assets equal to or in excess of the amount scheduled in the Realization Schedule have been distributed to Redeemers during such applicable distribution period, the Partnership will receive fees in cash in the amount of 125 basis points calculated based on all amounts actually distributed to Redeemers during such period following the effective date. This fee will also be paid and expensed out of Highland Crusader Fund, Ltd., Highland Crusader Fund II, Ltd., and Highland Crusader Fund, L.P. ("Feeder Funds") and will be charged to each capital account in the Feeder Funds, regardless of affiliation.

44

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

The Partnership believes the Realization Schedule Extension has extended the applicable distribution periods.

**Crusader Wind Down Progress**
As a result of the litigation discussed in Note 15, Crusader Master did not make distributions as part of the wind down in accordance with the Scheme for the year ended December 31, 2015. Since the Scheme's effective date, approximately $1,351.2 million has either been distributed to the Feeder Funds for purposes of disbursement, or withheld and specially allocated for tax payments.

As of December 31, 2015, the estimated value of the partners' capital of Crusader Master was approximately $381.2 million. The actual amounts that will be distributed upon completion of the wind down process are inherently uncertain and may differ materially from the partners' capital as of December 31, 2015. Capital will be distributed as it becomes available in accordance with the Scheme.

**Credit Strategies Master**
To facilitate the winding-down of the investments in Credit Strategies Master, a Plan of Distribution (the "Credit Strategies Plan") was also adopted by Credit Strategies Master and its feeder funds and was consented to by a substantial majority of the investors in its feeder funds. On April 14, 2011, the Supreme Court of Bermuda Commercial Court sanctioned a Scheme of Arrangement the ("Credit Strategies Scheme") that incorporates the terms of the Credit Strategies Plan so as to be binding upon Highland Credit Strategies Fund, Ltd. and its investors. The Credit Strategies Scheme became effective on May 1, 2011. The Credit Strategies Plan established two classes of claims; those investors of the Feeder Funds whose withdrawals/redemptions became effective on or before September 30, 2008 and who have not received full payment of their redemption amount ("Prior Redeemers") and those investors of the feeder funds who were compulsorily withdrawn/redeemed on October 15, 2008 ("Compulsory Redeemers").

As investments in Credit Strategies Master are realized, distributions will be made in the following order, which summarizes the terms outlined in the Credit Strategies Plan:

1. Payments for fund expenses
2. The first $30 million available for distribution ratably to Prior Redeemers
3. The next approximately $5.3 million available for distribution ratably to consenting Compulsory Redeemers and a trust account established for the benefit of non-consenting Compulsory Redeemers ("Redeemer Trust Account")
4. All remaining funds will be distributed as follows:
   a. 85% ratably to Prior Redeemers
   b. 15% to consenting Compulsory Redeemers and the Redeemer Trust Account

This method of distribution results in a shift of capital from the Prior Redeemers to the consenting Compulsory Redeemers and the Redeemer Trust Account. It also created a shift of capital from its offshore feeder to its onshore feeder, since there was a greater proportion of Compulsory Redeemers to Prior Redeemers in the onshore feeder than in the offshore feeder.

**Credit Strategies Redeemer Trust Account**
The Redeemer Trust Account is used to pay for litigation costs involving the non-consenting Compulsory Redeemers. The Credit Strategies Plan outlines which expenses related to litigation ("Covered Claims") will be paid using funds from the Redeemer Trust Account, and any litigation will continue to be assessed under an ASC 450 (Contingencies) model.

45

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

**Credit Strategies Contribution Trust Account**

In accordance with the Credit Strategies Plan and in exchange for certain releases, a trust account (the "Contribution Trust Account") was established and initially funded on the effective date with $3.0 million contributed by the Partnership.  The Partnership also paid an additional $6.0 million on May 1, 2014, approximately the third anniversary of the effective date of the Credit Strategies Plan. This $6.0 million was recognized as a subscription into Credit Strategies Master during the year ended December 31, 2013, and was received in cash during the year ended December 31, 2014.

The Contribution Trust Account will be used to pay for expenses related to Covered Claims to the extent that the Redeemer Trust Account is insufficient to pay such expenses.  Within 30 days after all Covered Claims have been resolved or dismissed with prejudice, or the sixth anniversary of the effective date, provided that no suits asserting Covered Claims are then pending, whichever is earlier, any remaining balance in the Contribution Trust Account will be distributed 85% to consenting Compulsory Redeemers and 15% to consenting Prior Redeemers.

Similar to the Redeemer Trust Account, the Contribution Trust Account is treated as a separate component of equity.  Additionally, the initial payment of the $3.0 million was treated as a contribution to the Master Partnership.  However, the Contribution Trust Account does not receive an allocation of profit and loss.  The only changes to the account will occur when contributions are made or expenses related to Covered Claims are paid.

As discussed in Note 15, a legal reserve of $11.3 million was reversed and included as a component of Legal Expense on the Consolidated Income Statement. This was partially allocated to the Contribution Trust and resulted in the $3.5 million equity balance at December 31, 2015.

**17.   Subsequent Events**

Over the course of 2016 through the report date, HCMSI issued promissory notes to the Partnership in the amounts of $12.5 million. The notes accrue interest at a rate ranging from 2.24% - 2.65%.

On February 26, 2016, HCMFA issued a promissory note to the Partnership in the amount of $2.3 million. The note accrues interest at a rate of 2.62%.

Over the course of 2016 through the report date, NexPoint issued additional borrowings on its revolving line of credit to the Partnership in the amount of $2.2 million. The borrowings accrue interest at a rate of 6.0%.

As discussed in Note 10, on April 7, 2016 the Partnership extended the maturity date on the term loan with Key Bank to April 7, 2017. The amount of the Term Loan increased to $15.0 million.

On April 26, 2016, Highland Acquisition Corporation issued a promissory note to the Partnership in the amount of $0.2 million. No interest shall accrue on the note.

On January 14, 2016, the various Consolidated Entities settled the Credit Suisse lawsuit resulting in the payment of the $77.4 million. The amount paid had previously been accrued as a component of *Accrued and other liabilities* and *Due to broker for securities purchased not yet settled* on the Consolidated Balance Sheet. Additionally, the settlement resulted in a reduction of previously accrued expenses of approximately $1.5 million.

46

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2015**

Upon the lifting of the UBS restraining order, the Credit Strategies Master then was permitted to pay the amounts payable under the Credit Strategies Plan and Scheme from the Contribution Trust. As of December 31, 2015, the Contribution Trust had remaining net assets of approximately $3.5 million, a portion of which was held in cash and a portion of which is held in an unliquidated limited partnership capital balance. The cash portion of the Contribution Trust's net assets of approximately $2.1 million was distributed in accordance with the terms of the Credit Strategies Plan and Scheme on April 22, 2016.

On April 11, 2016, the Redeemer Committee for Credit Strategies Master filed a Petition to Confirm Arbitration Award against the Partnership in relation to the 2013 sale of an asset in Credit Strategies Master. The award includes $7.0 million in damages, pre- and post-judgment interest of $4.1 million as of May 19, 2016, plus legal fees. If confirmed, the award would require the Partnership to distribute to the investors of the Credit Strategies feeder funds the net proceeds received by Credit Strategies Master from the sale of the asset as well as the damages awarded, the pre- and post-judgment interest, and fees. The award has not yet been judicially confirmed and remains subject to dispute.

On April 4, 2016, a distribution was made to Crusader Master investors related to the sale of the life settlements portfolio.  In total, approximately $196.7 million was either distributed to the Feeder Funds for purposes of disbursement, or withheld and specially allocated for tax payments.  Since the Scheme and Plan effective date, and including this distribution, approximately $1.5 billion has been either distributed to the Crusader Master Feeder Funds for purposes of disbursement, or withheld and specially allocated for tax payments.

In accordance with the Partnership's position as set forth in Note 16, Highland Crusader Fund, Ltd. and Highland Crusader Fund II, Ltd. paid Deferred Fees to the Partnership of approximately $28.3 million on January 21, 2016 and $4.1 million on April 5, 2016.  These amounts represent the Partnership's ratable and unforfeitable portion of such fees based upon distributions to Redeemers made through and including those respective dates.  Cash for such fees had been reserved in conjunction with aggregate previous distributions to Redeemers from the remaining portion of the Deferred Fees (not including the Deferred Fee Account).

In accordance with the Partnership's position as set forth in Note 16, Highland Crusader Fund, Ltd., Highland Crusader Fund II, Ltd., and Highland Crusader Fund, L.P. paid approximately $1.5 million and $2.4 million of distribution fees to the Partnership related to the November 27, 2013 and April 4, 2016 distributions, respectively.

The Partnership has performed an evaluation of subsequent events through May 19, 2016, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000206

**Appx. 01230**

**Supplemental Information**

HIGHLY CONFIDENTIAL

D-CNL000207

Appx. 01231

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Balance Sheet**
**December 31, 2015**

| (in thousands) | Highland Capital Management, L.P. | | All Other Consolidated Entities | | Eliminations | | Total Consolidated | |
|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | |
| Cash and cash equivalents | $ | 4,756 | $ | 40,824 | $ | - | $ | 45,580 |
| Restricted cash | | 2,621 | | 72,314 | | - | | 74,935 |
| Investments at fair value | | 143,245 | | 1,419,308 | | - | | 1,562,553 |
| Equity method investees | | 193,276 | | - | | (193,276) | | - |
| Management and incentive fees receivable | | 9,004 | | - | | (1,462) | | 7,542 |
| Due from brokers | | - | | 8,607 | | - | | 8,607 |
| Other assets | | 7,513 | | 11,435 | | (2,585) | | 16,363 |
| Deferred incentive fees receivable | | 31,214 | | - | | - | | 31,214 |
| Due from affiliates | | 63,031 | | - | | - | | 63,031 |
| Note receivable | | 63,000 | | 11,000 | | (11,000) | | 63,000 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $7,683 | | 7,864 | | 39,846 | | - | | 47,710 |
| **Total assets** | $ | 525,524 | $ | 1,603,334 | $ | (208,323) | $ | 1,920,535 |
| **Liabilities and partners' capital** | | | | | | | | |
| **Liabilities** | | | | | | | | |
| Accounts payable | $ | 4,544 | $ | 123 | $ | - | $ | 4,667 |
| Securities sold, not yet purchased | | - | | 198,605 | | - | | 198,605 |
| Withdrawals payable | | - | | 78,733 | | - | | 78,733 |
| Due to brokers | | 51,292 | | 434,740 | | (786) | | 485,246 |
| Due to brokers for securities purchased, not yet settled | | - | | 55,934 | | - | | 55,934 |
| Accrued and other liabilities | | 34,285 | | 58,657 | | (3,261) | | 89,681 |
| Debt and notes payable | | 49,746 | | 65,913 | | (11,000) | | 104,659 |
| **Total liabilities** | | 139,867 | | 892,705 | | (15,047) | | 1,017,525 |
| Non-controlling interest | | - | | 517,353 | | - | | 517,353 |
| Commitments | | | | | | | | |
| **Partners' capital** | | 385,657 | | 193,276 | | (193,276) | | 385,657 |
| **Total liabilities and partners' capital** | $ | 525,524 | $ | 1,603,334 | $ | (208,323) | $ | 1,920,535 |

49

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Statement of Income**
**Year Ended December 31, 2015**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $       54,644 | $              - | $            - | $       54,644 |
| Interest and investment income | 2,649 | 53,464 | - | 56,113 |
| Other income | 14,121 | 3,505 | | 17,626 |
| Total revenue | 71,414 | 56,969 | - | 128,383 |
| **Expenses:** | | | | |
| Legal settlement | - | 55,000 | - | 55,000 |
| Compensation and benefits | 36,202 | 734 | - | 36,936 |
| Professional fees | 6,857 | 28,922 | - | 35,779 |
| Marketing and advertising expense | 7,452 | - | - | 7,452 |
| Investment and research consulting | 967 | - | - | 967 |
| Depreciation and amortization | 1,402 | 1,342 | - | 2,744 |
| Tax expense | - | 875 | - | 875 |
| Bad debt expense | 801 | - | (801) | - |
| Other operating expenses | 9,236 | 13,217 | 801 | 23,254 |
| Total expenses | 62,917 | 100,090 | - | 163,007 |
| Other expense | 4,869 | - | - | 4,869 |
| Income/(loss) before investment and derivative activities | 13,366 | (43,121) | - | (29,755) |
| **Realized and unrealized gain/(loss) from investment and derivative transactions:** | | | | |
| Net realized loss on investment and derivative transactions | 3,969 | (55,974) | - | (52,005) |
| Net change in unrealized loss on investment and derivative transactions | (38,859) | (160,626) | - | (199,485) |
| Total realized and unrealized loss from investment and derivative transactions | (34,890) | (216,600) | - | (251,490) |
| Net unrealized earnings from equity method investees | (154,941) | - | 154,941 | - |
| Net loss | (176,465) | (259,721) | 154,941 | (281,245) |
| Net loss attributable to the non-controlling interest | - | 104,780 | - | 104,780 |
| Net loss attributable to Highland Capital Management, L.P. | $   (176,465) | $   (154,941) | $   154,941 | $   (176,465) |

50

D-CNL000209

**Appx. 01233**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2015**

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 4,756 |
| Restricted cash | | 2,621 |
| Investments at fair value (cost $198,659)* | | 268,299 |
| Equity method investees | | 68,222 |
| Management and incentive fees receivable | | 9,004 |
| Other assets | | 7,513 |
| Deferred incentive fees receivable | | 31,214 |
| Due from affiliates | | 63,031 |
| Note receivable | | 63,000 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $7,170 | | 7,864 |
| **Total assets** | $ | **525,524** |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,544 |
| Due to brokers | | 51,292 |
| Accrued and other liabilities | | 34,285 |
| Notes payable | | 49,746 |
| Total liabilities | | 139,867 |
| Partners' capital | | 385,657 |
| **Total liabilities and partners' capital** | $ | **525,524** |

*Investments, at fair value includes $112.0 million of limited partnership interest ownership of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2015 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements.

HIGHLY CONFIDENTIAL

D-CNL000210

**Appx. 01234**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2015**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 54,644 |
| Interest and investment income | | 2,649 |
| Shared services fees and miscellaneous income | | 14,121 |
| Total revenue | | 71,414 |
| | | |
| **Operating expenses:** | | |
| Compensation and benefits | | 36,202 |
| Professional fees | | 6,857 |
| Marketing and advertising expense | | 7,452 |
| Investment and research consulting | | 967 |
| Depreciation and amortization | | 1,402 |
| Bad debt expense | | 801 |
| Other operating expenses | | 9,236 |
| Total operating expenses | | 62,917 |
| | | |
| Other income | | 4,869 |
| | | |
| Income before investment activities | | 13,366 |
| | | |
| **Realized and unrealized gains/losses from investments:** | | |
| Net realized gain on sale of investments | | 3,969 |
| Net change in unrealized loss on investments* | | (56,866) |
| Total realized and unrealized loss from investments | | (52,897) |
| | | |
| Losses from equity method investees: | | (136,934) |
| | | |
| **Net loss** | $ | (176,465) |

\*Net change in unrealized gain on investments includes $ 17.3 million of unrealized losses from holdings of limited partnership interests of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2015 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements.

HIGHLY CONFIDENTIAL

D-CNL000211

Appx. 01235

# EXHIBIT 71

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2016**

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Index**
**December 31, 2016**

Page

**Report of Independent Auditors** ....................................................................................................... 1

**Consolidated Financial Statements**

Consolidated Balance Sheet ............................................................................................................... 2

Consolidated Statement of Income ..................................................................................................... 3

Consolidated Statement of Changes in Partners' Capital ................................................................... 4

Consolidated Statement of Cash Flows .............................................................................................. 5

Notes to Consolidated Financial Statements ................................................................................. 6-43

Supplemental Information ............................................................................................................. 44-48

HIGHLY CONFIDENTIAL



### Report of Independent Auditors

To the General Partner of Highland Capital Management, L.P.

We have audited the accompanying consolidated financial statements of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership"), which comprise the consolidated balance sheet as of December 31, 2016, and the related consolidated statements of income, of changes in partners' capital and of cash flows for the year then ended.

#### Management's Responsibility for the Consolidated Financial Statements

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

#### Auditors' Responsibility

Our responsibility is to express an opinion on the consolidated financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error. In making those risk assessments, we consider internal control relevant to the Partnership's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

#### Opinion

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Highland Capital Management, L.P. and its subsidiaries as of December 31. 2016, and the results of their operations, changes in their partners' capital and their cash flows for the year then ended, in accordance with accounting principles generally accepted in the United States of America.

#### Other Matter

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The Supplemental Consolidating Balance Sheet, the Supplemental Consolidating Statement of Income, the Supplemental Unconsolidated Balance Sheet and the Supplemental Unconsolidated Statement of Income are presented for purposes of additional analysis and are not a required part of the consolidated financial statements. The information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements. The information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves and other additional procedures, in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated, in all material respects, in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

May 19, 2017

*PricewaterhouseCoopers LLP, 2001 Ross Avenue, Suite 1800, Dallas, Texas 75201*
*T: (214) 999-1400, F: (214) 754-7991, www.pwc.com/us*

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Consolidated Balance Sheet**
**December 31, 2016**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 30,129 |
| Investments at fair value (cost $1,203,426) | | 1,097,910 |
| Management and incentive fees receivable | | 12,583 |
| Due from broker for securities sold, not yet settled | | 892 |
| Other assets | | 12,909 |
| Notes and other amounts due from affiliates | | 172,671 |
| Notes receivable | | 6,421 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $8,533 | | 6,747 |
| **Total assets** | $ | 1,340,262 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,443 |
| Securities sold, not yet purchased (proceeds $138,589) | | 146,792 |
| Withdrawals payable | | 68,199 |
| Due to brokers | | 171,647 |
| Due to brokers for securities purchased, not yet settled | | 1,614 |
| Accrued and other liabilities | | 42,838 |
| Debt and notes payable | | 45,953 |
| Investment liabilities | | 27,318 |
| **Total liabilities** | | 508,804 |
| Non-controlling interest | | 412,847 |
| Commitments | | |
| **Partners' capital** | | 418,611 |
| **Total liabilities and partners' capital** | $ | 1,340,262 |

The accompanying notes are an integral part of these consolidated financial statements.

2

HIGHLY CONFIDENTIAL

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Income**
**Year Ended December 31, 2016**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 52,599 |
| Interest and investment income | | 34,207 |
| Shared services fees | | 9,563 |
| Incentive fees | | 8,151 |
| Other income | | 4,142 |
| Total revenue | | 108,662 |
| | | |
| **Expenses:** | | |
| Compensation and benefits | | 37,127 |
| Professional fees | | 11,032 |
| Interest expense | | 5,761 |
| Marketing and advertising expenses | | 5,170 |
| Bad debt expense | | 2,094 |
| Depreciation and amortization | | 1,367 |
| Investment and research consulting | | 829 |
| Other operating expenses | | 11,160 |
| Total expenses | | 74,540 |
| | | |
| Other income | | 10,779 |
| | | |
| Income before investment and derivative activities | | 44,901 |
| | | |
| **Realized and unrealized gain from investments and derivatives:** | | |
| Net realized appreciation on investments and derivatives | | 125,732 |
| Net change in unrealized loss on investments and derivatives | | (77,649) |
| Total realized and unrealized gain from investments and derivatives | | 48,083 |
| | | |
| Net income | | 92,984 |
| | | |
| Net income attributable to the non-controlling interest | | (53,628) |
| | | |
| Net income attributable to Highland Capital Management, L.P. | $ | 39,356 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000456

**Appx. 01241**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2016**

*(in thousands)*

| | General Partner | Limited Partners | Total |
|---|---|---|---|
| Partners' capital, December 31, 2015 | $          - | $     385,657 | $     385,657 |
| Net income attributable to Highland Capital Management, L.P. | 99 | 39,257 | 39,356 |
| Partner distributions | (16) | (6,386) | (6,402) |
| Partners' capital, December 31, 2016 | $         83 | $     418,528 | $     418,611 |

The accompanying notes are an integral part of these consolidated financial statements.

4

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2016**

*(in thousands)*

| | | |
|---|---:|---:|
| **Cash flows from operating activities:** | | |
| Net income | $ | 92,984 |
| Adjustment to reconcile net income to net cash | | |
| provided by operating activities: | | |
| Net realized gain on investments and derivative transactions | | (125,732) |
| Net change in unrealized loss on investments and derivative transactions | | 77,649 |
| Amortization and depreciation | | 1,367 |
| **Changes in assets and liabilities:** | | |
| Restricted cash | | 2,621 |
| Management and incentive fee receivable | | (5,041) |
| Deferred incentive fees | | 31,214 |
| Due from brokers | | 320 |
| Due from affiliate | | (3,846) |
| Other assets | | (2,347) |
| Accounts payable | | (140) |
| Accrued and other liabilities | | (878) |
| Due to brokers for securities purchased, not yet settled | | (5,441) |
| Due to brokers | | 47,931 |
| Net cash provided by operating activities | | 110,661 |
| **Cash flows from investing activities:** | | |
| Purchases of fixed assets and leasehold improvements, net | | (250) |
| Purchases of investments | | (495,849) |
| Proceeds from dispositions of investments | | 606,617 |
| Proceeds from securities sold, not yet purchased | | 118,744 |
| Issuance of notes receivable to affiliates | | (42,235) |
| Proceeds from repayments of notes receivable from affiliates | | 16,286 |
| Purchases of investments to cover securities sold, not yet purchased | | (223,490) |
| Net cash used in investing activities | | (20,177) |
| **Cash flows from financing activities:** | | |
| Payments on long-term debt | | (19,705) |
| Capital withdrawals by minority interest investors of consolidated entities | | (49,860) |
| Partner distributions | | (6,402) |
| Net cash used in financing activities | | (72,167) |
| Net increase in cash and cash equivalents | | 18,317 |
| **Cash and cash equivalents** | | |
| Beginning of year | | 45,580 |
| Additional cash from new consolidated funds | | (33,768) |
| End of year | $ | 30,129 |
| | | |
| **Supplemental disclosure of cash flow information:** | | |
| Interest paid during the year | $ | (4,947) |
| Taxes paid during the year | | (1,541) |
| Investments acquired for non-cash consideration | | 13,333 |
| Investments disposed for non-cash consideration | | (23,368) |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000458

Appx. 01243

# Highland Capital Management, L.P.
## Notes to Consolidated Financial Statements
**December 31, 2016**

---

1.    **Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment adviser under the Investment Advisers Act of 1940 that manages collateralized loan obligations ("CLOs"), hedge funds, private equity funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business.  The Partnership's general partner is Strand Advisors, Inc. (the "General Partner").  The Partnership is owned by an unaffiliated trust as well as affiliated trusts and personal holdings of the senior management of the Partnership.

As of December 31, 2016, the Partnership provided investment advisory services for twenty-nine CLOs, seven separate accounts, one master limited partnership, and eleven hedge fund or private equity structures, with total fee-earning assets under management of approximately $6.7 billion.

2.    **Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its consolidated financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles in the United States of America ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification and are stated in the United States Dollar.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements.  Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries, which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions of the entity, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions of the entity, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs' expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

HIGHLY CONFIDENTIAL

D-CNL000459

**Appx. 01244**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

The Partnership assesses consolidation requirements pursuant to ASU 2015-02: Consolidation, which was adopted using the modified retrospective method and resulted in an effective date of adoption of January 1, 2016. Early adoption of ASU 2015-02 resulted in deconsolidation of Highland Crusader Offshore Partners, L.P. ("Crusader"), Highland Credit Strategies Master Fund, L.P. (Credit Strategies), and Highland CDO Opportunity Master Fund, L.P.

The Partnership and its affiliate's involvement with unconsolidated VIEs is generally limited to that of an advisory services provider, and their investment, if any, represents an insignificant interest in the relevant investment entities' assets under management. The Partnership's affiliate's exposure to risk in these entities is generally limited to any capital contribution it has made or is required to make and any earned but uncollected asset based and performance fees. The Partnership has not issued any investment performance guarantees to these VIEs or their investors, except that the Partnership has agreed to subject the full value of its equity interest ($0.9M) in Highland Prometheus Fund to dollar-for-dollar reduction to the extent the third party investor in such fund does not achieve an annual target return.

As of December 31, 2016, the net assets of the unconsolidated VIEs and the Partnership's maximum risk of loss were as follows:

|  | Unconsolidated VIE Net Assets | Carrying Value and Maximum Risk of Loss |
|---|---|---|
| Sponsored investment funds | $     560,665,698 | $          10,118,175 |

**Consolidation of Non-Variable Interest Entities**

The Partnership consolidates the following non-VIEs (along with majority owned funds: Highland Diversified Credit Fund, L.P., and Highland Select Equity Fund, L.P., collectively the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Multi Strategy Credit Fund, L.P. ("Multi Strategy Master"), formerly Highland Credit Opportunities CDO, L.P., a Delaware limited partnership that commenced operations on December 15, 2005 and changed its name on August 26, 2014;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore"), a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore"), a Delaware limited partnership that commenced operations on September 2, 2008; and

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

- BB Votorantim, Highland Infrastructure LLC ("BB Votorantim"), a Delaware limited liability company which began operations on May 29, 2014.

**Consolidation of Majority Owned Entities**
The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Brasil, LLC, a Delaware limited liability company that commenced operations on January 28, 2014;

- 100% interest in Highland Capital Management Partners Charitable Trust #1, a trust that commenced operations on September 19, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd., a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 100% interest in Highland Capital Management Korea, Ltd., a company organized in the Republic of Korea that commenced operations on August 2, 2012;

- 100% interest in HE Capital, LLC, a Delaware limited liability company that was formed on March 22, 2007;

- 100% interest in De Kooning, Ltd, a Cayman company that was formed on December 1, 2012;

- 100% interest in Hirst, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Hockney, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Oldenburg, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Eames, Ltd, a Cayman company that was formed on December 12, 2012;

- 100% interest in Neutra, Ltd., a Cayman company that was formed on December 1, 2012;

- 99.9% interest in Penant Management, L.P., a Delaware limited partnership that was formed on December 12, 2012;

- 100% interest in Pollack, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Warhol, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in HCREF-I Holding Corp., a Delaware company that was formed on December 13, 2012;

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

- 100% interest in HCREF-XI Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XII Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in Highland ERA Management, LLC, a Delaware limited liability company that was formed on February 1, 2013;

- 100% interest in The Dondero Insurance Rabbi Trust., a trust that was formed on May 27, 2004;

- 100% interest in The Okada Insurance Rabbi Trust, a trust that was formed on May 27, 2004;

- 100% interest in NexPoint Opportunistic Credit Fund *(fka NexPoint Distressed Strategies Fund)*, a closed-end management investment company that was formed on March 2, 2016;

- 80% interest in Highland Employee Retention Assets ("HERA"), LLC, a Delaware limited liability company that was formed on October 26, 2009;

- 100% interest in Highland Diversified Credit Fund, L.P. ("Highland Offshore Partners"), a Delaware limited partnership which began operations on February 29, 2000 and was organized for the sole purpose of investing substantially all of its assets in Highland Offshore Partners, L.P.;

- 99.6% interest in Highland Select Equity Master Fund, LP, and Highland Select Equity Fund, LP Delaware limited partnerships which began operations on January 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value;

- 100% interest in Bandera Strategic Credit Partners I SLP, L.P., a Delaware limited liability company formed on April 3, 2014;

- 100% interest in Highland Fund Holdings, LLC, a Delaware limited liability company that was formed on May 24, 2016;

- 100% interest in HCM Holdco, LLC, a Delaware limited liability company formed on October 27, 2015 and;

- 100% interest in Maple Avenue Holdings, LLC, a Texas limited liability company formed on August 17, 2016.

- 98.9% interest in Highland Acquisition Corporation, a Delaware Corporation formed on April 25, 2016.

All inter-partnership and intercompany accounts and transactions involving the above listed consolidated entities ("Consolidated Entities") have been eliminated in all of the aforementioned consolidating schedules. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide - Investment Companies. The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2016**

Due to the deconsolidation of certain investment funds, some prior year balances referenced within the following notes to the consolidated financial statements may not tie to prior year issued financial statements.

The following table includes a rollforward of noncontrolling interests from December 31, 2015, to December 31, 2016.

*(in thousands)*

| | |
|---|---:|
| Noncontrolling interest, December 31, 2015 | $ 517,353 |
| Net income attributable to noncontrolling interest | 53,628 |
| Noncontrolling partner distributions | (39,397) |
| Noncontrolling interest of deconsolidated entities | (118,737) |
| Noncontrolling interest, December 31, 2016 | $ 412,847 |

**Investment Transactions**
Investment transactions are recorded on a trade date basis.  Investments in securities are valued at market or fair value at the date of the financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

See Note 5 for the Partnership's fair value process and hierarchy disclosures.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements.  Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value.  The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages.  During the year ended December 31, 2016, the Partnership and its Consolidated Entities recognized management fees and incentive fees of approximately $52.6 million and $8.1 million, respectively.  The Partnership recognized approximately $0.9 million of appreciation on incentive fees earned prior to 2008, previously deferred under Sec. 409(A) of the Internal Revenue Code, which has been presented in *Other Income* in the Consolidated Statement of Income.

**Shared Services Revenue**
The Partnership recognizes revenue as earned in connection with services provided to related parties under various shared services agreements. Under these agreements, the Partnership earns fees for services including, but not limited to, back office support functions, marketing, and investment advisory services. During the year ended December 31, 2016, the Partnership and its Consolidated Entities recognized shared services revenue of approximately $9.6 million, which has been presented in *Shared services fees* in the Consolidated Statement of Income. See further discussion in Note 8.

HIGHLY CONFIDENTIAL

D-CNL000463
**Appx. 01248**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums associated with purchases of investments are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis over the life of the investment. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these consolidated financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. See further discussion in Note 14.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Cash equivalents are carried at cost, which approximates market value. At December 31, 2016, the Partnership and Consolidated Entities held cash balances at certain financial institutions in excess of the federally insured limit of $0.3 million. The Partnership and Consolidated Entities regularly monitor the credit quality of these institutions.

**Restricted Cash**
The Partnership and its subsidiaries are required to maintain cash balances as collateral for various financing and derivative transactions. These amounts are reported as restricted cash on the Consolidated Balance Sheet.

**Notes Receivable**
Notes receivable consists of secured promissory notes with maturities greater than one year. When available, the Partnership uses observable market data, including pricing on recent closed transactions to value notes. When appropriate, these notes may be valued using collateral values. Adjustments to the value may be performed in circumstances where attributes specific to the collateral exist suggesting impairment.

HIGHLY CONFIDENTIAL

D-CNL000464

**Appx. 01249**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

The Partnership and its Consolidated Entities are depreciating fixed assets as follows:

|  | **Period** |
|---|---|
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 3 - 5 years |
| Computer software | 3 years |

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Partnership's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies. Short selling is the practice of selling securities that are borrowed from a third party. The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.

Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash. The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender. A gain (which cannot exceed the price at which the Consolidated Investment Funds sold the security short) or a loss (which theoretically could be unlimited in size) will be settled upon termination of a short sale.

HIGHLY CONFIDENTIAL

D-CNL000465

**Appx. 01250**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Options Contracts**
The Partnership and the Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments.  A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period.  When the Partnership or the Consolidated Entities purchase (write) an option, an amount equal to the premium paid (received) by the entity is reflected as an asset (liability).  The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold.  When an option expires (or the Partnership or the Consolidated Entities enter into a closing transaction), the entity realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid).  Exercise of a written option could result in the Partnership or the Consolidated Entities purchasing a security at a price different from the current market value.

The Partnership and the Consolidated Entities are exposed to counterparty risk from the potential that a seller of an option contract does not sell or purchase the underlying asset as agreed under the terms of the option contract. The maximum risk of loss from counterparty risk to the Partnership and the Consolidated Entities is the greater of the fair value of its open option contracts or the premiums paid to purchase the open option contracts. The Partnership and the Consolidated Entities consider the credit risk of the intermediary counterparties to its option transactions in evaluating potential credit risk.

**Margin Transactions**
To obtain more investable cash, the Consolidated Entities may use various forms of leverage including purchasing securities on margin.  A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable.  This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2016.  Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. At December 31, 2016, the Consolidated Investment Funds had withdrawals payable of $68.2 million.

**Foreign Currency Transactions**
The Partnership's subsidiaries HCM Singapore and HCM Korea use Singapore dollars and Korean won, respectively, as their functional currency.  All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2016.  Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period.  Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the Consolidated Statement of Income.

HIGHLY CONFIDENTIAL

D-CNL000466

**Appx. 01251**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

The Consolidated Entities do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments* on the Consolidated Statement of Income.

### Life Settlement Contracts
One of the Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of *Purchase of investments* and *Proceeds from dispositions of investments* on the Consolidated Statement of Cash Flows. At December 31, 2016, the Consolidated Investment Fund was invested in 14 policies, which had a total face value of approximately $155.1 million and a fair value of $23.8 million.

### Financing
The Partnership and its Consolidated Entities may finance the acquisition of its investments in securities and loans through financing arrangements.  The Partnership and its Consolidated Entities recognize interest expense on all borrowings on the accrual basis in the Consolidated Statement of Income.

### Financial Instruments
The Partnership and its Consolidated Entities determine fair value of financial instruments as required by U.S. GAAP.  The carrying amounts for cash and cash equivalents, receivables, accounts payable, withdrawals payable, debt and notes payable, due to brokers, investment liabilities and accrued liabilities approximate their fair values. For fair value of investment, see Note 5.

### Partners' Capital
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

### Recently Issued Accounting Standards and Interpretations
In August 2016, the FASB issued Accounting Standards Update 2016-15, Statement of cash flows – Classification of certain cash receipts and cash payments (Topic 230).  The amendments in this Update apply to all reporting entities. This Accounting Standards Update addresses the following eight specific cash flow issues: Debt prepayment or debt extinguishment costs; settlement of zero-coupon debt instruments or other debt instruments with coupon interest rates that are insignificant in relation to the effective interest rate of the borrowing; contingent consideration payments made after a business combination; proceeds from the settlement of insurance claims; proceeds from the settlement of corporate-owned life insurance policies (COLIs) (including bank-owned life insurance policies (BOLIs)); distributions received from equity method investees; beneficial interests in securitization transactions; and separately identifiable cash flows and application of the predominance principle. ASU 2016-15 is effective for annual reporting periods in fiscal years that begin after December 15, 2016. This statement is not expected to have a material impact on the Parternship's consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000467

**Appx. 01252**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

In October 2016, the FASB issued Accounting Standards Update 2016-17 – Consolidation (Topic 810). The Board is issuing this Accounting Standards Update to amend the consolidation guidance on how a reporting entity that is the single decision maker of a variable interest entity (VIE) should treat indirect interests in the entity held through related parties that are under common control with the reporting entity when determining whether it is the primary beneficiary of that VIE. Under the amendments, a single decision maker is not required to consider indirect interests held through related parties that are under common control with the single decision maker to be the equivalent of direct interests in their entirety. Instead, a single decision maker is required to include those interests on a proportionate basis consistent with indirect interests held through other related parties. The amendments are effective for the annual period ending after December 15, 2016. This statement is not expected to have a material impact on the Partnership's consolidated financial statements.

In November 2016, the FASB issued Accounting Standards Update 2016-18, Statement of cash flows – Restricted cash (Topic 230). The amendments in this Update apply to all reporting entities that have restricted cash or restricted cash equivalents and are required to present a statement of cash flows under Topic 203. The amendments in this Update require that a statement of cash flows explain the change during the period in the total of cash, cash equivalents, and amounts generally described as restricted cash or restricted cash equivalents. Therefore, amounts generally described as restricted cash and restricted cash equivalents should be included with cash and cash equivalents when reconciling the beginning-of-period and end-of-period total amounts shown on the statement of cash flows. ASU 2016-18 is effective for annual reporting periods in fiscal years that begin after December 15, 2016. This statement is not expected to have a material impact on the Partnership's consolidated financial statements.

3.      **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2016:

*(in thousands)*

| | | |
|---|---|---:|
| Leasehold improvements | $ | 7,192 |
| Buildings | | 2,595 |
| Furniture and fixtures | | 2,793 |
| Computer and equipment | | 2,403 |
| Computer software | | 297 |
| Accumulated depreciation | | (8,533) |
| | $ | 6,747 |

Depreciation expense in 2016 totaled approximately $1.4 million for the Partnership and its subsidiaries.

15

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

4.    **Investments**

Detailed below is a summary of the Partnership and its Consolidated Entities' investments at December 31, 2016:

| *(in thousands)* | Amortized Cost/Cost | Fair Value |
|---|---|---|
| Common equity securities | $    552,694 | $    730,194 |
| Asset-backed securities | 178,094 | 120,678 |
| Floating rate syndicated bank loans | 142,041 | 54,745 |
| Closed-end mutual funds | 85,845 | 74,731 |
| Participation interests | 28,500 | 27,348 |
| Limited partnership interests | 18,806 | 24,630 |
| Life settlement contracts | 57,638 | 23,826 |
| LLC interests | 21,496 | 18,904 |
| Rights & warrants | 21,931 | 8,768 |
| Options contracts | 3,500 | 6,463 |
| Real Estate Investment Trusts | 4,793 | 5,080 |
| Corporate bonds | 88,007 | 1,943 |
| Preferred equity | 81 | 600 |
| Total investments | $    1,203,426 | $    1,097,910 |

| | Proceeds | Fair Value |
|---|---|---|
| Securities sold, not yet purchased | $    (138,589) | $    (146,792) |

5.    **Fair Value of Financial Instruments**

**Fair Value Measurement**
U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Entities have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

HIGHLY CONFIDENTIAL

D-CNL000469
**Appx. 01254**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction. When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs. For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above. In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Entities use prices and inputs that are current as of the measurement dates. The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership and its Consolidated Entities use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities. In cases where observable inputs are not available, the Partnership and Consolidated Entities develop methodologies that provide appropriate fair value estimates. These methodologies are reviewed on a continuous basis to account for changing market conditions.

The Partnership has established policies, as described above, processes and procedures to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of various personnel from the Partnership. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments. The Pricing Committee is responsible for establishing the valuation policies and evaluating the overall fairness and consistent application of those policies.

As of December 31, 2016, the Partnership and its Consolidated Entities' investments consisted primarily of common equity securities, asset-backed securities, floating rate syndicated bank loans, closed-end mutual funds, preferred equity, participation interests, limited partnership interests, life settlement contracts, LLC interests, rights and warrants, option contracts, and corporate bonds. In addition, the Consolidated Entities engage in short sale transactions. The majority of these financial instruments are not listed on national securities exchanges and management is required to use significant judgment to estimate their values.

HIGHLY CONFIDENTIAL

D-CNL000470

**Appx. 01255**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Equity Investments**
Publicly traded equities are valued at the closing price at the date of the financial statements. The fair value of equity investments that are not traded on national exchanges or through real-time quotation services are derived from methodologies that provide appropriate fair value estimates. Equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

**Private Equity Investments**
The Partnership and Consolidated Entities hold private equity investments which resulted from the restructuring of other instruments.  These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Partnership and Consolidated Entities  will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis.  When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances. Private equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Private equity investments that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

The Consolidated Entities also invest in warrant securities of publicly–traded companies. The fair value of these investments is based on an option pricing model. The option model bases warrant value on a number of factors including underlying equity price as of the valuation date, strike price, exercise date, time to expiration and volatility. Warrant investments that have observable volatility are classified as Level 2 assets. Warrant investments where volatility inputs are not observable are valued using an estimated volatility input, and are classified as Level 3 assets.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

### Asset-Backed Securities

The Consolidated Entities invest in a variety of asset-backed securities. Asset-backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity. The Consolidated Entities generally utilize an independent third party firm to perform these calculations and provide the relevant inputs. The Consolidated Entities evaluate the results based on visible market activity and market research. When appropriate, the Consolidated Entities may apply other techniques based on a specific asset's characteristics. Asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Asset-backed securities that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

### Debt Securities

The Partnership and Consolidated Entities invest in various types of debt, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Partnership and Consolidated Entities first seek to obtain reliable market quotes from other parties dealing in the specific asset. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Loans and bonds that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

Absent both a reliable market quote and third-party pricing service date, the Partnership and Consolidated Entities may use various models to establish an estimated exit price. These investments are classified as Level 3 assets. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

### Life Settlement Contracts

Life Settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. Management generally utilizes an independent third party firm to perform these calculations and provide the relevant inputs. Management evaluates the results based on visible market activity and market research. Since these inputs are not readily observable, these contracts are classified as Level 3 assets.

HIGHLY CONFIDENTIAL

D-CNL000472

**Appx. 01257**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

At December 31, 2016, the Consolidated Entities' investments in life settlement contracts consisted of the following:

(U.S. dollars in thousands, except number of policies)

| Remaining Life Expectancy (in years) | Number of Policies | Face Value | Fair Value |
|---|---|---|---|
| 2-3 | - | $ - | $ - |
| 3-4 | 1 | 10,000 | 3,154 |
| 4-5 | 1 | 5,000 | 1,514 |
| Thereafter | 12 | 140,079 | 19,158 |
| Total | 14 | $ 155,079 | $ 23,826 |

**Options Contracts**

The Partnership and its Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments. A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period. When the Partnership and its Consolidated Entities purchase (writes) an option, an amount equal to the premium paid (received) by the purchaser is reflected as an asset (liability). The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold. When an option expires (or the purchaser enters into a closing transaction), the purchaser realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid). Exercise of a written option could result in the Partnership and its Consolidated Entities purchasing a security at a price different from the current market value.

**Limited Partnership and LLC Interests**

The Partnership and its Consolidated Entities hold limited partnership and LLC interests in various entities. These assets are valued as the net asset value of the limited partnership interests because the entities utilize fair value accounting for their own financial statements. These interests are classified as Level 3 assets.

20

D-CNL000473
**Appx. 01258**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Notes to Consolidated Financial Statements
December 31, 2016

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP.  A majority of the Consolidated Entities investments and derivatives at December 31, 2016 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments.  The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2016:

*(in thousands)*

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/16 |
|---|---|---|---|---|
| Common equity securities | $  286,369 | $  326,665 | $  117,160 | $  730,194 |
| Asset-backed securities | - | 112,455 | 8,223 | 120,678 |
| Floating rate syndicated bank loans | - | 42 | 54,703 | 54,745 |
| Closed-end mutual funds | 74,731 | - | - | 74,731 |
| Participation interests | 15,368 | - | 11,980 | 27,348 |
| Limited partnership interests | - | - | 24,630 | 24,630 |
| Life settlement contracts | - | - | 23,826 | 23,826 |
| LLC interests | - | 676 | 18,228 | 18,904 |
| Rights & warrants | 702 | 652 | 7,414 | 8,768 |
| Options | 6,463 | - | - | 6,463 |
| Real Estate Investment Trusts | 1,039 | 4,041 | - | 5,080 |
| Corporate bonds | - | 1,943 | - | 1,943 |
| Preferred equity | 600 | - | - | 600 |
| **Total** | $  385,272 | $  446,474 | $  266,164 | $  1,097,910 |
| **Liabilities** | | | | |
| Common stock & Options sold short | $  146,792 | $  - | - | $  146,792 |

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2016:

(in thousands)

| | Total Fair Value at December 31, 2015 | Purchases | Sales and Maturities | Restructures | Transfers Into Level 3 | Net Realized Gains / (Losses) | Net Unrealized Gains / (Losses) | Total Fair Value at December 31, 2016 |
|---|---|---|---|---|---|---|---|---|
| Common equity securities | $  94,654 | $  364 | $  (50,925) | $  49,361 | $  - | $  4,397 | $  19,309 | $  117,160 |
| Floating rate syndicated bank loans | 81,512 | 7,267 | (21,984) | - | - | 9,370 | (21,462) | 54,703 |
| Limited partnership interests | 5,731 | 6,921 | (20,839) | - | 31,563 | 1,714 | (461) | 24,630 |
| Life settlement contracts | 22,528 | 6,862 | (5,000) | - | - | 940 | (1,504) | 23,826 |
| LLC interests | 19,322 | 234 | (84) | - | - | (95) | (1,149) | 18,228 |
| Participation interests | - | 13,333 | (1,353) | - | - | - | - | 11,980 |
| Asset-backed securities | 3,885 | 5,250 | (2,726) | - | 693 | 313 | 808 | 8,223 |
| Rights & warrants | 6,513 | - | - | - | - | - | 901 | 7,414 |
| Preferred equity | 18 | - | - | - | - | - | (18) | - |
| Corporate bonds | - | - | - | - | 1,094 | (19,837) | 18,743 | - |
| | $  234,163 | $  40,231 | $  (102,910) | $  49,361 | $  33,350 | $  (3,198) | $  15,167 | $  266,164 |

Transfers from Level 2 to Level 3 or from Level 3 to Level 2 are due to changes in observable pricing inputs as compared to the prior year. No significant transfers between Level 1 or Level 2 fair value measurements occurred during the year ended December 31, 2016.

21

D-CNL000474

Appx. 01259

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $17.3 million of the net unrealized gains presented in the table above relate to investments held as of December 31, 2016.

Transfers out of Level 3 are recognized at the beginning of the period. The transfers out of Level 3 at December 31, 2016 were due to changes in observable pricing inputs as compared to the prior year.

The following page includes a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy.

HIGHLY CONFIDENTIAL

D-CNL000475

**Appx. 01260**

# Highland Capital Management, L.P.
## (A Delaware Limited Partnership)
## Notes to Consolidated Financial Statements
## December 31, 2016

(Ending balance in thousands)

| Category | Ending Balance at 12/31/2016 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| Common equity securities | $ 117,160 | Multiples Analysis | Multiple of EBITDA | 2.5x - 8.25x |
| | | | Discount for Lack of Marketability | 15 - 25% |
| | | | Multiple of Revenue | 0.4x - 0.5x |
| | | Discounted Cash Flow | Discount Rate | 7.5 - 27.5% |
| | | | Terminal Multiple | 2.2x - 7.5x |
| | | | Minority Discount | 20% |
| | | Bid Indications | N/A | N/A |
| | | Appraisal | N/A | N/A |
| Bank loans | 54,703 | Multiples Analysis | Multiple of EBITDA | 3.0x - 4.0x |
| | | | Multiple of Revenue | 0.4x - 0.5x |
| | | Escrow Recovery Analysis | Discount Rate | 11% |
| | | Adjusted Appraisal | Minority Discount | 25% |
| | | Bid Indications | N/A | N/A |
| | | Discounted Cash Flow | Discount Rate | 22% |
| | | | Terminal Multiple | 2.5x |
| | | | Spread Adjustment | 0.5 - 7.4% |
| Limited partnership interests | 24,630 | Net Asset Value of Underlying Assets and Liabilities | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| Life settlement contracts | 23,826 | Net Asset Value of Underlying Assets, based on third-party pricing vendor | Discount Rate | 16 - 18% |
| LLC interests | 18,228 | Third-Party Pricing Vendor | N/A | N/A |
| | | Transaction Price | N/A | N/A |
| | | Appraisal | N/A | N/A |
| Participation interests | 11,980 | Net Asset Value of Underlying Assets | N/A | N/A |
| Asset-backed securities | 8,223 | Third-Party Pricing Vendor | N/A | N/A |
| | | Net Asset Value of Underlying Assets and Liabilities | N/A | N/A |
| | | Discounted Cash Flow | Discount Rate | 21% |
| Rights & warrants | 7,414 | Discounted Cash Flow | Discount Rate | 12 - 15% |
| | | | Terminal Multiple | 7.5x |
| | | | Minority Discount | 20% |
| | | Multiples Analysis | Multiple of EBITDA | 7.25x - 8.25x |
| | | | Discount for Lack of Marketability | 25% |
| **Total** | $ 266,164 | | | |

23

D-CNL000476

**Appx. 01261**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

6.      **Securities Sold under Agreements to Repurchase**

Transactions involving securities sold under agreements to repurchase are treated as collateralized financial transactions, and are recorded at their fair market values.  In addition, interest earned on the securities is included in interest receivable, and interest accrued on amounts borrowed is included in interest payable.  For the year ended December 31, 2016, Multi Strategy Master expensed approximately $0.8 million for interest charged on the amounts borrowed for repurchase agreements.

In connection with transactions in agreements to repurchase, it is Multi Strategy Master's policy that its counterparty take possession of the underlying collateral securities, the fair value of which exceeds the principal amount of the agreements to repurchase, including accrued interest, at all times. If the counterparty defaults under agreements to resell, and the fair value of the collateral declines, the realization of the collateral by Multi Strategy Master may be delayed or limited.

To reduce counterparty credit risk with respect to repurchase agreements, Multi Strategy Master has entered into a master repurchase agreement, which allows Multi Strategy Master to make (or to have an entitlement to receive) a single net payment in the event of default (close-out netting) for outstanding payables and receivables with respect to repurchase agreements with the counterparty.

The master repurchase agreement includes credit related contingent features which allow the counterparty to terminate the agreement prior to maturity in the event Multi Strategy Master's net assets decline by a stated percentage or Multi Strategy Master fails to meet the terms of the agreement, which would cause the Master Partnership to accelerate payment of any net liability owed to the counterparty.

For financial reporting purposes, Multi Strategy Master does not offset repurchase agreement assets and liabilities that are subject to netting arrangements in the Consolidated Balance Sheet. Bankruptcy or insolvency laws of a particular jurisdiction may impose restrictions on or prohibitions against the right of offset in bankruptcy, insolvency or other events.

Collateral terms are contract specific for repurchase agreements. For repurchase agreements traded under master repurchase agreements, the collateral requirements are typically calculated by netting the mark to market amount for each transaction under such agreement and comparing that to the value of any collateral currently pledged by Multi Strategy Master or the counterparty.

For financial reporting purposes, cash collateral that has been pledged to cover obligations of Multi Strategy Master, if any, is reported in due to/from brokers on the Consolidated Balance Sheet.  Generally, the amount of collateral due from or to a party must exceed a minimum transfer amount threshold before a transfer has to be made.  To the extent amounts due to Multi Strategy Master from its counterparties are not fully collateralized, contractually or otherwise, Multi Strategy Master bears the risk of loss from counterparty non-performance.

At December 31, 2016, securities with a fair value of approximately $64.9 million, which are included in investments in securities on the Consolidated Balance Sheet, were pledged to collateralize securities sold under agreements to repurchase.

HIGHLY CONFIDENTIAL

D-CNL000477

**Appx. 01262**

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

The following table presents, by counterparty, Multi Strategy Master's liabilities net of the related collateral pledged by Multi Strategy Master at December 31, 2016:

*(U.S. dollars in thousands)*

| Counterparty | Decription | Class of Related Collateral | Gross Value of Liability | Net Amount Due to Counterparty | Financial Instruments | Cash Collateral Pledged | Net Exposure After Collateral | Interest Rate | Maturity |
|---|---|---|---|---|---|---|---|---|---|
| Mizuho Securities USA Inc. | Repurchase Agreement | Asset-backed securities | $ 30,785 | $ 30,785 | $ (30,785) | $ - | $ - | 1.45% | 11/1/2026 |
| Mizuho Securities USA Inc. | Repurchase Agreement | Asset-backed securities | 11,329 | 11,329 | (11,329) | - | - | 2.45% | 10/14/2022 |
| Mizuho Securities USA Inc. | Repurchase Agreement | Asset-backed securities | 3,039 | 3,039 | (3,039) | - | - | 2.45% | 5/1/2027 |
| Mizuho Securities USA Inc. | Repurchase Agreement | Asset-backed securities | 2,901 | 2,901 | (2,901) | - | - | 2.45% | 11/1/2026 |
| Mizuho Securities USA Inc. | Repurchase Agreement | Asset-backed securities | 2,660 | 2,660 | (2,660) | - | - | 2.00% | 11/1/2026 |
| | | | $ 50,714 | $ 50,714 | $ (50,714) | | | | |

7. **Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its Consolidated Entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans. The Consolidated Entities may also invest in derivative instruments, including total return and credit default swaps. Investments in these derivative instruments throughout the year subject the Consolidated Entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Entities due to a change in the market value of its investments or the value of the investments underlying swap agreements. The Partnership and its Consolidated Entities' exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations. These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Entities investments. Volatility or illiquidity could impair the Partnership and its Consolidated Entities performance or result in losses. The Partnership and its Consolidated Entities may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets. The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**
Credit risk is the potential loss the Partnership and its Consolidated Entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract. Because the Consolidated Entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties. To limit the credit risk associated with such transactions, the Consolidated Entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

HIGHLY CONFIDENTIAL

D-CNL000478

**Appx. 01263**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Liquidity Risk**
The Consolidated Entities' limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.  There is no public market for the interests, and neither the Consolidated Entities nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the Consolidated Entities.  Consolidated Entities could be materially affected by the liquidity, credit and other events of the Partnership.

**High Yield Bonds and Loans**
The Partnership and its Consolidated Entities' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange.  These investments trade in a limited market and it may not be possible to immediately liquidate them if needed.  In addition, certain of the Partnership and its Consolidated Entities' investments have resale or transfer restrictions that further reduce their liquidity.  Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Entities purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower.  Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Entities  have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Entities may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies.  Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest.  They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions.  Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**Debt Obligations**
The Partnership and its Consolidated Entities' investment portfolio consists of collateralized loan obligations that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. Because of the inherent uncertainty of these investments, the Partnership's best estimates may differ significantly from values that would have been used had broader market for the investments existed.

HIGHLY CONFIDENTIAL

D-CNL000479

Appx. 01264

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Entities invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings.  These investments have substantial inherent risks.  Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates.  The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

**Limited Diversification**
The Investment Manager attempts to diversify the Consolidated Entities' investments.  However, the Consolidated Entities' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Entities.  In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments.  This limited diversity could expose the Consolidated Entities to losses that are disproportionate to market movements as a whole.

At December 31, 2016, the Consolidated Entities' investments were predominantly concentrated in the United States and Cayman Islands.

**Exit Difficulties**
The Partnership and its Consolidated Entities cannot assure investors that it will be able to exit its investments by sale or other disposition at attractive prices, if at all.  The mergers and acquisitions and public securities markets are highly cyclical, which means that the Consolidated Entities' investments, even its best performing investments, may be illiquid for extended periods of time despite the Consolidated Entities' efforts to identify attractive exit opportunities.  Additionally, a significant portion of the Consolidated Entities' assets at any time will likely consist of debt obligations and other securities that are thinly-traded, for which no market exists and/or are restricted as to their transferability under applicable law and/or documents governing particular transactions of the Consolidated Entities.  In some cases, the Consolidated Entities may be unable to realize an investment prior to the date on which the Consolidated Entities are scheduled to terminate and/or have to sell or otherwise dispose of one or more investments on disadvantageous terms as a result of the Consolidated Entities' termination, or distribute such investments in kind.

**Custody Risk**
The clearing operations for the Partnership and its Consolidated Entities are provided by major financial institutions.  In addition, all of the Partnership and its Consolidated Entities' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges.  The Partnership or its Consolidated Entities may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations.  While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Entities might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

HIGHLY CONFIDENTIAL

D-CNL000480

**Appx. 01265**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Leverage Risk**
The Consolidated Entities may borrow funds from brokers, banks and other lenders to finance its trading operations. The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Entities' investment portfolio may be subject. The use of margin and short-term borrowings creates several risks for the Consolidated Entities. If the value of the Consolidated Entities' securities fall below the margin level required by a counterparty, additional margin deposits would be required. If the Consolidated Entities are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Entities' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Entities to incur significant losses. In addition, to the extent the Consolidated Entities have posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Entities' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Entities. In addition, because the use of leverage allows the Consolidated Entities to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Entities may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Entities' assets, the Consolidated Entities may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements. As a result, the Consolidated Entities may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets. The banks and dealers that provide financing to the Consolidated Entities have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies. Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar. The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2016, the Consolidated Entities' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Litigation Risk**
The Partnership and its Consolidated Entities are periodically subject to legal actions arising from the ordinary course of business. The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Entities. Refer to Note 15 for a discussion of open litigation.

HIGHLY CONFIDENTIAL

D-CNL000481

**Appx. 01266**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
Notes to Consolidated Financial Statements
December 31, 2016

8.     Related Party Transactions

**Investments Under Common Control**
Certain members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests.  Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable.  As of December 31, 2016, the Partnership and its Consolidated Entities held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---:|
| American Banknote Corporation | Common Equity | $          582 |
| Carey Holdings, Inc. | Common Stock | 5,368 |
| CCS Medical, Inc. | Loan | 5,836 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 43,142 |
| Euramax International Holdings B.V. | Warrants | 1,108 |
| Euramax International Holdings B.V. | Term Loan | 39,124 |
| Euramax International Holdings B.V. | Common Stock | 13,454 |
| Highland Energy MLP Fund | Mutual Fund | 2,290 |
| Highland Floating Rate Opportunities Fund | Mutual Fund | 733 |
| Highland Global Allocation Fund | Mutual Fund | 2,150 |
| Highland Long/Short Equity Fund | Mutual Fund | 263 |
| Highland Long/Short Healthcare Fund | Mutual Fund | 2,423 |
| Highland Merger Arbitrage Fund | Mutual Fund | 1,177 |
| Highland Opportunistic Credit Fund | Mutual Fund | 4,857 |
| JHT Holdings Inc. | Revolving Term Loan | 1,923 |
| JHT Holdings Inc. | Common Stock | 3,349 |
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 311,225 |
| NexPoint Credit Strategies Fund | Mutual Fund | 15,029 |
| NexPoint Multifamily Capital Trust, Inc. | REIT | 4,041 |
| NexPoint Opportunistic Credit Fund | Mutual Fund | 101 |
| NexPoint Real Estate Strategies Fund | Mutual Fund | 1,039 |
| NexPoint Residential Trust, Inc. | REIT | 54,029 |
| Romacorp Restaurant Holdings, Inc. | Common Equity | 336 |
| Trussway Industries, Inc. | LLC Units | 51,482 |
| Turtle Bay Holdings, LLC | LLC Units | 13,500 |

29

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

Certain investments are issued and managed by affiliates of the Partnership. These investments are subject to the same valuation policies and procedures as similar investments within the same level of the fair value hierarchy. As of December 31, 2016, the Partnership and the Consolidated Entities held the following investments that were issued and managed by affiliates of the Partnership:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| ACIS 2013-2A | Asset backed debt | $ 31,162 |
| ACIS 2013-2A | Asset backed equity | 23,975 |
| ACIS 2014-5A | Asset backed debt | 42,792 |
| ACIS 2015-6A | Asset backed equity | 4,771 |
| BB Votorantim Highland Infrastructure LLC | Common equity | 1,534 |
| Highland Energy MLP Fund | Mutual fund shares | 2,290 |
| Highland Floating Rate Opportunities Fund | Mutual fund shares | 733 |
| Highland Global Allocation Fund | Mutual fund shares | 2,150 |
| Highland Merger Arbitrage Fund | Mutual fund shares | 1,177 |
| Highland Opportunistic Credit Fund | Mutual fund shares | 4,857 |
| Highland Park CDO, Ltd. - 1A | Asset backed debt tranche | 1,572 |
| Highland Park CDO, Ltd. - 1X | Asset backed equity | 1,048 |
| Highland Prometheus Fund | Partnership Interest | 912 |
| Highland Long/Short Equity Fund | Mutual fund shares | 263 |
| Highland Long/Short Healthcare Fund | Mutual fund shares | 2,423 |
| NexPoint Credit Strategies Fund | Mutual fund shares | 15,029 |
| NexPoint Multi Family Capital Trust | REIT | 4,041 |
| NexPoint Opportunistic Credit Fund | Closed-end mutual fund shares | 101 |
| NexPoint Real Estate Strategies Fund | Closed-end mutual fund shares | 1,039 |
| Highland Acquisition Corp | Private shares | 25 |
| PAMCO 1997 - 1A | Asset backed debt tranche | 230 |
| Rockwall Investors Corp. | Asset backed equity | 2,123 |
| Westchester CLO, Ltd | Asset backed equity | 4,127 |

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2016, approximately $7.8 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other Assets* in the accompanying Consolidated Balance Sheet.

**Accounts Held with Related Party**
During the year the Partnership and its Consolidated Entities maintained accounts at NexBank, SSB ("NexBank"), a related party by way of common control.  As of December 31, 2016, balances in the accounts were approximately $15.3 million, a portion of which exceeds Federal deposit insurance limits.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank.  Interest earned on the loans during the year was approximately $8.2 million.  At December 31, 2016, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $66.3 million and $45.2 million, respectively.

**Notes and Other Amounts Due from Affiliates**
During the year ended December 31, 2016, Highland Capital Management Fund Advisors, L.P. ("HCMFA") issued a promissory note to the Partnership in the amount of $2.3 million. The note accrues interest at a rate of 2.62%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2016 total interest and principal due on outstanding promissory notes was approximately $6.1 million and is payable on demand. The Partnership will not demand payment on amounts owed prior to May 31, 2018. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2016, NexPoint Advisors, L.P. ("NexPoint") received $3.9 million of principal advances on their outstanding revolving note with the Partnership. The revolving note accrues interest at a rate of 6.0%. As of December 31, 2016 total interest and principal due on outstanding promissory and revolving notes was approximately $25.9 million and is payable on demand. The Partnership will not demand payment on amounts owed prior to May 31, 2018. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2016, HCRE Partners, LLC ("HCRE") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 8.0%. As of December 31, 2016 total interest and principal due on outstanding promissory notes was approximately $6.1 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2016, Highland Capital Management Services, Inc. ("HCMSI") issued promissory notes to the Partnership in the aggregate amount of $21.6 million. The notes accrue interest at rates ranging from 2.18% - 2.65%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2016 total interest and principal due on outstanding promissory notes was approximately $22.8 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2016, James Dondero ("Dondero") issued promissory notes to the Partnership in the aggregate amount of $14.8 million. The notes accrue interest at rates ranging from 1.95% - 2.25%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2016 total interest and principal due on the promissory notes was approximately $14.9 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2016, Mark Okada ("Okada") issued a promissory note to the Partnership in the aggregate amount of $1.3 million. The note accrues interest at a rate of 2.25%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2016 total interest and principal due on the promissory note was approximately $1.3 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

HIGHLY CONFIDENTIAL
D-CNL000484

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

During the year ended December 31, 2016, the Partnership purchased a promissory note due from The Dugaboy Investment Trust ("Dugaboy") in the aggregate amount of $23.4 million. The note accrues interest at a rate of 2.75% per annum. As of December 31, 2016 total interest and principal due on the promissory note was approximately $23.4 million and is payable in full on October 30, 2036. The fair value of the Partnership's outstanding notes receivable approximates its carrying value of the notes receivable.

On December 21, 2015, the Partnership entered into a contribution agreement (the "Contribution Agreement") with an affiliated trust.  Pursuant to the Contribution Agreement, a note (the "Note Receivable") in the amount of $63.0 million was due to the Partnership.  The Note Receivable will mature on December 21, 2030.  The Note Receivable accrues interest at a rate of 2.61% per annum.  Accrued interest is paid-in-kind, with principal receipts occurring pursuant to a note amortization schedule, with such annual receipts commencing December 21, 2019. As of December 31, 2016 total interest and principal due on the Note Receivable was approximately $64.6 million.

**Services Performed by or on Behalf of an Affiliate**
In March 2007, Highland Capital of New York, Inc. a New York corporation ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf.  For the year ended December 31, 2016, total marketing fee expense charged to the Partnership by Highland New York was approximately $4.3 million and as of December 31, 2016, amounts owed to Highland New York for services rendered was approximately $0.4 million.

Effective December 15, 2011, the Partnership commenced performing services on behalf of HCMFA, a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2016, the total fee charged by the Partnership to HCMFA was approximately $2.5 million and as of December 31, 2016, there were no amounts owed to the Partnership by HCMFA for services rendered.

Effective July 29, 2010, the Partnership commenced performing services on behalf of Falcon E&P Opportunities GP, LLC. ("Falcon"), a Delaware limited liability company and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2016, the total fee charged by the Partnership to Falcon was approximately $0.2 million and as of December 31, 2016, no amounts were owed to the Partnership by Falcon for services rendered.

Effective January 1, 2016, pursuant to the Second Amended and Restated Sub-Advisory Agreement and the Third Amended and Restated Shared Services Agreement dated July 29, 2016, the Partnership continued performing services on behalf of Acis Capital Management, L.P. ("Acis"), a Delaware limited partnership and registered investment advisor. Subadvisory services include investment advisory services and shared services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2016, the total fees charged by the Partnership to Acis for shared services and subadvisory fees were approximately $5.1 million and $6.8 million, respectively. As of December 31, 2016, amount owed to the Partnership by Acis was approximately $0.5 million.

32

D-CNL000485

**Appx. 01270**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2016**

Effective January 1, 2013, the Partnership commenced performing services on behalf of NexPoint. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2016, the total fee charged by the Partnership to NexPoint was approximately $0.6 million and as of December 31, 2016, no amounts were owed to the Partnership by NexPoint for services rendered.

Effective September 24, 2013, the Partnership commenced performing services on behalf of NexBank Capital, Inc. ("NexBank Capital"), financial services company. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2016, the total fee charged by the Partnership to NexBank Capital was approximately $0.2 million and as of December 31, 2016, $0.1 million was owed to the Partnership by NexBank Capital for services rendered.

Effective September 24, 2013, the Partnership commenced performing services on behalf of NexBank SSB, ("NexBank"), a Texas savings bank. Services include investment advisory services. The Partnership charges a fee for the services performed. For the year ended December 31, 2016, the total fee charged by the Partnership to NexBank was approximately $1.5 million and as of December 31, 2016, $0.5 million was owed to the Partnership by NexBank for services rendered.

Effective April 1, 2015, the Partnership commenced performing services on behalf of NexPoint Real Estate Advisors, L.P. ("NREA"). Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. NREA is charged a fee for the services provided. For the year ended December 31, 2016, the total fee charged to NREA by the Partnership was approximately $0.6 million and as of December 31, 2016, amounts owed by NREA to the Partnership for services rendered were approximately $0.9 million.

**Investment liability**
On January 28, 2016, the Partnership entered into a participation agreement with Cornerstone Healthcare Group Holding, Inc. ("Cornerstone") for securities purchased and held on their behalf which had a value of $8.0 million as of the transaction date. The fair value of the Agreement will fluctuate with the fair value of the held securities, throughout the term of the Agreement. As of December 31, 2016 the fair value of the securities were $8.6 million.

On December 28, 2016, the Partnership entered into a purchase and sale agreement with The Get Good Nonexempt Trust ("Get Good"). In consideration for a note receivable from an affiliate, the Partnership sold or participated certain investments that it already held, with the participated investments carrying an aggregate market value of $21.3 million as of the date of the transaction. The fair value of the Agreement will fluctuate with the fair value of the securities, throughout the term of the Agreement. As of December 31, 2016 the fair value of the participated investments was $18.7 million.

33

D-CNL000486

**Appx. 01271**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

9.   **Notes Receivable**

On October 12, 2016, the Partnership entered into a Purchase and Sale agreement (the "Agreement") with an unaffiliated registered fund.  Pursuant to the Agreement, the Partnership sold, transferred and assigned to the fund, and the fund purchased and accepted from the Partnership, all of the Partnership's principal and accrued interest in various outstanding promissory notes (the "Notes") in the aggregate amount of $6.4 million. The Notes accrue interest at a rate of 7.85% per annum. As of December 31, 2016 total interest and principal due on the Notes was approximately $6.5 million.

10.   **Debt and Notes Payable**

**Promissory Note**
On December 31, 2014, the Partnership entered in to a promissory note with an investor in the amount of $18.6 million, in exchange for 100% of its LP interest in Highland Multi Strategy Credit Fund, L.P. The Partnership must pay one-third of the initial note amount, plus accumulated interest on each of the first three anniversaries of the note. The promissory note will mature on December 31, 2017.  The promissory note accrues interest at a rate of 3.00% per annum. The promissory note is collateralized by limited partnership interest in Multi Strategy Master. As of December 31, 2016 the remaining principal payable on the promissory note was $6.2 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On August 17, 2015, the Partnership entered in to a promissory note with Frontier State Bank in the amount of $9.5 million. The promissory note will mature on August 17, 2018.  The promissory note accrues interest at the 3 month LIBOR rate plus 4.75%, adjusted each date of change, per annum. Accrued interest shall be paid quarterly. The promissory note is collateralized by shares of voting common stock of MGM Holdings, Inc. As of December 31, 2016 the remaining principal payable on the promissory note was $6.9 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On October 7, 2016, the Partnership entered in to a promissory note with Acis in the amount of $12.7 million. The Partnership must make certain payments of the initial note amount, plus accumulated interest on May 31 of each year, until maturity. The promissory note will mature on May 31, 2019. The promissory note accrues interest at a rate of 3.00% per annum. As of December 31, 2016 the remaining principal payable on the promissory note was $12.7 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

On August 25, 2015, Highland Select Equity Fund, L.P. ("Select") entered in to a promissory note with Dugaboy in the amount of $1.0 million. The promissory note accrues interest at a rate of 2.82%, the long-term Applicable Federal Rate, compounded annually. The accrued interest and principal of the promissory note is due and payable on demand. As of December 31, 2016 the remaining principal payable on the promissory note was $1.0 million.  The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

HIGHLY CONFIDENTIAL

D-CNL000487

**Appx. 01272**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

On December 5, 2016, Select entered in to Stock Purchase Agreements with two counterparties for shares of Trussway Industries ("Trussway"), in exchange for promissory notes in the aggregate amount of $15.4 million, plus in the event of a sale of Trussway on or prior to June 1, 2017, 50% of the excess of the price per share over the closing date price per share. The promissory notes accrue interest at a rate of 2.07%, the long-term Applicable Federal Rate, compounded annually. Select must pay one-twenty-fifth of the initial note amounts, plus any additional principal attributable to the sale of Trussway, along with accumulated interest on an annual basis. The promissory notes will mature on December 5, 2041. As of December 31, 2016 the remaining principal payable on the promissory notes was $15.4 million. The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

On August 29, 2016, Maple Avenue Holdings, LLC ("Maple") entered in to a promissory note with Great Southern Bank in the amount of $3.9 million. Maple must pay principal and accrued interest installments on a monthly basis until maturity. The promissory note will mature on September 10, 2041. The promissory note accrues interest at a rate of 3.26% per annum. As of December 31, 2016 the remaining principal payable on the promissory note was $3.8 million. The fair value of Maple's outstanding notes payable approximates the carrying value of the notes payable.

**11.    Due to Broker**

As of December 31, 2016 the due to broker balance of approximately $171.6 million is payable to financing counterparties for margin transactions.

**12.    Commitments**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.   The Partnership regularly co-invests in vehicles it advises. The amounts committed are within the Partnerships capacity to fund when capital is called. In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant.

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, Consolidated statement of Income, or its liquidity.  See Note 15.

HIGHLY CONFIDENTIAL

D-CNL000488

**Appx. 01273**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**Operating Leases**

The Partnership has an operating lease and associated commitments related to its main office space. Future minimum lease payments under operating lease commitments with initial or noncancelable terms in excess of one year, at inception, are as follows:

*(in thousands)*

**Years Ending December 31**

| | |
|---|---:|
| 2017 | 1,521 |
| 2018 | 1,521 |
| 2019 | 1,550 |
| 2020 | 1,566 |
| 2021 | 1,567 |
| Thereafter | 522 |
| Total | $ 8,246 |

Total rental expense of the Partnership and its Consolidated Entities for operating leases was approximately $1.5 million for the year ended December 31, 2016.

**13. Post Retirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements. The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals. A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2011 expense reflects a service cost charge for the value of the new participant's benefit earned during 2011.

36

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2016 are reconciled in the tables below.

*(in thousands)*

| Change in projected benefit obligation | | 2016 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 1,722 |
| Service cost | | 5 |
| Interest cost | | 67 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 657 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (150) |
| Benefit obligation at end of year | $ | 2,301 |

| Change in plan assets | | 2016 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 1,836 |
| Actual return on plan assets | | 884 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (150) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 2,570 |

| Reconciliation of Funded Status | | 2016 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 2,301 |
| Projected benefit obligation at end of year | | 2,301 |
| Fair value of plan assets at end of year | | 2,570 |
| Funded status at end of year | $ | 269 |

HIGHLY CONFIDENTIAL

D-CNL000490

**Appx. 01275**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

The Partnership does not expect to contribute to the plan during 2016.

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2016:

| | |
|---|---|
| Discount rate | 3.69% |
| Rate of compensation increase | N/A |

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2016:

| | |
|---|---|
| Discount rate | 4.00% |
| Expected long-term return on plan assets | 4.00% |
| Rate of compensation increase | N/A |

As of December 31, 2016, there were no plan assets categorized as Level 3.

**14.   Income Taxes**

**The Partnership**
For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2016, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2009 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2016.

**Multi Strategy Master**
For U.S. income tax purposes, Multi Strategy Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

HIGHLY CONFIDENTIAL

D-CNL000491

**Appx. 01276**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

Multi Strategy Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Multi Strategy Master business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices.

Dividends as well as certain interest and other income received by Multi Strategy Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Multi Strategy Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2016, a minimal withholding tax liability of $1.3 million is classified within accrued and other liabilities on the Consolidated Balance Sheet.

Multi Strategy Master applies authoritative guidance which requires management to determine whether a tax position Multi Strategy Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. As of December 31, 2016, a liability to account for uncertain tax positions of $0.1 million is classified within accrued expenses within the Consolidated Balance Sheet. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2016.

Multi Strategy Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Multi Strategy Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2016, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2013 forward (with limited exceptions).

**Restoration Onshore**
Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income. Interest, dividends and other income realized by Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2016. Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2016, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2013 forward (with limited exceptions).

**Restoration Offshore**
Restoration Offshore is a Cayman Islands exempted company. Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore. Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.

Dividends as well as certain interest and other income received by the master partnership of Restoration Offshore from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the master partnership of Restoration Offshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2016. As of December 31, 2016, the tax years that remain subject to examination by major jurisdictions under the statute of limitations is from the year 2013 forward (with limited exceptions).

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

40

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

**15.    Legal Proceedings**

On July 15, 2008, Crusader Master, Highland Offshore Partners, CDO Master Fund, Multi Strategy Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida ('the Tousa action"). The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated. On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement. In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%. The Defendants believed they acted in good faith pursuant to the terms of the relevant agreements and appealed the decision. In February 2011, the District Court of Florida quashed the judgment against the Defendants and overturned the ruling that resulted in the Defendants recording the reserve. The plaintiffs appealed the ruling of the District Court, and the issue was sent to the Eleventh Circuit of Florida. On May 15, 2012, the Eleventh Circuit unexpectedly reversed the District Court's ruling, and remanded the case back to the District Court for review. The last such case was heard by the US Supreme Court case on January 14, 2015. On June 23, 2015, the District Court remanded the case back to the Bankruptcy Court for a report and recommendations regarding the effects of certain settlements on the Plaintiff's available damages. On April 1, 2016, the Bankruptcy Court issued its Report and Recommendations to the District Court. Briefing on the Report and Recommendations was completed in June 2016. On March 8, 2017, the District Court substantially adopted the Bankruptcy Court Report and Recommendations, which affirmed the Defendants' liability. The case has now been retuned to the Eleventh Circuit for additional appeals. Based on the ruling, the Consolidated Entities recorded a combined reserve of approximately $5.8 million as of December 31, 2016. This reserve is included in *Accrued and other liabilities* on the Consolidated Balance Sheet.

Multi Strategy Master and certain of its affiliates (collectively, the "UBS Defendants") have respectively been named as defendants in two separate lawsuits filed by UBS Securities LLC and UBS AG, London Branch (collectively, "UBS Plaintiffs") in the Supreme Court of the State of New York, New York County (the "Court"). In the lawsuits, the UBS Plaintiffs seek damages from the UBS Defendants and other entities relating to a warehouse facility formed for a proposed collateralized loan obligation, or CLO, transaction that was not completed. The UBS Plaintiffs seek monetary damages of approximately $0.7 million, plus certain costs, fees and expenses. The UBS Plaintiffs also seek to unwind alleged fraudulent transfers involving the UBS Defendants. Although the UBS Plaintiffs have not pled a specific damages amount against the UBS Defendants, any eventual damages award would be subject to pre-judgment interest of 9% (accrued as of December 3, 2008) as well as post-judgment interest of 9% (accrued as of the date a judgment, if any, is entered against the UBS Defendants). Each of the UBS Defendants filed a separate motion to dismiss, both of which were denied. In addition, Multi Strategy Master filed a motion for summary judgment, which was heard by the Court on February 14, 2014. On March 11, 2014, the Appellate Division of the Supreme Court of the State of New York (First Department) (the "Appellate Court") heard each of the UBS Defendants' respective appeals of the Court's denials of their respective motions to dismiss. The Court has not yet set a trial date. Though Multi Strategy Master continues to vigorously defend against the UBS Plaintiffs' claims, at this time, the General Partner is unable to provide a reasonably probable estimate of the expected outcome.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

On July 16, 2013, Credit Suisse Securities (USA), LLC ("Credit Suisse") filed suit against Multi Strategy Master and other affiliates (the "Credit Suisse Defendants"). Credit Suisse's claims relate to several outstanding trades of debt tranches of Westgate Investments. On May 5, 2014, Credit Suisse moved for summary judgment on both the principal amount and statutory pre-judgment interest. The Court granted the motion on August 6, 2014, and issued judgment on September 11, 2014 in the amount of $6.4 million in principal, plus $3.4 million in interest, for a total of $9.8 million. Multi Strategy Master continued to accrue interest based on the New York statutory rate through November 30, 2015. As of November 30, 2015, an additional $0.7 million in interest had been accrued, for a total of $4.1 million in interest. At November 30, 2015 total interest and principal liability of $10.5 million had been accrued. On January 14, 2016, the Multi Strategy Master had reached settlement with Credit Suisse for payment of $9.9 million in satisfaction and release of Credit Suisse's claims. The difference between the settlement amount and what was accrued at November 30, 2015, approximately $0.5 million, was recognized as of December 31, 2015, bringing the total accrued liability down to the settlement amount. The Master Partnership made payments of approximately $1.5 million on January 20, 2016, $2.5 million on May 6, 2016, and $5.9 million on August 8, 2016, in full settlement of the outstanding liability. As of December 31, 2016, Partnership had no liability recorded on the Consolidated Balance Sheet related to Credit Suisse.

In April 2012, the Partnership filed suit against a former employee for breach of contract, defamation and theft of trade secrets. The former employee filed a counterclaim with numerous, unrelated allegations. The Partnership refuted each allegation in detail. The former employee sought unspecified damages against the Partnership and certain affiliates. On February 6, 2014, the jury found the former employee breached his fiduciary duty to the Partnership. The jury found that neither the Partnership nor any of its employees had breached any duty, and awarded $2.8 million to the Partnership. The jury also found that HERA owed $2.6 million related to an employee retention plan. The court entered judgment on the verdict on July 11, 2014. On August 22, 2016, the Court of Appeals for the Fifth District of Texas (Dallas) affirmed the judgment against the former employee in favor of the Partnership in the amount of $2.8 million plus post-judgment interest. The Partnership then sought to enforce the judgment. The former employee paid the Partnership $3.1 million on December 14, 2016 in complete satisfaction of the outstanding judgment.

From time to time the Partnership is party to disputes with disgruntled former employees. One such matter involves a former employee that improperly recorded internal conversations in violation of the Partnership's internal policies and procedures and potentially certain criminal and regulatory provisions. The former employee has asserted counterclaims related to his time employed by the Partnership. The matter has been referred to arbitration and at this time, the General Partner is unable to provide a reasonably probable estimate of the expected outcome.

The Partnership is engaged in litigation with two groups of investors relating to the wind down and distribution of the remaining assets in Crusader and Credit Strategies funds. With respect to the Crusader fund, at this time, the General Partner is unable to provide a reasonably probable estimate of the expected outcome. With respect to the Credit Strategies fund, subsequent to year end a settlement was reached. Refer to Note 16 for additional discussion of settlement terms.

In addition to the legal actions that are discussed above, the Partnership is subject to other legal actions arising from the ordinary course of its business. The ultimate outcome of these other cases is inherently uncertain and could result in additional losses to the Partnership.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2016**

16.     **Subsequent Events**

Over the course of 2017 through the report date, the Partnership has distributed equity to its partners in the aggregate amount of $18.3 million.

On January 5, 2017 the Partnership received a $5.5 million pay down on the outstanding Contribution Agreement.

On May 12, 2017, the Partnership entered into an agreement, approved by the independent Redeemer Committee of the Credit Strategies Fund, whereby the Partnership and Highland New York paid the Credit Strategies Fund $23.0 million in exchange for the remaining assets of the Credit Strategies Fund and releases from the on-going litigation between the Partnership and the Redeemer Committee.  Related to this transaction and release of on-going litigation claims of the Partnership, Cornerstone Health Care Group, Inc., with the approval of a special committee of its independent directors, paid indemnification to the Partnership in the amount of $17.4 million.

The Partnership has performed an evaluation of subsequent events through May 19, 2017, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000496

**Appx. 01281**

**Supplemental Information**

44

HIGHLY CONFIDENTIAL

D-CNL000497

**Appx. 01282**

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Balance Sheet**
**December 31, 2016**

| (in thousands) | Highland Capital Management, L.P. | | All Other Consolidated Entities | | Eliminations | | Total Consolidated | |
|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | |
| Cash and cash equivalents | $ | 16,716 | $ | 13,413 | $ | - | $ | 30,129 |
| Investments at fair value | | 148,034 | | 949,876 | | - | | 1,097,910 |
| Equity method investees | | 171,319 | | - | | (171,319) | | - |
| Management and incentive fees receivable | | 12,583 | | - | | - | | 12,583 |
| Due from brokers | | - | | 892 | | - | | 892 |
| Other assets | | 8,083 | | 9,915 | | (5,089) | | 12,909 |
| Notes and other amounts due from affiliates | | 172,671 | | - | | - | | 172,671 |
| Notes receivable | | 6,421 | | - | | - | | 6,421 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $8,533 | | 6,747 | | - | | - | | 6,747 |
| **Total assets** | $ | 542,574 | $ | 974,096 | $ | (176,408) | $ | 1,340,262 |
| | | | | | | | | |
| **Liabilities and partners' capital** | | | | | | | | |
| **Liabilities** | | | | | | | | |
| Accounts payable | $ | 4,417 | $ | 26 | $ | - | $ | 4,443 |
| Securities sold, not yet purchased | | - | | 146,792 | | - | | 146,792 |
| Withdrawals payable | | - | | 68,199 | | - | | 68,199 |
| Due to brokers | | 29,505 | | 143,136 | | (994) | | 171,647 |
| Due to brokers for securities purchased, not yet settled | | - | | 1,614 | | - | | 1,614 |
| Accrued and other liabilities | | 36,960 | | 9,973 | | (4,095) | | 42,838 |
| Debt and notes payable | | 25,763 | | 20,190 | | - | | 45,953 |
| Investment liabilities | | 27,318 | | - | | - | | 27,318 |
| **Total liabilities** | | 123,963 | | 389,930 | | (5,089) | | 508,804 |
| | | | | | | | | |
| Non-controlling interest | | - | | 412,847 | | - | | 412,847 |
| | | | | | | | | |
| Commitments | | | | | | | | |
| | | | | | | | | |
| **Partners' capital** | | 418,611 | | 171,319 | | (171,319) | | 418,611 |
| **Total liabilities and partners' capital** | $ | 542,574 | $ | 974,096 | $ | (176,408) | $ | 1,340,262 |

45

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Statement of Income**
**Year Ended December 31, 2016**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $ 52,599 | $ - | $ - | $ 52,599 |
| Interest and investment income | 2,750 | 33,449 | (1,992) | 34,207 |
| Shared services fees | 9,563 | - | - | 9,563 |
| Incentive fees | 8,151 | - | - | 8,151 |
| Other income | 2,392 | 1,750 | - | 4,142 |
| Total revenue | 75,455 | 35,199 | (1,992) | 108,662 |
| **Expenses:** | | | | |
| Compensation and benefits | 36,160 | 967 | - | 37,127 |
| Professional fees | 8,758 | 2,274 | - | 11,032 |
| Interest expense | 2,478 | 3,283 | - | 5,761 |
| Marketing and advertising expense | 5,170 | - | - | 5,170 |
| Bad debt expense | 2,094 | - | - | 2,094 |
| Depreciation and amortization | 1,367 | - | - | 1,367 |
| Investment and research consulting | 829 | - | - | 829 |
| Other operating expenses | 7,334 | 6,935 | (3,109) | 11,160 |
| Total expenses | 64,190 | 13,459 | (3,109) | 74,540 |
| Other income | 10,779 | - | - | 10,779 |
| Income before investment and derivative activities | 22,044 | 21,740 | 1,117 | 44,901 |
| **Realized and unrealized gain from investments and derivatives:** | | | | |
| Net realized gain on investments and derivatives | 63,605 | 185,347 | (123,220) | 125,732 |
| Net change in unrealized loss on investments and derivatives | 122,444 | (200,093) | - | (77,649) |
| Total realized and unrealized gain from investments and derivatives | 186,049 | (14,746) | (123,220) | 48,083 |
| Net unrealized earnings from equity method investees | (168,737) | - | 168,737 | - |
| Net income | 39,356 | 6,994 | 46,634 | 92,984 |
| Net income attributable to the non-controlling interest | - | (53,628) | - | (53,628) |
| Net income attributable to Highland Capital Management, L.P. | $ 39,356 | $ (46,634) | $ 46,634 | $ 39,356 |

46

HIGHLY CONFIDENTIAL

D-CNL000499

**Appx. 01284**

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2016**

*(in thousands)*

**Assets**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 16,716 |
| Investments at fair value (cost $258,209)* | | 282,863 |
| Equity method investees | | 36,490 |
| Management and incentive fees receivable | | 12,583 |
| Other assets | | 8,083 |
| Notes and other amounts due from affiliates | | 172,671 |
| Notes receivable | | 6,421 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $8,533 | | 6,747 |
| **Total assets** | $ | 542,574 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,417 |
| Due to brokers | | 29,505 |
| Accrued and other liabilities | | 36,960 |
| Notes payable | | 25,763 |
| Investment liabilities | | 27,318 |
| Total liabilities | | 123,963 |
| Partners' capital | | 418,611 |
| **Total liabilities and partners' capital** | $ | 542,574 |

*Investments, at fair value includes $123.0 million of limited partnership interest ownership of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2016 consolidated financial statements of Highland Capital Management, L.P. This information should be read in conjunction with such audited financial statements.

47

D-CNL000500
**Appx. 01285**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2016**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 52,599 |
| Shared services fees | | 9,563 |
| Incentive fees | | 8,151 |
| Interest and investment income | | 2,750 |
| Miscellaneous income | | 2,392 |
| Total revenue | | 75,455 |
| | | |
| **Operating expenses:** | | |
| Compensation and benefits | | 36,160 |
| Professional fees | | 8,758 |
| Marketing and advertising expense | | 5,170 |
| Interest expense | | 2,478 |
| Bad debt expense | | 2,094 |
| Depreciation and amortization | | 1,367 |
| Investment and research consulting | | 829 |
| Other operating expenses | | 7,334 |
| Total operating expenses | | 64,190 |
| | | |
| Other income | | 10,779 |
| | | |
| Income before investment activities | | 22,044 |
| | | |
| **Realized and unrealized gains/losses from investments:** | | |
| Net realized gain on sale of investments | | 63,605 |
| Net change in unrealized loss on investments* | | (29,562) |
| Total realized and unrealized gain from investments | | 34,043 |
| | | |
| Losses from equity method investees: | | (16,731) |
| **Net income** | $ | 39,356 |

*Net change in unrealized gain on investments includes $ 0.9 million of unrealized gains from holdings of limited partnership interests of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2016 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited consolidated financial statements.

48

# EXHIBIT 72

# Highland Capital Management, L.P.

**(A Delaware Limited Partnership)**
**Consolidated Financial Statements and**
**Supplemental Information**
**December 31, 2017**

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Index**
**December 31, 2017**

| | Page |
|---|---|
| **Report of Independent Auditors** | 1 |
| **Consolidated Financial Statements** | |
| Consolidated Balance Sheet | 2 |
| Consolidated Statement of Income | 3 |
| Consolidated Statement of Changes in Partners' Capital | 4 |
| Consolidated Statement of Cash Flows | 5 |
| Notes to Consolidated Financial Statements | 6-41 |
| Supplemental Information | 42-46 |



**Report of Independent Auditors**

To the General Partner of Highland Capital Management, L.P.

We have audited the accompanying consolidated financial statements of Highland Capital Management, L.P. and its subsidiaries (collectively, the "Partnership"), which comprise the consolidated balance sheet as of December 31, 2017, and the related consolidated statements of income, of changes in partners' capital and of cash flows for the year then ended.

### Management's Responsibility for the Consolidated Financial Statements

Management is responsible for the preparation and fair presentation of the consolidated financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation and maintenance of internal control relevant to the preparation and fair presentation of consolidated financial statements that are free from material misstatement, whether due to fraud or error.

### Auditors' Responsibility

Our responsibility is to express an opinion on the consolidated financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the consolidated financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the consolidated financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the consolidated financial statements, whether due to fraud or error. In making those risk assessments, we consider internal control relevant to the Partnership's preparation and fair presentation of the consolidated financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Partnership's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the consolidated financial statements. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Highland Capital Management, L.P. and its subsidiaries as of December 31, 2017, and the results of their operations, changes in their partners' capital and their cash flows for the year then ended, in accordance with accounting principles generally accepted in the United States of America.

### Other Matter

Our audit was conducted for the purpose of forming an opinion on the consolidated financial statements taken as a whole. The Supplemental Consolidating Balance Sheet, the Supplemental Consolidating Statement of Income, the Supplemental Unconsolidated Balance Sheet and the Supplemental Unconsolidated Statement of Income are presented for purposes of additional analysis and are not a required part of the consolidated financial statements. The information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the consolidated financial statements. The information has been subjected to the auditing procedures applied in the audit of the consolidated financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the consolidated financial statements or to the consolidated financial statements themselves and other additional procedures, in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated, in all material respects, in relation to the consolidated financial statements taken as a whole.

*PricewaterhouseCoopers LLP*

May 18, 2018

1

*PricewaterhouseCoopers LLP, 2001 Ross Avenue, Suite 1800, Dallas, Texas 75201*
*T: (214) 999-1400, F: (214) 754-7991, www.pwc.com/us*

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Balance Sheet**
**December 31, 2017**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Cash and cash equivalents | $ | 103,479 |
| Investments at fair value (cost $1,027,878) | | 1,056,380 |
| Management and incentive fees receivable | | 11,861 |
| Due from broker for securities sold, not yet settled | | 2,287 |
| Other assets | | 14,674 |
| Notes and other amounts due from affiliates | | 163,403 |
| Other intangible assets | | 6,330 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $9,880 | | 5,832 |
| **Total assets** | $ | 1,364,246 |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,436 |
| Securities sold, not yet purchased (proceeds $63,187) | | 95,403 |
| Withdrawals payable | | 140,955 |
| Due to brokers | | 104,896 |
| Accrued and other liabilities | | 39,181 |
| Notes payable | | 19,995 |
| Investment liabilities | | 84,359 |
| **Total liabilities** | | 489,225 |
| Non-controlling interest | | 424,844 |
| Commitments and contingencies | | |
| **Partners' capital** | | 450,177 |
| **Total liabilities and partners' capital** | $ | 1,364,246 |

The accompanying notes are an integral part of these consolidated financial statements.

2

HIGHLY CONFIDENTIAL

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Consolidated Statement of Income**
**Year Ended December 31, 2017**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 37,875 |
| Interest and investment income | | 21,122 |
| Incentive fees | | 11,795 |
| Shared services fees | | 9,445 |
| Other income | | 9,790 |
| Total revenue | | 90,027 |
| | | |
| **Expenses:** | | |
| Compensation and benefits | | 37,254 |
| Professional fees | | 14,757 |
| Interest expense | | 5,508 |
| Marketing and advertising expense | | 2,374 |
| Depreciation and amortization | | 1,340 |
| Investment and research consulting | | 1,101 |
| Bad debt expense | | 2,279 |
| Other operating expenses | | 7,915 |
| Total expenses | | 72,528 |
| | | |
| Other income | | 11,967 |
| | | |
| Income before investment and derivative activities | | 29,466 |
| | | |
| **Realized and unrealized gain/(loss) on investments and derivatives:** | | |
| Net realized loss on investments and derivatives | | (9,682) |
| Net change in unrealized gain on investments and derivatives | | 114,883 |
| Net realized and unrealized gain on investments and derivatives | | 105,201 |
| | | |
| Net income | | 134,667 |
| | | |
| Net income attributable to non-controlling interest | | 82,060 |
| | | |
| Net income attributable to Highland Capital Management, L.P. | $ | 52,607 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000506

**Appx. 01292**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Changes in Partners' Capital**
**Year Ended December 31, 2017**

*(in thousands)*

| | General Partner | Limited Partners | Total |
|---|---|---|---|
| Partners' capital, December 31, 2016 | $ 83 | $ 418,528 | $ 418,611 |
| Net income attributable to Highland Capital Management, L.P. | 133 | 52,474 | 52,607 |
| Partner distributions | (53) | (20,988) | (21,041) |
| Partners' capital, December 31, 2017 | $ 163 | $ 450,014 | $ 450,177 |

The accompanying notes are an integral part of these consolidated financial statements.

4

HIGHLY CONFIDENTIAL

D-CNL000507

**Appx. 01293**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Consolidated Statement of Cash Flows**
**Year Ended December 31, 2017**

*(in thousands)*

| | | |
|---|---|---:|
| **Cash flows from operating activities:** | | |
| Net income | $ | 134,667 |
| Adjustment to reconcile net income to net cash | | |
| used in operating activities: | | |
| Net realized loss on investments and derivative transactions | | 9,682 |
| Net change in unrealized gain on investments and derivative transactions | | (114,883) |
| Amortization and depreciation | | 1,340 |
| Changes in assets and liabilities: | | |
| Management and incentive fee receivable | | 722 |
| Due from brokers | | (1,395) |
| Due from affiliate | | (2,246) |
| Other assets | | (1,764) |
| Intangible assets | | (6,330) |
| Accounts payable | | (6) |
| Accrued and other liabilities | | (3,658) |
| Due to brokers for securities purchased, not yet settled | | (1,614) |
| Due to brokers | | (66,753) |
| Net cash used in operating activities | | (52,238) |
| **Cash flows from investing activities:** | | |
| Purchases of fixed assets and leasehold improvements, net | | (425) |
| Purchases of investments | | (237,987) |
| Proceeds from dispositions of investments | | 418,686 |
| Proceeds from securities sold, not yet purchased | | 16,456 |
| Issuance of notes receivable to affiliates | | (10,050) |
| Proceeds from repayments of notes receivable from affiliates | | 27,985 |
| Purchases of investments to cover securities sold, not yet purchased | | (61,160) |
| Net cash provided by investing activities | | 153,505 |
| **Cash flows from financing activities:** | | |
| Payments on notes payable & investment liabilities | | (9,569) |
| Capital contributions from minority interest investors of consolidated entities | | 1,705 |
| Capital withdrawals by minority interest investors of consolidated entities | | 1,242 |
| Partner distributions | | (21,295) |
| Net cash used in financing activities | | (27,917) |
| Net increase in cash and cash equivalents | | 73,350 |
| **Cash and cash equivalents** | | |
| Beginning of year | | 30,129 |
| End of year | $ | 103,479 |
| **Supplemental disclosure of cash flow information:** | | |
| Interest paid during the year | $ | (4,900) |
| Interest receivable reclassified to promissory notes | | 4,390 |
| Taxes paid during the year | | (1,676) |
| Investments acquired for non-cash consideration | | 7,713 |
| Investments disposed for non-cash consideration | | 3,452 |

The accompanying notes are an integral part of these consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000508

**Appx. 01294**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**1.     Description of Business**

Highland Capital Management, L.P. (the "Partnership") was formed on July 7, 1997 as a limited partnership in the state of Delaware.  The Partnership is a registered investment adviser under the Investment Advisers Act of 1940 that manages collateralized loan obligations ("CLOs"), hedge funds, private equity funds, and other leveraged loan transactions that are collateralized predominately by senior secured bank debt and high-yield bonds.  The Partnership and its subsidiaries make direct investments in debt, equity, and other securities in the normal course of business.  The Partnership's general partner is Strand Advisors, Inc. (the "General Partner").  The Partnership is owned by an unaffiliated trust as well as affiliated trusts and personal holdings of the senior management of the Partnership.

As of December 31, 2017, the Partnership provided investment advisory services for twenty-eight CLOs, six separate accounts, one master limited partnership, and eleven hedge fund or private equity structures, with total fee-earning assets under management of approximately $4.9 billion.

**2.     Summary of Significant Accounting Policies**

The following is a summary of the significant accounting policies followed by the Partnership in preparation of its consolidated financial statements.

**Basis of Accounting**
The Partnership's consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles in the United States of America ("U.S. GAAP") as set forth in the Financial Accounting Standards Board's Accounting Standards Codification and are stated in the United States Dollar.

**Use of Estimates**
The preparation of the consolidated financial statements in conformity with U.S. GAAP requires management to make estimates and assumptions that affect the amounts and disclosures in the consolidated financial statements.  Actual results could differ from those estimates and those differences could be material.

**Principles of Consolidation**
The consolidated financial statements include the accounts of the Partnership and the Partnership's consolidated subsidiaries ("Consolidated Entities"), which are comprised of (i) those entities in which it has controlling investment and has control over significant operating, financial and investing decisions, (ii) those entities in which it, as the general partner, has control over significant operating, financial and investing decisions, and (iii) variable interest entities ("VIEs") in which it is the primary beneficiary as described below.

The Partnership determines whether an entity has equity investors who lack the characteristics of a controlling financial interest or does not have sufficient equity at risk to finance its expected activities without additional subordinated financial support from other parties.  If an entity has either of these characteristics, it is considered a VIE and must be consolidated by its primary beneficiary, which is the party that, along with its affiliates and de facto agents, absorbs a majority of the VIEs' expected losses or receives a majority of the expected residual returns as a result of holding variable interests.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

The Partnership assesses consolidation requirements pursuant to ASU 2015-02: Consolidation, which was adopted using the modified retrospective method and resulted in an effective date of adoption of January 1, 2016.

The Partnership and its affiliate's involvement with unconsolidated VIEs is generally limited to that of an advisory services provider, and their investment, if any, represents an insignificant interest in the relevant investment entities' assets under management. The Partnership's affiliate's exposure to risk in these entities is generally limited to any capital contribution it has made or is required to make and any earned but uncollected asset based and performance fees. The Partnership has not issued any investment performance guarantees to these VIEs or their investors, except that the Partnership has agreed to subject the full value of its equity interest ($1.0M) in Highland Prometheus Fund to dollar-for-dollar reduction to the extent the third party investor in such fund does not achieve an annual target return.

As of December 31, 2017, the net assets of the unconsolidated VIEs and the Partnership's maximum risk of loss were as follows:

*(in thousands)*

|  | Unconsolidated VIE Net Assets | Carrying Value and Maximum Risk of Loss |
|---|---|---|
| Sponsored investment funds | $    625,692,621 | $    13,979,151 |

**Consolidation of Variable Interest Entities**
The Partnership consolidates the following VIEs (along with majority owned funds: Highland Diversified Credit Fund, L.P., and Highland Select Equity Fund, L.P., collectively the "Consolidated Investment Funds"), as the Partnership (or its wholly owned subsidiaries) controls the general partner of the respective entities and is responsible for the daily operations of the following entities:

- Highland Multi Strategy Credit Fund, L.P. ("Multi Strategy Master"), formerly Highland Credit Opportunities CDO, L.P., a Delaware limited partnership that commenced operations on December 15, 2005 and changed its name on August 26, 2014;

- Highland Multi-Strategy Master Fund, L.P. ("Multi-Strat Master"), a Bermuda limited partnership that commenced operations on July 18, 2006;

- Highland Multi-Strategy Fund, L.P. ("Multi-Strat Domestic Feeder"), a Delaware limited partnership that commenced operations on July 6, 2006;

- Highland Restoration Capital Partners Offshore, L.P. ("Restoration Offshore"), a Cayman limited partnership that commenced operations on September 2, 2008;

- Highland Restoration Capital Partners, L.P. ("Restoration Onshore"), a Delaware limited partnership that commenced operations on September 2, 2008; and

7

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

- BB Votorantim, Highland Infrastructure LLC ("BB Votorantim"), a Delaware limited liability company which began operations on May 29, 2014.

**Consolidation of Majority Owned Entities**
The Partnership consolidates the following entities as it has a controlling majority interest:

- 100% interest in Highland Capital Special Allocation, LLC ("HCSA"), a Delaware limited liability company that commenced operations on December 21, 2006;

- 100% interest in Highland Receivables Finance 1, LLC, a Delaware limited liability company that commenced operations on December 29, 2006;

- 100% interest in Highland Multi-Strategy Onshore Master SubFund, LLC, a Delaware limited liability company that commenced operations on July 19, 2006;

- 100% interest in Highland Multi-Strategy Onshore Master Subfund II, LLC, LLC, a Delaware limited liability company that commenced operations on February 22, 2007;

- 100% interest in Highland Brasil, LLC, a Delaware limited liability company that commenced operations on January 28, 2014;

- 100% interest in Highland Capital Management Partners Charitable Trust #1, a trust that commenced operations on September 19, 2006;

- 100% interest in Highland Capital Management (Singapore) Pte, Ltd., a company organized in the Republic of Singapore that commenced operations on April 2, 2008;

- 100% interest in Highland Capital Management Korea, Ltd. ("HCM Korea"), a company organized in the Republic of Korea that commenced operations on August 2, 2012;

- 100% interest in Highland Capital Management Latin America, L.P.,  ("HCM Latin America"), a Cayman company that was formed on April 13, 2017;

- 100% interest in HE Capital, LLC, a Delaware limited liability company that was formed on March 22, 2007;

- 100% interest in De Kooning, Ltd, a Cayman company that was formed on December 1, 2012;

- 100% interest in Hirst, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Hockney, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Oldenburg, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in Eames, Ltd, a Cayman company that was formed on December 12, 2012;

- 99.9% interest in Penant Management, L.P., a Delaware limited partnership that was formed on December 12, 2012;

- 100% interest in Pollack, Ltd., a Cayman company that was formed on December 1, 2012;

8

D-CNL000511
**Appx. 01297**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

- 100% interest in Warhol, Ltd., a Cayman company that was formed on December 1, 2012;

- 100% interest in HCREF-I Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XI Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in HCREF-XII Holding Corp., a Delaware company that was formed on December 13, 2012;

- 100% interest in Highland ERA Management, LLC, a Delaware limited liability company that was formed on February 1, 2013;

- 100% interest in The Dondero Insurance Rabbi Trust., a trust that was formed on May 27, 2004;

- 100% interest in The Okada Insurance Rabbi Trust, a trust that was formed on May 27, 2004;

- 100% interest in Highland Employee Retention Assets ("HERA"), LLC, a Delaware limited liability company that was formed on October 26, 2009;

- 100% interest in Highland Diversified Credit Fund, L.P. ("Highland Offshore Partners"), a Delaware limited partnership which began operations on February 29, 2000 and was organized for the sole purpose of investing substantially all of its assets in Highland Offshore Partners, L.P.;

- 99.6% interest in Highland Select Equity Master Fund, LP, and Highland Select Equity Fund, LP Delaware limited partnerships which began operations on January 1, 2002 and was organized for the purpose of investing and trading in large and small cap stocks that trade for less than intrinsic value;

- 100% interest in Bandera Strategic Credit Partners I SLP, L.P., a Delaware limited liability company formed on April 3, 2014;

- 100% interest in Highland Fund Holdings, LLC, a Delaware limited liability company that was formed on May 24, 2016;

- 100% interest in HCM Holdco, LLC, a Delaware limited liability company formed on October 27, 2015 and;

- 100% interest in Maple Avenue Holdings, LLC, a Texas limited liability company formed on August 17, 2016.

- 100% interest in Highland HCF Advisor, Ltd., a Cayman company that was formed on October 27, 2017.

All inter-partnership and intercompany accounts and transactions involving the above listed Consolidated Entities have been eliminated in all of the aforementioned consolidating schedules. All the Consolidated Investment Funds are, for U.S. GAAP purposes, investment companies under the American Institute of Certified Public Accountants (AICPA) Audit and Accounting Guide -

9

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

Investment Companies.  The Partnership has retained the specialized accounting of these funds required under U.S. GAAP.

The following table includes a rollforward of non-controlling interests from December 31, 2016, to December 31, 2017.

*(in thousands)*

| | |
|---|---:|
| Noncontrolling interest, December 31, 2016 | $ 412,847 |
| Net income attributable to noncontrolling interest | 82,060 |
| Noncontrolling partner distributions | (70,063) |
| Noncontrolling interest, December 31, 2017 | $ 424,844 |

**Investment Transactions**
Investment transactions are recorded on a trade date basis.  Investments in securities are valued at market or fair value at the date of the consolidated financial statements with the resulting net unrealized appreciation or depreciation reflected in the Consolidated Statement of Income. Realized gains and losses on the transactions are determined based on either the first-in, first-out or specific identification method.

See Note 5 for the Partnership's fair value process and hierarchy disclosures.

**Management and Incentive Fee Revenue**
The Partnership recognizes revenue as earned in connection with services provided under collateral and investment management agreements.   Under these agreements, the Partnership earns management fees calculated as a percentage of assets under management or net asset value.  The Partnership also has an opportunity to earn additional incentive fees and incentive allocations related to certain management agreements depending ultimately on the financial performance of the underlying assets the Partnership manages.   During the year ended December 31, 2017, the Partnership and its Consolidated Entities recognized management fees and incentive fees of approximately $37.9 million and $11.8 million, respectively.

**Shared Services Revenue**
The Partnership recognizes revenue as earned in connection with services provided to related parties under various shared services agreements. Under these agreements, the Partnership earns fees for services including, but not limited to, back office support functions, marketing, and investment advisory services. During the year ended December 31, 2017, the Partnership and its Consolidated Entities recognized shared services revenue of approximately $9.4 million, which has been presented in *Shared services fees* in the Consolidated Statement of Income. See further discussion in Note 9.

10

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Income and Expense Recognition**
Interest on currently paying debt instruments is accrued as earned and dividend income and dividends on securities sold, not yet purchased are recorded on the ex-dividend date, net of withholding taxes. In certain instances where the asset has defaulted or some amount of the interest payment is deemed uncollectable, interest is recognized when received. Discounts and premiums associated with purchases of investments are accreted and amortized to interest income, except for deep-discounted debt where ultimate collection of interest and principal may be in doubt. Such accretion/amortization is calculated on an effective-yield basis over the life of the investment. Amendment fees are recognized when agreed to by the underlying company and all settlement contingencies are met. Operating expenses, including interest on securities sold short, not yet purchased, are recorded on the accrual basis as incurred.

**Income Taxes**
The Partnership is not subject to federal income taxes, and therefore, no provision has been made for such taxes in the accompanying consolidated financial statements. Income taxes are the responsibility of the partners. Certain consolidated subsidiaries are subject to federal income taxes.

Certain entities that are included in these consolidated financial statements are subject to federal and/or state income taxes. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in the period that includes the enactment date. See further discussion in Note 14.

**Cash and Cash Equivalents**
Cash and cash equivalents consist of cash held at U.S. and foreign banks, deposits with original maturities of less than 90 days, and money market funds. Cash equivalents are carried at cost, which approximates market value. At December 31, 2017, the Partnership and Consolidated Entities held cash balances at certain financial institutions in excess of the federally insured limit of $0.3 million. The Partnership and Consolidated Entities regularly monitor the credit quality of these institutions.

**Notes Receivable**
Notes receivable consists of secured promissory notes with maturities greater than one year. When available, the Partnership uses observable market data, including pricing on recent closed transactions to value notes. When appropriate, these notes may be valued using collateral values. Adjustments to the value may be performed in circumstances where attributes specific to the collateral exist suggesting impairment.

**Other Intangible Assets**
Goodwill and other intangible assets are recorded on the Consolidated Balance Sheet at current carrying values. The Partnership and its Consolidated Entities perform an impairment test on an annual basis. Any impairment in the value of other intangible assets is accounted for in the year when it occurs.

HIGHLY CONFIDENTIAL

D-CNL000514
**Appx. 01300**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Fixed Assets and Leasehold Improvements**
Fixed assets and leasehold improvements are carried at cost, less accumulated depreciation. Depreciation is provided using the straight-line method over the shorter of the estimated useful life of the assets or the lease term.

The Partnership and its Consolidated Entities are depreciating fixed assets as follows:

|  | Period |
|---|---|
| Leasehold improvements | Lease term |
| Buildings | 29 - 40 years |
| Furniture and fixtures | 7 years |
| Computer and equipment | 3 - 5 years |
| Computer software | 3 years |

**Securities Sold, Not Yet Purchased**
The Partnership's Consolidated Investment Funds engage in "short sales" as part of their investment strategies.  Short selling is the practice of selling securities that are borrowed from a third party.  The Consolidated Investment Funds are required to return securities equivalent to those borrowed for the short sale at the lender's demand.

Pending the return of such securities, the Consolidated Investment Funds deposit with the lender as collateral the proceeds of the short sale plus additional cash.  The amount of the required deposit, which earns interest, is adjusted periodically to reflect any change in the market price of the securities that the Consolidated Investment Funds are required to return to the lender. A gain (which cannot exceed the price at which the Consolidated Investment Funds sold the security short) or a loss (which theoretically could be unlimited in size) will be settled upon termination of a short sale.

**Due to/from Brokers**
Due to and from broker balances recorded on the Consolidated Balance Sheet include liquid assets maintained with brokers and counterparties for margin account balances and the amounts due for or due from the settlement of purchase and sales transactions. Certain due to and from broker balances have been reported on a net-by-counterparty basis where, in accordance with contractual rights and the Partnership's opinion, there is a right of offset in the event of bankruptcy or default by a counterparty.

.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Options Contracts**
The Partnership and the Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments.  A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period.  When the Partnership or the Consolidated Entities purchase (write) an option, an amount equal to the premium paid (received) by the entity is reflected as an asset (liability).  The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold.  When an option expires (or the Partnership or the Consolidated Entities enter into a closing transaction), the entity realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid).  Exercise of a written option could result in the Partnership or the Consolidated Entities purchasing a security at a price different from the current market value.

The Partnership and the Consolidated Entities are exposed to counterparty risk from the potential that a seller of an option contract does not sell or purchase the underlying asset as agreed under the terms of the option contract. The maximum risk of loss from counterparty risk to the Partnership and the Consolidated Entities is the greater of the fair value of its open option contracts or the premiums paid to purchase the open option contracts. The Partnership and the Consolidated Entities consider the credit risk of the intermediary counterparties to its option transactions in evaluating potential credit risk.

**Margin Transactions**
To obtain more investable cash, the Consolidated Entities may use various forms of leverage including purchasing securities on margin.  A margin transaction consists of purchasing an investment with money loaned by a broker and agreeing to repay the broker at a later date. Interest expense on the outstanding margin balance is based on market rates at the time of the borrowing.

**Withdrawals Payable**
Withdrawals are recognized as liabilities, net of incentive allocations, when the amount requested in the withdrawal notice becomes fixed and determinable.  This generally may occur either at the time of receipt of the notice, or on the last day of a fiscal period, depending on the nature of the request. As a result, withdrawals paid after the end of the year, but based upon year-end capital balances are reflected as withdrawals payable at December 31, 2017.  Withdrawal notices received for which the dollar amount is not fixed remains in capital until the amount is determined. At December 31, 2017, the Consolidated Investment Funds had withdrawals payable of $141.0 million.

13

D-CNL000516

**Appx. 01302**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Foreign Currency Transactions**
The Partnership's subsidiaries HCM Singapore and HCM Korea use Singapore dollars and Korean won, respectively, as their functional currency.  All foreign currency asset and liability balances are presented in U.S. dollars in the consolidated financial statements, translated using the exchange rate as of December 31, 2017.  Revenues and expenses are recorded in U.S. dollars using an average exchange rate for the relative period.  Foreign currency transaction gains and losses resulting from transactions outside of the functional currency of an entity are included in *Other income* on the Consolidated Statement of Income.

The Consolidated Entities do not isolate that portion of the results of operations resulting from changes in foreign exchange rates or investment or fluctuations from changes in market prices of securities held.  Such fluctuations are included within the *Net realized and unrealized gains or loss from investments* on the Consolidated Statement of Income.

**Life Settlement Contracts**
One of the Consolidated Investment Funds, through a subsidiary, holds life settlement contracts and accounts for them using the fair value method. These contracts are recorded as a component of "Investments at fair value" on the Consolidated Balance Sheet. Realized and unrealized gains (losses) on the contracts are recorded in the Consolidated Income Statement. Cash flows relating to the purchase and sale of the contracts are recorded as a component of *Purchase of investments* and *Proceeds from dispositions of investments* on the Consolidated Statement of Cash Flows. At December 31, 2017, the Consolidated Investment Fund was invested in 13 policies, which had a total face value of approximately $145.3 million and a fair value of $29.0 million.

**Financing**
The Partnership and its Consolidated Entities may finance the acquisition of its investments in securities and loans through financing arrangements which are classified in Notes payable and Investment liabilities on the Consolidated Balance Sheet.  The Partnership and its Consolidated Entities recognize interest expense on all borrowings on the accrual basis in the Consolidated Statement of Income.

**Financial Instruments**
The Partnership and its Consolidated Entities determine fair value of financial instruments as required by U.S. GAAP.  The carrying amounts for cash and cash equivalents, receivables, accounts payable, withdrawals payable, debt and notes payable, due to brokers, investment liabilities and accrued liabilities approximate their fair values. For fair value of investment, see Note 5.

**Accounts Payable, Accrued and Other Liabilities**
Expenses are recorded on an accrual basis, as incurred. Current liabilities are included in Accounts payable. Long-term liabilities are included in Accrued and other liabilities.

**Partners' Capital**
The Partnership agreement requires that income or loss of the Partnership be allocated to the partners in accordance with their respective partnership interests.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Recently Issued Accounting Standards and Interpretations**

In January 2016, the FASB issued ASU 2016-01, Fair Value: Recognition and Measurement of Financial Assets and Liabilities. Under the new standard, all equity investments in unconsolidated entities (other than those accounted for using the equity method of accounting) will generally be measured at fair value through earnings. The standard is effective for fiscal periods beginning after December 15, 2018. The Partnership does not expect the adoption of this standard to have a significant impact on its Consolidated Financial Statements.

In February 2016, the FASB issued ASU 2016-02, Leases, which requires lessees to recognize assets and liabilities arising from most operating leases on the statement of financial position. The standard is effective for fiscal periods beginning after December 15, 2019. The Partnership is evaluating the impact of this standard on its Consolidated Financial Statements.

In August 2016, the FASB issued ASU 2016-15, Statement of Cash Flows - Classification of Certain Cash Receipts and Cash Payments, which clarifies how cash receipts and cash payments are classified in the statement of cash flows. The standard is effective for fiscal periods beginning after December 15, 2018. The Partnership does not expect the adoption of this standard to have a significant impact on its Consolidated Financial Statements.

In May, 2014, the FASB issued ASU 2014-09, Revenue from contracts with customers, and subsequently issued several related amendments. ASC 606 provides a comprehensive model for revenue recognition and is effective in fiscal periods beginning after December 15, 2018. ASC 606 supersedes Accounting Standards Codification ("ASC") 605 and all prior FASB guidance related to revenue recognition. ASC 606 provides accounting guidance for all revenue arising from contracts with customers and also specifies the accounting for costs incurred to obtain or fulfill a revenue generating contract. The Partnership does not expect the adoption of this standard to have a significant impact on its Consolidated Financial Statements.

3.   **Fixed Assets and Leasehold Improvements**

Fixed assets and leasehold improvements are comprised of the following as of December 31, 2017:

*(in thousands)*

| | | |
|---|---|---:|
| Leasehold improvements | $ | 7,192 |
| Buildings | | 2,595 |
| Furniture and fixtures | | 2,795 |
| Computer and equipment | | 2,799 |
| Computer software | | 331 |
| Accumulated depreciation | | (9,880) |
| | $ | 5,832 |

Depreciation expense in 2017 totaled approximately $1.3 million for the Partnership and its subsidiaries.

15

D-CNL000518
**Appx. 01304**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

4.   **Investments**

Detailed below is a summary of the Partnership and its Consolidated Entities' investments at December 31, 2017:

| *(in thousands)* | Amortized Cost/Cost | | Fair Value | |
|---|---|---|---|---|
| Common equity securities | $ | 480,073 | $ | 758,007 |
| Closed-end mutual funds | | 100,328 | | 99,620 |
| Floating rate syndicated bank loans | | 138,781 | | 68,030 |
| Real Estate Investment Trusts | | 28,950 | | 39,406 |
| Life settlement contracts | | 57,922 | | 28,959 |
| Limited partnership interests | | 24,103 | | 27,863 |
| Participation interests | | 19,449 | | 14,199 |
| Rights & warrants | | 21,899 | | 9,691 |
| Asset-backed securities | | 57,365 | | 6,477 |
| LLC interests | | 12,803 | | 3,352 |
| Corporate bonds | | 85,946 | | 527 |
| Preferred equity | | 258 | | 249 |
| Total investments | $ | 1,027,878 | $ | 1,056,380 |
| | Proceeds | | Fair Value | |
| Securities sold, not yet purchased | $ | (63,187) | $ | (95,403) |

16

D-CNL000519

Appx. 01305

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

5.     **Fair Value of Financial Instruments**

**Fair Value Measurement**

U.S. GAAP defines fair value as the price an entity would receive to sell an asset or pay to transfer a liability in an orderly transaction between market participants as of the measurement date. The standard requires fair value measurement techniques to reflect the assumptions market participants would use in pricing an asset or liability and, where possible, to maximize the use of observable inputs and minimize the use of unobservable inputs. It also establishes the following hierarchy that prioritizes the valuation inputs into three broad levels:

- Level 1 – Valuation based on unadjusted quoted prices in active markets for identical assets and liabilities that the Partnership and the Consolidated Entities have the ability to access as of the measurement date.  Valuations utilizing Level 1 inputs do not require any degree of judgment.

- Level 2 – Valuations based on (a) quoted prices for similar instruments in active markets; (b) quoted prices for identical or similar instruments in markets that are not active that are reflective of recent market transactions; or (c) models in which all significant inputs are observable, either directly or indirectly.

- Level 3 – Valuations based on indicative quotes that do not reflect recent market transactions and models or other valuation techniques in which the inputs are unobservable and significant to the fair value measurement, which includes situations where there is little, if any, market activity for the asset or liability.

The availability of observable inputs varies among financial instruments and is affected by numerous factors, including the type of instruments, the period of time in which the instrument has been established in the marketplace, market liquidity for an asset class and other characteristics particular to a transaction.  When the inputs used in a valuation model are unobservable, management is required to exercise a greater degree of judgment to determine fair value than it would for observable inputs.  For certain instruments, the inputs used to measure fair value may fall into different levels of the hierarchy discussed above.  In those cases, the instruments are categorized for disclosure purposes based on the lowest level of inputs that are significant to their fair value measurements.

The Partnership and Consolidated Entities use prices and inputs that are current as of the measurement dates.  The Partnership also considers the counterparty's non-performance risk when measuring the fair value of its investments.

During periods of market dislocation, the ability to observe prices and inputs for certain instruments may change. These circumstances may result in the instruments being reclassified to different levels within the hierarchy over time. They also create an inherent risk in the estimation of fair value that could cause actual amounts to differ from management's estimates. Whenever possible, the Partnership and its Consolidated Entities use actual market prices or relevant observable inputs to establish the fair value of its assets and liabilities.  In cases where observable inputs are not available, the Partnership and Consolidated Entities  develop methodologies that provide appropriate fair value estimates.  These methodologies are reviewed on a continuous basis to account for changing market conditions.

17

D-CNL000520

Appx. 01306

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

The Partnership has established policies, as described above, processes and procedures to ensure that valuation methodologies for investments and financial instruments that are categorized within all levels of the fair value hierarchy are fair and consistent. A Pricing Committee has been established to provide oversight of the valuation policies, processes and procedures, and is comprised of various personnel from the Partnership. The Pricing Committee meets monthly to review the proposed valuations for investments and financial instruments. The Pricing Committee is responsible for establishing the valuation policies and evaluating the overall fairness and consistent application of those policies.

As of December 31, 2017, the Partnership and its Consolidated Entities' investments consisted primarily of common equity securities, closed-end mutual funds, floating rate syndicated bank loans, real estate investment trusts, life settlement contracts, limited partnership interests, participation interests, rights and warrants, option contracts, asset-backed securities, LLC interests, corporate bonds, and preferred equity. In addition, the Consolidated Entities engage in short sale transactions. The majority of these financial instruments are not listed on national securities exchanges and management is required to use significant judgment to estimate their values.

**Equity Investments**
Publicly traded equities are valued at the closing price at the date of the financial statements. The fair value of equity investments that are not traded on national exchanges or through real-time quotation services are derived from methodologies that provide appropriate fair value estimates. Equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets.

**Private Equity Investments**
The Partnership and Consolidated Entities hold private equity investments which resulted from the restructuring of other instruments.  These assets are valued using market data obtained from a third-party pricing service and/or quotes from other parties dealing in the specific assets when available. In the event both a reliable market quote and third-party pricing service data are not available for such assets, the Partnership and Consolidated Entities  will fair value the assets using various methodologies, as appropriate for individual investments, including comparable transaction multiples, comparable trading multiples, and/or discounted cash flow analysis.  When utilizing comparable trading multiples, the Investment Manager determines comparable public companies (peers) based on industry, size, developmental stage, strategy, etc., and then calculates a trading multiple for each comparable company identified by using either a price to book ratio based on publically available information about the underlying comparable company or by dividing the enterprise value of the comparable company by its earnings before interest, taxes, depreciation and amortization (EBITDA) or similar metrics. In certain instances, the inputs used in the calculation of the trading multiples may vary based on the industry or development stage of the company. A multiple determined by the Investment Manager to be within a reasonable range as calculated amongst its peers is then applied to the underlying company's price to book ratio or EBITDA (which may be normalized to adjust for certain nonrecurring events), to calculate the fair value of the underlying company. The fair value may be further adjusted for entity specific facts and circumstances. Private equity investments with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Private equity investments that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

18

D-CNL000521

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

The Consolidated Entities also invest in warrant securities of publicly–traded companies. The fair value of these investments is based on an option pricing model. The option model bases warrant value on a number of factors including underlying equity price as of the valuation date, strike price, exercise date, time to expiration and volatility. Warrant investments that have observable volatility are classified as Level 2 assets. Warrant investments where volatility inputs are not observable are valued using an estimated volatility input, and are classified as Level 3 assets.

**Debt Securities**

The Partnership and Consolidated Entities invest in various types of debt, which are almost exclusively valued using market data obtained from one or more third-party pricing services or brokers. In instances where a third-party pricing service does not provide pricing for a specific asset, the Partnership and Consolidated Entities first seek to obtain reliable market quotes from other parties dealing in the specific asset. Loans and bonds with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Loans and bonds that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

Absent both a reliable market quote and third-party pricing service date, the Partnership and Consolidated Entities may use various models to establish an estimated exit price. These investments are classified as Level 3 assets. Models used for debt securities are primarily based on identifying comparable assets for which market data is available and pricing the target asset consistent with the yields of the comparable assets. As circumstances require, other industry accepted techniques may be used in modeling debt assets.

**Life Settlement Contracts**

Life Settlement contracts are valued using mortality tables and interest rate assumptions that are deemed by management to be appropriate for the demographic characteristics of the parties insured under the policies. Management generally utilizes an independent third party firm to perform these calculations and provide the relevant inputs. Management evaluates the results based on visible market activity and market research. Since these inputs are not readily observable, these contracts are classified as Level 3 assets.

At December 31, 2017, the Consolidated Entities' investments in life settlement contracts consisted of the following:

(U.S. dollars in thousands, except number of policies)

| Remaining Life Expectancy (in years) | Number of Policies | Face Value | Fair Value |
|---|---|---|---|
| 2-3 | 1 | $ 5,000 | $ 2,566 |
| 4-5 | 2 | 28,785 | 8,882 |
| Thereafter | 10 | 111,500 | 17,511 |
| Total | 13 | $ 145,285 | $ 28,959 |

19

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Options Contracts**

The Partnership and its Consolidated Entities may purchase and write call and put options to gain market exposure or to hedge investments. A call option gives the purchaser of the option the right (but not the obligation) to buy, and obligates the seller to sell (when the option is exercised), the underlying position at the exercise price at any time or at a specified time during the option period. A put option gives the holder the right to sell and obligates the writer to buy the underlying position at the exercise price at any time or at a specified time during the option period. When the Partnership and its Consolidated Entities purchase (writes) an option, an amount equal to the premium paid (received) by the purchaser is reflected as an asset (liability). The amount of the asset (liability) is subsequently marked-to-market to reflect the current market value of the option purchased (written). When a security is purchased (or sold) through an exercise of an option, the related premium paid (or received) is added to (or deducted from) the basis of the security acquired or deducted from (or added to) the proceeds of the security sold. When an option expires (or the purchaser enters into a closing transaction), the purchaser realizes a gain or loss on the option to the extent of the premiums received or paid (or gain or loss to the extent the cost of the closing transaction exceeds the premium received or paid). Exercise of a written option could result in the Partnership and its Consolidated Entities purchasing a security at a price different from the current market value.

**Asset-Backed Securities**

The Consolidated Entities invest in a variety of asset-backed securities. Asset-backed securities are generally valued based on complex cash flow models that analyze the cash flows generated by the investment's underlying assets after adjusting for expected default rates, prepayment rates, collateral quality, market liquidity among other factors. These models are then adjusted based on spreads available in the market place from various research firms, dealers, and trading activity. The Consolidated Entities generally utilize an independent third party firm to perform these calculations and provide the relevant inputs. The Consolidated Entities evaluate the results based on visible market activity and market research. When appropriate, the Consolidated Entities may apply other techniques based on a specific asset's characteristics. Asset-backed securities with quotes that are based on actual trades with a sufficient level of activity on or near the valuation date are classified as Level 2 assets. Asset-backed securities that are priced using quotes derived from implied values, bid/ask prices for trades that were never consummated, or a limited amount of actual trades are classified as Level 3 assets because the inputs used by the brokers and pricing services to derive the values are not readily observable.

**Limited Partnership and LLC Interests**

The Partnership and its Consolidated Entities hold limited partnership and LLC interests in various entities. These assets are valued as the net asset value of the limited partnership interests because the entities utilize fair value accounting for their own financial statements. These interests are classified as Level 3 assets.

The Partnership categorizes investments recorded at fair value in accordance with the hierarchy established under U.S. GAAP. A majority of the Consolidated Entities investments and derivatives at December 31, 2017 are classified as Level 3 positions due to the absence of active markets with quoted prices for identical or similar investments. The following table provides a summary of the financial instruments recorded at fair value on a recurring basis by level within the hierarchy as of December 31, 2017:

20

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

*(in thousands)*

| Assets | Level 1 | Level 2 | Level 3 | Total Fair Value at 12/31/17 |
|---|---|---|---|---|
| Common equity securities | $  239,176 | $  377,630 | $  141,201 | $  758,007 |
| Closed-end mutual funds | 99,620 | - | - | 99,620 |
| Floating rate syndicated bank loans | - | 3,723 | 64,307 | 68,030 |
| Real Estate Investment Trusts | 35,153 | 4,253 | - | 39,406 |
| Life settlement contracts | - | - | 28,959 | 28,959 |
| Limited partnership interests | - | - | 27,863 | 27,863 |
| Participation interests | 14,199 | - | - | 14,199 |
| Rights & warrants | 1,545 | 133 | 8,013 | 9,691 |
| Asset-backed securities | - | - | 6,477 | 6,477 |
| LLC interests | - | - | 3,352 | 3,352 |
| Corporate bonds | - | 527 | - | 527 |
| Preferred equity | 249 | - | - | 249 |
| **Total** | $  389,942 | $  386,266 | $  280,172 | $  1,056,380 |

| Liabilities | | | | |
|---|---|---|---|---|
| Common stock & Options sold short | $  95,403 | $  - | - | $  95,403 |

The classification of a financial instrument within Level 3 is based on the significance of the unobservable inputs to the overall fair value measurement. The following table provides a roll forward of the investments classified within Level 3 for the year ended December 31, 2017:

*(in thousands)*

| | Fair Value at December 31, 2016 | Purchases | Sales and Maturities | Restructures | Transfers Into Level 3 | Net Realized Gains / (Losses) | Net Unrealized Gains / (Losses) | Fair Value at December 31, 2017 |
|---|---|---|---|---|---|---|---|---|
| Common equity securities | $  117,160 | $  1,257 | $  - | $  - | $  - | $  - | $  22,784 | $  141,201 |
| Floating rate syndicated bank loans | 54,703 | 11,171 | (14) | - | - | (8,254) | 6,701 | 64,307 |
| Life settlement contracts | 23,826 | 6,962 | (10,000) | - | - | 3,322 | 4,849 | 28,959 |
| Limited partnership interests | 24,630 | 10,663 | (8,594) | - | - | 3,157 | (1,993) | 27,863 |
| Rights & warrants | 7,414 | 36 | - | - | - | - | 563 | 8,013 |
| Participation interests | 11,980 | - | (5,389) | - | - | - | (6,591) | - |
| Asset-backed securities | 8,223 | 2,648 | (35,715) | - | 23,976 | 2,970 | 4,375 | 6,477 |
| LLC interests | 18,228 | 143 | (16,015) | - | 676 | 5,310 | (4,990) | 3,352 |
| Corporate bonds | - | - | - | - | - | (400) | 400 | - |
| | $  266,164 | $  32,880 | $  (75,727) | $  - | $  24,652 | $  6,105 | $  26,098 | $  280,172 |

Transfers from Level 2 to Level 3 or from Level 3 to Level 2 are due to changes in observable pricing inputs as compared to the prior year. No significant transfers between Level 1 or Level 2 fair value measurements occurred during the year ended December 31, 2017.

All net realized and unrealized gains and losses in the tables above are reflected in the accompanying Consolidated Income Statement. Approximately $17.3 million of the net unrealized gains presented in the table above relate to investments held as of December 31, 2017.

The following page includes a summary of significant unobservable inputs used in the fair valuations of assets and liabilities categorized within Level 3 of the fair value hierarchy.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

(Fair value in thousands)

| Category | Ending Balance at 12/31/2017 | Valuation Technique | Unobservable Inputs | Input Value(s) |
|---|---|---|---|---|
| Common equity securities | $ 141,201 | Multiples Analysis | Multiple of EBITDA | 3.0x - 8.25x |
| | | | Cap Rate | 7.5 - 8.5% |
| | | | Minority Discount | 20% |
| | | | Liquidity Discount | 25% |
| | | Discounted Cash Flow | Discount Rate | 12 - 31.5% |
| | | | Terminal Multiple | 2.0x - 7.0x |
| | | | Minority Discount | 20% |
| | | | Discount for Lack of Marketability | 15% |
| | | Equity Valuation | Discount for Lack of Marketability | 15% |
| | | Bid Indications | N/A | N/A |
| | | Enterprise Valuation | Weightings | 0-60% |
| | | Appraisal | N/A | N/A |
| Floating rate syndicated bank loans | 64,307 | Multiples Analysis | Multiple of EBITDA | 3.0x - 5.0x |
| | | | Multiple of Revenue | 0.4x - 0.5x |
| | | Escrow Recovery Analysis | Discount Rate | 11% |
| | | Enterprise Valuation | Weightings | 0-60% |
| | | Appraisal | NA | NA |
| | | Bid Indications | N/A | N/A |
| | | Discounted Cash Flow | Discount Rate | 12.3% - 31.5% |
| | | | Terminal Multiple | 2.0x |
| | | | Spread Adjustment | 0.2% - 6.3% |
| Life settlement contracts | 28,959 | Net Asset Value of Underlying Assets, based on third-party pricing vendor | Discount Rate | 16 - 17% |
| Limited partnership interests | 27,863 | Net Asset Value | Various models including liquidation analysis, and third-party pricing vendor | N/A |
| Rights & warrants | 8,013 | Discounted Cash Flow | Discount Rate | 12 - 17% |
| | | | Terminal Multiple | 7.0x |
| | | | Minority Discount | 20% |
| | | | Discount for Lack of Marketability | 15% |
| | | Multiples Analysis | Multiple of EBITDA | 7.75x - 8.25x |
| Asset-backed securities | 6,477 | Third-Party Pricing Vendor | N/A | N/A |
| | | Net Asset Value | N/A | N/A |
| | | Adjusted NAV | N/A | N/A |
| | | Blended Approach | Weightings | 20-80% |
| LLC interests | 3,352 | Discounted Cash Flow | Discount Rate | 6% |
| | | | Scenario Probabilities | 15 - 70% |
| | | | Illiquidity Discount | 10% |
| | | Adjusted Appraisal | Minority Discount | 25% |
| | | Appraisal | N/A | N/A |
| **Total** | $ 280,172 | | | |

HIGHLY CONFIDENTIAL

D-CNL000525

**Appx. 01311**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

6.      **Securities Sold under Agreements to Repurchase**

Transactions involving securities sold under agreements to repurchase are treated as collateralized financial transactions, and are recorded at their fair market values.  In addition, interest earned on the securities is included in interest receivable, and interest accrued on amounts borrowed is included in interest payable.  For the year ended December 31, 2017, Multi Strategy Master expensed approximately $1.1 million for interest charged on the amounts borrowed for repurchase agreements.

In connection with transactions in agreements to repurchase, it is Multi Strategy Master's policy that its counterparty take possession of the underlying collateral securities, the fair value of which exceeds the principal amount of the agreements to repurchase, including accrued interest, at all times. If the counterparty defaults under agreements to resell, and the fair value of the collateral declines, the realization of the collateral by Multi Strategy Master may be delayed or limited.

To reduce counterparty credit risk with respect to repurchase agreements, Multi Strategy Master has entered into a master repurchase agreement, which allows Multi Strategy Master to make (or to have an entitlement to receive) a single net payment in the event of default (close-out netting) for outstanding payables and receivables with respect to repurchase agreements with the counterparty.

The master repurchase agreement includes credit related contingent features which allow the counterparty to terminate the agreement prior to maturity in the event Multi Strategy Master's net assets decline by a stated percentage or Multi Strategy Master fails to meet the terms of the agreement, which would cause the Master Partnership to accelerate payment of any net liability owed to the counterparty.

For financial reporting purposes, Multi Strategy Master does not offset repurchase agreement assets and liabilities that are subject to netting arrangements in the Consolidated Balance Sheet. Bankruptcy or insolvency laws of a particular jurisdiction may impose restrictions on or prohibitions against the right of offset in bankruptcy, insolvency or other events.

Collateral terms are contract specific for repurchase agreements. For repurchase agreements traded under master repurchase agreements, the collateral requirements are typically calculated by netting the mark to market amount for each transaction under such agreement and comparing that to the value of any collateral currently pledged by Multi Strategy Master or the counterparty.

For financial reporting purposes, cash collateral that has been pledged to cover obligations of Multi Strategy Master, if any, is reported in due to/from brokers on the Consolidated Balance Sheet.  Generally, the amount of collateral due from or to a party must exceed a minimum transfer amount threshold before a transfer has to be made.  To the extent amounts due to Multi Strategy Master from its counterparties are not fully collateralized, contractually or otherwise, Multi Strategy Master bears the risk of loss from counterparty non-performance.

At December 31, 2017, there were no repurchase or reverse repurchase agreements.

HIGHLY CONFIDENTIAL

D-CNL000526

**Appx. 01312**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

7.    **Financial Instruments with Concentration of Credit and Other Risks**

**Financial Instruments**
The Partnership and its Consolidated Entities' investments include, among other things, equity securities, debt securities (both investment and non-investment grade) and bank loans.  The Consolidated Entities may also invest in derivative instruments, including total return and credit default swaps.  Investments in these derivative instruments throughout the year subject the Consolidated Entities to off-balance sheet market risk, where changes in the market or fair value of the financial instruments underlying the derivative instruments may be in excess of the amounts recognized in the Consolidated Balance Sheet.

**Market Risk**
Market risk represents the potential loss that may be incurred by the Partnership and its Consolidated Entities due to a change in the market value of its investments or the value of the investments underlying swap agreements.  The Partnership and its Consolidated Entities' exposure to market risk is affected by a number of macroeconomic factors, such as interest rates, availability of credit, inflation rates, economic uncertainty and changes in laws and regulations.  These factors may affect the level and volatility of securities prices and the liquidity of the Partnership and its Consolidated Entities investments. Volatility or illiquidity could impair the Partnership and its Consolidated Entities performance or result in losses.  The Partnership and its Consolidated Entities may maintain substantial trading positions that can be adversely affected by the level of volatility in the financial markets. The performance of life settlement contracts may be adversely impacted by the under estimation of mortality and other rates.

**Credit Risk**
Credit risk is the potential loss the Partnership and its Consolidated Entities may incur as a result of the failure of a counterparty or an issuer to make payments according to the terms of a contract.  Because the Consolidated Entities enter into over-the-counter derivatives such as swaps, it is exposed to the credit risk of their counterparties.  To limit the credit risk associated with such transactions, the Consolidated Entities execute transactions with financial institutions that the Investment Manager believes to be financially viable.

**Liquidity Risk**
The Consolidated Entities' limited partner interests have not been registered under the Securities Act of 1933 or any other applicable securities law.  There is no public market for the interests, and neither the Consolidated Entities nor their manager expects such a market to develop.

**Business Risk**
The Partnership provides advisory services to the Consolidated Entities.  Consolidated Entities could be materially affected by the liquidity, credit and other events of the Partnership.

24

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**High Yield Bonds and Loans**
The Partnership and its Consolidated Entities' investment portfolios consist of floating rate syndicated bank loans and fixed income securities that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. In addition, certain of the Partnership and its Consolidated Entities' investments have resale or transfer restrictions that further reduce their liquidity. Because of the inherent uncertainty of these investments, the Investment Manager's best estimates may differ significantly from values that would have been used had a broader market for the investments existed.

When the Partnership and its Consolidated Entities purchase a senior secured syndicated bank loan, it enters into a contractual relationship directly with the corporate borrower, and as such, is exposed to certain degrees of risk, including interest rate risk, market risk and the potential non-payment of principal and interest, including default or bankruptcy of the corporate borrower or early payment by the corporate borrower. Typically, senior secured syndicated bank loans are secured by the assets of the corporate borrower and the Partnership and its Consolidated Entities have a policy of regularly reviewing the adequacy of each corporate borrower's collateral.

The Partnership and its Consolidated Entities may invest in high-yield bonds that have been assigned lower rating categories or are not rated by the various credit rating agencies. Bonds in the lower rating categories are generally considered to be speculative with respect to the issuer's ability to repay principal and pay interest. They are also subject to greater risks than bonds with higher ratings in the case of deterioration of general economic conditions. Due to these risks, the yields and prices of lower-rated bonds are generally volatile, and the market for them is limited, which may affect the ability to liquidate them if needed.

**Debt Obligations**
The Partnership and its Consolidated Entities' investment portfolio consists of collateralized loan obligations that are not listed on a national securities exchange. These investments trade in a limited market and it may not be possible to immediately liquidate them if needed. Because of the inherent uncertainty of these investments, the Partnership's best estimates may differ significantly from values that would have been used had broader market for the investments existed.

**Distressed Investments**
A portion of the high yield corporate bonds and senior secured syndicated bank loans in which the Partnership and its Consolidated Entities invest have been issued by distressed companies in an unstable financial condition that have experienced poor operating performance and may be involved in bankruptcy or other reorganization and liquidation proceedings. These investments have substantial inherent risks. Many of these distressed companies are likely to have significantly leveraged capital structures, which make them highly sensitive to declines in revenue and to increases in expenses and interest rates. The leveraged capital structure also exposes the companies to adverse economic factors, including macroeconomic conditions, which may affect their ability to repay borrowed amounts on schedule.

HIGHLY CONFIDENTIAL

D-CNL000528

Appx. 01314

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Corporate Bonds, Preferred Securities, and Loans**

The Consolidated Entities may invest in corporate bonds, floating rate syndicated bank loans, and preferred securities which are rated in the lower rating categories by the various credit rating agencies (or in comparable non-rated securities).  Securities in the lower rating categories are subject to greater risk of loss of principal and interest than higher-rated securities and are generally considered to be predominantly speculative with respect to the issuer's capacity to pay interest and repay principal.  They are also subject to greater risks than securities with higher ratings in the case of deterioration of general economic conditions.  Because of these greater risks associated with the lower-rated securities, the yields and prices of such securities may be more volatile than those for higher-rated securities.  The market for lower-rated securities is thinner and less active than that for higher-rated securities, which could adversely affect the prices at which these securities may be sold by the Consolidated Entities.

**Limited Diversification**

The Investment Manager attempts to diversify the Consolidated Entities' investments.  However, the Consolidated Entities' portfolios could become significantly concentrated in any one issuer, industry, sector strategy, country or geographic region, and such concentration of credit risk may increase the losses suffered by the Consolidated Entities.  In addition, it is possible that the Investment Manager may select investments that are concentrated in certain classes of financial instruments.  This limited diversity could expose the Consolidated Entities to losses that are disproportionate to market movements as a whole.

At December 31, 2017, the Consolidated Entities' investments were predominantly concentrated in the United States and Cayman Islands.

**Exit Difficulties**

The Partnership and its Consolidated Entities cannot assure investors that it will be able to exit its investments by sale or other disposition at attractive prices, if at all.  The mergers and acquisitions and public securities markets are highly cyclical, which means that the Consolidated Entities' investments, even its best performing investments, may be illiquid for extended periods of time despite the Consolidated Entities' efforts to identify attractive exit opportunities.  Additionally, a significant portion of the Consolidated Entities' assets at any time will likely consist of debt obligations and other securities that are thinly-traded, for which no market exists and/or are restricted as to their transferability under applicable law and/or documents governing particular transactions of the Consolidated Entities.  In some cases, the Consolidated Entities may be unable to realize an investment prior to the date on which the Consolidated Entities are scheduled to terminate and/or have to sell or otherwise dispose of one or more investments on disadvantageous terms as a result of the Consolidated Entities' termination, or distribute such investments in kind.

**Custody Risk**

The clearing operations for the Partnership and its Consolidated Entities are provided by major financial institutions.  In addition, all of the Partnership and its Consolidated Entities' cash and investments are held with banks or brokerage firms, which have worldwide custody facilities and are members of all major securities exchanges.  The Partnership or its Consolidated Entities may lose all or a portion of the assets held by these banks or brokerage firms if they become insolvent or fail to perform pursuant to the terms of their obligations.  While both the U.S. Bankruptcy Code and the Securities Investor Protection Act of 1970 seek to protect customer property in the event of a broker-dealer's failure, insolvency or liquidation, the Partnership and its Consolidated Entities might be unable to recover the full value of their assets or incur losses due to their assets being unavailable for a period of time.

26

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Leverage Risk**
The Consolidated Entities may borrow funds from brokers, banks and other lenders to finance its trading operations.  The use of leverage can, in certain circumstances, magnify the losses to which the Consolidated Entities' investment portfolio may be subject.  The use of margin and short-term borrowings creates several risks for the Consolidated Entities.  If the value of the Consolidated Entities' securities fall below the margin level required by a counterparty, additional margin deposits would be required.  If the Consolidated Entities are unable to satisfy a margin call, the counterparty could liquidate the Consolidated Entities' positions in some or all of the financial instruments that are in the account at the prime broker and cause the Consolidated Entities to incur significant losses.  In addition, to the extent the Consolidated Entities have posted excess collateral for margin transactions, there is a risk that the counterparty will fail to fulfill its obligation to return the full value of that collateral.

The failure to satisfy a margin call, or the occurrence of other material defaults under margin or other financing agreements, may trigger cross-defaults under the Consolidated Entities' agreements with other brokers, lenders, clearing firms or other counterparties, multiplying the adverse impact to the Consolidated Entities.  In addition, because the use of leverage allows the Consolidated Entities to control positions worth significantly more than its investment in those positions, the amount that the Consolidated Entities may lose in the event of adverse price movements is high in relation to the amount of their investment.

In the event of a sudden drop in the value of the Consolidated Entities' assets, the Consolidated Entities may not be able to liquidate assets quickly enough to satisfy their margin or collateral requirements.  As a result, the Consolidated Entities may become subject to claims of financial intermediaries, and such claims could exceed the value of its assets.  The banks and dealers that provide financing to the Consolidated Entities have the ability to apply discretionary margin, haircut, and financing and collateral valuation policies.  Changes by banks and dealers in any of the foregoing may result in large margin calls, loss of financing and forced liquidations of positions and disadvantageous prices.

**Foreign Currency Risk**
The Partnership and its Consolidated Entities may invest in securities or maintain cash denominated in currencies other than the U.S. dollar.  The Partnership and its Consolidated Entities are exposed to risk that the exchange rate of the U.S. dollar relative to other currencies may change in a manner that has an adverse effect on the reported value of the Partnership and its Consolidated Entities' assets and liabilities denominated in currencies other than the U.S. dollar.

**Concentration of Investments**
At December 31, 2017, the Consolidated Entities' investments and derivative contracts were predominantly concentrated in the United States and Cayman Islands and across several industries.

**Litigation Risk**
The Partnership and its Consolidated Entities are periodically subject to legal actions arising from the ordinary course of business.  The ultimate outcome of these cases is inherently uncertain and could result in additional losses to the Partnership and/or its Consolidated Entities.  Refer to Note 15 for a discussion of open litigation.

HIGHLY CONFIDENTIAL

D-CNL000530

**Appx. 01316**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

8.    **Other Intangible Assets**

On May 12, 2017, HCM Latin America, as manager, purchased all rights and obligations of a certain fund. The current carrying value of these rights and obligations is $3.5 million, which consists of the original purchase price of $2.0 million and a deferred purchase price of $1.5 million.

On December 19, 2017, the Partnership obtained value for subadvisory and shared servicing rights from an affiliate. The current carrying value of this intangible asset is approximately $2.8 million.

The Partnership and its Consolidated Entities perform an impairment test as required by U.S. GAAP on a yearly basis.  The Partnership has determined that no impairment charge is necessary for the current year.

9.    **Related Party Transactions**

**Investments Under Common Control**
Certain members of the Partnership's management serve as members on the Boards of Directors for some of the companies with which it invests.  Because these individuals participate in the management of these companies, investments held by the Partnership and its subsidiaries in these companies may, from time to time, not be freely tradable.  As of December 31, 2017, the Partnership and its Consolidated Entities held the following investments in these companies:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---:|
| American Banknote Corporation | Common Equity | $     747 |
| American Home Patient | Common Equity | 1,793 |
| Carey International, Inc | Term Loan | 5,392 |
| CCS Medical, Inc. | Loan | 6,246 |
| Cornerstone Healthcare Group Holding, Inc. | Common Equity | 62,931 |
| JHT Holdings Inc. | Term Loan | 3,127 |
| JHT Holdings Inc. | Common Stock | 9,654 |
| Metro-Goldwyn-Mayer, Inc. | Common Stock | 375,106 |
| OmniMax International, Inc. (fka Euramax Holdings, Inc.) | Warrants | 1,086 |
| OmniMax International, Inc. (fka Euramax Holdings, Inc.) | Term Loan | 45,445 |
| OmniMax International, Inc. (fka Euramax Holdings, Inc.) | Common Stock | 15,367 |
| Trussway Industries, Inc. | LLC Units | 51,707 |
| Turtle Bay Holdings, LLC | LLC Units | 628 |

HIGHLY CONFIDENTIAL

D-CNL000531

Appx. 01317

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

Certain investments are issued and managed by affiliates of the Partnership. These investments are subject to the same valuation policies and procedures as similar investments within the same level of the fair value hierarchy. As of December 31, 2017, the Partnership and the Consolidated Entities held the following investments that were issued and managed by affiliates of the Partnership:

*(in thousands)*

| Issuer | Type of Investment | Fair Value |
|---|---|---|
| ACIS 2013-2A | Asset backed debt | $    1,428 |
| Bandera Strategic Credit Partners | Limited Partnership interest | 3,628 |
| Harko, LLC | LLC Units | 2,466 |
| Highland CLO Funding | Partnership Interest | 928 |
| Highland Energy MLP Fund | Mutual fund shares | 1,893 |
| Highland Floating Rate Opportunities Fund | Mutual fund shares | 1,007 |
| Highland Global Allocation Fund | Mutual fund shares | 2,144 |
| Highland Long/Short Equity Fund | Mutual fund shares | 297 |
| Highland Long/Short Healthcare Fund | Mutual fund shares | 2,632 |
| Highland Master Loan Fund | Limited Partnership interest | 105 |
| Highland Merger Arbitrage Fund | Mutual fund shares | 1,241 |
| Highland Opportunistic Credit Fund | Mutual fund shares | 5,259 |
| Highland Premier Growth Equity Fund | Mutual fund shares | 72 |
| Highland Prometheus Master Fund | Partnership Interest | 930 |
| Highland Small Cap Equity Fund | Mutual fund shares | 498 |
| NexPoint Credit Strategies Fund | Mutual fund shares | 55,161 |
| NexPoint Multi Family Capital Trust | REIT | 4,253 |
| NexPoint Real Estate Strategies Fund | Closed-end mutual fund shares | 1,135 |
| NexPoint Residential Trust | REIT | 59,703 |

**Expenses Reimbursable by Funds Managed**
In the normal course of business, the Partnership typically pays invoices it receives from vendors for various services provided to the investment funds the Partnership manages.  A summary of these eligible reimbursable expenses are then submitted to the trustee/administrator for each respective fund, typically on a quarterly basis, and the Partnership receives payment as reimbursement for paying the invoices on behalf of the respective funds.  As of December 31, 2017, approximately $8.4 million in reimbursable expenses were due from various affiliated funds and entities for these eligible expenses, and is included in *Other Assets* in the accompanying Consolidated Balance Sheet.

**Accounts Held with Related Party**
During the year the Partnership and its Consolidated Entities maintained bank accounts at NexBank, SSB ("NexBank"), a related party by way of common control.  As of December 31, 2017, balances in these accounts were approximately $1.1 million, a portion of which exceeds Federal deposit insurance limits.

**Investment in Affiliated Loans**
During the year, certain subsidiaries of the Partnership were invested in several bank loans in which NexBank was the agent bank.  Interest earned on the loans during the year was approximately $9.2 million and is included in Interest and investment income in the Consolidated Statement of Income.  At December 31, 2017, these subsidiaries were invested in NexBank agented loans with commitments and market values totaling approximately $74.4 million and $49.4 million, respectively.

29

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

**Notes and Other Amounts Due from Affiliates**

During the year ended December 31, 2017, Highland Capital Management Fund Advisors, L.P. ("HCMFA") issued a promissory note to the Partnership in the amount of $0.2 million. The note accrues interest at a rate of 1.52%, the mid-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2017 total interest and principal due on outstanding promissory notes was approximately $4.9 million and is payable on demand. The Partnership will not demand payment on amounts owed prior to May 31, 2019. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

On May 31, 2017, the Partnership combined its outstanding promissory and revolving notes from NexPoint Advisors, L.P. ("NexPoint") into a single promissory note with principal outstanding of $30.7 million and accruing interest at a rate of 6.0% with straight-line amortization over 30 annual payments commencing in the year ended December 31, 2017. As of December 31, 2017, $29.7 million of principal was outstanding on this note. No interest is outstanding as of December 31, 2017. Total interest expense for the year ended December 31, 2017, was approximately $1,7 million. The fair value of the Partnership's outstanding note receivable approximates the carrying value of the note receivable.

During the year ended December 31, 2017, HCRE Partners, LLC ("HCRE") issued a promissory note to the Partnership in the amount of $2.5 million. The note accrues interest at a rate of 8.0%. As of December 31, 2017 total interest and principal due on outstanding promissory notes was approximately $8.5 million and is payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2017, Highland Capital Management Services, Inc. ("HCMSI") issued promissory notes to the Partnership in the aggregate amount of $2.0 million. All outstanding promissory notes accrue interest at a rate ranging from 2.58 - 2.78%, the long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2017 total interest and principal due on outstanding promissory notes was approximately $14.1 million and is payable in annual installments throughout the term of the notes. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2017, James Dondero ("Dondero") did not issue any new promissory notes to the Partnership. The outstanding promissory note accrues interest at a rate of 2.03%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2017 total interest and principal due on outstanding promissory note was approximately $14.5 million and is payable in annual installments throughout the term of the note. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

During the year ended December 31, 2017, Mark Okada ("Okada") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 2.25%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2017 total interest and principal due on outstanding promissory notes was approximately $1.3 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

During the year ended December 31, 2017, The Dugaboy Investment Trust ("Dugaboy") did not issue any new promissory notes to the Partnership. All outstanding promissory notes accrue interest at a rate of 2.75%, the average long-term applicable federal rate as promulgated by the Internal Revenue Service. As of December 31, 2017 total interest and principal due on outstanding promissory notes was approximately $22.8 million and is payable on demand. The fair value of the Partnership's outstanding notes receivable approximates the carrying value of the notes receivable.

On December 21, 2015, the Partnership entered into a contribution agreement (the "Contribution Agreement") with an affiliated trust.  Pursuant to the Contribution Agreement, a note (the "Note Receivable") in the amount of $63.0 million was due to the Partnership.  The Note Receivable will mature on December 21, 2030.  The Note Receivable accrues interest at a rate of 2.61% per annum. Accrued interest is paid-in-kind, with principal receipts occurring pursuant to a note amortization schedule, with such annual receipts commencing December 21, 2019. During the year, the trust pre-paid $5.7 million. As of December 31, 2017 total interest and principal due on the Note Receivable was approximately $60.7 million.

**Services Performed by or on Behalf of an Affiliate**
In March 2007, Highland Capital of New York, Inc. a New York corporation ("Highland New York"), was formed and has performed marketing services for the Partnership and its affiliates in connection with the Partnership's investment management and advising business, including, but not limited to, assisting Highland Capital in the marketing and sales of interests in investment pools for which Highland Capital serves as the investment manager.  The Partnership is charged a marketing services fee for the services that Highland New York performs on the Partnership's behalf. Separately, the Partnership pays for, and seeks reimbursement for, various operating expenses on behalf of Highland New York. For the year ended December 31, 2017, total marketing fee expense charged to the Partnership by Highland New York was approximately $1.6 million. As of December 31, 2017, net amounts owed to the Partnership by Highland New York was approximately $4.5 million.

Effective December 15, 2011, the Partnership commenced performing services on behalf of HCMFA, a Delaware limited partnership and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2017, the total fee charged by the Partnership to HCMFA was approximately $2.7 million and as of December 31, 2017, amount owed to the Partnership by HCMFA was approximately $0.2 million.

Effective July 29, 2010, the Partnership commenced performing services on behalf of Falcon E&P Opportunities GP, LLC. ("Falcon"), a Delaware limited liability company and registered investment advisor. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2017, the total fee charged by the Partnership to Falcon was approximately $0.2 million and as of December 31, 2017, no amounts were owed to the Partnership by Falcon for services rendered.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

Effective March 17, 2017, pursuant to the Third Amended and Restated Sub-Advisory Agreement and the Fourth Amended and Restated Shared Services Agreement, the Partnership continued performing services on behalf of Acis Capital Management, L.P. ("Acis"), a Delaware limited partnership and registered investment advisor. Subadvisory services include investment advisory services and shared services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2017, the total fees charged by the Partnership to Acis for shared services and subadvisory fees were approximately $4.8 million and $6.5 million, respectively. As of December 31, 2017, amount owed to the Partnership by Acis was approximately $1.9 million, against which the Partnership has recorded a $1.6 million reserve based on estimated collectability.

Effective January 1, 2013, the Partnership commenced performing services on behalf of NexPoint. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2017, the total fee charged by the Partnership to NexPoint was approximately $0.6 million and as of December 31, 2017, $0.1 million was owed to the Partnership by NexPoint for services rendered.

Effective September 1, 2017, pursuant to the Third Amended and Restated Shared Services Agreement dated September 26, 2017, the Partnership commenced performing services on behalf of NexBank Capital, Inc. ("NexBank Capital"), financial services company. Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. The Partnership charges a fee for the services performed. For the year ended December 31, 2017, the total fee charged by the Partnership to NexBank Capital was approximately $0.2 million and as of December 31, 2017, $0.1 million was owed to the Partnership by NexBank Capital for services rendered.

Effective September 1, 2017, pursuant to the Third Amended and Restated Investment Advisory Agreement dated September 26, 2017, the Partnership commenced performing services on behalf of NexBank SSB, ("NexBank"), a Texas savings bank. Services include investment advisory services. The Partnership charges a fee for the services performed. For the year ended December 31, 2017, the total fee charged by the Partnership to NexBank was approximately $3.1 million and as of December 31, 2017, amounts owed by NexBank to the Partnership for services rendered were approximately $0.9 million.

Effective April 1, 2015, the Partnership commenced performing services on behalf of NexPoint Real Estate Advisors, L.P. ("NREA"). Services include, but are not limited to compliance, accounting, human resources, IT and other back office support functions. NREA is charged a fee for the services provided. For the year ended December 31, 2017, the total fee charged to NREA by the Partnership was approximately $0.6 million and as of December 31, 2017, amounts owed by NREA to the Partnership for services rendered were approximately $0.6 million.

**Investment liability**
On January 28, 2016, the Partnership entered into a participation agreement with Cornerstone Healthcare Group Holding, Inc. ("Cornerstone") for securities purchased and held on their behalf which had a value of $8.0 million as of the transaction date. The fair value of the Agreement will fluctuate with the fair value of the held securities, throughout the term of the Agreement. As of December 31, 2017 the fair value of the securities were $14.2 million.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

On December 28, 2016, the Partnership entered into a purchase and sale agreement with The Get Good Nonexempt Trust ("Get Good"). In consideration for a note receivable from an affiliate, the Partnership sold or participated certain investments that it already held, with the participated investments carrying an aggregate market value of $21.3 million as of the date of the transaction. The fair value of the Agreement will fluctuate with the fair value of the securities, throughout the term of the Agreement. During the course of the year, certain of the participated investments were monetized and proceeds were delivered to the holder of the participated interest. As of December 31, 2017, the fair value of the participated investments was $10.9 million.

On August 25, 2015, Highland Select Equity Fund, L.P. ("Select") entered in to a promissory note with Dugaboy in the amount of $1.0 million. The promissory note accrues interest at a rate of 2.82%, the long-term Applicable Federal Rate, compounded annually. The accrued interest and principal of the promissory note is due and payable on demand. As of December 31, 2017 the remaining principal payable on the promissory note was $1.0 million.  The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

On December 5, 2016, Select entered in to Stock Purchase Agreements with two counterparties for shares of Trussway Industries ("Trussway"), in exchange for promissory notes in the aggregate amount of $15.4 million, plus in the event of a sale of Trussway on or prior to June 1, 2017, 50% of the excess of the price per share over the closing date price per share. The promissory notes accrue interest at a rate of 2.07%, the long-term Applicable Federal Rate, compounded annually. Select must pay one-twenty-fifth of the initial note amounts, plus any additional principal attributable to the sale of Trussway, along with accumulated interest on an annual basis. The promissory notes will mature on December 5, 2041. As of December 31, 2017 the remaining principal payable on the promissory notes was $15.4 million. The fair value of Select's outstanding notes payable approximates the carrying value of the notes payable.

During 2014 and 2015, Select received multiple master securities loan agreements (the "Securities Agreements") for securities borrowed from an affiliate. The Securities Agreements accrue interest at a rate ranging from 0.38 - 0.48%, the short term Applicable Federal Rate. The fair value of the securities loans will fluctuate with the fair value of the borrowed securities, throughout the term of the Securities Agreements. As of December 31, 2017, the fair value of the loans was $42.5 million. The fair value of Select's securities loans approximates the carrying value of the securities loans.

**10.    Notes Payable**

**Promissory Note**
On August 17, 2015, the Partnership entered in to a promissory note with Frontier State Bank in the amount of $9.5 million. The promissory note will mature on August 17, 2018.  The promissory note accrues interest at the 3 month LIBOR rate plus 4.75%, adjusted each date of change, per annum. Accrued interest shall be paid quarterly. The promissory note is collateralized by shares of voting common stock of MGM Holdings, Inc. As of December 31, 2017 the remaining principal payable on the promissory note was $6.9 million. The fair value of the Partnership's outstanding notes payable approximates the carrying value of the notes payable.

33

D-CNL000536

**Appx. 01322**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

On October 7, 2016, the Partnership entered in to a promissory note with Acis in the amount of $12.7 million. The Partnership is required to make certain payments of the initial note amount, plus accumulated interest on May 31 of each year, until maturity. The promissory note is set to mature on May 31, 2019.  The promissory note accrues interest at a rate of 3.00% per annum. Pursuant to an Assignment and Transfer Agreement dated November 3, 2017, between Acis and an affiliate of the Partnership, Acis transferred the promissory note to the affiliate. As of December 31, 2017 the remaining principal payable on the promissory note was $9.5 million.

On August 29, 2016, Maple Avenue Holdings, LLC ("Maple") entered in to a promissory note with Great Southern Bank in the amount of $3.9 million. Maple must pay principal and accrued interest installments on a monthly basis until maturity. The promissory note will mature on September 10, 2041.  The promissory note accrues interest at a rate of 3.26% per annum. As of December 31, 2017 the remaining principal payable on the promissory note was $3.6 million. The fair value of Maple's outstanding notes payable approximates the carrying value of the notes payable.

11. **Due to Broker**

As of December 31, 2017 the due to broker balance of approximately $104.9 million is payable to financing counterparties for margin transactions.

12. **Commitments and Contingencies**

**Contracts in the Normal Course of Business**
In the normal course of business the Partnership and its subsidiaries may enter into contracts which provide general indemnifications and contain a variety of presentations and warranties that may expose the Partnership and its subsidiaries to some risk of loss.   The Partnership regularly co-invests in vehicles it advises. The amounts committed are within the Partnerships capacity to fund when capital is called. In addition to the other financial commitments discussed in the consolidated financial statements, the amount of future losses arising from such undertakings, while not quantifiable, is not expected to be significant. Also refer to Note 9 for commitments of certain subsidiaries in affiliated loans.

**Legal Proceedings**
The Partnership is a party to various legal proceedings arising in the ordinary course of business. While any proceeding or litigation has an element of uncertainty, management believes that the final outcome will not have a materially adverse effect on the Partnership's Consolidated Balance Sheet, Consolidated statement of Income, or its liquidity.  See Note 15.

**Operating Leases**
The Partnership has an operating lease and associated commitments related to its main office space. Future minimum lease payments under operating lease commitments with initial or non-cancelable terms in excess of one year, at inception, are as follows:

34

D-CNL000537

**Appx. 01323**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

*(in thousands)*

**Years Ending December 31,**

| | | |
|---|---|---:|
| 2018 | | 1,521 |
| 2019 | | 1,550 |
| 2020 | | 1,566 |
| 2021 | | 1,567 |
| 2022 | | 522 |
| Total | $ | 6,725 |

Total rental expense of the Partnership and its Consolidated Entities for operating leases was approximately $1.5 million for the year ended December 31, 2017.

**13.     Post Retirement Benefits**

In December 2006, the Partnership created a defined benefit plan to which all employees and certain affiliated persons could participate if they met the eligibility requirements.  The Partnership uses a December 31 measurement date for its defined benefit plan.

Effective December 31, 2008, the Partnership amended the plan by freezing it to new participants and additional benefit accruals.  A new amendment became effective on January 1, 2011 in which a named participant was admitted to the plan and is eligible to earn benefit accrual. 2017 expense reflects a service cost charge for the value of the new participant's benefit earned during 2017.

The Partnership's benefit plan obligation and plan assets for the year ended December 31, 2017 are reconciled in the tables below.

HIGHLY CONFIDENTIAL

D-CNL000538

**Appx. 01324**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

*(in thousands)*

| Change in projected benefit obligation | | 2017 |
|---|---|---|
| Benefit obligation at beginning of year | $ | 2,301 |
| Service cost | | 6 |
| Interest cost | | 79 |
| Plan participants' contributions | | - |
| Amendments | | - |
| Actuarial loss/(gain) | | 478 |
| Acquisition/(divestiture) | | - |
| Benefits paid | | (286) |
| Benefit obligation at end of year | $ | 2,578 |

| Change in plan assets | | 2017 |
|---|---|---|
| Fair value of plan assets at beginning of year | $ | 2,570 |
| Actual return on plan assets | | 640 |
| Acquisition/(divestiture) | | - |
| Employer contribution | | - |
| Plan participants' contributions | | - |
| Benefits paid | | (286) |
| Other increase/(decrease) | | - |
| Fair value of plan assets at year end | $ | 2,924 |

| Reconciliation of Funded Status | | 2017 |
|---|---|---|
| Accumulated benefit obligation at end of year | $ | 2,578 |
| Projected benefit obligation at end of year | | 2,578 |
| Fair value of assets at end of year | | 2,924 |
| Funded status at end of year | $ | 346 |

The Partnership did not contribute to the plan during 2017.

**Assumptions**

Weighted-average assumptions used to determine benefit obligations at December 31, 2017:

| Discount rate | 3.19% |
|---|---|
| Rate of compensation increase | N/A |

36

D-CNL000539
**Appx. 01325**

**Highland Capital Management, L.P.**
(A Delaware Limited Partnership)
**Notes to Consolidated Financial Statements**
**December 31, 2017**

Weighted-average assumptions used to determine net periodic benefit cost at December 31, 2017:

| | |
|---|---|
| Discount rate | 3.69% |
| Expected long-term return on plan assets | 3.69% |
| Rate of compensation increase | N/A |

As of December 31, 2017, there were no plan assets categorized as Level 3.

14.    **Income Taxes**

**The Partnership**
For U.S. income tax purposes, the Partnership is treated as a pass-through-entity, which means it is not subject to income taxes under current Internal Revenue Service or state and local guidelines. Each partner is individually liable for income taxes, if any, on their share of the Partnership's net taxable income.

The Partnership files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal and foreign jurisdictions, where applicable.  As of December 31, 2017, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2014 forward (with limited exceptions).

Authoritative guidance on accounting for and disclosure of uncertainty in tax positions requires the General Partner to determine whether a tax position of the Partnership is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that as a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority.  The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2017.

**Multi Strategy Master**
For U.S. income tax purposes, Multi Strategy Master is treated as a pass-through entity, which means it is not subject to federal income taxes under current Internal Revenue Service guidelines. However, each investor may be individually liable for income taxes, if any, on its share of the partnership's net taxable income.

Multi Strategy Master trades in senior secured syndicated bank loans for its own account and, as such, non-U.S. Investment Vehicle investors are generally not subject to U.S. tax on such earnings (other than certain withholding taxes indicated below). The Partnership intends to conduct Multi Strategy Master business in such a manner that it does not constitute a U.S. trade or business, nor does it create a taxable presence in any of the jurisdictions in which the Partnership has offices.

Dividends as well as certain interest and other income received by Multi Strategy Master from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by Multi Strategy Master from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced. As of December 31, 2017, a minimal withholding tax liability of $0.1 million is classified within accrued and other liabilities on the Consolidated Balance Sheet.

37

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

Multi Strategy Master applies authoritative guidance which requires management to determine whether a tax position Multi Strategy Master is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the consolidated financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relative taxing authority. Management does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2017.

Multi Strategy Master files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, Multi Strategy Master is subject to examination by federal and foreign jurisdictions, where applicable. As of December 31, 2017, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2014 forward (with limited exceptions).

**Restoration Onshore**
Restoration Onshore is treated as a pass-through entity for tax purposes, which means it is not subject to U.S. income taxes under current Internal Revenue Service or state and local guidelines. Each Partner is individually liable for income taxes, if any, on its share of the Restoration Onshore's net taxable income. Interest, dividends and other income realized by Restoration Onshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Onshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Onshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position. For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority.

The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2017. Restoration Onshore files tax returns as prescribed by the tax laws of the jurisdictions in which it operates. In the normal course of business, the Partnership is subject to examination by federal, state, local and foreign jurisdictions, where applicable. As of December 31, 2017, the tax years that remain subject to examination by the major tax jurisdictions under the statute of limitations is from the year 2014 forward (with limited exceptions).

**Restoration Offshore**
Restoration Offshore is a Cayman Islands exempted company. Under the current laws of the Cayman Islands, there is no income, estate, transfer, sales or other tax payable by Restoration Offshore. Restoration Offshore has elected to be treated as a corporation for U.S. tax purposes and files a protective 1120-F.

The General Partner intends to conduct the business of Restoration Offshore in such a way that Restoration Offshore's activities do not constitute a U.S. trade or business and any income or realized gains earned by Restoration Offshore do not become "effectively connected" with a trade or business carried on in the United States for U.S. federal income tax purposes.

38

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

Dividends as well as certain interest and other income received by the master partnership of Restoration Offshore from sources within the United States may be subject to, and reflected net of, United States withholding tax at a rate of 30% for non-U.S. Investment Vehicles. Interest, dividend and other income realized by the master partnership of Restoration Offshore from non-U.S. sources and capital gains realized on the sale of securities of non-U.S. issuers may be subject to withholding and other taxes levied by the jurisdiction in which the income is sourced.

Restoration Offshore applies the authoritative guidance on accounting for and disclosure of uncertainty in tax positions, which requires the General Partner to determine whether a tax position of Restoration Offshore is more likely than not to be sustained upon examination, including resolution of any related appeals or litigation processes, based on the technical merits of the position.  For tax positions meeting the more likely than not threshold, the tax amount recognized in the financial statements is the largest benefit that has a greater than fifty percent likelihood of being realized upon ultimate settlement with the relevant taxing authority. The General Partner has determined that there was no effect on the financial statements from the Partnership's application of this authoritative guidance. The General Partner does not expect a significant change in uncertain tax positions during the twelve months subsequent to December 31, 2017. As of December 31, 2017, the tax years that remain subject to examination by major tax jurisdictions under the statute of limitations is from the year 2014 forward (with limited exceptions). During the year, Restoration Offshore received approximately $0.7 million related to a tax refund. This amount is reflected in the Statement of Cash Flows as a component of changes in other assets.

The remaining entities consolidated by the Partnership had no uncertain tax positions which required accrual under U.S. GAAP.

HIGHLY CONFIDENTIAL

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

15.    **Legal Proceedings**

On July 15, 2008, Highland Offshore Partners, Multi Strategy Master, certain affiliates, and numerous external parties (collectively, the "Defendants") were named as parties to an action filed with the Bankruptcy Court of the Southern District of Florida ('the Tousa action"). The action related to a secured lending transaction and subsequent refinancing arrangement in which the Defendants participated. On October 13, 2009, the Bankruptcy Court ruled in favor of the plaintiffs and ordered the Defendants to disgorge the principal, interest, and fees they received in connection with the refinancing arrangement. In addition, the Court ordered the defendants to pay simple interest on the disgorged amount at an annual rate of 9%. The Defendants believed they acted in good faith pursuant to the terms of the relevant agreements and appealed the decision. In February 2011, the District Court of Florida quashed the judgment against the Defendants and overturned the ruling that resulted in the Defendants recording the reserve. The plaintiffs appealed the ruling of the District Court, and the issue was sent to the Eleventh Circuit of Florida. On May 15, 2012, the Eleventh Circuit unexpectedly reversed the District Court's ruling, and remanded the case back to the District Court for review. The last such case was heard by the US Supreme Court case on January 14, 2015. On June 23, 2015, the District Court remanded the case back to the Bankruptcy Court for a report and recommendations regarding the effects of certain settlements on the Plaintiff's available damages. On April 1, 2016, the Bankruptcy Court issued its Report and Recommendations to the District Court. Briefing on the Report and Recommendations was completed in June 2016. On March 8, 2017, the District Court substantially adopted the Bankruptcy Court Report and Recommendations, which affirmed the Defendants' liability. The case has now been retuned to the Eleventh Circuit for additional appeals. Based on the ruling, the Consolidated Entities recorded a combined reserve of approximately $5.8 million as of December 31, 2016. During 2017, the Consolidated Entities settled the Tousa action for approximately $7.7 million. Final settlement and dismissal was approved by the court on January 12, 2018. The difference (approximately $2.0 million) between the amount accrued at December 31, 2016 and the amount paid was included in the Consolidate Income Statement as a realized loss.

The Partnership and certain affiliated investment vehicles are defendants in a complaint filed on February 24, 2009 New York state court by UBS Securities LLC and UBS AG, London Branch relating to a CLO warehouse facility with respect to which UBS is attempting to extend liability beyond the two entities that bore sole risk of loss under the governing documents. On February 19, 2010, the court dismissed all claims against the Partnership. UBS since has filed additional claims against the Partnership and certain additional investment vehicles. On July 21, 2011, the First Appellate Division again dismissed two of UBS's four claims against the Partnership, severely limiting the remaining two claims. Additional claims were dismissed in a further appellate ruling issued on October 31, 2017. The trial court has not indicated when UBS's remaining claims against the Partnership will go to trial.

From time to time the Partnership is party to disputes with disgruntled former employees. One such matter involves a former employee that improperly recorded internal conversations in violation of the Partnership's internal policies and procedures and potentially certain criminal and regulatory provisions. The former employee has asserted counterclaims related to his time employed by the Partnership. Arbitration on the matter has resolved and the matter is proceeding in Texas state and federal court.

HIGHLY CONFIDENTIAL

D-CNL000543

**Appx. 01329**

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Notes to Consolidated Financial Statements**
**December 31, 2017**

In another matter, a Court ruled that a former employee breached his fiduciary duty to the Partnership, owed damages to the Partnership, and ordered the former employee to cease using or disclosing the Partnership's confidential information.   Additionally, an award was entered in favor of the employee against a separate incentive compensation entity for an interest that was already escrowed in his name prior to trial and in which he was already vested.  The dispute over the amount of his vested interest is on-going.  Additionally, the Partnership from time to time must take action to enforce the permanent injunction against the former employee's continuing improper disclosures of the Partnership's confidential information.

The Partnership is engaged in litigation with a group of investors relating to the post-financial crisis wind down and distribution of the remaining assets in the Crusader hedge fund vehicle.

The Partnership was engaged in litigation with a group of investors relating to the post-financial crisis wind down and distribution of the remaining assets in the Credit Strategies Fund. On May 12, 2017, the Partnership entered into an agreement, approved by the independent Redeemer Committee of the Credit Strategies Fund, whereby the Partnership and Highland New York paid the Credit Strategies Fund $23.0 million in exchange for the remaining assets of the Credit Strategies Fund and releases from the on-going litigation between the Partnership and the Redeemer Committee.  Related to this transaction and release of on-going litigation claims of the Partnership, Cornerstone Health Care Group, Inc., with the approval of a special committee of its independent directors, paid indemnification to the Partnership in the amount of $17.4 million, which is recorded in Other income on the Consolidated Statement of Income. Of the $23.0 million paid, $14.3 million is recorded as a settlement expense which is a reduction to Other income on the Consolidated Statement of Income.

The Partnership currently is and has been previously subject to various legal proceedings, many of which have been due to the nature of operating in the distressed loan business in the U.S. The legal process is often the route of last resort to recover amounts due from delinquent borrowers. We currently do not anticipate these proceedings will have a material negative impact to the Partnership.

16.   **Subsequent Events**

Over the course of 2018, through the report date, James Dondero issued promissory notes to the Partnership in the amount of $11.7 million. The notes accrue interest at a rate ranging from 2.59%-2.66%.

The Partnership has performed an evaluation of subsequent events through May 18, 2018, which is the date the consolidated financial statements were available to be issued, and has determined that there are no other material subsequent events that would require disclosure in the Partnership's consolidated financial statements.

41

D-CNL000544

Appx. 01330

**Highland Capital Management, L.P.**

**(A Delaware Limited Partnership)**

**As of And Year Ended December 31, 2017**

**Supplemental Information**

HIGHLY CONFIDENTIAL

D-CNL000545

# Highland Capital Management, L.P.
## (A Delaware Limited Partnership)
## Supplemental Consolidating Balance Sheet
## December 31, 2017

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $      10,237 | $      93,242 | $          - | $    103,479 |
| Investments at fair value | 181,987 | 874,393 | - | 1,056,380 |
| Equity method investees | 180,938 | - | (180,938) | - |
| Management and incentive fees receivable | 10,916 | 945 | - | 11,861 |
| Due from brokers | - | 2,287 | - | 2,287 |
| Other assets | 12,368 | 7,113 | (4,807) | 14,674 |
| Notes and other amounts due from affiliates | 165,724 | - | (2,321) | 163,403 |
| Other intangible assets | 2,830 | 3,500 | - | 6,330 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $9,880 | 5,775 | 57 | - | 5,832 |
| **Total assets** | $    570,775 | $    981,537 | $  (188,066) | $ 1,364,246 |
| | | | | |
| **Liabilities and partners' capital** | | | | |
| | | | | |
| **Liabilities** | | | | |
| | | | | |
| Accounts payable | $       4,296 | $          140 | $          - | $      4,436 |
| Securities sold, not yet purchased | - | 95,403 | - | 95,403 |
| Withdrawals payable | - | 140,955 | - | 140,955 |
| Due to affiliates | 4,509 | - | (4,509) | - |
| Due to brokers | 35,833 | 69,772 | (709) | 104,896 |
| Accrued and other liabilities | 34,468 | 4,313 | 400 | 39,181 |
| Notes payable | 16,420 | 5,885 | (2,310) | 19,995 |
| Investment liabilities | 25,072 | 59,287 | - | 84,359 |
| **Total liabilities** | 120,598 | 375,755 | (7,128) | 489,225 |
| | | | | |
| Non-controlling interest | - | 424,844 | - | 424,844 |
| | | | | |
| Commitments and contingencies | | | | |
| | | | | |
| **Partners' capital** | 450,177 | 180,938 | (180,938) | 450,177 |
| | | | | |
| **Total liabilities and partners' capital** | $    570,775 | $    981,537 | $  (188,066) | $ 1,364,246 |

43

## Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Consolidating Statement of Income**
**Year Ended December 31, 2017**

| (in thousands) | Highland Capital Management, L.P. | All Other Consolidated Entities | Eliminations | Total Consolidated |
|---|---:|---:|---:|---:|
| **Revenue:** | | | | |
| Management fees | $ 37,098 | $ 777 | $ - | $ 37,875 |
| Interest and investment income | 4,479 | 16,643 | - | 21,122 |
| Incentive fees | 10,042 | 1,753 | - | 11,795 |
| Shared services fees | 9,445 | - | - | 9,445 |
| Other income | 6,846 | 2,944 | - | 9,790 |
| Total revenue | 67,910 | 22,117 | - | 90,027 |
| **Expenses:** | | | | |
| Compensation and benefits | 36,312 | 942 | - | 37,254 |
| Professional fees | 12,166 | 2,591 | - | 14,757 |
| Interest expense | 1,669 | 3,839 | - | 5,508 |
| Marketing and advertising expense | 2,374 | - | - | 2,374 |
| Depreciation and amortization | 1,333 | 7 | - | 1,340 |
| Investment and research consulting | 1,101 | - | - | 1,101 |
| Bad debt expense | 2,279 | - | - | 2,279 |
| Other operating expenses | 6,965 | 950 | - | 7,915 |
| Total expenses | 64,199 | 8,329 | - | 72,528 |
| Other income | 11,967 | - | - | 11,967 |
| Income before investment and derivative activities | 15,678 | 13,788 | - | 29,466 |
| **Realized and unrealized gain/(loss) on investments and derivatives:** | | | | |
| Net realized loss on investments and derivatives | 6,495 | (16,177) | - | (9,682) |
| Net change in unrealized gain on investments and derivatives | 8,853 | 106,030 | - | 114,883 |
| Net realized and unrealized gain on investments and derivatives | 15,348 | 89,853 | - | 105,201 |
| Net unrealized earnings from equity method investees | 21,581 | - | (21,581) | - |
| Net income | 52,607 | 103,641 | (21,581) | 134,667 |
| Net income attributable to non-controlling interest | - | 82,060 | - | 82,060 |
| Net income attributable to Highland Capital Management, L.P. | $ 52,607 | $ 21,581 | $ (21,581) | $ 52,607 |

44

D-CNL000547

# Highland Capital Management, L.P.
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Balance Sheet**
**December 31, 2017**

*(in thousands)*

**Assets**

| | | |
|---|---|---:|
| Current assets: | | |
| Cash and cash equivalents | $ | 10,237 |
| Investments at fair value (cost $267,265)* | | 321,211 |
| Equity method investees | | 41,714 |
| Management and incentive fees receivable | | 10,916 |
| Other assets | | 12,368 |
| Notes and other amounts due from affiliates | | 165,724 |
| Other intangible assets | | 2,830 |
| Fixed assets and leasehold improvements, net of accumulated depreciation of $9,873 | | 5,775 |
| **Total assets** | $ | **570,775** |

**Liabilities and partners' capital**

**Liabilities**

| | | |
|---|---|---:|
| Accounts payable | $ | 4,296 |
| Due to affiliate | | 4,509 |
| Due to brokers | | 35,833 |
| Accrued and other liabilities | | 34,468 |
| Notes payable | | 16,420 |
| Investment liabilities | | 25,072 |
| Total liabilities | | 120,598 |
| Partners' capital | | 450,177 |
| **Total liabilities and partners' capital** | $ | **570,775** |

*Investments, at fair value includes $144.9 million of limited partnership interest ownership of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2017 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited financial statements.

HIGHLY CONFIDENTIAL

D-CNL000548

Appx. 01334

**Highland Capital Management, L.P.**
**(A Delaware Limited Partnership)**
**Supplemental Unconsolidated Statement of Income**
**Year Ended December 31, 2017**

*(in thousands)*

| | | |
|---|---|---:|
| **Revenue:** | | |
| Management fees | $ | 37,098 |
| Incentive fees | | 10,042 |
| Shared services fees | | 9,445 |
| Interest and investment income | | 4,479 |
| Miscellaneous income | | 6,846 |
| Total revenue | | 67,910 |
| **Expenses:** | | |
| Compensation and benefits | | 36,312 |
| Professional fees | | 12,166 |
| Marketing and advertising expense | | 2,374 |
| Interest expense | | 1,669 |
| Depreciation and amortization | | 1,333 |
| Investment and research consulting | | 1,101 |
| Bad debt expense | | 2,279 |
| Other operating expenses | | 6,965 |
| Total expenses | | 64,199 |
| Other income | | 11,967 |
| Income before investment activities | | 15,678 |
| **Realized and unrealized gains/losses on investments:** | | |
| Net realized gain on sale of investments | | 6,495 |
| Net change in unrealized gain on investments* | | 27,323 |
| Total realized and unrealized gain on investments | | 33,818 |
| Income from equity method investees: | | 3,111 |
| **Net income** | $ | 52,607 |

*Net change in unrealized gain on investments includes $ 18.5 million of unrealized gains from holdings of limited partnership interests of Consolidated Investment Funds, which are discussed in Footnote 2. These entities are consolidated because the Partnership controls the general partner of the respective entities and is responsible for the daily operations of the entities.

The above information was derived from the audited December 31, 2017 consolidated financial statements of Highland Capital Management, L.P.  This information should be read in conjunction with such audited consolidated financial statements.

HIGHLY CONFIDENTIAL

D-CNL000549

**Appx. 01335**

# EXHIBIT 73

**Payment history - Retired Dondero notes**

| Date | Total Dondero payment amount | "Restructure note" | | January 18, 2018 Note | | Total Received in respect of retired notes |
|---|---|---|---|---|---|---|
| | | Principal | Interest | Principal | Interest | |
| 12/8/2017 | $ 677,501 | $ 499,242 | $ 178,258 | $ - | $ - | $ 677,501 |
| 5/31/2018 | - | (120,949) | 120,949 | | | - |
| 12/18/2018 | 2,000,000 | - | - | 1,812,768 | 187,232 | 2,000,000 |
| 12/19/2018 | 782,623 | 499,242 | 283,381 | - | - | 782,623 |
| 1/18/2019 | - | - | - | (13,390) | 13,390 | - |
| 2/14/2019 | 3,000,000 | 2,955,463 | 44,537 | - | - | 3,000,000 |
| 3/13/2019 | 5,000,000 | 4,983,447 | 16,553 | - | - | 5,000,000 |
| 5/2/2019 | 2,400,000 | 2,383,204 | 16,796 | - | - | 2,400,000 |
| 5/3/2019 | 4,400,000 | 3,777,624 | (118,479) | 740,855 | - | 4,400,000 |
| 5/7/2019 | 600,000 | - | - | 600,000 | - | 600,000 |
| 5/23/2019 | 1,500,000 | - | - | 1,500,000 | - | 1,500,000 |
| 6/7/2019 | 3,000,000 | - | - | 3,000,000 | - | 3,000,000 |
| 12/23/2019 | 783,012 | - | - | 259,767 | 59,517 | 319,284 * |
| **Total** | $ **24,143,136** | $ **14,977,274** | $ **541,995** | $ **7,900,000** | $ **260,139** | $ **23,679,408** |

* Difference between total payment of $783k and amount applied to January 18, 2018 note of $319k was applied to the still outstanding notes as follows:
2/2/18 Note: $239,475.29 principal, $166,840.32 interest or $406,315.61 total
8/1/18 Note: $29,954.22 interest
8/13/18 Note: $27,458.03 interest
Total of $463,727.86 applied

**Appx. 01337**

# EXHIBIT 74

**PROMISSORY NOTE**

$3,825,000                                                                        February 2, 2018

   FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of THREE MILLION, EIGHT HUNDRED AND TWENTY-FIVE THOUSAND and 00/100 Dollars ($3,825,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

   1. <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.66%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

   2. <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

   3. <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

   4. <u>Tax Loan</u>. This Note is paid to the Maker to help satisfy any current tax obligations of a former partner or current partner.

   5. <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

   6. <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

   7. <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other

**Exhibit 1**

Appx. 01339

amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

8.     <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

9.     <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

JAMES DONDERO

2

**Appx. 01340**

# EXHIBIT 75



# OPERATING RESULTS

**February 2018**

Exhibit 2

Appx. 01342

**Highland Capital Management, L.P.**
**Significant Items Impacting HCMLP's Balance Sheet**
**February 2018**

<u>CLOs</u>

████████████████████████

<u>Operating Activities</u>

████████████████████████
████████████████
████████████████████████
███████████████
████████████████████

<u>Investments</u>

███████████████
████████████████
██████████████████
██████████████████████████
███████████████
████████████████
████████████████████████████
██████████████████████████
██████████████████
█████████████████

<u>Other</u>
 - ($3.8M) partner loan

**Appx. 01343**

**Highland Capital Management, L.P.**
**Financial/Operational Highlights**
**February 2018 Close Package**
*(in millions)*

|  | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|
| **Cash** | $ 6.4 | $ 10.2 | $ 2.2 | $ 9.6 |
| **Operating Revenue** | $ 4.3 | $ 13.9 | $ 4.2 | $ 4.4 |
| **Operating Expenses** [1] | (4.2) | (19.7) | (3.7) | (4.5) |
| **Operating Income** | $ 0.1 | $ (5.8) | $ 0.5 | $ (0.1) |
| **Add back: Non-Recurring Items** | $ - | $ - | $ - | $ - |
| **Adjusted Operating Income** | $ 0.1 | $ (5.8) | $ 0.5 | $ (0.1) |
| **Net Income/(Loss)** | $ 20.4 | $ 17.0 | $ 7.2 | $ (26.1) |

|  | MTD | YTD | LTM |
|---|---|---|---|
| **Operating Cash Flow** [2] | $ (6.0) | $ (4.2) | $ (7.6) |
| Interest Expense | (0.1) | (0.2) | (1.6) |
| **Adjusted Operating Cash Flow** | $ (6.1) | $ (4.4) | $ (9.2) |

| **Assets Under Management (billions)** | 11/30/2017 | 12/31/2017 | 1/31/2018 |
|---|---|---|---|
| CLO 1.0 | $ 2.1 | $ 1.9 | $ 1.8 |
| Sep. Accounts | 1.9 | 2.0 | 2.0 |
| Hedge/PE | 1.1 | 1.1 | 1.1 |
| **Total** | $ 5.0 | $ 5.0 | $ 4.9 |

| **Headcount - including affiliates** | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|
| Front Office | 47 | 45 | 45 | 42 |
| Institutional Marketing and Client Service | 7 | 7 | 9 | 8 |
| Legal | 14 | 15 | 15 | 16 |
| Admin | 13 | 14 | 13 | 13 |
| Retail Operations (HCMLP) | 4 | 4 | 4 | 4 |
| Back Office | 41 | 38 | 39 | 39 |
| HCFD/NSI | 21 | 21 | 17 | 16 |
| HCMF Strategy/Marketing | 5 | 5 | 5 | 5 |
| Total | 152 | 149 | 147 | 143 |

**Notes:**

(1) Excludes deferred compensation MTM

(2) Operating Cash Flow = Operating Income + Dep. + Deferred Comp + Non-Cash Bonus Expense

2

**HCMLP Rolling Fee Earning AUM Schedule**
*(in millions)*

|  | 2/28/2017 | 3/31/2017 | 4/30/2017 | 5/31/2017 | 6/30/2017 | 7/31/2017 | 8/31/2017 | 9/30/2017 | 10/31/2017 | 11/30/2017 | 12/31/2017 | 1/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ 3,396 | $ 3,405 | $ 3,402 | $ 2,250 | $ 2,250 | $ 2,249 | $ 2,063 | $ 2,060 | $ 2,072 | $ 1,859 | $ 1,827 | $ 1,831 |
| Sep Accounts | 2,251 | 2,282 | 1,538 | 1,741 | 1,732 | 1,787 | 1,823 | 1,855 | 1,905 | 1,951 | 1,987 | 2,003 |
| Hedge/PE | 1,189 | 1,195 | 1,213 | 1,076 | 1,065 | 1,049 | 1,058 | 1,067 | 1,072 | 1,112 | 1,073 | 1,084 |
| Total | $ 6,742 | $ 6,882 | $ 6,153 | $ 5,067 | $ 5,047 | $ 5,085 | $ 4,945 | $ 4,981 | $ 5,049 | $ 4,922 | $ 4,887 | $ 4,917 |



3

**HCMLP Monthly Management Fees**
*(in thousands)*

| | 3/31/2017 | 4/30/2017 | 5/31/2017 | 6/30/2017 | 7/31/2017 | 8/31/2017 | 9/30/2017 | 10/31/2017 | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $ 1,433 | $ 1,081 | $ 961 | $ 961 | $ 1,644 | $ 793 | $ 802 | $ 1,082 | $ 768 | $ 765 | $ 817 | 713 |
| Sep Accounts | 577 | 762 | 586 | 327 | 792 | 635 | 563 | 516 | 678 | 584 | 622 | 626 |
| Subadvised Account | 566 | 526 | 505 | 588 | 538 | 520 | 529 | 447 | 620 | 621 | 491 | 497 |
| Hedge/PE Funds | 414 | 446 | 409 | 2,617 | 797 | 837 | 831 | 814 | 818 | 817 | 1,177 | 1,138 |
| Total | $ 2,990 | $ 2,815 | $ 2,462 | $ 4,494 | $ 3,771 | $ 2,785 | $ 2,725 | $ 2,860 | $ 2,885 | $ 2,786 | $ 3,107 | 2,974 |



Highland Capital Management, LP



**HIGHLAND CAPITAL**
**M A N A G E M E N T, LP**

Statement of Income
Twelve Months Ended February 2018
(in thousands)

| | Mar-17 | Apr-17 | May-17 | Jun-17 | Jul-17 | Aug-17 | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | LTM | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue:** | | | | | | | | | | | | | | |
| Management fees | $ 2,990 $ | 2,815 $ | 2,462 $ | 4,494 $ | 3,771 $ | 2,785 $ | 2,725 $ | 2,860 $ | 2,885 $ | 3,265 $ | 3,129 $ | 2,974 $ | 37,154 $ | 6,103 |
| Shared services fees | 817 | 871 | 794 | 620 | 779 | 803 | 757 | 732 | 871 | 873 | 930 | 866 | 9,713 | 1,796 |
| Incentive fees | - | - | - | - | - | - | - | - | - | 10,057 | - | - | 10,057 | - |
| Other income | 431 | 217 | 560 | 477 | 274 | 614 | 562 | 234 | 586 | 912 | 215 | 596 | 5,679 | 811 |
| **Total operating revenue** | **4,237** | **3,904** | **3,816** | **5,591** | **4,824** | **4,202** | **4,043** | **3,827** | **4,342** | **15,107** | **4,274** | **4,436** | **62,603** | **8,710** |
| **Operating expenses:** | | | | | | | | | | | | | | |
| Compensation and benefits | 2,769 | 2,539 | 2,495 | 2,702 | 2,885 | 2,800 | 2,368 | 2,308 | 2,795 | 2,692 | 2,755 | 2,769 | 31,876 | 5,524 |
| Deferred compensation | 222 | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | 101 | 3,201 | 260 |
| Professional services | 629 | 307 | 1,168 | 511 | 616 | 1,531 | 472 | 1,031 | 649 | 16,650 | 181 | 314 | 24,060 | 495 |
| Investment research and consulting | 226 | 175 | 8 | 208 | 14 | 15 | 160 | 22 | 8 | 242 | 13 | 20 | 1,111 | 33 |
| Depreciation | 110 | 110 | 110 | 114 | 112 | 112 | 113 | 112 | 112 | 108 | 109 | 108 | 1,328 | 217 |
| Other operating expenses | 875 | 684 | 702 | 1,021 | 645 | 988 | 805 | 723 | 497 | 662 | 580 | 683 | 8,866 | 1,263 |
| **Total operating expenses** | **4,831** | **4,057** | **4,640** | **4,770** | **4,697** | **5,495** | **4,216** | **4,482** | **4,816** | **20,646** | **3,798** | **3,995** | **70,442** | **7,793** |
| **Operating income** | **(594)** | **(153)** | **(824)** | **821** | **127** | **(1,292)** | **(172)** | **(655)** | **(474)** | **(5,539)** | **476** | **441** | **(7,839)** | **917** |
| **Other income/expense:** | | | | | | | | | | | | | | |
| Interest and investment income, net | 478 | 454 | 493 | 661 | 606 | 558 | 532 | 574 | 937 | 839 | 612 | 473 | 7,219 | 1,086 |
| Interest expense | (143) | (141) | (149) | (146) | (142) | (148) | (136) | (141) | (134) | (147) | (141) | (65) | (1,632) | (206) |
| Other income/expense | 59 | 170 | 4,060 | 947 | 39 | 13 | 63 | 77 | 64 | 19,147 | 81 | 64 | 24,784 | 145 |
| **Total other income/expense** | **394** | **484** | **4,405** | **1,462** | **503** | **424** | **459** | **510** | **867** | **19,839** | **552** | **472** | **30,370** | **1,024** |
| **Realized and unrealized gain/(loss) from investments** | | | | | | | | | | | | | | |
| Net realized gain/(loss) on sale of investment transactions | 1,547 | (20) | 2,560 | 272 | 496 | 2,811 | - | 22 | - | (1,155) | - | - | 6,533 | - |
| Net change in unrealized gain/(loss) of investments | (189) | (460) | 4,729 | 4,338 | 3,144 | (9,361) | 9,180 | (1,004) | 6,375 | 2,170 | 10,678 | (10,201) | 19,398 | 477 |
| **Total realized and unrealized gain/(loss) from investments** | **1,358** | **(480)** | **7,290** | **4,610** | **3,640** | **(6,550)** | **9,180** | **(982)** | **6,375** | **1,015** | **10,678** | **(10,201)** | **25,931** | **477** |
| **Earnings and losses from equity method investees** | | | | | | | | | | | | | | |
| █████████████ | 225 | 235 | (16) | 258 | 44 | (201) | 333 | 12 | 200 | 329 | 926 | (210) | 2,135 | 716 |
| █████████████ | (2,857) | (558) | (624) | 818 | (1,908) | 1,709 | (1,136) | (203) | 4,333 | 529 | (1,674) | (5,137) | (6,708) | (6,811) |
| █████████████ | (5,870) | (1,935) | (1,352) | 1,692 | (3,860) | 3,454 | (2,300) | (419) | 8,353 | 1,019 | (3,731) | (11,446) | (16,395) | (15,177) |
| █████████████ | - | (184) | - | (6) | (15) | - | 9 | 0 | 15 | - | 18 | - | 42 | - |
| █████████████ | - | - | - | - | - | - | - | (14) | (18) | 11 | 102 | - | (125) | - |
| █████████████ | - | - | (1,534) | - | - | - | - | - | - | 768 | - | - | 768 | - |
| █████████████ | - | - | - | - | - | - | - | - | - | - | - | - | (1,534) | - |
| **Total earnings/(loss) from equity method investees** | **(8,502)** | **(2,441)** | **(3,525)** | **2,762** | **(5,740)** | **4,971** | **(3,118)** | **(613)** | **13,664** | **1,996** | **(4,479)** | **(16,794)** | **(21,817)** | **(21,273)** |
| **Net income** | **(7,345)** | **(2,591)** | **7,345** | **9,655** | **(1,470)** | **6,348** | **(1,739)** | **20,432** | **17,311** | **7,227** | **(26,881)** $ | **26,645** $ | **(18,854)** |
| **Profit margin** | **-173%** | **-66%** | **192%** | **173%** | **-30%** | **-58%** | **157%** | **-45%** | **471%** | **115%** | **169%** | **-588%** | **43%** | **-216%** |
| **Operating Cash Flow Calculation:** | | | | | | | | | | | | | | |
| Operating income | (594) | (153) | (824) | 821 | 127 | (1,292) | (172) | (655) | (474) | (5,539) | 476 | 441 | (7,839) | 917 |
| Add  Depreciation expense | 110 | 110 | 110 | 114 | 112 | 112 | 113 | 112 | 112 | 108 | 109 | 108 | 1,328 | 217 |
| Adjustment  Deferred compensation | (2,767) | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | (489) | (378) | (330) |
| Bonus awards | 1,000 | 956 | 1,000 | 1,000 | 1,000 | (5,190) | 986 | 1,000 | 1,300 | 1,300 | 1,000 | (6,049) | (696) | (5,049) |
| **Operating Cash Flow** | **(2,251)** | **1,155** | **442** | **2,149** | **1,664** | **(6,320)** | **1,224** | **743** | **1,693** | **(3,840)** | **1,744** | **(5,989)** $ | **(7,585)** $ | **(4,245)** |
| Less  Interest expense | (143) | (141) | (149) | (146) | (142) | (148) | (136) | (141) | (134) | (147) | (141) | (65) | (1,632) | (206) |
| **Adjusted Operating Cash Flow** | **(2,395)** | **1,015** | **293** | **2,003** | **1,523** | **(6,468)** | **1,087** | **603** | **1,559** | **(3,987)** | **1,603** | **(6,054)** $ | **(9,217)** $ | **(4,451)** |
| Add cash bonus expense | 1,063 | 1,001 | 1,000 | 1,100 | 1,032 | 1,025 | 1,000 | 1,008 | 1,304 | 1,300 | 1,000 | 1,000 | 12,832 | 2,000 |
| Less cash bonuses paid | (63) | (45) | - | (100) | (32) | (6,215) | (14) | (8) | (4) | - | - | (7,049) | (13,528) | (7,049) |
| **Non-cash bonus add-back** | **1,000** | **956** | **1,000** | **1,000** | **1,000** | **(5,190)** | **986** | **1,000** | **1,300** | **1,300** | **1,000** | **(6,049)** | **(696)** | **(5,049)** |
| Add deferred compensation MTM | 222 | 243 | 157 | 214 | 426 | 50 | 297 | 286 | 755 | 291 | 159 | 101 | 3,201 | 260 |
| Less cash deferred awards paid | (2,989) | - | - | - | - | - | - | - | - | - | - | (590) | (3,579) | (590) |
| **Non-cash deferred award add-back** | **(2,767)** | **243** | **157** | **214** | **426** | **50** | **297** | **286** | **755** | **291** | **159** | **(489)** | **(378)** | **(330)** |

5



**Balance Sheet**
**February 2018 vs. January 2018**
**(in thousands)**

| | | February 28, 2018 | | January 31, 2018 | | Increase/ (Decrease) $ | | Increase/ (Decrease) % |
|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | |
| Cash and cash equivalents | $ | 9,607 | $ | 2,161 | $ | 7,446 | | 344.6% |
| Investments, at fair value | | 266,615 | | 277,888 | | (11,273) | | -4.1% |
| Equity method investees | | 59,692 | | 82,690 | | (22,997) | | -27.8% |
| Management and incentive fee receivable | | 1,918 | | 4,988 | | (3,070) | | -61.5% |
| Deferred incentive fees | | - | | 6,944 | | (6,944) | | 0.0% |
| Fixed assets, net | | 5,557 | | 5,665 | | (109) | | -1.9% |
| Due from affiliates | | 181,222 | | 175,605 | | 5,617 | | 3.2% |
| Other assets | | 9,408 | | 10,353 | | (945) | | -9.1% |
| **Total assets** | $ | **534,020** | $ | **566,295** | $ | **(32,275)** | | **(5.7%)** |
| | | | | | | | | |
| **Liabilities and Partners' Capital** | | | | | | | | |
| Accounts payable | $ | 2,036 | $ | 2,667 | $ | (631) | | -23.7% |
| Due to brokers | | 35,777 | | 35,842 | | (64) | | -0.2% |
| Accrued expenses and other liabilities | | 54,361 | | 59,860 | | (5,498) | | -9.2% |
| | | | | | | | | |
| Partners' capital | | 441,846 | | 467,927 | | (26,081) | | -5.6% |
| **Total liabilities and partners' capital** | $ | **534,020** | $ | **566,295** | $ | **(32,275)** | | **(5.7%)** |

**Partners' Capital Walk**

| | | |
|---|---|---|
| Partners' capital at 1/31 | $ | 467,927 |
| Net subscriptions/(redemptions) | | - |
| Net income/(loss) | | (26,081) |
| Partners' capital at 2/28 | $ | 441,846 |

**Appx. 01348**



### Income Statement
#### February 2018 YTD  vs. January 2017 YTD
#### (in thousands)

| | 2018 YTD | 2017 YTD | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $ 6,103 | $ 6,106 | $ (3) | 0.0% |
| Shared services fees | 1,796 | 1,574 | 221 | 14.1% |
| Other income | 811 | 808 | 3 | 0.4% |
| **Total operating revenue** | **8,710** | **8,488** | **222** | **2.6%** |
| **Operating expenses:** | | | | |
| Salaries and overtime | 2,331 | 2,274 | 57 | 2.5% |
| Bonus | 2,000 | 1,995 | 5 | 0.2% |
| Other compensation and benefits | 1,193 | 1,125 | 68 | 6.1% |
| Deferred compensation | 260 | 666 | (406) | -61.0% |
| Professional services | 495 | 740 | (245) | -33.1% |
| Investment research and consulting | 33 | 23 | 10 | 45.5% |
| Marketing and advertising expense | 341 | 460 | (119) | -25.8% |
| Depreciation expense | 217 | 221 | (4) | -2.0% |
| Other operating expenses | 922 | 747 | 175 | 23.4% |
| **Total operating expenses** | **7,793** | **8,252** | **(460)** | **-5.6%** |
| **Operating income/(loss)** | **917** | **236** | **681** | **288.5%** |
| **Other income/expense:** | | | | |
| Interest income | 1,086 | 916 | 170 | 18.6% |
| Interest expense | (206) | (244) | 39 | -15.8% |
| Other income/expense | 145 | 251 | (106) | -42.3% |
| **Total other income/expense** | **1,024** | **922** | **103** | **11.1%** |
| **Realized and unrealized gains from investments:** | | | | |
| Net realized losses on sales of investment transactions | - | - | - | 0.0% |
| Net change in unrealized gains/(losses) of investments | 477 | 10,093 | (9,616) | 95.3% |
| **Total realized and unrealized gains from investments** | **477** | **10,093** | **(9,616)** | **-95.3%** |
| **Net earnings/(losses) from equity method investees** | (21,273) | 6,393 | (27,666) | 432.8% |
| **Net income/(loss)** | **$ (18,854)** | **$ 17,644** | **$ (36,498)** | **206.9%** |
| **Profit margin** | **-216%** | **208%** | | |

| Other operating expenses detail | | | | |
|---|---|---|---|---|
| Rent expense | 258 | 196 | 61 | 31 2% |
| Fees and dues | 44 | 55 | (11) | -19 6% |
| Travel and entertainment | 137 | 201 | (63) | -31 6% |
| Insurance expense | 128 | 50 | 78 | 155 8% |
| Bad debt expense | - | - | - | 0 0% |
| Miscellaneous expenses | 354 | 245 | 110 | 44 9% |
| **Total other operating expenses** | **922** | **747** | **175** | **23.4%** |

Appx. 01349



**HCMLP Analytics**
*(in thousands)*

**Accounts Payable Aging Analysis**

| Vendor Type | | Current | | 30 Days | | 45 Days | | 90 Days | | 120 Days | | Greater Than 120 Days | | Grand Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Overhead | $ | 678 | $ | 45 | $ | 433 | $ | 86 | $ | - | $ | - | $ | 1,242 | 61% |
| Legal | | - | | - | | - | | - | | - | | 794 | | 794 | 39% |
| Grand Total | $ | 678 | $ | 45 | $ | 433 | $ | 86 | $ | - | $ | 794 | $ | 2,036 | 100% |
| **% Outstanding** | | **33%** | | **2%** | | **21%** | | **4%** | | **0%** | | **39%** | | | |

| Top 5 Legal Greater than 120 Days | | February 2018 | Top 5 Overhead Greater than 120 Days* | | February 2018 |
|---|---|---|---|---|---|
| ▮▮▮▮▮▮▮ | $ | 292 | N/A | | - |
| ▮▮▮▮▮ | | 200 | | | |
| ▮▮▮▮▮ | | 180 | | | |
| ▮▮▮ | | 112 | | | |
| ▮ | | 10 | | | |
| Total | $ | 794 | Total | $ | - |
| % Total of AP Outstanding | | 39% | % Total of AP Outstanding | | 0% |

**Fund Reimbursements**

| Funds | | 2/28/2018 | | 1/31/2018 | | 2/28/2017 | Year-Over-Year $ Change | % Change |
|---|---|---|---|---|---|---|---|---|
| US CLOs | $ | 851 | $ | 1,893 | $ | 633 | $ 217 | 34% |
| Hedge/Private Equity | | 611 | | 622 | | 497 | 114 | 23% |
| Separate Accounts | | 30 | | 30 | | 17 | 13 | 77% |
| Retail | | 194 | | 194 | | 557 | (363) | -65% |
| International/Portfolio Co | | 3,413 | | 3,668 | | 3,954 | (541) | -14% |
| Research Unallocated | | 759 | | 311 | | 888 | (129) | -15% |
| Unallocated | | 1,345 | | 1,297 | | 1,350 | - | 0% |
| Total | $ | 7,202 | $ | 8,015 | $ | 7,896 | $ (688) | -9% |

| | 1/31/2018 | Net Additions | Receipts | 2/28/2018 |
|---|---|---|---|---|
| Month to Month Change | $ 8,015 | $ 330 | $ (1,143) | $ 7,202 |

| | 2/28/2017 | 2/28/2018 | 2017 YTD | 2018 YTD |
|---|---|---|---|---|
| Fund Reimbursement Receipts | $ 1,620 | $ 1,143 | $ 2,225 | $ 2,256 |

| HCMLP Invoice Metrics | February 2018 | January 2018 |
|---|---|---|
| Invoices Processed: | 162 | 120 |
| $ Amount Processed: | $ 8,077 | $ 11,918 |
| # of Payments | 166 | 152 |
| $ Amount of Payments: | $ 8,558 | $ 13,302 |

**Self-Insurance Summary**

| Entity | Premium Balance |
|---|---|
| | 693 |
| | 370 |
| | 89 |
| | 9 |
| | (156) |
| | (154) |
| | (197) |
| | (392) |
| | (258) |
| Total over/(under) funded | $ 4 |

**Shared Services Receivables Summary**

| Entity | Balance |
|---|---|
| | 3,730 |
| | 367 |
| | 200 |
| | 40 |
| | 54 |
| | - |
| | - |
| Total | $ 4,391 |

Highland Capital Management, LP
Schedule of Investments
As of February 2018



| Fund | MV @ 1/31/2018 | Monthly Change in Unrealized Gain/(Loss) | Contributions, (Distributions) & Realized Gain/(Loss) | MV @ 2/28/2018 |
|---|---|---|---|---|
| | 5,660,653 | (29,409) | - | 5,631,244 |

Appx. 01351

**Historical Legal Summary through February 28, 2018**
**Includes only matters allocated to HCMLP**
**in thousands**

**HCMLP Legal by Matter**

**HCMLP Legal by Vendor**



| | | | | |
|---|---|---|---|---|
| Sub-Total Top 25 Matters | 3,469 | 3,513 | 8,039 | 512 |
| Sub-Total Other Matters | 31 | 1 | - | - |
| Total Matters | 3,500 | 3,514 | 8,039 | 512 |

| | | | | |
|---|---|---|---|---|
| Sub-Total Top 25 Vendors | 2,865 | 3,045 | 7,450 | 450 |
| Sub-Total Other Vendors | 635 | 469 | 589 | 61 |
| Total Vendors | 3,500 | 3,514 | 8,039 | 512 |

Sorted largest to smallest Matter by 2018 dollars invoiced

Sorted largest to smallest Vendor by cumulative dollars invoiced ('12 - YTD '18)

**Employee Expenses through February 28, 2018**
**Excludes all Dondero Reimbursements**
**HCMLP & Certain Affiliated Advisors**
**in thousands**

**Employee Expenses - Including Reimbursable**

| Company | 2015 | 2016 | 2017 | 2018 | 2018 Annualized |
|---|---|---|---|---|---|
| ▮ | $ 838 | $ 707 | $ 818 | $ 93 | $ 557 |
| ▮ | 2,447 | 1,860 | 1,041 | 85 | 509 |
| ▮ | 742 | 511 | 292 | 23 | 139 |
| ▮ | - | 57 | 141 | 18 | 108 |
| Total | $ 4,027 | $ 3,135 | $ 2,293 | $ 219 | $ 1,312 |

**Employee Expenses - Non-Reimbursable Only**

| Company | 2015 | 2016 | 2017 | 2018 | 2018 Annualized |
|---|---|---|---|---|---|
| HCMLP | $ 387 | $ 174 | $ 396 | $ 61 | $ 363 |
| HCFD | 2,219 | 933 | 543 | 39 | 231 |
| HCMFA | 450 | 380 | 256 | 18 | 110 |
| NPA | - | 16 | 61 | 9 | 55 |
| Total | $ 3,056 | $ 1,503 | $ 1,257 | $ 127 | $ 759 |

11

**EXHIBIT 76**

# PROMISSORY NOTE

$2,500,000                                                               August 1, 2018

FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1.    Interest Rate.  The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.95%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note.  Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2.    Payment of Principal and Interest.  The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3.    Prepayment Allowed; Renegotiation Discretionary.  Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note.  Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4.    Acceleration Upon Default.  Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof.  No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5.    Waiver.  Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6.    Attorneys' Fees.  If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**Exhibit 3**

**Appx. 01355**

7.     <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.     <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

JAMES DONDERO

2

Appx. 01356

# EXHIBIT 77

## PROMISSORY NOTE

$2,500,000                                                                          August 13, 2018

FOR VALUE RECEIVED, JAMES DONDERO ("*Maker*") promises to pay to the order of HIGHLAND CAPITAL MANAGEMENT LP ("*Payee*"), in legal and lawful tender of the United States of America, the principal sum of TWO MILLION, FIVE HUNDRED THOUSAND and 00/100 Dollars ($2,500,000.00), together with interest, on the terms set forth below (the "*Note*"). All sums hereunder are payable to Payee at 300 Crescent Court, Dallas, TX 75201, or such other address as Payee may specify to Maker in writing from time to time.

1. <u>Interest Rate</u>. The unpaid principal balance of this Note from time to time outstanding shall bear interest at a rate equal to the long-term "*applicable federal rate*" (2.95%) in effect on the date hereof for loans of such maturity as determined by Section 1274(d) of the Internal Revenue Code, per annum from the date hereof until maturity, compounded annually on the anniversary of the date of this Note. Interest shall be calculated at a daily rate equal to 1/365th (1/366 in a leap year) of the rate per annum, shall be charged and collected on the actual number of days elapsed, and shall be payable on demand of the Payee.

2. <u>Payment of Principal and Interest</u>. The accrued interest and principal of this Note shall be due and payable on demand of the Payee.

3. <u>Prepayment Allowed; Renegotiation Discretionary</u>. Maker may prepay in whole or in part the unpaid principal or accrued interest of this Note. Any payments on this Note shall be applied first to unpaid accrued interest hereon, and then to unpaid principal hereof.

4. <u>Acceleration Upon Default</u>. Failure to pay this Note or any installment hereunder as it becomes due shall, at the election of the holder hereof, without notice, demand, presentment, notice of intent to accelerate, notice of acceleration, or any other notice of any kind which are hereby waived, mature the principal of this Note and all interest then accrued, if any, and the same shall at once become due and payable and subject to those remedies of the holder hereof. No failure or delay on the part of Payee in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

5. <u>Waiver</u>. Maker hereby waives grace, demand, presentment for payment, notice of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices of any kind hereunder.

6. <u>Attorneys' Fees</u>. If this Note is not paid at maturity (whether by acceleration or otherwise) and is placed in the hands of an attorney for collection, or if it is collected through a bankruptcy court or any other court after maturity, the Maker shall pay, in addition to all other amounts owing hereunder, all actual expenses of collection, all court costs and reasonable attorneys' fees and expenses incurred by the holder hereof.

**Exhibit 4**

7.      <u>Limitation on Agreements</u>.  All agreements between Maker and Payee, whether now existing or hereafter arising, are hereby limited so that in no event shall the amount paid, or agreed to be paid to Payee for the use, forbearance, or detention of money or for the payment or performance of any covenant or obligation contained herein or in any other document evidencing, securing or pertaining to this Note, exceed the maximum interest rate allowed by law.   The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Payee and Maker in conflict herewith.

8.      <u>Governing Law</u>.  This Note and the rights and obligations of the parties hereunder shall be governed by the laws of the United States of America and by the laws of the State of Texas, and is performable in Dallas County, Texas.

**MAKER:**

_____
JAMES DONDERO

Appx. 01359

# EXHIBIT 78

Appx. 01360



# OPERATING RESULTS

**August 2018**

**Exhibit 5**

**Highland Capital Management, L.P.**
**Significant Items Impacting HCMLP's Balance Sheet**
**August 2018**

Operating Activities



Investments

Other
 - ($5.0M) partner loan

Appx. 01362

**Highland Capital Management, L.P.**
**Financial/Operational Highlights**
**August 2018 Close Package**
*(in millions)*

|  | 5/31/2018 | 6/30/2018 | 7/31/2018 | 8/31/2018 |
|---|---|---|---|---|
| **Cash** | $ 6.9 | $ 7.8 | $ 7.7 | $ 3.4 |
| **Operating Revenue** | $ 5.0 | $ 4.4 | $ 4.8 | $ 3.2 |
| **Operating Expenses** [1] | (4.8) | (4.9) | (4.4) | (3.9) |
| **Operating Income** | $ 0.2 | $ (0.5) | $ 0.4 | $ (0.7) |
| **Add back: Non-Recurring Items** [3] | $ 0.9 | $ 0.9 | $ 0.7 | $ - |
| **Adjusted Operating Income** | $ 1.1 | $ 0.4 | $ 1.1 | $ (0.7) |
| **Net Income/(Loss)** | $ (1.3) | $ (2.2) | $ 12.1 | $ 11.9 |

|  | MTD | YTD | LTM |
|---|---|---|---|
| **Operating Cash Flow** [2] | $ (5.9) | $ 3.5 | $ (8.2) |
| Interest Expense | (0.2) | (1.1) | (1.6) |
| **Adjusted Operating Cash Flow** | $ (6.1) | $ 2.4 | $ (9.8) |

| **Assets Under Management (billions)** | 5/31/2018 | 6/30/2018 | 7/31/2018 |
|---|---|---|---|
| CLO 1.0 | $ 1.4 | $ 1.4 | $ 1.4 |
| Sep. Accounts | 2.5 | 2.5 | 2.5 |
| Hedge/PE | 0.6 | 0.2 | 0.2 |
| **Sub-total** | $ 4.5 | $ 4.1 | $ 4.1 |

| **Headcount - including affiliates** | 5/31/2018 | 6/30/2018 | 7/31/2018 | 8/31/2018 |
|---|---|---|---|---|
| Front Office | 38 | 38 | 38 | 38 |
| Institutional Marketing and Client Service | 4 | 4 | 3 | 2 |
| Legal | 15 | 15 | 15 | 15 |
| Admin | 15 | 15 | 15 | 15 |
| Retail Operations (HCMLP) | 6 | 6 | 6 | 6 |
| Back Office | 34 | 35 | 35 | 35 |
| HCFD/NSI | 16 | 17 | 17 | 17 |
| HCMF Strategy/Marketing | 8 | 8 | 8 | 8 |
| Total | 136 | 138 | 137 | 136 |

**Notes:**

(1) Excludes deferred compensation MTM

(2) Operating Cash Flow = Operating Income + Dep. + Deferred Comp + Non-Cash Bonus Expense

(3) Receivables reserve

**HCMLP Rolling Fee Earning AUM Schedule**
*(in millions)*

| | 8/31/2017 | 9/30/2017 | 10/31/2017 | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 | 3/31/2018 | 4/30/2018 | 5/31/2018 | 6/30/2018 | 7/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 1 0 | $  2,063 | $  2,060 | $  2,072 | $  1,859 | $  1,827 | $  1,831 | $  1,579 | $  1,572 | $  1,575 | $  1,402 | $  1,390 | $  1,393 |
| Sep Accounts | 1,823 | 1,855 | 1,905 | 1,951 | 1,987 | 2,003 | 2,013 | 2,039 | 2,493 | 2,514 | 2,515 | 2,458 |
| Hedge/PE | 1,058 | 1,067 | 1,072 | 1,112 | 1,073 | 1,084 | 757 | 751 | 598 | 596 | 204 | 199 |
| Sub-total | $  4,945 | $  4,981 | $  5,049 | $  4,922 | $  4,887 | $  4,917 | $  4,349 | $  4,362 | $  4,665 | $  4,512 | $  4,108 | $  4,050 |
| CLO 2 0 | - | - | - | - | - | - | - | - | 2,250 | 2,174 | 2,164 | 2,161 |
| Grand Total | $  4,945 | $  4,981 | $  5,049 | $  4,922 | $  4,887 | $  4,917 | $  4,349 | $  4,362 | $  6,915 | $  6,686 | $  6,272 | $  6,211 |



**HCMLP Monthly Management Fees**
*(in thousands)*

| | 8/31/2017 | 9/30/2017 | 10/31/2017 | 11/30/2017 | 12/31/2017 | 1/31/2018 | 2/28/2018 | 3/31/2018 | 4/30/2018 | 5/31/2018 | 6/30/2018 | 7/31/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Intercompany Retail Advisors | $ - | $ - | $ - | $ - | $ 252 | $ 252 | $ 252 | $ 252 | $ 1,500 | $ 668 | $ 1,500 | $ 668 |
| Sep Accounts | 1,036 | 938 | 1,100 | 1,361 | 1,107 | 1,068 | 963 | 987 | 967 | 961 | 894 | 893 |
| CLO 1 0 | 802 | 1,082 | 768 | 871 | 818 | 713 | 713 | 837 | 589 | 585 | 643 | 473 |
| Hedge/PE Funds | 358 | 393 | 396 | 404 | 440 | 443 | 448 | 408 | 206 | 77 | 95 | 90 |
| Other | - | - | - | 9 | - | - | - | 87 | - | 43 | 22 | 65 |
| Sub-total | $ 2,196 | $ 2,413 | $ 2,265 | $ 2,644 | $ 2,617 | $ 2,476 | $ 2,375 | $ 2,571 | $ 3,262 | $ 2,334 | $ 3,154 | $ 2,189 |
| CLO 2 0* | 529 | 447 | 620 | 561 | 491 | 497 | 497 | 500 | 497 | 497 | 407 | - |
| Grand Total | 2,725 | 2,860 | 2,885 | 3,205 | 3,108 | 2,974 | 2,873 | 3,071 | 3,760 | 2,832 | 3,561 | 2,189 |



Highland Capital Management, LP

*CLO 2 0 fees are reserved against

Appx. 01365



**HIGHLAND CAPITAL MANAGEMENT, LP**

**Statement of Income**
**Twelve Months Ended August 2018**
**(in thousands)**

| | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | LTM | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue:** | | | | | | | | | | | | | | |
| Management fees | $ 2,725 | $ 2,860 | $ 2,885 | $ 3,205 | $ 3,108 | $ 2,974 | $ 2,873 | $ 3,071 | $ 3,760 | $ 2,832 | $ 3,561 | $ 2,189 | $ 36,041 | $ 24,366 |
| Shared services fees | 757 | 732 | 871 | 826 | 915 | 866 | 866 | 890 | 1,038 | 937 | 827 | 657 | 10,182 | 6,995 |
| Incentive fees | - | - | - | 10,043 | - | - | - | - | - | - | 18 | - | 10,061 | 18 |
| Other income | 562 | 234 | 586 | 912 | 215 | 596 | 339 | 482 | 304 | 653 | 458 | 348 | 5,689 | 3,395 |
| **Total operating revenue** | 4,043 | 3,827 | 4,342 | 14,987 | 4,237 | 4,436 | 4,079 | 4,442 | 5,102 | 4,440 | 4,846 | 3,193 | 61,973 | 34,774 |
| **Operating expenses:** | | | | | | | | | | | | | | |
| Compensation and benefits | 2,368 | 2,308 | 2,795 | 3,651 | 2,755 | 2,769 | 2,711 | 3,283 | 2,277 | 2,529 | 2,515 | 2,676 | 32,636 | 21,514 |
| Deferred compensation | 297 | 286 | 755 | 291 | 159 | 101 | 9 | 479 | 87 | 179 | 700 | 204 | 3,547 | 1,918 |
| Professional services | 472 | 1,031 | 649 | 18,821 | (15,051) | 314 | 606 | 344 | 814 | 608 | 408 | 342 | 9,358 | 1,819 |
| Investment research and consulting | 160 | 22 | 8 | 242 | 13 | 20 | 226 | 26 | 20 | 170 | 43 | 18 | 966 | 535 |
| Depreciation | 113 | 112 | 112 | 108 | 109 | 108 | 108 | 108 | 108 | 108 | 108 | 108 | 1,310 | 865 |
| Bad debt | - | - | - | 2,279 | - | - | 5 | 3,497 | 866 | 870 | 713 | - | 8,229 | 5,951 |
| Other operating expenses | 805 | 723 | 497 | 1,180 | 580 | 683 | 951 | 871 | 684 | 665 | 606 | 803 | 9,049 | 5,844 |
| **Total operating expenses** | 4,216 | 4,482 | 4,816 | 26,571 | (11,435) | 3,995 | 4,616 | 8,608 | 4,857 | 5,130 | 5,092 | 4,151 | 65,097 | 38,446 |
| **Operating income** | (172) | (655) | (474) | (11,585) | 15,672 | 441 | (537) | (4,166) | 245 | (690) | (246) | (957) | (3,124) | (3,672) |
| **Other income/expense:** | | | | | | | | | | | | | | |
| Interest and investment income, net | 532 | 574 | 937 | 839 | 612 | 473 | 524 | 886 | 554 | 462 | 978 | 529 | 7,899 | 5,018 |
| Interest expense | (136) | (141) | (134) | (145) | (143) | (65) | (131) | (140) | (151) | (141) | (152) | (156) | (1,634) | (1,078) |
| Other income/expense | 63 | 77 | 64 | 19,134 | (13,353) | 64 | 96 | 124 | 96 | 584 | 127 | 108 | 7,184 | 1,280 |
| **Total other income/expense** | 459 | 510 | 867 | 19,828 | (12,883) | 472 | 489 | 870 | 500 | 904 | 953 | 481 | 13,449 | 5,219 |
| **Realized and unrealized gain/(loss) from investments:** | | | | | | | | | | | | | | |
| Net realized gain/(loss) on sale of investment transactions | - | 22 | - | (1,196) | - | - | 3,961 | - | - | 351 | 89 | 48 | 3,276 | 4,450 |
| Net change in unrealized gain/(loss) of investments | 9,180 | (1,004) | 6,375 | (2,125) | 10,678 | (10,201) | (16,002) | 3,030 | (1,476) | (1,170) | 6,011 | 7,563 | 10,859 | (1,567) |
| **Total realized and unrealized gain/(loss) from investments** | 9,180 | (982) | 6,375 | (3,320) | 10,678 | (10,201) | (12,041) | 3,030 | (1,476) | (819) | 6,100 | 7,611 | 14,135 | 2,882 |
| **Earnings and losses from equity method investees** | | | | | | | | | | | | | | |
| ▉▉▉▉ | 333 | 12 | 200 | 329 | 926 | (210) | (821) | 726 | (617) | (91) | 223 | 122 | 1,130 | 257 |
| ▉▉▉▉ | (1,136) | (203) | 4,333 | 529 | (1,674) | (5,137) | (726) | (2,108) | 57 | (554) | 1,482 | 1,362 | (3,776) | (7,299) |
| ▉▉▉▉ | (2,300) | (419) | 8,353 | 1,019 | (3,731) | (11,446) | (199) | (5,483) | 138 | (1,348) | 3,601 | 3,311 | (8,505) | (15,157) |
| ▉▉▉▉ | 0 | 15 | - | 22 | - | - | - | - | - | - | - | - | 38 | - |
| ▉▉▉▉ | (14) | (18) | 11 | (18) | - | - | (126) | - | - | 88 | - | - | (77) | (38) |
| ▉▉▉▉ | - | - | 768 | (89) | - | - | - | - | (37) | - | - | - | 641 | (37) |
| ▉▉▉▉ | - | - | - | 75 | - | - | - | - | - | - | - | - | 75 | - |
| **Total earnings/(loss) from equity method investees** | (3,118) | (613) | 13,664 | 1,866 | (4,479) | (16,794) | (1,872) | (6,865) | (459) | (1,905) | 5,305 | 4,795 | (10,474) | (22,274) |
| **Net income** | 6,348 | (1,739) | 20,432 | 6,790 | 8,988 | (26,081) | (13,962) | (7,130) | (1,190) | (2,510) | 12,112 | 11,929 $ | 13,986 $ | (17,844) |
| **Profit margin** | 157% | -45% | 471% | 45% | 212% | -588% | -342% | -161% | -23% | -57% | 250% | 374% | 23% | -51% |
| **Operating Cash Flow Calculation:** | | | | | | | | | | | | | | |
| Operating income | (172) | (655) | (474) | (11,585) | 15,672 | 441 | (537) | (4,166) | 245 | (690) | (246) | (957) | (3,124) | 9,762 |
| Add  Depreciation expense | 113 | 112 | 112 | 108 | 109 | 108 | 108 | 108 | 108 | 108 | 108 | 108 | 1,310 | 865 |
| Adjustment  Deferred compensation | 297 | 286 | 755 | 291 | 159 | 101 | (581) | (2,381) | 87 | 125 | 700 | 204 | 43 | (1,586) |
| Bonus awards | (5,215) | 994 | 1,296 | 1,984 | 1,000 | 1,000 | (6,001) | 964 | 889 | 900 | 945 | (5,210) | (6,455) | (5,514) |
| **Operating Cash Flow** | (4,977) | 737 | 1,690 | (9,201) | 16,939 | 1,650 | (7,012) | (5,475) | 1,329 | 443 | 1,507 | (5,855) $ | (8,225) $ | 3,527 |
| Less  Interest expense | (136) | (141) | (134) | (145) | (143) | (65) | (131) | (140) | (151) | (141) | (152) | (156) | (1,634) | (1,078) |
| **Adjusted Operating Cash Flow** | (5,114) | 596 | 1,556 | (9,346) | 16,797 | 1,585 | (7,143) | (5,614) | 1,178 | 302 | 1,355 | (6,011) $ | (9,859) $ | 2,449 |
| Add cash bonus expense | 1,000 | 1,008 | 1,304 | 1,988 | 1,000 | 1,000 | 1,048 | 1,011 | 900 | 900 | 945 | 900 | 13,003 | 7,703 |
| Less cash bonuses paid | (6,215) | (14) | (8) | (4) | - | - | (7,049) | (48) | (11) | - | - | (6,110) | (19,458) | (13,217) |
| Non-cash bonus add-back | (5,215) | 994 | 1,296 | 1,984 | 1,000 | 1,000 | (6,001) | 964 | 889 | 900 | 945 | (5,210) | (6,455) | (5,514) |
| Add deferred compensation MTM | 297 | 286 | 755 | 291 | 159 | 101 | 9 | 479 | 87 | 179 | 700 | 204 | 3,547 | 1,918 |
| Less cash deferred awards paid | - | - | - | - | - | - | (590) | (2,860) | - | (54) | - | - | (3,504) | (3,504) |
| Non-cash deferred award add-back | 297 | 286 | 755 | 291 | 159 | 101 | (581) | (2,381) | 87 | 125 | 700 | 204 | 43 | (1,586) |



**Balance Sheet**
**August 2018 vs. July 2018**
**(in thousands)**

| | August 31, 2018 | July 31, 2018 | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 3,396 | $ 7,741 | $ (4,344) | -56.1% |
| Investments, at fair value | 265,622 | 257,648 | 7,974 | 3.1% |
| Equity method investees | 60,752 | 60,958 | (205) | -0.3% |
| Management and incentive fee receivable | 1,626 | 3,577 | (1,951) | -54.5% |
| Fixed assets, net | 4,927 | 5,035 | (108) | -2.2% |
| Due from affiliates | 179,404 | 173,894 | 5,510 | 3.2% |
| Other assets | 10,921 | 11,310 | (389) | -3.4% |
| **Total assets** | $ 526,648 | $ 520,162 | $ 6,487 | 1.25% |
| | | | | |
| **Liabilities and Partners' Capital** | | | | |
| Accounts payable | $ 1,355 | $ 2,688 | $ (1,333) | -49.6% |
| Due to brokers | 31,464 | 31,724 | (260) | -0.8% |
| Accrued expenses and other liabilities | 61,580 | 65,430 | (3,850) | -5.9% |
| | | | | |
| Partners' capital | 432,249 | 420,320 | 11,929 | 2.8% |
| **Total liabilities and partners' capital** | $ 526,648 | $ 520,162 | $ 6,487 | 1.25% |

**Partners' Capital Walk**

| | |
|---|---|
| Partners' capital at 7/31 | $ 420,320 |
| Net subscriptions/(redemptions) | - |
| Net income/(loss) | 11,929 |
| Partners' capital at 8/31 | $ 432,249 |



Income Statement
August 2018 YTD  vs. August 2017 YTD
(in thousands)

| | 2018 YTD | 2017 YTD | Increase/ (Decrease) $ | Increase/ (Decrease) % |
|---|---|---|---|---|
| **Revenue:** | | | | |
| Management fees | $ 24,366 | $ 25,288 | $ (922) | -3.6% |
| Shared services fees | 6,995 | 6,258 | 737 | 11.8% |
| Incentive fees | 18 | - | 18 | N/A |
| Other income | 3,395 | 3,381 | 14 | 0.4% |
| **Total operating revenue** | **34,774** | **34,927** | **(153)** | **-0.4%** |
| **Operating expenses:** | | | | |
| Salaries and overtime | 9,189 | 9,427 | (238) | -2.5% |
| Bonus | 7,703 | 8,216 | (513) | -6.2% |
| Other compensation and benefits | 4,623 | 4,547 | 76 | 1.7% |
| Deferred compensation | 1,918 | 1,372 | 546 | 39.8% |
| Professional services | 1,819 | 5,502 | (3,683) | -66.9% |
| Investment research and consulting | 535 | 669 | (134) | -20.1% |
| Marketing and advertising expense | 1,478 | 1,774 | (296) | -16.7% |
| Depreciation expense | 865 | 887 | (22) | -2.5% |
| Bad debt | 5,951 | - | 5,951 | 100.0% |
| Other operating expenses | 4,366 | 4,359 | 7 | 0.2% |
| **Total operating expenses** | **38,446** | **36,753** | **1,693** | **4.6%** |
| **Operating income/(loss)** | **(3,672)** | **(1,826)** | **(1,846)** | **101.1%** |
| **Other income/expense:** | | | | |
| Interest income | 5,018 | 4,167 | 851 | 20.4% |
| Interest expense | (1,078) | (1,113) | 35 | -3.1% |
| Other income/expense | 1,280 | 5,539 | (4,259) | -76.9% |
| **Total other income/expense** | **5,219** | **8,593** | **(3,374)** | **-39.3%** |
| **Realized and unrealized gains from investments:** | | | | |
| Net realized gains on sales of investment transactions | 4,450 | 7,666 | (3,216) | -42.0% |
| Net change in unrealized gains/(losses) of investments | (1,567) | 12,293 | (13,860) | 112.8% |
| **Total realized and unrealized gains from investments** | **2,882** | **19,959** | **(17,077)** | **-85.6%** |
| **Net earnings/(losses) from equity method investees** | **(22,274)** | **(6,081)** | **(16,193)** | **-266.3%** |
| **Net income/(loss)** | **$ (17,844)** | **$ 20,645** | **$ (38,489)** | **186.4%** |
| **Profit margin** | **-51%** | **59%** | | |

| Other operating expenses detail | | | | |
|---|---|---|---|---|
| Rent expense | 1,041 | 979 | 61 | 6 3% |
| Fees and dues | 166 | 211 | (45) | -21 2% |
| Travel and entertainment | 840 | 1,036 | (196) | -18 9% |
| Insurance expense | 496 | 431 | 64 | 15 0% |
| Miscellaneous expenses | 1,823 | 1,701 | 122 | 7 1% |
| **Total other operating expenses** | **4,366** | **4,359** | **7** | **0.2%** |

**Highland Capital Management, LP**
**Schedule of Investments**
**As of August 2018**



# EXHIBIT 79

Appx. 01370

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

December 3, 2020

James Dondero
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201

      Re:  Demand on Promissory Notes:

Dear Mr. Dondero,

You entered into the following promissory notes (collectively, the "<u>Notes</u>") in favor of Highland Capital Management, L.P. ("<u>Payee</u>"):

| Date Issued | Original Principal Amount | Outstanding Principal Amount (12/11/20) | Accrued But Unpaid Interest (12/11/20) | Total Amount Outstanding (12/11/20) |
|---|---|---|---|---|
| 2/2/18 | $3,825,000 | $3,687,269.71 | $21,003.70 | $3,708,273.41 |
| 8/1/18 | $2,500,000 | $2,619,929.42 | $27,950.70 | $2,647,880.12 |
| 8/13/18 | $2,500,000 | $2,622,425.61 | $25,433.94 | $2,647,859.55 |
| **TOTALS** | **$16,725,000** | **$8,929,624.74** | **$74,388.33** | **$9,004,013.07** |

As set forth in Section 2 of each of the Notes, accrued interest and principal is due and payable upon the demand of Payee.  By this letter, Payee is demanding payment of the accrued interest and principal due and payable on the Notes in the aggregate amount of $9,004,013.07, which represents all accrued and unpaid interest and principal through and including December 11, 2020.

**Payment is due on December 11, 2020, and failure to make payment in full on such date will constitute an event of default under the Notes.**

Payments on the Notes must be made in immediately available funds.  Payee's wire information is attached hereto as **Appendix A**.

Nothing contained herein constitutes a waiver of any rights or remedies of Payee under the Notes or otherwise and all such rights and remedies, whether at law, equity, contract, or otherwise, are expressly reserved.  Interest, including default interest if applicable, on the Notes will continue to accrue until the Notes are paid in full.  Any such interest will remain your obligation.

Sincerely,

/s/ James P. Seery, Jr.

James P. Seery, Jr.
Highland Capital Management, L.P.
Chief Executive Officer/Chief Restructuring Officer



Exhibit 6

Appx. 01371

cc:    Fred Caruso
       James Romey
       Jeffrey Pomerantz
       Ira Kharasch
       Gregory Demo
       D. Michael Lynn

Appx. 01372

## Appendix A

ABA #:            322070381
Bank Name:        East West Bank
Account Name:  Highland Capital Management, LP
Account #:        5500014686

**EXHIBIT 80**

Docket #0006  Date Filed: 3/16/2021

D. Michael Lynn – State Bar ID 12736500
John Y. Bonds, III – State Bar ID 02589100
John T. Wilson, IV – State Bar ID 24033344
Bryan C. Assink – State Bar ID 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 – Telephone
(817) 405-6902 – Facsimile

ATTORNEYS FOR DEFENDANT JAMES DONDERO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 19-34054-SGJ-11** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| **v.** | § | |
| | § | **Adversary No.: 21-03003** |
| **JAMES D. DONDERO,** | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT JAMES DONDERO'S ORIGINAL ANSWER

Defendant James Dondero ("Dondero" or "Defendant"), the defendant in the above-styled and numbered adversary proceeding (the "Adversary Proceeding") filed by Highland Capital Management, L.P. (the "Plaintiff"), hereby files this Original Answer (the "Answer") responding to the *Complaint for (I) Breach of Contract and (II) Turnover of Property of the Debtor's Estate* [Adv. Dkt. 1] (the "Complaint"). Where an allegation in the Complaint is not expressly admitted in this Answer, it is denied.



1934054210316000000000014
**Appx. 01375**

## PRELIMINARY STATEMENT

1.      The first sentence of paragraph 1 of the Complaint sets forth the Plaintiff's objective in bringing the Complaint and does not require a response. To the extent it contains factual allegations, they are denied. The second sentence contains a legal conclusion that does not require a response. To the extent it contains factual allegations, they are denied.

2.      Paragraph 2 contains a summary of the relief the Plaintiff seeks and does not require a response. To the extent it contains factual allegations, they are denied.

## JURISDICTION AND VENUE

3.      The Defendant admits that this Adversary Proceeding relates to the Plaintiff's bankruptcy case but denies any implication that this fact confers Constitutional authority on the Bankruptcy Court to adjudicate this dispute. Any allegations in paragraph 3 not expressly admitted are denied.

4.      The Defendant admits that the Court has statutory (but not Constitutional) jurisdiction to hear this Adversary Proceeding. Any allegations in paragraph 4 not expressly admitted are denied.

5.      The Defendant denies that a breach of contract claim is core.  The Defendant denies that a § 542(b) turnover proceeding is the appropriate mechanism to collect a contested debt. The Defendant admits that a § 542(b) turnover proceeding is statutorily core but denies that it is Constitutionally core under *Stern v. Marshall*.  The Defendant does not consent to the Bankruptcy Court entering final orders or judgment in this Adversary Proceeding. Any allegations in paragraph 5 not expressly admitted are denied.

6.      The Defendant admits paragraph 6 of the Complaint.

---

## THE PARTIES

7.      The Defendant admits paragraph 7 of the Complaint.

8.      The Defendant admits paragraph 8 of the Complaint.

## CASE BACKGROUND

9.      The Defendant admits paragraph 9 of the Complaint.

10.     The Defendant admits paragraph 10 of the Complaint.

11.     The Defendant admits paragraph 11 of the Complaint.

12.     The Defendant admits paragraph 12 of the Complaint.

## STATEMENT OF FACTS

13.     The Defendant admits that he has executed promissory notes under which the Debtor is the payee. Any allegations in paragraph 13 not expressly admitted are denied.

14.     The Defendant admits that he executed a note as alleged in the first sentence of paragraph 14 of the Complaint. Defendant admits that the attached document appears to be a copy of the referenced note.

15.     The Defendant admits that he executed a note as alleged in the first sentence of paragraph 15 of the Complaint. The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in the second sentence of paragraph 15 of the Complaint and therefore denies same.

16.     The Defendant admits that he executed a note as alleged in the first sentence of paragraph 16 of the Complaint. Defendant admits that the attached document appears to be a copy of the referenced note.

17.     The Defendant admits that section 2 of each note attached to the Complaint contains the provision quoted in paragraph 17 of the Complaint.

18.     The Defendant denies the allegations in paragraph 18 of the Complaint. It appears that the provisions of each Note differ. Accordingly, the allegations made in this paragraph are denied.

19.     The Defendant denies the allegations in paragraph 19 of the Complaint. It appears that the provisions of each Note differ. Accordingly, the allegations made in this paragraph are denied.

20.     In response to paragraph 20 of the Complaint, the Defendant admits that Exhibit 4 to the Complaint (the "Demand Letter") is a true and correct copy of what it purports to be and that the document speaks for itself. To the extent paragraph 20 of the Complaint asserts a legal conclusion, no response is required, and it is denied. To the extent not expressly admitted, paragraph 20 of the Complaint is denied.

21.     To the extent paragraph 21 of the Complaint asserts a legal conclusion, no response is necessary, and it is denied. The Defendant otherwise admits paragraph 21 of the Complaint.

22.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22 of the Complaint and therefore denies same.

23.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23 of the Complaint and therefore denies same.

24.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24 of the Complaint and therefore denies same.

25.     The Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25 of the Complaint and therefore denies same.

26.     The Defendant denies the allegations in paragraph 26 of the Complaint.

## FIRST CLAIM FOR RELIEF
### (For Breach of Contract)

27.     Paragraph 27 of the Complaint is a sentence of incorporation that does not require a response. All prior denials are incorporated herein by reference.

28.     Paragraph 28 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28 of the Complaint and therefore denies same.

29.     Paragraph 29 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 29 of the Complaint and therefore denies same.

30.     Paragraph 30 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 30 of the Complaint and therefore denies same.

31.     The Defendant denies paragraph 31 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (Turnover by Mr. Dondero Pursuant to 11 U.S.C. § 542(b))

32.     Paragraph 32 of the Complaint is a sentence of incorporation that does not require a response. All prior denials are incorporated herein by reference.

33.     Paragraph 33 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33 of the Complaint and therefore denies same.

34.     Paragraph 34 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 34 of the Complaint and therefore denies the same.

35.     The Defendant denies paragraph 35 of the Complaint.

36.     Paragraph 36 of the Complaint states a legal conclusion that does not require a response. The Defendant admits that the Plaintiff transmitted the Demand Letter, and that document speaks for itself.  To the extent paragraph 36 alleges other facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36 of the Complaint and therefore denies the same.

37.     The Defendant denies paragraph 37 of the Complaint.

38.     Paragraph 38 of the Complaint states a legal conclusion that does not require a response. To the extent it alleges facts, the Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38 of the Complaint and therefore denies the same.

39.     The Defendant denies that the Plaintiff is entitled to the relief requested in the prayer, including as to parts (i), (ii), and (iii).

## AFFIRMATIVE DEFENSES

40.     Defendant asserts that Plaintiff's claims should be barred because it was previously agreed by Plaintiff that Plaintiff would not collect on the Notes.

41.     Defendant further asserts that Plaintiff's claims are barred, in whole or in part, due to waiver.

42.     Defendant further asserts that Plaintiff's claims are barred, in whole or in part, due

to estoppel.

43.     Defendant further asserts that Plaintiff's claims may be barred, in whole or in part, due to failure of consideration.

## **JURY DEMAND**

44.     The Defendant demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure.

45.     The Defendant does <u>not</u> consent to the Bankruptcy Court conducting a jury trial and therefore demands a jury trial in the District Court.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully request that, following a trial on the merits, the Court enter a judgment that the Plaintiff take nothing on the Complaint and provide the Defendant such other relief to which he is entitled**.**

Dated: March 16, 2021                                  Respectfully submitted,

*/s/ Bryan C. Assink*
D. Michael Lynn – State Bar ID 12736500
John Y. Bonds, III – State Bar ID 02589100
John T. Wilson, IV – State Bar ID 24033344
Bryan C. Assink – State Bar ID 24089009
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
michael.lynn@bondsellis.com
john@bondsellis.com
john.wilson@bondsellis.com
bryan.assink@bondsellis.com

**ATTORNEYS FOR DEFENDANT**
**JAMES DONDERO**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on March 16, 2021, a true and correct copy of this document was served via the Court's CM/ECF system on counsel for the Plaintiff.

*/s/ Bryan C. Assink*
Bryan C. Assink

# EXHIBIT 81

John Y. Bonds, III
State Bar I.D. No. 02589100
Clay Taylor
State Bar I.D. No. 24033261
Bryan C. Assink
State Bar I.D. No. 24089009
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile

Deborah Deitsch-Perez
State Bar No. 24036072
Michael P. Aigen
State Bar No. 24012196
STINSON LLP
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
(214) 560-2201 telephone
(214) 560-2203 facsimile

ATTORNEYS FOR DEFENDANT JAMES DONDERO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 19-34054 |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | Chapter 11 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| Plaintiff. | § | |
| v. | § | Adversary No. 21-03003-sgj |
| | § | |
| **JAMES D. DONDERO,** | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES
## TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
## FIRST REQUEST FOR ADMISSIONS

TO:   Highland Capital Management, L.P., by and through its attorneys of record, Zachery Z. Annable, Hayward PLLC, 10501 N. Central Expy., Ste. 106, Dallas, Texas 75231.

Defendant James Dondero ("Defendant" or "Dondero") serves his Objections and Responses to Debtor Highland Capital Management, L.P.'s ("Debtor" or "Highland") First Request for Admissions ("Requests"), as follows:

**Exhibit 8**

DEFENDANT JAMES DONDERO'S OBJECTIONS AND RESPONSES TO HIGHLAND CAPITAL MANAGEMENT, L.P.'S
FIRST REQUEST FOR ADMISSIONS                                                                                          PAGE 1 OF 6
CORE/3522697.0002/166031884.1

Appx. 01384