PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

-and-

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy., Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff, | § | Case No. 3:21-cv-00881-X |
| | § | |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., et al., | § § § | (Consolidated with 3:21-cv-00880-X, 3:21-cv-01010-X, 3:21-cv-01378-X, 3:21-cv-01379-X) |
| Defendants. | § | |
| | § | |

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S REPLY TO OBJECTIONS TO MOTION TO DEEM THE DONDERO ENTITIES VEXATIOUS LITIGANTS AND FOR RELATED RELIEF**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....1

ADDITIONAL BACKGROUND ....3

A. Each Dondero Entity Is Controlled by or Acting in Concert with Dondero ....3

i. The Dondero Entities' Scheme Utilizes a Revolving Cast of Attorneys Serving Dondero's Interests ....3

ii. Dondero Controls Dugaboy, Get Good, Strand, NPA, HCMFA, HCMS, HCRE, and PCMG ....4

iii. Dondero Controls the Funds ....4

iv. Dondero Controls and Directs the DAF and CLOH ....5

v. Dondero Controls and Directs HMIT ....6

vi. Nancy Dondero Acts as Directed by Dondero ....7

B. The Dondero Entities Are Individually and Collectively Vexatious ....8

i. The Dondero Objection ....10

ii. The DAF Entities' Objection ....15

iii. HMIT's Objection ....16

iv. The Funds' Objection ....18

v. The Nancy Dondero Objection ....19

LEGAL ARGUMENT ....19

A. This Court Has Jurisdiction Over This Matter and the Dondero Entities ....19

i. Appeal of the Notes Litigation Does Not Deprive This Court of Jurisdiction ....20

ii. This Court Has Original Jurisdiction Over the Motion ....21

iii. This Court Has Jurisdiction Over Each Dondero Entity ....22

B. The Dondero Entities Are Vexatious Litigants ....23

i. The Dondero Entities Are Vexatious ....23

ii. The Requested Sanction Is Necessary and Appropriate ....23

1. **No Adequate Means Prevent the Dondero Entities' Harassment** ....23

2. **The Relief Requested Is Not Overbroad** ....24

CONCLUSION ....25

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Alliance Riggers & Constructors, Ltd. v. Restrepo*,
2015 U.S. Dist. LEXIS 29346 (W.D. Tex. Jan. 8, 2015) .......... 20

*Baum v. Blue Moon Ventures, LLC*,
513 F.3d 181 (5th Cir. 2008) .......... 23

*Ben. E. Keith Co. v. Dining All., Inc.*,
80 F.4th 695 (5th Cir. 2023) .......... 20

*Bowling v. Willis*,
2019 U.S. Dist. LEXIS 168602 (E.D. Tex. Aug. 9, 2019), *aff'd* 853 F. App'x 983 (5th Cir. 2021).......... 24

*Burch v. Freedom Mortg. Corp. (In re Burch)*,
835 Fed. Appx. 741 (5th Cir. 2021).......... 22

*Carrol v. Abide (In re Carroll)*,
850 F.3d 811 (5th Cir. 2017) .......... 19

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995).......... 22

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
2023 Bankr. LEXIS 1637 (Bankr. N.D. Tex. Jun. 25, 2023) .......... 12

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
643 B.R. 162 (N.D. Tex. 2022).......... 12

*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*,
2022 U.S. Dist. LEXIS 175778 (N.D. Tex. Sept. 28, 2022).......... 6, 8

*CLO Holdco, Ltd. v. Kirschner (In re Highland Cap. Mgmt., L.P.)*,
2023 U.S. Dist. LEXIS 88744 (N.D. Tex. May 22, 2023) .......... 15

*Cooter & Gell*,
496 U.S. 384 (1990).......... 21

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
2023 U.S. App. LEXIS 19671 (5th Cir. Jul. 31, 2023).......... 9

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023) .......... 9

*Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351 (N.D. Tex. Sept. 22, 2022) ........ 8

*Highland Cap. Mgmt. Fund Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
57 F.4th 494 (5th Cir. 2023) ........ 8, 9

*Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Fund Adv., L.P. (In re Highland Cap. Mgmt., L.P.)*,
2022 Bankr. LEXIS 1989 (Bankr. N.D. Tex. July 19, 2022) ........ 7, 8

*Hill v. Washburne*,
953 F.3d 296 (5th Cir. 2020) ........ 25

*In re Craig's Stores of Tex., Inc.*,
266 F.3d 388 (5th Cir. 2001) ........ 22

*In re Highland Cap. Mgmt., L.P.*,
2021 Bankr. LEXIS 2074 (Bankr. N.D. Tex. Aug. 3, 2021) ........ 6

*In re Highland Cap. Mgmt., L.P.*, 2023 Bankr. LEXIS 2104 (Bankr. N.D. Tex. Aug. 25, 2023) ........ passim

*Neutra, Ltd. v. Terry (In re Acis Cap. Mgmt., L.P.),*
604 B.R. 484 (N.D. Tex. 2019) ........ 20

*Newby v. Enron Corp.*,
302 F.3d 295 (5th Cir. 2002) ........ 23, 25

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
48 F.4th 419 (5th Cir. 2022) ........ 5, 8, 12, 24

*Procter & Gamble Co. v. Amway Corp.*,
280 F.3d 519 (5th Cir. 2002) ........ 20

*Ratliff v. Stewart*,
508 F.3d 225 (5th Cir. 2007) ........ 20, 21

*Ringgold-Lockhart v. Cnty. of L.A.*,
761 F.3d 1057 (9th Cir. 2014) ........ 20

*Rohe v. Wells Fargo Bank, N.A.*,
988 F.3d 1256 (11th Cir. 2021) ........ 21, 22

*Schum v. Fortress Value Recovery Fund I LLC*,
2019 U.S. Dist. LEXIS 226679 (N.D. Tex. Dec. 2, 2019), aff'd 805 F. App'x 319 (5th Cir. 2020) ........ 20

*Terry v. Charitable Donor Advised Fund, L.P.*,
2024 U.S. Dist. LEXIS 18009 (S.D.N.Y. Feb. 1, 2024) ........ 16

*Thomas v. Cap. Security Serv., Inc.*,
812 F.2d 984 (5th Cir. 1987) ........ 20

*U.S. v. N.Y. Tel. Co.*,
434 U.S. 159 (1977) ........ 22

*Williams v. McKeithern*,
939 F.2d 1100 (5th Cir. 1991) ........ 22

*Wood v. Wood (In re Wood)*,
825 F.2d 90 (5th Cir. 1987) ........ 22

**STATUTES**

11 U.S.C. § 105 ........ 19

11 U.S.C. § 1102 ........ 15

11 U.S.C. § 1103 ........ 15

28 U.S.C. § 1334 ........ 21

28 U.S.C. § 157 ........ 22

**OTHER AUTHORITIES**

1 SANC. FED LAW OF LIT. ABUSE § 17[B][3] ........ 20

20 MOORE'S FED. PRAC – CIVIL § 303.32[1] ........ 20

HCMLP,[1] by and through its undersigned counsel, files this reply in opposition[2] to the objections filed by (i) the Funds [D.I. 166] (the "Funds Objection"); (ii) DAF and CLOH [D.I. 167] (the "DAF Objection"); (iii) Nancy Dondero ("Nancy") [D.I. 168] (the "Nancy Objection"); (iv) Hunter Mountain Investment Trust ("HMIT") [D.I. 171] (the "HMIT Objection"); and (v) Dondero, HCMFA, NPA, Highland Capital Management Services, Inc. ("HCMS"), HCRE, Dugaboy, Strand Advisors, Inc. ("Strand"), and Get Good [D.I. 173] (the "Dondero Objection," and, collectively, the "Objections"). In furtherance thereof, HCMLP respectfully states as follows:

## PRELIMINARY STATEMENT

1. In their Objections, the Dondero Entities attempt to re-litigate settled matters; ignore or blatantly mischaracterize the record in the long-running HCMLP bankruptcy case; and erect a series of strawmen to deflect from their obvious pattern of irrational and harassing litigation brought solely to interfere with the execution of HCMLP's Plan and extract revenge. Read fairly, the Objections are further evidence of the Dondero Entities' vexatiousness and highlight the urgent need for additional protections.

2. Indeed, recent developments demonstrate that the Dondero Entities will never voluntarily curb their wasteful and bitter litigation crusade:

- In November, Dondero and Strand moved for leave to sue HCMLP's long-time bankruptcy counsel on the absurd theory that the firm owed ***them*** (not just HCMLP) fiduciary duties but were forced to withdraw the motion in the face of a robust response and threat of sanctions;

[1] Capitalized terms used but not defined herein have the meanings given to them below or in *Highland Capital Management, L.P.'s Memorandum of Law in Support of Its Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief* [D.I. 137] (the "Brief").

[2] HCMLP is concurrently filing its *Supplemental Appendix and Declaration of Gregory V. Demo in Further Support of Motion to Deem the Dondero Entities Vexatious Litigants and for Related Relief* (the "Declaration"). Citations to the Declaration are notated as "D.Ex. #, D.Appx. #." Citations to the Appendix [D.I. 138] are notated as "Ex. #, Appx. #").

- In December, following a full evidentiary hearing, the Royal Court of Guernsey dismissed claims brought by certain Dondero Entities alleging HCMLP colluded with HCLOF to unfairly prejudice them by settling with Acis and Terry rather than suing them and granted the defendants an award of attorneys' fees;

- In January, HMIT sought leave to commence an action in Delaware to remove HCMLP's Claimant Trustee—disregarding the governing documents and prior judicial determinations that HMIT's unvested, contingent, and subordinated interests in the Claimant Trust confer no substantive rights;

- In February, the U.S. District Court for the Southern District of New York recognized the Royal Court of Guernsey's judgment and dismissed with prejudice a series of related claims brought by the DAF Entities; and

- Just this week, the Dondero Entities pressed their efforts in the U.S. Court of Appeals for the Fifth Circuit to eviscerate the "Gatekeeper" (arguing, without irony, that the Gatekeeper was unnecessary because HCMLP could seek a vexatious finding) so they can sue HCMLP and its fiduciaries anywhere, without oversight or restraint.

Like virtually all of the motions, objections, claims, and actions that preceded them, the Dondero Entities' recent actions are meritless; are interfering with the implementation of the Plan; are wasting estate and judicial resources; and serve no legitimate purpose.[3] ***Nevertheless, the Dondero Entities disingenuously argue they are not vexatious but defiantly contend that, even if they are, this Court is powerless to stop them***. The Dondero Entities are wrong on both counts.

3. Based on prior judicial determinations and the substantial record, the Dondero Entities are indisputably acting in concert to derail HCMLP's Plan, harass its fiduciaries, and exact revenge by pursuing meritless claims based on fabricated or speculative allegations. ***Moreover, as the Fifth Circuit expressly noted in this case, authority exists to declare the Dondero Entities "vexatious" and curtail their abusive conduct***. Contrary to the Dondero Entities' assertions, (i) this Court has jurisdiction to deem each of them "vexatious" and (ii) the relief requested is entirely appropriate under the circumstances.

[3] In contrast, since February 2021, no other party has objected to, or taken issue with, any action taken by HCMLP.

4. For the reasons set forth in the Motion and below, HCMLP urges the Court to exercise its authority to deem each of the Dondero Entities "vexatious" and grant the relief requested. The alternative is to give judicial imprimatur to the Dondero Entities' wrongful conduct to the detriment of HCMLP, its Claimant Trust Beneficiaries, and the judiciary.

## ADDITIONAL BACKGROUND

### A. Each Dondero Entity Is Controlled by or Acting in Concert with Dondero

5. To distance themselves from their collective vexatious conduct, the Dondero Entities disclaim their affiliation with Dondero and argue that they are not individually vexatious. But as found by multiple court orders and by their own admissions, each Dondero Entity is controlled by or acting in concert with Dondero and, since August 2020, has participated in his scheme to impede the execution of HCMLP's confirmed Plan through harassing and vexatious litigation.

#### i. The Dondero Entities' Scheme Utilizes a Revolving Cast of Attorneys Serving Dondero's Interests

6. In December 2020, Dondero directed his long-time general counsel, Scott Ellington (who was then HCMLP's general counsel), to coordinate various law firms representing the Dondero Entities in litigation against HCMLP.[4] Consistent with Dondero's *modus operandi*, the Dondero Entities—pretending to be independent corporate entities with independent legal counsel—have acted in concert to harass HCMLP's estate.[5]

[4] D.Ex. 2, D.Appx. 17-19. HCMLP terminated Ellington and Isaac Leventon, HCMLP's Assistant General Counsel, in January 2021 after discovering their role in Dondero's conspiracy against the estate. Ellington and Leventon continue to work on behalf of Dondero and his interests through a new entity known as Highgate Consulting d/b/a Skyview.

[5] *See, e.g., In re Highland Cap. Mgmt., L.P.*, 2023 Bankr. LEXIS 2104, at *63 (Bankr. N.D. Tex. Aug. 25, 2023) ("Dondero's use of an entity over which he exerts influence and control to pursue his own agenda in the bankruptcy case is not new. Rather, this has been part of Dondero's *modus operandi* since the 'nasty breakup' between Dondero and Highland … whereby Dondero after not getting his way … continued to lob objections and create obstacles to Highland's implementation of the Plan through entities he owns and controls.").

7. The Dondero Entities' coordinated action is highlighted by the use of common legal counsel in litigation against HCMLP, depending on the circumstances:

| **Law Firm** | **Dondero Entity Represented** |
|---|---|
| K&L Gates, LLP | NPA, HCMFA, Funds |
| Crawford, Wishnew & Lang PLLC | Dondero, HCRE, HCMFA, Dugaboy, Get Good |
| Stinson, LLP | Dondero, Nancy, HCMS, HCRE, HCMFA, Dugaboy, HMIT, NPA |
| DLA Piper, LLP/Reichman Jorgensen Lehman & Feldberg LLP[6] | Dondero, Dugaboy, Get Good, Strand, SE Multifamily |
| Munsch Hardt Kopf & Harr, LLP | HCMFA, NPA, NSOF |
| Heller Draper & Horn, LLC | Dugaboy, Get Good |
| Baker & McKenzie LLP | Ellington, Leventon, Waterhouse, Patrick |
| Ross & Smith, PC | Ellington, Leventon, Waterhouse, CPCM |
| Parson McEntire McCleary PLLC | HMIT, CLOH, DAF |
| Sbaiti & Co. PLLC | DAF, CLOH, Dugaboy, Patrick, NSOF, Dondero |
| Kelly Hart Pitre | DAF, CLOH, Patrick |
| Hoge & Gameros, LLP | HCRE |

As set forth herein, the Dondero Entities and their law firms are an integral part of Dondero's conspiracy to harass HCMLP and derail the Plan.

### ii. Dondero Controls Dugaboy, Get Good, Strand, NPA, HCMFA, HCMS, HCRE, and PCMG

8. Dondero admits he controls (i) Strand; (ii) NPA; (iii) HCMFA; (iv) the Get Good Trust; (v) Dugaboy; (vi) HCRE; and (vii) PCMG.[7] Dondero controls HCMS through his 75% ownership stake and his position as President.[8]

### iii. Dondero Controls the Funds

9. While the Funds insist they are independent,[9] the Fifth Circuit has specifically affirmed the Bankruptcy Court's factual determination that Dondero controls them:[10]

> The bankruptcy court found that, despite their purported independence, the Funds are entities "owned and/or controlled by [Dondero]." The Funds ask the court to vacate

[6] Dondero's counsel at DLA Piper, Amy Ruhland, moved to Richman Jorgensen Lehman & Feldberg LLP in 2023.

[7] Dondero Obj. at 23-24. To the best of HCMLP's knowledge, this is the first time Dondero has admitted controlling Get Good and Dugaboy. In fact, Dondero relied on Dugaboy's alleged independence when concocting his fictitious defense to the repayment of his obligations to HCMLP. *See, e.g.*, D.I. 63 ¶¶ 11-13.

[8] D.Ex. 3, D.Appx. 20-43. HCMLP assumes Dondero inadvertently omitted HCMS from his list of controlled entities.

[9] Funds Obj. ¶15.

[10] Confirmation Order ¶ 18.

> the factual finding because it threatens the Funds' compliance with federal law and damages their reputations and values. According to the Funds, the characterization is unfair, as *they* are not litigious like Dondero and are completely independent from him. … Here, the bankruptcy court drew its factual finding from the testimony of Jason Post, the Advisors' chief compliance officer, and Dustin Norris, an executive vice president for the Funds and the Advisors. Post testified that the Funds have independent board members that run them. But the bankruptcy court found Post not credible because "he abruptly resigned" from Highland Capital at the same time as Dondero and is currently employed by Dondero. Norris testified that Dondero "owned and/or controlled" the Funds and Advisors. The bankruptcy court found Norris credible and relied on his testimony. The bankruptcy court also observed that none of the Funds' board members testified in the bankruptcy case and all "engaged with the Highland complex for many years." … [W]e leave the bankruptcy court's factual finding undisturbed.[11]

10. The Funds ignore *NexPoint* and argue *Lanotte* proves their independence. But *Lanotte* concerned just one Fund[12] and does not implicate *NexPoint* or this case. *Lanotte* simply found an unrelated plaintiff failed to prove the Retail Board lacked independence with respect to one specific derivative suit.[13] Under *NexPoint*, Dondero controls the Funds.[14]

### iv. Dondero Controls and Directs the DAF and CLOH

11. DAF and CLOH (together, the "DAF Entities") allege (i) CLOH is controlled by its directors (Mark Patrick and Paul Murphy); (ii) DAF is controlled by Patrick as the holder of its management shares; and (iii) neither "Dondero nor any of his affiliates … have a direct or indirect ability or right to control or direct" the DAF Entities.[15] The DAF Entities hide behind the corporate form and, like the Funds, ignore settled orders.

---

[11] *NexPoint Adv. L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 434-35 (5th Cir. 2022) (emphasis in original). NSOF's suit against Acis and Terry continues to impede HCLOF's wind down. Brief, n.13.

[12] *Lanotte v. Highland Cap. Mgmt. Fund Adv., L.P.*, 2023 U.S. App. LEXIS 7362, at *2 (5th Cir. Mar. 28, 2023). *Lanotte* was not published and is not precedent.

[13] *Id.*, at *7-8.

[14] *NexPoint*'s affirmance that Dondero controls the Funds is further supported by the Funds' SEC disclosures. Highland Global Allocation Fund (D.Ex. 4, D.Appx. 107-08, 111, 113); Highland Income Fund (D.Ex. 5, D.Appx. 185-86, 188-89, 192);NSOF (D.Ex. 6, D.Appx. 244, 250, 252, 284); and NexPoint Capital (D.Ex. 7, D.Appx. 362-414).

[15] DAF Obj. ¶¶ 6-8.

12. In particular, the Bankruptcy Court held Patrick—a long-time Dondero employee—abdicated responsibility for the DAF Entities to Dondero and initiated litigation as Dondero directed.[16] This Court affirmed, holding "ample evidence supports the bankruptcy court's factual findings," including:

- "Dondero has had a significant role in DAF for over a decade" and "DAF's assets come in part from Dondero and his 'family trusts.'"
- "Dondero 'was DAF's managing member until 2012,' and he remains 'DAF's informal investment advisor.'"
- Dondero appointed Grant Scott, his "long-time friend, college housemate, and best man at his wedding'" to replace him as managing member.
- Grant Scott resigned "due to 'disagreements with ... Dondero'" and was replaced by Patrick just before the DAF Entities sued HCMLP for misconduct.
- Despite having "no reason to believe HCMLP or Seery had done anything wrong," Patrick authorized the DAF Entities' lawsuit based solely on what Dondero told him.
- Patrick "abdicated responsibility to Mr. Dondero with regard to … executing the litigation strategy," and Dondero managed the DAF Entities' litigation against HCMLP.[17]

Dondero, the DAF Entities, and others appealed this Court's order; however, they did not appeal the factual findings regarding Dondero's control.[18] Those findings are final and binding.

**v. <u>Dondero Controls and Directs HMIT</u>**

13. Like DAF and CLOH, HMIT hides behind Patrick[19] while ignoring (i) the Bankruptcy Court's factual finding that Patrick administers HMIT at Dondero's direction and for his benefit[20] and (ii) the Dondero Entities' prior disclosures on the topic.[21]

---

[16] *In re Highland Cap. Mgmt., L.P.*, 2021 Bankr. LEXIS 2074, at *25-29 (Bankr. N.D. Tex. Aug. 3, 2021).

[17] *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778, at *18-21 (N.D. Tex. Sept. 28, 2022) (Starr, J.).

[18] Case No. 3:21-cv-01974-X, D.I. 53 (N.D. Tex. Nov. 7, 2022); Case No. 22-11036, D.I. 66 at 2 (5th Cir. Feb. 6, 2023).

[19] HMIT Obj. ¶¶ 7-8.

[20] *Highland*, 2023 Bankr. LEXIS 2104, at *59-65.

14. HMIT appealed the Bankruptcy Court's decision but cannot avoid Patrick's dispositive admissions, including, among other things, that: (i) HMIT has no employees or revenue and no assets except its unvested, contingent interest in HCMLP's Claimant Trust; (ii) HMIT is the obligor on a $60 million (plus) promissory note in favor of Dugaboy; (iii) HMIT can only satisfy its obligation to Dugaboy by recovering on its contingent interest in the Claimant Trust; (iv) Dugaboy is funding HMIT's suit against HCMLP; and (v) Patrick had no personal knowledge of any "facts" alleged in HMIT's proposed Complaint and relied solely on Dondero when he caused HMIT to seek leave to sue HCMLP and Seery.[22]

15. HMIT's disclosures about its corporate structure are also misleading.[23] The DAF—a Dondero Entity—controls HMIT through its ownership of Rand Advisors, LLC.[24]

**vi. <u>Nancy Dondero Acts as Directed by Dondero</u>**

16. Dondero's sister, Nancy, tries to minimize her involvement as Dugaboy's trustee, contending she is "the target, not the instigator, of the litigation process."[25] But Nancy voluntarily inserted herself into this litigation by joining her brother in fabricating a series of absurd defenses to HCMLP's attempts to collect on simple promissory notes.[26] The Bankruptcy Court found those defenses failed the "straight face" test and were so devoid of factual support that "***no reasonable jury could find that there was truly an 'oral agreement' to forgive these***

---

[21] *[Advisors'] Reply Brief*, Case No. 23-01534, D.I. 40, at 6 n.5 (5th Cir. Oct. 26, 2023) ("The [Advisors] and Hunter Mountain Investment Trust are both related to James Dondero so, while they are separate entities, they share an affiliation.")

[22] D.Ex. 8, D.Appx. 719-28. HMIT also owes HCMLP over $90 million on a defaulted promissory note.

[23] HMIT Obj. ¶¶ 7-8.

[24] D.Ex. 9, D.Appx. 831-33. Patrick testified he became HMIT's administrator "[t]hrough the acquisition of Rand Advisors." D.Ex. 8, D.Appx. 722. Rand Advisors is the investment adviser of Rand PE Fund I LP (D.Ex. 10, D.Appx. 840) (the sole member of HMIT's holding company) and, on information and belief, sole owner of its general partner.

[25] Nancy Obj. ¶ 4.

[26] *Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Fund Adv., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1989, at *41 (Bankr. N.D. Tex. July 19, 2022).

***loans*** …."[27] This Court affirmed the findings about Nancy in all respects.[28] But for her decision to conspire with her brother, Nancy would not be a party.[29]

17. Further, Dondero now admits he controls Dugaboy. Dugaboy can only act through its trustees. To control Dugaboy, Dondero therefore must control Dugaboy's trustees, *i.e.*, Nancy and Grant Scott.[30]

**B. The Dondero Entities Are Individually and Collectively Vexatious**

18. The Dondero Entities, directed and coordinated by Dondero, are individually and collectively vexatious and litigate to harass and threaten Dondero's enemies, including HCMLP and its fiduciaries.[31] The Dondero Entities' vexatious conduct is harming both HCMLP and the larger judicial system.[32] The facts speak for themselves:

- Other than the Dondero Entities, ***no*** party has filed litigation against, or objected to any action taken by, HCMLP since the Plan was confirmed in February 2021.
- The Dondero Entities filed 52 proofs of claim and then ***withdrew every one*** after forcing HCMLP to defend them.

---

[27] *Id.*, at *38-46. The Bankruptcy Court made other findings concerning Nancy. *Id.*, at *45-46 (finding Nancy was "simply not capable" of entering into any agreement with Dondero because of her lack of knowledge or understanding about HCMLP, its business, executive compensation, or any other matter pertinent to the alleged agreements).

[28] D.I. 143-148. This Court's order is currently on appeal. D.I. 153-158.

[29] At her deposition, Nancy effectively conceded her willing participation in Dondero's conspiracy, admitting she did not retain Dugaboy's counsel, did not know what legal work was done on Dugaboy's behalf, and had no basis to enter into the alleged "oral agreements" that supposedly bound HCMLP. D.Ex. 11, D.Appx. 870, 876-900.

[30] B.D.I. 2549 ¶ 6 ("Dugaboy has three (3) trustees …. Commonwealth Trust Company as Administrative Trustee, [Dondero] as Family Trustee and Grant Scott as Independent Trust. The current Family Trustee is [Nancy] ….").

[31] *See, e.g.*, Confirmation Order ¶ 77; *NexPoint*, 48 F.4th at 426, 432; *Highland Cap. Mgmt. Fund Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494, 498 (5th Cir. 2023); *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 172351, at *12 (N.D. Tex. Sept. 22, 2022); *Charitable DAF Fund L.P. v. Highland Cap. Mgmt., L.P.*, 2022 U.S. Dist. LEXIS 175778, at *3, 5-11, 18-21 (N.D. Tex. Sept. 28, 2022); *Highland Cap. Mgmt., L.P. v. Highland Cap. Mgmt. Fund Advisors, L.P. (In re Highland Cap. Mgmt., L.P.)*, 2022 Bankr. LEXIS 1989 at *40-41, 46-47, 59-60 (Bankr. N.D. Tex. Jul. 19, 2022); *see also* Brief ¶¶ 7-8, 14-30.

[32] D.Ex. 12, D.Appx. 988. ("[T]here are 13 published opinions from this Court [in HCMLP]. … And that's not even counting Reports and Recommendations …. there were something like 55 appeals. … ***this is not just about the parties …. This is about judicial efficiency. This is overwhelming to the system, so to speak.***") (emphasis added).

- ***No*** Dondero Entity has an allowed claim against the estate.[33]
- The Dondero Entities' ***only*** interests in HCMLP are HMIT's and Dugaboy's contingent, unvested, and subordinated interests in the Claimant Trust that will vest only if all senior claims, including indemnification claims, are paid in full.[34]
- Because of Dondero's litigation onslaught, significant amounts must be reserved to cover litigation costs and indemnification claims, yet Dondero refuses to exchange general and unconditional releases that would end all litigation as part of a global settlement.
- Dugaboy's contingent, unvested, and subordinated interest is so speculative and *de minimis* that the Fifth Circuit ***thrice*** denied Dugaboy standing to appeal.[35]
- Despite having no legally cognizable interest in the estate, since October 2019, the Dondero Entities have filed over 85 motions, 80 objections, caused the filing of 9 adversary proceedings, appealed over 20 Bankruptcy Court orders to this Court and over 15 orders to the Fifth Circuit, and filed actions against HCMLP with regulators.
- The Dondero Entities filed *a third* petition for writ of mandamus seeking to recuse Judge Jernigan, which Judge Scholer recently stated would be denied in a forthcoming order.
- The Dondero Entities continue to challenge the Gatekeeper with the evident intent to file more vexatious litigation in different forums and without limitation if they are successful.

An updated chart showing the litigation caused by the Dondero Entities since 2002, is attached as Exhibit 1 to the Declaration.[36]

19. The Dondero Entities' frivolous contention that they are not vexatious is based on material distortions or omissions of settled facts and court orders.

---

[33] Dondero alleges the Dondero Entities "represent many, and in some cases, the majority, of the investors in funds managed by HCMLP." Dondero Obj. at 1. HCMLP manages only two funds in which CLOH, Dugaboy, and HCMS have a minority interest: Highland Multi-Strategy Credit Fund, L.P. and Highland Restoration Capital, L.P.

[34] *Highland*, 2023 Bankr. LEXIS 2104, at *116-120; *see also Highland Cap. Mgmt. Fund Adv., L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494 (5th Cir. 2023) (approving creation of Highland Indemnity Sub-Trust and confirming indemnification claims were senior to other claims).

[35] *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 4839 (5th Cir. Feb. 28, 2023); *Dugaboy Inv. Tr. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. App. LEXIS 19671 (5th Cir. Jul. 31, 2023); *Highland*, 57 F.4th 494. The Fifth Circuit, consistent with its prior opinions, would presumably find HMIT's unvested interest too speculative to confer standing to appeal.

[36] *See Highland*, 2023 Bankr. LEXIS 2104, at *7-11 (providing an overview of Dondero's vexatious conduct); *see also* Brief ¶¶ 21-30.

### i. <u>The Dondero Objection</u>

20. Dondero admits he became frustrated in August 2020 when the Committee would not cave to his demands and that he thereafter embarked on a litigation crusade to "fix" the bankruptcy and protect "his company" from its court-appointed fiduciaries.[37] But that is exactly backwards. The Bankruptcy Court appointed independent fiduciaries to protect the estate from Dondero. Nevertheless, by his own admission, Dondero, acting alone and with no interest in HCMLP, will continue to litigate until he "saves" HCMLP (*i.e.*, regains control or burns it down).

21. To defend his indefensible conduct, Dondero attempts to re-litigate the (affirmed) factual findings in the Confirmation Order. His most egregious misstatements include:

| **Dondero Assertion** | **Confirmation Order** |
|---|---|
| HCMLP did not have a prepetition "culture of litigation" or history of litigiousness | "The Committee in this case has referred to the Debtor—under its former chief executive, Mr. Dondero—as a 'serial litigator.' The Bankruptcy Court agrees with that description." ¶ 8.<br>"Given the experiences in Acis and the Debtor's culture of constant litigation, it was not easy to get such highly qualified persons to serve as independent board members … Naturally, they were worried about getting sued no matter how defensible their efforts—given the litigation culture that enveloped Highland historically." ¶ 14.<br>"Based on the record of this case and the proceedings in the Acis chapter 11 case, it seemed as though everything always ended in litigation at Highland." ¶ 14<br>"[P]rior to the commencement of the Debtor's bankruptcy case, and while under the direction of Mr. Dondero, the Debtor had been involved in a myriad of litigation, some of which had gone on for years and, in some cases, over a decade." ¶ 77 |
| HCMLP only faced one litigation judgment prior to filing[38] | "[T]he Debtor filed for Chapter 11 protection due to a myriad of massive, unrelated, business litigation claims that it faced—many of which had finally become liquidated (or were about to become liquidated) after a decade or more of contentious litigation in multiple forums all over the world." ¶ 8.<br>"Substantially all the creditors in this case are either parties who were engaged in litigation with the Debtor, parties who represented the Debtor in connection with such litigation and had not been |

[37] *See, e.g.*, Dondero Obj. at 10 ("As he took a back seat, the Independent Board began acting in manner that Dondero perceived as harmful. The first blow came on August 12, 2020, when the Debtor filed its initial plan of reorganization and disclosed for the first time its intention to terminate substantially all employees by the end of 2020 and to liquidate and wind down HCMLP's businesses."); *Id.*, at 12 ("Having built HCMLP from the bottom up and managed a successful enterprise for 35 years, Dondero eventually was forced to take a more active role in the bankruptcy in an effort to salvage his company."); *Id.*, at 23 ("In short, Dondero and the entities affected have acted primarily to salvage the business enterprise that Dondero built.").

[38] Dondero argues the "one judgment" facing HCMLP could have been reduced to $75 million. His only support is an objection filed by UBS that was overruled. B.D.I. 1273 ¶ 3 ("The UBS Objection is overruled in its entirety.")

| | |
|---|---|
| | paid, or trade creditors who provided litigation-related services to the Debtor." ¶ 77. |
| Dondero voluntarily entered into the January 2020 settlement in a show of good faith | "[T]he Committee (and later, the United States Trustee) expressed its then-desire for the appointment of a chapter 11 trustee due to its concerns over and distrust of Mr. Dondero, his numerous conflicts of interest, and his history of alleged mismanagement (and perhaps worse)." ¶ 11<br>"[The January settlement] and the appointment of the independent directors changed the entire trajectory of the case and saved the Debtor from the appointment of a trustee." ¶ 13 |
| 99.8% of creditors supported the Plan because HCMLP misled them on solvency | "The Bankruptcy Court rejects the arguments of the [sic] Mr. Dondero and certain Dondero Related Entities that the changes made to certain assumptions and projections from the Liquidation Analysis … require resolicitation of the Plan. The Bankruptcy Court heard credible testimony from Mr. Seery regarding the changes to the Liquidation Analysis …. Such changes were entirely foreseeable …. The Bankruptcy Court therefore finds that holders of Claims and Equity Interests were not misled or prejudiced by the Amended Liquidation Analysis/Financial Projections …." ¶ 47. |
| Dondero's pre-confirmation litigation was filed in good faith | "[T]he bankruptcy court questions the good faith of Mr. Dondero' and the Dondero Related Entities' objections [to the Plan]. In fact, the Bankruptcy Court has good reason to believe that these parties are not objecting to protect economic interests they have in the Debtor but to be disruptors." ¶ 17.<br>"The Bankruptcy Court questions [the Dondero Entities'] good faith. Specifically, the Bankruptcy Court considers them all to be marching pursuant to the orders of Mr. Dondero. … The Bankruptcy Court merely mentions this … as one of many reasons that the Bankruptcy Court has to question the good faith of Mr. Dondero and his affiliates in raising objections to confirmation of the Plan." ¶ 19.<br>"During the last several months, Mr. Dondero and the Dondero Related Entities have harassed the Debtor, which has resulted in further substantial, costly, and time-consuming litigation …." ¶ 77.<br>"The Bankruptcy Court finds that the Dondero Post-Petition Litigation was a result of Mr. Dondero failing to obtain creditor support for his plan proposal and consistent with his comments … that if Mr. Dondero's plan proposal was not accepted, he would 'burn down the place.'" ¶ 78.<br>"[T]he Gatekeeper Provision is necessary and appropriate in light of the history of the continued litigiousness of Mr. Dondero and his related entities in this Chapter 11 Case …." ¶ 79. |

22. Dondero seeks to justify the Dondero Entities' post-confirmation conduct but, again, ignores or distorts the facts:[39]

23. PSZJ Complaint. In December 2023, Dondero and Strand moved to sue HCMLP's counsel, Pachulski Stang Ziehl & Jones LLP ("PSZJ"), alleging for the first time that PSZJ had represented them since 2019 and violated its fiduciary duties by simultaneously

[39] In addition to the below, the Dondero Entities also misstate the claims regarding NexPoint Hospitality Trust ("NHT"). HCMLP holds units in NHT, a Dondero-managed REIT traded on the TSX Venture Exchange ("TSXV"). From 2020 to 2022, NHT issued over $82 million of dilutive convertible notes to Dondero affiliates. While the notes were being issued, the value of each NHT unit dropped from approximately $2.75 to $1.50 (last traded at $.01). The TSXV requested NHT amend $56 million of those notes to fix violations of TSXV policy, and, in June 2023, NHT announced a unitholder vote to amend the notes. NHT provided deficient disclosure on the proposed amendments, and HCMLP filed a motion with the Ontario Securities Commission seeking additional proper disclosure. Just before trial, NHT corrected its faulty disclosures; HCMLP thus withdrew its motion. HCMLP has not filed a complaint. *See* D.Ex. 17-23, D.Appx. 1320-2152.

representing HCMLP in matters adverse to them.[40] PSZJ replied[41] and threatened to seek sanctions if the motion was not withdrawn.[42] Dondero and Strand withdrew the motion *without prejudice* and with the evident intent to re-file it.[43]

24. Appeals. The Dondero Entities filed over 35 total appeals. Only two were partially affirmed. They were not, however, "wins."[44]

25. HCRE/Bad Faith. Dondero caused HCRE to file a baseless claim seeking to divest HCMLP of its interest in a valuable asset. After taking HCMLP's depositions but before subjecting its own witnesses to questioning, HCRE abruptly attempted to withdraw the claim and preserve it for future litigation. Concerned, the Bankruptcy Court denied HCRE's motion to withdraw.[45]

26. Sentinel. In early 2021, HCMLP discovered Dondero had caused the HCMLP-controlled defendants in the UBS action to secretly transfer more than $300 million in face amount of assets to Sentinel Reinsurance Ltd. (a Cayman Island company owned by Dondero and Ellington) to make them judgment proof. Dondero and his loyalists hid the transfer from the

---

[40] B.D.I. 3981.

[41] B.D.I. 3997.

[42] D.Ex. 13, D.Appx. 1032-81; D.Ex. 14, D.Appx. 1083.

[43] B.D.I. 4015.

[44] *See generally NexPoint*, 48 F.4th 419 (rejecting the Dondero Entities' "blunderbuss" appeal in all respects other than to limit the parties exculpated by the Plan); *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 643 B.R. 162 (N.D. Tex. 2022) (affirming all factual findings and remanding solely to determine if CLOH's concession that HCMLP did not breach a particular contract was "inadvertent" for purposes of judicial estoppel (on remand, the Bankruptcy Court found it was not and granted HCMLP's motion to dismiss on that ground, among others (*Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 2023 Bankr. LEXIS 1637, at *31-39 (Bankr. N.D. Tex. Jun. 25, 2023)).

[45] B.D.I. 3525; *see also* B.D.I. 3766 at 10, n.36 ("The court entered its order denying HCRE's motion to withdraw its Proof of Claim only after HCRE was not willing to agree, at the hearing, to language in an order allowing it to withdraw its Proof of Claim stating, unequivocally, that HCRE waived the right to relitigate or challenge the issue of HCMLP's 46.06% ownership interest in SE Multifamily. … [T]he court noted its concerns regarding the integrity of the bankruptcy system and claims process if it allowed HCRE to withdraw its Proof of Claim after two and a half years of litigation, causing the Debtor to spend hundreds of thousands of dollars litigating its Objection to a proof of claim.") HCMLP's motion for a bad faith finding and for an award of attorneys' fees arising from HCRE's filing and pursuit of a baseless proof of claim is *sub judice*. B.D.I. 3851, 3995, 4023, 4026.

Independent Directors, HCMLP, UBS, and the Bankruptcy Court. After its disclosure, UBS enjoined HCMLP from transferring additional assets to Sentinel and subsequently recovered a material amount of the fraudulent transferred assets through subsequent litigation.[46] Despite his fraud (so serious the Bankruptcy Court considered a criminal referral),[47] Dondero bizarrely cites Sentinel as support for his contention that HCMLP is the litigious party.

27. Solvency: Dondero argues—with no evidence or support—the estate has always been solvent and HCMLP hid its solvency to disenfranchise Dondero.[48] Despite his best efforts, ***no*** court or governmental agency, including the U.S. Trustee, has accepted Dondero's arguments regarding the 2015.3 reports or lack of transparency.[49] The Bankruptcy Court recently rejected HMIT's argument that HCMLP's balance sheet proved its solvency.[50] And, importantly, no ***actual*** HCMLP creditor or Claimant Trust Beneficiary has raised concerns about HCMLP's disclosures or management (or any concerns for that matter).

28. Select Debtors. HCMLP caused the Select Debtors to file for bankruptcy and moved to consolidate their cases before Judge Jernigan as related cases. HCMLP and Dugaboy were the only meaningful creditors.[51] HCMLP offered to resolve the bankruptcies on terms objectively favorable to Dugaboy, but Dugaboy refused.[52] Instead, Dugaboy objected to consolidation alleging Judge Jernigan was "biased" and stating that, if consolidated, Dugaboy

[46] No contractual agreement governed the relief granted in the adversary proceeding, and Dondero cites to none.

[47] D.Ex. 15, D.Appx. 1213-16.

[48] Despite objecting to the Plan, the Dondero Entities never challenged the Plan's financial projections despite (i) Dondero intimately knowing HCMLP's assets (he purchased them) and (ii) HCMLP's extensive disclosures of its assets and finances as required by applicable rules that were prepared and signed by Frank Waterhouse—an officer of both HCMLP and numerous other Dondero Entities, including the Advisors and Funds.

[49] Brief at 15, 21, 25, n.56, n.90.

[50] B.D.I. 3936; *see also* ¶ 37 *infra*.

[51] HCMLP disputes the validity and amount of Dugaboy's claim and reserves all rights in that regard.

[52] Prior to the hearing, HCMLP offered to waive its claim against the Select Debtors if Dugaboy confirmed it had no claims against HCMLP related to the Select Debtors. HCMLP's request was non-controversial; Dugaboy had previously withdrawn its claim relating to HCMLP's alleged mismanagement of the Select Debtors. B.D.I. 2966.

would file another recusal motion. After HCMLP successfully struck Dugaboy's "expert" opinion in support of Judge Jernigan's recusal,[53] it responsibly withdrew its consolidation motions after Dugaboy confirmed it would comply with the Plan, including the Gatekeeper, and not attempt to litigate actions properly before Judge Jernigan in the Select Debtors' bankruptcy cases.[54] After causing havoc, Dugaboy recently agreed in principle to resolve the Select Debtors' cases on the terms previously offered by HCMLP.

29. Contempt Appeal. The Dondero Entities appealed the order holding DAF, CLOH, Dondero, and others in contempt for violating the Gatekeeper. The Dondero Entities ignore the prior orders and instead cite some out-of-context questions from the Fifth Circuit.[55]

30. Ellington Contempt. Ellington sued Daugherty for stalking in state court.[56] Like the 202 petitions, Ellington used his action as a pretext to pursue claims against HCMLP and Seery[57] in violation of the Gatekeeper.[58] To resolve the matter, HCMLP asked Ellington to agree he would not pursue claims in violation of the Gatekeeper. Ellington refused. With no choice, HCMLP sought a contempt finding.[59] After opening statements, the Bankruptcy Court asked Ellington's counsel why he refused to agree he was not improperly using the lawsuit to pursue claims against Seery. With no good answer, Ellington finally agreed not to pursue any claims based on discovery provided in the stalking action, and HCMLP, accordingly, agreed to

---

[53] Case No. 23-31037-swe7, D.I. 57 (Bankr. N.D. Tex. Oct. 20, 2023).

[54] Case No. 23-31039-mvl7, D.I. 56 (Bankr. N.D. Tex. Oct. 24, 2023); Case No. 23-31037-swe7, D.I. 60 (Bankr. N.D. Tex. Oct. 25, 2023).

[55] Dondero Obj. at 18-19.

[56] B.D.I. 3912, Exhibit 2.

[57] B.D.I. 3910 ¶¶ 22-35; 3969 ¶¶ 12-15.

[58] Ellington willfully violated the gatekeeper when he commenced a contempt action in New Jersey against John Dubel, an Independent Director, for allegedly failing to comply with Ellington's discovery demands without seeking leave of the Bankruptcy Court. B.D.I. 3914-7, 3914-8.

[59] B.D.I. 3910.

withdraw its motion.[60] After settlement, the Bankruptcy Court dismissed the action.[61] Dondero's assertion that HCMLP "abruptly" withdrew its motion "without any contempt findings"[62] is false.[63]

**ii. <u>The DAF Entities' Objection</u>**

31. To deflect from their own vexatious litigation tactics, the DAF Entities project their own conduct onto HCMLP,[64] citing two supposed examples of HCMLP's vexatiousness.[65]

32. <u>Committee Action</u>. The DAF Entities cite actions taken by the Committee to prevent the release of funds from the Court registry. The Committee is a U.S. Trustee-appointed statutory fiduciary independent of HCMLP;[66] its actions were not controlled by, or coordinated with, HCMLP,[67] and its actions are irrelevant.

33. <u>Kirschner Adversary</u>. The Plan created a litigation sub-trust and appointed Marc Kirschner to prosecute the estate's claims. In the Kirschner Adversary, the Dondero Entities filed numerous motions to withdraw the reference and to dismiss; *served more than 40 third-party subpoenas*, and moved yet again to recuse Judge Jernigan. Tellingly, while driving up estate costs, the Dondero Parties ***never*** produced a single document in discovery (in contrast, Kirschner produced over 7 million pages of documents) and ***never*** sought a stay of this proceeding. Rather,

[60] D.Ex. 16, D.Appx. 1312-14.

[61] B.D.I. 3991.

[62] Dondero Obj. at 19.

[63] Dugaboy's motion to image Seery's cell phone arose from discovery Seery provided in the Ellington action. Dondero Obj. at 15-16. Notwithstanding Dugaboy's allegations, Seery, unlike the Dondero Entities, has represented that all of his text messages have been preserved.

[64] DAF and CLOH's vexatious conduct is discussed at length in the Brief and the chart at D.Ex. 1.

[65] CLOH attempts to justify its proposed amendment of its claim related to the Crusader Fund. The Bankruptcy Court denied the motion to amend, finding, *inter alia*, CLOH's argument was based on a "frivolous theory." Judge Boyle affirmed. *CLO Holdco, Ltd. v. Kirschner (In re Highland Cap. Mgmt., L.P.)*, 2023 U.S. Dist. LEXIS 88744, at *17 (N.D. Tex. May 22, 2023) ("The record supports the bankruptcy court's finding."). CLOH appealed.

[66] 11 U.S.C. § 1102(a)(1); 11 U.S.C. § 1103.

[67] CLOH's factual description of the action is false. At the hearing on this matter, ***CLOH*** proposed depositing the funds into the registry (D.Ex. 24, D.Appx. 2196-98); the Bankruptcy Court adopted CLOH's proposal with the Committee's consent. Less than a month later, CLOH sought the release of the money. B.D.I. 590. Understandably, the Committee opposed CLOH's motion. B.D.I. 624.

Kirschner was the responsible party who sought and obtained a stay. Under the circumstances, the Dondero Entities' complaints ring hollow.

34. Finally, the DAF Entities contend they are not vexatious because they are now supposedly complying with the Gatekeeper after having been held in contempt for violating it. While CLOH did seek leave to sue HCLOF in Guernsey,[68] that suit is also vexatious. It was premised on, *inter alia*, HCLOF's directors and HCMLP allegedly colluding to unfairly prejudice CLOH by settling with Terry and Acis instead of suing them. In a lengthy opinion, the Royal Court of Guernsey criticized CLOH, dismissed the action, and required CLOH to pay HCLOF's legal fees and costs.[69] The Guernsey opinion is not subject to appeal.[70]

**iii. <u>HMIT's Objection</u>**

35. HMIT seeks to minimize its conduct by falsely alleging it never sought damages from HCMLP. At Dondero's direction,[71] HMIT filed a Rule 202 petition in Texas state court that was nearly identical to the petition Dondero filed and that sought information to be used to sue Seery for alleged insider trading and breach of fiduciary duty. After its Rule 202 petition was denied,[72] HMIT moved for leave to sue Seery in the Bankruptcy Court (the "<u>Motion for Leave</u>")[73] alleging the same "conspiracy theories" espoused in HMIT and Dondero's Rule 202

---

[68] Ex. 77, Appx. 2262-94. The Gatekeeper does not protect HCLOF. Accordingly, the Bankruptcy Court was not asked to determine whether CLOH's claim against HCLOF was "colorable."

[69] *See, e.g.,* D.Ex. 25, D.Appx. 2311 ("CLOH's submission that this amounted to unfairly prejudicial conduct … really does simply come down to the fact that it is conduct with which it … does not agree."); *Id.*, D.Appx. 2314 ("CLOH's arguments …show, once again, that any prejudice … is in reality prejudice to its interests as a litigating party, or as an affiliate of the Dondero group of entities, rather than as a member of HCLOF. Furthermore, its complaints … are really complaints about management decisions taken by the Directors, decisions which it is not entitled to control but with which it disagrees, in its own particular interests.")

[70] The Dondero Entities asserted claims against HCLOF in New York that largely duplicated the Guernsey claims. Case No. 1:21-cv-11059-GHW, D.I. 77 (S.D.N.Y. Mar. 30, 2023). The New York action was dismissed with prejudice. *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 U.S. Dist. LEXIS 18009 (S.D.N.Y. Feb. 1, 2024).

[71] *See, e.g., Highland*, 2023 Bankr. LEXIS 2104, at *62-63.

[72] Ex. 72, Appx. 2200.

[73] B.D.I. 3699, 3760.

petitions and the Dondero Entities' libelous letters to the U.S. Trustee.[74] In the Motion for Leave, HMIT asserted direct,[75] derivative, and double-derivative claims against HCMLP, Seery, Farallon, and Stonehill based on its false allegations that Seery provided inside information to Farallon and Stonehill to induce them to purchase claims against HCMLP in exchange for rubberstamping Seery's compensation.

36. On August 25, 2023, the Bankruptcy Court denied the Motion for Leave, finding HMIT's allegations "unsubstantiated," "conclusory," "pure speculation," and entirely lacking legal and factual support[76] and finding, *inter alia*, HMIT lacked standing because it was not a beneficiary (*i.e.*, a "Claimant Trust Beneficiary").[77] After roundly criticizing HMIT and Dondero, the Bankruptcy Court found the Motion for Leave "was without merit, and appear[s] to be motivated by the improper purposes of vexatiousness and harassment."[78]

37. Undeterred, on September 8, 2023, HMIT filed a motion for reconsideration alleging HCMLP's adjusted *pro forma* balance sheet filed in aid of mediation[79] proved HCMLP was solvent and that HMIT should therefore be deemed a "Claimant Trust Beneficiary" with standing to sue HCMLP and Seery (notwithstanding the language of the Claimant Trust

[74] *Highland*, 2023 Bankr. LEXIS 2104, at *9-10; Brief at 24-25.

[75] Notwithstanding its allegations, HMIT asserted direct claims against HCMLP. B.D.I. 3699 ¶ 10; *Id.* ¶ 67; B.D.I. 3760-1 ¶ 24; *Appellant Brief Filed by Hunter Mountain Investment Trust*, Case No. 3:23-cv-02071-E, D.I. 29 at 33-34 (N.D. Tex. Jan. 22, 2024) (arguing HMIT's direct claims improperly dismissed).

[76] *Highland*, 2023 Bankr. LEXIS 2104, at *136-148.

[77] *Id.* at *112-20.

[78] The Bankruptcy Court found HMIT's claims were not "colorable" and could not satisfy "even the less stringent 'plausibility' standard under Rule 12(b)(6)." *Id.*, at *137.

[79] B.D.I. 3872.

Agreement and the Plan).[80] On October 4, 2023, the Bankruptcy Court denied HMIT's request finding that HMIT had completely misread and misinterpreted the balance sheet.[81]

38. Since October, HMIT has continued to allege it is a "Claimant Trust Beneficiary."

- December 29, 2023: In response to a motion to dismiss their complaint seeking disclosure of information about Claimant Trust assets, HMIT and Dugaboy alleged they were entitled to information as "beneficiaries" of the Claimant Trust.[82]
- January 1, 2024: HMIT moved for leave to petition to remove Seery as Claimant Trustee based on its alleged status as a Claimant Trust "beneficiary" (the "Motion to Remove").[83]
- January 23, 2024: HMIT opposed HCMLP's request to stay the Motion to Remove pending final resolution of HMIT's status as a "Claimant Trust Beneficiary," arguing the Bankruptcy Court should ignore the unambiguous terms of the Claimant Trust Agreement and somehow—once again—deem it a "Claimant Trust Beneficiary" and afford it standing.
- January 24, 2024: The Bankruptcy Court granted the stay finding judicial efficiency precluded ruling on HMIT's status as a Claimant Trust Beneficiary ***for a third time***.[84]

As found by the Bankruptcy Court, that Dondero controlled HMIT and HMIT, at Dondero's behest, was pursuing vexatious litigation. HMIT's wrongful conduct continues unabated.

**iv. The Funds' Objection**

39. The Funds argue they "have [no] appetite to litigate, let alone [to] become embroiled in" this action; are not vexatious because they are "not currently prosecuting any

---

[80] B.D.I. 3905.

[81] B.D.I. 3936 ("[E]ven if this court were to consider the 'post-hearing financial disclosure filings,' the court disagrees with HMIT's central argument that they demonstrate that HMIT's contingent interest is "in the money" and, thus, that it has both constitutional and prudential standing to pursue the adversary proceeding it wants to file. Notably, HMIT does not give proper attention to the voluminous supplemental notes in the 'post-hearing financial disclosure filings' that are integral to understanding the numbers therein.")

[82] Adv. Proc. No. 23-03038-sgj, D.I. 17 (Bankr. N.D. Tex. Dec. 29, 2023).

[83] B.D.I. 4000 at 15 ¶ 29. The Motion to Remove also sought to re-litigate the creation of the Highland Indemnity Sub-Trust (an action affirmed by the Fifth Circuit (57 F.4th 494 (5th Cir. 2023)) and the findings on solvency.

[84] B.D.I. 4033; D.Ex. 12, D.Appx. 986-87 ("But I don't know why anyone would reasonably think I would go down this trail a third time for the same party. … I went down it *ad nauseam* August 25, 2023. It sounds like I'm going to go down it *ad nauseam* again February 14th and thereafter, as I decide what to do. … [T]here is no way any responsible court would go forward a third time considering Hunter Mountain's standing … as a Claimant Trust beneficiary.")

litigation against HCMLP";[85] and their prior actions were in good faith. The Funds ignore final and settled facts: (i) the Funds have ***no*** claims against, and have ***never*** been in contractual privity with, HCMLP; (ii) the Bankruptcy Court found the Funds' previous litigation was in bad faith;[86] and (iii) the Funds sought to ***overturn*** the Gatekeeper while alleging significant claims arising from HCMLP's alleged mismanagement of Fund investments.[87] Notably, HCMLP offered to exchange mutual releases and leave the Funds out of the Motion, but the Funds declined. HCMLP's offer to the Funds remains outstanding if they truly wish to stop litigating.

**v. The Nancy Dondero Objection**

40. Like the Funds, Nancy alleges she was dragged into this case. As discussed, that is false. Nancy also ignores that she is Dugaboy's trustee—ostensibly with control over its actions. Dugaboy has been consistently vexatious.

## LEGAL ARGUMENT

41. The Dondero Entities argue this Court cannot grant the Motion because (i) it lacks jurisdiction, (ii) the Dondero Entities are not vexatious, and (iii) the requested relief is overbroad.

### A. This Court Has Jurisdiction Over This Matter and the Dondero Entities

42. This Court has the inherent authority to "sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of its docket" and can exercise that power under the All Writs Act and, if the conduct arises in a bankruptcy, 11 U.S.C. § 105.[88] The Dondero Entities, however, argue this Court lacks jurisdiction to deem them vexatious because it (i) lost jurisdiction with the appeal of its order granting HCMLP judgment on the Notes; (ii)

---

[85] NSOF's suit against Acis and Terry in the Southern District of New York is ongoing and continues to erode the value of HCMLP's investment in HCLOF to the detriment of actual Claimant Trust Beneficiaries. *See* Brief, n.13.

[86] Confirmation Order ¶¶ 17, 19, 77-79.

[87] *See, e.g.*, Funds Obj. ¶ 11 (arguing that since February 2021 the Funds only actions have involved trying to overturn the Gatekeeper).

[88] *See, e.g., Carrol v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017); Brief ¶ 33.

lacks federal question or diversity jurisdiction; and (iii) has no jurisdiction over the Dondero Entities who are not parties to the Notes litigation. The Dondero Entities are wrong.

i. **Appeal of the Notes Litigation Does Not Deprive This Court of Jurisdiction**

43. The Dondero Entities do not contest this Court has jurisdiction to sanction them under *Schum* "in aid of its appellate jurisdiction" over the Bankruptcy Court.[89] Instead, they argue this Court lost jurisdiction with the appeal of its order granting HCMLP judgment on the Notes.[90] The Dondero Entities misapply the "divestiture doctrine."

44. The "divestiture doctrine" holds "that filing a timely notice of appeal immediately transfers jurisdiction … and divests the district court of jurisdiction over all matters relating to the appeal."[91] But it is not absolute. "One well-recognized exception is that even though the judgment on the merits has been properly appealed … the district court retains jurisdiction to entertain and resolve a motion requesting attorney's fees or sanctions. The basis for this exception is that attorney's fees/sanctions are matters collateral to the merits of the action."[92] "[T]he divestiture doctrine is not intended to 'cede control of the conduct of a … case to disappointed litigants. This cannot be, and is not, the law."[93] "Therefore, a district court has

[89] *Schum v. Fortress Value Recovery Fund I LLC*, 2019 U.S. Dist. LEXIS 226679, at *12-13 (N.D. Tex. Dec. 2, 2019), aff'd 805 F. App'x 319 (5th Cir. 2020); Brief ¶ 38.

[90] *See, e.g.*, Dondero Obj. at 30-31 ("[A] federal court may only issue a writ … in a case that is active before the court. The appeal of the Notes Cases before this Court is complete, and the cases are now on appeal to the Fifth Circuit. That divests this Court of jurisdiction to act.")

[91] 20 MOORE'S FED. PRAC – CIVIL § 303.32[1].

[92] *Thomas v. Cap. Security Serv., Inc.*, 812 F.2d 984, 987 (5th Cir. 1987) (citing cases); *see also Ben. E. Keith Co. v. Dining All., Inc*., 80 F.4th 695 (5th Cir. 2023) (affirming dismissal of third party claim with prejudice as a sanction in reliance on collateral jurisdiction when court lacked subject matter jurisdiction); *Ratliff v. Stewart*, 508 F.3d 225, 229-33 (5th Cir. 2007) (same); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524 (5th Cir. 2002) ("The district court, however, retains jurisdiction to resolve motions for sanctions and attorneys' fees while a judgment on the merits is pending on appeal. Such motions are collateral to the merits, so the appeal does not divest the district court of jurisdiction."); *Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1062 n.2 (9th Cir. 2014 ("The Ringgolds' contention that filing a notice of appeal divested the district court of jurisdiction to issue the vexatious litigant order is without merit."); *Alliance Riggers & Constructors, Ltd. v. Restrepo*, 2015 U.S. Dist. LEXIS 29346, at *4-8 (W.D. Tex. Jan. 8, 2015) (finding court had jurisdiction to review vexatious litigant order following remand to state court); 1 SANC. FED LAW OF LIT. ABUSE § 17[B][3].

[93] *Neutra, Ltd. v. Terry (In re Acis Cap. Mgmt., L.P.),* 604 B.R. 484, 524 (N.D. Tex. 2019).

[sanctions] available in its quiver where a party 'unreasonably and vexatiously' 'multiples [judicial] proceedings' … even if the subject matter of the suit has already been decided, and, indeed, even if the court constitutionally lacks jurisdiction over the principal dispute."[94] The exception makes sense. If the Dondero Entities were right (and they are not), vexatious litigants could avoid sanctions by filing vexatious appeals. But they cannot. This Court retains jurisdiction to deem the Dondero Entities vexatious litigants.

45. The Dondero Entities' reliance on *Rohe* is misplaced. *Rohe* does not address the divestiture doctrine and is factually inapposite. In *Rohe*, Rohe essentially sought a writ of mandamus by asking the district court to compel the bankruptcy court to enforce the automatic stay. Rohe did so without ever having moved for such relief in the bankruptcy court.[95] The Eleventh Circuit held Rohe did not satisfy the standards for a writ of mandamus because Rohe had "adequate means to attain the relief"—Rohe could simply have asked the bankruptcy court to enforce the stay.[96] Unlike *Rohe*, HCMLP is not asking this Court to compel the Bankruptcy Court to do anything; HCMLP asks this Court to protect HCMLP and the judicial system from the Dondero Entities' vexatious litigation tactics.

**ii. <u>This Court Has Original Jurisdiction Over the Motion</u>**

46. The Dondero Entities argue that, because this Court lost its jurisdiction upon appeal, it can only exercise jurisdiction if it has federal question or diversity jurisdiction, which it does not have.[97] Pursuant to 28 U.S.C. § 1334, Congress conferred original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," on federal

[94] *Ratliff*, 508 F.3d at 231 (citing *Cooter & Gell*, 496 U.S. 384 (1990)).
[95] *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1267 (11th Cir. 2021).
[96] *Id.*, at 1267.
[97] Dondero Obj. at 29.

district courts.[98] Here, the Dondero Entities' vexatious litigation is impeding the Plan and harming the estate. The Motion, at minimum, "relates to" the implementation of the Plan;[99] this Court has original jurisdiction.[100]

### iii. <u>This Court Has Jurisdiction Over Each Dondero Entity</u>

47. Citing no legal authority, the Dondero Entities contend this Court lacks jurisdiction to sanction certain Dondero Entities because they are not parties in the underlying action.[101] But, as stated in *Rohe*:

> [T]he [All Writs] Act supplies authority to issue orders directed, "under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice" and "even those who have not taken any affirmative action to hinder justice."[102]

The Dondero Entities—acting in concert with, and at Dondero's direction[103]—are "frustrat[ing] the implementation of a court order [and] the proper administration of justice." This Court has authority to sanction ***all of them*** for their conduct.

---

[98] A proceeding (i) "arises under" title 11 if it is a "cause of action created or determined by a statutory provision of title 11" (*Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)); (ii) "arises in" title 11 if it addresses "administrative matters that arise *only* in bankruptcy cases" (*Id.,* at 96 (emphasis in original)); and (iii) "relates to" title 11 if "the outcome of … could conceivably have any effect on the estate being administered in bankruptcy" (*Burch v. Freedom Mortg. Corp. (In re Burch)*, 835 Fed. Appx. 741, 748 (5th Cir. 2021)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) ("Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal. . . with all matters connected with the bankruptcy estate"); *Wood*, 825 F.2d at 94 (finding a postpetition action "relates to" title 11 if it "it affects the estate, not just the debtor").

[99] *See In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390-91 (5th Cir. 2001).

[100] Under 28 U.S.C. § 157(a) and *Miscellaneous Order No.33*, all cases arising under, arising in, and related to title 11 are referred to the "Bankruptcy Judges of this district for consideration and resolution…." The Dondero Entities withdrew the reference to adjudicate the Notes litigation in this Court. If this Court determines it should not hear the Motion, HCMLP requests it enforce the order of reference and refer the Motion to the Bankruptcy Court.

[101] Funds Obj., ¶ 6; DAF Obj. ¶¶ 52-57; Dondero Obj. at 23-25; HMIT Obj. ¶¶ 35-38.

[102] *Rohe*, 988 F.3d at 1264 (citing *U.S. v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)); *see also Williams v. McKeithern*, 939 F.2d 1100, 1104 (5th Cir. 1991) (same); *Restrepo*, 2015 U.S. Dist. LEXIS 29346, at *15-16 (same); *see also* Brief ¶ 37.

[103] The Dondero Entities argue this Court cannot deem them vexatious because they are individual entities and not responsible for the conduct of each other. *See, e.g.*, Dondero Obj. at 25-26. That misses the point. ***Each*** Dondero Entity has participated individually in the coordinated scheme to harass HCMLP; is individually vexatious; and should be deemed vexatious ***in its individual capacity*** because of its participation in Dondero's harassment.

**B. <u>The Dondero Entities Are Vexatious Litigants</u>**

48. The Fifth Circuit applies a four-part test to determine whether to impose a pre-filing injunction: (a) the party's history of litigation; (b) whether the party had a good faith basis for pursuing the litigation; (c) the extent of the burden on the courts and other parties; and (d) the adequacy of alternative sanctions.[104] Notwithstanding the clear factual record, the Dondero Entities' dispute any of the foregoing elements are satisfied.

**i. <u>The Dondero Entities Are Vexatious</u>**

49. Directed by Dondero, the Dondero Entities, acting together and individually, have engaged in a coordinated conspiracy to harass HCMLP and its fiduciaries through litigation in the Bankruptcy Court, this Court, and other courts and regulatory agencies. As stated by the Bankruptcy Court, the Dondero Entities' conduct is so egregious it "is overwhelming … the system" and is a burden on both HCMLP and the judiciary.[105] The Dondero Entities are vexatious and will "burn down the place" unless Dondero gets what he wants.[106]

**ii. <u>The Requested Sanction Is Necessary and Appropriate</u>**

50. The Dondero Entities argue that the Motion should be denied because HCMLP has an adequate remedy to prevent the Dondero Entities' harassment—the Gatekeeper. The Dondero Entities further argue that, even if relief is warranted, the requested relief is overbroad.

1. **No Adequate Means Prevent the Dondero Entities' Harassment**

51. The Dondero Entities contend the Motion should be denied because they are complying with the Gatekeeper and the Gatekeeper provides sufficient protection to prevent their

[104] *See, e.g., Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008).

[105] *See* n.32 *infra*. It bears repeating: ***No*** Dondero Entity (a) ever had an allowed claim against HCMLP, (b) has a vested interest in the Claimant Trust (HMIT and Dugaboy hold unvested, contingent interests), or (c) is in direct privity with HCMLP (except for HCRE which owes HCMLP duties). The lack of any legally cognizable interest on the part of nearly all of the Dondero Entities makes their vexatious conduct even more egregious.

[106] The fact that the Dondero Entities have hired attorneys to perpetrate Dondero's misconduct does not preclude finding them vexatious. *Newby v. Enron Corp.*, 302 F.3d 295 (5th Cir. 2002) (enjoining plaintiffs represented by counsel).

harassment. The Fifth Circuit disagreed; it suggested a vexatious litigant injunction could be imposed while upholding the Gatekeeper.[107] Further, the Dondero Entities are actively trying to overturn the Gatekeeper so they can file litigation in multiple forums without limitation or colorability review. The Dondero Entities cannot argue the Gatekeeper is adequate while actively trying to tear it down so they can flood the court system with harassing, meritless litigation.[108]

52. The Motion seeks broader relief than the protection provided by the Gatekeeper in that it asks this Court to, among other things, (a) find the Dondero Entities vexatious litigants and require them to provide notice thereof; and (b) protect parties left unprotected by the Gatekeeper but who the Dondero Entities are harassing (*e.g.*, HCLOF, Stonehill, and Farallon). Finally, the Bankruptcy Court cannot levy criminal sanctions; this Court can.

**2. The Relief Requested Is Not Overbroad**

53. The Dondero Entities contend the relief requested is overbroad as it precludes filings in any forum, stops the prosecution of currently pending actions, and prevents appeals. The Dondero Entities also contend that approving the Motion would create conflicting gatekeepers and an untenable procedural situation.

54. As an initial matter, HCMLP acknowledges that "a district court's pre-filing injunction may not extend to filings in any federal appellate court"[109] and cannot enjoin pending actions.[110] Accordingly, HCMLP does not seek to enjoin current proceedings or appeals.

---

[107] *NexPoint*, 48 F.4th at 439, n.19 ("Nothing in this opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants.")

[108] Without irony or shame, on February 8, 2024, the Advisors argued to the Fifth Circuit that the Gatekeeper was unnecessary because HCMLP could seek a vexatious litigant injunction.

[109] *Baum*, 513 F.3d at 192.

[110] *Bowling v. Willis*, 2019 U.S. Dist. LEXIS 168602, at*13-14 (E.D. Tex. Aug. 9, 2019), *aff'*d 853 F. App'x 983 (5th Cir. 2021).

55. However, in this disturbing situation, a broad injunction is required and supported by the case law. This Court may enjoin filings in *any* court or agency if necessary to protect its and the Bankruptcy Court's jurisdiction. In *Newby*, after a federal court had denied relief, a litigant (represented by a law firm) moved in state court for substantially the same relief. The Fifth Circuit held that conduct—making an end run around a federal order—justified a pre-filing injunction prohibiting filings in state court related to the pending federal action.[111] As in *Newby*, the Dondero Entities have used state and federal courts and agencies and the Royal Court of Guernsey to pursue actions that interfere with the implementation of the confirmed Plan.

56. Finally, the Dondero Entities allege approval of the Motion will create competing gatekeepers and confusion about where the Dondero Entities must go for approval to sue HCMLP. That can be solved. If the Gatekeeper applies, the request should be brought in the Bankruptcy Court. If, for any reason, it does not, the request should be brought in this Court.

## **CONCLUSION**

WHEREFORE, HCMLP respectfully requests that the Court grant the Motion and such other and further relief as the Court deems just and proper.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

[111] *Newby*, 302 F.3d at 301-03; *see also Hill v. Washburne*, 953 F.3d 296, 307-08 (5th Cir. 2020) (same).

Dated: February 9, 2024

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110
Email: MHayward@HaywardFirm.com
ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*